## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

**U.S. NAVY SEALs 1-26;**

**U.S. NAVY SPECIAL WARFARE
COMBATANT CRAFT CREWMEN 1-5;**

**U.S. NAVY EXPLOSIVE ORDNANCE
DISPOSAL TECHNICIAN 1; and**

**U.S. NAVY DIVERS 1-3**,

                Plaintiffs,

   v.

**JOSEPH R. BIDEN, JR.**, in his official
capacity as President of the United States of
America; **LLOYD J. AUSTIN, III**,
individually and in his official capacity as
United States Secretary of Defense; **UNITED
STATES DEPARTMENT OF DEFENSE**;
**CARLOS DEL TORO**, individually and in
his official capacity as United States Secretary
of the Navy,

              Defendants.

Case No. _____

**COMPLAINT**

Plaintiffs U.S. Navy SEALs 1-26, U.S. Navy Special Warfare Combatant Craft Crewmen (SWCC) 1-5, U.S. Navy Explosive Ordnance Disposal Technician (EOD) 1, and U.S. Navy Divers 1-3, by and through counsel, and for their Complaint against the Defendants, hereby state as follows:

### INTRODUCTION

1.      Plaintiffs are each assigned to Naval Special Warfare Command units. Plaintiffs are U.S. Navy SEALs, U.S. Navy Special Warfare Combatant Craft Crewmen, a U.S. Navy

Explosive Ordnance Disposal Technician, and U.S. Navy Divers who each object to receiving a COVID-19 vaccination based on their sincerely held religious beliefs.

2.      This action is based upon the United States Constitution, the Religious Freedom Restoration Act, the Administrative Procedure Act, Department of Defense regulations, and Department of the Navy regulations, concerning the denial of Plaintiffs' fundamental right to the free exercise of religion and protection from agency action that is unlawful, contrary to law, and arbitrary and capricious.

3.      Plaintiffs challenge the policies and actions detailed below on their face and as applied to Plaintiffs.

4.      Defendants' policies and actions deprived and will continue to deprive Plaintiffs of their paramount rights and guarantees under the United States Constitution and federal law.

5.      Defendants committed each and every act alleged herein under the color of law and authority.

### JURISDICTION AND VENUE

6.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the United States Constitution and federal law.

7.      The Court also has jurisdiction under 28 U.S.C. § 1346 because this is a civil action against the United States.

8.      The Court also has jurisdiction under 28 U.S.C. § 1361 to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

9.      The Court also has jurisdiction pursuant to 42 U.S.C. § 2000bb-1(c) because Plaintiffs' religious exercise has been burdened by Defendants.

10.     The Court also has jurisdiction to review Defendants' unlawful actions and inactions and enter appropriate relief under the Administrative Procedure Act, 5 U.S.C. §§ 701– 706.

11.     The Court also has jurisdiction to review and enjoin ultra vires or unconstitutional agency action through an equitable cause of action. *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689-92 (1949).

12.     This Court has authority to award the requested relief pursuant to 42 U.S.C. § 2000bb-1 and *Tanzin v. Tanvir*, 141 S. Ct. 486 (2020); the requested declaratory relief pursuant to 28 U.S.C. §§ 2201–02; the requested injunctive relief pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 2202; and costs and attorneys' fees pursuant to 42 U.S.C. § 1988(b).

13.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(e) because Defendants are officers and employees of the United States and agencies of the United States, and the military workplace and the location in which a substantial part of the events or omissions giving rise to the claims of at least one Plaintiff is in Fort Worth, Texas, in this Court's District and Division. Due to national security and personal security interests, Plaintiffs cannot reveal their exact locations.

## PLAINTIFFS

14.     Plaintiffs are United States Navy "SEALs," Navy Special Warfare Combatant Craft Crewmen, a Navy Explosive Ordnance Disposal Technician, and Navy Divers.

15.     Plaintiffs U.S. Navy SEALs 1–26 are enlisted service members and chief warrant officers of the United States Navy assigned to the Naval Special Warfare Command. The Navy selected U.S. Navy SEALs 1–26 to participate in the SEALs program, and these individuals each completed the rigorous training required to become a Navy SEAL.

16.     Plaintiffs U.S. Navy Special Warfare Combatant Craft Crewmen 1–5 are enlisted service members of the United States Navy assigned to the Naval Special Warfare Command.

17.     Plaintiff U.S. Navy Explosive Ordnance Disposal Technician 1 is an enlisted service member of the United States Navy assigned to Naval Special Warfare Command.

18.     Plaintiffs U.S. Navy Divers 1–3 are enlisted service members of the United States Navy assigned to Naval Special Warfare Command.

19.     Plaintiffs presently serve at various classified and confidential locations, domestic and abroad, that they cannot disclose in a public proceeding without violating their oaths, Navy regulations, and the interests of operational security and personal safety.

20.     Plaintiffs cannot disclose their names in a public proceeding without creating a significant risk of compromising their missions, operational security, and personal safety. Thus, Plaintiffs intend to file a motion for protective order to permit Plaintiffs to proceed in this case under pseudonym and to allow safe disclosure of Plaintiffs' identities to other counsel in the case.

21.     The military workplace where a substantial part of the events or omissions giving rise to the claims of at least one Plaintiff occured is in Fort Worth, Texas, in this Court's District and Division.

## DEFENDANTS

22.     Defendant Joseph R. Biden, Jr., is President of the United States of America and Commander in Chief of the Armed Forces. U.S. Const. art. II, § 2. On or about July 29, 2021, President Biden directed the Department of Defense to vaccinate all service members, including Plaintiffs. President Biden is sued in his official capacity.

23.     Defendant Lloyd J. Austin, III, is the United States Secretary of Defense. Secretary Austin issued a memorandum on August 24, 2021, which requires the United States Armed Forces to vaccinate all service members, including Plaintiffs. Secretary Austin is sued in his individual and official capacities.

24.     Defendant United States Department of Defense (DoD) is an executive branch department that coordinates and supervises all agencies and functions of the government related to the United States Armed Forces, including the vaccination policies at issue herein.

25.     Defendant Carlos Del Toro is the United States Secretary of the Navy. Secretary Del Toro issued a directive on August 30, 2021, which required the U.S. Navy to vaccinate all U.S. Navy service members, including Plaintiffs. Secretary Del Toro is sued in his individual and official capacities.

## FACTUAL BACKGROUND

### The President's Orders to Vaccinate the Armed Forces

26.     On or about July 29, 2021, the President directed DoD to add the COVID-19 vaccine to its list of required immunizations for all service members. *See* The White House, "FACT SHEET: President Biden to Announce New Actions to Get More Americans Vaccinated and Slow the Spread of the Delta Variant" (July 29, 2021), https://www.whitehouse.gov/briefing-room/statements-releases/2021/07/29/fact-sheet-president-biden-to-announce-new-actions-to-get-more-americans-vaccinated-and-slow-the-spread-of-the-delta-variant/ ("Today, the President will announce that he is directing the Department of Defense to look into how and when they will add COVID-19 vaccination to the list of required vaccinations for members of the military."); Meghann   Meyers   and   Howard   Altman,   *Military   Times*,   Oct.   21,   2021, https://www.militarytimes.com/news/your-military/2021/07/29/biden-orders-pentagon-to-consider-mandatory-covid-19-vaccination/.

### The DoD's Vaccine Mandate

27.     On August 24, 2021, Secretary Austin issued a memorandum entitled "Mandatory Coronavirus Disease 2019 Vaccination of Department of Defense Service Members" (the "DoD Vaccine Mandate"). A true and correct copy of the DoD Vaccine Mandate is attached as Exhibit 1 to this Complaint.

28.     The DoD Vaccine Mandate directs DoD to vaccinate all active duty and reserve service members against COVID-19.

29.     The DoD Vaccine Mandate states that service members who previously contracted COVID-19, and now have active antibodies against the virus, are not considered fully vaccinated and are still required to receive a vaccination against COVID-19.

