**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| **U.S. NAVY SEALs 1-26;** <br><br> **U.S. NAVY SPECIAL WARFARE COMBATANT CRAFT CREWMEN 1-5;** <br><br> **U.S. NAVY EXPLOSIVE ORDNANCE DISPOSAL TECHNICIAN 1; and** <br><br> **U.S. NAVY DIVERS 1-3,** <br><br> Plaintiffs, <br><br> v. <br><br> **JOSEPH R. BIDEN, JR.**, in his official capacity as President of the United States of America; **LLOYD J. AUSTIN, III**, individually and in his official capacity as United States Secretary of Defense; **UNITED STATES DEPARTMENT OF DEFENSE**; **CARLOS DEL TORO**, individually and in his official capacity as United States Secretary of the Navy, <br><br> Defendants. | Case No. 4:21-CV-01236-O <br><br> **MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

1

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

STATEMENT OF FACTS ....................................................................................................... 3

LEGAL STANDARD ............................................................................................................. 15

ARGUMENT ......................................................................................................................... 15

I.  Plaintiffs Are Likely to Succeed on Their Claim that Denial of Their Religious
Accommodation Requests Violates RFRA and the First Amendment. .......................... 15

A.  Absent religious accommodations, the vaccine mandate substantially burdens
Plaintiffs' religious exercise without satisfying RFRA's demanding
compelling-interest standard. ................................................................................ 15

1.  Defendants' COVID-19 vaccine mandate substantially burdens Plaintiffs'
sincerely held religious beliefs............................................................................. 16

2.  Defendants cannot demonstrate a compelling interest that justifies
burdening Plaintiffs' religious beliefs and practices, or that the mandate is
the least restrictive means of achieving their purported interest.......................... 17

B.  The vaccine mandate is not neutral nor generally applicable, and it fails strict
scrutiny under the First Amendment....................................................................... 23

II. Plaintiffs Are Likely to Succeed on Their Claims Against the Permanent Medical-
Disqualification Provision. ......................................................................................... 25

A.  The medical-disqualification order requires strict scrutiny. ...................................... 26

B.  The medical-disqualification order is not the least restrictive means of
achieving an alleged compelling interest. ................................................................ 27

III.    The Remaining Preliminary Injunction Factors Favor Relief.................................... 27

A.  Plaintiffs are suffering irreparable injury................................................................. 27

B.  The balance of harms and the public interest in protecting civil liberties weigh
in favor of an injunction........................................................................................ 29

CONCLUSION ..................................................................................................................... 31

# TABLE OF AUTHORITIES

## CASES

*Awad v. Ziriax*, 670 F.3d 1111 (10th Cir. 2012) .......................................................... 29

*BST Holdings, LLC v. OSHA*, No. 21-60845, 2021 WL 5279381 (5th Cir. Nov. 12, 2021)... 1, 18, 19, 20, 21, 22, 28, 29

*Burwell v. Hobby Lobby*, 573 U.S. 682 (2014) .............................................. 16, 17, 18

*Byrum v. Landreth*, 566 F.3d 442 (5th Cir. 2009) ...................................................... 15

*Church of the Lukumi Babalu Aye, Inc., v. City of Hialeah*, 508 U.S. 520 (1993) .......... 21, 25, 26

*Continental Training Servs., Inc. v. Cavazos*, 709 F. Supp. 1443 (S.D. Ind. 1989) ................... 22

*Does 1–3 v. Mills*, No. 21A90, 2021 WL 5027177 (U.S. Oct. 29, 2021) ................ 17, 19, 22, 25

*Elrod v. Burns*, 427 U.S. 347 (1976) ...................................................................... 27, 28

*Employment Div., Dep't of Human Resources of Ore. v. Smith*, 494 U.S. 872 (1990) ............... 23

*Espinoza v. Montana Dep't of Revenue*, 140 S. Ct. 2246 (2020) .................................... 26

*Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021) ........................................ 23, 25

*Gonzalez v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006) ................. 17

*Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136 (1987) ............................... 16

*Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114 (10th Cir. 2013) ....................... 28

*Holt v. Hobbs*, 574 U.S. 352 (2015) ....................................................................... 16

*Jackson Women's Health Org. v. Currier*, 760 F.3d 448 (5th Cir. 2014) .................................. 29

*Nken v. Holder*, 556 U.S. 418 (2009) ...................................................................... 29

*Opulent Life Church v. City of Holly Springs*, 697 F.3d 279 (5th Cir. 2012) ........................... 28

*Roberts v. Neace*, 958 F.3d 409 (6th Cir. 2020) ...................................................... 25

*Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020) ............................... 17, 26

*Sherbert v. Verner*, 374 U.S. 398 (1963) ................................................................ 16

*Tandon v. Newsom*, 141 S. Ct. 1294 (2021) ...................................... 23, 24, 25, 27

*Tanzin v. Tanvir*, 141 S. Ct. 486 (2020) ................................................................ 16

*Thomas v. Review Bd. of Indiana Employment Security Div.*, 450 U.S. 707 (1981) ................... 16

*Thoms v. Maricopa Cty. Cmty. Coll. Dist.*, No. 2:21-CV-01781-SPL, 2021 WL 5162538 (D. Ariz. Nov. 5, 2021) ......................................................... 20, 23, 24, 25

*Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012 (2017) ........................ 26

## STATUTES

Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb *et seq.* .................................. 15, 16, 17

## OTHER AUTHORITIES

Aff. of LTC Long, M.D., *Robert v. Austin,* No. 1:21-cv-02228 (D. Colo., filed Aug. 17, 2021) .................................................................................................................................. 7

Centers for Disease Control & Prevention, "Possibility of COVID-19 Illness after Vaccination" (updated Nov. 9, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/why-measure-effectiveness/breakthrough-cases.html ............... 22

Centers for Disease Control, "Understanding mRNA COVID-19 Vaccines," http://www.cdc.gov/coronavirus/2019-ncov/ vaccines/different-vaccines/mrna.html (Mar. 4, 2021) ................................................................................................................... 5

Kristina Wong, "Exclusive: Marine Corps Commanders Using Form Letter to Deny Religious Exemptions," *Breitbart* (Nov. 2, 2021), https://www.breitbart.com/politics/2021/11/02/marine-corps-commanders-form-letter-religious-exemptions/ ................................................................................................. 14

Manual of the Medical Department, U.S. Navy, Article 15-105 Special Operations Duty.......... 29

Megan Eckstein, "US Navy nears 100 percent vaccination for sailors, but unable to measure civilian compliance," *Navy Times* (Nov. 4, 2021), https://www.navytimes.com/naval/2021/11/04/us-navy-nears-100-percent-vaccination-for-sailors-but-unable-to-measure-civilian-compliance/ ............................................. 11, 21, 22

Meghann Meyers and Howard Altman, *Military Times*, Oct. 21, 2021, https://www.militarytimes.com/news/your-military/2021/07/29/biden-orders-pentagon-to-consider-mandatory-covid-19-vaccination/ .............................................................. 8

Patricia Kime, *DoD Confirms: Rare Heart Inflammation Cases Linked to COVID-19 Vaccines*, Military.com (June 30, 2021), https://www.military.com/daily-news/2021/06/30/dod-confirms-rare-heart-inflammation-caseslinked-covid-19-vaccines.html ...................................................................................................................... 6

Secretary of Defense, Memorandum, "Mandatory Coronavirus Disease 2019 Vaccination of Department of Defense Service Members" (Aug. 24, 2021), https://media.defense.gov /2021/Aug/25/2002838826/-1/-1/0/MEMORANDUM-FOR-MANDATORY-CORONAVIRUS-DISEASE-2019-VACCINATION-OF-DEPARTMENT-OF-DEFENSE-SERVICE-MEMBERS.PDF................................................................... 8

The White House, "FACT SHEET: President Biden to Announce New Actions to Get More Americans Vaccinated and Slow the Spread of the Delta Variant" (July 29, 2021), https://www.whitehouse.gov/briefing-room/statements-releases/2021/07/29/fact-sheet-president-biden-to-announce-new-actions-to-get-more-americans-vaccinated-and-slow-the-spread-of-the-delta-variant/ ............................................. 8

U.S. Dep't of Justice, Office of Legal Counsel, "Whether Section 564 of the Food, Drug, and Cosmetic Act Prohibits Entities from Requiring the Use of a Vaccine Subject to an Emergency Use Authorization," July 6, 2021 (slip opinion), https://www.justice.gov/olc/file/1415446/download............................................................. 25

