# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

U.S. NAVY SEALs 1-26, et al.,        Case No.  **4:21-cv-01236-O**
      Plaintiffs,

v.        District Judge Reed O'Connor

JOSEPH R. BIDEN, JR., in his official
capacity, etc., et al.,
      Defendants.

## MOTION  OF  THE FOUNDATION FOR MORAL LAW, FOR LEAVE TO FILE BRIEF *AMICUS CURIAE*

In accordance with N.D.Tex. Local Rule 7.2(b), the Foundation for Moral Law ("Foundation") respectfully moves for leave to appear as *amicus curiae* for the purpose of filing the attached Brief supporting Plaintiffs.

## INTEREST OF AMICUS

As explained in the attached brief, the Foundation is a 501(c)(3) non-profit, non-partisan organization dedicated to the strict interpretation of the United States Constitution as intended by its Framers, and to the defense of religious liberty.  The Foundation's offices are located at One Dexter Avenue, Montgomery, AL 36104 (334) 262-1245.  The Foundation's Senior Counsel and primary author of this brief, John Eidsmoe (334/324-1812, eidsmoeja@juno.com), served twenty-three years as an Air Force Judge Advocate, retiring as a Lt. Colonel, and after that served as a Chaplain in the Mississippi State Guard, retiring at the rank of Colonel (MS).  The Founder of the Foundation, Judge Roy Moore, is a graduate of the United States Military Academy and a

1

Vietnam veteran.  The Foundation has provided legal assistance to many military personnel of all branches of the armed forces, active duty, reserve, and guard, who want to continue their service in the armed forces but have sincerely held religious objections to the controversial COVID-19 vaccine(s).

In the attached brief, *Amicus* brings to this Court the constitutional background of religious liberty in the armed forces, the basis for religious objections to vaccination, and the need for the United States Government to work out this conflict without destroying the careers of many outstanding military personnel and without depriving the United States of their much-needed services.

## CERTIFICATE REGARDING COUNSEL

Pursuant to N.D.Tex. Local Rules 7.1(a) and 7.1(c), *amicus* certifies that on the morning of December 15th (of A.D.2021) the undersigned attorney telephoned the U.S. Attorney's office (214-659-8600), identifying as counsel for Foundation for Moral Law, seeking to confer with defense counsel, regarding this motion (for leave to file an amicus brief), as to whether it would be opposed.  After speaking to two individuals, regarding the purpose for this call, the second received my telephone number and indicated that a response call should be expected.  Also, on the same morning a similar call was made to plaintiffs' counsel (972-941-4445), and a message seeking to confer regarding this motion was given to the telephone recorder.  As of the (afternoon) filing of this motion there has been no response to these 2 requests for teleconference regarding this motion.

JAMES J. S. JOHNSON
/s/   James J. S. Johnson
Certifying attorney

Accordingly, this *amicus* hereby respectfully requests leave of this Court to file the attached brief, by granting the proposed order (attached hereto).

Respectfully submitted this 15th day of December, A.D. 2021.

JAMES J. S. JOHNSON
/s/   James J. S. Johnson
Texas Bar # 10741520
Special Counsel
FOUNDATION FOR MORAL LAW
P.O. Box 29112, Dallas, Texas 75229
214-615-8314 telephone; 214-615-8295 FAX
Email: profjjsj@aol.com

## CERTIFICATE REGARDING SERVICE

This is to certify that on this 15th day of December, A.D.2021, this document (and its attachments) of the Foundation for Moral Law, moving for leave to file Amicus Curiae Brief, is being filed through the ECF system and thus will be sent electronically to all parties as identified in the Notice of Electronic Filing.

JAMES J. S. JOHNSON
/s/   James J. S. Johnson
Certifying attorney

3

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

U.S. NAVY SEALs 1-26;                         **Case No. 4:21-cv-01236-O**

U.S. NAVY SPECIAL WARFARE
COMBATANT CRAFT CREWMEN 1-5;

U.S. NAVY EXPLOSIVE ORDNANCE
DISPOSAL TECHNICIAN 1;

and                                           District Judge Reed O'Connor

U.S. NAVY DIVERS 1-3;

     Plaintiffs,
v.

