**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

**U.S. NAVY SEALs 1-26;**

**U.S. NAVY SPECIAL WARFARE**
**COMBATANT CRAFT CREWMEN 1-5;**

**U.S. NAVY EXPLOSIVE ORDNANCE**
**DISPOSAL TECHNICIAN 1; and**

**U.S. NAVY DIVERS 1-3**,

          Plaintiffs,

   v.

                                   **Case No. 4:21-cv-01236-O**

**JOSEPH R. BIDEN, JR.**, in his official
capacity as President of the United States of
America; **LLOYD J. AUSTIN, III**,
individually and in his official capacity as
United States Secretary of Defense; **UNITED**
**STATES DEPARTMENT OF DEFENSE**;
**CARLOS DEL TORO**, individually and in
his official capacity as United States Secretary
of the Navy,

          Defendants.

**<u>AMICUS BRIEF OF NINE U.S. SENATORS AND THIRTY-EIGHT</u>**
**<u>U.S. REPRESENTATIVES IN SUPPORT OF PLAINTIFFS' MOTION FOR A</u>**
**<u>PRELIMINARY INJUNCTION</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................................iii

STATEMENT OF INTEREST OF *AMICI CURIAE*...................................................................... 1

STATEMENT OF *AMICI CURIAE* ............................................................................................... 2

ARGUMENT..................................................................................................................................... 3

CONCLUSION.................................................................................................................................. 9

# TABLE OF AUTHORITIES

## CASES

*Employment Div., Dep't of Human Resources of Ore. v. Smith*, 494 U.S. 872 (1990)......................... 4, 7

*Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014) ...................................................... 4, 5

*Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993) ........................................ 6

*Dr. A. v. Hochul*, No. 21A145 (U.S. Dec. 13, 2021) ...................................................... 7

*Fulton v. City of Phila.*, 141 S. Ct. 1868 (2021) ...................................................... 3, 6, 7

*Holt v. Hobbs*, 574 U.S. 352 (2015) ...................................................... 8

*Marbury v. Madison*, 5 U.S. 137 (1803)...................................................... 8

*Masterpiece Cakeshop, Ltd. v. Colo. Civ. Rts. Comm'n*, 138 S. Ct. 1719 (2018) ........................ 6

*Sherbert v. Verner*, 374 U.S. 398 (1963) ...................................................... 3, 4, 5

*Singh v. McHugh*, 185 F. Supp. 3d 201 (D.D.C. 2016) ............................................ 8

*Tandon v. Newsom*, No. 20A151 (U.S. Apr. 9, 2021). ............................................ 7

*Thomas v. Review Bd. of Ind. Employ. Sec. Div.*, 450 U.S. 707 (1981) ........................................ 3

*Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012 (2017)............................ 6

*Wisconsin v. Yoder*, 406. U.S. 205 (1972). ...................................................... 3, 4

## STATUTES

42 U.S.C. § 2000bb-1(b)...................................................... 3, 4, 5

## OTHER AUTHORITIES

H.R. Res.1308, 103rd Cong. (1993). ...................................................... 4

Religious Freedom Restoration Act of 1990: Hearing before the Subcomm. on Civil & Constitutional Rights of the H. Comm. on the Judiciary, 101st Cong. 13 (1991) ..................... 4

Religious Freedom Restoration Act of 1991: Hearings before the Subcomm. on Civil & Constitutional Rights of the H. Comm. on the Judiciary, 102d Cong. 340-341 (1993). ........... 2

