**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| **U.S. NAVY SEALs 1-26**, et al., | |
| Plaintiffs, | Case No. 4:21-CV-01236-O |
| v. | **REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |
| **JOSEPH R. BIDEN, JR.**, et al., | |
| Defendants. | |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ............................................................................................................. 1

ARGUMENT ..................................................................................................................... 2

  I.  Plaintiffs are Likely to Succeed on the Merits of Their Claims. ....................................... 2

    A.  Plaintiffs' claims are ripe. ...................................................................................... 2

    B.  Plaintiffs' claims do not require exhaustion. .......................................................... 3

        1.  *Mindes* does not apply. ...................................................................................... 3

        2.  Even if *Mindes* applied, its threshold requirements are met. ................................. 5

        3.  Plaintiffs' claims are justiciable under *Mindes*' balancing test. ............................ 7

    C.  Defendants' discriminatory policies and actions violate RFRA. ................................. 8

    D.  Defendants failed to satisfy strict scrutiny. ................................................................ 9

  II. Plaintiffs are Suffering Irreparable Harm. ...................................................................... 14

  III.    The Equities and Public Interest Weigh in Favor of a Preliminary Injunction. .......... 15

  IV.    Broad Relief Is Warranted. ....................................................................................... 16

CONCLUSION ................................................................................................................. 17

## TABLE OF AUTHORITIES

**CASES**

*Adair v. England,* 183 F. Supp. 2d 31, 55 (D.D.C. 2002)......................................................4-5, 14

*Awad v. Ziriax,* 670 F.3d 1111 (10th Cir. 2012).......................................................... 15

*Brannum v. Lake*, 311 F.3d 1127 (D.C. Cir. 2002)........................................................ 5

*BST Holdings, LLC v. OSHA*, 17 F.4th 604 (5th Cir. 2021)........................................ 12

*Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014).......................................... 6

*Carr v. Saul*, 141 S. Ct. 1352 (2021) ......................................................................... 6

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993)............................ 14

*Church v. Biden*, No. 21-2815, 2021 WL 5179215 (D.D.C. Nov. 8, 2021) .......................3, 15-16

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ........................................................ 3

*DeOtte v. Azar*, 393 F. Supp. 3d 490 (N.D. Tex. 2019)................................................ 14

*Dilley v. Alexander*, 603 F.2d 914 (D.C. Cir. 1979) ..................................................... 4

*Does 1-3 v. Mills*, 142 S. Ct. 17 (2021) ...................................................................... 9

*Downen v. Warner*, 481 F.2d 642 (9th Cir. 1973) .....................................................4-5, 6

*Dr.A v. Hochul*, No. 21A145, 2021 WL 5873126 (U.S. Dec. 13, 2021)................................ 10, 14

*Elrod v. Burns*, 427 U.S. 347 (1976) .......................................................................... 7

*Fla. Businessmen for Free Enter. v. City of Hollywood,* 648 F.3d 956 (5th Cir. Unit B June 1981)................................................................................................................ 16

*Franciscan Alliance, Inc. v. Burwell*, 227 F. Supp. 3d 660 (N.D. Tex. 2016) ............................ 16

*Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021) ............................................... 10, 11

*Georgia v. Biden*, No. 1:21-cv-163, 2021 WL 5779939 (S.D. Ga. Dec. 7, 2021)................ 11, 16

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006) ................. 10

*Harmon v. Thornburgh*, 878 F.2d 484 (D.C. Cir. 1989) ............................................... 16

*Hartmann v. Stone*, 68 F.3d 973 (6th Cir. 1995) ........................................................ 14

*Hodges v. Callaway*, 499 F.2d 417 (5th Cir. 1974) ...................................................... 6

*Holt v. Hobbs*, 574 U.S. 352 (2015) ......................................................................... 6

*Horvath v. City of Leander*, 946 F.3d 787 (5th Cir. 2020) ............................................. 1

*Jackson Women's Health Org. v. Currier*, 760 F.3d 448 (5th Cir. 2014) ............................... 15

*Kikumura v. Hurley*, 242 F.3d 950 (10th Cir. 2001)..................................................... 14

*Meister v. Tex. Adjutant General's Dep't*, 233 F.3d 332 (5th Cir. 2000)........................... 5

*Miller v. United States*, 42 F.3d 297 (5th Cir. 1995) ...................................................... 8

*Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971) ............................................................. 3, 5, 7, 8

*Nat'l Min. Ass'n v. U.S. Army Corps of Eng'rs,* 145 F.3d 1399 (D.C. Cir. 1998) ...................... 16

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans,* 833 F.2d 583
    (5th Cir. 1987) ...................................................................................................................... 3

*Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829 (9th Cir. 2012) ................. 4

*Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279 (5th Cir. 2012) ................... 14

*Pearson v. Holder*, 624 F.3d 682, 684 (5th Cir. 2010) ............................................................ 2, 3

*Rhodes v. United States,* 574 F.2d 1179 (5th Cir. 1978) ........................................................... 6

*Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020) ......................................... 9

*Sambrano v. United Airlines, Inc.*, 21-11159, 2021 WL 5881819 (5th Cir. Dec. 13,
    2021) ......................................................................................................................... 2, 15, 16

*Singh v. Carter*, 168 F. Supp. 3d 216 (D.D.C. 2016) ............................................................. 4, 5

*Singh v. McHugh*, 185 F. Supp. 3d 201 (D.D.C. 2016) .............................................................. 14

*Stanford v. United States,* 413 F.2d 1048 (5th Cir. 1969) ........................................................ 6

*Tandon v. Newsom*, 141 S. Ct. 1294, 1297 (2021) .................................................................... 11

*Texas v. Becerra*, No. 2:21-CV-229-Z, 2021 WL 5964687 (N.D. Tex. Dec. 15, 2021) ........ 11, 12

*Texas v. United States,* 809 F.3d 134 (5th Cir. 2015) ............................................................... 16

*United States v. Shearer*, 473 U.S. 52 (1985) ............................................................................. 8

*Van Hoffburg v. Alexander,* 615 F.2d 633 (5th Cir. 1980) ..................................................... 5-6

*Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7 (2008) ........................................................ 15

## STATUTES

42 U.S.C. § 2000bb–1 ......................................................................................................... 3-4, 5, 10

42 U.S.C. § 2000bb–2 ................................................................................................................... 5

42 U.S.C. § 2000cc ....................................................................................................................... 4

## OTHER AUTHORITIES

Antony Sguazzin, *J&J Shot Loses Antibody Protection Against Omicron in Study*,
    Bloomberg Quint, https://www.bloombergquint.com/business/j-j-shot-shows-no-
    neutralization-against-omicron-in-lab-study (Dec. 15, 2021) .................................................. 13

## INTRODUCTION

"The right to free exercise means that government cannot force citizens to choose between one's faith and one's livelihood, absent a compelling reason." *Horvath v. City of Leander*, 946 F.3d 787, 799 (5th Cir. 2020) (Ho, J., concurring in part and dissenting in part). But as Defendants do not dispute, the Navy "has not approved any religious accommodation for COVID-19 or for any other vaccine in at least the last seven years." Pls.' Suppl. App. 1154. And the Navy's own statements prove Plaintiffs' allegations about what is coming for them. As Rear Admiral James Waters, the Navy's Director of Military Personnel Plans and Policy, told reporters on December 15, 2021, "those who continue to refuse the vaccine will be required to leave the Navy." *Id*. at 1153. As Rear Admiral Waters also made clear, separation is imminent and harsh: "Sailors not eligible for retirement or separation before June 1 'will be processed for separation on the basis of misconduct for refusing a lawful order to be vaccinated,'" *id*., and "the bulk of these separations will happen in the time period between now and 1 June," *id*. at 1154. On December 16, 2021, the Marine Corps—a component of the Department of the Navy that is subject to its regulations— reported it has already separated 103 service members for refusing the vaccine.[1] *Id*. at 1205. The Marine Corps also reported it has approved 1007 medical and administrative exemptions for the COVID-19 vaccine, but that it has not approved a single religious accommodation for a vaccine in the past decade. *Id*. at 1206. Not only that, but "Navy leaders also noted that sailors who are separated will have to repay unfulfilled obligations such as bonuses and education benefits." *Id*. at 1153–54. It is no mystery what is in store for the Plaintiffs. There is no timeline to issue final decisions on religious accommodation requests, nor did Defendants provide one. Plaintiffs'

---

[1] The Air Force recently discharged service members for disobeying the vaccine mandate. Suppl. App. 1159–61.

inevitable fate may come at any moment. Nor is there any mystery what adverse actions Plaintiffs are *presently* suffering.

Defendants continue to ratchet up the pressure to coerce sailors into violating their beliefs: retaliating against Plaintiffs for even *filing* a religious accommodation request and repeating the dire consequences for non-compliance over and over, while telling sailors that if they will just compromise their beliefs, this nightmare will be over. Suppl. App. 1139–50, 1152–54. To one being forced "to choose between the two most profound obligations they will ever assume— holding true to their religious commitments and feeding and housing their children," "this is the most horrifying of Hobson's choices." *Sambrano v. United Airlines*, *Inc.*, 21-11159, 2021 WL 5881819, at *2 (5th Cir. Dec. 13, 2021) (Ho, J., dissenting from denial of injunction pending appeal). It is no wonder that the Plaintiffs—some of the most mentally tough individuals on the planet—are suffering from insomnia, anxiety, and depression as a direct result of this unlawful vaccination mandate. Some of the Plaintiffs are daily driven to distraction by the fear that the career they have sacrificed for, and their family's livelihood with it, may be ripped away because of an arbitrary mandate and the U.S. Government's blatant disregard for the law. Already, over 900 sailors previously objecting to vaccination have acquiesced, at least some of whom presumably did so despite their beliefs. Suppl. App. 1154. How many more will fall prey to the pressure being placed upon them? The need for injunctive relief is urgent and clear.

