**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| **NAVY SEALS 1-26,** *et al.*,<br><br>                    Plaintiffs,<br><br>    v.<br><br>**LLOYD AUSTIN, III**, in his individual capacity and in his official capacity as Secretary of Defense, *et al.*,<br><br>                    Defendants. | Case No. 4:21-cv-01236-O |

**OFFICIAL CAPACITY DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

BACKGROUND ..................................................................................................... 2

I.      Department of Defense's COVID-19 Vaccination Directive ............................................. 2

II.     The Navy's Implementation of DoD's Vaccination Directive ...........................................3

III.    Plaintiffs' Challenge to the DoD and Navy Vaccination Directives ..................................5

LEGAL STANDARDS ............................................................................................ 6

I.      Motion to Dismiss for Lack of Subject Matter Jurisdiction ................................................6

II.     Motion to Dismiss for Improper Venue...............................................................6

ARGUMENT ........................................................................................................ 7

        A.      The Case Must Be Dismissed Because Plaintiffs' Claims Are Not Ripe. ..............8

        B.      Plaintiffs Failed to Exhaust Administrative Remedies. .......................................12

        C.      Venue Is Not Proper In This District. ..................................................................13

CONCLUSION....................................................................................................... 20

# TABLE OF AUTHORITIES

## CASES

*Abbott Labs. v. Gardner*,
  387 U.S. 136 (1967) ........................................................................................................ 8

*Airport Wkg. Grp. of Orange Cnty., Inc. v. U.S. Dep't of Def.*,
  226 F. Supp. 2d 227 (D.D.C. 2002) ............................................................................... 13

*Ambraco, Inc. v. Bossclip B.V.*,
  570 F.3d 233 (5th Cir. 2009) ........................................................................................ 6, 7

*Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*,
  571 U.S. 49 (2013) ......................................................................................................... 13

*Banks v. Fed. Deposit Ins. Corp.*,
  No. 3:08-cv-1076-G, 2009 WL 289604 (N.D. Tex. Feb. 2, 2009) ................................. 14, 15

*Bartman v. Cheney*,
  827 F. Supp. 1 (D.D.C. 1993) ........................................................................................ 15

*Bigham v. Envirocare of Utah, Inc.*,
  123 F. Supp. 2d 1046 (S.D. Tex. 2000) ......................................................................... 16

*Bosse v. Chertoff*,
  No. 05-cv-02170-MSK, 2007 WL 484590 (D. Colo. Feb. 9, 2007) .............................. 14

*Braspetro Oil Servs. Co. v. Modec (USA), Inc.*,
  240 F. App'x 612 (5th Cir. 2007) .................................................................................... 6

*Brewer v. United States*,
  No. CV H-17-870, 2017 WL 6398637 (S.D. Tex. June 19, 2017) .................................. 7

*Caldwell v. Palmetto State Sav. Bank of S.C.*,
  811 F.2d 916 (5th Cir. 1987) ........................................................................................... 7

*Caremark Therapeutic Servs. v. Leavitt*,
  405 F. Supp. 2d 454 (S.D.N.Y. 2005) ........................................................................... 14

*Choice Inc. v. Greenstein*,
  691 F.3d 710 (5th Cir. 2012) ........................................................................................ 6, 8

*Church v. Biden*,
  No. 21-2815, 2021 WL 5179215 (D.D.C. Nov. 8, 2021) .............................................. 9, 11

*Collins v. Hagel*,
  No. 1:13-cv-2051-WSD, 2015 WL 5691076 (N.D. Ga. Sept. 28, 2015) ....................... 13

*Energy Transfer Partners, L.P. v. Fed. Energy Regulatory Comm'n,*
    567 F.3d 134 (5th Cir. 2009) ................................................................. 12

*Fla. Nursing Home Ass'n v. Page,*
    616 F.2d 1355 (5th Cir. 1980) ............................................................... 15

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,*
    546 U.S. 418 (2006) ................................................................................. 9

*Gulf Ins. Co. v. Glasbrenner,*
    417 F.3d 353 (2d Cir. 2005) ................................................................... 16

*Gyau v. Sessions,*
    No. 18-cv-407, 2018 WL 4964502 (D.D.C. Oct. 15, 2018) ................... 19

*Harkness v. Sec'y of Navy,*
    858 F.3d 437 (6th Cir. 2017) ................................................................. 12

*Hodges v. Callaway,*
    499 F.2d 417 (5th Cir. 1974) ................................................................. 12

*Holz v. United States,*
    No. 3:08-CV-1568-P, 2009 WL 10704725 (N.D. Tex. Sept. 28, 2009) .................. 6

*Home Builders Ass'n of Miss., Inc. v. City of Madison,*
    143 F.3d 1006 (5th Cir. 1998) ................................................................. 6

*Huawei Techs. USA, Inc. v. FCC,*
    2 F.4th 421 (5th Cir. 2021) ................................................................. 8, 9

*Igene v. Sessions,*
    No. CV H-17-3143, 2018 WL 1582239 (S.D. Tex. Mar. 29, 2018) ......... 7

*Jones v. Hagel,*
    956 F. Supp. 2d 284 (D.D.C. 2013) ....................................................... 13

*Jyachosky v. Winter,*
    No. CIV.A.04-01733(HHK), 2006 WL 1805607 (D.D.C. June 29, 2006) .............. 15

*Kopin v. Wells Fargo Bank, N.A.,*
    No. 3-11-CV-1698-O, 2011 WL 13130489 (N.D. Tex. Nov. 14, 2011) ................. 16

*Kruise v. Fanning,*
    No. 15-cv-1213, 2016 WL 11672724 (D.D.C. June 14, 2016) ............... 13

*La. Power & Light Co. v. Fed. Power Comm'n,*
    526 F.2d 898 (5th Cir. 1976) ................................................................... 9

*Lopez v. City of Houston,*
  617 F.3d 336 (5th Cir. 2010) ..................................................................... 8

*Martin, Mason, Stutz, L.L.P. v. Columbia Sussex Corp.,*
  No. 3:08-CV-2190-O, 2009 WL 10704844 (N.D. Tex. Apr. 21, 2009) ................................... 7

*McClintock v. Sch. Bd. E. Feliciana Par.,*
  299 F. App'x 363 (5th Cir. 2008) ....................................................... 7, 16

*Mindes v. Seaman,*
  453 F.2d 197 (5th Cir. 1971) ................................................................ 8, 12

*Mitsui & Co. (USA), Inc. v. MIRA M/V,*
  111 F.3d 33 (5th Cir. 1997) .................................................................. 6

*Monk v. Huston,*
  340 F.3d 279 (5th Cir. 2003) ................................................................ 8

