# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | |
|---|---|
| **U.S. NAVY SEALs 1-3,** on behalf of themselves and all others similarly situated; **U.S. NAVY EXPLOSIVE ORDNANCE DISPOSAL TECHNICIAN 1,** on behalf of himself and all others similarly situated; **U.S. NAVY SEALS 4-26; U.S. NAVY SPECIAL WARFARE COMBATANT CRAFT CREWMEN 1-5; and U.S. NAVY DIVERS 1-3**, <br><br> Plaintiffs, <br><br> v. <br><br> **LLOYD J. AUSTIN, III**, in his official capacity as United States Secretary of Defense; **UNITED STATES DEPARTMENT OF DEFENSE**; **CARLOS DEL TORO**, in his official capacity as United States Secretary of the Navy, <br><br> Defendants. | Case No. 4:21-cv-01236-O <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT** |

Plaintiffs United States Navy SEALs 1-3 and United States Navy Explosive Ordnance Disposal Technician 1 ("Named Plaintiffs"), on behalf of themselves and all others similarly situated, and Plaintiffs United States Navy SEALs 4-26, United States Navy Special Warfare Combatant Craft Crewmen 1-5,  and United States Navy Divers 1-3 ("Individual Plaintiffs"), for their First Amended Class Action Complaint against Defendants Lloyd J. Austin, III, in his official capacity as United States Secretary of Defense, the United States Department of Defense, and Carlos Del Toro, in his official capacity as United States Secretary of the Navy, allege as follows:

**INTRODUCTION**

1.      Plaintiffs are members of the United States Navy assigned to Naval Special Warfare and Naval Special Operations units who each object to receiving a COVID-19 vaccination based on their sincerely held religious beliefs.

2.      This action is based upon the United States Constitution, the Religious Freedom Restoration Act, Department of Defense regulations, and Department of the Navy regulations, concerning the denial of Plaintiffs' fundamental right to the free exercise of religion.

3.      Defendants' policies and practices have deprived and will continue to deprive Plaintiffs of their paramount rights and guarantees under the United States Constitution and federal law. Defendants committed each and every act alleged herein under the color of law and authority.

4.      This lawsuit is brought as a class action to redress Defendants' violations of the United States Constitution and the Religious Freedom Restoration Act on behalf of the Named Plaintiffs and all other similarly situated members of the United States Navy.

**JURISDICTION AND VENUE**

5.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the United States Constitution and federal law, 28 U.S.C. § 1346 because this is a civil action against the United States, 28 U.S.C. § 1361 to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff, and 42 U.S.C. § 2000bb-1(c) because Plaintiffs' religious exercise has been burdened by Defendants.

6.      This Court has authority to award the requested declaratory relief pursuant to 28 U.S.C. §§ 2201–02; the requested injunctive relief pursuant to 28 U.S.C. § 2202; and costs and attorneys' fees pursuant to 28 U.S.C. § 2412 and 42 U.S.C. § 1988(b).

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(e) because Defendants are officers and employees of the United States and agencies of the United States, the military workplace and the location in which a substantial part of the events or omissions giving rise to the claims of at least one Named Plaintiff is in Fort Worth, Texas, in this Court's District and Division. Specifically,   the   Defendants'   COVID-19   Vaccine   Mandate   and   following   policies   that

discriminate against Plaintiffs' sincerely held religious beliefs were implemented against and caused injury to as least one Named Plaintiff in this District and Division by Department of Defense officials in this District and Division, and as well as against members of the class residing or working in this District. Due to national security and personal security interests, Plaintiffs cannot publicly reveal their exact locations.

## PARTIES

### A.  Named Plaintiffs

8.  Named Plaintiffs are three United States Navy SEALs (SEALs 1–3) and a United States Navy Explosive Ordnance Disposal Technician (EOD 1).

9.  Named Plaintiff SEAL 1 is an enlisted service member of the United States Navy assigned to the Naval Special Warfare Command.

10.  Named Plaintiff SEAL 2 is an enlisted service member of the United States Navy assigned to the Naval Special Warfare Command.

11.  Named Plaintiff SEAL 3 is an enlisted service member of the United States Navy assigned to the Naval Special Warfare Command.

12.  Named Plaintiff EOD 1 is an enlisted service member of the United States Navy assigned to the Naval Education and Training Command.

13.  Named Plaintiffs presently serve at various classified and confidential locations, domestic and abroad, that they cannot disclose in a public proceeding without violating their oaths, Navy regulations, and the interests of operational security and personal safety.

14.  Named Plaintiffs cannot disclose their names in a public proceeding without creating a significant risk of compromising their missions, operational security, and personal safety. Plaintiffs' counsel has filed a motion for protective order to permit Named Plaintiffs to proceed in this case under pseudonym and has disclosed Named Plaintiffs' names to Defendants' counsel pursuant to the terms of an agreed protective order.

15.     The military workplace where a substantial part of the events or omissions giving rise to the claims of at least one Named Plaintiff occurred is in Fort Worth, Texas, in this Court's District and Division.

**B.     Individual Plaintiffs**

16.     Plaintiffs are United States Navy SEALs, Navy Special Warfare Combatant Craft Crewmen, a Navy Explosive Ordnance Disposal Technician, and Navy Divers.

17.     Plaintiffs U.S. Navy SEALs 1–26 are enlisted service members and chief warrant officers of the United States Navy assigned to the Naval Special Warfare Command.

18.     Plaintiffs U.S. Navy Special Warfare Combatant Craft Crewmen 1–5 are enlisted service members of the United States Navy assigned to the Naval Special Warfare Command.

19.     Plaintiff U.S. Navy Explosive Ordnance Disposal Technician 1 is an enlisted service member of the United States Navy assigned to the Naval Education and Training Command.

20.     Plaintiffs U.S. Navy Divers 1–3 are enlisted service members of the United States Navy assigned to Naval Special Warfare or Naval Special Operations units.

21.     Plaintiffs presently serve at various classified and confidential locations, domestic and abroad, that they cannot disclose in a public proceeding without violating their oaths, Navy regulations, and the interests of operational security and personal safety.

22.     Plaintiffs cannot disclose their names in a public proceeding without creating a significant risk of compromising their missions, operational security, and personal safety. Plaintiffs' counsel has filed a motion for protective order to permit Plaintiffs to proceed in this case under pseudonym and has disclosed Plaintiffs' names to Defendants' counsel pursuant to the terms of an agreed protective order.

23.     The military workplace where a substantial part of the events or omissions giving rise to the claims of at least one Individual Plaintiff occurred is in Fort Worth, Texas, in this Court's District and Division.

