UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **U.S. NAVY SEALs 1-3**, on behalf of themselves and all others similarly situated; **U.S. NAVY EXPLOSIVE ORDNANCE DISPOSAL TECHNICIAN 1**, on behalf of himself and all others similarly situated; **U.S. NAVY SEALS 4-26**; **U.S. NAVY SPECIAL WARFARE COMBATANT CRAFT CREWMEN 1-5**; and **U.S. NAVY DIVERS 1-3**,<br><br>                    Plaintiffs,<br><br>          v.<br><br>**LLOYD J. AUSTIN, III**, in his official capacity as United States Secretary of Defense; **UNITED STATES DEPARTMENT OF DEFENSE**; **CARLOS DEL TORO**, in his official capacity as United States Secretary of the Navy,<br><br>                    Defendants. | Case No. 4:21-cv-01236-O |

**MEMORANDUM IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................... iii

LOCAL RULE 23.2 REQUIREMENTS ......................................................................................... 1

INTRODUCTION ........................................................................................................................... 2

ARGUMENT ................................................................................................................................... 2

I.   The Proposed Class and Subclasses Satisfy the Requirements of Rule 23(a). ......................... 3

     A. Numerosity: The proposed Class and Subclasses are so numerous that joinder of all members is impractical. ............................................................................................... 3

     B. Commonality: There are questions of fact and law common to the Class and Subclass members. ................................................................................................................ 4

         1.  Navy Class: Common Questions ................................................................................. 5

         2.  Naval Special Warfare/Operations Subclass: Common Questions ............................. 6

         3.  Navy SEALs Subclass: Common Questions ............................................................... 8

         4.  The Class and Subclasses satisfy the commonality requirement. ................................ 9

     C. Typicality: The Class Members' claims are typical of the claims of all Class Members. ............................................................................................................................ 10

     D. Adequacy of Representation: The Named Plaintiffs will fairly and adequately represent and protect the interests of the Class and the Subclasses. ................................ 11

         1.  Adequacy of the Named Plaintiffs and the lack of any conflict ................................ 12

         2.  Zeal and competency of Plaintiffs' Counsel .............................................................. 13

II.  The Class and the Subclasses Satisfy the Requirements of Rule 23(b)(2). ........................... 13

III. Plaintiffs' Counsel Will Fairly and Adequately Represent the Interests of the Class and Subclasses and Should Be Appointed Class Counsel. ............................................................ 15

CONCLUSION .............................................................................................................................. 15

CERTIFICATE OF SERVICE ...................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*Abboud v. Agentra, LLC*,
  3:19-CV-00120-X, 2020 WL 5526557 (N.D. Tex. Sept. 14, 2020) ........................................... 3

*Ahmad v. Old Republic Nat'l Title Ins. Co.*,
  690 F.3d 698 (5th Cir. 2012) ................................................................................................... 2

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ............................................................................................................... 12

*Bear Creek Bible Church v. EEOC*,
  4:18-CV-00824-O, 2021 WL 5449038 (N.D. Tex. Nov. 22, 2021) ......................................... 3

*Feder v. Elec. Data Sys. Corp.*,
  429 F.3d 125 (5th Cir. 2005) ................................................................................................. 12

*Gen. Tele. Co. of Sw. v. Falcon*,
  347 U.S. 147 (1982) .................................................................................................... 10, 11, 12

*In re Deepwater Horizon*,
  739 F.3d 790 (5th Cir. 2014) ............................................................................................... 9, 10

*James v. City of Dallas*,
  254 F.3d 551 (5th Cir. 2001) ................................................................................................ 9, 11

*Mullen v. Treasure Chest Casino, LLC*,
  186 F.3d 620 (5th Cir. 1999) ................................................................................................ 3, 11

*Slade v. Progressive Sec. Ins.*,
  856 F.3d 408 (5th Cir. 2017) ................................................................................................ 12, 13

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ........................................................................................ 4, 5, 9, 10, 13, 14

**Rules**
Fed. R. Civ. P. 23 ........................................................................................................ 2, 13, 14, 15
L.R. 23.2 ............................................................................................................................. 2, 3, 13

## LOCAL RULE 23.2 REQUIREMENTS

Rule 23.2(a): The suit is properly maintainable under Fed. R. Civ. P. 23(a) and 23(b)(2). *See* Parts I and II *infra*.

