## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| **U.S. NAVY SEALs 1-3;** on behalf of themselves and all others similarly situated; **U.S. NAVY EXPLOSIVE ORDNANCE DISPOSAL TECHNICIAN 1**, on behalf of himself and all others similarly situated; U.S. **NAVY SEALS 4-26**; **U.S. NAVY SPECIAL WARFARE COMBATANT CRAFT CREWMEN 1-5**; and **U.S. NAVY DIVERS 1-3**, <br><br>        Plaintiffs, <br><br>   v. <br><br> **LLOYD J. AUSTIN, III**, in his official capacity as United States Secretary of Defense; **UNITED STATES DEPARTMENT OF DEFENSE**; **CARLOS DEL TORO**, in his official capacity as United States Secretary of the Navy, <br><br>       Defendants. | Case No. 4:21-cv-01236-O |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS'
## MOTION FOR PARTIAL STAY PENDING APPEAL

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 2

I.  Defendants' Non-Compliance with the Preliminary Injunction Is Sufficient to Deny the Stay Pending Appeal.................................................................................................... 3

II. Defendants Have Not Established a Likelihood of Success on the Merits of the Appeal. .... 4

    A.   Plaintiffs' claims are justiciable. ................................................................... 4

    B.   Defendants will not prevail on appeal because their religious-accommodation process is a sham.................................................................................................... 5

    C.   Defendants will not prevail on appeal because they failed to demonstrate a compelling interest in forcing the Plaintiffs to receive a COVID-19 vaccination despite their sincere religious beliefs. ................................................................ 6

    D.   The Court's conclusion that the policies at issue are not neutral was correct. ....................................................................................................... 8

III. The Defendants Are Not Suffering Irreparable Harm. ......................................... 9

    A.   Defendants' delay in appealing and requesting a stay of the injunction negates a claim of irreparable harm. ....................................................................... 9

    B.   Any harm to the Navy during the pendency of the appeal from the preliminary injunction is outweighed by the harm to Plaintiffs and Plaintiffs' strong likelihood of success on the merits. .............................................................. 10

    C.   Any harm the Navy claims it is suffering from unvaccinated service members is at least partially self-inflicted.................................................................... 11

IV. The Other Factors Weigh in Plaintiffs' Favor. ................................................... 11

    A.   The preliminary injunction is in the public interest because it vindicates fundamental rights and stops illegal conduct.................................................. 11

    B.   The preliminary injunction preserves the status quo pending appeal.............. 12

CONCLUSION................................................................................................................. 13

CERTIFICATE OF SERVICE ............................................................................................ 15

# TABLE OF AUTHORITIES

## Cases

*Al Otro Lado v. Wolf*,
  952 F.3d 999 (9th Cir. 2020) ........................................................................ 11
*Ams. United for Separation of Church & State v. City of Grand Rapids*,
  922 F.2d 303 (6th Cir. 1990) ........................................................................ 12
*Awad v. Ziriax*,
  670 F.3d 1111 (10th Cir. 2012) .................................................................... 12
*Barber v. Bryant*,
  833 F.3d 510 (5th Cir. 2016) .......................................................................... 3
*Burwell v. Hobby Lobby*,
  573 U.S. 682 (2014) ..................................................................................... 5, 6
*Clinton v. Jones*,
  520 U.S. 681 (1997) ......................................................................................... 3
*Dayton Bd. of Educ. v. Brinkman*,
  439 U.S. 1358 (1978) ...................................................................................... 3
*Dennis Melancon, Inc. v. City of New Orleans*,
  703 F.3d 262 (5th Cir. 2012) .......................................................................... 9
*Fed. Trade Comm'n ex rel. Yost v. Educare Ctr. Servs., Inc.*,
  No. EP-19-CV-196-KC, 2020 WL 4334117 (W.D. Tex. Apr. 3, 2020) ......... 4
*Freedom From Religion Found., Inc. v. Mack*,
  4 F.4th 306 (5th Cir. 2021) ............................................................. 10, 12, 13
*Fulton v. City of Philadelphia*,
  141 S. Ct. 1868 (2021) .................................................................................... 6
*Gonannies, Inc. v. Goupair.Com, Inc.*,
  464 F. Supp. 2d 603 (N.D. Tex. 2006) ...................................................... 9-10
*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
  546 U.S. 418 (2006) ..................................................................................... 5, 6
*Jackson Women's Health Org. v. Currier*,
  760 F.3d 448 (5th Cir. 2014) ........................................................................ 12
*League of Women Voters of U.S. v. Newby*,
  838 F.3d 1 (D.C. Cir. 2016) .......................................................................... 12
*McAllen Grace Brethren Church v. Salazar*,
  764 F.3d 465 (5th Cir. 2014) ....................................................................... 5-6
*Mindes v. Seaman*,
  453 F.2d 197 (5th Cir. 1971) .......................................................................... 4
*Nken v. Holder*,
  556 U.S. 418 (2009) ..................................................................................... 2, 3
*Opulent Life Church v. City of Holly Springs*,
  697 F.3d 279 (5th Cir. 2012) ........................................................................ 11
*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*,
  734 F.3d 406 (5th Cir. 2013) ........................................................................ 10
*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*,
  324 U.S. 806 (1945) ......................................................................................... 3

