IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

NAVY SEALs 1-3, et al.,

                Plaintiffs,

v.

LLOYD J. AUSTIN, III in his official capacity as United States Secretary of Defense, et al.,

                Defendants.

Case No. 4:21-cv-01236-O

**DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR A PARTIAL STAY PENDING APPEAL**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT .........................................................................................................................1

    I.    The Court Should Grant Defendants' Request for a Partial Stay of the Injunction Pending Appeal.............................................................................................................1

        A.    Claims and Relief Pertaining to Military Assignments Are Non-Justiciable...............1

        B.    The Navy Has an Extraordinarily Compelling Interest In Making Assignment Decisions Based on All Relevant Considerations............................3

        C.    The Court's Misinterpretation of Navy Instructions Requires a New Balance of Equities Analysis...........................................................................5

        D.    Balance of Equities Strongly Favors a Partial Stay Pending Appeal....................6

        E.    Navy Officals are Operating in Good Faith.........................................................6

        F.    The Navy has Made Every Effort to Comply With the Court's Preliminary Injunction.............................................................................................................8

CONCLUSION .....................................................................................................................10

INTRODUCTION

Plaintiffs' Opposition to Defendants' Motion for a partial stay of the Court's injunction pending appeal, and their separate Motion to Show Cause, make it abundantly clear that they view the Court's preliminary injunction as a transfer of military authority to the federal judiciary. Plaintiffs assert that the Court's order allows them to obtain an immediate transfer to military operational units, to be assigned and reassigned to military duties including leadership positions, to be commissioned as officers, to have military equipment issued to them, and to train, and deploy with operational units. *See* Pls.' Br. ISO Mot. to Show Cause (Pls.' Br.), ECF No. 96 at 5-9. But the Constitution specifically assigns such decisions to the Legislative and Executive Branches of Government. Accordingly, Defendants respectfully request that the Court clarify or stay its January 3, 2022 Order, (ECF No. 66), to the extent the order precludes Defendants from making the assignment and reassignment decisions that the military deems appropriate. Without an immediate clarification or stay, the Navy will continue to experience immediate and severe threats to both the success of the Navy's missions and the health of its service members. *See* ECF 87 No. 87, Decl. of Admiral William Lescher ¶ 2.

ARGUMENT

I.  **The Court Should Grant Defendants' Request for a Partial Stay of the Injunction Pending Appeal.**

   A.   **Claims and Relief Pertaining to Military Assignments Are Non-Justiciable.**

Plaintiffs do not seriously grapple with Defendants' arguments and the large body of case law finding that military assignment decisions are not reviewable in federal court. Defs.' Br. ISO Stay Mot. (Defs.' Br.), ECF No. 86 at 8. Rather, Plaintiffs merely refer back to this Court's justiciability analysis pursuant to *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971), and argue that *Mindes* itself requires review of assignment decisions. Pls.' Opp. to Defs.' Mot. to Partially Stay PI (Pls.' Opp.), ECF No. 99 at 4-5. But *Mindes* made no such finding. In *Mindes*, a case involving a service member's involuntary

1

discharge, the Fifth Circuit established several factors for district courts to apply when making reviewability determinations without applying those factors to the underlying discharge case. *Mindes,* 453 F. 2d at 201-02. Other Circuits have applied these same factors and uniformly found that military assignment decisions are non-justiciable. *See, e.g., Harkness v. Secretary of Navy*, 858 F.3d 437, 443 (6th Cir. 2017); *Schlanger v. United States*, 586 F.2d 667, 671 (9th Cir. 1978); *Sebra v. Neville*, 801 F.2d 1135, 1141 (9th Cir. 1986). And still more Circuits have come to the same conclusion using their own tests. *See Cargill v. Marsh*, 902 F.2d 1006, 1007 (D.C. Cir. 1990) (applying justiciability test from *Kreis v. Secretary of Air Force*, 866 F.2d 1508 (D.C. Cir. 1989)); *Antonellis v. United States*, 723 F.3d 1328, 1332 (Fed. Cir. 2013) (applying justiciability test from *Adkins v. United States*, 68 F.3d 1317 (Fed. Cir. 1995) and *Murphy v. United States*, 993 F. 2d 871 (Fed. Cir. 1993)). This Court appears to be the first to conclude that military assignment and deployment decisions are reviewable in federal court.

