IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

**NAVY SEALs 1-26,** et al.**,**

                Plaintiffs,

v.

**LLOYD J. AUSTIN, III** in his individual and official capacity as United States Secretary of Defense, et al.,

                Defendants.

Case No. 4:21-cv-01236-O

# DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR AN ORDER TO SHOW CAUSE

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

BACKGROUND AND COMPLIANCE ....................................................................................... 1

ARGUMENT .................................................................................................................................. 4

    I.    Legal Standards ............................................................................................................ 4

    II.    Plaintiffs' Motion for an Order to Show Cause and to Hold Defendants in Contempt is Meritless as a Matter of Fact and Law. ..................................................... 6

CONCLUSION ............................................................................................................................. 13

# **TABLE OF AUTHORITIES**

**CASES**

*Am. Airlines, Inc. v. Allied Pilots Ass'n*,
   228 F.3d 574 (5th Cir. 2000) ............................................................................................. 5

*Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics GmbH*,
   No. 14-CV-585 (AJN), 2017 WL 3605583, at *4 (S.D.N.Y. July 26, 2017) ....................... 6

*Crowe v. Smith*,
   151 F.3d 217 (5th Cir. 1998) ............................................................................................. 4

*Dodson v. U.S. Gov't, Dep't of Army*,
   988 F.2d 1199 (Fed. Cir. 1993) ....................................................................................... 13

*Dondi Props. Corp. v. Com. Sav. & Loan Ass'n*,
   121 F.R.D. 284 (N.D. Tex. 1988) ..................................................................................... 4

*Hornbeck Offshore Servs., L.L.C. v. Salazar*,
   713 F.3d 787 (5th Cir. 2013) .................................................................................... *passim*

*In re U.S. Bureau of Prisons, Dep't of Justice*,
   918 F.3d 431 (5th Cir. 2019) ............................................................................................. 5

*Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*,
   86 F.3d 464 (5th Cir. 1996) .......................................................................................... 5, 6

*Roadway Express, Inc. v. Piper*,
   447 U.S. 752 (1980) ........................................................................................................... 4

*Taggart v. Lorenzen*,
   139 S. Ct. 1795 (2019) ..................................................................................................... 5

*Travelhost, Inc. v. Blandford*,
   68 F.3d 958 (5th Cir. 1995) ............................................................................................. 5

*United States v. United Mine Workers of Am.*,
   330 U.S. 258 (1947) ......................................................................................................... 5

*Young v. U.S. ex rel. Vuitton et Fils S. A.*,
   481 U.S. 787 (1987) ......................................................................................................... 5

**FEDERAL RULES**

Fed. R. Civ. P. 65(d) .................................................................................................................................5

## INTRODUCTION

On January 3, 2022, this Court entered a preliminary injunction enjoining Defendants "from applying MANMED § 15-105(3)(n)(9); NAVADMIN 225/21; Trident Order #12; and NAVADMIN 256/21 to Plaintiffs" and "from taking any adverse action against Plaintiffs on the basis of Plaintiffs' requests for religious accommodation." Opinion, ECF No. 66, at 26 ("Op."). The Navy has consistently engaged at all levels to ensure compliance with that directive.

Plaintiffs' motion for an order to show cause and to hold Defendants in contempt fails to show that Defendants are taking any action in violation of the Court's injunction. Plaintiffs submit allegations from six of the thirty-five plaintiffs, but most of the actions identified by Plaintiffs predate the injunction and so cannot be a violation of it. A few other actions are traceable only to COVID-19 mitigation measures that are applicable to all unvaccinated personnel and that are distinct from the enjoined policies. Finally, as explained below, some of the allegations are incorrect. Plaintiffs have thus shown no basis for an order to show cause, let alone a finding of contempt. To the extent further clarification of the scope of the Court's injunction is needed, Defendants stand willing to engage with Plaintiffs on that issue.

## BACKGROUND AND COMPLIANCE

Since the Court entered the injunction, Defendants have filed a notice of appeal and a motion to partially stay the injunction (now fully briefed and pending), as well as a motion to dismiss. ECF Nos. 82, 85, 106. Plaintiffs have filed an amended complaint, a motion for class certification, and a motion for a class-wide injunction. ECF Nos. 84, 89, 104.

