## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

**NAVY SEALS 1-26,** et al.**,**

Plaintiffs,

v.

**JOSEPH R. BIDEN, JR.**, in his official capacity as
President of the United States, et al.,

Defendants.

Case No. 4:21-cv-01236-O

## DEFENDANTS' APPENDIX TO DEFENDANTS' OPPOSITION

## TO PLAINTIFFS' MOTION FOR AN ORDER TO SHOW CAUSE

### Table of Appendix

| Bates Stamps | Description |
|---|---|
| App001–App014 | Ex. 1 - Declaration of Captain Christopher D. Brown (dated Feb. 2, 2022) |
| App015–App019 | Ex. 2 - Declaration of Lieutenant Commander Ronald E. Harrison [Regarding SEAL 13] |
| App020– App027 | Ex. 3 - Declaration of Lieutenant Commander Forrest S. Crowell [Regarding SEAL 14] |
| App028– App034 | Ex. 4 - Declaration of Commander Andrew Sparks [Regarding SEAL 21] |
| App035– App049 | Ex. 5 - Declaration of Lieutenant Commander Forrest S. Crowell [Regarding SEAL 22] |
| App050– App056 | Ex. 6 - Declaration of Commander Louis P. McFadden, III [Regarding SEAL 26] |
| App057– App071 | Ex. 7 - Declaration of Commander Matthew Williams [Regarding Diver 2] |

Dated: February 7, 2021

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director

*/s/ Amy E. Powell*
ANDREW E. CARMICHAEL

AMY E. POWELL
Senior Trial Counsel
STUART J. ROBINSON
Senior Counsel
ZACHARY A. AVALLONE
COURTNEY D. ENLOW (NC Bar No. 46578)
LIAM HOLLAND
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 616-8467
Fax: (202) 616-8470
Email: courtney.d.enlow@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2022, I electronically filed the foregoing paper with the

Clerk of Court using this Court's CM/ECF system, which will notify all counsel of record of such

filing.

*/s/ Amy Powell*
AMY E. POWELL
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
150 Fayetteville St, Suite 2100
Raleigh, NC 27601
Tel: (919) 856-4013
Fax: (202) 616-8470
Email: amy.powell@usdoj.gov

# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

|  |  |
|---|---|
| U.S. NAVY SEALs 1-26;<br>U.S. NAVY SPECIAL WARFARE<br>COMBATANT CRAFT CREWMEN 1-5;<br>U.S. NAVY EXPLOSIVE ORDNANCE<br>DISPOSAL TECHNICIAN 1; and<br>U.S. NAVY DIVERS 1-3,<br>    Plaintiffs,<br><br>v.<br><br>LLOYD J. AUSTIN, III,<br>in his official capacity as<br>United States Secretary of Defense; UNITED<br>STATES DEPARTMENT OF DEFENSE;<br>CARLOS DEL TORO, in<br>his official capacity as United States<br>Secretary of the Navy,<br>    Defendants. | Case No. 4:21-CV-01236-O |

## SUPPLEMENTAL DECLARATION OF CHRISTOPHER D. BROWN

I, Christopher D. Brown, hereby state and declare as follows:

1.      I am a Captain in the United States Navy, currently serving as the Chief of Staff of U.S. Naval Special Warfare Command (NSWC), located in Coronado, California, whose mission is to provide maritime special operations forces (SOF) to conduct full spectrum operations, unilaterally or with partners, to support national objectives. I make this declaration in my official capacity, based upon my personal knowledge and upon information that has been provided to me in the course of my official duties.

2.      I have served as a commissioned naval officer for the past 27.5 years. In that time, I have deployed nine times and served at every level of command. I have been assigned to my current position since September 24, 2021. Prior to my current assignment, I served as the

1

Commander of Naval Special Warfare Group ONE; Commander of Joint Task Force Indo-Pacific, Director of Operations at Special Operations Command-Central; Commanding Officer of SEAL Team ONE; Commander of Special Operations Task Force-Iraq; Commander of U.S. Central Command Crisis Response Element; and Deputy Commander of Joint Special Operations Task Force-Philippines. As part of my duties currently, I am responsible for supervising and coordinating the work of the staff of NSWC, which exercises administrative control over subordinate Naval Special Warfare commands and units worldwide.

### **NSCW Efforts to Comply with Preliminary Injunction *and* Protective Order**

3.      On the evening of Monday January 3, 2022, the Court issued a preliminary injunction (PI) pertaining to the 35 Plaintiffs in the above captioned case. ECF 66. NSWC was informed of the PI that evening and immediately began to take significant action to ensure compliance with the Court's injunction.[1]  First, I had my Force Judge Advocate (FJA)[2] begin coordination with Department of the Navy lawyers to ensure the PI was understood and to ensure that compliance efforts were in step with Departmental interpretation of the PI. Next, I had my FJA and limited members of his legal staff begin researching the Naval Special Warfare (NSW) commands and chains-of-command that had plaintiffs assigned to them. This research required our legal staff to execute non-disclosure agreements (NDAs) under the court's protective order on Tuesday January 4, 2022, and compile a list of the cognizant commands, officers-in-charge,

---

[1] Thirty-three of the Plaintiffs are in commands or units under the administrative control of NSWC. Two of the Plaintiffs are currently at non-NSWC training commands. I am informed that the command with administrative control over those two units, Naval Training and Education Command, has executed similar actions to comply with the protective order and preliminary injunction.

[2] The FJA is the senior Staff Judge Advocate (SJA) across the Naval Special Warfare enterprise. SJAs are uniformed attorneys assigned to commands who provide a variety of legal services and advice to commanders and personnel.

App003

commanding officers, and commodores.[3]  On Wednesday January 5, 2022, at my regular weekly

Major Commander Sync meeting, I informed all NSW Commodores (or their attending Deputy

Commander or Chief Staff Officer (CSO) if the Commodore was unavailable)[4] of the PI to

ensure maximum level of attention and compliance at the major command level.  I informed

them that no adverse actions were to be taken against plaintiffs and noted that my legal staff was

identifying the reporting chains of each of the plaintiffs and would disseminate guidance through

their assigned Staff Judge Advocates (SJAs), as there was a protective order in the case and

NDAs needed to be executed before identities could be shared.  On the same day, my legal staff

completed their list of reporting chains for the plaintiffs and began informing servicing SJAs that

their Commodores had plaintiffs assigned to them or under one of their subordinates commands,

and distributing NDAs for signature by the respective Commodores, SJAs, and key personnel, as

required in the Commodore's judgment (based on a balancing test of the need to inform

personnel to comply with the PI while also limiting disclosure to the minimum needed to comply

with the protective order).  I also executed my NDA that day, so that I could understand the

situation, be postured to discuss matters with NSWC Commodores, and because I am responsible

for one Plaintiff who is assigned to NSWC.  Over the next few days, each Commodore discussed

the PI with their servicing SJA, and determined the personnel who needed to sign an NDA to

ensure compliance with the PI.  During this time, my Commodores and I each spoke to our

---

[3] NSWC is a U.S. Special Operations Command (USSOCOM) component and the Department of the Navy Echelon
II command responsible for all NSW forces across the Navy.  It has seven major commands underneath it (known as
Echelon III commands); each of which is commanded by an O-6 (Captain) Commodore.  Each Commodore, in turn,
has numerous Echelon IV commands under them; each of which is commanded by an O-5 (Commander)
Commanding Officer.  Many of these Echelon IV commands have subordinate detachments that are geographically
separate from their parent command and run by Officers-in-Charge of the detachments.  Officers-in-Charge vary in
rank, ranging from Chief Warrant Officer to Lieutenant Commander.

[4] The weekly Major Commander Sync meeting allows NSWC and its Major Commanders to discuss important
issues at a regularly scheduled weekly meeting.  Commodores normally attend personally; however, when they are
unavailable, their Deputy Commodore (second in command) or CSO (responsible for coordinating staff actions at
the major commands and ostensibly third in command) attends.

servicing SJA to discuss compliance issues.  As a general matter, our sense was that compliance

with the PI could largely be effectuated through the Commodores themselves because any formal

adverse actions for COVID-19 matters required routing through each Commodore; however,

temporary reassignment presented more challenges.  First, the temporary reassignment of

personnel is the prerogative of a commander, based on military and mission requirements, long

before any of the provisions concerning temporary reassignment of personnel were reiterated in

NAVADMIN 225/21 or NAVADMIN 256/21.[5]  This authority derives from U.S. Navy

Regulations, and is at the discretion of commanders and commanding officers so that they may

accomplish military requirements and balance risks to the mission and force.  Second, even

though these NAVADMINs did not refer to the assignment of duties, we suspected that the

assignment of duties could be confused with temporary reassignment, even though the two are

distinct.  Because we wanted to get compliance right, over this same period (from 5 January

2022 to 13 January 2022) NSW attorneys coordinated with Department of the Navy attorneys to

ensure NSW attorneys were postured to provide commands with clear and consistent guidance

regarding each command's obligations to adhere to the PI.

4.      Ensuring compliance with both the Court's PI and the Court's protective order is

of paramount importance to NSWC and its subordinate commands.  Having said that, complying

with the PI while also limiting disclosure of the identities of the Plaintiffs presents several

challenges for commanders.[6]  Pursuant to the terms of the protective order issued on December

6, 2022, NSWC carefully disclosed the Plaintiffs' identities to the minimum number of personnel

---

[5] Though assignment of duties is within a commander's prerogative, it is a responsibility delegated down to every supervisor.  The day-to-day tasking of servicemembers is carried out by a variety of command personnel at every rank level.  Temporary reassignment of personnel completely remains a decision of the Commanding Officer and Senior Enlisted Leader of a command.

[6] There are unvaccinated servicemembers within NSW that are not parties to this lawsuit.  These servicemembers are still subject to precautionary measures (not intended to be punitive) and exclusion of plaintiffs from these measures is difficult without identification.

4

"actually engaged in the preparation of this litigation for trial or other proceedings herein" and who executed an NDA, Appendix A to the protective order. ECF 37 ¶ 2. For example, commodores, commanding officers, and other key staff executed NDAs and have discretion to have others execute NDAs to the extent it was necessary to comply with the PI. While clearly understanding the requirement to comply with the PI, commanders were also cautious in disclosing the identities of these plaintiffs to only the required personnel. Many of these units are small and disclosing the identities to too many personnel could undermine the purpose of the protective order. Furthermore, many of the actions referenced in the Plaintiffs' motion are controlled by commands outside the authority of NSWC. For example, eligibility to take an advancement exam or advance in rank are managed by discrete offices administering those issues Navy-wide.[7] To avoid any interim action by lower-level personnel across the Navy enterprise that could be perceived to be adverse would require disclosure of the Plaintiffs' identities to dozens, if not hundreds, of servicemembers in a variety of ranks across various commands in the NSW and Navy Personnel enterprise.[8]

5.   One example of this tension between the protective order and PI relates to Navy SEAL 21's claim that he was initially informed that he would not be allowed to take the advancement exam for Chief Petty Officer. See Decl. of Navy SEAL 21 ¶ 7, ECF 97. In support of this allegation Navy SEAL 21 submits an email from his command's career counselor who is a Petty Officer First Class—the same rank as Navy SEAL 21, and a command member who was

---

[7] A Navy advancement exam is a prerequisite to promotion for enlisted servicemembers seeking promotion to E-5, E-6 and E-7. It is a Navy-wide requirement and the exam is carried out by Navy Personnel Command.

[8] Navy SEAL 21 and SEAL 25 also mention being required to pick up trash as a part of their duties. I would note that it is common Navy practice for all servicemembers to pick up trash as a part of their duties. In fact, I regularly require the members of my staff to pick up trash around the spaces we are responsible for and do not view this as an adverse action. These duties are assigned irrespective of any desire to punish a sailor but rather as a productive use of their time when other duties are not pressing. Even as Chief of Staff, I continue to take out my own trash and pick up trash when my duties allow.

App006

not aware the PI applied to the Plaintiff. ECF 97 at 20. But to abide by the protective order NSWC did not inform each servicemember in Plaintiff's peer group of the lawsuit or the PI. However, it appears from the email chain that this issue was ultimately raised to the command level and Navy SEAL 21 was allowed to take the advancement exam even though a member of his peer group initially told him otherwise. Ultimately, there is a wide array of administrative policies and requirements implicated by the Plaintiffs' vaccination status. Some of these policies are either not covered by the PI or are managed by personnel outside the small number of personnel to whom disclosure of Plaintiffs' identities is appropriate pursuant to the protective order. This factor may have led to Plaintiffs' flawed perception that the preliminary injunction is being disregarded. Instead of widespread disclosure, we relied on the traditional operation of the Navy chain of command to serve as a bottleneck to ensure that no adverse action could be finalized against any of the Plaintiffs. All significant adverse actions that can be taken against a servicemember are either routed through their chain of command or provide the servicemember an opportunity to appeal through their chain of command.[9] My direction to NSWC subordinate commanders was to ensure that the injunction was enforced, and they stood ready to overrule any attempt to take an adverse action. For example, Navy SEAL 21 noted an administrative note on his Chief examination referring to his vaccine status. The inclusion of this note was carried out by lower ranking personnel who carry out the Navy-wide Chief's exam who were not privy to SEAL 21's identity as a Plaintiff in this lawsuit. The note itself, however, is not an adverse action. It refers to possible future adverse action, but this action would have to be routed through

---

[9] In addition, the Navy Regulations Article 1150 and Uniform Code of Military Justice Article 138 provide ample opportunity to any sailor to bring a concern about adverse action to their chain of command's attention. Once informed, each Plaintiff's commodore stood ready to ensure no adverse action be finalized.

6

SEAL 21's Commodore, who is aware of the injunction in this lawsuit and is poised to ensure no adverse action is taken on account of SEAL 21's religious accommodation request.

6.      The Court enjoined Defendants from taking any adverse action against Plaintiffs based on Plaintiffs' requests for religious accommodation; however, Plaintiffs appear to conflate sensible, medically sound risk mitigation measures applicable to all unvaccinated personnel – regardless of the reason for their being unvaccinated – with adverse administrative actions.  To my knowledge, the Navy has not taken any action that would typically be considered an adverse action (e.g., imposition of discipline, processing for administrative separation) or that constitutes adverse administrative action under governing Navy regulations against any Plaintiff.  There are, however, several medically recommended risk-mitigation measures in place for unvaccinated servicemembers.  These include limiting unvaccinated personnel from engaging in trainings where transmission risk is high as referenced by Navy SEALs 12, 13, and 25; additional travel clearance requirements as referenced by Navy SEAL 26; and COVID-19 testing requirements as referenced by Navy Diver 2.

7.      The PI prohibits the application of some risk mitigation measures in NAVADMIN 225/21 and NAVADMIN 256/21, which include among other provisions, prohibition on official travel for unvaccinated personnel.  NSWC commands and personnel, however, are subject to other risk mitigation requirements that have not been enjoined by the Court's order.  For example, the Deputy Secretary of Defense (DEPSECDEF) issued a memo on 24 September 2021 that requires unvaccinated servicemember travel to be limited to "mission critical travel" approved by Department of Defense (DoD) Component Heads.[10]  Commander,

---

[10] The DEPSECDEF Memo includes the following requirement: "Individuals who are not fully vaccinated or who decline to provide information about their vaccination status, are limited to mission-critical official travel, both domestic and international. 'Mission-critical' will be determined by the traveler's DoD or Office of the Secretary of

7

U.S. Special Operations Command (USSOCOM), a combatant commander, who reports directly

to the Secretary of Defense and exercises Combatant Command Authority over NSWC,[11]

implemented this requirement by requiring his personal approval on any waiver for unvaccinated

SOF personnel to deploy or travel based on a determination that it is mission essential to military

operations and outweighs the risks associated with the travel for unvaccinated personnel.[12]

Neither the DEPSECDEF memo nor the SOCOM order were enjoined by the court; they do not

constitute "adverse action" and thus must be followed by all personnel subject to USSOCOM

authority.  ECF 66 at 26.

      8.     To the extent some Plaintiffs believe they are not being treated consistent with

*their understanding* of the terms of the PI, those Plaintiffs may not be properly elevating the

issue to the appropriate members of their chain of command who have executed an NDA

pursuant to the protective order and therefore are aware of the Court's PI.  Furthermore, many

non-adverse administrative actions were taken weeks or months prior to the issuance of the PI.

