UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **U.S. NAVY SEALs 1-3;** on behalf of themselves and all others similarly situated; **U.S. NAVY EXPLOSIVE ORDNANCE DISPOSAL TECHNICIAN 1**, on behalf of himself and all others similarly situated; U.S. **NAVY SEALS 4-26**; **U.S. NAVY SPECIAL WARFARE COMBATANT CRAFT CREWMEN 1-5**; and **U.S. NAVY DIVERS 1-3**, <br><br>            Plaintiffs, <br><br>    v. <br><br> **LLOYD J. AUSTIN, III**, in his official capacity as United States Secretary of Defense; **UNITED STATES DEPARTMENT OF DEFENSE**; **CARLOS DEL TORO**, in his official capacity as United States Secretary of the Navy, <br><br>            Defendants. | Case No. 4:21-cv-01236-O |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT**

## INTRODUCTION

On January 3, 2022, this Court issued a clear and unambiguous Order enjoining Defendants from applying four of Defendants' policies and enjoining Defendants from taking any adverse action against Plaintiffs on the basis of Plaintiffs' requests for religious accommodation. Dkt. 66. Defendants have responded by making excuses for their failure to comply with the Court's injunction while simultaneously arguing that denying some of the Plaintiffs medical treatment and persisting in punishing Plaintiffs for their religious beliefs does not actually violate the Court's injunction. Defendants' excuses are inadequate. Defendants also claim that Plaintiffs are incorrect about the facts, but Defendants' version of the facts is demonstrably false. Further, Defendants' persistence in making broad arguments to support their actions as applied to these particular Plaintiffs reveals that they have no appropriately tailored reason for Plaintiffs' treatment. Defendants' repeated efforts to dodge scrutiny through carefully worded declarations emphasize the need for the Court set a hearing on this matter and order the Defendants to bring witnesses to show cause as to why they should not be held in contempt. And if Defendants wish to claim that they are applying other policies not enjoined (even though they require the same treatment as the enjoined policies and still constitute "adverse action"), that only underscores the need for the broader relief requested in the Plaintiffs' Motion for Classwide Preliminary Injunction (Dkt. 104).

## ARGUMENT

I. **Defendants' Excuses for Disregarding for this Court's Order Fail to Disprove Plaintiffs' Prima Facie Demonstration of Contempt.**

Defendants' main argument is that their discriminatory actions are "mitigation measures" for Plaintiffs' unvaccinated status, rather than punitive or discriminatory measures because of

1

Plaintiffs' Religious Accommodation (RA) requests.[1] But this is transparently false. Defendants cannot claim actions are "mitigation" by simply pasting that label on them rather than explaining how exactly those actions are designed to mitigate COVID-19. Take, for example, Defendants' travel restrictions for unvaccinated personnel that they use to justify denying SEAL 26 medical treatment. How exactly does prohibiting SEAL 26 from driving a few hours away in his car protect any Navy servicemembers from COVID-19? For that matter, how does prohibiting SEAL 22's travel to train to maintain his needed qualification (that helps ensure the safety of SEALs engaged in that very risky activity) protect any Navy servicemembers from COVID-19, especially when the other servicemembers are training with civilians not subject to the DoD Vaccine Mandate? How is barring some Plaintiffs from training SEALs because of "risk" due to unvaccinated status even rational when other Plaintiffs are still actively engaged in training SEALs in other commands? Because of the mandate, the only servicemembers who are unvaccinated at this point are either refusers subject to separation or those with pending accommodation requests. The enjoined policies make clear that they are not tied in any way to "mitigation," but instead are blatantly designed to punish and coerce servicemembers into receiving the vaccine. Treating SEALs with pending RA requests like refusers under these policies when they have done nothing wrong is blatantly discriminatory. Defendants' claim that Plaintiffs' treatment is due only to their unvaccinated status is a fig leaf.

But even if Defendants' actions were somehow tied to mitigation, they continue to exaggerate and generalize the "risk" Plaintiffs present to the Naval Special Warfare (NSW) force. *See* Pls. Supp. App. 0034-46. Defendants' declarant Captain Christopher Brown disparages SWCC

---

[1] Defendants complain that Plaintiffs did not report these violations to them and give them an opportunity to cure them. But it is unclear how that would have accomplished anything given that Defendants also deny that the injunction requires them to fix any of the problems identified by Plaintiffs.

