# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

**U.S. NAVY SEALs 1-3;** on behalf of themselves and all others similarly situated; **U.S. NAVY EXPLOSIVE ORDNANCE DISPOSAL TECHNICIAN 1**, on behalf of himself and all others similarly situated; U.S. **NAVY SEALS 4-26; U.S. NAVY SPECIAL WARFARE COMBATANT CRAFT CREWMEN 1-5**; and **U.S. NAVY DIVERS 1-3**,

Plaintiffs,

v.

**LLOYD J. AUSTIN, III**, in his official capacity as United States Secretary of Defense; **UNITED STATES DEPARTMENT OF DEFENSE**; **CARLOS DEL TORO**, in his official capacity as United States Secretary of the Navy,

Defendants.

Case No. 4:21-cv-01236-O

## SUPPLEMENTAL APPENDIX IN SUPPORT OF PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE

| Ex. | Description | Bates Number(s) |
|-----|-------------|-----------------|
| 1 | Declaration of Navy SEAL 16 | 0033-0039 |
| 2 | Declaration of Navy SEAL 18 | 0040-0046 |
| 3 | Declaration of Navy SEAL 26 | 0047-0050 |
| 4 | Declaration of Navy Diver 2 | 0051-0053 |
| 5 | Declaration of Navy SEAL 13 | 0054-0078 |
| 6 | Declaration of Robert Wright | 0079-0081 |
| 7 | Declaration of Navy SEAL 21 | 0082-0085 |

| 8 | Declaration of Navy SEAL 25 | 0086-0089 |
| 9 | Declaration of Navy SEAL 22 | 0091-0093 |

Respectfully submitted this 13th day of February, 2022.

KELLY J. SHACKELFORD
  Texas Bar No. 18070950
JEFFREY C. MATEER
  Texas Bar No. 13185320
HIRAM S. SASSER, III
  Texas Bar No. 24039157
DAVID J. HACKER
  Texas Bar No. 24103323
MICHAEL D. BERRY
  Texas Bar No. 24085835
JUSTIN BUTTERFIELD
  Texas Bar No. 24062642
Danielle A. Runyan *
  New Jersey Bar No. 027232004
Holly M. Randall *
  Oklahoma Bar No. 34763
FIRST LIBERTY INSTITUTE
2001 W. Plano Pkwy., Ste. 1600
Plano, Texas 75075
Tel: (972) 941-4444
jmateer@firstliberty.org
hsasser@firstliberty.org
dhacker@firstliberty.org
mberry@firstliberty.org
jbutterfield@firstliberty.org
drunyan@firstliberty.org
hrandall@firstliberty.org


JORDAN E. PRATT
  Florida Bar No. 100958*  **
FIRST LIBERTY INSTITUTE
227 Pennsylvania Ave., SE
Washington, DC 20003
Tel: (972) 941-4444
jpratt@firstliberty.org


*Admitted pro hac vice.
** Not yet admitted to the D.C. Bar, but
admitted to practice law in Florida. Practicing
law in D.C. pursuant to D.C. Court of
Appeals Rule 49(c)(8) under the supervision
of an attorney admitted to the D.C. Bar.

/s/ Heather Gebelin Hacker
HEATHER GEBELIN HACKER
  Texas Bar No. 24103325
ANDREW B. STEPHENS
  Texas Bar No. 24079396
HACKER STEPHENS LLP
108 Wild Basin Road South, Suite 250
Austin, Texas 78746
Tel.: (512) 399-3022
heather@hackerstephens.com
andrew@hackerstephens.com

*Attorneys for Plaintiffs*

# Exhibit 1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| **U.S. NAVY SEALs 1-3**, on behalf of themselves and all others similarly situated; **U.S. NAVY EXPLOSIVE ORDNANCE DISPOSAL TECHNICIAN 1**, on behalf of himself and all others similarly situated; **U.S. NAVY SEALS 4-26**; **U.S. NAVY SPECIAL WARFARE COMBATANT CRAFT CREWMEN 1-5**; and **U.S. NAVY DIVERS 1-3**, | |
|         Plaintiffs, | Case No. 4:21-cv-01236-O |
|    v. | |
| **LLOYD J. AUSTIN, III**, in his official capacity as United States Secretary of Defense; **UNITED STATES DEPARTMENT OF DEFENSE**; **CARLOS DEL TORO**, in his official capacity as United States Secretary of the Navy, | |
|         Defendants. | |

## <u>DECLARATION OF NAVY SEAL 16</u>

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury as follows:

1.      I am over the age of eighteen and am competent to make this declaration.

2.      I reviewed the declarations of CAPT Christopher Brown, LCDR Ronald Harrison, and CDR Andrew Sparks in support of the Defendants' opposition to the motion for order to show cause.

3.      I have 20 years of service in the U.S. Navy, and 19 years as a U.S. Navy SEAL. I enlisted in the Navy in 2002 and became a SEAL in 2003. I am a Chief Warrant Officer/W-3.

4.      I have deployed six times in support of combat operations and I have received several awards for my service, including Joint Commendation with Valor, six Navy Commendation Medals and two Navy Achievement Medals.

5.      I have served as the Training Officer for two operational SEAL commands. I was recently promoted to Operations Officer for my current command.

6.      LCDR Harrison states that the decision to pull SEAL 13 from Advanced Special Operations Training Course (ASOT-C) was due to Army policy.  As the prior Training Officer for Special Reconnaissance Team ONE (SRT-1), I directly managed which SEALs attended ASOT-C.  I can attest that all SEALs are rigorously screened for their ability to qualify in ASOT-C and then function as a Special Reconnaissance Platoon Leading Petty Officer.  Naval Special Warfare gets only a handful of billets per year for this school and they are exclusively divided between the Special Reconnaissance Teams on the west and east coasts (SRT-1 and SRT-2, respectively). Therefore, much thought and deliberation has been given prior to each candidate attending ASOT-C and it is critical for each SEAL candidate to graduate.  ASOT-C is a long, demanding, and challenging course and is only available to veteran special operators. Any operator removed prior to graduation is most often because of poor performance or occasionally a self-deselection (drop-out-request [DOR]), aka quitting.  Due to the critical importance of the ASOT-C qualification, SRT-1 and SRT2 both do their utmost to make sure that their personnel are given every opportunity to graduate to include joining video teleconferences with the ASOT-C school house if a student is in danger of a performance drop.  During my four years serving at SRT-1, I cannot recall a single student ever returning from ASOT-C without active communication and a mutual understanding between SRT-1 and the ASOT-C instructor staff.

7.     CDR Sparks describes certain tasks as regular functions, but they are all typically assigned as punitive measures for discipline. The military uses a term for these types of tasks: "Extra Military Instruction." EMI is an adverse consequence of an infraction. It is not necessarily inaccurate that EMI involves normal military duties for that reason, but EMI is not routine. The military does have unfavorable jobs and duties and must assign someone to do those duties.  In the SEAL teams, standing watch at the command quarterdeck and being assigned with escort duties for non-command personnel are most common unfavorable jobs often assigned as EMI. Servicemembers doing these duties knows there's a reason they were assigned to them, as they are usually assigned as a corrective action. Otherwise they are split evenly amongst members who do them infrequently. For SEAL personnel, these duties are always understood as punitive measures unless they are part of a command-wide watch-standing schedule.

8.     CAPT Brown states that Plaintiffs serving in training commands are a danger to other SEALs training for deployment. However, I know that many of the Plaintiffs, including me, have continued to train other SEALs throughout the pandemic and are still training SEALs even after the mandate. SEALs in training detachments work closely with the SEAL Platoons during Unit Level Training. This is not surprising since SEALs in training detachments often have qualifications that take years to obtain and are critical for preparing SEAL Teams for deployment.

9.     CAPT Brown states that to his knowledge, "the Navy has not taken any action that would typically be considered an adverse action (e.g., imposition of discipline, processing for administrative separation) or that constitutes adverse administrative action under governing Navy regulations against any Plaintiff."  But SEALs removed from milestone positions (SEAL Platoon Lead Petty Officer and Lead Chief Petty Officer) are only removed for punitive reasons like DUIs, poor performance, or other disciplinary reasons. At times, there are family issues that interfere

**Pls.' Mot. for Order to Show Cause Suppl. App. 0036**

with a SEAL filling a milestone position, but those are rare and clearly understood. Removing a SEAL from his milestone position due to his vaccination status or Religious Accommodation request, like some Plaintiffs have been, is clearly punitive.

10.     In my 20 years of service, it is *extremely rare* for someone to deploy without at least 30 days' notice. In my opinion, CAPT Brown makes it sound like we are all on "beeper status," which is only for a very select few people (i.e. DEVGRU) whose alert status is known, well-planned for, and short-lived.  For non-select units, the only SEALs deployed on short notice are usually officers and it is generally to fill a staff function in a headquarters somewhere (not doing missions). The reality is that SEAL Teams train for extended periods of time to prepare for specific missions and must obtain specific qualifications to be deployable for that mission.

11.     The CAPT cites SWCC 4's lesser experience (compared to the CAPT) as detrimental to his understanding of the impacts these policies are having. But as a Non-Commissioned Officer (NCO), SWCC 4 and the other Plaintiffs are directly responsible for the day-to-day mission accomplishment of NSW and have firsthand knowledge of the facts on the ground. As a Chief Warrant Officer, I have served in both the enlisted and officer ranks, and I have been on both sides of policy decisions. In my experience, feedback from the NCOs responsible for execution and mission accomplishment is critical for mission success.

