## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| **NAVY SEALS 1-3**, *et al.*,<br><br>                  Plaintiffs,<br><br>    v.<br><br>**LLOYD AUSTIN, III**, in his official capacity as Secretary of Defense, *et al.*,<br><br><br>                  Defendants. | Case No. 4:21-cv-01236-O |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS'
## MOTION FOR CLASS CERTIFICATION

## TABLE OF CONTENTS

INTRODUCTION...................................................................................................... 1

ARGUMENT .......................................................................................................... 2

I.     Plaintiffs' Motion Should be Denied for Failure to Confer. .......................................3

II.    The Proposed Subclasses Are Not Ascertainable.......................................................4

III.   The Proposed Classes Do Not Satisfy Rule 23(a) Requirements. ..............................5

      A.    The Proposed Classes Do Not Share Common Questions. ...................................5

      B.    Lead Plaintiffs Are Not Typical Of The Putative Classes.................................. 13

      C.    Plaintiffs And Their Counsel Have Not Shown They Will Fairly And Adequately Protect The Interests Of The Classes................................................................. 15

IV.   Plaintiffs Fail to Show a Class That Can Be Maintained Under Rule 23(b). ............ 19

V.    The Court Should Defer Ruling on Plaintiffs' Request for Certification. .................. 20

CONCLUSION....................................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997)..................................................................................................16, 19

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,*
   568 U.S. 455 (2013)......................................................................................................... 6

*Arizona v. Evans,*
   514 U.S. 1 (1995) ......................................................................................................17, 21

*Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.,*
   571 U.S. 49 (2013)..........................................................................................................18

*Beck v. Maximus, Inc.,*
   457 F.3d 291 (3d Cir. 2006) ..........................................................................................18

*Berger v. Compaq Comput. Corp.,*
   257 F.3d 475 (5th Cir. 2001) .........................................................................................16

*Bolin v. Sears, Roebuck & Co.,*
   231 F.3d 970 (5th Cir. 2000) .........................................................................................19

*Casa Orlando Apartments, Ltd. v. Fed. Nat'l Mortg. Ass'n,*
   624 F.3d 185 (5th Cir. 2010) .........................................................................................19

*Chavez v. Plan Benefit Servs. Inc.,*
   957 F.3d 542 (5th Cir. 2020) .........................................................................................15

*Conrad v. Gen. Motors Acceptance Corp.,*
   283 F.R.D. 326 (N.D. Tex. 2012) ................................................................................... 4

*DeBremaecker v. Short,*
   433 F.2d 733 (5th Cir. 1970) .......................................................................................... 4

*DeOtte v. Azar,*
   332 F.R.D. 188 (N.D. Tex. 2019) ..................................................................................12

*Dodson v. Dep't of Army,*
   988 F.2d 1199 (Fed. Cir. 1993) ...................................................................................... 9

*Doe 2 v. Shanahan,*
   917 F.3d 694 (D.C. Cir. 2019).....................................................................................9, 10

*Dukes v. Wal-Mart Stores, Inc.,*
   603 F.3d 571 (9th Cir. 2010) .........................................................................................7, 8

*Feder v. Elec. Data Sys. Corp.*,
    429 F.3d 125 (5th Cir. 2005) ...........................................................................................16

*Flecha v. Medicredit, Inc.*,
    946 F.3d 762 (5th Cir. 2020) ........................................................................................2, 13

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982)..........................................................................................................13

*H.M. v. United States*,
    No. CV 17-00786, 2017 WL 10562558 (C.D. Cal. Aug. 21, 2017) .......................................18

*Burwell v. Hobby Lobby*,
    573 U.S. 682 (2014).............................................................................................................6

*In re Delta/AirTran Baggage Fee Antitrust Litig.*,
    317 F.R.D. 675 (N.D. Ga. 2016)......................................................................................4, 5

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
    851 F. Supp. 2d 1040 (S.D. Tex. 2012) .................................................................................13

*In re Navy Chaplaincy*,
    306 F.R.D. 33 (D.D.C. 2014) ...........................................................................................8, 9

*In re Navy Chaplaincy*,
    No. 19-5204, 2020 WL 11568892 (D.C. Cir. Nov. 6, 2020)................................................ 9

*James v. City of Dallas, Tex.*,
    254 F.3d 551 (5th Cir. 2001) ................................................................................. 13, 14, 15

*John v. Nat'l Sec. Fire & Cas. Co.*,
    501 F.3d 443 (5th Cir. 2007) ..........................................................................................2, 4

*Kincade v. Gen. Tire & Rubber Co.*,
    635 F.2d 501 (5th Cir. 1981) ...............................................................................................15

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936)...........................................................................................................20

*M.D. ex rel. Stukenberg v. Perry*,
    675 F.3d 832 (5th Cir. 2012) .........................................................................................3, 12

*Maldonado v. Ochsner Clinic Found.*,
    493 F.3d 521 (5th Cir. 2007) .........................................................................................2, 19

*Monk v. Huston*,
    340 F.3d 279 (5th Cir. 2003) ...............................................................................................18

*Reeb v. Ohio Dep't of Rehab. & Corr.*,
    435 F.3d 639 (6th Cir. 2006) ...................................................................15

*Robinson v. Tex. Auto. Dealers Ass'n*,
    387 F.3d 416 (5th Cir. 2004) .................................................................... 2

*Salem v. Mich. Dep't of Corr.*,
    No. 13-CV-14567, 2019 WL 4409709 (E.D. Mich. Sept. 16, 2019) ......................................18

*Sherman v. Trinity Teen Sols., Inc.*,
    339 F.R.D. 203 (D. Wyo. 2021) ...............................................................18

