# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| **NAVY SEALS 1-26**, *et al.*,<br><br>               Plaintiffs,<br><br>   v.<br><br>**LLOYD J. AUSTIN, III**, in his official capacity as<br>United States Secretary of Defense, *et al.*,<br><br>               Defendants. | Case No. 4:21-cv-01236-O |

# DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
# FOR A CLASS-WIDE PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

LEGAL STANDARDS ...............................................................................................2

ARGUMENT ..............................................................................................................3

I.    Plaintiffs Are Unlikely to Succeed on the Merits of Their Claims.................................3

        A.    Justiciability.........................................................................................3

               1.    Plaintiffs Failed to Exhaust Administrative Remedies and Their Claims Are Not Justiciable Under Ripeness and Exhaustion Doctrines..............................4

               2.    Assignment Decisions Are Not Justiciable......................................................6

        B.    Any Judicial Review Must By Highly Deferential to Military Interests. ........................8

        C.    Plaintiffs Cannot Establish a Likelihood of Success on their First Amendment Claims........................................................................10

        D.    Plaintiffs Cannot Establish a Likelihood of Success on their RFRA Claims..............14

II.    Plaintiffs Do Not Face Irreparable Harm. ....................................................................19

III.    The Equities and the Public Interest Weigh Against a Preliminary Injunction. .....................20

CONCLUSION ........................................................................................................25

# TABLE OF AUTHORITIES

**CASES**

*303 Creative LLC v. Elenis,*
  6 F.4th 1160 (10th Cir. 2021)................................................................................12

*Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.,*
  878 F.2d 806 (5th Cir. 1989)..................................................................................2

*Anderson v. Jackson,*
  556 F.3d 351 (5th Cir. 2009)..................................................................................2

*Antonellis v. United States,*
  723 F.3d 1328 (Fed. Cir. 2013)..............................................................................7

*Burwell v. Hobby Lobby,*
  573 U.S. 682 (2014)..................................................................................... 15, 18

*Cargill v. Marsh,*
  902 F.2d 1006 (D.C. Cir. 1990)..............................................................................7

*Chappell v. Wallace,*
  462 U.S. 296 (1983)..............................................................................................23

*Chilcott v. Orr,*
  747 F.2d 29 (1st Cir. 1984)...................................................................................24

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,*
  508 U.S. 520 (1993)..............................................................................................10

*Church v. Biden,*
  No. 21-2815 (CKK),  --- F. Supp. 3d ---, 2021 WL 5179215 (D.D.C. Nov. 8, 2021)........................4

*Cortright v. Resor,*
  447 F.2d 245 (2d Cir. 1971) ...................................................................................7

*Cutter v. Wilkinson,*
  544 U.S. 709 (2005)..............................................................................................17

*DaimlerChrysler Corp. v. Cuno,*
  547 U.S. 332 (2006)................................................................................................5

*Dep't of Agric. v. Moreno,*
  413 U.S. 528 (1973)..............................................................................................11

*Dodson v. Dep't of Army,*
  988 F.2d 1199 (Fed. Cir. 1993)............................................................................16

*Doe 2 v. Shanahan,*
  755 F. App'x 19 (D.C. Cir. 2019) ..................................................................................9

*Doe 2 v. Shanahan,*
  917 F.3d 694 (D. C. Cir. 2019) ....................................................................................9

*Does 1-6 v. Mills,*
  16 F.4th 20 (1st Cir. 2021) .........................................................................................13

*Emp. Div., Dep't of Hum. Res. of Oregon v. Smith,*
  494 U.S. 872 (1990) ...................................................................................................12

*Farmer v. Mabus,*
  940 F.2d 921 (5th Cir. 1991) ........................................................................................3

*Fiallo v. Bell,*
  430 U.S. 787 (1977) .....................................................................................................8

*Fulton v. City of Philadelphia, Pennsylvania,*
  141 S. Ct. 1868 (2021) .........................................................................................11, 12

*Gilligan v. Morgan,*
  413 U.S. 10 (1973) .................................................................................................3, 24

*Goldman v. Weinberger,*
  475 U.S. 503 (1986) .............................................................................................*passim*

*Harkness v. Secretary of Navy,*
  858 F.3d 437 (6th Cir. 2017) ........................................................................................7

*Hodges v. Callaway,*
  499 F.2d 417 (5th Cir. 1974) .....................................................................................5, 6

*In re Navy Chaplaincy,*
  306 F.R.D. 33 (D.D.C. 2014) ......................................................................................16

*In re Navy Chaplaincy,*
  No. 19-5204, 2020 WL 11568892 (D.C. Cir. Nov. 6, 2020),
  *cert. denied sub nom. Chaplaincy of Full Gospel Churches v. Dep't of the Navy,* 142 S. Ct. 312 (2021) .........16

*Irby v. United States,*
  245 F. Supp. 2d 792 (2003) .........................................................................................24

*Janvey v. Alguire,*
  647 F.3d 585 (5th Cir. 2011) .......................................................................................19

*Johnson v. Reed,*
609 F.2d 784 (5th Cir. 1980) ............................................................................................. 7

*Kane v. De Blasio,*
19 F.4th 152 (2d Cir. 2021) ............................................................................................. 12

*Karnoski v. Trump,*
926 F.3d 1180 (9th Cir. 2019) ........................................................................................... 9

*La. Power & Light Co. v. Fed. Power Comm'n,*
526 F.2d 898 (5th Cir. 1976) ............................................................................................. 4

*Lebron v. Rumsfeld,*
670 F.3d 540 (4th Cir. 2012) ........................................................................................... 17

*Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch,*
510 F.3d 253 (3d Cir. 2007) ............................................................................................. 12

*Littlefield v. Forney Indep. Sch. Dist.,*
268 F.3d 275 (5th Cir. 2001) ........................................................................................... 10

*Lopez v. City of Houston,*
617 F.3d 336 (5th Cir. 2010) ............................................................................................. 4

*Mazares v. Dep't of Navy,*
302 F.3d 1382 (Fed. Cir. 2002) ......................................................................................... 3

*Mazurek v. Armstrong,*
520 U.S. 968 (1997) ........................................................................................................... 2

*Mindes v. Seaman,*
453 F.2d 197 (5th Cir. 1971) ......................................................................................... 5, 7

*Miss. Power & Light Co. v. United Gas Pipe Line Co.,*
760 F.2d 618 (5th Cir. 1985) ............................................................................................. 2

*Monk v. Huston,*
340 F.3d 279 (5th Cir. 2003) ............................................................................................. 4

*Nken v. Holder,*
556 U.S. 418 (2009) ......................................................................................................... 20

*Orloff v. Willoughby,*
345 U.S. 83 (1953) ............................................................................................................. 7

*Parrish v. Brownlee,*
335 F. Supp. 2d 661 (E.D.N.C. 2004) ............................................................................... 24

iv

*Pitcher v. Laird,*
    415 F.2d 743 (5th Cir. 1969) ........................................................................................... 19

*Reinhard v. Johnson,*
    209 F. Supp. 3d 207 (D.D.C. 2016) .................................................................................. 24

*Reno v. Cath. Soc. Servs., Inc.,*
    509 U.S. 439 (1993) ........................................................................................................... 4

*Roman Cath. Diocese of Brooklyn v. Cuomo,*
    141 S. Ct. 63 (2020) ................................................................................................... 11, 19

*Rostker v. Goldberg,*
    453 U.S. 57 (1981) ...................................................................................................*passim*

*Sampson v. Murray,*
    415 U.S. 61 (1974) ..................................................................................................... 19, 20

*Schlanger v. United States,*
    586 F.2d 667 (9th Cir. 1978) ............................................................................................. 7

*Schlesinger v. Ballard,*
    419 U.S. 498 (1975) ........................................................................................................... 8

