UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **U.S. NAVY SEALs 1-3;** on behalf of themselves and all others similarly situated; **U.S. NAVY EXPLOSIVE ORDNANCE DISPOSAL TECHNICIAN 1**, on behalf of himself and all others similarly situated; U.S. **NAVY SEALS 4-26**; **U.S. NAVY SPECIAL WARFARE COMBATANT CRAFT CREWMEN 1-5**; and **U.S. NAVY DIVERS 1-3**,<br><br>                Plaintiffs,<br><br>      v.<br><br>**LLOYD J. AUSTIN, III**, in his official capacity as United States Secretary of Defense; **UNITED STATES DEPARTMENT OF DEFENSE**; **CARLOS DEL TORO**, in his official capacity as United States Secretary of the Navy,<br><br>                Defendants. | Case No. 4:21-cv-01236-O |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION
FOR CLASSWIDE PRELIMINARY INJUNCTION**

## INTRODUCTION

Defendants double down on their claim that the Navy is evaluating each Religious Accommodation (RA) request as applied to each person. Defendants claim that the Standard Operating Procedure the Deputy Chief of Naval Operations (DCNO) is using to reject every request is just a guideline and officials are still doing the requisite evaluation, but all the evidence indicates the opposite. The picture that continues to emerge is that the Navy seeks to justify its denial of *every Navy servicemember's* RA request by formulaically reciting that "there is no less restrictive means" and that the Vaccine Mandate "serves the compelling interest of military readiness and health of the force." That boilerplate falls far short of what is required under RFRA. The evidence shows that Defendants do not consider individual circumstances that should obviously matter, such as whether the servicemember works in an office or with others, in a dangerous job or a desk job, has special qualifications to train others to make that training safer, has natural immunity to COVID-19, or has deployed previously without incident. Defendants' "least restrictive means" analysis is the same for *every servicemember*. And Defendants' medical justification is based on health data that is months old and outdated in light of more recent developments everyone is aware of. Perhaps realizing this, Defendants argue that the military is entitled to deference, and that if any review of their decisions is permitted, it should be under the rational-basis test only. But Defendants' preferred analysis would require rewriting RFRA, which neither this Court, nor any other, has the authority to do. Defendants present nothing to explain why this Court's conclusion that their evaluation of RA requests is "theater" is incorrect, and further evidence supports it. The Court should therefore grant the classwide preliminary injunction

to protect the religious-liberty rights of the Navy Class, as it already has done for the 35 individual Plaintiffs.[1]

## ARGUMENT

### I. Plaintiffs' Claims Are Justiciable.

#### A. Defendants' ripeness arguments are meritless.

This Court already rejected Defendants' argument that Plaintiffs' claims are unripe. *See* Dkt. 66 at 8–13. Defendants assert that even if Plaintiffs' appeals of their RA requests are decided, as some have been now, Plaintiffs' claims are still unripe until there is a final military decision on separation. Defendants also refuse to recognize the interim harm Plaintiffs are suffering now. But the potential harm of being kicked out of the military is only one harm that Plaintiffs suffer. The immediate harm is the infringement of Plaintiffs' religious liberty rights, as this Court recognized. Dkt. 66 at 24. And as the Fifth Circuit just held in denying a stay pending appeal of this Court's preliminary injunction, "Plaintiffs . . . face irreparable harm if judicial review is denied. . . . By pitting their consciences against their livelihoods, the vaccine requirements would crush Plaintiffs' free exercise of religion." *Navy SEALs 1-26 v. Biden*, No. 22-10077 (5th Cir. Feb. 28, 2022), slip op. at 19.

The military separation process can take years. *See* App.0040–41. If Defendants were correct, that would mean that the Navy Class would be forced to suffer the infringement of their fundamental rights for years before they had any hope of redress. Happily, that is not the law.

---

[1] Other courts have joined this one in granting preliminary injunctions against application of the DoD vaccine mandate to servicemembers with religious objections. *See Poffenbarger v. Kendall*, 3:22-cv-00001-TMR-CHG (S.D. Ohio Feb. 28, 2022); *Air Force Officer v. Austin*, No. 5:22-cv-00009-TES, 2022 WL 468799 (M.D. Ga. Feb. 15, 2022); *Navy SEAL 1 v. Biden*, No. 8:21-cv-2429-sdm-tgw, 2022 WL 520829 (M.D. Fla. Feb. 18, 2022). Requests for class certification are also pending in *Air Force Officer* and *Navy SEAL 1*.

