# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| **NAVY SEALS 1-26,** *et al.*, <br><br>                    Plaintiffs, <br><br>    v. <br><br> **LLOYD AUSTIN, III**, in his official capacity as <br> Secretary of Defense, *et al.*, <br><br>                   Defendants. | Case No. 4:21-cv-01236-O |

## REPLY IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

## INTRODUCTION

Plaintiffs' opposition to Defendants motion to dismiss fails to meaningfully grapple with substantial precedent that civilian courts should not review military actions at least until after formal administrative remedies have been completed.  Plaintiffs do not dispute that Defendants have not taken anything approaching a formal adverse action against any of them due to the Navy's order that service members be vaccinated against a number of infectious diseases, including COVID-19, but seek to establish ripeness by relying on claims and actions that are not properly subject to judicial review.  Plaintiffs also effectively concede that venue is improper in this district. The heart of Plaintiffs' contention that venue is proper here is that one Plaintiff transmitted a religious accommodation request to a location outside this district for consideration.  But this is not a *substantial* part of the events or omissions giving rise to their claims.

## ARGUMENT

### I.      Plaintiffs' Claims Are Not Ripe.

#### A.  Plaintiffs' Religious Claims Are Not Yet Fit for Judicial Review.

Plaintiffs' claims are not ripe.  Plaintiffs disagree, arguing that this case presents issues "fit for judicial decision because they present purely legal questions."  ECF No. 131 at 3.  "But even purely legal issues may be unfit for review."  *Atl. States Legal Found., Inc. v. EPA*, 325 F.3d 281, 284 (D.C. Cir. 2003); *see, e.g., Walmart v. DOJ*, 21 F.4th 300, 311–12 (5th Cir. 2021); *Pennzoil Co. v. FERC*, 645 F.2d 394, 398 (5th Cir. 1981); *Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 162 (1967).  Fitness for judicial decision does not turn on whether the case raises a purely legal question, but rather "how adequately a court can deal with the legal issue presented."  *Toilet Goods*, 387 U.S. at 164.

Regardless, Plaintiffs are wrong to suggest that the issues here are purely legal. Plaintiffs primarily raise claims under the Religious Freedom Restoration Act ("RFRA"), which requires a highly fact-specific, individualized strict scrutiny analysis. *See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430-31 (2006). As one court has recently explained in a similar context, "the strict scrutiny test is highly factual. Articulating compelling government interests involves plenty of factual considerations, as does asserting whether less restrictive means are available." Order Re: Plaintiff's Motion for Preliminary Injunction, *Short v. Berger*, No. 2:22-cv-01151-DMG-AGR, ECF No. 25 at 8 (C.D. Cal. Mar. 3, 2022); *see also O Centro*, 546 U.S. at 428 (quoting 42 U.S.C. § 2000bb-2(3)) ("[T]he term 'demonstrates' means meets the burdens of going forward with the evidence and of persuasion.").

The Department of Defense and the Navy have developed regulations for service members to present religious accommodation requests to the appropriate military decision makers. Department of Department of Defense Instruction 1300.17 (effective Sept. 1, 2020); MILPERSMAN 1730-020 (Aug. 15, 2020); BUPERSINST 1730.11A (Mar. 16, 2020). These procedures enable the military to review the evidence relevant to a religious accommodation request for each of the thousands of service members in the military that has made such a request.[1] Until that process is complete, the Navy has not "formulate[d] and crystallize[d] its policies[,]" *see Pittman v. Cole*, 267 F.3d 1269, 1279 (11th Cir. 2001), or "individual[ly] assess[ed]" its interests, "in vaccinating these particular Plaintiffs." *See U.S. Navy SEALs 1-26 v. Biden*, --- F.

---

[1] Congress has authorized the military departments to prescribe regulations to govern the department, the conduct of its employees, and the performance of its business. 5 U.S.C. § 301. The Supreme Court has explicitly recognized that RFRA authorizes agencies to consider religious "exemptions from its own Guidelines." *Little Sister of the Poor Saints Peter and Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2380, 2383 (2020) (affirming that HHS had the authority "to exempt or accommodate … religious objections" to the ACA and that "it was appropriate for [HHS] to consider RFRA").

