# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| **U.S. NAVY SEALs 1–26, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:21-cv-01236-O** |
| | § | |
| **LLOYD J. AUSTIN, III, et al.,** | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

## ORDER ON MOTIONS FOR CLASS CERTIFICATION AND CLASS-WIDE PRELIMINARY INJUNCTION

Before the Court are Plaintiffs' Motion to Certify Class (ECF No. 89), filed January 25, 2022, and Plaintiffs' Motion for Class-Wide Preliminary Injunction (ECF No. 104), filed February 7, 2022.[1] Having considered the briefing, the Court concludes that Plaintiffs' Motion for Class Certification should be and is hereby **GRANTED** in part. The Court also **GRANTS** Plaintiffs' Motion for Class-Wide Preliminary Injunction, but immediately **STAYS** the injunction "insofar as it precludes the Navy from considering respondents' vaccination status in making deployment, assignment, and other operational decisions." *Austin v. U.S. Navy SEALs 1–26*, ___ S. Ct. ___, 2022 WL 882559 (March 25, 2022).

---

[1] The parties have filed the following briefing related to these two motions: Plaintiffs' Brief in Support of Class Certification (ECF No. 90), filed January 25; Defendants' Response (ECF No. 120), filed February 15; Defendants' Appendix (ECF No. 121), filed February 15; Plaintiffs' Reply (ECF No. 136), filed March 1; and Plaintiffs' Appendix (ECF No. 137), filed March 1; Plaintiffs' Brief in Support of Class-Wide Preliminary Injunction (ECF No. 105), filed February 7; Defendants' Response (ECF No. 129), filed February 23; Defendants' Appendix in Support (ECF No. 130), filed February 23; Plaintiffs' Reply (ECF No. 133), filed February 28; and Plaintiffs' Appendix in Support (ECF No. 134), filed February 28.

## I.     BACKGROUND

On January 3, 2022, the Court granted Plaintiffs' Motion for Preliminary Injunction, enjoining enforcement of the Navy's COVID-19 vaccination policies against the thirty-five Plaintiffs, who object to the vaccine on religious grounds. *See* ECF No. 66. Since then, Plaintiffs have alleged that Defendants are violating the injunction by preventing some Plaintiffs from attending training, receiving medical treatment, or returning to their job duties. *See* Mot. for Order to Show Cause, ECF No. 95. Defendants claim that Plaintiffs' allegations are meritless and feared outcomes are speculative. *See* Defs.' Resp. 6–12, ECF No. 110. On January 24, 2022, Defendants filed a Motion to Stay the injunction, asking the Court to allow Defendants to consider Plaintiffs' vaccination status when making assignment decisions, including those involving deployment and training. ECF No. 85. The Court denied Defendants' Motion on February 13, 2022. *See* ECF No. 116. Defendants appealed, and the Fifth Circuit likewise denied the Motion to Stay. *See U.S. Navy Seals 1–26 v. Biden*, 27 F.4th 336, 2022 WL 594375 (5th Cir. Feb. 28, 2022). On March 7, Defendants submitted an Application for Partial Stay to the Supreme Court. *See* Appl. for Partial Stay, No. 21A477. The Supreme Court granted the partial stay of the preliminary injunction, "insofar as it precludes the Navy from considering respondents' vaccination status in making deployment, assignment, and other operational decisions." *U.S. Navy SEALs 1–26*, ___ S. Ct. ___, 2022 WL 882559.

In the meantime, Plaintiffs decided to pursue a class action on behalf of 4,095 Navy servicemembers who have filed religious accommodation requests. Pls.' Class Cert. Br. 7, ECF No. 90; *see* Defs.' Ex. 4, App. 56, ECF No. 121. As of February 3, no requests had been granted, 3,728 had been denied, and 285 remained pending. Defs.' Ex. 4, App. 56, ECF No. 121. Servicemembers have appealed 1,222 denials. *Id.* The Navy has "fully resolved" eighty-one

appeals with final denials. *Id.* Meanwhile, the Navy has granted 263 permanent and temporary medical exemptions to the vaccine requirement. *Id.* SEALs 1–3 and EOD 1 ("Named Plaintiffs") filed this Motion to Certify Class (ECF No. 89) and Motion for Class-Wide Preliminary Injunction (ECF No. 104), both of which are now ripe for the Court's review.

## II.    LEGAL STANDARD

### A.  Class Certification

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (citation omitted). The party seeking class certification "bear[s] the burden of proof to establish that the proposed class satisfies the requirements of Rule 23." *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 837 (5th Cir. 2012). "The decision to certify is within the broad discretion of the court, but that discretion must be exercised within the framework of rule 23." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996) (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981)). A district court must "look beyond the pleadings to 'understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination'" of the certification issues. *Stukenberg*, 675 F.3d at 837 (internal quotation marks and citation omitted).

The Court also "has discretion to modify [a party's] proposed class and subclass to form workable class definitions." *Jones v. Realpage, Inc.*, No. 3:19-cv-2087, 2021 WL 852218 (N.D. Tex. 2021) (cleaned up) (citing *In re Monumental Life Ins.*, 365 F.3d 408, 414 & n.7 (5th Cir. 2004)). "This discretion extends to creating subclasses, as well as to modifying an approved class." William B. Rubenstein, *Newberg on Class Actions* § 7:27 (5th ed. 2021) (footnote omitted). The Fifth Circuit provides broad discretion to district courts, permitting them "to limit or modify class

definitions to provide the necessary precision." *Monumental Life Ins.*, 365 F.3d at 414 (citing *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993) ("A court is not bound by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly.")).

