**FILED**

**May 2, 2022**

KAREN MITCHELL
CLERK, U.S. DISTRICT
COURT

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| U.S. NAVY SEALS 1-26, U.S. NAVY SPECIAL WARFARE COMBATANT CRAFT CREWMEN 1-5, U.S. NAVY EXPLOSIVE ORDNANCE DISPOSAL DISPOSAL TECHNICIAN, U.S. NAVY DIVERS 1-3 | ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| JOSEPH R. BIDEN, in his official capacity as President of the United States of America, LLOYD AUSTIN, SECRETARY, U.S. DEPARTMENT OF DEFENSE, individually and in his official capacity as United States Secretary of Defense, UNITED STATES DEPARTMENT OF DEFENSE, CARLOS DEL TORO, individually and in his official capacity as UNITED STATES SECRETARY OF THE NAVY | ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants | ) ) ) ) |

Civil Action No. . 4:21-cv-01236-O

**REQUEST FOR LEAVE TO INTERVENE**

1. And, comes now to the Court Major Mike Webb, a litigant and *pro se* advocate in *Webb v. Fauci*, Civil Action No. 3:2021-cv-00432 (E.D.Va. 2021), *on appeal* Record No. 21-2394 (4th Cir. 2021); *see also Webb v. Fauci*, Record No. 21-6868 (U.S. 2022), arising from, *inter alia* a claim brought under the *Freedom of Information Act (FOIA)*, 5 U.S.C. § 552, regarding the classification of the infectious dose and/or secondary attack rate, standard epidemiological metrics, for COVID-19, with credible evidence that the biological causative agent, SARS-CoV-2, had not been zoonotically evolved, as repeatedly alleged by the President's top medical adviser, Anthony Fauci, *see* Jerry Dunleavy, "Fauci says he still

thinks nature, not Wuhan lab, 'most likely' origin for COVID-19," *Washington Examiner*,

July 17, 2021; *see also* Cecelia Smith-Schoenwalder, "Biden: Intelligence Community Must

'Redouble' Efforts to Find Coronavirus Origin," *U.S. News & World Report*, May 26, 2021,

but rather is a biological agent in which the U.S. government holds a proprietary interest,

and, by operation of law, would have to have been cultivated in a laboratory. *See Association*

*for Molecular Pathology v. Myriad Genetics*, Docket No. 12-398, 566 U.S. ___ (2013);

*Diamond v. Chakrabarty*, 447 U. S. 303 (1980).

### Conditions for Grant of Leave to Intervene

2. Pursuant to Fed.R.Civ.Pro. 24(a), "[o]n timely motion, the court *must permit* anyone to
   intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2)
   *claims an interest relating to the property or transaction that is the subject of the action*, and
   is *so situated that disposing of the action may as a practical matter impair or impede the*
   *movant's ability to protect its interest*, unless existing parties adequately represent that
   interest. (emphasis added)

3. Pursuant to Fed.R.Civ.Pro. 24(b), "[o]n timely motion, the court may permit anyone to
   intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) *has a*
   *claim or defense that shares with the main action a common question of law or fact*.
   (emphasis added)

4. Pursuant to Fed.R.Civ.Pro. 24(b)(3), "[i]n exercising its discretion, the court must consider
   whether the intervention will unduly delay or prejudice the adjudication of the original
   parties' rights."

5. "The Court must consider three factors to determine whether an application to intervene is
   timely: (1) the stage of the proceedings; (2) the reason for any delay in moving to intervene;

and (3) whether the parties would be prejudiced." *ABM Indus. Inc.*, 249 F.R.D., at 588 (citing

*Northwest Forest Resource Council v. Glickman*, 82 F.3d 825 (9th Cir.1996)).

6. Furthermore, "[a] motion to intervene must be served on the parties as provided in Rule 5"

and "[t]he motion must state the grounds for intervention and be accompanied by a pleading

that sets out the claim or defense for which intervention is sought." Fed.R.Civ.Pro. 24(c).

<u>**Expert Testimony Qualification**</u>

7. In a recent application for a partial stay that had been presented to Justice Samuel Alito and

referred to the full U.S. Supreme Court, Justice Brett Kavanaugh had concluded:

> I concur in the Court's decision to grant the Government's application for a partial stay of
> the District Court's preliminary injunction for a simple overarching reason: Under Article
> II of the *Constitution*, the President of the United States, not any federal judge, is the
> Commander in Chief of the Armed Forces. In light of that bedrock constitutional
> principle, "courts traditionally have been reluctant to intrude upon the authority of the
> Executive in military and national security affairs." *Department of Navy v. Egan*, 484
> U.S. 518, 530 (1988). As the Court has long emphasized, moreover, the "complex, subtle,
> and professional decisions as to the composition, training, equipping, and control of a
> military force are essentially professional military judgments." *Gilligan v. Morgan*, 413
> U. S. 1, 10 (1973). Therefore, it is "difficult to conceive of an area of governmental
> activity in which the courts have less competence." *Ibid. Austin v. U.S. Navy SEALs 1-
> 26*, Record No. 21A-477 (U.S., March 25, 2022).

8. However, under Fed.R.Evid. 702, "[a] witness who is qualified as an expert *by knowledge,*

*skill, experience, training, or education* may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will *help the trier of fact*

*to understand the evidence or to determine a fact in issue*; (b) the testimony is *based on*

*sufficient facts or data*; (c) the testimony is the *product of reliable principles and methods*;

and (d) the expert has *reliably applied the principles and methods to the facts* of the case."

(emphasis added)

9. In a seminal case on vaccinations, this nation's highest court stated, regarding that an

appellant, whose "views could not affect the validity of the statute, nor entitle him to be

excepted from its provisions", *2* 25 S. Ct. 358, 49 L. Ed. 643 (1905) (citing *Commonwealth v. Connelly,* 163 Massachusetts 539; *Commonwealth v. Has,* 122 Massachusetts 40; *Reynolds v. United States,* 98 U.S. 145; *Regina v. Downes,* 13 Cox C.C. 111.), that "[t]he only 'competent evidence' that could be presented to the court to prove these propositions was the testimony of experts, giving their opinions." *Id.* (quoting *Commonwealth v. Jacobson,* 183 Massachusetts 242 (1904). *See also* Fed.R.Evid. 701[1].

10. Under the Fed.R.Evid. 901(a), "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is", and, in accordance with Fed.R.Evid. 901(b)(1), examples may include "[t]estimony that an item is what it is claimed to be".

11. And, under Fed.R.Evid. 703, "[a]n expert may base an opinion *on facts or data in the case that the expert has been made aware of or personally observed*", and, "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted", *"[b]ut if the facts or data would otherwise be inadmissible,* the proponent of the opinion may disclose them to the jury *only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.*" (emphasis added)

12. Historically, even in one landmark case on the issue of civil rights, expert testimony was dispositive in gaining a favorable outcome for the appellee. Staff, "Kenneth and Mamie Clark Doll," *NPS,* February 10, 2021, <u>Kenneth and Mamie Clark Doll - Brown v. Board of</u>

---

[1] "If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." *Id.*

Education National Historic Site (U.S. National Park Service) (nps.gov) (accessed September 8, 2021).

13. Moreover, under Fed.R.Civ.Pro. 26(a)(2)(A), "[i]n addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Pursuant to Fed.R.Civ.Pro. 26(a)(2)(B), "[u]nless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness", for which purpose the present application serves.

14. However, "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)", Fed.R.Civ.Pro.26(b)(3)(A), and "[a] party must make the initial disclosures at or within 14 days after the parties' Rule 26(f) conference. . ." Fed.R.Civ.Pro.26(a)(1)(C).

### ***Curriculum Vitae* of Intervenor**

15. Intervenor is the petitioner and *pro se* litigant in multiple litigations brough against the government response to the current public health crisis, to include:

    a. *Webb v. Northam, et al.*, Case Number CL20001624 (Alexandria Cir. 2020), *on appeal* Record Number 210536 (Va. 2021), *on petition for certiorari*, Record No. 21-____ (U.S. 2021) (first and longest surviving litigation against the lockdown orders in the Commonwealth of Virginia);

    b. *In Re: Major Mike Webb*, Case Number CL21001829 (Alexandria Cir. 2021), *on appeal* Record No. TBD (Va. 2022) (petition for writ of mandamus to compel the Commonwealth Attorney to charge the Sheriff for failure to perfect service of process upon the Governor and Commonwealth Defendants);

c. *Webb v. Wilson,* Case Number CL21001769 (Alexandria Cir. 2021), *on appeal Webb v. Wilson*, Record No. TBD (Va. 2021) (injunction action against PRIDE Month Proclamation, encouraging gay men to party during a public health crisis);

d. *Webb v. Northam*, Civil Number Civil Action No. 3:20CV497 (E.D.Va. 2020), *on appeal Webb v. Northam¸* Record Number 20-1968 (4th Cir. 2020), *certiorari denied*, Record No. 21-6170 (U.S. 2021) (first filed and longest surviving litigation brought against the nonmedical grade facial coverings mandates in the Commonwealth of Virginia);

e. *Webb v. Fauci*, *et al.*, Civil Action No. 3:21CV432 (E.D.Va. 2021), *on appeal* Record No. 21-2394 (4th Cir. 2021) (first action brought against the vaccines mandates in the Commonwealth of Virginia, and, in relevant part, an injunction action to compel the White House to respond to a request for information submitted under the *Freedom of Information Act (FOIA)*, 5 U.S.C. § 552, regarding whether or not the infectious dose and secondary attack rate for SARS-CoV-2 is classified information); and

f. *Webb v. Fauci*, Record No. 21-6868 (U.S. 2022) (application for prejudgment decision to enjoin the White House from withholding documents requested under the *FOIA* and to compel a summary judgment against Facebook, Inc. for violations of the *Freedom of Access to Clinic Entrances (FACE) Act*).

**16.** Intervenor is the most junior commissioned officer to have ever served as both the *Aide de Camp* to the Commander, as in evidence at Exhibit **A**, as well as the Operations Officer for all U.S. Army counterintelligence in the Continental United States (CONUS), as in evidence at Exhibit **B**.

17. And, in these capacities, Intervenor had the unique opportunity to serve in a critical staff role during the formation of the Armed Forces Medical Intelligence Center (AFMIC), *see generally* DODD 6420.1, *Armed Forces Medical Intelligence Center (AFMIC)*, September 30, 1996 , the precursor to the National Medical Intelligence Center (NMIC), *see generally* DODI 6420.01, National Center for Medical Intelligence (NCMI), March 20, 2009, *incorporating* Change 3, *effective* September 8, 2020, which was the subject of the ABC News report, Josh Margolin & James Gordon Meek, "Intelligence report warned of coronavirus crisis as early as November: Sources 'Analysts concluded it could be a cataclysmic event,' a source said," *ABC News*, April 8, 2020.

18. In addition, Intervenor served as a Company Commander in the U.S. Army Reserve, in which capacity, during Annual Training, he had the responsibility for proper instruction of initial entry for training (IET) soldiers on topics to include proper tactics, techniques and procedures for conduct of operations in environments contaminated by biological agents, and was responsible during monthly unit training assemblies (UTAs) for conducting sustainment training for drill instructors and other soldiers assigned to that training unit, as in evidence at Exhibit **C**.

19. Intervenor further has been certified as an instructor in a train-the-trainer (T3) course for composite risk management (CRM), in accordance with DA Pam 385-30 *Safety: Risk Management*, Para 1-8, December 2, 2014.

20. In addition, Intervenor has been creditable experience as a *FOIA* analyst, having performed such other duties as assigned, while serving in both the capacities of *Aide de Camp* and Operations Officer, as well as while serving as the Adjutant/S1 for a basic training unit, while in the U.S. Army Reserve, as in evidence at Exhibit **D**, as well as in employment as a

*FOIA* analyst with Immigration and Customs Enforcement (ICE), and as a government contractor, serving as the Acting *FOIA* Supervisor with Axiom Corporation of Atlanta, a contracted agent for the Centers for Disease Control & Prevention (CDC).

21. Intervenor has provided paralegal support to intellectual property cases specifically involving pharmaceutical products with premier law firms, to include: Fitzpatrick, Cella, Harper & Scinto, Whitman, Breed, Abbott & Morgan, LLC, Dilworth Paxson LLP, Blank Rome LLP and Reed Smith LLP.

