UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **U.S. NAVY SEALs 1-3;** on behalf of themselves and all others similarly situated; **U.S. NAVY EXPLOSIVE ORDNANCE DISPOSAL TECHNICIAN 1**, on behalf of himself and all others similarly situated; U.S. **NAVY SEALS 4-26**; **U.S. NAVY SPECIAL WARFARE COMBATANT CRAFT CREWMEN 1-5**; and **U.S. NAVY DIVERS 1-3**,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>**LLOYD J. AUSTIN, III**, in his official capacity as United States Secretary of Defense; **UNITED STATES DEPARTMENT OF DEFENSE**; **CARLOS DEL TORO**, in his official capacity as United States Secretary of the Navy,<br><br>　　　　　　　Defendants. | Case No. 4:21-cv-01236-O |

**PLAINTIFFS' RESPONSE RE: DEFENDANTS' COMPLIANCE
WITH PRELIMINARY INJUNCTION**

Plaintiffs' counsel is aware of the issues raised by the letters the Court received and were in the process of preparing the below motion and attached evidence to address those issues and others when the letters were docketed. As explained below, and as the Court pointed out in its order on May 31, 2022, Plaintiffs' position is that the injunction order is clear in that it expressly permits servicemembers to voluntarily choose to separate from the Navy. Dkt. 164. The Navy's choice to interpret the Court's order in a hypertechnical fashion despite the effects it would have on servicemembers and their families is just another example of the Navy's continuing vindictive and punitive actions against servicemembers who requested accommodation of their sincerely held

1

religious beliefs. Rather than approach Plaintiffs' counsel or the Court for clarification if it felt there was a genuine issue, the Navy decided to further retaliate against servicemembers the Navy drove out with its sham accommodation process and is trying to blame the injunction for their misdeeds in the process.

Plaintiffs respectfully request a hearing to discuss the Defendants' compliance with the classwide preliminary injunction entered on March 28, 2022. Dkt. 140. That order is stayed "insofar as it precludes the Navy from considering [the Plaintiffs'] vaccination status in making deployment, assignment, and other operational decisions." Dkt. 140 at 27. Since entry of that order, Plaintiffs' counsel is aware of the following instances that violate the preliminary injunction order, including the issues with separation, and which are not "deployment, assignment, or operational decisions":

1. **Voluntary separation**

In the Order Granting Class Certification, the Court specifically addresses servicemembers that do not wish to be part of the class and "may prefer to litigate independently or avoid legal action altogether" by stating that "if . . . such servicemembers exist, they may choose to get vaccinated, withdraw their religious accommodation requests, voluntarily separate, or proceed with retirement plans." Dkt. 140 at 15; *see also* Dkt. 164. Many sailors had begun the separation process, some even voluntarily acquiescing in what the Navy terms "involuntary separation," in the interest of getting on with their lives. *See, e.g.,* App.0010-0056. Despite the Court's clear admonition, the Navy has been telling servicemembers wishing to separate that this Court's injunction prevents them from doing so because they are part of the class. App.0008. The Navy is falsely telling sailors that "Service Members within the class definition are stuck there" and that the only way they will be able to continue with the separation process already started is if this Court modifies its

injunction. *Id.* The Navy told servicemembers that they could not withdraw their religious accommodation requests to get out of the class. App.0008, 0013, 0026, 0036. Thus, even members who have attempted to *withdraw* their religious accommodation requests—and thus should unquestionably no longer be part of the class—and submitted separation paperwork are now facing indefinite delay or inability to separate, in violation of this Court's order. App.0008, 0013, 0026, 0036. Regardless, the Navy is blaming the Court's order and sending servicemembers with this issue to Plaintiffs' counsel for the apparent purpose of building some type of record to support modification of the injunction. App.0008. The Navy also states that DOJ may jointly petition the Court with Plaintiffs' counsel to modify the Court's order, despite never having discussed this issue with Plaintiffs' counsel. App.0008.

