**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**

**NAVY SEALs 1-3,** *et al.*,

Plaintiffs,

v.

**LLOYD J. AUSTIN, III** in his official capacity  as
United States Secretary of Defense, *et al.*,

Defendants.

Case No. 4:21-cv-01236-O

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION COMPEL

# TABLE OF CONTENTS

INTRODUCTION.................................................................................................................................1

BACKGROUND ................................................................................................................................1

DISCUSSION.....................................................................................................................................4

    I.       DISCOVERY STANDARDS.............................................................................4

    II.     ALL PLAINTIFFS MUST RESPOND TO DISCOVERY
          REQUESTS.........................................................................................................5

    III.    ALL PLAINTIFFS MUST PROVIDE MEANINGFUL INTERROGATORY
          RESPONSES WITHIN A REASONABLE TIME.......................................9

          A.     Responses to Interrogatories 3, 6, and 7 Inappropriately Rely on
                RARs Without Answering the Interrogatories. ........................................9

          B.     Responses to Interrogatories 5 and 8 Are Incomplete Because They
                Inappropriately Rely on Response to Interrogatory 2..........................14

          C.     Plaintiffs Fail to Respond to Interrogatories 9, 11, 12.........................17

    IV.    ALL PLAINTIFFS MUST PRODUCE RESPONSIVE DOCUMENTS IN
          A REASONABLE AMOUNT OF TIME...................................................19

          A.     RFP1 – Initial Disclosures.......................................................................20

          B.     Documents Related to Interrogatories.....................................................21

          C.     RFP 8 – Communications and Social Media Documents...................22

    V.     ALL PLAINTIFFS MUST PRODUCE DISCRETE MEDICAL
          INFORMATION..............................................................................................23

CONCLUSION ................................................................................................................................25

## TABLE OF AUTHORITIES

### CASES

*Adkins v. Mid-Am. Growers, Inc.*,
    141 F.R.D. 466 (N.D. Ill. 1992) ........................................................................................ 8

*Areizaga v. ADW Corp.*,
    314 F.R.D. 428 (N.D. Tex. 2016) .............................................................................. 4, 5, 18

*Barnett v. Experian Info. Sols., Inc.*,
    236 F.R.D. 307 (E.D. Tex. 2006) ...................................................................................... 7

*Brennan v. Midwestern United Life Ins. Co.*,
    450 F.2d 999 (7th Cir. 1971) ............................................................................................ 8

*Burns v. Thiokol Chem. Corp.*,
    483 F.2d 300 (5th Cir. 1973) ............................................................................................ 5

*Cutter v. Wilkinson*,
    544 U.S. 709 (2005) ........................................................................................................ 11

*Dollar v. Long Mfg., N.C., Inc.*,
    561 F.2d 613 (5th Cir. 1977) ............................................................................................ 4

*Ecoquij-Tzep v. Hawaiian Grill*,
    No. 3:16-CV-625-BN, 2017 WL 2672328 (N.D. Tex. June 21, 2017) ............................ 8

*Ellis v. Elgin Riverboat Resort*,
    217 F.R.D. 415 (N.D. Ill. 2003) ...................................................................................... 7

*Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*,
    877 F.3d 487 (3d Cir. 2017) ............................................................................................ 12

*Gandhi v. Dell Inc.*,
    No. A-08-CA-248-JRN, 2010 WL 11506555 (W.D. Tex. July 28, 2010) ........................ 8

*Heller v. City of Dallas*,
    303 F.R.D. 466 (N.D. Tex. 2014) .................................................................................... 4

*In re United States*,
    864 F.2d 1153 (5th Cir. 1989) .......................................................................................... 9

*Kerschman v. Nationwide Relocation Servs., Inc.*,
    No. 10-62426-CIV, 2012 WL 13005528 (S.D. Fla. May 7, 2012) .................................. 21

*Kervin v. Supreme Serv. & Specialty Co., Inc.,*
    No. CV 15-01172, 2016 WL 8257256 (E.D. La. May 24, 2016)............................................7, 8

*Kunze v. Baylor Scott & White Health,*
    No. 3:20-CV-01276-N, 2021 WL 5050335 (N.D. Tex. Nov. 1, 2021)................................7, 8

*Martino v. Kiewit N.M. Corp.,*
    600 F. App'x 908 (5th Cir. 2015)........................................................................................21

*McGrath v. City of Philadelphia,*
    No. CIV. A. 92-4570, 1994 WL 45162 (E.D. Pa. Feb. 10, 1994)....................................8, 21

*Moussazadeh  v. Tex. Dep't of Criminal Justice,*
    703 F.3d 781 (5th Cir. 2012)..............................................................................................11

*Navy SEALs 1–26 v. Biden,*
    --- F. Supp. 3d ---, 2022 WL 34443 (N.D. Tex. Jan. 3, 2022), *denying  stay pending appeal* 27 F.4th
    336 (5th Cir. 2022), *granting stay sub nom., Austin v. Navy SEALs 1-26,* 142 S. Ct. 1301 (2022) ..........1

*New Doe Child #1 v. Cong. of U.S.,*
    891 F.3d 578 (6th Cir. 2018)..............................................................................12, 13, 25

*Oklevueha Native Am. Church of Hawaii, Inc. v. Lynch,*
    828 F.3d 1012 (9th Cir. 2016)............................................................................................12

*Phillips v. Hanover Ins. Co.,*
    No. 14-871, 2015 WL 1781873 (W.D. Okla. Apr. 20, 2015)............................................21

*Prejean v. Satellite Country Inc,*
    No. 6:17-cv-01170, 2018 WL 11255569 (W.D. La. 2018)..................................................8

*Ramirez v. Collier,*
    142 S. Ct. 1264 (2022)........................................................................................................11

*Richardson v. Byrd,*
    709 F.2d 1016 (5th Cir. 1983)..............................................................................................6

*Rivera v. UBM Enter., Inc.,*
    No. 3:12-CV-496-P, 2014 WL 462586 (N.D. Tex. Feb. 5, 2014)........................................8

*Samsung Elecs. Am., Inc. v. Yang Kum Chung,*
    325 F.R.D. 578 (N.D. Tex. 2017) ........................................................................................4

*Samsung Elecs. Am., Inc. v. Yang Kun Chung,*
    321 F.R.D. 250 (N.D. Tex. 2017) ....................................................................................4, 9

*SEC v. Brady,*
    238 F.R.D. 429 (N.D. Tex. 2006) ........................................................................................4

*Simpson v. Hexion Specialty Chems.*,
No. 06-798, 2007 WL 9710857 (M.D. La. Sept. 19, 2007)........................................................21

*Transamerican Ref. Corp. v. Dravo Corp.*,
139 F.R.D. 619 (S.D. Tex. 1991) ..........................................................................................8

*Washington-St. Tammany Elec. Coop., Inc. v. La. Generating, LLC*,
No. CV 17-405-JWD-RLB, 2019 WL 1804849 (M.D. La. Apr. 24, 2019)...........................21

*Williams-Pyro, Inc. v. Warren Watts Tech., LLC*,
No. 4:12-CV-546-O, 2015 WL 9680265 (N.D. Tex. Aug. 6, 2015) .........................................4

*Wiwa v. Royal Dutch Petroleum Co.*,
392 F.3d 812 (5th Cir. 2004) ..................................................................................................4

**STATUTES**

29 U.S.C. § 216...........................................................................................................................8

**RULES**

Fed. R. Civ. P. 26....................................................................................................................4, 12

Fed. R. Civ. P. 33.....................................................................................................................4, 9

Fed. R. Civ. P. 34.....................................................................................................................5, 9

Fed. R. Civ. P. 37.........................................................................................................................4

**OTHER AUTHORITIES**

Brett Salkeld, You Can Have Your Tylenol Too: A Note on the Objections of Some Catholics
to Using COVID-19 Vaccines, Church Life Journal (Oct. 6, 2021),
https://perma.cc/8REX-REQ8........................................................................................24

Charles A. Wright & Arthur R. Miller, Discovery in Class Proceedings,
7B Fed. Prac. & Proc. Civ. § 1796.1 (3d ed. 2022)..............................................................8

