No. 22-10077

# In the United States Court of Appeals for the Fifth Circuit

U.S. Navy SEALs 1-26; U.S. Navy Special Warfare Combatant Craft Crewmen 1-5; U.S. Navy Explosive Ordnance Disposal Technician 1; U.S. Navy Divers 1-3,

*Plaintiffs-Appellees,*

*v.*

Joseph R. Biden, Jr., in his official capacity as President of the United States of America; Lloyd Austin, Secretary, U.S. Department of Defense, individually and in his official capacity as United States Secretary of Defense; United States Department of Defense; Carlos Del Toro, individually and in his official capacity as United States Secretary of the Navy,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Northern District of Texas, Fort Worth Division
No. 4:21-cv-01236

## MOTION TO SUPPLEMENT THE RECORD

Kelly J. Shackelford
Jeffrey C. Mateer
Hiram S. Sasser, III
David J. Hacker
Michael D. Berry
Justin Butterfield
Jordan E. Pratt
Danielle A. Runyan
Holly M. Randall
First Liberty Institute
2001 W. Plano Pkwy., Ste. 1600
Plano, Texas 75075
Tel: (972) 941-4444

Heather Gebelin Hacker
Andrew B. Stephens
Hacker Stephens LLP
108 Wild Basin Road South
Suite 250
Austin, Texas 78746
(512) 399-3022 (phone)
heather@hackerstephens.com

*Counsel for Plaintiffs-Appellees*

Plaintiffs-Appellees hereby move to supplement the record before this Court with the deposition transcript of Admiral William K. Lescher. In support, Plaintiffs-Appellees state as follows:

1.      On January 24, 2022, Defendants filed the Declaration of Admiral William Lescher, Vice Chief of Naval Operations (the "Declaration") in support of their Motion for a Partial Stay Pending Appeal. ROA.22-10534.2578-96. In the Declaration, Admiral Lescher makes factual assertions regarding various topics, including the harm the district court's injunction would cause to the Navy, the necessity of the Navy's COVID-19 vaccine mandate, and COVID-19's threat to the Navy. *See generally id.*

2.      The Declaration is a key piece of evidence in this case. In fact, when the Supreme Court granted Defendants' Motion for Partial Stay, Justice Kavanaugh cited the Declaration as a reason for granting the partial stay. *Austin v. U. S. Navy Seals 1–26*, 142 S. Ct. 1301, 1302 (2022) (Kavanaugh J., concurring). Defendants also cite the Declaration extensively in their Opening Brief and in their Supplemental Brief and argue the statements made in the Declaration and Admiral Lescher's resulting judgment are entitled to deference. *See* Opening Br. at 35-38; Supp. Br. at 16.

3.      Recently uncovered facts illustrate that the Declaration is entitled to no such deference. On June 30, 2022, Plaintiffs deposed Admiral Lescher. During the deposition, Admiral Lescher demonstrated numerous times that he did not have the personal knowledge to attest to the facts set forth in the Declaration and that significant portions of his declaration amount to unsubstantiated speculation. *See,*

*e.g.*, Mot. Appx. Ex. A (Tr. at 22:11–22:20, 23:4–23:6, 23:16–24:1 (stating details regarding the effect COVID-19 had on naval ships was "not generally" within his purview and that he did not speak to individuals with such knowledge before drafting his declaration));[1] *id.* at 33:18–34:8 (stating he was unaware of any combat operations negatively impacted by COVID-19);[2] *id.* at 50:15–51:16 (stating he was unaware of specific examples of COVID-19 made a medical evacuation more difficult, was contracted through a rebreathing device, or was contracted on a submarine);[3] *id.* at

---

[1] Q Do you know how many other ships, other than the 22 you mentioned that currently have COVID cases, were unable to accomplish their mission prior to the vaccine mandate as a result of COVID-19 infections other than ROOSEVELT?
A Again, that type of detail is not generally in the purview of the vice chief.
. . .

Q Did you speak with any of those individuals [with knowledge about the ships] prior to or while preparing your -- your declaration concerning this statement or – or any other statements contained herein?
A . . . nothing specific in the context of this declaration.

[2] Q Okay. Can you identify any combat operations or combat missions that could not be completed successfully as a result of COVID-19?
A . . . I believe the most accurate response to that is I'm unaware of any combat failure, as well I'm -- because those type of details and missions would not be under the purview of the vice chief . . . .

