# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | |
|---|---|
| **U.S. NAVY SEALs 1-3;** on behalf of themselves and all others similarly situated; **U.S. NAVY EXPLOSIVE ORDNANCE DISPOSAL TECHNICIAN 1**, on behalf of himself and all others similarly situated; **U.S. NAVY SEALS 4-26**; **U.S. NAVY SPECIAL WARFARE COMBATANT CRAFT CREWMEN 1-5**; and **U.S. NAVY DIVERS 1-3**, <br><br> Plaintiffs, <br><br> v. <br><br> **LLOYD J. AUSTIN, III**, in his official capacity as United States Secretary of Defense; **UNITED STATES DEPARTMENT OF DEFENSE**; **CARLOS DEL TORO**, in his official capacity as United States Secretary of the Navy, <br><br> Defendants. | Case No. 4:21-cv-01236-O |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. ii

TABLE OF AUTHORITIES.......................................................................................... iii

INTRODUCTION ...........................................................................................................1

DISCOVERY STANDARDS ..........................................................................................2

DISCUSSION...................................................................................................................3

    I.    Ordering The Plaintiffs to Respond to Discovery Would Nullify the Efficiency of This Class Action and Would Be Disproportionate to The Needs of The Case...................................3

    II.    The Named Plaintiffs Fully Responded and Properly Objected to Defendants' Discovery Inquiries into The Sincerity of Their Religious Beliefs on More Than One Occasion, And No Further Responses Are Required.......................................................................................7

        A.    Interrogatories 3 and 6 ...............................................................................7

        B.    Interrogatory 7 ........................................................................................10

        C.    Interrogatories 5 and 8 .............................................................................13

        D.    Interrogatory 13 and Requests for Production 9 and 10...............................15

    III.    The Named Plaintiffs Have Fully Responded to Inquiries Related to Compelling Government Interest and Least Restrictive Means, And No Further Responses Are Required....................................................................................................................17

    IV.    Defendants' Motion Should Be Denied Because Relevant Requested Documents Have Been Produced.........................................................................................................19

        A.    Defendants already possess the documents within Named Plaintiffs' possession, custody, or control, or agreed to forego production of documents within the scope of Plaintiffs' initial disclosures. .............................................................................20

            1.    Defendants already possess the Named Plaintiffs' RARs and related documents....20

            2.    Defendants already possess the fifty-point standard operating procedure and related documents used by Vice Admiral Nowell. ........................................................22

            3.    Defendants agreed to forego production of any publicly available Navy policy documents...........................................................................................................22

        B.    The Named Plaintiffs produced links to documents related to Interrogatories. ............23

        C.    Plaintiffs have no responses to RFP 8 - Communications and Social Media Documents. ...................................................................................................................24

CONCLUSION ..............................................................................................................25

## TABLE OF AUTHORITIES

**Cases**

*A.A. v. Needville Indep. Sch. Dist.*, 611 F.3d 248 (5th Cir. 2010)..................................................10

*Austin v. U.S. Navy Seals 1-26,* 142 S. Ct. 1301 (2022)....................................................................12

*Brennan v. Midwestern United Life Ins. Co.*, 450 F.2d 999 (7th Cir. 1971) ...................................5

*Clark v. Universal Builders*, 501 F.2d 324 (7th Cir. 1974)................................................................5

*Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546 (11th Cir. 1986) ......................................................5

*Crawford-El v. Britton*, 523 U.S. 574 (1998)....................................................................................3

*Crosby v. Louisiana Health Serv. & Indem. Co.*, 647 F.3d 258 (5th Cir. 2011) .............................3

*Davis v. Fort Bend Cnty.,* 765 F.3d 480 (5th Cir. 2014) ................................................7, 10, 11, 16

*Dellums v. Powell*, 566 F.2d 167 (D.C. Cir. 1977) ...........................................................................5

*Earl v. Boeing Co.*, No. 4:19-CV-507, 2021 WL 3343232 (E.D. Tex. Aug. 2, 2021)...............3, 4

*Egana v. Blair's Bail Bonds, Inc.*, No. CV 17-5899, 2018 WL 10593649 (E.D. La. May 29,

    2018)................................................................................................................................................5

*Fishon v. Peloton Interactive, Inc.*, 336 F.R.D. 67 (S.D.N.Y. 2020) ...........................................3, 4

*Freeman v. United States*, 556 F. 3d 326 (5th Cir. 2009) .................................................................3

*Heller v. City of Dallas*, 303 F.R.D. 466 (N.D. Tex. 2014) ....................................................14, 19

*In re Allergan Generic Drug Pricing Sec. Litig.*, No. CV2169449KSHCLW, 2021 WL 236594

    (D.N.J. Jan. 25, 2021)....................................................................................................................6

*In re Carbon Dioxide Indus. Antitrust Litig.*, 155 F.R.D. 209 (M.D. Fla. 1993) ...................3, 4, 5

*In re Lucent Techs. Inc. Sec. Litig.*, No. 2:00-CV-621, 2002 WL 32815233 (D.N.J. July 16,

    2002)................................................................................................................................................4

*Kervin v. Supreme Serv. & Specialty Co., Inc.*, No. CV 15-01172, 2016 WL 8257256 (E.D. La.

    May 24, 2016)..................................................................................................................................6

*Moussazadeh v. Tex. Dep't of Crim. Just.,* 703 F.3d 781 (5th Cir. 2012)..................................7, 10

*Phillips Petrol. Co. v. Shutts*, 472 U.S. 797 (1985)..................................................................4

*Reynolds v. Cactus Drilling Co., LLC*, No. MO15CV00101DAEDC, 2015 WL 12660110 (W.D. Tex. Dec. 21, 2015) ................................................................................................................2

*Tagore v. United States*, 735 F.3d 324 (5th Cir. 2013) ...........................................................7, 10

*Transamerican Ref. Corp. v. Dravo Corp.*, 139 F.R.D. 619 (S.D. Tex. 1991) .............................5

*Turner v. JP Morgan Chase Bank, N.A.*, No. 3:12-CV-2701-M (BF), 2013 WL 12139324 (N.D. Tex. July 26, 2013) ...............................................................................................................12

*United States v. Ballard,* 322 U.S. 78 (1944) .....................................................................10, 16

*United States v. Seeger*, 380 U.S. 163 (1965) .........................................................................7, 9

## Other Authorities

3 William B. Rubenstein, Newberg on Class Action (6th ed.)...................................................4, 5

Br. of Appellee, *U.S. Navy SEALs 1-26 v. Biden,* No. 22-10077 .................................................7

David Prentice, Ph.D., *Update: COVID-19 Vaccine Candidates and Abortion-Derived Cell Lines,* Charlotte Lozier Institute (June 2, 2021), https://lozierinstitute.org/update-covid-19-vaccine-candidates-and-abortion-derived-cell-lines/...............................................................10

## Rules

Fed. R. Civ. P. 26(b)(1) ........................................................................................................passim

Fed. R. Civ. P. 33...............................................................................................................10, 23

Navy Bureau of Personnel Instruction (BUPERSINST) 1730.11A, "Standards and Procedures Governing the Accommodation of Religious Practices" (Mar. 16, 2020) ...............................18

## INTRODUCTION

The class representative Plaintiffs, SEALs 1-3 and EOD 1 ("Named Plaintiffs"), satisfied their discovery obligations by fully responding and properly objecting to Defendants' first round of discovery requests in a timely manner. Class Counsel also conferred with Defendants' counsel to provide additional insight into the sufficiency of each of the Named Plaintiff's responses and objections. As explained below, Defendants lack a basis to compel further answers from the Named Plaintiffs because the Named Plaintiffs have already produced responsive information.

