IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| **NAVY SEALs 1-3,** *et al.*,<br><br>      Plaintiffs,<br><br> v.<br><br>**LLOYD J. AUSTIN, III** in his official capacity as United States Secretary of Defense, *et al.*,<br><br>      Defendants. | Case No. 4:21-cv-01236-O |

# DEFENDANTS' REPLY MEMORANDUM

# IN SUPPORT OF DEFENDANTS' MOTION COMPEL

**TABLE OF CONTENTS**

**INTRODUCTION** ...........................................................................................................................1

**DISCUSSION** ................................................................................................................................1

    **I.**    **ALL PLAINTIFFS MUST RESPOND TO DISCOVERY REQUESTS**............1

    **II.**   **ALL PLAINTIFFS MUST PROVIDE MEANINGFUL INTERROGATORY RESPONSES WITHIN A REASONABLE TIME.**........................................................4

        A.    Responses to Interrogatories 3, 6, and 7 Inappropriately Rely on RARs Without Answering the Interrogatories. ...............................................................5

        B.    Responses to Interrogatories 5 and 8 Are Incomplete. ................................8

        C.    Plaintiffs Fail to Respond to Interrogatories 9, 11, 12. ...................................8

    **III.**  **ALL PLAINTIFFS MUST PRODUCE RESPONSIVE DOCUMENTS IN A REASONABLE AMOUNT OF TIME.** ...............................................................................8

        A.    RFP1 – Initial Disclosures. ................................................................................9

        B.    Documents Related to Interrogatories. .................................................................9

        C.    RFP 8 – Communications and Social Media Documents. .........................10

    **IV.**  **ALL PLAINTIFFS MUST PRODUCE DISCRETE MEDICAL INFORMATION.** ..............................................................................................................10

**CONCLUSION** ..........................................................................................................................10

**INTRODUCTION**

Plaintiffs fail to demonstrate why individual Plaintiffs in this action should be exempt from discovery altogether, and fail to establish that any of the Plaintiffs have adequately responded to interrogatories and requests for production (RFPs).

**DISCUSSION**

### I.   ALL PLAINTIFFS MUST RESPOND TO DISCOVERY REQUESTS.

The named Plaintiffs who are not identified as class representatives remain Plaintiffs in this action, *see* Am. Compl. ¶¶ 16-23, ECF No. 84, and are subject to discovery under Rule 26. These same Plaintiffs have already directly put their testimony at issue, and the Court has already relied on their statements. In seeking and receiving emergency relief from this Court, Plaintiffs submitted declarations from all of the individual Plaintiffs, some more than once. *See* Defs.' Mem. Supp. Mot. to Compel ("Defs.' MTC"), at 1-2, 5 (collecting appendix cites to declarations from all plaintiffs), ECF No. 192. Indeed, at least 3 Plaintiffs have submitted declarations to this Court in connection with motions post-dating class certification. *See* ECF No. 174, at App.003-005 (SEAL10); ECF No. 178, at App. 68-74 (SEAL21, SEAL23). They continue to rely on these Plaintiffs' testimony in the ongoing proceedings in the Court of Appeals, Br. of Appellee at 9-10, 17, 38-39, 52-55, *U.S. Navy SEALs 1-26 v. Biden*, No. 22-10077, and both the Fifth Circuit and a dissenting Supreme Court justice relied on it as well in assessing the stay motion, *U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336 (5th Cir. 2022); *Austin v. U.S. Navy Seals 1-26*, 142 S. Ct. 1301, 1303-04 (2022) (Alito, J., dissenting). As such, Plaintiffs now refusing to respond to discovery are neither absent nor passive. Defendants intend to prove that the Court's original preliminary assessment of the likelihood of success on the merits was incorrect, and Defendants are entitled to discovery of these Plaintiffs, who put their own testimony at issue.[1]

---

[1] If Plaintiffs are no longer relying on the testimony of their own Plaintiffs, and decline to stand behind it, then Plaintiffs should withdraw that evidence and inform the Court of Appeals that they are no longer relying on it. Plaintiffs' apparent admission that their existing testimony is irrelevant to this Court seriously calls into question the preliminary injunction presently in place and may be grounds to dissolve the injunction.

