**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| **NAVY SEALs 1-3,** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **LLOYD J. AUSTIN, III** in his official capacity as United States Secretary of Defense, *et al.*, <br><br> Defendants. | Case No. 4:21-cv-01236-O |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL PLAINTIFFS TO ANSWER DEFENDANTS' REQUESTS FOR ADMISSIONS

**TABLE OF CONTENTS**

INTRODUCTION...................................................................................................................1

BACKGROUND...................................................................................................................1

LEGAL STANDARDS...........................................................................................................4

ARGUMENT.......................................................................................................................5

      I.     Plaintiffs' Boilerplate Objections Are Improper.............................................5

      II.    The Non-Class-Representative Plaintiffs Must Answer Requests for Admission.........7

      III.   Class-Representative Plaintiffs Must Answer Defendants' RFAs Within A
           Reasonable Time. ....................................................................................12

           A.    RFAs 1 and 2.................................................................................12

           B.    RFAs 4 through 9............................................................................14

CONCLUSION...................................................................................................................17

# TABLE OF AUTHORITIES

## CASES

*Adelman v. Dallas Area Rapid Transit,*
    No. 3:16-cv-2579, 2017 WL 11552662 (N.D. Tex. Oct. 5, 2017) ................................................. 5

*Adkins v. Mid-Am. Growers, Inc.,*
    141 F.R.D. 466 (N.D. Ill. 1992) ................................................................................................. 10

*Am. Auto. Ass'n, Inc. v. AAA Legal Clinic of Jefferson Crooke, P.C.,*
    930 F.2d 1117 (5th Cir. 1991) .................................................................................................... 4

*Antoninetti v. Chipotle, Inc.,*
    No. 06-cv-2671, 2011 WL 2003292 (S.D. Cal. May 23, 2011) ................................................. 11

*Armour v. Knowles,*
    512 F.3d 147 (5th Cir. 2007) ................................................................................................. 4, 5

*Austin v. Navy SEALs 1-26,*
    142 S. Ct. 1301 (2022) .............................................................................................................. 8

*Barnett v. Experian Info. Sols., Inc.,*
    236 F.R.D. 307 (E.D. Tex. 2006) .............................................................................................. 9

*Brennan v. Midwestern United Life Ins. Co.,*
    450 F.2d 999 (7th Cir. 1971) ................................................................................................... 11

*Brown v. Bridges,*
    No. 3:12-cv-4947-P, 2015 WL 11121012 (N.D. Tex. Feb. 12, 2015) ......................................... 6

*Campbell v. Spectrum Automation Co.,*
    601 F.2d 246 (6th Cir. 1979) .................................................................................................... 4

*Ceroni v. 4Front Engineered Solutions, Inc.,*
    793 F. Supp. 2d 1268 (D. Colo. 2011) ...................................................................................... 7

*CHU de Quebec - Universite Laval v. DreamScape Dev. Grp. Holdings, Inc.,*
    No. 4:21-cv-182-SDJ, 2022 WL 1719405 (E.D. Tex. May 27, 2022) ......................................... 5

*Collier v. BrightPoint, Inc.,*
    No. 1:12-cv-1016, 2013 WL 652448 (S.D. Ind. Feb. 21, 2013) ............................................... 11

*Crosby v. La. Health Serv. & Indem. Co.,*
    647 F.3d 258 (5th Cir. 2011) .................................................................................................... 4

*Cutter v. Wilkinson,*
   544 U.S. 709 (2005).........................................................................................................16

*Disability Rts. Council of Greater Wash. v. Wash. Metro. Area Transit Auth.,*
   No. 04-cv-498, 2006 WL 2588710 (D.D.C. Sept. 7, 2006)..........................................11

*Ecoquij-Tzep v. Hawaiian Grill,*
   No. 3:16-cv-625-BN, 2017 WL 2672328 (N.D. Tex. June 21, 2017).............................10

*Ellis v. Elgin Riverboat Resort,*
   217 F.R.D. 415 (N.D. Ill. 2003) ....................................................................................9

*Gandhi v. Dell Inc.,*
   No. A-08-CA-248-JRN, 2010 WL 11506555 (W.D. Tex. July 28, 2010)......................10

*Heller v. City of Dallas,*
   303 F.R.D. 466 (N.D. Tex. 2014) ...................................................................................7

*In re Carney,*
   258 F.3d 415 (5th Cir. 2001) ..........................................................................................4

*In re United States,*
   864 F.2d 1153 ................................................................................................................12

*Janko v. Fresh Mkt., Inc.,*
   No. 13-cv-648-RLB, 2015 WL 4714928 (M.D. La. Aug. 5, 2015)................................6

*Kervin v. Supreme Serv. & Specialty Co.,*
   No. 15-01172, 2016 WL 8257256 (E.D. La. May 24, 2016) ........................................10

*Keycorp v. Holland,*
   No. 3:16-cv-1948, 2016 WL 6277813 (N.D. Tex. Oct. 26, 2016).................................4

*Kunze v. Baylor Scott & White Health,*
   No. 3:20-CV-01276-N, 2021 WL 5050335 (N.D. Tex. Nov. 1, 2021)...............9, 11

*Longoria v. Cnty. of Dallas,*
   No. 3:14-cv-311, 2016 WL 6893625 (N.D. Tex. Nov. 22, 2016).............................4, 5

*McGrath v. City of Phila.,*
   No. 92-4570, 1994 WL 45162 (E.D. Pa. Feb. 10, 1994) ..............................................10

*McLeod, Alexander, Powel & Apffel, P.C. v. Quarles,*
   894 F.2d 1482 (5th Cir. 1990)........................................................................................6

*Merrill v. Waffle House, Inc.,*
   227 F.R.D. 467 (N.D. Tex. 2005) ..................................................................................14

*Moreno v. Autozone, Inc.*,
No.C-05-4432 MJJ (EMC), 2007 WL 2288165 (N.D. Cal. Aug. 3, 2007) ..............................................11

*Moussazadeh v. Tex. Dep't of Crim. Justice*,
703 F.3d 781 (5th Cir. 2012) ..............................................................................................................16

*Navy SEALs 1–26 v. Biden*,
578 F. Supp. 3d 822 (N.D. Tex. 2022), *denying stay pending appeal* 27 F.4th 336 (5th Cir. 2022),
*granting stay sub nom., Austin v. Navy SEALs 1-26*, 142 S. Ct. 1301 (2022) ......................................1

*New Doe Child #1 v. Cong. of U.S.*,
891 F.3d 578 (6th Cir. 2018) ..............................................................................................................13

