# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

**U.S. NAVY SEALs 1-3;** on behalf of
themselves and all others similarly situated;
**U.S. NAVY EXPLOSIVE ORDNANCE
DISPOSAL TECHNICIAN 1**, on behalf of
himself and all others similarly situated; **U.S.
NAVY SEALS 4-26; U.S. NAVY SPECIAL
WARFARE COMBATANT CRAFT
CREWMEN 1-5**; and **U.S. NAVY DIVERS
1-3**,

                        Plaintiffs,

        v.

**LLOYD J. AUSTIN, III**, in his official
capacity as United States Secretary of
Defense; **UNITED STATES
DEPARTMENT OF DEFENSE**; **CARLOS
DEL TORO**, in his official capacity as
United States Secretary of the Navy,

                        Defendants.

Case No. 4:21-cv-01236-O

## APPENDIX IN SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO COMPEL PLAINTIFFS TO ANSWER REQUESTS FOR ADMISSIONS

| Tab | Description | Bates Number(s) |
|-----|-------------|-----------------|
| 1 | Defendants' Updated Objections and Responses to Plaintiffs' First Set of Interrogatories to Defendant Carlos Del Toro | 0001-0072 |

Respectfully submitted this 4 day of November 2022.

/s/ Danielle A. Runyan
KELLY J. SHACKELFORD
   Texas Bar No. 18070950
JEFFREY C. MATEER
   Texas Bar No. 13185320
HIRAM S. SASSER, III
   Texas Bar No. 24039157
DAVID J. HACKER
   Texas Bar No. 24103323
MICHAEL D. BERRY
   Texas Bar No. 24085835
JUSTIN BUTTERFIELD
   Texas Bar No. 24062642
Danielle A. Runyan *
   New Jersey Bar No. 027232004
Holly M. Randall
   Texas Bar No. 24128002
FIRST LIBERTY INSTITUTE
2001 W. Plano Pkwy., Ste. 1600
Plano, Texas 75075
Tel: (972) 941-4444
jmateer@firstliberty.org
hsasser@firstliberty.org
dhacker@firstliberty.org
mberry@firstliberty.org
jbutterfield@firstliberty.org
drunyan@firstliberty.org
hrandall@firstliberty.org


JORDAN E. PRATT
   Florida Bar No. 100958*  **
FIRST LIBERTY INSTITUTE
227 Pennsylvania Ave., SE
Washington, DC 20003
Tel: (972) 941-4444
jpratt@firstliberty.org


*Admitted pro hac vice.
** Not yet admitted to the D.C. Bar, but
admitted to practice law in Florida. Practicing
law in D.C. pursuant to D.C. Court of
Appeals Rule 49(c)(8) under the supervision
of an attorney admitted to the D.C. Bar.

HEATHER GEBELIN HACKER
   Texas Bar No. 24103325
ANDREW B. STEPHENS
   Texas Bar No. 24079396
HACKER STEPHENS LLP
108 Wild Basin Road South, Suite 250
Austin, Texas 78746
Tel.: (512) 399-3022
heather@hackerstephens.com
andrew@hackerstephens.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 4, 2022, I electronically filed the foregoing document through the Court's ECF system and will serve a copy on each of the Defendants according to the Federal Rules of Civil Procedure.

/s/ Danielle A. Runyan
DANIELLE A. RUNYAN

# Tab 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| **U.S. NAVY SEALs 1–3**, on behalf of themselves and all others similarly situated; **U.S. NAVY EXPLOSIVE ORDNANCE DISPOSAL TECHNICIAN 1**, on behalf of himself and all others similarly situated; **U.S. NAVY SEALS 4–26**; **U.S. NAVY SPECIAL WARFARE COMBATANT CRAFT CREWMEN 1–5**; and **U.S. NAVY DIVERS 1–3**, <br><br> Plaintiffs, <br><br> v. <br><br> **LLOYD J. AUSTIN, III**, in his official capacity as United States Secretary of Defense; **UNITED STATES DEPARTMENT OF DEFENSE; CARLOS DEL TORO**, in his official capacity as United States Secretary of the Navy, <br><br> Defendants. | Case No. 4:21-cv-01236-O |

### DEFENDANTS' UPDATED OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANT CARLOS DEL TORO

Pursuant to Rules 26 and 33 of the Federal Rule of Civil Procedure, Defendant

Carlos Del Toro, by and through undersigned counsel, submits this updated response

to Plaintiffs' first set of interrogatories, served June 2, 2022.

**Pls.' Resp. to Defs. Mot to Compel App. 0002**

**Del Toro Interrogatory No. 1:**

Identify each Navy servicemember (by unique ID or pseudonym) who has tested positive for COVID-19. Provide your answer in column A of the spreadsheet attached hereto as Exhibit B.

**Response to Del Toro Interrogatory No. 1:**

**Response:** Defendant will provide a spreadsheet that identifies by pseudonym Navy servicemembers who have tested positive for COVID-19, to the extent permissible under the Privacy Act and the Health Insurance Portability and Accountability Act (HIPAA), 42 U.S.C. § 1320d-6, and subject to the de-identification requirements for Protected Health Information (PHI) under 45 C.F.R. § 164.514. The file also identifies when each individual was identified as being infected with COVID-19, whether that individual recovered from COVID-19, whether that individual ever required hospitalization due to COVID-19, and if so, the dates admitted and discharged from the hospital, and if applicable, the dates of COVID-19 vaccination and manufacturer. Defendant produced this list on July 8, 2022.

The information provided in response to this Interrogatory reflects information in Defendants' control, including reported information about hospitalizations at military treatment facilities and reported hospitalizations at civilian hospitals, but it may not include information regarding testing or hospitalization that occurred outside

2

the military's medical system or not reported to an individual's chain of command. The information will also not include information about those individuals who experienced severe symptoms that did require hospitalization, like long COVID.

**Specific Objections:**  Defendant objects to Interrogatory Number 1 insofar as it purports to require providing the requested information in a particular format in conjunction with Interrogatory Numbers 1–14.  As detailed in the General Objections below, to provide the information as requested by Interrogatory Numbers 1–14 would conservatively take at least 201,714 man-hours to compile at a cost of at least $8,270,147.50 in wages alone.  Defendant thus objects to the interrelated Interrogatory Numbers 1–14 as unduly burdensome and disproportionate to the needs of this case because the "burden" and "expense of the proposed discovery outweighs its likely benefit" considering the "needs of the case," the "amount in controversy," and "the importance of the discovery in resolving the issues."  Fed. R. Civ. P. 26(b).

Defendant also objects to this Interrogatory as having multiple sub-parts, as it seeks separate information for each of the more than 97,000 individual servicemembers who have tested positive for COVID-19.

Defendant also objects because Plaintiffs are requesting information protected under the Privacy Act, 5 U.S.C. § 552a, and Protected Health Information (PHI) under the Health Insurance Portability and Accountability Act (HIPAA), 42 U.S.C. § 1320d-6. Absent express written permission of the patient or a written court order from a court of

<div align="center">3</div>

competent jurisdiction, Defendant cannot disclose information protected under the Privacy Act and HIPAA.  32 C.F.R. § 516.41(a); 32 C.F.R. § 516.46; 45 C.F.R. § 164.512(e). Furthermore, a protective order is required before Defendant will disclose this information to protect its obligations under the Privacy Act and HIPAA.

**Del Toro Interrogatory No. 2:**

For each Navy servicemember listed in your response to Interrogatory No. 1, identify whether such servicemember is a Navy SEAL, SWCC, DIVER, or EOD. Provide your answer in column B of the spreadsheet attached hereto as Exhibit B.

**Response to Del Toro Interrogatory No. 2:**

**Response:**  Within forces assigned to Naval Special Warfare Command (NSWC), the following table represents the number of individuals classified as Navy SEAL, SWCC, DIVER or EOD who have tested positive for COVID-19.

**Pls.' Resp. to Defs. Mot to Compel App. 0005**

| Category | Total |
|---|---|
| SEAL Officer | 195 |
| SEAL Enlisted | 595 |
| **SEAL Total** | **790** |
| SWCC Officer | 13 |
| SWCC Enlisted | 239 |
| **SWCC Total** | **252** |
| EOD Officer | 5 |
| EOD Enlisted | 21 |
| **EOD Total** | **26** |
| Dive Officer | 0 |
| Dive Enlisted (ND) | 58 |
| **Dive Total** | **58** |

**Specific Objections**:  Defendant objects to Interrogatory Number 2 insofar as it purports to require providing the requested information in a particular format in conjunction with Interrogatory Numbers 1–14.  As detailed in the General Objections below, to provide the information as requested by Interrogatory Numbers 1–14 would conservatively take at least 201,714 man-hours to compile at a cost of at least $8,270,147.50 in wages alone.  Defendant thus objects to the interrelated Interrogatory Numbers 1–14 as unduly burdensome and disproportionate to the needs of this case because the "burden" and "expense of the proposed discovery outweighs its likely benefit" considering the "needs of the case," the "amount in controversy," and "the importance of the discovery in resolving the issues."  Fed. R. Civ. P. 26(b).

The information requested by this Interrogatory does not exist in a central location.  The COVID-19 records do not include information about unit or rating.  Individual units may maintain responsive records, although they are not required to,

<div align="center">5</div>

and it would be overly burdensome to search through individual records for information responsive to this Interrogatory since is there is no standardized format or records requirement.  Further, many records reflecting the operational readiness of Naval Special Warfare units are classified.  The burden of searching through the individual and unit records for responsive information (even to see if such information exists at all) outweighs any probative value to the claims in this case.  Defendant estimates that it would take approximately five days for an O-4 action officer at Chief of Naval Operations, Plans and Strategy (OPNAV N3N5) to contact each Naval Special Warfare unit, 2 days for each of an estimated 24 units for O-4 administrative officer to search unit records, screen records for release, and transmit to OPNAV in a standard format.  And even after expending nearly 400 man-hours, the collected information may still not be complete or accurate since this information is not required to be maintained, and in any event would not include SEALs, SWCCs, EODs, and Divers not assigned with NSWC.  The cost of conducting the search and the production of the individualized information in the format requested in Interrogatory Number 2 would cost approximately $21,173.50.

Defendant also objects to this Interrogatory as having multiple sub-parts, as it seeks separate information for each of the more than 97,000 individual servicemembers who have tested positive for COVID-19, including whether they fall into any of the identified categories.

Defendant further objects because Plaintiffs are requesting information protected under the Privacy Act, 5 U.S.C. § 552a, and Protected Health Information (PHI) under the Health Insurance Portability and Accountability Act (HIPAA), 42 U.S.C. § 1320d-6. Absent express written permission of the patient or a written court order from a court of competent jurisdiction, Defendant cannot disclose information protected under the Privacy Act and HIPAA.  32 C.F.R. § 516.41(a); 32 C.F.R. § 516.46; 45 C.F.R. § 164.512(e).

**Del Toro Interrogatory No. 3:**

For each Navy servicemember listed in your response to Interrogatory No. 1, identify the date the servicemember tested positive for COVID-19. Provide your answer in column C of the spreadsheet attached hereto as Exhibit B.

**Response to Del Toro Interrogatory No. 3:**

**Response:**  Defendant will provide a spreadsheet that identifies by pseudonym Navy servicemembers who have tested positive for COVID-19, to the extent permissible under the Privacy Act and the Health Insurance Portability and Accountability Act (HIPAA), 42 U.S.C. § 1320d-6, and subject to the de-identification requirements for Protected Health Information (PHI) under 45 C.F.R. § 164.514.  The file also identifies when each individual was identified as being infected with COVID-19, whether that individual recovered from COVID-19, whether that individual ever required

7

hospitalization due to COVID-19, and if so, the dates admitted and discharged from the hospital, and if applicable, the dates of COVID-19 vaccination and manufacturer. Defendant produced this list on July 8, 2022.