30.     The DoD Vaccine Mandate provides that DoD will only use or administer COVID-19 vaccines that are fully licensed by the United States Food and Drug Administration (FDA), in accordance with FDA-approved labeling and guidance.

31.     The DoD Vaccine Mandate provides that service members who previously received a vaccination against COVID-19 under FDA Emergency Use Authorization or World Health Organization Emergency Use Listing are considered fully vaccinated.

32.     The DoD Vaccine Mandate provides that service members actively participating in COVID-19 clinical trials are exempted from the DoD Vaccine Mandate until the trial is complete.

33.     The DoD Vaccine Mandate states that DoD will implement the DoD Vaccine Mandate consistent with DoD Instruction 6205.02, "DoD Immunization Program," dated July 23, 2019.

34.     The DoD Vaccine Mandate states that the Military Departments, including the Navy, should use existing policies and procedures to manage mandatory vaccination of service members to the extent practicable.

35.     The DoD Vaccine Mandate states that vaccination of service members will be subject to any identified contraindications and any administrative or other exemptions established in Military Department policy.

36.     Defendants issued subsequent guidance stating that service members who are not fully vaccinated by established deadlines will immediately suffer adverse consequences as directed by their service components. The adverse consequences may include: court-martial (criminal) prosecution, involuntary separation, relief for cause from leadership positions, removal from promotion lists, inability to attend certain military training and education schools, loss of special pay, placement in a non-deployable status, recoupment of money spent training the service member, and loss of leave and travel privileges for both official and unofficial purposes.

### The Navy's Vaccine Mandate

37.     On August 30, 2021, Secretary del Toro issued All Navy (ALNAV) message 062/21, entitled "Department of the Navy Mandatory COVID-19 Vaccination Policy" (the "Navy Vaccine Mandate") (collectively, the DoD Vaccine Mandate and the Navy Vaccine Mandate are the "Vaccine Mandates"). A true and correct copy of the Navy Vaccine Mandate is attached as Exhibit 2 to this Complaint.

38.     The Navy Vaccine Mandate incorporates by reference the DoD Vaccine Mandate's provisions.

39.     The Navy Vaccine Mandate directs all U.S. Navy active-duty personnel to become fully vaccinated within 90 days of its publication and all U.S. Navy Reserve personnel to become fully vaccinated within 120 days of its publication.

40.     The Navy Vaccine Mandate states that "one of the approved vaccines has received full licensure from the Food and Drug Administration (FDA)."

41.     The Navy Vaccine Mandate requires that Navy members become vaccinated "with an FDA approved vaccine."

42.     The Navy Vaccine Mandate provides that "Service Members voluntarily immunized with a COVID-19 vaccine under FDA Emergency Use Authorization or World Health Organization Emergency Use Listing in accordance with applicable dose requirements prior to, or after, the establishment of this policy are considered fully vaccinated."

43.     The Navy communicated to Plaintiffs that failure to comply with the Navy Vaccine Mandate by the established deadline—November 28, 2021, for active duty, December 28, 2021, for reserve—will result in immediate adverse consequences, which may include: court-martial (criminal) prosecution, involuntary separation, relief for cause from leadership positions, removal from promotion lists, inability to attend certain military training and education schools, loss of special pay, placement in a non-deployable status, recoupment of money spent training the service member, and loss of leave and travel privileges for both official and unofficial purposes. *See* ALNAV 062/21 *Department of the Navy Mandatory Covid -19 Vaccination Policy*, dated August 30, 2021; NAVADMIN 225/21 *Covid-19 Consolidated Disposition Authority,* dated October 13, 2021.

44.     Defendants have discretion in granting religious accommodations. *See, e.g.*, Department of Defense Instruction (DODI) 1300.17, Religious Liberty in the Military Services, dated September 1, 2020; Secretary of the Navy Instruction (SECNAVINST) 1730.8B, Accommodation of Religious Practices, dated October 2, 2008; NAVADMIN 190/21, *2021-2022*

*Navy Mandatory COVID-19 Vaccination and Reporting Policy,* dated August 31, 2021; Navy Bureau of Personnel Instruction (BUPERSINST) 1730.11A, Standards and Procedures Governing the Accommodation of Religious Practices, dated March 16, 2020; Navy Military Personnel Manual (MILPERSMAN) 1730-020, Immunization Exemptions for Religious Beliefs, dated August 15, 2020.

45.   Defendants have discretion in granting medical accommodations. *See, e.g.*, NAVADMIN 190/21, *2021-2022 Navy Mandatory COVID-19 Vaccination and Reporting Policy,* dated August 31, 2021; Navy Bureau of Medicine Instruction (BUMEDINST) 6230.15B, Immunizations and Chemoprophylaxis for the Prevention of Infectious Diseases, dated October 7, 2013.

46.   Plaintiffs have spent years in training, at tremendous personal cost and sacrifice, to attain the status they have achieved and to serve their country as part of its most elite forces. Because of their extensive and highly specialized training, the cost of training Plaintiffs may exceed $1 million for *each* servicemember.

47.   On October 13, 2021, the Navy disclosed that "[t]o date, over 98 percent of active duty U.S. Navy service members have met their readiness responsibility by completing or initiating a COVID-19 vaccination series." NAVADMIN 225/21 *Covid-19 Consolidated Disposition Authority,* dated October 13, 2021.

48.   On information and belief, the Navy has not publicly disclosed what proportion of its reserve force has been fully vaccinated.

49.   A Navy spokesperson recently admitted that "multiple religious accommodation requests related to the COVID vaccine mandate have been adjudicated and none have yet been approved." The spokesman added that "[i]n the past seven years, no religious exemption from vaccination waivers were approved for any other vaccine." This disdain for religious vaccine accommodations contrasts with Defendants' grant of certain secular vaccine exemptions. The spokesperson admitted that the Navy has granted "five permanent medical exemptions." Kristina Wong, *Exclusive: Marine Corps Commanders Using Form Letter to Deny Religious Exemptions*,

Breitbart News, Nov. 2, 2021, https://www.breitbart.com/politics/2021/11/02/marine-corps-commanders-form-letter-religious-exemptions/. And, as set forth above, Defendants' policies themselves exempt—wholesale—all personnel who are participating in a COVID-19 vaccine trial, regardless whether their participation has resulted in any protection from the virus.

**Plaintiffs Are Members of One of the Nation's Premier Military Forces**

50.    The Naval Special Warfare (NSW) mission is to provide maritime special operations forces to conduct full spectrum operations, unilaterally or with partners, to support national objectives.

51.    The SEAL Team is the heart of the NSW force. It is a multipurpose combat force organized and trained to conduct a variety of special operations in all environments.

52.    Special Warfare Combatant Craft Crewmen staff Special Boat Teams that operate and maintain state-of-the-art surface craft to conduct coastal patrol and interdiction and support special operations missions.

53.    Navy Divers are the world's foremost experts in undersea operations including underwater salvage and repair, maintenance, and unique construction projects.

54.    Navy Explosive Ordnance Disposal Technicians are members of the Naval Special Operations community with specialized training to handle chemical, biological, and nuclear weapons. They have special expertise in securely disposing of both conventional and unconventional explosive weaponry on land and underwater.

**Plaintiffs' Sincerely Held Religious Objections to COVID-19 Vaccinations**

55.    Plaintiffs each object to receiving a COVID-19 vaccination based on their sincerely held religious beliefs.

56.    Plaintiffs are each members of various denominations within the Christian faith, and, collectively, they represent three main branches of Christianity: Catholic, Eastern Orthodox, and Protestant.

57.     Plaintiffs' sincerely held religious beliefs forbid each of them from receiving the COVID-19 vaccine for a variety of reasons based upon their Christian faith as revealed through the Holy Bible and prayerful discernment.

58.     Multiple Plaintiffs hold the sincere religious belief that all life is sacred, from conception to natural death, and that abortion is the impermissible taking of an innocent life in the womb.

59.     As a result of their sincerely held religious beliefs regarding life and abortion, multiple Plaintiffs are unable to receive any of the COVID-19 vaccines due to what they believe and understand is a connection between these vaccines and their testing, development, or production using aborted fetal cell lines.