U.S. Food & Drug Admin., "Emergency Use Authorization (EUA) for an Unapproved
    Product: Review Memorandum" (Dec. 11, 2020), https://www.fda.gov/media/
    144416/download (EUA for Pfizer vaccine) ............................................................ 24

U.S. Food & Drug Admin., "Emergency Use Authorization (EUA) for an Unapproved
    Product: Review Memorandum" (Dec. 18, 2020),
    https://www.fda.gov/media/144673/download (EUA for Moderna vaccine) ......................... 24

U.S. Food & Drug Admin., "Emergency Use Authorization (EUA) for an Unapproved
    Product: Review Memorandum" (Feb. 27, 2021),
    https://www.fda.gov/media/146338/download (EUA for Johnson & Johnson vaccine).......... 24

**REGULATIONS**

ALNAV 062/21, "Department of Navy Mandatory COVID-19 Vaccination Policy,"
    https://www.mynavyhr.navy.mil/Portals/55/Messages/ALNAV/ALN2021/ALN21062.
    txt ................................................................................................................................ 9, 33

COMNAVSPECWARCOMINST 1221.1A at ¶ 3d (Oct. 15, 2018)....................................... 16, 33

Department of Defense Instruction 1300.17, "Religious Liberty in the Military Services"
    (Sept. 1, 2020)............................................................................................................ 13

FRAGO 33 to USSCOCOM OPORD for Novel Corona Virus 2019 nCov (COVID-19)........... 16

NAVADMIN 190/21, "Navy Mandatory COVID-19 Vaccination and Reporting Policy,"
    https://www.mynavyhr.navy.mil/Portals/55/Messages/NAVADMIN/NAV2021/NAV2
    1190.txt. ........................................................................................................................ 9

NAVADMIN 225/21, "COVID-19 Consolidated Disposition Authority,"
    https://www.mynavyhr.navy.mil/Portals/55/Messages/NAVADMIN/NAV2021/NAV2
    1225.txt (Oct. 13, 2021)................................................................ 10, 11, 12, 17, 33

NAVADMIN 256/21, "CCDA Guidance to Commanders,"
    https://www.mynavyhr.navy.mil/Portals/55/Messages/NAVADMIN/NAV2021/NAV2
    1256.txt (Nov. 15, 2021)............................................................................................ 12, 13

Navy Bureau of Medicine Instruction (BUMEDINST) 6230.15B, "Immunizations and
    Chemoprophylaxis for the Prevention of Infectious Diseases," (Oct. 7, 2013)................... 7, 26

Navy Bureau of Personnel Instruction 1730.11A, "Standards and Procedures Governing
    the Accommodation of Religious Practices" (Mar. 16, 2020).................................. 13

Navy Personnel Manual 1730-020, Immunization Exemptions for Religious Beliefs"
    (Aug. 15, 2020)............................................................................................................ 13

Secretary of the Navy Instruction 1730.8B, "Accommodation of Religious Practices (Oct.
    2, 2008) ........................................................................................................................ 13

Trident Order #12, "Mandatory Vaccination for COVID-19" (Sept. 24, 2021)............... 10, 16, 29

## INTRODUCTION

Plaintiffs—26 U.S. Navy SEALs, five Special Warfare Combatant Craft Crewmen, three Navy Divers, and one Explosive Ordnance Disposal Technician ("the SEALs")—are among our Nation's most elite military service members. They have sacrificed selflessly and endured incredible risk and hardship for the sake of our country and our freedom. For them, the oath to "support and defend the Constitution of the United States" is not an abstraction. It is a daily vocation, one that already has cost them much, and that they willingly accept could one day cost them everything.

Unfortunately, the SEALs are now being denied the very liberty they pledged to protect. Each has a sincere religious objection to receiving a COVID-19 vaccination. Each are willing to adopt any number of other measures to protect themselves and others from the spread of COVID-19. Indeed, Defendants successfully employed such alternative measures for the past eleven months, during which time vaccines have been widely available. But now, despite 99.4% of Navy active service members already being vaccinated, Defendants have nonetheless ordered Plaintiffs to forfeit their religious beliefs, get the "jab," or forfeit their "job." *BST Holdings, LLC v. OSHA*, No. 21-60845, 17 F.4th 604, 2021 WL 5279381, at *8 (5th Cir. Nov. 12, 2021). And not just any job: in the SEALs' case, that means losing the honor of serving their country, the career they have built (and the attendant health care and educational benefits for themselves and their family), and incurring potentially massive debt in recouped bonuses, payments, and training expenses totaling over $1 million per service member.

It is regrettable that litigation against the military they serve loyally is necessary to protect the SEALs' religious liberty. While the Navy's policies generally recognize its obligation to individually assess Plaintiffs' accommodation requests and its duty to offer a compelling

1

justification for any substantial burden on their religious exercise, the Navy's stated commitment to religious freedom—at least with respect to vaccine accommodations—is mere lip service. Simply because Plaintiffs *requested* a religious accommodation, Defendants declared Plaintiffs non-deployable, removed bonuses and special and incentive pays, and froze their promotions and travel, even their family's travel. These interim adverse actions foreshadow the predetermined outcome of Plaintiffs' requests. In fact, the Navy publicly admitted that it has granted *zero* religious accommodations to the vaccine mandate. And the Navy's policies facially discriminate against religious accommodations for service members on special operations duty, like the SEALs.

Given that requesting a religious accommodation from the Navy is apparently an exercise in futility, none of the SEALs' requests have been approved. Several already have been denied. Others have been informed that, consistent with the Navy's public admission, denial is inevitable. And as already stated, Plaintiffs have already suffered adverse actions merely because they *sought* a religious accommodation. Meanwhile, Defendants undermined their stated justifications for the vaccine mandate by broadly exempting all service members who are participating in vaccine trials—regardless of whether they have any kind of immunity from COVID-19—and by granting medical and administrative exemptions, while denying religious exemptions across the board. Defendants' discriminatory policies and actions plainly violate the Religious Freedom Restoration Act of 1993 ("RFRA"). Defendants' policies and actions also violate the First Amendment because their vaccine mandate is not neutral and generally applicable. And for the same reasons that they cannot meet RFRA's demanding strict scrutiny standard, they cannot meet the First Amendment's, either. The Court should grant Plaintiffs' request for a preliminary injunction to protect their religious liberty rights and maintain the status quo of their active service in one of the military's most elite units.

## STATEMENT OF FACTS

### I. Plaintiffs' positions and training

Plaintiffs are each assigned to Naval Special Warfare Command units. *See* Decl. of U.S. Navy SEALs ("SEALs") 1-19, 21-26, App. 870-980; Decl. of U.S. Navy Special Warfare Combatant Craft Crewman ("SWCC") 1-5, App. 981-1003; Decl. of Explosive Ordnance Disposal Technician ("EOD") 1, App. 1016-22; Decl. of U.S Navy Diver ("ND") 1-3, App. 1004-15. Plaintiffs are U.S. Navy SEALs, Navy Special Warfare Combatant Craft Crewmen, a Navy Explosive Ordnance Disposal Technician, and Navy Divers who object to receiving a COVID-19 vaccination based on their sincerely held religious beliefs. *Id.*

The Naval Special Warfare (NSW) mission is to provide maritime special operations forces to conduct full-spectrum operations, unilaterally or with partners, to support national objectives. *See* Compl. at ¶¶ 50–54. The SEALs are the Navy's premier special operations force and are considered one of the most elite military forces in the world. *Id.* SEALs conduct special operation missions by sea, air, and land, typically aimed at eliminating high-level enemy targets, anti-guerrilla warfare, or intelligence-gathering behind enemy lines.[1] *Id.* Special Boat Teams are manned by Special Warfare Combatant Craft Crewmen who operate and maintain state-of-the-art surface craft to conduct coastal patrol and interdiction and support special operations missions. *Id.* Navy Divers are the world's foremost experts in undersea operations including underwater salvage and repair, maintenance, and unique construction projects. *Id.* Navy Explosive Ordnance Disposal

---

[1] Plaintiffs' identities cannot be disclosed without compromising their personal security and the Navy's operational security. Therefore, Plaintiffs will file a motion for protective order and for authorization to proceed under pseudonyms. For at least one plaintiff, a substantial part of the events or omissions giving rise to the claims occurred in this Court's District and Division. SEAL 1 Decl. ¶ 3, App. 871.