JOSEPH R. BIDEN, JR., in his official
capacity, etc., et al.,

     Defendants.

---

**BRIEF *AMICUS CURIAE* OF THE FOUNDATION**
**FOR MORAL LAW, IN SUPPORT OF PLAINTIFFS**

———————————————————————

     In accordance with N.D.Tex. Local Rule 7.2(b), the Foundation for Moral Law

("Foundation" or "the Foundation"), as *amicus curiae*, submits this Brief supporting

Plaintiffs.  As noted below, the interest of the Foundation in the outcome of this litigation

is the Foundation's concern for the strict interpretation of the United States Constitution as intended by its Framers, and to the defense of religious liberty.

## TABLE OF CONTENTS

TABLE OF CONTENTS...........................................................................................2

TABLE OF AUTHORITIES....................................................................................3

INTEREST OF THE AMICUS...............................................................................4

ARGUMENT..........................................................................................................6

    I.  The Constitution, including the First Amendment, clearly applies to military personnel..........................................................................................................6

    II.  Religious exemption requests should be liberally construed in favor of the persons making the requests....................................................................8

    III.  Offering exemptions but categorically denying them is bad faith.................12

    IV.  The military has no compelling interest in requiring Plaintiffs to submit to the COVID-19 vaccinations..........................................................................14

    V.  *Jacobson v. Massachusetts* does not support Defendants' position ............... 14

VI.   *Sambrano v. United Airlines* is easily distinguished rom this case............16


CONCLUSION.............................................................................................................17

## TABLE OF AUTHORITIES

**Cases**

*Adkins v. Rumsfeld,* 389 F.Supp.2d 579 (2005) ……………...……………………….. 7

*Burwell v. Hobby Lobby Stores, Inc.,* 573 U.S. 682 (2014) ……………………………. 10

*Carlson v. Schlesinger*, 511F. 2d 1327 (D.C. Cir. 1975) …...………………………. 7

*Chappell v. Wallace,* 462 U.S. 296 (1983) ……………………………………………. 7

*Gateway City Church v. Newsom*, 141 S.Ct. 1460 (2021) ……………..……………. 16

*Greer v. Spock*, 424 U.S. 828 (1976) …………………………………………………. 7

*Jacobson v. Massachusetts,* 197 U.S. 11 (1905) …………………………..……….. 14-15

*Little Sisters of the Poor, etc., v. Pennsylvania*, 140 S.Ct. 2367 (2020) ……………….. 10

*United States v. Macintosh,* 283 U.S. 605 (1931) ……………………………...……… 12

*Prince v. Massachusetts*, 321 U.S. 158 (1944) …………………………………….…..  15

*Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63 (2020) …………..…….. 16

*Sambrano v. United Airlines,* No. 4:21-cv-1074-P (N.D.Tex., Nov. 8, 2021) ……... 16-17

*South Bay United Pentecostal Church v.  Newsom*, 141 S.Ct. 716 (2021) ……..……… 16

*Thomas v. Review Board*, 450 U.S. 707 at 715-16 (1980) …………………….…..… 9-10

*United States v. Ballard*, 322 U.S. 78  (1944) ……………………………………..….. 8

*Whole Woman's Health v. Paxton*, 10 F.4th 430 (5th Cir. 2021) …………………… 10-11

**Statutes**

Religious Freedom Restoration Act of 1993, codified at 42 U.S.C. § 2000bb …….….… 8


**Other Authorities**

*Holy Bible,* Genesis 2:7 & 9:1-7; Exodus 20:13 & 21:22-25; Leviticus 24:17; Deuteronomy 23:18; Jeremiah 32:35; Matthew 27:1-10; Acts 15:20, 39 & 21:25; Romans 13:1-7 & 14:23; 1st Corinthians 6:19-20; Revelation 13:15-17 ….………………..… 10-11