**TO THE HONORABLE REED O'CONNOR, UNITED STATES DISTRICT JUDGE:**

**STATEMENT OF INTEREST OF *AMICI CURIAE***

*Amici* are United States Senators and Members of the United States House of Representatives. *Amici* from the U.S. Senate include: Sen. Ted Cruz (TX); Sen. Rick Scott (FL); Sen. Mike Lee (UT); Sen. James M. Inhofe (OK); Sen. James Lankford (OK); Sen. Steve Daines (MT); Sen. Roger F. Wicker (MS); Sen. Mike Braun (IN); and Sen. Roger Marshall (KS). *Amici* from the U.S. House of Representative include: Rep. Mike Johnson (LA-04); Rick Allen (GA-12); Rep. Brian Babin, D.D.S. (TX-36); Rep. Jack Bergman (MI-01); Rep. Andy Biggs (AZ-05); Rep. Dan Bishop (NC-09); Rep. Lauren Boebert (CO-03); Rep. Mo Brooks (AL-05); Rep. Kat Cammack (FL-03); Rep. Andrew Clyde (GA-09); Rep. Warren Davidson (OH-08); Rep. Rodney Davis (IL-13); Rep. Jeff Duncan (SC-03); Rep. Bob Gibbs (OH-07); Rep. Louie Gohmert (TX-01); Rep. Bob Good (VA-05); Rep. Paul Gosar, D.D.S. (AZ-04); Rep. Michael Guest (MS-03); Rep. Andy Harris, M.D. (MD-01); Rep. Vicky Hartzler (MO-04); Rep. Jody Hice (GA-10); Rep. Clay Higgins (LA-03); Rep. Darrell Issa (CA-50); Rep. Ronny L. Jackson (TX-13); Rep. Doug LaMalfa (CA-01); Rep. Doug Lamborn (CO-05); Rep. Billy Long (MO-07); Rep. Thomas Massie (KY-04); Rep. Brian Mast (FL-18); Rep. Mary Miller (IL-15); Rep. Gregory F. Murphy, M.D. (NC-03); Rep. Ralph Norman (SC-05); Rep. Scott Perry (PA-10); Rep. Matthew Rosendale, Sr. (MT-at-large); Rep. Chip Roy (TX-21); Rep. W. Gregory Steube (FL-17); Rep. Randy Weber (TX-29); and Rep. Daniel Webster (FL-11).

As members of Congress, *amici* have a strong interest in ensuring laws enacted by Congress—including, as relevant here, the Religious Freedom Restoration Act ("RFRA")—are interpreted in a manner that is consistent with their text and history to fully protect religious liberty. *Amici* likewise have a strong interest in ensuring that the First Amendment, which is RFRA's

constitutional backdrop, is enforced with vigor. Finally, *amici* have sworn to support and defend the Constitution of the United States against all enemies, foreign and domestic. This requires *amici* to ensure that America's military is in a position to fully and robustly defend our national security. *Amici* thus have a unique interest in the Department of Defense ("DOD") complying with RFRA and the Constitution in a manner that protects religious liberty rights while ensuring the effectiveness and readiness of the United States military.

## STATEMENT OF *AMICI CURIAE*

No right is more precious than the right to religious liberty. That is why the very first clause of the very First Amendment explicitly states that "Congress shall make no law . . . prohibiting the free exercise" of religion. This amendment, case law, and Congress's decision to pass the Religious Freedom Restoration Act ("RFRA") all testify to the fact that, without entrenched, generally applicable, and judicially enforceable protections for religious liberty, lawmakers and government bureaucrats are susceptible to override sincere religious beliefs in favor of what they perceive to be the greater good.[1]

That is what is happening with Defendants' vaccine mandate. Plaintiffs' religious liberty and the government's asserted interest in protecting our service members from COVID-19 need not be in conflict, especially where, as here, the individuals seeking an exemption are willing to adopt non-vaccination measures to protect themselves and others from the spread of COVID-19. They are only in conflict here because Defendants refuse to accommodate Plaintiffs' religious

---

[1] *See* Religious Freedom Restoration Act of 1991: Hearings before the Subcomm. on Civil & Constitutional Rights of the H. Comm. on the Judiciary, 102d Cong. 340-341 (1993) (statement of Douglas Laycock, Professor of Law, University of Texas) ("No government bureaucrat admits that he is against religious liberty, but almost every government bureaucrat thinks his own program is so important that no religious exception can be tolerated.").

objections even as they accommodate those who will not receive the vaccine for non-religious reasons. This violates RFRA by substantially burdening Plaintiffs' religious beliefs without a compelling reason, and violates the First Amendment's guarantee that government not discriminate against religion.