## ARGUMENT

### I.     Plaintiffs are Likely to Succeed on the Merits of Their Claims.

#### A.     Plaintiffs' claims are ripe.

Defendants focus on formal discipline and discharge procedures, but the interim adverse actions Plaintiffs have suffered alone constitute actual injuries. *See Pearson v. Holder*, 624 F.3d 682, 684 (5th Cir. 2010) (concluding that a case was ripe where the plaintiff "has shown that he

'has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury [is] both real and immediate, not conjectural or hypothetical.'" (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983)). Given the actions the Navy has already taken—and continues to take—against the Plaintiffs, no further factual development is required. *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans,* 833 F.2d 583, 587 (5th Cir. 1987) ("[A] case is not ripe if further factual development is required."). Certainly, the threat of permanent non-deployability and the interim adverse actions suffered by Plaintiffs (*see* Part I.C *infra*), constitute a concrete and imminent injury that is ripe for redress. *See Pearson*, 624 F.3d at 684–85. Delaying adjudication of this case would simply prolong these injuries and would cause hardship. *Cf. Pearson*, 624 F.3d at 685 (finding hardship present even where injury likely to take place "in the next few years").[2]

## B.    Plaintiffs' claims do not require exhaustion.

### 1.    *Mindes* does not apply.

Defendants argue that Plaintiffs' claims are not justiciable for lack of exhaustion under *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971), a case pre-dating RFRA. But the Fifth Circuit has *never* applied *Mindes* in a case involving RFRA. Nor could it, as any exhaustion requirement for a RFRA claim, even against the military, is contrary to RFRA's plain text. RFRA commands that, with a narrow exception, "[g]overnment shall not substantially burden a person's exercise of religion," and it flatly provides that "[a] person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and

---

[2] These injuries readily distinguish this case from *Church v. Biden*, No. 21-2815, 2021 WL 5179215, at *8–9 (D.D.C. Nov. 8, 2021), where the Court concluded that federal civilian and military employees failed to demonstrate actual or imminent harm, in part because the plaintiffs "are not 'subject to discipline'" and because "there is 'no basis' on the current record to 'to assume' that [their] exemption requests will be denied." Here, by contrast, Plaintiffs have suffered adverse consequences as a result of submitting their accommodation requests, and they have shown—through a variety of evidence, including Defendants' own public statements—that their requests will ultimately be denied.

obtain appropriate relief against a government." 42 U.S.C. § 2000bb–1(a), (c). Thus, RFRA does not require a plaintiff to avail himself of *any* administrative process before filing suit, much less to exhaust such a process. *See Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 838 (9th Cir. 2012) ("We decline . . . to read an exhaustion requirement into RFRA where the statute contains no such condition, *see* 42 U.S.C. §§ 2000bb–2000bb–4, and the Supreme Court has not imposed one."). To the contrary, "RFRA provides both broad protection of the free exercise right and a broad right of action for judicial relief." *Singh v. Carter*, 168 F. Supp. 3d 216, 226 (D.D.C. 2016). "Notably, Congress nowhere inserted any exception for the U.S. Armed Forces from RFRA's application or any exhaustion requirement, as it did, for example, in RFRA's 'sister statute,' the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc, et seq." *Id.*

Consistent with the textual evidence, courts have refused to read an exhaustion requirement into RFRA, even in cases involving the military. The D.C. Circuit has explained that the logic underlying non-justiciability in some military cases is "wholly inappropriate . . . when a case presents an issue that is amenable to judicial resolution," recognizing that "courts have shown no hesitation to review cases in which a violation of the Constitution, statutes, or regulations is alleged." *Dilley v. Alexander*, 603 F.2d 914, 920 (D.C. Cir. 1979); *see id.* ("It is a basic tenet of our legal system that a government agency is not at liberty to ignore its own laws and that agency action in contravention of applicable statutes and regulations is unlawful. . . . The military departments enjoy no immunity from this proscription." (citations omitted)). Even if military operations require some deference from courts, "'resolving a claim founded solely upon a constitutional right is singularly suited to a judicial forum and clearly inappropriate to an administrative board.'" *Adair v. England,* 183 F. Supp. 2d 31, 55 (D.D.C. 2002) (quoting *Downen*

*v. Warner*, 481 F.2d 642, 643 (9th Cir. 1973)). In *Adair*, the court rejected the military's argument that plaintiffs with free-exercise claims should have "first exhausted their administrative remedies by raising their personnel claims with the Board for Correction of Naval Records ('BCNR') before coming to federal court." *Id*. Indeed, "the Supreme Court . . . [has] heard numerous [constitutional] challenges to military policies." *Brannum v. Lake*, 311 F.3d 1127, 1130 (D.C. Cir. 2002).