*Mt. Hawley Ins. Co. v. Baddley Chem. Co.,*
  No. CIVA H-06-0565, 2006 WL 2022909 (S.D. Tex. July 17, 2006), *report and
  recommendation adopted,* No. 6:16-CV-298-RWS-KNM, 2017 WL 3671372
  (E.D. Tex. Mar. 14, 2017) .................................................................... 16

*Nat'l Ass'n of Life Underwriters v. Clarke,*
  761 F. Supp. 1285 (W.D. Tex. 1991) ..................................................... 17

*Ohio Forestry Ass'n v. Sierra Club,*
  523 U.S. 726 (1998) ............................................................................. 9

*Orloff v. Willoughby,*
  345 U.S. 83 (1953) ............................................................................... 12

*Pasem v. U.S. Citizenship & Immigr. Servs.,*
  No. 20-CV-344 (CRC), 2020 WL 2514749 (D.D.C. May 15, 2020) ...................... 17

*Psarros v. Avior Shipping, Inc.,*
  192 F. Supp. 2d 751 (S.D. Tex 2002) .................................................... 6, 7

*Ramming v. United States,*
  281 F.3d 158 (5th Cir. 2001) ............................................................... 6

*Redi-Mix Sols., Ltd. v. Express Chipping, Inc.,*
  No. 6:16-CV-298-RWS-KNM, 2017 WL 3671377 (E.D. Tex. Feb. 9, 2017) ......................... 16

*Reuben H. Donnelley Corp. v. FTC,*
  580 F.2d 264 (7th Cir. 1978) ................................................................. 14, 15

*Robert v. Austin*,
   No. 21-CV-0228-RM-STV, 2022 WL 103374 (D. Colo. Jan. 11, 2022) ......................... 10, 11

*Roman Catholic Diocese of Dallas v. Sebelius*,
   927 F. Supp. 2d 406 (N.D. Tex. 2013) ...................................................................... 11

*Schlanger v. United States*,
   586 F.2d 667 (9th Cir. 1978) ................................................................................... 12

*Seariver Mar. Fin. Holdings, Inc. v. Pena*,
   952 F. Supp. 455 (S.D. Tex. 1996) ...................................................................... 13, 20

*Shrimpers & Fisherman of the RGV v. U.S. Army Corps of Eng'rs*,
   849 F. App'x 459 (5th Cir. 2021) ............................................................................... 9

*Smith v. Dalton*,
   927 F. Supp. 1 (D.D.C. 1996) ................................................................................. 15

*Smith v. Harvey*,
   541 F. Supp. 2d 8 (D.D.C. 2008) ......................................................................... 10, 11

*Tabletop Media, LLC v. Citizen Sys. Am. Corp.*,
   No. 3:16-cv-1304-C, 2016 WL 11522083 (N.D. Tex. Sept. 21, 2016) ....................... 7

*Thomas v. Union Carbide Agric. Prods. Co.*,
   473 U.S. 568 (1985) .................................................................................................. 8

*Toilet Goods Association v. Gardner*,
   387 U.S. 158 (1967) ............................................................................................... 10

*TOTAL Gas & Power N. Am., Inc. v. Fed. Energy Regulatory Comm'n*,
   859 F.3d 325 (5th Cir. 2017) .......................................................................... 8, 10, 12

*Trump v. New York*,
   141 S. Ct. 530 (2020) ............................................................................................. 11

*United States for use & benefit of Robert Lloyd Elec. Co. v. Fluor Enters., Inc.*,
   No. 7:19-CV-00036-O, 2019 WL 13112058 (N.D. Tex. Aug. 26, 2019) .............. 6, 7

*U.S. Navy SEALs 1-26 v. Biden*,
   --- F. Supp. 3d ---, 2022 WL 34443 (N.D. Tex. Jan. 3, 2022) ........................... 12, 17

*Vince v. Mabus*,
   956 F. Supp. 2d 83 (D.D.C. 2013) ........................................................................... 15

*Von Hoffburg v. Alexander*,
   615 F.2d 633 (5th Cir. 1980) .................................................................................. 12

*Webster v. Mattis*,
   279 F. Supp. 3d 14 (D.D.C. 2017) ........................................................................... 15

*Wei Lai Dev. LLC v. U.S. Citizenship & Immigr. Servs.*,
   No. 21-887 (RDM), 2021 WL 2073403 (D.D.C. May 24, 2021) ............................... 19

*Williams v. United States*,
   No. C-01-0024 EDL, 2001 WL 1352885 (N.D. Cal. Oct. 23, 2001) ......................... 14

*Wilson v. Dep't of the Army*,
   No. 3:13-cv-643-H, 2013 WL 6730281 (S.D. Cal. Dec. 19, 2013) .................................. 13, 14

*Woodke v. Dahm*,
   70 F.3d 983 (8th Cir. 1995) .................................................................................. 16

**STATUTES**

28 U.S.C. § 1391 .................................................................................................. p*assim*

28 U.S.C. § 1406 ................................................................................................ 1, 20

42 U.S.C. § 2000e-5 .............................................................................................. 13

**RULES**

Fed. R. Civ. P. 12 ............................................................................................... 6, 20

**OTHER AUTHORITIES**

Arthur R. Miller, et al., <u>Federal Practice and Procedure</u> 14D (4th ed. 2013) ............................... 14

Office of the Assistant Secretary of Defense for Sustainment, *Real Property Accountability*,
   https://www.acq.osd.mil/ eie/bsi/bei_rpa.html (last visited Jan. 12, 2022) ............................. 14

U.S. Dep't of Defense, Mailing Addresses,
   https://www.defense.gov/Resources/Mailing-Addresses/ (last visited Jan. 14, 2022) ....... 14, 15

## INTRODUCTION

Plaintiffs in this action claim that the Navy's addition of the COVID-19 vaccination to the list of required immunizations substantially burdens their religious exercise.  But Plaintiffs' claims are not ripe for review and should be dismissed for lack of jurisdiction.  Plaintiffs filed suit before providing the Navy chain of command a full opportunity to consider their religious accommodation requests under valid Navy regulations binding on service members.  The Navy has not reached a final decision on Plaintiffs' requests.  Moreover, the Navy has taken no legally cognizable adverse action against any Plaintiff.  And if Plaintiffs' requests were finally denied, any future cognizable adverse action would be accompanied by additional meaningful opportunities for Plaintiffs to be heard.  In these circumstances, no claim before the Court is ripe and jurisdiction is therefore lacking.

If the case is not dismissed for lack of jurisdiction, it should be dismissed or transferred for improper venue.  As set forth below, there is no basis under the governing venue statute, 28 U.S.C. § 1391(e), for this action to proceed in the Northern District of Texas.  No Defendant resides in this district.  Plaintiffs have not pled or sought to establish venue by showing that any Plaintiff resides in this district, and according to information available to Defendants, none of the Plaintiffs reside in this district.  Lastly, none of the events giving rise to any Plaintiff's claims took place in this district.  None of the challenged policies was promulgated within this district.  At most, it appears that a religious exemption request for a single Plaintiff was forwarded from his Navy reserve unit in Fort Worth for a decision by Navy officials located in Arlington, Virginia.  But venue cannot be established by the mere transmission of paperwork to deciding officials by one Plaintiff.  Dismissal for improper venue, or transfer to another district pursuant to 28 U.S.C. § 1406 is therefore warranted.