C.    **Defendants**

24.    Defendant Lloyd J. Austin, III, is the United States Secretary of Defense. As Secretary of Defense, Defendant Austin oversees and leads the United States Department of Defense. Defendant Austin issued a memorandum on August 24, 2021 requiring the United States Armed Forces to vaccinate all service members, including Plaintiffs. Defendant Austin is sued in his official capacity.

25.    Defendant United States Department of Defense (DoD) is an executive branch department that coordinates and supervises all agencies and functions of the government related to the United States Armed Forces, including the vaccination policies at issue herein.

26.    Defendant Carlos Del Toro is the United States Secretary of the Navy. As Secretary of the Navy, Defendant Del Toro oversees and leads the Department of the Navy, which is composed of the U.S. Navy and the U.S. Marine Corps. Defendant Del Toro issued a directive on August 30, 2021 requiring the Department of the Navy to vaccinate all servicemembers, including Plaintiffs. Defendant Del Toro is sued in his official capacity.

## FACTUAL BACKGROUND

A.    **Plaintiffs' Sincerely Held Religious Beliefs**

27.    Plaintiffs are members of the United States Navy assigned to Naval Special Warfare and Naval Special Operations units who each object to receiving a COVID-19 vaccination based on their sincerely held religious beliefs.

28.    The mission of Naval Special Warfare is to provide maritime special operations forces to conduct full spectrum operations, unilaterally or with partners, to support national objectives. The SEAL Team is the heart of Naval Special Warfare and is a multipurpose combat force organized and trained to conduct a variety of special operations in all environments. Special Warfare Combatant Craft Crewmen staff Special Boat Teams that operate and maintain state-of-the-art surface craft to conduct coastal patrol and interdiction and support special operations missions. Navy Divers are the world's foremost experts in undersea operations including underwater salvage and repair, maintenance, and unique construction projects. Navy Explosive

Ordnance Disposal Technicians are members of the Naval Special Operations community with specialized training to handle chemical, biological, and nuclear weapons, and special expertise in securely disposing of both conventional and unconventional explosive weaponry on land and under water.

29.     Plaintiffs are part of the approximtely 0.6% of active-duty Navy service members who have not been fully vaccinated against COVID-19. Representing the Catholic, Eastern Orthodox, and Protestant branches of Christianity, Plaintiffs object to receiving the COVID-19 vaccine based on their sincerely held religious beliefs.

30.     Plaintiffs' religious beliefs generally fall into the following categories: (1) opposition to abortion and the use of fetal cell lines in development of the vaccine; (2) belief that modifying one's body is an afront to the Creator; (3) direct, divine instruction not to receive the vaccine; and (4) opposition to injecting trace amounts of animal cells into one's body. Plaintiffs' religious beliefs about the vaccine are sincere.

31.     Plaintiffs do not believe that staying true to their faith means exposing themselves or others to unnecessary risk. Quite the contrary, they view life—whether their own or that of their fellow servicemembers—as sacred and deserving protection. Plaintiffs, therefore, do not object to safety measures that reduce the transmission of COVID-19 in the workplace. Indeed, Defendants employed such measures during the prior year before COVID-19 vaccines were made widely available.

**B.     The President's Orders to Vaccinate the Armed Forces**

32.     On or about July 29, 2021, the President directed DoD to add the COVID-19 vaccine to its list of required immunizations for all service members. *See* The White House, "FACT SHEET: President Biden to Announce New Actions to Get More Americans Vaccinated and Slow the Spread of the Delta Variant" (July 29, 2021), https://www.whitehouse.gov/briefing-room/statements-releases/2021/07/29/fact-sheet-president-biden-to-announce-new-actions-to-get-more-americans-vaccinated-and-slow-the-spread-of-the-delta-variant/ ("Today, the President

will announce that he is directing the Department of Defense to look into how and when they will add COVID-19 vaccination to the list of required vaccinations for members of the military.").

**C.      The DoD's COVID-19 Vaccine Mandate**

33.      On August 24, 2021, Defendant Austin issued a memorandum entitled "Mandatory Coronavirus Disease 2019 Vaccination of Department of Defense Service Members" (the "DoD COVID-19 Vaccine Mandate").

34.      The DoD COVID-19 Vaccine Mandate directs DoD to vaccinate all active duty and reserve service members against COVID-19. The DoD COVID-19 Vaccine Mandate states that service members who previously contracted COVID-19, and now have active antibodies against the virus, are not considered fully vaccinated and are still required to receive a vaccination against COVID-19. The DoD COVID-19 Vaccine Mandate provides that DoD will only use or administer COVID-19 vaccines that are fully licensed by the United States Food and Drug Administration (FDA), in accordance with FDA-approved labeling and guidance. The DoD COVID-19 Vaccine Mandate provides that service members who previously received a vaccination against COVID-19 under FDA Emergency Use Authorization or World Health Organization Emergency Use Listing are considered fully vaccinated. The DoD COVID-19 Vaccine Mandate provides that service members actively participating in COVID-19 clinical trials are exempted from the DoD COVID-19 Vaccine Mandate until the trial is complete.

35.      The DoD COVID-19 Vaccine Mandate states that DoD will implement the DoD COVID-19 Vaccine Mandate consistent with DoD Instruction 6205.02, "DoD Immunization Program," dated July 23, 2019. The DoD COVID-19 Vaccine Mandate states that the Military Departments, including the Navy, should use existing policies and procedures to manage mandatory vaccination of service members to the extent practicable. The DoD COVID-19 Vaccine Mandate states that vaccination of service members will be subject to any identified contraindications and any administrative or other exemptions established in Military Department policy.

36.     Defendants issued subsequent guidance stating that service members who are not fully vaccinated by established deadlines will immediately suffer adverse consequences as directed by their service components. The adverse consequences may include: court-martial (criminal) prosecution, involuntary separation, relief for cause from leadership positions, removal from promotion lists, inability to attend certain military training and education schools, loss of special pay, placement in a non-deployable status, recoupment of money spent training the service member, and loss of leave and travel privileges for both official and unofficial purposes.

**D.     The Navy's COVID-19 Vaccine Mandate**

37.     On August 30, 2021, Defendant del Toro issued All Navy (ALNAV) message 062/21, entitled "Department of the Navy Mandatory COVID-19 Vaccination Policy" (the "Navy COVID-19 Vaccine Mandate") (collectively, the DoD COVID-19 Vaccine Mandate and the Navy COVID-19 Vaccine Mandate are the "COVID-19 Vaccine Mandates"). The Navy COVID-19 Vaccine Mandate incorporates by reference the DoD COVID-19 Vaccine Mandate's provisions.