Rule 23.2(b)(1): *See* Part I.A *infra*.

Rule 23.2(b)(2): *See* Introduction, p. 2 *infra*.

Rule 23.2(b)(3): *See* Part I.B.4 n.1, *infra*.

Rule 23.2(b)(4): *See* Part I.B.1-3, *infra*.

Rule 23.2(b)(5): Not applicable because the class is maintainable under Fed. R. Civ. P. 23(b)(2).

Rule 23.2(c): *See* Part I.D. *infra*.

Rule 23.2(d): Jurisdictional amount is not an issue because the Court's jurisdiction is premised on a federal question. *See* 28 U.S.C. § 1331.

Rule 23.2(e): Notice is not required under Fed. R. Civ. P. 23(b)(2) and Plaintiffs believe it is unnecessary in this case so no notice cost is anticipated.

Rule 23.2(f): At this time, Plaintiffs anticipate that they may need limited discovery as to the approximate number of members of the subclasses, which is clearly within the knowledge or possession of the Defendants. Plaintiffs believe they can get this information expeditiously from Defendants through interrogatories or through subpoenaing DoD witnesses to a class certification hearing.

Rule 23.2(g): *See* Part I.D.2; Part III; Declaration of Andrew Stephens.

## INTRODUCTION

Plaintiffs United States Navy SEALs 1-3 ("SEALs 1-3") and United States Navy Explosive Ordnance Disposal Technician 1 ("EOD 1") ("Named Plaintiffs"), on behalf of themselves and all others similarly situated, respectfully request that the Court enter an order certifying the following class and subclasses under Rule 23(b)(2) of the Federal Rules of Civil Procedure:

(a) a class of all members of the United States Navy who are subject to the Navy's COVID-19 Vaccine Mandate and who have submitted a Religious Accommodation request concerning the Navy's COVID-19 Vaccine Mandate ("Navy Class");

(b) a subclass of all members of the Navy Class who are now or will be assigned to Naval Special Warfare or Naval Special Operations, who are subject to the Navy's COVID-19 Vaccine Mandate, and who have submitted a Religious Accommodation request concerning the Navy's COVID-19 Vaccine Mandate ("Naval Special Warfare/Operations Subclass");

(c) a subclass of all members of the Navy Class who are now or will be United States Navy SEALs, who are subject to the Navy's COVID-19 Vaccine Mandate, and who have submitted a Religious Accommodation request concerning the Navy's COVID-19 Vaccine Mandate ("Navy SEALs Subclass").

Plaintiffs further request that the Court enter an order appointing Plaintiffs' counsel as class counsel under Rule 23(g) of the Federal Rules of Civil Procedure.

## ARGUMENT

A party that moves for class certification must satisfy each requirement of Rule 23(a): "numerosity, commonality of issues, typicality of the class representatives' claims in relation to the class, and adequacy of the class representatives and their counsel to represent the class." *Ahmad v. Old Republic Nat'l Title Ins. Co.*, 690 F.3d 698, 702 (5th Cir. 2012) (citing Fed. R. Civ. P. 23(a)); *see* L.R. 23.2(a). "Plaintiffs also must satisfy at least one of the requirements of Rule 23(b)." *Ahmad*, 690 F.3d at 702. The proposed class and subclasses meet each of these

requirements. The Navy Class, the Naval Special Warfare/Operations Subclass, and the Navy SEALs Subclass meet each of the four requirements of Rule 23(a) as well as Rule 23(b)(2).