*Richardson v. Tex. Sec'y of State*,
    978 F.3d 220 (5th Cir. 2020) ............................................................................ 10
*Rodriguez v. DeBuono*,
    175 F.3d 227 (2d Cir. 1999).............................................................................. 11
*State v. Biden*,
    10 F.4th 538 (5th Cir. 2021) .......................................................................... 4, 12
*Tex. All. for Retired Ams. v. Hughs*,
    976 F.3d 564 (5th Cir. 2020) ............................................................................ 12
*Veasey v. Abbott*,
    870 F.3d 387 (5th Cir. 2017) (per curiam)......................................................... 12
*Washington v. Reno*,
    35 F.3d 1093 (6th Cir. 1994) ............................................................................ 12
*Wireless Agents, LLC v. T–Mobile USA, Inc.*,
    No. 3:05–CV–0094–D, 2006 WL 1540587 (N.D. Tex. June 6, 2006).................... 10

**Statutes**
42 U.S.C. § 2000bb-1(b).......................................................................................... 5

## INTRODUCTION

Defendants have already granted themselves the stay they now request of this Court. Because Defendants are not even complying with the injunction, they have no basis in equity to ask the Court for a stay and their motion should be denied for that reason alone. Defendants are willfully violating the preliminary injunction by continuing to impose the same injuries on Plaintiffs that warranted injunctive relief. *See* Pls. Mot. for Order to Show Cause, Dkt. 95-97. Regardless of Defendants' lack of compliance with the injunction, a stay is not warranted because Defendants' arguments are largely rehashed versions of the same arguments this Court already rejected. Defendants claim that the Court's injunction will inflict irreparable harm on the entire United States Navy, but the strength and readiness of the entire United States Navy does not rest on the shoulders of the 35 Plaintiffs. The Navy has been successfully running its operations since the beginning of the COVID-19 pandemic regardless of the vaccination status of the 35 Plaintiffs, and it did so when more virulent strains of the virus were circulating, no vaccines or treatments were available, and not much was known about how the virus spread and how deadly it would be. Plaintiffs' Religious Accommodation (RA) requests do not somehow make Plaintiffs more dangerous than they were before, yet that was the trigger for the Defendants' retaliatory and coercive conduct. And Defendants' broad claims about the injunction's impact on Naval Special Warfare operations are undermined by the fact that many of the conditions described in Defendants' motion do not apply to any of the Plaintiffs.