Moreover, even if the *Mindes* Court had determined that the underlying discharge claim in that case was justiciable, that would be irrelevant to Defendants' present motion, which does not seek a stay of the Court's order insofar as the order merely forbids the Navy from initiating involuntary separation or disciplinary proceedings. *See* Defs.' Mot. for Partial Stay of PI, ECF No. 86 at 1. At least insofar as the Court's review of Plaintiffs' claims extends to a review of military assignment decisions and medical qualifications for deployment, or this Court provides Plaintiffs relief which extends to such claims, it impermissibly intrudes into the Constitutional purview of the Executive and Legislative Branches. *Orloff v. Willoughby*, 345 U.S. 83, 94-95 (1953); *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973) ("The complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments, subject *always* to civilian control of the Legislative and Executive Branches.").

Plaintiffs ask this Court to oversee their assignments, training, equipping, and control. *See* Decl. of Navy Diver 2, ECF No. 97 at 9-11 (seeking to transfer to an operational unit); Decl. of Navy

SEAL13, ECF No.97 at 25-26 (seeking to attend military training and the reassignment of leadership responsibilities); Navy SEAL14, ECF No.97 at 28-29 (seeking to attend Officer Candidate School and appointment as a Commissioned Officer); Decl. of Navy SEAL21, ECF No. 97 at 16-18 (seeking to return to an operational unit, have military equipment issued to him, attend training, and deploy with an operational unit); Decl. Navy SEAL22, ECF No. 97 at 31-32 (seeking to attend training and be assigned to an operational unit and leadership position); Decl. of Navy SEAL26, ECF No. 97 at 5-7 (seeking temporary duty assignment).[1] But the Constitution entrusts those decisions to the Executive and Legislative Branches, not to the judiciary. *Gilligan,* 413 U.S. at 10. Plaintiffs' demands for judicial oversight of granular assignment decisions underscores the necessity of a partial stay of the injunction pending appeal.

### B. The Navy Has an Extraordinarily Compelling Interest In Making Assignment Decisions Based on All Relevant Consideration.

The Navy has an extraordinarily compelling interest in being able to consider vaccination status when it makes assignment decisions, alongside a number of other considerations when determining a service member's fitness for deployment or other assignment. As Admiral Lescher explains, "[u]nvaccinated or partially vaccinated service members are at higher risk to contract COVID-19, and to develop severe symptoms requiring hospitalizations that remove them from their units and impact mission execution." Lescher Decl. ¶ 2. This can lead to medical evacuations that "create additional risk . . . to the mission" and "place those service members executing medical evacuation at risk of harm," including by providing "transport from a hostile, remote or diplomatically sensitive area." *Id.* ¶ 21. For a force that requires every service member to be deployable, this means even vaccination against tetanus—which is not transmissible from human to human—is

---

[1] The Navy supports temporary duty travel for Navy SEAL26 to attend a program for Traumatic Brain Injury and is currently working to get him treatment as soon as possible. However, other patients have booked this particular treatment ahead of him. Ex. 1, Declaration of Captain Christopher D. Brown ¶ 8 (App.010).

3

required. *See* Ex. 2, DoDI 1332.45 at 4 (App.019) ("To maximize the leathality and readiness of the joint force, all Service members are expected to be deployable."); ECF 44, BUMEDINST 6230.15B, Table D-1 (App.63). Moreover, in this instance, considering the extremely transmissible nature of COVID-19, the heightened risk that an unvaccinated service member will contract COVID-19 therefore necessarily heightens the risk that others in that unit will contract COVID-19. Lescher Dec. ¶ 17 ("[U]nvaccinated personnel in a unit degrade the force health protection conditions in the unit, placing personnel in the unit at risk and degrading the unit's ability to safely conduct operations, regardless of the scope of the operation.").

In response to this compelling interest, Plaintiffs cite to a statement from the Deputy Chief of Naval Operations, Vice Admiral William Merz, that the Omicron variant is not causing an operational impact to deployed conventional units. Pls.' Opp. at 2. But Plaintiffs decline to cite the rest of Vice Admiral Merz' statement, which explain that this is because all Navy operational units are currently 100 percent vaccinated. Ex. 1, Diana Stancy Correll, "Omicron isn't significantly impacting Navy operations, admiral says," Navy Times (Jan. 27, 2022), App. in Supp. of Pls.' Opp'n to Mot. for Partial Stay Pending Appeal, (Pls.' App.), ECF No. 100 at 6. As the article explains, "[t]hose who have a waiver or are seeking a COVID-19 vaccine exemption are transferred to a shore tour to ensure sailors in operational units are fully vaccinated." Vice Admiral Merz further explains, consistent with Admiral Lescher's Declaration ¶¶ 20-23, that it is "significantly less expensive to separate a sailor than to conduct a medical evacuation due to a COVID-19 outbreak." These statements do not undermine but further support the Navy's compelling interest in the vaccination of its forces and its units, including Plaintiffs.