While the case continues, Defendants have made every effort to comply fully with the Court's order. As the Chief of Staff for Navy Special Warfare Command ("NSWC") explains, compliance with the preliminary injunction order began immediately upon its issuance. *See* Ex. 1, Decl. of Captain Christopher D. Brown, ¶¶ 3-4 (App003-006). Upon receiving the Court's injunction, NSWC notified

its major commanders, commanding officers and key advisory staff of the order and had them execute non-disclosure agreements to comply with the protective order previously entered in this case shielding the identity of Plaintiffs from unauthorized disclosure. *Id.* ¶ 3 (App003-004). NSWC also provided units and commands with clear and consistent guidance regarding their obligations to adhere to the preliminary injunction and routinely followed up regarding their compliance efforts. *Id.* ¶ 3 (App005). Each Commodore discussed the injunction with their staff judge advocate and determined whose involvement was needed to ensure that no adverse action could be taken. *Id.*

The Navy's compliance efforts have been complicated by at least two factors. First, Plaintiffs' desires to keep their identities and their connection to this lawsuit confidential make implementation more challenging, and Defendants have carefully complied with the Court's protective order as well. *Id.* ¶ 4 (App005-006). Many of Plaintiffs' units are small, and unit commanders have been cautious in disclosing the identities of Plaintiffs in order to preserve their anonymity. *Id.* Some actions that Plaintiffs perceive as being required by the preliminary injunction are controlled by various Navy components outside of NSWC. *Id.* Accordingly, it is difficult to predict who might have a need to know Plaintiffs' identities and sign the non-disclosure ahead of time in order to comply with the injunction. But to preserve Plaintiffs' anonymity, unit commanders have generally not disclosed Plaintiffs' identity to their peer groups. *Id.* ¶ 5 (App007). Accordingly, the Plaintiff would need to bring any such issues to the Navy chain of command for resolution. *Id.* If any Plaintiff informs their command of a problem, each Plaintiff's commodore stands ready to ensure no adverse action can be finalized against them. *Id.* n.9. In the meantime, the protective order means that there are many people around Plaintiffs who are unaware of the injunction.

Second, the Navy has sought clarification to ensure that its actions are fully in compliance with the Court's orders. *See* Defs.' Br. ISO Stay Mot., ECF No. 86, at 1. For example, the Court enjoined Defendants from applying specified instructions to Plaintiffs and from taking "any adverse action

2

against Plaintiffs on the basis of Plaintiffs' requests for religious accommodation." Op. at 26. DoD does not understand this order to prevent application of other mitigation measures applicable to *all* unvaccinated personnel—regardless of the reason for their being unvaccinated. The Navy has not taken any adverse action against any Plaintiff based on the enjoined instructions, or on the basis of their request for accommodation. Brown Decl. ¶ 6 (App008). The Navy has, however, adopted several medically recommended risk-mitigation measures ─ separate from the enjoined instructions ─ for all unvaccinated service members, regardless of whether they have an exemption, have an exemption request pending, have been denied an exemption, or are unvaccinated for any other reasons. *Id.* ¶¶ 6-7(App008-009). These measures may include limiting unvaccinated personnel from engaging in certain trainings where transmission risk is high; requiring additional travel clearance; and requiring COVID-19 testing in some circumstances. *Id.* (And, indeed, these mitigation measures are along the lines of what Plaintiffs advocated as less restrictive alternatives in their original motion and reply. ECF No. 16, at 6; ECF No. 58, at 11). DoD does not understand those mitigation measures to be enjoined when they are not contained in the orders specified by the Court in its injunction. Brown Decl. ¶ 7 (App008-009).