Plaintiffs seem to confuse these prior administrative actions with the Navy "taking any adverse

action against Plaintiffs" *after* the injunction was issued. ECF 66 at 26.  In fact, once a Navy

administrative action is taken, no Navy command will spontaneously re-open that decision

unless a new request is made or some other circumstance requires re-evaluation.  Our steadfast

---

Defense (OSD) Component head, who may delegate this authority in writing to his or her Principal Deputy (or equivalent) but no lower." DEPSECDEF Memo of 24 Sep 21.

[11] 10 U.S.C. 167; *see also* Joint Chiefs of Staff, *Doctrine for the Armed Forces of the United States,* JP 1 (Washington, DC: Joint Chiefs of Staff, 2017), V-2 – V-6, laying out the extent of the broad Combatant Command Authority, which includes "[n]ontransferable command authority, which cannot be delegated, of a combatant commander to perform those functions of command over assigned forces involving organizing and employing commands and forces; assigning tasks; designating objectives; and giving authoritative direction over all aspects of military operations, joint training, and logistics necessary to accomplish the missions assigned to the command."
[12] Fragmentary Order 33 to USSOCOM Operational Order for Coronavirus Disease (COVID-19) Oct. 6, 2021.  An Operational Order is a tool utilized by Combatant Commands to push orders to subordinate commands.  A Fragmentary Order is a mechanism that a Combatant Command regularly uses to modify previous Operational Orders.

implementation of the injunction was focused on "preserv[ing] the status quo" and not on taking new actions to reverse prior decisions. ECF 66 at 25. If Plaintiffs do not communicate their concerns to their chains of command or request new actions to address their concerns, the chain of command will be unaware and unable to address situations that Plaintiffs perceive as inconsistent with the terms of the PI. In the cases of Navy SEAL 13's removal from a leadership course, Navy SEAL 14's request to attend Officer Candidate School, and Navy SEAL 22's transfer, final action was taken before the injunction was issued and no new request or other driver was acted on by their commands. For Navy SEAL 26, who alleges his command denied him treatment for traumatic brain injury (TBI), his Commanding Officer affirms there has never been any intention to deny him treatment, rather administrative delays led to the treatment facility booking additional patients ahead of him. The command is currently trying to get Navy SEAL 26 treatment as soon as possible, which will require travel to be processed in accordance with the aforementioned DEPSECDEF memo and USSOCOM order.

## Compelling Government Interest in Readiness

9.     The Plaintiffs' characterization of the compelling government interest in ensuring NSW personnel are deployable is misguided. First, the claims that "[n]one of the Plaintiffs are in a group that may be deployed with one day notice," and that "many of them are not in a deployable command," fails to appreciate the dynamic nature of military operations and special operations in particular. ECF 99 at 6. Though deployment cycles generally progress in a planned, rotational fashion, military contingencies may necessitate the immediate deployment of qualified personnel with little-to-no notice. Events requiring short-notice deployments occur regularly and due to the nature of NSW work are inherently a matter of national security (i.e., in response to unexpected or rapidly escalating security situation). In my 27.5 years of naval

9

service, I have personally witnessed several shifts in short-notice deployment requirements across the NSW force in response to world events, including within the past year.  The fact is that our servicemembers currently serving in a training capacity may be called upon at any moment to deploy for matters of the utmost urgency.  In fact, when Operation Enduring Freedom and Operation Iraqi Freedom were ongoing, there was a heavy strain on our NSW force and during that period it was a regular occurrence to pull servicemembers directly from training commands for immediate deployment.  Furthermore, even when not deploying, several of the Plaintiffs are instructors who have close contact with other NSW servicemembers in deploying units, which directly increases the risk of COVID-19 infection to units preparing for deployment.  Moreover, Plaintiffs' characterization entirely ignores the fact that some of the Plaintiffs in this litigation are currently in units that are preparing for deployments in the near future.  The mission of NSW requires constant readiness.  Every servicemember unable to deploy has a direct operational impact on that mission.

10.     In support of their position, the Plaintiffs rely on the opinion of SWCC 4, a Special Warfare Combatant-Craft Crewman Petty Officer First Class with 10 years of experience in the Navy.  SWCC 4's experience, aside from training commands, includes two assignments at Special Boat Teams (SBTs) in Virginia and Mississippi. Although SWCC 4's service in support of the SBTs' missions is valued, his awareness of the broader issues around NSW readiness and the deployment requirements for NSW (and SOCOM, more broadly) lacks perspective and accuracy.  A First-Class Petty Officer in NSW is asked to carry a heavy burden and sacrifice as a part of operations.  But they are also shielded from many of the operational and strategic considerations so that they can focus on tactical mission accomplishment.  I have served in the Navy for 27.5 years, deployed 9 times, and held command at every level.  I have deployed early,

10

seen deployments extended, and experienced rapid acceleration of operational timelines. With this experience, I always emphasize the need for ongoing medical readiness in all of my commands. In addition, though SWCC 4 may not have personally experienced it, every day, someone in the NSW force is onboard Navy ships, submarines, and aircraft, in close contact with the crew and sharing heavily trafficked spaces to include the gym, dining facilities, and workspaces. In fact, it is common for NSW personnel to embark on submarines, where every space is shared and close contact is inevitable. It is simply untrue to say that NSW personnel are segregated from ship's company when they travel onboard a Navy vessel in a way that would prevent COVID-19 transmission. These underway periods can last weeks and involve sharing close quarters for extended periods. Any increase in the likelihood of transmitting a respiratory disease in these conditions can have immediate mission impact to NSW and the Navy overall.

11.    Finally, the Plaintiffs continue to suggest that, based on their prior successful deployments during the pandemic, there is no compelling need that they be vaccinated against COVID-19. The fact that members of the NSW community have continued to accomplish their missions despite the challenges presented by COVID-19 is a testament to the character and fortitude of our personnel, including the Plaintiffs. However, the Plaintiffs fail to appreciate the fact that successful execution of their missions does not mean that COVID-19 had no impact on other missions, their fellow servicemembers, or the military readiness of the NSW force as a whole. Contrary to these assertions, COVID-19 had an immense impact on the entire force and our continued mission accomplishment in the face of COVID-19 took a toll across our force. During the height of COVID-19, we had to conduct 30-day Restrictions on Movement (ROM) periods for our personnel before they could deploy. ROM periods remain an ongoing COVID mitigation measure and extend the time our servicemembers are away from their family, reduces

11

their time in the fight, increases fiscal costs, and undercuts their training cycles. Further, we execute ROM periods when NSW assets embarked on ships, transit national boundaries, operate with partner forces, or have close contact with infected personnel. Every one of these ROM periods exponentially increases the burden on our force for the same mission accomplishment that was possible before COVID-19. Further, though these impacts have lessened over time, they still exist today. ROM requirements continue to extend normal turnover timeframes from 2-3 days to 18 or more. The NSW mission includes operating in the most delicate international environments, and we cannot afford to unnecessarily alienate our partner nations. Currently, many key partner nations have COVID-19 related entry requirements that would preclude or complicate unvaccinated servicemembers entering their country and restrict unvaccinated personnel from joint operations with their forces. For example, "the Government of Kuwait stated that unvaccinated non-Kuwaiti residents over the age of 16 may not travel to Kuwait."[13] NSW commanders of unvaccinated servicemembers regularly have to leave these personnel off of missions because of ship embarkation or country clearance requirements, reducing their operational capabilities; As a Joint Task Force Commander, I personally had to manage risk by restricting unvaccinated personnel from missions. Accordingly, NSW continues to carry out risk mitigation measures for unvaccinated servicemembers that include some of the very same actions that Plaintiffs have complained about in their motion. This includes regular testing, additional verification steps for travel, and verifying medical facilities are prepared to treat unvaccinated individuals before sending them.

---

[13] https://kw.usembassy.gov/covid-19-information/. Austria (https://www.austria.info/en/service-and-facts/coronavirus-information/entry-regulations), Indonesia (https://kemlu.go.id/losangeles/en/news/11727/update-indonesia-travel-restrictions), Turkmenistan (https://tm.usembassy.gov/covid-19-information/), and Ecuador (https://ec.usembassy.gov/covid-19-information-ecu-2/) all have similar restrictions.

App013

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 2nd day of February, 2022.

CHRISTOPHER D. BROWN

Captain, U.S. Navy

13

# Exhibit 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

**U.S. NAVY SEALs 1-26;**
**U.S. NAVY SPECIAL WARFARE**
**COMBATANT CRAFT CREWMEN 1-5;**
**U.S. NAVY EXPLOSIVE ORDNANCE**
**DISPOSAL TECHNICIAN 1; and**
**U.S. NAVY DIVERS 1-3,**
                Plaintiffs,

v.

**LLOYD J. AUSTIN, III,**
in his official capacity as
United States Secretary of Defense; **UNITED**
**STATES DEPARTMENT OF DEFENSE;**
**CARLOS DEL TORO,** in
his official capacity as United States
Secretary of the Navy,
                Defendants.

Case No. 4:21-cv-01236-O

## DECLARATION OF RONALD E. HARRISON
## [with regard to Navy SEAL 13]

I, Ronald E. Harrison, hereby state and declare as follows:

1.     I am a Lieutenant Commander in the United States Navy, currently serving as the

Executive Officer of Special Reconnaissance Team ONE (SRT-1), located in San Diego,

California. I make this declaration in my official capacity, based upon my personal knowledge

and upon information that has been provided to me in the course of my official duties.

2.     I have been assigned to my current position since June 2020. Prior to my current

assignment, I served as the Operations Officer for SRT-1 from June 2018 to May 2020 and

served as the Assistant Officer in Charge, Training Detachment for Naval Special Warfare Group

ONE. Additionally, I have served at SEAL Team FIVE, Naval Special Warfare Center Basic &

1

Advanced Training Commands, as well as SEAL Team THREE, and I have completed 10

overseas, combat deployments to multiple theaters of operation.  As part of my duties currently, I

provide guidance and direction to 11 Departments and Troop personnel comprised of over 425

Sailors, Civilians and Contractors directly responsible for organizational effectiveness.

Additionally, I have primary responsibility over all Command Security matters as well as

Command programs to include all administrative matters pertaining to command functions and

individual sailors.

3.      Navy SEAL 13 is presently assigned as Special Warfare Operator First Class

Petty Officer (E-6) to SRT-1. His duties currently include mustering and conducting

administrative taskers as needed with Special Operation Troop, his department that is responsible

for his day-to-day presence and accountability.

4.      In his declaration, Navy SEAL 13 alleges he was removed from a course,

specifically, the Advanced Special Operations Techniques Course (ASOT-C), as a result of

submitting a request for religious accommodation from the COVID-19 vaccine, and that he has

not been afforded the opportunity to complete the course or resume his position as Lead Petty

Officer (LPO). He alleges that as a result of his removal as LPO he will not be eligible for

promotion to the rank of Chief Petty Officer (E-7), and that he may ultimately be forced to retire

at a lower grade than if he were to promote as he expects.

5.      Navy SEAL 13 was removed from the ASOT-C Course several months before the

issuance of the Court's preliminary injunction due to his unvaccinated status. His request for a

religious accommodation from the COVID-19 vaccine had no bearing on the decision to remove

him from the course, however, the fact that he remained unvaccinated rendered him ineligible to

complete the course. The ASOT-C is an 18 week classified course of instruction based at Fort

2

Bragg, NC and Joint Base Lewis-McChord, WA, and is conducted throughout the continental United States. This course is offered by the U.S. Army, and the policies concerning Service member eligibility to attend the course, to include the requirement to be vaccinated, are not under the purview of the Navy or the NSW community. Navy SEAL 13 began the course on July 26, 2021. On September 7, 2021, I received information via my Operations Officer and Troop Leader that the ASOT-C course had instituted a course wide policy with regards to COVID-19 vaccination status. Navy SEAL 13 informed the command that, under the new policy, any student not vaccinated or without an approved exemption by October 15, 2021 would be disenrolled in the course. The course was scheduled to be completed on November 18, 2021, but as a result of this policy, Navy SEAL 13 was disenrolled from the course of instruction on September 30, 2021. In concert with the Operations Officer and Troop Leader, SRT-1 made the decision to remove Navy SEAL 13 from the course because he would be ineligible for course completion and certification, and thus the cost of the course was no longer fiscally justifiable.

6.    Navy SEAL 13's concerns regarding his potential to promote are speculative. As an initial matter, Navy SEAL 13 submitted his voluntary separation request on December 14, 2021, with an anticipated separation date of March 4, 2022, to coincide with his end of active obligated service (EAOS). He further requested to commence terminal leave in January 2022 through March 2022, to be discharged at his EAOS. Navy SEAL 13's requested separation date was approved, as was his terminal leave, and he commenced terminal leave in January 2022. He has since requested an extension to remain on active duty until May 31, 2022, which was approved. Navy SEAL 13 took the E-7 Navy-wide advancement exam on January 26, 2022. The results of the advancement exam are not released until on or about November 2022. Therefore, Navy SEAL 13 will not even receive the results from the exam or know if he would be selected

3

for promotion prior to his separation. Moreover, the earliest he could be advanced to the next rank is January 2023; well after his elected separation date.

7.      Further, Navy SEAL 13 was not removed from LPO because of his religious exemption request. Navy SEAL 13 is an unvaccinated service member expecting to separate in May 2022. Accordingly, he would not be able to complete a forth coming deployment due to his pending voluntary separation, and because the area of operations to which he would deploy requires that he be vaccinated. Because the primary duties of a unit LPO include preparing the team for its upcoming deployment, the command selected a Service member who will be able to complete the deployment with his unit for the LPO position. This is common practice in the case of a separating Service member, or a Service member who may have deployment restrictions for any reason. Again, this decision was not made because Navy SEAL 13 submitted a religious exemption request.


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 7st day of February, 2022.

R. E. HARRISON
LCDR, U.S. Navy

4

# Exhibit 3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

U.S. NAVY SEALs 1-26;
U.S. NAVY SPECIAL WARFARE
COMBATANT CRAFT CREWMEN 1-5;
U.S. NAVY EXPLOSIVE ORDNANCE
DISPOSAL TECHNICIAN 1; and
U.S. NAVY DIVERS 1-3,
              Plaintiffs,

v.

LLOYD J. AUSTIN, III,
in his official capacity as
United States Secretary of Defense; UNITED
STATES DEPARTMENT OF DEFENSE;
CARLOS DEL TORO, in
his official capacity as United States
Secretary of the Navy,
              Defendants.

Case No. 4:21-cv-01236-O

### DECLARATION OF Lieutenant Commander Forrest S. Crowell
### [with regard to Navy SEAL 14]

I, Forrest S. Crowell, hereby state and declare as follows:

1.     I am a Lieutenant Commander in the United States Navy, currently serving as

Officer In Charge, Naval Special Warfare Group ONE, Training Detachment (TRADET),

located in San Diego, CA. I make this declaration in my official capacity, based upon my

personal knowledge and upon information that has been provided to me in the course of my

official duties.

2.     I have been assigned to my current position since December 2021. Prior to my

current assignment, I served as the Flag Aide to RADM Hugh Howard, Commander, Naval

Special Warfare Command. As part of my current duties, I am responsible to ensure Naval

1

Special Warfare Group ONE's core Unit Level Training for west coast SEAL Teams is conducted effectively, safely, and per the applicable instructions and the Commander's training guidance.

3. Navy SEAL 14 is presently assigned as a Joint Terminal Attack Controller (JTAC) Instructor and Evaluator. His duties include the management, training, support, equipment, and combat readiness of 130 NSW JTACs.

4. In his declaration, Navy SEAL 14 alleges his orders to Officer Candidate School (OCS) were cancelled because he is unvaccinated and because he has a pending religious accommodation request. He further states that he was informed that the SEAL Officer Community Manager would determine if he would be permitted to attend OCS in the future, and that he has not been given orders to OCS following the issuance of the preliminary injunction in this case.