4's testimony because of his lesser years of service, but SEAL 16 and SEAL 18 are both highly qualified,[2] with 45 years of combined service as both enlisted servicemembers and commissioned officers and numerous combat deployments. Pls. Supp. App. 0034-35, 0041-42. As their declarations make clear, Defendants' continued discriminatory treatment of the Plaintiffs is completely unjustified in light of the risks SEALs contend with in both training and deployment.

Defendants further argue that if they initiated an action before the injunction was entered, they have no obligation to correct it and may continue treating Plaintiffs in a discriminatory fashion simply because they committed the unlawful act of discrimination that led to ongoing discriminatory treatment before January 3, 2022. That is false. The Court's preliminary injunction order noted that Plaintiffs sought "to preserve the status quo," and pointed out that "an injunction is always in the public interest when it prevents deprivation of constitutional rights." Dkt. 66 at 25. The status quo is the situation as it existed before Defendants began implementing the enjoined policies. It does not include the discriminatory actions the Plaintiffs faced which were "inextricably intertwined with Plaintiffs' loss of constitutional rights." Dkt. 66 at 25. The very purpose of injunctive relief is to stop *ongoing* harm, not merely to prevent Defendants from inventing new ways to harm Plaintiffs while persisting in the old ways because they started before the injunction was entered. Notably, Plaintiffs are not asking the Court to order Defendants to do something they had not already decided to do with respect to Plaintiffs who were removed from positions because of their RA request. Defendants had already decided these Plaintiffs were qualified or eligible for leadership or training to maintain qualifications. The only thing that

---

[2] Notably, SEAL 18 served in NSW Development Group (DEVGRU). Pls. Supp. App. 0042, ¶ 4. DEVGRU (or SEAL Team 6) is one of the U.S. Military's most elite units and is tasked with the most critical, classified, and dangerous missions. *See, e.g.,* Armed Forces Museum, "US Navy's DEVGRU," https://www.armedforcesmuseum.com/us-navys-devgru/.

changed that was Defendants' decision to discriminate against Plaintiffs for requesting accommodation of their religious beliefs.

## II. Navy SEAL 26

Defendants persist in denying Navy SEAL 26 permission to travel to a treatment program for traumatic brain injuries, which this Court already called an "egregious example" of harm suffered by Plaintiffs. Dkt. 66 at 15. Defendants claim that *they* "secured him a start date of March 27, 2022." Opp. at 11. But SEAL 26 did that himself. Pls. Supp. App. 0048-49 ¶ 3. SEAL 26 does not dispute that *his* command has been trying to get his request to attend NICoE approved. Pls. Supp. App. 0049 ¶ 4. It is the level *above* Commander McFadden—where Captain Brown works—that has been preventing SEAL 26's attendance. Pls. Supp. App. 0049 ¶¶ 4-5. Indeed, after SEAL 26 secured his own acceptance to NICoE in March and submitted his request, Commander McFadden approved it the same day—February 3, 2022. Pls. Supp. App. 0049 ¶ 4, 0050 ¶ 8. SEAL 26 has heard nothing in the 10 days since then. Pls. Supp. App. 0050 ¶ 8.

It is clear that SEAL 26 will be denied treatment once again without action from this Court. Captain Brown blames SEAL 26's denial of treatment on DoD and SOCOM policies restricting travel by unvaccinated servicemembers, which he points out are not enjoined. Def. App. 008-009.[3] As explained above, it is impossible to call this "mitigation" with a straight face. But regardless, the Court enjoined the *entire* Department of Defense, not just NSW. If the SOCOM or DoD policies, while not explicitly enjoined, require the same thing as the enjoined policies, and the Court explicitly mentioned SEAL 26's situation as an "egregious example" of harm, allowing SEAL 26 to receive his requested treatment is a "clearly inferable obligation" under the injunction

---

[3] Defendants' shell game with overlapping and/or new policies also underscores the need for broader injunctive relief against implementation of the entire Mandate, as Defendants cannot be trusted to obey a more specific and limited order.

that Defendants are ignoring. *Hornbeck Offshore Services, L.L.C. v. Salazar*, 713 F.3d 787, 793 (5th Cir. 2013). And policies aside, Defendants' actions in blocking SEAL 26 from receiving medical treatment clearly violate the injunction's prohibition on "adverse action." Dkt. 66 at 15, 26. Simply put, Defendants are violating this Court's order by continuing to deny medical treatment to SEAL 26.