12.     The CAPT points to the close quarters environment on submarines as an example and asserts that "transmitting a respiratory disease in these conditions can have immediate mission impact to NSW and the Navy overall." In 20 years of service, I have never set foot in a submarine. Only a very limited number of SEALs in a select unit (the SEAL Delivery Vehicle Teams) are ever on submarines. Also, there are limited number of personnel diving, and it is extremely rare to

share a breathing device (except in training). During a mission, it would happen only in an emergency and most SEALs have never done an underwater operation.

13.     It is also common knowledge that even before COVID-19, during the first month on a ship or submarine, a large number of sailors become ill with both respiratory and digestive illnesses. It is expected and is dealt with accordingly. Further, as the CAPT acknowledges, "we execute ROM periods when NSW assets embarked on ships, transit national boundaries, operate with partner forces, or have close contact with infected personnel." Therefore, all personnel are tested before being deployed or sequestered aboard ships or submarines, regardless of vaccination status. The presence or absence of unvaccinated personnel does not change that.

14.     Defendants have also suggested that unvaccinated personnel present a danger to mission completion because somehow those individuals are more likely to contract COVID-19 or develop a severe case, and some missions make medical evacuation difficult. The vast majority of SEALs, if any, are not at high risk of contracting a serious case of COVID-19 because they are young and have a high level of physical fitness. But in the unlikely chance a member were to test positive and he needed to get to a higher level of care, there is nowhere we deploy where this is not possible. The risk of normal injuries from our duties are greater than the risk of COVID-19. It is common for SEALs or support personnel to be injured or become sick before, after, or during deployment.   Even training activities are far more dangerous than COVID-19. Recently, a Commanding Officer of an East Coast SEAL Team died after fast roping during a training exercise.

15.     Under current conditions, it is also very unrealistic to assume that vaccinated servicemembers will not be exposed to COVID-19 (or unvaccinated people other than Plaintiffs) in their daily lives, or that vaccinated servicemembers will not contract COVID-19, with or without the presence of the Plaintiffs. Recently, my detachment had 75 people travel out-of-state for a

three-month training exercise. Almost immediately after arrival, one week of training was lost due to over 15 people becoming infected or close contact with COVID-19, despite the fact that everyone was fully vaccinated and most were boosted.

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on February 13, 2022.

*/s/Navy SEAL 16*
NAVY SEAL 16

# Exhibit 2

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

|  |  |
|---|---|
| **U.S. NAVY SEALs 1-3**, on behalf of themselves and all others similarly situated; **U.S. NAVY EXPLOSIVE ORDNANCE DISPOSAL TECHNICIAN 1**, on behalf of himself and all others similarly situated; **U.S. NAVY SEALS 4-26; U.S. NAVY SPECIAL WARFARE COMBATANT CRAFT CREWMEN 1-5**; and **U.S. NAVY DIVERS 1-3**,<br><br>                              Plaintiffs,<br><br>        v.<br><br>**LLOYD J. AUSTIN, III**, in his official capacity as United States Secretary of Defense; **UNITED STATES DEPARTMENT OF DEFENSE; CARLOS DEL TORO**, in his official capacity as United States Secretary of the Navy,<br><br>                              Defendants. | <br><br><br><br><br><br>Case No. 4:21-cv-01236-O |

## DECLARATION OF NAVY SEAL 18

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury as follows:

1.        I am over the age of eighteen and am competent to make this declaration.

2.        I reviewed the declaration of Captain Christopher Brown in support of the Defendants' opposition to the motion for order to show cause.

3.        I am a Chief Warrant Officer-3 with over 25 years of service in the U.S. Navy, and 24 years in Naval Special Warfare (NSW) as a U.S. Navy SEAL. I served 18 years as an enlisted SEAL, rising to the rank of Senior Chief Petty Officer (E-8) before being commissioned as an officer in 2015.

**Pls.' Mot. for Order to Show Cause Suppl. App. 0041**

4.    I have served in many tactical and leadership positions in the SEAL Teams and been responsible for leading troops in combat and training NSW personnel in all aspects of Special Operations. I have served in operational, training, and leadership positions at SEAL Team ONE, Naval Special Warfare Development Group, and currently at Naval Special Warfare Group EIGHT Training Detachment. I have deployed eleven times in support of combat operations, and I have worked closely with, trained, and been in combat with partner forces of host nations. I received several awards for my service, including the Bronze Star with Valor (three times), Defense Meritorious Service Medal, Joint Service Commendation Medal with Valor, Navy Commendation Medal (twice), and the Army Commendation Medal.

5.    Captain Brown states that to his knowledge, "the Navy has not taken any action that would typically be considered an adverse action (e.g., imposition of discipline, processing for administrative separation) or that constitutes adverse administrative action under governing Navy regulations against any Plaintiff." But Plaintiffs removed from billets experienced adverse, career degrading action. Removal from certain billets prevents those Plaintiffs from achieving required milestones for promotion consideration. Also, Plaintiffs that were removed from positions, even while still technically in the same billet, experienced adverse, career degrading action. Frequently, in other matters, removal from a position is the first and sometimes only disciplinary action employed.

6.    While certain units within NSW may be required to be on short notice recall, none of the Plaintiffs belong to such a unit. Outside of unusual situations, there are relatively few examples of personnel needing to be surged forward on short notice, even in times of war. It is definitely not the norm. NSW units plan deployment cycles years in advance and structure the tactical leadership and personnel rotations accordingly. Task units have a long-term, relatively

predictable training and deployment rotation schedule. Before deployment, SEAL Teams must train to ensure they have the particular qualifications and small unit skills required for their mission. The SEAL Teams and NSW units that the Plaintiffs are assigned to do not possess the manning or logistical support, nor are they designed for instant recall at a moment's notice to be deployed forward. Occasionally, in extreme situations, a unit may need additional support due to unforeseen circumstances. Often times, this is because a deployed unit is lacking a critical qualification or skill set that they need to be considered operational. Ironically, these are some of the same qualifications, leadership positions, and skill sets that were denied plaintiffs via supposedly "non-adverse administrative actions." Some qualifications take years to obtain. If mission readiness were a top priority, the Navy would not allow a COVID-19 vaccination mandate, especially given the low risk of serious illness or death to individuals in their 20s and 30s in peak physical condition, to cause the loss of significant numbers of highly trained, specialized NSW personnel. In any case, currently, the same COVID-19 mitigation procedures referenced by Captain Brown would apply regardless of vaccination status, so it is no special burden to apply them in accommodating unvaccinated personnel with sincere religious objections.

7.     The Captain cites SWCC 4's lesser experience (compared to the Captain) as detrimental to his understanding of the impacts these policies are having, while overlooking the fact that as a Non-Commissioned Officer (NCO), SWCC 4 and the other Plaintiffs are directly responsible for the day-to-day mission accomplishment of NSW and have firsthand knowledge of the negative effects of these policies. The Plaintiffs and their peer group are at the hands-on, working end of all the Navy's policies and taskings. They are responsible for physically executing the mission and policy directives produced by NSW leadership. As such, they experience both the intended and unintended consequences of these policies. NCOs have firsthand knowledge and

understanding of the operational impacts these adverse actions have to the mission, morale, and careers that is often lost on senior leaders as it filters down through the ranks and is actually put into practice.

8.      As a Chief Warrant Officer, I have served in both the enlisted and officer ranks, and I have been on both the planning/directing and receiving/implementing side of policy decisions. Throughout my 25-year career, I have witnessed numerous policies that have had to be modified, rewritten, or even scrapped after implementation when they were deemed to be flawed or unworkable based on the direct feedback from the NCOs responsible for execution and mission accomplishment. The declarations of SWCC 4 and others is one of those situations, as his firsthand experience is lost on senior leadership who are buffered by layers of command structure which obscure their situational awareness to the facts on the ground.

9.      The Captain points to the close quarters environment on submarines as an example and asserts that "transmitting a respiratory disease in these conditions can have immediate mission impact to NSW and the Navy overall." While every SEAL is expected to be able to do every mission, in practice, typically only a limited number of SEALs (the SEAL Delivery Vehicle Teams) specialize and disembark on submarines. Second, it is well-known among sailors that during the first month on a ship or submarine, a large number of sailors often become ill with both respiratory and digestive illnesses. It is expected and is dealt with accordingly. Further, as the Captain acknowledges, "we execute ROM periods when NSW assets embarked on ships, transit national boundaries, operate with partner forces, or have close contact with infected personnel." Therefore, all personnel are tested before being deployed or sequestered aboard ships or submarines, regardless of vaccination status. Unvaccinated personnel cannot spontaneously develop COVID-19 any more than vaccinated personnel can. The Navy cannot possibly isolate

anyone completely from unvaccinated people in their daily lives. COVID-19 outbreaks have frequently occurred among the fully vaccinated. Recent outbreaks in NSW and aboard ships have been almost entirely in the vaccinated cohort to my knowledge. And as the Captain acknowledges, ROM periods are an ongoing COVID-19 mitigation measure, regardless of the vaccination mandate.

10.     Captain Brown uses Kuwait as an example of a partner nation that restricts unvaccinated travel. However, Kuwait recently made a booster shot mandatory. *See* https://kw.usembassy.gov/covid-19-information/. The booster is not mandatory for U.S. Military, so a significant number of servicemembers are non-compliant with Kuwait's restrictions.