*Slade v. Progressive Sec. Ins.*,
    856 F.3d 408 (5th Cir. 2017) ...................................................................16

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998).............................................................................19

*Tagore v. United States*,
    735 F.3d 324 (5th Cir. 2013) .................................................................... 6

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) .........................................................................18

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
    669 F.3d 632 (5th Cir. 2012) .................................................................... 4

*United States v. Mendoza*,
    464 U.S. 154 (1984)...........................................................................17

*Vegetal*,
    546 U.S. 418 (2006)............................................................................ 7

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011).....................................................................passim

*Ward v. Hellerstedt*,
    753 F. App'x 236 (5th Cir. 2018) ...........................................................3, 4

**Rules**

Fed. R. Civ. P. 23(a)(2)............................................................................ 6

Fed. R. Civ. P. 23(b)(2) ..................................................................2, 15, 19

## INTRODUCTION

On January 25, 2022, four of the thirty-five unnamed plaintiffs—specifically, Navy SEALs 1–3 and Navy Explosive Ordnance Disposal Technician 1 ("EOD 1")—moved to certify a class of "all members of the United States Navy who are subject to the Navy's COVID-19 Vaccine Mandate and who have submitted a Religious Accommodation request concerning the Navy's COVID-19 Vaccine Mandate." Pls.' Mot. to Certify Class ("Mot."), ECF No. 90 at 2.

Plaintiffs also moved to certify two subclasses, including a subclass of "all members of the Navy Class who are now or will be assigned to Naval Special Warfare or Naval Special Operations, who are subject to the Navy's COVID-19 Vaccine Mandate, and who have submitted a Religious Accommodation request concerning the Navy's COVID-19 Vaccine Mandate" ("Special Warfare Subclass"); and a subclass of "all members of the Navy Class who are now or will be United States Navy SEALs, who are subject to the Navy's COVID-19 Vaccine Mandate, and who have submitted a Religious Accommodation request concerning the Navy's COVID-19 Vaccine Mandate" ("SEALs Subclass"). *Id*. Plaintiffs further request that the Court appoint Plaintiffs' counsel as class counsel.

As an initial matter, Plaintiffs' motion should be denied because Plaintiffs failed to confer as required under Local Rule 7.1(b)(3). Regardless, Plaintiffs' proposed classes fail to meet the requirements of Rule 23. Both of Plaintiffs' proposed subclasses are unascertainable because they attempt to encompass a highly fluid, ever-changing group of service members. The proposed classes do not share common questions, as required by Rule 23(a)(2), because the Navy has a process to review religious accommodation requests to the vaccine requirement on a case-by-case basis. Similarly, lead Plaintiffs are not typical of the putative classes, as required by Rule 23(a)(3), because the putative class members encompass a broad range of religious beliefs, job positions

1

and responsibilities, and potentially less restrictive means of achieving the Navy's compelling governmental interest in maintaining a medically fit force ready for deployment at all times. Nor do Plaintiffs address how they overcome conflicts between themselves and members of the putative classes, especially given the seven lawsuits that Navy service members have filed around the country challenging the COVID vaccine requirements. Given the case-by-case review process and the variety of putative class members, Plaintiffs also fail to show that Defendants have "acted or refused to act on grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2). Finally, the Court should defer ruling on Plaintiffs' request for certification until the Fifth Circuit rules on Defendants' appeal of this Court's order granting Plaintiffs' Motion for Preliminary Injunction.

## ARGUMENT

Class actions are an exception to the ordinary course of American legal practice. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011). A putative class representative may litigate the class's claims only if he is "part of the class and 'possess[es] the same interest and suffer[s] the same injury' as the class members." *Id.* at 348–49 (citation omitted)).

"To obtain class certification, parties must satisfy Rule 23(a)'s four threshold requirements, as well as the requirements of Rule 23(b)(1), (2), or (3)." *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 523 (5th Cir. 2007). These four threshold conditions are "commonly known as numerosity, commonality, typicality, and adequacy of representation." *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 766 (5th Cir. 2020) (citing Fed. R. Civ. P. 23(a)) (additional citation and quotations omitted). Parties seeking class certification must also satisfy the ascertainability requirement implicit in Rule 23. *See John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007).

"To make a determination on class certification, a district court must conduct an intense factual investigation." *Robinson v. Tex. Auto. Dealers Ass'n*, 387 F.3d 416, 420 (5th Cir. 2004).

The plaintiff bears the burden to prove that these requirements have been met, and its offer of proof is subject to "rigorous analysis" in light of the "claims, defenses, relevant facts, and applicable substantive law." *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 837 (5th Cir. 2012) (vacating class certification); *see also Ward v. Hellerstedt*, 753 F. App'x 236, 246 (5th Cir. 2018) (vacating class certification when district court failed adequately "to consider and discuss the facts of this case, as well as the elements of Plaintiffs' claims, prior to rejecting Defendant's argument that dissimilarities among individual claimants obviate commonality").

Plaintiffs fail to show that their class is ascertainable; fail to show that the class has the requisite commonality, typicality, or adequacy; and fail to show that they meet the requirements under Rule 23(b)(2).