*Sebra v. Neville,*
    801 F.2d 1135 (9th Cir. 1986) ........................................................................................... 7

*Shaw v. Austin,*
    539 F. Supp. 3d 169 (D.D.C. 2021) .................................................................................. 24

*Shrimpers & Fisherman of the RGV v. U.S. Army Corps of Eng'rs,*
    849 F. App'x 459 (5th Cir. 2021) ...................................................................................... 4

*Smith v. Harvey,*
    541 F. Supp. 2d 8 (D.D.C. 2008) ...................................................................................... 5

*Solorio v. United States,*
    483 U.S. 435 (1987) ....................................................................................................... 3, 9

*Tandon v. Newsom,*
    141 S. Ct. 1294 (2021) ..................................................................................................... 12

*Taylor v. Denka Performance Elastomer LLC,*
    332 F. Supp. 3d 1039 (E.D. La. 2018) ............................................................................... 5

*Texas v. United States,*
    515 F. Supp. 3d 627 (S.D. Tex. 2021) ............................................................................... 2

*Toilet Goods Association v. Gardner,*
 387 U.S. 158 (1967) ............................................................................................5

*TransUnion LLC v. Ramirez,*
 141 S. Ct. 2190 (2021) ........................................................................................3

*Trump v. Hawaii,*
 138 S. Ct. 2392 (2018) .................................................................................. 8, 11

*U.S. Navy SEALs 1-26 v. Biden,*
 --- F. Supp. 3d ---, 2022 WL 34443 (N.D. Tex. Jan. 3, 2022),
 *appeal filed*, No. 22-10077 (5th Cir, Jan. 21, 2022) .......................................6

*Von Hoffburg v. Alexander,*
 615 F.2d 633 (5th Cir. 1980) ..............................................................................5

*Wal-Mart Stores, Inc. v. Dukes,*
 564 U.S. 338 (2011) ..........................................................................................16

*We the Patriots USA, Inc. v. Hochul,*
 17 F.4th 266 (2d Cir. 2021) ........................................................................ 12, 13

*Weiss v. United States,*
 510 U.S. 163 (1994) ............................................................................................8

*White v. Carlucci,*
 862 F.2d 1209 (5th Cir. 1989) ..........................................................................20

*Wilson v. Walker,*
 777 F.2d 427 (8th Cir. 1985) ..............................................................................7

*Winter v. NRDC, Inc.,*
 555 U.S. 7 (2008) ................................................................................................2

## CONSTITUTION

U.S. Const. amend. I ..............................................................................................1

## STATUTES

10 U.S.C. § 1552 ....................................................................................................20

42 U.S.C. § 2000 ......................................................................................................1

## OTHER AUTHORITIES

S. Rep. No. 103-111 (1993), *as reprinted in* 1993 U.S.C.C.A.N. 1892 ..................9

## INTRODUCTION

Plaintiffs—35 service members in the Naval Special Warfare community—seek an order preliminarily enjoining Defendants from enforcing the COVID-19 vaccine mandate as to their yet-uncertified classes and subclasses. Pls.' Am. Compl. 30, ECF No. 84. Because Plaintiffs' class includes all members of the Navy who have submitted religious accommodation requests, Plaintiffs' extraordinary request encompasses from 2,500 to 4,000 service members across various ranks, occupational specialties, and unit assignments. *See* Ex. 1 ¶ 2 (Decl. of Admiral Daryl L. Caudle) (App003-04). Such an injunction would "severely undermine military readiness through the spread of disease," "cause irreparable harm to military operations," and "subvert[] good order and discipline" within the Navy. *Id.* ¶ 18 (App017). Moreover, Plaintiffs' arguments are largely based on a continued misunderstanding of the facts, including their understanding of the Navy's religious, medical, and administrative exemption processes. Contrary to Plaintiffs' assertions, the Navy undertakes a careful case-by-case analysis for all religious accommodation requests in good faith. The fact that only one exemption has been approved is entirely in line with the strength of the Navy's compelling governmental interest in maintaining a medically fit force ready to deploy at any moment. That compelling governmental interest is due particular deference as a military decision. *See, e.g., Rostker v. Goldberg*, 453 U.S. 57, 67 (1981); *Goldman v. Weinberger*, 475 U.S. 503, 507 (1986).

This opposition brief incorporates the background from Defendants' prior Memorandum in Support of Defendants' Opposition to Plaintiffs' Motion for a Preliminary Injunction. On January 24, 2022, 35 members of the U.S. Navy, all currently proceeding under pseudonyms, filed their First Amended Class Action Complaint challenging the DoD COVID-19 vaccine directive and Navy policies implementing the Department of Defense ("DoD") directive under RFRA, 42 U.S.C. § 2000bb (Counts 1–2) and the First Amendment (Counts 3–4). Am. Compl. ¶¶ 64–134, ECF No. 84. Plaintiffs Navy SEALs 1–3 and Explosive Ordnance Disposal Technician 1 ("lead Plaintiffs")

bring suit on behalf of themselves and three proposed classes and subclasses; and the remaining plaintiffs ("individual Plaintiffs") bring suit individually.  Plaintiffs sued the DoD, the Secretary of Defense in his official capacity, and the Secretary of the Navy in his official capacity.  *Id.* ¶¶ 24–26.

On February 7, 2022, Plaintiffs filed their motion for a class-wide preliminary injunction against Defendants to prevent implementation of DoD's and Navy's COVID-19 vaccination policies. Pls.' Mem., ECF No. 105.  Plaintiffs seek to enjoin Defendants' "from enforcing the COVID-19 Vaccine Mandate as to the Plaintiffs and the class members."  *See* Am. Compl. at 30.  Plaintiffs' Motion for Class Certification, filed on January 25, 2022, has not yet been decided.  ECF Nos. 89-90.

## LEGAL STANDARDS

"A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008); *see Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009). ("Injunctive relief is an extraordinary and drastic remedy[ ] and should only be granted when the movant has clearly carried the burden of persuasion." (citation omitted)).  This is particularly true in a large class-action case such as this one, where class-wide preliminary injunctive relief effectively amounts to a nationwide injunction.  *Cf. Texas v. United States*, 515 F. Supp. 3d 627, 637 (S.D. Tex. 2021) (collecting cases for the proposition that "[n]ationwide injunctions of executive action are a topic of fierce and ongoing debate in both the courts and the legal academy" (footnote omitted)).  Plaintiffs must "*by a clear showing*" establish that (1) they have a substantial likelihood of success on the merits; (2) they will suffer irreparable harm without an injunction; (3) the balance of equities tips in their favor; and (4) preliminary relief serves the public interest.  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (citation omitted); *Winter*, 555 U.S. at 20.  Plaintiffs' failure to demonstrate any of the factors is sufficient to deny injunctive relief, *Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir. 1989), and "[t]he decision to grant a preliminary injunction is to be treated as the exception rather than the rule[,]" *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

Additionally, judicial review of claims involving the "complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force[,]" *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973), is highly constrained. *Rostker*, 453 U.S. at 66 (Because of the "healthy deference to legislative and executive judgments in the area of military affairs," courts employ a relaxed scrutiny in reviewing military policy); *see Farmer v. Mabus*, 940 F.2d 921, 923 (5th Cir. 1991) ("We are keenly aware that judicial intrusion into military matters is to be most cautiously and charily approached."). Such deference extends to constitutional claims and military decisions about the health and welfare of the troops. *See Solorio v. United States*, 483 U.S. 435, 448 (1987); *Mazares v. Dep't of Navy*, 302 F.3d 1382, 1385 (Fed. Cir. 2002).