RFRA does not require exhaustion before a plaintiff can seek redress for violation of their statutory rights, and Fifth Circuit precedent does not require exhaustion where a plaintiff is suffering irreparable harm and the military administrative procedure is inadequate to remedy that presently occurring harm, as it is here. Defendants intend to deny every RA request. *See* App.0003–0004, 0008, 0010. Thus, "Plaintiffs are exempted from exhausting their administrative remedies" because "the administrative remedy is futile and plaintiffs raise substantial constitutional claims." *Navy SEALs 1-26*, slip op. at 17; *see also See Van Hoffburg v. Alexander,* 615 F.2d 633, 640 (5th Cir. 1980). Defendants point to *Hodges v. Callaway,* 499 F.2d 417 (5th Cir. 1974), but in *Hodges*, the only harm at issue was that of wrongful discharge. There was no allegation of ongoing constitutional or statutory harm. *See id.* at 419–20. And in any event, Defendants' own regulations make clear that any servicemember without an approved religious exemption who refuses COVID-19 vaccination will be processed for administrative separation. Defendants fail to explain how any administrative board process could provide relief for any Plaintiff considering those constraints.

Moreover, the military administrative review board process is inadequate for determining the main issue in this case, which is common to all class members—whether Defendants' process for evaluating RA requests comports with RFRA and the First Amendment. *See* Dkt. 66 at 14 (citing cases).

    B.  *Mindes v. Seaman* **does not require abstention.**

As the Fifth Circuit just held, it is doubtful that *Mindes* survived RFRA, a super statute. *Navy SEALs 1-26*, slip op. at 16. But even if *Mindes* still applies, it is satisfied here, as this Court (Dkt. 66 at 8–17) and now the Fifth Circuit have already held, *see id.* at 18. That does not change for the Navy Class. Again, "whether denying religious accommodations" across the board "violates the First Amendment is a distinct legal question that would not 'seriously impede the

military in the performance of vital duties.'" Dkt. 66 at 16 (quoting *Mindes v. Seaman*, 453 F.2d 197, 201 (5th Cir. 1971)); *see also* Dkt. 90 at 5–6 (classwide questions of law and fact). Contrary to Defendants' repeated assertions, "[w]hether the vaccine mandate passes muster under the First Amendment and RFRA requires neither 'military expertise or discretion.' It is a purely legal question appropriate for judicial review." Dkt. 66 at 16 (quoting *Mindes*, 453 F.2d at 201). And as the Fifth Circuit said, "if the Navy's plan is to ignore RFRA's protections, as it seems to be on the record before us, courts must intervene because '[g]enerals don't make good judges—especially when it comes to nuanced constitutional issues.'" *Navy SEALs 1-26*, slip op. at 21–22 (quoting *Air Force Officer*, 2022 WL 468799, at *8).

## II. Strict Scrutiny Applies to the Class Members' RFRA Claims.

Defendants also claim that any review of their decisions here must be "highly deferential." Dkt. 129 at 8–10. But Defendants cite no authority that suggests that a military decision that violates RFRA is immune from judicial review. In fact, not a single case Defendants cite for that proposition involves a post-RFRA religious liberty claim. *See Trump v. Hawaii*, 138 S. Ct. 2392 (2018) (Executive power/Establishment Clause challenge to vetting procedures for immigrants of foreign states); *Solorio v. United States*, 483 U.S. 435 (1987) (jurisdiction of a military court-martial); *Goldman v. Weinberger*, 475 U.S. 503 (1986) (pre-RFRA Free Exercise claim); *Rostker v. Goldberg*, 453 U.S. 57 (1981) (Fifth Amendment Due Process /gender discrimination claim over sex-based registration for selective service); *Fiallo v. Bell*, 430 U.S. 787 (1977) (Equal Protection/Fifth Amendment Due Process challenge to discrimination against fathers of illegitimate children); *Schlesinger v. Ballard*, 419 U.S. 498 (1975) (Fifth Amendment Due Process/gender discrimination challenge to mandatory-discharge provisions); *Weiss v. United States*, 510 U.S. 163 (1944) (Appointments Clause /Fifth Amendment Due Process challenge to appointment of military judges and lack of fixed term of office); *Doe 2 v. Shanahan*, 755 F. App'x

4

19 (D.C. Cir. 2019) (Fifth Amendment Due Process challenge to transgender military ban); *Karnoski v. Trump*, 926 F. 3d 1180 (9th Cir. 2019) (same).