Supp. 3d ---, --- 2022 WL 34443, at *10 (N.D. Tex. Jan. 3, 2022).   Accordingly, Plaintiffs'

assertions that the issues "would not benefit from any further factual development" by the Navy

and that "the court would be in no better position to adjudicate the issues in the future than it is

now" are incorrect.  ECF No. 131 at 3.

    Plaintiffs' continued assertion that the Navy's adjudication of religious-accommodation

requests are predetermined, *id*., is also meritless.  They fail to set forth any evidence at all—let

alone the "clear and convincing evidence" they must adduce to overcome the "presumption of

regularity [that] attaches to the actions of Government agencies," *10 Ring Precision, Inc. v. Jones*,

722 F.3d 711, 725 n.79 (5th Cir. 2013) (quoting *U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 10

(2001))—to support it.[2]  The fact that the Navy has denied almost all such requests does not mean

that those denials were predetermined.  *Von Hoffburg v. Alexander*, 615 F.2d 633, 638 (5th Cir.

1980).  But even if most of these decisions were to result in a denial, the military's process for

developing a record to present for a defense of their claims still must be completed before any

judicial review, to develop an appropriate record for judicial review.  *See id.*; *see also, e.g.*, *Hodges*

*v. Callaway*, 499 F.2d 417, 422 & n.13 (5th Cir. 1974).

---

[2] Plaintiffs first cite their Amended Complaint.  ECF No. 131 at 3 (citing Plaintiffs' Amended
Complaint ("Am. Compl.") ¶¶ 49-53).  But "allegations stated in the complaint" are "of course not
evidence."  *Morris Wrecker Serv. LLC. v. Anderson Cnty. Texas*, 2018 WL 635979, at *2 (E.D.
Tex. Jan. 31, 2018) (citation omitted).  And while many religious accommodation requests have
been denied, a high rate of denials does not demonstrate that any denial was "predetermined."  In
any event, each service addresses each religious accommodation request and appeal individually.
In the event of a denial, the appeal decision discusses the particular evidence related to the service
member's duties that provides the basis for denying the request.  Judicial review of any individual
plaintiff's entitlement to an accommodation would be on much stronger footing after the Navy had
an opportunity to issue such a decision.

3

**B.  Plaintiffs' Purported Hardships from Delaying Judicial Review Are Meritless.**

Plaintiffs also contend that they would suffer hardship if their claims were not subject to judicial review at this time.  But that contention is based on a misunderstanding of the kind of harms that are properly considered in a ripeness analysis, and is focused on nonjusticiable grievances over deployment decisions and duty assignments made in light of Plaintiffs' unvaccinated status.  Indeed, Plaintiffs admit that they are not "focus[ing] on formal discipline [or] discharge proce[edings]," ECF No. 131 at 4.[3]

Instead, Plaintiffs focus on "effects of a sort that traditionally would [not] have qualified as harm." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998); *see also Nat'l Park Hospitality Ass'n v. Dep't of the Interior*, 538 U.S. 803, 809 (2003) ("'[A]dverse effects of a strictly legal kind'" are "required for a showing of hardship.") (quoting *Ohio Forestry Ass'n, Inc.* 523 U.S. at 733).  Specifically, the alleged harms on which they seek judicial review now focus on how they are treated in duty assignment decisions while they are unvaccinated.  Plaintiffs challenge their commanders' decisions to deem them medically disqualified for deployment on Special Warfare/Operations missions since their commanders have determined that others—who are up to date on their immunizations—are less likely to fall ill during those missions.  Am. Comp. ¶¶ 85–104; 121–34.  But such claims—which ask a court to review and "revise duty orders as to one lawfully in the service"—are not justiciable at all.  *Orloff v. Willoughby*, 345 U.S. 83, 94

---

[3] Those proceedings, which could lead to ripe claims, are themselves not adverse actions.  *See Shaw v. Austin*, 539 F. Supp. 3d 169, 183 (D.D.C. 2021).  While the nature of those proceedings varies depending on whether a service member is a regular enlisted member or an officer, they are military proceedings where service members are entitled to notice of the reasons for a proposed separation as well as an opportunity to respond.  Officers who receive hearings before a Board of Inquiry are entitled to formal proceedings where they may present evidence against the basis for separation that may last six months to a year.  *See id.*  Thereafter, if Plaintiffs are denied relief, they may have ripe claims for this Court to review.  *See Smith v. Harvey*, 541 F. Supp. 2d 8, 13 (D.D.C. 2008).