Federal Rule of Civil Procedure 23 governs whether a proposed class falls within this limited exception. "To obtain class certification, parties must satisfy Rule 23(a)'s four threshold requirements, as well as the requirements of Rule 23(b)(1), (2), or (3)." *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 523 (5th Cir. 2007). Rule 23(a)'s four threshold requirements are:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These four threshold conditions are "commonly known as 'numerosity, commonality, typicality, and adequacy of representation.'" *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 766 (5th Cir. 2020) (citations omitted). Additionally, the Fifth Circuit has articulated an "ascertainability" doctrine implicit in Rule 23. *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) ("The existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23."). "[T]o maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (per curiam).

A plaintiff seeking certification must also satisfy at least one of the grounds identified in Rule 23(b). Rule 23(b)(2) applies where the four threshold requirements are met and "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). This requirement is satisfied "when a single injunction or

declaratory judgment would provide relief to each member of the class." *Wal–Mart*, 564 U.S. at 360.

### B. Preliminary Injunction

A preliminary injunction is an "extraordinary remedy" and will be granted only if the movants carry their burden on all four requirements. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008). The Court may issue a preliminary injunction if the movants establish (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm; (3) that the balance of hardships weighs in the movants' favor; and (4) that the issuance of the preliminary injunction will not disserve the public interest. *See Daniels Health Servs., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013); *see also* Fed. R. Civ. P. 65. "The decision to grant or deny a preliminary injunction is discretionary with the district court." *Miss. Power & Light Co. v. United Gas Pipe Line*, 760 F.2d 618, 621 (5th Cir. 1985).

The movants must make a clear showing that the injunction is warranted, and the issuance of a preliminary injunction "is to be treated as the exception rather than the rule." *Miss. Power & Light*, 760 F.2d at 621. "Only in rare instances is the issuance of a mandatory preliminary injunction proper." *Harris v. Wilters*, 596 F.2d 678, 680 (5th Cir. 1979) (per curiam).

### III.   ANALYSIS

### A. Class Certification

Plaintiffs ask the Court to certify one class and two subclasses: (1) a class of all Navy servicemembers subject to the vaccine mandate who have submitted religious accommodation requests ("Navy Class"); (2) a subclass of those "who are now or will be assigned to Naval Special Warfare/Special Operations" and have submitted religious accommodation requests ("NSW/SO Subclass"); and (3) a subclass of those "who are now or will be . . . Navy SEALs" and have

submitted religious accommodation requests ("SEALs Subclass"). Pls.' Class Cert. Br. 5, ECF No. 90. Defendants argue that Plaintiffs' proposed classes fail to meet the requirements of Rule 23. In particular, they claim Plaintiffs' proposed classes are not ascertainable and do not share common questions. Defs.' Class Cert. Resp. 6–7, ECF No. 120.

### 1. Rule 23(a)

#### a. Ascertainability

Defendants argue that neither of Plaintiffs' proposed subclasses are ascertainable, because their membership is constantly in flux. Defs.' Class Cert. Resp. 10, ECF No. 120. In other words, there is no way to determine which servicemembers *will be* assigned to NSW/SO or SEALs. "[T]he pool of special operator trainees is highly fluid and ever-changing." *Id.* (citing Galvez Decl., Ex. 2, ECF No. 121). Plaintiffs respond that the subclasses are necessarily limited to members of the Navy Class who have already submitted religious accommodation requests. Pls.' Class Cert. Reply 3, ECF No. 136. Because "[t]he Navy knows and can easily ascertain the number of servicemembers who have submitted Religious Accommodation requests," Defendants are in a better position than anyone to know which servicemembers fall into these subclasses. *Id.*

While not a requirement of Rule 23, courts only certify classes ascertainable under objective criteria. *See DeBremaecker*, 433 F.2d at 734. "There can be no class action if the proposed class is 'amorphous' or 'imprecise.'" *John*, 501 F.3d at 445 n.3. Precisely who *will be* assigned to NSW/SO or SEALs is speculative. And while a court "need not know the identity of each class member before certification," class members must be ascertainable "at some stage of the proceeding." *Frey v. First Nat'l Bank Sw.*, 602 F. App'x 164, 168 (5th Cir. 2015) (internal quotation marks omitted) (quoting Rubenstein, *supra*, at § 3:3). It is not possible to ascertain

potential subclass members, even among those who "are currently serving in units across the Navy" and may one day join the NSW/SO community.

However, Plaintiffs' proposed subclasses do not necessarily fail at this stage. "[H]olding plaintiffs to the plain language of their definition would ignore the ongoing refinement and give-and-take inherent in class action litigation. . . . District courts are permitted to limit or modify class definitions to provide the necessary precision." *Monumental Life*, 365 F.3d at 414. Accordingly, to clear the subclasses of speculation, the Court limits Plaintiffs' proposed subclasses in the following way:

- The Navy Special Warfare/Special Operations (NSW/SO) Subclass includes all members of the Navy Class who (1) *are* assigned to NSW/SO, and (2) have submitted a religious accommodation request concerning the vaccine mandate.

- The Navy SEALs Subclass includes all members of the Navy Class who (1) *are* SEALs, and (2) have submitted a religious accommodation request concerning the vaccine mandate.

Under these definitions, the members of each subclass are ascertainable. Defendants maintain records of those who have submitted religious accommodation requests and those who are presently members of NSW/SO and SEALs. Within the Venn diagram of each of these categories is an ascertainable subclass.

### b.  Numerosity

Defendants do not contest that Plaintiffs have satisfied the numerosity requirement under Rule 23(a). Plaintiffs argue that each class and subclass is so numerous that joinder of all members is impractical. Pls.' Class Cert. Br. 6, ECF No. 90. The proposed Navy Class contains approximately 4,095 servicemembers who have submitted religious accommodation requests under the vaccine requirement. *Id.* at 7; *see* Defs.' Ex. 4, App. 56, ECF No. 121. According to Navy records dated February 3, none of these requests have been approved, while 3,728 have been denied. Of those on appeal, 81 have been denied and another 1,222 are still pending. *Id.* Plaintiffs

cannot provide an exact number of NSW/SO and SEALs subclass members, but they anticipate the number is "over one hundred." *Id.*

Courts have regularly certified classes with far fewer members than the minimum number asserted by Plaintiffs. *See e.g.*, *Mullen*, 186 F.3d at 625 ("[T]he size of the class in this case—100 to 150 members—is within the range that generally satisfies the numerosity requirement."). However, the actual number of class members is not necessarily "the determinative question, for '(t)he proper focus (under Rule 23(a)(1)) is not on numbers alone, but on whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors.'" *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981) (citation omitted).