22. Intervenor has never authored any publications, nor testified as an expert, and is not being compensated.

## **Stage of the Proceedings**

23. On March 25, 2022, on application for relief from a partial stay, the Supreme Court had, with a verbal indication that Justice Clarence Thomas would have denied the application, Justice Kavanaugh concurred "in the Court's decision to grant the Government's application for a partial stay of the District Court's preliminary injunction." *U.S. Navy SEALs 1-26*, Record No. 21A-477.

24. The action, *U.S. Navy SEALs 1-26 v. Biden*, 4:21-cv-01236 (N.D. Tx. 2021) was commenced on November 9, 2021, followed by a Motion for Preliminary Injunctive Relief on November 24, 2021, prompting a Motion for Stay filed by Defendants, with Preliminary Injunctive Relief granted by the District Court on January 3, 2022, prompting a Motion to Dismiss, filed by Austin, on January 14, 2022, as well as a Notice for Interlocutory Appeal filed on January 21, 2022, and a Notice of Appeal on February 22, 2022.

25. An Amended Complaint was filed on January 24, 2022, followed by a Motion for Class Certification on January 25, 2022.

26. On February 7, 2022, a Motion for Injunction Classwide Preliminary Injunction was filed with the District Court, while Defendants filed a Motion to Dismiss for Lack of Jurisdiction.

27. On March 28, 2022, an order was entered granting, in part, the Motion for Class Certification and granting, in part, the Motion for Injunctive Relief.

28. On January 21, 2022, Defendants' interlocutory was filed with the Fifth Circuit Court of Appeal, in the matter, *U.S. Navy SEALs 1-26 v. Biden*, No. 22-10077 (5th Cir. 2022).

29. On February 28, 2022, the Fifth Circuit entered an order denying Motion for Stay Pending Appeal.

### Reason for Any Delay in Moving to Intervene

30. On March 5, 2021, the White House announced that "we've recovered from a storm, kept vaccination sites open late, packed and shipped vaccines throughout the night, seen companies across America make major commitments to masking and vaccinations and to underserved communities", that "we went from a J&J authorization to shots in arms in three days[,] . . . topped off by an announcement from two rival drug companies, Johnson & Johnson and Merck, of an unprecedented collaboration to increase our vaccination capacity along with the U.S. government", that "[w]e have increased vaccine supply to states, tribes, and territories by more than 77 percent, launched programs to get vaccines into thousands of additional convenient and trusted locations, like pharmacies, community vaccination centers, and community health centers" and that "there are thousands of Americans — from our military servicemen and women, to retired doctors and nurses, to members of the National Guard — all vaccinating Americans across the country." Briefing Room, "Press Briefing by White House COVID-19 Response Team and Public Health Officials," *White House*, March 5, 2021.

31. At a time during the public health crisis when it was reported that the "CDC's most recent data shows cases continue to fluctuate around 60,000 to 70,000 cases per day, with the most recent seven-day average of 62,000 cases per day", with "deaths hovering around 2,000 deaths per day with the latest seven-day average of 1,900 deaths per day", the White House took great pride in the fact reported that:

> Six weeks ago, only 8 percent of seniors — those most vulnerable to COVID — had received a vaccination. Today, nearly 55 percent of people age 65 or older have received at least one shot. Altogether, we've administered more than 82 million shots — more than any country in the world. And we've opened or expanded more than 450 community vaccination sites. *Id.*

32. By March 7, 2021, the day upon which a joint project between Boston University and The Atlantic had discontinued collecting data, a total of 515,151 American fatalities, confirmed and probable, had been attributed to COVID-19. The COVID Tracking Project, "National Data: Deaths," COVID Tracking Project, March 7, 2021, https://covidtracking.com/data/national/deaths (accessed March 31, 2022).

33. Days later, marking the anniversary of the declaration of a pandemic, the President, indicating that Americans wanted to hear the truth, announced his American Rescue Plan, stating:

> I know it's been hard. I truly know. As I've told you before, I carry a card in my pocket with the number of Americans who have died from COVID to date. It's on the back of my schedule. As of now, total deaths in America, 527,726. That's more deaths than in World War I, World War II, the Vietnam War and 9/11 combined. ABC News, "Transcript: Joe Biden delivers remarks on 1-year anniversary of pandemic," *ABC News*, March 11, 2021.

34. "'Information' means any knowledge that can be communicated or documentary material, regardless of its physical form or characteristics, that is *owned by, produced by or for, or is under the control of the United States Government*." Part I, Section 1.1(b), Executive Order 12,958, *Classified National Security Information*, April 17, 1995.  (emphasis added)

**35.** "'Information' means may information or material, regardless of its physical form or characteristics, *that is owned by, produced by or for, or is under the control of the United States Government*." Section 6.1(b), Executive Order No. 12,356, *National Security Information*, April 2, 1982. (emphasis added)

**36.** If this information is owned by, produced by or for, or is under the control of the United States government, despite reports to the contrary, by simple operation of law, as a product not of nature, it would, of necessity, have to have been cultivated in a laboratory. *Association for Molecular Pathology v. Myriad Genetics*, Docket No. 12-398, 566 U.S. ___ (2013); *Diamond v. Chakrabarty*, 447 U. S. 303 (1980).

**37.** On March 23, 2021, as in evidence at Exhibit **E**, the Intervenor had presented a request for information, under the authority of the *FOIA* to request any and all documents pertaining to whether the secondary attack rate and/or the infectious dose for COVID-19, standard epidemiological metrics of risk, were classified information, a request acknowledged as received by the White House on that very same day, as in evidence at Exhibit **F**.

**38.** Celebrating his first 100 days after Joe Biden had assumed the office of the Presidency, the White House took credit for "consistently vaccinating 2.5 million Americans per day", "200 million shots in the first 100 days," and had identified the most vulnerable populations thusly:

> As of today, 71 percent of individuals 65 and over have received at least one shot. That's important because seniors sadly account for 80 percent of COVID deaths. Overall, more than 1 in 3 adults have had at least one dose, and more than 47 million adult Americans are now fully vaccinated. Briefing Room, "Press Briefing by White House COVID-19 Response Team and Public Health Officials," *White House*, March 26, 2021.

**39.** After the tolling of the deadline for a response to the *FOIA* request, with urgency, to task the Intelligence Community to redouble efforts one month after the deadline had tolled for a

response. *See* Kate Sullivan, Donald Judd and Phil Mattingly, Biden tasks intelligence community to report on Covid origins in 90 days, *CNN*,  May 27, 2021.

40. It is generally acknowledged that *Reid v. Merit Systems Protection Board*, 508 F.3d 674 (Fed. Cir. 2007) articulates a timing/knowledge test to determine whether conduct is retaliatory, and the complainant need only demonstrate that "the deciding official knew of the [protected activity]. . . and that the adverse action was initiated within a reasonable time[2] of [the same]".

41. Under the timing/knowledge test, a complainant "need not demonstrate the existence of a retaliatory motive. . . to establish that [the protected activity]. . . was a contributing factor", *Kewley v. HHS*, 153 F.3d 1357 (Fed. Cir. 1998) (quoting *Marano v. DoJ*, 2 F.3d 1137(Fed. Cir. 1993)),  and "[o]nce the knowledge/timing test has been met, an administrative judge must find that the appellant has shown that. . . [the protected activity] was a contributing factor. . . , even if, after a complete analysis of all of the evidence, a reasonable factfinder could not conclude that the appellant's [protected activity]. . . was a contributing factor". *Schnell v. Department of the Army*, 114 M.S.P.R. 83 (2010).

42. Defendants had brought a complaint, like the Intervenor, who had initially filed his case on July 7, 2021, including claims under the *Religious Freedom Restoration Act*, Pub. L. No. 103-141, 107 Stat. 1488, codified at 42 U.S.C. § 2000bb, which Congress had enacted to: "(1) to restore the compelling interest test as set forth in *Sherbert v. Verner*, 374 U.S. 398 (1963) and *Wisconsin v. Yoder*, 406 U.S. 205 (1972) and to guarantee its application *in all cases where free exercise of religion is substantially burdened*; and (2) to *provide a claim or*

---

[2] *See Inman v. Department of Veterans Affairs*, 112 M.S.P.R. 280 (2009) (a reasonable time of 15 months); *Redschlag v. Department of the Army*, 89 M.S.P.R. 589 (2001) (a reasonable time of 18 months); *Russell v. DoJ*, 76 M.S.P.R. 317 (1997) (a reasonable time of 7 months); *Easterbrook v. DoJ*, 85 M.S.P.R. 60 (2000) (a reasonable time of 7 months).

*defense* to persons whose religious exercise is substantially burdened by government."
(emphasis added)

43. Piercing the veil of judicial immunity, being act ministerial and not judicial in nature, in derogation of a substantive right to due process and equal protection, unlike in the case brought by Plaintiffs, where, by November 9, 2021, a summons was issued against all Defendants, to date, in the case brought by the Intervenor in the Eastern District of Virginia, no summons has yet been issued, raising a reasonable suspicion regarding violations of 18 U.S.C. § 1512, for conspiracy to evade a summons.

44. Similarly, piercing the veil of judicial immunity, being act ministerial and not judicial in nature, in derogation of a substantive right to due process and equal protection, unlike in the case brought by Plaintiffs, where a hearing was docketed for argument regarding injunctive relief, in the matter brought by the Intervenor, the Trial Court had refused to docket a hearing under the pretext that the Respondents in his case had not been served.

45. Under 5 U.S.C. § 552(a)(6)(C)(i), "[a]ny person making a request to any agency for records under paragraph (1), (2), or (3) of this subsection *shall be deemed to have exhausted his administrative remedies* with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph", and "[o]n complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant", 5 U.S.C. § 552(a)(4)(B); so, the Court, *sua sponte*, at all times possessed the authority, at its discretion,

to grant injunctive relief, which never occurred, again piercing the veil of judicial immunity, in derogation of a substantive right to due process and equal protection.

46. Moreover, on October 29, 2021, it was reported that "[t]he US intelligence community released a declassified report. . . that confirmed that it has not reached a conclusion on the origins of Covid-19, though it offered fresh details on how the intelligence community approached its 90-day investigation into the matter", Katie Bo Lillis, "US Intelligence community releases full declassified report that does not determine origin of Covid-19," *CNN*, October 29, 2021, the very same day that the Trial Court had issued an order dismissing the action, for dubious reasons, an order that has yet to have been delivered to the Intervenor in the mail.

47. After discovering the dismissal action during a visit to the Court to redouble efforts to have a summons issued by the Trial Court, the Intervenor promptly, filed a notice of appeal, filed an appeal of the dismissal with the Fourth Circuit and filed an application for prejudgment injunctive relief on the *FOIA* claim with the Supreme Court, the last action of which was denied certiorari on March 7, 2022, with Justice Samuel Alito abstaining from participation, while the appeal filed with the Fourth Circuit has languished since its filing in December, even without any responsive replies from the Appellee parties.

48. "Globally, as of 5:04pm CEST, 30 March 2022, there have been 483,556,595 confirmed cases of COVID-19, including 6,132,461 deaths, reported to WHO", Staff, "WHO Coronavirus (COVID-19) Dashboard," *WHO*, https://covid19.who.int/ (accessed March 31, 2022), and on March 8, 2021, the Intervenor filed a formal complaint, alleging crimes against humanity and genocide, with the International Criminal Court, as in evidence at Exhibit **G**.

*But see* Matthew Lee, "US formally declares Russian troops have committed war crimes in Ukraine," *Associated Press*, March 23, 2022.

49. To date, 976,229 American deaths have been attributed to a biological agent that, beyond a reasonable doubt, is the property of the Government, while 81.8% of Americans over the age of five have been administered at least one dose, based upon the misrepresentation of a material fact that these countermeasure products were designed to address a disease that had occurred in nature, false representations knowingly made, with intent to mislead, placing the American people in false reliance thereon, establishing a *prima facie* case of fraud.

50. It is clear that, under federal laws of the United States,  pursuant to 18 U.S.C. § 1001(a),

> Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—
>
>> (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
>>
>> (2) makes any materially false, fictitious, or fraudulent statement or representation; or
>>
>> (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;
>
> shall be fined under this title, imprisoned not more than 5 years or, if the offense involves international or domestic terrorism (as defined in section 2331), imprisoned not more than 8 years, or both. If the matter relates to an offense under chapter 109A, 109B, 110, or 117, or section 1591, then the term of imprisonment imposed under this section shall be not more than 8 years.