After receiving several contacts out of the blue from frustrated service members, some of whom had already sold their homes and relocated their families in anticipation of impending separation, Plaintiffs' counsel received a copy of the SJA Newsletter. App.0007-0009. Plaintiffs' counsel confronted DOJ on the telephone on May 2, 2022, and DOJ claimed they had not seen the SJA Newsletter. Regardless, this conversation made clear that the parties had different understandings of what constitutes "voluntary" separation, with the Navy insistent on applying its own definition rather than the plain language of the Court's order, to the detriment of the servicemembers involved.

During subsequent conversations with Defendants' counsel to try to resolve the issue, DOJ indicated that, contrary to the SJA Newsletter, the Navy would now agree to allow servicemembers to withdraw their religious accommodation requests and choose to involuntarily separate. Defs. App.0019. But DOJ would not confirm that this change in policy would be announced, nor would Defendants agree to allow servicemembers to choose separation unless they also withdrew their

3

religious accommodation requests. Defs. App.0017-0019. On May 27, Plaintiffs' counsel directly brought to DOJ's attention the names of some class members suffering particularly imminent harm, including two of the servicemembers who sent letters directly to the Court, and on May 31, DOJ stated they would "check on" these situations, but to date, Plaintiffs' counsel have received no further response as to what is being done to rectify those situations. Defs. App.0015-0018. Meanwhile, servicemembers are suffering—separated from their families, losing civilian jobs, and stuck living in squalor in Navy facilities. App.0010-0056.

2. **Prohibition on Travel**

Meanwhile, in contrast to the Navy's overly strict (and unjustified) adherence to what it claims are the terms of the Court's order, the Navy continues to flout the Court's order by nonsensically refusing to allow unvaccinated class members to travel to conduct training exercises and train others, even when their expertise is needed and the servicemembers involved will be exposed to numerous other unvaccinated individuals. Navy Servicemembers and Reservists with pending religious accommodations are prohibited from domestic and international travel for official business unless it is deemed mission critical by the Secretary of the Navy, even when they are flying on a commercial airline and staying in civilian hotels with numerous unvaccinated individuals, and even if they are only traveling by car one hour away. The Navy has restricted unvaccinated personnel from traveling with limited exceptions, stating without explanation that "[m]inimizing the travel of unvaccinated individuals remains paramount." App.0004. This makes no sense given that all travel restrictions in the United States have been lifted, passengers are not required to mask on airplanes anymore, and airlines themselves have lifted any vaccination

mandates and restored unvaccinated employees to the workforce because of a lack of justification.[1] And it is clearly not the training itself that the Navy does not unvaccinated servicemembers to take part in, as the evidence shows that class members are engaging in the same or similar activities already. *See* App.0058-0077. It is just the *travel* that seems to be the issue, which defies reason.

The Supreme Court's partial stay allows the Navy to "consider[] vaccination status in making deployment, assignment, and other operational decisions." *Austin v. U.S. Navy SEALs 1-26*, 142 S. Ct. 1301 (2022). Those terms were left undefined by the Supreme Court. *See id.* Admiral Lescher, whose declaration featured prominently in the Solicitor General's stay briefing, states that "cancellation of government travel for training or other official purposes" is an "*administrative* action." Dkt. 87 at 12 (emphasis added). Thus, it is prohibited by the preliminary injunction. Elsewhere, the Department of Defense calls training part of the Navy's "administrative" command.[2] Nevertheless, the Navy continues to insist that it may irrationally bar all travel for class members under the injunction. But the Supreme Court's order is not a blank check for the Navy to resume its retaliation against class members except for kicking them out or court-martialing them. "[C]*onsidering* vaccination status" in making certain decisions does not mean using vaccination status as a blanket justification with no connection to any rational need as a proxy for retaliation. 142 S. Ct. at 1301 (emphasis added). Nor can the Navy now shoehorn decisions into the vague language it suggested to the Supreme Court when it previously defined those decisions as

---

[1] "Due to substantial changes in the scope and severity of the pandemic as well as the guidance of public-health authorities, United has announced that all employees who were placed on temporary unpaid leave as an accommodation will be returned to their previous jobs." Motion to Vacate Panel Opinion and Dismiss Appeal as Moot 1, *Sambrano v. United Airlines*, No. 21-11159 (5th Cir. Mar. 10, 2022). "This change in policy is the result of materially reduced rates of COVID-19 incidence, high levels of vaccination, and the reduced severity of the Omicron variant (which is much less likely to result in hospitalization or death than earlier variants)." *Id*. at 3.