DD Form 2870,
https://www.esd.whs.mil/Portals/54/Documents/DD/forms/dd/dd2870.pdf...........................24

Fr. Matthew P. Schneider. L.C., If Any Drug Tested on HEK-293 Is Immoral, Goodbye
Modern Medicine, Through Catholic Lenses (Jan. 28, 2021),
https://perma.cc/7VCY-UXLP........................................................................................24

Jon Jackson, New COVID Vaccine Could Appeal to Some Religious Skeptics, Newsweek
(Feb. 18, 2022),
https://perma.cc/P5PK-6J3W..........................................................................................13

Novavax COVID-19 Vaccine, Adjuvanted (July 13, 2022),
https://perma.cc/C7X9-MXXE..........................................................................................................13

Rev. Nicanor Pier Giorgio Custriaco, O.P., Moral Guidance on Using COVID-19 Vaccines
Developed with Human Fetal Cell Lines, Public Discourse (May 26, 2020),
https://perma.cc/DPT9-A3PX ..........................................................................................................24

William B. Rubenstein,
3 *Newberg and Rubenstein on Class Actions* § 7:15 (6th ed. 2022) ....................................................................7

## INTRODUCTION

Following weeks of discussions with Plaintiffs' counsel regarding Defendants' initial round of written discovery, Plaintiffs have not produced any responsive documents or provided any meaningful interrogatory responses. The 31 named Plaintiffs who are not designated as class representatives have declined to respond to discovery at all, and the four class representatives have provided only cursory responses referring to their religious accommodation requests ("RARs") and a handful of documents they claim are publicly available and refuse to produce. Plaintiffs' position does not comport with their discovery obligations; having brought this action, they are subject to discovery. Defendants therefore respectfully seek to compel responses as set forth below.

## BACKGROUND

On Nov. 9, 2021, thirty-five Plaintiffs (proceeding under pseudonyms) filed this matter seeking nationwide relief against the vaccine mandate, raising claims under, *inter alia*, the Religious Freedom Restoration Act ("RFRA"), the Free Exercise Clause, and the Administrative Procedure Act ("APA"). ECF No. 1. All 35 Plaintiffs sought and received a preliminary injunction that was then partially stayed by the Supreme Court pending appeal, and the appeal remains pending in the Fifth Circuit. *See Navy SEALs 1–26 v. Biden*, --- F. Supp. 3d ---, 2022 WL 34443 (N.D. Tex. Jan. 3, 2022), *denying stay pending appeal* 27 F.4th 336 (5th Cir. 2022), *granting stay sub nom., Austin v. Navy SEALs 1-26*, 142 S. Ct. 1301 (2022). In support of that motion and in opposition to the motion to stay, Plaintiffs relied on declarations and documentary material from the Plaintiffs themselves, as well as from other putative class members. *See* ECF Nos. 17 (App.870-1022) (declarations from all plaintiffs), 59 (App.1023-1134) (more), 62 (attaching document received from client), 63 (SEAL26 declaration), 100 (App. 13-17) (SWCC4 declaration). While some live testimony came from class representatives, other submissions did not. On January 24, 2022, Plaintiffs filed an Amended Complaint, raising a similar set of claims on behalf of the same Plaintiffs, dropping the APA claims, and designating four of the 35 named Plaintiffs as class representatives: Navy SEALS 1-3 and Navy EOD Technician 1 ("EOD1"). ECF No. 84. The Court granted Plaintiffs' motion for class certification and for a preliminary

injunction, partially staying that injunction to the same extent the original injunction was stayed, ECF No. 140. The appeal of that Order is also pending, and has been consolidated with the original appeal. *U.S. Navy Seals 1-26 v. Biden*, No. 22-10077, consolidated with No. 22-10534 (5th Cir.). Both named Plaintiffs and putative class members have also submitted declarations and documents to the Court in support of the classwide preliminary injunction and several other motions. *See* ECF Nos. 97 (App.1-8, 12-32), 118 (App.33-93), 134 (App.1-35, 103-48), 174 (App.3-8), 178 (App.57-117).

Discovery has commenced. The parties filed an updated 26(f) report on May 20, 2022, ECF No. 155, and the Court entered a scheduling order on May 24, 2022, ECF No. 158. The parties have exchanged initial disclosures and served and responded to initial rounds of written discovery, and Plaintiffs have conducted one deposition of a senior official.[1] Defendants' affirmative discovery is the subject of this motion. As relevant here, in early June Defendants served a set of 13 interrogatories and a set of 10 requests for production of documents ("RFPs") on each of the 35 Plaintiffs. *See, e.g.,* DEX1, App.3-10; DEX2, App.278-85. For this first round of written discovery, Defendants served the same interrogatories and RFPs on each Plaintiff; accordingly, this memorandum will refer to RFP and interrogatory numbers that apply to every named Plaintiff.[2] This written discovery seeks discrete categories of information relevant to Plaintiffs' claims, including information about the nature of their objections to the COVID-19 vaccines, the burden on their religious convictions posed by challenged policies, the adverse consequences allegedly suffered to date, and any information held by Plaintiffs relevant to the Government's compelling interest or the availability of less restrictive means in light of their individual circumstances.

On July 7, 2022, the four class representative Plaintiffs responded to the interrogatories, *see* DEX3, DEX4, DEX5, DEX6 (App.558-623) (responses of SEALs 1-3, and EOD1, but the other 31

---

[1] Defendants have produced the administrative record for the vaccine mandate and thousands of responsive pages, and responded to interrogatories seeking, *inter alia*, detailed statistical and anecdotal information on the impacts of COVID-19 on the force. Defendants are compiling and have started producing the individual RAR administrative records for those Plaintiffs who have received a final determination on their RARs or appeals.

[2] While this first round of discovery asked identical questions of each named Plaintiff, Defendants anticipate that a second round of discovery may seek additional documents or testimony unique to that individual, based on their responses to date.

named Plaintiffs responded only with objections, *see* DEX7 (App.624-29) (Objections of Non-Class Representatives to Interrogatories). The Plaintiffs who are not class representatives rely solely on two general objections, not individualized as to Plaintiff or request, including: an objection "to the extent that [any request] purports to impose any requirement or discovery obligation greater than or different from those under the Federal Rules of Civil Procedure and the applicable Rules and Orders of the Court;" and an objection that "[i]ndividualized discovery is not available in Rule 23 class actions." DEX7 (collecting cases) (App.626). The interrogatory responses from the class representatives, on the other hand, are scant at best. DEX3, DEX4, DEX5, DEX6 (App.558-623). They identify a handful of documents they consulted, and refer generally to the RARs and/or briefing without, for the most part, attempting to provide meaningful answers to the questions posed. *Id.*

The RFP responses (dated July 11, 2022) are similar. The non-class representative Plaintiffs rely on identical general objections, declining to respond to any discovery at all. DEX8 (App.630-35). The class representatives' responses point to their RARs and the handful of documents identified in their interrogatories, but do not produce a single document, nor provide a date certain for such production. DEX9-12 (responses of SEALS 1-3, EOD1) (App.636-87).

On July 20, 2022, having reviewed these responses, Defendants' counsel requested to meet and confer with Plaintiffs' counsel. DEX13 (Email Thread with Counsel) (App.699-702). Counsel described the conversation and remaining questions/issues in a follow-up email on July 21, 2022 and were hopeful the meet and confer would lead to supplementation of Plaintiffs' responses. *Id.* at App.696-99). Defendants' counsel followed up requesting supplementation or a date for expected supplementation. *Id.* at App.693-96. On August 3, 2022, almost four weeks after the interrogatory responses were due, Plaintiffs provided a date (Aug. 12) by which they would make any supplemental responses for interrogatories 5, 8, and 10, and provide non publicly-available documents for RFP 1, and the other RFPs for which responsive documents were identified. *Id.* at App.693-99. Plaintiffs declined to provide any responses, however, for non-class representatives, and declined to supplement as to most responses. *Id.* On August 12, 2022, Plaintiffs supplemented in part the interrogatory

responses of SEAL2, but provided no additional supplementation, and still did not produce any documents. DEX14 (App.703-09). In a final meet and confer on August, Plaintiffs confirmed that they did not anticipate additional supplements. DEX13, at App.689-91.