[3] Q Okay. Do you -- can you identify any Naval Special Warfare missions in which COVID-19 infection prevented a medical evacuation of a Service member?
. . .
A No.

73:16–73:20 (stating he had not had any discussions with individuals with relevant knowledge regarding missions impacted by COVID-19 prior to signing his declaration);[4] *id.* at 81:19–82:1 (stating he did not review any documents or reports while reviewing and editing his declaration).[5]

    4.    The district court correctly rejected Defendants' arguments that courts owe blind deference to military commanders on matters implicating the Religious Freedom Restoration Act (RFRA). Admiral Lescher's deposition testimony bolsters

---

Q Could you -- can you identify or are you aware of any instances in which COVID-19 made a medical evacuation of a Service member more difficult?
A No.

Q Can you identify any instances in which a Naval Special Warfare Service member contracted COVID-19 as a result of using a re-breathing device?
A Again, I would -- that would not be something that I would become aware of, but the answer is no.

Q Okay. And can you identify any instances in which Service members deployed on a submarine -- Naval Special Warfare Service members deployed on a submarine contracted COVID-19?
A I'm unaware.

[4] Q Okay. And so prior to -- prior to executing your declaration, you had not had those conversations about any specific Naval Special Warfare missions that had been impacted by – [COVID?]
A Correct.

[5] Q Okay. So you don't recall looking at any -- any documents, reports or other types of information when you were reviewing, editing the draft of your declaration. Is that right?
A That's correct.

this conclusion and demonstrates that this Court should not rely upon the Declaration while considering Defendants' appeal, or at minimum, should give it the weight appropriately given to hearsay statements made without personal knowledge. So that the Court may decide the proper weight that it should give to the Declaration in deciding this appeal, this Court should allow Plaintiffs to supplement the record with of the transcript of Admiral Lescher's deposition.

5.      Admiral Lescher's deposition testimony will also be helpful to the Court in deciding the legal issues in this appeal: namely, whether the Navy has a compelling interest that justifies the vaccine mandate as applied to religious objectors, and whether the mandate is the least restrictive means available to accomplish that interest. For instance, Admiral Lescher testified at length about his understanding that Religious Accommodation requests should be considered based on detailed individual circumstances and also take into account the recommendation of the commanding officer of the individual requesting accommodation. *See, e.g.*, Mot. Appx. Ex. A (Tr. at 17:13–18:5, 61:19–62:4, 62:17–63:1, 138:11–139:19). This is relevant because as Defendants emphasize in arguing for deference to Lescher's assertions, Admiral Lescher is the "second-highest uniformed officer in the Navy." Opening Br. 35. Admiral Lescher also testified about the Navy's permissive attitude toward individuals at recognized high risk for complications or severe cases of COVID-19, in contrast to its treatment of religious objectors. *See, e.g.*, Mot. Appx. Ex. A (Tr. at 155:14–157:16, 159:1–159:6, 165:7–167:7, 170:18–173:3).

6.      Courts have long recognized that they have the authority to permit the appellate record to be supplemented when doing so would be in the interest of

justice. *Gibson v. Blackburn*, 744 F.2d 403, 405 n.3 (5th Cir. 1984); *see also Ross v. Kemp*, 785 F.2d 1467, 1474 (11th Cir. 1986) (recognizing the court's "inherent equitable authority to enlarge the record and consider material that has not been considered by the court below"); *Turk v. United States*, 429 F.2d 1327, 1329 (8th Cir. 1970) (authorizing enlargement of record on appeal with preliminary hearing evidence not presented to trial court if it is "in the interest of justice" to do so); *Gatewood v. United States*, 209 F.2d 789, 792 n. 5 (D.C. Cir. 1953) (considering a transcript of preliminary proceedings which had not been before trial court because it was in interest of both parties and due administration of justice).

7.    Courts address requests to supplement an appellate record on a case-by-case basis. *Ross*, 785 F.2d at 1474; *see also Singleton v. Wulff*, 428 U.S. 106, 121 (1976) (stating the "matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases.").