The Court should deny Defendants' Motion for four reasons. First, in class action litigation only the Named Plaintiffs must respond to discovery. Permitting Defendants to conduct discovery of all non-class representative Plaintiffs ("Plaintiffs") who were originally named in this action nullifies the efficiency of this class action litigation. Requiring all Plaintiffs to respond is also disproportionate to the needs of the case. Thus, the Court should not require the Plaintiffs to respond to Defendants' First Set of Interrogatories and Requests for Production of Documents or any additional discovery requests issued in this matter.

Second, the Named Plaintiffs provided Defendants with significant information pertaining to the sincerity of their religious beliefs. The Named Plaintiffs' detailed explanations of their religious objections to the COVID-19 vaccine and its substantial burden on their beliefs were captured in their Religious Accommodation Requests ("RARs"), declarations filed in this matter, and open court testimony at the Preliminary Injunction Hearing on December 20, 2021, where Defendants' counsel had the benefit of cross-examining Named Plaintiffs SEAL 2, SEAL 3, and EOD 1 on the issue of sincerity. Those documents and testimony fully explain the nature and scope of the Named Plaintiffs' religious beliefs, religious objections, and how Defendants' COVID-19 vaccine mandates substantially burden their religious beliefs. The Court should not compel the

Named Plaintiffs to provide yet another answer to questions that they already fully and completely answered multiple times in this litigation or to provide medical information that is wholly irrelevant and disproportionate to the needs of this case.

Third, the Named Plaintiffs provided significant information on the issues of compelling government interest and least restrictive means. Information relevant to those matters was fully briefed over the course of this litigation and, most recently, on appeal. And as Class Counsel specifically stated in their objections on behalf of each of the Named Plaintiffs, the information is readily or more accessible to Defendants from Defendants' own files or from documents or information in Defendants' possession. Because the Named Plaintiffs fully responded to each of Defendants' requests pertaining to these issues, the Court should not compel the Named Plaintiffs to provide supplemental information.

Fourth, Defendants ask the Court to compel production of documents that Defendants already possess, have been filed in this matter already, or simply do not exist. Today, Class Counsel produced links to documents identified in the relevant interrogatories. But there are no responsive documents related to social media and online public forums, meaning there is nothing to compel. Therefore, because the Named Plaintiffs do not currently possess additional responsive documents, the Court should deny this portion of Defendants' motion.

**DISCOVERY STANDARDS**

Under Rule 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "The party seeking discovery bears the initial burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence." *Reynolds v. Cactus Drilling Co., LLC*, No. MO15CV00101DAEDC, 2015 WL 12660110, at *2 (W.D. Tex. Dec. 21, 2015). The scope of

discovery is within the sound discretion of the trial judge, *see Freeman v. United States*, 556 F. 3d 326, 341 (5th Cir. 2009), who may "tailor discovery narrowly and . . . dictate the sequence of discovery," *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998). The Court must limit discovery, if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" or "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). Rule 26(b) may not be used "as a license to engage in an unwieldy, burdensome, and speculative fishing expedition." *Crosby v. Louisiana Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011). The Court must therefore be on guard against "abusive discovery." *Id.*

## DISCUSSION

### I. Ordering The Plaintiffs to Respond to Discovery Would Nullify the Efficiency of This Class Action and Would Be Disproportionate to The Needs of The Case.

The Court should reject Defendants' improper attempt to obtain discovery from all Plaintiffs in this class action. While all Plaintiffs originally filed claims against Defendants and obtained a preliminary injunction from the Court, Defendants overlook the transformation that occurred when the Plaintiffs amended the complaint and the Court certified Plaintiffs' proposed classes and named the four Named Plaintiffs as class representatives. *See Fishon v. Peloton Interactive, Inc.*, 336 F.R.D. 67, 70 (S.D.N.Y. 2020) (stating "class certification is a pivotal stage in civil litigation"). "By virtue of not being chosen as class representatives, these Plaintiffs remain as passive class members, on equal footing with all other non-representative class members." *In re Carbon Dioxide Indus. Antitrust Litig.*, 155 F.R.D. 209, 211 (M.D. Fla. 1993); *see also Earl v. Boeing Co.*, No. 4:19-CV-507, 2021 WL 3343232, at *2 (E.D. Tex. Aug. 2, 2021) ("By declining to continue holding himself out as a putative class representative, upon certification, [a non-class representative plaintiff] would be on equal footing with all other non-representative class members

3

as an absent class member."); *In re Lucent Techs. Inc. Sec. Litig.*, No. 2:00-CV-621, 2002 WL 32815233, at *2 (D.N.J. July 16, 2002) (affirming a magistrate's holding that "the forty-one non-lead, non-representative plaintiffs should be treated as passive class members and thus not subject to discovery"); *see also* 3 William B. Rubenstein, Newberg on Class Action § 9:12 (6th ed.) (stating "several courts have held that 'named plaintiffs' who are not 'class representatives' should be treated as functionally equivalent to absent class members for discovery purposes").

"[The Plaintiffs], like the other absent class members, [are] 'not required to do anything. [They] may sit back and allow the litigation to run its course, content in knowing that there are safeguards provided for [their] protection.'" *Earl*, 2021 WL 3343232, at *2 (quoting *Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 810 (1985)). "Were Defendants permitted to conduct 'discovery of . . . named plaintiffs who were not class representatives,' the Court, in effect, would be condoning 'the functional equivalent of permitting discovery of absent class members,' thereby nullifying the efficiency inherent in class-action litigation." *Id.* (quoting 3 William B. Rubenstein, Newberg on Class Action § 9:12 (5th ed.)); *see also In re Carbon*, 155 F.R.D. at 212 ("The efficiencies of a class action would be thwarted if routine discovery of absent class members is permitted, particularly on the issue of liability."); *Fishon*, 336 F.R.D. at 69 ("Extensive discovery of putative class members could undercut those efficiency gains by implementing the very individualized approach that class actions are intended to avoid."). "In certifying the class, this Court found that the claims of the class representatives were typical of the class as a whole." *In re Carbon*, 155 F.R.D. at 212; *see also* Dkt. 140 at 12-14. This Court should deny Defendants' attempts to undermine the efficiencies Plaintiffs gained by obtaining class certification and create a burden disproportionate to the needs of this case.