Plaintiffs identify three cases, all from other districts and two from other circuits, in which class-action plaintiffs were treated as absent class members. Pls.' Opp'n to Defs.' MTC, at 3-4, ECF No. 198 ("Pls.' Opp'n"). For example, in a products liability case in Florida, the district court declined to compel discovery of plaintiffs not chosen as class representatives after several existing cases were consolidated into a new matter. In *In re Carbon Dioxide Indus. Antitrust Litig.*, 155 F.R.D. 209, 211-12 (M.D. Fla. 1993), the defendants failed to object to early statements that discovery would be limited to class representatives, and the defendants did not make any argument that they needed individualized discovery.[2] The present case involves no such considerations, and there is no indication that the Florida district court had previously relied on the testimony of the individuals not subject to discovery. Indeed, none of the cited cases involves such a situation. *See Earl v. Boeing Co.*, No. 4:19-CV-507, 2021 WL 3343232, at *2 (E.D. Tex. Aug. 2, 2021) (permitting plaintiff who was not participating at all to convert himself to an absent class member); *In re Lucent Techs. Inc. Sec. Litig.*, No. 2:00-CV-621, 2002 WL 32815233, at *2 (D.N.J. July 16, 2002) (finding discovery of non-lead plaintiffs would not be probative of issues in the case). And other courts have decided directly to the contrary. *See* Defs.' MTC, at 8; *see, e.g., In re Folding Carton Antitrust Litigation*, 83 F.R.D. 260, 264 (N.D. Ill. 1979) ("Plaintiffs bringing actions will not be allowed to self-select the active class representatives and then leave discovery limited to the portion [ ] the plaintiffs selected"); *In re Vitamins Antitrust Litig.*, 198 F.R.D. 296, 306 (D.D.C. 2000) (permitting non-representative class plaintiffs to dismiss action only if they first respond to discovery as requested); *Collier v. BrightPoint, Inc.*, No. 1:12-cv-1016, 2013 WL 652448, *3 (S.D. Ind. Feb. 21, 2013) ("It is difficult for the Court to find that Mr. Lee is a mere absent class member in this case, where he is actively injecting himself into the proceeding. . . ."). Again, Defendants are not seeking broad discovery from thousands of absent class members who have had no active role in this litigation; Defendants have sought targeted discovery from Plaintiffs named in

---

[2] The district court also recognized "that any party exercising the right to proceed independently by opting out of the class will be subject to discovery." *In re Carbon Dioxide Indus. Antitrust Litig.*, 155 F.R.D. at 212 n. 1. At least one Plaintiff in this action has opted out of the class by withdrawing his RAR, but he remains a Plaintiff.

2

the operative complaint about the testimony and legal claims they have directly and intentionally put at issue in this action — testimony on which Plaintiffs continue to rely.

Plaintiffs urge the Court to treat them as absent class members, who are not normally subject to discovery unless the defendant can make a showing of need. Pls.' Opp'n at 4-6. Even if that were the appropriate standard, Defendants have made the requisite showing. *See* Defs.' MTC, at 5-8 (describing need for discovery from individual plaintiffs in general, including but not limited to the basis for a potential motion to decertify). Perhaps most importantly, these Plaintiffs are named in the complaint, are represented by counsel in this matter, and have already injected themselves into the litigation. Absent class members who intentionally inject themselves into litigation are typically subject to discovery. *See, e.g.*, *Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, No. 04-498, 2006 WL 2588710, *1 (D.D.C. Sept. 7, 2006) (approving discovery of absent class members who submitted declarations); *Antoninetti v. Chipotle, Inc.*, No. 06-cv-2671, 2011 WL 2003292, *1 (S.D. Cal. May 23, 2011) ("Although Courts do not usually allow discovery from absent class members, the rules pertaining to such discovery are flexible, especially where the proposed deponents have been identified as potential witnesses or have otherwise 'injected' themselves into the litigation."); *Moreno v. Autozone, Inc.*, No.C-05-4432, 2007 WL 2288165, *1 (N.D. Cal. Aug. 3, 2007) (allowing discovery of "absent class members who have injected themselves into the class certification motion by filing factual declarations"); *see also* 3 Newberg and Rubenstein on Class Actions § 9:12 (6th ed.) ("Several courts have concluded that class members who have 'injected themselves' into the litigation—for example, by filing declarations or being listed as witnesses by plaintiffs' counsel—are subject to discovery.").