*Ogbonna v. USPLabs, LLC*,
No. EP-13-cv-347-KC, 2014 WL 12489695 (W.D. Tex. Aug. 15, 2014) ............................................6

*Oklevueha Native Am. Church of Haw., Inc. v. Lynch*,
828 F.3d 1012 (9th Cir. 2016) ............................................................................................................13

*Oppenheimer Fund, Inc. v. Sanders*,
437 U.S. 340 (1978) ....................................................................................................................10, 13

*Orchestrate HR, Inc. v. Trombetta*,
178 F. Supp. 3d 476 (N.D. Tex. 2016), *objections overruled*, No. 3:13-cv-2110-KS-BH, 2016 WL
5942223 ..............................................................................................................................................6

*Prejean v. Satellite Country Inc*,
No. 6:17-cv-01170, 2018 WL 11255569 (W.D. La. Oct. 24, 2018) ..............................................10, 11

*Ramirez v. Collier*,
142 S. Ct. 1264 (2022) ........................................................................................................................16

*Richardson v. Byrd*,
709 F.2d 1016 (5th Cir. 1983) ..............................................................................................................9

*Rivera v. UBM Enter., Inc.*,
No. 3:12-cv-496-P, 2014 WL 462586 (N.D. Tex. Feb. 5, 2014)............................................................11

*Samsung Elecs. Am., Inc. v. Chun*,
321 F.R.D. 250 (N.D. Tex. 2017) ........................................................................................................12

*SEC v. Brady*,
238 F.R.D. 429 (N.D. Tex. 2006) ..................................................................................................5, 6, 7

*Sheldon v. Vermonty*,
204 F.R.D. 679 (D. Kan. 2001) ............................................................................................................14

*Tagore v. United States,*
    735 F.3d 324 (5th Cir. 2013) ............................................................................................16

*Transamerican Refin. Corp. v. Dravo Corp.,*
    139 F.R.D. 619 (S.D. Tex. 1991) ......................................................................................11

*U.S. Navy SEALs 1-26 v. Biden,*
    27 F.4th 336 (5th Cir. 2022) ...............................................................................................8

*Wagner v. St. Paul Fire & Marine Ins. Co.,*
    238 F.R.D. 418 (N.D.W.V. 2006) ....................................................................................11

*Weatherspoon v. 739 Iberville, LLC,*
    No. 21-cv-0225, 2022 WL 824618 (E.D. La. Mar. 18, 2022) ........................................6, 7

*Weinstein v. Univ. of Conn.,*
    No. 3:11CV1906 (WWE), 2014 WL 3849971 (D. Conn. Aug. 5, 2014) ...........................12

## STATUTES

29 U.S.C. § 216 ............................................................................................................................10

## RULES

Fed. R. Civ. P. 36 ....................................................................................................................1, 4, 5

## OTHER AUTHORITIES

7B Charles A. Wright & Arthur R. Miller Fed. Prac. & Proc. § 1796.1 (3d ed. 2022) ...........................11

Brett Salkeld, You Can Have Your Tylenol Too: A Note on the Objections of Some Catholics
    to Using COVID-19 Vaccines, *Church Life Journal,* Univ. of Notre Dame (Oct. 6, 2021),
    https://perma.cc/8REX-REQ8 ...........................................................................................15

Cell Lines Used for Viral Vaccine Production, *Charlotte Lozier Institute* (Jan. 4, 2021),
    https://perma.cc/3NZ8-AJAY ............................................................................................14

COVID-19 Vaccines & Fetal Cell Lines, *North Dakota Department of Health* (updated Aug. 17,
    2022),
    https://perma.cc/VM37-LLX2 ...........................................................................................14

Fr. Matthew P. Schneider. L.C., If Any Drug Tested on HEK-293 Is Immoral, Goodbye
    Modern Medicine, *Through Catholic Lenses* (Jan. 28, 2021),
    https://perma.cc/7VCY-UXLP ..........................................................................................15

Jon Jackson, New COVID Vaccine Could Appeal to Some Religious Skeptics, *Newsweek*
    (Feb. 18, 2022),
    https://perma.cc/P5PK-6J3W .............................................................................................13

Novavax COVID-19 Vaccine, Adjuvanted (July 13, 2022), https://perma.cc/C7X9-MXXE............13

Pryanka Runwal, Here are the facts about fetal cell lines and COVID-19 vaccines, *National Geographic* (Nov. 19, 2021), https://perma.cc/NK7G-TQVK...................................................................................................14

Rev. Nicanor Pier Giorgio Austriaco, O.P., Moral Guidance on Using COVID-19 Vaccines Developed with Human Fetal Cell Lines, *Public Discourse* (May 26, 2020), https://perma.cc/DPT9-A3PX ...............................................................................................15

Sec'y of Def. Mem. (Aug. 24, 2021), https://perma.cc/N759-S758.........................................................13

William B. Rubenstein, 3 Newberg and Rubenstein on Class Actions § 7:15 (6th ed. 2022) ................9

William B. Rubenstein, 3 Newberg and Rubenstein on Class Actions § 9:12 (6th ed. 2022) ...............11

## INTRODUCTION

Plaintiffs have refused to comply with their discovery obligations in responding to Defendants' first set of requests for admission ("RFAs"). Neither the thirty-one named Plaintiffs who are not designated class representatives nor the four class-representative Plaintiffs have answered any of Defendants' requests. Instead, Plaintiffs have responded only with objections, many of which are boilerplate, and none of which are sufficient to excuse them from admitting (or specifically denying) the subject matter of Defendants' RFAs. Defendants therefore respectfully request that the Court order Plaintiffs to answer RFAs 1 and 2 and 4 through 9 pursuant to Federal Rule of Civil Procedure 36(a)(6).

## BACKGROUND

On Nov. 9, 2021, thirty-five Plaintiffs (proceeding under pseudonyms) filed this matter seeking nationwide relief against the vaccine mandate, raising claims under, *inter alia*, the Religious Freedom Restoration Act ("RFRA"), the Free Exercise Clause, and the Administrative Procedure Act ("APA"). *See* ECF No. 1. All 35 Plaintiffs sought and received a preliminary injunction that was then partially stayed by the Supreme Court pending appeal, and the appeal remains pending in the Fifth Circuit. *See Navy SEALs 1–26 v. Biden*, 578 F. Supp. 3d 822 (N.D. Tex. 2022), *denying stay pending appeal* 27 F.4th 336 (5th Cir. 2022), *granting stay sub nom., Austin v. Navy SEALs 1-26*, 142 S. Ct. 1301 (2022). In support of that motion and in opposition to the motion to stay, Plaintiffs relied on declarations and documentary material from the Plaintiffs themselves, as well as from other putative class members. *See* ECF Nos. 17 (App.870–1022) (declarations from all plaintiffs), 59 (App.1023–1134) (more), 62 (attaching document received from client), 63 (declaration of U.S. Navy SEAL 26), 100 (App.13–17) (declaration of U.S. Navy Special Warfare Combatant Craft Crewman 4). While some live testimony came from class representatives, other submissions did not.