The information provided in response to this Interrogatory reflects information in Defendants' control, including reported information about hospitalizations at military treatment facilities and reported hospitalizations at civilian hospitals, but it may not include information regarding testing or hospitalization that occurred outside the military's medical system or not reported to an individual's chain of command. The information will also not include information about those individuals who experienced severe symptoms that did require hospitalization, like long COVID.

**Specific Objections:**  Defendant objects to Interrogatory Number 3 insofar as it purports to require providing the requested information in a particular format in conjunction with Interrogatory Numbers 1–14.  As detailed in the General Objections below, to provide the information as requested by Interrogatory Numbers 1–14 would conservatively take at least 201,714 man-hours to compile at a cost of at least $8,270,147.50 in wages alone.  Defendant thus objects to the interrelated Interrogatory Numbers 1–14 as unduly burdensome and disproportionate to the needs of this case because the "burden" and "expense of the proposed discovery outweighs its likely benefit" considering the "needs of the case," the "amount in controversy," and "the importance of the discovery in resolving the issues."  Fed. R. Civ. P. 26(b).

Defendant also objects to this Interrogatory as having multiple sub-parts, as it seeks separate information for each of the more than 97,000 individual servicemembers who have tested positive for COVID-19.

Defendant also objects because Plaintiffs are requesting information protected under the Privacy Act, 5 U.S.C. § 552a, and Protected Health Information (PHI) under the Health Insurance Portability and Accountability Act (HIPAA), 42 U.S.C. § 1320d-6. Absent express written permission of the patient or a written court order from a court of competent jurisdiction, Defendant cannot disclose information protected under the Privacy Act and HIPAA.  32 C.F.R. § 516.41(a); 32 C.F.R. § 516.46; 45 C.F.R. § 164.512(e). Furthermore, a protective order is required before Defendant will disclose this information to protect its obligations under the Privacy Act and HIPAA.

**Del Toro Interrogatory No. 4:**

For each Navy servicemember listed in your response to Interrogatory No. 1, identify the dates the servicemember received doses of a COVID-19 vaccination, including any booster doses, and including the manufacturer of each dose. Provide your answer in columns D, E, F, G, H, and I of the spreadsheet attached hereto as Exhibit B.

9

**Response to Del Toro Interrogatory No. 4:**

 **Response:**  Defendant will provide a spreadsheet that identifies by pseudonym

Navy servicemembers who have tested positive for COVID-19, to the extent permissible

under the Privacy Act and the Health Insurance Portability and Accountability Act

(HIPAA), 42 U.S.C. § 1320d-6, and subject to the de-identification requirements for

Protected Health Information (PHI) under 45 C.F.R. § 164.514.  The file also identifies

when each individual was identified as being infected with COVID-19, whether that

individual recovered from COVID-19, whether that individual ever required

hospitalization due to COVID-19, and if so, the dates admitted and discharged from the

hospital, and if applicable, the dates of COVID-19 vaccination and manufacturer.

Defendant produced this list on July 8, 2022.

 The information provided in response to this Interrogatory reflects information

in Defendants' control, including reported information about hospitalizations at

military treatment facilities and reported hospitalizations at civilian hospitals, but it

may not include information regarding testing or hospitalization that occurred outside

the military's medical system or not reported to an individual's chain of command.  The

information will also not include information about those individuals who experienced

severe symptoms that did require hospitalization, like long COVID.

 **Specific Objections:**  Defendant objects to Interrogatory Number 4 insofar as it

purports to require providing the requested information in a particular format in

**Pls.' Resp. to Defs. Mot to Compel App. 0011**

conjunction with Interrogatory Numbers 1–14.  As detailed in the General Objections below, to provide the information as requested by Interrogatory Numbers 1–14 would conservatively take at least 201,714 man-hours to compile at a cost of at least $8,270,147.50 in wages alone.  Defendant thus objects to the interrelated Interrogatory Numbers 1–14 as unduly burdensome and disproportionate to the needs of this case because the "burden" and "expense of the proposed discovery outweighs its likely benefit" considering the "needs of the case," the "amount in controversy," and "the importance of the discovery in resolving the issues."  Fed. R. Civ. P. 26(b).

Defendant also objects to this Interrogatory as having multiple sub-parts, as it seeks separate information for each of the more than 97,000 individual servicemembers who have tested positive for COVID-19.

Defendant also objects because Plaintiffs are requesting information protected under the Privacy Act, 5 U.S.C. § 552a, and Protected Health Information (PHI) under the Health Insurance Portability and Accountability Act (HIPAA), 42 U.S.C. § 1320d-6. Absent express written permission of the patient or a written court order from a court of competent jurisdiction, Defendant cannot disclose information protected under the Privacy Act and HIPAA.  32 C.F.R. § 516.41(a); 32 C.F.R. § 516.46; 45 C.F.R. § 164.512(e). Furthermore, a protective order is required before Defendant will disclose this information to protect its obligations under the Privacy Act and HIPAA.

11

**Pls.' Resp. to Defs. Mot to Compel App. 0012**

**Del Toro Interrogatory No. 5:**

On page 24 of your Application, you state that "unvaccinated or partially vaccinated service members are at higher risk to contract COVID-19, and to develop severe symptoms requiring hospitalizations that remove them from their units and impact mission execution."

For each Navy servicemember listed in your response to Interrogatory No. 1, identify whether the servicemember developed severe symptoms from COVID-19 that required hospitalization, including the date of the hospitalization. Provide your answer in columns J and K of the spreadsheet attached hereto as Exhibit B

**Response to Del Toro Interrogatory No. 5:**

**Response:** Defendant will provide a spreadsheet that identifies by pseudonym Navy servicemembers who have tested positive for COVID-19, to the extent permissible under the Privacy Act and the Health Insurance Portability and Accountability Act (HIPAA), 42 U.S.C. § 1320d-6, and subject to the de-identification requirements for Protected Health Information (PHI) under 45 C.F.R. § 164.514.  The file also identifies when each individual was identified as being infected with COVID-19, whether that individual recovered from COVID-19, whether that individual ever required hospitalization due to COVID-19, and if so, the dates admitted and discharged from the

12

hospital, and dates of COVID-19 vaccination (if applicable).  Defendant produced this list on July 8, 2022.

For purposes of responding to Interrogatory Number 5, Defendant defines "hospitalization" as in-patient care where admittance to a hospital was required for treatment.

The information provided in response to this Interrogatory reflects information in Defendants' control, including reported information about hospitalizations at military treatment facilities and reported hospitalizations at civilian hospitals, but it may not include information regarding testing or hospitalization that occurred outside the military's medical system or not reported to an individual's chain of command.  The information will also not include information about those individuals who experienced severe symptoms that did require hospitalization, like long COVID.

**Specific Objections:**  Defendant objects to Interrogatory Number 5 insofar as it purports to require providing the requested information in a particular format in conjunction with Interrogatory Numbers 1–14.  As detailed in the General Objections below, to provide the information as requested by Interrogatory Numbers 1–14 would conservatively take at least 201,714 man-hours to compile at a cost of at least $8,270,147.50 in wages alone.  Defendant thus objects to the interrelated Interrogatory Numbers 1–14 as unduly burdensome and disproportionate to the needs of this case because the "burden" and "expense of the proposed discovery outweighs its likely

13

benefit" considering the "needs of the case," the "amount in controversy," and "the importance of the discovery in resolving the issues."  Fed. R. Civ. P. 26(b).

Defendant also objects to this Interrogatory as having multiple sub-parts, as it seeks separate information for each of the more than 97,000 individual servicemembers who have tested positive for COVID-19.

Defendant also objects because Plaintiffs are requesting information protected under the Privacy Act, 5 U.S.C. § 552a, and Protected Health Information (PHI) under the Health Insurance Portability and Accountability Act (HIPAA), 42 U.S.C. § 1320d-6. Absent express written permission of the patient or a written court order from a court of competent jurisdiction, Defendant cannot disclose information protected under the Privacy Act and HIPAA.  32 C.F.R. § 516.41(a); 32 C.F.R. § 516.46; 45 C.F.R. § 164.512(e). Furthermore, a protective order is required before Defendant will disclose this information to protect its obligations under the Privacy Act and HIPAA.

**Del Toro Interrogatory No. 6:**

On page 24 of your Application, you state that "unvaccinated or partially vaccinated service members are at higher risk to contract COVID-19, and to develop severe symptoms requiring hospitalizations that remove them from their units and impact mission execution."

For each Navy servicemember listed in your response to Interrogatory No. 1,

14

identify whether the servicemember developed severe symptoms from COVID-19 that required removing the servicemember from his/her unit and impacted mission execution, including the dates the servicemember was removed from his/her unit, the dates of the impacted mission, and the geographic location of the impacted mission. Provide your answer in columns L, M, and N of the spreadsheet attached hereto as Exhibit B.

**Response to Del Toro Interrogatory No. 6:**

  **Response:** Defendant notes that Interrogatory Number 6 appears to suggest that only servicemembers who develop severe symptoms from COVID-19 are removed from his/her unit.  That is not an accurate description of COVID-19 impacts.  For example, all NSW members diagnosed with COVID-19 are immediately placed into a restriction-of-movement (ROM) status, which requires that the member be isolated or quarantined under applicable procedures established by the Center for Disease Control (CDC), Department of Defense (DoD), U.S. Special Operations Command (USSOCOM), U.S. Navy, and Naval Special Warfare Command (NSWC).  Similar policies apply to all servicemembers in the Navy.  While in ROM status, servicemembers cannot participate in in-person activities, including training and mission planning sessions.  Although some activities can be accomplished remotely, the vast majority require that the member attend in-person.  Duties that involve accessing classified systems or materials also require in-person access.  Defendant refers Plaintiffs to the responses to

Interrogatories 1 and 2 for specific information about how many individuals have tested positive for COVID-19 across the Navy and in specific categories that Plaintiffs requested.

Defendant also refers Plaintiffs to the list to be provided in response to Interrogatory Number 5, which identifies by pseudonym the 598 servicemembers whose symptoms were so severe as to require hospitalization.

Defendant also refers Plaintiffs to the list to be provided in response to Interrogatory Number 5, which identifies by pseudonym the 17 servicemembers who did not recover from a COVID-19 infection, and, since they are deceased, are no longer a part of their unit.

For examples of missions that were impacted by COVID-19, Defendant refers to and incorporates the response to Interrogatory Number 8, which describes just some of the NSW missions that were impacted by COVID-19.

**Specific Objections:**  Defendant objects to the request to identify, for each of the more than 97,000 individual servicemembers who were diagnosed with COVID-19, the specific mission that was impacted by their quarantine, hospitalization, or death.  Such information is not centrally tracked and, as explained in Defendant's general objections, would require significant effort to compile at the local level, and thus is not proportionate to the needs of this case.  Searching for such records would also be difficult because of the vagueness of the phrase "impact to mission execution" and any

16

search may not capture the full impact of COVID-19.  Because of the extended nature of COVID-19 quarantine, some missions were never planned or scheduled based on unavailability of personnel, which would not be reflected in local records.

Defendant objects to the request for geographic location of impacted missions because that information does not appear to be relevant to any claim in this case. Information about the location of missions may be difficult to describe since many take place over large and many geographic areas.  Furthermore, Defendants object to providing geographic locations of classified missions (particularly NSW missions).

Defendant objects to Interrogatory Number 6 insofar as it purports to require providing the requested information in a particular format in conjunction with Interrogatory Numbers 1–14.  As detailed in the General Objections below, to provide the information as requested by Interrogatory Numbers 1–14 would conservatively take at least 201,714 man-hours to compile at a cost of at least $8,270,147.50 in wages alone. Defendant thus objects to the interrelated Interrogatory Numbers 1–14 as unduly burdensome and disproportionate to the needs of this case because the "burden" and "expense of the proposed discovery outweighs its likely benefit" considering the "needs of the case," the "amount in controversy," and "the importance of the discovery in resolving the issues."  Fed. R. Civ. P. 26(b).