60.     Plaintiffs believe that receiving a COVID-19 vaccine that was tested, developed, or produced using aborted fetal cell lines would force them to violate their sincerely held religious beliefs by causing them to participate in the abortion enterprise, which they believe to be immoral and highly offensive to God. *See, e.g.,* Annette B. Vogel, et al., "BNT162b vaccines protect rhesus macaques from SARS-CoV-2," *Nature* (Feb. 1, 2021), https://www.nature.com/articles/s41586-021-03275-y (explaining that the BNT162b vaccines (the Pfizer/BioNTech vaccine now known as Comirnaty) were tested using HEK293T aborted fetal cells); Meeting of the Vaccines and Related Biological Products Advisory Committee, U.S. Food and Drug Admin. (May 16, 2001) (Statement of Dr. Alex van der Eb, emeritus professor at the University of Leiden) ("The fetus [from whom the HEK 293 cell lines were acquired], as far as I can remember was completely normal. Nothing was wrong. The reasons for the abortion were unknown to me. I probably knew it at the time, but it got lost, all this information.").

61.     Multiple Plaintiffs, prior to learning about the production or testing of the COVID-19 vaccines using aborted fetal cell lines, were unaware that such cell lines were used in the production or testing of any medications or vaccines.

62.     Multiple Plaintiffs, having learned that other medications may be tested or produced using aborted fetal cell lines, have since committed to refusing to take any medication that is thus developed or tested.

63.     Multiple Plaintiffs hold to the sincere religious belief that the human body is God's temple, and that they must not take anything into their bodies that God has forbidden or that would alter the functions of their body such as by inducing the production of a spike protein in a manner not designed by God.

64.     Plaintiffs are among the United States' most elite military personnel. In order to earn the title Navy SEAL, SWCC, EOD or Diver, they must successfully complete some of the most demanding qualification course that exist within the U.S. Armed Forces.  Their physical and mental conditioning is beyond question.

65.     In accordance with their sincerely held religious belief, multiple Plaintiffs carefully monitor what they take into their bodies, and they are compelled to avoid anything that adversely alters or may modify their bodies' natural functions in a manner not designed by God.

66.     The COVID-19 vaccine uses mRNA technology, which causes human cells to produce a spike protein they would not normally produce. *See* Centers for Disease Control, "Understanding mRNA COVID-19 Vaccines," http://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/mrna.html (Mar. 4, 2021).

67.     The COVID-19 vaccine has resulted in a statistically significant number of serious adverse reactions, including myocarditis, a potentially fatal inflammation of the heart muscles, and pericarditis, a potentially fatal inflammation of the heart tissue. *See* Patricia Kime, *DoD Confirms: Rare Heart Inflammation Cases Linked to COVID-19 Vaccines,* Military.com (June 30, 2021), https://www.military.com/daily-news/2021/06/30/dod-confirms-rare-heart-inflammation-cases-linked-covid-19-vaccines.html.

68.     U.S. Army Lieutenant Colonel (LTC) Theresa Long, M.D., M.P.H., F.S., submitted a sworn affidavit, under penalty of perjury, as a whistleblower under the Military Whistleblower

Protection Act, 10 U.S.C. §1034, in support of a Motion for Preliminary Injunction in *Robert, et al. v. Austin, et al.*, 1:21-cv-02228-RM-STV (D. Colo., filed Aug. 17, 2021).

69.     In her affidavit, LTC Long expressed her expert opinion that:

"None of the ordered Emergency Use COVID-19 vaccines can or will provide better immunity than an infection-recovered person."

"All three of the [Emergency Use Authorization] EUA COVID-19 vaccines (Comirnaty is not available) . . . are more risky, harmful, and dangerous than having no vaccine at all, whether a person is COVID-recovered or facing a COVID infection."

"Direct evidence exists and suggests that all persons who have received a COVID-19 vaccine are damaged in their cardiovascular system in an irreparable an irrevocable manner."

70.     LTC Long does not hold an outlier opinion. For example, in a sworn declaration, Drs. Jayanta Bhattacharya and Martin Kulldoff—professors of medicine at Stanford University and Harvard Medical School, respectively—concluded that "those who have recovered from a SARS-CoV-2 infection possess immunity as robust and durable as that acquired through vaccination." *Zywicki v. Washington,* 1:21-cv-00894-AJT-MSN (E.D. Va., filed Aug. 3, 2021). Dr. Hooman Noorchashm, M.D., Ph.D.—who is well-published in the medical field and has served multiple prestigious faculty appointments—reached a similar conclusion in his own sworn declaration. He concluded that "[a] series of epidemiological studies have demonstrated to a reasonable degree of medical certainty that natural immunity following infection and recovery from the SARS-CoV-2 virus provides robust and durable protection against reinfection, at levels equal to or better than the *most effective* vaccines currently available." *Zywicki v. Washington,* 1:21-cv-00894-AJT-MSN (E.D. Va., filed Aug. 3, 2021).

71.     Many of the Plaintiffs have contracted and recovered from COVID-19, and many have antibodies tests showing that they acquired natural immunity.

72.     At least one Plaintiff experienced negative side effects from a previous vaccination, came to regret the vaccination, and came to see it as a defilement of his body. Through prayer and reflection, this plaintiff has determined that receiving a COVID-19 vaccine similarly would defile his body.

73.     Multiple Plaintiffs hold to the sincere religious belief that, upon seeking guidance from God as to whether to receive a COVID-19 vaccine, God instructed them not to do so.

74.     One Plaintiff holds to the sincere religious belief that trace animal cells in the COVID-19 vaccines, such as from swine, should not be injected into his body.

75.     Plaintiffs do not believe that staying true to their faith means exposing themselves or others to unnecessary risk. Quite the contrary, they view life—whether their own or that of their fellow Service Members—as sacred and deserving protection. Therefore, Plaintiffs do not object to safety measures like mask-wearing, physical distancing, regular testing, sick leave, and teleworking. Indeed, Defendants have employed such measures during the prior eleven months, when COVID-19 vaccines have been widely available.

**DoD and Navy Regulations Recognize Religious and Medical Accommodations for Immunizations under RFRA and the Free Exercise Clause Generally**

76.     Department of Defense Instruction (DODI) 1300.17, Religious Liberty in the Military Services, dated September 1, 2020, establishes DoD policy in furtherance of RFRA and the Free Exercise Clause of the First Amendment to the Constitution of the United States, recognizing that Service Members have the right to observe the tenets of their religion, or to observe no religion at all.

77.     DODI 1300.17 provides that it is DoD policy that "Service members have the right to observe the tenets of their religion or to observe no religion at all, as provided in this issuance."

78.     DODI 1300.17 provides that "[i]n accordance with Section 533(a)(1) of Public Law 112-239, as amended, the DoD Components will accommodate individual expressions of sincerely held beliefs (conscience, moral principles, or religious beliefs) which do not have an adverse impact on military readiness, unit cohesion, good order and discipline, or health and safety. A

Service member's expression of such beliefs may not, in so far as practicable, be used as the basis of any adverse personnel action, discrimination, or denial of promotion, schooling, training, and assignment."

79.     DODI 1300.17 provides that "[a]ccommodation includes excusing a Service member from an otherwise applicable military policy, practice, or duty. In accordance with RFRA, if such a military policy, practice, or duty substantially burdens a Service member's exercise of religion, accommodation can only be denied if:

> "(1) The military policy, practice, or duty is in furtherance of a compelling governmental interest; and
>
> "(2) It is the least restrictive means of furthering that compelling governmental interest."

80.     Secretary of the Navy Instruction (SECNAVINST) 1730.8B, Accommodation of Religious Practices, dated October 2, 2008, incorporates DODI 1300.17 and provides policy and guidance for the accommodation of religious practices within the Department of the Navy.