Technicians are members of the Naval Special Operations community with specialized training to handle chemical, biological, and nuclear weapons. *Id.* They have special expertise in securely disposing of both conventional and unconventional explosive weaponry on land and under water. *Id.*

Plaintiffs have spent years in training, at tremendous personal cost and sacrifice, to attain the status they have achieved and to serve their country as part of its most elite forces. *See* Decl. of SEALs 1-19, 21-26, App. 870-980; Decl. of SWCC 1-5, App. 981-1003; Decl. of EOD 1, App. 1016-22; Decl. of ND 1-3, App. 1004-15. Collectively, Plaintiffs have more than 350 years of military service and more than 100 combat deployments to their credit. Many Plaintiffs hold highly specialized qualifications that enable them to perform their special operations missions. Because of their extensive training, the cost of training Plaintiffs may exceed $1 million for *each* servicemember. *Id.*

**II. The SEALs' sincerely held religious beliefs regarding COVID-19 vaccination**

The SEALs' sincerely held religious beliefs forbid each of them from receiving the COVID-19 vaccine for a variety of reasons rooted in their Christian faith. *Id.* Multiple plaintiffs hold to the sincere religious belief that all life is sacred, from conception to natural death, and that abortion is the impermissible taking of an innocent life in the womb. Decl. of SEALs 1–3, 5, 6, 8–15, 17-19, 21-24, 26, App. 871-84, 890-97, 903-37, 944-72, 978-80; Decl. of SWCC 1–4, App. 981-1003; Decl. of EOD 1, App. 1016-22; Decl. of ND 2, App. 1009-11. They are unable to receive the COVID-19 vaccine due to what they understand is the use of aborted fetal cell lines in its testing, development, or production. *Id.* Plaintiffs believe that receiving the COVID-19 vaccine would be participating in the abortion enterprise. *Id.* Most of them did not learn of the vaccine's connection to aborted fetal cell lines until it became a prominent point of public discourse over the

COVID-19 vaccine, but they object to being complicit in the moral evil of abortion based on their sincerely held beliefs. *Id.* This objection has caused several plaintiffs to forgo the use of other products that use aborted fetal cell lines in their testing, development, or production. *Id.*

Multiple Plaintiffs believe that the human body is God's temple, and that they must not take anything into their bodies that God has forbidden or that would alter the functions of their body. Decl. of SEAL 5, 9–11, 13–15, 18, 22, 25, 26, App. 890-93, 909-20, 926-37, 948-51, 961-64, 974-80; Decl. of SWCC 1, 5, App. 982-85, 1000-03; Decl. of EOD 1, App. 1016-22; Decl. of ND 1, 3, App. 1004-07, 1013-15. In accordance with this religious belief, multiple plaintiffs carefully monitor what they take into their bodies, and they believe they are compelled to avoid anything that adversely alters, or may modify, their bodies' natural functions in a manner they believe is not designed by God. *Id.* It is well documented that the COVID-19 vaccine uses mRNA technology, which causes cells to produce a spike protein that they would not normally produce. *See* App. 690-96, Ctrs. for Disease Control & Prevention, "Understanding mRNA COVID-19 Vaccines," http://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/mrna.html (Mar. 4, 2021). It is also well documented that the COVID-19 vaccine has resulted in a statistically significant number of serious adverse reactions, including myocarditis, a potentially fatal inflammation of the heart muscles, and pericarditis, a potentially fatal inflammation of the heart tissue, especially in men. *See* App. 697-700, Patricia Kime, *DoD Confirms: Rare Heart Inflammation Cases Linked to COVID-19 Vaccines*, Military.com (June 30, 2021), https://www.military.com/daily-news/2021/06/30/dod-confirms-rare-heart-inflammation-caseslinked-covid-19-vaccines.html. One plaintiff experienced negative side effects from a previous vaccination, came to regret the vaccination, and came to see it as a defilement of his body. Decl. of SEAL 14, App. 932. Through prayer and reflection, this plaintiff has determined that

receiving a COVID-19 vaccine similarly would defile his body. *Id.* In addition, multiple plaintiffs believe that, upon seeking guidance from God as to whether to receive a COVID-19 vaccine, God instructed them not to do so. Decl. of SEAL 7 and 19, App. 899-900, 954. And two Plaintiffs believe that trace animal cells in the COVID-19 vaccines, such as from swine, should not be injected into their bodies. Decl. of SEAL 13, App. 927; Decl. of EOD 1, App. 1018.

### III. Alternatives to COVID-19 vaccination

Plaintiffs view life—whether their own, the lives of their fellow service members, or the lives of those they serve—as sacred and deserving of protection. Decl. of SEAL 1-19, 21-26, App. 870-980; Decl. of SWCC 1–5, App. 981-1003; Decl. of ND 1–3, App. 1004-15; Decl. of EOD 1, App. 1016-22. Therefore, Plaintiffs do not object to safety measures like mask-wearing, physical distancing, sick leave, and teleworking. Indeed, Defendants employed such measures during the prior eleven months, when COVID-19 vaccines have been widely available. *Id.*

Moreover, a significant number of Plaintiffs have contracted and recovered from COVID-19 and have positive antibodies tests demonstrating they acquired natural immunity, while others have contracted and recovered from COVID-19, but have not yet taken antibody tests. Decl. of SEAL 2, 3, 8, 10, 12–14, 16–19, 22, 23, 26, App. 878, 883, 905, 914, 923, 927, 932, 941, 945, 949, 954, 962, 967, 979; Decl. of SWCC 1, 2, 4, 5, App. 984, 988, 997, 1001. In a sworn affidavit, whistleblower U.S. Army Lieutenant Colonel Theresa Long, M.D., M.P.H., F.S., stated "[n]one of the ordered Emergency Use COVID-19 vaccines can or will provide better immunity than an infection-recovered person." App. 91-102, Aff. of LTC Theresa Long, M.D., at ¶ 39, *Robert v. Austin,* No. 1:21-cv-02228 (D. Colo., filed Aug. 17, 2021).

For other vaccines, the Navy explicitly recognizes natural immunity as a fully adequate substitute for vaccination. *See* App. 103-44, Navy Bureau of Medicine Instruction (BUMEDINST)

6230.15B, "Immunizations and Chemoprophylaxis for the Prevention of Infectious Diseases," (Oct. 7, 2013).

## IV. Defendants' vaccination policies

Defendants have mandated that Plaintiffs be vaccinated against COVID-19; have taken interim adverse actions against Plaintiffs while their religious accommodation requests remain pending; have threatened to end Plaintiffs' military careers and strip them of associated benefits; and have threatened to force Plaintiffs to pay back enormous sums potentially exceeding $1 million per service member upon the forthcoming denial of their requests. *See* Decl. of SEALs 1-19, 21-26, App. 870-980; Decl. of SWCC 1-5, App. 981-1003; Decl. of EOD 1, App. 1016-22; Decl. of ND 1-3, App. 1004-15. Plaintiffs have been placed in a "Catch-22;" even if their religious accommodation requests are approved, Navy policy dictates that Plaintiffs will become disqualified from special-operations status. *Id.*

On July 29, 2021, the President announced that he directed the Department of Defense ("DoD") to add the COVID-19 vaccine to its list of required immunizations for military service members.[2] Less than a month later, on August 24, Secretary of Defense Lloyd J. Austin issued a memorandum directing DoD to vaccinate all active-duty and reserve service members against COVID-19.[3] The memo made clear that service members who have contracted and recovered from

---

[2] App. 269-72, The White House, "FACT SHEET: President Biden to Announce New Actions to Get More Americans Vaccinated and Slow the Spread of the Delta Variant" (July 29, 2021), https://www.whitehouse.gov/briefing-room/statements-releases/2021/07/29/fact-sheet-president-biden-to-announce-new-actions-to-get-more-americans-vaccinated-and-slow-the-spread-of-the-delta-variant/ ("Today, the President will announce that he is directing the Department of Defense to look into how and when they will add COVID-19 vaccination to the list of required vaccinations for members of the military."); App. 273-81, Meghann Meyers and Howard Altman, *Military Times*, Oct. 21, 2021, https://www.militarytimes.com/news/your-military/2021/07/29/biden-orders-pentagon-to-consider-mandatory-covid-19-vaccination/.