U.S. Constitution, First Amendment …………………….……….....…………… *passim*

U.S. Constitution, Fifth Amendment ……………………………………....………… 10

Executive Order 13798 (President Donald J. Trump, May 4th, 2017) ………………… 7-8

DODI 1300.17 …………………………………………….…………………………….. 8

SECNAVINST 1730.8B ……………………………….....………………………..8

Warren, The Bill of Rights and the Military, 37 *N.Y.U.L.Rev.* 181, 188 (1962) …....….… 7

https://academic.oup.com/jlb/article/7/1/lsaa058/5878809 (Gunnarsdottir, Journal of Law & the Biosciences, Applying the Proportionality Principle to COVID-19 ...................... 10

https://catholic-factchecking.com/2021/07/vaccine-exemption-resource-for-individuals (The National Catholic Bioethics Center, Vaccine Exemption Resource …) …………. 10

https://federalnewsnetwork.com/defense-main/2021/...("The Marine  Corps has not granted any religious exemptions", November 30,2021) ……………………………... 12

https://news.usni.org/2021/11/01/navy-approves...("Navy Approves Five Permanent Medical, No Religious...") ………………………………………………...… 13

https://www.defenseone.com/threats/2021/11/zero-religious-exemptions-granted-covid-vaccines-air-force-deadline-passes/186601/ ("Zero Religious Exemptions Granted for COVID Vaccines in Air Force, As Deadline Passes: Nearly 5,000 religious exemptions are still pending approval," November 3, 2021) ……………………………………… 13

https://www.lifenews.com/2021/12/10/biden-ignores-federal-law-denies ("Biden Ignores Federal Law, Denies 17,000 Requests for Religious Exemptions to COVID Vaccine Mandate", December 10, 2021) …………………………………………………...…… 13

https://www.msn.com/en-us/news/us/air-force-discharges-27-service-members-in-first-apparent-dismissals-over-vaccine-refusal/ar-AARNRji?ocid=uxbndlbing ("Air Force discharges 27 service members in first apparent dismissals …" Dec 14, 2021) …... 13-14

https://www.navytimes.com › your-navy › 2021/12/02 ("The Navy hasn't approved any religious exemptions for sailors" December 2, 2021) ………………………….….. 12

### INTEREST OF THE *AMICUS*[1]

The Foundation for Moral Law ("Foundation") is a 501(c)(3) non-profit, non-partisan organization dedicated to religious liberty and to the strict interpretation of the Constitution as intended by its Framers.  The Foundation is especially concerned about religious freedom for military personnel.  The founder of the Foundation, Judge Roy Moore, is a graduate of the U.S. Military Academy and a Vietnam veteran.  The Foundation's Senior Counsel and primary author of this brief, John Eidsmoe, served twenty-three years as a U.S. Air Force Judge Advocate retiring at the rank of Lt. Colonel, and subsequently served as a Chaplain with the Mississippi State Guard, retiring at the rank of Colonel (MS); he is also Professor of Constitutional Law with the Oak Brook College of Law and Government Policy.

The Foundation has received more requests for assistance on the issue of religious exemptions from COVID vaccination requirements than on any other issue since we were founded in 2004.  Within the last six months, most of these requests have come from military personnel and/or civilian employees of the military.  These include a guardsman who has served nineteen years with an unblemished record and is now uncertain whether he will be allowed to retire, cadets and midshipmen at military academies who are going

---

[1] No party or party's counsel authored this brief in whole or in part, or contributed money that was intended to fund its preparation or submission; and no person other than the *amicus curiae,* its members, or its counsel, contributed money that was intended to fund the preparation or submission of this brief.

home for Christmas vacation uncertain whether they will be allowed to return, a military academy instructor who may not be allowed to retire in lieu of court-martial even though he has given outstanding service for well over twenty years, and many others who serve in the Air Force, Army, Navy, Marines, Coast Guard, Space Force, and Special Operations Command (special operations forces), as well as in various guard and reserve units. These fine patriotic personnel desire nothing but to serve their country honorably, but now they and their families face career disruption, loss of salary and benefits, disciplinary action, disparagement of their reputations, and untold emotional distress.