This Court should enforce RFRA and the First Amendment's promise of the free exercise of religion by issuing a preliminary injunction to prevent Defendants from forcing servicemen and women to receive a vaccine against their sincerely held religious beliefs.

## ARGUMENT

**1.** Congress passed RFRA for exactly this type of situation where the Federal government exercises its power to substantially burden the free exercise of religion. Prior to 1990, the Supreme Court held that "a law that imposes a substantial burden on the exercise of religion must be narrowly tailored to serve a compelling interest." *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1890 (2021) (Alito, J., concurring). This standard articulated in *Sherbert v. Verner*, 374 U.S. 398 (1963), robustly protected religious liberty against infringement—including against infringement by laws that advanced strong government interests. In *Wisconsin v. Yoder*, for example, the Court applied this test to hold that a law requiring children to remain in school until the age of 16 violated the free-exercise rights of Amish parents. 406. U.S. 205, 234-36 (1972). Indeed, this standard was sufficiently strong to protect religious liberty even when the exercise of that liberty was could affect national defense. *See Thomas v. Review Bd. of Ind. Employ. Sec. Div.*, 450 U.S. 707, 709, 719 (1981) (holding unconstitutional a "State's denial of unemployment compensation benefits to . . . a Jehovah's Witness who terminated his job because his religious beliefs forbade participation in the production of armaments").

After the Supreme Court in *Employment Division v. Smith* discarded the *Sherbert* test and instead held that the Free Exercise Clause tolerates infringements on religious liberty so long as the infringing law or policy is neutral and generally applicable, 494 U.S. 872, 885 (1990), Congress swiftly enacted RFRA to return to the American people their fundamental religious liberty protections. As the Supreme Court explained in *Hobby Lobby*, "Congress enacted RFRA in 1993 in order to provide *very broad protection* for religious liberty." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 693 (2014) (emphasis added). Congress explicitly stated that RFRA's purpose was not only to "restore the compelling interest test" from *Sherbert* and *Yoder*, but "to guarantee its application in *all* cases where free exercise of religion is substantially burdened." 42 U.S.C. §2000bb(b)(1) (emphasis added). And it clearly codified that standard in legislative text: Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person . . . (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b).

This decision to subject laws infringing on religious liberty to the strictest scrutiny was overwhelmingly bipartisan. As the sponsor of an early version of RFRA stated, RFRA was produced by an "extraordinary ecumenical coalition in the Congress of liberals and conservatives, Republicans and Democrats, Northerners and Southerners, and in the country as a whole, a very broad coalition of groups that have traditionally defended . . . the various religious faiths . . . as well as those who champion the cause of civil liberties." *Religious Freedom Restoration Act of 1990: Hearing before the Subcomm. on Civil & Constitutional Rights of the H. Comm. on the Judiciary*, 101st Cong. 13 (1991) (statement of Rep. Solarz, chief sponsor of H.R. 5377). This

bipartisanship was evident in the fact that the bill passed out of the House by voice vote and passed the Senate with 97 votes in favor and only 3 in opposition. H.R. Res.1308, 103rd Cong. (1993).

Defendants' policies mandating that Plaintiffs be vaccinated in violation of their sincerely held religious beliefs does not come close to satisfying the strictest scrutiny Congress demands in RFRA. Defendants' vaccine mandate forces Plaintiffs—individuals who have devoted their lives to the protection of the country—to choose between following their sincerely held religious convictions and effectively being discharged, losing their calling, and destroying their financial well-being. *See Hobby Lobby*, 573 U.S. at 720 (holding that a mandate substantially burdened the exercise of religion where the exercise of religion would result in "severe" "economic consequences"); *see also Sherbert*, 374 U.S. at 404 (substantial burden where a law forces a choice "between following the precepts of [one's] religion and forfeiting benefits" or between "abandoning one of the precepts of [one's] religion in order to accept work").