RFRA also provides no safe harbor for government actions that substantially burden religious exercise if a plaintiff still has administrative remedies pending, contrary to the Navy's arguments. That the Navy is sitting on a huge stack of accommodation requests and appeals while imposing its substantial burden cannot be a defense to a RFRA claim.[3] As the court in *Singh* put it in rejecting military defendants' arguments similar to the Defendants' here, "RFRA certainly provides no textual support for the defendants' position that the plaintiff is required to exhaust administrative remedies in a court-martial proceeding before bringing his constitutional and RFRA claims before this Court." 168 F. Supp. 3d at 226.

### 2.      Even if *Mindes* applied, its threshold requirements are met.

*Mindes* allows for judicial review of internal military decisions when the Plaintiff has (a) alleged a deprivation of a constitutional or statutory rights and (b) exhausted available intraservice corrective measures. 453 F.2d at 201; *Meister v. Tex. Adjutant General's Dep't,* 233 F.3d 332, 339 (5th Cir. 2000). It is undisputed that the Plaintiffs allege a deprivation of constitutional and statutory rights. The Fifth Circuit has recognized exceptions to the exhaustion requirement for review of internal military decisions. *Van Hoffburg v. Alexander,* 615 F.2d 633, 638 (5th Cir.

---

[3] The interim adverse actions in particular turn RFRA on its head. RFRA provides that once a plaintiff has shown a substantial burden on his religious exercise, that burden is presumptively impermissible. The government may impose a substantial burden only if it "demonstrates," 42 U.S.C. § 2000bb–1(b)—in other words, "meets the burdens of going forward with the evidence and of persuasion," 42 U.S.C. § 2000bb–2(3)—that it can satisfy RFRA's demanding strict-scrutiny standard. RFRA does not authorize a "burden first, adjudicate later" approach to religious accommodation requests like Plaintiffs' that set forth a prima facie substantial burden.

1980). Exhaustion is not required when administrative remedies would not provide adequate relief, *Hodges v. Callaway,* 499 F.2d 417, 420–21 (5th Cir. 1974), when the petitioner may suffer irreparable injury if he is compelled to pursue administrative remedies, *Rhodes v. United States,* 574 F.2d 1179, 1181 (5th Cir. 1978), when administrative appeal would be futile, *Hodges,* 499 F.2d at 420, and occasionally where the plaintiff has raised a substantial constitutional question, *see Downen,* 481 F.2d at 643, *but see Stanford v. United States,* 413 F.2d 1048 (5th Cir. 1969).

The Plaintiffs fall within these exceptions. Plaintiffs have already suffered and stand to further suffer irreparable injury should they be compelled to pursue administrative finality. *See* MPI Br. Part III.A; *see also* Parts I.C & II *infra*. Further, multiple plaintiffs have been informed by their chain of command that denials are inevitable, making the administrative process entirely futile. *See Carr v. Saul*, 141 S. Ct. 1352, 1361 (2021) ("[T]his Court has consistently recognized a futility exception to exhaustion requirements."). And none have been approved; in the past seven years the Navy has not granted a single religious accommodation to a vaccination requirement. App. 295. But even putting aside the farcical nature of the accommodation process, the "accommodation" that Defendants have announced—permanent non-deployability and removal from the Naval Special Warfare community with attendant loss of bonuses and special and incentive pays—is itself a farce. Forcing one to choose between "'engaging in conduct that seriously violates [his] religious belie[f]' or contravening the [ ] policy and risking disciplinary action" "easily satisfies" the substantial burden test. *Holt v. Hobbs*, 574 U.S. 352, 353 (2015) (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 720 (2014)). Finally, Plaintiffs' claims raise substantial constitutional questions. *See* Parts I.C and I.D *infra*.

**3.      Plaintiffs' claims are justiciable under *Mindes*' balancing test.**

Because the threshold step of *Mindes* is satisfied, the next step is weighing the following four factors to determine the justiciability of a claim regarding internal affairs: the nature and strength of the plaintiff's challenge to the military determination; the potential injury to the plaintiff if review is refused; the type and degree of anticipated interference with the military function; and the extent to which the exercise of military expertise or discretion is involved. *Mindes,* 453 F.2d at 201–02. Application of these factors favors review of the Plaintiffs' claims by this Court.

The first factor, the nature and strength of the Plaintiffs' challenge, favors judicial review. As discussed below in Parts I.C and I.D, Plaintiffs claims are particularly strong on the merits. Second, without review, the Plaintiffs face serious, irreparable injury. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality). The irreparability of the Plaintiffs' injuries is discussed below in Part II. Without review, Plaintiffs face consequences that can adversely and permanently affect their hard-earned military careers. Therefore, the potential injury is substantial, imminent, and irreparable. The third factor, type and degree of anticipated military function, provides a caveat: "[i]nterference *per se* is insufficient since there will always be some interference when review is granted, but if the interference would be such as to seriously impede the military in the performance of vital duties, it militates strongly against relief." *Mindes,* 453 F.2d at 201. Granting review of whether the Navy has properly followed the law in the evaluation of religious accommodation requests does not pose a threat to the Navy's performance of vital duties. Such review is a legal inquiry for attorneys and judges, rather than a factual one in which "'commanding officers would have to stand prepared to convince a civilian court of the wisdom