1

## BACKGROUND

### I.      Department of Defense's COVID-19 Vaccination Directive

The Department of Defense's ("DoD") current immunization program is governed by DoD Instruction ("DoDI") 6205.02.  Nine vaccines are required for all service members, including the annual influenza vaccine, while eight others are required when certain elevated risk factors are present.  *See* Defs.' Prelim. Inj. Opp'n App'x at App063 (Navy Bureau of Medicine and Surgery Instruction ("BUMEDINST") 6230.15B), Table D-1), ECF No. 44-1.  In general, DoD aligns its immunization requirements and eligibility determinations for service members with recommendations from the Centers for Disease Control and Prevention's Advisory Committee on Immunization Practices.  *Id*. at App009 (DoDI 6205.02, at 1.2). The Military Services have separately issued regulatory guidance for the administration of vaccines to service members, including processes to seek medical and religious exemptions. *See, e.g.*, *id*. at App040–41 (BUMEDINST 6230.15B, ¶¶ 2–6).

On August 9, 2021, the Secretary of Defense, noting the impact COVID-19 rates have on military readiness, announced that he would add the COVID-19 to the list of diseases for which routine immunizations are required for all service members by the earlier of mid-September or upon approval of a vaccine by the Food and Drug Administration ("FDA").  *See id*. at App002 (Mem. for all Defense Employees (Aug. 9, 2021)).  On August 24, 2021, after FDA announced the approval of the Pfizer COVID-19 vaccine, the Secretary directed the Secretaries of the Military Departments to immediately vaccinate all members of the armed forces under DoD authority who were not already fully vaccinated.  *See id*. at App004–05 (Mem. For Senior Pentagon Leadership, Commanders of the Combatant Commands, Defense Agency and DoD Field Activity Directors (Aug. 24, 2021)).

## II.      The Navy's Implementation of DoD's Vaccination Directive

Shortly after the Secretary of Defense issued the vaccination directive, the Navy issued

guidance for implementing the Secretary's directive.  Defs.' Prelim. Inj. Opp'n App'x at App075–

76 (ALNAV 062/21).  Upon determining that COVID-19 "adversely impacts [the Navy's] force

readiness and mission execution," the Secretary of the Navy directed active-duty service members

to be fully vaccinated within 90 days (*i.e.*, by November 28, 2021).  *Id.* at App075 (ALNAV 062/21

¶¶ 2, 4).

As with other vaccination requirements, the Navy's implementation guidance establishes

a process to seek medical and religious exemptions.  *See id.* at App079 (NAVADMIN 190/21 ¶

3.d).  All unvaccinated service members receive written counseling, commonly called a "Page 13,"

to advise the service member of potential health, travel, and administrative consequences of

remaining unvaccinated and to inform them of their option to seek an exemption from the

immunization requirement.  *Id.* at App309, App312 (Decl. of William Merz ¶¶ 14, 16), ECF No.

44-3.  "A Page 13 is not a punitive action," "is not considered to be an adverse matter," and "will

not affect a member's career."  *Id.* at App312 (Merz Decl. ¶ 16).

A service member seeking an exemption from immunization for religious reasons must

submit a request via his or her commander and must include a chaplain's assessment of the

member's sincerity as well as the Page 13 issued to the service member.  *Id.* at App308–09 (Merz

Decl. ¶ 14).  The commander provides an endorsement of the exemption request, but is not

responsible for or authorized to approve or deny the request.  *Id.* at App309 (Merz Decl. ¶ 14).

Instead, the commander forwards the complete request package to the Deputy Chief of Naval

Operations (Manpower, Personnel, Training and Education) ("CNO N1"), who is located in

Arlington, Virginia, for a decision on the request.  *Id.*; *see also* Defs.' Mot. to Dismiss App'x at

App004 (Decl. of Peter DiCaro ¶ 7).  The CNO N1's decision is relayed to the service member by the member's commander.  Defs.' Mot. to Dismiss App'x at App004–05 (DiCaro Decl. ¶ 8).  If the CNO N1 denies the request and service member chooses to appeal, the service member submits the appeal through his or her commander, who provides an endorsement of the request.  *See id.* Because the commander is not responsible for or authorized to approve or deny the appeal, the commander forwards the complete appeal package to the Chief of Naval Operations ("CNO"), who is located in Arlington, Virginia, for a decision on the appeal.  *Id.* at App004–05 (DiCaro Decl. ¶¶ 8–9).

A service member who refuses vaccination without an approved exemption may be subject to discipline or adverse administrative action.  *See, e.g.*, Defs.' Prelim. Inj. Opp'n App'x at App075 (ALNAV 062/21 ¶ 5), ECF No. 44-1.  But adverse action will not be taken against a service member with a pending exemption request.  *Id.* at App084 (NAVADMIN 225/21 ¶ 3.c); *id.* at App294 (Decl. of Mery-Angela Sanabria Katson) ¶ 3), ECF No. 44-3; *id.* at App306, App310 (Merz Decl. ¶¶ 10 n.9, 14 n.13).

On October 13, 2021, the Navy issued NAVADMIN 225/21, designating the Chief of Naval Personnel[1] as the COVID Consolidated Disposition Authority—the centralized authority to initiate separation procedures for sailors who refuse the COVID-19 vaccination and do not have a pending exemption request.  *Id.* at App084–85 (NAVADMIN 225/21 ¶ 5), ECF No. 44-1.  The same NAVADMIN designated the Vice Chief of Naval Operations—the second highest uniformed officer in the Navy—as the Navy authority to initiate court-martial and non-judicial punishment

---

[1] CNO N1 is identified by the alternate designation of Chief of Naval Personnel ("CNP") in some policies.  CNO N1 and CNP are interchangeable acronyms and refer to the same position and official.  *See* Defs.' Prelim. Inj. Opp'n App'x at App309 (Merz Decl. ¶ 14 n.11), ECF No. 44-3.

for sailors refusing the COVID-19 vaccination without an exemption. *Id.* These disciplinary authorities are thus withheld from lower-level commanders.