38.     The Navy COVID-19 Vaccine Mandate directs all U.S. Navy active-duty personnel to become fully vaccinated within 90 days of its publication and all U.S. Navy Reserve personnel to become fully vaccinated within 120 days of its publication. The Navy COVID-19 Vaccine Mandate states that "one of the approved vaccines has received full licensure from the Food and Drug Administration (FDA)." The Navy COVID-19 Vaccine Mandate requires that Navy members become vaccinated "with an FDA approved vaccine." The Navy COVID-19 Vaccine Mandate provides that "Service Members voluntarily immunized with a COVID-19 vaccine under FDA Emergency Use Authorization or World Health Organization Emergency Use Listing in accordance with applicable dose requirements prior to, or after, the establishment of this policy are considered fully vaccinated."

39.     The Navy communicated to Plaintiffs that failure to comply with the Navy COVID-19 Vaccine Mandate by the established deadline—November 28, 2021, for active duty, December 28, 2021, for reserve—will result in immediate adverse consequences, which may include: court-martial (criminal) prosecution, involuntary separation, relief for cause from leadership positions,

removal from promotion lists, inability to attend certain military training and education schools, loss of special pay, placement in a non-deployable status, recoupment of money spent training the service member, and loss of leave and travel privileges for both official and unofficial purposes. *See* ALNAV 062/21 Department of the Navy Mandatory Covid -19 Vaccination Policy, dated August 30, 2021; NAVADMIN 225/21 Covid-19 Consolidated Disposition Authority, dated October 13, 2021.

40.   Defendants' policies acknowledge their legal duty to consider religious accommodations. *See, e.g.*, Department of Defense Instruction (DODI) 1300.17, Religious Liberty in the Military Services, dated September 1, 2020; Secretary of the Navy Instruction (SECNAVINST) 1730.8B, Accommodation of Religious Practices, dated October 2, 2008; NAVADMIN 190/21, 2021-2022 Navy Mandatory COVID-19 Vaccination and Reporting Policy, dated August 31, 2021; Navy Bureau of Personnel Instruction (BUPERSINST) 1730.11A, Standards and Procedures Governing the Accommodation of Religious Practices, dated March 16, 2020; Navy Military Personnel Manual (MILPERSMAN) 1730-020, Immunization Exemptions for Religious Beliefs, dated August 15, 2020.

41.   Defendants admit that "multiple religious accommodation requests related to the COVID-19 Vaccine Mandate have been adjudicated and none have yet been approved" and "[i]n the past seven years, no religious exemption from vaccination waivers were approved for any other vaccine." Kristina Wong, *Exclusive: Marine Corps Commanders Using Form Letter to Deny Religious Exemptions*, Breitbart News, Nov. 2, 2021, https://www.breitbart.com/politics /2021/11/02/marine-corps-commanders-form-letter-religious-exemptions/. This disdain for religious vaccine accommodations contrasts with Defendants' policies and practices granting certain secular vaccine exemptions.

42.   Defendants' policies expressly allow for medical exemptions, and Defendants in fact have granted medical exemptions to the COVID-19 Vaccine Mandate. *See, e.g.*, NAVADMIN 190/21, 2021-2022 Navy Mandatory COVID-19 Vaccination and Reporting Policy, dated August 31, 2021; Navy Bureau of Medicine Instruction (BUMEDINST) 6230.15B, Immunizations and

Chemoprophylaxis for the Prevention of Infectious Diseases, dated October 7, 2013. The Navy has granted eight permanent medical exemptions. Heather Mongilio, *Navy Separates Two More Sailors for COVID-19 Vaccine Refusal*, U.S. Naval Institute News, Jan. 19, 2022, https://news.usni.org/2022/01/19/navy-separates-two-more-sailors-for-covid-19-vaccine-refusal.

43.     And, as set forth above, Defendants' policies themselves exempt—wholesale—all personnel who are participating in a COVID-19 vaccine trial, regardless whether their participation has resulted in any protection from the virus.

**E.    DoD and Navy Regulations Recognize Religious and Medical Accommodations for Immunizations under RFRA and the Free Exercise Clause Generally**

44.     Department of Defense Instruction (DODI) 1300.17, Religious Liberty in the Military Services, dated September 1, 2020, establishes DoD policy in furtherance of RFRA and the Free Exercise Clause of the First Amendment to the Constitution of the United States, recognizing that Service Members have the right to observe the tenets of their religion, or to observe no religion at all. DODI 1300.17 provides that it is DoD policy that "[s]ervice members have the right to observe the tenets of their religion or to observe no religion at all, as provided in this issuance." DODI 1300.17 provides that "[i]n accordance with Section 533(a)(1) of Public Law 112-239, as amended, the DoD Components will accommodate individual expressions of sincerely held beliefs (conscience, moral principles, or religious beliefs) which do not have an adverse impact on military readiness, unit cohesion, good order and discipline, or health and safety. A Service member's expression of such beliefs may not, in so far as practicable, be used as the basis of any adverse personnel action, discrimination, or denial of promotion, schooling, training, and assignment." DODI 1300.17 provides that "[a]ccommodation includes excusing a Service member from an otherwise applicable military policy, practice, or duty. In accordance with RFRA, if such a military policy, practice, or duty substantially burdens a Service member's exercise of religion, accommodation can only be denied if: (1) The military policy, practice, or duty is in furtherance of a compelling governmental interest; and (2) It is the least restrictive means of furthering that compelling governmental interest.

45.     Secretary of the Navy Instruction (SECNAVINST) 1730.8B, Accommodation of Religious Practices, dated October 2, 2008, incorporates DODI 1300.17 and provides policy and guidance for the accommodation of religious practices within the Department of the Navy. SECNAVINST 1730.8B provides that Department of the Navy policy "is to accommodate the doctrinal or traditional observances of the religious faith practiced by individual members when these doctrines or observances will not have an adverse impact on military readiness, individual or unit readiness, unit cohesion, health, safety, discipline, or mission accomplishment." SECNAVINST 1730.8B provides that "[i]mmunization requirements may be waived when requested by the member based on religious objection."

46.     Navy Bureau of Medicine Instruction (BUMEDINST) 6230.15B, Immunizations and Chemoprophylaxis for the Prevention of Infectious Diseases, dated October 7, 2013, establishes Departmental policy and quality standards for immunization and chemoprophylaxis. BUMEDINST 6230.15B, Paragraphs 2-6 provides for two types of exemptions from DoD immunization requirements: medical and administrative. Among the numerous medical exemptions available to service members, "evidence of immunity based on serologic tests, documented infection, or similar circumstances" provide a basis for medical exemption. The administrative exemptions available to service members include those who are within 180 days of their separation or retirement date and those who seek religious accommodation.