I. **The Proposed Class and Subclasses Satisfy the Requirements of Rule 23(a).**

    A. **Numerosity: The proposed Class and Subclasses are so numerous that joinder of all members is impractical.**

The number of Navy service members who are subject to the Navy's COVID-19 Vaccine Mandate and who have submitted a Religious Accommodation request concerning the Navy's COVID-19 Vaccine Mandate easily meets the numerosity requirement. "There is not a threshold number that makes a class so numerous that joinder would be impossible. The Fifth Circuit has implied, however, that a class of over forty people will suffice." *Abboud v. Agentra, LLC*, 3:19-CV-00120-X, 2020 WL 5526557, at *3 (N.D. Tex. Sept. 14, 2020) (citing *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999)). And "[c]ourts have regularly certified classes with far fewer members" than asserted here. *Bear Creek Bible Church v. EEOC*, 4:18-CV-00824-O, 2021 WL 5449038, at *17 (N.D. Tex. Nov. 22, 2021).

The Named Plaintiffs seek to represent a class of United States Navy service members who are subject to the Navy's COVID-19 Vaccine Mandate and who have submitted Religious Accommodation requests concerning the Navy's COVID-19 Vaccine Mandate. Likewise, all of the Named Plaintiffs have submitted Religious Accommodation requests concerning the Navy's COVID-19 Vaccine Mandate. The local rules of this Court require Plaintiffs to provide the "approximate number of class members." L.R. 23.2(b)(1). It is difficult to calculate the exact number of members of the Navy who have submitted a Religious Accommodation request concerning the Navy's COVID-19 Vaccine Mandate because that information is in the possession of the Defendants. But based on Defendants' statements in this lawsuit, one can confidently

estimate that the Navy Class members number in the thousands. In their opposition to the Plaintiffs' Motion for Preliminary Injunction, Defendants asserted that as of December 9, 2021, approximately 3,259 Navy personnel had submitted Religious Accommodation requests. The Navy has granted zero Religious Accommodation requests, and the Chief of Naval Operations, the second-in-command of the Department of the Navy, has decided zero appeals. Thus, while the precise number of class members is not known at this time, the number of proposed class members is clearly sufficient to satisfy numerosity, as the joinder of thousands of individuals to this lawsuit is impractical.

Similarly, it is difficult to calculate the exact number of members of Naval Special Warfare/Operations units and United States Navy SEALs who have submitted a Religious Accommodation request concerning the Navy's COVID-19 Vaccine Mandate. Based on Defendants' statements in this lawsuit, Plaintiffs reasonably believe that the Naval Special Warfare/Operations Subclass members and the Navy SEALs Subclass members number over one hundred, which also clearly satisfies the numerosity requirement. A more exact calculation for either subclass is unavailable at this time.

**B. Commonality: There are questions of fact and law common to the Class and Subclass members.**

The Named Plaintiffs seek to litigate several questions that are common to all class members and meet the commonality requirement. To satisfy the requirement of commonality, the "claims must depend upon a common contention" that is "of such a nature it is capable of classwide resolution—which means that the determination of its truth or falsity will resolve an issue central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "What matters to class certification is not the raising of common *questions*—

even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 350 (first emphasis added). There are numerous common questions here that will yield common answers that will resolve this litigation.

1. **Navy Class: Common Questions**

The questions of fact that are common to the Navy Class include:

(a) Whether the Navy has a policy or practice of denying all Religious Accommodation requests concerning the COVID-19 Vaccine Mandate;

(b) Whether the Navy has a policy or practice of not conducting an individualized assessment of all Religious Accommodation request concerning the COVID-19 Vaccine Mandate;

(c) Whether the Navy has a policy or practice of taking adverse action against servicemembers who submit Religious Accommodation requests concerning the COVID-19 Vaccine Mandate; and

(d) Whether the Navy has a policy or practice of coercing compliance with the COVID-19 Vaccine Mandate by threatening or taking adverse action against servicemembers who submit Religious Accommodation requests concerning the COVID-19 Vaccine Mandate.