It is common knowledge that the most dominant COVID-19 variant right now has spread regardless of vaccination or booster status and causes only mild symptoms in healthy individuals,

1

if any. In fact, it recently infected a Navy ship that was 100% vaccinated.[1] Despite the fact that Vice Admiral William Merz admits that Omicron has had "really no operational impact," and that over 99% of the Navy is vaccinated, Defendants continue to demand that these 35 Plaintiffs be vaccinated despite their sincere religious beliefs.[2] But even if the Plaintiffs still pose some existential threat to the Navy, that harm was already occurring before the Court entered the preliminary injunction because of Defendants' own inaction—sitting on all RA requests for months. And Defendants have only separated a handful of outright refusers.[3] Defendants cannot treat the Plaintiffs like refusers or rule breakers in retaliation for following the prescribed process for requesting an accommodation of their sincere religious beliefs, and they cannot now complain that Plaintiffs' continued presence creates a threat when they continue to countenance the presence of unvaccinated outright refusers through their own inaction.

Defendants want to ignore this Court's injunction as they already ignored the law by providing only a sham RA process. But Defendants are accountable to the Constitution, and they are accountable to this Court for violating the preliminary injunction. The motion for a partial stay pending appeal should be denied.

## ARGUMENT

"A stay is an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken v. Holder*, 556 U.S. 418, 427 (2009). The Court considers four factors when deciding whether to stay a preliminary injunction pending appeal: "'(1) whether the stay applicant

---

[1] *See* App. 002-003 (Diana Stancy Correll, "Omicron isn't significantly impacting Navy operations, admiral says," Navy Times (Jan. 27, 2021), https://www.navytimes.com/news/your-navy/2022/01/27/omicron-isnt-significantly-impacting-navy-operations-admiral-says/).
[2] App. 0003.
[3] App. 0005.

has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Barber v. Bryant*, 833 F.3d 510, 511 (5th Cir. 2016) (quoting *Nken*, 556 U.S. at 426). "Also, the maintenance of the status quo is an important consideration in granting a stay." *Barber*, 833 F.3d at 511 (quoting *Dayton Bd. of Educ. v. Brinkman*, 439 U.S. 1358, 1359 (1978)). "The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997). Here, Defendants fail to carry their burden.

## I. Defendants' Non-Compliance with the Preliminary Injunction Is Sufficient to Deny the Stay Pending Appeal.

As mentioned above, Defendants have already granted themselves the stay they now seek, as they are flouting the preliminary injunction. Thus, Defendants seek equitable relief yet come to the Court with unclean hands. Granting such relief would violate historical principles of equity:

> The guiding doctrine in this case is the equitable maxim that 'he who comes into equity must come with clean hands.' This maxim is far more than a mere banality. It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant. That doctrine is rooted in the historical concept of court of equity as a vehicle for affirmatively enforcing the requirements of conscience and good faith.

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945). "Moreover, where a suit in equity concerns the public interest as well as the private interests of the litigants," as this one does, "this doctrine assumes even wider and more significant proportions. For if an equity court properly uses the maxim to withhold its assistance in such a case it not only prevents a wrongdoer from enjoying the fruits of his transgression but averts an injury to the public." *Id.*

As the Fifth Circuit recently held in another case in which the federal government asked for a stay pending appeal, "inequitable conduct is sufficient to deny DHS's request for an equitable

3

stay pending appeal." *State v. Biden*, 10 F.4th 538, 559 (5th Cir. 2021) (citation omitted). Courts have also denied stays pending appeal where "compliance with the Court's injunction orders" have been an issue in the litigation, and where, as here, a motion for contempt is pending. *See Fed. Trade Comm'n ex rel. Yost v. Educare Ctr. Servs., Inc.*, No. EP-19-CV-196-KC, 2020 WL 4334117, at *6 (W.D. Tex. Apr. 3, 2020) ("Staying the injunctive provisions . . . before the Court can adjudicate these pending motions could potentially reward Movants' alleged evasion of their obligations. Conversely, denying the request for a stay ensures the Court's ability to reach these live issues, illustrating how such an outcome preserves the status quo in this case.").