Plaintiffs attempt to support their own military readiness conclusions with a self-serving assessment from one of the Plaintiffs. Pls.' App. at 15-18. But the Supreme Court has repeatedly dismissed military assessments from plaintiffs or their "expert[s]" as "quite beside the point." *Goldman*

4

*v. Weinberger*, 475 U.S. 503, 509 (1986) (dismissing "expert testimony" from military official "that religious exceptions" to uniform standards "will increase morale"); *Rostker*, 453 U.S. at 63 (upholding sex-classification even though evidence showed "military opinion, backed by extensive study, is that the availability of women registrants would materially increase flexibility, not hamper it"); *Trump*, 138 S. Ct. at 2421-22 (giving no weight to the views of former military officials).

In any event, Plaintiffs assessment is misguided and "fails to appreciate the dynamic nature of military operations and special operations in particular." Brown Decl. ¶ 9 (App.010). Many of the Plaintiffs are in deployable units and others may still deploy on short notice. *Id.* Moreover, although Plaintiff Special Warfare Combatant Craft Crewman 4 may not have experience it personally during his own duty assignments "every day, someone in the NSW force is onboard other Navy assets." *Id.* ¶ 10 (App.012). "It is simply untrue to say that NSW personnel are segregated from ship's company when they travel onboard a Navy vessel in a way that would present COVID-19 transmission." *Id.*

### C. The Recent Clarification of Navy Instructions Requires a New Balance of Equities Analysis.

As explained in Defendants' motion, the Court appears to have drawn an incorrect conclusion regarding Navy instructions when it determined that vaccination medical waivers and religious waivers were being treated differently for duty assignment and deployment purposes. Order on Prelim. Inj., ECF No. 66 at 26. Moreover, this conclusion appears to be one of the reasons why the Court found the balance of equities tipped in Plaintiffs' favor upon issuance of its preliminary injunction. *See id.* at 14 ("Those receiving medical accommodations are not medically disqualified—they receive equal status as those who are vaccinated."). But Navy guidance makes clear that the Navy views any unvaccinated services member—no matter what the reason—as an operational risk to their unit. *See* NAVADMIN 07/22 ¶ 5.b.1, ECF 100 at 10 ("all operational Navy units" must be "100 percent vaccinated."). Plaintiffs tacitly admit there may have been a misunderstanding but argue that the injunction should stand because "it is not clear from the face of the policies that those who receive a

5

religious exemption are eligible to receive the same separate waiver." Pls. Opp. at 13. Contrary to their contention, Navy guidance makes no distinction between waivers for medical purpose and religious purposes. *See* NAVADMIN 07/22 ¶ 5.b.1, Ex. 2, Pls.' App., ECF No. 100 ("[u]nvaccinated uniformed personnel should only include those with an approved waiver, those awaiting disposition, or those processing for separation."). Plaintiff's argument is also irrelevant for the purposes of the present motion, because all the Navy is seeking to do here is take Plaintiffs' unvaccinated status into account—as they would for a service member with a medical vaccine waiver—when making assignment decisions.

### D. The Balance of Equities Strongly Favors a Partial Stay Pending Appeal.

Plaintiffs do not seriously engage with the balance of equities or the national security harms that defendants have explained the injunction inflicts. *See generally* Lescher Decl. They primarily reiterate their contention that because the Court's injunction involves their constitutional rights they *per se* suffer irreparable harm. Pls.' Opp. at 10-12. But their argument that a likelihood of success on the merits alone justifies a preliminary injunction, and forecloses a partial stay pending appeal, impermissibly collapses the separate requirements for a preliminary injunction. *Winter v. NRDC, Inc.*, 555 U.S. 7, 22 (2008).