      Plaintiffs' motion alleges that six of the thirty-five plaintiffs are being injured by conduct that violates the injunction. Pls.' Br. at 5-9, ECF No. 96. SEAL 13 alleges that he continues in the same status as prior to the injunction, and that although he was permitted to take an exam, he is ineligible for promotion. *Id.* at 8. SEAL 14 alleges that he continues in the same status and has not gotten new orders for Officer Candidate School. *Id.* at 8. SEAL 21 alleges that he continues to be unable to participate in training due to a lack of gear, was initially denied the ability to take an exam that he was later permitted to take, and is ordered to pick up trash. *Id.* at 7. SEAL 22 alleges that he has not been restored to his command, nor transferred and that he was not permitted to attend a particular training event. *Id.* at 9. SEAL 26 alleges that he has been denied the ability to travel for medical treatment.

3

*Id.* at 5-6. Diver 2 alleges that he has not yet been re-assigned, and continues to need permission to leave the base. *Id.* at 6-7. As set forth below, none of these alleged actions gives rise to a claim of contempt, because they concern actions taken prior to the Court's order, do not implicate the policies enjoined, or are incorrect factually.

Plaintiffs brought this motion without informing Defendants' counsel of the factual basis for the motion, and they declined to attempt to resolve any alleged compliance issues without litigation. ECF No. 95, at 4. Merely providing notice of the motion, without engaging in consultation regarding the basis for the motion, does not comport with Plaintiffs' counsel's obligations under Local Rule 7.1(a) and their motion should be denied on this basis alone. *Dondi Props. Corp. v. Com. Sav. & Loan Ass'n*, 121 F.R.D. 284 (N.D. Tex. 1988).[1]

## ARGUMENT

### I. Legal Standards

Because a district court's inherent powers to punish for contempt, *Hornbeck Offshore Servs., L.L.C. v. Salazar*, 713 F.3d 787, 792 (5th Cir. 2013) (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980)), are "shielded from direct democratic controls," the Supreme Court instructs that "they must be exercised with restraint and discretion." *Id.* Rather than stemming from a "broad reservoir," the court's contempt powers are "implied power[s,] squeezed from the need to make the court function." *Crowe v. Smith*, 151 F.3d 217, 226 (5th Cir. 1998) (citation omitted).

---

[1] In *Dondi Props. Corp.*, the Northern District adopted standards for attorney conduct in civil litigation. Among other obligations, the Court stated that "[a] lawyer owes, to opposing counsel, a duty of courtesy and cooperation, the observance of which is necessary for the efficient administration of our system of justice and the respect of the public it serves." 121 F.R.D. at 287. The Court denied the pending discovery motion in that matter, in large part because counsel had failed to have more than a *pro forma* meet and confer, explaining that "the purpose of the conference requirement is to promote a frank exchange between counsel to resolve issues by agreement or to at least narrow and focus the matters in controversy before judicial resolution is sought." *Id.* at 289.

4

"A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Hornbeck Offshore Servs.*, 713 F.3d at 792 (quoting *Travelhost, Inc. v. Blandford,* 68 F.3d 958, 961 (5th Cir. 1995)); *In re U.S. Bureau of Prisons, Dep't of Justice*, 918 F.3d 431, 439 (5th Cir. 2019). For civil contempt, this must be established by clear and convincing evidence. *Hornbeck Offshore Servs.*, 713 F.3d at 792. To support a contempt finding, the order must delineate "definite and specific" mandates that the defendants violated. *See Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 578 (5th Cir. 2000); Fed. R. Civ. P. 65(d) (injunctions must "state its terms specifically" and "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required"); *Hornbeck Offshore Servs.*, 713 F.3d at 792. Although "good faith" alone is not a full defense to contempt, "principles of 'basic fairness require that those enjoined receive explicit notice' of 'what conduct is outlawed' before being held in civil contempt" and that "civil contempt 'should not be resorted to where there is a *fair ground of doubt* as to the wrongfulness of the defendant's conduct.'" *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801-02 (2019) (explaining that an "objectively reasonable basis" for an interpretation of a court order forecloses contempt) (brackets and citations omitted). Thus, in order to find contempt, "the injunction would have had to include an express or clearly inferable obligation" that was violated. *See Hornbeck Offshore Servs.*, 713 F.3d at 793.[2]

"Judicial sanctions in civil contempt proceedings, may in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Am. Airlines, Inc.*, 228 F.3d at 585 (quoting

---

[2] The Court has other powers short of contempt available to ensure compliance, including clarification of its order. *Cf. Nat. Gas Pipeline Co. of Am.*, 86 F.3d at 467; *Young v. U.S. ex rel. Vuitton et Fils S. A.*, 481 U.S. 787, 801 (1987) ("[O]nly [t]he least possible power adequate to the end proposed should be used in contempt cases" (citation omitted)).