5. Prior to the issuance of the Court's injunction, on December 9, 2021, the branch head for general officer accessions at Navy Recruiting Command advised TRADET via email that SEAL 14's orders to OCS had been cancelled. (Encl. 1). These orders were cancelled by Navy Recruiting Command (NRC) because of Navy SEAL 14's unvaccinated status pursuant to Navy guidance. However, NRC emphasized that this action was a delay and did not revoke Navy SEAL 14's eligibility to attend OCS in the future. Thus, while his acceptance to attend OCS has been delayed pending adjudication of his religious accommodation request, his pending religious accommodation request has no bearing on his eligibility to attend OCS. This action is under the authority of NRC, and the decision to cancel his orders (which does not revoke his eligibility to attend) is due to the fact that he is unvaccinated, not because he has a pending religious accommodation request.

2

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 4th day of February, 2022.

F. S. CROWELL
Lieutenant Commander, U.S. Navy

3

**Bostic, Michael R CPO USN USSOCOM NSW (USA)**

| | |
|---|---|
| **From:** | Scruby, Lucas R LCDR USN USSOCOM NSW (USA) |
| **Sent:** | Thursday, December 16, 2021 1:07 PM |
| **To:** | Pratte, Kevin D LT USN USSOCOM NSW (USA); james.e.barfoot@navy.mil; Scruby, Lucas R LCDR USN DCNO N1 (USA); Dille, Keaton G LT USN DCNO N1 (USA) |
| **Cc:** | Duffield, David A LCDR USN USSOCOM NSW (USA); Crowell, Forrest S LCDR USN USSOCOM NSW (USA); Mangini, Kevin J SCPO USN USSOCOM NSW (USA); Bostic, Michael R CPO USN USSOCOM NSW (USA) |
| **Subject:** | Re: Orders Cancellation ICO ▅▅▅▅▅▅ |
| **Signed By:** | lucas.scruby@socom.mil |

Added my Navy address and Assistant OCM, LT Keaton Dille.

Tracking all.

Very Respectfully,
LCDR Luke Scruby
SEAL OCM / BUPERS-311D
Office: 703 604 5005
SIPR: Lucas.scruby@socom.smil.mil·˙
New NIPR: Lucas.R.Scruby.mil@us.navy.mil

---

**From:** Pratte, Kevin D LT USN USSOCOM NSW (USA)
**Sent:** Friday, December 10, 2021 7:32 PM
**To:** james.e.barfoot@navy.mil
**Cc:** Duffield, David A LCDR USN USSOCOM NSW (USA); Crowell, Forrest S LCDR USN USSOCOM NSW (USA); Mangini, Kevin J SCPO USN USSOCOM NSW (USA); Scruby, Lucas R LCDR USN USSOCOM NSW (USA); Bostic, Michael R CPO USN USSOCOM NSW (USA)
**Subject:** RE: Orders Cancellation ICO ▅▅▅▅▅▅▅

LCDR Barfoot,

Sir, I have taken over for LT Setness and just wanted to confirm receipt and relay that TD-1 is tracking this is not an end to ▅▅▅▅▅▅ OCS orders, but rather a delay based on when his appeal is adjudicated. Standing by for any further questions or concerns and will continue to engage with ▅▅▅▅▅▅.

V/R,

LT Kevin Pratte
NSWG-1 Training Detachment AOIC
VOIP: (619) 537-3449
SVOIP: 577-0775

1

Cell: (623) 628-5745
NIPR: kevin.pratte@socom.mil
SIPR: kevin.pratte@socom.smil.mil

---

**From:** Barfoot, James E LCDR USN (USA) <james.e.barfoot@navy.mil>
**Sent:** Friday, December 10, 2021 9:01 AM
**To:** Kilpatrick, Ian G LCDR USN USSOCOM NSW (USA) <ian.kilpatrick@socom.mil>
**Cc:** Duffield, David A LCDR USN USSOCOM NSW (USA) <david.duffield@socom.mil>; Scruby, Lucas R LCDR USN USSOCOM NSW (USA) <lucas.scruby@socom.mil>; Setness, Taylor B LT USN USSOCOM NSW (USA) <taylor.setness@socom.mil>
**Subject:** RE: Orders Cancellation ICO ▓▓▓▓▓▓▓▓

Ian,

You nailed it; yours was the name on ▓▓▓▓▓▓▓▓ application all the way back when he submitted it in to us so I reached out to you.

For the TD-1 leadership,

The update is that this should be a delay, not an end to ▓▓▓ opportunity. If the request is favorably adjudicated we can proceed with OCS. If it comes back unfavorable, we'll have to see what ▓▓▓ intends to do.

Very Respectfully,
LCDR James Barfoot
Branch Head, General Officer Accessions (N311)
Navy Recruiting Command
901-874-9419 (W)
602-568-5794 (C)
james.e.barfoot@navy.mil

---

**From:** Kilpatrick, Ian G LCDR USN USSOCOM NSW (USA) <ian.kilpatrick@socom.mil>
**Sent:** Friday, December 10, 2021 10:55 AM
**To:** Barfoot, James E LCDR USN (USA) <james.e.barfoot@navy.mil>
**Cc:** Duffield, David A LCDR USN USSOCOM NSW (USA) <david.duffield@socom.mil>; Scruby, Lucas R LCDR USN USSOCOM NSW (USA) <lucas.scruby@socom.mil>; Setness, Taylor B LT USN USSOCOM NSW (USA) <taylor.setness@socom.mil>
**Subject:** RE: Orders Cancellation ICO ▓▓▓▓▓▓▓▓

James,

I may have given you the wrong POCs for ▓▓▓▓▓ command, my apologies. OCM still on CC. TD-1 leadership added in place of Bill. Best.

V/R,
LCDR Ian Kilpatrick

NSW Fellow

2

App025

Johns Hopkins / Applied Physics Laboratory

SIPR | ian.kilpatrick2@socom.mil
UNCL | ian.kilpatrick@jhuapl.edu

---

**From:** Kilpatrick, Ian G LCDR USN USSOCOM NSW (USA)
**Sent:** Friday, December 10, 2021 11:42 AM
**To:** Barfoot, James E LCDR USN (USA) <james.e.barfoot@navy.mil>
**Cc:** Cicchillo, William T LCDR USN USSOCOM NSW (USA) <william.cicchillo@socom.mil>; Scruby, Lucas R LCDR USN USSOCOM NSW (USA) <Lucas.Scruby@socom.mil>
**Subject:** RE: Orders Cancellation ICO ▓▓▓▓▓▓▓▓

James,

I believe you must have gotten my contact as the XO for ST-3. I have turned over that position to LCDR Bill Cicchillo, CC'd here. I have also CC'd our OCM, LCDR Lucas Scruby.

I am sorry to hear that ▓▓▓▓▓ orders were cancelled. The navy has always made an effort to support the free exercise of sailors' individual religious beliefs and he was selected based on the community's belief in his leadership and potential as a naval officer. Hopefully, working with his current XO and our OCM this can be resolved and he is able to attend at future date after his request has been adjudicated. Thank you for your efforts to pursue the right course of action in coordination with the OCM.

Thank you for reaching out to me. Please let me know if you have any issues reaching the individuals CC'd or if I can be of any further assistance.

V/R,
LCDR Ian Kilpatrick

NSW Fellow
Johns Hopkins / Applied Physics Laboratory

SIPR | ian.kilpatrick2@socom.mil
UNCL | ian.kilpatrick@jhuapl.edu

---

**From:** Barfoot, James E LCDR USN (USA) <james.e.barfoot@navy.mil>
**Sent:** Thursday, December 9, 2021 5:30 PM
**To:** Kilpatrick, Ian G LCDR USN USSOCOM NSW (USA) <ian.kilpatrick@socom.mil>
**Subject:** Orders Cancellation ICO ▓▓▓▓▓▓▓

LCDR Kilpatrick,

I wanted to let you know that NRC had to place a cancellation on orders for ▓▓▓▓▓▓▓▓▓ today.  We reached out to him earlier this week to pass information regarding OCS arrival times and check vaccination status so that we can assist OTCN with some logistics related to inbound students – all routine reports. ▓▓▓▓▓▓▓ informed us that he was not vaccinated and that he has a religious accommodation pending adjudication. Unfortunately, I cannot send ▓▓▓ ▓▓▓▓▓ to OCS in that status.

We will be coordinating with the Special Warfare OCM to determine the path forward. Ultimately the OCM will decide if we send an alternate to OCS or if we delay until resolution of the religious accommodation process. As I get more information I will pass it to you, but I did not want to delay letting you know about the cancellation.

3

Very Respectfully,
LCDR James Barfoot
Branch Head, General Officer Accessions (N311)
Navy Recruiting Command
901-874-9419 (W)
602-568-5794 (C)
james.e.barfoot@navy.mil

4

# Exhibit 4

App028

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**

---

**U.S. NAVY SEALs 1-26;**
**U.S. NAVY SPECIAL WARFARE**
**COMBATANT CRAFT CREWMEN 1-5;**
**U.S. NAVY EXPLOSIVE ORDNANCE**
**DISPOSAL TECHNICIAN 1; and**
**U.S. NAVY DIVERS 1-3**,

                    Plaintiffs,

v.

**LLOYD J. AUSTIN, III**,
in his official capacity as
United States Secretary of Defense; **UNITED**
**STATES DEPARTMENT OF DEFENSE**;
**CARLOS DEL TORO**, individually and in
his official capacity as United States
Secretary of the Navy,

                    Defendants.

---

Case No. 4:21-cv-01236-O

---

**DECLARATION OF ANDREW SPARKS**
**[with regard to Navy SEAL 21]**

I, Andrew Sparks, hereby state and declare as follows:

      1.     I am a Commander in the United States Navy, currently serving as Commanding

Officer, SEAL Team FIVE, located in San Diego, California.  I make this declaration in my

official capacity, based upon my personal knowledge and upon information that has been

provided to me in the course of my official duties.

      2.     I have been assigned to my current position since May 2021.  Prior to my current

assignment, I served as an unrestricted line officer throughout every level of command at

operational, deployed and shore-based commands within Naval Special Warfare and the U.S.

Special Operations Community.  As part of my duties as commanding officer, I am overall

1

responsible for all aspects of SEAL team operations including training, manning, equipping and leading personnel ready to execute national tasking.

3.    Navy SEAL 21 is presently assigned as member of the Operations Department at SEAL Team FIVE. His duties include assisting the operations master chief in facilitating the day to day operations at the command, to include scheduling and execution of training events for certification of the SEAL Team during the inter-deployment training cycle. He also performs associated administrative duties common to the function of any headquarters department within a SEAL Team.

4.    In his declaration, Navy SEAL 21 alleges he has been kicked out of his platoon, directed to return military equipment necessary for training, and reassigned to administrative duties rather than permitted to participate in training. Navy SEAL 21 states that he will be unable to deploy with his Team if he is not permitted to train with the Team. He further states he was initially informed he was ineligible to take the January 2022 Chief Petty Officer exam, but was ultimately permitted to take the exam. He alleges his exam included a statement that he is ineligible to promote, and that he has not been permitted to see his performance evaluation from last year. Finally, Navy SEAL 21 claims he and Navy SEAL 25 were directed to clean up trash around the base.

5.    Navy SEAL 21 was removed from his platoon in October 2021, and has been temporarily reassigned to the operations department within SEAL Team FIVE.  Navy SEAL 21's former platoon was and is currently in the midst of the inter-deployment training cycle.  The majority of training events and evolutions require the platoon members to travel on temporary duty assignment (TDY) out of the permanent duty station area.  Each time an unvaccinated member is to travel outside the area, regardless of exemption status, current policy requires

2

Commander, U.S. SOCOM (Component Commander) to approve of the mission-critical nature

of having that person travel.[1]  Both the operational and mission readiness impact necessary to

mitigate COVID risk presented by unvaccinated individuals, in addition to the necessity to obtain

a four-star General Officer's permission for each unvaccinated individual to travel, is

administratively burdensome and degrades operational readiness and mission accomplishment, in

addition to the risk that the unvaccinated individual will contract COVID-19 and potentially

transmit it to other team members.

6.     Navy policy permits the temporary reassignment of unvaccinated members,

regardless of exemption status, from their duties due to operational or mission readiness.  Prior to

the injunction issued in this case, this policy applied to Navy SEAL 21 and was implemented

accordingly. All SEAL servicemembers must be fully ready to operate in austere environments,

often without ready access to medical facilities, working in close quarters where social

distancing is not possible, and working in small teams where contraction of COVID-19 would

adversely impact training outcomes and overall mission readiness.  Navy SEAL 21 was

temporarily reassigned from an operational duty position and was required to conduct an

inventory of equipment he would normally be required to complete for a platoon readying itself

for overseas deployment.  None of these actions were taken because Navy SEAL 21 has

submitted a religious exemption request.  Rather, these assignment decisions were made because

Navy SEAL 21 is unvaccinated and his unvaccinated status prevents him from performing many

duties necessary for him to effectively train with his platoon for the platoon's upcoming

---

[1] Deputy Secretary of Defense Memorandum, *Updated Coronavirus Disease 2019 Guidance Related to Travel and Meetings* (Sep. 24, 2021), provides that individuals who are not fully vaccinated, or who decline to provide information about their vaccination status, are limited to mission-critical official travel, both domestic and international. In accordance with Commander, U.S. Special Operations Command (CDRUSSOCOM) *Fragmentary Order 33 to Operation Order for Coronavirus Disease 2019* (Oct. 6, 2021), CDRUSSOCOM is the approval authority for mission critical travel by individuals who are not fully vaccinated.

3

deployment.  Navy SEAL platoons train together for months prior to deployment.  This is essential to building the cohesion within the unit that leads to an effective fighting force.  Having a SEAL go in and out of the unit, or only available to attend certain training evolutions—for any reason—undermines unit cohesion.   Accordingly, any SEAL who had similar restrictions on his ability to train with his platoon for an upcoming deployment would have to be reassigned.

7.      The Command Career Counselor (CCC) was initially mistaken as to the distinction between those unvaccinated personnel who were pending religious accommodation adjudication and those refusing the vaccine without a pending exemption request. Navy SEAL 21 is correct in that he is not a "refuser" because, although unvaccinated, he is still pending a final decision on his religious accommodation request pertaining to the COVID-19 vaccine. However, the CCC took steps to gain clarification and obtained the correct guidance which permitted Navy SEAL 21 to take the Chief Petty Officer's Exam, as requested.

8.      Navy SEAL 21 asserts that when he returned from leave on January 24, 2022, he learned that others (not himself) had been required to stand night watches and execute tasks around the command.  The night watches that had been assigned to his shipmates were an operational security and physical security requirement vital to the command at that time. Specifically, the watch was directed to monitor weapons that were awaiting shipment to other command members because a weapons pallet shipment did not make it onto a plane with the corresponding platoon personnel to whom the weapons had been issued.  The weapons remained at an airfield and the watch-standers were required to ensure accountability and custody of these military weapons. This is a type of requirement that is routinely supported by the SEAL Team headquarters staff, including operations department personnel, who are available to support emergent operational or administrative requirements for platoons away on training assignments

4

or deployed.  Additionally, maintenance of SEAL Team buildings, facilities and equipment is an all-hands responsibility.  Any member of the command, from junior to senior, is expected to be accountable and take pride in the military smartness and cleanliness of our facilities.  Members of the operations department, and any department personnel with time and availability, are routinely tasked with cleaning and maintaining SEAL Team buildings and facilities.

9.     Regarding Navy SEAL 21's evaluation report, he received a positive performance evaluation across the board and his evaluation report was in no way adverse.  Per Bureau of Naval Personnel Instruction 1610.10E, *Navy Performance Evaluation System* (Dec. 6, 2019), if the Service member is not expected to return to or visit the command within 15 days and the report is not adverse, the reporting senior may enter "Certified Copy Provided" in the member's signature block and submit the report to Navy Personnel Command. See BUPERSINST 1610.E §14-4.a.  In this case, the reporting period ended on 15 November 2021.  Navy SEAL 21 was on leave, weekend liberty, special liberty, and continually out of office for 15 days, from 12 November to 30 November 2021.  The report was forwarded to Navy Personnel Command on 8 January 2022.  Once properly uploaded by NPC it will be electronically available and accessible to the member by utilizing Common Access Card log in at the Bureau of Naval Personnel Online website (bol.navy.mil) under the Official Military Personnel File application.  A hard copy will be immediately made available to him, along with a supervising member of his chain of command to discuss any of questions he may have.