### III. Navy Diver 2

Defendants do not even attempt to defend their obvious continued application of enjoined policies to Navy Diver 2. Instead, they argue that because they first prevented him from executing his PCS orders to Hawaii before the injunction, they can continue indefinitely modifying his orders to delay his PCS—even though they admit they did that after the injunction was issued. Opp. at 12. Navy Diver 2's command was attempting to at least get him dive time by allowing him to travel to the Dive School in Florida (even though it is unclear how that would be allowed given Defendants' other arguments about travel), but the Dive School stated that they cannot allow Navy Diver 2 to have a temporary assignment of duty there because of the NAVADMINs. Pls. Supp. App. 0052-53 ¶¶ 4-6. Moreover, Defendants' "mitigation" arguments again fall flat given that Navy Diver 2—an individual supposedly too dangerous to even travel—was assigned to take servicemembers' temperatures on base. Pls. Supp. App. 0053 ¶ 7. Defendants' actions in continuing to prevent Navy Diver 2 from executing his PCS orders clearly violate the injunction. *See* NAVADMIN 256/21 ¶ 7;[4] Dkt. 66 at 26.

### IV. Navy SEAL 13

Navy SEAL 13 was removed from a four-month course (despite completing over half) for submitting an RA request, as discussed in his previous declarations. Pls. App. 0022 ¶ 3. Defendants

---

[4] *See* Defs. MPI Opp. App. 093. (Dkt. 44-1).

submit a declaration from LCDR Ronald Harrison in which he claims that Army policy required that SEAL 13 be disenrolled from the course because of his vaccination status, and because SEAL 13 could not finish the course, he decided to remove him. Defs. App.018. That is false. First, SEAL 13 was explicitly told that if he submitted an RA request he would be removed from the course. Pls. Supp. App. 0055 ¶ 3, 0056 ¶ 4. Second, not only did Army policy *not* require that, it also prohibited adverse action against soldiers with pending RA requests, and stated that "[s]oldiers with pending exemption requests will be considered compliant with the mandatory vaccination order while requests are pending." Pls. Supp. App. 0056 ¶ 6, 0081 ¶¶ 6-8. There were both unvaccinated instructors and students in the course at this time, and others finished the course. Pls. Supp. App. 0081 ¶¶ 6-8. Defendants claim that the Plaintiffs compromise operational readiness by being unvaccinated, but they also decided to pull SEAL 13 from a critical training for his team simply because he had a pending RA request. *See* Pls. Supp. App. 0035 ¶ 6.

Defendants also claim that SEAL 13 would be retired before he would be eligible for promotion, so it essentially doesn't matter if he was removed from his leadership position because of his RA request. Defs. App.018-019. But SEAL 13 only requested terminal leave (three months after losing his leadership position) to avoid administrative separation as a result of the mandate and has since extended his enlistment. Pls. Supp. App. 0056-57 ¶¶ 8-9. He also tried to rescind his terminal leave because he no longer fears being administratively separated because of the preliminary injunction, but Defendants threatened him in February with administrative separation if he decides not to go through with retiring early. Pls. Supp. App. 0057 ¶ 9. SEAL 13 has also been prevented by his command from completing his Dive Physical explicitly because of his RA request, which has affected his qualifications and may affect his pay. Pls. Supp. App. 0057 ¶¶ 11-

12. Defendants have discriminated against SEAL 13 because of his RA request and are continuing to do so in violation of the injunction.