11.     Defendants have also suggested that unvaccinated personnel present a danger to mission completion because somehow those individuals are more likely to contract COVID-19 or develop a severe case, and some missions make medical evacuation difficult. But the physical danger of our missions and the likelihood of injury, as well as the undeveloped locations of some of our missions, far outweighs the risk of a 20–30-year-old in peak physical condition developing a severe case of COVID-19 on deployment. Regardless, because of the high risk of injury, we have medical support wherever we go and are always prepared to deal with injury or illness. Routine NSW mission risks include everything from gunshot wounds, blast injuries, parachute accidents, dive injuries, aircraft emergencies, and vehicle rollovers to animal bites, swimming or diving in polluted waters, and breathing toxic chemical fumes. I submit that COVID-19 is probably the least dangerous medical risk SEALs could be expected to encounter on a deployment.

12.     The Defendants quote military wide or Navy wide COVID-19 hospitalizations and deaths, but to my knowledge have not revealed official numbers from the NSW community specifically. The Navy is the most obese service in the military with a rate of 22% according to a

2019 DoD study and CDC data has shown that obesity is a leading co-morbidity for COVID-19. However, SEALs, SWCCs, EOD Technicians, and Divers make up a tiny fraction of the Navy and are among the most healthy and fit people on earth. NSW personnel are required to be stronger, faster, and tougher than average military personnel due to the extreme, no fail nature of our missions. As such, SEALs, EOD, and Divers are required to pass a higher level "Dive Physical" than other personnel, which involves a higher level of medical screening. Personally, I have never witnessed or heard of anyone from the Plaintiffs' peer group being evacuated or hospitalized due to COVID-19.

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on February 13, 2022.

NAVY SEAL 18
_/s/_
NAVY SEAL 18

# Exhibit 3

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| **U.S. NAVY SEALs 1-3**, on behalf of themselves and all others similarly situated; **U.S. NAVY EXPLOSIVE ORDNANCE DISPOSAL TECHNICIAN 1**, on behalf of himself and all others similarly situated; **U.S. NAVY SEALS 4-26**; **U.S. NAVY SPECIAL WARFARE COMBATANT CRAFT CREWMEN 1-5**; and **U.S. NAVY DIVERS 1-3**, | |
| Plaintiffs, | Case No. 4:21-cv-01236-O |
| v. | |
| **LLOYD J. AUSTIN, III**, in his official capacity as United States Secretary of Defense; **UNITED STATES DEPARTMENT OF DEFENSE**; **CARLOS DEL TORO**, in his official capacity as United States Secretary of the Navy, | |
| Defendants. | |

**DECLARATION OF NAVY SEAL 26**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury as follows:

1.      I am over the age of eighteen and am competent to make this declaration.

2.      I reviewed the declarations of CAPT Christopher Brown and CDR Louis McFadden III submitted in support of Defendants' opposition to the motion for order to show cause.

3.      On February 2, I was accepted for a third time by the National Intrepid Center of Excellence (NICoE) at Walter Reed, this time for the March 27 session, which was the longest

**Pls.' Mot. for Order to Show Cause Suppl. App. 0048**

possible timeframe NICoE could give me so that I had the maximum amount of time to get my request approved. I secured that acceptance myself.

4.      CDR McFadden approved my request the same day. I believe that CDR McFadden and the other Advanced Training Command (ATC) staff below him are doing everything they can to get my travel to treatment at NICoE approved and I am very grateful for their efforts. It is my understanding that it is the level *above* CDR McFadden—Naval Special Warfare leadership—that has been disapproving my request. CAPT Christopher Brown is Chief of Staff for NSW Command.

5.      For example, LT Lawrence Beckhaus (ATC) has told me over the last few months that my request would be a "hard no" at the NSWCEN CDRE level, that my request "will be denied at the NSWCEN level based on conversations and previous denied requests," and that "CDRE is holding fast on denying official travel for unvaccinated members ATT [at this time]." LT Beckhaus was one of the ATC staff who sought information regarding the possibility of me attending treatment on leave status, which would avoid the routing of a travel request that will be denied. Attending NICoE on leave would require me to attend on my own dime.

6.      CDR McFadden mentions TBI treatment at the Portsmouth Naval Medical Center is an option for me. But it is well known within the SEAL community that the Portsmouth TBI program does not compare to the NICoE program. NICoE is the most comprehensive, advanced, and highly regarded TBI clinic available to DoD servicemembers. In comparison, the Portsmouth program was recently established, is primarily for the fleet Navy, and is a quarter of the duration of the NICoE program. It is also unclear why, as an unvaccinated person, I would present an unacceptable risk driving a few hours in my car to receive treatment at NICoE, a significantly smaller program that accepts other unvaccinated individuals, but no risk at Portsmouth, which is housed within a massive military hospital.

7.      Before the COVID-19 Vaccine Mandate, my request to receive treatment at NICoE would have been approved with no problem.

8.      I have not received any update on my request since CDR McFadden approved it on February 3 and routed it to NSWCEN.

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on February 13, 2022.

*/s/ Navy SEAL 26*
NAVY SEAL 26

# Exhibit 4

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| **U.S. NAVY SEALs 1-3**, on behalf of themselves and all others similarly situated; **U.S. NAVY EXPLOSIVE ORDNANCE DISPOSAL TECHNICIAN 1**, on behalf of himself and all others similarly situated; **U.S. NAVY SEALS 4-26**; **U.S. NAVY SPECIAL WARFARE COMBATANT CRAFT CREWMEN 1-5**; and **U.S. NAVY DIVERS 1-3**, | |
| Plaintiffs, | Case No. 4:21-cv-01236-O |
| v. | |
| **LLOYD J. AUSTIN, III**, in his official capacity as United States Secretary of Defense; **UNITED STATES DEPARTMENT OF DEFENSE**; **CARLOS DEL TORO**, in his official capacity as United States Secretary of the Navy, | |
| Defendants. | |

## DECLARATION OF NAVY DIVER 2

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury as follows:

1.      I am over the age of eighteen and am competent to make this declaration.

2.      I reviewed the Declaration of CDR Matthew Williams submitted in support of Defendants' opposition to the motion for order to show cause.

3.      Because my orders were taken from me, I am unaware of any modifications of those orders and I have never received any notification about order modification.

4.      On February 9, 2022, I received a call from a Senior Chief here. He told me that they are trying to get me to Dive School in Florida so I can get some dive time.

5.      The only billets in that location are for instructors, so this would not be a permanent change of station (PCS). It would, however, at least allow me to get dive time. I believe it would also allow me to work on my qualifications which relate to my job and potential advancement.

6.      I had a phone call on the afternoon of February 10, 2022 with the Senior Chief and a Master Diver at the Dive School. The Master Diver said I was unable to get a temporary assignment of duty (TAD) there because of a NAVADMIN prohibiting travel or TAD by vaccine refusers.

7.      Since submitting to testing on February 1, 2022, I was sent back to work at supply. I had mainly been taking people's temperatures at the door and picking lint out of Velcro. A few days ago, I was told not to take temperatures anymore, but my remaining duties are the same.

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on February 11, 2022.

_/s/ Navy Diver 2_
NAVY DIVER 2

# Exhibit 5

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **U.S. NAVY SEALs 1-3**, on behalf of themselves and all others similarly situated; **U.S. NAVY EXPLOSIVE ORDNANCE DISPOSAL TECHNICIAN 1**, on behalf of himself and all others similarly situated; **U.S. NAVY SEALS 4-26**; **U.S. NAVY SPECIAL WARFARE COMBATANT CRAFT CREWMEN 1-5**; and **U.S. NAVY DIVERS 1-3**, | |
| Plaintiffs, | Case No. 4:21-cv-01236-O |
| v. | |
| **LLOYD J. AUSTIN, III**, in his official capacity as United States Secretary of Defense; **UNITED STATES DEPARTMENT OF DEFENSE**; **CARLOS DEL TORO**, in his official capacity as United States Secretary of the Navy, | |
| Defendants. | |

## DECLARATION OF NAVY SEAL 13

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury as follows:

1.      I am over the age of eighteen and am competent to make this declaration.

2.      I reviewed the Declaration of LCDR Ronald E. Harrison submitted in support of Defendants' opposition to Plaintiffs' motion for order to show cause.

3.      I was removed from the Advanced Special Operations Techniques Course (ASOT-C) because of my Religious Accommodation (RA) request. I know that because Operations Officer LCDR Brandon Barker (in conjunction with my chain of command) informed me by telephone on 28 September 2021 that if I proceeded with filing an RA I would be removed from the course.

4.      The conversation with LCDR Barker is recounted in an email I sent to him the next day. A true and correct copy is attached to this Declaration as Exhibit A.

5.      The course submitted a memorandum to my command in response to my unit recall stating that I was not voluntarily removing myself from the course, but was complying with the order from my chain of command to discontinue participation and return to the unit immediately. A true and correct copy is attached to this Declaration as Exhibit B.

6.      LCDR Harrison asserts the command's basis of my removal relied on the Army School House policies for students to be vaccinated and thereby is not under the purview of the Navy or the NSW community.  But according to the Army School House policy made available on 21 September 2021 (a true and correct copy attached to this Declaration as Exhibit C), "Soldiers requesting an exemption are not required to receive the vaccine pending the final decision on their exemption request." Ex. C at 3.B.2.B.1 (U). That policy also states that "Commanders will not take adverse action against Soldiers with pending exemption requests.  Soldiers with pending exemption requests will be considered compliant with the mandatory vaccination order while requests are pending." Ex. C at 3.B.2.B.1.F (U).  Furthermore, I am aware that there was another servicemember in the course who had a pending RA request and who was not removed.

7.      Shortly after returning to my unit, I was removed as Lead Petty Officer, which is a benchmark to advance to E-7. That effectively makes it impossible for me to make rank. My removal was three months prior to my request for terminal leave.