## I.      Plaintiffs' Motion Should be Denied for Failure to Confer.

Before reaching the substance of the motion, it should first be noted that Plaintiffs failed to properly confer with Defendants as required under Local Rule 7.1(b)(3). *See* Local Rule 7.1(b)(3) (providing that "[i]f a conference was not held, the certificate [of conference] must explain why it was not possible to confer."). At 12:11 PM on January 25, 2022, Plaintiffs emailed Defendants to ascertain their position on Plaintiffs' motion. *See* Ex. 1 (Email Chain Between Counsel re: Meet and Confer) (App002). At 2:06 PM on the same day, Defendants sent an email to Plaintiffs suggesting a call the following day, January 26, 2022, to discuss that motion. *See id.* Specifically, Defendants suggested the parties discuss the subclass definition because the words in Plaintiffs' proposed definition "who are now or will be assigned," *see* Pls.' Am. Compl., ECF No. 84 ¶ 54, are vague and leave the class indescribable, *see* Ex. 1 (Email Chain) (App002). Defendants also suggested the parties discuss how Plaintiffs planned to address the fact that other service members who would likely fall into Plaintiffs' putative class brought suit in other

3

jurisdictions.  *See id.*  Rather than respond to Defendants' email, at 2:14 PM on January 25, 2022, Plaintiffs filed their Motion for Class Certification.  ECF No. 90.  At 2:21 PM Plaintiffs filed their Brief in Support of their Motion.  ECF. No. 50.  Plaintiffs' Certificate of Conference inaccurately states that Defendants had not responded to their email, and does not explain why it was not possible to confer with Defendants pursuant to Local Rule 7.1 (b)(3).[1]  Accordingly, Plaintiffs' motion should be denied for failure to comply with the Local Rules.

## II.   The Proposed Subclasses Are Not Ascertainable.

As a threshold matter, "to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable."  *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012) (quoting *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (per curiam)); *see also John*, 501 F.3d at 445 (explaining that ascertainability is an "implied prerequisite" of Rule 23).  "An identifiable class exists if its members can be ascertained by reference to objective criteria (ascertainability)."  *Conrad v. Gen. Motors Acceptance Corp.*, 283 F.R.D. 326, 328 (N.D. Tex. 2012).  This requirement protects absent plaintiffs "by defining who is entitled to relief," and it protects defendants "by enabling a final judgment that clearly identifies who is bound by it."  *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 317 F.R.D. 675, 679 (N.D. Ga. 2016) (quoting 1 William B. Rubenstein, *Newberg on Class Actions* § 3:1 (5th ed. 2011)).

Here, Plaintiffs' proposed subclasses are both unascertainable.  The proposed Special Warfare Subclass includes "all members of the Navy Class who are now *or will be assigned* to

---

[1] Plaintiffs similarly failed to meaningfully confer prior to filing their Motion to Show Cause by refusing to provide Defendants any information regarding their allegations despite Defendants' repeated requests.  *See* ECF No. 95 at 4.  Plaintiffs also failed to confer before filing their motion for a Protective Order.  *See* ECF No. ECF No. 30 at 2.

Naval Special Warfare or Naval Special Operations" and the proposed SEALs Subclass includes "all members of the Navy Class who are now *or will be* United States Navy SEALs." Am. Compl. at 2. The subclasses, as Plaintiffs have defined them, are unascertainable because they are constantly in flux. *See* Am. Compl., ECF No. 84 ¶ 54 (emphases added). With regard to the proposed Special Warfare Subclass, "[t]he 'class' of individuals that 'will be assigned' to [Naval Special Warfare] includes service members "from every corner of the service." Ex. 2 (Decl. of Elizabeth Galvez) ¶ 3 (App014). The putative class members include individuals who "are currently serving in units across the Navy," *id.* ¶ 4 (App014), because any given Navy Special Warfare operation requires "skillsets from a range of military specialties," *id.* ¶ 3 (App014). As such, there is no principled way to define what service members "will be assigned to Naval Special Warfare or Naval Special Operations." Am. Compl. at 2.

With regarding to the proposed SEAL Subclass, "the pool of special operator trainees is highly fluid and ever-changing." Ex. 2 (Galvez Decl.) ¶ 8 (App016). It is not possible to ascertain who "will be United States Navy SEALs" and have also submitted a religious accommodation request concerning the vaccine requirement, Am. Compl. at 2, because the assignment cannot be guaranteed until a service member has officially matriculated as a SEAL, *see* Ex. 2 (Galvez Decl.) ¶ 8 (App016) (noting that "only around 25% of th[e] candidates will complete the pipeline and become combatant craft crewmen"). Accordingly, Plaintiffs' proposed subclasses are both unascertainable.

## III.    The Proposed Classes Do Not Satisfy Rule 23(a) Requirements.

Plaintiffs fail to establish that their proposed classes meet the required showings of commonality, typicality, and adequacy under Rule 23(a).

### A.    The Proposed Classes Do Not Share Common Questions.

Commonality under Rule 23(a)(2) is the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requires not just the literal raising of "common 'questions,'" but also "the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (citation omitted). Plaintiffs must demonstrate not only that their claims depend on a "common contention," but that contention "must be of such a nature that it is capable of classwide resolution—which means that the determination of its truth or falsity will resolve an issue central to the validity of each one of the claims in one stroke." *Id*. at 350; *see also Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 468 (2013). This requires more than showing "merely that [class members] have all suffered a violation of the same provision of law." *Wal-Mart*, 564 U.S. at 350) ("Quite obviously, the mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe that all their claims can be productively litigated at once.").