## ARGUMENT

## I. Plaintiffs Are Unlikely to Succeed on the Merits of Their Claims.

Plaintiffs cannot establish, as a class, a likelihood of success on the merits of their claims. Their claims are not justiciable under long-standing Supreme Court and Fifth Circuit precedent. Moreover, in light of the extraordinary deference due to the military, they cannot establish a likelihood of success on their First Amendment or RFRA claims. Respectfully, and as explained further in the Government's motion to stay, the Court's previous conclusions with respect to the individuals were based at least in part on misapprehension of the facts regarding religious and medical exemptions from the COVID-19 vaccination order.

### A. Justiciability

"Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) (citation omitted). Plaintiffs have failed to establish that this Court has jurisdiction over their claims. Plaintiffs' claims are not ripe, they have failed to exhaust their administrative remedies, and claims pertaining to military duty assignments and worldwide deployability determinations are not reviewable.

**1. Plaintiffs Failed to Exhaust Administrative Remedies and Their Claims Are Not Justiciable Under Ripeness and Exhaustion Doctrines.**

Plaintiffs' claims are neither ripe nor exhausted, for the reasons Defendants set forth in their Memorandum in Support of their Motion to Dismiss. ECF No. 107, at 8–12. Plaintiffs have not completed the process for requesting exemptions or exhausted their intra-military remedies before filing suit.

"To determine whether claims are ripe, [courts] evaluate (1) the fitness of the issues for judicial resolution, and (2) the potential hardship to the parties caused by declining court consideration." *Lopez v. City of Houston,* 617 F.3d 336, 341 (5th Cir. 2010). Generally, "a case is not ripe if further factual development is required." *Monk v. Huston*, 340 F.3d 279, 282 (5th Cir. 2003) (citation omitted). Plaintiffs' claims fail to satisfy either prong. Plaintiffs' claims are not fit for judicial resolution because "matters 'still pending before [an agency] . . . [are] not yet ripe for judicial review.'" *Shrimpers & Fisherman of the RGV v. U.S. Army Corps of Eng'rs,* 849 F. App'x 459, 462 (5th Cir. 2021) (quoting *La. Power & Light Co. v. Fed. Power Comm'n*, 526 F.2d 898, 910 (5th Cir. 1976)). None of the four lead Plaintiffs have completed the appeal process. *See* ECF No. 108, Ex. 2 (Katson Decl., Feb. 7, 2022) ¶ 3 (App007) (as of February 2, 2022). Addressing Plaintiffs' claims before their religious accommodation requests are finally adjudicated "would require the Court to adjudicate internal military affairs before the military chain of command has had full opportunity to consider the accommodation requests at issue." *Church v. Biden*, No. 21-2815 (CKK), --- F. Supp. 3d ---, 2021 WL 5179215, at *11 (D.D.C. Nov. 8, 2021); *see also Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43, 59 (1993) ("[T]he promulgation of the challenged regulations did not itself give each . . . class member a ripe claim; a class member's claim would ripen only once he took the affirmative steps that he could take before the [agency] blocked his path by applying the regulation to him.").

Even assuming the lead Plaintiffs had completed the appeal process for their religious accommodation requests, their claims would still be unripe because the Navy has not yet made a final

determination on separation.  The Supreme Court in *Toilet Goods Association v. Gardner*, 387 U.S. 158 (1967), held a challenged regulation unripe for review when the regulation was permissive rather than mandatory—*i.e.*, one it did not compel the agency to act but only authorized the agency to exercise a discretionary power to act.  Similarly, here, Navy regulations provide that "Navy service members refusing the COVID-19 vaccination, absent pending or other approved exemption, shall be processed for administrative separation[.]"  Defs.' Prelim. Inj. Opp'n App'x Ex. 8, NAVADMIN 225/21 ¶ 2, ECF No. 44-1 (App083).  But the Navy's "initiation of separation proceedings is a tentative action not fit for judicial review; one can only speculate as to the final outcome of any proceedings."  *Smith v. Harvey*, 541 F. Supp. 2d 8, 13 (D.D.C. 2008).  "Members processed for separation may ultimately be retained in the service."  Defs.' Prelim. Inj. Opp'n App'x, Decl. of William Merz ¶ 15 n.14, ECF No. 44-3 Ex. 17 (App311).

Plaintiffs also fail to establish the second prong of hardship from delay.  As discussed in more detail below, *see infra* section II, Plaintiffs will suffer no harm between now and when the Navy finally decides whether to pursue adverse administrative action against any Plaintiff whose religious accommodation request is finally denied.[1]

For similar reasons, Plaintiffs' claims should be dismissed for failure to exhaust their intra-military remedies.  *See Von Hoffburg v. Alexander*, 615 F.2d 633, 637–38 (5th Cir. 1980); *Hodges v. Callaway*, 499 F.2d 417, 419–20 (5th Cir. 1974); *Mindes v. Seaman*, 453 F.2d 197, 201 (5th Cir. 1971).  In *Hodges v. Callaway*, for example, the Fifth Circuit concluded that although the plaintiff seemed unlikely

---

[1] Even if some of the Plaintiffs had established an injury from their non-deployability or other reasonable COVID-19 mitigation strategies as applied to them ─ which the Government disputes ─ the class as a whole has not established an injury at all, and they certainly have not established an injury related to a risk of discipline or separation, or from a vaccine mandate that does not even apply to them while their exception requests are pending.  *See Taylor v. Denka Performance Elastomer LLC*, 332 F. Supp. 3d 1039, 1050 (E.D. La. 2018) (declining to remedy unripe injury because "the plaintiffs must demonstrate that each form of relief they seek will redress their injuries."); *see generally DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).  Plaintiffs cannot seek to enjoin a requirement that is not causing them injury.

to prevail in challenging his discharge, he was required nonetheless to exhaust his military remedies, including challenging his discharge, and ordered dismissal of the action because "courts must—at least initially—indulge the optimistic presumption that the military will afford its members the protections vouchsafed by the Constitution, by the statutes, and by its own regulations." 499 F.2d 417, 424 (5th Cir. 1974). To do otherwise "might upset the balance between the civilian judiciary and the military" and involve "untoward, unreasonable interference with the efficient operation of the military's judicial and administrative systems" when the Court should "allow the military an opportunity to exercise its own expertise and rectify its own errors before a court is called to render judgment." *Id.* at 423. Neither the exemption process nor the separation process reasonably can be deemed an "empty formality"; all levels of military command are engaged in reasoned decision-making to find facts and make determinations about military needs. The Court should not foreclose that process, which could afford relief or partial relief to Plaintiffs and which, in any event, allows the military to exercise its judgment and develop a record in the first instance. Defendants recognize that this Court found that Plaintiffs should be excused from the exhaustion requirement in its preliminary injunction order. *See U.S. Navy SEALs 1-26 v. Biden*, --- F. Supp. 3d ---, 2022 WL 34443, at *5–8 (N.D. Tex. Jan. 3, 2022), *appeal filed*, No. 22-10077 (5th Cir. Jan. 21, 2022). Defendants respectfully disagree and preserve their position on this threshold jurisdictional question. And if the Court's ruling is not upheld on appeal, this case should be dismissed for the reasons Defendants set forth in their opposition to Plaintiffs' motion for a preliminary injunction. *See* Defs.' Opp'n 11–15, ECF No. 43.

## 2. Assignment Decisions Are Not Justiciable.

Even if Plaintiffs had all exhausted their intra-military remedies or were subject to some exception, their claims seeking injunctive relief regarding their specific duty assignments, deployment, and medical fitness for duty are not justiciable under *Mindes*. This Court weighs four factors to determine whether review of internal military matters is appropriate: (1) the nature and strength of the

plaintiff's challenge, (2) his potential injury if review is refused, (3) the type and degree of anticipated interference with the military function, and (4) the extent to which the exercise of military expertise or discretion is involved. *See Mindes*, 453 F.2d at 201-02. All four factors demonstrate that plaintiffs cannot obtain civilian review of their duty assignments, deployment, and medical fitness for duty. This second step of the *Mindes* analysis "requires the court to balance the sufficiency of the complaint's allegations against the policies contravening review." *Johnson v. Reed*, 609 F.2d 784, 788–89 (5th Cir. 1980).