Defendants' "doctrine of military deference" cannot rewrite a statute that Congress intended to apply to the military, nor can this Court. To the contrary, "RFRA provides both broad protection of the free exercise right and a broad right of action for judicial relief." *Singh v. Carter*, 168 F. Supp. 3d 216, 226 (D.D.C. 2016). And "[n]otably, Congress nowhere inserted any exception for the U.S. Armed Forces from RFRA's application or any exhaustion requirement, as it did, for example, in RFRA's 'sister statute,' the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc, et seq." *Id.* Any deference owed the military "does not justify the abdication of the responsibility, conferred by Congress, to apply [a statute's] rigorous standard." *Holt v. Hobbs*, 574 U.S. 352, 364 (2015). "To the contrary, determining whether a government official's action contravenes a statutory directive is singularly within the expertise of a district court." *Navy Seal 1 v. Austin*, No. 8:21-CV-2429-SDM-TGW, 2022 WL 534459, at *13 n.7 (M.D. Fla. Feb. 18, 2022) (citing *Holt*, 574 U.S. at 369 (emphasizing that RLUIPA "demands much more" than deferring to an officials "mere say-so that they could not accommodate petitioner's request"); *Harmon v. Brucker*, 355 U.S. 579, 582 (1958); *Emory v. Sec'y of Navy*, 819 F.2d 291, 294 (D.C. Cir. 1987); *Dilley v. Alexander*, 603 F.2d 914, 920 (D.C. Cir. 1979) ("It is the duty of the federal courts to inquire whether an action of a military agency conforms to the law[.]"); *Singh*, 185 F. Supp. 3d at 218–22; *Heap v. Carter*, 112 F. Supp. 3d 402 (E.D. Va. 2015)).

### III. Defendants' Boilerplate Denial of Every Religious Accommodation Request Does Not Satisfy Their High Burden Under RFRA.

"RFRA did more than merely restore the balancing test used in the *Sherbert* line of cases; it provided even broader protection for religious liberty than was available under those decisions."

*Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 695 n.3 (2014); *accord Holt*, 574 U.S. 352, 357 (RFRA "provide[s] greater protection for religious exercise than is available under the First Amendment.") Not only does RFRA require that the Government must demonstrate a "compelling governmental interest" to justify a substantial burden on religious beliefs, but it also requires that the Government use the "least restrictive means" available for doing so. 42 U.S.C. § 2000bb–1(b). "'[L]east restrictive means' is a severe form of the 'narrowly tailored' test." *McAllen Grace Brethren Church v. Salazar*, 764 F.3d 465, 475 (5th Cir. 2014). It is an "exceptionally demanding" test for the Government to meet. *Id.* (citing *Hobby Lobby*, 134 S. Ct. at 2780). Defendants expect to meet this demanding test by merely quoting the words "compelling interest" and "least restrictive means," but the law requires far more. RFRA requires the "Government to demonstrate that the compelling interest test is satisfied through application of the challenged law 'to the person' –the particular claimant whose sincere exercise of religion is being substantially burdened." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430–31 (2006) (quoting 42 U.S.C. § 200bb-1); *Hobby Lobby,* 573 U.S. at 726. As the Fifth Circuit said, Defendants' "institutional interests" here are "nevertheless insufficient under RFRA. The Navy must instead 'scrutinize[] the asserted harm of granting specific exemptions to particular religious claimants.'" *Navy SEALs 1-26*, slip op. at 24 (quoting *O Centro*, 546 U.S., at 431).

"RFRA 'demands much more[]' than deferring to 'officials' mere say-so that they could not accommodate [a plaintiff's religious accommodation] request.'" *Id.* (quoting *Holt*, 574 U.S. at 369.) A "to the person" analysis under RFRA must be supported by "specific and reliable evidence" and not "conclusory assertions." *Davila v. Gladden,* 777 F.3d 1198, 1206 (11th Cir. 2015) (finding that a prison official's assertion of a "significant impact on security interests and cost concerns" was not sufficiently compelling to justify prohibiting a prison inmate from wearing