(1953). Plaintiffs also appear to seek judicial oversight of their commanders' decisions to place them in "leadership positions" and whether they will receive promotions. ECF No. 131 at 4. Yet "[m]ilitary promotion is one of the most obvious examples of a personnel decision that is integrally related to the military's structure," *Speigner v. Alexander*, 248 F.3d 1292, 1298 (11th Cir. 2001) (quoting *Mier v. Owens*, 57 F.3d 747, 751 (9th Cir. 1995)), not something "that traditionally would have qualified as harm" as to permit judicial review before a final adverse action, *Ohio Forestry Ass'n*, 523 U.S. at 73; *see also Reaves v. Ainsworth*, 219 U.S. 296, 298 (1911) (refusing to second-guess the military's determination of a service member's "fitness for promotion"); *Gonzalez v. Department of the Army*, 718 F.2d 926, 930 (9th Cir. 1983) (declining to review applicant's fitness for promotion to higher levels of military authority); *Smith v. Army Board of Correction for Military Records*, 2017 WL 9536472, at *5 (W.D. Tex. Nov. 29, 2017) (explaining that the "Court cannot promote Plaintiff as the commissioning of officers is an internal military decision" absent reviewable decision of the Board for the Correction for Military Records).

Plaintiffs are wrong to characterize these military command judgment calls—decisions to deploy or not to deploy Plaintiffs on special warfare operation missions—as "significant sanctions," ECF No. 131 at 4, that would somehow advance the basis for judicial review. As framed, permitting this suit to go forward now on the basis of these injuries "would mean that commanding officers would have to stand prepared to convince a civilian court of the wisdom of a wide range of military and disciplinary decisions; for example, whether to overlook a particular incident or episode, whether to discharge a serviceman, and whether and how to place restraints on a soldier's off-base conduct." *Crawford v. Texas Army Nat'l Guard*, 794 F.2d 1034, 1035 (5th Cir. 1986) (quoting *United States v. Shearer*, 473 U.S. 52, 58 (1985)). Accordingly, no legally

cognizable injuries have ripened for review.[4]   Plaintiffs may challenge any final separation or formal disciplinary action taken against them as contrary to law, including contrary to the Religious Freedom Restoration Act, when properly seeking review of any such administrative action.   But they may not collaterally attack military assignment or command decisions in the meantime.   *See Noyd v. Bond*, 395 U.S. 683, 693-95 (1969); *Hodges v. Callaway*, 499 F.2d 417, 420 (5th Cir. 1974); *cf Sampson v. Murray*, 415 U.S. 61, 90–91 (1974) (determining that employment-related harms are not considered irreparable).   Proceeding in that manner is unprecedented and risks real disruption to the effective operation of our military.   *See Chappell v. Wallace*, 462 U.S. 296, 305 (1983) ("[C]ourts are ill-equipped to determine the impact upon discipline that any particular intrusion upon military authority might have.") (citation omitted).

## II   Plaintiffs Effectively Concede Venue is Not Proper In This District.

### A.   Transmitting one Religious Accommodation Request to a Location Outside this District is Not a Substantial Part of the Events Giving Rise to Plaintiffs' Claims

Plaintiffs concede that venue is not proper under 28 U.S.C. § 1391(e)(1)(A) and (e)(1)(C). ECF No. 131 at 8.   Instead, Plaintiffs argue that venue is proper under 28 U.S.C. § 1391(e)(1)(B) because "a substantial part of the events or omissions giving rise to the claim occurred" in the Northern District of Texas.   *Id.* (quoting 28 U.S.C. § 1391(e)(1)(B).   That argument is without merit.