Because joinder of all class members is impractical, Plaintiffs' proposed class and subclasses clearly satisfy the numerosity requirement.

### c. Commonality

Plaintiffs argue that each class and subclass share a number of common questions of law and fact. In particular, Plaintiffs identify four fact questions related to the Navy's policies and practices, and eight additional questions of law under the Religious Freedom Restoration Act (RFRA) and the Free Exercise Clause of the First Amendment. Pls.' Class Cert. Br. 8–9, ECF No. 90. "Common questions that apply to all class members involve whether the Navy inappropriately discriminated against religious belief in compelling vaccination despite those beliefs, refusing to accommodate those beliefs, and granting exemptions for secular but not religious reasons." *Id.* at 13. By addressing these questions, Plaintiffs argue, the "class-wide proceeding [will] generate common *answers* apt to drive the resolution of the litigation." *Id.* at 8 (citing *Wal–Mart*, 564 U.S. at 350).

Defendants argue that Plaintiffs fail to satisfy the commonality requirement because RFRA claims must be assessed on a case-by-case basis, analyzing the sincerity of each servicemember's beliefs. *See* Defs.' Class Cert. Resp. 11, ECF No. 120 (citing *Tagore v. United States*, 735 F.3d 324, 328 (5th Cir. 2013)). Defendants contend that Plaintiffs have not shown the accommodation process is discriminatory or lacks individualized assessment. "Drawing any conclusions from the available data . . . is entirely unwarranted." Defs.' Class Cert. Resp. 14, ECF No. 120. Finally, Defendants allege that their "detailed, individualized process" allows for "the possibility of exemptions," requiring the Court to consider each servicemember's circumstances on an individual, not class-wide, basis. *Id.* at 18.

Under the commonality requirement, potential class members must show they have suffered the "same injury" and present common questions capable of class-wide resolution. "In order to satisfy commonality under *Wal–Mart*, a proposed class must prove that the claims of every class member 'depend upon a common contention . . . that is capable of class-wide resolution . . . .'" *Stukenberg*, 675 F.3d at 838 (quoting *Wal–Mart*, 564 U.S. at 350). This occurs where "the contention is 'of such a nature . . . that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Id.* (quoting *Wal–Mart*, 564 U.S. at 350). Put plainly, "Rule 23(a)(2) requires that all of the class member[s'] claims depend on a common issue of law or fact whose resolution 'will *resolve* an issue that *is central to the validity* of each one of the [class members'] claims in one stroke.'" *Id.* at 840 (quoting *Wal–Mart,* 564 U.S. at 350). And a court's "obligation to perform a 'rigorous analysis'" of the commonality prong may "entail some overlap with the merits of the plaintiff's underlying claim." *Id.* (quoting *Wal–Mart*, 564 U.S. at 350).

Here, the potential class members have suffered the "same injury," arising from violations of their constitutional rights. Each has submitted a religious accommodation request, and each has had his request denied, delayed, or dismissed on appeal. Exactly zero requests have been granted. And while Defendants encourage this Court to disregard the data, it is hard to imagine a more consistent display of discrimination. As previously explained in this Court's preliminary injunction order, Plaintiffs have suffered the serious injury of infringement of their religious liberty rights under RFRA and the First Amendment.

> The crisis of conscience imposed by the mandate is itself an irreparable harm. *See BST Holdings, LLC v. Occupational Safety & Health Admin*, 17 F.4th 604, 618 (5th Cir. 2021); *Sambrano v. United Airlines*, 19 F.4th 839, 842 (5th Cir. 2021) (Ho, J., dissenting) (citing *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974)). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion). The same is true of RFRA. *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012).

Order 24, ECF No. 66. Plaintiffs may experience diverse damages as a result of their beliefs, but they have suffered the same core injury. *See In re Deepwater Horizon*, 739 F.3d, 810–11 (5th Cir. 2014) (explaining that the "same injury" requirement is satisfied "even when the resulting injurious effects—the damages—are diverse.").

Plaintiffs' claims are also capable of class-wide resolution. A finding in favor of the Named Plaintiffs on their RFRA and First Amendment claims also resolves the RFRA and First Amendment claims of the class. "The bottom-line question under commonality and typicality is whether the relief the named plaintiffs seek from the Court will resolve all class members' legal claims." *Vita Nuova, Inc. v. Azar*, No. 4:19-cv-532, 2020 WL 8271942, at *8 (N.D. Tex. Dec. 2, 2020). By resolving the Navy Class's common questions, this Court may provide relief to all servicemembers in the class and subclasses. The inverse is not necessarily true. The NSW/SO Subclass presents questions that specifically address the heightened physical standards required of

10

special operations personnel. In other words, that portion of the MANMED is not applicable to the entire Navy Class. Regardless, by resolving the Navy Class's questions, the Court can provide relief to the NSW/SO Subclass simultaneously—even without resolving the special operations medical waiver question.[2]

Finally, Defendants argue there is a need for individualized assessment of potential class members' sincerity prior to certification. *See* Defs.' Class Cert. Resp. 11–12, ECF No. 120. The Court disagrees. The sincerity inquiry under RFRA is not an exacting one. *See, e.g.*, *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 725 (2014) (In evaluating sincerity, the Court's "narrow function" is to determine whether the plaintiffs' asserted religious belief "reflects 'an honest conviction.'" (citation omitted)); *Moussazadeh v. Tex. Dep't of Crim. Just.*, 703 F.3d 781, 791–92 (5th Cir. 2012) ("Sincerity is generally presumed or easily established," and courts must handle the sincerity inquiry "with a light touch, or 'judicial shyness.'").