51. It is clear that, under the laws of the Commmonwealth,

> A party alleging fraud must prove by clear and convincing evidence (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to him. *Winn v. Aleda Constr. Co.*, 227 Va. 304, 308, 315 S.E.2d 193, 195 (1984). Clear and convincing evidence is such proof as will establish in the trier of fact a firm belief or conviction concerning the allegations that must be established." *Thompson v. Bacon*, 245 Va. 107 (1993) (quoting *Walker Agency, Inc. v. Lucas*, 215 Va. 535 (1975).

52. And, it is clear, on the record, that public officials, elected and appointed had engaged in conduct of such character and had ample cause to evade a court that might hold them accountable for their actions, finding sufficient motive, means and opportunity. *Bowen v. Maynard*, 799 F.2d 593 (10th Cir.1986) ("Additionally, there was no evidence that "Slick," unlike Crowe, had motive, opportunity, and ability to kill the bartender.").

**Prejudice to Parties**

***Military Law***

53. "On October 17, 2006, the Uniform Code of Military Justice (UCMJ) was amended to extend UCMJ jurisdiction over persons serving with or accompanying U.S. armed forces in the field in times of declared war or a contingency operation (references (a) and (b))." Robert M. Gates, *Memorandum for Secretaries of the Military Departments, Chairman of the Joint Chiefs of Staff, Under Secretaries of Defense and Commanders of Combatant Commands*, "UCMJ Jurisdiction Over DoD Civilian Employees, DoD Contractor Personnel, and Other Persons Serving With or Accompanying the Armed Forces Overseas During Declared War and in Contingency Operations," *DOD*, March 10, 2008.

54. Under military law, codified in the Uniform Code for Military Justice (UCMJ),

> (A) Except as provided in subparagraph (B), a preliminary hearing shall be held before referral of charges and specifications for trial by general court-martial. The preliminary hearing shall be conducted by an impartial hearing officer, detailed by the convening authority in accordance with subsection (b).

> (B) Under regulations prescribed by the President, a preliminary hearing need not be held if the accused submits a written waiver to the convening authority and the convening authority determines that a hearing is not required. 10 U.S.C. § 832(a)(1).

55. Pursuant to 10 U.S.C. § 832(a)(2),

> The purpose of the preliminary hearing shall be limited to determining the following:

>> (A)Whether or not the specification alleges an offense under this chapter.

(B) Whether or not there is probable cause to believe that the accused committed the offense charged.

(C) Whether or not the convening authority has court-martial jurisdiction over the accused and over the offense.

(D) A recommendation as to the disposition that should be made of the case.

### ***Transnational Terror***

56. Under 18 U.S.C. § 2332b(d)(1), "[t]he prosecution is not required to prove knowledge by any defendant of a jurisdictional base alleged in the indictment", and, in electing a right to remain silent, at least with regards to criminal conduct involving terrorism, "[a] person acts with the requisite knowledge if he is aware of (*or willfully blinds himself* to) a significant likelihood that his or her conduct will materially support the organization's terrorist ends", *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010), and, under Fed.R.Crim.Pro. 6(a), "[w]hen the public interest so requires, the court must order that one or more grand juries be summoned."

57. Under 18 U.S.C. § 2332b(a)(1)(A), "[w]hoever, involving conduct transcending national boundaries and in a circumstance described in subsection (b)... kills, kidnaps, maims, commits an assault resulting in serious bodily injury, or assaults with a dangerous weapon any person within the United States... in violation of the laws of any State, or the United States, shall be punished as prescribed in subsection (c)", which provides, in relevant part, that "[w]hoever violates this section shall be punished... for a killing, or if death results to any person from any other conduct prohibited by this section, by death, or by imprisonment for any term of years or for life", 18 U.S.C. § 2332b(c)(1)(A).

58. However, under 18 U.S.C. § 2332b(b)(1)(C), for jurisdictional purposes, "the victim, or intended victim, is the United States Government, *a member of the uniformed services*, or any official, officer, employee, or agent of the legislative, executive, or judicial branches, or

of any department or agency, of the United States" (emphasis added), and, to date, a total of 94 uniformed service members have been fatalities to COVID-19. Staff, "Spotlight: Coronavirus: DoD Response," https://www.defense.gov/Spotlights/Coronavirus-DOD-Response/ (accessed March 30, 2022).

59. At least in the Sixth Circuit, where it was found that, where "the object crimes alleged. . . were part of a broader conspiracy 'intended to promote' enumerated crimes of terrorism", it has been held that "[t]he terrorism enhancement applies no matter which object crimes were assumed in the guilty verdict, so there is no need to determine beyond a reasonable doubt that. . .[a defendant or defendants] conspired to commit any one of the named object crimes in particular." *U.S. v. Graham*, 275 F.3d 490 (6th Cir. 2001). Similarly, the Seventh Circuit has held that,"[i]f the act is among the litany of crimes listed in § 2332b(g)(5)(B), which include a bevy of the most harmful and odious acts in the criminal code, including everything from murder and torture to the destruction of government property, and it was 'calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct,' then it is a federal crime of terrorism", *U.S. v. Christianson, 586 F.3d 532 (7th Cir. 2009)* (quoting 18 § 2332b(g)(5)(B)), "[a]nd for all intents and purposes at sentencing, that person is a terrorist. *Id.*

### *A Right to Be Heard*

60. The Virginia State Attorney General has described in pleadings the current public health crisis as a "a once-in-a-century pandemic", characterized as "threaten[ing] irreparable harm to an unknown (and unknowable) number of people", and prompting the argument that "the scope of [a court's] review . . . must be limited to a determination of whether the [executive's] actions were taken in good faith and whether there is some factual basis for [the

Governor's] decision that the restrictions he imposed were necessary to maintain order." Opp. Brief, *Hughes v. Northam*, Civil Action No. CL20-415 (Russell Cy. Cir.) (quoting *U.S. v. Chalk*, 441 F.2d 1277 (4th Cir. 1971).

61. The esteemed Attorney General, however, appears to suggest that such license is plenary, and eternal, and appears to omit the bounds upon that license even acknowledged by that precedential authority, which expressly articulated the condition that "'[a]ll power may be abused if placed in unworthy hands'", *id.* (quoting *Luther*, 48 U.S. (7 How.), at 1, and that "[t]he courts cannot prevent abuse of power, but can sometimes correct it". *Id.*

62. Yet, while neither a practicing nor licensed, nor even formally trained, litigator, Intervenor is yet aware that "[t]he fundamental requisite of due process of law is the opportunity to be heard", *Grannis v. Ordean*, 234 U.S. 385 (1914), and that such should occur "at a meaningful time and in a meaningful manner", *Armstrong v. Manzo*, 380 U.S. 545 (1965).

63. Similarly, this unrepresented litigant is fully aware that, in due process, not derogated, is defined as "the process that is due under particular circumstances and does not invariably mandate trial-type proceedings", *Sec'y of Labor v. T.P. Mining, Inc.*, 8 FMSHRC 687 (1986), which at least one case within the confines of his federal jurisdiction had described as a substantive right derogated in irreparable harm, *Cohen v. Rosenstein*, 691 F. App'x 728, (Mem)–730 (4th Cir. 2017), a material finding for a grant of injunctive relief upon infringement thereof, a legal cause of action even recognized, even if in dissent, by the Virginia State Attorney General. *See* Opp. Brief, *Hughes v. Northam, supra.* (quoting *School Bd. of Richmond v. Wilder*, 73 Va. Cir. 251 (City of Richmond Cir. Ct. 2007))[3].

---

[3] "[a] party seeking injunctive relief 'must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.*

### ***Speedy Trial***

64. It is clear that "courts must 'recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify'", *U.S. v. Knowles*, 390 F. App'x 915 (11th Cir. 2010) (quoting *Barker v. Wingo*, 407 U.S. 514 (1972)), and a defendant "cannot avoid a speedy trial by forcing the government to run the gauntlet of obtaining formal extradition and then complain about the delay that he has caused by refusing to return voluntarily to the United States", because "affirmative resistance of the government's efforts to secure his presence in the United States constitute an intentional relinquishment of his right to a constitutional speedy trial"; hence, precluding a right to then "complain of the delay that he himself caused". *U.S. v. Manning*, 56 F.3d 1188 (9th Cir.1995).

65. In the analysis of a denial of speedy trial, under the *Sixth Amendment*, "[t]he length of the delay is the starting point of the analysis, and it is not necessary to consider the other three factors if the delay is not presumptively prejudicial", and "[t]he length of delay is not presumptively prejudicial". *Bland v. Commonwealth*, No. 0937-16-1, 2017 WL 5318340, at *1–4 (Va. Ct. App. Nov. 14, 2017) (citing *Barker*, 407 U.S., at 514.). *But see Doggett v. U.S.*, 505 U.S. 647 (1992) ("Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay, 407 U.S., at 530–531, 92 S.Ct., at 2192, since, by definition, he cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness.").

66. In *U.S. v. Cain*, 671 F.3d 271 (2d Cir. 2012), the Court explained:

> The Supreme Court's decision in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) sets forth the four factors that must be considered in analyzing

whether a defendant's constitutional right to a speedy trial has been violated: (1) the length of the delay; (2) the reasons for the delay; (3) whether the defendant asserted his right in the run-up to the trial; and (4) whether the defendant was prejudiced by the failure to bring the case to trial more quickly. *See id.* at 530, 92 S.Ct. 2182; *see also United States v. Jones,* 129 F.3d 718, 724 (2d Cir.1997). These factors "must be considered together with such other circumstances as may be relevant," and "have no talismanic qualities." *Barker,* 407 U.S. at 533, 92 S.Ct. 2182. Rather, they require courts to "engage in a difficult and sensitive balancing process." *Id.*

67. It is well-established that "by definition, [a defendant] cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness" *Doggett v. U.S.,* 505 U.S. 647 (1992), and while "a showing of prejudice is not a prerequisite to finding a *[S]ixth [A]mendment* violation, courts generally have been reluctant to find a speedy trial violation in the absence of genuine prejudice." *U.S. v. Jones,* Jones, 129 F.3d 718 (2d Cir.1997).

## **Unconditional Right by Statute**

68. Under the *FOIA,* as noted above, "Any person making a request to any agency for records under paragraph (1), (2), or (3) of this subsection shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph." 5 U.S.C. § 552(a)(6)(C)(i).

69. Moreover, pursuant to Fed.R.Civ.P. 24(a), "[o]n timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest", statutory substantive rights, in derogation of equal protection and due process, that have thus far been denied, an irreparable harm, *see Cohen v. Rosenstein,* 691 F. App'x 728,

(Mem)–730 (4th Cir. 2017), entitled to injunctive relief. *School Bd. of Richmond v. Wilder*, 73 Va. Cir. 251 (City of Richmond Cir. Ct. 2007).

70. Additionally, in accordance with Fed.R.Civ.Pro. 24(b)(1), "[o]n timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact."

### Claim that Shares with the Main Action

71. Pursuant to Fed.R.Civ.Pro. 24(b), "[o]n timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) *has a claim or defense that shares with the main action a common question of law or fact*. (emphasis added)

72. If, even in equity and within the inherent powers of the court to ensure the administration of justice an unconditional right to intervene were not found, clearly, upon the similar facts and similar defendants, a Court could not fail to find a common claim with the main action, making a grant of intervention in this case proper.

### Conclusion, Certification and Verification

73. All the above statements are true to the best of my knowledge, and I understand that a false statement in this Verified Complaint may subject me to penalties of perjury.

74. Intervenor agrees to provide the Clerk's Office with any changes to my address where case-related papers may be served.

75. Intervenor understands that his failure to keep a current address on file with the Clerk's Office may result in the dismissal of his case.

76. Intervenor further declares under penalty of perjury that no attorney has prepared, or assisted in the preparation of this document.

**WHEREFORE**, Petitioner prays, for the reasons argued above, for a grant of relief in the form of intervention in the above referenced matter, and such other equitable relief as deemed proper by the Court.