[2] *See* U.S. Dep't of Defense, "Military Units: Navy," https://www.defense.gov/Multimedia/Experience/Military-Units/Navy/.

something entirely different. Moreover, as the evidence shows, even high-ranking officers in Navy commands do not know what is meant by "operational," and no one higher up the chain of command has provided any definition. App.0071. But if a definition is needed, this Court has jurisdiction over the injunction and the authority to provide it. *See* Fed. R. Civ. P. 62(d). The Supreme Court's order did not constrain the Court's authority in this respect.

Again, the safety of the training itself is obviously not a concern because these class members are still training people at their home commands. *See* App.0058-0077. And preventing trained, experienced instructors from participating has demonstrably undermined safety. In one case, the Navy denied permission for an experienced instructor to travel despite his unit's desire for him to attend. App.0060-0062. The Navy, however, allowed an *unvaccinated*, unqualified contractor to participate in training in his place. App.0061. That instructor was injured as a result. App.0062. Another SEAL, a trained medic and paramedic, was denied permission to travel one hour away by car to instruct at a training involving live fire, despite there being a civilian contractor at the facility who is unvaccinated. App.0069-0070. Another SEAL acted as lead instructor for a training block for an entire week yet was denied permission to travel at the last minute to lead training in another location for the same people. App.0073-0074. SEAL and SWCC units have lost several valuable instructors needed for dangerous training exercises because those instructors are unvaccinated and are now scrambling to try to find qualified instructors to fill in the gaps. App.0059, 0070, 0074.

### 3. Prevention of Navy Reserve Drill/Training

The anti-travel decree and the Navy's baseless discrimination based on vaccination status have also had adverse impacts on unvaccinated members of the Navy Reserve with pending religious accommodations. This is especially absurd in this context given that Reservists—both

vaccinated and unvaccinated alike—live in the general population alongside unvaccinated people during their daily lives. Reserve class members are still expected to continue to report to regular Inactive Duty Training or "drill," yet are being prohibited from doing so. Navy Reservists must also complete Annual Training—their two weeks of active duty per year—to receive evaluations needed for promotion, complete requirements for retirement, and earn a majority of their service paycheck. Failure to satisfactorily complete Annual Training can result in involuntary separation, providing an alternative means of separating a member who is otherwise protected by this Court's injunction. Even Reserve members with local opportunities to drill or attend Annual Training have been denied. App.0078-0117. The Navy will not permit reschedules or authorized absences from drill. And while some credit for drill may be earned by correspondence, even that has been denied to some servicemembers. Reply ISO Emergency Mot. App.002. In other words, class members are required to drill and attend Annual Training, yet are not permitted to, then are penalized when they do not, even though the Navy's own nonsensical policies are the cause of the problem.

Because these policies are not tied to any conceivable health-related purpose, they have unsurprisingly led to absurd results. And the Navy is even denying permission for Reservists to engage in required drill and training that requires *no* travel. Lieutenant Commander Pat Wier, a graduate of the United States Naval Academy with 12 years of commissioned service as a surface warfare officer and a member of the Judge Advocate General Corps, has been denied permission to drill near his home city because he is unvaccinated due to his religious beliefs. App.0083. He is instead being forced to travel to Orlando, which is several hours away, for drill, which requires that he be housed with another individual. App.0083. This is despite the fact that he was also denied permission to travel to attend his mandatory unit drill weekend in Jacksonville because of his vaccination status. App.0080. He has tried volunteering several times for opportunities to serve

but has been rejected because of his vaccination status. App.0080-0083. He was not even allowed to attend the JAG Corps' annual Military Law Training Symposium remotely. App.0081. But his Commanding Officer filed a Report of Misconduct against him for not taking the vaccine, even though his appeal of his religious accommodation request is still pending. App.0081.