## DISCUSSION

### I.      DISCOVERY STANDARDS

In general, parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," weighing multiple factors, Fed. R. Civ. P. 26(b)(1), and parties may move to compel a discovery response improperly withheld, Fed. R. Civ. P. 37(a); *Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017). "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). The burden to justify a party's objections to the production of discovery is generally on the party resisting discovery. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004); *Areizaga v. ADW Corp.*, 314 F.R.D. 428, 435 (N.D. Tex. 2016) (amendments to Rule 26(b)(1) do not alter this basic framework). "In order to satisfy this burden, the objecting party must make a specific, detailed showing of how a request is burdensome" or otherwise objectionable. *Williams-Pyro, Inc. v. Warren Watts Tech., LLC*, No. 4:12-CV-546-O, 2015 WL 9680265, at *1 (N.D. Tex. Aug. 6, 2015) (O'Connor, J.) (quoting *SEC v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006)); *see also Samsung Elecs. Am., Inc.*, 325 F.R.D. at 590; *Heller v. City of Dallas,* 303 F.R.D. 466, 483 (N.D. Tex. 2014) (discussing prohibition of general objections).

Interrogatories under Federal Rule of Civil Procedure 33 "may relate to any matter that may be inquired into under Rule 26(b)" and are "not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact[.]" Fed. R. Civ. P. 33(a); *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 616–17 (5th Cir. 1977) (discussing duty of candor in responding fully to interrogatories). "The fact that an interrogatory calls for a thorough response—one that will take time and effort to answer—does not make it improper." *Areizaga*, 314 F.R.D. at 437 (citing *Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 307–08 (5th Cir. 1973)). "Plaintiff is not required to make an extensive

investigation in responding to an interrogatory, but he must pull together a verified answer by reviewing all sources of responsive information reasonably available to him and providing the responsive, relevant facts reasonably available to him." *Id.*

Rule 34 provides that an RFP "must describe with reasonable particularity each item or category of items to be inspected" or produced. Fed. R. Civ. P. 34(b). A complete response includes stating "with specificity the grounds for objecting to the request, including the reasons" and "whether any responsive materials are being withheld on the basis of that objection." *Id.*

## II.    ALL PLAINTIFFS MUST RESPOND TO DISCOVERY REQUESTS.

Defendants served initial discovery seeking limited information targeted to the claims in this case from each of the named Plaintiffs. Thirty-one individual Plaintiffs have refused to provide any discovery responses whatsoever. DEX7, DEX8 (App.624-35). This position fails to comport with their obligations under Rule 26 for several reasons: as parties, they are subject to discovery; the discovery requests are relevant and proportional to the needs of the case; and Defendants are further entitled to discovery in support of a potential motion to decertify.

All plaintiffs named in the Amended Complaint are parties in this action, not absent class members, and they are subject to the requirements of Rule 26 on the face of the Rule. All individual Plaintiffs sought *and received* relief from this Court on their own behalf, relying on their own sworn declarations, and there is no reasonable argument that all discovery of them is irrelevant or disproportionate to the needs of the case. They provided declarations in support of the preliminary injunctions currently on appeal, and many of them submitted declarations in support of various other motions filed to date, directly putting at issue their personal testimony and personal situations. *See supra* pp. 1-2 (collecting appendix cites to multiple declarations by all individual Plaintiffs). Defendants are entitled to discovery into those statements, especially where the Court has relied on that testimony.

Defendants are further entitled to inquire into the central issues of the RFRA claims in this case, including: (1) The nature and scope of Plaintiffs' religious objections to the COVID-19 vaccine, so that Defendants can assess whether they should challenge sincerity, whether there is (and continues

to be) a substantial burden on those specific religious beliefs, and whether less restrictive means are available that would satisfy Plaintiffs' religious objections; (2) Whether Plaintiffs claim to have any information relevant to the Court's analysis of the compelling interest or less restrictive means analysis; (3) What adverse consequences Plaintiffs claim to have suffered as a result of the vaccine requirement, the RAR process or any challenged policy, and whether those adverse consequences were actually the result of challenged policies.[3] While Plaintiffs intend to argue that the class representatives' experience shows a RFRA violation as to the class, Defendants will likely argue both that Defendants did not violate RFRA as to the class representatives, and that the individualized (and changed) circumstances of other class members shows that Defendants did not violate RFRA as to the class. This involves, at a minimum, written discovery of all Plaintiffs.[4]

Additionally, Defendants may challenge class certification again. While Defendants maintain that class certification was inappropriate as a matter of law, the determination was also made at a preliminary stage, without the benefit of discovery, and Defendants are considering bringing a motion to modify or decertify the class under Rule 23(c)(1)(C) if and when adequate discovery has been marshalled. *See Richardson v. Byrd,* 709 F.2d 1016, 1019 (5th Cir. 1983) ("The district judge must define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts."); *Kunze v. Baylor Scott & White Health*, No. 3:20-CV-01276-N, 2021 WL 5050335, at *3 (N.D. Tex. Nov. 1, 2021) ("Defendants should receive individualized discovery responses from enough class members to allow Defendants to pursue their defense that Plaintiffs are not similarly situated."); *Barnett v. Experian Info. Sols., Inc.*, 236 F.R.D. 307, 308 (E.D. Tex. 2006) ("The district court retains discretion to decertify a class throughout the litigation."); *Ellis v. Elgin Riverboat Resort*, 217

---

[3] In addition to inquiring as to the elements of a RFRA claim, Defendant anticipate that discovery may provide factual support for other arguments, or illuminate Plaintiffs' claims. For example, Defendants may inquire about the Plaintiffs' knowledge of intra-service remedies (related to exhaustion arguments), their experiences with the RAR process (related to futility arguments), and other information about Plaintiffs' service records and fitness for duties they wish to be assigned (related to both the substance of their claims and appropriate remedy).

[4] Because there are now individual Plaintiffs who are NOT class members because they have withdrawn their RARs, Defendants are separately entitled to seek discovery of them as to continuing merits of their claims.

F.R.D. 415, 420 (N.D. Ill. 2003); *cf.* William B. Rubenstein, 3 *Newberg and Rubenstein on Class Actions,* When certification-related discovery is necessary § 7:15 (6th ed. 2022) ("discovery may be required in either or both of two circumstances: 'when the facts relevant to any of the certification requirements are disputed or when the opposing party contends that proof of the claims or defenses unavoidably raises individual issues.'") (citation omitted). Defendants fully expect discovery to bear out their arguments that: changes in circumstances (such as the authorization of additional COVID-19 vaccines) have lessened or eliminated any burden on the religious beliefs of at least some Plaintiffs; affidavits and other materials Plaintiffs have submitted in furtherance of their briefs are inaccurate, unsupported, and contrary to the scientific data and opinion and the military judgment of experienced military leaders; Plaintiffs serve in various military occupational specialties, in various commands, and are at various points in their military careers, which make the compelling interest and least restrictive means analysis unique; that Plaintiffs' requests received individualized consideration, and that Plaintiffs cannot show that class representatives are typical, adequate or fair representatives of the class certified. At the meet and confer, Plaintiffs argued that these issues were settled by the Court, but class certification does not preclude discovery on these issues or prevent Defendants from filing a motion to decertify.[5]

Plaintiffs cite three out-of-district cases for the incorrect proposition that "[i]ndividualized discovery is not available in Rule 23 class actions." *See, e.g.*, DEX7 (App.626); *Kervin v. Supreme Serv. & Specialty Co., Inc.*, No. CV 15-01172, 2016 WL 8257256, at *3 (E.D. La. May 24, 2016) (distinguishing Rule 23 class from Fair Labor Standards Act collective action); *McGrath v. City of Philadelphia*, No. CIV. A. 92-4570, 1994 WL 45162, at *3 (E.D. Pa. Feb. 10, 1994); *Adkins v. Mid-Am. Growers, Inc.*, 141 F.R.D. 466, 468 (N.D. Ill. 1992). Rule 23, of course, does not create any exception to the requirements of Rules 26, 33, and 34; the question remains whether such discovery is relevant and proportional to the needs of the case. Each of these cases cited by Plaintiffs relates to collective actions under the FLSA,

---

[5] Much of the discussion at the meet and confer focused on whether these named Plaintiffs would all be deposed. Defendants have not decided whether to seek such depositions.

not class actions under Rule 23. Unlike class actions brought under Rule 23, classes under 29 U.S.C. § 216(b) are "opt-in" classes, requiring any employee wishing to become a party to the action to "opt in" (rather than "opt out") by filing his consent with the court in which the action is brought. *Ecoquij-Tzep v. Hawaiian Grill,* No. 3:16-CV-625-BN, 2017 WL 2672328, at *2 (N.D. Tex. June 21, 2017). Accordingly, the cases are typically discussing discovery of the "opt-in" class members, sometimes a very large group, who are not represented by counsel, did not choose to bring the lawsuit in the first instance, and who are therefore much more similar to absent class members in a Rule 23 class than they are to named plaintiffs here. Thus, while Defendants are aware of some cases where "opt-in" class members were not subject to individualized discovery, Plaintiffs have not cited a single case where a named plaintiff in a Rule 23 class action was not subject to discovery.