8.    Factors courts consider when examining a request for supplementation include whether the supplemental materials contain information that will illuminate an issue before the court and whether remanding the case to the district court for consideration of the additional material would be contrary to both the interests of justice and the efficient use of judicial resources. *See Vital Pharms., Inc. v. Alfieri*, 23 F.4th 1282, 1288 (11th Cir. 2022) (allowing supplementation because the supplemental material illuminated an important issue in the appeal); *Teamsters Loc. Union No. 117 v. Washington Dep't of Corr.*, 789 F.3d 979, 986 (9th Cir. 2015) (allowing supplementation for the limited purpose of confirming harms

acknowledged by a party in general terms during discovery and because a remand would merely prolong the proceedings); *Ross*, 785 F.2d at 1475 (discussing the factors); *see also Gibson*, 744 F.2d at 405 n.3 (permitting supplementation because remanding the case would unnecessarily prolong proceedings and because the evidence confirmed the proper resolution of the case).

9.      Here, the interests of justice weigh in favor of allowing supplementation. The preliminary injunction at issue in this interlocutory appeal was partially stayed by the Supreme Court. The important issues in this case show that supplementing the record with this pertinent information will be helpful to the Court. Further, the deposition transcript that Plaintiffs seek to submit to this Court undermines a key piece of evidence that was cited by Justice Kavanaugh as a reason for partially staying the injunction and deferring to high-ranking military officials. *Austin*, 142 S. Ct. at 1302 (Kavanaugh J., concurring). As demonstrated by Admiral Lescher's deposition testimony, the Declaration was largely speculation and factual allegations that were beyond Admiral Lescher's personal knowledge. Illumination of these facts is essential as this Court considers whether the district court's preliminary injunction was an abuse of discretion.

10. Further, remanding the case for the district court to consider this evidence would not be a good use of judicial resources. The district court already rejected the assertions in the Declaration when it denied Defendants' Motion to Stay the Preliminary Injunction. *See* ROA.22-1077.2964-73. Asking the district court to reach this conclusion again with evidence that bolsters the conclusion the court already reached would unnecessarily prolong the resolution of this case. Thus, to aid the

Court in deciding the issues pending in this interlocutory appeal and to preserve judicial resources, Plaintiffs request that the record on appeal be supplemented with the transcript from Admiral Lescher's deposition.[6] In the alternative, Plaintiffs request that the Court take judicial notice of the transcript. *See Hall v. City of Houston*, No. 21-20451, 2022 WL 3031306, at *2 (5th Cir. Aug. 1, 2022) (judicial notice appropriate where facts "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." (quoting Fed. R. Civ. P. 201)).

11.    Counsel for Plaintiffs-Appellees conferred with counsel for Defendants-Appellants regarding this Motion and the relief requested. Defendants-Appellants oppose the relief sought by this Motion.

---

[6] Defendants are not prejudiced by this request as they rely on Admiral Lescher's Declaration on appeal, they can respond to any arguments regarding the testimony in their reply brief, and they had an opportunity to make objections and ask questions during Admiral Lescher's deposition. They have also submitted an errata sheet, which is included in the appendix to this motion. *See* Mot. Appx. Ex. C.

## Conclusion

For the foregoing reasons, the Court should grant the motion to supplement the record.

Respectfully submitted.

/s/Heather Gebelin Hacker

Kelly J. Shackelford
Jeffrey C. Mateer
Hiram S. Sasser, III
David J. Hacker
Michael D. Berry
Jordan E. Pratt
Danielle A. Runyan
Ryan Gardner
Holly M. Randall
First Liberty Institute
2001 W. Plano Pkwy., Ste. 1600
Plano, Texas 75075
Tel: (972) 941-4444

Heather Gebelin Hacker
Andrew B. Stephens
Hacker Stephens LLP
108 Wild Basin Road South
Suite 250
Austin, Texas 78746
(512) 399-3022 (phone)
heather@hackerstephens.com

*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF CONFERENCE

On August 15 and 16, 2022, the undersigned conferred by e-mail with Sarah Clark, counsel for Defendants-Appellants, regarding this Motion. Defendants-Appellants oppose the relief sought on the grounds that the deposition transcript is not a part of the record under Federal Rule of Appellate Procedure 10 but will not file a further response.

/s/ Heather Gebelin Hacker
HEATHER GEBELIN HACKER

## CERTIFICATE OF SERVICE

On August 16, 2022, this motion was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1.

/s/ Heather Gebelin Hacker
HEATHER GEBELIN HACKER

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 1824 words, excluding the parts exempted by Rule 27(a)(2)(B); and (2) the typeface and type style requirements of Rule 27(d)(1)(E) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the program used for the word count).

/s/ Heather Gebelin Hacker
HEATHER GEBELIN HACKER