Denial of discovery is especially appropriate here because Defendants failed to demonstrate a "particularized need to obtain information not available from the class representatives." *See In re Carbon*, 155 F.R.D. at 212. The party seeking discovery of non-class representatives bears the burden of proof as to why the discovery is necessary. *See Egana v. Blair's Bail Bonds, Inc.*, No. CV 17-5899, 2018 WL 10593649, at *4 (E.D. La. May 29, 2018). To show a particularized need, some courts have required defendants to prove: "(1) the discovery is not designed to take undue advantage of class members or to reduce the size of the class, (2) the discovery is necessary, (3) responding to the discovery requests would not require the assistance of counsel, and (4) the discovery seeks information that is not already known to the defendants." *Id.* (citing *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1556 (11th Cir. 1986)), and *Clark v. Universal Builders*, 501 F.2d 324, 340-41 (7th Cir. 1974)).[1] Other courts have applied a multi-factor test requiring "the party seeking discovery to prove that information sought (1) is not sought with the purpose or effect of harassment or altering membership of the class; (2) is directly relevant to common questions and unavailable from the representative parties; and (3) is necessary at trial of issues common to the class." *Id.* (citing *Dellums v. Powell*, 566 F.2d 167, 187 (D.C. Cir. 1977)); *see also Transamerican Ref. Corp. v. Dravo Corp.*, 139 F.R.D. 619, 622 (S.D. Tex. 1991).

Regardless of which test the Court chooses to apply, Defendants failed to meet their burden. The Court need look no further than the fact that Defendants served identical Requests for Production and Interrogatories on the Plaintiffs and Named Plaintiffs to see that no particularized need exists here. Additionally, Defendants' Motion concedes that they seek to reduce the size of the class based on the unsupported assertion that there have been "changes in circumstances." Dkt.

---

[1] Defendants cite *Brennan v. Midwestern United Life Ins. Co.*, 450 F.2d 999, 1005 (7th Cir. 1971), to argue they have an unfettered right to engage in discovery of absent class members, but many courts have criticized *Brennan*. *See, e.g.*, *Cox*, 784 F.2d at 1556; *In re Carbon*, 155 F.R.D. at 212. Indeed, even the Seventh Circuit has significantly narrowed *Brennan*. *See Clark*, 501 F.2d at 340–41.

192 at 7. The discovery requests at issue also seek to challenge the sincerity of Plaintiffs' beliefs, which is improper for all Plaintiffs for the same reason it is improper for the Named Plaintiffs. *See* Part II, *infra*. Defendants offer nothing beyond speculation that they might use information obtained in discovery to move to decertify the class without making any effort to explain why limiting discovery to the Named Plaintiffs would be insufficient for the needs of this case.[2] But speculation is insufficient to make the "strong showing" courts require to compel all Plaintiffs to be subjected to the burdens of discovery in a class action case. *See In re Allergan Generic Drug Pricing Sec. Litig.*, No. CV2169449KSHCLW, 2021 WL 236594, at *2 (D.N.J. Jan. 25, 2021).[3] This Court should therefore deny Defendants' attempt to obtain discovery from Plaintiffs.

Lastly, while Defendants assert that "all other objections have been waived" by Plaintiffs, "Plaintiffs expressly reserve[d] the right to supplement, clarify, revise, or correct any or all of the objections herein, and to assert additional objections or privileges, in one or more subsequent supplemental response(s)," and "[did] not waive their right to amend their objections," as expressly stated in their July 7, 2022 objections to Defendants' First Set of Interrogatories. Defs.' App. 626-27. Should this Court overrule Plaintiffs' objections, Plaintiffs have preserved their opportunity to assert individualized objections in accordance with this Court's rulings on Defendants' Motion.

---

[2] *See* Br. of Appellee at 61, *U.S. Navy SEALs 1-26 v. Biden,* No. 22-10077.

[3] Defendants cite multiple cases where courts permitted defendants to engage in individualized discovery in Fair Labor Standards Act ("FLSA") collective actions. Dkt. 192 at 8. But FLSA collective actions and Rule 23 class actions are inherently different. *Kervin v. Supreme Serv. & Specialty Co., Inc.*, No. CV 15-01172, 2016 WL 8257256, at *3 (E.D. La. May 24, 2016) (distinguishing Rule 23 classes from FLSA collective actions). FLSA collective actions are inherently fact-specific, and examination of a plaintiff's particular factual circumstances and employment settings is often necessary to determine the merits of a FLSA claim. *Id.* Here, this Court has already determined that any factual differences among class members are irrelevant because all class members unsuccessfully sought a religious accommodation from the COVID-19 vaccine mandate. Dkt. 140 at 13-14. Thus, Defendants' reliance on FLSA cases is misplaced.

## II. The Named Plaintiffs Fully Responded and Properly Objected to Defendants' Discovery Inquiries into The Sincerity of Their Religious Beliefs on More Than One Occasion, And No Further Responses Are Required.

### A. Interrogatories 3 and 6

For Interrogatories 3 and 6, Defendants assert that they are "entitled to inquire into . . . [t]he nature and scope of Plaintiffs' religious objections to the COVID-19 vaccine, so that Defendants can assess whether they should challenge sincerity . . . ." Dkt. 192 at 5; *see also* Defs.' App. 031-32 (text of Interrogatories 3 and 6). They also claim the information they seek is "a description of the particular religious beliefs that are currently leading [the Plaintiffs] to object to the COVID-19 vaccine," and that "[the] information regarding the nature and scope of Plaintiffs' religious beliefs is directly relevant to the claims presented here for multiple reasons." Dkt. 192 at 10-11. But the Named Plaintiffs provided Defendants with answers explaining their religious beliefs and religious objections as they relate to the COVID-19 vaccine on multiple occasions and, thus, no further responses are required.

When an inquiry is made into an individual's religious beliefs, the "court's inquiry is limited to focusing upon the individual's motivation. Specifically, a court's task is to decide 'whether [the individual's beliefs] are, *in his own scheme of things*, religious.'" *Davis v. Fort Bend Cnty.,* 765 F.3d 480, 485 (5th Cir. 2014) (citing *United States v. Seeger*, 380 U.S. 163, 185 (1965)) (emphasis in original). A "belief is 'religious' if it is '[a] sincere and meaningful belief which occupies in the life of its possessor a place parallel to that filled by . . . God." *Id.* "The specific religious practice must be examined rather than the general scope of applicable religious tenets, and the plaintiff's 'sincerity' in espousing that practice is largely a matter of individual credibility." *Tagore v. United States*, 735 F.3d 324, 328 (5th Cir. 2013) (quoting *Moussazadeh v. Tex. Dep't of Crim. Just.,* 703 F.3d 781, 792 (5th Cir. 2012)).