Plaintiffs argue that Defendants cannot show a particularized need because the initial round of written requests served on different Plaintiffs involved identical requests to each Plaintiff. Pls.' Opp'n, at 5. That does not prove that there is no need for discovery of these Plaintiffs at all. On the contrary, Defendants expect the individual Plaintiffs to give different answers to the same questions, and that additional discovery will seek information on the individualized responses.

Plaintiffs also argue that Defendants are improperly attempting to "reduce the size of the class." Pls.' Opp'n, at 5. But the requests are not designed to harass or burden class members, and they are certainly not designed to "reduce the size of the class." Defendants expect that interrogatory responses will undermine Plaintiffs' claim that they are subject to a blanket policy, support Defendants' arguments at summary judgment and trial on the merits, and support a motion to decertify the class. Defendants' reference to "changed circumstances" warranting discovery refers to several potential changes since the Court entered the original injunction that could undermine both class certification and Plaintiffs' claims on the merits, including but not limited to: the decision of named Plaintiffs to opt-out of the non-opt-out class, the availability of a vaccine that does not run afoul of many Plaintiffs' religious beliefs, the granting of religious exemptions, the changed harms to Plaintiffs as policies have been updated, and Plaintiffs' eligibility for the relief sought.

Plaintiffs insist that they have avoided waiver of other objections because they stated in written responses that they intended to avoid such waiver. Pls.' Opp'n, at 6. The general rule is that "when a party fails to object timely to interrogatories, production requests, or other discovery efforts, objections thereto are waived." *In re United States*, 864 F.2d 1153, 1156 (5th Cir. 1989). Plaintiffs' unilateral statement that they will wait and assert objections later does not comport with their obligations under the Federal Rules or practice in this district, *Samsung Elecs. Am., Inc. v. Chung,* 321 F.R.D. 250, 283 (N.D. Tex. 2017), and the Court should find that all other objections are waived.

## II. ALL PLAINTIFFS MUST PROVIDE MEANINGFUL INTERROGATORY RESPONSES WITHIN A REASONABLE TIME.

While named Plaintiffs who are not class representatives have failed to respond at all, even the class representative Plaintiffs have failed to provide meaningful interrogatory responses.

### A. Responses to Interrogatories 3, 6, and 7 Inappropriately Rely on RARs Without Answering the Interrogatories.

1. **Interrogatories 3 & 6.** These two interrogatories seek information about Plaintiffs' religious beliefs, which they have directly put at issue in this litigation. As previously explained, understanding the scope of Plaintiffs' religious objections to the COVID-19 vaccine is relevant to the

4

issue of sincerity, but also to other issues before the Court that hinge on the scope of Plaintiffs' objection to the vaccine requirement. Defs.' MTC, at 10-12. Plaintiffs concede that "Defendants may inquire into the Named Plaintiffs' religious beliefs as they pertain to Defendants' COVID-19 mandates . . . for the narrow purpose of understanding the Named Plaintiffs' objections to the COVID-19 vaccine." Pls.' Opp'n, at 8. But Plaintiffs have made no effort to "pull together a verified answer by reviewing all sources of responsive information reasonably available to him and providing the responsive, relevant facts reasonably available to him." *Areizaga v. ADW Corp.*, 314 F.R.D. 428, 437 (N.D. Tex. 2016). Based only on those undisputed facts, the Court should direct Plaintiffs to provide updated interrogatory responses.

Plaintiffs argue primarily that Defendants have everything needed, and that propounding even a single discovery request on this topic necessarily amounts to "harassment." Pls.' Opp'n, at 8. Plaintiffs' view that the various available documents could answer Defendants' questions does not demonstrate that Plaintiffs have already provided a comprehensive response. The purpose of the discovery request is for Plaintiffs to review available information, and provide all relevant facts regarding the nature and scope of their religious objections. That allows Defendants to understand and lock in all of the current factual bases for Plaintiffs' contentions with respect to whether they hold sincere beliefs, whether those beliefs are religious, and whether those objections apply to any and all of the available vaccines. Looking behind their Religious Accommodation Requests (RARs) also may provide insight into the RAR process. The RARs provide, at most, a snapshot of some portion of those beliefs that any individual plaintiff thought most likely to persuade decisionmakers in the RAR process nearly a year ago. *See* Defs.' MTC, at 11-14 (describing relevance of requested information and inadequacy of RAR documents alone). Bare bones declarations from the Plaintiffs, or limited testimony from a few Plaintiffs on distinct questions, do not substitute for comprehensive responses.