On January 24, 2022, Plaintiffs filed an amended complaint. *See* ECF No. 84. The amended complaint raises a similar set of claims on behalf of the same Plaintiffs, and designates four of the 35 named Plaintiffs as class representatives: Navy SEALs 1-3 and Navy EOD Technician 1. *See id.* The

Court granted Plaintiffs' motion for class certification and for a preliminary injunction, partially staying that injunction to the same extent the original injunction was stayed. *See* ECF No. 140.[1] Class-representative Plaintiffs, non-class-representative Plaintiffs, and other putative class members submitted declarations and documents to the Court in support of the class-wide preliminary injunction, as well as several other motions. *See* ECF Nos. 97 (App.1–8, 12–32), 118 (App.33–93), 134 (App.1–35, 103–48), 174 (App.3–8), 178 (App.57–117).

Discovery now has commenced. As relevant here, in mid-July, Defendants served identical sets of nine requests for admission ("RFAs") on each of the 35 Plaintiffs. The RFAs ask each of the Plaintiffs in this case to admit (or specifically deny) the truth of certain facts relevant to Plaintiffs' claims and to Defendants' defenses:

1. Admit that you are unwilling to receive the Novavax COVID-19 vaccine.

2. Admit that you are unwilling to travel to another country to receive any World Health Organization-listed COVID-19 vaccine that was developed without use of fetal cell lines.

3. Admit that you do not know whether particular fetal cell lines that you allege were used in connection with the Pfizer, Moderna, or Johnson & Johnson COVID-19 vaccines resulted from an elective abortion.

4. Admit that you have received the rubella vaccine.

5. Admit that you have received the varicella (chickenpox) vaccine.

6. Admit that you have received the Hepatitis A vaccine.

7. Admit that you have taken ibuprofen within the last five years.

8. Admit that you have taken aspirin within the last five years.

9. Admit that you have taken Tylenol within the last five years.

---

[1] The appeal of that Order is also pending and has been consolidated with the original appeal. *U.S. Navy SEALs 1-26 v. Biden*, No. 22-10077, consolidated with No. 22-10534 (5th Cir.).

*See* DEX1 (App.4–213).[2]  The RFAs will, through Plaintiffs' admissions (or specific denials) define the nature and scope of Plaintiffs' objections to COVID-19 vaccines, the nature and scope of their asserted religious convictions, and the degree of burden that the military's vaccination policy imposes on those convictions.

On August 15, 2022, Plaintiffs responded to Defendants' RFAs only with objections. *See* DEX2, DEX3, DEX4, DEX5, DEX6 (App.214–263). For their part, the non-class-representative Plaintiffs asserted that they need not respond to *any* discovery requests in this case, and that they need not respond to the RFAs "to the extent that" the RFAs would go beyond the scope permitted by the Federal Rules of Civil Procedure and other applicable authorities. *See* DEX6 (App.258–263).  The class-representative Plaintiffs likewise refused to answer. *See* DEX2, DEX3, DEX4, DEX5 (App.214–257).  They too asserted general objections to the RFAs "to the extent that" the RFAs exceeded the scope permitted by applicable rules and orders, and "to the extent that" the RFAs "seek[] information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, clergy privilege, marital privilege, or any other applicable privilege." *See* DEX2 (App.216), DEX3 (App.227), DEX4 (App.238), DEX5 (App.249).   The class-representative Plaintiffs also objected that Defendants' RFAs are "not reasonably related to any claim or defense in this case," concern issues not subject to litigation, or are otherwise "entirely unclear." *See* DEX2 (App.216–217), DEX3 (App.227–228), DEX4 (App.238–239), DEX5 (App.249, 251).

After reviewing Plaintiffs' objections to the RFAs, Defendants' counsel requested a conference with Plaintiffs' counsel. *See* DEX7 (App.267–268). On September 8, 2022, the parties conducted a telephonic meet-and-confer to discuss Defendants' intention to move to compel Plaintiffs to answer the RFAs. *See id.* (App.266). Plaintiffs suggested that Defendants wait until the Court resolves the pending motion to compel responses to Defendants' interrogatories and requests

---

[2] While this first round of RFAs seek identical admissions from each named Plaintiff, Defendants anticipate that future RFAs may seek additional admissions unique to each individual, based on his or her responses to other discovery requests.

for production, *see* ECF No. 191, before seeking relief with respect to the RFAs. *See* DEX7 (App.266). But rather than put off resolving the sufficiency of Plaintiffs' objections to the RFAs, Defendants suggested that the parties agree to treat the Court's ruling on the first motion as fully dispositive of Plaintiffs' objections. *See id.* (App.266). Plaintiffs requested the opportunity to consider Defendants' proposal and to determine whether, in their view, there were any issues unique to Defendants' RFAs that would require a separate determination from the Court. *See id.* (App.266). On September 28, Defendants' counsel sent a follow-up email to Plaintiffs' counsel asking for Plaintiffs' position on Defendants' proposal. *See id.* (App.266). After Defendants' counsel sent another follow-up email the following week, Plaintiffs' counsel finally replied, indicating that, in Plaintiffs' view, the Court's ruling on the pending motion to compel may "impact[]" Defendants' RFAs and "which Plaintiffs must respond to" them, but they did not agree that the Court's ruling would necessarily resolve the sufficiency of their objections to the RFAs, *see id.* (App.265).

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure 36, a party may request that "any other party" admit "the truth of any matters within the scope of [discovery] relating to," among other things, "facts, the application of law to fact, or opinions about either." Fed. R. Civ. P. 36(a)(1)(A). "[T]he scope of discovery is broad," *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011), and so "Rule 36 allows litigants to request admissions as to a broad range of matters, including ultimate facts," *In re Carney*, 258 F.3d 415, 419 (5th Cir. 2001). A party may request admissions even as to matters "that, if admitted, 'relate to material facts that defeat a party's claim.'" *Keycorp v. Holland*, No. 3:16-cv-1948, 2016 WL 6277813, at *14 (N.D. Tex. Oct. 26, 2016) (quoting *Am. Auto. Ass'n, Inc. v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1120 (5th Cir. 1991)); *see also Campbell v. Spectrum Automation Co.*, 601 F.2d 246, 253 (6th Cir. 1979) (cited approvingly by *In re Carney*, 258 F.3d at 419). "Such breadth allows litigants to winnow down issues prior to trial and thus focus their energy and resources on disputed matters." *Longoria v. Cnty. of Dallas*, No. 3:14-cv-311, 2016 WL 6893625, at *5 (N.D. Tex. Nov. 22, 2016) (quoting *In re Carney*, 258 F.3d at 419); *see also Armour v. Knowles*, 512 F.3d 147, 154 n.13

4

(5th Cir. 2007) ("The binding nature of judicial admissions conserves judicial resources by avoiding the need for disputatious discovery on every conceivable question of fact.").