17

Defendant also objects to this Interrogatory as having multiple sub-parts, as it seeks separate information for each of the more than 97,000 individual servicemembers who have tested positive for COVID-19.

**Del Toro Interrogatory No. 7:**

On page 24 of your Application, you state that "[a] SEAL who falls ill not only cannot complete his or her own mission, but risks infecting others as well, particularly in close quarters, including on submarines. A severe illness could require impractical or impossible evacuation and could jeopardize mission success. The Navy has a compelling interest in avoiding those foreseeable risks, especially given the transmissibility and virulence of COVID-19."

For each Navy servicemember listed in your response to Interrogatory No. 1, identify whether the servicemember could not complete his or her mission because he or she was ill from COVID-19, including the date and geographic location of the mission the servicemember could not complete. Provide your answer in columns O, P, and Q of the spreadsheet attached hereto as Exhibit B.

**Response to Del Toro Interrogatory No. 7:**

Defendant incorporates the response and objections from Interrogatory Number 6 into this response.

18

**Del Toro Interrogatory No. 8:**

On page 24 of your Application, you state that "[a] SEAL who falls ill not only cannot complete his or her own mission, but risks infecting others as well, particularly in close quarters, including on submarines. A severe illness could require impractical or impossible evacuation and could jeopardize mission success. The Navy has a compelling interest in avoiding those foreseeable risks, especially given the transmissibility and virulence of COVID-19." On page 29 of your Application, you state that "if any [member of a Naval Special Warfare team] were to contract COVID-19, it would necessarily have an adverse impact to the mission and to his fellow team members." On page 31 of your Application, you state that "[e]ven one SEAL who falls ill – as an unvaccinated individual is far more likely to do – can jeopardize an entire mission."

For each Navy servicemember listed in your response to Interrogatory No. 1, identify whether the servicemember could not complete his/her Naval Special Warfare mission because he/she was ill from COVID-19, including the date and geographic location of the Naval Special Warfare mission that could not be completed. Provide your answer in columns R, S, and T of the spreadsheet attached hereto as Exhibit B.

19

**Response to Del Toro Interrogatory No. 8:**

    **Response:** *Definition of Mission.* Naval Special Warfare (NSW) forces are multi-purpose combat forces, organized and trained to conduct a variety of special operations missions in all environments.  For purposes of responding to interrogatory number eight, Defendant defines an "NSW mission" as follows.  NWS missions may be either "operational" or "non-operational."  Operational NSW missions consist of assignments, other than those to man, train and equip members, executed pursuant to specific orders to achieve a discrete NSW function.  NSW functions include activities designed to secure the United States from attack; access and retain global freedom of action; strengthen existing and emerging alliances and partnerships; establish favorable security conditions; deter aggression and violence by state, non-state, and individual actors; and prosecute the full range of military operations in support of U.S. interests. Non-operational missions consist of the daily activities associated with manning, training, equipping, and sustaining NSW personnel to ensure health, readiness, and the successful execution of operational missions as defined in the preceding sentence.

    *Removal from Unit.*  All NSW members diagnosed with COVID-19 are immediately placed into a restriction-of-movement (ROM) status, which requires that the member be isolated or quarantined under applicable procedures established by the Center for Disease Control (CDC), Department of Defense (DoD), U.S. Special Operations Command (USSOCOM), U.S. Navy, and Naval Special Warfare Command

20

**Pls.' Resp. to Defs. Mot to Compel App. 0021**

(NSWC).  While in ROM status, NSW members cannot participate in in-person

activities, including training and mission planning sessions.  Although some activities

can be accomplished remotely, the vast majority require that the member attend in-

person.  Duties that involve accessing classified systems or materials also require in-

person access.

*Mission Impacts.* Defendant is aware of the following COVID-related impacts on

individual NSW members' mission accomplishment:

In March 2020, SEAL Team ONE (ST-1) was deploying out of Naval Air Station

North Island to relieve SEAL Team Three (ST-3) and after the transportation plane had

taken off, the command learned that a team member was COVID-19 positive and had

been in close contact with numerous members on the flight.  As a result of the close

contact, the entire flight was turned around.  Afterwards, multiple close contacts tested

positive and larger contract tracing pools of close contacts were identified, creating

required isolation and quarantine periods for numerous ST-1 personnel.  This caused

the entire relief of SEAL Team THREE (ST-3) (in multiple locations across the U.S.

Central Command and U.S. Indo-Pacific Command areas of responsibility) to be

delayed.  This delay prevented relief of ST-3 for weeks and in some cases up to three

months (due to other circumstances affecting the ability of ST-1 personnel to relieve ST-

3 personnel once target rotation dates were missed).

21

From January to March 2021, NSW members at Task Force THREE, deployed to Naval Support Activity Bahrain, contracted COVID-19, which adversely impacted individual members' abilities to participate in mission preparedness and execution. Specifically, certain NSW members of Task Force THREE, Special Boat Team (SBT)-20, SEAL Team (ST)-5, and the USS Philippine Sea (CG 58) and USS San Diego (LPD 22), assigned to a U.S. Special Operations Command Central (SOCCENT) – U.S. Naval Forces Central Command (NAVCENT) mission had contracted COVID-19 and were required to isolate.  As a result, those NSW members in isolation were unable to timely prepare for or execute their assigned SOCCENT – NAVCENT missions.

Training events (called training "evolutions") within Naval Special Warfare Group FOUR (NSWG-4) needed to be rescheduled due to members having close contact with other members who had been diagnosed with COVID-19.  NSWC does not have data establishing the number of members within the affected groups that had tested positive for COVID-19 versus those who had only been in close contact with infected members.  The rescheduled training evolutions include:

- Special Boat Team (SBT)-20
  Time Frame: May 2020
  Number of Members Affected: 13
  Geographic Location: In and around JEB Little Creek, Virginia Beach, VA

- Special Boat Team (SBT)-20
  Time Frame: April 2021
  Number of Members Affected: 11
  Geographic Location: In and around JEB Little Creek, Virginia Beach, VA

22

- Special Boat Team (SBT)-20
  Time Frame: July 2021
  Number of Members Affected: 12
  Geographic Location: In and around JEB Little Creek, Virginia Beach, VA

- Special Boat Team (SBT)-22
  Time Frame: 1-11 Aug 2021
  Number of Members Affected: 32
  Geographic Location:  In or around John C. Stennis Space Center, Stennis, MS.

Rescheduling training for SBT-22 due to COVID 19 was compounded by Hurricane IDA hitting during heavy weapons training at Fort Knox. These two situations resulted in a combined 28-day delay in mission execution.

NSW members assigned to Naval Special Warfare Group EIGHT (NSWG-8), who were scheduled to participate in a special operations exercise aboard a U.S. Navy combatant ship in the Pacific area of responsibility in early 2021, were unable to conduct that exercise due to an outbreak of COVID-19 aboard the ship.

On at least one occasion a member of Naval Special Warfare Development Group (NSWDG) was unable to deploy on-time for an assignment outside the United States due to being placed into ROM status following a positive COVID-19 test.

On several occasions SEAL, SWCC, and EOD personnel belong to NSWDG were unable to participate in training and planning session due to testing positive for COVID-19.

**Specific Objections:**  Defendant objects to the request for geographic location of impacted missions because that information does not appear to be relevant to any claim

23

in this case.  Information about the location of missions may be difficult to describe since many take place over large and many geographic areas.  Furthermore, Defendants object to providing geographic locations of classified missions (particularly NSW missions).

Defendants object to Interrogatory Number 8 as unduly burdensome and not proportionate to the needs of the case.  NSWC does not centrally track which specific NSW members have been unable to complete operational missions due to being ill from COVID-19 or as the result of the restrictions associated with placement into a ROM status.  NSWC also does not centrally track which specific NSW members who have been diagnosed with COVID-19 have been unable to fully participate in non-operational NSW activities due to being ill with COVID-19, or as the result of the restrictions associated with placement into a ROM status.  Asking NSW units to retroactively create records for each individual would be unduly burdensome and likely ineffective.  The total cost and time required to do so because the total number of cases in units supporting NSW missions has not been calculated and would not be limited to just NSWC units.  Further the assignment of personnel to support specific NSW missions is generally classified.

Defendant objects to Interrogatory Number 8 insofar as it purports to require providing the requested information in a particular format in conjunction with Interrogatory Numbers 1–14.  As detailed in the General Objections below, to provide

the information as requested by Interrogatory Numbers 1–14 would conservatively take at least 201,714 man-hours to compile at a cost of at least $8,270,147.50 in wages alone. Defendant thus objects to the interrelated Interrogatory Numbers 1–14 as unduly burdensome and disproportionate to the needs of this case because the "burden" and "expense of the proposed discovery outweighs its likely benefit" considering the "needs of the case," the "amount in controversy," and "the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b).

Defendant also objects to this Interrogatory as having multiple sub-parts, as it seeks separate information for each of the more than 97,000 individual servicemembers who have tested positive for COVID-19.

**Del Toro Interrogatory No. 9:**

On page 24 of your Application, you state that "[a] SEAL who falls ill not only cannot complete his or her own mission, but risks infecting others as well, particularly in close quarters, including on submarines. A severe illness could require impractical or impossible evacuation and could jeopardize mission success. The Navy has a compelling interest in avoiding those foreseeable risks, especially given the transmissibility and virulence of COVID-19." On page 29 of your Application, you state that "if any [member of a Naval Special Warfare team] were to contract COVID-19, it would necessarily have an adverse impact to the mission and to his

25

fellow team members." On page 31 of your Application, you state that "[e]ven one SEAL who falls ill – as an unvaccinated individual is far more likely to do – can jeopardize an entire mission."

For each Navy servicemember listed in your response to Interrogatory No. 1, identify whether an entire mission could not be completed and/or did not succeed because the Navy servicemember listed in your response to Interrogatory No. 1 was ill with COVID-19, including the dates and geographic location of the mission that could not be completed and/or did not succeed. Provide your answer in columns U, V, and W of the spreadsheet attached hereto as Exhibit B.

### Response to Del Toro Interrogatory No. 9:

Defendant incorporates the response and objections from Interrogatory Number 6 into this response.

### Del Toro Interrogatory No. 10:

On page 24 of your Application, you state that "many ships are staffed with limited medical personnel, meaning that crewmembers who develop severe symptoms would require a return to port or an emergency medical evacuation by helicopter, which is not always viable."

For each Navy Servicemember listed in your response to Interrogatory No. 1,

identify whether the servicemember was deployed on a ship and developed severe symptoms that required the ship to return to port, including the dates the servicemember was deployed on the ship and the date the ship was required to return to port. Provide your answer in columns X, Y, Z, and AA of the spreadsheet attached hereto as Exhibit B.

**Response to Del Toro Interrogatory No. 10:**

**Response:**  Defendant provides the following examples in response to this Interrogatory:

- In March 2020, the USS Theodore Roosevelt was delayed from ongoing operations in Commander of the 7th Fleet's Area of Responsibility ("C7F AOR").  The C7F AOR encompasses more than 48 million square miles (more than 124 million square kilometers) from the Kuril Islands in the north to the Antarctic in the south, and from the International Date Line to the 68th meridian east, which runs down from the India-Pakistan border.  The USS Theodore Roosevelt was on port call in Vietnam from March 5–9, 2020, and the first Sailor tested positive for COVID-19 on March 22, 2020.  By March 21, 2020, 100 Sailors had tested positive, and on April 1, 2020, the Navy ordered the ship to evacuate the crew and begin offshore quarantine in Guam.  By April 8, 2020, 416 Sailors had tested positive, and by April 16, 655 had tested positive.  In total, 1,271 Sailors

27

(27% of the crew) tested positive, which resulted in 26 hospitalizations,
and 1 death.  Further information is available in the subsequent Command
Investigation, which is available here: https://perma.cc/3423-JAGB.