81.     SECNAVINST 1730.8B provides that Department of the Navy policy "is to accommodate the doctrinal or traditional observances of the religious faith practiced by individual members when these doctrines or observances will not have an adverse impact on military readiness, individual or unit readiness, unit cohesion, health, safety, discipline, or mission accomplishment."

82.     SECNAVINST 1730.8B provides that "[i]mmunization requirements may be waived when requested by the member based on religious objection."

83.     Navy Bureau of Medicine Instruction (BUMEDINST) 6230.15B, Immunizations and Chemoprophylaxis for the Prevention of Infectious Diseases, dated October 7, 2013, establishes Departmental policy and quality standards for immunization and chemoprophylaxis.

84.     BUMEDINST 6230.15B, Paragraph 2-6 provides for two types of exemptions from DoD immunization requirements: medical and administrative.

85.     Among the numerous medical exemptions available to service members, "evidence of immunity based on serologic tests, documented infection, or similar circumstances" provide a basis for medical exemption.

86.     The administrative exemptions available to service members include those who are within 180 days of their separation or retirement date and those who seek religious accommodation.

87.     Navy Bureau of Personnel Instruction (BUPERSINST) 1730.11A, Standards and Procedures Governing the Accommodation of Religious Practices, dated March 16, 2020, provides "policy, guidance, procedures, and responsibilities for the accommodation of religious practices in support of sincerely held religious beliefs for Sailors and prospective accessions, in accordance with [DODI 1300.17] and [SECNAVINST 1730.8B]."

88.     BUPERSINST 1730.11A provides that "[e]ach request for religious accommodation must be reviewed on a case-by-case basis, giving consideration to the full range of facts and circumstances relevant to the specific request.  Requests to accommodate religious practices should not be approved or denied simply because similar requests were approved or denied."

89.     BUPERSINST 1730.11A provides that for religious accommodation request from required immunizations, "commanders should make a reasonable effort to acquire alternative vaccinations, when available, that meet both religious needs of Sailors and the Navy's immunization requirements as determined by BUMED."

90.     Navy Military Personnel Manual (MILPERSMAN) 1730-020, Immunization Exemptions for Religious Beliefs, dated August 15, 2020, provides Department of the Navy Policy for religious exemptions from required immunizations and establishes the procedures for requesting such religious exemptions.

**Defendants' Refusal to Grant Religious Exemptions and Retaliation for Religious Exemption Requests**

91.     Plaintiffs are requesting religious accommodations or exemptions from Defendants' Vaccine Mandates that set forth Plaintiffs' sincerely-held religious beliefs regarding the COVID-19 vaccines.

92.     Multiple Plaintiffs received a formal "COVID-19 Vaccination Administrative Couseling/Warning" that states, "[P]er MANMED 15-105, special operations (SO) duty personnel (SEAL and SWCC) who refuse to receive the COVID-19 vaccine *based solely on personal or religious beliefs will be disqualified from SO duty* (unless the disqualification is separately waived by BUMED). This will affect deployment and special pays. *This provision does not pertain to medical contraindications or allergies to vaccine administration*." (emphasis added). A true and correct copy of one of these formal Counseling/Warning forms is attached as Exhibit 3 to this Complaint.

93.     Plaintiffs also have been informed that any religious accommodation that will be offered will preclude them from deploying. On September 24, 2021, "Trident Order #12 – Mandatory Vaccination for COVID-19" was issued. The document specified that "Special Operations Designated Personnel (SEAL and SWCC) refusing to receive recommended vaccines based solely on personal or religious beliefs will still be medically disqualified." In other words, it declared "non-deployable" all SEALs and SWCCs who submit religious accommodation requests. This medical-disqualification provision expressly "does not pertain to medical contraindications or allergies to vaccine administration."

94.     When at least one Plaintiff told his command that he would be requesting a religious accommodation, he was ordered to remove his special warfare device pin from his uniform.  Other Plaintiffs have been threatened with the same adverse treatment.

95.     Multiple Plaintiffs have had their requests for religious accommodations officially denied.

96.     No Plaintiff has received an approved religious accommodation request, and they are unaware of any similarly situated Service Member who has.

97.     Multiple Plaintiffs have not been officially informed that their requests have been denied but have been advised that they will be denied.

98.     Defendants have indicated that all requests for religious accommodation similar to Plaintiffs' requests will be denied.

99.     Unlike religious requests, Defendants have granted requests for medical accommodations from Defendants' Vaccine Mandates.

## FIRST CAUSE OF ACTION
### Violation of Plaintiffs' Rights under the Religious Freedom Restoration Act
### Duty Disqualification
### 42 U.S.C. § 2000bb *et seq.*

100.    Plaintiffs repeat and re-allege each of the allegations contained in the foregoing paragraphs of this Complaint.

101.    The Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb *et seq.* (RFRA), states that the "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1.

102.    The act broadly defines the "exercise of religion" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000bb-2(4) (citing 42 U.S.C. § 2000cc-5(7)(A)).

103.    In *Burwell v. Hobby Lobby Stores*, the Supreme Court stated that the exercise of religion involves "not only belief and profession but the performance of (or abstention from) physical acts that are engaged in for religious reasons." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 710 (2014) (citing *Smith*, 494 U.S. at 877).

104.    The Supreme Court has articulated repeatedly that courts may not question whether sincerely held religious beliefs are reasonable. *Hobby Lobby*, 573 U.S. at 724.

105.    RFRA imposes strict scrutiny on all actions of the federal government that "substantially burden a person's exercise of religion." 42 U.S.C. § 2000bb-1(b).

106. DODI 1300.17 and SECNAVINST 1730.8B explicitly recognize RFRA protections for Department of Defense and Department of the Navy Service members.

107. Unless the government satisfies the compelling interest test by "demonstrat[ing] that [the] application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest," 42 U.S.C. § 2000bb-1(b), the governmental act violates RFRA.

108. Plaintiffs have sincerely held religious beliefs that they cannot receive the mandated COVID-19 vaccine.

109. Defendants' Vaccine Mandates substantially burden Plaintiffs' sincerely held religious beliefs by requiring them to take an action (receiving a COVID-19 vaccine) that would violate those religious beliefs or suffer adverse employment action, financial harm, and potential physical harm.

110. The adverse actions to which Plaintiffs are subject may include: court-martial (criminal) prosecution, involuntary separation, relief for cause from leadership positions, removal from promotion lists, inability to attend certain military training and education schools, loss of special pay, placement in a non-deployable status, recoupment of money spent training the service member, and loss of leave and travel privileges for both official and unofficial purposes.

111. Multiple Plaintiffs received a formal "COVID-19 Vaccination Administrative Couseling/Warning" that states, "[P]er MANMED 15-105, special operations (SO) duty personnel (SEAL and SWCC) who refuse to receive the COVID-19 vaccine based solely on personal or religious beliefs will be disqualified from SO duty (unless the disqualification is separately waived by BUMED). This will affect deployment and special pays. This provision does not pertain to medical contraindications or allergies to vaccine administration."

112. Many Plaintiffs have already suffered and continue to suffer adverse employment actions merely for requesting relief that is protected by RFRA.

113. Defendants' Vaccine Mandates fail strict scrutiny.

114.     Defendants do not have a compelling government interest in requiring Plaintiffs to violate their sincerely held religious beliefs by taking a COVID-19 vaccine.

115.     Defendants' Vaccine Mandates are also not the least restrictive means of accomplishing the government's purported interest because DoD operated for over a year during the COVID-19 pandemic with a ready and healthy force that had not been fully vaccinated.

116.     Moreover, Defendants possess multiple lesser restrictive methods of mitigating the spread of COVID-19, including masking, remote teleworking, physical distancing, and regular testing.

117.     Indeed, if Defendants are concerned about COVID-19 affecting its personnel, it would need to implement these other mitigation protocols even if service members receive the vaccine, because vaccinated personnel can also carry, transmit, and become sick with COVID-19. Centers for Disease Control and Prevention, "Science Brief: COVID-19 Vaccines and Vaccination" (last updated September 15, 2021), https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/fully-vaccinated-people.html.