[3] App. 145-47, Secretary of Defense, Memorandum, "Mandatory Coronavirus Disease 2019 Vaccination of Department of Defense Service Members" (Aug. 24, 2021), https://media.defense.gov

COVID-19 must still receive a vaccination. App. 146. But the memo also exempted from the mandate all service members who are currently participating in a COVID-19 clinical trial—even those given a placebo. *Id*. And the memo specified that the mandate "will be subject to any identified contraindications and any administrative or other exemptions established in Military Department policy." *Id*.

Six days later, on August 30, Secretary of the Navy Carlos del Toro issued All Navy (ALNAV) message 062/21, entitled "Department of Navy Mandatory COVID-19 Vaccination Policy." App. 148-50. This document imposed a vaccination mandate for Navy active-duty and reserve personnel, directing them to become vaccinated within 90 and 120 days, respectively. It reiterated the exemption for "[s]ervice [m]embers who are actively participating in COVID-19 clinical trials[.]" App. 150.

The next day, the Deputy Chief of Naval Operations for Operations, Plans, and Strategy issued Navy Administrative Message ("NAVADMIN") 190/21, "Navy Mandatory COVID-19 Vaccination and Reporting Policy," to implement the Navy vaccine mandate. App. 151-56. Consistent with the DoD vaccine mandate, this NAVADMIN specified that "[a] history of COVID-19 disease and/or positive serology does not exempt a Navy service member from receiving a COVID-19 vaccine." App. 154 at ¶ 3.d.(1). NAVADMIN 190/21 did provide that vaccination of service members would be subject to medical and administrative exemptions, including religious accommodations. As to the former, it acknowledged that some service members "previously received a medical exemption from COVID-19 vaccine while the vaccines

---

/2021/Aug/25/2002838826/-1/-1/0/MEMORANDUM-FOR-MANDATORY-CORONAVIRUS-
DISEASE-2019-VACCINATION-OF-DEPARTMENT-OF-DEFENSE-SERVICE-MEMBERS.PDF

were authorized under an [Emergency Use Authorization]," and it provided that these exemptions "will be reevaluated[.]" *Id.*

For service members on special-operations duty, like Plaintiffs, the Navy's policies facially discriminate against religious exemptions, treating them differently than secular exemptions. The Manual of the Medical Department of the U.S. Navy (MANMED), Article 15-105(n)(9), states:

> Vaccinations. Candidate or SO designated personnel refusing to receive recommended vaccines (preventive health or theatre specific vaccines recommended by the Combatant Command (COCOM)) based solely on personal or religious beliefs are disqualified. This provision does not pertain to medical contraindications or allergies to vaccine administration.

App. 838. On September 24, 2021, the Navy issued "Trident Order #12 – Mandatory Vaccination for COVID-19." App. 157-59. The document specified that "Special Operations Designated Personnel (SEAL and SWCC) refusing to receive recommended vaccines based solely on personal or religious beliefs will still be medically disqualified." App. 159. In other words, Defendants declared "non-deployable" all SEALs and SWCCs who obtain—or even merely request—a religious accommodation. This disdain for religious service members sharply contrasts with the Navy's more receptive attitude toward those submitting medical exemption requests; the medical-disqualification provision expressly "does not pertain to medical contraindications or allergies to vaccine administration." *Id.* Thus, an unvaccinated SEAL who receives a medical accommodation can be deployed, but a SEAL who merely *asks* for a religious accommodation is non-deployable.

On October 13, the Chief of Naval Operations issued NAVADMIN 225/21, which threatened religious objectors not only with the loss of their careers, but also with potentially crippling debt. App. 160-65, NAVADMIN 225/21, "COVID-19 Consolidated Disposition Authority," https://www.mynavyhr.navy.mil/Portals/55/Messages/NAVADMIN/NAV2021/ NAV21225.txt (Oct. 13, 2021). It states that, "[t]o date, over 98 percent of active duty U.S. Navy service members have met their readiness responsibility by completing or initiating a COVID-19

vaccination series." App. 161 at ¶ 2.b. (Secretary Del Toro would later note the vaccination rate among active-duty Navy members rose to 99.4%. *See* App. 282-88, Megan Eckstein, "US Navy nears 100 percent vaccination for sailors, but unable to measure civilian compliance," *Navy Times* (Nov. 4, 2021), https://www.navytimes.com/naval/2021/11/04/us-navy-nears-100-percent-vaccination-for-sailors-but-unable-to-measure-civilian-compliance/). NAVADMIN 225/21 further stated that "Navy service members refusing the COVID-19 vaccination, absent a pending or approved exemption, shall be processed for administrative separation" by the COVID Consolidated Disposition Authority (CCDA). App. 161 at ¶ 2.a; *see also* App. 164-65 at ¶ 7. It also provided that "[t]he CCDA may seek recoupment of applicable bonuses, special and incentive pays, and the cost of training and education for service members refusing the vaccine." App. 162 at ¶ 5.b. On its face, this recoupment provision is not forward-looking. Instead, it reaches past training costs, bonuses, and payments, even for duties already fulfilled. For the SEALs, this means that the Navy is threatening to force each of them to pay back over $1 million. *See* Decl. of SEALs 1-26, App. 870-980; Decl. of SWCC 1-5, App. 981-1003; Decl. of EOD 1, App. 1016-22; Decl. of ND 1-3, App. 1004-15.

In addition, NAVADMIN 225/21 authorizes temporary reassignment of "Navy service members who refuse the COVID-19 vaccine, regardless of exemption status, based on operational readiness or mission requirements." App. 163-64 at ¶ 6.c. It also mandates that "[c]ommands shall not allow those refusing the vaccine to promote/advance, reenlist, or execute orders, with the exception of separation orders, until the CCDA has completed disposition of their case." App. 164 at ¶ 6.d. And it directs that "commanders and commanding officers shall delay the promotion of any officer refusing the vaccine." *Id*. at ¶ 7.c.

Following Plaintiffs' filing of the Complaint in this case, Defendants issued NAVADMIN 256/21, "CCDA Guidance to Commanders," dated November 15, 2021. App. NAVADMIN 256/21 states that "Navy service members whose Covid-19 vaccination exemption request is denied are required to receive the COVID-19 vaccine as directed by the exemption adjudicating authority or commence vaccination within 5 days of being notified of the denial, if the exemption adjudicating authority does not specify." NAVADMIN 256/21, "CCDA Guidance to Commanders," https://www.mynavyhr.navy.mil/Portals/55/Messages/NAVADMIN/NAV2021/ NAV21256.txt (Nov. 15, 2021). NAVADMIN 256/21 also states that Navy service members who continue to refuse vaccination after the expiration of the five days "will be processed for separation and be subject to the other administrative actions described in this NAVADMIN and [NAVADMIN 225/21]." *Id.*

In addition to immediate processing for separation, the "other administrative actions described in this NAVADMIN" include adverse performance evaluations; denial of promotion or advancement; and, subject to the discretion of the Department of Veterans Affairs ("VA"), the loss of eligibility for some VA benefits such as the GI Bill, including the transfer of GI Bill benefits to dependents. *Id.*

**V. Defendants' discriminatory actions**

Consistent with their obligations under the Religious Freedom Restoration Act of 1993 and the First Amendment, Defendants' policies and regulations—at least on their face—generally require individualized assessment of religious accommodation requests, and the regulations place the burden on the government to demonstrate a compelling justification for denials. *See* App. 166-85, Department of Defense Instruction (DODI) 1300.17, "Religious Liberty in the Military Services" (Sept. 1, 2020); App. 186-95, Secretary of the Navy Instruction (SECNAVINST)

11

1730.8B, "Accommodation of Religious Practices (Oct. 2, 2008); App. 196-213, Navy Bureau of Personnel Instruction (BUPERSINST) 1730.11A, "Standards and Procedures Governing the Accommodation of Religious Practices" (Mar. 16, 2020); App. 214-18, Navy Personnel Manual (MILPERSMAN) 1730-020, Immunization Exemptions for Religious Beliefs" (Aug. 15, 2020). But Defendants have made clear that, at least with respect to the vaccine mandate—and especially with respect to service members on special-operations duty, like Plaintiffs—the individualized assessments and demonstrations that their policies announce is a farce.