The Foundation believes these and countless other military personnel should not have to sacrifice their careers because of a religious conviction that in no way prevents them from being good soldiers and sailors. The Foundation further believes and advocates that the U.S. military should not lose the valuable services of such outstanding and conscientious military personnel.

## ARGUMENT

The Foundation fully supports the arguments of Plaintiffs in their Complaint and of the America First Policy Institute in their *amicus* brief and will not duplicate those arguments. Rather, the Foundation raises the following points:

## I.   The Constitution, including the First Amendment, clearly applies to military personnel.

The courts have never given any credence to the notion that soldiers and sailors give up their constitutional rights when they join the military. Rather, the courts have

recognized that military personnel who swear and oath to support and defend the Constitution of the United States are entitled to the protection that the Constitution provides to all.

Servicemen and women are entitled to protection of free speech and free exercise of religion under the First Amendment, which states,

> Congress shall make no law respecting an establishment of <u>religion</u>, or prohibiting <u>the free exercise thereof</u>; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.  [*emphasis added*]

Servicemen and women are also entitled to exercise these rights; they are not stripped away when they serve in the United States military.  "The military enclave is kept free of partisan influence, but individual servicemen are not isolated from participation as citizens in our democratic process." *Greer v. Spock,* 424 U.S. 828, (1976).  As the Supreme Court unanimously stated, "Our citizens in uniform may not be stripped of basic rights simply because they have doffed their civilian clothes." *Chappell v. Wallace*, 462 U.S. 296, 304, 103 S.Ct. 2362, 2367, 76 L.Ed.2d 586 (1983) (quoting Warren, The Bill of Rights and the Military, 37 N.Y.U.L.Rev. 181, 188 [1962]).  See also, *Adkins v. Rumsfeld,* 389 F.Supp.2d 579 (2005); *Carlson v. Schlesinger*, 511F. 2d 1327 (D.C. Cir. 1975). The First Amendment applies to all servicemen and servicewomen without exception.  They all deserve "free exercise" of their sincerely held religious beliefs.

Furthermore, On May 4, 2017, the President of the United States issued Executive Order 13798, "Promoting Free Speech and Religious Liberty," which states in part:

> *Section 1. Policy*. It shall be the policy of the executive branch to vigorously enforce Federal law's robust protections for religious freedom. The Founders envisioned a Nation in which religious voices and views

were integral to a vibrant public square, and in which religious people and institutions were free to practice their faith without fear of discrimination or retaliation by the Federal Government. For that reason, the United States Constitution enshrines and protects the fundamental right to religious liberty as Americans' first freedom. Federal law protects the freedom of Americans and their organizations to exercise religion and participate fully in civic life without undue interference by the Federal Government. The executive branch will honor and enforce those protections.

*Sec. 2. Respecting Religious and Political Speech*. All executive departments and agencies (agencies) shall, to the greatest extent practicable and to the extent permitted by law, respect and protect the freedom of persons and organizations to engage in religious and political speech.

"All executive departments and agencies" clearly includes the Department of Defense.

The **Religious Freedom Restoration Act of 1993**, Public Law No. 103-141, 107 Stat. 1488, 42 U.S.C. § 2000bb, also applies to the Department of Defense (see DODI 1300.17 and SECNAVINST 1730.8B) and provides that the government may not substantially burden one's free exercise of religion without a compelling interest that cannot be achieved by less restrictive means.  Defendants fail this "least restrictive" test.