Defendants force this choice even though there is no compelling interest in requiring these specific Plaintiffs to receive the vaccine. The development of the COVID-19 vaccine was a significant and important step in combatting the spread of COVID-19, and the voluntary and widespread vaccination of our men and women in uniform helps protect them and their families. The Navy, however, has already admitted that not *every* single person must be vaccinated, because it exempted from the vaccine mandate individuals with medical issues as well as individuals who took a placebo vaccine as part of medical trials. Since accommodations can be made for these individuals, there is no compelling interest in forcing Plaintiffs and other individuals with sincere religious objections to violate their core beliefs by receiving the vaccine.

Even if there were a compelling interest in demanding vaccinations for religious individuals while allowing exemptions for secular individuals as part of a COVID-19 risk

mitigation strategy—and, to be sure, there is not—vaccinations are not the only way to mitigate COVID-19 risk. Plaintiffs here have all agreed to take other, non-vaccination steps to stop the spread of the disease in lieu of vaccination, as, presumably, would all service members seeking religious accommodation—mitigation strategies that worked for more than a year prior to vaccinations becoming widely available. The question, then, is simply whether the government should have to adopt a different but similarly effective COVID-19 mitigation strategy with regard to these Plaintiffs if doing so will protect their religious liberty. Thankfully, Congress expressly answered that question in the affirmative in RFRA by prohibiting any substantial infringement on religious liberty unless it is the "*least* restrictive" means of furthering the government interest. 42 U.S.C. § 2000bb-1(b) (emphasis added).

Even if Congress had never passed RFRA to protect religious liberty, Defendants' mandate would still be unlawful because it violates the First Amendment. "The Free Exercise Clause 'protect[s] religious observers against unequal treatment' and subjects to the strictest scrutiny laws that target the religious for 'special disabilities' based on their 'religious status.'" *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019, (2017) (quoting *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 533, 542 (1993)).

**2.** Religious freedom is fundamental to every American's liberty, but we have seen in recent years increasing hostility among elected and appointed government officials towards those who seek to exercise that freedom. In *Masterpiece Cakeshop*, for example, the Supreme Court found that a Colorado commission demonstrated "elements of a clear and impermissible hostility toward the sincere religious beliefs that motivated [an individual's] objection" to a state law. *Masterpiece Cakeshop, Ltd. v. Colo. Civ. Rts. Comm'n*, 138 S. Ct. 1719, 1729 (2018). In *Fulton*, the Court held that Philadelphia violated the First Amendment by seeking to enforce a policy that

discriminated against Catholic Social Services. *Fulton*, 141 S. Ct. at 1882. And earlier this year, the Supreme Court enjoined a California law ostensibly aimed to mitigate the spread of COVID-19 because it impermissibly "treat[ed] some comparable secular activities more favorably than at-home religious exercise." *Tandon v. Newsom*, No. 20A151, slip op. at 3 (U.S. Apr. 9, 2021).

That same hostility to religion is on display with Defendants' mandate. Defendants could easily accommodate Plaintiffs and similarly situated religious individuals given that Defendants are already accommodating individuals with medical issues or who received placebos in clinical trials. They have simply chosen not to do so. But as the Supreme Court has made clear: "[W]here the State has in place a system of individual exemptions, it may not refuse to extend that system to cases of religious hardship without a compelling reason." *Fulton*, 141 S. Ct. at 1877 (quoting *Smith*, 494 U.S. at 884). Defendants' position that a vaccine exemption combined with non-invasive precautions are sufficient for secularly exempt individuals, but insufficient for service men and women who simply seek to adhere to their sincerely held religious beliefs, is discriminatory and a straight-forward violation of the First Amendment.