of a wide range of military and disciplinary decisions . . .'" as the Defendants allege. *Miller v. United States,* 42 F.3d 297, 303 (5th Cir. 1995) (quoting *United States v. Shearer*, 473 U.S. 52, 58 (1985)). Further, there is no evidence that the relief requested by the Plaintiffs would cause significant interference with the operations of the Navy. Throughout the pandemic, multiple Plaintiffs deployed overseas, both before and after the vaccine became available, with vaccination status being inconsequential to mission accomplishment. *See* Suppl. App. 1033–41, 1046–51, 1061–63, 1090–97, 1101–03, 1109–1111, 1115–18. The fourth factor also includes a nuance that the Defendants fail to acknowledge. It requires that "[c]ourts should defer to the superior knowledge and expertise of professionals in matters such as promotions or orders directly related to specific military functions." *Mindes,* 453 F.2d at 201–02. But as discussed in the third factor, Plaintiffs are not asking the Court to make a determination on a specific military function, but rather to evaluate the legality of the Navy's farcical religious accommodation process. Therefore, the "traditional deference" cited by the Defendants in applying *Mindes* to "internal military decisions" is inapplicable, as the Plaintiffs are making a claim of legal sufficiency, not military expertise. Therefore, because each of the four factors weigh in favor of review, *Mindes* does not serve as a procedural bar to the Plaintiffs' claims, even if it applied here.

### C.   Defendants' discriminatory policies and actions violate RFRA.

Defendants' assertion that its vaccine requirement complies with RFRA is nothing more than smoke and mirrors. While Defendants' regulations facially require a comprehensive RFRA analysis, the fact that Plaintiffs have and continue to suffer numerous threatening and coercive actions at the hands of Navy superiors, in addition to the fact that not one religious exemption request has been approved to date, are strong indicators that Plaintiffs requests have been or will

be arbitrarily and erroneously denied as a matter of course.[4] Contrary to Defendants' claim that their policies disallow adverse treatment while accommodation requests are pending, the direct evidence shows that multiple Plaintiffs suffered adverse actions for merely requesting a religious exemption. *See* App. 870–980, 981–1003, 1016–22, 1004–15; Suppl. App. 1023–25, 1030–32, 1039–41, 1052–54, 1058–78, 1082–1100, 1104–08, 1115–22, 1123–27, 1131–34*.* Plaintiffs have received written counseling admonishing them that they are disobeying a lawful order, which subjects them to potential court-martial, unless their accommodation request is *approved*. *See* Suppl. App. 1030–32, 1049–51, 1076–78, 1119–22, 1131–34. Plaintiffs have been removed from their positions, denied opportunities, and reassigned to menial tasks like cleaning and *watching someone paint a wall*, all because they had the audacity to assert their constitutional rights. *See* Suppl. App. 1030–32, 1061–63, 1076–78, 1082–89, 1094–1100, 1123–27, 1131–34. Navy policies aimed at financially harming those seeking religious exemptions were also implemented. App. 162 at ¶ 5.b. Such improper treatment has already substantially burdened Plaintiffs' free exercise of religion, even before certain exemption requests have been submitted and reviewed, making Plaintiffs' claims ripe for consideration. Defendants' assertion that Plaintiffs must wait for an indeterminate period of time to exhaust their intra-military remedies before presenting their claims, despite suffering continuing harm, is entirely without merit.

### D.      Defendants failed to satisfy strict scrutiny.

While stemming the spread of COVID-19 is a compelling government interest, *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (per curiam), "this interest cannot qualify as such forever," *Does 1-3 v. Mills*, 142 S. Ct. 17, 21 (2021) (Gorsuch, J., dissenting from the denial of application for injunctive relief). There is no doubt that Navy Special Warfare

---

[4] This is also supported by the fact that the Navy essentially admits it will not grant all 3000 pending religious exemption requests due to the sheer number alone, Opp. 24, even though that represents only 1% of the entire Navy.

operations require our elite forces to maintain optimal health. But Defendants have substantially burdened Plaintiffs' religious exercise while failing to demonstrate that application of the burden to the Plaintiffs is in furtherance of a compelling governmental interest. 42 U.S.C. §2000bb–1(b). The Navy broadly argues that because Plaintiffs perform specialized duties in various areas of operation, the compelling government interest is to achieve 100% vaccination compliance for the sake of overall health and safety, despite allowing medical exemptions. Opp. 21. But "[r]ather than rely on 'broadly formulated interests,' courts must 'scrutinize[ ] the asserted harm of granting specific exemptions to particular religious claimants.'" *Fulton v. City of Philadelphia,* 141 S. Ct. 1868, 1881 (2021) (quoting *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 431 (2006)).