On November 15, 2021, the Chief of Naval Personnel issued further guidance to commanders pertaining for service members refusing the COVID-19 vaccination. *See id*. at App089–96 (NAVADMIN 256/21). This guidance provides that the "least favorable characterization of service for Navy service members refusing the vaccine, without extenuating circumstances, will be GENERAL (under honorable conditions)." *Id*. at App090 (NAVADMIN 256/21 ¶ 2.a). However, "Navy service members who are not vaccinated, regardless of exemption status, may be temporarily reassigned with concurrence of the first flag officer in the administrative chain of command based on operational readiness and mission requirements." *Id.*

## III.   Plaintiffs' Challenge to the DoD and Navy Vaccination Directives

Plaintiffs are 35 service members in the U.S. Navy's Special Warfare community who do not wish to take a COVID-19 vaccine. *See* Compl. ¶ 1, ECF No. 1. None of the Plaintiffs plead that they reside in the Northern District of Texas. *See generally id.* Plaintiffs all claim to have religious objections to taking the COVID-19 vaccine, and most submitted religious exemption requests. *See* Defs.' Mot. to Dismiss App'x at App007 (Decl. of Mery-Angela Sanabria Katson ¶ 2). Even though no Plaintiff's request has been finally adjudicated, they filed this suit against the Secretary of Defense, the Department of Defense, and the Secretary of the Navy to challenge the DoD COVID-19 vaccination directive and the Navy's guidance implementing that directive under the Religious Freedom Restoration Act ("RFRA"), the First Amendment, and the Administrative Procedure Act ("APA"). Compl. ¶¶ 100–257.

## LEGAL STANDARDS

### I.   Motion to Dismiss for Lack of Subject Matter Jurisdiction

Rule 12(b)(1) requires dismissal of a complaint where the court "lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted). "The justiciability doctrines of standing, mootness, political question, and ripeness all originate in Article III's case or controversy language." *Choice Inc. v. Greenstein* , 691 F.3d 710, 715 (5th Cir. 2012) (citations omitted). "The plaintiff, as the party asserting jurisdiction, bears the burden of proof." *Id*. at 714. "In assessing jurisdiction, the district court is to accept as true allegations of facts set forth in the complaint." *Id*. "Additionally, 'the district court is empowered to consider matters of fact which may be in dispute.'" *Id*. (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

### II.   Motion to Dismiss for Improper Venue

"Whether venue is proper is a threshold question." *Holz v. United States*, No. 3:08-CV-1568-P, 2009 WL 10704725, at *2 (N.D. Tex. Sept. 28, 2009) (citation omitted). "A party may move to dismiss an action based on improper venue pursuant to Fed. R. Civ. P. 12(b)(3)." *Id.* (citing *Psarros v. Avior Shipping, Inc.*, 192 F. Supp. 2d 751, 754 n.4 (S.D. Tex 2002); *Mitsui & Co. (USA), Inc. v. MIRA M/V*, 111 F.3d 33, 37 (5th Cir. 1997)). Although "[o]n a Rule 12(b)(3) motion to dismiss for improper venue, the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff," *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007), "the court is permitted to look at evidence beyond simply those facts alleged in the complaint and its proper attachments," *United States for use & benefit of Robert Lloyd Elec. Co. v. Fluor Enters., Inc.*, No. 7:19-CV-00036-O, 2019 WL 13112058, at *2 (N.D. Tex. Aug. 26, 2019) (O'Connor, J.) (quoting *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233,

238 (5th Cir. 2009)).

"Once a defendant raises the issue of improper venue, the plaintiff has the burden to prove that the chosen venue is proper." *Martin, Mason, Stutz, L.L.P. v. Columbia Sussex Corp.*, No. 3:08-CV-2190-O, 2009 WL 10704844, at *3 (N.D. Tex. Apr. 21, 2009) (O'Connor, J.) (citing *Psarros*, 192 F. Supp. 2d at 753); *see also Igene v. Sessions*, No. CV H-17-3143, 2018 WL 1582239, at *1 (S.D. Tex. Mar. 29, 2018); *Brewer v. United States*, No. CV H-17-870, 2017 WL 6398637, at *1 (S.D. Tex. June 19, 2017). Moreover, "[w]hen a case involves multiple claims, venue must be proper as to each claim asserted." *Fluor Enters.*, 2019 WL 13112058, at *4 (quoting *Tabletop Media, LLC v. Citizen Sys. Am. Corp.*, No. 3:16-cv-1304-C, 2016 WL 11522083 (N.D. Tex. Sept. 21, 2016)).

"If a district court where suit is filed determines that venue is improper, it has discretion to either dismiss the suit, or 'if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.'" *McClintock v. Sch. Bd. E. Feliciana Par.*, 299 F. App'x 363, 366 (5th Cir. 2008) (quoting 28 U.S.C. § 1406(a)); *Caldwell v. Palmetto State Sav. Bank of S.C.*, 811 F.2d 916, 919 (5th Cir. 1987) (stating that the "court has broad discretion in deciding whether to order a transfer" and may do so "upon a motion or sua sponte").

## ARGUMENT

This Court lacks jurisdiction over the case because Plaintiffs' claims are not ripe and they have failed to exhaust their administrative remedies. Even if the Court finds that it has jurisdiction, the case must be dismissed or transferred for improper venue.

**A.  The Case Must Be Dismissed Because Plaintiffs' Claims Are Not Ripe.**

Plaintiffs' claims are not ripe.[2]  "The ripeness doctrine's basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *TOTAL Gas & Power N. Am., Inc. v. Fed. Energy Regulatory Comm'n*, 859 F.3d 325, 333 (5th Cir. 2017) (quoting *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012)).  Ripeness "protects the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Huawei Techs. USA, Inc. v. FCC*, 2 F.4th 421, 434 (5th Cir. 2021) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967)).  "If [a] purported injury is 'contingent on future events that may not occur as anticipated, or indeed may not occur at all,' the claim is not ripe for adjudication." *Lopez v. City of Houston*, 617 F.3d 336, 342 (5th Cir. 2010) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)).

"To determine whether claims are ripe, [courts] evaluate (1) the fitness of the issues for judicial resolution, and (2) the potential hardship to the parties caused by declining court consideration." *Id*. at 341.  Both prongs must be satisfied.  "Unsuitability for review is determinative." *Huawei Techs.*, 2 F.4th at 435 n.30.  Similarly, a court need not "address the fitness of the issues for judicial decision" where a plaintiff "has not satisfied the hardship prong of the ripeness inquiry." *Choice Inc.*, 691 F.3d at 718.  Generally, "a case is not ripe if further factual development is required." *Monk v. Huston*, 340 F.3d 279, 282 (5th Cir. 2003) (citation omitted).