47.     Navy Bureau of Personnel Instruction (BUPERSINST) 1730.11A, Standards and Procedures Governing the Accommodation of Religious Practices, dated March 16, 2020, provides "policy, guidance, procedures, and responsibilities for the accommodation of religious practices in support of sincerely held religious beliefs for Sailors and prospective accessions, in accordance with [DODI 1300.17] and [SECNAVINST 1730.8B]." BUPERSINST 1730.11A provides that "[e]ach request for religious accommodation must be reviewed on a case-by-case basis, giving consideration to the full range of facts and circumstances relevant to the specific request.  Requests to accommodate religious practices should not be approved or denied simply because similar requests were approved or denied." BUPERSINST 1730.11A provides that for religious

accommodation request from required immunizations, "commanders should make a reasonable effort to acquire alternative vaccinations, when available, that meet both religious needs of Sailors and the Navy's immunization requirements as determined by BUMED."

48.     Navy Military Personnel Manual (MILPERSMAN) 1730-020, Immunization Exemptions for Religious Beliefs, dated August 15, 2020, provides Department of the Navy policy for religious exemptions from required immunizations and establishes the procedures for requesting such religious exemptions.

**F.     Defendants' Refusal to Grant Religious Exemptions and Retaliation for Religious Exemption Requests Concerning the COVID-19 Vaccine Mandate**

49.     Plaintiffs submitted Religious Accommodation requests concerning the COVID-19 Vaccine Mandate based on their sincerely held religious beliefs. The Navy has summarily denied the Plaintiffs' Religious Accommodation requests and has made no determinations on appeals of those denials. In fact, to Plaintiffs' knowledge, zero appeals of religious accommodation requests have been decided. No Plaintiff has received an approved Religious Accommodation request, and Plaintiffs are unaware of any similarly situated Navy service member who has received an approved Religious Accommodation request.

50.     Plaintiffs' Religious Accommodation requests are being adjudicated by the Navy using the Navy's six-phase, fifty-step process. Under the standard operating procedures for the process, the first fifteen steps require an administrator to update a prepared disapproval template with the service members' name and rank. That prepared disapproval letter is then sent to seven offices for review. After those offices review the disapproval letter, the administrator packages the letter with other Religious Accommodation requests for final signature. The administrator then prepares an internal memorandum to Vice Admiral John Nowell, Chief of Naval Personnel, asking him to "sign … letters disapproving immunization waiver requests based on sincerely held religious beliefs." Then, at step thirty-five of the process, the admininstrator is told—for the first time—to read through the Religious Accommodation request. At that point, the disapproval letter has already been written, the Religious Accommdation request and related documents have already

been reviewed by several offices, the disapproval has already been packaged with similar requests, and an internal memo has already been drafted requesting that Vice Admiral Nowell disapprove the Religious Accommodation request. The administrator is then tasked with reading the request and recording and pertinent information in a spreadsheet. At no point in the process is the administrator given the opportunity to recommend anything other than disapproval. The materials are then sent to Vice Admiral Nowell who disapproves every Religious Accommodation request concerning the COVID-19 Vaccine Mandate.

51.     Plaintiffs received a formal "COVID-19 Vaccination Administrative Counseling/Warning" that states, "[P]er MANMED 15-105, special operations (SO) duty personnel (SEAL and SWCC) who refuse to receive the COVID-19 vaccine based solely on personal or religious beliefs will be disqualified from SO duty (unless the disqualification is separately waived by BUMED). This will affect deployment and special pays. This provision does not pertain to medical contraindications or allergies to vaccine administration." (emphasis added).

52.     Plaintiffs also have been informed that any religious accommodation that will be offered will preclude them from deploying. On September 24, 2021, "Trident Order #12 – Mandatory Vaccination for COVID-19" was issued. The document specified that "Special Operations Designated Personnel (SEAL and SWCC) refusing to receive recommended vaccines based solely on personal or religious beliefs will still be medically disqualified." In other words, it declared "non-deployable" all SEALs and SWCCs who submit religious accommodation requests. This medical-disqualification provision expressly "does not pertain to medical contraindications or allergies to vaccine administration." When at least one Plaintiff told his command that he would be requesting a religious accommodation, he was ordered to remove his special warfare device pin from his uniform.  Other Plaintiffs have been threatened with the same adverse treatment.

53.     Defendants' policy and practice is to deny all Religious Accommodation requests concerning the COVID-19 Vaccine Mandate. Unlike religious requests, Defendants have granted requests for medical exemptions related to the COVID-19 Vaccine Mandate.

## CLASS ACTION ALLEGATIONS

54.     This lawsuit is brought as a class action to redress Defendants' violations of the United States Constitution and the Religious Freedom Restoration Act on behalf of the Named Plaintiffs and members of the following class and subclasses:

a.  a class of all members of the United States Navy who are subject to the Navy's COVID-19 Vaccine Mandate and who have submitted a Religious Accommodation request concerning the Navy's COVID-19 Vaccine Mandate ("Navy Class");

b.  a subclass of all members of the Navy Class who are now or will be assigned to Naval Special Warfare or Naval Special Operations, who are subject to the Navy's COVID-19 Vaccine Mandate, and who have submitted a Religious Accommodation request concerning the Navy's COVID-19 Vaccine Mandate ("Naval Special Warfare/Operations Subclass");

c.  a subclass of all members of the Navy Class who are now or will be United States Navy SEALs, who are subject to the Navy's COVID-19 Vaccine Mandate, and who have submitted a Religious Accommodation request concerning the Navy's COVID-19 Vaccine Mandate ("Navy SEALs Subclass");

55.     This lawsuit is properly maintained as a class action under Rule 23(a) and Rule 23(b)(2) of the Federal Rules of Civil Procedure.

**A.      Rule 23(a)**

**Numerosity**

56.     The exact number of members of the class and subclasses is not precisely known, but there are currently over 3,000 members of the United States Navy who have submitted Religious Accommodation requests concerning the Navy's COVID-19 Vaccine Mandate. Due to the high number of class members, joinder of individual class members is impracticable.

**Commonality**

57.     Defendants have engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Named Plaintiffs and the class members.

Similar or identical constitutional and statutory violations, policies and practices, and harm is involved. The harm sustained by class members flows in each instance from a common nucleus of operative fact: Defendants' policies or practices of across-the-board denial of all Religious Accommodation requests, the Navy's failure to conduct individualized assessments of Religious Accommodation requests, the Navy's policy or practice of disqualifying class members from special operations duty based on their Religious Accommodation requests, and the Navy's policy or practice of medically disqualifying or making non-deployable class members based on their Religious Accommodation requests. Each instance of harm suffered by Named Plaintiffs and the class members has directly resulted from a common course of illegal conduct. Thus, individual questions, if any, pale in comparison to the numerous common questions of fact and law presented in this lawsuit.