The questions of law that are common to the Navy Class include:

(a) Whether the Navy's policy or practice of denying all Religious Accommodation requests concerning the Navy's COVID-19 Vaccine Mandate means that members of the Navy Class have been and are being deprived of their right to the Free Exercise of Religion under the First Amendment to the United States Constitution;

(b) Whether the Navy's policy or practice of denying all Religious Accommodation requests concerning the Navy's COVID-19 Vaccine Mandate means that members of the Navy Class have been and are being deprived of their rights under the Religious Freedom Restoration Act;

(c) Whether the Navy's policy or practice of not conducting an individualized assessment of all Religious Accommodation requests concerning the Navy's COVID-19 Vaccine Mandate means that members of the Navy Class have been and are being deprived of their right to the Free Exercise of Religion under the First Amendment to the United States Constitution;

(d) Whether the Navy's policy or practice of not conducting an individualized assessment of all Religious Accommodation request concerning the Navy's COVID-19 Vaccine Mandate means that members of the Navy Class have been and are being deprived of their rights under the Religious Freedom Restoration Act;

(e) Whether the Navy's policy or practice of taking adverse action against servicemembers who submit Religious Accommodation requests concerning the COVID-19 Vaccine Mandate means that members of the Navy Class have been and are being deprived of the Free Exercise of Religion under the First Amendment to the United States Constitution;

(f) Whether the Navy's policy or practice of taking adverse action against servicemembers who submit Religious Accommodation requests concerning the COVID-19 Vaccine Mandate means that members of the Navy Class have been and are being deprived of their rights under the Religious Freedom Restoration Act;

(g) Whether the Navy's policy or practice of coercing compliance with the COVID-19 Vaccine Mandate by threatening or taking adverse action against servicemembers who submit Religious Accommodation requests concerning the COVID-19 Vaccine Mandate means that members of the Navy Class have been and are being deprived of the Free Exercise of Religion under the First Amendment to the United States Constitution; and

(h) Whether the Navy's policy or practice of coercing compliance with the COVID-19 Vaccine Mandate by threatening or taking adverse action against servicemembers who submit Religious Accommodation requests concerning the COVID-19 Vaccine Mandate means that members of the Navy Class have been and are being deprived of their rights under the Religious Freedom Restoration Act.

### 2. Naval Special Warfare/Operations Subclass: Common Questions

The questions of fact that are common to the Naval Special Warfare/Operations Subclass include:

(a) Whether the Navy has a policy or practice of disqualifying from special operations duty unvaccinated members of Naval Special Warfare and Naval Special Operations who submit a Religious Accommodation request concerning the Navy's COVID-19 Vaccine Mandate, but not disqualifying from special operations duty unvaccinated members of Naval Special Warfare and Naval Special Operations who submit a request for a medical accommodation or medical exemption concerning the Navy's COVID-19 Vaccine Mandate; and

(b) Whether the Navy has a policy or practice of disqualifying from special operations duty unvaccinated members of Naval Special Warfare and Naval Special Operations who

receive a Religious Accommodation concerning the Navy's COVID-19 Vaccine Mandate, but not disqualifying from special operations duty unvaccinated members of Naval Special Warfare and Naval Special Operations who receive a medical accommodation or medical exemption concerning the Navy's COVID-19 Vaccine Mandate.

The questions of law that are common to the Navy SEALs Subclass include:

(a) Whether the Navy's policy or practice requiring unvaccinated members of Naval Special Warfare and Naval Special Operations to be disqualified from special operations duty if the member submits a Religious Accommodation request concerning the Navy's COVID-19 Vaccine Mandate, but not if a member submits a request for a medical exemption concerning the Navy's COVID-19 Vaccine Mandate, means that members of the Naval Special Warfare/Operations Subclass have been and are being deprived of their right to the Free Exercise of Religion under the First Amendment to the United States Constitution;

(b) Whether the Navy's policy or practice of requiring unvaccinated members of Naval Special Warfare and Naval Special Operations to be disqualified from special operations duty if the member submits a Religious Accommodation request concerning the Navy's COVID-19 Vaccine Mandate, but not if a member submits a request for a medical exemption concerning the Navy's COVID-19 Vaccine Mandate, means that members of the Naval Special Warfare/Operations Subclass have been and are being deprived of their rights under the Religious Freedom Restoration Act;

(c) Whether the Navy's policy or practice of requiring unvaccinated members of Naval Special Warfare and Naval Special Operations to be disqualified from special operations duty if the member receives a Religious Accommodation concerning the Navy's COVID-19 Vaccine Mandate, but not if an unvaccinated member receives a medical accommodation or exemption concerning the Navy's COVID-19 Vaccine Mandate, means that members of the Naval Special Warfare/Operations Subclass have been and are being deprived of their right to the Free Exercise of Religion under the First Amendment to the United States Constitution; and