The Court should not reward Defendants' noncompliance with its unambiguous order by affirming the stay they granted to themselves weeks before seeking this Court's blessing.

## II.  Defendants Have Not Established a Likelihood of Success on the Merits of the Appeal.

### A. Plaintiffs' claims are justiciable.

Defendants rehash their justiciability arguments but bypass *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971), despite previously arguing that it applied. The Court held that *Mindes* sets forth the test for justiciability here. Dkt. 86 at 12. And, as the Court determined, application of *Mindes* shows Plaintiffs' claims are justiciable. Dkt. 66 8-17.

Defendants object to court interference with military decisions, but the military is not immune from court oversight. As the Court (and *Mindes*) held, "'interference per se is insufficient since there will always be some interference when review is granted.'" Dkt. 66 at 15 (quoting *Mindes*, 453 F.2d at 201). To the extent that the preliminary injunction requires Defendants not to violate the Constitution and RFRA by retaliating against Plaintiffs for seeking accommodation of their religious beliefs, that is a decision that requires "neither 'military expertise [n]or discretion.'" Dkt. 66 (quoting *Mindes*, 453 F.2d at 201). The Court's injunction does not require Defendants to

4

promote certain plaintiffs who had not already been selected by Defendants for promotion, for instance, or deploy them for specific tasks in specific locations. The Court's injunction simply requires Defendants to comply with the law. Defendants cannot discriminate against Plaintiffs for disobeying their vaccination mandate because of their religious beliefs, and Defendants' mandate itself is invalid because Defendants' religious accommodation process is a farce. Thus, the issues at hand are "purely legal question[s] appropriate for judicial review," as this Court correctly held. Dkt. 66 at 16.

> **B. Defendants will not prevail on appeal because their religious-accommodation process is a sham.**

For Defendants to win on appeal, the Fifth Circuit would have to hold that the Navy may mandate COVID-19 vaccinations that burden the Plaintiffs' religious beliefs despite the complete lack of a legitimate process for reviewing RA requests, as the evidence showed here. That would be exactly the opposite of what RFRA requires, as the Supreme Court and the Fifth Circuit recognize.

Under RFRA, to apply the COVID-19 vaccination mandate to religious objectors (thereby substantially burdening their religious beliefs), Defendants must show that the mandate is justified by a compelling interest and is the least restrictive means for achieving that interest *for each individual plaintiff*. 42 U.S.C. § 2000bb-1(b). RFRA "contemplates a 'more focused' inquiry: It 'requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened.'" *Burwell v. Hobby Lobby*, 573 U.S. 682, 726 (2014) (quoting *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 431 (2006)); *accord McAllen Grace Brethren Church v. Salazar*, 764 F.3d 465, 475 (5th Cir. 2014) (Under RFRA, "the governmental interest cannot be 'couched in very broad terms' but must be 'focused'

on the particular claimant whose interest is substantially burdened" (quoting *Hobby Lobby*, 573 U.S. at 726)).

Defendants acknowledge that they must provide an opportunity for service members to request accommodation of their religious beliefs during their service, as their policies demonstrate. But pretending to have a policy that comports with the First Amendment and federal law isn't good enough to actually protect the religious liberty of those who serve. As the Court recognized, the Navy's religious-accommodation process "by all accounts . . . is theater" and the Navy "merely rubber stamps each denial." Dkt. 66 at 1. Denying every request for accommodation with boilerplate rather than an individualized assessment does not satisfy the Government's high burden under RFRA. For that reason alone, Defendants will not prevail on appeal.

### C. Defendants will not prevail on appeal because they failed to demonstrate a compelling interest in forcing the Plaintiffs to receive a COVID-19 vaccination despite their sincere religious beliefs.