Plaintiffs' remaining arguments fare no better. The Navy's second most senior officer has explained the urgent necessity that the Court partially stay the preliminary injunction. *See Winter*, 555 U.S. at 24. And Plaintiffs are mistaken to contend that the preliminary injunction merely preserves the status quo. A status quo injunction would prohibit the Navy from involuntarily separating or formally disciplining Plaintiffs for not receiving the COVID-19 vaccination, but would still allow the Navy to take COVID-19 mitigation measures as to Plaintiffs, including by reassigning them from operational units. This is exactly what the Navy has proposed. *See* Def. Br. at 1. Indeed, Plaintiffs' Opposition and Motion to Show Cause make clear that they believe the Court has entered an

affirmative injunction that permits detailed judicial oversight of military decisions pertaining to Plaintiffs assignment, training, equipping, and deployment. *See supra.* But this is precisely why a partial stay pending appeal should be granted. Regardless of the ultimate outcome of Plaintiffs' claims, the Court should not in the meantime enjoin the Navy from exercising its discretion in assignment matters for unvaccinated individuals in order to protect the force.

### E. Navy Officials are Operating in Good Faith.

Plaintiffs' remaining arguments do not counsel against a partial stay. Plaintiffs make the extraordinary claim that an injunction is necessary because dozens of military officials are acting in concert to issue indiscriminate and undifferentiated denials of each service member's request for a religious exemption to the COVID-19 vaccination requirement. *See* Pls.' Opp. at 2-5. As set forth in the Declaration of Vice Admiral William Merz and published Navy guidance, there is a defined process for service members to seek religious exemptions from the vaccination requirement. Merz Decl. ¶¶ 5, 14, 23, ECF No. 44-3. Several military officials have input into the process, including a chaplain and commanding officer, but only the Deputy Chief of Naval Operations may make a decision, and all appeals are adjudicated by the Chief of Naval Operations. *Id.* at 14. These officials engage in a careful, thorough, and case-by-case analysis of each religious accommodation request, evaluating whether requiring compliance would burden the member's sincerely held religious exercise, identifying the government's compelling interest, and balancing that interest against the member's rights in light of the appropriate standard. *Id.* Navy guidance includes templates for approval and disapproval. *Id.*[2] The Chief of Naval Operations, like other senior military decision-makers, is entitled to a presumption of regularity. *See, e.g., Dodson v. Dep't of Army*, 988 F.2d 1199, 1204

---

[2] Even after a denial, a service member is entitled to considerable additional process before discipline or separation, and additional remedies are available post-separation that could remedy any alleged error. Merz Decl. ¶¶ 15-23.

(Fed. Cir. 1993) ("[M]ilitary administrators are presumed to act lawfully and in good faith like other public officers, and the military is entitled to substantial deference in the governance of its affairs."). The D.C. Circuit and Ninth Circuit both dismissed similar theories of bad faith when vacating (D.C. Circuit) and staying (Ninth Circuit) preliminary injunctions preventing the military from implementing its then existing policy regarding military service by transgender individuals and individuals with gender dysphoria. *Doe 2 v. Shanahan*, 755 F. App'x 19, 25 (D.C. Cir. 2019); *Karnoski v. Trump*, 926 F.3d 1180, 1202-03 (9th Cir. 2019); *see also Doe 2 v. Shanahan*, 917 F.3d 694, 731 (D.C. Cir. 2019) (Williams, J., concurring) ("the plausibility of such a scheme tends to unravel as we try to imagine the dozens of participants," including "Cabinet members and other officials," "who would have been needed for its realization" (quotation marks omitted)). In any event, Plaintiff's baseless allegation that the Navy is proceeding in bad faith in deciding religious exemptions provides no basis to deny a partial stay of the injunction in order to preserve the Navy's discretion to make assignment decisions for personnel who are unvaccinated while their claims are pending.[3]

### F. The Navy has Made Every Effort to Comply With the Court's Preliminary Injunction.

Lastly, Plaintiffs' argue that a partial stay of the Court's preliminary injunction should be denied based on Defendants' alleged failure to comply with that order. Pls.' Opp. at 3-4. Defendants are still reviewing Plaintiffs' allegations and plan to fully respond to Plaintiffs' contempt motion within the time allotted by the Court. However, Defendants are making every effort to comply with the Court's order. As the Chief of Staff for Navy Special Warfare Command ("NSWC") explains, these

---

[3] Three days after the Court's hearing on the preliminary injunction and after all briefing was submitted to the Court, Plaintiffs' counsel submitted an anonymous complaint he "received on December 23, 2021 from one of [his] clients[.]" ECF 62, Decl. of Andrew B. Stephens. This anonymous complaint, does not purport to be from a Plaintiff in this litigation and was not signed under penalty of perjury. *Id.* It is unclear if the proponent of the anonymous complaint even knows that this complaint was filed in this lawsuit or that it has been relied on by Plaintiffs. *Id.* Such anonymous, unauthenticated, double hearsay should not be considered by this Court and is certainly not enough to overcome the presumption of regularity or find that senior military officials are acting in bad faith.

efforts began immediately. Brown Decl. ¶ 3 (App.003-004). Upon receiving the Court's injunction, NSWC notified its commodores, commanding officers and key advisory staff of the order and had them execute non-disclosure agreements to comply with the protective order. *Id*. NSWC also provided units and commands with clear and consistent guidance regarding their obligations to adhere to the preliminary injunction and routinely followed up regarding their compliance efforts. *Id*.