*United States v. United Mine Workers of Am.,* 330 U.S. 258, 303–04 (1947)). Inherent powers to sanction "may be exercised only if essential to preserve the authority of the court and the sanction chosen must employ 'the least possible power adequate to the end proposed.'" *Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir. 1996). Thus, "[i]f there is a reasonable probability that a lesser sanction will have the desired effect, the court must try the less restrictive measure first." *Id.*

## II. Plaintiffs' Motion for an Order to Show Cause and to Hold Defendants in Contempt is Meritless as a Matter of Fact and Law.

Plaintiffs' allegations that Defendants are in contempt of the Court's order are incorrect. The actions Plaintiffs identify are not in conflict with the injunction; indeed, many concern military decisions made prior to the injunction. *See Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics GmbH*, No. 14-CV-585 (AJN), 2017 WL 3605583, at *4 (S.D.N.Y. July 26, 2017) ("Quite simply, the Court is aware of no authority . . . suggesting that a party may 'violate' a court order prior to its effective date, let alone in such a manner as to warrant a contempt order."). And allegations concerning the remaining actions either are incorrect, do not implicate policies or describe adverse action subject to the Court's order, or describe action unrelated to Plaintiffs' requests for religious accommodations. Plaintiffs' motion would expand the injunction beyond Plaintiffs' asserted goal of preserving the "status quo" until the merits of their RFRA claim is resolved. *See* ECF No. 99, at 12 (aruging that the injunction only preserves the status quo). They effectively seek an affirmative injunction that would oversee details of these SEALs' military career, including how quickly they are considered for various positions, when they are issued gear, and what specific COVID-19 mitigation measures may be lawfully applied to them in multiple possible scenarios. Such relief is inappropriate, as Defendants have explained in seeking a partial stay of the injunction pending appeal, *see* ECF Nos. 86, 102, and the Court should not expand its prior injunction by retroactively enjoining assignment/mitigation actions for unvaccinated personnel that were in place before the Court's order. And at a minimum,

6

Plaintiffs cannot show by clear and convincing evidence that Defendants have violated "an express or clearly inferable obligation" in the text of the Court's injunction that could give rise to a showing of contempt.  *See Hornbeck Offshore Servs.*, 713 F.3d at 793.

### SEAL 13

SEAL 13 indicates that he was removed from a course.  Pls.' Br. at 8.  But that action was taken several months prior to the Court's injunction and so does not violate that injunction.  Ex. 2, Decl. of Ronald Harrison ¶ 5 (App017-018).  No action with respect to SEAL 13 has been taken since the injunction was issued, and no new request was acted on by his command.  Brown Decl. ¶ 8 (App009-010).

SEAL 13 additionally asserts that he "cannot promote," but he does not explain the basis for that belief, nor does he describe any action taken against him since the injunction issued.  ECF No. 97, at App. 0023.  His concerns about promotion are speculative, and they overlook a crucial fact.  SEAL 13 submitted his voluntary separation request on December 14, 2021, with a currently anticipated separation date of May 31, 2022.  Harrison Decl. ¶ 6 (App018-019).  SEAL 13 commenced terminal leave in January, at his own request.  *Id.*  Thus, as of today, SEAL 13 is unable to promote because he is voluntarily separating from the Navy, and there is no indication that Defendants have taken any action against him.  Moreover, SEAL 13 admits that he took the Navy-wide advancement exam on January 26, 2022; the results for that exam would be released around November 2022.  Therefore, the earliest Navy SEAL 13 could be advanced to the next rank is January 2023, well after his elected separation date.  *Id.*