App033

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 7th day of February, 2022.

SPARKS.ANDREW.  Digitally signed by
HARRISON         SPARKS.ANDREW.HARRISON.
                 Date: 2022.02.07 18:57:09 -08'00'

A.  H. SPARKS
Commander, U.S. Navy

6

# Exhibit 5

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

**U.S. NAVY SEALs 1-26;**
**U.S. NAVY SPECIAL WARFARE**
**COMBATANT CRAFT CREWMEN 1-5;**
**U.S. NAVY EXPLOSIVE ORDNANCE**
**DISPOSAL TECHNICIAN 1; and**
**U.S. NAVY DIVERS 1-3**,

                Plaintiffs,

v.

**LLOYD J. AUSTIN, III**,
in his official capacity as
United States Secretary of Defense; **UNITED**
**STATES DEPARTMENT OF DEFENSE**;
**CARLOS DEL TORO**, in
his official capacity as United States
Secretary of the Navy,

                Defendants.

Case No. 4:21-cv-01236-O

## DECLARATION OF LIEUTENANT COMMANDER FORREST S. CROWELL
### [with regard to Navy SEAL 22]

I, Forrest S. Crowell, hereby state and declare as follows:

      1.      I am a Lieutenant Commander in the United States Navy, currently serving as

Officer In Charge, Naval Special Warfare Group ONE, Training Detachment (TRADET),

located in San Diego, CA.  I make this declaration in my official capacity, based upon my

personal knowledge and upon information that has been provided to me in the course of my

official duties.

      2.      I have been assigned to my current position since December 2021.  Prior to my

current assignment, I served as the Flag Aide to RADM Hugh Howard, Commander, Naval

Special Warfare Command. As part of my current duties, I am responsible to ensure Naval

1

Special Warfare Group ONE's core Unit Level Training for west coast SEAL Teams is conducted effectively, safely, and per the applicable instructions and the Commander's training guidance.

3.      Navy SEAL 22 is presently assigned as Air Operations Chief Petty Officer. His duties include training Naval Special Warfare troops in military free-fall Air Operations current tactics, techniques, and procedures. Member is currently teleworking.

4.      In his declaration, Navy SEAL 22 alleges he was "supposed to transfer from a training detachment to a SEAL Team for a milestone position as a platoon chief" in October 2021, and he claims that he has not been permitted to transfer due to his pending religious accommodation. He states that since the preliminary injunction was issued he was removed from the milestone position and not permitted to transfer to another command. Navy SEAL 22 states this will have an impact on his career progression and promotion potential. He further states he was not permitted to attend a training course with other members of his training cell.

5.      Navy SEAL 22's orders to serve at SEAL Team SEVEN as a Platoon Leading Chief Petty Officer were cancelled on October 21, 2021, in accordance with Navy guidance allowing service member reassignments for operational readiness or mission requirements based on unvaccinated status, regardless of exemption status. This determination was made before the issuance of the preliminary injunction in this case. No subsequent actions have been taken against SEAL 22 with regard to his transfer.  His pending religious accommodation has no bearing on his eligibility to be reassigned, however, his vaccination status does.  This does not preclude Navy SEAL 22's ability to complete a career milestone tour in the future.

6.      The October 2021 decision to cancel Navy SEAL 22's orders served operational and mission readiness purposes. Because he is unvaccinated, he was not permitted to execute

2

orders to SEAL Team SEVEN, an operational and deploying sea duty command.  The prospective position at SEAL Team SEVEN for Navy SEAL 22 involves responsibilities with a SEAL platoon that was (and still is) in the midst of the inter-deployment training cycle.  The majority of training events and evolutions require the platoon members to travel out of the permanent duty station area.  Current policy requires Commander, U.S. Special Operations Command (SOCOM), a four-star general responsible for the entire U.S. special operations enterprise, to approve travel for unvaccinated personnel based on an assessment that the individual's travel is mission-critical to operations and cannot be conducted by anyone other than the identified traveler.[1] (Encl 1).  Both the operational impact and mission readiness requirements necessary to mitigate COVID risk presented by unvaccinated individuals, in addition to the necessity to obtain a four-star General Officer's permission for each unvaccinated individual to travel, is administratively burdensome and degrades operational readiness and mission accomplishment, in addition to the risk that the unvaccinated individual will contract COVID-19 and potentially transmit it to other team members.

      7.     SEAL 22 also alleges that on January 28, 2022, he was told by his command that he would not be permitted to attend a training course along with other members of his training cell due to his pending RA request.  While the preliminary injunction prohibits the application of NAVDMIN 225/21 and NADAMIN 256/21 to Navy SEAL 22, to include risk mitigation measures within those policies (such as a prohibition on travel for unvaccinated personnel), there are other policies which limit the authority for Navy SEAL 22 to perform official travel.

---

[1] Deputy Secretary of Defense Memorandum, *Updated Coronavirus Disease 2019 Guidance Related to Travel and Meetings* (Sep. 24, 2021), provides that individuals who are not fully vaccinated, or who decline to provide information about their vaccination status, are limited to mission-critical official travel, both domestic and international. In accordance with Commander, U.S. Special Operations Command (CDRUSSOCOM) *Fragmentary Order 33 to Operation Order for Coronavirus Disease 2019* (Oct. 6, 2021), CDRUSSOCOM is the approval authority for mission critical travel by individuals who are not fully vaccinated.

3

Specifically, the requirement Commander, U.S. SOCOM personally review and approve any waiver for unvaccinated special operation personnel to deploy or travel, based on the determination that the travel is mission critical.  The training opportunity to attend Flight One Canopy Course of Instruction, the course referenced by Navy SEAL 22, was not mission critical and could be conducted by other personnel.  As such, in accordance with SOCOM guidance, Navy SEAL 22's travel to the training was denied.  This action was taken based on Navy SEAL 22's unvaccinated status and not based in any way on his religious accommodation request.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 7th day of February, 2022.

CROWELL.FORRE
ST.STEWART ▮▮▮▮
▮▮▮▮
Digitally signed by
CROWELL.FORREST.STEWAR
T▮▮▮▮
Date: 2022.02.07 19:04:06 -08'00'

F.S. CROWELL
LCDR, U.S. Navy

App039

# Crowell Declaration

# Exhibit 1

UNCLAS

RAAUZATZ RUIEAAA4476 2791226-UUUU--RUIEAAA.
ZNR UUUUU ZDH
R 061221Z OCT 21

FM USSOCOM J3 OPERATIONS DIRECTORATE MACDILL AFB FL//J3//

TO RUIKAAA/COMJSOC FT BRAGG NC RUIKAAA/CDR JSOC FT BRAGG NC RUIKAAA/CSG JSOC FT BRAGG
NC RUIKAAA/JSOC AMHSADMIN SIPR FT BRAGG NC RUIAAAA/CDR USASOC FT BRAGG NC RUIAAAA/CDR
USASOC COMMAND CENTER FT BRAGG NC RUIAAAA/CDR USASOC MESSAGE CENTER FT BRAGG NC
RUIEAAA/AFSOC HURLBURT FLD FL RUIEAAA/HQ AFSOC HURLBURT FLD FL RUIEAAA/HQ AFSOC CC
HURLBURT FLD FL RUIEAAA/HQ AFSOC A3 HURLBURT FLD FL RUIEAAA/HQ AFSOC SDO HURLBURT FLD FL
RUIEAAA/COMNAVSPECWARCOM CORONADO CA RUIEAAA/COMMARFORSOC
RUIEAAA/COMMARFORSOC G THREE RUICAAA/COMSOCPAC HONOLULU HI RUICAAA/COMSOCPAC
SOJ0 RUICAAA/COMSOCPAC SOJ1 RUICAAA/COMSOCPAC SOJ3 RUIEAAA/CDR USFK SOCKOR SEOUL KOR
RUIEAAA/COMSOCKOR SEOUL KOR RUIEAAA/COMSOCKOR SOJ3 SEOUL KOR RUIPAAA/CDR SOCCENT
MACDILL AFB FL RUIPAAA/COMSOCCENT MACDILL AFB FL RUIPAAA/COMSOCCENT COS-DCO MACDILL
AFB FL RUIPAAA/COMSOCCENT CCSO MACDILL AFB FL RUIPAAA/COMSOCCENT J3 MACDILL AFB FL
RUIPAAA/COMSOCEUR VAIHINGEN GE RUIPAAA/COMSOCEUR J3 OPS DIRECTORATE VAIHINGEN GE
RUIPAAA/COMSOCAFRICA STUTTGART GE RUIPAAA/SOCAFRICA STUTTGART GE
RUIEAAA/COMSOCSOUTH RUIEAAA/SOCNORTH CMD PETERSON AFB CO RUIEAAA/SOCNORTH
PETERSON AFB CO RUIEAAA/SOCNORTH J3 PETERSON AFB CO

INFO RUEKJCS/JOINT STAFF J3 DEP-DIR GLOBAL OPS WASHINGTON DC RUEKJCS/JOINT STAFF J3 DEP-DIR
REGIONAL OPS WASHINGTON DC RUEKJCS/JOINT STAFF J3 DEP-DIR SPECIAL OPS WASHINGTON DC
RUIEAAA/CDR USSOCOM MACDILL AFB FL RUIEAAA/USSOCOM GMSC MACDILL AFB FL RUIEAAA/HQ
USSOCOM CMD CTR MACDILL AFB FL RUIEAAA/USSOCOM J3 OPERATIONS DIRECTORATE MACDILL AFB
FL RUIEAAA/USSOCOM WO WASHINGTON DC

BT
UNCLAS

SUBJ/FRAGO 33 TO USSOCOM OPORD FOR CORONAVIRUS DISEASE (COVID-19)
MSGID/ORDER/CDRUSSOCOM MACDILL AFB FL/OCT 2021//

REF/A/GENADMIN/USSOCOM GMSC MACDILL AFB FL/281539Z FEB 2020/-/NOTAL//
REF/B/USSOCOM MEMORANDUM/05 MARCH 2020//
REF/C/GENADMIN/USSOCOM J3/071444Z APR 20/-/NOTAL/EXPIRED//
REF/D/DOC/CJCSI 3401.02B/31 MAY 2011//
REF/E/MEMO/SECDEF/02 APRIL 2020//
REF/F/ORDER/JOINT STAFF J3/012240Z FEB 20/-/-//
REF/G/DOC/USNORTHCOM/15 OCT 2013//
REF/H/GENADMIN/JOINT STAFF J3/242003Z APR 20/-/-//
REF/I/DOC/10 U.S.C. SECTION 2601//
REF/J/DOC/DOD/DOD FINANCIAL MANAGEMENT REGULATIONS CHAPTER 30//
REF/K/DOC/DEPSECDEF/05 MAY 2020//
REF/L/DOC/USSOCOM/USSOCOM DIRECTIVE 37-10//

REF/M/DOC/USD PERSONNEL AND READINESS/26 MAY 2020//
REF/N/DOC/SECDEF/26 MAY 2020//
REF/O/DOC/SECDEF/2 APRIL 2020//
REF/P/DOC/USD PERSONNEL AND READINESS/07 APRIL 2020//
REF/Q/DOC/USD PERSONNEL AND READINESS/11 JUNE 2020//
REF/R/ORDER/CDRUSAFRICOM/101255Z JUL 20/-/NOTAL//
REF/S/ORDER/HQUSCENTCOM/151501Z JUL 20/-/NOTAL//
REF/T/ORDER/CDRUSTRANSCOM/222308Z JUL 20/-/NOTAL//
REF/U/ORDER/CDRUSAFRICOM/311040Z JUL 20/-/NOTAL//
REF/V/ORDER/USTRANSCOM/172112Z JUL 20/-/NOTAL//
REF/W/ORDER/HQUSCENTCOM/141348Z AUG 20/-/NOTAL//
REF/X/DOC/DOD/01 AUG 2020//
REF/Y/MEMO/SECDEF/04 FEB 2021//
REF/Z/GENADMIN/USSOCOM/012155Z FEB 2021/-/NOTAL//
REF/AA/DOC/SECDEF/15 MAR 2021//
REF/BB/DOC/USD PERSONNEL AND READINESS FHP (SUPP 14)/29 DEC 2020/REPLACED BY REF KK//
REF/CC/DOC/USD PERSONNEL AND READINESS FHP (SUPP 15 REV 1)/15 MAR 2021//
REF/DD/DOC/USD PERSONNEL AND READINESS FHP (SUP 16)/16 MAR 2021/RESCINDED REPLACED BY
REF JJ//
REF/EE/DOC/USD PERSONNEL AND READINESS/17 MAR 2021//
REF/FF/DOC/DEPSECDEF/07 DEC 2021//
REF/GG/PLAN/CVTF/MARCH 2021//
REF/HH/DOC/USD PERSONNEL AND READINESS FHP (SUPP 17)/17 MAR 2021//
REF/II/DOC/USD PERSONNEL AND READINESS FHP (SUPP 18)/17 MAR 2021//
REF/JJ/DOC/USD PERSONNEL AND READINESS FHP (SUPP 16 REV 1)/04 MAY 2021//
REF/KK/DOC/USD PERSONNEL AND READINESS FHP GUIDANCE (SUPP 20)/12 APR 2021//


NARR/(U)
REF A IS A MESSAGE TO ALL COMPONENT COMMANDS, JSOC, TSOCS, AND DEPLOYED SOJTF HQS
ADDING A NEW CCIR (#36) REPORTING REQUIREMENT FOR THE CORONA VIRUS REPORTING.
REF B IS USSOCOM GENERAL GUIDANCE FOR COVID 19.
REF C IS A USSOCOM MESSAGE DIRECTING THE SUSPENSION OF ALL JCET EVENTS USING CONUS-BASED
FORCES WITH A START DATE FROM 13 MARCH TO 30 JUNE 2020.
REF D IS CHAIRMAN JOINT CHIEFS OF STAFF INSTRUCTION,FORCE READINESS REPORTING.
REF E IS SECDEF MEMO MODIFICATION AND REISSUANCE OF DOD RESPONSE TO
COVID-19 TRAVEL RESTRICTIONS.
REF F IS JOINT STAFF J3 DEP-REGIONAL OPS, DOD RESPONSE TO NOVEL CORONAVIRUS EXORD.
REF G IS DOD'S GLOBAL CAMPAIGN PLAN FOR PANDEMIC INFLUENZA AND INFECTIOUS DISEASES.
REF H IS JOINT STAFF J3 DEP DIR REGIONAL OPS MESSAGE, GLOBAL FORCE MANAGEMENT ACTIVITIES.
REF I IS 10 USC SECTION 2601.
REF J IS DOD FINANCIAL MANAGEMENT REGULATIONS CHAPTER 30.
REF K IS DEPSECDEF MEMO, OFFERS OF DONATION TO THE DOD IN SUPPORT OF THE CORONAVIRUS
DISEASE 2019 RESPONSE.
REF L IS USSOCOM DIRECTIVE 37-10.
REF M IS FHP GUIDANCE SUPPLEMENT 9.
REF N IS SUPPLEMENT AND CLARIFICATION TO DELEGATION OF AUTHORITY FOR PASSENGER, CARGO,
AND PATIENT MOVEMENT.

REF O IS SECDEF MEMO FOR DELEGATION OF AUTHORITY FOR PASSENGER, CARGO, AND PATIENT MOVEMENT DURING COVID-19 PUBLIC HEALTH EMERGENCY.

REF P IS FHP GUIDANCE SUPPLEMENT 5- DOD GUIDANCE FOR MOVEMENT AND MEDICAL TREATMENT OF COVID-19 PATIENTS.

REF Q IS FHP GUIDANCE SUPPLEMENT 11.

REF R IS USAFRICOM GUIDANCE FOR MILITARY, CIVILIANS, CONTRACTORS, AND FOREIGN PARTNERS TO CONDUCT A 14 DAY RESTRICTION OF MOVEMENT AT POE.

REF S IS USCENTCOM GUIDANCE FOR ALL SERVICE MEMBERS, CIVILIANS, AND CONTRACTORS DEPLOYING TO USCENTCOM AOR TO CONDUCT MANDATORY 14 DAY RESTRICTION OF MOVEMENT PRIOR TO DEPLOYMENT.