## V. Navy SEAL 14

Navy SEAL 14 was scheduled to leave for Officer Candidate School (OCS) on January 2, 2022. App. 0025, ¶ 3. His OCS orders were cancelled because he has a pending RA request, even though he is not a "refuser." Pls. App. 0025 ¶ 4; *see also* NAVADMIN 256/21 ¶¶ 3.c, 9.[5] Defendants submit a declaration from LCDR Forrest Crowell and claim that SEAL 14's orders to attend OCS were cancelled because of his vaccination status, not because of his RA request. Defs. App.022. But the emails attached to LCDR Crowell's declaration prove the opposite. LCDR James Barfoot stated that SEAL 14 informed him that he had a pending RA request and SEAL 14's orders to attend OCS were cancelled because he "cannot send [SEAL 14] to OCS in that status." Defs. App.026. LCDR Ian Kilpatrick responded, "I am sorry to hear that [SEAL 14's] orders were cancelled. The [N]avy has always made an effort to support the free exercise of sailors' individual religious beliefs and he was selected based on the community's belief in his leadership and potential as a naval officer." Defs. App.026.

To the extent Defendants claim that prohibiting SEAL 14 from attending OCS is a supposed mitigation measure related to his vaccination status, the emails submitted by Defendants disprove that claim. LCDR Barfoot stated: "If the [RA] request is favorably adjudicated, we can proceed with OCS." Defs. App.025. In other words, SEAL 14 is eligible to attend OCS *regardless of vaccination status*. Once again, Defendants' claim that the adverse treatment of Plaintiffs is really due to mitigation measures because of vaccination status rings hollow.

---

[5] *See* Defs. MPI Opp. App. 091, 094. (Dkt. 44-1).

VI.     **Navy SEAL 21 and Navy SEAL 25**

Both SEAL 21 and SEAL 25 were kicked out of their platoon and forced to turn in their gear before the issuance of the injunction and remain in this status. They are unable to participate in training. Pls. Supp. App. 0084 ¶ 4, 0087-88, ¶ 3. Instead, they and the other member of their team with an RA request are being punished with a newly invented quarter deck watch. Pls. Supp. App. 0084 ¶ 6; 0088 ¶ 7. Defendants submit a declaration from CDR Andrew Sparks stating that SEAL 21 and SEAL 25 present an unacceptable risk to others because of their vaccination status. Defs. App.030-31. Yet SEAL 25 participated in close contact training before submitting his RA request, Pls. Supp. App. 0088 ¶ 4, and SEAL 21 was recently required to escort older retired SEALs around the building, Pls. Supp. App. 0084 ¶ 4. Other Plaintiffs continue to train others. Pls. Supp. App. 0036 ¶ 8. CDR Sparks claims that the duties SEAL 21 and SEAL 25 are being assigned are typical duties, but it is common knowledge that in this context, they are being used as a punishment. Pls. Supp. App. 0036 ¶ 7.

CDR Sparks offers no response or justification for the notation at the top of SEAL 21's paperwork stating that he is unable to promote due to NAVADMIN 225/21. Pls. App. 0015 ¶ 11. Continuing to apply an enjoined policy violates the preliminary injunction. *See* Dkt. 66 at 22.

VII.    **Navy SEAL 22**

Navy SEAL 22 was supposed to transfer from a training detachment to a SEAL Team for a milestone position as a platoon chief in October 2021. Pls. App. 0028-29 ¶ 3. But because of his pending RA request, he was not allowed to formally transfer to the Team. Pls. App. 0028-29 ¶ 3. As a result, he lost his position as platoon chief. Pls. App. 0029 ¶ 4. Defendants submit a declaration from LCDR Forrest Crowell, who states that SEAL 22 was removed as platoon chief because of his vaccination status, not his RA request, because he impacted operational readiness. Defs. App.038. But despite this supposed threat to operational readiness, SEAL 22 was not

8

removed as platoon chief until December, well after his transfer orders were cancelled (which was one week after he submitted his RA request). LCDR Crowell also blames SOCOM policies requiring 4-star general approval for unvaccinated travel, but it is no defense to noncompliance if Defendants' own policies make it difficult. Defs. App.038-39. Ironically, while pointing to operational readiness, LCDR Crowell also claims that it was necessary to restrict SEAL 22's travel to attend a training course necessary to maintain his highly specialized and valuable qualifications that take years to obtain. Defs. App.038. It is not possible for "other personnel" to travel to obtain SEAL 22's training and qualifications. Defs. App.039; Pls. Supp. App. 0092 ¶ 4. And SEAL 22 presented no greater threat to others while traveling and training on that trip than the many other unvaccinated individuals the other members of his training group would be coming in contact with during travel and training, including the civilian instructor who is not subject to the DoD Vaccine Mandate. Pls. Supp. App. 0092-93 ¶ 5; *see also* Dkt. 116 at 8 ("[V]accinated servicemembers are far more likely to encounter unvaccinated individuals off-base among the general public than among their ranks."). In summary, none of the excuses for clear noncompliance with this Court's injunction by denying SEAL 22 the opportunity to train to maintain his qualifications are valid.