8.      When I requested terminal leave, I was utilizing my only option to avoid Administrative Separation. I would not have requested terminal leave if I had thought otherwise. I have seventeen years of service and intended to serve until I qualify for retirement at twenty years of service. Once I realized that the Court's preliminary injunction protected me from this action, I

asked to terminate my terminal leave and filed for extension of enlistment in the meantime until 4 June 2021 as advised by CWO-3 Raul Romero.  I was advised that my chain of command would only approve an extension until the date established by NAVADMIN 283/21.  While I was trying to rescind my terminal leave, on 24 January 2022, I was brought into the office of the Group 8 Assistant Staff Judge Advocate (JAG), LT George O. Hageman, in the presence of CWO-3 Raul Romero, where LT Hageman proceeded to warn me against coming off terminal leave.

9.        LT Hageman stated that according to NAVADMIN 283/21, if I came off terminal leave, I would be subject to Administrative Separation.  LT Hageman proceeded to hand me a copy of the SJA (20 Dec 2021) COVID-19 CCDA Execution Guidance to Commanders that summarized NAVADMIN 283/21 to support this claim.  I reviewed these documents and did not believe that this interpretation was correct. I returned to his office to discuss, and LT Hageman said my interpretation was fair, but he could not provide me any clarification on the matter. Following this interaction, I emailed both CWO-3 Romero and LT Hageman requesting clarification. After two weeks passed without reply, I sent a follow-up email on 8 February 2022. A true and correct copy of this email is attached to this Declaration as Exhibit D.

10.       I have not received a substantive response as of the date of this Declaration.

11.       In December 2021, my command also put a hold on my Dive Physical explicitly because of my RA request. A true and correct copy of the email is attached to this Declaration as Exhibit E.

12.       Without a current dive physical, I am unable to participate in high-risk evolutions, which may result in a loss of special duty pays.

//

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on February 12, 2022.

*/s/ Navy SEAL 13*
NAVY SEAL 13

Exhibit A

**From:** ███ Navy SEAL 13 ███ PO1 USN USSOCOM NSW (USA)
**Sent:** Wednesday, September 29, 2021 7:55 AM
**To:** Barker, Brandon L LT USN USSOCOM NSW (USA) <brandon.barker@socom.mil>
**Subject:** Pending exemption

Sir,

Per our conversation yesterday evening, it is still my intention to move forward with my exemption despite your decision to remove me from this course. This was not a foreseeable outcome when I was billeted for this position. However, due to my convictions I cannot make a decision counter to my beliefs. Moving forward, do you want me to provide the Detachment OIC's contact information (email/office number) for the course? I'm unaware of the process that needs to occur to initiate my removal. It is not my intention to remove myself as I am still willing/able to complete the course of instruction. I will be departing shortly to conduct a practical exercise, and will be unavailable until late this afternoon or early evening. Please advise me of the process moving forward so I can make the appropriate preparations moving forward.

V/r

███████
Navy SEAL 13 ███████

**From:** Barker, Brandon L LT USN USSOCOM NSW (USA) <brandon.barker@socom.mil>
**Sent:** Thursday, September 30, 2021 10:14 AM
**To:** ▮▮▮ Navy SEAL 13 ▮▮▮ PO1 USN USSOCOM NSW (USA) < ▮▮▮▮▮ @socom.mil>
**Subject:** RE: DTS

▮▮▮

I spoke with Sal(?) and hope he relayed the instructions to arrange for a flight today and return to SD.

VR/
Brandon

Very respectfully,
LCDR Brandon L. Barker, USN
Special Reconnaissance Team ONE
Operations Officer



brandon.barker@socom.mil

**From:** ▮▮▮ Navy SEAL 13 ▮▮▮ PO1 USN USSOCOM NSW (USA)
< ▮▮▮▮▮ @socom.mil>
**Sent:** Wednesday, September 29, 2021 2:51 PM
**To:** Barker, Brandon L LT USN USSOCOM NSW (USA) <brandon.barker@socom.mil>
**Subject:** DTS

Sir,

Just returned from the practical exercise for the day and will be inundated with paperwork for the next few hours. I forgot to mention that I am due to submit new DTS orders for the FY. Is it your intention that I forgo that process until you give me further guidance?

V/r



Navy SEAL 13

Exhibit B



**DEPARTMENT OF THE ARMY**
6TH BATTALION, 2D SPECIAL WARFARE TRAINING GROUP (AIRBORNE)
UNITED STATES ARMY JOHN F. KENNEDY SPECIAL WARFARE CENTER AND SCHOOL
FORT BRAGG, NORTH CAROLINA 28310

AOJK-FBN                                                                30-Sep-2021

MEMORANDUM THRU Commander, A CO, 6th BN, 2d SWTG (A), USAJFKSWCS, Fort Bragg, NC 28310

FOR Commander, 6th BN, 2d SWTG (A), USAJFKSWCS, Fort Bragg, NC 28310

SUBJECT: PO1 ▮SEAL 13▮ Non-Academic Relief (Unit Recall)

1. I acknowledge the receipt of correspondence.   My chain of command directed me to discontinue my participation in ASOT-C and to return to the unit immediately. I am not voluntarily removing myself from the course but am complying with the order from my chain of command.

2. I do not   intend to appeal this action. A letter of appeal is not   attached as an enclosure. I understand that I have one duty day from date of notification of relief to decide whether I want to appeal. I understand that I have two duty days to submit a letter of appeal for an ETR and up to three days for an NTR through A Co, 6th BN, 2d SWTG (A) chain of command to the appellate authority IAW USAJFKSWCS Reg 350-12.

3. I have not   consulted with counsel.

Navy SEAL 13

PO1, USN
XXX-XX-▮

Exhibit C

CONTROLLED UNCLASSIFIED INFORMATION

21SEP21

Fm CDR USAJFKSWCS
To CDR 1 SWTG
CDR 2 SWTG
CDR SWMG
CDR HHC
Commandant WOI
Commandant NCOA

(U) Subject: FRAGO 1 to USAJFKSWCS Coronavirus Disease 2019 (COVID-19) OPORD – Steady State Operations.

(U) References.

REF // E / (U) ADD. FRAGO 5 to USASOC Order 21-02 – COVID-19 Steady State Operations

**1. Situation.** NO CHANGE

**1.D.** (U) CHANGE TO READ The Secretary of Defense (SECDEF) directed all members of the Armed Forces (Service Members) under the Department of Defense (DOD) to be fully vaccinated against COVID-19 with the FDA approved vaccine. The Army directed all units to achieve 100% complete vaccination of all COMPO 1 Active Duty Soldiers NLT 15 December 2021 and COMPO 2 and 3 Reserve Soldiers will achieve 100% complete vaccination NLT 30 June 2022. Guidance pertaining to unvaccinated DA Civilians (DACs) and government contractors is forthcoming.

**2. Mission.** NO CHANGE

**3. (U) Execution.**

**3.A.  (U) Commander's intent.** NO CHANGE

**3.B. (U) Concept of the Operation.** CHANGE

**3.B.2.** (U) CHANGE TO READ Commanders will conduct mandatory vaccinations to ensure that every Soldier who is not otherwise exempt is fully vaccinated in order to sustain USAJFKSWCS force generation requirements. This is a readiness, health, and welfare priority for the entire command. The Secretary of Defense has issued a lawful order and USAJFKSWCS has a responsibility to ensure good order and discipline within its formation through full execution.

3.B.2.A. (U) ADD The Secretary of Defense directed all members of the Armed Forces under the Department of Defense be fully vaccinated against COVID-19 in accordance with ANNEX F. See paragraph 3.E.3.J for coordinating instructions.

3.B.2.B. (U) ADD USAJFKSWCS will mirror the Army and USASOC's phased implementation of mandatory vaccination of its assigned Service Members. Phase 1 begins immediately. Phase 2 begins on order. COMPO 1 USASOC service members will achieve 100% complete vaccination NLT 15 December 2021, ensuring service members receive either both MRNA doses of Pfizer or Moderna vaccines or single dose

1

**Pls.' Mot. for Order to Show Cause Suppl. App. 0065**

CONTROLLED UNCLASSIFIED INFORMATION

of J&J vaccine by 24 NOV 21. COMPO 2 and 3 service members will achieve 100% complete vaccination NLT 30 June 2022.

3.B.2.B.1. (U) ADD Phase 1: Effective immediately, commanders will vaccinate all Soldiers who are not otherwise exempt. Orders to receive the mandatory vaccine are lawful. Commanders will ensure sufficient doses of DoD approved vaccines are on hand and available for their unit. Soldiers may at any time still voluntarily receive any other vaccine approved for emergency use. Soldiers requesting an exemption are not required to receive the vaccine pending the final decision on their exemption request. Only those adverse administrative actions identified for Phase 1 are authorized during Phase 1 for Soldiers refusing the vaccine; any other adverse action based solely on vaccine refusal is withheld during this phase.

3.B.2.B.1.A. (U) ADD Commanders, Command Sergeants Major, nominative and key billet sergeants major, first sergeants, and officers in command select list (CSL) key billets who refuse the mandatory vaccination order, and who are not pending final decision regarding an exemption request, will be suspended, notified in writing of their pending relief of duties, provided a reasonable period not to exceed 5 calendar days to respond, and will be then be subject to relief of their duties due to continuing refusal. This authority is withheld to the first general officer in the chain of command. The general officer directing this action will provide immediate notification to USASOC and to Army Human Resources Command (HRC).