Establishing commonality in the context of a RFRA class action poses significant hurdles. Resolving a RFRA claim requires individualized analysis of the particular burden on the individual's exercise of religion, the government's compelling interest in implementing a requirement, and the availability of less restrictive alternatives to each such application. *See* Order on Preliminary Injunction ("Op."), ECF No. 66 at 19 (explaining that the RFRA analysis must "consider the 'asserted harm of granting specific exemptions to particular religious claimants'" (quoting *Burwell v. Hobby Lobby*, 573 U.S. 682, 726–27 (2014))); *see also Tagore v. United States*, 735 F.3d 324, 328 (5th Cir. 2013) ("The sincerity of a plaintiff's belief in a particular religious practice is an essential part of the plaintiff's prima facie case under . . . RFRA."); *id*. at 331 (explaining that "RFRA requires the government to explain how applying the statutory burden

'to the person' whose sincere exercise of religion is being seriously impaired furthers the compelling governmental interest" (quoting *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430–31 (2006))). RFRA claims "contemplate an inquiry more focused than [a] categorical approach." *Gonzales*, 546 U.S. at 430–31. Thus, the fact that many putative class members might raise a RFRA claim as to the same policy does not, in itself, establish commonality.

Rather, in a discrimination-type case, the putative class must establish that the *reasons* for adverse treatment are the same for each putative class member. *See Wal-Mart*, 564 U.S. at 352 (explaining that when plaintiffs "wish to sue about literally millions of employment decisions at once" under Title VII, "[w]ithout some glue holding the alleged *reasons* for all those decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was*" each exemption request denied). The Supreme Court in *Wal-Mart* provided that when a party seeks to certify a class concerning thousands of independent employment decisions under a theory of a pattern or practice of discrimination, it must either: (1) show that the employer "used a biased testing procedure to evaluate . . . applicants" common to the whole proposed class, or (2) provide "[s]ignificant proof that an employer operated under a general policy of discrimination" that would apply to the class. *Id.* at 353; *see also id.* at 347 (rejecting plaintiffs' argument that their "evidence of commonality was sufficient to 'raise the common question whether Wal-Mart's female employees nationwide were subjected to a single set of corporate policies (not merely a number of independent discriminatory acts)" (quoting *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 612 (9th Cir. 2010))).

Plaintiffs' proposed class action fails to meet these requirements. First, Plaintiffs fail to show that Defendants used biased procedures common to any of the three subclasses. To the

contrary, the Navy undertakes a highly individualized process to review and adjudicate religious exemption requests on a case-by-case basis. *See* Ex. 3 (Decl. of Capt. Mery-Angela Sanabria Katson, Feb. 15, 2022) ¶¶ 5–16 (App020–26). That process considers, individually for each requestor, the sincerity of the requestor's religious belief; whether the vaccine requirement imposes a substantial burden upon that belief; whether that burden is required in furtherance of a compelling Naval interest; and whether there are any less restrictive means to achieve that interest. *See id*. Each stage is highly dependent on the particular facts applicable to the individual requestor. *See id*. The final stage, in particular—whether there are any less restrictive means to achieve the Naval interest—is especially individualized. *See id*. ¶ 12. Specific duty assignments bear heavily on this factor. *See id*. ¶¶ 12–13 (providing examples of important considerations, such as whether the service member lives or works in close quarters on a ship, how fast a service member may have access to proper medical care, and the potential spread of disease from U.S. Navy personnel to foreign or host-nation personnel). Plaintiffs cannot show that Defendants use classwide biased procedures.

Nor have Plaintiffs provided any evidence—let alone the requisite "significant proof"—that the Navy "operated under a general policy of discrimination." *Wal-Mart*, 564 U.S. at 353. "In this case, just as in *Walmart*, Plaintiffs do not allege that the Navy ever had an express policy" of discrimination. *See In re Navy Chaplaincy*, 306 F.R.D. 33, 48 (D.D.C. 2014). Rather, Plaintiffs allege that Defendants have a "polic[y] or practice[] of across-the-board denial of all Religious Accommodation requests" concerning the COVID-19 vaccine requirement. Am. Compl. ¶ 57. But at best, Plaintiffs provide "anecdotal evidence," which is "too weak to raise any inference that all the individual, discretionary personnel decisions are discriminatory." *Wal-Mart*, 564 U.S. at 358. Plaintiffs fail to show that any alleged discrimination "manifested itself . . . in the same

general fashion" across each of the putative class members' unique religious accommodation requests. *Id.* at 353.

Preliminarily, only a small percentage of the accommodation requests have been fully adjudicated on appeal across the Navy. *See* Ex. 4 (Decl. of Mery-Angela Sanabria Katson, Feb. 3, 2022) (App056) (showing that, in the Navy, only 81 religious accommodation requests have been fully adjudicated through appeal and 1,222 appeals remain pending). Drawing any conclusions from the available data—and certainly any conclusion that accommodation requests are not being considered in good faith—is entirely unwarranted.

Regardless, the mere fact that many requests have been denied is consistent with the military's compelling interest in stemming the spread of COVID-19 and maintaining a medically fit force. *See* ECF No. 87, Ex. 1 ¶ 5 (Decl. of Admiral William K. Lescher) (App005); Ex. 5 (DoDI 1332.45) at 4 (App061) ("To maximize the lethality and readiness of the joint force" it is DoD policy that "all Service members are expected to be deployable."). And "[s]tatistical disparities . . . are not proof that any particular plaintiff, must less the class as a whole, has been discriminated against." *In re Navy Chaplaincy*, 306 F.R.D. at 52; *see also In re Navy Chaplaincy*, No. 19-5204, 2020 WL 11568892, at *1 (D.C. Cir. Nov. 6, 2020), *cert. denied sub nom. Chaplaincy of Full Gospel Churches v. Dep't of the Navy*, 142 S. Ct. 312, 211 L. Ed. 2d 148 (2021) (rejecting same evidence of statistical disparity in affirming district court's grant of summary judgment in favor of the Navy). Further, Plaintiffs' claim that the entire religious accommodation request process is a sham necessarily requires a finding that hundreds of military officials are acting in concert to issue indiscriminate and undifferentiated denials of each service member's request. *Cf. Dodson v. Dep't of Army*, 988 F.2d 1199, 1204 (Fed. Cir. 1993) ("[M]ilitary administrators are presumed to act lawfully and in good faith like other public officers, and the