Defendants have previously explained that duty assignments and medical fitness determinations are not reviewable under this standard. *See* Defs.' PI Opp'n 15-19, ECF No. 43; Defs.' Mot. to Stay 7-10, ECF No. 86; Defs.' Reply ISO Mot. to Stay 1-3, ECF No. 102. And indeed, the Supreme Court and multiple Circuits have confirmed that courts should not review challenges to such assignment decisions, even when they involve a constitutional challenge. *See, e.g., Orloff v. Willoughby*, 345 U.S. 83, 94-95 (1953); *Harkness v. Secretary of Navy*, 858 F.3d 437, 444-45 (6th Cir. 2017); *Cargill v. Marsh*, 902 F.2d 1006, 1007 (D.C. Cir. 1990) ) (per curiam); *Schlanger v. United States*, 586 F.2d 667, 671 (9th Cir. 1978); *Sebra v. Neville*, 801 F.2d 1135, 1141 (9th Cir. 1986); *Wilson v. Walker*, 777 F.2d 427, 429 (8th Cir. 1985); *Cortright v. Resor*, 447 F.2d 245, 254 (2d Cir. 1971); *Antonellis v. United States*, 723 F.3d 1328, 1332 (Fed. Cir. 2013).

Recognizing that this Court previously found that the matter of deployability and assignments presented here was a "purely legal question" appropriate for review under *Mindes*, *see* Order on Plaintiffs' Mot. for Preliminary Injunction 16, ECF No. 66 ("PI Order"), Defendants again respectfully disagree and preserve their position in response to Plaintiffs' class-wide preliminary injunction motion. Whether, when, and how to assign, train and deploy unvaccinated Special Forces members, and what COVID-19 mitigation measures must apply to them, is not a purely legal question, but rather, the quintessential exercise of military judgment. Defendants respectfully request that the

Court not compound the intrusion into internal military affairs by prejudging the outcome for thousands of putative class members.

### B.  Any Judicial Review Must By Highly Deferential to Military Interests.

Even if the Court were to find Plaintiffs' claims to be justiciable, the doctrine of military deference still applies.  In recognition that within the military, individual rights must of necessity be curtailed lest the military's mission be impaired, when courts do review a military claim they apply less stringent standards to challenges to military rules, regulations and procedures than in the civilian context.  *Rostker*, 453 U.S. at 67.  Judicial "review of military regulations challenged on First Amendment grounds," for instance, "is far more deferential than constitutional review of similar laws or regulations designed for civilian society," *Goldman*, 475 U.S. at 507, and the same can be said for "rights of service members" more generally, including those under the Due Process Clause, *Weiss v. United States*, 510 U.S. 163, 176-77 (1994).  The Supreme Court recently reaffirmed this point when it declined to import "the *de novo* 'reasonable observer' inquiry" under the Establishment Clause into "the national security … context," which includes "military actions." *Trump v. Hawaii*, 138 S. Ct. 2392, 2420 n.5 (2018).  The Court instead applied "rational basis review" and stressed that judicial "inquiry into matters of . . .  national security is highly constrained," *id.* at 2420, even when evaluating a "'categorical' . . . classification that discriminate[s] on the basis of sex," *id.* at 2419 (discussing *Fiallo v. Bell*, 430 U.S. 787 (1977)).

The Supreme Court has expressly refused to attach a "label[]" to the type of review applicable to military policies alleged to trigger heightened scrutiny.  *Rostker*, 453 U.S. at 70.  In this context, similar to rational basis review, the Court has accepted concerns about "administrative problems" and even post-hoc justifications as sufficient to uphold military policies.  *Id.* at 81; *see id.* at 74–75 (relying on 1980 legislative record to sustain 1948 statute exempting women from draft-registration requirement); *Schlesinger v. Ballard*, 419 U.S. 498, 508 (1975) (upholding different mandatory-discharge

requirements for male and female naval officers based on what "Congress may . . . quite rationally have believed"). It has deferred to the political branches on military matters even in the face of significant evidence to the contrary, including testimony from current and former military officials. *See Goldman*, 475 U.S. at 509; *Rostker*, 453 U.S. at 63. And it has granted the political branches significant latitude to choose "among alternatives" in furthering military interests, *Rostker*, 453 U.S. at 71–72, as well as where to "draw[] the line" on particular standards, *Goldman*, 475 U.S. at 510.

Here, this Court has found that military deference standards do not apply to its review of Plaintiffs' claims and based its preliminary injunction and decision to deny Defendants' request for a partial stay upon such a finding. PI Order 16, ECF No. 66; Order 4, 8, ECF No. 116. But these principles of military deference are not limited to cases involving military strategic decisions and more broadly apply "in the area of military affairs[.]" *Rostker*, 453 U.S. at 66; *see also Solorio*, 483 U.S. at 448 (listing "variety of contexts" where deference applied). When reviewing a service member's First Amendment or RFRA claim, these principles squarely apply. *Goldman*, 475 U.S. at 507; S. Rep. No. 103-111, at 12 (1993), *as reprinted in* 1993 U.S.C.C.A.N. 1892, 1901 (expressing the committee's "inten[tion] and expect[ation]" that courts will apply deference principles under RFRA).

In recent cases challenging the military's personnel policies, both the D.C. Circuit and Ninth Circuit rejected the district courts' failure to apply military deference standards, which led to the vacating (D.C. Circuit) and staying (Ninth Circuit) of the underlying preliminary injunctions. *Doe 2 v. Shanahan*, 755 F. App'x 19, 25 (D.C. Cir. 2019) ("[A]s in *Rostker* and *Goldman*, any review must be 'appropriately deferential' in recognition of the fact that the Mattis Plan concerned the composition and internal administration of the military."); *Karnoski v. Trump*, 926 F.3d 1180, 1201 (9th Cir. 2019) ("We also reject Plaintiffs' contention that no deference is owed here."); *Doe 2 v. Shanahan*, 917 F.3d 694, 730 (D. C. Cir. 2019) (Williams, J., concurring) ("The Constitution itself requires deference to the military choices of the political branches. This includes deference to the judgments of military

9

officials—not because of their expertise—but because the military authorities have been charged by the constitutionally responsible branches—that is, the Executive and Legislative Branches—with carrying out our Nation's military policy.") (citations omitted).  Until the Court's application of military deference is reviewed on appeal, it should, at a minimum, refrain from substantially expanding its injunction.

## C. Plaintiffs Cannot Establish a Likelihood of Success on their First Amendment Claims.

There is no need for the Court to address Plaintiffs' First Amendment claim separately.  If Plaintiffs prevail on their RFRA claim, there is no need to reach their separate First Amendment theory, as the Court would already have concluded that Plaintiffs are likely to succeed on their challenge to the vaccination requirement.  Conversely, if the Government prevails under RFRA, it would necessarily prevail under Plaintiffs' First Amendment theory as well.  Defendants have nonetheless addressed it here because the Court has previously specifically relied upon Plaintiffs' factual errors regarding their First Amendment claim in deciding the RFRA claim.  *See, e.g.,* PI Order 20, ECF No. 66 (relying on erroneous conclusion that service members with medical exemptions are deployable to conclude that Government lacks a compelling interest in vaccinating special forces).