6

religious beads and shells); *see also Tagore v. United States,* 735 F.3d 324, 331 (5th Cir. 2013) (A "categorical approach" is insufficient, particularly if . . . the statute includes exceptions . . . and the government must produce evidence justifying its specific conclusion.). The Government must not rely on "magic words" or "dismissive, encompassing, and inflexible generalizations" to receive unlimited deference in disputes concerning the military. *Navy SEAL 1*, 2022 WL 534459 at *15, *17 (citing *Davila*, 777 F.3d at 1206). When "military readiness and the health of the force" is asserted as a compelling interest, the Government must provide "record material demonstrating that the military considered both the marginal increase, if any, in the risk of contagion incurred by granting the requested exemption and the marginal detrimental effect, if any, . . . flowing from the specific denial of [the Plaintiffs'] request for religious exemption from COVID-19 vaccination." *Navy Seal 1,* 2022 WL 534459 at *17. This analysis includes considering the specific skills, qualifications, and experience levels of the servicemember. *Id.*

  The Navy has yet to provide the evidentiary proof required by RFRA. Instead, the Navy uses a form denial letter produced by a six-phase, fifty step process that begins with a prepared disapproval template. App.0012–0030, MPI Hr'g Exs. 11, 19, 24. This form denial, which appears to be used in adjudicating all requests, vaguely states that the military has a compelling interest in military readiness, unit cohesion, good order and discipline, health and safety, on both unit and individual levels. *Id.*  Nowhere in the denial letters does the Navy explain, with any degree of specificity, why it has a compelling interest in denying a particular RA request. Instead, it relies on a categorical denial through conclusory assertions unsupported by specific evidence. *See Navy SEALs 1-26*, slip op. at 26 ("[I]n none of the letters denying religious accommodations to these Plaintiffs has the Navy articulated Plaintiff-specific reasons for its decisions.") "Yet surely, had the Navy been conscientiously adhering to RFRA, it could have adopted least restrictive means to

7

accommodate religious objections against forced vaccinations, for instance, to benefit personnel working from desks, warehouses, or remote locations." *Id.* at 27. As this Court already observed, the Navy's RA process more closely resembles "theater" than the case-by-case analysis demanded by RFRA. Dkt. 66 at 1. Defendants claim Plaintiffs' evidence of a classwide violation of RFRA is "weak" and disparage the SOP's original form. Opp. at 15, 17. But this complaint and the SOP are no longer anonymous. App.0002–0028. Regardless, Defendants do not appear to disavow it. They simply attempt to downplay it, pretending that it still leaves room for thoughtful consideration of individual circumstances and least restrictive means analysis to that person. Additional evidence shows that pretense is false:

*First*, as the Fifth Circuit explained, "[f]urther evidencing that there is a pattern of disregard for RFRA rights rather than individualized consideration of Plaintiffs' requests, the Navy admits it has not granted a single religious accommodation." *Navy SEALs 1-26*, slip op. at 26–27.[2]

*Second*, the denial letters, even outside the NSW community, appear to be nearly identical. App.0012–0030, 0144–45, MPI Hr'g Exs. 11, 19, 24; *see also* App.0152, 0156 (Marine).

*Third*, the Navy appears to use the same "least restrictive means" analysis for *every single person*. App.0038, 0043–0056; *cf.* Opp. at 14 ("The final stage—whether there are any less restrictive means to achieve the naval interest—is especially individualized."); *Navy SEALs 1-26*, slip op. at 27 ("Yet surely, had the Navy been conscientiously adhering to RFRA, it could have adopted least restrictive means to accommodate religious objections against forced vaccinations, for instance, to benefit personnel working from desks, warehouses, or remote locations.")

---

[2] Defendants now claim that they have approved one RA request but offer no explanation of this supposed exemption and whether its circumstances comply with RFRA. *See* Opp. at 16 n.2.

8

*Fourth*, the Navy's analysis for each RA request is simplistic, rote, and involves the same boilerplate. App.0010, 0026, 0039, 0099–0102; *cf.* Opp. at 14 ("Each stage is highly dependent on the particular facts applicable to the individual requestor.").

*Fifth*, the Navy refuses to consider changed circumstances in reevaluating requests submitted several months ago, such as the job of the requestor, newly acquired natural immunity, and a different variant of COVID-19 which has caused widespread infection in vaccinated personnel. App.0104–0112, 0125, 0132–0147. Instead, it continues to rely on months-old information about the virus, even though other agencies have revised health guidelines many times since last fall. App. 0058–0097, 0113-14.

*Sixth*, despite all this, the Navy claims the Court should still presume that it is acting in good faith, even though their actions clearly appear to violate the law. Opp. at 16. Yet DoD has yet to comply with Congressional requests to explain their review process for RA requests. App.0152–57.