---

[4] This Court appeared to recognize that it cannot require "Defendants to make any particular personnel assignments.   All strategic decisions remain in the hands of the Navy."   Feb. 13, 2022 Order, ECF No. 116 at 4.   The Court also noted that it "will not—and cannot—require the Navy to place a particular SEAL in a particular training program."   But the Court also stated that "it can—and must—prevent the Navy from taking punitive action against that SEAL by blocking him from the training program that he would otherwise attend."   *Id.*   Defendants respectfully disagree that this type of assignment decision is properly subject to judicial review and would serve to ripen Plaintiffs' claims at this time.

Although subsection (e) of Section 1391 governs actions where a defendant is an officer or employee of the United States, the standard in § 1391(e)(1)(B) is the same as the general venue provision in § 1391(b)(2).  *See* 28 U.S.C. § 1391(b)(2).  Under this language, "[o]nly the events that directly give rise to a claim are relevant.  And of the places where the events have taken place, only those locations hosting a 'substantial part' of the events are to be considered."  *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003).  The statutory language "protects defendants, and Congress therefore 'meant to require courts to focus on relevant activities of the defendant, not of the plaintiff.'"  *Jenkins Brick*, 321 F.3d at 1371–72 (quoting *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995)).

Here, Plaintiffs "focus[] largely on [one Plaintiff's] own activities and location, but the proper focus of the venue inquiry is on the relevant activities of the Defendants."  *Hemispherx Biopharma, Inc. v. MidSouth Capital, Inc.*, 669 F. Supp. 2d 1353, 1357 (S.D. Fla. 2009).  First, Plaintiffs state that venue is proper here because one Plaintiff "felt the injurious effects of the vaccine mandate" in the Northern District of Texas.  ECF No. 131 at 10.  Plaintiffs re-characterize this same basis as their third reason that venue is proper here, arguing that this Plaintiff was "injured" when Defendants purportedly denied his religious accommodation request outside of the Northern District.  *Id*.  But "the location of the ultimate effect" of the alleged act or omission giving rise to a claim is not enough to provide a correct venue under Section 1391(e)(1)(B).  *See Woodke*, 70 F.3d at 985.

Plaintiffs' remaining basis for venue in this district is that this Plaintiff "request[ed] a religious accommodation request in this District."  ECF No. 131 at 10.  That is insufficient to establish that a "*substantial*" part of the events giving rise to the claim occurred in this district. The Court must "examine the nature of the plaintiff[s'] claims and the acts or omissions underlying

those claims," *Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1166 (10th Cir. 2010), and determine the substantiality of the relationship between this action and Plaintiffs' claims. Here, there is no substantial relationship between that action and the military decisions Plaintiffs challenge. Plaintiffs' Amended Complaint clearly seeks to challenge military decisions that were not made in this district. All that occurred in this district was the submission of one request by one Plaintiff—on that thin reed venue in this district cannot rest as to any plaintiff, but especially those with no contacts at all to this district.

**B.    Defendants Have Not Waived Objections to Venue.**

Recognizing that venue is not proper in this district, Plaintiffs contend that the Court may not consider the propriety of venue at all. ECF No. 131 at 5-7. Defendants have not waived venue here. "[A] defendant waives a venue objection by defaulting, or by answering without challenging venue, or by making a motion to dismiss on other grounds under Civil Rule 12 and not including venue in the motion." 14D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3829 (4th ed. 2021) (footnotes omitted). Here, Defendants have not defaulted, have not yet answered and failed to raise improper venue in that pleading, and *have* moved to dismiss on grounds under Rule 12 and included venue in the motion.