The Court need not consider the sincerity of each individual's beliefs prior to certification. *See Bear Creek Bible Church v. EEOC*, No. 4:18-cv-00824, 2021 WL 5449038 (N.D. Tex. Nov. 22, 2021). Even so, Plaintiffs and potential class members have provided evidence of sincerity in the process of applying for religious accommodation. As part of the Navy's accommodation process, applicants must interview with a chaplain, who completes both a checklist and memorandum attesting to the "sincerity" of the applicant's beliefs. *See* ECF No. 62. In short, everyone eligible for the class has submitted a religious accommodation request, and no one may submit that request without a chaplain's memorandum attesting to the applicant's sincerity. Thus,

---

[2] As addressed in the Order on Motion to Stay (ECF No. 116), issued February 13, 2022, the parties present conflicting interpretations of Trident Order #12 and MANMED § 15-105. But this Court determined that it need not resolve the dispute at this stage. Although the First Amendment claim triggers strict scrutiny when a regulation is not neutral and generally applicable, the RFRA claim does not require such a finding; strict scrutiny is automatically required. Order 6 n.3, ECF No. 116.

all potential class members have carried their (light) burden of demonstrating their religious beliefs are sincere.

### d. Typicality

The Named Plaintiffs argue that their RFRA and First Amendment claims are typical of the entire class. Pls.' Class Cert. Br. 14, ECF No. 90. "The interests of the Named Plaintiffs are aligned with those of the other class members, and each class member benefits from a declaratory judgment and injunction that prohibits Defendants from violating their rights." *Id.* In response, Defendants argue that factual differences defeat typicality, because the Named Plaintiffs have a "wide variety of reasons" for opposing the vaccine. Defs.' Class Cert. Resp. 19, ECF No. 120. Among the purported class members, Defendants also identify differences in the members' (1) positions within the Navy, (2) current job duties, and (3) geographical locations and contexts. *Id.* For these reasons, Defendants argue the Court must analyze each servicemember's circumstances, and therefore this litigation is not appropriate for class resolution.

"The commonality and typicality requirements of Rule 23(a) tend to merge." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982). "Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* "Like commonality, the test for typicality is not demanding. It 'focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent.'" *Mullen v. Treasure Chest Casino*, 186 F.3d 620, 625 (5th Cir. 1999). "[T]he critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual

differences will not defeat typicality." *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001) (internal quotation marks omitted) (quoting 5 James Wm. Moore et al., *Moore's Federal Practice* ¶ 23.24[4] (3d ed. 2000)).

The Named Plaintiffs seek relief on RFRA and First Amendment grounds. These are "the precise claim[s] that the Named Plaintiffs seek to litigate on behalf of other members of the Navy Class, the [NSW/SO] Subclass and the Navy SEALs Subclass." Pls.' Class Cert. Br. 14, ECF No. 90. Thus, the Named Plaintiffs' claims are typical of—in fact, identical to—those of the entire class. The factual circumstances need not be identical for each of the class members; some variation among members is permissible. *See Bear Creek*, 2021 WL 5449038 at *16 (certifying a class containing diverse members of Catholic, United Methodist, and Southern Baptist faith traditions).

Defendants suggest that the class members' different roles, job duties, and locations are "essential for determining the elements of [each] individual's RFRA claim." Defs.' Class Cert. Resp. 19, ECF No. 120. But in the Navy's own analysis, such distinctions make no difference. Defendants admit that the goal of the Standard Operating Procedure (SOP) is efficiency, not nuanced review. The SOP is "merely an administrative tool to efficiently adjudicate the unprecedented amount of requests." Defs.' Class Cert. Resp. 16, ECF No. 120; *see* Ex. 1, ECF No. 62. While the SOP touts "case-by-case review," it calls for pre-drafted denial letters. Ex. 1, ECF No. 62. Perhaps the Navy actually weighed each applicant's beliefs and circumstances. But granting none of 4,095 religious accommodation requests suggests otherwise.

Factual differences do not defeat typicality. All members of the class have unsuccessfully requested religious accommodation. The Named Plaintiffs' claims "have the same essential

characteristics" of the Navy Class and subclasses. *See James*, 254 F.3d at 571. Thus, despite factual differences, the Named Plaintiffs' causes of action are typical of the class.

### e. Adequacy

Having established that the Named Plaintiffs' claims are common and typical, the Court now assesses the adequacy of representation. Under the adequacy requirement, courts consider "(1) the zeal and competence of the representatives' counsel; (2) the willinginess [sic] and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees; and (3) the risk of conflicts of interest between the named plaintiffs and the class they seek to represent." *Slade v. Progressive Sec. Ins.*, 856 F.3d 408, 412 (5th Cir. 2017) (cleaned up) (citation omitted).