_____

Major Mike Webb
955 S. Columbus Street, #426
Arlington, Virginia  22204
Phone: (856) 220-1354
Email: GiveFaithATry@gmail.com

Executed on: _____4-28-22_____ (Date)

Subscribed, acknowledged and sworn to before me, the undersigned Notary Public in the

County of ____Arlington____, in the Commonwealth of Virginia, this

___28___ day of ____April____, 20_22___.

_____
NOTARY PUBLIC

My commission expires: __06/30/2025__  Registration Number: __7956072__

-23-

# EXHIBITS

## Exhibit A

| a. LAST NAME-FIRST NAME - MIDDLE INITIAL | | | Year | Month | Day | b. SPECIALTIES | |
|---|---|---|---|---|---|---|---|
| WEBB, MICHAEL D. | | 2LT | 94 | 04 | 14 | MI | 35D00 |

| c. UNIT, ORGANIZATION, STATION, ZIP CODE OR APO, MAJOR COMMAND | | d. REASON FOR SUBMISSION | | |
|---|---|---|---|---|
| HHC, 902D MI Group | | 03 | Change of Rater | AS |
| Fort Meade, MD  20755-5935   USAINSCOM | | | | |

| e. PERIOD COVERED | | | | | | f. NO. OF MONTHS | g. MILPO CODE | h. RATED OFFICER COPY (Check one and date) | | i. FORWARDING ADDRESS |
|---|---|---|---|---|---|---|---|---|---|---|
| FROM | | | THRU | | | | | ☐ 1. GIVEN TO OFFICER | | |
| Year | Month | Day | Year | Month | Day | 7 | MD13 | ☐ 2. FORWARDED TO OFFICER | | |
| 94 | 12 | 13 | 95 | 06 | 27 | | | | | |

**q. EXPLANATION OF NONRATED PERIODS**

**PART II – AUTHENTICATION** (Rated officer signature verifies PART I data and RATING OFFICIALS CHART)

| a. NAME OF RATER (Last, First, MI) | | SSN | SIGNATURE | |
|---|---|---|---|---|
| STURMER, RONALD T. | | | | |
| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | | | | DATE |
| LTC, MI, 902D MI Group, Fort Meade, MD 20755  Deputy Commander | | | | 5 Jul 95 |
| b. NAME OF INTERMEDIATE RATER (Last, First, MI) | | SSN | SIGNATURE | |
| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | | | | |
| c. NAME OF SENIOR RATER (Last, First, MI) | | SSN | SIGNATURE | |
| SWIFT, JOHN E.  III | | | | |
| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | | | | DATE |
| COL, MI, 902D MI Group, Fort Meade, MD 20755-5910  Group Commander | | | | 5 Jul 95 |

| d. SIGNATURE OF RATED OFFICER | DATE | e. DATE ENTERED ON DA FORM 2-1 | f. RATED OFFICER MPO INITIALS | g. SR MPO INITIALS | h. NO. OF INCL |
|---|---|---|---|---|---|
| | 5 Jul 95 | | | | |

**PART III – DUTY DESCRIPTION** (Rater)

| a. PRINCIPAL DUTY TITLE  GROUP EXECUTIVE OFFICER | b. SSI/MOS  35E |
|---|---|

c. REFER TO PART III a, DA FORM 67-8-1

Executive Officer to commander of a CDPL Colonel-level Military Intelligence Group. Functions include staff action control and coordination, and supervision of command group activities.  Ensures the Group Commander stays advised of all actions that affect the Group mission.  Keeps the Deputy Commander and primary staff informed of all matters pertaining to their respective areas.  Responsible for ensuring the management information systems, and other time saving techniques.  Supports subordinate commander through transfer of information on Group activities and decisions.

**PART IV – PERFORMANCE EVALUATION – PROFESSIONALISM** (Rater)

| a. PROFESSIONAL COMPETENCE | Do items 1 through 14 below. Indicate the degree of agreement with the following statements as being descriptive of the rated officer. Any comments will be reflected in b below.) | | HIGH DEGREE | | LOW DEGREE | |
|---|---|---|---|---|---|---|
| | | | 1 | 2 | 3 | 4 | 5 |
| 1. Possesses capacity to acquire knowledge/grasp concepts | | 1 | 8. Displays sound judgment | | 1 |
| 2. Demonstrates appropriate knowledge and expertise in assigned tasks | | 1 | 9. Seeks self-improvement | | 1 |
| 3. Maintains appropriate level of physical fitness  PASS  9505 | | 1 | 10. Is adaptable to changing situations | | 1 |
| 4. Motivates, challenges and develops subordinates | | 1 | 11. Sets and enforces high standards | | 1 |
| 5. Performs under physical and mental stress | | 1 | 12. Possesses military bearing and appearance  69/168  YES | | 1 |
| 6. Encourages candor and frankness in subordinates | | 1 | 13. Supports EO/EEO | | 1 |
| 7. Clear and concise in written communication | | 1 | 14. Clear and concise in oral communication | | 1 |

b. PROFESSIONAL ETHICS (Comment on any area where the rated officer is particularly outstanding or needs improvement)

a.1 & 2:  A fast learner; aggressively seeks new and better ways to accomplish the mission.
a.3:  Superb physical condition; runs marathons.
a.10:  Remains flexible at all times; easily adapts to changing guidance.
b.1, 3 & 7:  An exceptionally dedicated officer; gives 100 percent effort on every task regardless of personal concerns.

1. DEDICATION
2. RESPONSIBILITY
3. LOYALTY
4. DISCIPLINE
5. INTEGRITY
6. MORAL COURAGE
7. SELFLESSNESS
8. MORAL STANDARDS

-24-

PART V — PERFORMANCE AND POTENTIAL EVALUATION (RATER)

**a. RATED OFFICER'S NAME** WEBB, MICHAEL D.  **SSN**

**RATED OFFICER IS ASSIGNED IN ONE OF HIS/HER DESIGNATED SPECIALTIES/MOS** ☒ YES ☐ NO

**b. PERFORMANCE DURING THIS RATING PERIOD. REFER TO PART III, DA FORM 67-8 AND PART III a, b, AND c, DA FORM 67-8-1**

| ☒ ALWAYS EXCEEDED REQUIREMENTS | ☐ USUALLY EXCEEDED REQUIREMENTS | ☐ MET REQUIREMENTS | ☐ OFTEN FAILED REQUIREMENTS | ☐ USUALLY FAILED REQUIREMENTS |

**c. COMMENT ON SPECIFIC ASPECTS OF THE PERFORMANCE. REFER TO PART III, DA FORM 67-8 AND PART III a, b, AND c, DA FORM 67-8-1. DO NOT USE FOR COMMENTS ON POTENTIAL**

2LT Webb has accomplished his mission in an outstanding manner. He was given full responsibility for executing all the administrative requirements for the 902D MI Group's organizational inspection program and has ensured that all inspection schedules are thoroughly coordinated and deconflicted from all other activities and inspection results are accurately compiled. As the linchpin to the efficiency and effectiveness of the Command Group, his demeanor and ability to anticipate requirements were essential in optimizing the commander's time and expediting staff actions. He has been totally reliable in all aspects of his job and has willingly put in an inordinate amount of hours to ensure that every detail of an action is taken care of. 2LT Webb's ability to establish immediate rapport with senior personnel and agencies has significantly improved the professional image of the Group. A solid effort by an exceptional officer.

**d. THIS OFFICER'S POTENTIAL FOR PROMOTION TO THE NEXT HIGHER GRADE IS**

| ☒ PROMOTE AHEAD OF CONTEMPORARIES | ☐ PROMOTE WITH CONTEMPORARIES | ☐ DO NOT PROMOTE | ☐ OTHER (Explain below) |

**e. COMMENT ON POTENTIAL**

Outstanding potential; he has the intelligence and determination to make things happen. He should be assigned as a battalion S-2 and company XO in preparation for command. Promote immediately and select for the MI Advanced Course.

**PART VI — INTERMEDIATE RATER**

**a. COMMENTS**

**PART VII — SENIOR RATER**

**a. POTENTIAL EVALUATION** (See Chapter 4, AR 623-105)

SR DA USE ONLY

HI
LO

**b. COMMENTS**

2LT Webb has done an outstanding job. He has truly become my right hand, enthusiasticly handling a myriad of actions. A less energetic and dedicated officer would flounder under the work load I have placed on him. Because of him, the mission of this command in not impeded by unnecessary distractions. He could serve as a company commander now. Likewise, he has the organizational ability and interpersonal skills necessary for excellence at higher staff levels. Select for battalion S-2, promote immediately and select for MI Advanced Course. Mike Webb is a strong officer; a leader for the 21st Century Army.

## Exhibit B

PART I - ADMINISTRATIVE DATA

| a. LAST NAME - FIRST NAME - MIDDLE INITIAL | b. SSN | c. GRADE | d. DATE OF RANK | | | e. BR | f. DESIGNATED SPECIALTIES | g. PMOS /SKB | h. STA CODE |
|---|---|---|---|---|---|---|---|---|---|
| | | | Year | Month | Day | | | | |
| WEBB, MICHAEL D. | | 1LT | 96 | 04 | 14 | MI | 35D | | |

| i. UNIT, ORGANIZATION, STATION, ZIP CODE OR APO, MAJOR COMMAND | | | | | k. REASON FOR SUBMISSION | | l. COMD CODE |
|---|---|---|---|---|---|---|---|
| HHD, 902D MI GROUP | | | | 04 | DISCHARGE | | AS |
| FORT MEADE, MD 20755-5910   USAINSCOM | | | | | | | |

| l. PERIOD COVERED | | | | | | m. NO. OF MONTHS | n. MIPO CODE | 6. RATED OFFICER COPY (Check one and date) | o. FORWARDING ADDRESS |
|---|---|---|---|---|---|---|---|---|---|
| FROM | | | THRU | | | | | 1. GIVEN TO OFFICER | |
| Year | Month | Day | Year | Month | Day | 09 | MD13 | ☒ 2. FORWARDED TO OFFICER | |
| 96 | 07 | 01 | 97 | 04 | 15 | | | 996414 | |

q. EXPLANATION OF NONRATED PERIODS

PART II - AUTHENTICATION (Rated officer signature verifies PART I data and RATING OFFICIALS ONLY)

| a. NAME OF RATER (Last, First, MI) | SSN | SIGNATURE | |
|---|---|---|---|
| LINE, BRYON S. | | | |
| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | | | DATE |
| GS-14, HHD, 902D MI GROUP, FORT MEADE, MD 20755-5910,  DIR OF OPS | | | 970415 |

| b. NAME OF INTERMEDIATE RATER (Last, First, MI) | SSN | SIGNATURE | |
|---|---|---|---|
| | | | |
| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | | | DATE |
| | | | |

| c. NAME OF SENIOR RATER (Last, First, MI) | SSN | SIGNATURE | |
|---|---|---|---|
| SIMMONS, MICHAEL A. | | | |
| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | | | DATE |
| LTC, MI, HHD, 902D MI GROUP, FORT MEADE, MD 20755-5910,  GROUP S3 | | | 970415 |

| d. SIGNATURE OF RATED OFFICER | DATE | e. DATE ENTERED ON DA FORM 2-1 | f. RATED OFFICER MMD INITIALS | h. RQ. NO |
|---|---|---|---|---|
| | 970414 | | | |

PART III - DUTY DESCRIPTION (Rater)

| a. PRINCIPAL DUTY TITLE   Operations Officer | b. SSI/MOS   35D |
|---|---|

c. REFER TO PART IIIe, DA FORM 67-8-1

Operations Officer for the 902d Military Intelligence Group.  Assists in planning, development, prioritizing and managing current operations for a Counterintelligence Group comprised of four battalions and 42 detachments throughout CONUS.  Responsible for the Oversight and Group level management of all Red Teams. Coordinates Group operations with INSCOM and other MACOM operations offices.  Coordinates mission execution by task organizing Group assets and monitoring implementation until complete.  Prepares and presents weekly operational updates to the Group Commander and his staff.  Coordinate, oversee and maintain a database of approximately 350 annually.