Commander Jay Ofner has served in the Navy for 23 years and is currently a civilian DoD employee on staff with the Commander of the Submarine Force of the U.S. Pacific Fleet. App.0092, 0094. He submitted a religious accommodation request for the COVID-19 vaccine and his appeal is still pending. App.0092-0093. His command wanted him to take on the responsibility of Battle Watch Captain for two weeks, a position of significant authority and responsibility, which would count as his Annual Training requirement. App.0093. Because of his vaccination status, Commander Ofner has been denied permission to perform a job his command wanted him to undertake, even though he works in the *very same facility* as a civilian, visits the *same* areas of the facility in his civilian job, and meets with the *Commander of the U.S. Pacific Fleet* in that capacity for meetings and briefs with no restriction. App.0093-0094.

## CONCLUSION

Plaintiffs respectfully request a hearing to hear evidence on Defendants' compliance with the classwide preliminary injunction entered on March 28, 2022. Dkt. 140. Alternatively, Plaintiffs request that the Court enter an order requiring Defendants' compliance with the preliminary injunction by (1) allowing class members to choose to separate from the Navy (whether by "Involuntary Separation," "Voluntary Separation," or retirement per the Navy's terms); (2) permitting class members to travel in order to carry out the duties required by their command; and (3) permitting class members to fulfill their Reserve requirements without penalty.

Respectfully submitted this 8th day of June, 2022.

| | |
|---|---|
| KELLY J. SHACKELFORD<br>  Texas Bar No. 18070950<br>JEFFREY C. MATEER<br>  Texas Bar No. 13185320<br>HIRAM S. SASSER, III<br>  Texas Bar No. 24039157<br>DAVID J. HACKER<br>  Texas Bar No. 24103323<br>MICHAEL D. BERRY<br>  Texas Bar No. 24085835<br>JUSTIN BUTTERFIELD<br>  Texas Bar No. 24062642<br>Danielle A. Runyan *<br>  New Jersey Bar No. 027232004<br>Holly M. Randall *<br>  Oklahoma Bar No. 34763<br>FIRST LIBERTY INSTITUTE<br>2001 W. Plano Pkwy., Ste. 1600<br>Plano, Texas 75075<br>Tel: (972) 941-4444<br>jmateer@firstliberty.org<br>hsasser@firstliberty.org<br>dhacker@firstliberty.org<br>mberry@firstliberty.org<br>jbutterfield@firstliberty.org<br>drunyan@firstliberty.org<br>hrandall@firstliberty.org<br><br>JORDAN E. PRATT<br>  Florida Bar No. 100958*  **<br>FIRST LIBERTY INSTITUTE<br>227 Pennsylvania Ave., SE<br>Washington, DC 20003<br>Tel: (972) 941-4444<br>jpratt@firstliberty.org | /s/ Heather Gebelin Hacker<br>HEATHER GEBELIN HACKER<br>  Texas Bar No. 24103325<br>ANDREW B. STEPHENS<br>  Texas Bar No. 24079396<br>HACKER STEPHENS LLP<br>108 Wild Basin Road South, Suite 250<br>Austin, Texas 78746<br>Tel.: (512) 399-3022<br>heather@hackerstephens.com<br>andrew@hackerstephens.com<br><br>*Attorneys for Plaintiffs* |

*Admitted pro hac vice.
** Not yet admitted to the D.C. Bar, but admitted to practice law in Florida. Practicing law in D.C. pursuant to D.C. Court of Appeals Rule 49(c)(8) under the supervision of an attorney admitted to the D.C. Bar.