Even in the FLSA context, other courts have routinely permitted discovery of class members where it is proportionate to the needs of the case. *See Gandhi v. Dell Inc.,* No. A-08-CA-248-JRN, 2010 WL 11506555, at *6 (W.D. Tex. July 28, 2010); *Prejean v. Satellite Country Inc,* 6:17-cv-01170, 2018 WL 11255569 (W.D. La. 2018) (permitting limited individualized discovery); *Rivera v. UBM Enter., Inc.,* No. 3:12-CV-496-P, 2014 WL 462586, at *2 (N.D. Tex. Feb. 5, 2014); *Kunze,* 2021 WL 5050335, at *3. And in the Rule 23 context, courts permit discovery even of *absent* class members when proportionate to the needs of the case. *See, e.g., Brennan v. Midwestern United Life Ins. Co.,* 450 F.2d 999, 1005 (7th Cir. 1971); Charles A. Wright & Arthur R. Miller, Discovery in Class Proceedings, 7B Fed. Prac. & Proc. Civ. § 1796.1 (3d ed. 2022) (collecting cases where discovery of absent class members was allowed); *Transamerican Ref. Corp. v. Dravo Corp.,* 139 F.R.D. 619, 622 (S.D. Tex. 1991). Here, Defendants are not proposing individualized discovery of thousands of absent class members; rather, the plaintiffs are a tiny fraction of the class and have intentionally put their individual circumstances at issue.

All other objections have been waived. *See* Fed. R. Civ. P. 33(b)(4); Fed. R. Civ. P. 34(b)(2); *Samsung Elecs. Am., Inc.,* 321 F.R.D. at 283 ("as a general rule, when a party fails to object timely to interrogatories, production requests, or other discovery efforts, objections thereto are waived.") (quoting *In re United States,* 864 F.2d 1153, 1156 (5th Cir. 1989)). Defendants respectfully request an

8

order directing the named Plaintiffs who have not responded to respond fully to interrogatories and produce all responsive documents within two weeks.

### III.   ALL PLAINTIFFS MUST PROVIDE MEANINGFUL INTERROGATORY RESPONSES WITHIN A REASONABLE TIME.

While named Plaintiffs who are not class representatives have failed to respond at all, even the class representative Plaintiffs have nearly wholly failed to provide meaningful interrogatory responses.

### A.   Responses to Interrogatories 3, 6, and 7 Inappropriately Rely on RARs Without Answering the Interrogatories.

Interrogatories 3, 6, and 7 each seek relevant information, proportionate to the needs of the case:

> **Interrogatory No. 3:**  Please describe in detail the nature of your religious beliefs, how and when you began to subscribe or adhere to these religious beliefs, and how you practice these beliefs in your daily life, including, in particular, how you identify and avoid the use, consumption, or ingestion of, or vaccination with, products—including, but not limited to, foods, consumer goods, cosmetics, prescription or over-the-counter medications, or vaccines other than the COVID-19 vaccine—containing, manufactured or developed with, and/or tested using aborted fetal tissue or cells. . . .

> **Interrogatory No. 6:**  Please describe in detail each and every reason why you believe receiving a COVID-19 vaccination is contrary to your religious beliefs.

> **Interrogatory No. 7:** Please describe in detail each and every reason why you believe DoD and the Navy's requirement for you to receive the COVID-19 vaccination substantially burdens your religious beliefs. . . .

*See* DEX1(App.7-8). Class representatives failed to provide any meaningful response to these interrogatories, instead referring generally to their RAR submissions, and documents on the record.

> 1.      **Interrogatories 3 & 6.** Each class representative objects to Interrogatory 3 as follows:

> Plaintiff objects to this Interrogatory because it is overbroad, irrelevant, unduly burdensome, unclear, seeks information that is already possessed by Defendants and is disproportionate to the needs of this case. The Interrogatory is overly broad and irrelevant because it seeks information regarding Plaintiff's religious beliefs and practices that are not reasonably related to any claim or defense in this case. Responding to such an uninhibited fishing expedition into all aspects of Plaintiff's religious beliefs and practices would place an undue burden on Plaintiff that is disproportionate to the needs of this case. Furthermore, the interrogatory is unclear because it relies on the undefined term "nature" or "nature of" in relation to Plaintiffs' religious beliefs. Additionally, Plaintiff's religious beliefs on matters unrelated to the

COVID-19 vaccine are unlikely to lead to the discovery of admissible evidence. Plaintiff also objects to this interrogatory to the extent it seeks information that is readily or more accessible to Defendants from Defendants' own files, from documents or information in Defendants' possession.

DEX3-DEX6 (App.564, 580, 595, 612). Plaintiffs each object to Interrogatory 6 for similar reasons: "Plaintiff objects to this Interrogatory to the extent it seeks information that is already possessed by Defendants or seeks information that is protected by the clergy privilege." *See, e.g., id.* at App.566, 582, 598, 615.[6]

Each class representative then offers an evasive response that primarily refers to their RAR. For example, SEAL1 responds to Interrogatory 3 "subject to and without waiving the foregoing objections:"

> [T]he information sought by Defendants is detailed in my [RAR], which was submitted to Defendants in September 2021 and is therefore already in their possession. See also my declaration dated November 22, 2021. Additionally, as an active and practicing Catholic baptized into the Catholic Church since infancy, my faith has grown stronger in the past several years.

DEX3 (App.565). His nearly identical response to Interrogatory 6 omits the last sentence. Similarly, SEAL2 responds to Interrogatory 3: "The information sought by Defendants is detailed in my [RAR], which was submitted to Defendants in October 2021, and my declaration dated November 19, 2021." DEX4 (App.580). And his response to Interrogatory 6 is largely the same and adds: "Additionally, I would refer Defendants to my responses to Interrogatories No. 3 and 8." *Id.; see also* DEX5 (referring to SEAL3's RAR, declaration, and hearing transcript) (App.596-98); DEX6 (EOD1's RAR, declaration, and hearing transcript) (App.612-15).

Class representative Plaintiffs' objections are unfounded. Interrogatory 3 is not an "uninhibited fishing expedition" into all aspects of Plaintiffs' religious beliefs and practices, and Defendants do not seek a detailed account of all of Plaintiffs' religious beliefs and practices since birth, only a description of the particular religious beliefs that are currently leading them to object to the COVID-19 vaccine.

---

[6] Plaintiffs confirmed at meet and confer that they were not withholding specific information as a result of privilege assertions. DEX13 at App.696.

This information regarding the nature and scope of Plaintiffs' religious beliefs is directly relevant to the claims presented here for multiple reasons.