7

In response to Interrogatories 3 and 6, the Named Plaintiffs made both specific and continuing objections, highlighting the irrelevancy, overbreadth, and unduly burdensome and inappropriate nature of the Defendants' probe into the Named Plaintiffs' sincerity.[4] Named Plaintiffs directed Defendants to their RARs, declarations filed in this matter, and hearing testimony, where applicable. Defs.' App. 564-66, 580, 582, 595-98, 612-13, 615. These materials provide an overabundance of information related to the Named Plaintiffs' sincerity. In fact, only a review of Plaintiffs' RARs was sufficient for the Navy to make its alleged individualized analysis and for this Court to determine that "[Named] Plaintiffs' beliefs about the vaccine are undisputedly sincere." Dkt. 66 at 4; *see also* Dkt. 17-6 at 2-15 (declarations of SEAL 1, SEAL 2, and SEAL 3); Dkt. 17-8 at 27-32 (declaration of EOD 1); Dkt. 59 at 7-15, 107-110 (supplemental declarations of Named Plaintiffs); Tr. of Hr'g. on Prelim. Inj. 8:15-101:3. The Named Plaintiffs have been generously forthcoming about their religious objections, and the Defendants' seeking anything further is simply an inappropriate inquiry nearing harassment. Fed. R. Civ. P. 26(g)(1)(B)(ii).

While Defendants may inquire into the Named Plaintiffs' religious beliefs as they pertain to Defendants' COVID-19 mandates, they may only pursue such inquiry for the narrow purpose of understanding the Named Plaintiffs' objections to the COVID-19 vaccine. The discovery answers and materials already possessed by the Defendants and filed in this case satisfy this inquiry. But Defendants' discovery questions exceed this narrow inquiry and seek information completely unrelated to the Named Plaintiffs' religious objections to the COVID-19 vaccine, such as the Named Plaintiffs' use of a wide variety of other products associated with aborted fetal cells or tissue without any timeframe limitations. Thus, Defendants' inquiry constitutes an uninhibited fishing expedition into all aspects of the Named Plaintiffs' religious beliefs and practices, which

---

[4] At this time, Named Plaintiffs reassert all objections made to Defendants' First Set of Interrogatories and Requests for Production. *See* Defs.' App. 559-687; 704-709.

is entirely outside the scope of Rule 26(b) and disproportionate to the needs of this case. But as Defendants now assert in their brief, they seek "only a description of the particular religious beliefs that are currently leading them to object to the COVID-19 vaccine." Dkt. 192 at 10. On that issue, the Named Plaintiffs satisfied their discovery obligations with the answers already provided, Fed. R. Civ. P. 33, and no supplemental response is required for Interrogatories 3 and 6.

Defendants also assert that "[a] full interrogatory response . . . provides evidence of whether or not the objection is religious in nature, whether it is burdened by the terms of the mandate or other policies given the presently available vaccines, and whether less restrictive means are available to accommodate Plaintiffs' beliefs," specifically pointing to the example that "Novavax may not substantially burden those beliefs."[5] Dkt. 192 at 11. But the Named Plaintiffs clearly established that their objections are "in their own scheme of things, religious," *Seeger*, 380 U.S at 185, that the COVID-19 mandate burdens their religious beliefs, and that less restrictive means, such as those that were employed almost two years prior to the availability of COVID-19 vaccines,[6] are available.

Considering the comprehensive information each Named Plaintiff provided to Defendants regarding his religious convictions and his objections to the COVID-19 vaccine through the RAR process and the additional information each Named Plaintiff provided in this litigation,

---

[5] Defendants assume that Novavax was not developed or tested with aborted fetal cell tissue. Dkt. 192 at 11-12. But not only is Novavax not FDA-approved and not mandated by the Defendants' COVID-19 vaccination requirements, but there is publicly available information to suggest that fetal cell lines may have been used in the testing phase of that vaccine. *See* David Prentice, Ph.D., *Update: COVID-19 Vaccine Candidates and Abortion-Derived Cell Lines,* Charlotte Lozier Institute (June 2, 2021), https://lozierinstitute.org/update-covid-19-vaccine-candidates-and-abortion-derived-cell-lines/.

[6] As stated in Named Plaintiffs' responses to Interrogatories 11 and 12 on least restrictive means, alternatives to vaccination worked before the vaccine was available. *See* Dkt. 17-6 at 2-15; *see also* Dkt. 196-1 at 22-23 (Tr. 33:18-34:8) (Testimony of Admiral Lescher stating that he was unaware of any combat operations negatively impacted by COVID-19).

"examin[ing] religious convictions any more deeply would stray into the realm of religious inquiry, an area into which [courts] are forbidden to tread." *Moussazadeh,* 703 F.3d at 792; *see also United States v. Ballard,* 322 U.S. 78, 86-87 (1944) ("Men may believe what they cannot prove. They may not be put to proof of their religious doctrines or beliefs"). Indeed, "the sincerity of a plaintiff's engagement in a particular religious practice is rarely challenged," and "claims of sincere religious belief in a particular practice have been accepted on little more than the plaintiff's credible assertions." *Tagore,* 735 F.3d at 328; *see also Davis,* 765 F.3d at 485-86 ("A court's inquiry is limited to focusing upon the individual's motivation."). Therefore, courts "'must refuse to dissect religious tenets just because the believer ['s] . . . beliefs are not articulated with the clarity and precision that a more sophisticated person might employ.'" *Davis,* 765 F.3d at 487 (quoting *A.A. v. Needville Indep. Sch. Dist.*, 611 F.3d 248, 261 (5th Cir. 2010)). For these reasons, supplemental responses to Interrogatories 3 and 6 are not required.

### B. Interrogatory 7

In Interrogatory 7, Defendants inquire into the substantial burden the Named Plaintiffs face as a result of the COVID-19 vaccine. Defs.' App. 566-67, 582, 598; 615-16. The Named Plaintiffs objected to this interrogatory as seeking duplicative information or information already possessed by the Defendants. *Id.* Despite these ongoing objections, each of the Named Plaintiffs directed the Defendants to his RAR, declarations filed in this matter, and, in the instance of SEALs 2 and 3 and EOD 1, to the transcript of their testimony from the December 20, 2021 Preliminary Injunction Hearing, all of which adequately describe, either in part or in whole, the substantial burden he faces. *Id.*

Defendants claim that "Plaintiffs' RARs often do not explain how their religious beliefs are substantially burdened by the military's COVID-19 vaccine requirement," or if "less restrictive

10

means will be available." Dkt 192 at 12. The example Defendants provided is that "SEAL 3's RAR . . . explains that his objection is based on the Catholic doctrine of proportionality but does not explain how he determined that the vaccine would violate these precepts." *Id.* Defendants point to the example that "Novavax may not substantially burden those beliefs." Dkt. 192 at 11.

While the Named Plaintiffs hold firm that their RARs do*, in fact, explain how their religious beliefs are substantially burdened by the military's COVID-19 vaccine requirement, as stated above, "[c]ourts 'must refuse to dissect religious tenets just because the believer['s] . . . beliefs are not articulated with the clarity and precision that a more sophisticated person might employ.'" *Davis*, 765 F.3d at 487 (quoting *A.A.*, 611 F.3d at 261). As for least restrictive means, Named Plaintiffs fully responded to that inquiry in response to Interrogatory 11. *See* Part III, *supra.* Defs.' App. 568-69, 584-85, 600-601, 618-19.