Despite Plaintiffs' concession that discovery about the scope of Plaintiffs' religious objections to the COVID-19 vaccine is appropriate, Plaintiffs appear to argue at several points that they do not need to establish sincerity. For example, they argue that the previous submissions alone were

5

sufficient for the Navy and the Court to establish sincerity, apparently believing that no further fact-finding is even necessary. *See* Pls.' Opp'n, at 8, 16. With respect to the Navy, that is inaccurate. In many or most instances, the Navy assumes without deciding sincerity when evaluating RARs, and in any event, less than half of the Plaintiffs have actually had their RARs denied, meaning there has been no final determination of sincerity at all. And of course, the requirement for a chaplain interview is no guarantee that the request is actually a sincere religious belief. *See, e.g.*, DEX17 (redacted RAR denial based in part on finding that objection was not religious in nature), DEX18 (redacted RAR denial that assumed requestor's sincerity, despite chaplain's assessment of insincerity), Supp. App'x, at App.779-90.[3] The Court found a likelihood of success on the merits with respect to sincerity at the preliminary injunction stage, but it does not logically follow that Defendants cannot obtain any discovery on this required element of the actual merits case prior to final adjudication. And of course, the requests here are relevant well beyond the issue of sincerity.[4]

Plaintiffs also argue that any inquiry must be narrowly tied to the vaccine itself, and to query how the religious belief underlying their objection to the COVID-19 vaccine is otherwise incorporated into their life is necessarily irrelevant. *See* Pls.' Opp'n, at 9. But Defendants' interrogatories are designed to define and understand the scope of Plaintiffs' religious objection to the COVID-19 vaccine. *See* Defs.' MTC, at 11-12. For example, in a footnote opposing discovery, Plaintiffs express doubt that the Novavax vaccine was really developed without use of fetal cells. Pls.' Opp'n, at 9 n.5.

---

[3] Although the Court assumed at the preliminary stage that requestors are required to have a finding of sincerity to submit an RAR, that is incorrect on the face of the policy. They are required to be interviewed by a chaplain. Chaplains have a limited role in the exemption process—they initially assess the sincerity of a service member's religious beliefs, but do not independently assess the burden of the vaccination requirement on those beliefs. Nor is a chaplain's assessment binding on the final approval authority. *See* Katson Decl. ¶¶ 7-8, ECF No. 121, at App. 22-23; BUPERSINST 1730.11A, ¶ 4b(2) (purpose of chaplain interview is to "advis[e] the command"); *id.,* ¶ 4c(2) (similar); *id.,* Table 1 (reflecting that CNO N1 is approval authority for immunization waivers, based on recommendations of subordinates); *id.,* ¶ 5e(2) ("The chaplain will assess whether the requestor's religious beliefs appear sincerely-held, and will forward an evaluation to the commander . . . .").

[4] Plaintiffs assert that Admiral Lescher, who did not review or decide any of Plaintiffs' RARs, admitted sincerity when he stated in response to a direct deposition question that he had no reason to doubt Plaintiffs' sincerity. *See* Pls.' Opp'n, at 17. That is not a concession of any sort.

That may be an additional factual reason for some Plaintiffs' religious objection to the vaccines, but not one Plaintiff has supplemented their interrogatory responses to describe this as a basis for their belief that the vaccine is objectionable (Interrogatory 6), or to describe research they did into Novavax (Interrogatory 8).[5] Months after the vaccine's availability, Defendants have no idea whether any Plaintiffs even claim to have a religious objection to this vaccine.[6] No one is asking the Court to "dissect" or disprove Plaintiffs' religious beliefs, and Plaintiffs' arguments that they have enough on the merits to win their case is not a reason Defendants cannot obtain discovery. Defendants have asked Plaintiffs to describe the very religious beliefs they have put at issue.