A party responding to a Rule 36 request must either admit the subject matter of the request, "specifically deny it," or "state in detail why [he or she] cannot truthfully admit or deny it." Fed. R. Civ. P. 36(a)(4). Alternatively, a party may state with specificity the "grounds for objecting to a request." *Id.* 36(a)(5). "When . . . a party chooses to object to a request for admission, the resisting party has the burden to justify the objection." *CHU de Quebec - Universite Laval v. DreamScape Dev. Grp. Holdings, Inc.*, No. 4:21-cv-182-SDJ, 2022 WL 1719405, at *9 (E.D. Tex. May 27, 2022); *see also Adelman v. Dallas Area Rapid Transit*, No. 3:16-cv-2579, 2017 WL 11552662, at *2 (N.D. Tex. Oct. 5, 2017) ("Broad-based, non-specific objections are almost impossible to assess on their merits, and fall woefully short of the burden that must be borne by a party making an objection [to a Rule 36 request]." (quoting *SEC v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006))).

Once a party has responded to a Rule 36 request for admission, Rule 36(a)(6) permits the requesting party to "move to determine the sufficiency of an answer or objection," and "[u]nless the court finds an objection justified, it must order that an answer be served." "[O]n finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served." *Longoria*, 2016 WL 6893625, at *6 (cleaned up) (quoting Fed. R. Civ. P. 36(a)(6)).

## ARGUMENT

### I.    Plaintiffs' Boilerplate Objections Are Improper.

Both groups of Plaintiffs raise certain "General Objections" that purport to serve as objections to "each instruction, definition, and request for admission," *see* DEX2 (App.216), DEX3 (App.227), DEX4 (App.238), DEX5 (App.249), but none of these objections can excuse Plaintiffs' failure to answer Defendants' RFAs. In particular, all of Plaintiffs' "General Objections" fail because they are improper boilerplate objections.

"Any objections to a request for admission must conform with Rule 36(a)(5), which requires objections to address specific requests." *Janko v. Fresh Mkt., Inc.*, No. 13-cv-648-RLB, 2015 WL 4714928, at *2 (M.D. La. Aug. 5, 2015).  In keeping with this requirement for specificity, "[c]ourts throughout the country have long interpreted the rules to prohibit general, boilerplate objections" that "merely state[] the legal grounds for the objection without: (1) specifying how the discovery request is deficient and (2) specifying how the objecting party would be harmed if it were forced to respond to the request." *Weatherspoon v. 739 Iberville, LLC*, No. 21-cv-0225, 2022 WL 824618, at *5 (E.D. La. Mar. 18, 2022); *see also Brown v. Bridges*, No. 3:12-cv-4947-P, 2015 WL 11121012, at *3 (N.D. Tex. Feb. 12, 2015) ("[G]eneral, boilerplate overbreadth, undue burden, and oppressiveness objections are improper . . . ."); *Orchestrate HR, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 507 (N.D. Tex. 2016), *objections overruled*, No. 3:13-cv-2110-KS-BH, 2016 WL 5942223 ("Objections to discovery must be made with specificity, and the responding party has the obligation to explain and support its objections."); *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (parties "must have a valid objection to each [discovery request] in order to escape the production requirement").  Rather, because the "party resisting discovery bears the burden," an objector must actually "explain its objections and . . . provide support for those objections" as to "particular discovery requests." *Ogbonna v. USPLabs, LLC*, No. EP-13-cv-347-KC, 2014 WL 12489695, at *4 (W.D. Tex. Aug. 15, 2014).

Each of Plaintiffs' "General Objections" fails this standard.  For one thing, they each operate as "[b]road-based, non-specific objections" that may or may not apply to any given request for admission.  *See Brady*, 238 F.R.D. at 437.  Take, for example, the class-representative Plaintiffs' objection "to the extent that [the RFAs] seek[] information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, clergy privilege, marital privilege, or any other applicable privilege," *see* DEX2 (App.216), DEX3 (App.227), DEX4 (App.238), DEX5 (App.249): That objection wholly fails to specify any request for admission that implicates these privileges, and it also fails to identify which privilege(s) would apply to a particular request.  Such amorphous objections "are almost impossible to assess on their merits" without requiring other parties and the Court to do

6

the objectors' work for them, and so they "fall woefully short of the burden that" Plaintiffs must bear here. *SEC*, 238 F.R.D. at 437; *Weatherspoon*, 2022 WL 824618, at *5.

Even assessed individually, Plaintiffs' "General Objections" cannot satisfy Rule 36(a)(5)'s requirement of specificity. Both the class-representative and non-class-representative Plaintiffs purport to object "to the extent that" the RFAs go beyond the permissible scope of discovery, but that precise objection has already been recognized as improper in this District. *Heller v. City of Dallas*, 303 F.R.D. 466, 484 (N.D. Tex. 2014) ("[T]he objection to all requests to the extent that they exceed or conflict with the scope of permissible discovery is an off-the-shelf and decidedly non-specific objection that gains the responding party nothing without tying it to a particular discovery request and explaining precisely how that request exceeds or conflicts with the scope of permissible discovery."). Similarly, though the class-representative Plaintiffs purport to object by "vaguely asserting privilege(s)," such objections are properly characterized as "taglines, completely devoid of any individualized factual analysis." *Weatherspoon*, 2022 WL 824618, at *5 (quoting *Ceroni v. 4Front Engineered Solutions, Inc.*, 793 F. Supp. 2d 1268, 1278 (D. Colo. 2011)). And the class-representative Plaintiffs' nonspecific, general objection "to each request for admission that is not reasonably related to any claim or defense in this case," *see* DEX2 (App.216), DEX3 (App.227), DEX4 (App.238), DEX5 (App.249), as well as the non-class-representative Plaintiffs' objection to "all discovery requests" as improper and burdensome, *see* DEX6 (App.260), fail to "show *specifically* how each . . . request is overly broad, unduly burdensome, or oppressive," *Heller*, 303 F.R.D. at 490 (emphasis added). Accordingly, the Court should find each of these objections insufficient to excuse Plaintiffs from answering Defendants' RFAs.