- On April 24, 2020, 18 Sailors tested positive for COVID-19 aboard the USS
  Kidd, which required the ship to cease operations and to return to port.
  The ship was operating in the 4th Fleet AOR, which encompasses the
  waters of the Caribbean, Central America, and South America.  At least
  119 Sailors ultimately tested positive, which required 2 Sailors to be
  MEDEVAC'd to the United States and 15 Sailors to be transferred to USS
  Makin Island for monitoring.  USS Kidd resumed operations on June 10,
  2020.

- USS San Diego experienced a COVID-19 outbreak in late February 2021,
  and was quarantined for two weeks in port Manama.  The entire ship was
  tested, and positives and close contacts were quarantined.  The ship
  returned to sea on March 12 2021.

- USS Philippine Sea experienced a COVID-19 outbreak in late February
  2021, and was quarantined for four weeks in port Bahrain.  The entire ship
  was tested, and positives and close contacts were quarantined.

- USS Wyoming experienced a COVID-19 outbreak in August 2021; a total
  of 30 cases were debarked on 12 August. The cases were discovered in

28

three rounds of testing; 13 unvaccinated Sailors initially, 14 vaccinated

sailors tested positive when testing of vaccinated sailors were directed,

and 3 more unvaccinated Sailors who had initially tested negative were

positive in a retest three days after the first round of testing.

- On October 27, 2021, USS Columbia made a routine stop at port and

    disembarked a 25-year-old, vaccinated Sailor who had tested positive for

    COVID-19.  USS Columbia was able to continue mission.

- The USS Milwaukee experienced an outbreak of COVID-19 in January

    2022.  The crew was 100% vaccinated and all individuals who tested

    positive were either asymptomatic or experienced only minor symptoms.

    None were hospitalized.  The ship was quarantined for 15 days at Naval

    Station Guantanamo Bay, Cuba, which resulted in one cancelled training

    evolution.

**Specific Objections:**  Defendant objects that the burden of providing this

information for each of the 97,000 servicemembers who have tested positive for COVID-

19 outweighs its likely benefit.  Operational impacts, including underway locations and

dates of mission impact are reported via classified channels.  Units are not required to

report specifically which sailor or sailors impacted their operations.  To generate the

information requested by this Interrogatory would require reviewing all afloat units'

local records and then prepare those records for unclassified release. Further, since

these records are not required to be kept, the final data set may still be incomplete or otherwise inaccurate.

A local records search identifies 40 classified events of relevance to this Interrogatory, each of which has as at least two associated derivatively classified messages. To locate a record copy and declassify a single message from an afloat unit reporting underway COVID-19 cases by classified channels, the defendant estimates it would require at approximately 31.5 work-hours per message. A comprehensive redaction or declassification of all associated messages for these 40 events would take approximately 2500 work-hours or 315 work-days. Expanding the search to all 400+ sea-going units to identify additional mission critical impacts would add approximately 3 hours per unit search due to crew turnover through the COVID-19 pandemic, adding approximately 1200 work-hours in sea-going unit time, plus approximately 15 minutes per unit to process any non-zero answer, followed by an additional 31.5 hours for declassification as necessary. Therefore, a minimal comprehensive answer is expected to take at least 3,700 work-hours or 462.5 work-days. Further, this process would require personnel that fleet commands do not have available to dedicate to the task, and reviews are unlikely to result in the release of any information about the actual operational impact.

Defendant objects to Interrogatory Number 10 insofar as it purports to require providing the requested information in a particular format in conjunction with

Interrogatory Numbers 1–14.  Defendant thus objects to the interrelated Interrogatory Numbers 1–14 as unduly burdensome and disproportionate to the needs of this case because the "burden" and "expense of the proposed discovery outweighs its likely benefit" considering the "needs of the case," the "amount in controversy," and "the importance of the discovery in resolving the issues."  Fed. R. Civ. P. 26(b).

Defendant also objects to this Interrogatory as having multiple sub-parts, as it seeks separate information for each of the more than 97,000 individual servicemembers who have tested positive for COVID-19.

**Del Toro Interrogatory No. 11:**

On page 24 of your Application, you state that "many ships are staffed with limited medical personnel, meaning that crewmembers who develop severe symptoms would require a return to port or an emergency medical evacuation by helicopter, which is not always viable."

For each Navy Servicemember listed in your response to Interrogatory No. 1, identify whether the servicemember was deployed on a ship and developed severe symptoms that required emergency evacuation by helicopter, including in your answer the date of the evacuation by helicopter. Provide your answer in columns AB and AC of the spreadsheet attached hereto as Exhibit B.

**Response to Del Toro Interrogatory No. 11:**

 **Response:**  Defendant provides the following example in response to this

Interrogatory:

-  On April 24, 2020, 18 Sailors tested positive for COVID-19 aboard the USS
   Kidd, which required the ship to cease operations and to return to port.
   The ship was operating in the 4th Fleet AOR, which encompasses the
   waters of the Caribbean, Central America, and South America.  At least
   119 Sailors ultimately tested positive, which required 2 Sailors to be
   MEDEVAC'd to the United States and 15 Sailors to be transferred to USS
   Makin Island for monitoring.  USS Kidd resumed operations on June 10,
   2020.

 **Specific Objections:**  Defendant objects that the burden of providing this

information for each of the 97,000 servicemembers who have tested positive for COVID-

19 outweighs its likely benefit.  Operational impacts, including underway locations and

dates of mission impact are reported via classified channels.  Units are not required to

report specifically which sailor or sailors impacted their operations.  To generate the

information requested by this Interrogatory would require reviewing all afloat units'

local records and then prepare those records for unclassified release.  Further, since

these records are not required to be kept, the final data set may still be incomplete or

otherwise inaccurate.

32

To locate a record copy and declassify a single message from an afloat unit reporting underway COVID-19 cases by classified channels, the defendant estimates it would require at approximately 31.5 man-hours, and a cost of $1805.28. Further, this process would require personnel that fleet commands do not have available to dedicate to the task, and reviews are unlikely to result in the release of any information about the actual operational impact.

Defendant objects to Interrogatory Number 11 insofar as it purports to require providing the requested information in a particular format in conjunction with Interrogatory Numbers 1–14.  As detailed in the General Objections below, to provide the information as requested by Interrogatory Numbers 1–14 would conservatively take at least 201,714 man-hours to compile at a cost of at least $8,270,147.50 in wages alone. Defendant thus objects to the interrelated Interrogatory Numbers 1–14 as unduly burdensome and disproportionate to the needs of this case because the "burden" and "expense of the proposed discovery outweighs its likely benefit" considering the "needs of the case," the "amount in controversy," and "the importance of the discovery in resolving the issues."  Fed. R. Civ. P. 26(b).

Defendant also objects to this Interrogatory as having multiple sub-parts, as it seeks separate information for each of the more than 97,000 individual servicemembers who have tested positive for COVID-19.

33

**Del Toro Interrogatory No. 12:**

On page 24 of your Application, you state that "[a] SEAL who falls ill not only cannot complete his or her own mission, but risks infecting others as well, particularly in close quarters, including on submarines. A severe illness could require impractical or impossible evacuation and could jeopardize mission success. The Navy has a compelling interest in avoiding those foreseeable risks, especially given the transmissibility and virulence of COVID-19."

For each Navy Servicemember listed in your response to Interrogatory No. 1, identify whether the servicemember was deployed on a submarine on the date the servicemember tested positive for COVID-19, including in your answer the dates the servicemember was deployed on the submarine. Provide your answer in columns AD and AE of the spreadsheet attached hereto as Exhibit B.

**Response to Del Toro Interrogatory No. 12:**

**Response:** Defendant provides the following examples in response to this Interrogatory:

- USS Wyoming, an Ohio-class ballistic submarine, experienced a COVID-19 outbreak in August 2021; a total of 30 cases were debarked on 12 August. The cases were discovered in three rounds of testing; 13 unvaccinated Sailors initially, 14 vaccinated sailors tested positive when

34

testing of vaccinated sailors were directed, and 3 more unvaccinated

Sailors who had initially tested negative were positive in a retest three

days after the first round of testing.

- On October 27, 2021, USS Columbia, a Los-Angeles class attack

  submarine, made a routine stop at port and disembarked a 25-year-old,

  vaccinated Sailor who had tested positive for COVID-19.  USS Columbia

  was able to continue mission.

**Specific Objections:**  Defendant objects that the burden of providing this

information for each of the 97,000 servicemembers who have tested positive for COVID-

19 outweighs its likely benefit.  Operational impacts, including underway locations and

dates of mission impact are reported via classified channels.  Units are not required to

report specifically which sailor or sailors impacted their operations.  To generate the

information requested by this Interrogatory would require reviewing all afloat units'

local records and then prepare those records for unclassified release.  Further, since

these records are not required to be kept, the final data set may still be incomplete or

otherwise inaccurate.

To locate a record copy and declassify a single message from an afloat unit

reporting underway COVID-19 cases by classified channels, the defendant estimates it

would require at approximately 31.5 man-hours, and a cost of $1805.28. Further, this

35

process would require personnel that fleet commands do not have available to dedicate to the task, and reviews are unlikely to result in the release of any information about the actual operational impact.

Defendant objects to Interrogatory Number 12 insofar as it purports to require providing the requested information in a particular format in conjunction with Interrogatory Numbers 1–14.  As detailed in the General Objections below, to provide the information as requested by Interrogatory Numbers 1–14 would conservatively take at least 201,714 man-hours to compile at a cost of at least $8,270,147.50 in wages alone. Defendant thus objects to the interrelated Interrogatory Numbers 1–14 as unduly burdensome and disproportionate to the needs of this case because the "burden" and "expense of the proposed discovery outweighs its likely benefit" considering the "needs of the case," the "amount in controversy," and "the importance of the discovery in resolving the issues."  Fed. R. Civ. P. 26(b).

Defendant also objects to this Interrogatory as having multiple sub-parts, as it seeks separate information for each of the more than 97,000 individual servicemembers who have tested positive for COVID-19.

**Del Toro Interrogatory No. 13:**

On page 24 of your Application, you state that "[a] SEAL who falls ill not only cannot complete his or her own mission, but risks infecting others as well,

36

particularly in close quarters, including on submarines. A severe illness could require impractical or impossible evacuation and could jeopardize mission success. The Navy has a compelling interest in avoiding those foreseeable risks, especially given the transmissibility and virulence of COVID-19.".

For each Navy Servicemember listed in your response to Interrogatory No. 1, identify whether the servicemember developed a severe illness from COVID-19 that required evacuation and evacuation was impractical and/or impossible, including the date when the servicemember required evacuation and the date (if any) the servicemember was evacuated. Provide your answer in columns AF and AG of the spreadsheet attached hereto as Exhibit B.

**<u>Response to Del Toro Interrogatory No. 13:</u>**

**<u>Response:</u>** Defendant provides the following examples in response to this Interrogatory:

- On April 24, 2020, 18 Sailors tested positive for COVID-19 aboard the USS Kidd, which required the ship to cease operations and to return to port. The ship was operating in the 4th Fleet AOR, which encompasses the waters of the Caribbean, Central America, and South America. At least 119 Sailors ultimately tested positive, which required 2 Sailors to be MEDEVAC'd to the United States and 15 Sailors to be transferred to USS

37

Makin Island for monitoring.  USS Kidd resumed operations on June 10, 2020.

- USS Wyoming experienced a COVID-19 outbreak in August 2021; a total of 30 cases were debarked on 12 August. The cases were discovered in three rounds of testing; 13 unvaccinated Sailors initially, 14 vaccinated sailors tested positive when testing of vaccinated sailors were directed, and 3 more unvaccinated Sailors who had initially tested negative were positive in a retest three days after the first round of testing.