118.     Accordingly, Defendants' Vaccine Mandates violate Plaintiffs' rights under RFRA.

119.     Because of Defendants' policy and actions, Plaintiffs have suffered, and continue to suffer, economic injury and irreparable harm. They are entitled to an award of monetary damages and equitable relief.

120.     Plaintiffs are entitled to a declaration that Defendants violated their rights under RFRA to the free exercise of religion and an injunction against Defendants' policy and actions. Additionally, Plaintiffs are entitled to damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

### SECOND CAUSE OF ACTION
### <u>Violation of Plaintiffs' Rights under the Religious Freedom Restoration Act</u>
### <u>Medical Disqualification</u>
### <u>42 U.S.C. § 2000bb <i>et seq.</i></u>

121.     Plaintiffs repeat and re-allege each of the allegations contained in the foregoing paragraphs of this Complaint.

122.     The Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb *et seq.* (RFRA), states that the "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1.

123.     The act broadly defines the "exercise of religion" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000bb-2(4) (citing 42 U.S.C. § 2000cc-5(7)(A)).

124.     In *Burwell v. Hobby Lobby Stores*, the Supreme Court stated that the exercise of religion involves "not only belief and profession but the performance of (or abstention from) physical acts that are engaged in for religious reason." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 710 (2014) (citing *Smith*, 494 U.S. at 877).

125.     The Supreme Court has articulated repeatedly that courts may not question whether sincerely held religious beliefs are reasonable. *Hobby Lobby*, 573 U.S. at 724.

126.     In *Holt v. Hobbs*, the Supreme Court held that the government failed strict scrutiny, in part, because it "fail[ed] to prove that petitioner's proposed alternatives would not sufficiently serve its security interests." *Holt v. Hobbs*, 574 U.S. 352, 367 (2015).

127.     RFRA imposes strict scrutiny on all actions of the federal government that "substantially burden a person's exercise of religion." 42 U.S.C. § 2000bb-1(b).

128.     DODI 1300.17 and SECNAVINST 1730.8B explicitly recognize RFRA protections for Department of Defense and Department of the Navy Service members.

129.     Unless the government satisfies the compelling interest test by "demonstrat[ing] that [the] application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest," 42 U.S.C. § 2000bb-1(b), the governmental act violates RFRA.

130.     Plaintiffs have sincerely held religious beliefs that they cannot receive the mandated COVID-19 vaccine.

131.     The medical-disqualification provision of Defendants' Trident Order #12 substantially burdens Plaintiffs' sincerely held religious beliefs by rendering Plaintiffs "medically

disqualified," i.e., non-deployable, even if they were to receive a religious accommodation. This threat of non-deployability substantially pressures Plaintiffs to take an action (receiving a COVID-19 vaccine) that would violate their religious beliefs.

132.    The medical-disqualification provision of Defendants' Trident Order #12 fails strict scrutiny.

133.    Defendants do not have a compelling government interest in requiring Plaintiffs to violate their sincerely held religious beliefs by taking a COVID-19 vaccine.

134.    The medical-disqualification provision of Defendants' Trident Order #12 is also not the least restrictive means of accomplishing the government's purported interest because DoD operated for over a year during the COVID-19 pandemic with a ready and healthy force that had not been fully vaccinated, and in any event the reason for exemption from vaccination—religious or medical—will have no impact on a service member's deployability or on the lesser restrictive methods of mitigating the spread of COVID-19 that Defendants can adopt. If those with a medical accommodation could be deployed, so too could those with a religious accommodation.

135.    Moreover, Defendants possess multiple lesser restrictive methods of mitigating the spread of COVID-19, including masking, remote teleworking, physical distancing, and regular testing.

136.    Defendants fail to prove how any of Plaintiffs' proposed alternatives do not sufficiently serve its purported interest.

137.    Indeed, Defendants will need to implement these other mitigation protocols even if service members receive the vaccine, because vaccinated personnel can carry, transmit, and become sick with COVID-19.  Centers for Disease Control and Prevention, "Science Brief: COVID-19  Vaccines  and  Vaccination"  (last  updated  September  15,  2021), https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/fully-vaccinated-people.html.

138.    Accordingly, the medical-disqualification provision of Defendants' Trident Order #12 violates Plaintiffs' rights under RFRA.

139.    Because of Defendants' policy and actions, Plaintiffs have suffered, and continue to suffer, economic injury and irreparable harm. They are entitled to an award of monetary damages and equitable relief.

140.    Plaintiffs are entitled to a declaration that Defendants violated their rights under RFRA to the free exercise of religion and an injunction against Defendants' policy and actions. Additionally, Plaintiffs are entitled to damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

### THIRD CAUSE OF ACTION
**Violation of Plaintiffs' First Amendment Right to the Free Exercise of Religion**
**Duty Disqualification**
**U.S. Const. amend. I**

141.    Plaintiffs repeat and re-allege each of the allegations contained in the foregoing paragraphs of this Complaint.

142.    The First Amendment's Free Exercise Clause prohibits the government from enacting non-neutral and non-generally applicable laws or policies unless they are narrowly tailored to a compelling government interest.

143.    The original public meaning of the Free Exercise Clause is that the government may not burden a sincerely held religious belief unless the government can demonstrate a compelling interest and that the law or policy burdening religious exercise is the least restrictive means to achieve that compelling interest.

144.    Plaintiffs have sincerely held religious beliefs that prohibit their receipt of presently-available COVID-19 vaccines.

145.    Defendants' Vaccine Mandates substantially burden Plaintiffs' sincerely held religious beliefs by requiring them to take an action (receiving a COVID-19 vaccine) that would violate those religious beliefs or suffer adverse employment action and financial harm.

146.    The adverse actions to which Plaintiffs are subject may include: court-martial (criminal) prosecution, involuntary separation, relief for cause from leadership positions, removal from promotion lists, inability to attend certain military training and education schools, loss of

special pay, placement in a non-deployable status, recoupment of money spent training the service member, loss of leave and travel privileges for both official and unofficial purposes.

147.    Multiple Plaintiffs received a formal "COVID-19 Vaccination Administrative Couseling/Warning" that states, "[P]er MANMED 15-105, special operations (SO) duty personnel (SEAL and SWCC) who refuse to receive the COVID-19 vaccine based solely on personal or religious beliefs will be disqualified from SO duty (unless the disqualification is separately waived by BUMED). This will affect deployment and special pays. This provision does not pertain to medical contraindications or allergies to vaccine administration."

148.    Defendants' Vaccine Mandates are not a neutral and generally applicable law or policy. The policy vests DoD and Navy decisionmakers with the discretion to exempt service members from the mandates for medical reasons and to exempt service members already participating in COVID-19 vaccine trials, regardless of whether those medical trials provide those service members with any protection from infection or serious illness from COVID-19.

149.    Defendants' Vaccine Mandates fail strict scrutiny.

150.    Defendants do not have a compelling government interest in requiring Plaintiffs to violate their sincerely held religious beliefs by taking a COVID-19 vaccine.

151.    Defendants' Vaccine Mandates are also not the least restrictive means of accomplishing the government's purported interest because DoD operated for over a year during the COVID-19 pandemic with a ready and healthy force that had not been fully vaccinated.

152.    Moreover, Defendants possess multiple lesser restrictive methods of mitigating the spread of COVID-19, including masking, remote teleworking, physical distancing, and regular testing.

153.    Indeed, Defendants will need to implement these other mitigation protocols even if service members receive the vaccine, because vaccinated personnel can also carry, transmit, and become sick with COVID-19. Centers for Disease Control and Prevention, "Science Brief: COVID-19    Vaccines    and    Vaccination"    (last    updated    September    15,    2021),

https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/fully-vaccinated-people.html.

154.     Accordingly, Defendants' Vaccine Mandates violate Plaintiffs' rights to the free exercise of religion under the First Amendment.

155.     Because of Defendants' policy and actions, Plaintiffs have suffered and continue to suffer irreparable harm. They are entitled to equitable relief.