As explained below, Plaintiffs' mere requests were met with immediate adverse actions. The Navy has now made clear that these immediate consequences are only a foretaste of what is to come. A Navy spokesman recently admitted that "multiple religious accommodation requests related to the COVID vaccine mandate have been adjudicated and none have yet been approved." App. 294, Kristina Wong, "Exclusive: Marine Corps Commanders Using Form Letter to Deny Religious Exemptions," *Breitbart* (Nov. 2, 2021), https://www.breitbart.com/politics/ 2021/11/02/marine-corps-commanders-form-letter-religious-exemptions/. The spokesman added that "[i]n the past seven years, no religious exemption from vaccination waivers were approved for any other vaccine." App. 295. This disdain for religious accommodations contrasts with Defendants' grant of certain non-religious exemptions. The spokesman admitted that the Navy has granted "five permanent medical exemptions." *Id.* And, as set forth above, Defendants' policies themselves exempt—wholesale—all personnel who are participating in a COVID-19 vaccine trial, regardless of whether their participation resulted in any protection from the virus.

## VI. Plaintiffs' irreparable injury

Even if Defendants' promised religious accommodation process were not a farce with a predetermined outcome, it has provided Plaintiffs no relief. Each Plaintiff submitted a religious

accommodation request, but none have been approved. Decl. of SEALs 1-19, 21-26, App. 870-980; Decl. of SWCC 1-5, App. 981-1003; Decl. of EOD 1, App. 1016-22; Decl. of ND 1-3, App. 1004-15. Several have been denied and are on appeal; the others remain pending for initial adjudication. *Id.* At least one Plaintiff was told his religious accommodation request would not be accepted unless and until he signed an adverse counseling document that would be entered into his service record. Decl. of SEAL 3, App. 883-84. Thus far, each denial is identical in substance, demonstrating the absence of the individualized, case-by-case inquiry required. Further, there is no rationale provided in the denials to explain Defendants' purported interest or why there are no less restrictive ways to achieve that interest. *See, e.g.* Decl. of EOD 1, App. 1017-22. Several Plaintiffs with pending requests have been directly informed from someone in the chain of command that their request will be denied. Decl. SEAL 2 ¶ 11, App. 878-79. And even the mere submission of a religious accommodation request has garnered adverse actions. *See* Decl. of SEALs 1-19, 21-26, App. 870-980; Decl. of SWCC 1-5, App. 981-1003; Decl. of EOD 1, App. 1016-22; Decl. of ND 1-3, App. 1004-15. The Navy has declared each Plaintiff non-deployable due to his submission of a request, meaning the otherwise deployable Plaintiffs are ineligible for the bonuses and special and incentive pays that often accompany deployment. *Id.* Moreover, when a Naval Special Warfare member is non-deployable, he is unable to perform many of his specialized duties. *Id*. Some Plaintiffs have already been told that requesting a religious accommodation will result in their removal from the Naval Special Warfare community. Dec. of SEALs 2-8, 10-14, 16, 17, 21-27, App. 876-907, 913-33, 939-46, 957-80, Decl. of SWCC 1-5, App. 981-1003; Decl. of EOD 1, App. 1016-22; Decl. of ND 1, 3, App. 1005-07, 1013-15. At least one Plaintiff was threatened with removal of his Naval Enlistment Classification (NEC) device pin—for SEALs, the NEC is the famed "Trident." Decl. SEAL 2 ¶ 11, App. 878. And according

to Navy policy, "[o]nce a NEC has been revoked, the Sailor may not reapply for that SEAL/SWCC NEC." App. 221, COMNAVSPECWARCOMINST 1221.1A, "Enlisted Special Warfare Operator/Special Warfare Boat Operator Navy Enlisted Classification Review Guidance," at ¶ 3d (Oct. 15, 2018). Thus, once a SEAL's Trident has been revoked, he cannot get it back.

Beyond being declared non-deployable and the loss of their NEC device pins, several Plaintiffs have and continue suffer additional adverse actions, such as withheld promotions and travel. *See* Decl. of SEALs 2, 5, 8, 13, 15, 17, 19, 22, 26, App. 876-80, 890-93, 903-07, 926-29, 935-37, 944-46, 953-55, 961-64, 978-80; Decl. of SWCC 1, 5, App. 982-85, 1000-03; Decl. of ND 1, App. 1005-07.  According to Defendants' policy, "[i]ndividuals not fully vaccinated, or who decline to provide information about their vaccination status, are limited to mission-critical travel, both domestic and international." App. 236, Fragmentary Order 33 to U.S. Special Operations Command Operations Order for Novel Corona Virus 2019 nCov (COVID-19), ¶24C.1. The policy goes on to state the travel ban "applies to official and unofficial travel and pre-post-travel for service members, *DOD family members*, DOD civilian employees, and DOD contractor personnel." *Id.* at ¶24B.1.A (emphasis added). Thus, Defendants not only purport to prohibit Plaintiffs, but also their dependents and family members—who are not subject to DOD authority—from even unofficial travel.

Finally, even putting aside the immediate adverse actions and the predetermined outcome of Plaintiffs' requests, the "accommodation" that Defendants announced is no accommodation at all. Under Trident Order #12, while those exempted from the mandate for secular reasons may continue serving in their present roles, those exempted for religious reasons would be permanently barred from deployment. App. 159; *see also* App. 838. And a bar to deployment necessarily bars the bonuses and special and incentive pays that accompany it. App. 162 at ¶ 5.b. For the Plaintiffs

14

who are otherwise deployable, this represents a fundamental change not only in their salary, but for their entire military careers. For members of special operations teams like Plaintiffs, service without any prospect of deployment is not an accommodation—it's a crippling blow to the career they've tirelessly worked to build.

## LEGAL STANDARD

The movant seeking a preliminary injunction must establish: "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009). Plaintiffs satisfy each of these factors.

## ARGUMENT

I.   **Plaintiffs Are Likely to Succeed on Their Claim that Denial of Their Religious Accommodation Requests Violates RFRA and the First Amendment.**

A.   **Absent religious accommodations, the vaccine mandate substantially burdens Plaintiffs' religious exercise without satisfying RFRA's demanding compelling-interest standard.**

No Plaintiff has received an exemption or accommodation from the vaccine mandate, and Defendants have made clear that none is forthcoming. Indeed, Plaintiffs have suffered adverse actions simply for submitting their accommodation requests, and they have been informed that holding to their religious convictions will cost them their careers and incur potentially crippling debt in the form of recouped payments and training expenses. Moreover, the specious "accommodation" that Defendants announce—permanent non-deployability—is no accommodation at all. The vaccine mandate and lack of accommodation, the threat to Plaintiffs' jobs and finances, and the immediate adverse actions all constitute ongoing violations of RFRA, 42 U.S.C. § 2000bb-1.

1.      **Defendants' COVID-19 vaccine mandate substantially burdens Plaintiffs' sincerely held religious beliefs.**

As described above, each Plaintiff sincerely believes that it would be a sin or otherwise would violate his religious convictions for him to receive a COVID-19 vaccine. Defendants may not question the reasonableness of these religious beliefs. Nor may they question Plaintiffs' convictions regarding how their beliefs apply to vaccination. *Burwell v. Hobby Lobby*, 573 U.S. 682, 724–25 (2014); *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 715 (1981). Defendants' vaccine mandate thus offers Plaintiffs a "choice" that is not really a choice: violate your religious beliefs or forfeit the honor of serving your country, suffer the stigma of involuntary separation, lose your livelihood, and potentially incur massive debt. This plainly constitutes a substantial burden on the exercise of religion.

The government substantially burdens the exercise of religion when it forces a choice "between following the precepts of [one's] religion and forfeiting benefits," as well as when it forces a choice between "abandoning one of the precepts of [one]s religion in order to accept work." *Sherbert v. Verner*, 374 U.S. 398, 404 (1963); *see Tanzin v. Tanvir*, 141 S. Ct. 486, 489 (2020) ("RFRA sought to . . . restore the pre-*Smith* 'compelling interest test' by 'provid[ing] a claim . . . to persons whose religious exercise is substantially burdened by government.'"); *see also Holt v. Hobbs*, 574 U.S. 352, 361 (2015) (Choice between engaging in conduct that violates religious beliefs or facing discipline "easily satisfied" substantial burden test). More broadly formulated, it imposes a substantial burden whenever it "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs[.]" *Thomas*, 450 U.S. at 718; *accord Hobbie v. Unemp't Appeals Comm'n of Fla.*, 480 U.S. 136, 141 (1987). The threatened loss of a job—not to mention the threatened recoupment of potentially more than $1 million in training expenses, as well as the immediate promotion and travel freezes—clearly fits this rubric.