**II.  Religious exemption requests should be liberally construed in favor of the persons making the requests.**

A government official may not refuse to honor a person's religious beliefs and practices simply because he disagrees with them, finds them unpersuasive, or even finds them inconsistent and therefore indefensible.  Rather, government officials and courts may consider whether or not beliefs are religious and sincere.  As the Supreme Court said in *United States v. Ballard*, 322 U.S. 78 at 87 (1944), a case involving a man convicted of mail fraud because he claimed to be in communication with angels,

> Men may believe what they cannot prove.  They may not be put to the
> proof of their religious doctrines or beliefs.  Religious experiences which
> are as real as life to some may be incomprehensible to others.  Yet the fact
> that they may be beyond the ken of mere mortals does not mean they can
> be made suspect before the law.

Nor must one's religious beliefs be part of the official doctrine of a church or shared by

all members of a denomination.  As the Court said in *Thomas v. Review Board*, 450 U.S.

707 at 715-16 (1980),

> In reaching its conclusion, the Indiana court seems to have placed considerable
> reliance on the facts that Thomas was "struggling" with his beliefs and that he was
> not able to "articulate" his belief precisely. It noted, for example, that Thomas
> admitted before the referee that he would not object to "working for United States
> Steel or Inland Steel . . . produc[ing] the raw product necessary for the production
> of any kind of tank . . . [because I] would not be a direct party to whoever they
> shipped it to [and] would not be . . . chargeable in . . . conscience. . . ." Ind., 391
> N.E.2d, at 1131.

> The court found this position inconsistent with Thomas' stated opposition to
> participation in the production of armaments. But Thomas' statements reveal no
> more than that he found work in the roll foundry sufficiently insulated from
> producing weapons of war. We see, therefore, that Thomas drew a line, and it is
> not for us to say that the line he drew was an unreasonable one. Courts should not
> undertake to dissect religious beliefs because the believer admits that he is
> "struggling" with his position or because his beliefs are not articulated with the
> clarity and precision that a more sophisticated person might employ.

> The Indiana court also appears to have given significant weight to the fact that
> another Jehovah's Witness had no scruples about working on tank turrets; for that
> other Witness, at least, such work was "scripturally" acceptable. Intrafaith
> differences of that kind are not uncommon among followers of a particular creed,
> and the judicial process is singularly ill equipped to resolve such differences in
> relation to the Religion Clauses. One can, of course, imagine an asserted claim so
> bizarre, so clearly nonreligious in motivation, as not to be entitled to protection
> under the Free Exercise Clause; but that is not the case here, and the guarantee of
> free exercise is not limited to beliefs which are shared by all of the members of a
> religious sect. Particularly in this sensitive area, it is not within the judicial
> function and judicial competence to inquire whether the petitioner or his fellow

worker more correctly perceived the commands of their common faith. Courts are not arbiters of scriptural interpretation.

See also *Burwell v. Hobby Lobby Stores, Inc.,* 573 U.S. 682, 724, 134 S.Ct. 2751, 189 L.Ed.2d 675 (2014), recognizing religious liberty exemption rights, rooted in sincerely held religious beliefs, as well as First Amendment-anchored analysis within *Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania*, 140 S.Ct. 2367, 207 L.Ed.2d 819 (2020), recognizing the propriety of, if not also the need for, a religious exemption to federal healthcare-regulating statutes.   As a matter of Due Process (under the Fifth Amendment) Plaintiffs deserve constitutionally satisfactory protection of their religious exercise rights, yet Plaintiffs' religious liberties (which deserve protection via recognizing exemptions) are not being recognized by Defendants.   Plaintiffs' evidences (as summarized in their Complaint) show that these Defendants have failed to show good faith in how they are mistreating the religious rights of these Plaintiffs.

Religious beliefs raised by persons who have sought assistance from *Amicus* Foundation include the following:

(1) That the body is the temple of the Holy Spirit and therefore should not be defiled with an experimental drug that could be dangerous.   Some Roman Catholic theologians have articulated an ethical position called "therapeutic proportionality" which means that because the human body is God's creation (Genesis 2:7) and the temple of the Holy Spirit (1st Corinthians 6:19-20), a person has a duty to God to weigh the possible benefits of medicine against possible risks and adverse consequences, and to refuse medical treatment if risks and adverse consequences outweigh the benefits.   See

https://catholic-factchecking.com/2021/07/vaccine-exemption-resource-for-individuals/;

https://academic.oup.com/jlb/article/7/1/lsaa058/5878809.