The government has suggested that, because over 3,000 servicepersons have requested religious accommodations, that somehow absolves them of the need to make religious exemptions. But it would be perverse to establish a rule whereby the greater the number of religious persons, the less secure their religious freedom. As Justice Gorsuch recently explained in a dissent from the Supreme Court's denial of an application for emergency injunctive relief, the "general applicability test doesn't turn on . . . a numbers game." *Dr. A. v. Hochul*, No. 21A145, slip op. at 9 (U.S. Dec. 13, 2021) (Gorsuch, J., dissenting). "Laws operate on individuals; rights belong to individuals. And the relevant question here involves a one-to-one comparison between the individual seeking a religious exemption and one benefiting from a secular exemption." *Id.*

**3.** There is no reason why this court should shirk from its duty "to say what the law is" just because this case involves military readiness. *Marbury v. Madison*, 5 U.S. 137, 177 (1803). Defendants insist that an injunction would interfere with military functions and "intrude into the management of the military," Defs' Opp. at 11. But while some amount of deference may be owed to military leaders when analyzing the government's interests in First Amendment and RFRA claims, courts do not abandon their duties whenever it is the military rather than some other arm of government invading religious liberty rights. *See, e.g.*, *Singh v. McHugh*, 185 F. Supp. 3d 201, 219 (D.D.C. 2016) (holding that the Army's refusal to grant a Sikh student a requested religious exemption violated RFRA); *see also Holt v. Hobbs*, 574 U.S. 352, 358 (2015) (applying RFRA in the sensitive context of prisons).

Indeed, the impact on the military and our national security strongly counsels *in favor* of granting a preliminary injunction. The mandate is sidelining the deployment of soldiers on whose service our country relies. If this mandate (as currently being applied or threatened) is not enjoined, these Plaintiffs cannot fulfill their pledge to serve and defend our country, even though, based upon their training and experience, these Plaintiffs, as well as others similarly situated, are some of our most qualified, equipped, and fearless service members. Our men and women in uniform have fought to protect the freedoms that every American, regardless of belief, enjoys. Now they ask this Court to protect their religious freedom from encroachment by the very government they have sworn to protect with their lives.

If Defendants' mandate is allowed to stand without realistically obtainable religious exemptions for our servicemen and women, it could create significant consequences for our military's future readiness. Every year, young men and women of faith across this country bravely choose to join our nation's fighting forces. They do so believing that they may simultaneously

serve their country and their God. This mandate, however, sends a strong signal to these young men and women that they must choose between their faith and their desire to protect America because the military will not reasonably accommodate their sincerely held religious beliefs. If the mandate stands, it is likely, then, that it will be more difficult for our military to recruit highly qualified individuals of faith to serve our country—a consequence that is wholly unnecessary, damaging to our military's morale, and damaging to our national security.

## CONCLUSION

*Amici* respectfully urge this Court to enforce RFRA, enforce the First Amendment's guarantee of the free exercise of religion, and protect our armed service members by granting Plaintiffs' motion for a preliminary injunction.

December 17, 2021                                      Respectfully submitted,

/s/ Thomas S. Brandon, Jr.
Thomas S. Brandon, Jr.
State Bar Number 02881400
tbrandon@whitakerchalk.com

*Of Counsel*:

WHITAKER CHALK SWINDLE & SCHWARTZ PLLC
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
817-878-0532 (office)
817-878-0501 (fax)

ATTORNEYS FOR AMICI, NINE U.S. SENATORS AND
THIRTY-EIGHT U.S. REPRESENTATIVES

## <u>CERTIFICATE OF SERVICE</u>

   This is to certify that a true and correct copy of the foregoing was served, pursuant to the Federal Rules of Civil Procedure, on all counsel of record appearing herein via ECF on this the 17th day of December, 2021 by the filing of this pleading with the Clerk of Court for the U.S. District Court for the Northern District of Texas using the Court's ECF system.

          <u>/s/ Thomas S. Brandon, Jr. </u>
          Thomas S. Brandon, Jr.