Multiple Plaintiffs have described how their job duties, even on deployment, have been performed safely despite the COVID-19 pandemic, regardless of their vaccination status. In fact, the evidence shows that the Plaintiffs' duties changed not because of the pandemic, but *because of the mandate*. *See supra* Parts I.B & I.C. Plaintiffs continued their duties as usual during the pandemic, performing the same missions and tasks. Thus, the evidence shows that Plaintiffs can still perform their jobs and be deployed, even if unvaccinated. *Dr.A v. Hochul*, No. 21A145, 2021 WL 5873126, at *1 (U.S. Dec. 13, 2021) (Gorsuch, J., dissenting from the denial of application for injunctive relief) (noting that unvaccinated healthcare workers served their patients without "difficulty" until the vaccine mandate).  And "[w]here the government permits other activities to proceed with precautions, it must show that the religious exercise at issue is more dangerous than those activities even when the same precautions are applied. Otherwise, precautions that suffice

for other activities suffice for religious exercise too." *Tandon v. Newsom*, 141 S. Ct. 1294, 1297 (2021).[5]

Defendants also fail to demonstrate that vaccination is the least restrictive means of furthering the government interest. Plaintiffs are willing to adhere to numerous longstanding mitigation measures, such as masking, teleworking, and social distancing, as well as reasonable COVID-19 screening testing that is presently advertised as an acceptable alternative to vaccination by the Department of Defense. Suppl. App. 1166–89. Defendants scoff at these mitigation measures, but they have been used successfully throughout the pandemic as the SEALs carried on their normal responsibilities. Notably, some Plaintiffs testify that they have only been subject to COVID-19 testing after the mandate, even though testing is the best way to prevent transmission (as the CDC admits that vaccination does not), and other Plaintiffs testify that no mitigation measures are being taken in their jobs. *See Texas v. Becerra*, No. 2:21-CV-229-Z, 2021 WL 5964687, at *12 (N.D. Tex. Dec. 15, 2021) (finding it arbitrary that the federal government "allowed regular testing as an alternative to vaccination in the OSHA mandate" but not the CMS mandate). During a time when vaccine effectiveness is waning, such measures should not be foreclosed, and would certainly be a less restrictive means of controlling transmission of COVID-19 than requiring Plaintiffs to violate their deeply held beliefs. "[S]o long as the government can achieve its interests in a manner that does not burden religion, it must do so." *Fulton,* 141 S. Ct. at 1881.

Defendants fail to explain why they delayed imposing their mandate for eleven months in the face of a supposed compelling necessity. *See* MPI Br. 21. They argue that "the U.S. military

---

[5] DoD recently instructed federal contractors to stop enforcing the contractor vaccination mandate after the mandate was enjoined nationwide by the U.S. District Court for the Southern District of Georgia. Suppl. App. 1211–15; *Georgia v. Biden*, No. 1:21-cv-163, 2021 WL 5779939, *12 (S.D. Ga. Dec. 7, 2021). This further undermines any compelling interest in 100% force vaccination, as the SEALs regularly work with contractors. Suppl. App. 1119–27.

has no deadline for taking actions that maximize mission effectiveness and force readiness." Opp. 25. But this casual response ignores that substantial delays in imposing a vaccine mandate fatally undermine the government's asserted justification. *See BST Holdings, LLC v. OSHA*, 17 F.4th 604, 611 & n.10–11 (5th Cir. 2021). Likewise unavailing is Defendants' alternative argument that their delay was justified by the rise of the Delta variant and by FDA approval of the Pfizer vaccine. Opp. 25. Defendants do not dispute that the original virus strain was highly transmissible, that they had authority to mandate EUA-authorized vaccines, and that during their delay both vaccination and natural immunity increased among service members. *See* MPI Br. 21. That Defendants took the luxury of eleven months to gain "additional confidence and comfort" in vaccines that the FDA already had authorized, Opp. 25, flatly undermines their assertion of an emergency that only now requires service members to violate their deeply held religious convictions.

Defendants next contend that they have a compelling necessity to create a crisis of conscience even for those service members who have recovered from COVID-19 infection and developed natural antibodies, citing "insufficient data concerning 'natural immunity.'" Opp. 27. But this is arbitrary, as the federal government admits natural immunity is protective, *see Texas*, 2021 WL 5964687, at *12, and we already know that fully vaccinated individuals contract and transmit COVID-19.[6] Moreover, the fact that the Navy continues to approve medical and administrative exemptions while refusing to approve a single religious accommodation strongly suggests Defendants are enforcing the vaccine mandate in an arbitrary and capricious manner. *Id.* But even assuming *arguendo* that vaccination offers stronger or more durable immunity than previous infection, Opp. 27, this is a difference of degree, not kind. Such hair-splitting is hardly the showing that strict scrutiny requires. Defendants also utterly fail to explain how their rejection

---

[6] *See* App. 338–43 ("People who get vaccine breakthrough infections can be contagious.").

of natural immunity as a substitute for the COVID vaccination squares with their acceptance of the Johnson & Johnson vaccine, which during clinical trials—before the rise of the Delta and Omicron variants—proved only 66.3% effective in preventing infection. Suppl. App. 1201. The J&J shot now produces "virtually no antibody protection against the omicron coronavirus variant."[7] Yet the J&J vaccine fulfills the Navy's vaccination requirement, App. 145–47, while natural immunity does not.