Plaintiffs' claims fail to satisfy each prong.  Their claims are not fit for judicial resolution for several reasons.  First, "matters 'still pending before [an agency] . . . [are] not yet ripe for

---

[2] In its Order on Plaintiffs' Preliminary Injunction, ECF No. 66, the Court addressed justiciability under *Mindes v. Seaman*, 453 F.2d 197, 201 (5th Cir. 1971), including Defendants' claim that exhaustion of intra-military remedies is required before judicial review.  But the Court did not address or decide whether Plaintiffs' claims were ripe for review in the preliminary injunction order.

judicial review.'" *Shrimpers & Fisherman of the RGV v. U.S. Army Corps of Eng'rs*, 849 F. App'x 459, 462 (5th Cir. 2021) (quoting *La. Power & Light Co. v. Fed. Power Comm'n*, 526 F.2d 898, 910 (5th Cir. 1976)).  Plaintiffs brought suit before any had a final decision on their religious accommodation requests.[3]  *See Huawei Techs.*, 2 F.4th at 434–35.  Addressing Plaintiffs' claims before their religious accommodation requests are finally adjudicated "would require the Court to adjudicate internal military affairs before the military chain of command has had a fully opportunity to consider the accommodation requests at issue."  *Church v. Biden*, No. 21-2815, 2021 WL 5179215, at *11 (D.D.C. Nov. 8, 2021).  Plaintiffs' RFRA claims require scrutiny of "the asserted harm of granting specific exemptions to particular religious claimants."  *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 431 (2006).  But without a final decision on their religious accommodation requests, there is no decision to grant or to deny an exemption to Plaintiffs based on their circumstances subject to judicial review, nor a complete record on the matter.  Also, "immediate judicial review directed at the lawfulness of" Plaintiffs' compliance with the vaccination directive before appeals are adjudicated "could hinder [Navy] efforts to refine its policies[]" while considering those appeals.  *See Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 735 (1998).  Moreover, the Navy does not merely request that service members complete the religious accommodation request procedure.  Instead, the requirement of completing religious accommodation request procedure is prescribed in Navy regulations that are valid and binding on service members.  The regulations are designed to assure that the military's decision-making process is followed.  Plaintiffs present no basis for disregarding them.

---

[3] One Plaintiff failed to seek a religious accommodation request.  Defs.' Mot. to Dismiss App'x at App007 (Katson Decl. ¶ 2).  Eight Plaintiffs who received an initial determination on their religious accommodation request failed to appeal the decision.  *Id.*  These Plaintiffs' unilateral decisions not to provide Navy officials with a full opportunity to consider their requests for an accommodation cannot provide a basis for determining that their claims are fit for judicial resolution.  That is especially so where Plaintiffs have not shown that the Navy would decline to address any requests or appeals submitted now.  *See id.* (Katson Decl. ¶ 3).

Second, even assuming their religious accommodation requests will be denied, Plaintiffs' claims would still be unripe for judicial resolution at this time.  The Supreme Court opinion in *Toilet Goods Association v. Gardner*, 387 U.S. 158 (1967), is instructive.  There, a statute prohibited the use of color additives without agency certification.  The challenged regulation provided that the agency "may immediately suspend certification service" to any covered facility refusing agency inspector access.  *Id.* at 161.  The Court found the validity of the regulation unripe for review.  *Id.* at 162–64.  Because the regulation was permissive rather than mandatory—it did not compel the agency to suspend certification but only purported to authorize the agency to exercise a discretionary power to do so—the legal issues could arise in a variety of contexts depending on the agency's subsequent determination of the circumstances justifying the use of the sanction of suspension.  *Id.* at 163–64.

In this case, Navy regulations provide that "Navy service members refusing the COVID-19 vaccination, absent pending or other approved exemption, shall be processed for administrative separation[.]"  NAVADMIN 225 ¶ 2.  But the Navy's "initiation of separation proceedings is a tentative action not fit for judicial review; one can only speculate as to the final outcome of any proceeding."  *Smith v. Harvey*, 541 F. Supp. 2d 8, 13 (D.D.C. 2008).  "Members processed for separation may ultimately be retained in the service."  Defs.' Prelim. Inj. Opp'n App'x at App311 (Merz Decl. ¶ 15 n.14), ECF No. 44-3.  Both enlisted members and officers are entitled to meaningful opportunities to dispute the basis for their separation.  *Id.* at App312–20 (Merz Decl. ¶¶ 17–22).  "It is possible that something" raised by the service member during these proceedings "will compel [the Navy] to drop the [separation]."  *See TOTAL Gas & Power N. Am.*, 859 F.3d at 336; *see also Robert v. Austin*, No. 21-CV-0228-RM-STV, 2022 WL 103374, at *2–3 (D. Colo. Jan. 11, 2022) (finding service members' claims were based on speculation and not ripe for

review).

Plaintiffs also fail to demonstrate hardship from delay. Between now and when the Navy finally decides whether to pursue adverse administrative action against any Plaintiff whose religious accommodation request is finally denied, Plaintiffs "suffer no concrete harm from the challenged policy itself, which does not require them to do anything or to refrain from doing anything." *Trump v. New York*, 141 S. Ct. 530, 536 (2020) (quotation omitted). "[N]o direct dilemma or Hobson's choice is faced by Plaintiff[s] now." *Roman Catholic Diocese of Dallas v. Sebelius*, 927 F. Supp. 2d 406, 427 (N.D. Tex. 2013). First, "Plaintiffs have received a temporary administrative exemption from the vaccine mandate while their appeals are pending . . . which allows them to retain their positions without receiving the vaccine or facing discipline." *Church*, 2021 WL 5179215, at *16.[4] Second, even assuming that Plaintiffs' appeals might be denied and they are processed for separation, "[p]ostponement of any decision here would not serve as a hardship to [Plaintiffs] given that a final decision in [Plaintiffs'] favor at the involuntary separation proceedings may render this action unnecessary." *Smith*, 541 F. Supp. 2d at 13. Moreover, Plaintiffs cannot demonstrate a pressing hardship because of the time period needed for separation. "For officers, it generally takes between 6 to 12 months from the time the officer is notified to show cause to the officer's approved separation" and "[a]dministrative separation of enlisted service members often takes several months[,]" in light of the process provided to members to ensure that their arguments against separation are heard. Defs.' Prelim. Inj. Opp'n App'x at App315–16 (Merz Decl. ¶ 19), ECF No. 44-3. "'[T]he expense and annoyance of [this] litigation, though [arguably] 'substantial, is part of the social burden of living under government,' and thus

---

[4] Although nine Plaintiffs have either not submitted a religious accommodation request at all or have declined to appeal their initial denial, again, these Plaintiffs have not shown that the Navy would decline to address any requests or appeals submitted now, initiating a temporary administrative exemption from the vaccine mandate. *See* Defs.' Mot. to Dismiss App'x at App007 (Katson Decl. ¶¶ 2–3).

cannot constitute sufficient hardship for ripeness." *TOTAL Gas & Power N. Am.*, 859 F.3d at 338 (quoting *Energy Transfer Partners, L.P. v. Fed. Energy Regulatory Comm'n*, 567 F.3d 134, 141–42 (5th Cir. 2009)).