58.     Determination of the following common questions of fact will resolve in one stroke the following issues that are central to the validity of each one of the individual class member's claims:

a.   Whether the Navy has a policy or practice of denying all Religious Accommodation requests concerning the COVID-19 Vaccine Mandate;

b.   Whether the Navy has a policy or practice of not conducting an individualized assessment of all Religious Accommodation request concerning the COVID-19 Vaccine Mandate;

c.   Whether the Navy has a policy or practice of taking adverse action against servicemembers who submit Religious Accommodation requests concerning the COVID-19 Vaccine Mandate;

d.   Whether the Navy has a policy or practice of coercing compliance with the COVID-19 Vaccine Mandate by threatening or taking adverse action against servicemembers who submit Religious Accommodation requests concerning the COVID-19 Vaccine Mandate;

e.  Whether the Navy has a policy or practice of disqualifying from special operations duty unvaccinated members of Naval Special Warfare and Naval Special Operations who submit a Religious Accommodation request concerning the Navy's COVID-19 Vaccine Mandate, but not disqualifying from special operations duty unvaccinated members of Naval Special Warfare and Naval Special Operations who submit a request for a medical accommodation or medical exemption concerning the Navy's COVID-19 Vaccine Mandate;

f.  Whether the Navy has a policy or practice of disqualifying from special operations duty unvaccinated members of Naval Special Warfare and Naval Special Operations who receive a Religious Accommodation concerning the Navy's COVID-19 Vaccine Mandate, but not disqualifying from special operations duty unvaccinated members of Naval Special Warfare and Naval Special Operations who receive a medical accommodation or medical exemption concerning the Navy's COVID-19 Vaccine Mandate;

g.  Whether the Navy has a policy or practice of medically disqualifying or making non-deployable unvaccinated members of the United States Navy SEALs who submit a Religious Accommodation request concerning the Navy's COVID-19 Vaccine Mandate; and

h.  Whether the Navy has a policy or practice of medically disqualifying or making non-deployable unvaccinated members of the United States Navy SEALs who receive a Religious Accommodation concerning the Navy's COVID-19 Vaccine Mandate.

59.  Determination of the following common questions of law will resolve the following legal issues that are central to the validity of each one of the individual class member's claims:

a.  Whether the Navy's policy or practice of denying all Religious Accommodation requests concerning the Navy's COVID-19 Vaccine Mandate means that members of the Navy Class have been and are being deprived of their right to the Free Exercise of Religion under the First Amendment to the United States Constitution;

b. Whether the Navy's policy or practice of denying all Religious Accommodation requests concerning the Navy's COVID-19 Vaccine Mandate means that members of the Navy Class have been and are being deprived of their rights under the Religious Freedom Restoration Act;

c. Whether the Navy's policy or practice of not conducting an individualized assessment of all Religious Accommodation requests concerning the Navy's COVID-19 Vaccine Mandate means that members of the Navy Class have been and are being deprived of their right to the Free Exercise of Religion under the First Amendment to the United States Constitution;

d. Whether the Navy's policy or practice of not conducting an individualized assessment of all Religious Accommodation request concerning the Navy's COVID-19 Vaccine Mandate means that members of the Navy Class have been and are being deprived of their rights under the Religious Freedom Restoration Act;

e. Whether the Navy's policy or practice of taking adverse action against servicemembers who submit Religious Accommodation requests concerning the COVID-19 Vaccine Mandate means that members of the Navy Class have been and are being deprived of the Free Exercise of Religion under the First Amendment to the United States Constitution;

f. Whether the Navy's policy or practice of taking adverse action against servicemembers who submit Religious Accommodation requests concerning the COVID-19 Vaccine Mandate means that members of the Navy Class have been and are being deprived of their rights under the Religious Freedom Restoration Act;

g. Whether the Navy's policy or practice of coercing compliance with the COVID-19 Vaccine Mandate by threatening or taking adverse action against servicemembers who submit Religious Accommodation requests concerning the COVID-19 Vaccine Mandate means that members of the Navy Class have been and are being deprived of

the Free Exercise of Religion under the First Amendment to the United States Constitution;

h. Whether the Navy's policy or practice of coercing compliance with the COVID-19 Vaccine Mandate by threatening or taking adverse action against servicemembers who submit Religious Accommodation requests concerning the COVID-19 Vaccine Mandate means that members of the Navy Class have been and are being deprived of their rights under the Religious Freedom Restoration Act;

i. Whether the Navy's policy or practice requiring unvaccinated members of Naval Special Warfare and Naval Special Operations to be disqualified from special operations duty if the member submits a Religious Accommodation request concerning the Navy's COVID-19 Vaccine Mandate, but not if a member submits a request for a medical exemption concerning the Navy's COVID-19 Vaccine Mandate, means that members of the Naval Special Warfare/Operations Subclass have been and are being deprived of their right to the Free Exercise of Religion under the First Amendment to the United States Constitution;

j. Whether the Navy's policy or practice of requiring unvaccinated members of Naval Special Warfare and Naval Special Operations to be disqualified from special operations duty if the member submits a Religious Accommodation request concerning the Navy's COVID-19 Vaccine Mandate, but not if a member submits a request for a medical exemption concerning the Navy's COVID-19 Vaccine Mandate, means that members of the Naval Special Warfare/Operations Subclass have been and are being deprived of their rights under the Religious Freedom Restoration Act;

k. Whether the Navy's policy or practice of requiring unvaccinated members of Naval Special Warfare and Naval Special Operations to be disqualified from special operations duty if the member receives a Religious Accommodation concerning the Navy's COVID-19 Vaccine Mandate, but not if an unvaccinated member receives a medical accommodation or exemption concerning the Navy's COVID-19 Vaccine