(d) Whether the Navy's policy or practice of requiring unvaccinated members of Naval Special Warfare and Naval Special Operations to be disqualified from special operations duty if the member receives a Religious Accommodation concerning the Navy's COVID-19 Vaccine Mandate, but not if an unvaccinated member receives a medical accommodation or exemption concerning the Navy's COVID-19 Vaccine Mandate, means that members of the Naval Special Warfare/Operations Subclass have been and are being deprived of their rights under the Religious Freedom Restoration Act.

### 3. Navy SEALs Subclass: Common Questions

The questions of fact that are common to the Navy SEALs Subclass include:

(a) Whether the Navy has a policy or practice of medically disqualifying or making non-deployable unvaccinated members of the United States Navy SEALs who submit a Religious Accommodation request concerning the Navy's COVID-19 Vaccine Mandate; and

(b) Whether the Navy has a policy or practice of medically disqualifying or making non-deployable unvaccinated members of the United States Navy SEALs who receive a Religious Accommodation concerning the Navy's COVID-19 Vaccine Mandate.

The questions of law that are common to the Navy SEALs Subclass include:

(a) Whether the Navy's policy or practice of medically disqualifying or making non-deployable unvaccinated members of the United States Navy SEALs who submit a Religious Accommodation request concerning the Navy's COVID-19 Vaccine Mandate means that members of the Navy SEAL Subclass have been and are being deprived of their right to the Free Exercise of Religion under the First Amendment to the United States Constitution;

(b) Whether the Navy's policy or practice of medically disqualifying or making non-deployable unvaccinated members of the United States Navy SEALs who submit a Religious Accommodation request concerning the Navy's COVID-19 Vaccine Mandate means that members of the Navy SEAL Subclass have been and are being deprived of their rights under the Religious Freedom Restoration Act;

(c) Whether the Navy's policy or practice of medically disqualifying or making non-deployable unvaccinated members of the United States Navy SEALs who receive a Religious Accommodation concerning the Navy's COVID-19 Vaccine Mandate means that members of the Navy SEAL Subclass have been and are being deprived of their right to the Free Exercise of Religion under the First Amendment to the United States Constitution; and

(d) Whether the Navy's policy or practice of medically disqualifying or making non-deployable unvaccinated members of the United States Navy SEALs who receive a Religious Accommodation concerning the Navy's COVID-19 Vaccine Mandate means that members of the Navy SEAL Subclass have been and are being deprived of their right to the Free Exercise of Religion under the Religious Freedom Restoration Act.

### 4. The Class and Subclasses satisfy the commonality requirement.

The questions set forth above will resolve issues that are "central to the validity of each class member's claims in one stroke" because the questions address whether Defendants' policies and practices cause the same constitutional and statutory violations of the class member's rights. *Wal-Mart*, 564 U.S. at 350. The claims are common among all class members because the injury sustained—Defendants' denial of all class members' Religious Accommodation requests—are categorically identical. In addition, while the adverse actions experienced by class members because of their Religious Accommodation requests may vary for each individual as to type or effect, the injuries all arise from the same unconstitutional policies and practices. "[T]he legal requirement that class members have all "suffered the same injury" can be satisfied by an instance of the defendant's injurious conduct, even when the resulting injurious effects—the damages—are diverse." *In re Deepwater Horizon*, 739 F.3d 790, 810–11 (5th Cir. 2014).[1]

---

[1] Per L.R. 23.2(b)(3), the common characteristics of the members of the Navy Class are that they are all members of the United States Navy, they are all subject to the same policies and practices concerning the Navy's COVID-19 Vaccine Mandate, they all object to the Navy's COVID-19 Vaccine Mandate based on their sincerely held religious beliefs, and they have all submitted Religious Accommodation requests concerning the Navy's COVID-19 Vaccine Mandate. The distinguishing characteristics of the Navy Class are that some of the class members have religious beliefs that differ from the religious beliefs of other class members, some class members have different job duties and assignments from other class members, some class members have been treated adversely while their Religious Accommodation requests were being adjudicated but others have not, and the class members are geographically dispersed. These distinguishing characteristics do not preclude resolution of the common questions of fact and law for the Class. *See James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001).