Even assuming the Navy's religious-accommodation process were not a total sham, Defendants have again failed to demonstrate that the Navy has a compelling reason to apply its mandate *to Plaintiffs*. As this Court acknowledged in the preliminary-injunction order, "[r]ather than rely on 'broadly formulated interests,' courts must 'scrutinize[ ] the asserted harm of granting specific exemptions to particular religious claimants.'" *Fulton v. City of Philadelphia,* 141 S. Ct. 1868, 1881 (2021) (quoting *O Centro*, 546 U.S. at 431). "In other words, Defendants must provide more than a broadly formulated interest in 'national security.' They must articulate a compelling interest in vaccinating the thirty-five religious servicemembers currently before the Court." Dkt. 66 at 19. Defendants argue that the mandate is justified based on broad, nonspecific concerns. Defendants' attempt to make more specific arguments about Naval Special Warfare falls short because the conditions they describe do not apply to Plaintiffs. None of the Plaintiffs are in a group that may be deployed with one day notice, many of them are not in a deployable command, and

NSW personnel are segregated from the general population in the uncommon event that they utilize fleet assets in their operations. App. 0014-15.

Defendants' argument that deployable Plaintiffs pose a threat to operations by being unvaccinated is undermined by the fact that extensive evidence shows that the Navy—and Plaintiffs in particular—continued operations successfully throughout even the early phases of the pandemic. As Plaintiffs already demonstrated, the Navy's operations continued successfully regardless of the availability of vaccines—in some cases, due to the efforts of some of the Plaintiffs themselves. SWCC 4 was involved in a major deployment during the beginning of the pandemic that required extensive training. App. 0016-17. The mission was successful and was not derailed at all by COVID, even though a vaccine was not mandated. App. 0016. EOD 1 successfully deployed overseas to South Korea from January 2020 to June 2020, before a vaccine was available, and even earned a Commendation Medal for "flawless execution" of large-scale operations while safely mitigating COVID-19. Pls. MPI Supp. App. 01125 (Dkt. 59); Pls.' MPI Hearing Ex. 26. His team had zero health impacts from COVID, and this was when South Korea was experiencing one of the largest COVID surges in the world. *Id.* SEAL 23 was deployed from October 2020 to March 2021, before the mandate and extensive vaccination, and the group quarantined most of the time. Pls. MPI Supp. App. 01092 (Dkt. 59). They had a major operation in the middle of deployment which lasted approximately seven weeks and was extremely successful. *Id.* There was no mass COVID-19 outbreak within his unit or any other unit they were directly in contact with. *Id.*

The Plaintiffs attached to training commands continue to do their jobs safely and effectively as well. As L.P. McFadden III, the Commanding Officer of the NSW Advanced Training Command stated while recommending approval of SEAL 2 and SEAL 3's RA request:

> This command does not deploy personnel overseas but does provide advanced training to Special Operations Forces in preparation for deployment. The training

7

environment often requires close quarters contact for prolonged periods of time, however, successful mitigation measures have been implemented since the onset of COVID-19 to ensure the safety of the staff and students. . . . As of 17 October 2021, twenty one other service members in my command have requested an exemption for religious purposes. Nonetheless, greater than 95% of the command will be fully vaccinated by the 29 November 2021 deadline. The cumulative impact of repeated accommodations of religious practices of a similar nature would mean my command is still able to safely accomplish its mission and protect the health and safety of its members.

Pls. MPI Hearing Ex. 5.

The one exception the Navy has returned to repeatedly—the *USS Roosevelt*—occurred at the very beginning of the pandemic when COVID-19 was largely unknown and much more virulent than it is now. That example is outdated in light of the current stage of the pandemic, as the Navy's own policies recognize. *See* App. 0006-0012. Even if there is a COVID-19 outbreak on a ship at sea, operations will largely continue. The Navy does not even require service members on a ship who test positive for COVID to be retested after the end of their quarantine period, as it is likely that they will continue to test positive for 90 days. App. 0009. Apparently, the Navy will accept *COVID-positive individuals* mingling with other servicemembers on a ship, but COVID-negative unvaccinated soldiers are somehow an intolerable risk. That is irrational, especially since COVID outbreaks are occurring even on ships that are 100% vaccinated, and there is no evidence that any recent Navy outbreak has been traced to an unvaccinated individual.