However, the Navy's compliance efforts have been complicated by Plaintiffs' desires to keep their identities and their connection to this lawsuit confidential. *Id* ¶¶ 4-5 (App.005-007). Many of Plaintiffs' units are small, and unit commanders have been cautious in disclosing the identities of the Plaintiffs in order to preserve their anonymity. *Id*. Some actions that Plaintiffs perceive as being required by the preliminary injunction are controlled by various Navy components outside of NSWC who might not have a need to know Plaintiffs' identities. *Id*. Other actions may only be interim actions performed by lower level service members who are unaware of the preliminary injunction and have no authority to order an adverse action. *Id*. In those circumstance, any actual adverse action would have to be approved by a commander who was aware of the preliminary injunction and would overrule the subordinate. *Id*. For example, Plaintiff Navy SEAL 21 claims he was initially denied the ability to take an advancement exam by one of his peers.[4] *Id*. But the initial denial by a peer was not an adverse action and ultimately Plaintiff was able to take the exam. *Id*. Accordingly, such actions will be overturned as they rise up the Plaintiffs' chain of command for resolution. *Id*.

---

[4] On December 1, 2021, Plaintiffs filed a motion to proceed under a pseudonym claiming that based on "their consequential positions in the United States Navy, protection of the Plaintiffs' identities is critical to the operational security of their individual missions." ECF No. 26 at 1-2. Moreover, Plaintiffs claimed that disclosure of their names would "jeopardize their personal safety and the safety of their families by revealing their position to enemy forces." *Id*. Plaintiffs have no such concerns revealing the names of their peers within their units and have freely disclosed those names and email addresses on the public docket. Defendants opposed Plaintiffs' motion on December 16, 2021. ECF No. 50. Plaintiffs' conduct is further evidence that their motion, still pending before the Court, should be denied.

9

Further, the Navy's efforts to comply with the preliminary injunction have been hampered by the fact that the scope of the Court's order itself is unclear, which is why the Navy has sought clarification. *See* Defs.' Br. at 1. For example, the Court enjoined Defendants from taking any adverse action against Plaintiffs on the basis of Plaintiffs' requests for religious accommodation. Order on Prelim. Inj. at 26. However, Plaintiffs appear to conflate mitigation measures applicable to all unvaccinated personnel regardless of the reason for their being unvaccinated with adverse administrative actions. Plaintiffs' themselves appear to be confused by the requirements of the Court's order because they state that the order does not require the Navy to "deploy them for specific tasks in specific locations," Pls.' Opp. at 9, but proceed to argue that the order prohibits them from being required to perform specific tasks and requires them to be sent to specific locations. *Id.* at 17. Thus, Plaintiffs' own contempt motion ultimately helps confirm why Defendants have sought clarification and a partial stay pending appeal.

## CONCLUSION

For the foregoing reasons and those stated in Defendants' Motion to Partially Stay this Court's January 3, 2021, Preliminary Injunction, Defendants respectfully request that this Court grant a partial stay of its order to the extent it precludes Defendants from making the assignment and reassignment decisions that the military deems appropriate, taking into account Plaintiffs' vaccination status.

Dated: February 2, 2022                    Respectfully submitted,

                                           BRIAN M. BOYNTON
                                           Acting Assistant Attorney General

                                           ALEXANDER K. HAAS
                                           Director, Federal Programs Branch

                                           ANTHONY J. COPPOLINO
                                           Deputy Director

                                           */s/ Andrew E. Carmichael*

10

ANDREW E. CARMICHAEL (VA Bar. No. 76578)
AMY E. POWELL
Senior Trial Counsel
STUART J. ROBINSON
Senior Counsel
ZACHARY A. AVALLONE
COURTNEY D. ENLOW
LIAM C. HOLLAND
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 514-3346
Fax: (202) 616-8470
Email: Andrew.e.carmichael@usdoj.gov

*Counsel for Defendants*