### SEAL 14

SEAL 14 asserts that his orders to attend Officer Candidate School were cancelled. *See* ECF No. 97, at App. 0025; Ex. 3, Decl. of Lieutenant Commander Forrest S. Crowell (with respect to SEAL 14) ¶ 5 (App022) ("SEAL 14 Crowell Decl.").  But that cancellation occurred prior to the

7

Court's injunction, and so the cancellation does not violate the Court's order. No relevant new action with respect to SEAL 14 has been taken since the injunction was issued, and no new request was acted on by his command. Brown Decl. ¶ 8 (App009-010). SEAL 14 is presently assigned as a Joint Terminal Attack Controller Instructor and Evaluator, SEAL 14 Crowell Decl. ¶ 3 (App022), and is not subject to any adverse action.

Plaintiffs argue that defense counsel "conceded" than the cancellation of orders would violate the injunction. That is inaccurate. "Cancelling PCS orders" is one example of conduct that Defendants' counsel noted should be permitted but arguably would violate the injunction going forward. *See* ECF No. 97, at App. 0010. But SEAL 14 does not allege that his orders were cancelled *after* the injunction issued. Again, Plaintiffs now appear to pivot from their position that the injunction should preserve the status quo to a view that a new injunction should be entered that affirmatively reverses past actions never enjoined by the Court. There is no ground for a finding of contempt based on actions that were not previously enjoined.

### SEAL 21

SEAL 21 points to actions taken months prior to the injunction. Pls.' Br. at 7; Ex. 4, Decl. of Andrew Sparks ¶ 5 (App030-031) (removal occurred in October 2021). In October 2021, SEAL 21 was reassigned to the operations department within SEAL Team FIVE. Sparks Decl. ¶ 5. SEAL 21 appears to object that he has not been re-assigned back to his old platoon to participate in training, Pls. Br. at 7, an affirmative action that does not seem to be required by the Court's order. Training with his former unit would be complicated or prohibited by COVID mitigation measures unrelated to his exemption request or the particular orders enjoined by the Court, and would undermine unit cohesion (by, for example, having a team member move in and out of a unit or be unavailable for some trainings). Sparks Decl. ¶¶ 5-6 (App030-032). In any event, actions take prior to the injunction do not violate that order.

SEAL 21's other allegations do not describe adverse action either. Most involve mere statements by his peers, who would not be privy to his identity as a plaintiff in this lawsuit and who cannot take adverse action against him. For example, SEAL 21 indicates that he was initially denied the ability to take an advancement exam by one of his peers, a command career counselor performing related duties, who mistakenly believed that SEAL 21 had "refus[ed]" the vaccine and sent him an email quoting the enjoined order.[3] Brown Decl. ¶ 5 (App006-007); Sparks Decl. ¶ 7 (App032). Because of the protective order, that individual would have been unaware that SEAL 21 was covered by the injunction, and Defendants ensured that SEAL 21 was in fact able to take the exam. *Id.* Defendants cannot be held in *contempt* for a partially incorrect statement by one of SEAL 21's peers, a statement that was never implemented by Defendants. Similarly, SEAL 21 points to an administrative note on his Chief examination referring to his vaccine status and NAVADMIN 225/21. However, "[t]he inclusion of this note was carried out by lower ranking personnel who carry out the Navy-wide Chiefs exam who were not privy to SEAL 21's identity as a Plaintiff in this lawsuit." Brown Decl. ¶ 5 (App007). And the note itself is not an adverse action, because the note "would have to be routed through SEAL 21's Commodore, who is aware of the injunction in this lawsuit and is poised to ensure no adverse action is taken on account of SEAL 21's religious accommodation request." Brown Decl. ¶ 5 (App007-008).

---

[3] On December 1, 2021, Plaintiffs filed a motion to proceed under a pseudonym arguing that based on "their consequential positions in the United States Navy, protection of the Plaintiffs' identities is critical to the operational security of their individual missions." ECF No. 26, at 1-2. Moreover, Plaintiffs asserted that disclosure of their names would "jeopardize their personal safety and the safety of their family by revealing their position to enemy forces." Plaintiffs, however, have disclosed the names and email addresses of their peers on the public docket. Defendants opposed Plaintiffs' motion on December 16, 2021. ECF No. 50. Plaintiffs' conduct is further evidence that their motion, still pending before the Court, should be denied; there is no basis for protecting Plaintiffs' identities.