REF T IS TRANSCOM GUIDANCE FOR HEIGHTENED TRAVELER HEALTH SCREENING AT GLOBAL AIR TERMINALS AND DESIGNATION OF SENIOR TROOP COMMANDER ON PASSENGER FLIGHTS.

REF U IS USAFRICOM GUIDANCE FOR NEW REQUIREMENT FOR 14 DAY RESTRICTION OF MOVEMENT (ROM).

REF V IS USTRANSCOM GUIDANCE TO JOINT FORCE FOR COVID-19 POSITIVE PASSENGERS TRANSPORTED ON USTRANSCOM AIRLIFT.

REF W IS USCENTCOM EXORD COVID-19 ENVIRONMENT OPERATIONS MOD 002 THAT UPDATES CENTCOM TRAVEL GUIDANCE ADDING SPECIFIC CONTRACTOR TRAVEL GUIDANCE.

REF X IS DOD MANUAL 6440.02.

REF Y IS SECDEF MEMO TO DOD PROVIDING GUIDANCE FOR USE OF MASKS AND OTHER PUBLIC HEALTH MEASURES.

REF Z UPDATED USSOCOM COMMANDER'S CRITICAL INFORMATION REQUIREMENTS.

REF AA IS SECDEF MEMORANDUM TITLES "UPDATED TO CONDITIONS BASED APPROACH TO PERSONNEL TRAVEL AND MOVEMENT.

REF BB IS FHP GUIDANCE SUPPLEMENT 14.

REF CC IS FHP GUIDANCE SUPPLEMENT 15.

REF DD (RESCINDED) IS FHP GUIDANCE SUPPLEMENT 16.

REF EE IS MEMORANDUM FROM THE UNDER SECRETARY OF DEFENSE FOR PERSONNEL AND READINESS.

REF FF IS DEPSECDEF MEMORANDUM PROVIDING COVID VACCINE GUIDANCE.

REF GG IS DOD CVTF COVID VACCINE PLAN REVISION 1.

REF HH IS FHP GUIDANCE SUPPLEMENT 17 THAT SUPPLEMENTS THE 4 FEB SECDEF MEMO ON "USE OF MASKS AND OTHER PUBLIC HEALTH MEASURES" WITH ADDITIONAL WEBSITES FORM CDC.

REF II IS FHP GUIDANCE SUPPLEMENT 18 THAT ADDS OSHA GUIDANCE IF COVID IS DUE TO EXPOSURE IN THE WORKPLACE.

REF JJ IS FHP GUIDANCE SUPPLEMENT 16 REVISION 1 - DEPARTMENT OF DEFENSE GUIDANCE FOR DEPLOYMENT AND REDEPLOYMENT OF INDIVIDUALS AND UNITS DURING THE CORONAVIRUS DISEASE 2019 PANDEMIC.

REF KK IS FHP GUIDANCE SUPPLEMENT 20 - DEPARTMENT OF DEFENSE GUIDANCE FOR PERSONNEL TRAVELING DURING THE CORONAVIRUS DISEASE 2019 PANDEMIC.

REF LL IS SECDEF MEMORANDUM DIRECTING MANDATORY CORONAVIRUS DISEASE 2019 VACCINATION OF DEPARTMENT OF DEFENSE SERVICE MEMBERS.

REF MM IS FHP GUIDANCE SUPPLEMENT 23-DEPARTMENT OF DEFENSE GUIDANCE FOR COVID 2019 VACCINATION ATTESTATION AND SCREENING TESTING FOR UNVACCINATED PERSONNEL.

REF NN DEPSECDEF MEMO UPDATES WEAR OF MASK REQUIREMENTS BASED ON HPCON LEVELS.

REF OO UPDATES MASK WEAR REQUIREMENTS BY LOCATIONS AND VACCINATION STATUS.

REF PP DEPSECDEF MEMO UPDATED GUIDANCE RELATED TO TRAVEL AND MEETINGS RESTRICTIONS FOR UNVACCINATED INDIVIDUALS.

REF QQ DEPSECDEF MEMO MANDATING COVID-19 VACCINATION OF DOD CIVILIAN EMPLOYEES.//

ORDTYP/FRAGO/USSOCOM 042029Z MAR 2020//
TIMEZONE/Z//
NARR/(U) FRAGO 33 TO USSOCOM OPORD FOR NOVEL CORONA VIRUS 2019 nCoV (COVID-19). THIS
FRAGO PROVIDES UPDATED VACCINATION REPORTING, UPDATED GUIDANCE FOR MANDATORY
VACCINATION, UPDATED HRP WAIVER REQUIREMENTS, UPDATED TRAVELS / MEETINGS GUIDANCE,
AND RESTRICTIONS FOR UNVACCINATED INDIVIDUALS.//

GENTEXT/SITUATION/
1. (U) (NO CHANGE)//
GENTEXT/MISSION/
2. (U) (NO CHANGE)//
GENTEXT/EXECUTION/
3. (U) (NO CHANGE)
4. (U) (NO CHANGE)
5. (U) (NO CHANGE)
6. (U) (NO CHANGE)
7. (U) (NO CHANGE)//
GENTEXT/ADMIN AND LOG/
8. (U) (CHANGE) COMMAND SURGEON.
8.A. (U) USSOCOM WILL FOLLOW COVID-19 GUIDELINES AS ISSUED BY THE CENTERS FOR DISEASE
CONTROL AND PREVENTION (CDC), UNTIL OTHERWISE DIRECTED, FOR ACTIVITIES RELATED TO THE
IDENTIFICATION, TESTING, ISOLATION, AND QUARANTINE.
8.B. (U) ALL USSOCOM PERSONNEL SHOULD PRACTICE NON-PHARMACEUTICAL
INTERVENTIONS: STAY HOME IF FEELING ILL, COUGH HYGIENE, HANDWASHING, AND DISINFECTION OF
SHARED AREAS TO THE MAXIMUM EXTENT POSSIBLE.
8.C. (U) ALL SOCOM MEDICAL PRACTITIONERS MUST BE FAMILIAR WITH DOD
COVID-19 PRACTICE MANAGEMENT GUIDE AND JOINT TRAUMA SYSTEM MANAGEMENT OF COVID-19
IN AUSTERE OPERATIONAL ENVIRONMENTS CLINICAL PRACTICE GUIDELINES AT:
HTTPS://JTS.AMEDD.ARMY.MIL/INDEX.CFM/PI_CPGS/CPGS.
GUIDANCE IS AIMEDAT ROLE 1 AND ROLE 2 AUSTERE, RESOURCE-LIMITED ENVIRONMENTS, WITH CLASS
VIII CONSIDERATIONS, PARTICULARLY OXYGEN, VENTILATORS,MEDICATIONS, AND PERSONNEL
PROTECTIVE EQUIPMENT (PPE).
MEDICAL EVACUATION SHOULD BE CONSIDERED EARLY FOR PERSONS UNDER INVESTIGATION (PUI),
GIVEN THE GLOBAL NATURE OF THE CRISIS, LOCKDOWN OF SOVEREIGN AIRSPACES, NEED TO LIMIT
IMPACT TO MILITARY AIR ASSETS, AND RAPID CLINICAL DETERIORATION. AUSTERE COVID-19 TESTING
SHOULD NOT PRECLUDE PLANNING DUE TO LIMITED AVAILABILITY AND DELAYS ASSOCIATED WITH
RECEIPT OF RESULTS. USE OF TELEMEDICINE TO MINIMIZE EXPOSURE AND TO PUSH CRITICAL CARE
EXPERTISE AS FAR FORWARD AS POSSIBLE SHOULD BE PART OF THE OPERATIONAL PLAN. ALL SOCOM
MEDICAL PRACTITIONERS MUST BE FAMILIAR WITH LIMITATIONS ASSOCIATED WITH PRE-HOSPITAL
VENTILATORS (PARTICULARLY LACK OF POSITIVE END EXPIRATORY PRESSURE, PEEP) AND ASSURE
ASSOCIATED ADEQUATE SUPPLY OF MEDICATIONS, EQUIPMENT FOR PROLONGED INTUBATION, IF
NECESSITATED.
ADDITIONALLY, EARLY MONITORING WITH PULSE OXIMETRY IS RECOMMENDED TO ASSESS FOR
COMPENSATED, UNRECOGNIZED HYPOXEMIA.
9. (U) (NO CHANGE)
10. (U) (NO CHANGE)

11. (U) (NO CHANGE)

12. (U) (CHANGE) HIGHER RISK PERSONNEL (HRP). HRP ACCOUNTABILITY IS A CDRUSSOCOM HIGH INTEREST ITEM. PERSONNEL WITH AN INCREASED RISK OF A SEVERE CASE OF COVID-19 HAVE THE POTENTIAL TO BURDEN ALREADY LIMITED MEDICAL AND EVACUATION RESOURCES ACROSS THE DOD. TO MAINTAIN PRIVACY, INDIVIDUALS WILL NOT BE REQUIRED TO SPECIFY THEIR SPECIFIC MEDICAL CONDITION.

12.A (U) HRP INDIVIDUALS ARE THOSE INDIVIDUALS WHO ARE MORE LIKELY TO BECOME SEVERELY ILL FROM COVID-19 DUE TO ANY OF THE FOLLOWING MEDICAL

CONDITIONS: CANCER, CHRONIC KIDNEY DISEASE, CHRONIC LUNG DISEASE, COPD, ASTHMA (MODERATE TO SEVERE), INTERSTITIAL LUNG DISEASE, CYSTIC FIBROSIS, PULMONARY HYPERTENSION, DEMENTIA OR OTHER NEUROLOGICAL CONDITION, DIABETES (TYPE 1 OR 2), DOWN SYNDROME, HEART CONDITION, CORONARY ARTERY DISEASE, CARDIOMYOPATHIES, HYPERTENSION, HIV INFECTION, IMMUNOCOMPROMISED OR WEAKENED IMMUNE SYSTEM, LIVER DISEASE, OVERWEIGHT/OBESITY (BMI> 25, PREGNANCY, SICKLE CELL DISEASE, THALASSEMIA, SMOKING (CURRENT OF FORMER), SOLID ORGAN OR BLOOD STEM CELL TRANSPLANT, STROKE OR CEREBROVASCULAR DISEASE, SUBSTANCE ABUSE DISORDERS.

12.B. (U) HRPS WHO ARE FULLY VACCINATED AND HAVE A CURRENT BOOSTER, IF RECOMMENDED BY CURRENT GUIDANCE (CDC AND DOD) ARE EXEMPT FROM SUBMITTING AN HRP WAIVER.

12.C. (U) WAIVERS ARE REQUIRED FOR ALL HRP INDIVIDUAL WHO: A) REMAIN UNVACCINATED; B) HAVE AN APPROVED VACCINE EXEMPTION OR C) ARE NOT CURRENT WITH A BOOSTER DOSE AS RECOMMENDED BY CURRENT CDC/DOD GUIDANCE.

12.D. (U) ALL HRP (MIL/CIV/CTR) NOT FULLY VACCINATED DEPLOYING OR DEPLOYED TO ANY THEATER REQUIRE AN APPROVED WAIVER.

12.E. (U) ALL TSOCS, SOJTFS, AND JSOC WILL CONTINUE TO ASSESS THEIR PERSONNEL DEPLOYED FORWARD FOR INCREASED RISK CONDITIONS AND VALIDATE THAT THEY HAVE APPROVED WAIVERS.

12.F. (U) ANY FORWARD DEPLOYED HRP WITHOUT AN APPROVED WAIVER WILL BE REDEPLOYED AS SOON AS PRACTICAL.

12.G. (U) PROVIDE OPERATIONAL IMPACT OF CRITICAL SHORTAGES TO THE SOCOM J3 POCS (J33 - CAPT RON MALLOY, MR. LOU RACHAL, AND MR. DWIGHT UTLEY).

12.H. (U) TSOCS, SOJTFS, AND JSOC REPORT HIGHER RISK PERSONNEL MIL/CIV/CTR TO SOCOMJ1READINESS@SOCOM.MIL NLT 1600Z (1200 EST) DAILY.

12.H.1 (U) REQUEST TSOCS, JSOC, AND SOJTFS ADD THE FOLLOWING TO THE DAILY INPUT FOR THE SOCOM J1:

12.H.1.A. (U) THE NUMBER OF MIL/CIV/CTR HIGHER RISK PERSONNEL THAT ARE BOOTS ON GROUND FORWARD DEPLOYED.

12.H.1.B. (U) THE NUMBER OF MIL/CIV/CTR WAIVERS APPROVED FOR FORWARD DEPLOYED HIGHER RISK PERSONNEL.

12.H.1.C. (U) CONTINUE TO UPDATE THE NUMBER OF HRP REDEPLOYED IN THE FORMAT: MIL/CIV/CTR.

12.H.1.D. (U) CRITICAL BACKFILL SHORTAGES THAT REMAIN AS A RESULT OF REDEPLOYING HRP.

12.H.2. (U) PCS/PERMANENTLY ASSIGNED PERSONNEL WILL NOT BE INCLUDED IN HRP REPORTING.

12.H.3. (U) HQ USSOCOM AND COMPONENTS ARE EXEMPT FROM REPORTING TO AVOID POTENTIAL DOUBLE COUNTING.

12.I. HRP WAIVERS. ALL HRP WAIVERS WILL BE APPROVED BY A GO/FO AT THE RECEIVING, FORWARD-DEPLOYED COMMAND.

12.I.1. (U) ALL HRP PERSONNEL DEPLOYED IN THEATER REQUIRE AN APPROVED WAIVER TO REMAIN IN THEATER.

App045

12.J. (U) THE SOCOM STAFF WILL WORK WITH EACH COMMAND TO REPLACE REDEPLOYED HRP QUICKLY. NOTIFY COMPANIES THROUGH CONTRACTING OFFICERS AND/OR THEIR REPRESENTATIVES TO REDEPLOY AND REPLACE HIGHER RISK CONTRACTOR PERSONNEL AS SOON AS PRACTICAL.

13. (U) (NO CHANGE)

14. (U) (NO CHANGE)

15. (U) (NO CHANGE)

16. (U) (NO CHANGE)

17. (U) (NO CHANGE)

18. (U) (NO CHANGE)

19. (U) (NO CHANGE)

20. (U) (NO CHANGE)

21. (U) (NO CHANGE)

22. (U) (NO CHANGE - DELETED)

23. (U) (CHANGE) COVID-19 REPORTS.

23.A. (U) COVID-19 PERSONNEL REPORTING. SEE PARA 10.

23.B. (U) (CHANGE) COVID-19 VACCINE REPORT.

23.B.1. (U) VACCINATIONS. ALL COMPONENTS, TSOCS AND HQ USSOCOM WILL TRACK AND REPORT VACCINATION STATUS OF ALL INDIVIDUALS ON A ONCE PER WEEKLY BASIS.  EACH INDIVIDUAL WILL FALL IN ONE OF THE FOLLOWING CATEGORIES ONLY:  FULLY VACCINATED, OR NOT FULLY VACCINATED. NOT FULLY VACCINATED INDIVIDUALS WILL BE FURTHER CATEGORIZED BY APPROVED WAIVERS AND INCOMPLETE VACCINATIONS (PENDING VACCINE WAIVERS, AND AWAITING VACCINE COMPLETION, NOT VACCINATED).

23.B.2. (U) THIS REPORT WILL INCLUDE DATA PULLED FROM: INDIVIDUAL SERVICE MEDICAL READINESS SYSTEMS FOR MILITARY MEMBERS AND INDIVIDUAL ATTESTATION STATUSES COLLECTED FROM VERIFICATION OF VACCINATION,

DD3150 OR EQUIVALENT FORM(S) FOR CIVILIAN EMPLOYEES, OR FROM CONTRACT COMPANIES PER 25.D.3.

23.B.3. (U) REPORT FORMAT.  VACCINATION REPORT WILL CONTINUE TO BE PROVIDED VIA SPREADSHEET VIA EMAIL TO THE SOCOM SURGEON AND J33 (MAJ DANIEL TENHAGEN, MR. LOUIS N. RACHAL, MR. JOE MORRALL, AND MR.

JONATHAN D. FISH) NO LATER THAN FRIDAY, BY 1200 EST.

24. (U) (CHANGE) DEPLOYMENT, REDEPLOYMENT, OFFICIAL AND UNOFFICIAL TRAVEL.