\* \* \*

The evidence shows that Defendants have taken actions since the injunction was entered that violate the injunction:

- SEAL 26 was prevented from receiving medical treatment.
- Navy Diver 2's PCS orders were modified to prevent his departure and he was denied temporary assignment of duty to Florida to obtain dive time.
- SEAL 13 was threatened with administrative separation if he does not go through with retiring early.
- SEALs 21 and 25 have been assigned punitive duties.
- SEAL 22 was denied the opportunity to train with his group to maintain his qualifications.

These actions clearly violate the preliminary injunction and Defendants have offered no sufficient explanation for their disregard for the Court's order.

The evidence also shows that Defendants have persisted in subjecting Plaintiffs to penalizing actions that began before the injunction was entered and have not been remedied:

- Navy Diver 2 has not been permitted to PCS.
- SEAL 13 was removed from a leadership position and has not been restored.
- SEAL 14 was denied the opportunity to attend OCS and his orders have not been reinstated.
- SEALs 21 and 25 were kicked out of their platoons and prevented from training with them.
- SEAL 22 was removed from a leadership position and has not been restored.

Plaintiffs are not asking for the Court to give Plaintiffs opportunities they were not already given or qualified for. But part of restoring the status quo ante through injunctive relief is returning Plaintiffs to the position they would be in if Defendants were not violating their First Amendment and religious liberty rights. For example, as this Court stated, it "can—and must—prevent the Navy from taking punitive action against that SEAL by blocking him from the training program he would otherwise attend." Dkt. 116 at 4. Defendants cannot continue blaming other policies or Plaintiffs' vaccination status, using an artificially narrow definition of "adverse action," and claiming immunity for ongoing violations of Plaintiffs' rights that started before the injunction was entered as a strategy for avoiding accountability.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court enter an order directing Defendants to show cause why they should not be held in contempt for failing to comply with the Court's January 3, 2022 Order.

Respectfully submitted this 13th day of February, 2022.

Kelly J. Shackelford
 Texas Bar No. 18070950
Jeffrey C. Mateer
 Texas Bar No. 13185320
Hiram S. Sasser, III
 Texas Bar No. 24039157
David J. Hacker
 Texas Bar No. 24103323
Michael D. Berry
 Texas Bar No. 24085835
Justin Butterfield
 Texas Bar No. 24062642
Danielle A. Runyan *
 New Jersey Bar No. 027232004
Holly M. Randall *
 Oklahoma Bar No. 34763
FIRST LIBERTY INSTITUTE
2001 W. Plano Pkwy., Ste. 1600
Plano, Texas 75075
Tel: (972) 941-4444
jmateer@firstliberty.org
hsasser@firstliberty.org
dhacker@firstliberty.org
mberry@firstliberty.org
jbutterfield@firstliberty.org
drunyan@firstliberty.org
hrandall@firstliberty.org

Jordan E. Pratt
 Florida Bar No. 100958* **
FIRST LIBERTY INSTITUTE
227 Pennsylvania Ave., SE
Washington, DC 20003
Tel: (972) 941-4444
jpratt@firstliberty.org

\* Admitted pro hac vice
\*\* Not yet admitted to the D.C. Bar, but admitted to practice law in Florida. Practicing law in D.C. pursuant to D.C. Court of Appeals Rule 49(c)(8) under the supervision of an attorney admitted to the D.C. Bar.

/s/ Heather Gebelin Hacker
Heather Gebelin Hacker
 Texas Bar No. 24103325
Andrew B. Stephens
 Texas Bar No. 24079396
HACKER STEPHENS LLP
108 Wild Basin Road South, Suite 250
Austin, Texas 78746
Tel.: (512) 399-3022
heather@hackerstephens.com
andrew@hackerstephens.com

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2022, I electronically filed the foregoing document through the Court's ECF system, which automatically notifies counsel of record for each party.

/s/Heather Gebelin Hacker
HEATHER GEBELIN HACKER