3.B.2.B.1.B. (U) ADD Officers selected for, and waiting to assume, a CSL command/key billet position who refuse the mandatory vaccination order, and who are not pending final decision regarding an exemption request, will be deferred from the CSL command/key billet position, notified in writing of their deferral, provided a reasonable period not to exceed 5 calendar days to respond, and will then be subject to removal from the CSL/key billet list by the vice chief of staff of the army (VCSA) due to continuing refusal. The first general officer in the chain of command will provide immediate notification of the officer's continuing refusal to the CG, HRC, the DCS, G-1, and the VCSA. The CG, HRC, will notify and defer CSL command/key billet selects in the rank of lieutenant colonel (O-5) and the VCSA will notify and defer CSL command/key billet selects in the rank of colonel (O-6). only the VCSA can remove officers from the CSL command/key billet list.

3.B.2.B.1.C. (U) ADD Enlisted Soldiers selected for, and waiting to assume, a nominative sergeant major or command sergeant major/key billet position who refuse the mandatory vaccination order, and who are not pending final decision regarding an exemption request, will be notified in writing that they are subject to removal, provided a reasonable period not to exceed 5 calendar days to respond, and will then be subject to removal proceedings due to continuing refusal. The first general officer in the chain of command will provide immediate notification of the soldier's continuing refusal to the nominative sergeants major program office, HQDA, for nominative sergeants major positions, or to the sergeant major management division, HRC, for command sergeant

2

**Pls.' Mot. for Order to Show Cause Suppl. App. 0066**

CONTROLLED UNCLASSIFIED INFORMATION

major/key billet positions. Removal proceedings will be conducted prior to the Soldier assuming the position and will be in accordance with the procedures in AR 614-200 (Enlisted Assignments and Utilization Management). Removal of reserve component enlisted soldiers will follow component specific policies for removal of nominative sergeant major or command sergeant major/key billet selects.

3.B.2.B.1.D. (U) ADD Commanders will request a General Officer Memorandum of Reprimand (GOMOR) be initiated for all Soldiers refusing the vaccine.

3.B.2.B.1.E.  (U) ADD Soldiers who refuse the mandatory vaccination order will be flagged IAW AR 600-8-2, unless they are pending an exemption.

3.B.2.B.1.F. (U) ADD Commanders will not take adverse action against Soldiers with pending exemption requests. Soldiers with pending exemption requests will be considered compliant with the mandatory vaccination order while requests are pending. However, Soldiers with pending exemption requests remain subject to COVID-19 testing under applicable DOD guidance.

3.B.2.B.2. (U) ADD Phase 2: Begins on order. In addition to phase 1 actions for removing personnel from senior leader billets and requesting GOMORS, commanders will initiate mandatory separation of Soldiers who refuse the vaccine. failure to comply is punishable under the Uniform Code of Military Justice. Authority to impose adverse administrative actions, non-judicial, and judicial actions is withheld to O-6 commanders, and to the 1-star level for units without an O-6 commander.

### 3.C. (U) Tasks to USAJFKSWCS Subordinate commands CHANGE

### 3.C.1. (U) All Commands and Schools. CHANGE

3.C.1.E. (U) RESTATED. USAJFKSWCS subordinate commanders will vaccinate Service Members in accordance with this order, REF E, and Annex F. Commanders will follow all vaccination protocols and schedules published by installation Senior Commanders. See paragraph 3.E.3.J. for coordinating instructions.

3.C.1.H. (U) ADD Phase 1 Counseling. All USAJFKSWCS CSUs will finalize Phase I mandatory vaccination counseling of their non-vaccinated COMPO 1 Service Member populations (using Annexes J and K), and report completion to USAJFKSWCS G-3 NLT 24 SEP 21. USAJFKSWCS G-3 will report completion to USASOC G-33 Command Center and USASOC G-1 NLT 27 SEP 21. Units are to maintain signed counseling forms internally for record.

3.C.1.I. (U) ADD All USAJFKSWCS units will achieve 100% full vaccination of their non-deployed, non-exempt, non-refusal COMPO 1 Service Member population NLT 22 NOV 2021.

3.C.1.I.1. (U) ADD USAJFKSWCS units will assign shot 1 dates for all unvaccinated permanent party (cadre and students) service members to ensure all personnel receive shot 1 NLT 14 OCT. Units will provide projected number of shots required by day to the SWCS G3 NLT 24 SEP 21.

3

CONTROLLED UNCLASSIFIED INFORMATION

3.C.1.J. (U) ADD USAJFKSWCS units will establish a record of Service Members who request an administrative or religious exemption to the mandatory COVID-19 vaccination. At a minimum, units will track

(1) Type of exemption request (see paragraph 3.E.3.J.6.)

(2) date the request for exemption was initiated

(2) current status of request for exemption (level of review)

(3) final adjudication (approved / disapproved) and date of adjudication

### 3.C.2. (U) Special Warfare Medical Group. NO CHANGE

### 3.C.3. (U) 1st Special Warfare Training Group. NO CHANGE

### 3.C.4. (U) 2nd Special Warfare Training Group. NO CHANGE

### 3.D. (U) Tasks to USAJFKSWCS Staff.

### 3.D.1. (U) G3

3.D.1.E. (U) CHANGE TO READ USAJFKSWCS G37 will incorporate guidance in the Army Training Requirements and Resource System (ATRRS) that directs mandatory vaccinations for all future students before arriving at any USAJFKSWCS school after 15 OCT 21 and directs mandatory initiation of vaccine protocols for Soldiers in a student status on 15 OCT 21.

3.D.1.F. (U) ADD USAJFKSWCS G3 will provide a designated representative to attend weekly USASOC Vaccination Progress Sync Meeting held Wednesdays at 1330 EST via teleconference. Agenda to be published and sent separately.

### 3.D.3. (U) ADD G1

3.D.3.A. (U) ADD NLT 22 1600 SEP 21, provide the Deputy G3, MAJ Bradley Krauss, a POC for receiving and processing administrative exemptions from USAJFKSWCS subordinate units. Coordinate with the USASOC G-1 administrative exemptions for religious accommodation POC: Mr. Tommy R. McGowen, tommy.mcgowen.civ@socom.mil, 910-432-7301.

### 3.E. (U) Coordinating instructions.

### 3.E.1. (U) Reporting CHANGE

3.E.1.G. (U) ADD USAJFKSWCS units will report status of current approved exemptions and pending requests for all assigned personnel, for both medical and administrative exemptions, NLT 1200 on Tuesdays, starting 21 SEP 21. Exemption reports will be submitted to the POC identified in 3.D.3.A who will submit them to the USASOC G-1 POC and USASOC COVID OIC NLT 1600 on Tuesdays.

### 3.E.2. (U) Mask Guidelines NO CHANGE

### 3.E.3. Vaccinations

### 3.E.3.G. (U) DELETED

### 3.E.3.H. (U) DELETED

4

CONTROLLED UNCLASSIFIED INFORMATION

3.E.3.J. (U) CHANGE TO READ In accordance with this order, REF E, and Annex F, USAJFKSWCS subordinate commanders will conduct mandatory vaccination operations of unvaccinated Service Members with the FDA-approved Pfizer/Comirnaty COVID-19 vaccine or continue voluntary vaccination with Moderna or Johnson & Johnson's Janssen vaccine. Service Members are considered fully vaccinated two weeks post completion of a two-dose series vaccine or two weeks post completion of a one-dose series vaccine.

3.E.3.J.1. (U) ADD While the only mandatory COVID-19 vaccine is the FDA-approved Pfizer/Comirnaty COVID-19 vaccine, Service Members may continue to choose to voluntarily receive any FDA emergency use authorized (EUA) vaccine. Service Members who completed an EUA authorized series are not required to start the series again with the FDA approved vaccine.

3.E.3.J.1.A. (U) ADD In exceptional situations in which the mRNA vaccine product given for the first dose cannot be determined or is no longer available, any available mRNDA COVID-19 vaccine may be administered at a minimum interval of 28 days to complete the series, after consultation with a medical provider.

3.E.3.J.1.B. (U) ADD Service Members who are actively participating in COVID-19 clinical trials are exempt from mandatory vaccination against COVID-19 until the trial is complete.

3.E.3.J.2. (U) ADD Commanders will read and comply with AR 600-20 (Army Command Policy), paragraph 5-4G, regarding command authority for immunizations.

3.E.3.J.3. (U) ADD To be published: guidance on medical deployability status of Soldiers who refuse the vaccine and reporting requirements for tracking service members eligible (assigned), service member refusals, service member exemptions, and service member non-available (TDY, leave, school, etc.).

3.E.3.J.4. (U) ADD There will be no involuntary (forcible) immunizations.

3.E.3.J.5. (U) ADD Process when Soldier declines immunization: effective immediately, if a Soldier declines mandatory vaccination order, the Commander will counsel the Soldier using DA form 4856 IAW Annexes J and K. The Commander then directs the Soldier to view the mandatory educational video on the benefits of the vaccine. (https://www.cdc.gov/coronavirus/2019-ncov/vaccines/keythingstoknow.html). Following the mandatory video, the Soldier's immediate Commander will order the soldier to comply with the order to receive the vaccine.

3.E.3.J.5.A. (U) ADD If the Soldier declines again, the immediate Commander directs the Soldier to meet with a medical professional (physician, physician assistant, or a nurse practitioner) to further discuss the benefits of vaccination and address the Soldier's concerns. Following that meeting, the Soldier's immediate Commander will order the Soldier again to receive the vaccine. If the Soldier declines immunization once again, the commander will consult with their servicing judge advocate/SJA.