military is entitled to substantial deference in the governance of its affairs."); *Doe 2 v. Shanahan*, 917 F.3d 694, 731 (D.C. Cir. 2019) (Williams, J., concurring) (noting that "the plausibility of such a scheme tends to unravel as we try to imagine the dozens of participants," including "Cabinet members and other officials," "who would have been needed for its realization" (quotation marks omitted)).   Plaintiffs may disagree that the Navy has a compelling interest in slowing the spread of COVID-19, but disagreement does not mean that military leaders are operating in bad faith.

Plaintiffs' only support for their allegations that Defendants have a policy of discrimination—besides the fact that some of the thirty-five Plaintiffs' religious accommodation requests have been initially denied and two have been denied on appeal, *see* ECF No. 108, Ex. 8 (Decl. of Capt. Mery-Angela Sanabria Katson, Feb. 7, 2022) ¶ 3 (App007) (as of February 2, 2022)—appears to be an anonymous complaint Plaintiffs' counsel "received on December 23, 2021 from one of [his] clients," ECF 62 (Decl. of Andrew B. Stephens) at 2.  This anonymous complaint does not purport to be from a Plaintiff in this litigation and was not signed under penalty of perjury. *See generally id.* It is unclear if the proponent of the anonymous complaint even knows that this complaint was filed in this lawsuit or that it has been relied on by Plaintiffs. *Id.*  Such anonymous, unauthenticated, double hearsay does not amount to "significant proof" that senior Navy officials are operating in bad faith. *Wal-Mart*, 564 U.S. at 353.

The anonymous complaint includes a copy of a Standard Operating Procedure ("SOP") providing instructions for processing religious accommodation requests.  *See* ECF No. 62 (Stephens Decl.) at 10–17; *see also* Ex. 3 (Katson Decl., Feb. 15, 2022) ¶ 17 (App028) ("[SOPs] are frequently used tools by military staff officers to implement efficient and uniform administrative procedures across a wide-range of military issues.").  Plaintiffs allege that this SOP is evidence that all religious accommodation requests are "pre-determined" and the process is "a

fraud" because the SOP includes a denial letter template. ECF No. 62 (Stephens Decl.) at 2. To the contrary, the SOP is an "administrative processing" tool to ensure that religious accommodation requests are adjudicated efficiently—a necessary tool given the unprecedented amount of religious accommodation requests related to the COVID-19 vaccine requirement. *See* Ex. 3 (Katson Decl., Feb. 15, 2022) ¶ 19 (App030); *see also id.* ¶ 18 & n.7 (App028) ("[O]nly 66 requests for religious accommodation from any vaccine (excluding the COVID-19 vaccines) were received from 2015 to the present. By contrast, 4,175 religious accommodation requests from the COVID-19 vaccine have been received as of February 14, 2022."). The SOP "does not dictate the manner in which the adjudicating authority . . . assesses any particular [religious accommodation] request." *Id.* ¶ 19 (App030). Indeed, at Step 46, once the adjudicating authority has made a final decision on the request, the form template may be modified before being returned to the adjudicating authority. *See id.* ¶ 18 (App029). The SOP is not evidence of a sham religious accommodation request process—it is merely an administrative tool to efficiently adjudicate the unprecedented amount of requests.

Plaintiffs also emphasize the importance of the Navy's medical accommodation process. One of Plaintiffs' alleged "[c]ommon [q]uestions" is whether the Navy has a "policy" of disqualifying unvaccinated service members from special operations duty if they have submitted a religious accommodation request, but not disqualifying unvaccinated service members from special operations duty if they have submitted a medical accommodation request. Mot. at 6. But the Navy does *not* treat unvaccinated service members differently depending on whether they requested a medical accommodation versus a religious accommodation. Rather, the Navy requires any service member who is not vaccinated—either by reason of a medical exemption or based on a religious request—to obtain a separate waiver in order to become deployable and continue in

that career field.  *See* ECF No. 87, Ex. 2 ¶ 6 (Suppl. Decl. of Capt. Lanny Littlejohn) (App036–37).[2]  Thus the Navy's medical accommodation process does not provide any evidence that the Navy is biased against granting religious accommodations.

Ultimately, Plaintiffs' allegations of a generalized policy of discrimination fail under the requisite "rigorous" factual analysis.  *See M.D. ex rel. Stukenberg*, 675 F.3d at 837.  Plaintiffs' claims turn on the distinct contours of each putative class member's case—the "individualized assessment" of their RFRA claims.  Op. at 19; *see also M.D. ex rel. Stukenberg*, 675 F.3d at 840 ("Rule 23(a)(2) requires that all of the class member's claims depend on a common issue of law or fact whose resolution 'will *resolve* an issue that *is central to the validity* of each one of the [class member's] claims in one stroke.'" (quoting *Wal-Mart,* 564 U.S. at 350) (emphasis and alteration by Fifth Circuit)).  This is in stark contrast to RFRA class actions challenging regulations that treat each class member the same.  For example, in *DeOtte v. Azar*, this Court certified two classes that objected, based on religious belief, to a regulation mandating that they provide health insurance coverage for contraceptive services.  332 F.R.D. 188, 197 (N.D. Tex. 2019) (O'Connor, J.).  The regulation applied with equal force to each class member.  It was irrelevant that the putative class members objected to different forms of contraceptives, because the regulation "compel[led] coverage of *all* FDA-approved contraceptives."  *Id*. *199.  Here, in contrast, the COVID-19