Plaintiffs' facial challenge to the Navy's COVID-19 vaccination requirement under the First Amendment fails.  When a Plaintiff raises a free exercise claim under the First Amendment against a law that is neutral and generally applicable, then rational basis scrutiny must be applied.  *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 531 (1993); *Littlefield v. Forney Indep. Sch. Dist.,* 268 F.3d 275, 292 (5th Cir. 2001).  Such a "regulation will withstand a free exercise challenge when the regulation is reasonably related to a legitimate state interest."  *Littlefield,* 268 F.3d at 292.  The Supreme Court has emphasized that it "hardly ever strikes down a policy as illegitimate under rational basis scrutiny."  *Trump v. Hawaii,* 138 S. Ct. 2392, 2420 (2018).

In ruling on the motion to stay the preliminary injunction, the Court reserved the First Amendment question, finding a dispute of fact as to whether the vaccine requirement was generally applicable.  *See* ECF No. 116, at 6-7.  The vaccine requirement is neutral and generally applicable because it applies to all service members.  *Cf. Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (finding challenged regulation was not neutral or generally applicable where it limited attendance only at houses of worship but not secular businesses).  The vaccine requirement survives rational basis scrutiny because there is no indication that the mandate was intended to harm a religious group.  *See Trump*, 138 S. Ct. at 2420 ("On the few occasions where" the Supreme Court has struck down a law under rational basis scrutiny, "a common thread has been that the laws at issue lack any purpose other than a 'bare . . . desire to harm a politically unpopular group." (quoting *Dep't of Agric. v. Moreno,* 413 U.S. 528, 534 (1973))).  Rather, the vaccine mandate is intended to keep all service members medically fit for service, including ready to immediately deploy as needed.  In any event, the military context here counsels for even greater deference than that in the civilian context.  *See Goldman*, 475 U.S. at 507 (explaining that "review of military regulations challenged on First Amendment grounds is far more deferential than constitutional review of similar laws or regulations designed for civilian society").

Plaintiffs incorrectly assert that the vaccine requirement should be analyzed under strict scrutiny.  Br. in Supp. of Mot. for Classwide Prelim. Inj. 3, ECF No. 105 ("Class PI Mem.").  Plaintiffs argue that the vaccine requirement is not generally applicable because it "provides 'a mechanism for individualized exemptions' that 'invites the government to consider the particular reasons for a person's conduct.'"  Mem. in Supp. of Mot. for Prelim. Inj. 23, ECF No. 16 ("PI Mem.") (quoting *Fulton v. City of Philadelphia, Pennsylvania*, 141 S. Ct. 1868, 1877 (2021)).  But "an exemption is not individualized simply because it contain[s] express exceptions for objectively defined categories of persons."  *303 Creative LLC v. Elenis*, 6 F.4th 1160, 1187 (10th Cir. 2021) (quotations omitted); *see also*

11

*Kane v. De Blasio*, 19 F.4th 152, 165 (2d Cir. 2021) (quoting *We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 288 (2d Cir. 2021)) (same); *Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 276 (3d Cir. 2007) (explaining that it is "not the mere existence of an exemption procedure" that triggers strict scrutiny, but rather when the government cannot "coherently explain what, other than the religious *motivation* of [a requestor's] conduct, justified the unavailability of an exemption"). For example, a single "'good cause' standard" under which all exemptions are processed would trigger strict scrutiny as a "mechanism for individualized exemptions." *Fulton*, 141 S. Ct. 1878 (quoting *Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872, 884 (1990)).

Nor are the Navy's medical and administrative exemptions to the COVID-19 vaccine requirement evidence that Defendants treat comparable secular activity more favorably than religious practice. *See Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021) (per curiam). The Navy does *not* treat unvaccinated service members differently depending on whether they requested a medical accommodation versus a religious accommodation. Rather, each such exemption is based on an objectively defined category, and the Navy requires any service member who is not vaccinated—either by reason of a medical exemption, administrative exemption, or religious accommodation—to obtain a separate waiver in order to become deployable and continue in that career field. *See* Ex. 3 ¶¶ 5-6 (Decl. of Captain Joon Yun) (App027-29); ECF No. 87, Ex. 2 ¶¶ 6-7 (Suppl. Decl. of Capt. Lanny Littlejohn) (App036–37); ECF No. 44-3, Ex. 17 ¶¶ 7-10 (Merz Decl.). As explained in Defendants' Motion for a Partial Stay, a service member who receives an exemption or accommodation from the COVID-19 vaccination requirement, whether for religious or secular reasons, is not physically qualified for special operations unless he or she obtains separate medical clearance." ECF No. 86. A medical exemption for the COVID-19 vaccination, like a religious exemption, only determines whether the service member will be required to receive the COVID-19 vaccination. In either circumstance, a service member will not be considered physically qualified for special operations duty

and deployable until he receives separate medical clearance.  *See* ECF No. 44-1, Ex. 10 ¶ 12 (Trident Order #12) (App099) ("Special Operations qualification requires a separate waiver that is in addition to the waiver of the COVID-19 vaccine requirement for all service members.").  "These deployability determinations do not take into account whether a member is unvaccinated for secular or religious reasons; all unvaccinated service members are treated the same for purposes of determining whether they should receive a medical waiver that would render them fit for special operations duty."  ECF No. 87, Ex. 2 ¶ 6 (Suppl. Littlejohn Decl.) (App036–37).

Regardless, medical exemptions for a vaccination are not comparable secular activities because vaccinating a service member "who is known or expected to be injured by the vaccine would harm her health," *see We the Patriots USA*, 17 F.4th at 285, which undermines the very interests justifying Defendants' vaccination program.  Medical exemptions are designed to ensure service members remain fit for duty—the same interest behind the government's denials of religious accommodation requests.  *See Does 1-6 v. Mills*, 16 F.4th 20, 31 (1st Cir. 2021) ("[P]roviding healthcare workers with medically contraindicated vaccines would threaten the health of those workers and thus compromise both their health and their ability to provide care.").

Nor are administrative exemptions for a vaccination requirement comparable secular activities. Most administrative exemptions last only 30 days, and are also based on objectively defined categories. *See* Ex. 4 ¶ 7 (Decl. of Rear Admiral Gayle D. Shaffer) (App041).  The only administrative exemptions that break that pattern are 90-day exemptions for Administrative Separation, *see id.* ¶ 5 (App039-40), and indefinite exemptions for deceased individuals, *see id.* at fig. 1.2.  For Administrative Separation administrative exemptions, the Navy has reasonably decided that their compelling governmental interest in maintaining a medically fit and deployable force allows a service member on terminal leave to remain unvaccinated for an additional 90 days before separating from the Navy.  This is in stark contrast to Plaintiffs' requested religious accommodations, which would presumably be indefinite.

And in any event, even a service member with a current administrative exemption would need a medical waiver in order to be cleared for full duty. *See* Ex. 3, Yun Decl. ¶ 6 (App028-29).

Even if the COVID-19 vaccine mandate were subject to strict scrutiny, Plaintiffs' First Amendment claim still fails for the same reason their RFRA claim fails. Requiring vaccination is the least restrictive means of furthering the military's compelling governmental interest in maintaining a medically fit force. *See infra* section I.D. Accordingly, Plaintiffs have not shown a likelihood of success on the First Amendment claim.

**D. Plaintiffs Cannot Establish a Likelihood of Success on their RFRA Claims.**

Plaintiffs' facial challenge to the Navy's COVID-19 vaccination requirement under RFRA also fails, especially given that military deference applies to that policy. As explained in Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction, ECF No. 43, the vaccine requirement complies with RFRA because it applies to service members who request a religious accommodation only if the Navy makes an individualized determination—particularized to the demands of the service member's unit—that denial of that request furthers a compelling military interest and that there is no less restrictive means of accommodating the request. *See* ECF No. 121, Ex. 3 (Decl. of Capt. Mery-Angela Sanabria Katson, Feb. 15, 2022) ¶¶ 5–16 (App020–26).