Mounting evidence shows that that the Court's original conclusion regarding the Navy's RA request process—that it was "by all accounts . . . theater"—is not only correct, but it is correct for all Navy servicemembers who submitted RA requests and therefore suffer the same harm from the violation of their rights caused by this process. Dkt. 66 at 1.

## IV. Defendants' Unequal Treatment of Secular and Religious Requests Is Not Neutral, So Strict Scrutiny Applies to the Navy Class's First Amendment Claims, Which Are Likely to Succeed for the Same Reason as the RFRA Claims.

Defendants have granted numerous temporary and permanent medical exemptions to the Mandate. Yet Defendants claim that their Mandate is still neutral because it applies to everyone. The Supreme Court disagrees. "A law is not generally applicable if it 'invite[s]' the government to consider the particular reasons for a person's conduct by providing 'a mechanism for individualized exemptions.'" *Fulton v. City of Philadelphia,* 141 S. Ct. 1868, 1877 (2021)

(citations omitted). "Underinclusiveness mean[s] that" the Mandate is "not generally applicable." *Id.* As the Fifth Circuit concluded, the medical exemptions granted, even to NSW community members, "renders the vaccine requirements 'underinclusive.'" *Navy SEALs 1-26*, slip op. at 26.

Defendants claim that granting medical exemptions, but not religious exemptions, furthers their interest in maintaining the health of the force, but that is nonsense. "A law also lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Fulton,* 141 S. Ct. at 1877. Even if a servicemember stands to experience an adverse reaction if they receive the COVID-19 vaccination, that does not make them less likely to transmit COVID to others than other unvaccinated personnel. Religious conduct is not more dangerous than the same conduct performed for non-religious reasons. *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 544–45 (1993). Defendants claimed that the risk of even 35 unvaccinated individual plaintiffs was too much of a threat to the Navy, *see* Dkt. 86, yet they have already accepted less than 100% vaccination by granting medical exemptions.

A law burdening religious practice that is not neutral or not of general application must undergo the most rigorous of scrutiny. *Lukumi*, 508 U.S. at 546. Thus, because Defendants' Mandate is not generally applicable, it is subject to strict scrutiny. It cannot meet that standard for the same reasons it cannot meet RFRA's high burden.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court set a hearing for Plaintiffs' motion for class certification and motion for preliminary injunction. The motion for classwide preliminary injunction should be granted.

Respectfully submitted this 28th day of February, 2022.

Kelly J. Shackelford
  Texas Bar No. 18070950
Jeffrey C. Mateer
  Texas Bar No. 13185320
Hiram S. Sasser, III
  Texas Bar No. 24039157
David J. Hacker
  Texas Bar No. 24103323
Michael D. Berry
  Texas Bar No. 24085835
Justin Butterfield
  Texas Bar No. 24062642
Danielle A. Runyan *
  New Jersey Bar No. 027232004
Holly M. Randall *
  Oklahoma Bar No. 34763
FIRST LIBERTY INSTITUTE
2001 W. Plano Pkwy., Ste. 1600
Plano, Texas 75075
Tel: (972) 941-4444
jmateer@firstliberty.org
hsasser@firstliberty.org
dhacker@firstliberty.org
mberry@firstliberty.org
jbutterfield@firstliberty.org
drunyan@firstliberty.org
hrandall@firstliberty.org

Jordan E. Pratt
  Florida Bar No. 100958* **
FIRST LIBERTY INSTITUTE
227 Pennsylvania Ave., SE
Washington, DC 20003
Tel: (972) 941-4444
jpratt@firstliberty.org

*  Admitted pro hac vice
** Not yet admitted to the D.C. Bar, but admitted to practice law in Florida. Practicing law in D.C. pursuant to D.C. Court of Appeals Rule 49(c)(8) under the supervision of an attorney admitted to the D.C. Bar.

/s/ Heather Gebelin Hacker
Heather Gebelin Hacker
  Texas Bar No. 24103325
Andrew B. Stephens
  Texas Bar No. 24079396
HACKER STEPHENS LLP
108 Wild Basin Road South, Suite 250
Austin, Texas 78746
Tel.: (512) 399-3022
heather@hackerstephens.com
andrew@hackerstephens.com

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2022, I electronically filed the foregoing document through the Court's ECF system, which automatically notifies counsel of record for each party.

/s/Heather Gebelin Hacker
HEATHER GEBELIN HACKER