Plaintiffs argue that Defendants have somehow waived venue by means other than those provided for under Rule 12(h), which governs waiver of defenses including venue. ECF No. 131 at 5-7. But "there is nothing in the language of [the federal] rules to support such a position." *Hillis v. Heineman*, 626 F.3d 1014, 1017 (9th Cir. 2010). "Only the most compelling of reasons will persuade [courts] to imply an exception where the statutory text does not supply one." *Id*. "This same principle of statutory construction applies to interpreting the Federal Rules of Civil

Procedure." *Id*. "[T]he literal language of Rule 12 fits much better with a decision that" Defendants have "not waive[d] a defense of improper venue." *See id*. at 1018.

Even if it were proper to apply some individualized analysis beyond the Rules of Civil Procedure, the circumstances here do not justify a conclusion that the Defendants have waived their objections to venue. The starting point for any analysis in a case raising claims against the United States is Rule 12(a)(2), which provides Defendants with sixty days to respond to a Complaint from the date of service on the United States Attorney. Here, Plaintiffs served the United States Attorney on November 15, 2021, and the United States responded with its venue objection within the sixty days permitted by the rules, without seeking an extension of time. ECF No. 74 at 6–7.

Second, Plaintiffs rely on 28 U.S.C. § 1391(e), which also allows for venue in a judicial district in which the plaintiff resides. But Plaintiffs filed the Complaint proceeding anonymously, stating that "[d]ue to national security and personal security interests, Plaintiffs cannot reveal their exact location." Compl. ¶ 13. Plaintiffs did not provide Defendants with their identities so that Defendants could verify where they reside until December 3, 2021. So Defendants could not have begun investigating whether venue is appropriate in this district until then. Defendants then investigated who these Plaintiffs are and raised an objection to venue within the time permitted by the rules, while also responding to Plaintiffs' first preliminary injunction motion on December 10, ECF No. 43, and Order to Show Cause, ECF No. 95. The Court should reject Plaintiffs' efforts to retroactively place Defendants "in a procedural strait jacket by requiring them to . . . forego valid defenses by hurried and premature pleading." *Wyrough & Loser, Inc. v. Pelmor Labs., Inc.*, 376 F.2d 543, 547 (3d Cir. 1967).

Plaintiffs' cases from this circuit are distinguishable.  In *Trans World Airlines, Inc. v. Mattox*, the court found that thirty-three attorneys general waived any objection to personal jurisdiction after becoming "*de facto* intervenors" in a case when they "sought relief and participated in [a] TRO hearing on their behalf" even though they "had neither been named [as] defendants nor served with process[.]"  897 F.2d 773, 786 (5th Cir. 1990).  Here, Defendants did not "come voluntarily into court" in that manner.  *See id*. at 787.  And, as another court in this circuit has explained, in *Tinnus Enterprises, LLC v. Telebrands Corp.*, No. 6:16-CV-00033-RWS, 2017 WL 3671375, at *4 (E.D. Tex. Aug. 1, 2017), "the Court ruled that a party waived any venue objection by repeatedly admitting venue was proper while also asserting affirmative counterclaims." *Lites Out, LLC v. OutdoorLink, Inc.*, No. 4:17-CV-00192, 2017 WL 5068348, at *4 (E.D. Tex. Nov. 2, 2017).  This explicit "admi[ssion] that venue is proper in th[e] Judicial District" waived venue.  *Tinnus Enters., LLC*, 2017 WL 3671375, at *2.  Defendants have complied with the Rules of Civil Procedure and have never admitted that venue was proper in this forum.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the case.


Dated: March 14, 2022                              Respectfully submitted,

                                                   BRIAN M. BOYNTON
                                                   Principal Deputy Assistant Attorney General

                                                   ALEXANDER K. HAAS
                                                   Director, Federal Programs Branch

                                                   ANTHONY J. COPPOLINO
                                                   Deputy Director

                                                   */s/ Zachary A. Avallone*
                                                   ANDREW E. CARMICHAEL

10

AMY E. POWELL
Senior Trial Counsel
STUART J. ROBINSON
Senior Counsel
ZACHARY A. AVALLONE
COURTNEY D. ENLOW (NC Bar No. 46578)
LIAM C. HOLLAND
CASSANDRA SNYDER
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 514-2705
Fax: (202) 616-8470
Email: zachary.a.avallone@usdoj.gov

*Counsel for Defendants*