Plaintiffs argue representation is adequate because (1) Plaintiffs' counsel satisfies the "zeal and competence" requirement, (2) the Named Plaintiffs have already shown their willingness to pursue the litigation despite substantial professional risk, and (3) there is no conflict of interest between Named Plaintiffs and the members of the proposed class and subclasses. Pls.' Class Cert. Br. 14–16, ECF No. 90. Defendants argue that conflicts may arise between Named Plaintiffs and the potential class members for two reasons. First, other servicemembers across the country have filed seven similar lawsuits challenging the military's COVID-19 vaccine mandates. Defs.' Class Cert. Resp. 22, ECF No. 120. And second, the Named Plaintiffs are proceeding pseudonymously, making it difficult for potential class members to know who is representing them and whether conflicts exist. *Id.* at 23. Defendants also contest venue and ripeness.[3] *Id.*

Simultaneous litigation in other courts does not present a conflict here. To the contrary, the injunctive relief that Plaintiffs seek will benefit all religiously opposed Navy servicemembers who

---

[3] The Court will address venue and ripeness in a forthcoming order on Defendants' Motion to Dismiss.

are presently involved in other vaccine mandate litigation. Potential class members will not be harmed by class-wide relief.[4] Likewise, Plaintiffs here will benefit from injunctive relief granted in other courts. For example, the Named Plaintiffs and potential class members here would benefit from a class-wide injunction protecting "all United States Armed Forces servicemembers and civilian federal employees and contractors who are subject to Defendants['] COVID-19 Vaccine Mandate, have requested a religious exemption or accommodation from the Mandate based on sincerely held religious beliefs against receiving a COVID-19 vaccine, and been denied such exemption or accommodation." *See Navy SEAL 1 v. Biden*, 8:21-cv-02429, Pls.' Mot. Certify Class ECF No. 35 (M.D. Fla.).

Defendants' claim that some potential class members may prefer to litigate independently or avoid legal action altogether, "preferring to comply with a lawful order after their administrative claim is decided and maintain military service without litigation, or . . . choose to leave the service or retire." Defs.' Class Cert. Resp. 22, ECF No. 120. If—and indeed, *if*—such servicemembers exist, they may choose to get vaccinated, withdraw their religious accommodation requests, voluntarily separate, or proceed with retirement plans. The potential class members, then, are those who seek to remain in the Navy and refuse to compromise their religious beliefs (i.e., continue to forgo the vaccine). That group is intently interested in the relief the Named Plaintiffs seek, especially as the Navy begins to involuntarily separate unvaccinated sailors.

---

[4] As in *Miller v. Vilsack*, this Rule 23(b)(2) class seeks purely injunctive relief and thus is not one that Plaintiffs may opt out of. *See* 4:21-cv-00595-O (N.D. Tex. Oct. 13, 2021) ("Movants cannot explain how they could, as a practical matter, be excluded from the certified classes. . . . Presumably, opting out would mean that Defendant could discriminate against Movants on the basis of race."). Here, opting out of a class-wide preliminary injunction would "thwart the objectives of representative suits" and expose Plaintiffs to enforcement of the vaccine mandates despite their religious accommodation requests. In *Miller*, this Court denied the Movants' request to opt out of the class but permitted them to petition the courts in which they were proceeding individually to go forward with their personal lawsuit. This class certification does not prevent other judges from handing similar pending cases elsewhere as one district court is not permitted to interfere with the proceedings of another.

Lastly, Defendants argue that potential class members cannot determine the identities of, and therefore potential conflicts of interest with, the Named Plaintiffs.[5] Defs.' Class Cert. Resp. 23, ECF No. 120. Though proceeding under pseudonyms, Plaintiffs have publicly filed detailed declarations in which each servicemember describes his role, rank or year of entry, basis for religious beliefs, and any pertinent details about his religious accommodation request and denial. *See* Pls.' App. Tabs 2–35, ECF No. 17; Supp. Decl. Tabs 1–34, ECF No. 59; Supp. Decl. of SEAL 26, ECF No. 63. This information is arguably more informative and relevant to conflict analysis than Plaintiffs' actual names. Equipped with these details about the pseudonymous Plaintiffs, potential class members can determine whether conflicts exist and whether they agree to representation.

Accordingly, the Court concludes that Plaintiffs have satisfied all elements for class certification for the Navy Class, NSW/SO Subclass, and SEALs Subclass as to the RFRA and First Amendment claims. The Court now considers whether the elements of Rule 23(b) have been met.

### 2.  Rule 23(b)(2)

Class certification under Rule 23(b)(2) is appropriate if the requirements of 23(a) are satisfied *and* "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). To qualify for class-wide

---

[5] Regarding pseudonymous litigation, Defendants cite a single nonbinding case out of the United States District Court for the District of Wyoming. *See Sherman v. Trinity Teen Sols., Inc.*, 339 F.R.D. 203 (D. Wyo. 2021). There, the court denied a child abuse victim the opportunity to proceed anonymously, because allowing potential class members to assess conflicts outweighed any "real threat of imminent physical danger" to the Plaintiff. *Id.* at 205–06. Here, the parties have temporarily agreed that Plaintiffs may proceed pseudonymously but must disclose their identities to Defendants. *See* ECF Nos. 34, 37. The Court has not resolved the pending briefing on Plaintiffs' Motion. *See* ECF No. 26. But in the meantime, Plaintiffs have also filed detailed declarations, so even while they remain anonymous, there is little concern that potential class members will be unable to assess conflicts. Regardless, *Sherman* does not bind this Court.

injunctive relief, class members must have been harmed in essentially the same way, and injunctive relief must predominate over monetary damages. *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 975–76 (5th Cir. 2000). In other words, "the relief sought must perforce affect the entire class at once . . . ." *Wal–Mart*, 564 U.S. at 361–62. Additionally, the injunctive relief order must be specific. Fed. R. Civ. P. 65(d); *see also Ala. Nursing Home Ass'n v. Harris*, 617 F.2d 385, 387–88 (5th Cir. 1980).