PART IV - PERFORMANCE EVALUATION - PROFESSIONALISM (Rater)

| a. PROFESSIONAL COMPETENCE   (In items 1 through 14 below, indicate the degree of agreement with the following statements as being descriptive of the rated officer.  Any comment will be reflected in b below.) | | HIGH DEGREE | | LOW DEGREE | | |
|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 |
| 1. Possesses capacity to acquire knowledge/grasp concepts | 8. Displays sound judgement | | | | | 1 |
| 2. Demonstrates appropriate knowledge and expertise in assigned tasks | 9. Seeks self-improvement | | | | | 1 |
| 3. Maintains appropriate level of physical fitness   PASS  9610 | 10. Is adaptable to changing situations | | | | | 1 |
| 4. Motivates, challenges and develops subordinates | 11. Sets and enforces high standards | | | | | 1 |
| 5. Performs under physical and mental stress | 12. Possesses military bearing and appearance   69/172   YES | | | | | 1 |
| 6. Encourages candor and frankness in subordinates | 13. Supports EO/EEO | | | | | 1 |
| 7. Clear and concise in written communication | 14. Clear and concise in oral communication | | | | | 1 |

| b. PROFESSIONAL ETHICS (Comment on any area where the need either is particularly outstanding or needs improvement) | | |
|---|---|---|
| 1. DEDICATION | a.7,14 | Gifted writer and speaker. |
| 2. RESPONSIBILITY | a.5 | Maintains bearing and efficiency despite pressures. |
| 3. LOYALTY | b.1 | Exceptionally dedicated to mission, soldiers, and unit. |
| 4. DISCIPLINE | b.7 | Highly selfless performance of duty. |
| 5. INTEGRITY | | |
| 6. MORAL COURAGE | | |
| 7. SELFLESSNESS | | |

PERIOD COVERED   960701-970415

## PART V - PERFORMANCE AND POTENTIAL EVALUATION (Rater)

a. RATED OFFICER'S NAME   **WEBB, MICHAEL D.**                                    SSN

RATED OFFICER IS ASSIGNED IN ONE OF HIGHER DESIGNATED SPECIAL TASKINGS          ☒ YES   ☐ NO

b. PERFORMANCE DURING THIS RATING PERIOD. REFER TO PART III, DA FORM 67-9 AND PART IV a, b, AND c, DA FORM 67-8-1

| ☒ ALWAYS EXCEEDED REQUIREMENTS | ☐ USUALLY EXCEEDED REQUIREMENTS | ☐ MET REQUIREMENTS | ☐ OFTEN FAILED REQUIREMENTS | ☐ USUALLY FAILED REQUIREMENTS |

c. COMMENT ON SPECIFIC ASPECTS OF THE PERFORMANCE. REFER TO PART III, DA FORM 67-8 AND PART IV a, b, AND c, DA FORM 67-8-1.  DO NOT USE FOR COMMENTS ON POTENTIAL

An absolutely superb young officer. Few better. Committed, tireless, the epitome of the "can do" officer. LT Webb dynamically managed the myriad of complex Group current operations, nearly 450 distinct missions during his tenure, in a position normally held by a Captain. Of note were his diligent efforts to codify and rationalize the Group's new mission focus in support of Army Force XXI developments. He instituted effective computer based planning tools which simplified planning and allowed for outyear projecting of mission requirements and tasking. He ensured effective CI augmentation mission planning for new Group overseas commitments in Bosnia, Honduras, England, Turkey, Qatar, Saudi Arabia, and Korea, plus a dozen joint and major command exercises. LT Webb also developed comprehensive mission plans which integrated new aspects of Information Operations and Defense Industrial Security support to over two dozen major CI surveys, Vulnerability assessments and a Army level year long RED TEAM threat simulation in support of the Advanced Warfighter Experiment. LT Webb also orchestrated the first ever recurring support by Air Force Information Warfare elements for Group's RED TEAMs and major vulnerability assessments. His high energy, enthusiasm, and spirit was signally responsible for motivating a small and junior section of three personnel to high levels of performance and esprit de corps despite near constant personnel turbulence. In all, a great performance.

d. THIS OFFICER'S POTENTIAL FOR PROMOTION TO THE NEXT HIGHER GRADE IS

| ☒ PROMOTE AHEAD OF CONTEMPORARIES | ☐ PROMOTE WITH CONTEMPORARIES | ☐ DO NOT PROMOTE | ☐ OTHER (Explain below) |

e. COMMENT ON POTENTIAL

1LT Webb performs at the O3 level now. Promote him now and use his talents in Company and Detachment command. He is a comer. Manage his career closely and use his great potential for advanced responsibilities and the tough jobs in the Army.

## PART VI - INTERMEDIATE RATER

a. COMMENTS

## PART VII - SENIOR RATER

a. POTENTIAL EVALUATION (See Chapter 4, AR 623-105)

| | |
|---|---|
| ☒ | a.[  4] RO: 1LT |
| | [  0]    WEBB MICHA |
| | [  0] |
| | [  0] SR: O5 |
| | [  0]    SIMMO |
| | [  0] DATE 970422 |
| | [  0] |

b. COMMENTS

Top 2% of all LTs I have rated. Superb officer and unlimited potential. Intelligent. Motivated. Enthusiastic. LT Webb undertook duties usually reserved for captains and consistently performed far beyond the high standards set for those tasks. He built and maintained a database which simplified planning and allowed for outyear projecting of mission requirements and taskings. Mike has already outdistanced his peers and is working at the next higher grade. Promote immediately. Selection for Company command is a must.

# Exhibit C

00207999

| OFFICER EVALUATION REPORT | | SEE PRIVACY ACT STATEMENT |
|---|---|---|
| For use of this form, see AR 623-105; the proponent agency is ODCSPER | | ON DA FORM 67-9-1 |

## PART I - ADMINISTRATIVE DATA

| a. NAME (Last, First, Middle Initial) | | b. RANK | c. DATE OF RANK | d. BRANCH | e. COMPONENT / PMOSC |
|---|---|---|---|---|---|
| WEBB, MICHAEL D. | | CPT | 2002 03 01 | MI | 35D |

| f. UNIT, ORG., STATION, ZIP CODE OR APO, MAJOR COMMAND | | | g. REASON FOR SUBMISSION |
|---|---|---|---|
| Co C 1st Bn 417thRegt 1stBde (BCT) 98thDiv (IT), Pennauken, NJ 08110, W76801 | TPU | 03 | Change of Rater |

| h. PERIOD COVERED | | i. RATED MONTHS | j. NO. OF ENCL | k. RATED OFFICER'S EMAIL ADDRESS (.mil) and For Out | | | | |
|---|---|---|---|---|---|---|---|---|
| FROM | THRU | | | 1. Given to Officer | | | | |
| YEAR MONTH DAY | YEAR MONTH DAY | | | 2. Forwarded to Officer | | | | |
| 2003 11 01 | 2004 05 23 | 7 | 0 | | 20040716 | 356 | 14 | |

## PART II - AUTHENTICATION (Rated officer's signature verifies officer has seen completed OER Parts I-VIII and the admin data is correct)

| a. NAME OF RATER (Last, First, MI) | SSN | RANK | POSITION | SIGNATURE | DATE |
|---|---|---|---|---|---|
| DANIELS, JODY J. | | LTC | Battalion Commander | *Jody Daniels* | 25 May 2004 |

| b. NAME OF INTERMEDIATE RATER (Last, First, MI) | SSN | RANK | POSITION | SIGNATURE | DATE |
|---|---|---|---|---|---|
| CATALANOTTI, ROBERT G. | | COL | Brigade Commander | *Robt G Catti* | 6 Jun 2004 |

| c. NAME OF SENIOR RATER (Last, First, MI) | SSN | RANK | BRANCH | ORGANIZATION | |
|---|---|---|---|---|---|
| | | | AG | | |
| HHC, 1st Brigade, 98thDiv(IT) | | | | | |
| 385 Niagara Street, Providence, RI 02907-2099 | | | | | |

| d. SR RATER TELEPHONE NUMBER | e. SIGNATURE AND DATE COMPLETED SR RATE OFFICER | f. THIS FORM | | g. SIGNATURE OF RATED OFFICER | DATE |
|---|---|---|---|---|---|
| | | Yes, complete as written | No | *signature* | 11 Jul 2004 |

## PART III - DUTY DESCRIPTION

| a. PRINCIPAL DUTY TITLE  Company Commander | b. POSITION AOC/IC 01A00 |
|---|---|

c. SIGNIFICANT DUTIES AND RESPONSIBILITIES (Refer to Part III on rear of form 67-9-1)
Company Commander of a basic combat training company that trains new recruits to survive and defeat an enemy on the battlefield. Responsible for the health, welfare, and professional development of 18 soldiers. Responsible for accountability and maintenance of all assigned equipment. Additional responsibilities include supporting IET for an active component basic training battalion at Fort Leonard Wood, MO and supplying qualified drill sergeants to support other units at Fort Leonard Wood. Conduct support missions with the USMA, Army Reserve, and National Guard units to include CTT, BRM, and other training activities. Upon mobilization, support training base expansion at Fort Leonard Wood, MO to conduct basic training and/or rapid train-up for IRR soldiers.

## PART IV - PERFORMANCE EVALUATION - PROFESSIONALISM (Print)

| CHARACTER (Observation of the leader: combination of values, attributes, and skills affecting behavior) | | |
|---|---|---|

| b. ARMY VALUES (Comments mandatory for all "NO" entries. Use PART Vb.) | Yes | No |
|---|---|---|
| 1. HONOR: Adherence to the Army's publicly declared code of values | X | |
| 2. INTEGRITY: Possesses high personal moral standards; honest in word and deed | X | |
| 3. COURAGE: Manifests physical and moral bravery | X | |
| 4. LOYALTY: bears true faith and allegiance to the U.S. Constitution, the Army, the unit, and the soldier | X | |
| 5. RESPECT: Promotes dignity, consideration, fairness, & EO | X | |
| 6. SELFLESS-SERVICE: Places Army priorities before self | X | |
| 7. DUTY: Fulfills professional, legal, and moral obligations | X | |

b. LEADER ATTRIBUTES / SKILLS / ACTIONS: First, mark "YES" or "NO" for each attribute. Second, choose a total of six that best describe the rated officer. Select one from ATTRIBUTES, two from SKILLS (Competence), and three from ACTIONS (LEADERSHIP). Place an "X" in the appropriate numbered box with optional comments in PART Vb. Comments are mandatory in:

| b.1. ATTRIBUTES (Select 1) | 1. MENTAL Possesses desire, will, initiative, and discipline | X YES | NO | 2. PHYSICAL Maintains appropriate level of physical fitness and military bearing | YES | NO | 3. EMOTIONAL Displays self control, calm under pressure | X YES | NO |
|---|---|---|---|---|---|---|---|---|---|
| b.2. SKILLS (Competence) (Select 2) Skill development is part of self-development; principle is skills | 1. CONCEPTUAL Demonstrates sound judgment, critical/creative thinking, moral reasoning | X YES | NO | 2. INTERPERSONAL Shows skill with people; coaching, teaching, counseling, motivating and empowering | X YES | NO | 3. TECHNICAL Possesses the necessary expertise to accomplish all tasks and functions | X YES | NO |
| | 4. TACTICAL Demonstrates proficiency in required professional knowledge, judgment, and warfighting | X YES | NO | | | | | | |

| b.3. ACTIONS (LEADERSHIP) (Select 3) Major activities leaders perform: influencing, operating, and improving | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| INFLUENCING Method of reaching goals while operating / improving | 1. COMMUNICATING Displays good oral, written, and listening skills for individuals / groups | X YES | NO | 2. DECISION-MAKING Employs sound judgment, logical reasoning and uses resources wisely | X YES | NO | 3. MOTIVATING Inspires, motivates, and guides others toward mission accomplishment | X YES | NO |
| OPERATING Short-term mission accomplishment | 4. PLANNING Develops detailed, executable plans that are feasible, acceptable, and suitable | X YES | NO | 5. EXECUTING Shows tactical proficiency, meets mission standards, and takes care of people/resources | X YES | NO | 6. ASSESSING Uses observation and evaluation tools to facilitate consistent improvement | X YES | NO |
| IMPROVING Long-term improvement in the Army, its people and organizations | 7. DEVELOPING Invests adequate time and effort to develop individual subordinates/as leaders | X YES | NO | 8. BUILDING Spends time and resources improving teams, groups and units; fosters ethical climate | X YES | NO | 9. LEARNING Seeks self improvement and organizational growth; envisioning, adapting and leading change | X YES | NO |

| c. APFT:  PASS | DATE:  APR 2004 | HEIGHT:  70 | WEIGHT: 180 | YES | |
|---|---|---|---|---|---|

| d. JUNIOR OFFICER DEVELOPMENT - MANDATORY YES OR NO ENTRY FOR RATERS OF LTs AND WO1s. WERE DEVELOPMENTAL TASKS RECORDED ON DA FORM 67-9-1a AND QUARTERLY FOLLOW-UP COUNSELINGS CONDUCTED? | | YES | NO | NA |
|---|---|---|---|---|

| DA FORM 67-9, OCT 97 | REPLACES DA FORM 67-8, 1 SEP 79, WHICH IS OBSOLETE, 1 OCT 97 | USAPA V2.01 |
|---|---|---|

AUG 1 1 2004

-28-

NAME WEBB, MICHAEL D.          SSN          PERIOD COVERED 20031101   –   20040523

**PART V - PERFORMANCE AND POTENTIAL EVALUATION (Rater)**

a. EVALUATE THE RATED OFFICER'S PERFORMANCE DURING THE RATING PERIOD AND HIS/HER POTENTIAL FOR PROMOTION

[X] OUTSTANDING PERFORMANCE, MUST PROMOTE   [ ] SATISFACTORY PERFORMANCE, PROMOTE   [ ] UNSATISFACTORY PERFORMANCE, DO NOT PROMOTE   [ ] OTHER (Explain)

b. COMMENT ON SPECIFIC ASPECTS OF THE PERFORMANCE AND POTENTIAL FOR PROMOTION. REFER TO PART IV, DA FORM 67-9 AND PART IV b, AND c DA FORM 67-9-1.