First, contrary to Plaintiffs' position, Defendants are allowed to inquire into the sincerity of Plaintiffs' beliefs. Although sincerity is generally "easily established," *Moussazadeh v. Tex. Dep't of Criminal Justice*, 703 F.3d 781, 791-92 (5th Cir. 2012), it still must be established, and courts reviewing a RFRA claim must carefully assess a claimant's religious beliefs, *see Ramirez v. Collier*, 142 S. Ct. 1264, 1277-78 (2022); *cf. Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005) (in RLIUPA context). Defendants may or may not challenge sincerity at summary judgment and trial, but at a minimum, Defendants need to be able to ask basic questions in order to determine if Plaintiffs can meet the applicable standard. That courts use a light hand in evaluating sincerity does not mean Defendants cannot seek *any* discovery pertaining to this aspect of their claim.

Second, the information is relevant to multiple issues beyond sincerity. A full interrogatory response also provides evidence of whether or not the objection is religious in nature, whether it is burdened by the terms of the mandate or other policies given the presently available vaccines, and whether less restrictive means are available to accommodate Plaintiffs' beliefs. For example, if a Plaintiff objects to the use of fetal stem cells or mRNA technology, the newly available COVID-19 vaccine from Novavax may not substantially burden those beliefs. *See, e.g., New Doe Child #1 v. Cong. of U.S.,* 891 F.3d 578, 590–91 (6th Cir. 2018) (acceptable alternatives can defeat a substantial burden claim); *Oklevueha Native Am. Church of Hawaii, Inc. v. Lynch*, 828 F.3d 1012, 1016–17 (9th Cir. 2016) (same). Moreover, exploration of a Plaintiff's belief through the discovery process may reveal that it is not religious in nature or based on factually inaccurate information. *See, e.g., Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 492 (3d Cir. 2017) (plaintiff's "worries about the health effects of the flu vaccine, disbelie[f of] the scientifically accepted view that it is harmless to most people, and wish[] to avoid this vaccine" were not religious beliefs).

Finally, the scope and timing of Plaintiffs' religious beliefs leading to objection to the vaccine may shed light on the propriety of their assignments, and other decisions that Plaintiffs purport to

challenge, as well as the appropriate remedy. For example, a service member unable to use medication tested on fetal cells under any circumstances may be unable, for example, to administer or receive emergency medication in the field and is unlikely to be eligible for deployment.

Plaintiffs' RARs themselves are inadequate to serve the same purpose. The RARs set forward a belief at a single moment in time, do not address newer developments (like the availability of the Novavax vaccine), and typically do not explain the scope or limits of the belief such that Defendants and the Court can fully assess whether the current vaccine requirement imposes a substantial burden on a particular Plaintiff's belief and if there are equally effective and lesser restrictive means available. The Federal Rules require a party to supplement their responses to interrogatories, requests for production and requests for admission throughout the litigation. *See* Fed. R. Civ. P. 26(e). Plaintiffs should not be permitted to evade these requirements by simply pointing to their prior RARs, which for most Plaintiffs was submitted nearly a year ago and which may be more than two years old at trial. This is particularly true in light of the recent availability of the Novavax vaccine. The Novavax vaccine, recently authorized by FDA, was not produced or developed using fetal cell lines, and does not utilize mRNA technology.[7] Accordingly, Plaintiffs whose RARs described religious objections related to these issues now have a less restrictive alternative that is easily available to them. *See New Doe Child #1,* 891 F.3d at 590–91. However, if Plaintiffs who raised these objections in their RAR have additional objections to the Novavax vaccine, Defendants have a right to obtain that information through the discovery process and avoid surprises at trial.

Moreover, Plaintiffs' RARs often do not explain how their religious beliefs are substantially burdened by the military's COVID-19 vaccine requirement. For example, SEAL3's RAR (ECF No. 17, at App. 9-11) explains that his objection is based on the Catholic doctrine of proportionality but does not explain how he determined that the vaccine would violate these precepts. It thus sheds no light on the scope of his objection to the vaccine and how or if less restrictive means will be available.

---

[7] *See* Novavax COVID-19 Vaccine, Adjuvanted (July 13, 2022), https://perma.cc/C7X9-MXXE; Jon Jackson, New COVID Vaccine Could Appeal to Some Religious Skeptics, *Newsweek* (Feb. 18, 2022), https://perma.cc/P5PK-6J3W.

The declaration is even more sparse. ECF No. 17-6, at App. 882-84.[8] SEAL7's RAR does not explain the nature and scope of his objection at all, stating simply that he spent time in prayer and was led by God. *See* ECF No. 17, at App12-13; ECF No. 17-6, at App900. SEAL17's RAR is based on his objection to use of fetal cell lines and his belief that his body is a temple, but provides nothing further. ECF No. 17, at App.42-43; ECF No. 17-7, at App.945. SEAL22's RAR appears to be based solely on his conclusion that mRNA vaccines could alter his DNA, ECF No. 17, at 49-54, but his declaration adds an objection to fetal cell lines, ECF No. 17-7, at 962. Defendants need additional, current information to evaluate Plaintiffs' claims, determine whether alternatives are available, and to make Defendants' case, and answering the interrogatory is not burdensome.

2.    **Interrogatory 7.**  In response to Interrogatory 7's request for information about how Plaintiffs' beliefs are "substantially burden[ed]," each class representative objects: "Plaintiff objects to this Interrogatory to the extent it is duplicative of the information sought by Interrogatory No. 6, seeks information that is already possessed by Defendants, and seeks information that is protected by the clergy privilege. Plaintiff further objects to this Interrogatory because it calls for a legal conclusion." DEX3-DEX6 (App.566-67, 582, 598, 615). As with Interrogatories 3 and 6, each class representative refers generally to the RAR or other documents and refuses to answer the question directly. *See* DEX3 (referring to RAR and declaration); DEX4 (referring to RAR and declaration); DEX5 (RAR, declaration, hearing testimony); DEX6 (RAR, declaration, hearing testimony) (App.567, 582, 598, 615-16).

---

[8] EOD1's RAR is somewhat more detailed in terms of the scope of his objection, which applies to all vaccines, but does not explain how or when he came to the conclusion that the available COVID-19 vaccines contain aborted fetal tissue or human or animal DNA, or how he otherwise incorporates these beliefs into his life and service. ECF No. 17-1, at App. 86-90. This is somewhat different than the explanation offered under oath in his declaration, ECF No. 17-8, at App. 1017-22 (objecting to "mRNA or gene therapy technology" to the injection of "trace animal cells" and to "the use of aborted fetal cell lines in the testing development or production"), which is similar to the explanation offered at the PI hearing, DEX16 (Tr.), at App.758-61, but neither addresses recent developments. Religious beliefs can, of course, evolve or be clarified or informed over time, and Defendants are entitled to inquire in discovery as to the current scope and basis of Plaintiffs' relevant religious beliefs.

Class representative Plaintiffs' objections are meritless. The question of substantial burden may be partially answered by the reasons that Plaintiffs object to the vaccines available at the time they submitted their RAR, but it is not fully answered by those objections. For example, the Amended Complaint alleges that "Defendants' COVID-19 Vaccine Mandates substantially burden Plaintiffs' sincerely held religious beliefs by requiring them to take an action (receiving a COVID-19 vaccine) that would violate those religious beliefs or suffer adverse employment action, financial harm, and potential physical harm", and that "Defendants' Trident Order #12 substantially burdens Plaintiffs' sincerely held religious beliefs by rendering Plaintiffs 'medically disqualified,' i.e., non-deployable, even if they were to receive a religious accommodation." ECF No. 84 ¶¶ 73, 95. These types of allegations (the threat of adverse action and its effects on Plaintiffs and their religious practice) are beyond the scope of Interrogatories 3 and 6, and Plaintiffs' experiences and burdens are uniquely within Plaintiffs' control. They are also a key element of the RFRA claims. None of these types of allegations appear in the RARs; and in general, the declarations and testimony did not directly address the question posed here. In any event, Defendants are entitled to basic discovery on a key aspect of Plaintiffs' claims.

**B. Responses to Interrogatories 5 and 8 Are Incomplete Because They Inappropriately Rely on Response to Interrogatory 2.**

In response to Interrogatory 2, seeking identification of "documents . . . consulted in preparing . . . responses to these Interrogatories," each class representative listed a small number of documents that were reviewed "in preparing the responses to these Interrogatories," including, for example, "the court filings and court orders related to this case," the Bible, and various writings on fetal cell research. *See, e.g.*, DEX3-DEX6 (App.563-64, 579, 595, 611). These responses, if complete, are adequate to respond to Interrogatory 2. Class representative Plaintiffs, however, mostly refer to this same response when answering Interrogatories 5 and 8, and do not fully answer those distinct questions.