Defendants also claim that "[t]he question of substantial burden may be partially answered by the reasons that Plaintiffs object to the vaccines available at the time they submitted their RAR, but it is not fully answered by those objections" because it does not address the Plaintiffs' allegations of harm. Dkt. 192 at 14. But the issue of "harm" is not the focus of Interrogatory 7. The Named Plaintiffs responded to Defendants' "harm" or adverse consequence-related inquiry in response to Interrogatory 10. *See* Defs.' App. 568; 584; 600; 617-18 705-06. SEAL 2, SEAL 3, and EOD 1's responses to Interrogatory 10 direct the Defendants to the transcript from the December 20, 2021 Preliminary Injunction Hearing, Defs. App. 584, 600, 617-18, and for SEAL 1, to the declarations he filed in this matter, Defs.' App. 568. In SEAL 2's August 12, 2022, supplemental responses to Defendants' First Set of Interrogatories, he includes the fact that he was prevented from attending a required training due to the Navy's travel restrictions for unvaccinated individuals. Defs.' App. 705-06.

11

Defendants can also review the Named Plaintiffs' declarations already filed in this matter, as well as other relevant filings, such as the emergency motion filed on behalf of SEAL 1 on June 3, 2022. *See* Dkt. 17-6 at 2-15 (declarations of SEAL 1, SEAL 2, and SEAL 3); Dkt. 17-8 at 27-32 (declaration of EOD 1); Dkt. 59 at 7-15, 107-110 (supplemental declarations of Named Plaintiffs); Dkt. 174 at 9-10 (declaration of SEAL 1). And as this Court noted in its March 28, 2022, Order on Motions for Class Certification and Class-Wide Preliminary Injunction, "[t]he Named Plaintiffs and a number of class members have already provided evidence of demotions, reassignments, threats of separation, and other punitive measures as a result of their religious accommodation requests." Dkt. 140 at 23 (citing to declarations of Named Plaintiffs and class members regarding adverse action).

Supplemental responses are not required this issue. Defendants are simply asking the Named Plaintiffs to restate and compile information already provided or filed in this matter. In other words, Defendants are asking the Court to compel the Named Plaintiffs to marshal their evidence, which is not an appropriate basis for compelling discovery. *Turner v. JP Morgan Chase Bank, N.A.*, No. 3:12-CV-2701-M (BF), 2013 WL 12139324, at *1 (N.D. Tex. July 26, 2013).

In any event, information on the issue of harm is more accessible to Defendants from their own files, as the adverse consequences Plaintiffs have suffered are the direct result of Defendants' own policies. Defendants are aware of the harm caused by such policies because it became a central issue of Defendants' appeal for a stay of this Court's preliminary injunction, to the extent the injunction prevented Defendants from making "deployment, assignment, and other operational decisions." *Austin v. U.S. Navy Seals 1-26,* 142 S. Ct. 1301 (2022). No matter how Defendants' decisions are classified, it is a fact that each "operational" decision employed by the Navy that prevents the Plaintiffs from doing their jobs will continue to inflict harm. While the Named

12

Plaintiffs are aware of their continuing obligation to supplement their responses to all discovery throughout the course of this litigation, Defendants cannot claim ignorance of the adverse consequences that have resulted and will continue to result from their discriminatory "operational" policies.

Finally, Defendants assert that supplemental responses to Interrogatories 3, 6, and 7 are necessary because "the scope and timing of Plaintiffs' religious beliefs leading to objection to the vaccine may shed light on the propriety of their assignments, and other decisions that Plaintiffs purport to challenge, as well as the appropriate remedy." Dkt. 192 at 11-12. The example Defendants provide is that "a service member unable to use medication tested on fetal cells under any circumstances may be unable . . . to administer or receive emergency medication in the field and is unlikely to be eligible for deployment." Dkt. 192 at 12. But, just as Defendants' counsel's similar line of questioning was considered irrelevant at the December 20, 2021, Preliminary Injunction Hearing during cross-examination of SEAL 3, it is irrelevant now. As Defendants' counsel stated at the hearing, "I'm not inquiring as to whether or not his beliefs are accurate. I'm inquiring as to what they are and how are they going to affect his service in his unit." Tr. of Hr'g on Mot. for Prelim. Inj. 47:11-14. This Court responded, "Right. And so, but as it related to this case, this case only deals with the COVID vaccine." *Id.* At 47:15-16. If Defendants are seeking supplemental answers to Interrogatories 3, 6, and 7 to determine the propriety of Plaintiffs' assignments on the basis of anything other than their religious objection to the COVID-19 vaccine, the Named Plaintiffs object on the basis of relevance.

### C.  Interrogatories 5 and 8

Interrogatories 5 and 8 request identification of "documents . . . consulted in preparation of [each Plaintiff's] request to be exempted from DoD's and the Navy's COVID-19 vaccination

requirement based on [their] religious beliefs," and a detailed description of "all research, inquiry and other methods [Plaintiffs] used to determined that DoD and the Navy's COVID-19 vaccination requirement is contrary to [Plaintiff's] religious beliefs, including identification of all sources consulted . . . ." Defs.' App. 565-67. The Named Plaintiffs continue to stand on their original objections to these interrogatories. A directive compelling production of additional information on this point is unnecessary.

During the parties' first meet-and-confer, Class Counsel informed Defendants' counsel that the Named Plaintiffs' responses to Interrogatories 5 and 8 were complete but would verify all responsive information was provided. Defs.' App. 697. Upon Class Counsel's second inquiry to the Named Plaintiffs for additional responsive information, SEAL 2 identified two more documents, which were included in his August 12, 2022, supplemental response. Defs.' App. 705. But because the documents the Named Plaintiffs identified and relied on in response to Interrogatories 5 and 8 do not fall within Defendants' arbitrary laundry list of documents that could possibly qualify as responsive to those requests, Defendants are seeking "declarations stating that the responses identify all research done in coming to the conclusion that the vaccines violate their beliefs." Dkt. 192 at 17.

"The fact that a party may disbelieve or disagree with a response to a discovery request . . . . is not a recognized ground for compelling discovery, absent some indication beyond mere suspicion that the response is incomplete or incorrect." *Heller v. City of Dallas*, 303 F.R.D. 466, 486 (N.D. Tex. 2014). But before a response to a discovery request can be assessed for completeness or correctness, the request itself must be relevant and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).

The Named Plaintiffs objected to Interrogatories 5 and 8 on the grounds of relevance and proportionality, and the Named Plaintiffs complied with their discovery obligations by referencing every document they could recall after conducting a reasonable inquiry, pursuant to Fed R. Civ. P. 26(g)(1). Yet Defendants improperly contend that the Named Plaintiffs' responses to Interrogatories 5 and 8 are inadequate for the variety of arbitrary reasons referenced above. Dkt. 192 at 17. Without more, Defendants' assertions amount to mere suspicion. And because responding to such speculation is disproportionate to the needs of this case, there is no basis for the Named Plaintiffs to engage in a *third* search for information.[7]

### D. Interrogatory 13 and Requests for Production 9 and 10

According to Defendants, Interrogatory 13 and Requests for Production (RFP) 9 and 10 "seek[] discrete sets of medical information relevant to the claims here . . ." Dkt. 192 at 23. But as Class Counsel stated in their specific and continuing objections, those discovery requests are "overbroad, unduly burdensome, irrelevant, arbitrary, and disproportionate to the needs of this case." Defs.' App. 570, 586, 601-02, 620, 645-46, 658-59, 671-72, 684-85. Thus, no response other than Class Counsel's specific objections is required.