2.      **Interrogatory 7.**  In response to the request regarding how Plaintiffs' beliefs are "substantially burden[ed]," Plaintiffs again did not attempt to pull together the relevant facts in a verified interrogatory response. They argue primarily that Defendants have that information already, but the RARs are not a substitute for a comprehensive interrogatory response under oath and do not contain any updated responsive information since RARs were submitted in 2021.

The RARs do not contain any description of the harms that Plaintiffs claim are inflicted by the vaccine requirement. Plaintiffs claim that "harms" were not the focus of the interrogatory even though that is how Plaintiffs used the term "substantial burden" in the complaint. And Plaintiffs argue that they have already described adverse consequences in response to Interrogatory 10 or in previous submissions, and that the harms are within Defendants' possession. Defendants, of course, have no way of knowing what adverse consequences of the vaccine mandate Plaintiffs believe are a "substantial burden" on their beliefs, and the answer to that is likely to evolve.

---

[5] Plaintiffs later argue that these interrogatories cannot go to the question of whether their objections otherwise have an effect on their service because this case is only about the COVID-19 vaccine. Pls.' Opp'n, at 13. Plaintiffs' challenge is to the COVID-19 vaccine, but in support of that challenge, Plaintiffs have argued that they can serve ably in operational positions, asked the Court to determine that they can serve in operational NSW positions, and even sought emergency relief with respect to individual assignment decisions. At minimum, the answers could be relevant to remedy, and could provide further support for the unavailability of less restrictive means.
[6] *Cf. Ramirez v. Collier*, 142 S. Ct. 1264, 1278 (2022) (holding that evolving or newly held religious beliefs during the pendency of litigation is probative of sincerity).

7

### B. Responses to Interrogatories 5 and 8 Are Incomplete.

Confusingly, in response to the Motion to Compel, Plaintiffs both "stand on their original objections" and insist that they have already responded. Pls.' Opp'n, at 14. Common sense and a perusal of the responses indicate otherwise. Defs.' MTC, at 14-17. Plaintiffs have not described a search, or provided any basis to believe these responses are complete in light of the inconsistencies and apparent inadequacies identified. Defendants have identified more than mere "suspicion".

### C. Plaintiffs Fail to Respond to Interrogatories 9, 11, 12.

Recognizing that their interrogatory responses are inadequate on the issues of "compelling interest" and "less restrictive means," Plaintiffs point to statements in existing briefing, declarations and a deposition that may provide some insight into their factual and legal claims on these issues. At best, this is an admission that they need to provide updated responses. Such documents were not even referenced in their previous responses, which referred vaguely to "briefing." In any event, legal briefing is not an interrogatory response.[7] Defendants need verified responses identifying all of the information currently available to Plaintiffs on these issues.

### III. ALL PLAINTIFFS MUST PRODUCE RESPONSIVE DOCUMENTS IN A REASONABLE AMOUNT OF TIME.

Plaintiffs (whether class representatives or not), still have not produced a single responsive document, although in response to the MTC, they have now produced website links for the documents identified in their interrogatory responses. In general, Defendants are willing to accept links in lieu of the documents themselves, but are not convinced the responses are otherwise adequate.

### A. RFP1 – Initial Disclosures.

Plaintiffs argue that they do not need to produce the requests they submitted, and Defendants have already agreed to rely on the copies of the requests in Defendants' possession, assuming Plaintiffs

---

[7] Plaintiffs cite Admiral Lescher's testimony for the proposition that there were no negative mission impacts of unvaccinated personnel. Pls.' Opp'n at 9, 18-19. Although irrelevant to the present motion, Plaintiffs' characterization of his testimony is also incorrect. Admiral Lescher testified extensively about mission impacts, *see, e.g.*, Lescher Depo. Tr. 39:11-18, 48-49, 208-11(identifying mission impacts), and Defendants have provided additional examples in response to discovery.