## II.     The Non-Class-Representative Plaintiffs Must Answer Requests for Admission.

Setting aside the boilerplate nature of the non-class-representative Plaintiffs' objection to "all discovery requests," that objection lacks merit on its own terms. In particular, Plaintiffs' argument fails because the non-class-representative Plaintiffs remain named parties in this case, and so they are subject to discovery. By virtue of being named in the Amended Complaint, all Plaintiffs are parties in

this action, not absent class members. Thus, they are subject to the discovery requirements of Rule 26 on the face of the Rule.

Indeed, each Plaintiff has actively participated as a party in this case, having sought *and received* relief from this Court on their own behalf while relying on their own sworn declarations. *See supra* pp. 1–2. There is no reasonable argument that "all discovery" as to them is irrelevant or disproportionate to the needs of the case, much less that answering Defendants' nine RFAs would be "unduly burdensome." *See* DEX6 (App.206–261). The non-class-representative Plaintiffs provided declarations in support of the preliminary injunctions currently on appeal, and many of them have submitted declarations in support of various other motions filed to date,[3] directly putting at issue their personal testimony and personal situations. *See supra* pp. 1–2 (collecting appendix cites to multiple declarations by all individual Plaintiffs). Defendants are entitled to obtain answers to their RFAs from all such parties, especially where the Court has relied on untested testimony by those same parties.

Moreover, Defendants' RFAs are relevant and proportional to the needs of the case, particularly given Defendants' right to seek discovery in support of a potential motion to decertify the class. Plaintiffs' RFRA claims, by their nature, put a number of factual issues at the center of this case. These factual issues include the nature and scope of Plaintiffs' religious objections to the COVID-19 vaccine, which must be defined clearly so that Defendants can assess whether they should challenge Plaintiffs' sincerity, whether there is (and continues to be) a substantial burden on Plaintiffs' specific religious beliefs, and whether less restrictive means are available that would satisfy Plaintiffs' religious objections. Also relevant is the extent of Plaintiffs' knowledge about the various COVID-19 vaccines, as Plaintiffs' knowledge about the vaccines informs their understanding of whether and how

---

[3] Indeed, at least three non-class-representative Plaintiffs have submitted declarations in connection with motions post-dating class certification. *See* ECF No. 174 (App.3–5) (U.S. Navy SEAL 10); ECF No. 178 (App.68–74) (U.S. Navy SEALs 21 and 23). Plaintiffs continue to rely on this testimony in appellate proceedings, *see, e.g.,* Br. of Appellee at 9–10, 17, 38–39, 52–55, U.S. *Navy SEALs 1–26 v. Biden*, No. 22-10077, and both the Fifth Circuit and a dissenting Supreme Court Justice relied on it as well in assessing the propriety of a stay of this Court's preliminary-injunction order, *see U.S. Navy SEALs 1-26 v. Biden,* 27 F.4th 336 (5th Cir. 2022); *Austin v. U.S. Navy SEALs 1-26*, 142 S. Ct. 1301, 1303-04 (2022) (Alito, J., dissenting).

vaccination may burden their individual religious beliefs.  While Plaintiffs intend to argue that the class representatives' experience shows a RFRA violation as to the class, Defendants will likely argue both that Defendants did not violate RFRA as to the class representatives, and that the individualized circumstances and varied beliefs of other class members shows that Defendants did not violate RFRA as to the class.  Accordingly, consistent with the purposes of Rule 36, Defendants may seek to narrow and define the issues in dispute by serving requests for admission on all named Plaintiffs.[4]

Defendants' RFAs also are relevant and proportional at this stage in the litigation because Defendants may challenge class certification again.  While Defendants maintain that class certification was inappropriate as a matter of law, that determination was made at a preliminary stage, without the benefit of discovery.  When adequate discovery has been marshalled, Defendants may move to modify or decertify the class under Rule 23(c)(1)(C).  *See Richardson v. Byrd,* 709 F.2d 1016, 1019 (5th Cir. 1983) ("The district judge must define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts."); *Kunze v. Baylor Scott & White Health*, No. 3:20-CV-01276-N, 2021 WL 5050335, at *3 (N.D. Tex. Nov. 1, 2021) ("Defendants should receive individualized discovery responses from enough class members to allow Defendants to pursue their defense that Plaintiffs are not similarly situated."); *Barnett v. Experian Info. Sols., Inc.*, 236 F.R.D. 307, 308 (E.D. Tex. 2006) ("The district court retains discretion to decertify a class throughout the litigation."); *Ellis v. Elgin Riverboat Resort*, 217 F.R.D. 415, 420 (N.D. Ill. 2003); *cf.* William B. Rubenstein, 3 Newberg and Rubenstein on Class Actions § 7:15 (6th ed. 2022) ("[D]iscovery may be required in either or both of two circumstances: 'when the facts relevant to any of the certification requirements are disputed or when the opposing party contends that proof of the claims or defenses unavoidably raises individual issues.'" (citation omitted)).  Defendants fully expect discovery to bear out their arguments that, among other things, changes in circumstances (such as the authorization of

---

[4] Additionally, because there are now individual Plaintiffs who are *not* class members (because they have withdrawn their RARs), Defendants are separately entitled to seek discovery of them as to the continuing merits of their claims.

additional COVID-19 vaccines) have lessened or eliminated any burden on the religious beliefs of at least some Plaintiffs, and that Plaintiffs cannot show that class representatives are typical, adequate or fair representatives of the class certified. The matters addressed in Defendants' RFAs clearly "bear[] on, or . . . reasonably could lead to other matters that could bear on" these issues, *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978), and so the Court should find Plaintiffs' objections insufficient.

Plaintiffs cite three out-of-district cases for the incorrect proposition that "[i]ndividualized discovery is not available in Rule 23 class actions." *See, e.g.,* DEX6 (App.260); *Kervin v. Supreme Serv. & Specialty Co.*, No. 15-01172, 2016 WL 8257256, at *3 (E.D. La. May 24, 2016) (distinguishing Rule 23 class from Fair Labor Standards Act collective action); *McGrath v. City of Phila.*, No. 92-4570, 1994 WL 45162, at *3 (E.D. Pa. Feb. 10, 1994); *Adkins v. Mid-Am. Growers, Inc.*, 141 F.R.D. 466, 468 (N.D. Ill. 1992). Rule 23, of course, does not create any exception to the requirements of Rules 26 and 36; the question remains whether the discovery sought is relevant and proportional to the needs of the case. Each of the cases cited by Plaintiffs relates to collective actions under the FLSA, not class actions under Rule 23. Unlike class actions brought under Rule 23, classes under 29 U.S.C. § 216(b) are "opt-in" classes, requiring any employee wishing to become a party to the action to "opt in" (rather than "opt out") by filing his consent with the court in which the action is brought. *Ecoquij-Tzep v. Hawaiian Grill,* No. 3:16-cv-625-BN, 2017 WL 2672328, at *2 (N.D. Tex. June 21, 2017). Accordingly, the cases generally address discovery of the "opt-in" class members, sometimes a very large group, who are not represented by counsel, did not choose to bring the lawsuit in the first instance, and who are therefore much more similar to absent class members in a Rule 23 class than they are to the named Plaintiffs here. Thus, while Defendants are aware of some cases where "opt-in" class members were not subject to individualized discovery, Plaintiffs have not cited a single case where a named plaintiff in a Rule 23 class action was not subject to discovery.