**Specific Objections:**  Defendant objects that the burden of providing this information for each of the 97,000 servicemembers who have tested positive for COVID-19 outweighs its likely benefit.  Operational impacts, including underway locations and dates of mission impact are reported via classified channels.  Units are not required to report specifically which sailor or sailors impacted their operations.  To generate the information requested by this Interrogatory would require reviewing all afloat units' local records and then prepare those records for unclassified release.  Further, since these records are not required to be kept, the final data set may still be incomplete or otherwise inaccurate.

To locate a record copy and declassify a single message from an afloat unit reporting underway COVID-19 cases by classified channels, the defendant estimates it

would require at approximately 31.5 man-hours, and a cost of $1805.28. Further, this process would require personnel that fleet commands do not have available to dedicate to the task, and reviews are unlikely to result in the release of any information about the actual operational impact.

Defendant objects to Interrogatory Number 13 insofar as it purports to require providing the requested information in a particular format in conjunction with Interrogatory Numbers 1–14.  As detailed in the General Objections below, to provide the information as requested by Interrogatory Numbers 1–14 would conservatively take at least 201,714 man-hours to compile at a cost of at least $8,270,147.50 in wages alone. Defendant thus objects to the interrelated Interrogatory Numbers 1–14 as unduly burdensome and disproportionate to the needs of this case because the "burden" and "expense of the proposed discovery outweighs its likely benefit" considering the "needs of the case," the "amount in controversy," and "the importance of the discovery in resolving the issues."  Fed. R. Civ. P. 26(b).

Defendant also objects to this Interrogatory as having multiple sub-parts, as it seeks separate information for each of the more than 97,000 individual servicemembers who have tested positive for COVID-19.


**Del Toro Interrogatory No. 14:**

On page 24 of your Application, you state that "[a] SEAL who falls ill not only

39

cannot complete his or her own mission, but risks infecting others as well, particularly in close quarters, including on submarines. A severe illness could require impractical or impossible evacuation and could jeopardize mission success. The Navy has a compelling interest in avoiding those foreseeable risks, especially given the transmissibility and virulence of COVID-19."

For each Navy servicemember listed in your response to Interrogatory No. 1, identify whether the servicemember infected other Navy servicemembers with COVID-19, identifying each other infected Navy servicemember (by unique ID or pseudonym), and whether they were infected while working in close quarters with each other. Provide your answer in columns AH, AI, and AJ of the spreadsheet attached hereto as Exhibit B.

**Response to Del Toro Interrogatory No. 14:**

**Response:**  Defendant provides the following examples in response to this Interrogatory:

- In March 2020, the USS Theodore Roosevelt was delayed from ongoing operations in Commander of the 7th Fleet's Area of Responsibility ("C7F AOR").  The C7F AOR encompasses more than 48 million square miles (more than 124 million square kilometers) from the Kuril Islands in the north to the Antarctic in the south, and from the International Date Line to the 68th meridian east, which runs down from the India-Pakistan

40

border.  The USS Theodore Roosevelt was on port call in Vietnam from March 5–9, 2020, and the first Sailor tested positive for COVID-19 on March 22, 2020.  By March 21, 2020, 100 Sailors had tested positive, and on April 1, 2020, the Navy ordered the ship to evacuate the crew and begin offshore quarantine in Guam.  By April 8, 2020, 416 Sailors had tested positive, and by April 16, 655 had tested positive.  In total, 1,271 Sailors (27% of the crew) tested positive, which resulted in 26 hospitalizations, and 1 death.  Further information is available in the subsequent Command Investigation, which is available here: https://perma.cc/3423-JAGB.

- On April 24, 2020, 18 Sailors tested positive for COVID-19 aboard the USS Kidd, which required the ship to cease operations and to return to port. The ship was operating in the 4th Fleet AOR, which encompasses the waters of the Caribbean, Central America, and South America.  At least 119 Sailors ultimately tested positive, which required 2 Sailors to be MEDEVAC'd to the United States and 15 Sailors to be transferred to USS Makin Island for monitoring.  USS Kidd resumed operations on June 10, 2020.

- USS Makin Island reported 23 unique cases between September 29, 2020, and October 16, 2020.  The entire ship was underway and Navy tested the

41

entire ship twice (including the US Marine Corps units on board). Positives and close contacts were quarantined on board.

- USS San Diego experienced a COVID-19 outbreak in late February 2021, and was quarantined for two weeks in port Manama.  The entire ship was tested, and positives and close contacts were quarantined.  The ship returned to sea on March 12 2021.

- USS Philippine Sea experienced a COVID-19 outbreak in late February 2021, and was quarantined for four weeks in port Bahrain.  The entire ship was tested, and positives and close contacts were quarantined.

- The USS Carl Vinson had 204 cases on board while underway from June 30 through September 20, 2021, which resulted in 0 hospitalizations, 0 deaths, and no impact to mission.  The crew was 97% vaccinated.  The USS Carl Vinson is a Nimitz-class aircraft carrier, just like the USS Theodore Roosevelt.  Navy leadership were able to compared the path of the mild outbreak on the USS Carl Vinson to the outbreak on USS Theodore Roosevelt, and conclude that COVID-19 vaccines create a COVID-19 resilient force.

- USS Wyoming experienced a COVID-19 outbreak in August 2021; a total of 30 cases were debarked on 12 August. The cases were discovered in three rounds of testing; 13 unvaccinated Sailors initially, 14 vaccinated

42

sailors tested positive when testing of vaccinated sailors were directed, and 3 more unvaccinated Sailors who had initially tested negative were positive in a retest three days after the first round of testing.

- In September 2021, USS Essex had 13 active cases while underway, and no hospitalizations. Including those 13 cases, the ship had experienced a total of 20 historic cases. By November 2, 2021, USS Essex had 6 active cases and 56 recovered cases for a total of 57 historical cases.

- While underway, the USS Charleston had 10 active cases, no hospitalizations, and the crew was fully immunized.

- On October 27, 2021, USS Columbia made a routine stop at port and disembarked a 25-year-old, vaccinated Sailor who had tested positive for COVID-19. USS Columbia was able to continue mission.

- The USS Pearl Harbor had three active cases while underway as of October 12, 2021. All were immunized, none were hospitalized, no deaths, and no mission impact.

- The USS Momsen reported three immunized Sailors tested positive while underway on November 10, 2021. Two days later that number increased to sevent. No mission impact and quarantine was conducted aboard the ship.

- On November 27, 2021 USS Sampson reported two servicemembers COVID-positive at sea in Southern California.  Both had tested positive on final day of close contact monitoring from a previous case aboard.  No mission impacts.

- In December 2021, USS Halsey after nearly a third of the crew tested positive for COVID-19.  The ship was 99% vaccinated and there were no hospitalizations.  The outbreak delayed a homeport shift from Hawaii to San Diego.

The USS Milwaukee experienced an outbreak of COVID-19 in January 2022.  The crew was 100% vaccinated and all individuals who tested positive were either asymptomatic or experienced only minor symptoms.  None were hospitalized.  The ship was quarantined for 15 days at Naval Station Guantanamo Bay, Cuba, which resulted in one cancelled training evolution.

**Specific Objections:**  Records of contract tracing are not reported to the Office of the Chief of Naval Operations (OPNAV) or the Navy Bureau of Medicine and Surgery (BUMED), so there is no central location for this information.  Contact tracing is not a centralized function, and in most cases, any contract tracing would be performed by an individual's command.  Further, not all commands conduct contract tracing.  It is not proportionate to the needs of this case for Defendant to coordinate with the commands

44

of each of the more than 97,000 service members and seek individualized contract

tracing information for every servicemembers who has tested positive for COVID-19.

Defendant objects to Interrogatory Number 14 insofar as it purports to require

providing the requested information in a particular format in conjunction with

Interrogatory Numbers 1–14.  As detailed in the General Objections below, to provide

the information as requested by Interrogatory Numbers 1–14 would conservatively take

at least 201,714 man-hours to compile at a cost of at least $8,270,147.50 in wages alone.

Defendant thus objects to the interrelated Interrogatory Numbers 1–14 as unduly

burdensome and disproportionate to the needs of this case because the "burden" and

"expense of the proposed discovery outweighs its likely benefit" considering the "needs

of the case," the "amount in controversy," and "the importance of the discovery in

resolving the issues."  Fed. R. Civ. P. 26(b).

Defendant also objects to this Interrogatory as having multiple sub-parts, as it

seeks separate information for each of the more than 97,000 individual servicemembers

who have tested positive for COVID-19.


**Del Toro Interrogatory No. 15:**

On page 2 of your Application, you stated that the Court's preliminary

injunction "requires the Navy to assign and deploy [the Plaintiffs] without regard to

their lack of vaccinations notwithstanding military leaders' judgment that doing so

poses intolerable risks to safety and mission success."

Identify each military leader whose judgment you are referring to in the foregoing statement.

**Response to Del Toro Interrogatory No. 15:**

**Response:**  The judgment of senior military leaders is reflected in official navy policies which Defendant has already submitted in this case.  Those policies include ALNAV 062/21 Department of Navy Mandatory COVID-19 Vaccination Policy; NAVADMIN 190/21, Navy Mandatory COVID-19 Vaccination and Reporting Policy, NAVADMIN 225/21, COVID-19 Consolidated Disposition Authority (CCDA); NAVADMIN 256/21, CCDA Guidance to Commanders; NAVADMIN 007/22, U.S. Navy COVID-19 Standardized Operational Guidance 5.0; NAVADMIN 093/22, U.S. Navy COVID-19 Standardized Operational Guidance 6.0; Feb. 14, 2018, Under Secretary of Defense Memorandum, Subject: DoD Retention Policy for Non-Deployable Service Members; SECNAVINST 6120.3A, Periodic Health Assessment for Individual Medical Readiness; OPNAVINST 1300.20, Deployability Assessment and Assignment Program; Navy Manual of the Medical Department (MANMED), Ch. 15, Physical Examinations and Standards for Enlistment, Commission and Special Duty; ALNAVRESFOR 010/21, Mandatory Vaccination Coronavirus Disease 2019 for Navy Reserve Force Personnel; SECNAV Memorandum for Commandant of the Marine Corps Chief of Naval Operations Assistant Secretaries of the Navy General Counsel of the Navy,

46

Implementation of Consolidated Department of Defense Coronavirus Disease 2019

Force Health Protection Guidance;  and prior versions of these policies.

Defendant also refer Plaintiffs to the military leaders who have submitted

declarations in support of Defendants in this case, including Admiral William K.

Lescher; Admiral Daryl L. Caudle, Vice Admiral William Merz, Captain Joon Yun, and

Captain Lanny F. Littlejohn.


**Del Toro Interrogatory No. 16:**

Identify the total number of Naval Special Warfare missions since January 1,

2012 that could not be completed and/or could not achieve mission success because

a servicemember became ill with a disease that is transmissible from human to

human. Answer this interrogatory using your definition of "missions that could not

be completed" and "mission success" as used on page 24 of your Application.

**Response to Del Toro Interrogatory No. 16:**

**Response:**  Defendant refers to and incorporates the response to Interrogatory

No. 8.

**Specific Objections:**  Defendant objects to scope of this request as unduly

burdensome seeking information from more than 10 years.  The information sought is

not centrally collected or stored, so it would require reviewing individual medical

**Pls.' Resp. to Defs. Mot to Compel App. 0048**

records for all associated servicemembers or individual unit records covering a span of 10 years. The burden associated with such a search is outweighed by any potential benefit from the information sought.

Defendant also objects that characterizing impact to mission execution is vague and it would be difficult, if not impossible, to conduct a search through over a decade's worth of records for responsive information.

**Del Toro Interrogatory No. 17:**

Identify the total number of Navy enlistments for Fiscal Years 2012 through 2022. State in your answer the totals for each calendar month of each Fiscal Year.