156.     Plaintiffs are entitled to a declaration that Defendants violated their First Amendment rights to free exercise of religion and an injunction against Defendants' policy and actions. Additionally, Plaintiffs are entitled to the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

**FOURTH CAUSE OF ACTION**
**<u>Violation of Plaintiffs' First Amendment Right to the Free Exercise of Religion</u>**
**<u>Medical Disqualification</u>**
**<u>U.S. Const. amend. I</u>**

157.     Plaintiffs repeat and re-allege each of the allegations contained in the foregoing paragraphs of this Complaint.

158.     The First Amendment's Free Exercise Clause prohibits the government from enacting non-neutral and non-generally applicable laws or policies unless they are narrowly tailored to a compelling government interest.

159.     The original public meaning of the Free Exercise Clause is that the government may not burden a sincerely held religious belief unless the government can demonstrate a compelling interest and that the law or policy burdening religious exercise is the least restrictive means to achieve that compelling interest.

160.     Plaintiffs have sincerely held religious beliefs that prohibit their receipt of presently-available COVID-19 vaccines.

161.     The medical-disqualification provision of Defendants' Trident Order #12 substantially burdens Plaintiffs' sincerely held religious beliefs by rendering Plaintiffs "medically disqualified," i.e., non-deployable, even if they were to receive a religious accommodation. This

threat of non-deployability substantially pressures Plaintiffs to take an action (receiving a COVID-19 vaccine) that would violate their religious beliefs.

162.    The medical-disqualification provision of Defendants' Trident Order #12 is not a neutral and generally applicable law or policy. The order expressly states that its medical-disqualification provision will apply to service members who receive a religious accommodation but will not apply to those who receive a medical accommodation.

163.    The medical-disqualification provision of Defendants' Trident Order #12 fails strict scrutiny.

164.    Defendants do not have a compelling government interest in requiring Plaintiffs to violate their sincerely held religious beliefs by taking a COVID-19 vaccine.

165.    The medical-disqualification provision of Defendants' Trident Order #12 is also not the least restrictive means of accomplishing the government's purported interest because DoD operated for over a year during the COVID-19 pandemic with a ready and healthy force that had not been fully vaccinated, and in any event the reason for exemption from vaccination—religious or medical—will have no impact on a service member's deployability or on the lesser restrictive methods of mitigating the spread of COVID-19 that Defendants can adopt. If those with a medical accommodation could be deployed, so too could those with a religious accommodation.

166.    Moreover, Defendants possess multiple lesser restrictive methods of mitigating the spread of COVID-19, including masking, remote teleworking, physical distancing, and regular testing.

167.    Indeed, Defendants will need to implement these other mitigation protocols even if service members receive the vaccine, because vaccinated personnel can carry, transmit, and become sick with COVID-19. Centers for Disease Control and Prevention, "Science Brief: COVID-19 Vaccines and Vaccination" (last updated September 15, 2021), https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/fully-vaccinated-people.html.

168.    Accordingly, the medical-disqualification provision of Defendants' Trident Order #12 violates Plaintiffs' rights to the free exercise of religion under the First Amendment.

169.    Because of Defendants' policy and actions, Plaintiffs have suffered and continue to suffer irreparable harm. They are entitled to equitable relief.

170.    Plaintiffs are entitled to a declaration that Defendants violated their First Amendment rights to free exercise of religion and an injunction against Defendants' policy and actions. Additionally, Plaintiffs are entitled to the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

## FIFTH CAUSE OF ACTION
### Violation of Plaintiffs' Rights Under the Administrative Procedure Act
### Agency Action Not in Accordance with Law
### 5 U.S.C. §§ 701-06

171.    Plaintiffs repeat and re-allege each of the allegations contained in the foregoing paragraphs of this Complaint.

172.    Defendants are "agencies" under the APA, 5 U.S.C. § 551(1), the Vaccine Mandates complained of herein are each a "rule" under the APA, *id*. § 551(4), and Defendants' actions complained of herein are "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court," *id*. § 704.

173.    The APA prohibits agency actions that are "not in accordance with law." 5 U.S.C. § 706(2)(A). The Vaccine Mandates, as applied to Plaintiffs, are not in accordance with law.

174.    RFRA states that the "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1.

175.    DODI 1300.17 and SECNAVINST 1730.8B explicitly recognize RFRA protections for Department of Defense and Department of the Navy Service members.

176.    Unless the agency satisfies the compelling interest test by "demonstrat[ing] that [the] application of the burden to the person—(1) is in furtherance of a compelling governmental

interest; and (2) is the least restrictive means of furthering that compelling governmental interest," 42 U.S.C. § 2000bb-1(b), the agency action violates RFRA.

177.   Defendants' Vaccine Mandates substantially burden Plaintiffs' sincerely held religious beliefs by requiring them to take an action (receiving a COVID-19 vaccine) that would violate those religious beliefs or suffer adverse employment action and financial harm.

178.   The adverse actions to which Plaintiffs are subject may include: court-martial (criminal) prosecution, involuntary separation, relief for cause from leadership positions, removal from promotion lists, inability to attend certain military training and education schools, loss of special pay, placement in a non-deployable status, recoupment of money spent training the service member, loss of leave and travel privileges for both official and unofficial purposes

179.   Multiple Plaintiffs received a formal "COVID-19 Vaccination Administrative Couseling/Warning" that states, "[P]er MANMED 15-105, special operations (SO) duty personnel (SEAL and SWCC) who refuse to receive the COVID-19 vaccine based solely on personal or religious beliefs will be disqualified from SO duty (unless the disqualification is separately waived by BUMED). This will affect deployment and special pays. This provision does not pertain to medical contraindications or allergies to vaccine administration."

180.   The medical-disqualification provision of Defendants' Trident Order #12 substantially burdens Plaintiffs' sincerely held religious beliefs by rendering Plaintiffs "medically disqualified," i.e., non-deployable, even if they were to receive a religious accommodation. This threat of non-deployability substantially pressures Plaintiffs to take an action (receiving a COVID-19 vaccine) that would violate their religious beliefs.

181.   Defendants do not have a compelling government interest in requiring Plaintiffs to violate their sincerely held religious beliefs by taking a COVID-19 vaccine.

182.   Defendants' Vaccine Mandates are also not the least restrictive means of accomplishing the government's purported interest because DoD operated for over a year during the COVID-19 pandemic with a ready and healthy force that had not been fully vaccinated.

183.     Moreover, Defendants possess multiple lesser restrictive methods of mitigating the spread of COVID-19, including masking, remote teleworking, physical distancing, and regular testing.

184.     For the reasons discussed above, the Vaccine Mandates are not in accordance with law within the meaning of 5 U.S.C. § 706(2)(A) as they violate Plaintiffs' rights under RFRA.

185.     Plaintiffs have no adequate or available administrative remedy, or, in the alternative, any effort to obtain an administrative remedy would be futile.

186.     Plaintiffs have no adequate remedy at law.

187.     Absent injunctive and declaratory relief against the Vaccine Mandates, Plaintiffs will have been and continue to be harmed.

188.     The Court should declare the Vaccine Mandates and each of the Defendants' decisions invalid and set them aside.

**SIXTH CAUSE OF ACTION**
**Violation of Plaintiffs' Rights Under the Administrative Procedure Act**
**Agency Action that is Contrary to a Constitutional Right**
**(5 U.S.C. §§ 701-06)**

189.     Plaintiffs repeat and re-allege each of the allegations contained in the foregoing paragraphs of this Complaint.

190.     Defendants are "agencies" under the APA, 5 U.S.C. § 551(1), the Vaccine Mandates complained of herein are each a "rule" under the APA, *id*. § 551(4), and Defendants' actions complained of herein are "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court," *id*. § 704.

191.     The APA prohibits agency actions that are "contrary to constitutional right." 5 U.S.C. § 706(2)(B). The Vaccine Mandates, as applied to Plaintiffs, are contrary to their constitutional rights under the Free Exercise Clause of the First Amendment.