16

    **2.**    **Defendants cannot demonstrate a compelling interest that justifies burdening Plaintiffs' religious beliefs and practices, or that the mandate is the least restrictive means of achieving their purported interest.**

Because Defendants have substantially burdened, and continue to substantially burden, Plaintiffs' religious exercise, they must "demonstrate[ ] that application of the burden to the [Plaintiffs]—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b). This provision places the burden of proof on the government. *See id.* § 2000bb-2(3). Moreover, it requires the government to demonstrate not just a generalized necessity of applying its vaccine mandate to service members, but rather it must demonstrate that imposing its mandate *on these particular plaintiffs* is the least restrictive means to further a compelling governmental interest. 42 U.S.C. § 2000bb-1(b) ("Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden *to the person*—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." (emphasis added)); *see Hobby Lobby*, 573 U.S. at 726–27; *Gonzalez v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 431 (2006). Defendants cannot make this high showing.

    **a.** While "[s]temming the spread of COVID-19" is a compelling interest, *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (per curiam), "this interest cannot qualify as such forever." *Does 1–3 v. Mills*, No. 21A90, 2021 WL 5027177, at *4 (U.S. Oct. 29, 2021) (Gorsuch, J., dissenting from denial of application for injunctive relief). We are now almost two years into the COVID-19 pandemic, and vaccines have been available for 11 months. But there is no "purported emergency [when] the entire globe has now endured [the pandemic] for nearly two

years, and which [DoD] itself spent nearly [eleven] months responding to. . . ." *BST Holdings*, 2021 WL 5279381, at *3.

Defendants must also show not only that there is a compelling interest but that the compelling interest is applicable *to the person.* 42 U.S.C. § 2000bb-1(b). That is, a general interest in the abstract is not compelling. *See Hobby Lobby,* 573 U.S. at 726 ("RFRA, however, contemplates a more focused inquiry: It requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law "to the person"—the particular claimant whose sincere exercise of religion is being substantially burdened. This requires us to look beyond broadly formulated interests and to scrutinize the asserted harm of granting specific exemptions to particular religious claimants—in other words, to look to the marginal interest in enforcing the [religious burden] in these cases." (internal cites and quotation marks omitted)). Defendants have made no attempt to assert a compelling interest in any marginal interest in requiring each individual Plaintiff here to receive a vaccination.

For the past eleven months, multiple COVID-19 vaccines have been widely available, and the number of available treatments continues to grow. Indeed, Secretary Del Toro himself has acknowledged that 99.4% of the Navy's active-duty members have been vaccinated. App. 284. And the government has authorized various treatments for hospitalized and non-hospitalized COVID patients. App. 298-303, U.S. Dep't of Health & Human Servs., "Possible Treatment Options for COVID-19," https://combatcovid.hhs.gov/possible-treatment-options-covid-19; App. 304-08, U.S. Food & Drug Admin., "Know Your Treatment Options for COVID-19," https://www.fda.gov/consumers/consumer-updates/know-your-treatment-options-covid-19. Additional promising treatments, including treatments that, like vaccines, substantially reduce severe symptoms that may accompany COVID-19 infection, are on the way. App. 309-315, Press

Release, "Pfizer's Novel COVID-19 Oral Antiviral Treatment Candidate Reduced Risk of Hospitalization or Death by 89% in Interim Analysis of Phase 2/3 Epic-HR Study" (Nov. 5, 2021), https://www.pfizer.com/news/press-release/press-release-detail/pfizers-novel-covid-19-oral-antiviral-treatment-candidate. Furthermore, many Plaintiffs possess natural immunity, and a COVID-19 vaccination will lack even minimal—much less compelling—marginal interest. Decl. of SEAL 2, 3, 8, 10, 12–14, 16–19, 22, 23, 26, App. 878, 883, 905, 914, 923, 927, 932, 941, 945, 949, 954, 962, 967, 979; Decl. of SWCC 1, 2, 4, 5, App. 984, 988, 997, 1001.

"[C]ivil liberties face grave risks when governments proclaim indefinite states of emergency." *Does 1–3*, 2021 WL 5027177, at *3 (Gorsuch, J., dissenting from denial of application for injunctive relief); *see also BST Holdings, LLC*, 2021 WL 5279381, at *3 (stating the same with respect to the federal government's OSHA vaccine mandate). This Court should reject any governmental assertion of compelling interest that amounts to a proclaimed indefinite state of emergency.

**b.** Even if Defendants could show a compelling interest in continued efforts to reduce the spread of COVID-19 among service members, they cannot demonstrate that requiring Plaintiffs to undergo vaccination in violation of their religious beliefs is the least restrictive means to achieve it.

First, the Navy cannot show that achieving a 100% vaccinated force at the expense of the First Amendment is necessary because they have already allowed unvaccinated individuals without religious objections to continue serving. 99.4% of active-duty Naval service members are vaccinated against COVID-19. App. 284. And while Navy personnel may come into contact with members of the public who are unvaccinated, Defendants can hardly argue that a 100% vaccination rate is a magic bullet against COVID-19 infection, as vaccinated individuals can contract and

19

transmit the virus. App. 338-43, Ctrs. for Disease Control & Prevention, "Possibility of COVID-19 Illness after Vaccination" (updated Nov. 9, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/why-measure-effectiveness/breakthrough-cases.html ("People who get vaccine breakthrough infections can be contagious."). Given that fact, it strains credulity to assert that Plaintiffs' non-vaccination—or even the non-vaccination of 0.6% of all service members, for that matter—will make or break Defendants' ability to combat the virus within the Navy. *See BST Holdings*, 2021 WL 5279381, at *7 n.19 ("the [OSHA vaccine] Mandate cannot prevent vaccinated employees from spreading the virus in the workplace, or prevent unvaccinated employees from spreading the virus in between weekly tests").

Defendants know they don't need a 100% vaccination rate to protect their forces because they already granted several medical exemptions for the COVID-19 vaccination with no accompanying detriment to those service members, who remain fully deployable. And this is still true for those on special-operations duty, because the MANMED 15-105(n)(9) expressly allows for medical exemptions. *See* App. 838. Defendants also chose to categorically exempt all personnel participating in vaccine trials, regardless of whether they received the vaccine or a placebo: an entire class of service members, including some who lack any COVID-19 immunity. App. 146. This across-the-board exemption dooms any argument that Defendants have a compelling interest in forcing Plaintiffs to undergo vaccination in violation of their religious beliefs. *See Thoms v. Maricopa Cty. Cmty. Coll. Dist.*, No. 2:21-CV-01781-SPL, 2021 WL 5162538, at *7 (D. Ariz. Nov. 5, 2021) (granting preliminary injunction under state RFRA against application of public college's vaccination policy to religious students, noting that "Defendant cannot justify a policy that burdens Plaintiffs' religious beliefs by asserting an interest in stemming the spread of COVID-19 and protecting patients, while at the same time providing accommodations to similarly situated

students that undermine the very same interest"); *see also BST Holdings*, 2021 WL 5279381, at *7 ("underinclusiveness of this sort is often regarded as a telltale sign that the government's interest in enacting a liberty-restraining pronouncement is not in fact 'compelling.'" (citing *Church of the Lukumi Babalu Aye, Inc., v. City of Hialeah*, 508 U.S. 520, 542–46 (1993)).