(2)  That some COVID vaccines are made from, or were developed from, cells or cell lines from aborted human fetuses, and accepting the vaccine(s) makes the recipient an accessory to abortion, which many believe to be against God's laws. See *Whole Woman's Health v. Paxton*, 10 F.4th 430 (5th Cir. 2021), illustrating tragic aspects of abortion.  Thus, those servicemen and servicewomen who sincerely hold pro-life Bible-based beliefs that abortion is wrong and sinful (see Genesis 9:1-7; Exodus 21:22-25; Acts 15:20,29 & 21:25; etc. – see also, accord, Romans 14:23; Matthew 27:1-10; Exodus 20:13; Leviticus 24:17; Deuteronomy 23:18; Jeremiah 32:35; etc.) should be exempted from being required or coërced to accept any such COVID-19 vaccines.

(3)  That when the COVID-19 vaccine is imposed so strongly that a vaccination passport or the equivalent becomes necessary for being allowed to fly, enter stores, obtain food or other necessities, or participate in public events, it becomes a type of what some believe is the "mark of the beast" of Revelation 13:15-17 (or that it serves as a prototype thereof, such that accepting it is aiding and abetting the anticipated Revelation 13's "mark of the beast").

(4)  That God has established civil government and has given civil government certain limited authority (Romans 13:1-7), but that when government exceeds its God-given (i.e., legitimate) authority, it becomes tyrannical, and the individual has a duty before God to resist the unlawful mandates of a tyrannical government.

14

Plaintiffs' religious exemption requests should be construed liberally in their favor; the law protects not just "exercise", but "free exercise" of religion.   Whether one agrees with them or not, these beliefs are religious and those who hold them are sincere. *Res ipsa loquitur;* the thing speaks for itself.   The very fact that Plaintiffs are willing to jeopardize their livelihoods, careers, and reputations because of their beliefs, is of itself proof of their sincerity.   As the Supreme Court recognized in *United States v. Macintosh,* 283 U.S. 605,633-634 (1931):

> ...in the forum of conscience, duty to a moral power higher than the state has always been maintained. The reservation of that supreme obligation, as a matter of principle, would unquestionably be made by many of our conscientious and law-abiding citizens.
>
> ...
>
> The battle for religious liberty has been fought and won with respect to religious beliefs and practices, which are not in conflict with good order, upon the very ground of the supremacy of conscience within its proper field. What that field is, under our system of government, presents in part a question of constitutional law, and also, in part, one of legislative policy in avoiding unnecessary clashes with the dictates of conscience.

### III.  Offering exemptions but categorically denying them is bad faith.

As Plaintiffs have alleged in paragraphs 44 and 45 (pages 7-8) of their Complaint, the Navy and other branches of the armed forces have established forms and policies for the granting of religious exemptions from the vaccination requirement.   However, as Plaintiffs state in paragraph 96 (page 17) of their Complaint, "No Plaintiff has received an approved religious accommodation request, and they are unaware of any similarly situated Service Member who has."   Likewise, the Foundation for Moral Law is unaware

of any service member who has been granted a religious exemption; see https://federalnewsnetwork.com/defense-main/2021/...("The Marine Corps has not granted any religious exemptions", November 30,2021); https://www.navytimes.com › your-navy › 2021/12/02 ("The Navy hasn't approved any religious exemptions for sailors" December 2, 2021); https://www.defenseone.com/threats/2021/11/zero-religious-exemptions-granted-covid-vaccines-air-force-deadline-passes/186601/ ("Zero Religious Exemptions Granted for COVID Vaccines in Air Force, As Deadline Passes: Nearly 5,000 religious exemptions are still pending approval," Nov. 3, 2021); https://news.usni.org/2021/11/01/navy-approves...("Navy Approves Five Permanent Medical, No Religious..."); https://www.lifenews.com/2021/12/10/biden-ignores-federal-law-denies ("Biden Ignores Federal Law, Denies 17,000 Requests for Religious Exemptions to COVID Vaccine Mandate", Dec. 10, 2021); https://www.msn.com/en-us/news/us/air-force-discharges-27-service-members-in-first-apparent-dismissals-over-vaccine-refusal/ar-AARNRji?ocid=uxbndlbing ("Air Force discharges 27 service members in first apparent dismissals over vaccine refusal" Dec 14, 2021).