Defendants' attempt to evade strict First Amendment scrutiny, Opp. 28–30, fares no better. To begin, Defendants do not dispute that RFRA applies to their mandate. Nor do they contest the sincerity of Plaintiffs' beliefs, or the substantial burden that the mandate imposes upon them. Thus, putting aside their threshold jurisdictional arguments, Defendants do not contest that imposition of their mandate on Plaintiffs must satisfy RFRA scrutiny—a standard virtually identical to strict scrutiny under the First Amendment. Regardless, Defendants' policies *do* trigger strict First Amendment scrutiny, as they are neither neutral nor generally applicable. An across-the-board carve-out for vaccine trial participants—contrasted with an across-the-board denial of religious accommodation requests—clearly treats secular conduct more favorably than comparable religious conduct. *See* MPI Br. 24. Moreover, Defendants conspicuously fail to address the facially discriminatory nature of the permanent medical-disqualification order, which applies only to religious objectors. *See id*. at 25–26.

Finally, Defendants' fallback argument that discrimination against religious exercise is permitted in the military—or at least accorded a more deferential First Amendment review than strict scrutiny—is meritless. Contrary to their contention, Opp. 29, multiple courts have applied

---

[7] Antony Sguazzin, *J&J Shot Loses Antibody Protection Against Omicron in Study*, Bloomberg Quint, https://www.bloombergquint.com/business/j-j-shot-shows-no-neutralization-against-omicron-in-lab-study (Dec. 15, 2021).

strict First Amendment scrutiny to military regulations and actions that burden the free exercise of religion. *See, e.g.*, *Hartmann v. Stone*, 68 F.3d 973, 978–79 (6th Cir. 1995) (applying *Lukumi* standard to Army regulation that prohibited religious practices by on-base family childcare providers); *accord Singh v. McHugh*, 185 F. Supp. 3d 201, 225 (D.D.C. 2016) (applying the *Lukumi* standard to Army's refusal to accommodate Sikh religious practices); *Adair*, 183 F. Supp. 2d at 53 (applying the *Lukumi* standard to free exercise claim by chaplains against the Navy). These decisions align with the Supreme Court's categorical and clear instruction that "[t]he principle that government, in pursuit of legitimate interests, cannot in a selective manner impose burdens only on conduct motivated by religious belief is essential to the protection of the rights guaranteed by the Free Exercise Clause." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 543 (1993).

## II.    Plaintiffs are Suffering Irreparable Harm.

Defendants are correct that "harm is irreparable where there is no adequate remedy at law," Opp. 30, but there is never an adequate remedy at law for even a brief deprivation of religious liberty rights. Violations of First Amendment and RFRA rights satisfy the irreparable harm requirement. *Opulent Life Church v. City of Holly Springs, Miss*., 697 F.3d 279, 295 (5th Cir. 2012) (citing *Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001) ("[C]ourts have held that a plaintiff satisfies the irreparable harm analysis by alleging a violation of RFRA.")); *accord DeOtte v. Azar*, 393 F. Supp. 3d 490, 511 (N.D. Tex. 2019). And as Justices Gorsuch and Alito recently agreed, the *threat* of loss of employment and unemployment benefits and the deprivation of religious liberty rights each satisfy the irreparable harm prong of the preliminary-injunction standard. *Dr.A*, 2021 WL 5873126, at *3 (Gorsuch, J., dissenting from the denial of application for injunctive relief).  Defendants' mandate also imposes irreparable harm because of its coercive effect, force a "crisis of conscience" that is itself a harm for the religious objector. As Judge Ho

14

said, "it is a quintessentially irreparable injury, warranting preliminary injunctive relief."
*Sambrano,* 2021 WL 5881819, at *2 (Ho, J., dissenting from denial of injunction pending appeal).
"It is difficult to imagine how a crisis of conscience, whether instigated by government or industry,
could be remedied by an award of monetary damages." *Id.* at *3.

### III.     The Equities and Public Interest Weigh in Favor of a Preliminary Injunction.

As Plaintiffs have already noted, "it is always in the public interest to prevent the violation
of a party's constitutional rights." *Jackson Women's Health Org. v. Currier,* 760 F.3d 448, 458
n.9 (5th Cir. 2014) (citing *Awad v. Ziriax,* 670 F.3d 1111, 1132 (10th Cir. 2012)). Defendants
assert that the Court "must 'give great deference' to the 'professional military judgments' of
[military] leaders when it comes to what is needed to ensure military readiness." Opp. 36 (quoting
*Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008)). But *Winter* involved balancing
potential harm to marine mammals with the Navy's ability to conduct sonar training—there were
no constitutional rights at issue. Nothing in *Winter* suggests that the deference given to the military
in balancing sonar training with a speculative harm to marine mammals that had not been
documented in 40 years of training should apply when the countervailing interest is an actual
violation of a constitutionally protected right. *Winter* itself noted that "military interests do not
always trump other considerations." 555 U.S. at 26.