Plaintiffs assert that without vaccination against COVID-19 they may be or have been medically unqualified to serve as special operations duty personnel or unable to deploy.  Compl. ¶¶ 92–93.  But these purported hardships are not judicially cognizable.  *See Schlanger v. United States*, 586 F.2d 667, 671 (9th Cir. 1978) ("[C]ourts should not review internal military decisions such as duty order or duty assignments.").  The Navy must be permitted to select only the most medically qualified service members for military service—and especially in special operations units.  As the Supreme Court has explained, "we have found no case where this Court has assumed to revise duty orders as to one lawfully in the service."  *Orloff v. Willoughby*, 345 U.S. 83, 94 (1953).  And even if it were cognizable, "harm inflicted by the denial of routine duty assignment is negligible." *Harkness v. Sec'y of Navy*, 858 F.3d 437, 444 (6th Cir. 2017).

### B.  Plaintiffs Failed to Exhaust Administrative Remedies.

Plaintiffs' claims should be dismissed for failure to exhaust their intra-military remedies. *See Von Hoffburg v. Alexander*, 615 F.2d 633, 637–38 (5th Cir. 1980); *Hodges v. Callaway*, 499 F.2d 417, 419–20 (5th Cir. 1974); *Mindes v. Seaman*, 453 F.2d 197, 201 (5th Cir. 1971). Defendants recognize that this Court found that Plaintiffs should be excused from the exhaustion requirement in its preliminary injunction order.  *See U.S. Navy SEALs 1-26 v. Biden*, --- F. Supp. 3d ---, 2022 WL 34443, at *5–8 (N.D. Tex. Jan. 3, 2022).  But Defendants respectfully disagree with the Court's opinion and are considering appellate options.  If the Court's ruling is not upheld, this case should be dismissed for the reasons Defendants set forth in their opposition to Plaintiffs' motion for a preliminary injunction.  *See Defs.' Opp'n 11–15, ECF No. 43.

## C.  Venue Is Not Proper In This District.

If the case is not dismissed for lack of jurisdiction, the case should be dismissed for improper venue.  Although Plaintiffs assert that "[v]enue is proper in this district pursuant to 28 U.S.C. § 1391(e)" because "the military workplace and the location in which a substantial part of the events or omissions giving rise to the claims of at least one Plaintiff is in Fort Worth, Texas, in this Court's District and Division," Compl. ¶ 13; *see also id.* ¶ 21 (same), this assertion is not sufficient to establish venue in this district.

The applicable venue statute provides that a case against an officer of the United States acting in his official capacity may be brought (1) where "a defendant in the action resides," (2) where a "substantial part of the events or omissions giving rise to the claim occurred," or (3) where "the plaintiff resides."  28 U.S.C. § 1391(e)(1); *Seariver Mar. Fin. Holdings, Inc. v. Pena*, 952 F. Supp. 455, 457 (S.D. Tex. 1996).  This case does not fall within any of these three categories and thus must be dismissed or transferred.  *See Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 56 (2013) (in considering the section of the venue statute applicable to private parties, stating that if the case does not fall within one of the three statutory categories, "venue is improper, and the case must be dismissed or transferred").

First, no Defendant resides in the Northern District of Texas.  *See* 28 U.S.C. § 1391(e)(1)(A).  The U.S. Department of Defense "ha[s] [its] official residence for venue purposes in the District of Columbia."[5]  *Airport Wkg. Grp. of Orange Cnty., Inc. v. U.S. Dep't of Def.*, 226 F. Supp. 2d 227, 228 (D.D.C. 2002); *Wilson v. Dep't of the Army*, No. 3:13-cv-643-H,

---

[5] Some courts have found that in cases against the Department of Defense, venue lies in the Eastern District of Virginia because the Pentagon is located in Arlington, Virginia, despite its Washington, D.C. mailing address.  *See, e.g.*, *Kruise v. Fanning*, No. 15-cv-1213, 2016 WL 11672724, at *3 n.4 (D.D.C. June 14, 2016); *Collins v. Hagel*, No. 1:13-cv-2051-WSD, 2015 WL 5691076, at *2 (N.D. Ga. Sept. 28, 2015); *Jones v. Hagel*, 956 F. Supp. 2d 284, 288 n.3 (D.D.C. 2013).  However, those cases analyze venue under Title VII's venue statute, 42 U.S.C. § 2000e-5(f)(3), rather than the statute applicable here, 28 U.S.C. § 1391(e).  Regardless, the Department of Defense does not have its official residence in the Northern District of Texas.

2013 WL 6730281, at *1 (S.D. Cal. Dec. 19, 2013) (same); *see also* 14D Arthur R. Miller, et al., Federal Practice and Procedure § 3815 (4th ed. 2013) ("under Section 1391(e)(1)(A) the relevant inquiry is the official residence"); U.S. Dep't of Defense, Mailing Addresses, https://www.defense.gov/Resources/Mailing-Addresses/ (last visited Jan. 14, 2022).  Although Plaintiffs assert that a "military workplace" is located in Fort Worth, Compl. ¶¶ 13, 21, "a federal agency does not reside in a district merely by virtue of having an office in that district," *Caremark Therapeutic Servs. v. Leavitt*, 405 F. Supp. 2d 454, 463–64 (S.D.N.Y. 2005); *see Bosse v. Chertoff*, No. 05-cv-02170-MSK, 2007 WL 484590, at *1–2 (D. Colo. Feb. 9, 2007) (finding that the Department of Homeland Security and its component U.S. Citizenship and Immigration Services ("CIS") do not reside in Colorado, even though CIS has an office in Denver); *Williams v. United States*, No. C-01-0024 EDL, 2001 WL 1352885, at *1 (N.D. Cal. Oct. 23, 2001) ("Venue does not lie in every judicial district where a federal agency has a regional office.").  To find otherwise would strip Section 1391(e) of its meaning because the Department of Defense likely would "reside" in every district, and thus there would be nationwide venue in claims against the military. *See Reuben H. Donnelley Corp. v. FTC*, 580 F.2d 264, 267 (7th Cir. 1978); *see also* Office of the Assistant Secretary of Defense for Sustainment, *Real Property Accountability*, https://www.acq.osd.mil/ eie/bsi/bei_rpa.html (last visited Jan. 12, 2022) (stating that DoD's "real estate portfolio is one of the world's largest, with over 500,000 buildings and structures at more than 500 installations, comprising over millions of acres of land spread throughout the United States, U.S. territories and over 30 other foreign countries").