Mandate, means that members of the Naval Special Warfare/Operations Subclass have been and are being deprived of their right to the Free Exercise of Religion under the First Amendment to the United States Constitution;

l.  Whether the Navy's policy or practice of requiring unvaccinated members of Naval Special Warfare and Naval Special Operations to be disqualified from special operations duty if the member receives a Religious Accommodation concerning the Navy's COVID-19 Vaccine Mandate, but not if an unvaccinated member receives a medical accommodation or exemption concerning the Navy's COVID-19 Vaccine Mandate, means that members of the Naval Special Warfare/Operations Subclass have been and are being deprived of their rights under the Religious Freedom Restoration Act;

m.  Whether the Navy's policy or practice of medically disqualifying or making non-deployable unvaccinated members of the United States Navy SEALs who submit a Religious Accommodation request concerning the Navy's COVID-19 Vaccine Mandate means that members of the Navy SEAL Subclass have been and are being deprived of their right to the Free Exercise of Religion under the First Amendment to the United States Constitution;

n.  Whether the Navy's policy or practice of medically disqualifying or making non-deployable unvaccinated members of the United States Navy SEALs who submit a Religious Accommodation request concerning the Navy's COVID-19 Vaccine Mandate means that members of the Navy SEAL Subclass have been and are being deprived of their rights under the Religious Freedom Restoration Act;

o.  Whether the Navy's policy or practice of medically disqualifying or making non-deployable unvaccinated members of the United States Navy SEALs who receive a Religious Accommodation concerning the Navy's COVID-19 Vaccine Mandate means that members of the Navy SEAL Subclass have been and are being deprived of their

right to the Free Exercise of Religion under the First Amendment to the United States Constitution; and

p.   Whether the Navy's policy or practice of medically disqualifying or making non-deployable unvaccinated members of the United States Navy SEALs who receive a Religious Accommodation concerning the Navy's COVID-19 Vaccine Mandate means that members of the Navy SEAL Subclass have been and are being deprived of their right to the Free Exercise of Religion under the Religious Freedom Restoration Act.

**Typicality**

60.    The claims alleged by the Named Plaintiffs and the resultant harms are typical of the claims of each member of the proposed classes. Typicality exists because all absent class members have been injured, or are at risk of injury, as a result of the same policies or practices.

**Adequacy**

61.    The Named Plaintiffs will fairly and adequately protect the interests of the classes. There are no conflicts of interest between the Named Plaintiffs and the other class members.

62.    The Named Plaintiffs have retained counsel with extensive experience litigating complex class action lawsuits in federal court. Named Plaintiffs' counsel has committed sufficient resources to represent the classes. Named Plaintiffs' counsel therefore are well suited to fairly and adequately represent the interest of the classes.

**B.    Rule 23(b)(2)**

63.    Defendants have acted or failed to act on grounds generally applicable to the classes, necessitating declaratory and injunctive relief for the classes. Named Plaintiffs' counsel know of no conflicts among the class members.

**FIRST CAUSE OF ACTION**
**Violation of Plaintiffs' Rights under the Religious Freedom Restoration Act**
**Duty Disqualification**
**42 U.S.C. § 2000bb *et seq.***

64.    Plaintiffs repeat and re-allege each of the allegations contained in the foregoing paragraphs of this Complaint.

65.     The Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb et seq. (RFRA), states that the "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1.

66.     The act broadly defines the "exercise of religion" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000bb-2(4) (citing 42 U.S.C. § 2000cc-5(7)(A)).

67.     In *Burwell v. Hobby Lobby Stores*, the Supreme Court stated that the exercise of religion involves "not only belief and profession but the performance of (or abstention from) physical acts that are engaged in for religious reasons." 573 U.S. 682, 710 (2014) (citing *Emp't Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 877 (1990)).

68.     The Supreme Court has articulated repeatedly that courts may not question whether sincerely held religious beliefs are reasonable. *Hobby Lobby*, 573 U.S. at 724.

69.     RFRA imposes strict scrutiny on all actions of the federal government that "substantially burden a person's exercise of religion." 42 U.S.C. § 2000bb-1(b).

70.     DODI 1300.17 and SECNAVINST 1730.8B explicitly recognize RFRA protections for Department of Defense and Department of the Navy Service members.

71.     Unless the government satisfies the compelling interest test by "demonstrat[ing] that [the] application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest," 42 U.S.C. § 2000bb-1(b), the governmental act violates RFRA.

72.     Plaintiffs have sincerely held religious beliefs that they cannot receive the mandated COVID-19 vaccine.

73.     Defendants' COVID-19 Vaccine Mandates substantially burden Plaintiffs' sincerely held religious beliefs by requiring them to take an action (receiving a COVID-19 vaccine) that would violate those religious beliefs or suffer adverse employment action, financial harm, and potential physical harm.

74.    The adverse actions to which Plaintiffs are subject may include: court-martial (criminal) prosecution, involuntary separation, relief for cause from leadership positions, removal from promotion lists, inability to attend certain military training and education schools, loss of special pay, placement in a non-deployable status, recoupment of money spent training the service member, and loss of leave and travel privileges for both official and unofficial purposes.

75.    Multiple Plaintiffs received a formal "COVID-19 Vaccination Administrative Couseling/Warning" that states, "[P]er MANMED 15-105, special operations (SO) duty personnel (SEAL and SWCC) who refuse to receive the COVID-19 vaccine based solely on personal or religious beliefs will be disqualified from SO duty (unless the disqualification is separately waived by BUMED). This will affect deployment and special pays. This provision does not pertain to medical contraindications or allergies to vaccine administration."

76.    Many Plaintiffs have already suffered and continue to suffer adverse employment actions merely for requesting relief that is protected by RFRA.

77.    Defendants' COVID-19 Vaccine Mandates fail strict scrutiny.

78.    Defendants do not have a compelling government interest in requiring Plaintiffs to violate their sincerely held religious beliefs by taking a COVID-19 vaccine.

79.    Defendants' COVID-19 Vaccine Mandates are also not the least restrictive means of accomplishing the government's purported interest because DoD operated for over a year during the COVID-19 pandemic with a ready and healthy force that had not been fully vaccinated.

80.    Moreover, Defendants possess multiple lesser restrictive methods of mitigating the spread of COVID-19, including masking, remote teleworking, physical distancing, and regular testing.

81.    Indeed, if Defendants are concerned about COVID-19 affecting its personnel, it would need to implement these other mitigation protocols even if service members receive the vaccine, because vaccinated personnel can also carry, transmit, and become sick with COVID-19. Centers for Disease Control and Prevention, "Science Brief: COVID-19 Vaccines and

Vaccination" (last updated September 15, 2021), https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/fully-vaccinated-people.html.

82.     Accordingly, Defendants' COVID-19 Vaccine Mandates violate Plaintiffs' rights under RFRA.

83.     Because of Defendants' policies and practices, Plaintiffs have suffered, and continue to suffer, irreparable harm. They are entitled to equitable relief.

84.     Plaintiffs are entitled to a declaration that Defendants violated their rights under RFRA and an injunction against Defendants' illegal policies and practices. Additionally, Plaintiffs are entitled to the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

**SECOND CAUSE OF ACTION**
**Violation of Plaintiffs' Rights under the Religious Freedom Restoration Act**
**Medical Disqualification**
**42 U.S.C. § 2000bb _et seq._**

85.     Plaintiffs repeat and re-allege each of the allegations contained in the foregoing paragraphs of this Complaint.

86.     The Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb et seq. (RFRA), states that the "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1.