The common characteristics of the members of the Naval Special Warfare/Operations Subclass are that they are all members of the United States Navy assigned to Naval Special Warfare or Naval Special Operations, they are all subject to the same policies and practices concerning the Navy's COVID-19 Vaccine Mandate, they all object to the Navy's COVID-19 Vaccine Mandate based on their sincerely held religious beliefs, and they have all submitted Religious Accommodation requests concerning the Navy's COVID-19 Vaccine Mandate. The distinguishing characteristics of the Navy Special Warfare/Operations Subclass are that some of the subclass members have religious beliefs that differ from the religious beliefs of other subclass members, some subclass members have different job duties and assignments from other subclass members, some subclass members have been treated adversely while their Religious Accommodation requests were being adjudicated but others have not, and the subclass members are geographically dispersed. These distinguishing characteristics do not preclude resolution of the common questions of fact and law for the Naval Special Warfare/Operations Subclass. *Id.*

Commonality may also be demonstrated by showing that the Defendants' "may also be demonstrated by showing that the defendants "operated under a general policy of discrimination." *Wal-Mart*, 564 at 353 (quoting *Gen. Tele. Co. of Sw. v. Falcon*, 347 U.S. 147, 159 n.15 (1982)). That is exactly what is alleged here. Common questions that apply to all class members involve whether the Navy inappropriately discriminated against religious belief in compelling vaccination despite those beliefs, refusing to accommodate those beliefs, and granting exemptions for secular but not religious reasons. As the Fifth Circuit explained while analyzing *Wal-Mart*:

> [A]n instance of injurious conduct . . . may constitute "the same injury." This is confirmed by the example given by the Supreme Court in the above passage from Wal–Mart, "discriminatory bias on the part of the same supervisor," which is itself not a type of damages, but an instance of injurious conduct that violates Title VII. Later in the same decision, the Supreme Court stated that another type of injurious conduct on the part of the defendant, "a companywide discriminatory pay and promotion policy," would also have satisfied the "same injury" test for commonality under Rule 23(a)(2).

*In re Deepwater Horizon*, 739 F.3d at 810. If Defendants have engaged in unlawful discrimination, as Plaintiffs allege, such discrimination creates "the same injury" for purposes of commonality.

### C. Typicality: The Class Members' claims are typical of the claims of all Class Members.

"The commonality and typicality requirements of Rule 23(a) tend to merge." *Falcon*, 457 U.S. at 158 n.13. "Both serve as guideposts for determining whether under the particular

---

The common characteristics of the members of the Navy SEALs Subclass are that they are all members of the United States Navy SEALs, they are all subject to the same policies and practices concerning the Navy's COVID-19 Vaccine Mandate, they all object to the Navy's COVID-19 Vaccine Mandate based on their sincerely held religious beliefs, and they have all submitted Religious Accommodation requests concerning the Navy's COVID-19 Vaccine Mandate. The distinguishing characteristics of the Navy SEALs Subclass are that some of the subclass members have religious beliefs that differ from the religious beliefs of other subclass members, some subclass members have different job duties and assignments from other subclass members, some subclass members have been treated adversely while their Religious Accommodation requests were being adjudicated but others have not, and the subclass members are geographically dispersed. These distinguishing characteristics do not preclude resolution of the common questions of fact and law for the Navy SEALs Subclass. *Id.*

10

circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* "[T]he test for typicality is not demanding. It 'focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent.'" *Mullen*, 186 F.3d at 625 (citation omitted). "[T]he critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *James*, 254 F.3d at 571 (5th Cir. 2001).