**D.  The Court's conclusion that the policies at issue are not neutral was correct.**

Defendants further assert that the Court's finding regarding MANMED § 15-105 and Trident Order #12, which automatically disqualify SEALs and NSW personnel from deployment if they have an RA, was mistaken. Dkt. 86 at 9. That fact supports the Court's conclusion that the Navy's policies are not neutral or generally applicable, triggering strict scrutiny under the First Amendment. Dkt. 66 at 22. But even if that finding were mistaken, that does not mean Defendants are likely to prevail on appeal, as strict scrutiny already applies under RFRA, and Defendants

8

cannot satisfy it, as explained above. Regardless, the Court's conclusion is based on a plain reading of those policies, so it is not clearly erroneous. *See Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 267 (5th Cir. 2012).  Trident Order #12 states that "Per Ref (J) [MANMED § 15-105], Special operations designated personnel (SEAL and SWCC) refusing to receive recommended vaccines based solely on personal or religious beliefs will still be medically disqualified. *This provision does not apply to medical contraindications or allergies to vaccine administration*." Pls. MPI App. 000159 (emphasis added). That implies that service members exempt from vaccine requirements because of allergies *are not* medically disqualified. MANMED § 15-105(4)(n)(9)[4] says the same. Pls. MPI App. 000838. And even if it is true that those who have a medical exemption still must receive a separate waiver to remain deployable, Dkt. 86 at 9, it is not clear from the face of the policies that those who receive a religious exemption are eligible to receive the same separate waiver. The policies also still lump "personal" beliefs together with "religious" beliefs, even though merely "personal" beliefs do not have the same protection under the law.

### III.   The Defendants Are Not Suffering Irreparable Harm.

#### A. Defendants' delay in appealing and requesting a stay of the injunction negates a claim of irreparable harm.

"The law is well-established that: '[D]elay in seeking a remedy is an important factor bearing on the need for a preliminary injunction. Absent a good explanation, a substantial period of delay militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief.'" *Gonannies, Inc. v. Goupair.Com, Inc.*, 464 F. Supp. 2d 603, 609 (N.D. Tex. 2006) (quoting *Wireless Agents, LLC v. T–Mobile USA, Inc.*,

---

[4] Plaintiffs' complaint and motion for preliminary injunction, as well as the preliminary-injunction order, referred to MANMED § 15-105(3)(n)(9), but that is a scrivener's error, as no such provision exists. The correct citation is MANMED § 15-105(4)(n)(9).

No. 3:05–CV–0094–D, 2006 WL 1540587, *3 (N.D. Tex. June 6, 2006)). Defendants urge this Court to stay its injunction pending appeal because the Navy is suffering grave irreparable injury, yet Defendants waited three weeks after issuance of the injunction to appeal and ask for a stay. *Compare* Dkt. 66 *with* Dkt. 82, Dkt. 85. Defendants' lack of urgency evinces the lack of any serious injury to Defendants and should defeat any claim of irreparable harm.

> **B. Any harm to the Navy during the pendency of the appeal from the preliminary injunction is outweighed by the harm to Plaintiffs and Plaintiffs' strong likelihood of success on the merits.**

Defendants cannot show the injunction is causing irreparable harm because they are not complying with it. *See* Mot. for Order to Show Cause, Dkt. 95-97. And Defendants have failed to demonstrate that they suffer any injury at all by allowing the injunction to preserve the status quo with Plaintiffs. Just as the Navy was successfully able to carry out its operations throughout the pandemic, even before a vaccine was available or mandated, it will not be hindered in those operations because of the 35 Plaintiffs. *See* Part II.C *supra.* Furthermore, "any injury to [Defendants] is outweighed by [Plaintiffs'] strong likelihood of success on the merits." *Freedom From Religion Found., Inc. v. Mack*, 4 F.4th 306, 316 (5th Cir. 2021) (citing *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 243 (5th Cir. 2020); *Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013) (finding plaintiffs' "showing that their interests would be harmed by staying the injunction" to be irrelevant "given the State's likely success on the merits")).