SEAL 21 further argues that he did not receive an evaluation he should have gotten, and he does not like his current job duties, which include picking up trash. Defendants have confirmed that SEAL 21 received a positive performance evaluation; he was out on leave when the evaluation was completed, but it is available to him now. Sparks Decl. ¶ 9 (App033). The duties assigned to both SEAL 21 and his peers are typical and appropriate duties within the Navy, and in any event are not a violation of the injunction because they are not adverse and are not related to their exemption requests. Sparks Decl. ¶ 8 (App032-033); Brown Decl. ¶ 4 n8 (App006).

### **SEAL 22**

Like the SEALs discussed above, SEAL 22 concedes that his orders were cancelled and that he was reassigned months prior to the preliminary injunction. Pls. Br. at 9; *see* Ex. 5, Decl. of Lieutenant Commander Forrest Crowell [with respect to SEAL 22] ¶ 5 (App037) ("SEAL 22 Crowell Decl."). No subsequent actions have been taken against SEAL 22 with regard to his transfer. *Id.*

SEAL 22 also alleges that he was not permitted to attend a training because of his religious exemption request. Pls.' Br. at 9. That is incorrect. SEAL 22 was unable to attend that particular training because he is unvaccinated and because COVID-19 mitigation measures applicable to *all* unvaccinated personnel prohibit those personnel from attending trainings unless certain conditions are met. SEAL 22 Crowell Decl. ¶ 7 (App038-039). Specifically, the Undersecretary of Defense implemented a requirement that the DoD Component Commander personally review and approve any waiver for unvaccinated special operation personnel to travel, based on the determination that the travel is mission essential to military operations and cannot be conducted by anyone other than the identified traveler. *Id.* The training in question was not mission critical and could be conducted by other personnel, and so, for that reason, Navy SEAL 22's travel to the training was denied. *Id.* And that denial was not an adverse action based on SEAL 22's religious accommodation request. *Id.* The Court did not enjoin the DoD policy governing this travel request.

**SEAL 26**

Plaintiffs assert that Defendants are denying Navy SEAL 26 permission to travel to a treatment program for traumatic brain injuries. Pls.' Br. at 5. Defendants take this concern very seriously and have concluded that Seal 26 was not denied permission to travel for medical treatment. Defendants were unable to secure permission for him to travel in time for his preferred start date at his preferred facility, but have since secured him a start date of March 27, 2022. Ex. 6, Decl. of Louis P. McFadden III ¶¶ 5-11 (App053-App055).

SEAL 26 is unvaccinated and is thus subject to the DoD policy limiting official travel of all unvaccinated personnel to mission-critical travel. McFadden Decl ¶ 5 (App053). He is eligible for treatment at a facility near his duty station, but instead elected to attend a distant facility for which a waiver or exception would be required. *Id.* SEAL 26's command was and is committed to getting him into the requested program, but was unable to secure the required waiver in the limited time remaining when he submitted a request. *Id.* ¶¶ 5-11 (App053-055).[4] SEAL 26 has now routed his new exception request for travel, and the command endorsement has been forwarded with a recommendation that it be approved. *Id.* ¶ 8. From November 23, 2021 to the present, SEAL 26's command has diligently worked to obtain approval for SEAL 26 to attend the treatment program in the proper manner and in accordance with applicable travel policies. *Id.* ¶¶ 7-8, 11 (App054-055). None of Defendants' actions, however, was based on the enjoined policies, on SEAL 26's religious exemption request, or on his participation in this lawsuit. As a result, Defendants' actions do not violate the injunction.

---

[4] SEAL 26 notes that officers communicated with the treatment facility in an effort to obtain information to get the waiver approved. This sort of communication is routine, and was in support of SEAL 26's request. McFadden Decl. ¶¶ 9-10 (App054-055).