24.A. (U) DEPLOYMENT AND REDEPLOYMENT OF INDIVIDUALS AND UNITS.

24.A.1. (U) IAW REF JJ: FHP SUPP 16 REV 1.

24.B. (U) PERSONNEL TRAVEL.

24.B.1. (U) IAW REF KK: FHP SUPP 20.

24.B.1.A. (U) APPLIES TO OFFICIAL AND UNOFFICIAL TRAVEL AND PRE-POST-TRAVEL FOR SERVICE MEMBERS, DOD FAMILY MEMBERS, DOD CIVILIAN EMPLOYEES, AND DOD CONTRACTOR PERSONNEL.

24.C. (U) TRAVEL RESTRICTIONS EXIST FOR THOSE WHO ARE NOT FULLY VACCINATED IAW REF PP.

24.C.1. (U) INDIVIDUALS NOT FULLY VACCINATED, OR WHO DECLINE TO PROVIDE INFORMATION ABOUT THEIR VACCINATION STATUS, ARE LIMITED TO MISSION-CRITICAL OFFICIAL TRAVEL, BOTH DOMESTIC AND INTERNATIONAL.

24.C.2. MISSION-CRITICAL IS DEFINED AS TRAVEL NECESSARY TO EXECUTE ACTIVITIES TO SUPPORT SOCOM MISSION ACCOMPLISHMENT AND CANNOT BE CONDUCTED BY ANYONE OTHER THAN THE IDENTIFIED TRAVELER.

24.C.3. (U) CDRUSSOCOM IS THE APPROVAL AUTHORITY FOR ANY MISSION-CRITICAL TRAVEL BY INDIVIDUALS WHO ARE NOT FULLY VACCINATED OR WHO DECLINE TO PROVIDE INFORMATION ABOUT THEIR VACCINATION STATUS.

THIS AUTHORITY MAY BE DELEGATED TO THE DCDR AND THE VCDR.

25. (U) (CHANGE) VACCINE GUIDANCE.

25.A. (U) VACCINATION IS MANDATORY FOR DEPARTMENT OF DEFENSE SERVICE MEMBERS AND CIVILIAN EMPLOYEES. See 25.D. for CONTRACT EMPLOYEES GUIDANCE.

25.A.1. (U) FULLY VACCINATED. AN INDIVIDUAL IS TO BE CONSIDERED FULLY VACCINATED WHEN THEY ARE 2 WEEKS POST SECOND DOSE OF A TWO-DOSE VACCINE SERIES OR POST SINGLE DOSE VACCINE.

25.A.2. (U) FULLY VACCINATED INDIVIDUALS ARE NOT REQUIRED TO EXECUTE QUARANTINE IF IDENTIFIED AS A CLOSE CONTACT OF A COVID-19 POSITIVE.

ALL CLOSE CONTACTS WILL MONITOR THEIR HEALTH FOR 14-DAYS. INDIVIDUAL SHOULD SEEK MEDICAL ADVICE AND BEGIN ISOLATION IF SYMPTOMS ARISE.

25.B. (U) SERVICE MEMBERS.

25.B.1. (U) SERVICE MEMBERS WILL RECEIVE ONLY FDA APPROVED VACCINES, CURRENTLY ONLY THE PFIZER COMIRNATY VACCINE IS APPROVED.

25.B.2. (U) SERVICE MEMBERS MAY STILL VOLUNTEER TO RECEIVE AN FDA EMERGENCY USE AUTHORIZED (EUA) VACCINE TO FULFILL THE MANDATORY VACCINATION REQUIREMENT. CURRENT EUA APPROVED VACCINES ARE: MODERNA

(2 DOSE SERIES 28 DAYS APART) AND THE SINGLE DOSE JANSSEN/J&J.

25.B.3. (U) EXEMPTIONS. MEDICAL AND RELIGIOUS EXEMPTIONS WILL BE ROUTED AND APPROVED VIA SERVICE POLICY AND GUIDANCE.

25.C. (U) CIVILIAN EMPLOYEES.

25.C.1. (U) FEDERAL EMPLOYEES MUST BE FULLY VACCINATED, NLT 22 NOVEMBER 21, SUBJECT TO EXEMPTIONS REQUIRED BY LAW IAW REFERENCE QQ.

25.C.2. (U) CIVILIAN EMPLOYEES MUST BE VACCINATED WITH VACCINES THAT ARE EITHER FULLY LICENSED OR AUTHORIZED FOR EMERGENCY USE BY FDA OR WORLD HEALTH ORGANIZATION.

25.C.3. (U) EMPLOYEES MUST RECEIVE THEIR FIRST DOSE OF PFIZER NLT 18 OCTOBER 21 (FDA LICENSURE); OR NLT 11 OCTOBER FOR MODERNA (EUA).

25.C.4. (U) EMPLOYEES MUST RECEIVE THEIR SECOND DOSE OF ANY TWO SHOT SERIES OR SINGLE DOSE OF A ONE SHOT SERIES NLT THAN 8 NOVEMBER TO MEET THE DEFINITION OF FULLY VACCINATED BY THE DEADLINE ESTABLISHED IN REFERENCE QQ.

25.C.5. (U) CIVILIANS ARE ABLE TO RECEIVE VACCINATION FROM ANY DOD VACCINATION SITE, INCLUDING MILITARY TREATMENT FACILITIES OR AT ANY LOCAL COMMUNITY VACCINATION SITES.

25.C.6. (U) CIVILIAN EMPLOYEES WILL VERIFY THEIR VACCINATION STATUS IN ACCORDANCE WITH EXISTING AND FORTHCOMING DOD PROCEDURES. THE

DD3150 MUST BE SAFEGUARDED IN ACCORDANCE WITH THE OPM/GOVT-10 SYSTEM OF RECORDS NOTICE.

25.D. (U) GOVERNMENT CONTRACTOR.

25.D.1. (U) GOVERNMENT CONTRACTORS SHALL COMPLY WITH THE REQUIREMENTS OF DEFENSE FEDERAL ACQUISITION REGULATION CLAUSE 252.223-7999 ENSURING ADEQUATE COVID-19 SAFETY PROTOCOLS FOR FEDERAL CONTRACTORS (DEVIATION 2021-O0009, FOR ALL CONTRACTS, REGARDLESS OF DOLLAR VALUE OR PLACE OF PERFORMANCE.

25.D.2. (U) ALL CONTRACTOR EMPLOYEES PERFORMNG UNDER USSOCOM ISSUED CONTRACTS, OR NON-USSOCOM ISSUED CONTRACTS REQUIRING A PLACE OF PERFORMANCE IN USSOCOM DESIGNATED WORKSPACES, SHALL BE FULLY VACCINATED NO LATER THAN 8 DECEMBER 2021. AFTER THAT DATE, ALL CONTRACTOR EMPLOYEES MUST BE FULLY VACCINATED BY THE FIRST DAY OF THE PERIOD OF PERFORMANCE.

25.D.3. (U) CONTRACTOR EMPLOYEES WILL COMPLETE THE ATTESTATION PROCESS AND SUBMIT A SIGNED DD3150 OR EQUIVALENT FORM(S) TO THEIR EMPLOYER. CONTRACTOR COMPANIES WILL

RETAIN THESE FORMS AND THEY WILL BE MADE AVAILABLE UPON REQUEST BY A WARRANTED CONTRACTING OFFICER OR CONTRACTING OFFICER'S REPRESENTATIVE (COR).

25.E. (U) VACCINE REPORTS WILL INCORPORATE DATA FROM MILITARY READINESS SYSTEMS, VACCINE VERIFICATION, AND ATTESTATION STATUSES.

25.F. (U) THE COLLECTION OF VACCINE STATUS AND TEST RESULTS, WILL BE TREATED IN ACCORDANCE WITH DODI 5400.11, DOD PRIVACY AND CIVIL LIBERTIES PROGRAMS.

26. (U) (CHANGE) ATTESTATION OF VACCINATION STATUS.

26.A. (U) PER FHP 23, REF MM, ATTESTATION OF THE WORKFORCE'S FULLY VACCINATION STATUS OR A NEGATIVE COVID-19 TEST IS CONDITION OF PHYSICAL ACCESS TO DOD BUILDINGS AND DOD-LEASED SPACES IN NON-DOD BUILDINGS IN WHICH OFFICIAL DOD BUSINESS TAKES PLACE.

26.B. (U) SEE FHP 23 FOR GUIDANCE ON THE REQUIREMENTS FOR VISITORS.

27. (U) (CHANGE) COVID-19 SCREENING TESTING, WHEN SUPPLIES ARE AVAILABLE, WILL BE EXECUTED AS OUTLINED IN APPLICABLE GUIDANCE.

27.A.(U) THOSE WHO ARE NOT FULLY VACCINATED, OR ARE GRANTED EXEMPTIONS FROM VACCINATION ARE SUBJECT TO SCREENING TESTING CONDUCTED ON A WEEKLY BASIS.

27.A.1. (U) SEE FHP 23 FOR ADDITIONAL GUIDANCE ON THE CONDUCT OF SCREENING TESTING FOR VISITORS.

27.B.(U) ALL PERSONNEL WITH A POSITIVE COVID-19 SCREENING TEST WILL BE REQUIRED TO REMAIN AWAY FROM THE WORKPLACE IN ACCORDANCE WITH FHP 18.

27.B.1. (U) THESE INDIVIDUALS WILL BE OFFERED CONFIRMATORY LABORATORY-BASED MOLECULAR TESTING PAID FOR BY THEIR COMPONENT.

27.B.2. (U) THOSE WITH NEGATIVE CONFIRMATORY RESULTS WILL BE ALLOWED TO RETURN TO THE WORKPLACE.

27.C. (U) SCREENING TESTING KITS CAN BE ORDERED THROUGH MEDICAL LOGISTICS ORDERING SYSTEMS.

27.C.1. (U) TEST KITS PROCURED FOR SCREENING TESTING SHOULD BE SELF-COLLECTION KITS OR SELF-TEST KITS.  THIS ALLOWS FOR MAXIMUM FLEXIBILITY IN THE EXECUTION OF SCREENING TESTING AS THESE TYPES OF TEST DO NOT REQUIRE MEDICAL PERSONNEL TO COMPLETE AND IF REQUIRED CAN BE COMPLETED AT HOME.

27.C.2. (U) TESTS CONDUCTED OFFSITE AT ANY OF THE COMMUNITY TESTING LOCATIONS ARE AUTHORIZED FOR THE PURPOSES OF SCREENING TESTING.

RESULTS ARE GOOD FOR 3 DAYS FROM TEST DATE.

27.D. (U) MFP-11 FUNDING IS AUTHORIZED FOR THE PROCUREMENT OF COVID-19 TEST KITS TO BE USED AS A CONDITION OF PHYSICAL ACCESS TO DOD FACILITIES UNLESS THE SERVICES CENTRALLY MANAGE THE PURCHASE AND DISTRIBUTION OF THE KITS TO THEIR COMMANDS.  IN THOSE CASES SERVICE SOF COMPONENTS SHOULD BE INCLUDED IN THE SERVICE PURCHASE AND DISTRIBUTION.

27.D.1. (U) DUE TO ANTICIPATED FORTHCOMING CHANGES TO DOD GUIDANCE REGARDING VACCINATIONS AND TESTING, WE CAUTION AGAINST STOCKPILING LARGE QUANTITIES OF TEST KITS AT THIS TIME.

28. (U) (ADD) MEETING RESTRICTIONS.

28.A. (U) ALL DOD SPONSORED IN-PERSON MEETINGS, EVENTS AND CONFERENCES WITH GREATER THAN 50 PARTICIPANTS, THE MEETING ORGANIZER WILL OBTAIN ADVANCE APPROVAL FROM THE CDRUSSOCOM.

28.B. (U) MEETING ORGANIZER WILL REQUIRE ATTENDEES COMPLETE DD FORM 3150, "COVID-19 CERTIFICATION OF VACCINATION" FROM ALL PARTICIPANTS.

28.C. (U) IN-PERSON ATTENDEES WHO ARE NOT FULLY VACCINATED, OR DECLINE TO PROVIDE INFORMATION ABOUT THEIR VACCINATION STATUS, ARE REQUIRED TO SHOW PROOF OF A NEGATIVE

SCREENING OR DIAGNOSTIC COVID-19 TEST COMPLETED NO LATER THAN THREE DAYS PRIOR TO THE MEETING; AND SUBMIT TO WEEKLY TESTING FOR MEETINGS LONGER THAT 1 WEEK IN LENGTH.
28.D. (U) "MEETINGS" DO NOT INCLUDE MILITARY TRAINING AND EXERCISE EVENTS CONDUCTED BY MILITARY DEPARTMENTS.
AKNLDG/NO//

BT
#4476
CE90

NNNN
Received from AUTODIN 061226Z Oct 21

# Exhibit 6

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

U.S. NAVY SEALs 1-26;
U.S. NAVY SPECIAL WARFARE
COMBATANT CRAFT CREWMEN 1-5;
U.S. NAVY EXPLOSIVE ORDNANCE
DISPOSAL TECHNICIAN 1; and
U.S. NAVY DIVERS 1-3,

Plaintiffs,

v.

Case No. 4:21-cv-01236-O

LLOYD J. AUSTIN, III,
in his official capacity as
United States Secretary of Defense; UNITED
STATES DEPARTMENT OF DEFENSE;
CARLOS DEL TORO, in
his official capacity as United States
Secretary of the Navy,

Defendants.

## DECLARATION OF LOUIS P. MCFADDEN III
### [with regard to Navy SEAL 26]

I, Louis P. McFadden III, hereby state and declare as follows:

1.      I am a Commander in the United States Navy, currently serving as the

Commanding Officer of Naval Special Warfare Advanced Training Command (NSWATC),

located in San Diego, California.  I make this declaration in my official capacity, based upon my

personal knowledge and upon information that has been provided to me in the course of my

official duties.

2.      I have been assigned to my current position since July 2020.  Prior to my current

assignment, I served as Director of Operations, Naval Special Warfare Group TEN; Lead

Maritime Planner, Special Operations Command Europe; Graduate Student, Princeton

1

University; Commander, Naval Special Warfare Unit FOUR (NSWU-4); Executive Officer, Special Boat Team TWENTY; Troop Commander, SEAL Team TWO; Platoon Commander, SEAL Team EIGHT; Country Action Officer, NSWU-4; Student, Defense Language Institute; Assistant Platoon Commander, SEAL Team EIGHT; Basic Underwater Demolition/SEAL Student, Naval Special Warfare Center (NSWCEN). As part of my duties currently, I command a headquarters staff and six dispersed detachments comprised of 300+ Special Operators, Combat Support personnel, and government civilians responsible for 47 advanced courses of instruction for over 3,000 multi-service and multi-national Special Operations Forces' and Combat Support service members. The subordinate units under my command are Detachment's Fort Story, Hawaii, Coronado, Kodiak, Stennis, and Yuma.

3.     Navy SEAL 26 is presently assigned as an instructor in the Air Department at NSWATC Detachment Fort Story (DFS). His primary duties include instructor duties for the Helicopter Rope Suspension Techniques/Casting (HRST/C) and Static Line Jump Master (SLJM) courses with collateral duties of coordinating refresher jumps and air support.

4.     In his declaration, Navy SEAL 26 alleges that he was denied Temporary Active Duty (TAD) orders to receive treatment for Traumatic Brain Injury (TBI) at Walter Reed National Military Medical Center ("Walter Reed") in Bethesda, MD. He states he was informed on January 3, 2022, that his request was denied due to the fact he is unvaccinated, and that an officer in his command would inquire whether he would be permitted to take leave to attend the program. Navy SEAL 26 states on January 20, 2022 he was informed by his senior chief that he lost his spot in the program and that an employee at Walter Reed stated "she had recently received a lot of calls from high-ranking Naval officers asking if they refuse treatment to unvaccinated people."