Pls.' Mot. for Order to Show Cause Suppl. App. 0069

3.E.3.J.6. (U) ADD Exemptions. The two types of authorized exemptions from immunization are administrative and medical. What determines an exemption (medical vs administrative) is defined in AR 40-562. Commanders will refer to AR 40-562, paragraph 2-6, and AR 600-20, Appendix P-2, when processing immunization exemption requests. Service Members with previous infections or positive serology are not automatically exempt from full vaccination requirements and should consult with their Primary Care Manager (PCM).

3.E.3.J.6.A. (U) ADD Medical exemption. Soldiers who believe they require a medical exemption should consult with their PCM. The PCM will determine a medical exemption based on the health of the vaccine candidate and the nature of the immunization under consideration. Medical exemptions may be temporary (up to 365 days) or permanent. If the PCM indicates a temporary exemption is valid, the PCM will approve the temporary exemption. However, if no exemption is identified, the PCM will disapprove the request, administer the vaccine to the Service Member if the Service member agrees to voluntarily receive it, and document into MEDPROS. If the Service Member declines to be vaccinated by the PCM, the Service Member will be referred back to their commander for action.

3.E.3.J.6.A.1. (U) ADD The approval authority for permanent medical exemptions is The Surgeon General (TSG). All requests for permanent medical exemptions must be staffed to the Office of The Surgeon General (OTSG). TSG has delegated the approval authority for permanent medical exemptions to the Regional health Command-Commanding Generals (RHC-CG). No further delegations below TSG's designee are permitted.

3.E.3.J.6.A.2. (U) ADD Once a PCM reviews a request for a permanent medical exemption, the PCM will forward their recommendation either to approve or denty to the RHC-CG. If the RHC-CG approves the exemption, the PCM will document in MEDPROS. If the RHC-CG disapproves the exemption, the Service Member can elect to appeal to TSG. TSG is the final appeal authority. If TSG approves the exemption, the PCM will document the exemption in MEDPROS. If TSG disapproves the exemption and the Service Member still refuses vaccination, the Commander will consult with their servicing Judge Advocate.

3.E.3.J.6.B. (U) ADD Administrative exemptions. Administrative exemptions include religious accommodations., as well as others enumerated in AR 50-562 (Immunizations and Chemoprophylaxis for the Prevention of Infections Diseases). Commanders will refer to AR 40-562, paragraph 2-6, and AR 600-20, appendix P-2, for guidance on processing immunization exemption requests. Units will process religious accommodation exemptions thru their G-1 sections to USASOC's G-1 POPP-D section. Service members with previous infections or positive serology are not exempt from full vaccination requirements and should consult with their Primary Care Manager (PCM).

3.E.3.J.6.B.1. (U) ADD Religious Accommodation Exemption. Pursuant to AR 600-20, Appendix P-2B, Soldiers with religious practices in conflict with immunization

CONTROLLED UNCLASSIFIED INFORMATION

requirements may request an exemption through command channels. TSG is the only approval or disapproval authority for immunization accommodation requests. The Assistant Secretary of the Army for Manpower and Reserve Affairs (ASA(M&RA)) is the final appeal authority. Any religious accommodation request for an immunization exemption must comply with the requirements described in AR 600-20, Appendix P-2B, and DODI 1300.17, "Religious Liberty in the Military Services," September 1, 2020.

3.E.3.J.6.B.2. (U) ADD The Commander must counsel the Soldier that noncompliance with immunization requirements may adversely impact deployability, assignment, or international travel, and that the exemption may be revoked under imminent risk conditions. IAW AR 600-20, Appendix p-2b, commanders will arrange for an in-person or telephonic interview between a Soldier requesting a religious accommodation and the unit or other assigned chaplain. The chaplain assesses the basis and sincerity of the belief and must provide a written memorandum to the chain of command pursuant to the requirements of AR 600-20, Appendix p-2b(2). a licensed health care provider will counsel the applicant to ensure the applicant is making an informed decision IAM AR 600-20, Appendix p-2b(3).

3.E.3.J.6.B.3. (U) ADD The immediate Commander through the General Court-Martial Convening Authority (GCMCA) must review the request and recommend approval or denial to TSG. Chain-of-command recommendations will address the facts of military necessity described in AR 600-20, paragraph 5-6a. A legal review must be conducted at the GCMCA level prior to forwarding the request. Upon completion, the GCMCA will upload the request in Task Management Tool (TMT) for staffing to TSG.

3.E.3.J.6.C. (U) ADD Soldiers with pending active requests for an immunization exemption submitted IAW AR 40-562 are temporarily deferred from immunization, pending the outcome of their request or any appeal of a denied request.

3.E.3.J.6.D. (U) ADD Commanders with Soldiers who have submitted and are pending a decision on a medical or administrative exemption, or who have Soldiers who have declined the vaccine after receiving the required counseling and any follow-on direct order, will ensure such Soldiers comply with existing DOD and Army guidance for force health protection measures applicable to unvaccinated personnel.

3.E.3.J.6.E. (U) ADD Commanders will consult with their servicing judge advocate and appropriate medical professionals when implementing this order.

3.E.3.K. (U) RESTATED Mandatory vaccination is required for all inbound students effective 15 OCT 21. This will allow those students six weeks after the publishing of FRAGO 1 to receive either the Pfizer, Moderna, or Johnson and Johnson (J&J) series before arriving at their scheduled report date. Since Moderna and J&J are recognized as DoD voluntary immunization options to achieve fully vaccinated status, DoD will only direct vaccines that received full licensure from the FDA (i.e. Pfizer-Biotech) as the mandatory vaccination requirement against COVID-19. The minimum time window to be considered fully vaccinated if receiving the FDA approved Pfizer-Biotech COVID-19 vaccine two-dose series is five weeks. This consists of a minimum three-week/ 21 day

Pls.' Mot. for Order to Show Cause Suppl. App. 0071

wait period upon receiving the 1st dose, followed by an additional two-week/ 14 day wait period after receiving the 2nd dose. The minimum time to be considered fully vaccinated if receiving the Johnson and Johnson single dose vaccine is 14 days. Those students arriving at Fort Bragg as a permanent party Soldier with only the first dose of either the FDA-approved Pfizer or Moderna vaccine will coordinate with their gaining student company leadership during in-processing to receive their 2nd dose series. Inbound students requiring vaccines will be prioritized per the pre-established four-tiered schema as outlined in paragraph 3.E.3.C.1 of this order.

3.E.3.L. (U) ADD Any service member in student status on 15 OCT, regardless of when the course started prior to 15 OCT, must have initiated vaccination protocols by 15 OCT. Initiating the vaccine protocol is defined as (1) receiving the 1st dose of the DoD-mandated Pfizer or voluntary Moderna two-shot series; (2) receiving the 1st and 2nd doses of the DoD mandated Pfizer or voluntary Moderna two-shot series but being less than 14 days post 2nd dose; or, (3) receiving the Johnson and Johnson one-shot series but being less than 14 days post dose. Any student who is fully vaccinated meets the requirements of this paragraph. Students who do not comply with vaccination requirements may be dropped from the respective course and returned to their chain of command for further action.

3.E.3.M. (U) ADD Pregnant Service Members. The American College of Obstetrics and Gynecologists (ACOG) recommends all pregnant women service members be vaccinated against COVID-19. Getting a vaccine could help both mother and the fetus. Pregnant women service members have a higher risk of severe illness from COVID-19 than non-pregnant women. The vaccines are very effective at preventing COVID-19 infections, severe illness, and death.

3.E.3.M.1. (U) ADD A growing amount of data confirms that COVID-19 vaccines are safe during pregnancy. Scientists have compared the pregnancies of women who have received COVID-19 vaccines and women who have not. The reports show that these women have had similar pregnancy outcomes. Data does not show any safety concerns.

3.E.3.M.2. (U) ADD A pregnant Soldier with concerns about vaccination during pregnancy may consult with her healthcare provider to discuss if a temporary medical exemption is appropriate.

3.E.3.N. (U) ADD Per AR 40-652, "medical readiness" immunization status does not make a Soldier non-deployable. Deficiency of one of the individual medical readiness (IMR) required vaccines makes a Soldier medical readiness category 2 "partially medically ready" but they are deemed deployable IAW DODI 1332.45. IMR deficiencies are expected to be addressed prior to any deployment. Certain immunizations may be a theater entry requirement for Force Health Protection. COVID-19 vaccine is a readiness requirement under the IMR.