---

[2] As explained in Defendants' Motion for a Partial Stay, ECF No. 86, "a service member who receives an exemption or accommodation from the COVID-19 vaccination requirement, whether for religious or secular reasons, is not [physically qualified for special operations] unless he obtains separate medical clearance."  *Id.*  A medical exemption for the COVID-19 vaccination, like a religious exemption, only determines whether the service member will not be required to receive the COVID-19 vaccination.  In either circumstance, a service member will not be considered physically qualified for special operations duty and deployable until he receives separate medical clearance.  *See* ECF No. 44, Ex. 10 ¶ 12 (Trident Order #12) (App099) ("Special Operations qualification requires a separate waiver that is in addition to the waiver of the COVID-19 vaccine requirement for all service members.").  "These deployability determinations do not take into account whether a member is unvaccinated for secular or religious reasons; all unvaccinated service members are treated the same for purposes of determining whether they should receive a medical waiver that would render them fit for special operations duty."  ECF No. 87, Ex. 2 ¶ 6 (Suppl. Littlejohn Decl.) (App036–37).

vaccine requirement—which expressly anticipates the possibility of exemptions for sincerely held religious beliefs where required by law—does not treat each class member the same. As described, the Navy has a detailed, individualized process to determine whether an exception to the vaccine requirement should apply to a particular service member. To resolve Plaintiffs' RFRA claims, therefore, the Court would have to determine the propriety of the vaccine requirement as applied in each individual service member's case circumstance—an inquiry that cannot be resolved on a classwide basis.

Because Plaintiffs fail to establish a "common contention," the determination of which "will resolve an issue central to the validity of each one of the [RFRA] claims in one stroke," Plaintiffs have failed to establish commonality with regard to any of their three proposed classes. *See Wal-Mart*, 564 U.S. at 350.

### B.    Lead Plaintiffs Are Not Typical Of The Putative Classes.

For related reasons, Plaintiffs cannot satisfy the typicality requirement of Rule 23(a)(3). Typicality and commonality "tend to merge," and both ultimately address "whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim[s] and the class claim[s] are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart*, 564 U.S. at 349 n.5 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157–58, n.13 (1982)); *see also Flecha v. Medicredit, Inc.*, 946 F.3d 762, 768 (5th Cir. 2020). "[T]he critical inquiry [for typicality] is whether the class representative's claims have the same essential characteristics of those of the putative class." *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1054 (S.D. Tex. 2012) (quoting *James v. City of Dallas, Tex.*, 254 F.3d 551, 571 (5th Cir. 2001))).

As the Court described, the thirty-five named Plaintiffs as a whole oppose the vaccine based on a broad wide variety of reasons: "(1) opposition to abortion and the use of aborted fetal cell lines in development of the vaccine; (2) belief that modifying one's body is an af[f]ront to the Creator; (3) direct, divine instruction not to receive the vaccine; and (4) opposition to injecting trace amounts of animal cells into one's body." Op. at 3–4. Expanding the scope to the entire purported class would encompass a swath of different circumstances and religious objections and analyses for objecting to the vaccine.

There exists similar variation with regard to each purported class members' position within the Navy. With regard to Plaintiffs' proposed Navy Class, purported class members range from pilots, submariners, surface warfare officers, to a host of other positions with greatly varying responsibilities. Among Plaintiffs' proposed subclasses there exists similar variety: putative members of both the proposed SEALs Subclass and the proposed Special Warfare Subclass work across all geographical locations and contexts.

Such differences go to the heart of each service members' individual RFRA claim. The particular circumstances of an individual's reason for objecting to the vaccine, specific position, and current job obligations within the Navy are all essential for determining the elements of that individual's RFRA claim. *See* Ex. 3 (Katson Decl., Feb. 15, 2022) ¶¶ 5–16 (App020–27). For example, the effectiveness of alternatives of the COVID-19 vaccine "is extremely limited on ships," where service members "live, work, eat, and sleep in close proximity to other Sailors." *Id.* ¶ 15 (App026). In contrast, "[h]ealth protection measures are more feasible ashore, . . . dependent on the type of work a Sailor does and the configuration of their workplace." *Id.* ¶ 16 (App026). Additionally, the "[s]pread of communicable diseases among Sailors who live and work . . . in austere deployed environments with limited access to immediate medical care, or for those who

live or work in close proximity to others in the shore establishment, has the potential to cause mission failure if one or more personnel become too sick to perform their jobs." *Id.* ¶ 13 (App024–25). Analyzing each service members' particular circumstances is essential for balancing their religious freedoms against the military's interest in maintaining a medically fit force ready to defend this Nation—and each putative class member has different particular circumstances.

Plaintiffs seek to litigate a class that includes different circumstances, religious objections, and jobs in different locations with different responsibilities. Yet each purported class members requires an individual assessment of the sincerity of their religious beliefs, the burden upon those beliefs, the compelling governmental interest, and the least restrictive means of achieving that interest. Accordingly, Plaintiffs have failed to establish typicality.