The Navy undertakes an individualized process to review and adjudicate religious accommodation requests on a case-by-case basis. *See id.*, ECF No. 121. That process considers, individually for each requestor, the sincerity of the requestor's religious belief; whether the vaccine requirement imposes a substantial burden upon that belief; whether that burden is required in furtherance of a compelling naval interest; and whether there are any less restrictive means to achieve that interest. *See id.* Each stage is highly dependent on the particular facts applicable to the individual requestor. *See id.* The final stage—whether there are any less restrictive means to achieve the naval interest—is especially individualized. *See id.* ¶ 12, ECF No. 121 (App024). Specific duty assignments

bear heavily on this factor.  *See id.* ¶¶ 12–13, ECF No. 121 (App024–25) (providing examples of important considerations, such as whether the service member lives or works in close quarters on a ship, how fast a service member may have access to proper medical care, and the potential spread of disease from U.S. Navy personnel to foreign or host-nation personnel).  It is not a foregone conclusion that all religious-exception requests will be denied, and contrary to plaintiffs' contention (Opp. 6), commanders are provided with templates for recommending both for and against granting a religious-accommodation request.  *See* Defs.' Prelim. Inj. Opp'n App'x, Merz Decl. ¶ 14, ECF No. 44-3 Ex. 17 (App338-39).

Defendants have previously explained that certification of a class in this matter is unwarranted, *see generally* ECF No. 120, because as this Court previously held, RFRA analysis must "consider the 'asserted harm of granting specific exemptions to particular religious claimants."  PI Order 19, ECF No. 66 (quoting *Burwell v. Hobby Lobby*, 573 U.S. 682, 726–27 (2014)).  Plaintiffs cannot establish, as a class-wide matter, what sincerely held religious beliefs are at issue, or that the likely widely varying beliefs are substantially burdened in the same way.

Nor can Plaintiffs establish that the Government lacks a compelling interest as a class-wide conclusion.  *See* ECF No. 120.  The Court previously found that Defendants had not shown a compelling interest in vaccinating 35 Plaintiffs.  PI Order 19, ECF No. 66.  Even if that conclusion were correct, it does not follow that the Navy would be unable to show that it has no compelling interest in vaccinating *anyone* who has made a religious exemption request.  Plaintiffs provide only two pieces of weak evidence to support their assertion that "Defendants are not individually assessing requests for religious accommodations, and instead are merely denying all requests based on identical rationale."  Class PI Mem. at 2, ECF No. 105.  First, they claim that no religious accommodation requests for the COVID-19 vaccine had yet been approved at the time they filed.  But as of Feb. 3, 2022, only a small percentage of the accommodation requests have been fully adjudicated on appeal

across the Navy.  *See* Decl. of Mery-Angela Sanabria Katson, Feb. 3, 2022, ECF No. 121 (App056) (showing that, in the Navy, only 81 religious accommodation requests have been fully adjudicated through appeal and 1,222 appeals remain pending).[2]   Drawing any conclusions from the available data—and certainly any conclusion that accommodation requests are not being considered in good faith—is entirely unwarranted.  Further, "[s]tatistical disparities . . . are not proof that any particular plaintiff, must less the class as a whole, has been discriminated against."  *In re Navy Chaplaincy*, 306 F.R.D. 33, 52 (D.D.C. 2014); *see also In re Navy Chaplaincy*, No. 19-5204, 2020 WL 11568892, at *1 (D.C. Cir. Nov. 6, 2020), *cert. denied sub nom. Chaplaincy of Full Gospel Churches v. Dep't of the Navy*, 142 S. Ct. 312 (2021) (rejecting same evidence of statistical disparity in affirming district court's grant of summary judgment in favor of the Navy); *cf. Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 357 (2011) (finding statistics did not give rise to an inference of discrimination because the data did not show whether the outcome was a result of discrimination).

Regardless, the mere fact that most requests have been denied is consistent with the military's compelling interest in stemming the spread of COVID-19 and maintaining a medically fit force.  *See* Ex. 1 Caudle Decl. ¶¶ 14-18 (App012-17); ECF No. 87, Ex. 1 ¶ 5 (Decl. of Admiral William K. Lescher) (App005); ECF No. 121, Ex. 5 (DoDI 1332.45) at 4 (App061) ("To maximize the lethality and readiness of the joint force," it is DoD policy that "all Service members are expected to be deployable.").  The stronger the compelling governmental interest, the less likely any individual request will be approved.  Plaintiffs certainly provide no evidence that hundreds of military officials are acting together in bad faith to issue undifferentiated denials of each service member's request.  *Cf. Dodson v. Dep't of Army*, 988 F.2d 1199, 1204 (Fed. Cir. 1993) ("[M]ilitary administrators are presumed to act lawfully and in good faith like other public officers, and the military is entitled to substantial deference

---

[2] Since then, the Navy has approved one request. *See* Declaration of Captain Mery-Angela Sanabria Katson, filed in *Navy Seal 1 v. Biden*, No. 8:21-cv-02429-SDM-TGW (M.D. Fla. Feb. 16, 2022), ECF No. 103-2 (describing documents filed under seal pursuant to court order in that matter).

in the governance of its affairs.").  Plaintiffs may disagree that the Navy has a compelling interest in slowing the spread of COVID-19 and maintaining a medically fit force, but that policy choice resides with the Navy, not with its service members.  *See Goldman*, 475 U.S. at 507 ("[W]hen evaluating whether military needs justify a particular restriction on religiously motivated conduct, courts must give great deference to the professional judgment of military authorities concerning the relative importance of a particular military interest."); *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005) (explaining that statute similar to RFRA must be applied "with particular sensitivity to security concerns"); *Lebron v. Rumsfeld,* 670 F.3d 540, 557–58 (4th Cir. 2012) (denying RFRA claim against the military and noting that "[c]ourts have long been reluctant to interpret statutes in ways that allow litigants to interfere with the mission of our nation's military, preferring that Congress explicitly authorize suits that implicate the command decisions of . . . our national defense").

Second, Plaintiffs point to an anonymous complaint Plaintiffs' counsel "received on December 23, 2021 from one of [his] clients."  Decl. of Andrew B. Stephens ¶ 4, ECF No. 62.  The complaint includes a copy of a Navy Standard Operating Procedure ("SOP") providing internal instructions for processing religious accommodation requests.  *See id.*  As described in Defendants' Opposition to Plaintiffs' Motion for Class Certification, ECF No. 120, at 10–11, this SOP is merely an "administrative processing" tool to ensure that religious accommodation requests are adjudicated efficiently, ECF No. 121, Ex. 3 (Katson Decl., Feb. 15, 2022) ¶ 19 (App030); *see also id.* ¶ 17 (App028) ("[SOPs] are frequently used tools by military staff officers to implement efficient and uniform administrative procedures across a wide-range of military issues.").  Contrary to Plaintiffs' allegations that the form denial template in the SOP is evidence that all religious accommodation requests are "pre-determined," Stephens Decl. 2, ECF No. 62, the SOP "does not dictate the manner in which the adjudicating authority . . . assesses any particular [religious accommodation] request,"  ECF No. 121, Ex. 3 (Katson Decl., Feb. 15, 2022) ¶ 19 (App030), and allows for the form template to be modified

once the adjudicating authority has made a final decision on the request, *see id.* ¶ 18 (App029).  It is reasonable for the SOP to include the form template that represents the result most likely to occur on average.  Given the strength of the Navy's compelling governmental interest in maintaining a medically fit force, it is also reasonable to assume that a denial is more likely than an approval on average.  Once again, just because Plaintiffs disagree with the strength of the Navy's compelling governmental interest does not mean that the Navy is acting in bad faith or unlawfully in denying religious exemption requests.