Plaintiffs argue Defendants have "acted or refused to act on grounds that apply generally to the class" by mandating the vaccine despite sincere religious objections and issuing across-the-board denials of religious accommodation requests, while simultaneously granting secular exemptions. Pls.' Class Cert. Br. 17, ECF No. 90. Defendants argue that "Plaintiffs attempt to litigate a broad swath of different factual circumstances in one fell swoop." Defs.' Class Cert. Resp. 25, ECF No. 120. Once again, Defendants point to their "case-by-case" analysis to suggest that this analysis must be individualized and cannot be resolved on a class-wide basis. *Id.*

The Named Plaintiffs and potential class members have all been harmed in essentially the same way. Each is subject to the Navy's COVID-19 vaccine mandates. Each has submitted her religious accommodation request, and none has received accommodation. Without relief, each servicemember faces the threat of discharge and the consequences that accompany it. Even though their personal circumstances may factually differ in small ways, the threat is the same—get the jab or lose your job. *See BST Holdings*, 17 F.4th at 618. By uniformly denying potential class members' religious accommodation requests, the Navy has "acted . . . on grounds that apply generally to the class." And because potential class members may receive relief from a single injunction, the claim is appropriate for class-wide resolution under Rule 23(b)(2).

### 3.  Rule 23(g)

Finally, Plaintiffs request that the Court appoint its counsel to represent the class and subclasses. Pls.' Class Cert. Br. 18, ECF No. 90. Under Rule 23(g), "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). In doing so, "the court must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

Defendants do not oppose Plaintiffs' request to appoint class counsel. The Court finds that Plaintiffs' counsel is qualified to represent the interests of the class and subclasses. Plaintiffs' counsel has experience litigating complex matters and has expertise in First Amendment and RFRA litigation. Plaintiffs' counsel has identified and investigated all claims and have committed sufficient resources to this action.

### B.  Class-Wide Preliminary Injunction

Having certified the proposed class and subclasses, the Court now turns to Plaintiffs' Motion for Class-Wide Preliminary Injunction. ECF No. 104. Plaintiffs ask this Court to extend the existing preliminary injunction to the entire class. *Id.*; *see* ECF No. 66. As in previous briefing, Defendants contend that Plaintiffs have not exhausted their intra-military remedies, and thus, their claims are nonjusticiable. Even if these claims are reviewable, Defendants argue, a preliminary injunction would be inappropriate, because Plaintiffs are unlikely to succeed on the merits of their claims.

As in the initial preliminary injunction, the threshold question before the Court is whether Plaintiffs' class-wide claims are justiciable under the *Mindes* test.

### 1. Justiciability Under *Mindes*

Defendants argue that this case is nonjusticiable because Plaintiffs have not exhausted military remedies, and because the Court must not intrude on military decision-making authority. Defs.' Class P.I. Resp. 13–14, ECF No. 129. Each of the Named Plaintiffs and the class members have, by definition, submitted religious accommodation requests. According to the latest numbers in the briefing, the Navy has denied 3,728 of these 4,095 requests. It has granted none. Defendants say the Court must wait for the Navy to decide each request, because otherwise, "one can only speculate as to the final outcome of any proceedings." *Id.* at 12 (quoting *Smith v. Harvey*, 541 F. Supp. 2d 8, 13 (D.D.C. 2008)).

The record indicates the denial of each request is predetermined. This is even more evident today than it was at the time of the Court's January 3 Order, when the Navy had made no final determinations on appeal. *See* Order 4, ECF No. 66. Now, the Navy has finally adjudicated at least eighty-one appeals by denying each of them. Even though the Navy has adjudicated thousands of requests, it has not granted a single one. These class members need not wait for the Navy to engage in even more empty formalities. Because exhaustion is futile and will not provide complete relief, the case is justiciable.

Though courts generally refrain from reviewing internal military affairs, *Orloff v. Willoughby*, 345 U.S. 83, 93 (1953), the issue at hand is appropriate for judicial review. *U.S. Navy SEALs 1–26*, 27 F.4th at 347–48. Like the Named Plaintiffs, the members of the Navy Class (1) have undisputedly alleged violations of their constitutional rights under the First Amendment and RFRA, and (2) need not exhaust administrative remedies, because the Navy's review process

inevitably results in a denial.[6] The evidence overwhelmingly indicates that class members' requests and appeals will be summarily denied with "boilerplate" language and "simplistic" analysis.[7] Pls.' Class P.I. Reply 10, ECF No. 133. Thus, both criteria under *Mindes* have been satisfied. *See Mindes v. Seaman*, 453 F.2d 197, 201 (5th Cir. 1971).

The Court then weighs four factors to determine whether the issue is justiciable: (1) the nature and strength of the plaintiffs' challenge; (2) the potential injury to the plaintiffs if review is refused; (3) the type and degree of anticipated interference with the military function; and (4) the extent to which the exercise of military expertise or discretion is involved. *Id.* at 201–02. Each of these factors suggest that the class's claims are justiciable.

*First*, the nature and strength of the Navy Class's claims weigh in favor of judicial review. As to the nature of the claim, "[c]onstitutional claims [are] normally more important than those having only a statutory or regulatory base." *Id.* at 201. But "not all constitutional claims are to be weighed equally." *NeSmith v. Fulton*, 615 F.2d 196, 201 (5th Cir. 1980). Courts tend to favor review of constitutional claims "founded on infringement of specific constitutional rights" such as the First Amendment freedoms at issue here. *Id.* at 201–02. Plaintiffs move for a class-wide preliminary injunction based on specific violations of their constitutional rights under the Free Exercise Clause and RFRA. These claims fall squarely in the category of claims most favorable to judicial review.

---

[6] Plaintiffs need not exhaust military remedies "when resort to the administrative reviewing body would be futile." *Hodges v. Callaway*, 499 F.2d 417, 420 (5th Cir. 1974). They are required to exhaust only those remedies that would "provide a real opportunity for adequate relief." *Id.*

[7] For example, after a class member's request was denied on appeal, he submitted a renewed request based on changed circumstances under BUPERSINST 1730.11A. The servicemember had contracted COVID in January 2022 and reported this development, alleging a change in physical circumstances (i.e., new natural immunity). Pls.' Class P.I. App. 105, Decl. of De Sousa, ECF No. 134. The Deputy Chief of Naval Operations denied his renewed request with a form letter stating that there had been "no substantive changes" to his circumstances, physical or otherwise. *See id.* at 125.