CPT Webb put in a spectacular performance during this rating. His primary focus was the development, preparation, and execution of a multi-battalion 36-hour MOUT FTX. He developed and refined an overall plan that focused on the Basic Combat Training (BCT) skills that drill sergeants must have to train our newest soldiers. He developed an extensive OPORDER that included annexes covering all aspects of the mission including risk assessments. He created briefing materials containing an overview of the entire exercise along with relevant diagrams of the various sites, routes of march, and MOUT assault sectors. CPT Webb led the execution of the FTX, which included a 10K tactical road march with ambushes, perimeter security with an overnight soft probe of the MOUT objective, training and rehearsal on MOUT activities including clearing of rooms, floors, and buildings; approaching a building; and reacting to an ambush while in a convoy. To make the FTX possible, he secured funds and equipment to include paintball weapons and pyrotechnics for realism. He coordinated with Drexel University leadership to have cadets act as OPFOR and then participate in leadership roles. CPT Webb ensured that AAR's were conducted at the conclusion of each activity to gather immediate feedback. CPT Webb also facilitated the execution of a MOBEX that integrated legal and medical support resulting in the generation of numerous mobilization documents, conduct of over 50 dental exams, a variety of required immunizations given, and a significant number of family members receiving ID cards. Laudably, CPT Webb has continued his professional development efforts through the completion of the Public Affairs Officer Qualification Course and the Action Officer Development Course, while also working on the Military Observer Controller Course, and completing his first semester towards receiving an MBA. CPT Webb's future is unlimited. He should be assigned as a Bn Assistant S-3 and then a Bn S-3.

c. IDENTIFY ANY UNIQUE PROFESSIONAL SKILLS OR AREAS OF EXPERTISE OF VALUE TO THE ARMY THAT THIS OFFICER POSSESSES. FOR ARMY COMPETITIVE CATEGORY CPT THROUGH LTC, ALSO INDICATE A POTENTIAL CAREER FIELD FOR FUTURE SERVICE.

Would serve the Army best in OPCF 35

**PART VI - INTERMEDIATE RATER**

**PART VII - SENIOR RATER**

a. EVALUATE THE RATED OFFICER'S PROMOTION POTENTIAL TO THE NEXT HIGHER GRADE

[X] BEST QUALIFIED   [ ] FULLY QUALIFIED   [ ] DO NOT PROMOTE   [ ] OTHER (Explain below)

I currently senior rate   **29**   officer(s) in this grade

A potential DA Form 67-9-1 is received with this report and is used with this officer's report   [X] YES   [ ] NO (Explain in c)

b. POTENTIAL COMPARED WITH OFFICERS SENIOR RATED IN SAME GRADE (OVERPRINTED BY DA)

| CENTER OF MASS |
|---|

RO: CPT WEBB, MICHAEL D.

SR: COL CATALANOTTI ROBERT G

DATE: 2004 06 11

TOTAL RATINGS: 3

RATINGS THIS OFFICER: 1

c. COMMENT ON PERFORMANCE/POTENTIAL

Dedicated, energetic, and professional to the core, CPT Webb's performance was superlative. His preparation for and execution of the MOBEX and FTX were noteworthy, ensuring that all large and small details were covered. His personal coordination efforts directly led to this battalion improving its readiness posture. His interactions with our sister battalion leadership were highly professional and commendable. He has taken efforts to grow his subordinates, which was obvious during the high quality multi-battalion FTX. His incorporation of family into the MOBEX helped strengthen the ties with the Family Readiness Group. CPT Webb has the potential to be an excellent battalion commander.

d. LIST 3 FUTURE ASSIGNMENTS FOR WHICH THIS OFFICER IS BEST SUITED. FOR ARMY COMPETITIVE CATEGORY CPT THROUGH LTC, ALSO INDICATE A POTENTIAL CAREER FIELD FOR FUTURE SERVICE.

Battalion Assiastant S-3, Battalion S-3, Battalion XO
Would serve the Army best in OPCF 35

DA FORM 67-9, OCT 97 (Reverse)          USAPA V2.00

00318601

**OFFICER EVALUATION REPORT**
For use of this form, see AR 623-105; the proponent agency is DCS, G1.

FOR OFFICIAL USE ONLY (FOUO)
Protected by Privacy Act of 1974.

**PART I - ADMINISTRATIVE DATA**

| Name | Rank | Date of Rank | Branch | Component | PMOS |
|---|---|---|---|---|---|
| WEBB, MICHAEL D. | CPT | 2002 03 01 | MI | 05 | 35D |

Unit, Org., Station, Zip Code or APO, Major Command: Co C, 1st Bn 417th Regt 1st Bde (BCT) 98th DIV (IT), Pennsauken, NJ 08110 W76801 TPU — Annual

| Period Covered From | Thru | Rated Months | Non-Rated Codes | No. of Enclosures |
|---|---|---|---|---|
| 2004 05 24 | 2005 05 23 | 12 | 0 | 14 |

20050801

**PART II - AUTHENTICATION**

| Name of Rater | Rank | Position |
|---|---|---|
| MERRILL, DANA M. | LTC | Battalion Commander | 14 Jun 2005 |
| CARPENTER, BRIAN M. | COL | Brigade Commander | 16 Jul 2005 |

HHC 1st Bde (BCT) 98th DIV (IT), 385 Niagara Street, Providence, RI 02907-2099 — 17 Jul 2005

**PART III - DUTY DESCRIPTION**

Principal Duty Title: Company Commander — Position AOC/MOS: 01A00

Company Commander of a basic combat training company that trains new recruits to survive and defeat an enemy on the battlefield; responsible for the health, welfare and professional development of 18 soldiers; responsible for the accountability and maintenance of assigned equipment; additional responsibilities include supporting Initial Entry Training (IET) at Fort Leonard Wood, MO and supplying qualified drill sergeants to support other units at Fort Leonard Wood; conduct support missions with the US Military Academy (USMA), US Army Reserve, and National Guard units to include Warrior Task Training (WTT), Basic Rifle Marksmanship (BRM) and other activities; upon mobilization, support training base expansion at Fort Leonard Wood to conduct basic training and/or rapid train-up for IRR soldiers; plan, coordinate and execute organizational events.

**PART IV - PERFORMANCE EVALUATION - PROFESSIONALISM**

CHARACTER

ARMY VALUES:
1. HONOR — X
2. INTEGRITY — X
3. COURAGE — X
4. LOYALTY — X
5. RESPECT — X
6. SELFLESS-SERVICE — X
7. DUTY — X

LEADER ATTRIBUTES / SKILLS / ACTIONS:

b.1. ATTRIBUTES — MENTAL X, PHYSICAL X, EMOTIONAL
b.2. SKILLS — CONCEPTUAL X, INTERPERSONAL X, TECHNICAL X, TACTICAL X
b.3. ACTIONS — COMMUNICATING X, DECISION MAKING X, MOTIVATING X; PLANNING X, EXECUTING X, ASSESSING X; DEVELOPING X, BUILDING X, LEARNING X

c. APFT: PASS   DATE: NOV 2004   HEIGHT: 70   WEIGHT: 183   YES

d. OFFICER DEVELOPMENT

DA FORM 67-9, DEC 2004

AUG 0 4 2005

NAME **WEBB, MICHAEL D.**   SSN   PERIOD COVERED **20040524** - **20050523**

**PART V - PERFORMANCE AND POTENTIAL EVALUATION (Rater)**

a. EVALUATE THE RATED OFFICER'S PERFORMANCE DURING THE RATING PERIOD AND HIS/HER POTENTIAL FOR PROMOTION

| ☐ OUTSTANDING PERFORMANCE, MUST PROMOTE | ☒ SATISFACTORY PERFORMANCE, PROMOTE | ☐ UNSATISFACTORY PERFORMANCE, DO NOT PROMOTE | ☐ OTHER (Explain) |

b. COMMENT ON SPECIFIC ASPECTS OF THE PERFORMANCE AND POTENTIAL FOR PROMOTION. REFER TO PART III, DA FORM 67-9 AND PART IV a, b, AND c, DA FORM 67-9.

CPT Webb is an excellent officer who continues to do well. During the training year he has planned and conducted a battalion level field training exercise that included range qualification and MOUT training. He has also been responsible for coordinating and executing Warrior Task Training and NBC Training. As the battalion Mobilization Officer, CPT Webb has been an asset to the unit. He volunteered to support the recent unit deployment where he updated the home station activity plan and coordinated with higher headquarters to ensure all relevant tasks. CPT Webb also updated the unit Mobilization Files and received a satisfactory rating from our recent brigade Organizational Inspection. CPT Webb is always looking to improve upon his knowledge. He is enrolled in an MBA program and has recently completed the Combined Arms Exercise. CPT Webb is a fine officer and would do well as a battalion S-1 or Asst battalion S-3.

c. IDENTIFY ANY UNIQUE PROFESSIONAL SKILLS OR AREAS OF EXPERTISE OF VALUE TO THE ARMY THAT THIS OFFICER POSSESSES. FOR ARMY COMPETITIVE CATEGORY OFFICERS ONLY, ALSO INDICATE A POTENTIAL CAREER FIELD FOR FUTURE SERVICE.

Would serve the Army best in OPCF/35

**PART VI - INTERMEDIATE RATER**

**PART VII - SENIOR RATER**

a. EVALUATE THE RATED OFFICER'S PROMOTION POTENTIAL TO THE NEXT HIGHER GRADE

| ☒ BEST QUALIFIED | ☐ FULLY QUALIFIED | ☐ DO NOT PROMOTE | ☐ OTHER (Explain Below) | I currently senior rate 12 officers in this grade. A completed DA Form 67-9-1 was received with this support and considered in my evaluation and rating. ☒ YES ☐ NO (Explain) |

b. POTENTIAL COMPARED WITH OFFICERS SENIOR RATED IN SAME GRADE (OVERPRINTED BY DA)

USAR COMPARISON OF THE SENIOR RATER'S PROFILE AND BOX CHECK AT THE TIME THIS REPORT PROCESSED

NO BOX CHECK

RO: CPT WEBB MICHAEL D

SR. COL CARPENTER BRIAN M

DATE: 0

TOTAL RATINGS: 0

RATINGS THIS OFFICER: 0

c. COMMENT ON PERFORMANCE/POTENTIAL

CPT Webb continues his record of solid performance. He meticulously planned and executed three battalion level training events. CPT Webb also is the go-to guy for mobilization assistance for his battalion. He excelled at supporting all battalion soldiers during their deployment for Operation Iraqi Freedom. CPT Webb possesses the mental awareness and dedication to duty of a more senior officer. He would do well as an Assistant Battalion S-3.

d. LIST 3 FUTURE ASSIGNMENTS FOR WHICH THIS OFFICER IS BEST SUITED. FOR ARMY COMPETITIVE CATEGORY OFFICERS ONLY, ALSO INDICATE A POTENTIAL CAREER FIELD FOR FUTURE SERVICE.