Interrogatory 5 seeks identification of "all documents that you consulted in preparing your request to be exempted from DoD's and the Navy's COVID-19 vaccination requirement based on

your religious beliefs." *See, e.g.*, DEX1 (App.8). Interrogatory 8 states: "Please describe in detail all research, inquiry and other methods you used to determine that DoD and the Navy's COVID-19 vaccination requirement is contrary to your religious beliefs, including identification of all sources consulted (including written, recorded, or digital material, authorities, experts, or individuals, as well as verbal sources), the dates of consultation, and the substance of the information consulted." *Id.* Because Interrogatory 5 refers to documents consulted in preparing the RAR and Interrogatory 8 refers more broadly to all sources and research used to determine the COVID-19 vaccine is contrary to one's beliefs, it is unlikely these would overlap perfectly with response to Interrogatory 2.

> In response to Interrogatory 5, each class representative objects as follows:

> Plaintiff objects to this Interrogatory because it is overbroad, irrelevant, unduly burdensome, and seeks information that is already possessed by Defendants. The Interrogatory is overly broad and irrelevant to the extent that it seeks information that is not reasonably related to any claim or defense in this case, which would place a burden on Plaintiff that is disproportionate to the needs of this case. Plaintiff also objects to this interrogatory to the extent it seeks information that is readily or more accessible to Defendants from Defendants' own files, from documents or information in Defendants' possession, or from documents or information that Defendants previously produced to Plaintiff.

DEX3, DEX5, DEX6, DEX14 (App.565-67, 581-83, 597-99, 614-16). Similarly, in response to Interrogatory 8, each Plaintiff objects:

> Plaintiff objects to this Interrogatory to the extent that it is duplicative of the information sought by Interrogatory No. 5. Plaintiff further objects to this Interrogatory to the extent that it seeks information protected by the attorney client privilege, clergy privilege, or other applicable privilege. Additionally, this Interrogatory is irrelevant to the extent it seeks information that is not reasonably related to any claim or defense in this case and is unlikely to lead to the discovery of admissible evidence.

DEX3-DEX6 (App.565-67, 581-83, 597-99, 614-16). SEAL1 and SEAL2 in response to both interrogatories, respond that they "consulted the documents listed in response to Interrogatory No. 2," and SEAL2 adds some information about his church and faith. DEX3, DEX4 (App.565-67, 581-83). In a supplemental response to Interrogatory 5, SEAL2 adds that he consulted 2 specific religious

texts. DEX14(App.705). In response to Interrogatory 5, SEAL3 lists three religious texts he consulted in preparing his RAR, but in response to Interrogatory 8, he refers only to his response to Interrogatory 5. DEX5 (App.597-99). EOD1 lists several texts listed in responses to Interrogatory 5, and refers back to those for Interrogatory 8. DEX6 (App.614-16).

Plaintiffs' objections fail. It is not burdensome or difficult to recall what sources Plaintiffs may have consulted or research they did. At most, they may have to review emails or other communications from the relevant timeframes. But a full accounting of that information is solely within Plaintiffs' control, not remotely sensitive, and the information is directly relevant to understanding the nature and scope of Plaintiffs' religious objections.

Plaintiffs' responses are inadequate. It is implausible that no Plaintiff searched for information about fetal cell lines, visited the website of an advocacy group on this subject, researched which vaccines were tested on cells that may have been derived from an abortion or which ones may contain animal cells, attempted to determine whether any of the WHO-listed vaccines would satisfy their religious objections, read a CDC or FDA article on vaccine safety, read an article about the efficacy of these vaccines, spoke with a knowledgeable religious acquaintance, spoke with a knowledgeable physician, or even prayed on the subject. But not a single Plaintiff has identified or described any such research in response to Interrogatory 8, other than perhaps a vague description by SEAL2. DEX3-DEX6, DEX14 (App.565-67, 581-83, 597-99, 614-16). Even aside from the implausibility, there are facial problems with the response. SEAL1, for example, in response to Interrogatory 5, claims he consulted the sources listed in response to Interrogatory 2 in preparing his RAR. DEX3, at App.566. But his RAR predated the "court filings and court orders related to this case," part of his response to Interrogatory 2, and thus he cannot have consulted them. *Id.* at App.563-64. SEAL2 has previously stated his belief that the "vaccine mandate presents a potential danger to readiness and the health and safety of military members and civilians" in part because "the viral load of vaccinated individuals can result in the spread of the virus," ECF No. 17-3, at App. 000241, but no sources supporting that conclusion appears in response to Interrogatories 2, 5 or 8. Only EOD1 claims to have read an article

16

about mRNA vaccines at all, and he does not identify the article by author, date, or source. DEX6(App.614). He testified that he came to the conclusion that mRNA changes human DNA through "research on his own," and that other research led him to believe that the COVID-19 vaccines contain harmful substances. DEX16, at App.774-76. No information listed in the interrogatory responses supports that testimony. It appears that Plaintiffs and their counsel made no effort to answer the questions posed. If they cannot produce declarations stating that the responses identify all research done in coming to the conclusion that the vaccines violate their beliefs, the Court should direct them to provide supplemental responses that fully answer the questions posed.

### C. Plaintiffs Fail to Respond to Interrogatories 9, 11, 12.

Plaintiffs also refuse to respond to interrogatories about the core of their legal claims, with the class representative Plaintiffs instead relying on objections about "legal conclusions" and pointing to existing briefing. Interrogatory 9 states: "Please explain in detail each and every reason why you believe DoD and the Navy do not have a compelling government interest in ensuring you receive a COVID-19 vaccination." DEX1(App.7). Interrogatory 11 states: "Please describe in detail each and every means available to prevent you from being infected or ill with COVID-19 that you believe are less restrictive than the COVID-19 vaccine, and why you believe they are effective." *Id.* (App.9). Interrogatory 12 states: "Please describe in detail each and every means available to prevent the spread of COVID-19 within your unit that you believe are less restrictive than the COVID-19 vaccine, and why you believe they are effective." *Id.*

No Plaintiff provided a meaningful response. With respect to Interrogatory 9, each class representative objected in essentially identical terms:

> Plaintiff objects to this Interrogatory because it calls for a legal conclusion and the burden is on Defendants to prove compelling government interest. Plaintiff also objects to this interrogatory to the extent it seeks information that is readily or more accessible to Defendants from Defendants' own files, from documents or information in Defendants' possession, or from documents or information that Defendants previously produced to Plaintiff.

DEX3-DEX6(App.567-70, 583-85, 599-601, 617-19). With respect to Interrogatory 11, each class representative objected:

> Plaintiff also objects to this Interrogatory because it calls for a legal conclusion and the burden is on Defendants to prove that the COVID-19 vaccine is the least restrictive means of furthering its compelling government interest. Plaintiff further objects to this interrogatory to the extent it seeks information that is readily or more accessible to Defendants from Defendants' own files, from documents or information in Defendants' possession, or from documents or information that Defendants previously produced to Plaintiff. Additionally, this Interrogatory is irrelevant to the extent it seeks information that is not reasonably related to any claim or defense in this case and is unlikely to lead to the discovery of admissible evidence.