As stated in Part II, *supra*, while Defendants may inquire into the Named Plaintiffs' religious beliefs as they pertain to Defendants' COVID-19 mandates, they may only pursue such inquiry for the narrow purpose of understanding the Named Plaintiffs' objections to the COVID-19 vaccine. The discovery answers and materials already possessed by the Defendants and filed in this case satisfy this inquiry. Interrogatory 13 and RFPs 9 and 10 exceed this narrow inquiry and seek information completely unrelated to the Named Plaintiffs' religious objections to the COVID-

---

[7] Named Plaintiffs recognize their obligation to supplement their responses to discovery, as they affirmatively stated in their July 7, 2022, responses to Defendants' First Set of Interrogatories, and will do so, should more documents be realized or found.

19 vaccine, such as the Named Plaintiffs' entire medical history over the past five years. Thus, these discovery requests constitute an uninhibited fishing expedition into all aspects of the Named Plaintiffs' religious beliefs and practices, which is entirely outside the scope of Rule 26(b) and disproportionate to the needs of this case.

As Defendants now assert in their brief with respect to Interrogatories 3 and 6, they acknowledge that it is only appropriate to seek "only a description of the particular religious beliefs that are currently leading them to object to the COVID-19 vaccine." Dkt. 192 at 10. For that reason alone, Defendants would appear to agree that the information requested regarding the Named Plaintiffs' medical history is entirely irrelevant and disproportionate to the needs of this case. Because no supplemental responses are required for Interrogatory 13 and RFPs 9 and 10, Defendants' motion should be denied on these points.

Regarding the overall issue of sincerity, this Court recently noted that

Plaintiffs and potential class members have provided evidence of sincerity in the process of applying for religious accommodation. As part of the Navy's accommodation process, applicants must interview with a chaplain, who completes both a checklist and memorandum attesting to the "sincerity" of the applicant's beliefs. *See* ECF No. 62. In short, everyone eligible for the class has submitted a religious accommodation request, and no one may submit that request without a chaplain's memorandum attesting to the applicant's sincerity. Thus, all potential class members have carried their (light) burden of demonstrating their religious beliefs are sincere.

Dkt. 140 at 11-12. But even in the earlier stages of this litigation, this Court held that "Plaintiffs' beliefs about the vaccine are undisputedly sincere, and it is not the role of this Court to determine their truthfulness or accuracy." Dkt. 66 at 4; *see also Davis*, 765 F.3d 480, 478 (5th Cir. 2014) (citing *Ballard*, 322 U.S. at 86).

And by the Navy's own accounts, it would agree. Pursuant to the Navy's religious accommodation process, a RAR could only be submitted if a chaplain attested to the sincerity of

the service member's religious beliefs regarding the COVID-19 vaccine. Navy Bureau of Personnel Instruction (BUPERSINST) 1730.11A, "Standards and Procedures Governing the Accommodation of Religious Practices" at 8-9 (Mar. 16, 2020). And during the June 30, 2022, deposition of Admiral William Lescher, the Navy's Vice Chief of Naval Operations, he unequivocally asserted that he had no reason to doubt the sincerity of any service member's religious beliefs underlying their RARs. Dkt. 196-1 at 33 (Tr. 75:11-16).

"Thus, all potential class members have carried their (light) burden of demonstrating their religious beliefs are sincere." Dkt. 140 at 11-12. Requiring anything more from the Named Plaintiffs on the issue of sincerity, such as a full release of their medical records over the last five years and a *third* search for additional documents consulted in preparation of their RARs or consulted to determine that the COVID-19 vaccine mandates were contrary to their religious beliefs, is entirely outside the scope of Rule 26(b). The Named Plaintiffs have fully responded to each of Defendants' requests pertaining to the sincerity of their religious beliefs, and no further responses are required.

### III. The Named Plaintiffs Have Fully Responded to Inquiries Related to Compelling Government Interest and Least Restrictive Means, And No Further Responses Are Required.

Just as the Named Plaintiffs should not be compelled to provide additional information on the issue of sincerity, the same holds true for Defendants' inquiries into compelling government interest (Interrogatory 9) and least restrictive means (Interrogatories 11 and 12). While Class Counsel stand firm on their objections to these inquiries for all the specific reasons stated in each Named Plaintiff's responses to Defendants' First Set of Interrogatories, Defs. App. 567-70, 583-86, 599-601, 617-19, Defendants have no basis to assert that the Named Plaintiffs have not fully complied with their discovery obligations.

In their responses to Interrogatories 9, 11, and 12, the Named Plaintiffs directed Defendants to their briefing in this matter that clearly explains, on numerous occasions, and most recently on appeal, their reasons for believing Defendants do not have a compelling interest in vaccinating each individual Plaintiff. For example, Plaintiffs asserted that "99.4% of active-duty Naval service members are vaccinated against COVID-19," and "Defendants can hardly argue that a 100% vaccination rate is a magic bullet against COVID-19 infection, as vaccinated individuals can contract and transmit the virus." Dkt. 16 at 19-20. Further, "Defendants have granted across-the-board exemption to vaccine trial participants and have granted at least some medical exemptions," and have permitted "non-receipt of the vaccine due to participation in a clinical trial or due to a medical contraindication." *Id*. at 24.

As for least restrictive means, Plaintiffs asserted that "Defendants have undermined their position by their own inaction," when "multiple COVID-19 vaccines have been widely available under Emergency Use Authorizations" for many months prior to Defendants' COVID-19 vaccine requirement. *Id*. at 21. The Named Plaintiffs also asserted that they each believe they "could fully and capably perform [their jobs] using recognized COVID-19 mitigation techniques such as masking, social distancing, regular testing, or any other protocol that does not involve violating [their] religious beliefs." Dkt. 17-6 at 2-15 (declarations of SEAL 1, SEAL 2, and SEAL 3); Dkt. 17-8 at 27-32 (declaration of EOD 1). This fact was substantiated by EOD 1's testimony at the December 20, 2021 Preliminary Injunction Hearing regarding his receipt of "a deployment joint service accommodation medal award from special operations command Korea . . . . [f]rom January 2nd, 2020 to July, 2020 . . . . for the missions and [successful] executions of our tasks during that deployment." Tr. of Hr'g on Prelim. Inj. at 90:21-91:13. This fact was further substantiated during Admiral Lescher's June 30, 2022 deposition, where he stated he was unaware of any combat

operations negatively impacted by COVID-19, and that he was also unaware of specific examples of COVID-19 making a medical evacuation harder, being contracted through a rebreathing device, or being contracted on a submarine. Dkt. 196-1 at 22-23 (Tr. at 33:18-34:8), 27 (Tr. at 50:15-51:16).