8

do not dispute completeness or authenticity. Having refused to further identify or produce anything themselves, Plaintiffs can rely on whatever Defendants have in their possession. Plaintiffs' initial disclosures were not limited, however, to the requests themselves but also included related documents, presumably similar to documents (including emails/other communications) that Plaintiffs relied on at the original hearing. Generally, Defendants are "entitled to copies of the documents which were . . . disclosed pursuant to Rule 26." *See, e.g., G.R. Harvill, Inc. v. Patel*, No. 11-311, 2012 WL 13049555, at *3 (S.D. Ala. Feb. 16, 2012). If Plaintiffs are unwilling to produce the category of documents they themselves identified in their initial disclosures, they should be prohibited from relying upon them or referencing them in litigation. If Plaintiffs truly have nothing else, then they cannot produce such documents for the first time at summary judgment, in a motions hearing, or on the eve of trial. Similarly, with respect to the policy and SOP documents, if Plaintiffs have nothing further that falls in the category of documents they identified beyond the actual policies or the actual SOP, Defendants will accept the current production, but Plaintiffs cannot rely on or reference new documents later.

### B. Documents Related to Interrogatories.

Plaintiffs have now produced links to the documents referenced in the interrogatories. Assuming these links cover all of the referenced documents not already excluded, Defendants accept those links in lieu of production.[8] However, Plaintiffs' document production for each such request where they rely on interrogatory responses is also inadequate because their identification of documents in the interrogatory responses was inadequate and should be supplemented accordingly. And non-class representatives still need to respond.

### C. RFP 8 – Communications and Social Media Documents.

Plaintiffs now argue that there are no documents responsive to the limited request for online and social media communications related to relevant topics, but at the meet and confer, Plaintiffs'

---

[8] On initial review, it appears that SEAL2 omitted a link to at least one document referenced in his interrogatory responses, *see* DEX4, at App.579, ECF No. 193 (referring to the Congregation for the Doctrine of the Faith (CDF), "Note on the Morality of Using Some Anti-COVID-19 Vaccines," December 17, 2020), but it seems duplicative with a document identified by SEAL1, and Defendants do not need an additional copy of the link.

counsel conceded that they had not in fact conducted a search. DEX13(App.690), ECF No. 193. Plaintiffs' counsel never corrected Defendants' counsel's memorialization of that conversation, and do not even state in the briefing that it is inaccurate. In light of this inconsistency, the Court should require them to produce documents, or at least provide the Court with sworn statements from Plaintiffs describing an adequate search.

### IV. ALL PLAINTIFFS MUST PRODUCE DISCRETE MEDICAL INFORMATION.

Plaintiffs insist that Defendants have conceded that only the COVID-19 vaccine is relevant, and that their medical history therefore is not. Pls.' Opp'n at 15-17. But Defendants' requests are in fact designed to probe Plaintiffs' religious objection to the COVID-19 vaccine, including what the scope of that objection is. *See* Defs.' MTC, at 11, 23-25. While Plaintiffs' recent use of products ties to fetal cell line could be relevant to sincerity of Plaintiffs' objection to the COVID-19 vaccine, for example, it is relevant to other issues before the Court as well, including the availability of alternatives. For example, if Plaintiffs routinely use other products tied to fetal cell lines based on details about the nature of the nexus with fetal cell lines, Defendants can determine whether other available vaccines, or available alternatives to vaccination would be a less restrictive means. In any event, as discussed above, Plaintiffs' insistence that they already have conclusively established sincerity misunderstands the stage of the proceedings, and the proper role of discovery.

### CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion to Compel and direct the non-class-representative Plaintiffs to respond to discovery, including production of responsive documents, within 2 weeks and direct class representatives to supplement their discovery responses, including supplemental responses to Interrogatories 5-9, 11-13, and production of all responsive documents, within 2 weeks.

Dated: September 9, 2022                                    Respectfully submitted,

BRIAN M. BOYNTON

10

Principal Deputy Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Director

*/s/ Amy E. Powell*
ANDREW E. CARMICHAEL (VA Bar. No. 76578)
AMY E. POWELL
Senior Trial Counsel
STUART J. ROBINSON
Senior Counsel
ZACHARY A. AVALLONE
LIAM C. HOLLAND
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (919) 856-4013
Fax: (202) 616-8470
Email: amy.powell@usdoj.gov

*Counsel for Defendants*

11