Even in the FLSA context, other courts have routinely permitted discovery as to class members where it is proportionate to the needs of the case. *See Gandhi v. Dell Inc.,* No. A-08-CA-248-JRN, 2010 WL 11506555, at *6 (W.D. Tex. July 28, 2010); *Prejean v. Satellite Country Inc,* No. 6:17-cv-

01170, 2018 WL 11255569 (W.D. La. Oct. 24, 2018) (permitting limited individualized discovery); *Rivera v. UBM Enter., Inc.*, No. 3:12-cv-496-P, 2014 WL 462586, at *2 (N.D. Tex. Feb. 5, 2014); *Kunze,* 2021 WL 5050335, at *3. And in the Rule 23 context, courts permit discovery even of *absent* class members when proportionate to the needs of the case. *See, e.g., Brennan v. Midwestern United Life Ins. Co.*, 450 F.2d 999, 1005 (7th Cir. 1971); 7B Charles A. Wright & Arthur R. Miller Fed. Prac. & Proc. § 1796.1 (3d ed. 2022) (collecting cases where discovery of absent class members was allowed); *Transamerican Refin. Corp. v. Dravo Corp.*, 139 F.R.D. 619, 622 (S.D. Tex. 1991). Indeed, absent class members who intentionally inject themselves into litigation are generally subject to discovery. *See, e.g., Collier v. BrightPoint, Inc.*, No. 1:12-cv-1016, 2013 WL 652448, at *3 (S.D. Ind. Feb. 21, 2013) ("It is difficult for the Court to find that Mr. Lee is a mere absent class member in this case, where he is actively injecting himself into the proceeding. . . ."); *Disability Rts. Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, No. 04-cv-498, 2006 WL 2588710, at *1 (D.D.C. Sept. 7, 2006) (approving discovery of absent class members who submitted declarations); *Antoninetti v. Chipotle, Inc.*, No. 06-cv-2671, 2011 WL 2003292, at *1 (S.D. Cal. May 23, 2011) (explaining that the rules regarding discovery of absent class members are especially flexible "where the proposed deponents have been identified as potential witnesses or have otherwise 'injected' themselves into the litigation"); *Moreno v. Autozone, Inc.*, No. C-05-4432 MJJ (EMC), 2007 WL 2288165, at *1 (N.D. Cal. Aug. 3, 2007) (allowing discovery of "absent class members who have injected themselves into the class certification motion by filing factual declarations"); *see also* 3 Newberg and Rubenstein on Class Actions § 9:12 (6th ed. 2022) ("Several courts have concluded that class members who have 'injected themselves' into the litigation—for example, by filing declarations or being listed as witnesses by plaintiffs' counsel—are subject to discovery."). Here, Defendants are not proposing individualized discovery of thousands of absent class members; rather, Plaintiffs are a tiny fraction of the class and have intentionally put their individual circumstances at issue.

Plaintiffs' attempt to "expressly reserve" the ability to assert additional objections should their initial objections fail is unavailing, *see* DEX6 (App.260), as it neither comports with their obligations

under the federal rules nor this District's practice. *See, e.g.*, *Samsung Elecs. Am., Inc. v. Chun*, 321 F.R.D. 250, 283 (N.D. Tex. 2017) ("[A]s a general rule, when a party fails to object timely to interrogatories, production requests, or other discovery efforts, objections thereto are waived." (quoting *In re United States*, 864 F.2d 1153, 1156 (5th Cir. 1989))). Accordingly, all other objections have been waived. *See, e.g.*, *Wagner v. St. Paul Fire & Marine Ins. Co.*, 238 F.R.D. 418, 423 (N.D.W.V. 2006) ("[A]rguments against a request for admission not first raised in a timely objection are waived, unless the objecting party can show good cause for the failure."); *accord Weinstein v. Univ. of Conn.*, No. 3:11CV1906 (WWE), 2014 WL 3849971, at *4 (D. Conn. Aug. 5, 2014). Defendants therefore respectfully request an order finding the non-class-representative Plaintiffs' objections to be insufficient and directing those Plaintiffs to answer Defendants' RFAs 1 and 2 and 4 through 9 within two weeks.

## III.  Class-Representative Plaintiffs Must Answer Defendants' RFAs Within A Reasonable Time.

Setting aside the non-class-representative Plaintiffs' objections, the class-representative Plaintiffs have similarly refused to answer any of Defendants' RFAs. In addition to the boilerplate objections discussed *supra* 5–7, the class-representative Plaintiffs have interposed various objections to each request. But none of Plaintiffs' objections are justified, particularly their objections to RFAs 1 and 2 and 4 through 9. The Court should therefore order the class representatives to answer each of those RFAs pursuant to Rule 36(a)(6).

### A.  RFAs 1 and 2

RFAs 1 and 2 ask the class-representative Plaintiffs to admit whether they are willing to receive, or take steps to receive, COVID-19 vaccines other than the Pfizer and Moderna vaccines that they believe to have been developed through objectionable methods. Plaintiffs object to these two requests on identical relevance grounds: They contend that RFAs 1 and 2 are "not reasonably related to any claim or defense in this case" because COVID-19 vaccines other than Pfizer and Moderna have "not received full licensure from the FDA" and so are not addressed by the Department of Defense's

August 24, 2021 COVID-19 vaccine mandate.  The Court should find these objections insufficient and order the class-representative Plaintiffs to answer.