**Response to Del Toro Interrogatory No. 17:**

**Response:** Defendant provides the following information about Navy ascensions by fiscal year, which includes both active and reserves. The year 2022 reflects partial data.

| 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 |
|------|------|------|------|------|------|------|------|------|------|------|
| 39509 | 43294 | 36677 | 38049 | 34194 | 38672 | 41545 | 41562 | 41589 | 36292 | 19627 |

48

Defendant provides the following information about Navy ascensions organized by calendar month, which includes both active and reserves.

|      | Jan  | Feb  | Mar  | Apr  | May  | June | July | Aug  | Sept | Oct  | Nov  | Dec  |
|------|------|------|------|------|------|------|------|------|------|------|------|------|
| 2012 | 2872 | 2961 | 3429 | 3312 | 3166 | 4004 | 3979 | 4438 | 4009 | 2495 | 3316 | 2799 |
| 2013 | 3444 | 3264 | 3615 | 3731 | 3740 | 4424 | 4497 | 4143 | 3826 | 2381 | 2720 | 2416 |
| 2014 | 3624 | 3045 | 3036 | 2209 | 2176 | 3584 | 3987 | 3658 | 3841 | 2945 | 2627 | 2547 |
| 2015 | 3151 | 3275 | 3266 | 3105 | 3105 | 3592 | 4014 | 3359 | 3063 | 2440 | 3002 | 2914 |
| 2016 | 3164 | 2901 | 3706 | 2984 | 3220 | 3722 | 2584 | 2154 | 1403 | 2133 | 2951 | 2512 |
| 2017 | 3024 | 2825 | 3310 | 3195 | 3429 | 3778 | 4021 | 3990 | 3504 | 2269 | 3306 | 3105 |
| 2018 | 3600 | 3529 | 3183 | 3004 | 3660 | 3421 | 4575 | 4361 | 3532 | 3046 | 3479 | 3167 |
| 2019 | 3981 | 2914 | 2296 | 2764 | 2908 | 4452 | 4923 | 4111 | 3521 | 2500 | 3488 | 3409 |
| 2020 | 4144 | 3376 | 2413 | 1045 | 2546 | 3370 | 5363 | 5105 | 4830 | 2457 | 2994 | 2687 |
| 2021 | 3443 | 2693 | 3028 | 2125 | 2572 | 4373 | 3800 | 3655 | 2465 | 1804 | 3317 | 2427 |
| 2022 | 3510 | 2812 | 2156 | 1705 | 1896 |      |      |      |      |      |      |      |

**Del Toro Interrogatory No. 18:**

Identify the total number of new recruits for Naval Special Warfare for Fiscal Years 2012 through 2022.  State in your answer the totals for each calendar month of each Fiscal Year as well as the totals for each service type (SEAL, SWCC, Diver, EOD).

**Response to Del Toro Interrogatory No. 18:**

**Response:**  Navy SEALs (who consist of Naval Special Warfare Officers and Special Warfare Operators (SO)) and SWCCs (also known as Special Boat Operators (SB)) are recruited into the Navy and upon completion of NSW training are distributed to the Fleet by Naval Special Warfare Detailing and Placement Office.  SEAL and SB personnel are managed and accounted for during their entire career only by the NSW Distribution and Assignment Managers.

49

Navy EOD and Diver Technician distribution does not fall under the authority of NSW Detailing and Placement Office; they are managed by their own EOD Detailing and Placement organizations.  They are attached to NSW in support positions during the execution of SEAL and SWCC missions, functions, and tasks.

The embedded table identifies new recruits for SEAL, SWCC, Diver, and EOD. NSWC obtained data on Navy Divers and EOD Technicians from Naval Education and Training Command and the EOD Navy Officer Community Manager.

| SPECIAL WARFARE OPERATOR (SO) RECRUITS REPORTED TO BUD/S | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
|  | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | *2022 |
| Jan | 109 | 0 | 127 | 131 | 177 | 163 | 3 | 1 | 0 | 0 | 1 |
| Feb | 1 | 136 | 1 | 0 | 0 | 2 | 178 | 133 | 186 | 153 | 138 |
| Mar | 124 | 1 | 130 | 147 | 162 | 156 | 1 | 0 | 0 | 171 | 0 |
| Apr | 0 | 135 | 0 | 1 | 1 | 1 | 154 | 131 | 0 | 0 | 130 |
| May | 138 | 0 | 132 | 144 | 151 | 149 | 138 | 150 | 153 | 168 | 1 |
| Jun | 0 | 133 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 |  |
| Jul | 1 | 1 | 125 | 151 | 148 | 161 | 232 | 147 | 146 | 178 |  |
| Aug | 132 | 114 | 0 | 0 | 2 | 0 | 0 | 0 | 0 | 0 |  |
| Sep | 0 | 0 | 0 | 79 | 2 | 5 | 14 | 112 | 136 | 1 |  |
| Oct | 136 | 132 | 133 | 106 | 161 | 177 | 167 | 65 | 27 | 138 |  |
| Nov | 0 | 132 | 0 | 147 | 154 | 0 | 1 | 0 | 0 | 0 |  |
| Dec | 135 | 0 | 129 | 2 | 0 | 158 | 162 | 188 | 149 | 142 |  |
| CY Total | 776 | 784 | 778 | 909 | 959 | 972 | 1050 | 927 | 797 | 951 | 270 |

| SPECIAL WARFARE BOAT OPERATOR (SB) RECRUITS REPORTED TO BCT | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | *2022 |
| Jan | 40 | 0 | 37 | 33 | 36 | 0 | 0 | 0 | 0 | 0 | 0 |
| Feb | 0 | 41 | 0 | 0 | 0 | 1 | 0 | 1 | 0 | 0 | 1 |
| Mar | 44 | 0 | 35 | 35 | 33 | 44 | 0 | 0 | 0 | 58 | 0 |
| Apr | 1 | 43 | 0 | 0 | 0 | 0 | 47 | 55 | 0 | 0 | 63 |
| May | 41 | 0 | 31 | 30 | 32 | 46 | 46 | 39 | 90 | 61 | 0 |
| Jun | 0 | 26 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | |
| Jul | 0 | 0 | 36 | 37 | 23 | 44 | 51 | 88 | 85 | 63 | |
| Aug | 90 | 26 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | |
| Sep | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 14 | 0 | |
| Oct | 44 | 33 | 40 | 36 | 38 | 36 | 53 | 54 | 59 | 56 | |
| Nov | 1 | 35 | 0 | 43 | 42 | 0 | 0 | 0 | 0 | 0 | |
| Dec | 43 | 0 | 33 | 0 | 0 | 41 | 44 | 59 | 63 | 57 | |
| CY Total | 304 | 204 | 212 | 214 | 204 | 212 | 242 | 297 | 311 | 296 | 64 |

| NAVY DIVER (ND) RECRUITS REPORTED TO TRAINING | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | *2022 |
| Jan | 23 | 0 | 0 | 0 | 0 | 28 | 27 | 0 | 27 | 35 | 39 |
| Feb | 18 | 22 | 46 | 25 | 18 | 21 | 1 | 31 | 31 | 28 | 0 |
| Mar | 22 | 24 | 0 | 26 | 34 | 0 | 23 | 0 | 0 | 0 | 39 |
| Apr | 0 | 0 | 30 | 0 | 0 | 25 | 29 | 44 | 6 | 36 | 0 |
| May | 19 | 20 | 0 | 25 | 19 | 24 | 25 | 41 | 0 | 28 | 32 |
| Jun | 21 | 22 | 22 | 29 | 23 | 28 | 24 | 0 | 32 | 0 | |
| Jul | 21 | 19 | 42 | 26 | 0 | 0 | 24 | 78 | 37 | 32 | |
| Aug | 24 | 27 | 0 | 0 | 30 | 35 | 0 | 0 | 35 | 24 | |
| Sep | 0 | 0 | 0 | 22 | 33 | 24 | 28 | 42 | 45 | 25 | |
| Oct | 22 | 22 | 40 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | |
| Nov | 0 | 19 | 0 | 19 | 23 | 0 | 0 | 27 | 0 | 14 | |
| Dec | 21 | 23 | 24 | 20 | 0 | 26 | 0 | 0 | 30 | 20 | |
| CY Total | 191 | 198 | 204 | 192 | 180 | 211 | 181 | 263 | 243 | 243 | 110 |

Pls.' Resp. to Defs. Mot to Compel App. 0052

| EXPLOSIVE ORDANANCE DISPOSAL TECHNICIAN (EOD) RECRUITS REPORTED TO TRAINING | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | *2022 |
| Jan | 24 | 24 | 0 | 0 | 0 | 31 | 31 | 32 | 31 | 36 | 44 |
| Feb | 25 | 26 | 72 | 64 | 32 | 30 | 0 | 33 | 24 | 36 | 0 |
| Mar | 30 | 0 | 0 | 1 | 34 | 0 | 30 | 0 | 0 | 0 | 41 |
| Apr | 0 | 0 | 36 | 0 | 0 | 36 | 34 | 31 | 0 | 37 | 0 |
| May | 28 | 25 | 0 | 38 | 24 | 42 | 0 | 34 | 0 | 28 | 44 |
| Jun | 29 | 23 | 34 | 39 | 22 | 31 | 30 | 0 | 38 | 0 | |
| Jul | 34 | 0 | 41 | 34 | 1 | 0 | 31 | 76 | 54 | 41 | |
| Aug | 0 | 40 | 0 | 0 | 22 | 27 | 0 | 0 | 0 | 35 | |
| Sep | 0 | 40 | 33 | 33 | 13 | 21 | 28 | 39 | 71 | 33 | |
| Oct | 26 | 31 | 37 | 0 | 0 | 0 | 0 | 0 | 2 | 0 | |
| Nov | 0 | 0 | 0 | 32 | 31 | 32 | 31 | 31 | 0 | 14 | |
| Dec | 24 | 32 | 37 | 32 | 0 | 32 | 0 | 0 | 30 | 30 | |
| CY Total | 220 | 241 | 290 | 273 | 179 | 282 | 215 | 276 | 250 | 290 | 129 |

| NAVAL SPECIAL WARFARE OFFICER (118X) RECRUITS REPORTED TO BUD/S | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | *2022 |
| Jan | 10 | 2 | 3 | 1 | 3 | 9 | 3 | 12 | 7 | 5 | 0 |
| Feb | 3 | 1 | 4 | 2 | 12 | 3 | 11 | 8 | 1 | 6 | 5 |
| Mar | 13 | 1 | 1 | 1 | 8 | 7 | 3 | 14 | 9 | 4 | 0 |
| Apr | 2 | 11 | 4 | 7 | 3 | 16 | 9 | 6 | 7 | 4 | 9 |
| May | 6 | 10 | 9 | 2 | 5 | 6 | 9 | 2 | 13 | 1 | 7 |
| Jun | 17 | 12 | 13 | 19 | 11 | 15 | 12 | 5 | 7 | 14 | 8 |
| Jul | 15 | 8 | 13 | 13 | 21 | 9 | 6 | 11 | 9 | 10 | |
| Aug | 5 | 9 | 7 | 5 | 4 | 12 | 12 | 10 | 12 | 11 | |
| Sep | 5 | 6 | 8 | 8 | 6 | 4 | 0 | 2 | 1 | 3 | |
| Oct | 6 | 2 | 4 | 1 | 4 | 8 | 7 | 8 | 5 | 8 | |
| Nov | 9 | 6 | 6 | 4 | 13 | 0 | 2 | 0 | 3 | 1 | |
| Dec | 8 | 2 | 2 | 3 | 0 | 7 | 1 | 1 | 0 | 7 | |
| CY Total | 99 | 70 | 74 | 66 | 90 | 96 | 75 | 79 | 74 | 74 | 29 |

| EXPLOSIVE ORDANANCE DISPOSAL 119X REPORTED TO TRAINING | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 |
| Total | 34 | 39 | 32 | 34 | 33 | 31 | 31 | 31 | 32 | 36 | 33 |

52

**Del Toro Interrogatory No. 19:**

Identify the total number of Navy servicemembers who have received the Johnson & Johnson (Janssen) COVID-19 vaccine.