192.     The First Amendment's Free Exercise Clause prohibits the government from enacting non-neutral and non-generally applicable laws or policies unless they are narrowly tailored to a compelling government interest.

28

193.    Plaintiffs have sincerely held religious beliefs that prohibit their receipt of presently-available COVID-19 vaccines.

194.    Defendants' Vaccine Mandates substantially burden Plaintiffs' sincerely held religious beliefs by requiring them to take an action (receiving a COVID-19 vaccine) that would violate those religious beliefs or suffer adverse employment action and financial harm.

195.    The adverse actions to which Plaintiffs are subject may include: court-martial (criminal) prosecution, involuntary separation, relief for cause from leadership positions, removal from promotion lists, inability to attend certain military training and education schools, loss of special pay, placement in a non-deployable status, recoupment of money spent training the service member, loss of leave and travel privileges for both official and unofficial purposes.

196.    Multiple Plaintiffs received a formal "COVID-19 Vaccination Administrative Couseling/Warning" that states, "[P]er MANMED 15-105, special operations (SO) duty personnel (SEAL and SWCC) who refuse to receive the COVID-19 vaccine based solely on personal or religious beliefs will be disqualified from SO duty (unless the disqualification is separately waived by BUMED). This will affect deployment and special pays. This provision does not pertain to medical contraindications or allergies to vaccine administration."

197.    The medical-disqualification provision of Defendants' Trident Order #12 substantially burdens Plaintiffs' sincerely held religious beliefs by rendering Plaintiffs "medically disqualified," i.e., non-deployable, even if they were to receive a religious accommodation. This threat of non-deployability substantially pressures Plaintiffs to take an action (receiving a COVID-19 vaccine) that would violate their religious beliefs.

198.    Defendants' Vaccine Mandates are not a neutral and generally applicable law or policy. The policy vests DoD and Navy decisionmakers with the discretion to exempt service members from the mandates for medical reasons and to exempt service members already participating in COVID-19 vaccine trials, regardless of whether those medical trials provide those service members with any protection from infection or serious illness from COVID-19.

199.    Defendants' Vaccine Mandates fail strict scrutiny.

200.     Defendants do not have a compelling government interest in requiring Plaintiffs to violate their sincerely held religious beliefs by taking a COVID-19 vaccine.

201.     Defendants' Vaccine Mandates are also not the least restrictive means of accomplishing the government's purported interest because DoD operated for over a year during the COVID-19 pandemic with a ready and healthy force that had not been fully vaccinated.

202.     Moreover, Defendants possess multiple lesser restrictive methods of mitigating the spread of COVID-19, including masking, remote teleworking, physical distancing, and regular testing.

203.     For the reasons discussed above, the Vaccine Mandates are contrary to a constitutional right within the meaning of 5 U.S.C. § 706(2)(B) as they violate Plaintiffs' rights under the First Amendment.

204.     Plaintiffs have no adequate or available administrative remedy, or, in the alternative, any effort to obtain an administrative remedy would be futile.

205.     Plaintiffs have no adequate remedy at law.

206.     Absent injunctive and declaratory relief against the Vaccine Mandates, Plaintiffs will have been and continue to be harmed.

207.     The Court should declare the Vaccine Mandates and each of the Defendants' decisions invalid and set them aside.

**SEVENTH CAUSE OF ACTION**
**Violation of Plaintiffs' Rights Under the Administrative Procedure Act**
**Agency Action that Exceeds Statutory Authority**
**(5 U.S.C. §§ 701-06)**

208.     Plaintiffs repeat and re-allege each of the allegations contained in the foregoing paragraphs of this Complaint.

209.     Defendants are "agencies" under the APA, 5 U.S.C. § 551(1), the Vaccine Mandates complained of herein are each a "rule" under the APA, *id*. § 551(4), and Defendants' actions complained of herein are "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court," *id*. § 704.

210.    The APA prohibits agency actions that are "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(C). The Vaccine Mandates exceed statutory authority for several reasons.

211.    RFRA states that the "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1.

212.    DODI 1300.17 and SECNAVINST 1730.8B explicitly recognize RFRA protections for Department of Defense and Department of the Navy Service members.

213.    Unless the agency satisfies the compelling interest test by "demonstrat[ing] that [the] application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest," 42 U.S.C. § 2000bb-1(b), the agency action violates RFRA.

214.    Defendants' Vaccine Mandates substantially burden Plaintiffs' sincerely held religious beliefs by requiring them to take an action (receiving a COVID-19 vaccine) that would violate those religious beliefs or suffer adverse employment action and financial harm.

215.    The adverse actions to which Plaintiffs are subject may include: court-martial (criminal) prosecution, involuntary separation, relief for cause from leadership positions, removal from promotion lists, inability to attend certain military training and education schools, loss of special pay, placement in a non-deployable status, recoupment of money spent training the service member, loss of leave and travel privileges for both official and unofficial purposes.

216.    Multiple Plaintiffs received a formal "COVID-19 Vaccination Administrative Couseling/Warning" that states, "[P]er MANMED 15-105, special operations (SO) duty personnel (SEAL and SWCC) who refuse to receive the COVID-19 vaccine based solely on personal or religious beliefs will be disqualified from SO duty (unless the disqualification is separately waived by BUMED). This will affect deployment and special pays. This provision does not pertain to medical contraindications or allergies to vaccine administration."

31

217. The medical-disqualification provision of Defendants' Trident Order #12 substantially burdens Plaintiffs' sincerely held religious beliefs by rendering Plaintiffs "medically disqualified," i.e., non-deployable, even if they were to receive a religious accommodation. This threat of non-deployability substantially pressures Plaintiffs to take an action (receiving a COVID-19 vaccine) that would violate their religious beliefs.

218. Defendants do not have a compelling government interest in requiring Plaintiffs to violate their sincerely held religious beliefs by taking a COVID-19 vaccine.

219. Defendants' Vaccine Mandates are also not the least restrictive means of accomplishing the government's purported interest because DoD operated for over a year during the COVID-19 pandemic with a ready and healthy force that had not been fully vaccinated.

220. Moreover, Defendants possess multiple lesser restrictive methods of mitigating the spread of COVID-19, including masking, remote teleworking, physical distancing, and regular testing.

221. For the reasons discussed above, the Vaccine Mandates exceed statutory authority within the meaning of 5 U.S.C. § 706(2)(C) as they violate Plaintiffs' rights under RFRA.

222. The First Amendment's Free Exercise Clause prohibits the government from enacting non-neutral and non-generally applicable laws or policies unless they are narrowly tailored to a compelling government interest.

223. Plaintiffs have sincerely held religious beliefs that prohibit their receipt of presently-available COVID-19 vaccines.

224. Defendants' Vaccine Mandates substantially burden Plaintiffs' sincerely held religious beliefs by requiring them to take an action (receiving a COVID-19 vaccine) that would violate those religious beliefs or suffer adverse employment action and financial harm.

225. The adverse actions to which Plaintiffs are subject may include: court-martial (criminal) prosecution, involuntary separation, relief for cause from leadership positions, removal from promotion lists, inability to attend certain military training and education schools, loss of

special pay, placement in a non-deployable status, recoupment of money spent training the service member, loss of leave and travel privileges for both official and unofficial purposes

226.     Defendants' Vaccine Mandates are not a neutral and generally applicable law or policy. The policy vests DoD and Navy decisionmakers with the discretion to exempt service members from the mandates for medical reasons and to exempt service members already participating in COVID-19 vaccine trials, regardless of whether those medical trials provide those service members with any protection from infection or serious illness from COVID-19.

227.     Defendants' Vaccine Mandates fail strict scrutiny.

228.     Defendants do not have a compelling government interest in requiring Plaintiffs to violate their sincerely held religious beliefs by taking a COVID-19 vaccine.

229.     Defendants' Vaccine Mandates are also not the least restrictive means of accomplishing the government's purported interest because DoD operated for over a year during the COVID-19 pandemic with a ready and healthy force that had not been fully vaccinated.