Second, Defendants have undermined their position by their own inaction. During the past eleven months, multiple COVID-19 vaccines have been widely available under Emergency Use Authorizations. App. 344-401, U.S. Food & Drug Admin., "Emergency Use Authorization (EUA) for an Unapproved Product: Review Memorandum" (Dec. 11, 2020), https://www.fda.gov/media/144416/download (EUA for Pfizer vaccine); App. 402-63, U.S. Food & Drug Admin., "Emergency Use Authorization (EUA) for an Unapproved Product: Review Memorandum" (Dec. 18, 2020), https://www.fda.gov/media/144673/download (EUA for Moderna vaccine); App. 464-533, U.S. Food & Drug Admin., "Emergency Use Authorization (EUA) for an Unapproved Product: Review Memorandum" (Feb. 27, 2021), https://www.fda.gov/media/146338/download (EUA for Johnson & Johnson vaccine). The Department of Justice's Office of Legal Counsel concluded in a published opinion that "section 564 of the [Food, Drug, and Cosmetic Act] does not prohibit public . . . entities from imposing vaccination requirements, even when the only vaccines available are those authorized under EUAs." App. 535, U.S. Dep't of Justice, Office of Legal Counsel, "Whether Section 564 of the Food, Drug, and Cosmetic Act Prohibits Entities from Requiring the Use of a Vaccine Subject to an Emergency Use Authorization," July 6, 2021 (slip opinion), https://www.justice.gov/olc/file/1415446/download. But Defendants did not impose their vaccine mandate until now, waiting until eleven months after the availability of vaccines—a time period during which service members' immunity increased due to rising vaccination and natural immunity, and the need for additional vaccination decreased. This inaction undercuts the

assertion that an urgent and compelling government interest requires Plaintiffs to violate their sincere religious convictions. *See BST Holdings,* 2021 WL 5279381, at *3 (noting that the President's and OHSA's equivocation and delay in issuing a national vaccine mandate for some employers undercut any interest the government had in imposing the mandate); *Cont'l Training Servs., Inc. v. Cavazos*, 709 F. Supp. 1443, 1453 (S.D. Ind. 1989) (concluding that a federal department's "substantial delay of over a year" had undermined its "assertion of a compelling interest"), *aff'd in part, rev'd in part*, 893 F.2d 877 (7th Cir. 1990). In short, Defendants' imposition of their mandate on Plaintiffs "in these circumstances doesn't just fail the least restrictive means test, it borders on the irrational." *Does 1–3*, 2021 WL 5027177, at *4 (Gorsuch, J., dissenting from denial of application for injunctive relief).

    **c.** Defendants also cannot justify imposing the vaccine mandate on the Plaintiffs who have natural immunity from COVID-19. As the Fifth Circuit just recognized when adjudicating motions to stay the OSHA vaccine mandate, "[a] naturally immune unvaccinated worker is presumably at less risk than an unvaccinated worker who has never had the virus." *BST Holdings*, 2021 WL 5279381, at *6. And the Navy's own regulations recognize acquired immunity as a substitute for vaccination. Among the numerous medical exemptions previously available to service members, "evidence of immunity based on serologic tests, documented infection, or similar circumstances" provided a basis for a medical exemption. App. 115, BUMEDINST 6230.15B. Despite the BUMEDINST provision that allows for natural immunity, the Navy singled out the COVID-19 vaccine in a manner that does not allow for natural immunity. NAVADMIN 190/21 defines "fully vaccinated" such that service members are only considered fully vaccinated two weeks after receiving the second dose of FDA-approved, FDA Emergency Use Authorized, or World Health Organization Emergency Use Listed vaccines. App. 153. Thus, only for the COVID-19

vaccination has the Navy departed from its existing policy and refused to recognize natural immunity. The Navy cannot show a compelling justification for this departure from existing regulations. And given this aberration among existing policies recognizing natural immunity, the Navy cannot show that requiring even Plaintiffs with natural immunity to receive the COVID-19 vaccination in violation of their religious beliefs is the least restrictive means for achieving COVID-19 immunity among service members.

> **B.**   **The vaccine mandate is not neutral nor generally applicable, and it fails strict scrutiny under the First Amendment.**

**1.** Defendants' vaccine mandate triggers strict scrutiny under the Free Exercise Clause of the First Amendment because it is not neutral and generally applicable. "A law is not generally applicable if it 'invite[s]' the government to consider the particular reasons for a person's conduct by providing 'a mechanism for individualized exemptions.'" *Fulton v. City of Phila.*, 141 S. Ct. 1868, 1877 (2021) (quoting *Emp't Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 884 (1990)). "'[W]here the State has in place a system of individual exemptions, it may not refuse to extend that system to cases of religious hardship without compelling reason.'" *Id.* (quoting *Smith*, 494 U.S. at 884). "A law also lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Id.* In addition, "government regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable secular activity more favorably than religious exercise." *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021). Defendants' vaccine mandate fails all three of these tests for neutrality and general applicability.

First, it provides "a mechanism for individualized exemptions" that "invites the government to consider the particular reasons for a person's conduct." *Fulton*, 141 S. Ct. at 1877. It does so by inviting individual applications for exemptions. *See Thoms*, 2021 WL 5162538, at

*9 (concluding that a college's COVID-19 vaccine policy was not neutral and generally applicable, triggering strict scrutiny under the First Amendment, because "Defendant's process for reviewing religious accommodation requests appears to be the type of individualized mechanism that triggers strict scrutiny under *Fulton*").

Second, Defendants' vaccine mandate prohibits religious conduct (abstaining from a vaccine due to religious convictions) while permitting secular conduct (abstaining from a vaccine for medical reasons or for participation in a clinical trial). While no religious exemptions have been or will be granted, Defendants have granted an across-the-board exemption to vaccine trial participants and have granted at least some medical exemptions. App. 146. *See Thoms*, 2021 WL 5162538, at *9 (concluding that a college's COVID-19 vaccine policy was not neutral and generally applicable, triggering strict scrutiny under the First Amendment, because "Plaintiffs presented evidence . . . that Defendant has made at least one exception" to the policy). And Defendants cannot show that an unvaccinated religious adherent undermines their asserted interests any more than an unvaccinated trial participant or an unvaccinated service member with medical contraindications to vaccination. *See id.* at *7.

Third, Defendants' mandate treats comparable secular activity—non-receipt of the vaccine due to participation in a clinical trial or due to a medical contraindication—more favorably than non-receipt of a vaccine for religious reasons. "Comparability is concerned with the risks various activities pose, not the reasons why" people engage in those activities. *Tandon*, 141 S. Ct. at 1296. Here, the activities are precisely the same: non-vaccination. Only the reasons for the activities differ. And "[w]here the government permits other activities to proceed with precautions, it must show that the religious exercise at issue is more dangerous than those activities even when the same precautions are applied." *Id.* Because Defendants cannot do so here, "precautions that suffice

for" vaccine trial participants and those with medical exemptions "suffice for religious exercise too." *Id.* at 1297. "The [government] cannot 'assume the worst when people [exercise their religion] but assume the best when people [engage in secular activities].'" *Id.* (quoting *Roberts v. Neace*, 958 F.3d 409, 414 (6th Cir. 2020) (per curiam)).

**2.** Because Defendants' vaccine mandate is not neutral and generally applicable, it triggers strict scrutiny under the First Amendment. *See Fulton*, 141 S. Ct. at 1877; *Lukumi*, 508 U.S. at 531–32. And for all the reasons previously discussed, Defendants' imposition of their mandate on Plaintiffs does not just fail strict scrutiny, "it borders on the irrational." *Does 1–3*, 2021 WL 5027177, at *4 (Gorsuch, J., dissenting from denial of application for injunctive relief); *see Thoms*, 2021 WL 5162538, at *10 (under First Amendment, granting preliminary injunction against application of public college's vaccination policy to religious students, noting that "it is unlikely that Defendant has a compelling interest in denying Plaintiffs an exception to the Policy, particularly when it has provided exceptions to other students for non-religious reasons").

## II.     Plaintiffs Are Likely to Succeed on Their Claims Against the Permanent Medical-Disqualification Provision.

Plaintiffs are also likely to succeed in their challenge to the discriminatory and impossible-to-obtain "accommodation" that Defendants' policy announces. The policy provides that "Special Operations Designated Personnel (SEAL and SWCC) refusing to receive recommended vaccines based solely on personal or religious beliefs will still be medically disqualified," while "[t]his provision does not pertain to medical contraindications or allergies to vaccine administration." App. 159, Trident Order #12, § 6.D; *see also* App. 838, MANMED ¶ n(9). In other words, SEALs who receive an exemption due to medical contraindications or participation in a vaccine trial may continue serving in their present roles, while SEALs who receive an impossible-to-obtain religious

25

exemption may not. This permanent non-deployability will carry with it a permanent loss of bonuses and special and incentive pays.

> **A.      The medical-disqualification order requires strict scrutiny.**

The permanent medical-disqualification provision triggers strict scrutiny for two reasons. First, as with the vaccine mandate itself, *see supra* 6–11, by pressuring the SEALs to choose between serving their country on deployment and obeying God, and by threatening them with permanent pay reductions, the provision triggers strict scrutiny under RFRA. Second, by explicitly treating religious exemptions less favorably than medical ones, the provision is neither neutral nor generally applicable and therefore triggers strict scrutiny under the First Amendment's Free Exercise Clause.