It is wrong to deny exemptions to those who have sincere religious objections to vaccination. But to offer religious exemptions and create forms and procedures to apply for and process exemption requests, and then routinely deny all exemption requests, is more than wrong, it is duplicitous and evidence of bad faith.

Defendants may argue that they cannot grant any exemptions because of military necessity. However, as Plaintiffs have observed in Paragraph 99 (page 17) of their

Complaint, and as *Amicus* has demonstrated above, Defendants have granted medical exemptions from the vaccination.

There appears to be no reason why the military must deny religious exemptions but may grant medical exemptions.  There appears to be no reason why granting religious exemptions would pose a danger to the overall health and fitness of military personnel, but granting medical exemptions would pose no such danger.  According to the MSN article cited above, "The Air Force ... has granted roughly 1,200 total medical and administrative exemptions to active-duty service members."

By granting medical exemptions, Defendants have in effect waived any argument that they must deny all exemptions for the health and safety of military personnel.

**IV.  The military has no compelling interest in requiring Plaintiffs to submit to the COVID-19 vaccinations.**

*Amicus* defers to the arguments presented and evidence cited by Plaintiffs in Paragraphs 67, 68, 69, 70, 71, and other portions of their Complaint, and that presented in the brief of *Amicus* America First Policy Institute, to establish that the military has no compelling interest in requiring Plaintiffs to submit to the COVID-19 vaccinations. Although the military has utilized vaccinations in the past, none has involved the complex and controversial medical, scientific, religious, sociological, and religious issues triggered by the COVID-19 vaccine.

Moreover, even if a compelling interest was shown, the burden is on Defendants to show less restrictive means (e.g., masking) would not fulfill that compelling interest.

17

**V.   *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), does not support Defendants' position.**

Defendants may rely upon *Jacobson v Massachusetts* to support their authority to require vaccination.  However, the juristic logic of *Jacobson* does not support their position, for the following reasons:

(1)   *Jacobson* involved a state law that empowered health departments to compel vaccinations to prevent the spread of smallpox, based on the State's inherent police power.  However, under constitutional federalism, the federal government does not have such a police power.

(2)   Mr. Jacobson simply argued that the law violated his right to decline vaccination; he did not raise a religious objection to vaccination.[2]  Plaintiffs herein raise First Amendment-protected rights that were not raised in *Jacobson,* so *Jacobson* is thus distinguishable beyond relevance herein.

(3)   *Jacobson* did restrict state authority to regulate in ways that are "beyond all question, a plain, palpable invasion of rights secured by the fundamental law," e.g., constitutional guarantees in our Bill of Rights.

(4)   *Jacobson* was a 1905 case, decided before the courts developed the "strict scrutiny" doctrine that government can infringe fundamental rights only by

---

[2] A subsequent case, *Prince v. Massachusetts,* 321 U.S. 158 (1944), said that "The right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death."  But that was dicta, not holding. *Prince* involved a Jehovah's Witness who had her child with her while preaching in public, and no issue of disease or epidemic was present in the case.  And as the Court expressly said in *Prince,* "Our ruling does not extend beyond the facts the case presents."

demonstrating a compelling state interest that cannot be achieved by less restrictive means, and before the enactment of RFRA.