Defendants also cite the public-interest analysis in *Church*. Opp. 36. But *Church* construes
the plaintiffs' interest as "a pecuniary interest in federal employment while their exception requests
are pending," noting that the prospect of "adverse employment action" in that case is "remote."
2021 WL 5179215 at *18. Here, Plaintiffs assert not merely pecuniary loss, but the deprivation of
First Amendment freedoms, which are always in the public interest to protect. Furthermore,
Plaintiffs seek an injunction to preserve the *status quo*—not to upend it. *See Georgia*, 2021 WL
5779939, at *12 ("Enjoining EO 14042 would, essentially, do nothing more than maintain the

15

status quo; entities will still be free to encourage their employees to get vaccinated, and the employees will still be free to choose to be vaccinated. In contrast, declining to issue a preliminary injunction would force Plaintiffs to comply with the mandate . . . . Additionally, requiring compliance with EO 14042 would likely be life altering for many of Plaintiffs' employees.") Because Plaintiffs have a substantial likelihood of success on the merits, "harm to [Defendants] from delaying enforcement is slight." *Fla. Businessmen for Free Enter. v. City of Hollywood,* 648 F.3d 956, 959 (5th Cir. Unit B June 1981).

## IV.     Broad Relief Is Warranted.

As this Court stated in *Franciscan Alliance, Inc. v. Burwell,* 227 F. Supp. 3d 660, 695 (N.D. Tex. 2016), "'[D]istrict courts enjoy broad discretion in awarding injunctive relief.' *Nat'l Min. Ass'n v. U.S. Army Corps of Eng'rs,* 145 F.3d 1399, 1408 (D.C. Cir. 1998). '. . . It is not beyond the power of a court, in appropriate circumstances, to issue a nationwide injunction.' *Texas v. United States,* 809 F.3d 134, 188 (5th Cir. 2015)." Furthermore, as this Court also noted, "[w]hen a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed." *Id.* (quoting *Harmon v. Thornburgh,* 878 F.2d 484, 495 n.21 (D.C. Cir. 1989)).

The Defendants' regulations facially violate the Free Exercise Clause and RFRA. *See* MPI Br. 9, 25–26 (noting that Trident Order #12, § 6.D and MANMED ¶ n(9) establishes that Navy Special Operations Designated Personnel that *receive* a religious exemption to the vaccine mandates "will still be medically disqualified," while those with medical exemptions are not automatically medically disqualified.). Such facially illegal directives should be vacated.

16

## CONCLUSION

This Court should grant the motion for a preliminary injunction.

Respectfully submitted this 17th day of December, 2021.

KELLY J. SHACKELFORD
   Texas Bar No. 18070950
JEFFREY C. MATEER
   Texas Bar No. 13185320
HIRAM S. SASSER, III
   Texas Bar No. 24039157
DAVID J. HACKER
   Texas Bar No. 24103323
MICHAEL D. BERRY
   Texas Bar No. 24085835
JUSTIN BUTTERFIELD
   Texas Bar No. 24062642
FIRST LIBERTY INSTITUTE
2001 W. Plano Pkwy., Ste. 1600
Plano, Texas 75075
Tel: (972) 941-4444
jmateer@firstliberty.org
hsasser@firstliberty.org
dhacker@firstliberty.org
mberry@firstliberty.org
jbutterfield@firstliberty.org
rbyron@firstliberty.org

JORDAN E. PRATT
   Florida Bar No. 100958*  **
FIRST LIBERTY INSTITUTE
227 Pennsylvania Ave., SE
Washington, DC 20003
Tel: (972) 941-4444
jpratt@firstliberty.org

*Admitted pro hac vice
** Not yet admitted to the D.C. Bar, but
admitted to practice law in Florida. Practicing
law in D.C. pursuant to D.C. Court of
Appeals Rule 49(c)(8) under the supervision
of an attorney admitted to the D.C. Bar.

/s/ Heather Gebelin Hacker
HEATHER GEBELIN HACKER
   Texas Bar No. 24103325
ANDREW B. STEPHENS
   Texas Bar No. 24079396
HACKER STEPHENS LLP
108 Wild Basin Road South, Suite 250
Austin, Texas 78746
Tel.: (512) 399-3022
heather@hackerstephens.com
andrew@hackerstephens.com

*Attorneys for Plaintiffs*

17

**CERTIFICATE OF SERVICE**

I hereby certify that on December 17, 2021, I electronically filed the foregoing document through the Court's ECF system, which automatically notifies counsel of record for each party.

/s/Heather Gebelin Hacker
HEATHER GEBELIN HACKER