With respect to Defendants the Secretary of Defense and the Secretary of the Navy, "[t]he general rule in suits against public officials is that a defendant's residence for venue purpose[s] is the district where he performs his official duties."  *Banks v. Fed. Deposit Ins. Corp.*, No. 3:08-cv-

1076-G, 2009 WL 289604, at *2 (N.D. Tex. Feb. 2, 2009) (quoting *Fla. Nursing Home Ass'n v. Page*, 616 F.2d 1355, 1360 (5th Cir. 1980)), *aff'd*, 374 F. App'x 532 (5th Cir. 2010); *see also Reuben H. Donnelley Corp.*, 580 F.2d at 267; 14D Federal Practice and Procedure § 3815 ("under Section 1391(e)(1)(A) the relevant inquiry is the official residence").  The Complaint does not allege that either the Secretary of Defense or the Secretary of the Navy performs any official duties in the Northern District of Texas.  *See generally* Compl.  Indeed, the Secretary of Defense and the Secretary of the Navy perform their official duties at the Pentagon in Arlington, Virginia, and in Washington, D.C.  *See* U.S. Dep't of Defense, Mailing Addresses, https://www.defense.gov/ Resources/Mailing-Addresses/ (last visited Jan. 14, 2022).  Accordingly, under 28 U.S.C. § 1391(e)(1)(A), venue is proper in the Eastern District of Virginia or the District of Columbia, not in this district.  *See Smith v. Dalton*, 927 F. Supp. 1, 6 (D.D.C. 1996) (finding that both the Secretary of Defense and the Secretary of the Navy perform a significant amount of their official duties at the Pentagon and in Washington, D.C., such that venue is proper in the Eastern District of Virginia and the District of Columbia); *Webster v. Mattis*, 279 F. Supp. 3d 14, 19 (D.D.C. 2017) (finding same in a case against the Secretary of Defense); *Bartman v. Cheney*, 827 F. Supp. 1, 2 (D.D.C. 1993) (same); *Vince v. Mabus*, 956 F. Supp. 2d 83, 88 (D.D.C. 2013) (finding same in a case against the Secretary of the Navy); *Jyachosky v. Winter*, No. CIV.A.04-01733(HHK), 2006 WL 1805607, at *4 (D.D.C. June 29, 2006) (same).

Second, Plaintiffs do not allege that any plaintiff resides in the Northern District of Texas. *See generally* Compl.  Indeed, although Plaintiff Navy SEAL 1's "duty station is in Fort Worth, Texas," Pls.' App. 000871, ECF No. 17-6, he does not reside in this district, *see* Defs.' Mot. to Dismiss App'x at App002 (DiCaro Decl. ¶ 5 n.2), nor do any of the other plaintiffs.  Venue cannot be established based on residency of Navy SEAL 1 or any of the other Plaintiffs.

15

Finally, contrary to Plaintiff's bare assertion, *see* Compl. ¶¶ 13, 21, a "substantial part of the events or omissions giving rise to the claim" did not occur in this district.  28 U.S.C. § 1391(e)(1)(B).  "Although the chosen venue does not have to be the place where the most relevant events took place, the selected district's contacts still must be substantial."  *McClintock*, 299 F. App'x at 365[6]; *see also Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005) (cautioning district courts to "take seriously the adjective 'substantial,'" which "means for venue to be proper, *significant* events or omissions *material* to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere").  "A substantial part of the events does not mean the single triggering event of a cause of action, but rather looks to the entirety of the claim."  *Redi-Mix Sols., Ltd. v. Express Chipping, Inc.*, No. 6:16-CV-298-RWS-KNM, 2017 WL 3671377, at *8 (E.D. Tex. Feb. 9, 2017), (citing *Mt. Hawley Ins. Co. v. Baddley Chem. Co.*, No. CIVA H-06-0565, 2006 WL 2022909, at *1 (S.D. Tex. July 17, 2006)), *report and recommendation adopted*, No. 6:16-CV-298-RWS-KNM, 2017 WL 3671372 (E.D. Tex. Mar. 14, 2017); *see also Kopin v. Wells Fargo Bank, N.A.*, No. 3-11-CV-1698-O, 2011 WL 13130489, at *3 (N.D. Tex. Nov. 14, 2011) (O'Connor, J.) ("[W]hile venue may be proper in more than one judicial district, a single event may not form the basis for proper venue.").  Moreover, "the Court looks to the defendant's conduct, and where that conduct took place," rather than actions taken by the plaintiff.  *Bigham v. Envirocare of Utah, Inc.*, 123 F. Supp. 2d 1046, 1048 (S.D. Tex. 2000) (citing *Woodke v. Dahm*, 70 F.3d 983, 985–86 (8th Cir. 1995)).

In this case, the relevant actions of the Defendants giving rise to Plaintiffs' claims are the

---

[6] *McClintock* and additional cases cited above address venue under 28 U.S.C. § 1391(b)(2).  Because the language of 28 U.S.C. § 1391(e)(1)(B) is identical to that of 28 U.S.C. § 1391(b)(2), it is appropriate to consider case law applying section 1391(b)(2) in analyzing the applicability of section 1391(e)(1)(B).  *See* 14D Federal Practice and Procedure § 3815 ("[T]he language under Section 1391(e)(1)(B) [is] identical with that under the 'transaction venue' provision of the general venue statute.  Thus, cases construing the general provision may be helpful in construing this provision of Section 1391(e)(1)(B).").

issuance of the DoD COVID-19 vaccination directive, *see* Compl. ¶¶ 27–36, the issuance of the

Navy's COVID-19 vaccination directive, *id.* ¶¶ 37–49, and the issuance of Trident Order #12, *id.*

¶ 93.  Those are the acts that Plaintiffs claim were wrongful, and these actions are the focus of

each of the Counts of the Complaint.  *See id.* ¶¶ 100–257; *see also U.S. Navy SEALs 1-26*, 2022

WL 34443, at *9 ("Plaintiffs make two substantive claims. First, they allege the vaccine mandate

violates RFRA and the First Amendment.  Second, they allege the mandate's permanent medical-

disqualification provision fails strict scrutiny.").

 None of these three policies were issued in the Northern District of Texas.  The Secretary

of Defense's memorandum directing full vaccination of service members bears a Washington,

D.C. address, and the Navy's vaccination directive (ALNAV 062/21) likewise reflects that it was

issued by the Secretary of the Navy in Washington, D.C.  *See* Compl. Ex. 1 (Secretary of Defense

Mem.), ECF No. 1-1; Compl. Ex. 2 (ALNAV 062/21), ECF No. 1-2.  Trident Order #12 was issued

by the Commander of the Naval Special Warfare Command in Coronado, California.  *See* Defs.'

Prelim. Inj. Opp. App'x at App098 (Trident Order #12), ECF No. 44-1.  Accordingly, Plaintiffs'

cause of action arose either in the District of Columbia or in the Southern District of California.

*See Nat'l Ass'n of Life Underwriters v. Clarke*, 761 F. Supp. 1285, 1293 (W.D. Tex. 1991) ("The

cause of action arose in Washington, D.C., where the Office of the Comptroller of the Currency

made the decision to approve NCNB's plans."); *see also Pasem v. U.S. Citizenship & Immigr.

Servs.*, No. 20-CV-344 (CRC), 2020 WL 2514749, at *3 (D.D.C. May 15, 2020) (stating that in

APA cases, the underlying claim typically arises "where the decisionmaking process occur[s]"

(quotation omitted)).