87.     The act broadly defines the "exercise of religion" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000bb-2(4) (citing 42 U.S.C. § 2000cc-5(7)(A)).

88.     In _Hobby Lobby_, the Supreme Court stated that the exercise of religion involves "not only belief and profession but the performance of (or abstention from) physical acts that are engaged in for religious reason." 573 U.S. at 710 (citing _Smith_, 494 U.S. at 877).

89.     The Supreme Court has articulated repeatedly that courts may not question whether sincerely held religious beliefs are reasonable. _Hobby Lobby_, 573 U.S. at 724.

90.     In *Holt v. Hobbs*, the Supreme Court held  that  the  government  failed  strict scrutiny, in part, because it "fail[ed] to prove that petitioner's proposed alternatives would not sufficiently serve its security interests."  574 U.S. 352, 367 (2015).

91.     RFRA imposes strict scrutiny on all actions of the federal government that "substantially burden a person's exercise of religion." 42 U.S.C. § 2000bb-1(b).

92.     DODI 1300.17 and SECNAVINST 1730.8B explicitly recognize RFRA protections for Department of Defense and Department of the Navy Service members.

93.     Unless the government satisfies the compelling interest test by "demonstrat[ing] that [the] application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest," 42 U.S.C. § 2000bb-1(b), the governmental act violates RFRA.

94.     Plaintiffs have sincerely held religious beliefs that they cannot receive the mandated COVID-19 vaccine.

95.     The medical-disqualification provision of Defendants' Trident Order #12 substantially burdens Plaintiffs' sincerely held religious beliefs by rendering Plaintiffs "medically disqualified," i.e., non-deployable, even if they were to receive a religious accommodation. This threat of non-deployability substantially pressures Plaintiffs to take an action (receiving a COVID-19 vaccine) that would violate their religious beliefs.

96.     The medical-disqualification provision of Defendants' Trident Order #12 fails strict scrutiny.

97.     Defendants do not have a compelling government interest in requiring Plaintiffs to violate their sincerely held religious beliefs by taking a COVID-19 vaccine.

98.     The medical-disqualification provision of Defendants' Trident Order #12 is also not the least restrictive means of accomplishing the government's purported interest because DoD operated for over a year during the COVID-19 pandemic with a ready and healthy force that had not been fully vaccinated, and in any event the reason for exemption from vaccination—religious or medical—will have no impact on a service member's deployability or on the lesser restrictive

methods of mitigating the spread of COVID-19 that Defendants can adopt. If those with a medical accommodation can be deployed, so too can those with a religious accommodation.

99.     Moreover, Defendants possess multiple lesser restrictive methods of mitigating the spread of COVID-19, including masking, remote teleworking, physical distancing, and regular testing.

100.    Defendants fail to prove how any of Plaintiffs' proposed alternatives do not sufficiently serve its purported interest.

101.    Indeed, Defendants will need to implement mitigation protocols even if service members receive the vaccine, because vaccinated personnel can carry, transmit, and become sick with COVID-19.   Centers for Disease Control and Prevention, "Science Brief: COVID-19 Vaccines and Vaccination" (last updated September 15, 2021), https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/fully-vaccinated-people.html.

102.    Accordingly, the medical-disqualification provision of Defendants' Trident Order #12 violates Plaintiffs' rights under RFRA.

103.    Because of Defendants' policies and practices, Plaintiffs have suffered, and continue to suffer irreparable harm. They are entitled to equitable relief.

104.    Plaintiffs are entitled to a declaration that Defendants violated their rights under RFRA and an injunction against Defendants' illegal policies and practices. Additionally, Plaintiffs are entitled to the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

**THIRD CAUSE OF ACTION**
**Violation of Plaintiffs' First Amendment Right to the Free Exercise of Religion**
**Duty Disqualification**
**U.S. Const. amend. I**

105.    Plaintiffs repeat and re-allege each of the allegations contained in the foregoing paragraphs of this Complaint.

106.    The First Amendment's Free Exercise Clause prohibits the government from enacting non-neutral and non-generally applicable laws or policies unless they are narrowly tailored to a compelling government interest.

107.     The original public meaning of the Free Exercise Clause is that the government may not burden a sincerely held religious belief unless the government can demonstrate a compelling interest and that the law or policy burdening religious exercise is the least restrictive means to achieve that compelling interest.

108.     Plaintiffs have sincerely held religious beliefs that prohibit their receipt of presently available COVID-19 vaccines.

109.     Defendants' COVID-19 Vaccine Mandates substantially burden Plaintiffs' sincerely held religious beliefs by requiring them to take an action (receiving a COVID-19 vaccine) that would violate those religious beliefs or suffer adverse employment action and financial harm.

110.     The adverse actions to which Plaintiffs are subject may include: court-martial (criminal) prosecution, involuntary separation, relief for cause from leadership positions, removal from promotion lists, inability to attend certain military training and education schools, loss of special pay, placement in a non-deployable status, recoupment of money spent training the service member, loss of leave and travel privileges for both official and unofficial purposes.

111.     Multiple Plaintiffs received a formal "COVID-19 Vaccination Administrative Couseling/Warning" that states, "[P]er MANMED 15-105, special operations (SO) duty personnel (SEAL and SWCC) who refuse to receive the COVID-19 vaccine based solely on personal or religious beliefs will be disqualified from SO duty (unless the disqualification is separately waived by BUMED). This will affect deployment and special pays. This provision does not pertain to medical contraindications or allergies to vaccine administration."

112.     Defendants' COVID-19 Vaccine Mandates are not a neutral and generally applicable law or policy. The policy vests DoD and Navy decisionmakers with the discretion to exempt service members from the mandates for medical reasons and to exempt service members already participating in COVID-19 vaccine trials, regardless of whether those medical trials provide those service members with any protection from infection or serious illness from COVID-19.

113.     Defendants' COVID-19 Vaccine Mandates fail strict scrutiny.

114.    Defendants do not have a compelling government interest in requiring Plaintiffs to violate their sincerely held religious beliefs by taking a COVID-19 vaccine.

115.    Defendants' COVID-19 Vaccine Mandates are also not the least restrictive means of accomplishing the government's purported interest because DoD operated for over a year during the COVID-19 pandemic with a ready and healthy force that had not been fully vaccinated.

116.    Moreover, Defendants possess multiple lesser restrictive methods of mitigating the spread of COVID-19, including masking, remote teleworking, physical distancing, and regular testing.

117.    Indeed, Defendants will need to implement mitigation protocols even if service members receive the vaccine, because vaccinated personnel can also carry, transmit, and become sick with COVID-19. Centers for Disease Control and Prevention, "Science Brief: COVID-19 Vaccines and Vaccination" (last updated September 15, 2021), https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/fully-vaccinated-people.html.