The Named Plaintiffs assert that the Navy's COVID-19 Vaccine Mandate and the denial of their Religious Accommodation requests violates their rights under the First Amendment to the United States Constitution and under the Religious Freedom Restoration Act. This is the precise claim that the Named Plaintiffs seek to litigate on behalf of the other members of the Navy Class, the Naval Special Warfare/Operations Subclass, and the Navy SEALs Subclass. The interests of the Named Plaintiffs are aligned with those of the other class members, and each class member benefits from a declaratory judgment and injunction that prohibits Defendants from violating their rights. The Named Plaintiffs thus advance the same legal theories and seek the same remedies as those of the other class members. This meets the requirements of typicality. *Id.*

### D. Adequacy of Representation: The Named Plaintiffs will fairly and adequately represent and protect the interests of the Class and the Subclasses.

"Adequacy encompasses three separate but related inquiries: (1) 'the zeal and competence of the representative[s'] counsel'; (2) 'the willing[]ness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees'; and (3) the risk of 'conflicts of interest between the named plaintiffs and the class they seek to represent.'" *Slade*

*v. Progressive Sec. Ins.*, 856 F.3d 408, 412 (5th Cir. 2017) (quoting *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005)). "[The] requirements [of commonality and typicality] ... tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest." *Falcon*, 457 U.S. at 158 n.13.

### 1. Adequacy of the Named Plaintiffs and the lack of any conflict

The Named Plaintiffs will fairly and adequately represent the interests of their fellow class members, and there are no conflicts of interest between the Named Plaintiffs and the other members of the Navy Class, the Naval Special Warfare/Operations Subclass, and the Navy SEALs Subclass. The class members have all submitted Religious Accommodation requests concerning the Navy's COVID-19 Vaccine Mandate and every member of the class will benefit from a declaratory judgment and injunction that prohibits Defendants from violating the class members' rights under the First Amendment to the United States Constitution and under the Religious Freedom Restoration Act. There is no conceivable conflict of interest that could arise from the Named Plaintiffs' efforts to enforce these rights on a classwide basis. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) ("The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between the named parties and the class they seek to represent."). The First Amendment and the Religious Freedom Restoration Act protect all members of the Navy from being compelled to violate their sincerely held religious beliefs, and classwide relief will serve only to enhance the religious freedom and autonomy of each of the class members.

The Named Plaintiffs' prosecution of this lawsuit as a class action to vindicate the constitutional and civil rights that they are oath-bound to protect should give the Court no pause. The Named Plaintiffs have demonstrated willingness to sacrifice their careers and livelihood to

stay true to their sincerely held religious beliefs. They have been willing to pursue these claims in the face of threats, court martial, dishonorable discharge, separation, and other severe sanctions. The Named Plaintiffs are undoubtedly suitable representatives of the Class and Subclasses.

### 2. Zeal and competency of Plaintiffs' Counsel

The "zeal and competence" of class counsel is also not an obstacle. *Slade*, 856 F.3d at 412. Plaintiffs' counsel has extensive experience in complex litigation and has represented the State of Texas in several class action trials in federal courts. Decl. of Andrew Stephens ¶ 4. Plaintiffs' counsel also has significant experience in litigating high-profile constitutional cases in both trial and appellate courts, including the United States Supreme Court. *Id.* And Plaintiffs' counsel also has particular experience in litigating First Amendment and religious liberty cases. Stephens Decl. ¶ 5. Plaintiffs' counsel has more than sufficient skill and experience to adequately represent the interest of the class and are unaware of any conflicts that would prevent them from providing excellent representation. Further, "financial responsibility to fund the action" is being undertaken by Plaintiffs' counsel, which includes a nonprofit public-interest organization. *See* Local Rule 23.2(c). Plaintiffs' counsel has also identified and thoroughly investigated all claims in this action and have committed sufficient resources to thoroughly and expeditiously bring this action.

### II.  The Class and the Subclasses Satisfy the Requirements of Rule 23(b)(2).

In addition to satisfying the threshold requirements of Rule 23(a), the Class and the Subclasses also satisfy the requirements of Rule 23(b)(2), which requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." The Supreme Court has held that this requirement is satisfied "when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart*, 564 U.S. at

360; *see also id.* at 361-62 ("[T]he relief sought must perforce affect the entire class at once. . . ."). That is precisely what the Named Plaintiffs are requesting: declaratory and injunctive relief that protects the religious rights of each class member under the First Amendment and Religious Freedom Restoration Act.