On the flip side, Plaintiffs *are* suffering irreparable harm. They demonstrated harm in their evidence supporting the motion for preliminary injunction, and have demonstrated it again in their Motion for Order to Show Cause. (Dkt. 95-97). And "because these injuries are inextricably intertwined with Plaintiffs' loss of constitutional rights," this Court already "conclude[d] that Plaintiffs have suffered irreparable harm." Dkt. 66 at 24; *see also Opulent Life Church v. City of*

*Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012). And the "grant of a stay of a preliminary injunction pending appeal [would] almost always be logically inconsistent with a prior finding of irreparable harm." *Rodriguez v. DeBuono*, 175 F.3d 227, 235 (2d Cir. 1999).

Because Defendants "requested a stay pending completion of appellate proceedings, the relevant question is whether the Government will be irreparably harmed during the pendency of the appeal." *Biden*, 10 F.4th at 559. Even if Defendants "were correct that long-term compliance with the . . . injunction would cause irreparable harm," here it has presented "no reason to think that it cannot comply" while the appeal proceeds, especially since Defendants have *not* been complying with the injunction. *Id.* "Therefore, the Government has failed to demonstrate that it will be irreparably injured absent a stay pending appeal." *Id.*

### C. Any harm the Navy claims it is suffering from unvaccinated service members is at least partially self-inflicted.

"The self-inflicted nature of the government's asserted harm 'severely undermines' its claim for equitable relief." *Id.* at 558 (quoting *Al Otro Lado v. Wolf*, 952 F.3d 999, 1008 (9th Cir. 2020)). As pointed out above, Defendants insist that the presence of unvaccinated servicemembers causes them irreparable harm yet have taken little action to remove even outright refusers from the Navy. App. 0005. Even presuming unvaccinated servicemembers cause irreparable harm, Plaintiffs are not more dangerous than any other person who is unvaccinated.

### IV.   The Other Factors Weigh in Plaintiffs' Favor.

### A. The preliminary injunction is in the public interest because it vindicates fundamental rights and stops illegal conduct.

Defendants claim that the public interest *is* the Government's interest. Dkt. 86 at 2. But that is not true in this case because the Government is violating federal law and fundamental constitutional rights. "It is always in the public interest to prevent the violation of a party's constitutional rights." *Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 458 n.9 (5th Cir.

11

2014) (citing *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012)). And "the public interest always lies 'in a correct application of the [First Amendment].'" *Mack*, 4 F.4th at 317 (alteration in original) (quoting *Ams. United for Separation of Church & State v. City of Grand Rapids*, 922 F.2d 303, 306 (6th Cir. 1990)). "Likewise, the 'public interest [is] in having governmental agencies abide by the federal laws that govern their existence and operations.'" *Biden*, 10 F.4th at 559–60 (quoting *Washington v. Reno*, 35 F.3d 1093, 1102 (6th Cir. 1994)). "Here, the [Defendants have] failed to carry its burden to show that its conduct comports with federal law. And '[t]here is generally no public interest in the perpetuation of unlawful agency action.'" *Id.* at 560 (quoting *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)).

**B.   The preliminary injunction preserves the status quo pending appeal.**

Sometimes, a "stay pending appeal simply suspend[s] judicial alteration of the status quo, so as to allow appellate courts to bring considered judgment to the matter before them and responsibly fulfill their role in the judicial process." *Tex. All. for Retired Ams. v. Hughs*, 976 F.3d 564, 566 (5th Cir. 2020) (alteration in original) (quotation omitted); *Veasey v. Abbott*, 870 F.3d 387, 392 (5th Cir. 2017) (per curiam) (granting stay pending appeal because "a temporary stay will allow this court to . . . rule on the merits while preserving the status quo"). But here, the *preliminary injunction* preserves the status quo by allowing Plaintiffs to retain the same status while the legality of the application of Defendants' mandate to them is adjudicated. Staying the injunction would disrupt the status quo by allowing Defendants to take adverse action against Plaintiffs because of their RA requests.