**DIVER 2**

Diver 2 alleges that "[s]ince the preliminary injunction was entered, nothing has changed" regarding actions previously taken against him. ECF No. 97, at App. 007. In making that argument, Diver 2 acknowledges that his Permanent Change of Station was delayed prior to the injunction—and so, for the reasons described above, that action did not violate the Court's injunction. *Id.* at App. 0006-0007. He remains at the facility where he graduated from Expeditionary Combat Skills training, and remains assigned to Supply duties. Ex. 7, Decl. of Matthew Williams ¶¶ 2, 4 (App058-060). His orders have been extended or modified several times. Although the last extension came after the injunction, his most recent orders currently state that he is to report to SEAL Delivery Vehicle Team One no later than April 01, 2022. *Id.* ¶ 4 (App059-060); *see also* ECF No. 87, at App.044 (indicating that he will be sent to his duty station). No adverse action with respect to Diver 2 has been taken since the injunction was issued.

Diver 2 also alleges that he will lose certain pay benefits because he has not been diving. ECF No. 97, at App. 007. He argues that, if his qualifications were to lapse, he could lose eligibility for his special dive pay. In response to those concerns, his command is currently making plans to arrange for him to complete a qualifying dive. Williams Decl. ¶ 5 (App060). If he were unable to complete his qualifying dive for some reason or otherwise lost access to special pay, there still would be no adverse action—much less adverse action based on his religious accommodation request—and thus even this hypothetical future action would not violate the injunction.

Diver 2 also alleges that he is not permitted to leave base for any reason without routing a chit to the commanding officer to get permission. ECF No. 97, at App. 007. That is incorrect. Diver 2 is subject to the same liberty or leave policy as similar ECS students, and in fact he frequently leaves base or takes leave. *See* Williams Decl. ¶¶ 6-7 (App060-061). There are a number of base-specific COVID-mitigation policies with which Diver 2 must comply. For example, Diver 2 was required to

12

complete a quarantine after returning from extended leave. *Id.* And, like all unvaccinated personnel, he was required to present a recent negative COVID test in order to enter a facility on this base. *Id.* ¶ 8 (App061). Neither requirement is based on his religious accommodation request, and neither requirement is an adverse action within the meaning of the Court's injunction. *Id.* Indeed, Plaintiffs previously suggested similar measures would be less restrictive means of advancing the military's compelling interest in slowing the spread of COVID-19.

***

Defendants have acted at all times in good faith to implement this Court's injunction. *See, e.g., Dodson v. U.S. Gov't, Dep't of Army*, 988 F.2d 1199, 1204 (Fed. Cir. 1993) ("[M]ilitary administrators are presumed to act lawfully and in good faith like other public officers, and the military is entitled to substantial deference in the governance of its affairs."). And none of Plaintiffs' allegations show that Defendants violated a definite and specific obligation set forth in the injunction. Plaintiffs' motion to show cause is accordingly without merit. As noted above, however, Defendants are willing to work with Plaintiffs to seek to resolve any remaining disputes regarding compliance with the Court's order, including to seek clarification of the order to the extent the parties do not interpret it in the same manner.

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiffs' motion to show cause.

Dated: February 7, 2022               Respectfully submitted,

                                      BRIAN M. BOYNTON
                                      Acting Assistant Attorney General

                                      ALEXANDER K. HAAS
                                      Director, Federal Programs Branch

                                      ANTHONY J. COPPOLINO
                                      Deputy Director

*/s/ Amy Powell*
ANDREW E. CARMICHAEL (VA Bar. No. 76578)
AMY E. POWELL
Senior Trial Counsel
STUART J. ROBINSON
Senior Counsel
ZACHARY A. AVALLONE
COURTNEY D. ENLOW
LIAM C. HOLLAND
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 919-856-4013
Fax: (202) 616-8470
Email: amy.powell@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2022, I electronically filed the foregoing paper with the Clerk of Court using this Court's CM/ECF system, which will notify all counsel of record of such filing.

*/s/ Amy Powell*
AMY E. POWELL
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
150 Fayetteville St, Suite 2100
Raleigh, NC 27601
Tel: (919) 856-4013
Fax: (202) 616-8470
Email: amy.powell@usdoj.gov