2

5. Navy SEAL 26 initially notified his command that he was applying to NICoE's TBI treatment program on November 23, 2021. Because Navy SEAL 26 is stationed in the Hampton Roads area of Virginia, is seeking to travel to Walter Reed in Bethesda, Maryland, and is unvaccinated, Navy policy requires elevated approval and either a determination that the Service member's travel is mission essential, or an (exception to policy) ETP to permit the unvaccinated Service member to travel.[1] Because Navy SEAL 26 is also eligible to receive TBI treatment at Naval Medical Center Portsmouth, which would not require travel, but elected to receive treatment at Walter Reed instead, his Officer in Charge (OIC) informed him that he likely could not meet mission essential travel requirements, but also that he could submit an exception to policy to be forwarded up the chain of command for ultimate decision and approval by higher authority. This travel policy applies to Navy SEAL 26 based on his unvaccinated status and not because he has submitted a religious accommodation request.

6. Navy SEAL 26 was accepted for the NICoE program at Walter Reed on December 17, 2021 and submitted his request to travel to the program on December 30, 2021. Between January 3 to January 20, 2022, various members of the command worked to determine whether an exception to policy was needed for Navy SEAL 26's travel to the NICoE clinic. The command contacted the senior medical officer and personnel at the NICoE clinic to confirm policies. Unfortunately, during this period, Navy SEAL 26's treatment slot for January 31, 2022 was given away before his travel could be approved.

---

[1] Specifically, Deputy Secretary of Defense Memorandum, *Updated Coronavirus Disease 2019 Guidance Related to Travel and Meetings* (Sep. 24, 2021), provides that individuals who are not fully vaccinated, or who decline to provide information about their vaccination status, are limited to mission-critical official travel, both domestic and international. In accordance with Commander, U.S. Special Operations Command (CDRUSSOCOM) *Fragmentary Order 33 to Operation Order for Coronavirus Disease 2019* (Oct. 6, 2021) (FRAGO 33), CDRUSSOCOM is the approval authority for mission critical travel by individuals who are not fully vaccinated, as well as the approval authority for ETP requests for non-mission-critical travel.

3

7.     The entire command, from myself down to DFSOIC, has always been in support of Navy SEAL 26 receiving treatment and has endeavored to assist him in making arrangements to receive treatment at NICoE. His request to enter the program at NICoE has never been denied nor intentionally delayed.

8.     Moreover, the command has continued to work to determine the correct method to send Navy SEAL 26 to treatment in accordance with governing policies. Currently, Navy SEAL 26 has been approved for treatment beginning March 27, 2022. He routed his exception to policy request for travel on February 3, 2022, and the command endorsement has been forwarded with a recommendation that it be approved. It has not been uncommon for travel, temporary duty orders, or even those seeking various forms of treatment (e.g., specialized medical treatment, substance abuse programs, etc.) in the COVID-19 pandemic to be delayed or cancelled regardless of a service member's vaccination status. Irrespective of obstacles, the command and myself are doing everything in accordance with higher level requirements to ensure Navy SEAL 26 receives approval to travel for the TBI treatment he has requested.

9.     Navy SEAL 26 cites a discussion with someone at Walter Reed who told Navy SEAL 26 that "she had recently received a lot of calls from high-ranking Naval officers asking if they refuse treatment to unvaccinated people." To begin with, these calls were made by Navy SEAL 26's immediate supervisors and higher-ranking members in his command in order to gather more information necessary to properly execute the ETP travel request. None of the calls were made to dissuade or influence NICoE in accepting Navy SEAL 26 in the treatment program. Moreover, it is common, if not expected and/or required, for leaders in a Service member's chain of command to communicate with a medical treatment facility concerning the treatment of a member assigned to the unit. Calls such as those made to Walter Reed on behalf of

4

Navy SEAL 26 are typical and not out of the norm, especially when the guidance and requirements for travel approval requires information from the facility to support the request.

10.     To clarify the nature of the calls made, on January 5, 2022, NSWATC OPS called the NICoE front desk to inquire about the vaccination policy for patients. The receptionist was unsure and passed the inquiry to a NICoE counselor to clarify. On January 6, 2022, NSWATC OPS received a called from a NICoE employee named Keesha, who confirmed unvaccinated patients could attend and receive treatment in accordance with Walter Reed policy. That same day, NSWATC OPS called NICoE to inquire whether patients could attend in a leave status. The NICoE employee was uncertain and promised to follow up with a response through a NICoE counselor. On January 11, 2022, Keesha returned NSWATC OPS' call and confirmed patients must be in a duty status on official orders to attend NICoE.

11.     From November 23, 2021 to present day, NSWATC has diligently worked to obtain approval for Navy SEAL 26 to attend the NICoE treatment in the proper manner and in accordance with applicable travel policies. Again, Navy SEAL 26 has since received a spot to NICoE beginning on March 27, 2022, and I have routed his request, with my endorsement recommending approval, on February 3, 2022. In sum, at no point was his request denied because he is unvaccinated, because of his religious accommodation request, nor because of his status as a Plaintiff in this lawsuit. However, current DoD and SOCOM policies related to travel approval for unvaccinated Service members have created challenges and longer lead times for securing approval for TAD travel of unvaccinated Service Members.

5

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct. Executed this 7th day of February, 2022.

L. P. MCFADDEN III
Commander, U.S. Navy

6

# Exhibit 7

App057

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| **U.S. NAVY SEALs 1-26;**<br>**U.S. NAVY SPECIAL WARFARE**<br>**COMBATANT CRAFT CREWMEN 1-5;**<br>**U.S. NAVY EXPLOSIVE ORDNANCE**<br>**DISPOSAL TECHNICIAN 1; and**<br>**U.S. NAVY DIVERS 1-3**,<br>                         Plaintiffs,<br><br>v.<br><br>**LLOYD J. AUSTIN, III**,<br>in his official capacity as<br>United States Secretary of Defense; **UNITED**<br>**STATES DEPARTMENT OF DEFENSE**;<br>**CARLOS DEL TORO**, in<br>his official capacity as United States<br>Secretary of the Navy,<br>                         Defendants. | Case No. 4:21-cv-01236-O |

DECLARATION OF MATTHEW WILLIAMS
[with regard to Navy Diver 2]

I, Matthew T. Williams, hereby state and declare as follows:

1.      I am a Commander in the United States Navy, currently serving as Commanding

Officer, Naval Construction Training Center (NCTC) Gulfport, located in Gulfport, Mississippi.

I make this declaration in my official capacity, based upon my personal knowledge and upon

information that has been provided to me in the course of my official duties.

2.      I have been assigned to my current position since July 2020.  NCTC's mission is

to provide preliminary construction-related apprentice and journeyman level training to Sailors

designated in one of the seven Seabee rates, as well as Soldiers and Airmen in related

engineering communities. NCTC also serves as the administrative and training support

1

organization for students enrolled in Expeditionary Combat Skills (ECS) course at the Center for Security Forces (CSF) learning site Gulfport, MS.  As the Commanding Officer, I am responsible for all matters including personnel issues, logistics, day-to-day essential command functions and the effective administration of NCTC. Navy Diver 2 is a recent graduate of the ECS course and a Sailor under my command. He is presently assigned to ECS Supply. His duties include general administrative and maintenance functions within the supply department.

3.      In his declaration, Navy Diver 2 states that his Permanent Change of Station (PCS) orders were delayed in September 2021. He states that since the issuance of the preliminary injunction, nothing has changed and he has remained at his present assignment. And that he may lose his special pays as a result of not performing his diving duties. Navy Diver 2 claims he is not permitted to leave the installation due to his pending religious accommodation. Finally, Navy Diver 2 alleges that, after completing a 14-day quarantine following his return from leave after the Christmas holiday period, he is now required to provide weekly COVID-19 tests.

4.      Navy Diver 2 graduated the Expeditionary Combat Skills (ECS) training course on September 24, 2021. Prior to his scheduled transfer, Navy Diver 2 indicated that he would refuse the vaccine or seek an exemption. The chain of command advised him of his rights to submit a medical exemption or religious exemption request. In accordance with Naval Education Training Command directive, Navy Diver 2 was then placed on "Temporary Duty for Training Delay" until his request could be submitted and adjudicated.[1] Since then, he has received three

---

[1] In his declaration, Navy Diver 2 states, "[t]he orders were taken from me and have not been returned so that I can get them stamped." When a Service member transfers to a new duty station, a copy of his or her orders is stamped to record when the Service member checked out of the command, which is relevant for administrative purposes (e.g., pay and leave accounting, performance reports, etc.). In this case, because Navy Diver 2 was not permitted to check out, the copy of his orders was not returned to him and have since been modified with a new report date.

2

orders modifications (ORDMOD), which extended his assignment to the Center for Security Forces ECS Learning Site, but preserved his orders to SEAL Delivery Vehicle Team ONE (SDVT-1) in Pearl Harbor, Hawaii. While one of these extensions occurred after the preliminary injunction, an ORDMOD is not an adverse action and his orders currently state that he is to report to SDVT-1 no later than April 1, 2022.

5.     Regarding his special pay for dive duty, once Navy Diver 2's qualifications lapse, he will lose eligibility for his special pay. However, my command is doing what we can to resolve this issue, and we are working to arrange for Navy Diver 2 to complete a qualifying dive while this litigation continues.

6.     Though he completed the course, Navy Diver 2 remains subject to the standard leave and liberty policy applicable to all accessions students.  All accessions-level ECS students are eligible for off-base liberty within a 20-mile radius of Naval Construction Battalion Center. Any request for liberty outside of 20-miles must be pre-approved in writing by the chain of command. Again, this policy applies to all accessions-level ECS students, not just Navy Diver 2. Further, any additional restrictions in addition to those in the standard leave and liberty policy would be due to his vaccination status (i.e., unvaccinated) and not his request for a religious accommodation, which has no bearing on the leave or liberty policy.

7.     Navy Diver 2 is not restricted to base. Navy Diver 2 took 29 days leave from October 14, 2021, to November 11, 2021. See Exhibit A. He took another 18 Days leave from December 17, 2021, to January 3, 2022. See Exhibit B. After each period of leave, Navy Diver 2 was required to complete a mandatory 14-day quarantine period.[2] Thus, following his return

---

[2] This quarantine is generally referred to as restriction of movement ("ROM."). ROM refers to limiting personal interaction to reduce risk to a broader population.  Personnel executing ROM as directed by their command remain in a duty status are not charged leave. While in ROM, personnel are generally required to confine themselves to their rooms, avoid congregate settings, and/or limit close contact with people and pets or other animals to the greatest

from leave in November, Navy Diver 2 was required to quarantine until November 25, 2021, and after his leave over the Christmas and New Year holidays, he was required to quarantine until January 17, 2022. Upon completion of his quarantine, Navy Diver 2 left the base on numerous occasions without restriction, in accordance with the leave and liberty policy. When a service member enters the installation, base security scans that service member's identification card, and an electronic record is created.  An audit of the record (Person Scan History Report), attached as Exhibit C, shows Navy Diver 2 left and re-entered the installation 12 times between 3 to 25 January.

8.      Finally, NAVADMIN 268/21, a policy which is not subject to the court's preliminary injunction, provides that "unvaccinated service members will be subject to screening testing for COVID-19 at least weekly when entering a DoD facility that includes the service members normal place of work." ¶ 3a. This policy was implemented at NCTC on January 18, 2022, and it applies to all unvaccinated personnel, including Navy Diver 2, regardless of their reason for being unvaccinated. The testing requirement is facility-specific, and the requirement to test applies to each facility or work space entered. Thus, a Service member must provide a negative result from a test performed within the preceding 72 hours prior to entering the specific Navy facility or work space. NAVADMIN 268/21 ¶ 3.b. Navy Diver 2 remains free to visit facilities on the installation to which he is authorized access, provided he complies with the testing requirement for unvaccinated personnel.

---

extent possible. Personnel assigned ROM may exit quarters to access laundry facilities, safety, medical emergency and designated smoking areas; and conduct other essential tasks (i.e., solitary physical fitness, smoking not in a group setting, no-touch food delivery, etc.) not in a public setting, provided they maintain social distancing greater than 6 feet from others.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is trueand correct. Executed this 7th day of February, 2022.

WILLIAMS.MAT THEW.THOMA S█████
Digitally signed by WILLIAMS.MATTHEW.TH OMAS█████
Date: 2022.02.07 20:42:31 -06'00'

M. T. WILLIAMS
Commander, U.S. Navy

5

App062

# Williams Declaration

# Exhibit A

# LEAVE REQUEST/AUTHORIZATION
NAVCOMPT FORM 3065 (3PT) (REV. 2-83)

**SEE REVERSE FOR PRIVACY ACT STATEMENT**

| 1. DATE OF REQUEST 10/25/2021 | 2. FOR **ADMIN. USE ONLY** APPROVAL OF THIS LEAVE IS **NOT VALID** WITHOUT CONTROL NO. | **LEAVE CONTROL NO:** ➡ | HD00867 |
|---|---|---|---|

| 3. SSN | 4. NAME (Last, First, MI) Navy Diver 2 ███ | | | 5. RANK/ RATE |
|---|---|---|---|---|

| 6. SHIP/STATION S CSF LS GLFPRT | 7. DEPT/DIV / | 8. DUTY SECTION | 9. DUTY PHONE 228-822-5118 |
|---|---|---|---|

| 10. TYPE LEAVE Ordinary | **FOR USE OUT US ONLY** | 12. MODE OF TRAVEL Commercial Plane |
|---|---|---|
| | 11a. Leaving Area of PERMDUSTA | |
| | 11b. Taking Leave INCONUS | |

| 13. DAYS REQUESTED 29 | 14. FROM (Hour, Date) (YYMMDD) 0800, 211014 | 15. TO (Hour, Date) (YYMMDD) 2000, 211111 | 16. NORMAL WORKING HOURS DAY OF DEPARTURE: FROM: 0630   TO: 1600 DAY OF RETURN: FROM: 0630   TO: 1600 |
|---|---|---|---|

| 17. LEAVE BALANCE 42.5 DAYS AS OF 2021-10-01 | 18. LEAVE USED THIS FY 0 | 19. Authorized BAS Yes Meal Pass No. | |
|---|---|---|---|

**20. LEAVE PHONE**
(HOME) ███████

**21. LEAVE ADDRESS** ███████████

| I CERTIFY THAT I HAVE SUFFICIENT FUNDS TO COVER THE COST OF ROUND TRIP TRAVEL. I UNDERSTAND THAT SHOULD ANY PORTION OF THIS LEAVE, IF APPROVED, RESULT IN MY TAKING MORE LEAVE THAN I CAN EARN ON MY CURRENT UN-EXTENDED ENLISTMENT OR CURRENT ACTIVE DUTY OBLIGATION, MY PAY WILL BE CHECKED FOR SUCH EXCESS LEAVE. | SIGNATURE OF APPLICANT |
|---|---|

| 22. RECOMMENDED | REVIEWER'S NAME | DATE |
|---|---|---|
| Not Reviewed | CECS JOHNSON,LACE KRNICHAR | |
| Not Reviewed | LT ARANA,ASDRU | |

| 23. APPROVED | APPROVER'S NAME | DATE |
|---|---|---|
| Leave Request Approved | LCDR PETRALIA,ANDREW JAMES | 211025 |

**24. COMMENTS/REMARKS**

Submitted by GS7 JENNIFER GOEBEL (Command Leave Administrator). MBR IS A STUDENT WITH NO COMPUTER ACCESS. NAVCOMPT FORM 3065 APPROVED BY COC. Created through Auto Check Out Process. Created through Auto Check In Process.
Approver LCDR ANDREW JAMES PETRALIA's Comments: Leave Request approved by GS7 JENNIFER GOEBEL (Command Leave Administrator).

| 25. SHIP OR STATION (Including telegraphic address) 4801 MARVIN SHIELDS BLVD GULFPORT, MS 39501-5004 | 26. REPORT ON EXPIRATION OF LEAVE TO (if other than block 25) |
|---|---|

| **DEPARTED ON LEAVE** | | **RETURNED FROM LEAVE** | | **GRANTED EXTENSION OF LEAVE ENDING** | |
|---|---|---|---|---|---|
| 27a. HOUR 0800 | 27b. DATE (*YYMMDD) 211014 | 28a. HOUR 2000 | 28b. DATE (*YYMMDD) 211111 | 29a. HOUR | 29b. DATE (*YYMMDD) |
| 27c. OOD'S SIGNATURE Auto Check Out | | 28c. OOD'S SIGNATURE Auto Check In | | 29c. OOD'S SIGNATURE | |

| IN CONSIDERATION OF THE MEMBER'S COMPLETION OF A FULL WORKDAY (AS DEFINED IN MILPERSMAN, NAVPERS 15560) ON THE DAYS OF DEPARTURE AND RETURN, THE INCLUSIVE DAYS SHOWN ARE CORRECT AND PROPER FOR CHARGING AS LEAVE. | 30. INCLUSIVE LEAVE PERIOD TO BE CHARGED ➡ | FIRST: (YY) (MM) (DD) | | | LAST: (YY) (MM) (DD) | | | 31. NO. OF DAYS |
|---|---|---|---|---|---|---|---|---|
| | | 21 | 10 | 14 | 21 | 11 | 11 | 29 |

| I CERTIFY THAT THE ABOVE IS CORRECT AND PROPER TO THE BEST OF MY KNOWLEDGE. | 32. CERTIFYING OFFICER'S TYPED NAME/RANK/TITLE | 33. CERTIFYING OFFICER'S SIGNATURE |
|---|---|---|

**S/N 0104-LF-703-0656**   **PART 1**

---

**IMPORTANT NOTICE!! THIS IS YOUR "OFFICIAL" LEAVE AUTHORIZATION, DO NOT DESTROY OR LOSE!**

---

1. Leave is granted subject to immediate recall, therefore maintain communication with your leave address. Keep this leave authorization in your posession at all times. In the event of a general recall, individual orders may not be issued. Inform your commanding officer of permanent change of leave address.