**3.E.4. Travel and Restriction of Movement Requirements (ROM)** NO CHANGE

**3.E.5. Testing** NO CHANGE

**4. Sustainment.** Not Used

CONTROLLED UNCLASSIFIED INFORMATION

**5. Command and signal.**

**5.A. (U) Command.** Not Used

**5.B. (U) Signal.**

**5.B.1. (U) Helpful Links** NO CHANGE



## ANNEX XX Refusals and Medical/Religious Exemptions Process

### Mandatory Vaccination Declination

Soldier Declines Immunization

Commander counsels Soldier using Annex NN or OO to HQDA EXORD 225-21, FRAGO 5

Soldier views mandatory educational video

Following the mandatory video, the Soldier's immediate commander directs Soldier to comply with the order to receive the vaccination

Soldier Declines Immunization

Immediate commander directs Soldier to meet with designated medical professional (Physician, Physician Assistant, or Nurse Practitioner) to discuss vaccine and concerns

Immediate commander orders Soldier to receive vaccination

Soldier Declines Immunization

Commander contacts SJA regarding steps to issue GOMOR

### Medical Exemption

Soldier Declines Immunization

Commander counsels Soldier using Annex NN or OO to HQDA EXORD 225-21, FRAGO 5

PCM (or equivalent) assess the Soldier

If temporary exemption (up to 365 days) indicated, PCM will document in MEDPROS — **Approved**

If temporary exemption is denied, PCM administers vaccine if Soldier agrees and documents in MEDPROS; if Soldier declines, PCM refers Soldier back to Commander — **Disapproved**

PCM recommendation for approval or disapproval of permanent exemption is forwarded to RHC-CG for action — **Recommended**

RHC-CG approves permanent exemption (document in MEDPROS) — **Approved**

RHC-CG disapproves permanent exemption — **Disapproved**

Soldier elects to appeal to TSG

TSG approves appeal (document in MEDPROS) — **Approved**

TSG disapproves appeal — **Disapproved**

Commander is notified, orders Soldier to take vaccine, and if Soldier refuses, contacts SJA regarding steps to issue GOMOR

### Religious Exemption
*(subset of Administrative Exemptions)*

Soldier Declines Immunization

Commander counsels Soldier using Annex NN or OO to HQDA EXORD 225-21, FRAGO 5

Chaplain interviews Soldier; assess the basis and sincerity of belief; provides input (memo) for CoC

PCM (or equivalent) counsels Soldier to ensure that they are making an informed decision on risk

Commanders (CO/BN/BDE) provide CoC recommendations of approval or disapproval to GCMCA

OSJA conducts legal review, drafts recommendations for GCMCA

GCMCA recommends approval or disapproval and upload the request into TMT to TSG

TSG approves exemption (document in MEDPROS) — **Approved**

TSG disapproves exemption — **Disapproved**

Soldier elects to appeal to ASA(M&RA)

ASA(M&RA) approves appeal (document in MEDPROS) — **Approved**

ASA(M&RA) disapproves appeal — **Disapproved**

Commander is notified, orders Soldier to take vaccine, and if Soldier refuses, contacts SJA regarding steps to issue GOMOR

*ARNG see paragraph 3.D.8.B.8

# Exhibit D

RE: Extension Date





HB  **Navy SEAL 13** PO1 USN USSOCOM NSW (USA)
To: Hageman, George O LT USN USSOCOM NSW (USA);
Cc: Romero, Raul CWO-3 USN USSOCOM NSW (USA)
Signed By

Wed 1/26/2022 8:45 AM

ⓘ Follow up. Start by Wednesday, January 26, 2022. Due by Wednesday, January 26, 2022.
You replied to this message on 2/8/2022 2:16 PM.
This message is part of a tracked conversation. Click here to find all related messages or to open the original flagged message.

NAVADMIN 283 21 DOC.docx
.docx File

LT/CWO-03,

I am informing you of my decision to terminate my terminal leave and to request an extension of my EAOS to 1 June 2022.  Additionally, and respectfully, I would like to address the conversation we had in your office on 24 January 2022, where in the presence of CWO-03 Raul Romero, you stated that by terminating my terminal leave I may be subject to future ADSEP per NAVADMIN 283/21 on the basis my separation paperwork would no longer be approved before 21 January 2022.  You further provided me with a copy of the SJA (20 Dec 2021) COVID-19 CCDA Execution Guidance to Commanders that summarized NAVADMIN 283/21 to extrapolate that claim.  However, the SJA itself states that the update is no substitute for a thorough reading and application of the NAVADMIN 283/21 itself.  Upon reading NAVADMIN 283/21, I found multiple sections that do not align with your interpretation (see attachment: pages 7, 11, 12).  Section 5.a. addresses the 21 January 2022 date and its context summarized as follows: commanders shall delay initiating ADSEP processing for enlisted members with an EAOS on or before 1 June 2022 who are eligible for separation or retirement.  For those who are not eligible and/or do not desire to make such a request, initiate ADSEP processing no later than 21 January 2022.  The date hinges only the members eligibility and nothing more.  The most notable is section 5.a.(5) that states the following: "In cases where an enlisted service member is notified after 7 January 2022 that their exemption request was denied and continues to refuse the vaccine, that enlisted service member will be provided 14 days from the date of such notification to request separation or retirement in line with paragraph 5.a. above, if they are eligible and desire to make such a request.  Such requests must still ensure separation or retirement on or before 1 June 2022."

I make this distinction not only on my behalf, but to advocate for other members at my command (and other commands) who may be similarly situated in this circumstance.  I am asking for clarification concerning the SJA and NAVADMIN 283/21 to ensure that myself and all service members be provided with the most accurate information to make an informed decision throughout this process. These policies cannot be ambiguous by nature if they are to be enforceable.  Every member should be presented with clear and concise guidance to make an informed decision.  I have already faced two acts of reprisal from SRT-1 chain of command since the submission of my Religious Accommodation. Therefore, moving forward I want to ensure absolute clarity on Navy policy concerning NAVADMIN 283/21.

V/r
SO1 **SEAL 13**

From: Hageman, George O LT USN USSOCOM NSW (USA) <george.o.hageman.mil@socom.mil>
Sent: Tuesday, January 25, 2022 7:23 PM
To: **Navy SEAL 13** PO1 USN USSOCOM NSW (USA) <                    socom.mil>;
Cc: Romero, Raul CWO-3 USN USSOCOM NSW (USA) <raul.romero.mil@socom.mil>
Subject: Extension Date

SO1,

Can you please send us your desired date of extension? Thank you.

Very Respectfully,

George O. Hageman
LT, JAGC, USN
Assistant Staff Judge Advocate
Naval Special Warfare Group EIGHT
NIPR: 619-537-3693 / george.o.hageman.mil@socom.mil
SIPR: george.o.hageman.mil@socom.smil.mil

NOTICE: The information contained in this email and accompanying attachments is UNCLASSIFIED BUT SENSITIVE INFORMATION which may be LEGALLY-PRIVILEGED.  This information is intended solely for the use of the recipient identified above.  If you are not the intended recipient of this information, any disclosure, copying, distribution, or the taking of any action in reliance of this information is STRICTLY PROHIBITED.  The sender has not waived any applicable privilege by sending the accompanying transmission.  If you received this email in error or you have any questions, please notify me immediately by return email or by calling 619-537-3693.  Thank you.

**Pls.' Mot. for Order to Show Cause Suppl. App. 0076**

Exhibit E

**From:** Talmadge, David J CPO USN USSOCOM NSW (USA) <David.Talmadge@socom.mil>
**Sent:** Monday, December 6, 2021 1:16 PM
**To:** ███ Navy SEAL 13 ███ PO1 USN USSOCOM NSW (USA) ████████ @socom.mil>
**Cc:** Hout, Brittany A LCDR USN USSOCOM NSW (USA) <brittany.a.hout.mil@socom.mil>
**Subject:** RE: Dive Physical ICO SO1 ████

Sir,
Thank you for reaching out, this place has been a little crazy over the last few weeks.  We are not able to move forward with your Dive Physical until we receive the determination on your vaccine waiver request. Hopefully we will have answers soon.  Please let us know if you have any questions.
V/R
Dave

**From:** ███ Navy SEAL 13 ███ PO1 USN USSOCOM NSW (USA)
████████ @socom.mil>
**Sent:** Monday, December 6, 2021 11:00 AM
**To:** Talmadge, David J CPO USN USSOCOM NSW (USA) <David.Talmadge@socom.mil>
**Subject:** FW: Dive Physical ICO SO1 ████

HMC,

I haven't heard anything back from LCDR Hout concerning the below correspondence.  Seeing if I can get this done before the upcoming holidays.


V/r
SO1 ████


Navy SEAL 13

███ Navy SEAL 13 ███ M PO1 USN USSOCOM NSW (USA)
**Sent:** Wednesday, December 1, 2021 11:54 AM
**To:** Hout, Brittany A LCDR USN USSOCOM NSW (USA) <brittany.a.hout.mil@socom.mil>
**Subject:** Dive Physical ICO SO1 Hubbard

LCDR,

We were unable to touch base on my dive physical before I departed to LVL III.  Seeing if you had time available in the near future to discuss.

V/r
SO1 ███ Navy SEAL 13 ███

Exhibit 6

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

U.S. NAVY SEALs 1-3, on behalf of
themselves and all others similarly situated;
**U.S. NAVY EXPLOSIVE ORDNANCE
DISPOSAL TECHNICIAN 1**, on behalf of
himself and all others similarly situated; **U.S.
NAVY SEALS 4-26; U.S. NAVY SPECIAL
WARFARE COMBATANT CRAFT
CREWMEN 1-5; and U.S. NAVY DIVERS
1-3,**

                  Plaintiffs,

    v.

**LLOYD J. AUSTIN, III**, in his official
capacity as United States Secretary of
Defense; **UNITED STATES
DEPARTMENT OF DEFENSE; CARLOS
DEL TORO**, in his official capacity as
United States Secretary of the Navy,

                Defendants.

Case No. 4:21-cv-01236-O

## DECLARATION OF ROBERT WRIGHT

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury as follows:

1.    I am over the age of eighteen and am competent to make this declaration.

2.    I am an instructor at the Advanced Special Operations Techniques Course (ASOT-

C) at Joint Base Lewis-McChord, which is run by the U.S. Army.

3.    ▉Navy SEAL 13▉ was my student in the course during the summer of 2021. I was

his mentor and worked closely with him during that time.

4.    ▉SEAL 13▉ was the first student I have ever heard of to be removed from the course

before finishing because of unit recall. Until that happened, students only left the course without

finishing for three reasons: (1) academic failure; (2) compassionate release due to personal circumstances; and (3) the student quit.

5.      When the military COVID-19 vaccination mandate was first announced, there was some confusion as to how it would apply to students already in the course. It soon became clear that there was no vaccination requirement to remain in the course.