### C. Plaintiffs And Their Counsel Have Not Shown They Will Fairly And Adequately Protect The Interests Of The Classes.

Classes certified under Rule 23(b)(2), as Plaintiffs propose, are mandatory—any and every person within the class will be bound by this Court's judgment without the opportunity to opt out, either before or after judgment. *See, e.g.*, *Reeb v. Ohio Dep't of Rehab. & Corr.*, 435 F.3d 639, 645 (6th Cir. 2006) ("Rule 23(b)(2) authorize[s] 'mandatory' class actions under which potential class members do not have an automatic right to notice or a right to opt out of the class."); *Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501, 506 (5th Cir. 1981) ("[I]t is clear that the Federal Rules do not provide objectors a right to opt out of class actions brought under Rule 23(b)(2)."). As the Fifth Circuit has observed, "the existence of a class fundamentally alters the rights of present and absent members, particularly for mandatory classes such as the one here." *Chavez v. Plan Benefit Servs. Inc.*, 957 F.3d 542, 547 (5th Cir. 2020).

Accordingly, before a Rule 23(b)(2) class can be certified, the Court must rigorously examine whether the proposed class representatives will adequately represent the interests of the

absent class members.  *See, e.g.*, *Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 479–80 (5th Cir. 2001).  This inquiry "serves to uncover conflicts of interest between the named plaintiffs and the class they seek to represent." *Id.* (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).  In particular, "[a]dequacy encompasses three separate but related inquiries: (1) 'the zeal and competence of the representative[s'] counsel'; (2) 'the willing[]ness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees'; and (3) the risk of 'conflicts of interest between the named plaintiffs and the class they seek to represent.'" *Slade v. Progressive Sec. Ins.*, 856 F.3d 408, 412 (5th Cir. 2017) (quoting *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005)).

First, Plaintiffs here fail to show how they can overcome conflicts between themselves and members of the proposed class.  Putative class members have separately filed seven lawsuits around the country challenging the COVID vaccine requirements.[3]  In particular, one lawsuit brings a competing class action claim.  *See Navy Seal 1 v. Biden*, 21-cv-02429 (M.D. Fla.) (seeking to certify class of "all United States Armed Forces service[ ]members and civilian federal employees and contractors who are subject to Defendants['] COVID-19 Vaccine Mandate, have requested a religious exemption or accommodation from the Mandate based on sincerely held religious beliefs against receiving a COVID-19 vaccine, and been denied such exemption or accommodation").  Plaintiffs in those lawsuits have chosen their own counsel and their own forums to press their claims, and to date, none has sought to consolidate with this present action.  Some have already resulted in decisions.[4]  Managing a class action would also be untenable since those

---

[3] *See Navy Seal 1 v. Biden*, 21-cv-02429 (M.D. Fla.); *Crosby v. Austin*, 8:21-cv-02730 (M.D. Fla.); *Doe v. Austin*, 3:21-cv-01211 (N.D. Fla.); *Fletterich v. Austin*, 1:21-cv-03193 (D.D.C.); *Lembo v. Del Toro*, 22-cv-00325 (D.D.C.); *Rudometkin v. Austin*, 1:21-CV-02220 (D.D.C.); *Payne v. Biden*, 1:21-cv-03077 (D.D.C.).

[4] *See, e.g.*, *Doe v. Austin*, 3:21-cv-01211, Dkt. 47 (N.D. Fla. Nov. 12, 2021) (denying preliminary injunction motions).

other lawsuits raise slightly different issues—including claims not raised in this class action. *See, e.g.*, *Doe v. Austin*, 3:21-cv-1211, ECF. No. 47 (N.D. Fla. Nov. 12, 2021) (including claims under substantive due process and unconstitutional conditions doctrine); *Navy Seal 1 v. Biden*, 21-cv-02429, ECF No. 49-1 (M.D. Fla.) (including claims under APA and FDCA). Plaintiffs make no mention of these competing lawsuits, nor do they proffer explanation of how putative class members might choose which lawsuit to join. Other putative class members may choose to litigate their claim alone, or with other counsel, or may wish to raise different claims or arguments, or conceivably may wish not to seek legal redress at all—preferring to comply with a lawful order after their administrative claim is decided and maintain their military service without litigation, or indeed perhaps choose to leave the service or retire. The decision on whether to file suit in this setting is uniquely personal, and yet all class members would be forced to have their claim adjudicated as part of this lawsuit.

In situations like these, where multiple plaintiffs challenge a government policy in many different forums, the Supreme Court has affirmed the importance of allowing individual lower courts to consider the issue. "Government litigation frequently involves legal questions of substantial public importance," and "[a]llowing only one final adjudication would deprive this Court of the benefit it receives from permitting several courts of appeals to explore a difficult question before this Court grants certiorari." *See United States v. Mendoza*, 464 U.S. 154, 160 (1984); *see also Arizona v. Evans*, 514 U.S. 1, 23 n.1 (1995) (Ginsburg, J., dissenting). Any order issued here should be narrowly tailored to the claims of the lead Plaintiffs.

Plaintiffs' litigation strategy has also prevented the putative class members from identifying and evaluating any additional potential conflicts. Proceeding pseudonymously weighs heavily against a finding that Plaintiffs have carried their burden under Rule 23(a)(4), because

"without knowing [Plaintiffs'] identity, it would be difficult to determine if [they] and [their] counsel have conflicts of interest with other class members." *Cf. Sherman v. Trinity Teen Sols., Inc.*, 339 F.R.D. 203, 206 (D. Wyo. 2021) (denying motion to proceed pseudonymously). Further, "as the class representative[s], Plaintiff[s] ha[]ve a fiduciary duty and obligation to vigorously prosecute the interests of the class. . . . In order to do so, the other class members should know who is representing them." *Id.*