Plaintiffs also fail to explain why a class-wide preliminary injunction in particular is proper. To support a class-wide preliminary injunction on RFRA grounds, Plaintiffs must establish that the Navy has no compelling governmental interest in vaccinating the entire putative class—every single service member in the Navy who has submitted a religious accommodation request – or that there is less restrictive means applicable to each and every member of that class.  *See Hobby Lobby*, 573 U.S. at 726–27 (requiring the Court to consider the "asserted harm of granting specific exemptions to particular religious claimants").  This expands Plaintiffs' requested preliminary injunctive relief from 35 service members to as many as 4,000 service members across various ranks, occupational specialties, and unit assignments.  *See* Ex. 1 ¶ 2 (Decl. of Admiral Daryl L. Caudle) (App003-04).  The Court cannot possibly conclude that *none* of these requests would implicate a compelling governmental interest, depending on the facts and circumstances at issue.  Nor should the Court assume that every service member would wish to litigate the matter through class action representation by the named plaintiffs here.

Even if the Fifth Circuit upholds this Court's holding that the Navy does not have a compelling governmental interest in vaccinating the 35 named Plaintiffs, the same cannot be said for

the entire putative class.[3]   Indeed, "[s]temming the spread of COVID-19 is unquestionably a compelling interest." PI Order 19, ECF No. 66 (quoting *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020)).   This Court has recognized that the Navy has a "broad compelling interest in widespread vaccination of its force[.]" *Id.* at 20.   Admiral Daryl Caudle, Commander of the United States Fleet Force Command and third-ranking admiral in the Navy, explains in detail that allowing up to 4,000 service members to go unvaccinated and to potentially deploy unvaccinated would "severely undermine military readiness."   Ex. 1 Caudle Decl. ¶ 18 (App017); *see also infra* Section III.

Accordingly, Plaintiffs have failed to show that their class-action RFRA claim is likely to succeed.

## II.   Plaintiffs Do Not Face Irreparable Harm.

Plaintiffs, unable to identify particularized harm for the class as a whole, rely solely on the notions that the rights of the class are compromised under RFRA and the First Amendment.   Class PI Mem. at 3-4, ECF No. 105.   Plaintiffs must show that they have "no adequate remedy at law," *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011), and the availability of "adequate compensatory or other corrective relief . . . weighs heavily against a claim of irreparable harm," *Sampson v. Murray*, 415 U.S. 61, 90 (1974).   The standard is particularly demanding in the military context.   *See, e.g., Pitcher v. Laird*, 415 F.2d 743, 745 (5th Cir. 1969).

Here, no service member is subject to involuntary or forcible vaccination that would violate their beliefs.   And discharge and discipline are neither imminent nor irreparable for most class

---

[3] The Court previously relied on individual Plaintiffs' conclusions that they personally had previously conducted some successful missions during the pandemic.   *See* PI Order 19-20, ECF No. 66.   Plaintiffs' assessment of military readiness is, of course, "quite beside the point." *See Goldman*, 475 U.S. at 509 (dismissing "expert testimony" from military official); *Rostker*, 453 U.S. at 63 (similar); *Trump*, 138 S. Ct. at 2421-22 (giving no weight to the views of former military officials).   But even if Plaintiffs' testimony had some relevance, the Government does not need to prove a 100% failure rate of all missions in the face of COVID-19.   Defendants have submitted copious evidence that maintaining both these particular Plaintiffs and unvaccinated Navy service members in general undermines military readiness.

members, given that few exemption requests have been fully adjudicated, and the separation process involves multiple additional steps, as discussed above. *See supra* Part I.A.1. The district court properly recognized that other injuries plaintiffs alleged—such as being "declared nondeployable" and being deprived of "promotions and travel," PI Order 23-24, ECF No. 66—would "not, by themselves, rise to the level of irreparable injury." *Id.* As the court explained, plaintiffs could be awarded "backpay, retroactively promoted, or reimbursed for lost benefits like medical insurance and the GI Bill." *Id.*; *see also* 10 U.S.C. § 1552 (authorizing military departments to "correct any military record" to remove "an error" or "correct . . . an injustice"); Merz Decl. ¶¶ 15-22, ECF No. 44-3 Ex. 17 (App311-20) (describing remedies available through intra-military processes).

Plaintiffs' view that irreparable harm exists anytime an employment claim is "intertwined" with a constitutional claim is irreconcilable with the Supreme Court's admonition that employment-related harms do not constitute irreparable injury absent a "genuinely extraordinary situation." *Sampson*, 415 U.S. at 92 n.68. "[I]rreparable harm must be proven separately and convincingly," regardless of "the strength and nature of the underlying claim." *White v. Carlucci*, 862 F.2d 1209, 1212 (5th Cir. 1989) (no irreparable harm, despite claim of race-based discrimination); *see also Sampson*, 415 U.S. at 90-92. None of plaintiffs' allegations satisfy that demanding standard.

## III. The Equities and the Public Interest Weigh Against a Preliminary Injunction.

The third and fourth requirements for issuance of a preliminary injunction—the balance of harms and whether the requested injunction will disserve the public interest—"merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). These factors tilt decisively against granting a preliminary injunction here.

The Court previously relied on its conclusion that the Navy could not show irreparable harm from 35 unvaccinated service members. PI Order 19, ECF No. 66; ECF No. 116, at 8. Defendants strongly disagree, and have both relied on the determination of senior military officials, *see* Defs.'

20

Prelim. Inj. Opp'n App'x, Exs. 1-11, ECF No. 44 (App001-260), and submitted sworn declarations from multiple senior military officials that the Navy has a compelling interest in vaccination of these particular Plaintiffs and of Navy service members in general, *see, e.g.,* Decl. of Scott Stanley, ECF No. 44-3, Ex. 12 (App261-69); Decl. of Lanny Littlejohn, ECF No. 44-3, Ex. 14 (App273-79); Decl. of Christopher Brown, ECF No. 44-3, Ex. 15 (App280-91); Decl. of Tonya Rans, ECF No. 44-3, Ex. 18 (App345-70); Decl. of William Lescher, ECF No. 87, Ex. 1 (App001-31); Suppl. Decl. of Lanny Littlejohn, ECF No 87, Ex. 2 (App032-39); Decl. of Mery-Angela Sanabria Katson, Feb. 15, 2022, ECF No. 121, Ex. 3 (App017-53).  But regardless of the Court's treatment of those plaintiffs, the requested class-wide injunction here would cover *thousands* of service members and is not logically subject to the same analysis.  The Court previously agreed that the "Defendants have a broad compelling interest in widespread vaccination of its force," PI Order 20, ECF No. 66, and should not now rule, as a preliminary matter, that thousands of sailors should remain unvaccinated.

As explained further in the Declaration of Admiral Caudle, "every Sailor is important to mission accomplishment and must be available to perform their duties globally whenever called upon," and Navy medical standards ─ including vaccination requirements ─ are "designed to minimize the odds that any given Service member will be unable to perform his or her duties in the future because of illness, disease, or injury."  Caudle Decl. ¶ 6 (App006-07).  And these "standards are particularly vital in the deployed or at sea environment where a service member may not have access to robust medical care and may require medical evacuation."  *Id.*; *see id.* at ¶¶ 7-13 (describing working situation in major Navy components) (App007-012).  Accordingly, "the judgment of the Military Services is that vaccines requirements are lawful orders and are the most effective and readily available tool the Armed Forces has to keep Sailors safe, fully mission capable and prepared to execute the Commander-in-Chief's orders to protect vital United States' national interests," and "the fewer vaccinated Sailors, the less ready the Navy is to deter aggression and, if required, fight and win

decisively." *Id.* ¶ 14 (App012-14).  "The Department of Defense and Navy have determined that COVID-19 is a risk that can be best managed by vaccination in addition to other mitigation measures and is the least intrusive means to maintain maximum readiness while creating the lowest risk the Navy is willing to accept to the Force." *Id.* ¶ 15 (App014-15).  Every Sailor assigned to an operational unit must be fully vaccinated.  *Id.* ¶ 6. (App006-07).