*Second*, the potential injury to class members if review is refused weighs in favor of judicial review. As explained in the Court's January 3 preliminary injunction order, Plaintiffs are suffering ongoing injury while waiting for the Navy's decision. Order 15, ECF No. 66. Likewise, members of the Navy Class are facing similar consequences for seeking religious accommodation. One commander was relieved of his duties as his squadron's executive officer—or second in command—"while [his] vaccine waiver works its way through the system." Pls.' Class P.I. App. 4–5, ECF No. 134. Elsewhere, when an EOD division officer appealed the denial of his religious accommodation request, his chain of command replaced him, and he was instructed to "get [his] personal things in order" in preparation for separation from the Navy. Pls.' Class P.I. App. 132, ECF No. 134. He is "no longer performing duties that correlate with [his] rank." *Id.* Plaintiffs, and many more class members like them, are experiencing harm simply for asserting their First Amendment rights.

*Third*, the type and degree of anticipated interference with the military function weighs in favor of judicial review. "Interference per se is insufficient since there will always be some interference when review is granted." *Mindes*, 453 F.2d at 201. Whether denying religious accommodations violates the First Amendment is a distinct legal question that would not "seriously impede the military in the performance of vital duties." *Id.* Insofar as an injunction "precludes the Navy from considering respondents' vaccination status in making deployment, assignment, and other operational decisions," this Court will partially stay the order. *U.S. Navy SEALs 1–26*, ___ S. Ct. ___, 2022 WL 882559.

*Fourth*, the extent to which the exercise of military expertise or discretion is involved weighs in favor of review. "Courts should defer to the superior knowledge and experience of professionals in matters such as promotions or orders directly related to specific military

functions." *Mindes*, 453 F.2d at 201–02. Of course, "judges don't make good generals," but "it's a two-way street: Generals don't make good judges—especially when it comes to nuanced constitutional issues." *U.S. Navy SEALs 1–26*, 24 F.4th at 349; *see also Air Force Officer v. Austin*, ___ F. Supp. 3d ___, 2022 WL 468799 (M.D. Ga. Feb. 15, 2022).

Thus, Plaintiffs have satisfied all four *Mindes* factors, and the claims of the Navy Class are justiciable.

### 2. Members of the Navy Class and Subclasses are likely to succeed on the merits.

Having established that Plaintiffs class-wide claims are justiciable, the Court must consider the first of the four requirements under the preliminary injunction standard: whether Plaintiffs have established a "substantial likelihood of success on the merits." *Daniels Health Scis.*, 710 F.3d at 582. This Court has already determined that Defendants have substantially burdened Plaintiffs' religious beliefs, and thus strict scrutiny applies. Order 18, ECF No. 66. The Navy has not conducted individualized assessment of class members' religious accommodation requests, which demonstrates "a pattern of disregard for RFRA rights." *U.S. Navy SEALs*, 24 F.4th at 352. Because the Navy continues to treat those with secular exemptions more favorably than those seeking religious exemptions, strict scrutiny is triggered. Defendants fail to show a compelling interest.

#### a. Religious Freedom Restoration Act

Under the Religious Freedom Restoration Act, the "[g]overnment may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person— (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1. "RFRA undoubtedly 'applies in the military context.'" *U.S. Navy SEALs*, 24 F.4th at 346 (quoting *United States v. Sterling*, 75 M.J. 407, 410 (C.A.A.F. 2016)).

The Navy has substantially burdened each class members' religious beliefs by threatening his job and "putting substantial pressure on [the] adherent to modify his behavior and to violate his beliefs." *Thomas v. Rev. Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981). The Named Plaintiffs and a number of class members have already provided evidence of demotions, reassignments, threat of separation, and other punitive measures as a result of their religious accommodation requests. *See* Supp. App. 1032, 1096, 1107, 1126, ECF No. 59; Compl., Ex. 3, ECF No. 1-3; Pls.' Class P.I. App. 4–5, 105, 132, ECF No. 134.

Plaintiffs claim that "Defendants are not individually assessing *any* requests for religious accommodation, and instead are merely denying *all* requests based on identical rationale." Pls.' Class P.I. Br. 3, ECF No. 105. In response, Defendants echo previous arguments that stemming the spread of COVID-19 is a compelling interest, and that "[t]he stronger the compelling governmental interest, the less likely any individual request will be approved." Defs.' Class P.I. Resp. 23, ECF No. 129.

Even so, the Navy must demonstrate a compelling interest in enforcing its vaccination policies—not merely a generalized interest, but one particular to each servicemember. *U.S. Navy SEALs*, 24 F.4th at 351 (citing *Fulton v. City of Phila.*, 141 S. Ct. 1868, 1881 (2021)). This Court found that Defendants could not present a compelling interest with respect to the thirty-five Plaintiffs seeking preliminary injunction of the mandates. Order 19, ECF No. 66. Now, Defendants argue that "allowing up to 4,000 service members to go unvaccinated and to potentially deploy unvaccinated would 'severely undermine military readiness.'" Defs.' Class P.I.  Resp. 26, ECF No. 129 (quoting Decl. of Caudle, App. 17, ECF No. 130). Defendants' efforts to vaccinate the force have been overwhelmingly successful. Indeed, all 4,095 class members are part of the "vanishingly small 0.6%" of the Navy that remains unvaccinated. Order 16, ECF No. 66. Many of

these class members already have natural immunity, thereby bolstering—not undermining—the Navy's goal of "stemming the spread of COVID-19 and maintaining a medically fit force." Defs.' Class P.I. Resp. 23, ECF No. 129.