Assistant Battalion S-3, Battalion S-1, Battalion S-4
Would serve the Army best in OPCF/35

DA FORM 67-9, DEC 2004 (Reverse)

00365438

## OFFICER EVALUATION REPORT
For use of this form, see AR 623-105; the proponent agency is DCS, G-1.

FOR OFFICIAL USE ONLY (FOUO)
Protected by Privacy Act of 1974.

### PART I - ADMINISTRATIVE DATA

| a. NAME (Last, First, Middle Initial) | b. SSN | c. RANK | d. DATE OF RANK | e. BRANCH | f. REASON FOR SUBMISSION |
|---|---|---|---|---|---|
| WEBB, MICHAEL D. | | CPT | 2002 03 01 | 04 MI | 35D |

g. UNIT, ORG., STATION, ZIP CODE OR APO, MAJOR COMMAND
Co C 1st Bn 417th Regt 1st Bde(BCT) 98th Div(IT), Pennsauken, NJ 08110, W76801 TPU

| h. PERIOD COVERED | | | | | | i. RATED MONTHS | j. NON-RATED CODES | k. NO. OF ENCL | | PCS | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| From Year | Month | Day | Thru Year | Month | Day | | | | | | |
| 2005 | 05 | 24 | 2006 | 03 | 12 | 10 | | 0 | | | |

l. RATED OFFICER COPY
1. Given to Officer
X 2. Forwarded to Officer      20060616      14

### PART II - AUTHENTICATION (Rated officer's signature verifies officer has seen completed OER Parts I-IV and the admin data is correct)

| a. NAME OF RATER (Last, First, MI) | SSN | RANK | POSITION | SIGNATURE | DATE |
|---|---|---|---|---|---|
| MERRILL, DANA M. | | LTC | Battalion Commander | | 6 May 2006 |
| b. NAME OF INTERMEDIATE RATER (Last, First, MI) | SSN | RANK | POSITION | SIGNATURE | DATE |
| | | | | | |
| c. NAME OF SENIOR RATER (Last, First, MI) | SSN | RANK | POSITION | SIGNATURE | DATE |
| DENISEWICH, RAYMOND | | COL | Brigade Commander | | 16 May 2006 |

e. SENIOR RATER'S ORGANIZATION
HHC 1st Bde (BCT) 98th Div (IT)
385 Niagra Street, Providence, RI 02907-2009

BRANCH IN

SENIOR RATER TELEPHONE NUMBER

f. SIGNATURE OF RATED OFFICER   Michael D Webb   26 May 2006

### PART III - DUTY DESCRIPTION

a. PRINCIPAL DUTY TITLE   Company Commander

b. POSITION AAOC   01A0O

c. SIGNIFICANT DUTIES AND RESPONSIBILITIES (Indicate branch or functional area of Duty)
Company Commander of a Basic Combat Training Company that trains new recruits to survive and defeat an enemy on the battlefield. Responsible for the health, welfare, and professional development of 18 soldiers. Responsible for the accountability and maintenance of assigned equipment. Responsibilities include supporting Initial Entry Training (IET) at Fort Leonard Wood, conducting support missions with the US Military Academy (USMA), US Army Reserve, Civil Affairs Units and National Guard units to include Warrior Task Training (WTT), Common Task Training(CTT), Basic Rifle Marksmanship (BRM) and other activities. Upon mobilization, support training base expansion at Fort Leonard Wood, MO to conduct basic combat training and/or rapid train-up for IRR soldiers. Plan, coordinate, and organize events.

### PART IV - PERFORMANCE EVALUATION - PROFESSIONALISM (Rater)

a. CHARACTER Disposition of the leader; combination of values, attributes, and skills affecting leader actions

| ARMY VALUES (Comments mandatory for an "NO" entries, Use PART Vb.) | Yes | No | | | Yes | No |
|---|---|---|---|---|---|---|
| 1. HONOR: Adherence to the Army's publicly declared code of values | X | | 5. RESPECT: Promotes dignity, consideration, fairness, & EO | X | |
| 2. INTEGRITY: Possesses high personal moral standards, honest in word and | X | | 6. SELFLESS-SERVICE: Places Army priorities before self | X | |
| 3. COURAGE: Manifests physical and moral bravery | X | | 7. DUTY: Fulfills professional, legal and moral obligations | X | |

4. LOYALTY: Bears true faith and allegiance to the U.S. Constitution, the Army, the unit, and the soldier

b. LEADER ATTRIBUTES / SKILLS / ACTIONS: First, mark "YES" or "NO" for each block. Second, choose a total of six that best describe the rated officer. Select one from ATTRIBUTES, two from SKILLS (Competence), and three from ACTIONS (LEADERSHIP). Place an "X" in the appropriate numbered box in applicable component in PART Vb. Comments are mandatory in Part Vb for all "No" entries.

| b.1. ATTRIBUTES (Select 1) | | | | | | | |
|---|---|---|---|---|---|---|---|
| X Fundamental qualities and characteristics | 1. MENTAL Possesses desire, will, initiative, and discipline | X YES NO | 2. PHYSICAL Maintains appropriate level of physical fitness and military bearing | X YES NO | 3. EMOTIONAL Displays self control, calm under pressure | X YES NO |
| b.2. SKILLS (Competence) (Select 2) | 1. CONCEPTUAL Demonstrates sound judgment, critical/creative thinking, moral reasoning | X YES NO | 2. INTERPERSONAL Shows skill with people; coaching, teaching, counseling, motivating and empowering | X YES NO | 3. TECHNICAL Possesses the necessary expertise to accomplish all tasks and functions | X YES NO |
| Skill proficiency in a plan for skill development; essential to action | 4. TACTICAL Demonstrates proficiency in required professional knowledge, judgment, and warfighting | X YES NO | | | | |
| b.3. ACTIONS (LEADERSHIP) (Select 3) Major activities leaders perform: influencing, operating, and improving | 1. INFLUENCING | | | | |
| | COMMUNICATING Displays good oral, written, and listening skills for individuals/groups | X YES NO | DECISION-MAKING Employs sound judgment, logical reasoning and uses resources wisely | X YES NO | MOTIVATING Inspires, motivates, and guides others toward mission accomplishment | X YES NO |
| OPERATING Short-term mission accomplishment | PLANNING Develops detailed, executable plans that are feasible, acceptable, and suitable | X YES NO | EXECUTING Shows tactical proficiency, meets mission standards, and takes care of people/resources | X YES NO | ASSESSING Uses after-action and evaluation tools to facilitate consistent improvement | X YES NO |
| IMPROVING Long-term improvement in the Army, its people and organizations | DEVELOPING Invests adequate time and effort to develop individual subordinates as leaders | X YES NO | BUILDING Spends time and resources improving teams, groups and units; fosters ethical climate | X YES NO | LEARNING Seeks self-improvement and organizational growth; envisioning, adapting and leading | X YES NO |

c. APFT: PASS   DATE: JUN 2005   HEIGHT: 69   WEIGHT: 194   YES

d. OFFICER DEVELOPMENT - MANDATORY YES OR NO ENTRY FOR RATERS OF CPTs, LTs, CW2s, AND WO1s
PERFORMANCE/DEVELOPMENTAL TASKS RECORDED ON DA FORM 67-9-1a AND QUARTERLY FOLLOW-UP COUNSELINGS CONDUCTED?    YES   NO X

DA FORM 67-9, DEC 2004   REPLACES DA FORM 67-9, OCT 97, WHICH IS OBSOLETE.   APD V1.03

| NAME WEBB, MICHAEL D. | | SSN | | PERIOD COVERED 20050524 – 20060312 | |

**PART V - PERFORMANCE AND POTENTIAL EVALUATION (Rater)**

a. EVALUATE THE RATED OFFICER'S PERFORMANCE DURING THE RATING PERIOD AND HIS/HER POTENTIAL FOR PROMOTION

[X] OUTSTANDING PERFORMANCE, MUST PROMOTE   [ ] SATISFACTORY PERFORMANCE, PROMOTE   [ ] UNSATISFACTORY PERFORMANCE, DO NOT PROMOTE   [ ] OTHER (Explain)

b. COMMENT ON SPECIFIC ASPECTS OF THE PERFORMANCE AND POTENTIAL FOR PROMOTION. REFER TO PART III, DA FORM 67-9 AND PART IIIa, b, AND c, DA FORM 67-9-1.

CPT Webb continues to exceed the standard. In support of the United States Military Academy, he planned, coordinated, and executed Night Fire Ranges for USMA cadets, while managing taskforce soldiers from 4 different units. Always seeking to develop new ways to conduct training, he forged partnerships with Rutgers University-Camden and Haddonfield High school and executed the first ever battalion level training for Combatives. As an experienced battalion level planner he had done all the ground work for the battalion Field Training Exercise. The Field Training Exercise focused on Weapons Qualification for 4 Army Reserve Units, Warrior Task Training, Convoy Operations, Improvised Explosive Device-Defeat, and Forward Operating Base tactics, techniques, and procedures. He also coordinated the use of the Forward Operating Base on Fort Dix and the Fort Dix Central Issue Facility to support the FTX operations. During this rating period CPT Webb has picked up the additional duties of Safety Officer and IED-D Trainer for the battalion. He aggressively tracked down the appropriate training and achieved the qualifications needed to perform these functions. CPT Webb has also acted as the Executive Officer for the battalion and conducted Staff visits to Fort Leonard Wood to evaluate the performance of this battalion's Drill Sergeants. He has also managed to increase his company strength from 64 to 77%.

CPT Webb is an excellent officer and would do well as a Battalion Assistant S-3 or Battalion S-4. Promote to Major.

c. IDENTIFY ANY UNIQUE PROFESSIONAL SKILLS OR AREAS OF EXPERTISE OF VALUE TO THE ARMY THAT THIS OFFICER POSSESSES. FOR ARMY COMPETITIVE CATEGORY CPT THROUGH LTC, ALSO INDICATE A POTENTIAL CAREER FIELD FOR FUTURE SERVICE.

Would serve the Army best in OPCF 35.

**PART VI - INTERMEDIATE RATER**

**PART VII - SENIOR RATER**

a. EVALUATE THE RATED OFFICER'S PROMOTION POTENTIAL TO THE NEXT HIGHER GRADE

[X] BEST QUALIFIED   [ ] FULLY QUALIFIED   [ ] DO NOT PROMOTE   [ ] OTHER (Explain below)

I currently senior _____ 17 _____ officers in this grade

a. compared to Form 67-9 I was rated with this rated officer and compared to my evaluation and the like   [X] YES   [ ] NO (Explain)

b. POTENTIAL COMPARED WITH OFFICERS SENIOR RATED IN SAME GRADE (OVERPRINTED BY AN USAR COMPARISON OF THE SENIOR RATER'S PROFILE AND BOX CHECK AT THE TIME THIS REPORT PROCESSED)

NO BOX CHECK

RO: CPT WEBB MICHAEL D

SR: COL DENISEWICH RAYMOND

DATE: 2006 07 18

TOTAL RATINGS:

RATINGS THIS OFFICER:

c. COMMENT ON PERFORMANCE/POTENTIAL

CPT Webb has done an outstanding job this rating period. He continues to meticulously plan and execute battalion/taskforce level training events. He excelled at supporting USMA cadets during their Night Fire Ranges and forged soldiers from four different units into a cohesive team. CPT Webb continuously seeks to improve his abilities. He became the IED-D trainer for his battalion and has begun to weave the training into the battalion's training schedule. CPT Webb demonstrates a maturity and dedication to duty of a more senior officer. He would do well as an Assistant Battalion S-3. Promote to Major with his peers.

d. LIST 3 FUTURE ASSIGNMENTS FOR WHICH THIS OFFICER IS BEST SUITED. FOR ARMY COMPETITIVE CATEGORY CPT THROUGH LTC, ALSO INDICATE A POTENTIAL CAREER FIELD FOR FUTURE SERVICE.