*Id.* With respect to Interrogatory 12, Plaintiffs made the same objections as with Interrogatory 11, and added an objection using language similar to: "Plaintiff objects to this Interrogatory to the extent that it is duplicative of the information sought by Interrogatory No. 11." *Id.* All responses refer to "plaintiffs' briefing" or the response to Interrogatory 11. *Id.*

Class representative Plaintiffs' objections are unfounded. Under Rule 33(a)(2), "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact." And "[t]he fact that an interrogatory calls for a thorough response—one that will take time and effort to answer—does not make it improper." *Areizaga*, 314 F.R.D. at 437. Here, an evaluation of the Government's compelling interest and the availability of less restrictive means that are "equally effective" requires the application of law to facts. A bare reference to "Plaintiffs' briefing" is not an adequate response. And while Interrogatories 11 and 12 overlap, they ask distinct questions and are not duplicative: 11 asks what less restrictive means are available to prevent Plaintiff from becoming infected or ill; and 12 asks what less restrictive means are available to prevent the spread of COVID-19 within the unit. DEX1. Plaintiffs acknowledge that they generally lack the knowledge, expertise or authority to make judgements about the Government's compelling interest, or the effectiveness of less restrictive means. They nonetheless have submitted personal testimony on those precise points. *See, e.g.,* EOD1 Decl. ¶¶ 20-21, ECF No. 17-8, at App. 001020-21; SEAL 3 Decl. ¶ 12, ECF No. 17-6, at App. 000882-84; DEX16 (Tr.), at App.766-68. And Plaintiffs

have submitted other evidence on these points as well. *See, e.g.*, Long Decl., ECF Nos. 17-1 and 17-2, at App.000091-102; ECF No. 17-5, at App. 000321-331. If Plaintiffs wish to challenge the Government's compelling interest in vaccination, they must be willing, at a minimum, to answer questions about any knowledge they claim to have on the subject.

The Court should direct all Plaintiffs to supplement their interrogatory responses with complete and meaningful answers within 2 weeks.

### IV.   ALL PLAINTIFFS MUST PRODUCE RESPONSIVE DOCUMENTS IN A REASONABLE AMOUNT OF TIME.

To date, Plaintiffs (whether class representatives or not), have not produced a single responsive document, nor given a date certain by which they will do so.  As set forth above, Plaintiffs identified a small number of documents as responsive to interrogatories 2, 5, and/or 8, and referred to other documents in other interrogatory responses. Plaintiffs then declined actually to produce those documents in response to the RFPs seeking documents identified in the interrogatories. DEX2 (RFPs) (App.282-84); DEX9-DEX12(App.636-87). They also declined to actually produce the category of documents identified in their initial disclosures, *see* DEX1 at RFP1, or any other document they identify as responsive. *See* DEX9-DEX12.

Defendants agreed to forego production of the various versions of the Bible cited, any publicly available Navy policy documents, and any publicly available document to which Plaintiffs could provide a website link, and Plaintiffs said they would provide any supplements by August 12, 2022. DEX13, at App.693-99. Plaintiffs still produced nothing, and provided no links. *Id.* at 689-91. Defendants are willing to limit the motion to compel still further to exclude: (1) any document that Plaintiffs can specifically identify as previously produced or submitted in this action (with reference to bates number or ECF and page number); and (2) the RARs as submitted, provided the parties can reach some agreement on the completeness and authenticity of the RARs/appeals in Defendants' possession. Defendants otherwise request the Court issue an order compelling production of all other responsive documents.

## A.   RFP1 – Initial Disclosures.

In RFP1, Defendants sought "Any and all documents identified in Plaintiffs' initial disclosures in this action, without regard to date limitations." DEX2 (App.282). In initial disclosures, Plaintiffs identified "the following categories of documents and tangible things in their possession, custody, or control that Plaintiffs may use to support their allegations in this case": "Documents related to Named Plaintiffs' religious accommodation requests"; "Documents related to the fifty-point standard operating procedure used by Vice Admiral Nowell and his staff."; and "Documents related to the Navy's policies and procedures concerning religious accommodation requests." DEX15 (App.714). Despite having disclosed these broad categories as documents Plaintiffs have and may use, each of the class representatives objected to this RFP:

> Plaintiff objects to this [RFP] as overbroad and unduly burdensome to the extent it seeks documents or information that are readily or more accessible to Defendants from Defendants' own files, from documents or information in Defendants' possession, or from documents or information that Defendants previously produced to Plaintiff. Plaintiff also objects to this Request being overbroad and unduly burdensome because there is no time limitation on the scope of the request. Plaintiff further objects to the extent that the information requested is not reasonably related to any claim or defense and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff additionally objects to the extent that the information requested is protected from disclosure by the attorney-client privilege and the clergy privilege and not in Plaintiff's possession, custody, or control.

DEX9-12(App.641, 654, 667 680). Each class representative Plaintiff responded: "see Plaintiff's [RAR], which was submitted to Defendants in September 2021, which Defendants possess. *See also* Plaintiff's response to Interrogatory No. 5, dated July 7, 2022." *Id.* The objections are unfounded, given Plaintiffs' identification of these categories as relevant documents in their possession that they may rely on. Plaintiffs have not requested these documents from Defendants to date, but they have previously affirmatively stated that these are documents they have and may rely on. They should produce them forthwith. If they do not, they should not be permitted to rely on them.

At meet and confer, Plaintiffs insisted the relevant documents were publicly available or in Defendants' possession. DEX13(App.689-90). This is not a valid objection under Rule 26 or Rule 34,

because Plaintiffs have not shown that production would be burdensome in any way, and courts routinely order the production of documents that may be available publicly or from other sources. *See Martino v. Kiewit N.M. Corp.,* 600 F. App'x 908, 911 (5th Cir. 2015) ("[E]ven if a document is publicly available or in the opposing party's possession, a party must still disclose it under Rule 26(a)(1)(A) to provide notice of evidence central to its claims or defenses."); *Simpson v. Hexion Specialty Chems.,* No. 06-798, 2007 WL 9710857, at *6 (M.D. La. Sept. 19, 2007) ("[T]o the extent plaintiffs have . . . 'publicly available' documents in their possession, custody or control and they are relying upon them in support of their claims in this litigation, they have an obligation to produce them to the defendants."); *see also Phillips v. Hanover Ins. Co.,* No. 14-871, 2015 WL 1781873, at *2 n.1 (W.D. Okla. Apr. 20, 2015) ("Courts consistently hold that parties have an obligation to produce even publicly available information.") (collecting cases); *Washington-St. Tammany Elec. Coop., Inc. v. La. Generating, LLC,* No. CV 17-405-JWD-RLB, 2019 WL 1804849, at *6 (M.D. La. Apr. 24, 2019); *McGrath,* 1994 WL 45162 at *3; *Kerschman v. Nationwide Relocation Servs., Inc.,* No. 10-62426-CIV, 2012 WL 13005528, at *6 (S.D. Fla. May 7, 2012).

Plaintiffs also claim that the only documents in these broadly-worded categories in Plaintiffs' disclosures are the RARs and policies. That seems unlikely, especially given Plaintiffs' reliance on emails and other documents related to the RARs at the PI hearing. *See, e.g.,* DEX16, at App.721-22, 735-55. At a bare minimum, Plaintiffs must produce the documents identified by Plaintiffs as within their possession, or they should be prevented from relying on anything else.

### B.  Documents Related to Interrogatories.

In RFPs 3 and 4, Defendants sought: "Any and all documents identified in response to Defendants' interrogatories in this action" and "Any and all documents used, consulted or referred to in responding to Defendants' interrogatories in this action." DEX2(App.282). In response to RFP3, each class representative Plaintiff states: "See Plaintiff's Responses to Defendants' First Set of Interrogatories, dated July 7, 2022." DEX9-DEX12(App.642, 655, 668, 681). In response to RFP4, each class representative objects to the extent it is "duplicative" with RFP3, objects "to the extent it

seeks" privileged information, and responds: "see Plaintiff's response to Interrogatory No. 2, dated July 7, 2022. *Id.* Several other RFP responses also refer generally to interrogatory responses in lieu of producing documents, without making any specific objections or explaining what is being withheld as a result. *See* DEX9-DEX12 (see responses to RFPs 2, 5-7 in each response). Each of the RFPs, like the interrogatories referenced in response, seek a limited category of discrete information relevant to evaluation of Plaintiffs' claims, including the nature, scope and sincerity of their religious objections, the burden on those beliefs, and the availability of less restrictive means to accommodate those beliefs.

These are inadequate responses because they do not actually provide any responsive documents, nor a valid basis for withholding. To the extent Plaintiffs are relying on their argument that the documents are available publicly or in Defendants' possession, that argument fails under settled law. *See supra* pp.20-21. Plaintiffs' document production for each such request where they rely on interrogatory responses is also inadequate because their identification of documents in the interrogatory responses is inadequate. If the Court orders supplementation of the interrogatory responses such that Plaintiffs must identify additional documents, Plaintiffs must also produce those documents as responsive to the relevant RFPs.