As stated in Part II, *supra*, "[t]he fact that a party may disbelieve or disagree with a response to a discovery request . . . . is not a recognized ground for compelling discovery, absent some indication beyond mere suspicion that the response is incomplete or incorrect." *Heller*, 303 F.R.D. at 486. And as Class Counsel specifically stated in each of the objections, information responsive to Interrogatories 9, 11, and 12 "is readily or more accessible to Defendants from Defendants' own files, from documents or information in Defendants' possession, or from documents or information that Defendants previously produced to Plaintiff[s]." Defs. App. 567-70, 583-86, 599-601, 617-19. Because the Named Plaintiffs fully responded to each of Defendants' requests pertaining to compelling government interest and least restrictive means, Defendants' motion should be denied on these points.

## IV. Defendants' Motion Should Be Denied Because Relevant Requested Documents Have Been Produced.

Defendants erroneously claim that "to date, Plaintiffs . . . have not produced a single responsive document, nor given a date certain by which they will do so."[8] Dkt. 192 at 19. In reality, Defendants ask the Court to compel production of documents that are already in the Defendants' control or custody, have been filed in this matter already, or simply do not exist. Further, Defendants correctly concede that they are willing to forego production of the "various versions of the Bible cited, any publicly available Navy policy documents, and any publicly available

---

[8] Defendants' Motion states they produced "thousands of responsive pages" to argue that Named Plaintiffs' production is somehow insufficient. Dkt. 192 at 2 n.1. In response, Class Counsel directs the Court to Admiral Lescher's testimony regarding the Navy's own document production. Dkt. 196-1 at 35-36 (Tr. 82:16-88:10).

document to which Plaintiffs could provide a website link . . ." *Id.* Therefore, this Court should deny Defendants' motion, as all responsive documents have been produced by the Named Plaintiffs.

A. **Defendants already possess the documents within Named Plaintiffs' possession, custody, or control, or agreed to forego production of documents within the scope of Plaintiffs' initial disclosures.**

The Named Plaintiffs identified three categories of documents for use in support of their claims: "(1) Documents related to Named Plaintiffs' religious accommodation requests; (2) Documents related to the fifty-point standard operating procedure used by Vice Admiral Nowell and his staff; and (3) Documents related to the Navy's policies and procedures concerning religious accommodation requests." Defs.' App. 714. In RFP 1, the Defendants asked each Named Plaintiff to produce "any and all documents identified in Plaintiffs' initial disclosures in this action, without regard to date limitations." Def. App. 641; 654; 667; 680. Plaintiffs objected on the grounds that this request is overbroad, unduly burdensome, and seeks documents that are more accessible to the Defendants from their own files. *Id.* In addition, each Named Plaintiff directed Defendants to his RAR and his answer in Interrogatory 5, which identify all documents consulted in preparing his RAR. *Id.* Thus, the Named Plaintiffs fully answered these requests for production.

1. **Defendants already possess the Named Plaintiffs' RARs and related documents.**

Defendants' request to compel the Named Plaintiffs to produce documents related to their RAR's should be denied because Defendants already possess the requested documents. Defendants cite several cases that all concern the production of publicly available documents, Dkt. 192 at 21; however, the issue is not whether the documents are publicly available, it is whether Defendants already possess the documents—and they do. Defendants are asking the Named Plaintiffs to produce documents that the Plaintiffs previously submitted to the Navy and that the Navy has full

access to within its own files. In fact, the Navy had access to SEAL 1, SEAL 2, SEAL 3, and EOD 1's RAR's before this litigation even began. *Compare* Defs.' App. 641; 654; 667; 680 with Dkt. 1. In the case of RAR endorsements or denials, those documents are created by and belong to Defendants. Additionally, the RAR requests of SEAL 2, SEAL 3, and EOD 1 and all other related documents in the Named Plaintiffs' possession are easily accessible to Defendants, as they were used as exhibits in the Preliminary Injunction Hearing on December 20, 2021. *See* Pls.' Prelim. Inj. Hr'g Ex. PX-1 - PX-26. Therefore, placing a burden of production on the Named Plaintiffs is unnecessary when Defendants have these documents in their possession already. *See* Fed. R. Civ. P. 33 (d)(1).

Importantly, Defendants production of administrative records for several of the Plaintiffs demonstrates that they already possess the documents they now demand from the Named Plaintiffs. Further, Defendants are willing to limit this motion to exclude: "the RARs as submitted . . . " therefore conceding the argument that Named Plaintiffs need not compile and turn over a portfolio of their RAR documents. Dkt. 192 at 19. The Defendants also demand "an agreement on the completeness and authenticity of the RAR's / appeals in Defendants' possession." *Id.* But this agreement is unnecessary, as Named Plaintiffs intend to rely on the RAR documents that they officially submitted to their commanding officers.[9]

Finally, Defendants raise concern that the Named Plaintiffs are in possession of emails and other documents related to their RARs. But what the Named Plaintiffs have in their possession, custody, or control has already been filed in this case, leaving nothing further for disclosure at present. Defendants agreed to exclude any document that Plaintiffs can identify as "previously . .

---

[9] Class Counsel notes that this proposed agreement is curious, as it leads Counsel to wonder that the Defendants have, for some reason, received different versions of the RAR documents than what our clients submitted to proper authority. If that is the case, Class Counsel will investigate the matter further in an appropriate forum.

. submitted in this action." Dkt. 192 at 19. The Named Plaintiffs direct the Defendants to the numerous appendices and hearing exhibits filed. Further, Class Counsel fully understands their ongoing duty to supplement initial disclosures throughout the discovery portion of the litigation. And, under this Court's scheduling order, there is ample opportunity for the parties to exchange any exhibits on which they might rely to support their claims at trial. *See* Dkt. 158. At this time, there is nothing more to give to the Defendants that has not been previously filed or relied on in open court.

Therefore, because Defendants possess the Named Plaintiffs' RAR documents and Plaintiffs already filed or used as hearing exhibits any other related documents, there is nothing to produce related to initial disclosures.

### 2. Defendants already possess the fifty-point standard operating procedure and related documents used by Vice Admiral Nowell.

Defendants also demand that the Named Plaintiffs produce the fifty-point standard operating procedure – a document the Navy itself created. The fifty-point document has been in the public record since December 23, 2021, and was *served* on Defendants' counsel. Dkt. 62. Further, Class Counsel informed Defendants' counsel that the Named Plaintiffs have nothing further to produce in relation to the fifty-point standard operating procedure that is not already submitted in the various appendices in this case. The Named Plaintiffs will supplement their responses if they identify additional documentation.

### 3. Defendants agreed to forego production of any publicly available Navy policy documents.

Defendants' motion concedes that they will "forego production of . . . any publicly available Navy policy documents." Dkt. 192 at 19. The Named Plaintiffs agree, as it would be unnecessary to produce documents drafted, created, and controlled by the Navy. The Named

Plaintiffs have nothing further to produce that would not be captured by the parties' agreement or previously submitted in appendices in this case. Therefore, no further production is required.