RFAs 1 and 2 are clearly relevant to Plaintiffs' claims and Defendants' defenses.  Although the August 24, 2021 directive provides for usage of "vaccines that receive full licensure from the [FDA]," it also explicitly provides that "[s]ervice members voluntarily immunized with a COVID-19 vaccine under FDA Emergency Use Authorization or World Health Organization Emergency Use Listing in accordance with applicable dose requirements prior to, or after, the establishment of this policy are considered fully vaccinated." Sec'y of Def. Mem. (Aug. 24, 2021), https://perma.cc/N759-S758. Even assuming for the sake of argument that the class-representative Plaintiffs are sincere in their religious beliefs and that those beliefs would be burdened by a requirement to become vaccinated with the Pfizer or Moderna vaccines, a question would still remain as to whether there are less-restrictive means—means that could include accepting vaccines that have received approval from relevant authorities but that have not yet been fully licensed by the FDA—available to accommodate Plaintiffs' beliefs.  Admissions that would determine whether or not the class-representative Plaintiffs' religious beliefs would be burdened by other presently available vaccines clearly "bear on" that question. *Oppenheimer Fund, Inc.*, 437 U.S. at 351.  For example, if a Plaintiff objects to the use of fetal stem cells or mRNA technology, the newly available COVID-19 vaccine from Novavax may not substantially burden those beliefs.[5] *See* DEX8 (App.272–273);[6] *see also, e.g., New Doe Child #1 v. Cong. of U.S.*, 891 F.3d 578, 590–91 (6th Cir. 2018) (acceptable alternatives can defeat a substantial burden claim); *Oklevueha Native Am. Church of Haw., Inc. v. Lynch*, 828 F.3d 1012, 1016–17 (9th Cir. 2016) (same).  If

---

[5] Plaintiffs have expressed some doubt whether the Novavax COVID-19 vaccine was developed without use of fetal cell lines. *See* ECF No. 198 at 9 n.5. While that may be an additional factual basis for a Plaintiff's religious objection to vaccination, no Plaintiff appears to have articulated that taking the Novavax vaccine would substantially burden their religious convictions. Therefore, months after the Novavax vaccine's availability, Defendants are still unaware whether Plaintiffs object to it on religious grounds.

[6] *See also* Novavax COVID-19 Vaccine, Adjuvanted (July 13, 2022), https://perma.cc/C7X9-MXXE; Jon Jackson, New COVID Vaccine Could Appeal to Some Religious Skeptics, *Newsweek* (Feb. 18, 2022), https://perma.cc/P5PK-6J3W.

that is so, then Defendants may be able to offer a less-restrictive alternative to accommodate Plaintiffs'
beliefs. Accordingly, Defendants are entitled to discovery about Plaintiffs' willingness to accept such
potentially less-restrictive alternatives. This is especially true given that "[r]elevancy is broadly
construed, and a request for discovery should be considered relevant if there is 'any possibility' that
the information sought may be relevant to the claim or defense of any party." *Merrill v. Waffle House,
Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005) (quoting *Sheldon v. Vermont*, 204 F.R.D. 679, 689 (D. Kan.
2001)).

  **B.     RFAs 4 through 9**

  RFAs 4 through 9 ask Plaintiffs to admit (or specifically deny) discrete matters that bear on
the nature and scope of their stated religious beliefs and objections to COVID-19 vaccines. In
particular, RFAs 4 through 9 ask Plaintiffs to admit whether they have taken various vaccines or
medications that used fetal cell lines in development or testing.[7] *See e.g.*, DEX1 (App.8). Rather than
answer these RFAs, the class-representative Plaintiffs have lodged various objections, none of which
are justified.

  *First*, Plaintiffs contend that RFAs 4 through 9 are "not reasonably related to any claim or
defense in this case" or that their relevance is indiscernible. *See* DEX2 (App.218–221, DEX3
(App.229–232), DEX4 (App.240–243), DEX5 (App.251–254). But each RFA addresses an issue that
is central to most Plaintiffs' objections to COVID-19 vaccines—that these vaccines were allegedly
developed using fetal cell lines derived from an abortion. *See* Am. Compl. ¶ 30, ECF No. 84. A number
of Plaintiffs made this assertion in their RARs to explain why they felt COVID-19 vaccines burdened
their religiously motivated opposition to abortion.[8] And most Plaintiffs repeated this allegation in

---

  [7] *See, e.g.*, Cell Lines Used for Viral Vaccine Production, *Charlotte Lozier Institute* (Jan. 4, 2021),
https://perma.cc/3NZ8-AJAY; Pryanka Runwal, Here are the facts about fetal cell lines and COVID-
19 vaccines, *National Geographic* (Nov. 19, 2021), https://perma.cc/NK7G-TQVK; COVID-19
Vaccines & Fetal Cell Lines, *North Dakota Department of Health* (updated Aug. 17, 2022),
https://perma.cc/VM37-LLX2.
  [8] *See* ECF No. 17 at 19 (U.S. Navy SEAL 7's RAR); *id.* at 24, 28 (U.S. Navy SEAL 11's RAR);
*id.* at 29 (U.S. Navy SEAL 12's RAR); *id.* at 32 (U.S. Navy SEAL 13's RAR); *id.* at 49 (U.S. Navy SEAL
17's RAR); ECF No. 17-1 at 12, 15, 17 (U.S. Navy SEAL 23's RAR); *id.* at 44–47 (EOD 1's RAR).

14

declarations submitted in support of their request for preliminary relief.[9] Defendants are therefore entitled in discovery to probe the basis of Plaintiffs' sworn testimony and their view that COVID-19 vaccines impinge upon their religious convictions.

Furthermore, a Plaintiff's admission that he or she has taken other vaccines or medications produced with fetal cell lines—examples of which are addressed in RFAs 4 through 9—may be probative of the nature and scope of a Plaintiff's opposition to COVID-19 vaccines. Many common vaccines or medications were produced or tested using fetal cell lines, but people likely hold varied beliefs related to these medical treatments.[10] Therefore, to determine the scope of a particular Plaintiff's objection to COVID-19 vaccines, it is necessary to inquire whether he or she draws lines between certain treatments that are connected to fetal cell lines. If a Plaintiff does not abstain from all of these products, he or she may have drawn a religious distinction between them, which may be pertinent to whether any other COVID-19 vaccines could serve as a less-restrictive alternative for Plaintiffs. And, if the Plaintiff does take medications produced using fetal cell lines but have not drawn