**Response to Del Toro Interrogatory No. 19:**

**Response:**  As of June 17, 2022, 31,767 Navy servicemembers have received the Johnson & Johnson (Janssen) COVID-19 vaccine.

**Del Toro Interrogatory No. 20:**

Identify the total number of Navy servicemembers who have received a booster dose of a COVID-19 vaccine.

**Response to Del Toro Interrogatory No. 20:**

**Response:**  As of June 17, 2022, 116,965 Navy servicemembers have received a booster dose of a COVID-19 vaccine.

**Del Toro Interrogatory No. 21:**

Identify the total number of Navy servicemembers who have received labeled doses of Comiraty vaccine.

53

**Response to Del Toro Interrogatory No. 21:**

**Response:**  To date, the Department of Defense has received over 35,000 doses of Comirnaty-labeled vaccine.

**Specific Objections:**  Defendant responds that it is not aware of any COVID-19 vaccine with the name "Comiraty" (sic), and answers this Interrogatory assuming Plaintiffs are referring to the brand name of the Pfizer-BioNTech vaccine "Comirnaty."

To the extent that Plaintiffs seek information about the Pfizer-BioNTech dose with a Comirnaty label, Defendant objects to the relevance of Defendants' position is that all EUA-authorized Pfizer-BioNTech doses for adults are interchangeable for the purposes of the military's vaccination requirement.  Further, the burden of tracking down exactly which doses from a Comirnaty-labeled were provided to service members as opposed to non-service members who receive care at military facilities would be unduly burdensome.

**Del Toro Interrogatory No. 22:**

Identify the total number of Navy servicemembers who have reported adverse reactions from any COVID-19 vaccine, including the numbers of adverse reactions reported for each of the following vaccines: (1) Moderna, (2) Pfizer, (3) Johnson & Johnson (Janssen), and (4) Comiraty.

**Response to Del Toro Interrogatory No. 22:**

**Response:**  For the purposes of responding this interrogatory, Defendant

assumes that "reported adverse reactions" means reported adverse reactions through

the Centers for Disease Control's Vaccine Adverse Event Reporting System (CDC

VAERS). As of June 17, 2022, Navy servicemembers have reported 601 adverse reactions

through CDC VAERS.  Of those, 225 were from servicemembers who had received a

Moderna COVID-19 vaccine, 47 were from servicemembers who had received a

Johnson & Johnson (Janssen) COVID-19 vaccine, and 329 were from servicemembers

who received a COVID-19 vaccine manufactured by Pfizer/BioNTech (which includes

Comirnaty).

**Specific Objections:**  Defendant responds that it is not aware of any COVID-19

vaccine with the name "Comiraty" (sic), and answers this Interrogatory assuming

Plaintiffs are referring to the brand name of the Pfizer-BioNTech vaccine "Comirnaty."

Defendant objects that this request includes multiple subparts, which should

have been propounded as separate interrogatories.

Defendant also objects to any use of this data to imply that any reported event

was actually caused by a COVID-19 vaccine.  "One of the main limitations of VAERS

data is that it cannot determine if the vaccine caused the reported adverse event. This

limitation has caused confusion in the publicly available data from VAERS WONDER,

specifically regarding the number of reported deaths. There have been instances where

people have misinterpreted reports of deaths following vaccination as deaths caused by the vaccines; that is not accurate. VAERS accepts all reports of adverse health events following vaccinations without judging whether the vaccine caused the adverse health event. Some reports to VAERS represent true vaccine reactions and others are coincidental adverse health events and not related to vaccination. Overall, a causal relationship cannot be established using information from VAERS report alone." VAERS FAQs, "What are the strengths and limitations of VARES?", available at https://vaers.hhs.gov/faq.html.

**Del Toro Interrogatory No. 23:**

Identify the total number of Navy servicemembers who are considered high-risk for COVID-19 complications, as defined in NAVADMIN 07/22.

**Response to Del Toro Interrogatory No. 23:**

**Response:**  As of 17 June 2022, 131,634 Navy service members are considered high-risk for COVID-19 complications, as defined by NAVADMIN 07/22.

**Pls.' Resp. to Defs. Mot to Compel App. 0057**

**GENERAL OBJECTIONS AND
RESPONSES TO INSTRUCTIONS AND DEFINITIONS**

**General Objection to Interrogatory Numbers 1-14**.  Defendant objects to

Interrogatory Numbers 1-14 collectively as unduly burdensome and disproportionate to

the needs of the case.  Those Interrogatories request Defendant to provide information

in a particular format and ask Defendant to identify at least 14 different categories of

information for each of the more than 97,000 individual Navy service members who

have ever tested positive for COVID-19.  The requested information is not maintained

in the format requested by Plaintiffs, and the information is not readily organized in a

way to provide in the format requested by Plaintiffs.  In the responses above, Defendant

has endeavored to provide information responsive to Interrogatories 1-14, but it cannot

create the spreadsheet requested by Plaintiffs without incurring significant costs that

are far beyond what is reasonable for this case.  *See* Fed. R. Civ. P. 26.  To determine the

information sought by Interrogatories 1-14 for each of the 97,325 individual

servicemembers (as of June 20, 2022) who have tested positive for COVID-19 would

conservatively take 201,714 man-hours of work and cost $8,270,147.50 in wages alone.

For Interrogatory Numbers 6, 7, 8, 9, and 14, Defendant estimates it would

require 2 hours for local unit medical personnel to search medical records and/or

interview unit personnel for each of the individuals who have tested positive for

COVID-19.  That would require 194,650 man-hours of unit medical personnel.  Once

those individual unit medical personnel completed collecting that data, Defendant

57

estimates that it would take at least an additional 112 hours (or 14 working days) to tabulate and validate responses.  The total cost would conservatively be $7,922,982, based on medical unit personnel average O-3 hourly rate and O-4 rate for the personnel compiling, tabulating, and verifying responses.

For Interrogatory Numbers 10, 11, 12, and 13, units are not required to report specifically which sailor or sailors impacted their operations.  To generate the information requested by this Interrogatory would require reviewing all afloat units' local records and then prepare those records for unclassified release.  Further, since these records are not required to be kept, the final data set may still be incomplete or otherwise inaccurate.

To locate a record copy and declassify a single message from an afloat unit reporting underway COVID-19 cases by classified channels, the defendant estimates it would require at approximately 31.5 man-hours, and a cost of $1805.28. Further, this process would require personnel that fleet commands do not have available to dedicate to the task, and reviews are unlikely to result in the release of any information about the actual operational impact.

To provide individualized responses to Interrogatory Number 2, Defendant estimates that it would take approximately five days for an O-4 action officer at Chief of Naval Operations, Plans and Strategy (OPNAV N3N5) to contact each Naval Special Warfare unit, 2 days for each of an estimated 24 units for O-4 administrative officer to

search unit records, screen records for release, and transmit to OPNAV in a standard

format.  And even after expending nearly 400 man-hours, the collected information may

still not be complete or accurate since this information is not required to be maintained

and would not include SEALs, EODs, or Divers that are not currently under NSWC.

The cost of conducting the search and the production of the individualized information

in the format requested in Interrogatory Number 2 would cost approximately

$21,173.50.

In total, providing responses to Interrogatory Numbers 1–14 in the format

requested by Plaintiffs would require approximately 201,714 man-hours of work and

cost $8,270,147.50 in wages alone.  Moreover, it is not even clear whether the

individualized information sought by Plaintiffs even exists, so even if the Navy

redirected significant resources to answer these interrogatories, Plaintiffs still may not

get the information they seek.

**Relevance and Proportionality.**  Defendant's response is provided in accordance

with Federal Rule 26(b)(1), which permits the discovery of any information, not

privileged, that is both (1) relevant to any party's claim or defense, and (2) proportional

to the needs of the case.  Defendants object to the interrogatories and accompanying

instructions and definitions to the extent they impose obligations in excess of those

imposed by the Federal Rules of Civil Procedure.  Defendants will comply with the

Federal Rules.

**Pls.' Resp. to Defs. Mot to Compel App. 0060**

**No waiver.**  Defendant does not, by providing such information, waive any objection to its admissibility on the grounds of relevance, proportionality, accessibility, materiality, or other appropriate ground.  The inadvertent production by Defendants of information or documents protected by any privilege or protection shall not constitute a waiver of the applicable privilege or protection as to any information or documents disclosed.  And the identification of any individual in response to an interrogatory or the disclosure that a particular communication occurred does not waive any applicable privilege over the contents of relevant conversations.

**Military Decisionmaking.**  Defendant objects to these interrogatories as unduly burdensome and not proportionate to the needs of the case insofar as they seek information to undertake an independent evaluation of military data.  *See Doe 2 v. Shanahan*, 917 F.3d 694, 737 (D.C. Cir. 2019) (Williams, J., concurring) (noting the court's role in evaluating military policy is so circumscribed that extra-record evidence and discovery is "quite beside the point") (quoting *Goldman v. Weinberger*, 475 U.S. 503, 509 (1986)); *see also id.* (noting that the Supreme Court in "*Rostker* chastised the district court for 'palpably exceed[ing] its authority' in 'relying on [such] testimony'" (quoting *Rostker*, 453 U.S. at 81)).  Courts "readily acknowledge" that such decisions "are not lightly to be overruled by the judiciary" and apply that deference by focusing their review on the military justifications reflected in the administrative record.  *Pruitt v. Cheney*, 963 F.2d 1160, 1166-67 (9th Cir. 1992) (in service member case asserting

60

constitutional claims, instructing that military deference "is best applied in the process

of judging whether the reasons put forth on the record . . . are rationally related to any

of the Army's permissible goals"); *cf. Austin v. U.S. Navy SEALs 1-26*, 142 S. Ct. 1301,

1302 (2022) (emphasizing that "[t]he Court 'should indulge the widest latitude' to

sustain the President's 'function to command the instruments of national force,'" and

citing *Gilligan v. Morgan*, 413 U.S. 1 (1973) and *Dep't of Navy v. Egan*, 484 U.S. 518 (1988)).

**Classified Information.**  Defendants object to this request to the extent it seeks

information that is subject to the privilege or statutory protections for national security

information, including any information that is classified under Executive Order.  The

disclosure of such information could reasonably be expected to harm the national

security interests of the United States and, thus, any such responsive information is

withheld on the basis of this objection.

**Definitions.**  Plaintiffs' first set of interrogatories included defined terms that

were not used in any interrogatory that was served to the Secretary of Navy.  Plaintiffs'

proposed definition of the terms "concerning," "document," "documents," and

"Lescher Declaration" are irrelevant to this set of interrogatories.  Defendant objects to

the definition of "identify" for "natural person" insofar as the interrogatory seeks

information protected by statute or regulation.  Defendant also objects to Plaintiffs'

"Definitions" to the extent they seek to impose unreasonable or burdensome obligation

beyond what is required by the Federal Rules of Civil Procedure and object to any

**Pls.' Resp. to Defs. Mot to Compel App. 0062**

meaning or interpretation onto the requests other than that evident from the plain and ordinary meaning of the words used therein.  Defendants will read and respond to Plaintiffs' requests with the understanding that these terms have their plain and ordinary meaning in standard English usage.

**Instructions — Generally.**  Plaintiffs' first set of interrogatories include instructions that are not relevant.  For example, Instructions 7 and 11 are instructions for describing documents, but the interrogatories do not request information about documents.

**Instruction 1 — Scope.**  Defendant objects to Instruction 1 as overly broad and not proportionate to the needs of the case.  Defendant's response to this interrogatory does not purport to provide "all responsive information . . . in the possession, custody, or control of [the Secretary of Navy's] attorneys, agents, employees, independent contractors, and all other persons acting on behalf of each of them or any of them." Instead, Defendants will provide non-privileged, responsive information after a reasonable search as required by the Federal Rules of Civil Procedure.