230.     Moreover, Defendants possess multiple lesser restrictive methods of mitigating the spread of COVID-19, including masking, remote teleworking, physical distancing, and regular testing.

231.     For the reasons discussed above, the Vaccine Mandates exceed statutory authority within the meaning of 5 U.S.C. § 706(2)(C) as they violate Plaintiffs' rights under the First Amendment.

232.     Plaintiffs have no adequate or available administrative remedy, or, in the alternative, any effort to obtain an administrative remedy would be futile.

233.     Plaintiffs have no adequate remedy at law.

234.     Absent injunctive and declaratory relief against the Vaccine Mandates, Plaintiffs will have been and continue to be harmed.

235.     The Court should declare the Vaccine Mandate and each of the Defendants' decisions invalid and set them aside.

## EIGHTH CAUSE OF ACTION
### Violation of Plaintiffs' Rights Under the Administrative Procedure Act
### Agency Action that Is Arbitrary, Capricious, or an Abuse of Discretion
### (5 U.S.C. §§ 701-06)

236.    Plaintiffs repeat and re-allege each of the allegations contained in the foregoing paragraphs of this Complaint.

237.    Defendants are "agencies" under the APA, 5 U.S.C. § 551(1), the Vaccine Mandates complained of herein are each a "rule" under the APA, *id*. § 551(4), and Defendants' actions complained of herein are "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court," *id*. § 704.

238.    The APA prohibits agency actions that are "arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 706(2)(A). The Vaccine Mandates and Defendants' actions implementing the Vaccine Mandates are arbitrary, capricious, and an abuse of discretion for several reasons.

239.    SECNAVINST 1730.8B provides that "[i]mmunization requirements may be waived when requested by the member based on religious objection."

240.    BUMEDINST 6230.15B, Immunizations and Chemoprophylaxis for the Prevention of Infectious Diseases, dated October 7, 2013, establishes DoD-wide policy and quality standards for immunization and chemoprophylaxis.

241.    BUMEDINST 6230.15B, Paragraph 2-6 provides for two types of exemptions from DoD immunization requirements: medical and administrative.

242.    Among the numerous medical exemptions available to service members, "evidence of immunity based on serologic tests, documented infection, or similar circumstances" provide a basis for medical exemption.

243.    BUPERSINST 1730.11A provides that "[e]ach request for religious accommodation must be reviewed on a case-by-case basis, giving consideration to the full range of facts and circumstances relevant to the specific request.  Requests to accommodate religious practices should not be approved or denied simply because similar requests were approved or denied."

244.     MILPERSMAN 1730-020, Immunization Exemptions for Religious Beliefs, dated August 15, 2020, provides Department of the Navy Policy for religious exemptions from required immunizations and establishes the procedures for requesting such religious exemptions.

245.     RFRA states that the "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1.

246.     The act broadly defines the "exercise of religion" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000bb-2(4) (citing 42 U.S.C. § 2000cc-5(7)(A)).

247.     In *Burwell v. Hobby Lobby Stores*, the Supreme Court stated that the exercise of religion involves "not only belief and profession but the performance of (or abstention from) physical acts that are engaged in for religious reason." *Burwell v. Hobby Lobby Stores, Inc*., 573 U.S. 682, 710 (2014) (citing *Smith*, 494 U.S. at 877).

248.     The Supreme Court has articulated repeatedly that courts may not question whether sincerely held religious beliefs are reasonable. *Hobby Lobby*, 573 U.S. at 724.

249.     RFRA imposes strict scrutiny on all actions of the federal government that "substantially burden a person's exercise of religion." 42 U.S.C. § 2000bb-1(b).

250.     DODI 1300.17 and SECNAVINST 1730.8B explicitly recognize RFRA protections for Department of Defense and Department of the Navy Service members.

251.     Unless the government satisfies the compelling interest test by "demonstrat[ing] that [the] application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest," 42 U.S.C. § 2000bb-1(b), the governmental act violates RFRA.

252.     By refusing to perform an individualized assessment that demonstrates that the application of the burden *to the person* making each request for a religious accommodation under RFRA and BUPERSINST 1730.11A is necessary to further a compelling governmental interest,

35

Defendants have acted in a manner that is arbitrary, capricious, and an abuse of discretion within the meaning of 5 U.S.C. § 706(2)(A).

253.     By exempting service members from the mandates for medical reasons and exempting service members participating in COVID-19 vaccine trials, regardless of whether those medical trials provide those service members with any protection from infection or serious illness from COVID-19, while refusing to provide similar exemptions for service members who request exemptions for religious reasons, Defendants have acted in a manner that is arbitrary, capricious, and an abuse of discretion within the meaning of 5 U.S.C. § 706(2)(A).

254.     Plaintiffs have no adequate or available administrative remedy, or, in the alternative, any effort to obtain an administrative remedy would be futile.

255.     Plaintiffs have no adequate remedy at law.

256.     Absent injunctive and declaratory relief against the Vaccine Mandates, Plaintiffs will have been and continue to be harmed.

257.     The Court should declare the Vaccine Mandates and each of the Defendants' decisions invalid and set them aside.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment against Defendants and provide Plaintiffs with the following relief:

(A)     A declaratory judgment that Defendants' vaccination policies challenged in this Complaint violate Plaintiffs' rights under the First Amendment to the United States Constitution;

(B)     A declaratory judgment that Defendants' vaccination policies challenged in this Complaint violate Plaintiffs' rights under the Religious Freedom Restoration Act;

(C)     A declaratory judgment that Defendants' vaccination policies challenged in this Complaint violate Plaintiffs' rights under the Administrative Procedure Act;

(D)     A preliminary and permanent injunction prohibiting the Defendants, their agents, officials, servants, employees, and any other persons acting on their behalf from enforcing the vaccination policies challenged in this Complaint;

(E)     An order declaring unlawful and setting aside Defendants' vaccination policies;

(F)     Actual damages, under *Tanzin v. Tanvir*, 141 S. Ct. 486 (2020), in the amount of pay Plaintiffs will lose as a result of Defendants' discriminatory vaccine policies under the Religious Freedom Restoration Act;

(G)     Nominal damages against Defendants in their individual capacities, under *Tanzin v. Tanvir*, 141 S. Ct. 486 (2020), for the violation of Plaintiffs' rights under the Religious Freedom Restoration Act;

(H)     Plaintiffs' reasonable attorneys' fees, costs, and other costs and disbursements in this action pursuant to 42 U.S.C. § 1988; and

(I)     All other further relief to which Plaintiffs may be entitled.

Respectfully submitted this 9th day of November, 2021.

*/s/ Michael D. Berry*

Heather Gebelin Hacker
  Texas Bar No. 24103325
Andrew B. Stephens
  Texas Bar No. 24079396
HACKER STEPHENS LLP
108 Wild Basin Road South, Suite 250
Austin, Texas 78746
Tel.: (512) 399-3022
heather@hackerstephens.com
andrew@hackerstephens.com

Jordan E. Pratt
  Florida Bar No. 100958*
FIRST LIBERTY INSTITUTE
227 Pennsylvania Ave., SE
Washington, DC 20003
Tel: (972) 941-4444
jpratt@firstliberty.org
*Application for admission pro hace vice
forthcoming

Kelly J. Shackelford
  Texas Bar No. 18070950
Jeffrey C. Mateer
  Texas Bar No. 13185320
Hiram S. Sasser, III
  Texas Bar No. 24039157
David J. Hacker
  Texas Bar No. 24103323
Michael D. Berry
  Texas Bar No. 24085835
Justin Butterfield
  Texas Bar No. 24062642
Roger Byron
  Texas Bar No. 24062643
FIRST LIBERTY INSTITUTE
2001 W. Plano Pkwy., Ste. 1600
Plano, Texas 75075
Tel: (972) 941-4444
jmateer@firstliberty.org
hsasser@firstliberty.org
dhacker@firstliberty.org
mberry@firstliberty.org
jbutterfield@firstliberty.org
rbyron@firstliberty.org

*Attorneys for Plaintiffs*