"The Free Exercise Clause 'protect[s] religious observers against unequal treatment' and subjects to the strictest scrutiny laws that target the religious for 'special disabilities' based on their 'religious status.'" *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019 (2017) (quoting *Lukumi*, 508 U.S. at 533, 542). Impermissible government discrimination against religious adherents can take the form of unequal enforcement of facially neutral laws and policies. *See, e.g.*, *Lukumi*, 508 U.S. at 534 ("Official action that targets religious conduct for distinctive treatment cannot be shielded by mere compliance with the requirement of facial neutrality. The Free Exercise Clause protects against governmental hostility which is masked, as well as overt."). But it certainly exists where—as here—discrimination appears in "the plain text" of the law or policy. *Espinoza v. Mont. Dep't of Revenue*, 140 S. Ct. 2246, 2255 (2020).

This core First Amendment protection does not evaporate during a pandemic. *See, e.g.*, *Roman Catholic Diocese*, 141 S. Ct. at 67. Even during a pandemic, the government must satisfy strict scrutiny "whenever [it] treat[s] *any* comparable secular activity more favorably than religious

exercise," and "[i]t is no answer that [the government] treats some comparable secular . . . activities as poorly as or even less favorably than the religious exercise at issue." *Tandon*, 141 S. Ct. at 1296.

**B.    The medical-disqualification order is not the least restrictive means of achieving an alleged compelling interest.**

Defendants cannot meet their burden under RFRA and the First Amendment to demonstrate that the medical-disqualification provision is the least restrictive means to achieve a compelling governmental interest. If those without vaccinations because they are participating in vaccine trials or received a medical exemption can be safely deployed, there is no reason that Plaintiffs are permanently non-deployable. Defendants cannot show that non-receipt of a vaccine for religious reasons poses any more risk to their objectives than does non-receipt of a vaccine for medical reasons or participation in a trial. *See Tandon*, 141 S. Ct. at 1296, 1297 ("Comparability is concerned with the risks various activities pose . . . . Where the government permits other activities to proceed with precautions, it must show that the religious exercise at issue is more dangerous than those activities even when the same precautions are applied. Otherwise, precautions that suffice for other activities suffice for religious exercise too."). Thus, for all the reasons that application of the vaccine mandate to Plaintiffs in violation of their religious convictions cannot be justified, *see supra* 16–22, Defendants also cannot justify the deficient and discriminatory (not to mention impossible-to-obtain) "accommodation" that their policies announce.

**III.    The Remaining Preliminary Injunction Factors Favor Relief.**

**A.    Plaintiffs are suffering irreparable injury.**

Plaintiffs have demonstrated irreparable injury. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The same is true of the loss of RFRA rights. *See Opulent Life Church*

*v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012) ("[The *Elrod v. Burns*] principle applies with equal force to the violation of RLUIPA rights because RLUIPA enforces First Amendment freedoms, and the statute requires courts to construe it broadly to protect religious exercise. In the closely related RFRA context (the predecessor statute to RLUIPA), courts have recognized that this same principle applies."); *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1146 (10th Cir. 2013) ("Hobby Lobby and Mardel have established a likely violation of RFRA. We have explicitly held—by analogy to First Amendment cases—that establishing a likely RFRA violation satisfies the irreparable harm factor."). Recently, the Fifth Circuit recognized that the OSHA vaccine mandate for employers with 100 or more employees "threatens to substantially burden the liberty interests of reluctant individual recipients put to a choice between their job(s) and their jab(s)." *BST Holdings*, 2021 WL 5279381, at *8. Here, Plaintiffs not only face the loss of their jobs as SEALs, but the infringement of their religious liberty rights under RFRA and the First Amendment, which are irreparable injuries as a matter of law. *Id.* (citing *Elrod*, 427 U.S. at 373).

Even were their injuries not irreparable because of the denial of First Amendment freedoms, Plaintiffs still demonstrate irreparable injury. Notwithstanding their actual adjudication, but simply because Plaintiffs *submitted* religious accommodation requests, Defendants rendered them non-deployable and ineligible for promotions and travel. App. 159; *see also See* Decl. of SEALs 1-19, 21-26, App. 870-980; Decl. of SWCC 1-5, App. 981-1003; Decl. of EOD 1, App. 1016-22; Decl. of ND 1-3, App. 1004-15. This change in status does not merely reduce the pay for which Plaintiffs are eligible; it prevents Plaintiffs from performing their *raison d'etre*, the very roles that inspired them to become special operators and from furthering the careers they have worked so hard to build. And Plaintiffs have no recourse to reverse most, if not all, of those adverse actions. As explained above, once a special warfare member loses his NEC device pin, a Sailor

"may not reapply for that SEAL/SWCC NEC." App. 221, COMNAVSPECWARCOMINST 1221.1A,

at ¶ 3d. In addition, Defendants have threatened Plaintiffs with the dishonor of court-martial

proceedings or involuntary separation upon the eventual denial of their accommodation requests.

*See* App. 148-50, ALNAV 062/21; App. 160-65, NAVADMIN 225/21. All of these injuries—

past, ongoing, and imminent—cannot be remedied by a later-issued court order. *See BST Holdings*,

2021 WL 5279381, at *8 (discussing similar compliance and monetary injuries as sufficiently

irreparable).

> **B.      The balance of harms and the public interest in protecting civil liberties
> weigh in favor of an injunction.**

The balance of harms and public interest likewise strongly favor an injunction. "These

factors merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435

(2009). An injunction will not disserve the public interest where "it will prevent constitutional

deprivations." *Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 458 n.9 (5th Cir. 2014)

(citing *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012) ("[I]t is always in the public interest

to prevent the violation of a party's constitutional rights.")). The analysis does not change simply

because the government invokes its interest in stemming the spread of COVID-19 among service

members. As already explained, Defendants' actions do not merely fail strict scrutiny; they are

irrational. Having boasted of a vaccination rate of 99.4%, having waited eleven months to impose

their mandate, and having granted secular exemptions—including an across-the-board exemption

for vaccine trial participants, regardless of their immunity status—Defendants cannot now argue

that the public interest requires vaccination of 35 special operators in violation of their religious

convictions, the Constitution, and federal statutory law. Nor can they argue that the public interest

requires the government to compound these constitutional, statutory, and dignitary harms with

involuntary separation, court martial proceedings, loss of deployability, and the various other adverse actions that Defendants have imposed and threatened.

**CONCLUSION**

This Court should grant the motion for a preliminary injunction.

Respectfully submitted this 24th day of November, 2021.

KELLY J. SHACKELFORD
   Texas Bar No. 18070950
JEFFREY C. MATEER
   Texas Bar No. 13185320
HIRAM S. SASSER, III
   Texas Bar No. 24039157
DAVID J. HACKER
   Texas Bar No. 24103323
MICHAEL D. BERRY
   Texas Bar No. 24085835
JUSTIN BUTTERFIELD
   Texas Bar No. 24062642
ROGER BYRON
   Texas Bar No. 24062643
FIRST LIBERTY INSTITUTE
2001 W. Plano Pkwy., Ste. 1600
Plano, Texas 75075
Tel: (972) 941-4444
jmateer@firstliberty.org
hsasser@firstliberty.org
dhacker@firstliberty.org
mberry@firstliberty.org
jbutterfield@firstliberty.org
rbyron@firstliberty.org

JORDAN E. PRATT
   Florida Bar No. 100958*  **
FIRST LIBERTY INSTITUTE
227 Pennsylvania Ave., SE
Washington, DC 20003
Tel: (972) 941-4444
jpratt@firstliberty.org

*Application for admission pro hac vice
pending
** Not yet admitted to the D.C. Bar, but
admitted to practice law in Florida. Practicing
law in D.C. pursuant to D.C. Court of
Appeals Rule 49(c)(8) under the supervision
of an attorney admitted to the D.C. Bar.

/s/ Heather Gebelin Hacker
HEATHER GEBELIN HACKER
   Texas Bar No. 24103325
ANDREW B. STEPHENS
   Texas Bar No. 24079396
HACKER STEPHENS LLP
108 Wild Basin Road South, Suite 250
Austin, Texas 78746
Tel.: (512) 399-3022
heather@hackerstephens.com
andrew@hackerstephens.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on November 24, 2021, I electronically filed the foregoing document through the Court's ECF system and will serve a copy on each of the Defendants according to the Federal Rules of Civil Procedure.

/s/Heather Gebelin Hacker
HEATHER GEBELIN HACKER

32