Furthermore, in three recent decisions the Supreme Court has upheld religious liberty against state COVID restrictions: *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. ___, 141 S.Ct. 63 (2020) (note concurring opinion by Gorsuch, J., re application of Jacobson); *South Bay United Pentecostal Church v. Newsom*, 592 U.S.___, 141 S.Ct. 716 (2021); *Gateway City Church v. Newsom*, ___ U.S. ___, 141 S.Ct. 1460 (2021). Though these cases don't address vaccination, the Court clarified that our basic civil liberties, especially our religious liberties, are not suspended during a pandemic.

**VI.  The *Sambrano v. United Airlines* ruling is easily distinguished herefrom.**

*Amicus* is aware that on November 8, 2021, Judge Mark L. Pittman of this District recently denied a motion for preliminary injunction in *Sambrano v. United Airlines,* No. 4:21-cv-1074-P.  However, that case is far different from Plaintiffs' case herein, for at least the following reasons:

1.  This case involves the U.S. Department of Defense, unlike *Sambrano,* which involves United Airlines a private entity.  Thus, the U.S. Government, as an employer, has no private sector liberties to limit its Due Process obligations to U.S. Navy personnel.

2.  Military authorities can threaten or punish resistance with orders which, if not followed, can result in courts-martial and other forms of discipline.  United Airlines can only threaten economic consequences.  Unique to the Government is power to use force.

3.  United Airlines had granted employees with religious objections the accommodation of unpaid leave.  The issue was whether this was sufficient accommodation.  Defendants in this case have not granted any accommodation at all.

4.  Because United Airlines had "only" placed employees on unpaid leave rather than firing them, the irreparable injury in *Sambrano* was far less than the irreparable injury in this case in which Plaintiffs are faced with permanent discharge that could injure their reputations.  There is, therefore, in the instant case a much greater need to preserve the status quo by a preliminary injunction that will preserve Plaintiffs' status until this matter has been fully adjudicated.

## CONCLUSION

With great discipline and at great sacrifice, Plaintiff Navy SEALS (as well as the other Navy plaintiffs herein) have pledged their lives to the defense of their country.

And now the leadership of their country appears to be making war upon them, threatening their livelihoods, their careers, and their reputations, simply for obeying God in a land dedicated to religious liberty.

In their defense, they place their trust the Constitution they have taken an oath to support and defend, and the courts who have the duty of enforcing the Constitution.

We pray the courts will not fail them in their hour of need.

This Court should grant all Plaintiffs prompt and comprehensive relief, including injunctive and declaratory relief.

DATED: December 15th, A.D.2021.


Respectfully submitted,

JAMES J. S. JOHNSON
/s/   James J. S. Johnson
Texas Bar # 10741520
Special Counsel
FOUNDATION FOR MORAL LAW
P.O. Box 29112, Dallas, Texas 75229
214-615-8314 telephone; 214-615-8295 FAX
Email: profjjsj@aol.com


## CERTIFICATE REGARDING SERVICE

I certify that on December 15th of A.D.2021, a true copy of this document is being filed

electronically (via CM/ECF) and thus will be served upon all counsel of record.

/s/   James J. S. Johnson
Certifying attorney

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | |
|---|---|
| U.S. NAVY SEALs 1-26, et al.,<br>     Plaintiffs,<br>v.<br>JOSEPH R. BIDEN, JR., in his official<br>capacity, etc., et al.,<br>     Defendants. | Case No.  **4:21-cv-01236-O**<br><br>District Judge Reed O'Connor |

# ORDER GRANTING MOTION OF
# THE FOUNDATION FOR MORAL LAW,
# FOR LEAVE TO FILE BRIEF *AMICUS CURIAE*

The Foundation for Moral Law, pursuant to N.D.Tex. Local Rule 7.2(b), having herein duly moved for leave to appear as *amicus curiae* for the purpose of filing a Brief supporting Plaintiffs, and having reviewed and considered the Motion of the Foundation for Moral Law, for Leave to File Brief *Amicus Curiae*, it is hereby

ORDERED that the Motion of the Foundation for Moral Law, for Leave to File Brief *Amicus Curiae* is GRANTED.

So ORDERED this ___ day of December, A.D. 2021

_____
The Honorable Reed O'Connor
United States District Judge