 The record reflects that only one Plaintiff, Navy SEAL 1, has any connection to Texas, but

this connection is insufficient to show that a "substantial" part of the events giving rise to his claim

occurred in this district.  28 U.S.C. § 1391(e)(1)(B).  At most, all that occurred with respect to Plaintiff Navy SEAL 1 is that paperwork concerning his religious exemption request was forwarded to Navy decision-makers in Arlington, Virginia.  Venue in this district hinges entirely on this thin reed, and it is not proper.  Because Plaintiff Navy SEAL 1 is unvaccinated and his "duty station is in Fort Worth, Texas," Pls.' App. 000871, ECF No. 17-6, he was issued a standardized "Administrative Remarks" form (the "Page 13") from his commander in Fort Worth, Defs.' Mot. to Dismiss App'x at App003–04 (DiCaro Decl. ¶ 6).  "The Page 13 is not adverse or punitive," and instead served "to document that [Plaintiff Navy SEAL 1] was notified of the vaccine policy and associated requirements." *Id.*  Because a "Page 13 is not a punitive action" and "will not affect a member's career," Defs.' Prelim. Inj. Opp'n App'x at App312 (Merz Decl. ¶ 16), ECF No. 44-3, and indeed, did not result in any adverse action taken against Plaintiff Navy SEAL 1 or affect his medical qualification to perform special operations duty, Defs.' Mot. to Dismiss App'x at App003–04 (DiCaro Decl. ¶ 6), the issuance of the Page 13 to Plaintiff Navy SEAL 1 cannot be considered an event that gave rise to his claim.

In accordance with Navy policy, Plaintiff Navy SEAL 1 included a copy of the Page 13 with his religious accommodation request, which he submitted to his commanding officer in Fort Worth.  Defs.' Mot. to Dismiss App'x at App004 (DiCaro Decl. ¶¶ 6–7); Defs.' Prelim. Inj. Opp'n App'x at App308–09 (Merz Decl. ¶ 14), ECF No. 44-3 (noting that the Page 13 must be submitted with a religious accommodation request); Pls.' App. 000873, ECF No. 17-6.  Although his commander in Fort Worth provided an endorsement on the request in accordance with Navy policy, that commander is not the approval authority for granting or denying such requests.  Defs.' Mot. to Dismiss App'x at App004 (DiCaro Decl.  ¶ 7).  Accordingly, the commander forwarded the request to Deputy Chief of Naval Operations (Manpower, Personnel, Training and Education),

the responsible authority in Arlington, Virginia. *Id.* Once the Deputy Chief of Naval Operations denied the request, the commander in Fort Worth forwarded the denial letter to Plaintiff Navy SEAL 1. *Id.* at App004–05 (DiCaro Decl. ¶ 8). Plaintiff Navy SEAL 1 submitted his appeal through his Fort Worth command, which again included an endorsement of the request in accordance with Navy policy, and forwarded the appeal to the Chief of Naval Operations, the authority responsible for issuing a final decision on the appeal, in Arlington, Virginia. *Id.* at App004–05 (DiCaro Decl. ¶¶ 8–9). Plaintiff Navy SEAL 1's appeal is pending and will be finally adjudicated in Arlington. *Id.* at App005 (DiCaro Decl. ¶ 9). No decision on Plaintiff Navy SEAL 1's exemption request has been (or will be) made in Texas, and it simply cannot be said, based on the mere transmission of his request from Fort Worth to decision-makers in Virginia, that a substantial part of the events giving rise to his claim has occurred in this district. *See Wei Lai Dev. LLC v. U.S. Citizenship & Immigr. Servs.*, No. 21-887 (RDM), 2021 WL 2073403, at *3 (D.D.C. May 24, 2021) (finding that because "Plaintiffs' immigration petition and application were both adjudicated at the California Service Center in Laguna Niguel, California," "'a substantial part of the events . . . giving rise to [Plaintiffs'] claim[s] occurred' in the Central District of California, [and] venue is proper in that district" (quoting 28 U.S.C. § 1391(e)(1))); *Gyau v. Sessions*, No. 18-cv-407, 2018 WL 4964502, at *1 (D.D.C. Oct. 15, 2018) (finding venue proper in the district where "the events giving rise to plaintiffs' claim—the adjudication of their I-130 petition and subsequent appeal to the BIA"—took place).

In sum, all that has occurred in this district is that the command in Fort Worth issued the non-punitive Page 13 to Plaintiff Navy SEAL 1, provided endorsements on his exemption request and appeal, and forwarded paperwork to the authorities responsible for deciding his initial exemption request and his appeal. None of these events gave rise to Plaintiff Navy SEAL 1's

claims that the DoD COVID-19 vaccination directive, the Navy's COVID-19 vaccination directive, and Trident Order #12 violate his rights under RFRA and the First Amendment and are unlawful under the APA, let alone constitute a "substantial part of the events" giving rise to his claims.  Accordingly, venue in the Northern District of Texas is not proper under 28 U.S.C. § 1391(e)(1)(B).

Because this case does not fall within one of the three categories set out in 28 U.S.C. § 1391(e), the case should be dismissed for lack of venue under Rule 12(b)(3) or transferred to the District of Columbia, the Eastern District of Virginia, or the Southern District of California pursuant to 28 U.S.C. § 1406.  *See Seariver Maritime Fin. Holdings*, 952 F. Supp. at 462 (noting that the District of Columbia was an "obvious" venue choice in light of the plaintiffs' challenge to the constitutionality of federal legislation).

## CONCLUSION

For the foregoing reasons, the Court should dismiss the case.

Dated: January 14, 2022                    Respectfully submitted,

                                           BRIAN M. BOYNTON
                                           Acting Assistant Attorney General

                                           ALEXANDER K. HAAS
                                           Director, Federal Programs Branch

                                           ANTHONY J. COPPOLINO
                                           Deputy Director

                                           */s/Courtney D. Enlow*
                                           ANDREW E. CARMICHAEL
                                           AMY E. POWELL
                                           Senior Trial Counsel
                                           STUART J. ROBINSON
                                           Senior Counsel
                                           ZACHARY A. AVALLONE
                                           COURTNEY D. ENLOW (NC Bar No. 46578)

LIAM C. HOLLAND
CASSANDRA SNYDER
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 616-8467
Fax: (202) 616-8470
Email: courtney.d.enlow@usdoj.gov

*Counsel for Official Capacity Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 14, 2022, I electronically filed the foregoing paper with the

Clerk of Court using this Court's CM/ECF system, which will notify all counsel of record of such

filing.

<div style="margin-left:45%">

*/s/Courtney D. Enlow*
COURTNEY D. ENLOW
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 616-8467
Fax: (202) 616-8470
Email: courtney.d.enlow@usdoj.gov

</div>