118.    Accordingly, Defendants' COVID-19 Vaccine Mandates violate Plaintiffs' rights to the free exercise of religion under the First Amendment.

119.    Because of Defendants' policies and practices, Plaintiffs have suffered and continue to suffer irreparable harm. They are entitled to equitable relief.

120.    Plaintiffs are entitled to a declaration that Defendants violated their First Amendment rights to free exercise of religion and an injunction against Defendants' illegal policies and practices. Additionally, Plaintiffs are entitled to the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

## FOURTH CAUSE OF ACTION
### Violation of Plaintiffs' First Amendment Right to the Free Exercise of Religion
### Medical Disqualification
### U.S. Const. amend. I

121.    Plaintiffs repeat and re-allege each of the allegations contained in the foregoing paragraphs of this Complaint.

122.    The First Amendment's Free Exercise Clause prohibits the government from enacting non-neutral and non-generally applicable laws or policies unless they are narrowly tailored to a compelling government interest.

123.    The original public meaning of the Free Exercise Clause is that the government may not burden a sincerely held religious belief unless the government can demonstrate a compelling interest and that the law or policy burdening religious exercise is the least restrictive means to achieve that compelling interest.

124.    Plaintiffs have sincerely held religious beliefs that prohibit their receipt of presently available COVID-19 vaccines.

125.    The medical-disqualification provision of Defendants' Trident Order #12 substantially burdens Plaintiffs' sincerely held religious beliefs by rendering Plaintiffs "medically disqualified," i.e., non-deployable, even if they were to receive a religious accommodation. This threat of non-deployability substantially pressures Plaintiffs to take an action (receiving a COVID-19 vaccine) that would violate their religious beliefs.

126.    The medical-disqualification provision of Defendants' Trident Order #12 is not a neutral and generally applicable law or policy. The order expressly states that its medical-disqualification provision will apply to service members who receive a religious accommodation but will not apply to those who receive a medical accommodation.

127.    The medical-disqualification provision of Defendants' Trident Order #12 fails strict scrutiny.

128.    Defendants do not have a compelling government interest in requiring Plaintiffs to violate their sincerely held religious beliefs by taking a COVID-19 vaccine.

129.    The medical-disqualification provision of Defendants' Trident Order #12 is also not the least restrictive means of accomplishing the government's purported interest because DoD operated for over a year during the COVID-19 pandemic with a ready and healthy force that had not been fully vaccinated, and in any event the reason for exemption from vaccination—religious or medical—will have no impact on a service member's deployability or on the lesser restrictive

methods of mitigating the spread of COVID-19 that Defendants can adopt. If those with a medical accommodation could be deployed, so too could those with a religious accommodation.

130.    Moreover, Defendants possess multiple lesser restrictive methods of mitigating the spread of COVID-19, including masking, remote teleworking, physical distancing, and regular testing.

131.    Indeed, Defendants will need to implement these other mitigation protocols even if service members receive the vaccine, because vaccinated personnel can carry, transmit, and become sick with COVID-19. Centers for Disease Control and Prevention, "Science Brief: COVID-19 Vaccines and Vaccination" (last updated September 15, 2021), https://www.cdc.gov /coronavirus/2019-ncov/science/science-briefs/fully-vaccinated-people.html.

132.    Accordingly, the medical-disqualification provision of Defendants' Trident Order #12 violates Plaintiffs' rights to the free exercise of religion under the First Amendment.

133.    Because of Defendants' policies and practices, Plaintiffs have suffered and continue to suffer irreparable harm. They are entitled to equitable relief.

134.    Plaintiffs are entitled to a declaration that Defendants violated their First Amendment rights to free exercise of religion and an injunction against Defendants' illegal policies and practices. Additionally, Plaintiffs are entitled to the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment against Defendants and provide Plaintiffs with the following relief:

(A)    An order that the Named Plaintiffs may maintain this action as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure;

(B)    A declaratory judgment that the COVID-19 Vaccine Mandate violates Plaintiffs' and the class members' rights under the First Amendment to the United States Constitution;

(C)    A declaratory judgment that the COVID-19 Vaccine Mandate violates Plaintiffs'
and the class members' rights under the Religious Freedom Restoration Act;

(D)    A preliminary and permanent injunction prohibiting the Defendants, their agents,
officials, servants, employees, and any other persons acting on their behalf from
enforcing the COVID-19 Vaccine Mandate as to the Plaintiffs and the class
members;

(E)    Plaintiffs' reasonable attorneys' fees, costs, and other costs and disbursements in
this action pursuant to 28 U.S.C. § 2412 and 42 U.S.C. § 1988; and

(F)    All other further relief under law or equity to which Plaintiffs and the class
members may be entitled.

Respectfully submitted this 24th day of January, 2022.

Kelly J. Shackelford
   Texas Bar No. 18070950
Jeffrey C. Mateer
   Texas Bar No. 13185320
Hiram S. Sasser, III
   Texas Bar No. 24039157
David J. Hacker
   Texas Bar No. 24103323
Michael D. Berry
   Texas Bar No. 24085835
Justin Butterfield
   Texas Bar No. 24062642
Danielle Runyan *
   New Jersey Bar No. 027232004
Holly M. Randall *
   Oklahoma Bar No. 34763
FIRST LIBERTY INSTITUTE
2001 W. Plano Pkwy., Ste. 1600
Plano, Texas 75075
Tel: (972) 941-4444
jmateer@firstliberty.org
hsasser@firstliberty.org
dhacker@firstliberty.org
mberry@firstliberty.org
jbutterfield@firstliberty.org
drunyan@firstliberty.org

/s/ Andrew B. Stephens
Heather Gebelin Hacker
   Texas Bar No. 24103325
Andrew B. Stephens
   Texas Bar No. 24079396
HACKER STEPHENS LLP
108 Wild Basin Road South, Suite 250
Austin, Texas 78746
Tel.: (512) 399-3022
heather@hackerstephens.com
andrew@hackerstephens.com

Attorneys for Plaintiffs

hrandall@firstliberty.org

Jordan E. Pratt
  Florida Bar No. 100958*  **
FIRST LIBERTY INSTITUTE
227 Pennsylvania Ave., SE
Washington, DC 20003
Tel: (972) 941-4444
jpratt@firstliberty.org

*Admitted pro hac vice
** Not yet admitted to the D.C. Bar, but
admitted to practice law in Florida. Practicing
law in D.C. pursuant to D.C. Court of
Appeals Rule 49(c)(8) under the supervision
of an attorney admitted to the D.C. Bar.