Plaintiffs allege that Defendants have "acted or refused to act on grounds that apply generally to the class" because they have (1) mandated the COVID-19 vaccine for all servicemembers despite the class members' sincerely held religious beliefs; (2) have policies or practices of across-the-board denial of all Religious Accommodation requests concerning the COVID-19 Vaccine Mandate; and (3) have granted accommodations or exemptions concerning the COVID-19 Vaccine Mandate for secular reasons while denying every Religious Accommodation request.

Plaintiffs do not seek individualized relief for any class member or for any subset of the class or subclasses. The Named Plaintiffs are requesting classwide declaratory and injunctive relief that protects the sincerely held religious beliefs of all members of the Navy who have submitted Religious Accommodation requests concerning the COVID-19 Vaccine Mandate. This makes "final injunctive relief or corresponding declaratory relief … appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *see also Wal-Mart*, 564 U.S. at 360 ("Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class.").

### III. Plaintiffs' Counsel Will Fairly and Adequately Represent the Interests of the Class and Subclasses and Should Be Appointed Class Counsel.

An order that certifies a class action must appoint class counsel under Rule 23(g). *See* Fed. R. Civ. P. 23(c)(1)(B). Rule 23(g) mandates that class counsel "fairly and adequately represent the interest of the class." Fed. R. Civ. P. 23(g)(4). In making this determination, courts should consider four factors: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

In this case, as noted above in Part I.D.2, Plaintiffs' counsel is qualified to represent the interests of the class and subclasses fairly and adequately. Plaintiffs' counsel identified and thoroughly investigated all claims in this action and have committed sufficient resources to thoroughly and expeditiously bring this action. In addition, Plaintiffs' counsel has extensive experience in litigating class actions and other complex litigation, and as have extensive experience in litigation involving the First Amendment and Religious Freedom Restoration Act. Plaintiffs' counsel therefore satisfy the standard under Rule 23(g) for appointment of class counsel.

### CONCLUSION

For the foregoing reasons, this Court should grant the motion and enter an order certifying the class and each of the subclasses, and appointing Plaintiffs' counsel as class counsel.

Respectfully submitted this 25th day of January, 2022.

Kelly J. Shackelford
  Texas Bar No. 18070950
Jeffrey C. Mateer
  Texas Bar No. 13185320
Hiram S. Sasser, III
  Texas Bar No. 24039157
David J. Hacker
  Texas Bar No. 24103323
Michael D. Berry
  Texas Bar No. 24085835
Justin Butterfield
  Texas Bar No. 24062642
Danielle Runyan *
  New Jersey Bar No. 02723004
Holly M. Randall *
  Oklahoma Bar No. 34763
FIRST LIBERTY INSTITUTE
2001 W. Plano Pkwy., Ste. 1600
Plano, Texas 75075
Tel: (972) 941-4444
jmateer@firstliberty.org
hsasser@firstliberty.org
dhacker@firstliberty.org
mberry@firstliberty.org
jbutterfield@firstliberty.org
drunyan@firstliberty.org
hrandall@firstliberty.org

Jordan E. Pratt
  Florida Bar No. 100958*  **
FIRST LIBERTY INSTITUTE
227 Pennsylvania Ave., SE
Washington, DC 20003
Tel: (972) 941-4444
jpratt@firstliberty.org

*Admitted pro hac vice
** Not yet admitted to the D.C. Bar, but admitted to practice law in Florida. Practicing law in D.C. pursuant to D.C. Court of Appeals Rule 49(c)(8) under the supervision of an attorney admitted to the D.C. Bar.

/s/ Andrew B. Stephens
Heather Gebelin Hacker
  Texas Bar No. 24103325
Andrew B. Stephens
  Texas Bar No. 24079396
HACKER STEPHENS LLP
108 Wild Basin Road South, Suite 250
Austin, Texas 78746
Tel.: (512) 399-3022
heather@hackerstephens.com
andrew@hackerstephens.com

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on January 25, 2022, I electronically filed the foregoing document through the Court's ECF system, which automatically notifies counsel of record for each party.

/s/ Andrew B. Stephens
Andrew B. Stephens
*Counsel for Plaintiffs*