Plaintiffs continue to suffer ongoing injury that existed before the preliminary injunction because Defendants continue to violate it. *See* Mot. for Order to Show Cause, Dkt. 95-97. Staying the injunction pending appeal will result in even greater harm to the Plaintiffs, as it will allow Defendants to take immediately harmful action with impunity. Defendants will continue to harm

Plaintiffs by denying them medical treatment, holding them in a temporary location for months on end and stranding them on base without special permission to leave, removing them from earned positions they already had or were shortly about to assume and thereby derailing their careers, and "reassigning them" to pull weeds and give status reports about much trash they picked up around the base. *See* Br. Supp. Mot. for Order to Show Cause, Dkt. 96 at 5-9. All of these actions are coercive and designed to punish Plaintiffs for daring to submit a religious accommodation request that the Navy's own policies allow and the law requires. As Defendants' counsel stated, by asking for the stay, Defendants want "the freedom for its commanders to reassign Plaintiffs from their current billets and units, cancel orders (including PCS and training orders), and remove them from a deployable" status, which will mean the loss of special pays that Plaintiffs will never get back. Mot. for Order to Show Cause App. 0010 (Dkt. 97).[5] The Court should not give Defendants "the freedom" to continue punishing Plaintiffs for their religious beliefs in flagrant violation of the First Amendment and federal law. Thus, "preservation of the status quo plainly balances the equities and does not irreparably injure" the Navy. *Mack*, 4 F.4th at 316–17.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion for a partial stay of the preliminary injunction pending appeal.

---

[5] The only exception is that Defendants are willing to agree not to involuntarily separate Plaintiffs or court martial them pending appeal.

Respectfully submitted this 31st day of January, 2022.

Kelly J. Shackelford
  Texas Bar No. 18070950
Jeffrey C. Mateer
  Texas Bar No. 13185320
Hiram S. Sasser, III
  Texas Bar No. 24039157
David J. Hacker
  Texas Bar No. 24103323
Michael D. Berry
  Texas Bar No. 24085835
Justin Butterfield
  Texas Bar No. 24062642
Danielle A. Runyan *
  New Jersey Bar No. 027232004
Holly M. Randall *
  Oklahoma Bar No. 34763
FIRST LIBERTY INSTITUTE
2001 W. Plano Pkwy., Ste. 1600
Plano, Texas 75075
Tel: (972) 941-4444
jmateer@firstliberty.org
hsasser@firstliberty.org
dhacker@firstliberty.org
mberry@firstliberty.org
jbutterfield@firstliberty.org
drunyan@firstliberty.org
hrandall@firstliberty.org


Jordan E. Pratt
  Florida Bar No. 100958* **
FIRST LIBERTY INSTITUTE
227 Pennsylvania Ave., SE
Washington, DC 20003
Tel: (972) 941-4444
jpratt@firstliberty.org


*  Admitted pro hac vice
** Not yet admitted to the D.C. Bar, but admitted to practice law in Florida. Practicing law in D.C. pursuant to D.C. Court of Appeals Rule 49(c)(8) under the supervision of an attorney admitted to the D.C. Bar.

/s/ Heather Gebelin Hacker
Heather Gebelin Hacker
  Texas Bar No. 24103325
Andrew B. Stephens
  Texas Bar No. 24079396
HACKER STEPHENS LLP
108 Wild Basin Road South, Suite 250
Austin, Texas 78746
Tel.: (512) 399-3022
heather@hackerstephens.com
andrew@hackerstephens.com

Attorneys for Plaintiffs

14

**CERTIFICATE OF SERVICE**

I hereby certify that on January 31, 2021, I electronically filed the foregoing document

through the Court's ECF system, which automatically notifies counsel of record for each party.

/s/Heather Gebelin Hacker
HEATHER GEBELIN HACKER