2. Save sufficient money or obtain round-trip ticket to insure you have return transportation. Keep yourself informaed of transportation schedules and weather conditions through your return route and make sufficient allowances for normal delays.

3. While it is desirable to tell the public about your Navy, do not discuss any subject unless you are certain it is unclassified. If you are asked to participate in a press conference, ta k to reporters, or speak over the radio or television on matters pertaining to naval service, and you are not certain that all your remarks are unclassified, consult with and obtain guidance of the commanding officer of the nearest naval unit prior to participation.

4. Cooperate with Military or Air Police, Shore Patrol, and civil authorities at all times. You are subject to orders of your superior officers in all branches of the U.S. Armed Forces. Be an outstanding *Navy ambassador* at all times.

5. If necessary to request an extension of leave, communicate with your commanding officer. SINCE YOU NEED POSITIVE APPROVAL FOR REMAINING ABSENT BEYOND THE TIME ORIGINALLY AUTHORIZED, IF NO REPLY IS RECEIVED YOU MUST CONSIDER YOUR REQUEST NOT APPROVED.

6. In case of serious illness or injury incured while on leave which requires medical attention or hospitalization, report facts to your commanding officer. If in the immediate vicinity of a naval activity, such as recruiting station or naval station, advise them of your condition and status. You are advised that costs incident to hospitalization or medical treatment received at other than Federal medical activities (Army, Air Force, Public Health Service, or Veteran's Administration) may be defrayed by the Navy Department in EMERGENCY cases only.

7. In the event that conditions beyond your control indicate late return to the command to which you are ordered to report, obtain written evidence from transportation agency or others (physician, military or civil police, recruiting station, etc.) for consideration by your commanding officer.

8. Request leave sufficiently in advance to allow processing via official channels. Leave is computed as follows: The day of departure on leave, shall be counted as a day of duty, except when leave commences prior to the end of the normal workday; the day of return from leave shall be counted as a day of leave, except when such return is made at or before commencement of your normal workday in which case it shall be counted as a day of duty.

**9. If Emergency Care (Life Threatening Conditions) is needed, get care IMMEDIATELY then dial 1-800-# within 24 hours for the region where the member is enrolled. All other care must first be authorized by the region in which the member is enrolled.**

**OPERATION DRIVESAFE REMINDER**

**Statistics show the major causes of motor vehicle
accidents are attributable to:**
Excessive speed
Intoxicating liquor, and
Driving while fatigued or sleepy.

**PLAN YOUR TRIP CAREFULLY. Be sure you allow yourself sufficient travel time and keep your travel to a minimum during hours of darkness.**

---

# PRIVACY ACT STATEMENT
# FOR
# NAVCOMPT 3065 LEAVE REQUEST/AUTHORIZATION

This statement is provided in compliance with the provisions of the Privacy Act of 1974 (PL 93-579), which require that Federal agencies must inform individuals who are requested to furnish information about themselves as to the following facts concerning the information requested.

1. AUTHORITY: Title 10 and 37 USC

2. PRINCIPAL PURPOSE(S): To authorize military leave of absence.

3. ROURTINE USE(S): To deduct leave taken from member's accrued leave balances. To pay leave rations to enlisted members.

4. MANDATORY OR VOLUNTARY DISCLOSURE: VOLUNTARY. If the member does not request a specific period of leave or furnish his leave address, leave is not granted.

# Williams Declaration

# Exhibit B

# LEAVE REQUEST/AUTHORIZATION
NAVCOMPT FORM 3065 (3PT) (REV. 2-83)

**SEE REVERSE FOR PRIVACY ACT STATEMENT**

| 1. DATE OF REQUEST 12/16/2021 | 2. FOR **ADMIN. USE ONLY** APPROVAL OF THIS LEAVE IS **NOT VALID** WITHOUT CONTROL NO, | **LEAVE CONTROL NO:** → | HD00877 |
|---|---|---|---|

| 3. SSN | 4. NAME (Last, First, MI) Navy Diver 2 | 5. RANK/ RATE |
|---|---|---|

| 6. SHIP/STATION S CSF LS GLFPRT | 7. DEPT/DIV / | 8. DUTY SECTION | 9. DUTY PHONE 228-871-2132 |
|---|---|---|---|

| 10. TYPE LEAVE Ordinary | **FOR USE OUT US ONLY** | 12. MODE OF TRAVEL Commercial Plane |
|---|---|---|
| | 11a. Leaving Area of PERMDUSTA | |
| | 11b. Taking Leave INCONUS | |

| 13. DAYS REQUESTED 18 | 14. FROM (Hour, Date) (YYMMDD) 0001, 211217 | 15. TO (Hour, Date) (YYMMDD) 2359, 220103 | 16. NORMAL WORKING HOURS DAY OF DEPARTURE: FROM: 0630   TO:1630 DAY OF RETURN: FROM: 0630   TO: 1630 |
|---|---|---|---|

| 17. LEAVE BALANCE 18.5 DAYS AS OF 2021-12-01 | 18. LEAVE USED THIS FY 29 | 19. Authorized BAS Yes Meal Pass No. |
|---|---|---|

20. LEAVE PHONE
(HOME)

21. LEAVE ADDRESS

I CERTIFY THAT I HAVE SUFFICIENT FUNDS TO COVER THE COST OF ROUND TRIP TRAVEL. I UNDERSTAND THAT SHOULD ANY PORTION OF THIS LEAVE, IF APPROVED, RESULT IN MY TAKING MORE LEAVE THAN I CAN EARN ON MY CURRENT UN-EXTENDED ENLISTMENT OR CURRENT ACTIVE DUTY OBLIGATION, MY PAY WILL BE CHECKED FOR SUCH EXCESS LEAVE.

SIGNATURE OF APPLICANT

| 22. RECOMMENDED | REVIEWER'S NAME | DATE |
|---|---|---|
| Not Reviewed | CECS BLUE,JAMES JR | |
| Not Reviewed | LT ARANA,ASDRU | |
| 23. APPROVED Leave Request Approved | APPROVER'S NAME LCDR PETRALIA,ANDREW JAMES | DATE 211216 |

24. COMMENTS/REMARKS
Submitted by YN2 DAWKINS (Command Leave Administrator). MBR IS A STUDENT WITH NO COMPUTER ACCESS. NAVCOMPT FORM 3065 APPROVED BY COC. Created through Auto Check Out Process. Created through Auto Check Out Process. Created through Auto Check In Process.
Approver LCDR ANDREW JAMES PETRALIA's Comments: Leave Request approved by YN2 ASIA DAWKINS (Command Leave Administrator).

| 25. SHIP OR STATION (Including telegraphic address) 4801 MARVIN SHIELDS BLVD GULFPORT, MS 39501-5004 | 26. REPORT ON EXPIRATION OF LEAVE TO (if other than block 25) |
|---|---|

| **DEPARTED ON LEAVE** | | **RETURNED FROM LEAVE** | | **GRANTED EXTENSION OF LEAVE ENDING** | |
|---|---|---|---|---|---|
| 27a. HOUR 0001 | 27b. DATE (*YYMMDD) 211217 | 28a. HOUR 2359 | 28b. DATE (*YYMMDD) 220103 | 29a. HOUR | 29b. DATE (*YYMMDD) |
| 27c. OOD'S SIGNATURE Auto Check Out | | 28c. OOD'S SIGNATURE Auto Check In | | 29c. OOD'S SIGNATURE | |

| IN CONSIDERATION OF THE MEMBER'S COMPLETION OF A FULL WORKDAY (AS DEFINED IN MILPERSMAN, NAVPERS 15560) ON THE DAYS OF DEPARTURE AND RETURN, THE INCLUSIVE DAYS SHOWN ARE CORRECT AND PROPER FOR CHARGING AS LEAVE. | 30. INCLUSIVE LEAVE PERIOD TO BE CHARGED → | FIRST: (YY) (MM) (DD) 21  12  17 | LAST: (YY) (MM) (DD) 22  01  03 | 31. NO. OF DAYS 18 |
|---|---|---|---|---|
| I CERTIFY THAT THE ABOVE IS CORRECT AND PROPER TO THE BEST OF MY KNOWLEDGE. | 32. CERTIFYING OFFICER'S TYPED NAME/RANK/TITLE | 33. CERTIFYING OFFICER'S SIGNATURE | | |

**S/N 0104-LF-703-0656**     **PART 1**

App067

---

**IMPORTANT NOTICE!! THIS IS YOUR "OFFICIAL" LEAVE AUTHORIZATION, DO NOT DESTROY OR LOSE!**

---

1. Leave is granted subject to immediate recall, therefore maintain communication with your leave address. Keep this leave authorization in your posession at all times. In the event of a general recall, individual orders may not be issued. Inform your commanding officer of permanent change of leave address.

2. Save sufficient money or obtain round-trip ticket to insure you have return transportation. Keep yourself informaed of transportation schedules and weather conditions through your return route and make sufficient allowances for normal delays.

3. While it is desirable to tell the public about your Navy, do not discuss any subject unless you are certain it is unclassified. If you are asked to participate in a press conference, ta k to reporters, or speak over the radio or television on matters pertaining to naval service, and you are not certain that all your remarks are unclassified, consult with and obtain guidance of the commanding officer of the nearest naval unit prior to participation.

4. Cooperate with Military or Air Police, Shore Patrol, and civil authorities at all times. You are subject to orders of your superior officers in all branches of the U.S. Armed Forces. Be an outstanding *Navy ambassador* at all times.

5. If necessary to request an extension of leave, communicate with your commanding officer. SINCE YOU NEED POSITIVE APPROVAL FOR REMAINING ABSENT BEYOND THE TIME ORIGINALLY AUTHORIZED, IF NO REPLY IS RECEIVED YOU MUST CONSIDER YOUR REQUEST NOT APPROVED.

6. In case of serious illness or injury incured while on leave which requires medical attention or hospitalization, report facts to your commanding officer. If in the immediate vicinity of a naval activity, such as recruiting station or naval station, advise them of your condition and status. You are advised that costs incident to hospitalization or medical treatment received at other than Federal medical activities (Army, Air Force, Public Health Service, or Veteran's Administration) may be defrayed by the Navy Department in EMERGENCY cases only.

7. In the event that conditions beyond your control indicate late return to the command to which you are ordered to report, obtain written evidence from transportation agency or others (physician, military or civil police, recruiting station, etc.) for consideration by your commanding officer.

8. Request leave sufficiently in advance to allow processing via official channels. Leave is computed as follows: The day of departure on leave, shall be counted as a day of duty, except when leave commences prior to the end of the normal workday; the day of return from leave shall be counted as a day of leave, except when such return is made at or before commencement of your normal workday in which case it shall be counted as a day of duty.

**9. If Emergency Care (Life Threatening Conditions) is needed, get care IMMEDIATELY then dial 1-800-# within 24 hours for the region where the member is enrolled. All other care must first be authorized by the region in which the member is enrolled.**

**OPERATION DRIVESAFE REMINDER**

**Statistics show the major causes of motor vehicle
accidents are attributable to:**
Excessive speed
Intoxicating liquor, and
Driving while fatigued or sleepy.

**PLAN YOUR TRIP CAREFULLY. Be sure you allow yourself sufficient travel time and keep your travel to a minimum during hours of darkness.**

---

# PRIVACY ACT STATEMENT
# FOR
# NAVCOMPT 3065 LEAVE REQUEST/AUTHORIZATION

This statement is provided in compliance with the provisions of the Privacy Act of 1974 (PL 93-579), which require that Federal agencies must inform individuals who are requested to furnish information about themselves as to the following facts concerning the information requested.

1. AUTHORITY: Title 10 and 37 USC

2. PRINCIPAL PURPOSE(S): To authorize military leave of absence.

3. ROURTINE USE(S): To deduct leave taken from member's accrued leave balances. To pay leave rations to enlisted members.

4. MANDATORY OR VOLUNTARY DISCLOSURE: VOLUNTARY. If the member does not request a specific period of leave or furnish his leave address, leave is not granted.

# Williams Declaration

# Exhibit C



# Person Scan History Report

177799: CBC GULFPORT | 01 Jan 2022 00:00:00 UTC - 01 Feb 2022 23:59:59 UTC
All Access Areas | Any Direction | All Access Recommendations | All Access Decisions

*Prepared by: Roberts, Warren*

*Generated: 01 Feb 2022 18:34:27 UTC*

*Person Name:* Navy Diver 2

 Expand All Rows

| Access Date | Person | DBIDS ID | Direction | Recommendation | Decision | Operator |
|---|---|---|---|---|---|---|
| **ACP - Main Gate** | | | | | | |
| 25 Jan 2022 17:40:40 CST | Navy Diver 2 | ▉ | Outgoing | Allow | Allow (Automatic) | Thorpe, Siler R |
| 23 Jan 2022 11:54:04 CST | Navy Diver 2 | ▉ | Incoming | Allow | Allow (Automatic) | Tricquet, Thomas T |
| 22 Jan 2022 11:52:51 CST | Navy Diver 2 | ▉ | Incoming | Allow | Allow (Automatic) | Julien, Isaiah J |
| 17 Jan 2022 12:12:29 CST | Navy Diver 2 | ▉ | Incoming | Allow | Allow (Manual) | Phelps, Cameron M |
| 16 Jan 2022 12:02:52 CST | Navy Diver 2 | ▉ | Incoming | Allow | Allow (Automatic) | Villa, Cesar |
| 15 Jan 2022 17:08:27 CST | Navy Diver 2 | ▉ | Incoming | Allow | Allow (Automatic) | Barnett, Kealvin L |
| 12 Jan 2022 18:19:30 CST | Navy Diver 2 | ▉ | Incoming | Allow | Allow (Automatic) | Davis, Elon J |
| 10 Jan 2022 18:12:18 CST | Navy Diver 2 | ▉ | Incoming | Allow | Allow (Automatic) | Reichert, Timothy M |
| 09 Jan 2022 12:05:40 CST | Navy Diver 2 | ▉ | Incoming | Allow | Allow (Automatic) | Phelps, Cameron M |
| 05 Jan 2022 19:30:32 CST | Navy Diver 2 | ▉ | Outgoing | Allow | Allow (Automatic) | Eaton, Truman A |
| 04 Jan 2022 18:36:09 CST | Navy Diver 2 | ▉ | Incoming | Allow | Allow (Automatic) | Villalta, Owen O |
| 03 Jan 2022 17:43:42 CST | Navy Diver 2 | ▉ | Incoming | Allow | Allow (Automatic) | Planas, Emmanuel N |

# Person Scan History Report

177799: CBC GULFPORT | 01 Jan 2022 00:00:00 UTC - 01 Feb 2022 23:59:59 UTC
All Access Areas | Any Direction | All Access Recommendations | All Access Decisions

*Prepared by: Roberts, Warren*

*Generated: 01 Feb 2022 18:34:27 UTC*