6.      There were both instructors and students in the course at this time, including SEAL 13, who were unvaccinated.

7.      The Army's vaccination policy did not require us to disenroll anyone from the course. The Army's policy also specified that no adverse action was to be taken against any soldier who had a pending religious accommodation request.

8.      There was at least one other servicemember in the course at the same time as SEAL 13 who was unvaccinated and had a pending religious accommodation request. That student was able to travel across the country to complete the course and finished the course successfully.

9.      Army policy allowed SEAL 13 to finish the course and did not require him to be disenrolled. To my knowledge, he was only removed because his unit recalled him.

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on February 1∅ , 2022.

ROBERT WRIGHT

# Exhibit 7

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **U.S. NAVY SEALs 1-3**, on behalf of themselves and all others similarly situated; **U.S. NAVY EXPLOSIVE ORDNANCE DISPOSAL TECHNICIAN 1**, on behalf of himself and all others similarly situated; **U.S. NAVY SEALS 4-26**; **U.S. NAVY SPECIAL WARFARE COMBATANT CRAFT CREWMEN 1-5**; and **U.S. NAVY DIVERS 1-3**, | |
|                Plaintiffs, | Case No. 4:21-cv-01236-O |
|    v. | |
| **LLOYD J. AUSTIN, III**, in his official capacity as United States Secretary of Defense; **UNITED STATES DEPARTMENT OF DEFENSE**; **CARLOS DEL TORO**, in his official capacity as United States Secretary of the Navy, | |
|               Defendants. | |

## <u>DECLARATION OF NAVY SEAL 21</u>

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury as follows:

1.      I am over the age of eighteen and am competent to make this declaration.

2.      I reviewed the declaration of CDR Andrew Sparks in support of Defendants' opposition to the motion for order to show case.

3.      I am assigned to SEAL Team 5 along with Navy SEAL 25. There is another member of Team 5 with a pending Religious Accommodation (RA) request. CDR Sparks states that we assist with "scheduling and execution of training." We have not been doing that. I helped facilitate training for two weeks before the command took my issued gear in early November (the

gear I need to be part of any training we do) and told me that I was no longer able to help train. I was asked for by name at the end of October to help TRADET (Training Detachment) by being a Range Safety Officer during a training block where I worked for three years before arriving at Team 5, but my command told them I could not help. We have been told that our SOP every day is to walk around the command picking up trash, take out the Commanding Officer and the Command Master Chief's trash, and then report back to the Ops Master Chief.

4.      CDR Sparks states that the three of us in Team 5 with pending RA requests may potentially contract COVID-19 and transmit it to other team members. But this has already happened numerous times with vaccinated personnel in Team 5. Also, the three of us with pending RA requests were recently required to escort retired SEALs (estimated age 50s-60s) around Team 5 for a program. It is unclear to me why we would be required to do that if we presented a danger to others far younger.

5.      CDR Sparks states that I was required to conduct an inventory of equipment I would need for overseas deployment but that was not done because I submitted an RA request. I did take an inventory of my gear, but I was required to turn it in.

6.      On February 9, 2022, the three of us with pending RA requests were told by our command that we will be standing quarter deck watch every workday from 0800-1700 and to split the watch amongst ourselves. Even split between the three of us, these are longer hours than we had before. This watch consists of allowing access to visitors and escorting them around the building. Team 5 did not have a quarter deck watch until we were assigned to this. Usually every department from the team will have someone stand watch in a rotation. Right now, the only people standing quarter deck watch are the three members of Team 5 with RA requests.

7.      When members of the command find out that we are standing quarter deck watch, they ask why we are being punished.

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on February 12, 2022.

*/s/ Navy SEAL 21*
NAVY SEAL 21

# Exhibit 8

While UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **U.S. NAVY SEALs 1-3**, on behalf of themselves and all others similarly situated; **U.S. NAVY EXPLOSIVE ORDNANCE DISPOSAL TECHNICIAN 1**, on behalf of himself and all others similarly situated; **U.S. NAVY SEALS 4-26**; **U.S. NAVY SPECIAL WARFARE COMBATANT CRAFT CREWMEN 1-5**; and **U.S. NAVY DIVERS 1-3**, | |
| Plaintiffs, | Case No. 4:21-cv-01236-O |
| v. | |
| **LLOYD J. AUSTIN, III**, in his official capacity as United States Secretary of Defense; **UNITED STATES DEPARTMENT OF DEFENSE**; **CARLOS DEL TORO**, in his official capacity as United States Secretary of the Navy, | |
| Defendants. | |

## DECLARATION OF NAVY SEAL 25

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury as follows:

1.      I am over the age of eighteen and am competent to make this declaration.

2.      I reviewed the declaration of CDR Andrew Sparks in support of Defendants' opposition to the motion for order to show case.

3.      I am assigned to SEAL Team 5 along with Navy SEAL 21. There is another member of Team 5 with a pending Religious Accommodation (RA) request. CDR Sparks states that we assist with "scheduling and execution of training." We have not been doing that. The

command took my issued gear in early November (the gear I need to be part of any training we do) and told me that I was no longer able to help train.

4.     CDR Sparks states that our unvaccinated status prevents us from doing many duties necessary to effectively train with our platoon's upcoming deployment. On 6 October 2021, I was told to assist with boat support for a platoon's training exercise. I was in the same boat and in close contact with a platoon of 25 SEALs in order to conduct training, despite being unvaccinated. I have not been asked to assist with training since I submitted my RA request on 14 October 2021.

5.     CDR Sparks states that we were required to conduct an inventory of equipment needed for overseas deployment but that was not done because I submitted an RA request. I did take an inventory of my gear, but I was required to turn it in.

6.     CDR Sparks states that the weapons watch I did took place at an airfield and that watch-standers were required to ensure accountability and custody of military weapons. The weapons were not located at an airfield, however, they were on base in a parking lot. The only servicemembers who stood this watch were the other SEAL with a pending RA and me. (SEAL 21 was on leave.) No one else at the team helped with this 18-hour overnight watch. Normally, teams watch their own weapons.

7.     On February 9, 2022, the three of us with pending RA requests were told by our command that we will be standing quarter deck watch every workday from 0800-1700 and to split the watch amongst ourselves. Even split between the three of us, these are longer hours than we had before. This watch consists of allowing access to visitors and escorting them around the building. Team 5 did not have a quarter deck watch until we were assigned to this. Usually every department from the team will have someone stand watch in a rotation. Right now, the only people standing quarter deck watch are the three members of Team 5 with RA requests.

**Pls.' Mot. for Order to Show Cause Suppl. App. 0088**

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on February 12, 2022.

<em>/s/Navy SEAL 25</em><br>NAVY SEAL 25

# Exhibit 9

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **U.S. NAVY SEALs 1-3**, on behalf of themselves and all others similarly situated; **U.S. NAVY EXPLOSIVE ORDNANCE DISPOSAL TECHNICIAN 1**, on behalf of himself and all others similarly situated; **U.S. NAVY SEALS 4-26**; **U.S. NAVY SPECIAL WARFARE COMBATANT CRAFT CREWMEN 1-5**; and **U.S. NAVY DIVERS 1-3**, | |
| Plaintiffs, | Case No. 4:21-cv-01236-O |
| v. | |
| **LLOYD J. AUSTIN, III**, in his official capacity as United States Secretary of Defense; **UNITED STATES DEPARTMENT OF DEFENSE**; **CARLOS DEL TORO**, in his official capacity as United States Secretary of the Navy, | |
| Defendants. | |

## DECLARATION OF NAVY SEAL 22

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury as follows:

1.      I am over the age of eighteen and am competent to make this declaration.

2.      I reviewed the declaration of LCDR Forrest Crowell in support of Defendants' opposition to the motion for order to show cause.

3.      I was told that my transfer to the SEAL Team from a training detachment was paused because I was not allowed to transfer within 60 days of submitting a Religious Accommodation request. I was already physically located at SEAL Team 7 and just required a formal transfer. As a result, I was going to wait to submit my RA until after I transferred, but I was

told that I would still be allowed to transfer while waiting for the result of the RA request. I submitted my RA request on October 14, 2021. LCDR Crowell states that my orders to serve as Leading Chief Petty Officer of Alpha platoon, SEAL Team 7, were cancelled one week later on October 21, 2021 "in accordance with operational readiness or mission requirements." But I was not relieved of duty as Platoon Chief until December 7, 2021. Each Troop has an Operations Chief that is ready to replace any platoon chief that is fired or injured, so I could have been relieved and replaced as soon as my orders were cancelled if it was required for "operational readiness or mission requirements."

4.      As I stated in my previous declaration, on January 28, 2022, I was told by my command that I will not be permitted to attend a training course along with the other members of my training cell. LCDR Crowell states that my attendance at this training was not approved because the travel was not "mission critical and could be conducted by other personnel." But this was not a training trip where I was going to be instructing. This trip was for my training cell to learn and renew/stay current on our Air Ops Trainer Examiner (AOT-E) qualification. I don't understand how traveling so I can train to maintain my qualifications can be done by "other personnel." And while no person is mission critical, *qualifications* are. AOT-E is a very limited qualification that not many members have and takes years to acquire. My AOT-E qualification is therefore very important to the SEAL Teams and decreases risk in the high-risk training that we do involving skydiving/parachuting.

5.      We also we have a civilian contractor with us on these training trips (who is not required to be vaccinated). During the course, we renew our civilian licenses (Advanced Free Fall Instructor) with him. Civilian qualifications are needed to have the AOT-E military qualification.

Since this trip was cancelled, I no longer maintain my civilian qualifications needed for my military qualifications.

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on February 12, 2022.

*/s/Navy SEAL 22*
NAVY SEAL 22