Second, "unique defenses [against lead plaintiffs] bear on both the typicality and adequacy of a class representative." *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006). Here, the Government may be able to present unique defenses that would negate the claims of a class representative. For example, lead Plaintiffs do not have ripe claims since none of the four lead Plaintiffs has completed the appeal process. *See* ECF No. 108, Ex. 2 (Katson Decl., Feb. 7, 2022) ¶ 3 (App007) (as of February 2, 2022); *see also Monk v. Huston*, 340 F.3d 279, 282 (5th Cir. 2003) (explaining that "a case is not ripe if further factual development is required" (citation omitted)); *cf. TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) ("Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not."); *Salem v. Mich. Dep't of Corr.*, No. 13-CV-14567, 2019 WL 4409709, at *10 (E.D. Mich. Sept. 16, 2019); *H.M. v. United States*, No. CV 17-00786, 2017 WL 10562558, at *28 (C.D. Cal. Aug. 21, 2017) (explaining that Rule 23(a)(4) requires that plaintiffs "must ensure that the proposed class representatives have standing to pursue claims that are ripe"). In addition, venue may not be proper in this forum for Plaintiffs who do not reside here or cannot establish that a "substantial part of the events or omissions giving rise to the claim occurred" in this forum. *See Atl. Marine Constr. Co.*

*v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 56 (2013).  Such jurisdictional or venue defects call into question whether lead Plaintiffs and counsel can adequately represent the class.[5]

## IV.   Plaintiffs Fail to Show a Class That Can Be Maintained Under Rule 23(b).

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem*, 521 U.S. at 614. Plaintiffs here seek to certify a class under Rule 23(b)(2), which applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).  Plaintiffs fail to make the required showing.

As the Fifth Circuit has explained, "this rule seeks to redress what are really group as opposed to individual injuries," thus "render[ing] the notice and opt-out provisions of [Rule 23](b)(3) unnecessary." *Casa Orlando Apartments, Ltd. v. Fed. Nat'l Mortg. Ass'n*, 624 F.3d 185, 198 (5th Cir. 2010) (quoting *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 975 n.22 (5th Cir. 2000)).  Certification under this provision is permissible "only when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart*, 564 U.S. at 360.  And the relief sought "must be specific." *Maldonado*, 493 F.3d 521, 524 (5th Cir. 2007).

As explained, whether an employer has violated a civil rights statute depends on the specific circumstances surrounding each individual employment action.  This is particularly true when, as here, Plaintiffs attempt to lump together every single denial within the Navy, and Navy

---

[5] Defendants have moved to dismiss Plaintiffs' Complaint on multiple grounds, including because Plaintiffs' claims are not ripe, Plaintiffs have failed to exhaust their administrative remedies, and venue is improper in this district. The Court's disposition of those arguments could materially affect the scope of Plaintiffs' motion for class certification. If the Court lacks subject matter jurisdiction, it has no authority to certify this suit as a class action. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

SEALs, and Naval Special Warfare or Naval Special Operations, respectively.  In doing so, Plaintiffs attempt to litigate a broad swath of different factual circumstances in one fell swoop. Yet a RFRA assessment is highly specific: the Court must determine whether each and every class members holds a sincerely held religious belief that precludes the use of a COVID-19 vaccine; must determine whether a particular vaccination requirement substantially burdens that religious belief; and (if the plaintiff meets those burdens) must examine, in light of the plaintiff's particular role, job responsibilities, and workplace, whether the government may use any means less restrictive than vaccination to advance its compelling interests as applied to that particular individual.  And as discussed, Plaintiffs have failed to provide "significant proof" that the Navy "operated under a general policy of discrimination."  *Wal-Mart*, 564 U.S. at 353.  The Navy reviews and adjudicates religious exemption requests on a case-by-case basis.  The mere fact that many requests have been denied is consistent with the military's compelling interest in stemming the spread of COVID-19 and maintaining a medically fit force.  Accordingly, Plaintiffs have failed to establish the requirements of Rule 23(b)(2).

## V.     The Court Should Defer Ruling on Plaintiffs' Request for Certification.

Every court has the "inherent" power to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  The Court here should exercise that discretion by deferring adjudication of Plaintiffs' motion for class certification pending resolution of Defendants' appeal of the Court's order granting Plaintiffs' Motion for a Preliminary Injunction, ECF No. 66.  As explained in Defendants' Memorandum in Support of Motion for a Partial Stay Pending Appeal, ECF No. 86, Defendants' appeal will raise issues pertaining to the scope of review of military decisions and the standard to be applied to any judicial review of Plaintiffs' claims brought pursuant to the First

Amendment and Religious Freedom Restoration Act in the military context. *Id*. at 7–10. Defendants also respectfully submit that the Court based its injunction, at least in part, on a misunderstanding of Navy Instructions. *Id*. at 9–10. The Fifth Circuit's disposition of these legal and factual questions will bear materially on Plaintiffs' motion for class certification.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification should be denied.

Dated: February 15, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director

/s/ *Cassandra M. Snyder*
ANDREW E. CARMICHAEL
AMY E. POWELL
Senior Trial Counsel
STUART J. ROBINSON
Senior Counsel
ZACHARY A. AVALLONE
COURTNEY D. ENLOW
LIAM C. HOLLAND
CASSANDRA M. SNYDER (DC Bar No. 1671667)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 451-7729
Fax: (202) 616-8460
Email: cassandra.m.snyder@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2022, I electronically filed the foregoing paper with the Clerk of Court using this Court's CM/ECF system, which will notify all counsel of record of such filing.

/s/ Cassandra M. Snyder
CASSANDRA M. SNYDER (DC Bar No. 1671667)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 451-7729
Fax: (202) 616-8460
Email: cassandra.m.snyder@usdoj.gov