In making this determination, the Navy has explained that COVID-19 has had a significant impact on military readiness to date.  Caudle Decl. ¶ 14 (App012-14).  The deaths, hospitalizations and illnesses are significant impacts on the Navy, and the Navy has also lost over one million days, in which Sailors were unable to train or perform duties.  *Id.*  "In addition to the irreplaceable loss of 17 Sailors, the lost opportunities resulting from this massive loss of time and readiness cannot be replaced."  *Id.*; *see also* Yun Decl. ¶ 8 (App029-30) (explaining continued impact of COVID on the unvaccinated portions of the force and concluding that "assigning unvaccinated personnel - regardless if medically exempt or administratively exempt - to deployable units is an unacceptable risk and has the significant potential to interfere with mission accomplishment").  In denying the stay motion, the Court also appeared to accept *Plaintiffs'* military judgment that COVID-19 was no longer having severe impacts on the Navy based on a partial out-of-context quotation from Admiral Merz in a media report.  *See* ECF No. 116, at 8.  In the cited article, Admiral Merz "stated the Omicron variant has had less of an impact on naval operations *because* the Navy is now requiring 100% vaccination of its service members."  Ex. 2, Second Decl. of Vice Admiral William Merz ¶ 3 (App021-22).  During the outbreak on the USS Milwaukee, "the vaccine kept service members from getting seriously ill and therefore minimized the operational impact." *Id.*  Admiral Merz concurs that "[a]n injunction requiring the Navy to reintroduce unvaccinated service members to  operational units (that the Navy previously removed due to their unvaccinated status) or requiring the Navy to keep unvaccinated service members on operational units, would risk returning Navy units to a condition before the vaccine mandate and

present an unacceptable risk to naval operations." *Id.* ¶ 4 (App022-23). "For example, the risk of severe illness from COVID is greatly reduced for vaccinated people, thus minimizing the need for a unit to remain within a certain distance of medical care (which limits what a unit can do) or the cost of diverting that unit to remove Sailors who become severely ill or ill to a point beyond which organic resources can handle their medical care." *Id.*; *see id.* ¶¶ 4-6 (describing other costs and dangers associated with unvaccinated personnel).

Ultimately, "[h]aving 4,000 unvaccinated Sailors deployed across the Fleet will create an unacceptable risk to readiness and result in unnecessary deaths, hospitalizations, and illnesses." Ex 1, Caudle Decl. ¶ 15 (App014-15). The requested injunction thus "would seriously degrade military readiness, and unnecessarily limit the Navy's ability to respond to the most challenging crises, and may result in the failure of critical military missions and irreparable harm to the national security of the nation." "[T]he COVID-19 virus remains a threat *to the unvaccinated and, therefore, the mission if unvaccinated remain in deployable units.*" *Id.* ¶ 16 (App015-16). "[F]ully vaccinated units withstand COVID-19 outbreaks with less impact to the mission," but "[w]ith each unvaccinated member added to a unit, the risk to personnel and risk to mission increases exponentially and unacceptably in the professional judgment and experience of the Military Services." *Id.*; *see also* Ex. 2, Second Merz Decl. ¶¶ 4-5 (App022-23); Lescher Decl. ¶ 2, ECF No 87, Ex. 1 (App003) ("Restriction of the Navy's ability to reassign unvaccinated personnel in order to mitigate COVID-19 related risks to units preparing to deploy, or that are deployed, will cause direct and immediate impact to mission execution.").

Finally, the requested Navy-wide injunction would impermissibly interfere with good order and discipline. As Admiral Caudle explains, the life and death work of the military demands obedience to lawful orders. Caudle Decl. ¶¶ 14, 17 (App012-14, App016-17). As the Supreme Court has explained, "[t]he inescapable demands of military discipline and obedience to orders cannot be taught on battlefields; the habit of immediate compliance with military procedures and orders must be

virtually reflex with no time for debate or reflection." *Chappell v. Wallace*, 462 U.S. 296, 300 (1983).

"Our success, our national security, and the safety of our people depends on instinctive compliance

with orders, and unless an order is 'patently illegal,' the Sailor should robustly follow the order."

Caudle Decl. ¶ 14 (App12-14).   The military cannot successfully function where service members feel

free to define the terms of their own military service, including which orders they will choose to follow.

Plaintiffs' proposed preliminary injunction would "prohibit discipline, adverse administrative action

and non-adverse, routine personnel actions and, therefore, irreparably harm good order and discipline

in the Navy." Caudle Decl. ¶ 17 (App016-17).   The injunction Plaintiffs now demand here would

encourage other members to attempt to bypass the military's process and challenge a commander's

professional military judgment; "[t]he lack of uniformity and disparate treatment necessitated by the

order would significantly corrode good order and discipline to the point in which unit effectiveness

would very likely suffer." *Id.*   Such interference in internal military discipline "'in the aggregate'

present[s] the possibility of substantial disruption and diversion of military resources" and is contrary

to the public interest. *Parrish v. Brownlee*, 335 F. Supp. 2d 661, 669 (E.D.N.C. 2004) (quoting *Irby v.

United States*, 245 F. Supp. 2d 792, 797-98 (2003)); *see Chilcott v. Orr*, 747 F.2d 29, 33 (1st Cir. 1984)

(noting the "strong judicial policy against interfering with the internal affairs of the armed forces");

*Shaw v. Austin*, 539 F. Supp. 3d 169, 184 (D.D.C. 2021) ("the public interest supports . . . limited

intrusion in military affairs from civilian courts"); *Reinhard v. Johnson*, 209 F. Supp. 3d 207, 221 (D.D.C.

2016) (same).

    In short, the temporary "harm" to Plaintiffs from staying in assignments they do not prefer

or missing trainings as a result of their unvaccinated status is vastly outweighed by the threat to military

readiness, especially at this preliminary stage of the proceedings and especially when they have not

exhausted their military remedies.   The military's judgment in this respect is entitled to the utmost

deference, and may not be replaced with the Court's assessment of the impact of unvaccinated sailors

24

on current readiness.  *See Rostker*, 453 U.S. at 66; *Gilligan*, 413 U.S. at 10 ("it is difficult to conceive of

an area of governmental activity in which the courts have less competence.").  As another court found,

"the public interest in the nation's military readiness may well be served by allowing military officials

who are familiar with the unique challenges posed by the COVID-19 pandemic in a military setting to

manage those challenges without this Court's intervention."  Order at 6, *Robert v. Austin*, No. 1:21-cv-

02228 (D. Colo. Sept. 1, 2021), ECF No. 12.

## CONCLUSION

Accordingly, Plaintiffs' motion for a class-wide preliminary injunction should be denied.

Dated:  February 23, 2022

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director

Respectfully submitted,

*/s/ Amy E. Powell*
ANDREW E. CARMICHAEL
AMY E. POWELL
Senior Trial Counsel
STUART J. ROBINSON
Senior Counsel
ZACHARY A. AVALLONE
COURTNEY D. ENLOW
LIAM C. HOLLAND
CATHERINE YANG
CASSANDRA M. SNYDER
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 616-8467
Fax: (202) 616-8470
Email: courtney.d.enlow@usdoj.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 23, 2022, I electronically filed the foregoing paper with the Clerk of Court using this Court's CM/ECF system, which will notify all counsel of record of such filing.

/s/ Amy E. Powell
AMY E. POWELL
Senior Trial Counsel
Federal Programs Branch
Civil Division, Department of Justice
150 Fayetteville St, Suite 2100
Raleigh, NC 27601
Phone: 919-856-4013
Email: amy.powell@usdoj.gov

26