Defendants argue that "[i]n the deadly business of protecting our national security, we cannot have a Sailor who disobeys a lawful order to receive a vaccine because they harbor a personal objection any more than we can have a Sailor who disobeys the technical manual for operating a nuclear reactor because he or she believes they know better."[8] Decl. of Caudle 16, Ex. 1, ECF No. 130. But the Navy's willingness to grant *hundreds* of permanent and temporary medical exemptions belies this insistence on complete uniformity and widespread vaccination. Defs.' Ex. 4, App. 56, ECF No. 121. It is "illogical . . . that Plaintiffs' religious-based refusal to take a COVID-19 vaccine would seriously impede military function when the Navy has over 5,000 servicemembers still on duty who are just as unvaccinated as the Plaintiffs." *U.S. Navy SEALs*, 24 F.4th at 349 (cleaned up).

For these reasons, the Court finds that Defendants do not demonstrate a compelling interest to overcome the class members' substantial burden. Without a compelling interest, the Court need not address whether Defendants have used the least restrictive means.

### b.   First Amendment

The Court finds that the class prevails on the First Amendment claim for the same reasons it succeeds on its RFRA claim. The Navy's mandate is not neutral and generally applicable. Moreover, Defendants cannot carry their burden to demonstrate a compelling interest.

"[G]overnment regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable secular activity

---

[8] The Court notes that Plaintiffs refuse vaccination based on sincerely held religious belief—not mere "personal objection." The former has long been afforded constitutional protections. The latter has not.

more favorably than religious exercise." *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021). The Navy's vaccine requirement blatantly treats those who applied for medical exemptions more favorably than the class members here. "For one thing, requests for medical exemptions were seriously considered, and quite a few were granted, at least on a temporary basis." *U.S. Navy SEALs 1–26*, ___ S. Ct. ___, 2022 WL 882559, at *5 (Alito, J., dissenting). Some factual debate exists as to whether those seeking medical exemptions are subject to the separate waiver requirement. *See* Order on Motion to Stay 6 n.3, ECF No. 116. Regardless, the record presents no evidence that servicemembers with pending medical exemptions are facing the same injuries as Plaintiffs, who have been denied opportunities for training and advancement, removed from leadership positions, demoted, and prepared for the separation process. *See* Order 23, ECF No. 66.

As discussed in the prior section, Defendants fail to satisfy the compelling interest requirement, so there is no need to consider least restrictive means. Plaintiffs have established a substantial likelihood of success on the merits of the class's RFRA and First Amendment claims, satisfying the first requirement of the preliminary injunction standard.

### 3.   The class members are being irreparably harmed.

Under the second prong of the preliminary injunction standard, the movants must establish a substantial threat of irreparable harm. The class members satisfy the irreparable injury requirement for the same reasons Plaintiffs have done so. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion). The same is true of RFRA. *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012). Any losses the class members have suffered in connection with their religious accommodation requests sufficiently demonstrate irreparable injury, even if injuries like demotion, reassignment, and separation are otherwise

compensable. *See* Order 24, ECF No. 66. Thus, the second requirement for injunctive relief has been satisfied as to the class and subclasses.

### 4. The balance of hardships weighs in the class members' favor, and the issuance of the preliminary injunction will not disserve the public interest.

The final two elements of the preliminary injunction standard—the balance of the harms and whether an injunction will disserve the public interest—must be considered together. "These factors merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). This injunction does not disserve the public interest because it prevents constitutional deprivations. *See Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 458 n.9 (5th Cir. 2014). As this Court has explained, "Plaintiffs' loss of religious liberties outweighs any forthcoming harm to the Navy." Order 26, ECF No. 66. By early November, 99.4% of active-duty Navy servicemembers had been fully vaccinated, and that percentage is likely even higher today. The Navy has had extraordinary success in vaccinating its force. Yet Defendants' briefing and declarations describe a catastrophic future if these class members remain unvaccinated. *See* Defs.' Class P.I. Resp. 29–30, ECF No. 129. Fortunately, Defendants' predictions are highly speculative.

Defendants have repeatedly argued that Plaintiffs can only speculate as to the final outcome of the appeals proceedings. *Id.* at 12. But Plaintiffs are statistically far more likely—in fact, almost guaranteed—to be denied a religious accommodation request than to contract a severe case of COVID-19. Plaintiffs' vaccinated colleagues are becoming infected and contributing towards the "massive loss of time and readiness" that the Navy fears. *See id.* at 29. Defendants' claims that the unvaccinated class members "present an unacceptable risk to naval operations" is hyperbolic, especially because these servicemembers successfully carried out their tasks in the pre-vaccine era of the pandemic. *Id.* at 30; *see U.S. Navy Seals 1–26*, 27 F.4th at 343.

Since this Court issued its January 3 preliminary injunction order, COVID-19 cases have dropped dramatically worldwide. The Navy's interest in vaccinating the remaining 0.6% of its personnel—or less—does not outweigh the harm Plaintiffs are facing as they try to exercise their constitutional rights. Thus, the Court finds that the class members have satisfied the final two requirements for preliminary injunction.

## IV.   CONCLUSION

For the reasons stated, the Court **GRANTS** in part Plaintiffs' Motion for Class Certification as to the Navy Class, NSW/SO Subclass, and SEALs Subclass, subject to the amended class definitions removing unascertainable language. The Court appoints Plaintiffs' counsel as class counsel under Rule 23(g). The Court also **GRANTS** Plaintiffs' Motion for Class-Wide Preliminary Injunction. Defendants are enjoined from applying MANMED § 15-105(3)(n)(9); NAVADMIN 225/21; Trident Order #12; and NAVADMIN 256/21 to members of the Navy Class and Subclasses.

This class-wide injunction is immediately **STAYED** in part, "insofar as it precludes the Navy from considering respondents' vaccination status in making deployment, assignment, and other operational decisions." *U.S. Navy SEALs 1–26*, ___ S. Ct. ___, 2022 WL 882559.

**SO ORDERED** on this **28th day** of **March, 2022.**

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**