Battalion Assistant S-3, Battalion S-4, Battalion S-3
Would serve the Army best in OPCF 35

DA FORM 67-9, DEC 2004 (Reverse)   APD V1.00

-33-

## Exhibit D

00185433

**OFFICER EVALUATION REPORT**
For use of this form, see AR 623-105; the proponent agency is DCSPER

SEE PRIVACY ACT STATEMENT
ON DA FORM 67-9-1

### PART I - ADMINISTRATIVE DATA

| a. NAME (Last, First, Middle Initial) | b. SSN | c. RANK | d. DATE OF RANK | e. BRANCH | f. SPECIALTY/ branch mil |
|---|---|---|---|---|---|
| WEBB, MICHAEL. D. | | CPT | 2002 03 01 | MI | 35D |

| g. UNIT, ORG., STATION, ZIP CODE OR APO, MAJOR COMMAND | h. REASON FOR SUBMISSION |
|---|---|
| 1st Bn, 417th Regt, 1st Bde, 98th Div (IT), Pennsauken, NJ 08110 (W768AA) (TPU) | 04   Change of Duty |

| i. PERIOD COVERED | | | j. RATED MONTHS | k. NONRATED CODES | l. NO. OF ENCL | m. RATED OFFICER COPY (Enter one and date) | | n. THR INITIAL | o. CMD CODE | p. PSB CODE |
|---|---|---|---|---|---|---|---|---|---|---|
| FROM Year 2001 Mo 11 Day 04 | THRU Year 2002 Mo 10 Day 31 | | 12 | | 0 | 1. Given to officer | | | | |
| | | | | | | X 2. Forwarded to Officer | 20030211 | BJ6 | 14 |

### PART II - AUTHENTICATION (Rated officer's signature verifies officer has seen completed OER Parts I-VII and the admin data is correct)

| a. NAME OF RATER (Last, First, MI) | SSN | RANK | POSITION | SIGNATURE | DATE |
|---|---|---|---|---|---|
| HERWEHE, Kenneth J. | | MAJ | Executive Officer | *signature* | 8 Dec 2002 |

| b. NAME OF INTERMEDIATE RATER (Last, First, MI) | SSN | RANK | POSITION | SIGNATURE | DATE |
|---|---|---|---|---|---|
| DANIELS, Jody J. | | LTC | Commander | *signature* | 5 Jan 2003 |

| c. SENIOR RATER'S ORGANIZATION | BRANCH | SENIOR RATER TELEPHONE NUMBER | SIGNATURE | DATE |
|---|---|---|---|---|
| HHD, 1st Bn, 417th Regt, 1st BDE, 98th Div (IT) 3911 Federal Street, Pennsauken, NJ 08110 | MI | | *signature* | 5 JAN 2003 |
| d. SIGNATURE OF RATED OFFICER ☐ I do not wish signature ☐ Yes, signature as attached | | | | |

### PART III - DUTY DESCRIPTION

a. PRINCIPAL DUTY TITLE: Personnel Officer S-1     b. POSITION AOC/LIC: 01A00

c. SIGNIFICANT DUTIES AND RESPONSIBILITIES, REFER TO PART IIb, DA FORM 67-9-1
Personnel Officer for an Initial Entry Training (IET) Battalion consisting of an HHD and five line companies. Advises and assists the Commander in all matters relating to personnel actions.  Provide leadership to personnel section to ensure soldiers are trained and ready to perform assigned duties to meet unit mission requirements. Additional duties include: Mobilization officer; Weight control Officer; Information Manager; Reenlistment Officer; Public Affairs Officer; Records Management Officer; Telecommunications Control Officer; Mobilization Purchasing Authority; Information system Officer; OER/NCOER control Officer; DEERS Enrollment Verifying Officer.

### PART IV - PERFORMANCE EVALUATION - PROFESSIONALISM (Rater)

CHARACTER  Disposition of the leader; combination of values, attributes, and skills affecting leader actions

| a. ARMY VALUES (Comments mandatory for "NO" entries. Use PART Vb.) | Yes | No | | Yes | No |
|---|---|---|---|---|---|
| 1. HONOR: Adherence to the Army's publicly declared code of values | X | | 5. RESPECT: Promotes dignity, consideration, fairness, & EO | X | |
| 2. INTEGRITY: Possesses high personal moral standards; honest in word and deed | X | | 6. SELFLESS-SERVICE: Places Army priorities before self | X | |
| 3. COURAGE: Manifests physical and moral bravery | X | | 7. DUTY: Fulfills professional, legal, and moral obligations | X | |
| 4. LOYALTY: Bears true faith and allegiance to the U.S. Constitution, the Army, the unit, and the soldier | X | | | | |

b. LEADER ATTRIBUTES / SKILLS / ACTIONS: First, mark "YES" or "NO" for each block. Second, choose a total of six that best describe the rated officer. Select one from ATTRIBUTES, two from SKILLS (Competence), and three from ACTIONS (LEADERSHIP). Place an "X" in the appropriate numbered box with optional comments in PART Vb.  Comments are mandatory in Part Vb for all "No" entries.

| b.1. ATTRIBUTES (Select 1) | 1. MENTAL | YES NO | | X PHYSICAL | YES NO | | 3. EMOTIONAL | YES NO |
|---|---|---|---|---|---|---|---|---|
| Fundamental qualities and characteristics | | Possesses desire, will, initiative, and discipline | | Maintains appropriate level of physical fitness and military bearing | | | Displays self-control, calm under pressure | |

| b.2. SKILLS (Competence) | X CONCEPTUAL | YES NO | | 2. INTERPERSONAL | YES NO | | 3. TECHNICAL | YES NO |
|---|---|---|---|---|---|---|---|---|
| (Select 2) Skill development is part of self-development; prerequisite to action | | Demonstrates sound judgment, critical/creative thinking, moral reasoning | | Shows skill with people; coaching, teaching, counseling, motivating and empowering | | | Possesses the necessary expertise to accomplish all tasks and functions | |
| | 4. TACTICAL | YES NO | | | | | | |
| | Demonstrates proficiency in required professional knowledge, judgment, and warfighting | | | | | | | |

| b.3. ACTIONS (LEADERSHIP) | 1. COMMUNICATING | YES NO | | 2. DECISION-MAKING | YES NO | | 3. MOTIVATING | YES NO |
|---|---|---|---|---|---|---|---|---|
| INFLUENCING Method of reaching goals while operating / improving | | Displays good oral, written, and listening skills for individuals / groups | | Employs sound judgment, logical reasoning, and uses resources wisely | | | Inspires, motivates, and guides others toward mission accomplishment | |
| OPERATING Short-term mission accomplishment | 4. PLANNING | YES NO | | X EXECUTING | YES NO | | 6. ASSESSING | YES NO |
| | Develops detailed, executable plans that are feasible, acceptable, and suitable | | Shows tactical proficiency, meets mission standards, and takes care of people/resources | | | Uses after-action and evaluation tools to facilitate consistent improvement | |
| IMPROVING Long-term improvement in the Army; its people and organizations | 7. DEVELOPING | YES NO | | 8. BUILDING | YES NO | | X LEARNING | YES NO |
| | Invests adequate time and effort to develop individual subordinates as leaders | | Spends time and resources improving teams, groups and units; fosters ethical climate | | | Seeks self improvement and organizational growth; envisioning, adapting and leading change | |

| e. APFT: PASS | DATE: OCT 2002 | HEIGHT: 70 | WEIGHT: 179 | YES | |
| f. JUNIOR OFFICER DEVELOPMENT - MANDATORY YES OR NO ENTRY FOR RATERS OF LTs AND WO1s. WERE DEVELOPMENTAL TASKS RECORDED ON DA FORM 67-9-1a AND QUARTERLY FOLLOW-UP COUNSELINGS CONDUCTED? | | | | YES NO | X |

DA FORM 67-9, OCT 97          REPLACES DA FORM 67-8, 1 SEP 79, WHICH IS OBSOLETE, 1 OCT 97          USAPA V2.00

FEB 19 2003

-34-

## Exhibit E



*955 S Columbus Street, #426*
*Arlington, Virginia 22204*
*(802) 468-7589*
*GiveFaithATry@gmail.com*

March 23, 2020

Dionne Hardy
White House FOIA Officer
The White House
725 17th Street NW, Suite 9204
Washington, DC 20503

Dennis C. Barghaan, Jr.
U.S. Attorney
Eastern District of Virginia
Alexandria Division
2100 Jamieson Avenue
Alexandria, VA 22314

### RE: Request for Information Regarding Classification of a Novel Coronavirus

Dear Ms. Hardy:

Pursuant to the *Freedom of Information Act*, 5 U.S.C. § 552, we are presenting this request for release of documents pertaining to the classification of COVID-19, an infectious pathogen, for which, that, 607,234, 476,123 laboratory confirmed, 25,948 hospitalizations, 24,631 laboratory confirmed, and 10,137 fatalities, 8,497 laboratory confirmed in the Commonwealth of Virginia, CITE, where the nation's only physician serving as a state governor, CITE, has evaded the Sheriff for the City of Alexandria since April 2, 2020, *Webb v. Northam, et al.*, Case Number CL20001624 (Alexandria Cir. 2020), in contempt of court, Va. Code § 18.2-456(B); Va. Code § 16.1-264, and has evaded the United States Marshal since June 2, 2020. *Webb v. Northam*, Civil Action No. 3:20CV497 (E.D.Va. 2020), *on appeal Webb v. Northam, et al.*, Record Number 20-1968 (Fourth Cir. 2020), in violation of 18 U.S.C. § 1512(b)(2)(C), with impunity.

### Statement of the Facts

According to national public health authorities, "COVID-19 spreads mainly from person to person through respiratory droplets", and they claim that "Studies show that masks reduce the spray of droplets when worn over the nose and mouth." Staff, "Guidance for Wearing Masks," *CDC*, February 18, 2021, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cloth-face-cover-guidance.html (accessed March 23, 2021). Moreover, as you may, or may not, be aware, "[i]n a statement, AstraZeneca said its COVID-19 vaccine had a 79% efficacy rate at preventing symptomatic COVID and was 100% effective in stopping severe disease and hospitalization." Maria Cheng & Lauran Neergaard, "AstraZeneca: US data shows vaccine effective for all ages," *ABC* News, March 22, 2021. *But see* James Crump, "Three fully vaccinated Hawaii residents test positive for Covid," *Independent*, March 22, 2021. Further, "[t]here was a comparable response between the 100-µg and 250-µg dose groups, and both were greater compared

-1-

**Exhibit F**

19:06 ⬈                                         ▪▫▏5Gᴇ ⌁▭

‹ Inbox          **16 Messages**          ⌄  ⌄

**MBX OMB FOIA**
**To:** Mike.Webb84@gmai... ›
3/23/21                                            📎

# RE: [EXTERNAL] FOIA Request Re: Infectious Dose and Secondary Attack Rate

Greetings:  This email acknowledges receipt of your Freedom of Information Act (FOIA) request to the Office of Management and Budget (OMB) dated and received in this office on March 23, 2021.  Your appeal has been logged in and is being processed. For your

         

19:06 ◀                                          ·ıl 5Gᴇ 🔋

16 Messages
❮ Inbox **FOIA Request Re: Inf...** ⋀ ⋁

processed.  For your
reference, the OMB FOIA
number is 21-220.

Thank you,
Dionne Hardy

**From:** Michael Webb
<mike.webb84@gmail.com>
**Sent:** Tuesday, March 23,
2021 4:32 PM
**To:** MBX OMB FOIA
<MBX.OMB.FOIA@OMB.eo
p.gov>; Dennis Barghaan
<dennis.barghaan@usdoj.go
v>
**Cc:** Scott McCaffrey
<smccaffrey@sungazette.net
>; Patricia Sullivan
<Patricia.Sullivan@washpost
.com>; John Gizzi
<iohng@newsmax.com>;

      

**Exhibit G**

 **The Republic Can**                    00:18
To: otp.informationde... & 15 more >

# Formal Complaint Under Article 15 of the Rome Statute Regarding a Novel Coronavirus

Lenten Greetings!

I have many distinctions, particularly of late, to include being named the number two internet fail politician in the world, according to Rolling Stone and Nigeria Today (deleted), sandwiched between two former Members of British Parliament, and, I have yet to hold an elective office.  Such is public life, but, in a former life, I had been a special operations soldier, assigned to the elite 75th Ranger Regiment, and the former Operations Officer for all U.S. Army strategic counterintelligence, and, suffice it to say that a novel coronavirus was not necessarily entirely novel to me, generally, within the context of particular aspects that suggested that it was not an



FROM:
Fauci Virus Litigation
955 S Columbus St
#426
Arlington VA
22204

TO:
Clerk
US Dist Court
Northern District
Fort Worth, TX
501 West 10th St
Rm 310
Fort Worth TX 76102-

PRIORITY MAIL 2-DAY®

PRIORITY® MAIL

USPS CERTIFIED MAIL®

9502 8067 1618 2118 6788 37

TRACKED ■ INSURED

PS00001000014