### C. RFP 8 – Communications and Social Media Documents.

RFP 8 seeks "Any and all documents that describe, relate, refer to, or reflect any posts you have made on social media . . . , blogs, internet message boards, chat rooms, or other public forums online regarding your religious beliefs, the COVID-19 vaccines, or DoD/Navy's COVID-19 vaccination requirement." DEX2; *see also id.* at 2 (instruction limiting to documents since Aug. 23, 2021) (App. 279, 283). Each class representative responds:

> Plaintiff objects to this Request for Production because it is overly broad, unduly burdensome, and seeks irrelevant information. It is overbroad because it seeks all social media posts related to Plaintiff's beliefs with no limitations related to the beliefs that are the subject of this action. Because there are no limitations, this Request also seeks irrelevant information. Additionally, Plaintiff objects to the Request for Production to the extent it is duplicative of Requests No. 1–7. Plaintiff also objects to this Request for Production to the extent it seeks information protected by the attorney-client, work product, and/or clergy privilege.

DEX9-12(App.644-45, 657-58, 670-71, 683-84). No Plaintiff produced a document. *Id.* SEAL1, SEAL2, and EOD1 claimed to have no responsive documents, and SEAL3 claims to "not engage in social media" but did not state that there were no responsive documents. *Id.* But when pressed to confirm that searches were done and these responses were complete, Plaintiffs' counsel admitted that they could not confirm this, and instead stood on their objection that RFP 8 seeks "irrelevant information." DEX13(App.690).

The request seeks information about the scope of the beliefs which are the subject of this action. Plaintiffs appear to object to the extent it seeks information about religious beliefs without reference to the vaccine requirement, but they do not respond to any part of the request, including the requests for social media posts about the vaccine requirement. Responses to any part of the request would shed light on several issues: sincerity, substantial burden, adverse consequences, the events highlighted by Plaintiffs as relevant in their testimony, less restrictive means, and possibly other issues. The request is not burdensome; the instruction limits it to social media statements since August 23, 2021 on topics directly relevant to Plaintiffs' claims.

## V.   ALL PLAINTIFFS MUST PRODUCE DISCRETE MEDICAL INFORMATION.

Defendants served each Plaintiff with one interrogatory and two RFPs seeking discrete sets of medical information relevant to the claims here, and Plaintiffs have refused to respond. Interrogatory 13 seeks identification of "each and every Healthcare Provider from whom you have received medical evaluation, treatment, care, or medication, at any time within the last five years, and the nature of the medical evaluation, treatment, care, or medication sought and provided." DEX1(App.9). RFP9 seeks "each and every document that refers, reflects, or relates to your medical evaluation, treatment, care, or medication by a Healthcare Provider, at any time within the last five years, including all medical records of such care, and all medical records reflecting your receipt of vaccinations (without regard to date)." DEX2(App.315-16). RFP10 provides: "In lieu of producing medical records described in RFP 9 that are held by a DoD component, you may produce a fully executed DD Form 2870 authorizing

23

release of the requested records to Government counsel in this action. The DD Form 2870 can be

found here: https://www.esd.whs.mil/Portals/54/Documents/DD/forms/dd/dd2870.pdf". *Id.*

> Class representative Plaintiffs object similarly to each such request:

> Plaintiff objects to this Interrogatory because it is overbroad, unduly burdensome, irrelevant, arbitrary, and disproportionate to the needs of this case. The Interrogatory is overly broad and irrelevant because it seeks information regarding each and every Healthcare Provider from whom medical evaluation, treatment, care, or medication has been received without any explanation of how this information is reasonably related to any claim or defense in this case. Responding to such an uninhibited fishing expedition into all aspects of Plaintiff's medical history places an undue burden on Plaintiff that is disproportionate to the needs of this case. Additionally, the request for Plaintiff's medical history from the past five years is an arbitrary timeframe that is not reasonably related to any claim or defense in this case. Plaintiff's medical history over the past five years is not reasonably calculated to lead to the discovery of admissible evidence.

*See* DEX3-6(App.570, 586, 602, 620); DEX9-12 (similar RFP objections) (App.645-46, 658-59, 671-

72, 684-85). At the time of the meet and confer, class representatives were still considering whether

to resolve this motion by providing the consent form. DEX13(App.690).

Defendants seek this medical information because it is relevant to multiple issues before the

Court. Most of Plaintiffs' objections to the COVID-19 vaccine (e.g.: testing on fetal cells that may be

derived from an abortion, produced using animal cells) also apply to other common medical

treatments, and people hold a variety of beliefs related to these treatments.[9] Accordingly, in order to

determine the scope of a Plaintiff's objection, it is relevant to determine how or if the Plaintiff draws

lines between treatments with connections to fetal cell lines. This could shed light on Plaintiffs'

sincerity, *see supra* p. 11, and is relevant to other issues before the Court as well. If Plaintiffs do not

abstain from other products connected to fetal cell lines, they may have drawn a religious distinction

between those products. (If they have not drawn a religious distinction, it may suggest that taking such

---

[9] *See, e.g.*, Brett Salkeld, You Can Have Your Tylenol Too: A Note on the Objections of Some Catholics to Using COVID-19 Vaccines, *Church Life Journal* (Oct. 6, 2021), https://perma.cc/8REX-REQ8; Rev. Nicanor Pier Giorgio Custriaco, O.P., Moral Guidance on Using COVID-19 Vaccines Developed with Human Fetal Cell Lines, *Public Discourse* (May 26, 2020), https://perma.cc/DPT9-A3PX; Fr. Matthew P. Schneider. L.C., If Any Drug Tested on HEK-293 Is Immoral, Goodbye Modern Medicine, *Through Catholic Lenses* (Jan. 28, 2021), https://perma.cc/7VCY-UXLP.

products does not impose a substantial burden on their beliefs.) Even if Plaintiffs are sincere and have shown a substantial burden, the defined scope of their objection is relevant to other issues before the Court, such as whether other available vaccines, such as Novavax or any of the WHO-listed vaccines, would burden Plaintiffs' religious beliefs. Novavax, recently authorized by FDA, was not produced or developed using fetal cell lines, and does not utilize mRNA technology. Plaintiffs whose sincere religious objections are limited to those issues now have a less restrictive alternative that is easily available to them. *See New Doe Child #1*, 891 F.3d at 590–91. On the other hand, if Plaintiffs' objections to fetal cells will sweep more broadly, it may otherwise affect their service or deployment eligibility, an issue on which Plaintiffs have sought relief. And, of course, at least one Plaintiff put his medical treatment directly at issue at the hearing, claiming that his RAR made it difficult to receive necessary medical treatment. *See* DEX16, at App.732-34; *see also* ECF No. 63. Defendants dispute that factual allegation and are entitled to discovery. None of these questions are tied to the validity or plausibility of Plaintiffs' beliefs, which is not at issue.

The request is therefore likely to produce relevant information and Plaintiffs have put forward no reason to believe it is burdensome. It does not cover their entire medical history; because some Plaintiffs have asserted that their beliefs have evolved in recent years, the request is reasonably limited to the most recent 5 years. The vast majority of Plaintiffs' medical records are likely easily obtainable using the form provided in RFP 10. Plaintiffs' privacy interests are further protected at this stage by the protective order.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion to Compel and direct the non-class-representative Plaintiffs to respond to discovery, including production of responsive documents, within 2 weeks and direct class representatives to supplement their discovery responses, including supplemental responses to Interrogatories 5-9, 11-13, and production of all responsive documents, within 2 weeks.

Dated: August 18, 2022                    Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Director

*/s/ Amy E. Powell*
ANDREW E. CARMICHAEL (VA Bar. No. 76578)
AMY E. POWELL
Senior Trial Counsel
STUART J. ROBINSON
Senior Counsel
ZACHARY A. AVALLONE
LIAM C. HOLLAND
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (919) 856-4013
Fax: (202) 616-8470
Email: amy.powell@usdoj.gov

*Counsel for Defendants*