### B. The Named Plaintiffs produced links to documents related to Interrogatories.

In RFP 3, Defendants seek production of "[a]ny and all documents identified in response to Defendant's interrogatories in this action." Defs.' App. 642; 655; 668; 681. This includes Interrogatory 2, which asks Named Plaintiffs to "identify all documents that you consulted in preparing your responses to these interrogatories"; Interrogatory 5, which asks Named Plaintiffs to "identify all documents that you consulted in preparing your request to be exempted from DoD's and the Navy's COVID-19 vaccination requirement based on your religious beliefs"; and Interrogatory 8, which asks the Named Plaintiffs to "describe in detail all research, inquiry and other methods you used to determine that DoD and the Navy's COVID-19 vaccination requirement is contrary to your religious beliefs, including identification of all sources consulted (including written, recorded, or digital material, authorities, experts, or individuals, as well as verbal sources), the dates of consultation, and the substance of the information consulted." Defs.' App. 563; 565; 567, 579, 581-83, 595, 597, 599, 600, 611, 614, 616. Although Defendants claim that each interrogatory "seek[s] a limited category of discrete information relevant to evaluation of Plaintiffs' claims, including the nature, scope and sincerity of their religious objections, the burden on those beliefs, and the availability of less restrictive means to accommodate those beliefs," Dkt. 192 at 22, the Named Plaintiffs find each of the interrogatories to be an improper probe of sincerity, *see* Part II, *supra*.

In the Named Plaintiffs responses to Defendants' First RFPs, they each state that "[p]ublicly available documents including, but not limited to, newspaper clippings, court papers, and documents available on the Internet, will not be produced." Defs.' App. 638. Additionally, the

Defendants agreed to forego production of various versions of the Bible cited, any publicly available Navy policy documents, and any publicly available document to which Plaintiffs could provide a website link." Dkt. 192 at 19. Although the Named Plaintiffs maintain that is it unnecessary that they produce links to documents that are easily accessible on the internet by a simple web browser search, such as the Catholic Catechism, in the interest of maintaining the expediency of this class action and saving the Court from having to conduct a hair-splitting exercise into what is publicly available and what is not, today, Class Counsel provided the Defendants with links to the documents that are responsive to the RFPs. Therefore, the Court should deny the Defendants' Motion, as no further production is required.

To the extent that Defendants seek production beyond that which is identified already in Named Plaintiffs' response to Interrogatory 2, 5, and 8 and supplemental response, the Named Plaintiffs' direct the Court to its discussion in Part II, *supra.*

Defendants also seek production of documents under RFP 4. This request is duplicative and should be denied by this Court. RFP 4 asks for "[a]ny and all documents used, consulted or referred to in responding to Defendants' interrogatories in this action." Defs.' App. 642, 655, 668, 681. This RFP seeks information corresponding to Interrogatory 2, which asks for identification of "all documents consulted in preparing your responses to these interrogatories." Defs.' App. 563; 579; 595; 611. But RFP 4 is unnecessary, as the desired documents would already be produced under RFP 3, which seeks all documents identified in the Named Plaintiffs' Interrogatory responses. Therefore, no further production is required and the motion should be denied.

### C. Plaintiffs have no responses to RFP 8 - Communications and Social Media Documents.

Defendants seek "[a]ny and all documents that describe, relate, refer to, or reflect any posts [Named Plaintiff] ha[s] made on social media . . . , blogs, internet message boards, chat rooms, or

24

other public forums online regarding your religious beliefs, the COVID-19 vaccines, or DoD/Navy's COVID-19 vaccination requirement." Defs.' App. 644. The Named Plaintiffs objected to this request because it is overly broad, unduly burdensome, and seeks irrelevant information. Defs.' App. 644-45; 657-58; 670-71; 683-84. Despite this improper probe into the Named Plaintiffs' sincerity, *see* Part II, *supra,* the Named Plaintiffs searched and three of the four Named Plaintiffs stated that he is "not in possession of any documents relevant to this request," Defs.' App. 645; 658; 684, and the final Named Plaintiff stated that he "does not engage in social media," making the recovery of responsive documents impossible. Defs.' App. 670-71. Instead of accepting that no responsive documents exist, Defendants included these points in its motion. Because there are no responsive documents, this Court should deny the Defendants Motion to Compel Production.

## CONCLUSION

In conclusion, this Court should deny Defendants' Motion to Compel as to any discovery from the Plaintiffs, any discovery concerning the sincerity of Named Plaintiffs' religious beliefs, and any discovery related to the government's compelling interest and least restrictive means. Further, this Court should deny Defendants' motion because relevant responsive documents have been produced.

Respectfully submitted this 2nd day of September, 2022.

| | |
|---|---|
| /s/ Danielle A. Runyan | HEATHER GEBELIN HACKER |
| KELLY J. SHACKELFORD | Texas Bar No. 24103325 |
| Texas Bar No. 18070950 | ANDREW B. STEPHENS |
| JEFFREY C. MATEER | Texas Bar No. 24079396 |
| Texas Bar No. 13185320 | HACKER STEPHENS LLP |
| HIRAM S. SASSER, III | 108 Wild Basin Road South, Suite 250 |
| Texas Bar No. 24039157 | Austin, Texas 78746 |
| DAVID J. HACKER | Tel.: (512) 399-3022 |
| Texas Bar No. 24103323 | heather@hackerstephens.com |
| MICHAEL D. BERRY | andrew@hackerstephens.com |
| Texas Bar No. 24085835 | |
| JUSTIN BUTTERFIELD | *Attorneys for Plaintiffs* |
| Texas Bar No. 24062642 | |
| Danielle A. Runyan * | |
| New Jersey Bar No. 027232004 | |
| Holly M. Randall | |
| Texas Bar No. 24128002 | |
| FIRST LIBERTY INSTITUTE | |
| 2001 W. Plano Pkwy., Ste. 1600 | |
| Plano, Texas 75075 | |
| Tel: (972) 941-4444 | |
| jmateer@firstliberty.org | |
| hsasser@firstliberty.org | |
| dhacker@firstliberty.org | |
| mberry@firstliberty.org | |
| jbutterfield@firstliberty.org | |
| drunyan@firstliberty.org | |
| hrandall@firstliberty.org | |
| | |
| JORDAN E. PRATT | |
| Florida Bar No. 100958*  ** | |
| FIRST LIBERTY INSTITUTE | |
| 227 Pennsylvania Ave., SE | |
| Washington, DC 20003 | |
| Tel: (972) 941-4444 | |
| jpratt@firstliberty.org | |
| | |
| *Admitted pro hac vice. | |
| ** Not yet admitted to the D.C. Bar, but | |
| admitted to practice law in Florida. Practicing | |
| law in D.C. pursuant to D.C. Court of | |
| Appeals Rule 49(c)(8) under the supervision | |
| of an attorney admitted to the D.C. Bar. | |

## CERTIFICATE OF SERVICE

I hereby certify that on September 2, 2022, I electronically filed the foregoing document through the Court's ECF system and will serve a copy on each of the Defendants according to the Federal Rules of Civil Procedure.

/s/ Danielle A. Runyan
DANIELLE A. RUNYAN