---

[9] *See* Decl. of U.S. Navy SEAL 1 ¶ 4, ECF No. 17-6; Decl. of U.S. Navy SEAL 2 ¶ 4, ECF No. 17-6; Decl. of U.S. Navy SEAL 5 ¶ 5, ECF No. 17-6; Decl. of U.S. Navy SEAL 6 ¶ 4, ECF No. 17-6; Decl. of U.S. Navy SEAL 8 ¶ 3, ECF No. 17-6; Decl. of U.S. Navy SEAL 9 ¶ 5, ECF No. 17-6; Decl. of U.S. Navy SEAL 10 ¶ 6, ECF No. 17-7; Decl. of U.S. Navy SEAL 11 ¶ 4, ECF No. 17-6; Decl. of U.S. Navy SEAL 12 ¶ 3, ECF No. 17-7; Decl. of U.S. Navy SEAL 13 ¶ 5, ECF No. 17-7; Decl. of U.S. Navy SEAL 14 ¶ 3, ECF No. 17-7; Decl. of U.S. Navy SEAL 15 ¶ 3, ECF No. 17-7; Decl. of U.S. Navy SEAL 16 ¶ 7, ECF No. 17-7; Decl. of U.S. Navy SEAL 17 ¶¶ 3, 5, ECF No. 17-7; Decl. of U.S. Navy SEAL 18 ¶ 8, ECF No. 17-7; Decl. of U.S. Navy SEAL 19 ¶¶ 6–7, ECF No. 17-7; Decl. of U.S. Navy SEAL 21 ¶ 4, ECF No. 17-7; Decl. of U.S. Navy SEAL 22 ¶ 6, ECF No. 17-7; Decl. of U.S. Navy SEAL 23 ¶ 5, ECF No. 17-7; Decl. of U.S. Navy SEAL 24 ¶ 3, ECF No. 17-7; Decl. of U.S. Navy SEAL 26 ¶ 4, ECF No. 17-7; Decl. of U.S. Navy Special Warfare Combatant Craft Crewman 1 ¶ 4, ECF No. 17-7; Decl. of U.S. Navy Special Warfare Combatant Craft Crewman 2 ¶¶ 4–7, ECF No. 17-7; Decl. of Special Warfare Combatant Craft Crewman 3 ¶ 7, ECF No. 17-8; Decl. of U.S. Navy Special Warfare Combatant Craft Crewman 4 ¶ 4, ECF No. 17-8; Decl. of U.S. Navy Diver 2 ¶ 6, ECF No. 17-8; Decl. of EOD Technician 1 ¶ 8, ECF No. 17-8.

[10] *See, e.g.*, Brett Salkeld, You Can Have Your Tylenol Too: A Note on the Objections of Some Catholics to Using COVID-19 Vaccines, *Church Life Journal,* Univ. of Notre Dame (Oct. 6, 2021), https://perma.cc/8REX-REQ8; Rev. Nicanor Pier Giorgio Austriaco, O.P., Moral Guidance on Using COVID-19 Vaccines Developed with Human Fetal Cell Lines, *Public Discourse* (May 26, 2020), https://perma.cc/DPT9-A3PX; Fr. Matthew P. Schneider. L.C., If Any Drug Tested on HEK-293 Is Immoral, Goodbye Modern Medicine, *Through Catholic Lenses* (Jan. 28, 2021), https://perma.cc/7VCY-UXLP.

a religious distinction, that fact could shed light on whether his or her stated convictions are religious in nature or whether those convictions have been sincerely invoked. It may also suggest that taking such products does not, in fact, impose a substantial burden on a Plaintiff's religious beliefs.[11]

*Second*, contrary to what the class-representative Plaintiffs suggest, the sincerity of their asserted religious beliefs has not yet been established. *See* DEX2 (App.218–221, DEX3 (App.229–232), DEX4 (App.240–243), DEX5 (App.251–254). Although they are correct that plaintiffs are typically able to "easily establish[]" the sincerity of their state beliefs in support of a RFRA claim, *Moussazadeh v. Tex. Dep't of Crim. Justice*, 703 F.3d 781, 791–92 (5th Cir. 2012), it is still an "essential part of" the Plaintiffs' "prima facie case," *Tagore v. United States*, 735 F.3d 324, 328 (5th Cir. 2013). And as such, this Court still must carefully assess the sincerity of each Plaintiff's religious beliefs in resolving the merits of their claims. *See Ramirez v. Collier*, 142 S. Ct. 1264, 1277–78 (2022); *cf. Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005) (in RLIUPA context). That a Navy chaplain may have opined on the sincerity of a Plaintiff's religious convictions during the RAR process, *see* DEX2 (App.218–221, DEX3 (App.229–232), DEX4 (App.240–243), DEX5 (App.251–254), does not obviate Plaintiffs' burden to demonstrate his or her sincerity on summary judgment or at trial.[12] And while Defendants may or may not challenge the sincerity of Plaintiffs' stated beliefs at summary judgment or trial, at a minimum, Defendants need to be able to determine through discovery whether Plaintiffs can meet the standards

---

[11] Contrary to what Plaintiffs have suggested, Defendants are in no way asking Plaintiffs to "pro[ve] . . . religious doctrines" or asking the Court to "dissect" a Plaintiff's "religious tenets," *see* ECF No. 198 at 10–11 (citations omitted), by simply inquiring in discovery about matters that bear on the sincerity of a stated religious belief and whether that belief, as articulated by the Plaintiff, is substantially burdened by all available COVID-19 vaccines.

[12] By the same token, a plaintiff would not be precluded from establishing a prima facie case under RFRA simply because a chaplain previously determined that he or she *lacked* a sincerely held religious belief. Indeed, a chaplain's assessment of the sincerity of a stated religious belief is not binding on the final approval authority, much less on this Court. *See* Katson Decl. ¶¶ 7-8, ECF No. 121, at App. 22-23; BUPERSINST 1730.11A, ¶ 4b(2) (purpose of chaplain interview is to "advis[e] the command"); *id.,* ¶ 4c(2) (similar); *id.*, Table 1 (reflecting that CNO N1 is approval authority for immunization waivers, based on recommendations of subordinates); *id.,* ¶ 5e(2) ("The chaplain will assess whether the requestor's religious beliefs appear sincerely-held, and will forward an evaluation to the commander . . . .").

applicable to their RFRA claims. That courts use a light hand in evaluating a plaintiff's sincerity does not mean Defendants cannot seek *any* discovery pertaining to this aspect of their claims.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion, find Plaintiffs' objections to Defendants' RFAs 1 and 2 and 4 through 9 to be insufficient, and, pursuant to Rule 36(a)(6), order all Plaintiffs to answer those RFAs within 2 weeks.

Dated: October 14, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director

*/s/ Jody D. Lowenstein*
ANDREW E. CARMICHAEL
AMY E. POWELL
Senior Trial Counsel
STUART J. ROBINSON
Senior Counsel
CODY T. KNAPP (NY #5715438)
JODY D. LOWENSTEIN (MT #55816869)
ZACHARY A. AVALLONE
LIAM C. HOLLAND
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 598-9280
Email: jody.d.lowenstein@usdoj.gov

*Counsel for Defendants*