**Instruction 3 — Omission.**  Defendant objects to Instruction 3 insofar as it refers to information that Defendants have not furnished because of the burden of providing that information or because of any other objection set forth in this response.

**Instruction 6 — Privilege Log.**  Defendant objects to Instruction 6 insofar as it exceeds Defendant's obligations under the Federal Rules of Civil Procedure and the

parties' joint proposed discovery plan, which included production of an appropriate privilege log within two weeks of document productions.  Defendant further objects to preparation of a privilege log concerning communications between representatives of Defendants and Defendants' counsel related to the subject of this litigation and the claims and defenses.   Preparing a privilege log of communications with counsel would be burdensome and wasteful, as it is clear that communications with counsel after that date are subject to the attorney client privilege, work product doctrine, and/or common interest privilege.

**Instruction 7.**  Defendant objects to Instruction 7 insofar as it exceeds Defendant's obligations under the Federal Rules of Civil Procedure.

**Instruction 13 — Time Period.**  Defendant objects to the identification of a supposedly "relevant time period" dating back to October 2019 and forward to a trial date that may never happen.  The sole interrogatory served to the Secretary of Defense requests information "on or before August 24, 2021" and any information past that date is not relevant to that interrogatory.

Dated: July 15, 2022                              Respectfully submitted,

                                                  BRIAN M. BOYNTON
                                                  Principal Deputy Assistant Attorney
                                                  General

                                                  ALEXANDER K. HAAS
                                                  Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director

*/s/ Zachary A. Avallone*
ANDREW E. CARMICHAEL
AMY E. POWELL
Senior Trial Counsel
ZACHARY A. AVALLONE
CATHERINE M. YANG
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 514-2705
Fax: (202) 616-8470
Email: zachary.a.avallone@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that I served a copy of the foregoing requests on Plaintiffs' counsel via email on July 15, 2022.

*/s/ Zachary A. Avallone*

64

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS**

**U.S. NAVY SEALs 1-26;**
**U.S. NAVY SPECIAL WARFARE**
**COMBATANT CRAFT CREWMEN 1-5;**
**U.S. NAVY EXPLOSIVE ORDNANCE**
**DISPOSAL TECHNICIAN 1; and**
**U.S. NAVY DIVERS 1-3,**

Plaintiffs,

v.

**JOSEPH R. BIDEN, JR.,** in his official
capacity as President of the United States of
America; **LLOYD J. AUSTIN, III,**
individually and in his official capacity as
United States Secretary of Defense; **UNITED**
**STATES DEPARTMENT OF DEFENSE;**
**CARLOS DEL TORO,** individually and in
his official capacity as United States
Secretary of the Navy,

Defendants.

Case No. 4:21-CV-01236-O

## INTERROGATORY VERIFICATION

I am LCDR J. Eric Beaty, OPNAV COVID Crisis Action Team, Deputy Chief of Naval

Operations, Operations, Plans, and Strategy (OPNAV N3N5). I have read the response to

interrogatories (1) through (22). I certify, based on reasonable inquiry, that the foregoing

answers, as they pertain to OPNAV N3N5 are true and correct to the best of my knowledge,

information and belief. I verify under penalty of perjury that the foregoing is true and correct.

J.E. BEATY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| **U.S. NAVY SEALs 1-26;**<br>**U.S. NAVY SPECIAL WARFARE**<br>**COMBATANT CRAFT CREWMEN 1-5;**<br>**U.S. NAVY EXPLOSIVE ORDNANCE**<br>**DISPOSAL TECHNICIAN 1; and**<br>**U.S. NAVY DIVERS 1-3,**<br><br>　　　　　　　　　Plaintiffs,<br><br>v.<br><br>**JOSEPH R. BIDEN, JR.**, in his official<br>capacity as President of the United States of<br>America; **LLOYD J. AUSTIN, III**,<br>individually and in his official capacity as<br>United States Secretary of Defense; **UNITED**<br>**STATES DEPARTMENT OF DEFENSE**;<br>**CARLOS DEL TORO**, individually and in<br>his official capacity as United States<br>Secretary of the Navy,<br>　　　　　　　　　Defendants. | Case No. 4:21-CV-01236-O |

### INTERROGATORY VERIFICATION

I am the Chief of Staff of U.S. Naval Special Warfare Command.  I have read the

response to interrogatories 2, 8, 16 and 18.  I certify, based on reasonable inquiry, that the

foregoing answers to those interrogatories, as pertaining to missions and personnel under Naval

Special Warfare Command's authority, are true and correct to the best of my knowledge,

information, and belief.  I verify under penalty of perjury that the foregoing is true and correct.

CHRISTOPHER D. BROWN

Captain, U.S. Navy

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| **U.S. NAVY SEALs 1-26;**<br>**U.S. NAVY SPECIAL WARFARE**<br>**COMBATANT CRAFT CREWMEN 1-5;**<br>**U.S. NAVY EXPLOSIVE ORDNANCE**<br>**DISPOSAL TECHNICIAN 1; and**<br>**U.S. NAVY DIVERS 1-3**,<br><br>                    Plaintiffs,<br><br>v.<br><br>**JOSEPH R. BIDEN, JR.**, in his official<br>capacity as President of the United States of<br>America; **LLOYD J. AUSTIN, III**,<br>individually and in his official capacity as<br>United States Secretary of Defense; **UNITED**<br>**STATES DEPARTMENT OF DEFENSE**;<br>**CARLOS DEL TORO**, individually and in<br>his official capacity as United States<br>Secretary of the Navy,<br>                    Defendants. | Case No. 4:21-CV-01236-O |

**<u>INTERROGATORY VERIFICATION</u>**

I am the EpiData Center Department Head at the Navy-Marine Corps Public Health Center.  I certify, based on reasonable inquiry, that data submitted in response to Interrogatory No. 4, as they pertain to vaccination data extracted from the Navy's Medical Readiness Report System, are true and correct to the best of my knowledge, information and belief.  I verify under penalty of perjury that the foregoing is true and correct.

*Nowak*

G. NOWAK

**Pls.' Resp. to Defs. Mot to Compel App. 0068**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| **U.S. NAVY SEALs 1-26;**<br>**U.S. NAVY SPECIAL WARFARE**<br>**COMBATANT CRAFT CREWMEN 1-5;**<br>**U.S. NAVY EXPLOSIVE ORDNANCE**<br>**DISPOSAL TECHNICIAN 1; and**<br>**U.S. NAVY DIVERS 1-3**,<br>                              Plaintiffs,<br><br>v.<br><br>**JOSEPH R. BIDEN, JR.**, in his official<br>capacity as President of the United States of<br>America; **LLOYD J. AUSTIN, III**,<br>individually and in his official capacity as<br>United States Secretary of Defense; **UNITED**<br>**STATES DEPARTMENT OF DEFENSE**;<br>**CARLOS DEL TORO**, individually and in<br>his official capacity as United States<br>Secretary of the Navy,<br>                              Defendants. | Case No. 4:21-CV-01236-O |

## INTERROGATORY VERIFICATION

I am LT Mariano Gabriel D. Veloria at Navy Recruiting Command. I have read the

response to Interrogatory No. 17. I certify, based on reasonable inquiry, that the foregoing

answers, as they pertain to Navy Recruiting Command, are true and correct to the best of my

knowledge, information and belief. I verify under penalty of perjury that the foregoing is true

and correct.

VELORIA.MARIANO.GAB
RIEL DEL.1397616394

Digitally signed by
VELORIA.MARIANO.GABRIEL
DEL.1397616394
Date: 2022.07.01 10:33:41 -05'00'

M. D. VELORIA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| **U.S. NAVY SEALs 1-26;**<br>**U.S. NAVY SPECIAL WARFARE**<br>**COMBATANT CRAFT CREWMEN 1-5;**<br>**U.S. NAVY EXPLOSIVE ORDNANCE**<br>**DISPOSAL TECHNICIAN 1; and**<br>**U.S. NAVY DIVERS 1-3**,<br><div align="center">Plaintiffs,</div><br>v.<br><br>**JOSEPH R. BIDEN, JR.**, in his official<br>capacity as President of the United States of<br>America; **LLOYD J. AUSTIN, III**,<br>individually and in his official capacity as<br>United States Secretary of Defense; **UNITED**<br>**STATES DEPARTMENT OF DEFENSE**;<br>**CARLOS DEL TORO**, individually and in<br>his official capacity as United States<br>Secretary of the Navy,<br><div align="center">Defendants.</div> | Case No. 4:21-CV-01236-O |

## INTERROGATORY VERIFICATION

I am a Senior Medical Advisor for Medical Affairs at the Defense Health Agency.  I have read the response to interrogatories 19, 20 & 23.  I certify, based on reasonable inquiry, that the foregoing answers are true and correct to the best of my knowledge, information and belief.  I verify under penalty of perjury that the foregoing is true and correct.

*Sharon P. McKiernan*

S.P. MCKIERNAN

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| **U.S. NAVY SEALs 1-26;**<br>**U.S. NAVY SPECIAL WARFARE**<br>**COMBATANT CRAFT CREWMEN 1-5;**<br>**U.S. NAVY EXPLOSIVE ORDNANCE**<br>**DISPOSAL TECHNICIAN 1; and**<br>**U.S. NAVY DIVERS 1-3**,<br><br>Plaintiffs,<br><br>v.<br><br>**JOSEPH R. BIDEN, JR.**, in his official<br>capacity as President of the United States of<br>America; **LLOYD J. AUSTIN, III**,<br>individually and in his official capacity as<br>United States Secretary of Defense; **UNITED**<br>**STATES DEPARTMENT OF DEFENSE**;<br>**CARLOS DEL TORO**, individually and in<br>his official capacity as United States<br>Secretary of the Navy,<br><br>Defendants. | Case No. 4:21-CV-01236-O |

**INTERROGATORY VERIFICATION**

I am Chief of the Immunization and Healthcare Division at the Defense Health Agency.  I

have read the response to interrogatory 22.  I certify, based on reasonable inquiry, that the

foregoing answers are true and correct to the best of my knowledge, information and belief.  I

verify under penalty of perjury that the foregoing is true and correct.

RANS.TONYA.SUE.108126303  Digitally signed by
1                           RANS.TONYA.SUE.1081263031
                            Date: 2022.07.06 17:56:24 -04'00'

T.S. RANS

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| **U.S. NAVY SEALs 1-26;**<br>**U.S. NAVY SPECIAL WARFARE**<br>**COMBATANT CRAFT CREWMEN 1-5;**<br>**U.S. NAVY EXPLOSIVE ORDNANCE**<br>**DISPOSAL TECHNICIAN 1; and**<br>**U.S. NAVY DIVERS 1-3,**<br>                                    Plaintiffs,<br><br>v.<br><br>**JOSEPH R. BIDEN, JR.,** in his official<br>capacity as President of the United States of<br>America; **LLOYD J. AUSTIN, III,**<br>individually and in his official capacity as<br>United States Secretary of Defense; **UNITED**<br>**STATES DEPARTMENT OF DEFENSE;**<br>**CARLOS DEL TORO,** individually and in<br>his official capacity as United States<br>Secretary of the Navy,<br>                                    Defendants. | Case No. 4:21-CV-01236-O |

**INTERROGATORY VERIFICATION**

I am CDR Jeffrey W. Day, OPNAV COVID Crisis Action Team Lead, at Deputy Chief

of Naval Operations, Operations, Plans and Strategy (OPNAV N3N5). I have read the updated

responses to interrogatories 10 through 14. I certify, based on reasonable inquiry, that the

foregoing answers, as they pertain to OPNAV N3/N5 are true and correct to the best of my

knowledge, information and belief. I verify under penalty of perjury that the foregoing is true

and correct.

_____

J.W. DAY