**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| **NAVY SEALs 1-3,** *et al.*,<br><br>             Plaintiffs,<br><br>      v.<br><br>**LLOYD J. AUSTIN, III** in his official capacity as<br>United States Secretary of Defense, *et al.*,<br><br>             Defendants. | Case No. 4:21-cv-01236-O |

<u>**MEMORANDUM IN SUPPORT OF DEFENDANTS' ASSERTION OF MOOTNESS**</u>

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................1

PROCEDURAL BACKGROUND ...............................................................................................1

FACTUAL BACKGROUND .........................................................................................................3

      A.     The DoD Mandate. ..................................................................................................3

      B.     The NDAA. ...............................................................................................................3

      C.     Plaintiffs ....................................................................................................................5

ARGUMENT ...................................................................................................................................6

      I.     The Court Should Dismiss This Action as Moot Because the Challenged Vaccination Requirement Has Been Repealed and No Remaining Relief is Available to Plaintiffs. ...............................................................................................6

      II.     Plaintiffs Cannot Challenge Speculative Assignment, Deployment, and Operational Decisions. .............................................................................................11

      III.     The Voluntary Cessation Exception Does Not Apply. ....................................13

      IV.     The Capable-of-Repetition-Yet-Evading-Review Exception Does Not Apply. ..........15

CONCLUSION ..............................................................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*Abbott Lab'ys v. Gardner*,
   387 U.S. 136 (1967) .................................................................................................13

*Aetna Life Ins. Co. of Hartford v. Haworth*,
   300 U.S. 227 (1937) .................................................................................................13

*Already, LLC v. Nike, Inc.*,
   568 U.S. 85 (2013) .....................................................................................................6

*Am. Bar Ass'n v. FTC*,
   636 F.3d 641 (D.C. Cir. 2011) ...............................................................8, 13, 14, 17

*Amawi v. Paxton*,
   956 F.3d 816 (5th Cir. 2020) ..................................................................................15

*Austin v. U.S. Navy SEALs 1-26*,
   142 S. Ct. 1301 (2022) ....................................................................................2, 3, 13

*Bayou Liberty Ass'n, Inc. v. U.S. Army Corps of Eng'rs*,
   217 F.3d 393 (5th Cir. 2000) ..................................................................................16

*Bd. of Trs. of Glazing Health & Welfare Tr. v. Chambers*,
   941 F.3d 1195 (9th Cir. 2019) ..................................................................................7

*Brown v. Collier*,
   929 F.3d 218 (5th Cir. 2019) ..................................................................................13

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983) .................................................................................................9, 11

*Ctr. for Individual Freedom v. Carmouche*,
   449 F.3d 655 (5th Cir. 2006) ....................................................................................6

*Davila v. Gladden*,
   777 F.3d 1198 (11th Cir. 2015) ..............................................................................12

*Dehne v. United States*,
   970 F.2d 890 (Fed. Cir. 1992) ................................................................................12

*Empower Texans, Inc. v. Geren*,
   977 F.3d 367 (5th Cir. 2020) ............................................................... 15, 16, 17, 18

*Fantasy Ranch Inc. v. City of Arlington*,
   459 F.3d 546 (5th Cir. 2006) ....................................................................................7

*Fontenot v. McGraw,*
  777 F.3d 741 (5th Cir. 2015) ................................................................ 6, 10, 11

*Freedom From Religion Found., Inc. v. Abbott,*
  No. 21-50469, 2023 WL 565082 (5th Cir. Jan. 27, 2023) ........................... 7, 15

*Garcia v. United States,*
  666 F.2d 960 (5th Cir. 1982) ........................................................................ 12

*Gilligan v. Morgan,*
  413 U.S. 1 (1973) ........................................................................................... 13

*Guedes v. ATF,*
  920 F.3d 1 (D.C. Cir. 2019) ........................................................................... 14

*Hodges v. Callaway,*
  499 F.2d 417 (5th Cir. 1974) ......................................................................... 11

*Houston Chronicle Publ'g Co. v. League City,*
  488 F.3d 613 (5th Cir. 2007) ........................................................................... 7

*J. T. v. District of Columbia,*
  983 F.3d 516 (D.C. Cir. 2020) ....................................................................... 14

*Johnson v. Mississippi,*
  586 F.2d 387 (5th Cir. 1978) ........................................................................... 7

*K.P. v. LeBlanc,*
  729 F.3d 427 (5th Cir. 2013) ........................................................................... 6

*Keister v. Bell,*
  29 F.4th 1239 (11th Cir. 2022) ........................................................................ 7

*Kingdomware Techs., Inc. v. United States,*
  579 U.S. 162 (2016) ...................................................................................... 15

*Klayman v. Obama,*
  759 F. App'x 1 (D.C. Cir. 2019) .................................................................... 14

*Knox v. Serv. Emps. Int'l Union, Local 1000,*
  567 U.S. 298 (2012) ......................................................................................... 9

*LaRouche v. Fowler,*
  152 F.3d 974 (D.C. Cir. 1998) ....................................................................... 16

*Libertarian Party v. Dardenne,*
  595 F.3d 215 (5th Cir. 2010) .................................................................... 17, 18

*Log Cabin Republicans v. United States,*
    658 F.3d 1162 (9th Cir. 2011) ..................................................................................8

*Long v. Jayton-Girard Indep. Sch. Dist.,*
    No. 5:21-CV-111-H, 2021 WL 7906835 (N.D. Tex. Sept. 3, 2021) .................................18

*Lopez v. City of Houston,*
    617 F.3d 336 (5th Cir. 2010) ...................................................................................17

*McCorvey v. Hill,*
    385 F.3d 846 (5th Cir. 2004) ....................................................................................7

*Mindes v. Seaman,*
    453 F.2d 197 (5th Cir. 1971) ...................................................................................11

*Moore v. Hosemann,*
    591 F.3d 741 (5th Cir. 2009) ...................................................................................16

*Murphy v. Hunt,*
    455 U.S. 478 (1982) ...............................................................................................17

*Ohio Forestry Ass'n v. Sierra Club,*
    523 U.S. 726 (1998) ...............................................................................................13

*Oliver v. Scott,*
    276 F.3d 736 (5th Cir. 2002) ...................................................................................17

*Orloff v. Willoughby,*
    345 U.S. 83 (1953) ................................................................................................13

*People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.,*
    918 F.3d 151 (D.C. Cir. 2019) .................................................................................14

*Pharmachemie B.V. v. Barr Lab'ys, Inc.,*
    276 F.3d 627 (D.C. Cir. 2002) .................................................................................16

*Pulphus v. Ayers,*
    909 F.3d 1148 (D.C. Cir. 2018) ...............................................................................13

*Roman Catholic Diocese of Brooklyn v. Cuomo,*
    141 S. Ct. 63 (2020) ..............................................................................................16

*Senate Permanent Subcomm. on Investigations v. Ferrer,*
    856 F.3d 1080 (D.C. Cir. 2017) ...............................................................................18

*Sossamon v. Texas,*
    560 F.3d 316 (5th Cir 2009) ....................................................................................14

*Sossamon v. Texas,*
    563 U.S. 277 (2011) ...................................................................................................... 12

*Spell v. Edwards,*
    962 F.3d 175 (5th Cir. 2020) .............................................................................. 7, 9, 18

*St. Pierre v. United States,*
    319 U.S. 41 (1943) ....................................................................................................... 11

*Staley v. Harris County,*
    485 F.3d 305 (5th Cir. 2007) ........................................................................................ 9

*TransUnion LLC v. Ramirez,*
    141 S. Ct. 2190 (2021) ........................................................................................... 6, 11

*Troiano v. Supervisor of Elections in Palm Beach Cnty.,*
    382 F.3d 1276 (11th Cir. 2004) ................................................................................. 14

*Tyson Foods, Inc. v. Bouaphakeo,*
    577 U.S. 442 (2016) .................................................................................................... 11

*Von Hoffburg v. Alexander,*
    615 F.2d 633 (5th Cir. 1980) ..................................................................................... 11

*Webman v. Fed. Bureau of Prisons,*
    441 F.3d 1022 (D.C. Cir. 2006) ................................................................................ 12

*Yarls v. Bunton,*
    905 F.3d 905 (5th Cir. 2018) ....................................................................................... 7

## **Statutes**

10 U.S.C. § 1552 .................................................................................................................... 11

James M. Inhofe National Defense Authorization Act for Fiscal Year 2023 ("NDAA"),
    Pub. L. No. 117-263, § 525, 136 Stat. 2395, 2571-72 (2022) .................................... 1

## **Rules**

Federal Rule of Civil Procedure 23 ......................................................................................... 2

## Other Authorities

168 Cong. Rec. H9425,  H9441 (Dec. 8, 2022) .................................................................... 3

NAVADMIN 083/22, https://perma.cc/YL6UUELQ .......................................................... 10

v

Sec'y of Def. Mem. (Aug. 24, 2021), https://perma.cc/N759-S758 ...................................................3

## INTRODUCTION

On December 23, 2022, the President signed into law the James M. Inhofe National Defense Authorization Act for Fiscal Year 2023 ("NDAA"). *See* Pub. L. No. 117-263, § 525, 136 Stat. 2395, 2571-72 (2022). Section 525 of the NDAA directs the Secretary of Defense, within 30 days, to rescind the August 2021 memorandum requiring vaccination of service members for COVID-19. On January 10, 2023, the Secretary rescinded the mandate as directed. *See* ECF No. 214-1. The rescission memorandum prohibits separations based solely on refusal of the COVID-19 vaccine by service members who sought an exemption from the mandate and directs the Services to "remove any adverse actions solely associated with denials of such requests." The memorandum also halts the processing of religious accommodation requests ("RARs") for an exemption to the now-defunct mandate. Following Secretary Austin's memo, the Navy released NAVADMIN 005/23 and ALNAV 009/23, which canceled NAVADMIN 190/21 and ALNAV 062/21—the Navy's implementation of the Department of Defense's mandatory COVID-19 vaccination requirement. Plaintiffs' challenges to the Department of Defense's COVID-19 vaccination requirement and the Navy's implementation of that requirement are therefore moot, in their entirety, and the case should be dismissed.

## PROCEDURAL BACKGROUND

Thirty-five pseudonymous service members in the Naval Special Warfare community filed this lawsuit in November 2021, alleging that the Department of Defense (DoD) COVID-19 vaccination requirement and the Navy's policies implementing that requirement violated the Religious Freedom Restoration Act (RFRA), the First Amendment, and the Administrative Procedure Act (APA). ECF No. 1. On January 3, 2022, this Court granted a preliminary injunction barring the Navy from "applying MANMED § 15- 105([4])(n)(9); NAVADMIN 225/21; Trident Order #12; and NAVADMIN 256/21 to Plaintiffs," as well as from "taking any adverse action against Plaintiffs on the basis of Plaintiffs' requests for religious accommodation." ECF No. 66. The Navy appealed and

sought a partial stay of the injunction insofar as it prevented the Navy from considering Plaintiffs' vaccination status in making deployment, assignment, and operational decisions. Although the district court and the Fifth Circuit Court of Appeals denied that relief, the Supreme Court granted the partial stay the government had requested. *Austin v. U.S. Navy SEALs 1-26*, 142 S. Ct. 1301 (2022).

On January 24, 2022, Plaintiffs amended their complaint to seek class-wide relief, again claiming the DoD's COVID-19 vaccination requirement and the Navy's policies implementing that requirement violated RFRA and the First Amendment. ECF No. 84. Pseudonymous Plaintiffs Navy SEAL 1, Navy SEAL 2, Navy SEAL 3, and Explosive Ordinance Technician 1 were named class representatives. *Id.* The other thirty-one pseudonymous Plaintiffs remained parties to the litigation. *Id.* Plaintiffs proposed a series of allegedly common questions each concerning the now-defunct Navy implementation of the DoD COVID-19 vaccine requirement. *See id.* ¶ 58 a – h; ¶ 59 a – p. Plaintiffs asserted that the "individual questions, if any, pale in comparison to the numerous common questions of fact and law presented in this lawsuit." *Id.* ¶ 57. Plaintiffs also dropped their APA claim and their claims against the individual-capacity Defendants. *See* ECF No. 84.

On March 28, 2022, this Court certified a class of all Navy service members who had submitted religious-accommodation requests and granted a class-wide preliminary injunction barring the Navy "from applying MANMED § 15-105([4])(n)(9); NAVADMIN 225/21; Trident Order #12; and NAVADMIN 256/21" to the class members. ECF No. 140 at 27. This Court found that Plaintiffs satisfied the requirements of Federal Rule of Civil Procedure 23, because, *inter alia*, the potential class members have suffered the same injury arising from the denial or assumed denial of their religious accommodation request to the COVID-19 vaccine requirement. *See id.*; *see also id.* at 17 ("Without relief, each servicemember faces the threat of discharge and the consequences that accompany it.").

This Court immediately stayed its own injunction "insofar as it precludes the Navy from considering [class members'] vaccination status in making deployment, assignment, and other

operational decisions." ECF No. 140 at 27 (quoting *U.S. Navy SEALs 1-26*, 142 S. Ct. at 1301). The government again appealed, and the Fifth Circuit consolidated the two appeals. During the pendency of the appeal and the district court litigation the challenged requirements were rescinded by statute. Accordingly, Defendants now move to dismiss this case as moot.

## FACTUAL BACKGROUND

**A.     The DoD Mandate.** On August 24, 2021, the Secretary of Defense directed the Secretaries of the Military Departments to ensure that all members of the Armed Forces were fully vaccinated against COVID-19. Sec'y of Def. Mem. (Aug. 24, 2021), https://perma.cc/N759-S758. The Navy subsequently issued orders implementing that requirement. *See* ECF No. 44-1 at 75-76 (ALNAV 062/21, setting deadlines for vaccination); ECF No. 44-1 at 83-87 (NAVADMIN 225/21, providing procedures for disciplining and, if necessary, separating service members who refuse vaccination without an exemption); ECF No. 44-1 at 89-96 (NAVADMIN 256/21, providing for "temporary reassignment[]" of unvaccinated service members); ECF No. 44-1 at 98-99 (Trident Order #12, implementing the requirement for Special Warfare personnel); *see also* ECF No. 44-2 at 122-131 (MANMED § 15-105(4)(n)(9), a general Navy policy, providing that Naval Special Warfare service members who "refus[e] to receive recommended vaccines … based solely on personal or religious beliefs are disqualified" from Special Operations duty assignments).

**B.     The NDAA.** On December 23, 2022, the President signed the NDAA into law. Section 525 directs the Secretary of Defense, within 30 days, to rescind the August 2021 memorandum requiring vaccination of service members against COVID-19. An explanatory statement in the Congressional Record notes that DoD "has mechanisms to correct a servicemember's military record for discharge due to failure to receive the COVID-19 vaccine" and that "the military departments have the ability to consider applications for reinstatement of servicemembers who were previously separated for refusing the vaccine." *See* 168 Cong. Rec. H9425, H9441 (Dec. 8, 2022).

On January 10, 2023, the Secretary of Defense rescinded the mandate as directed.  ECF No. 214-1.  The rescission memorandum directs that currently serving service members who sought an exemption may not be "separated solely on the basis of their refusal to receive the COVID-19 vaccination" and directs the Services to "update the records of such individuals to remove any adverse actions solely associated with denials of such requests." *Id.*[1] It further directs that decisionmakers should "cease any ongoing reviews" of requests for accommodation from the COVID-19 vaccination requirement.  *Id.*  The Secretary's memorandum preserved "the ability of Commanders to consider, as appropriate, the individual immunization status of personnel in making deployment, assignment, and other operational decisions." *Id.*

On January 11, the Navy issued implementing guidance "[c]ancel[ing]" it's implementation of the August 2021 vaccination requirement. *See* Ex. 1 (App. 001-002) (NAVADMIN 005/23 cancelling NAVADMIN 091/21 and "suspend[ing]," the derivative enforcement policies, NAVADMIN 225/21 and NAVADMIN 256/21).   The Navy directed commands to "immediately discontinue administrative separation processing of Navy Service Members solely for refusing the COVID-19 vaccine, including those with approved separation letters," and to "immediately suspend any new adverse administrative actions associated with refusing the COVID-19 vaccine."  *Id.*  And on January 20, the Secretary of the Navy ordered the Navy to "cease any ongoing reviews of current Service Members' religious, administrative, or medical accommodation requests solely for exemption from the COVID-19 vaccine or appeals of denials of such requests," and he clarified that "[n]o currently serving Sailor … shall be separated solely on the basis of their failure to receive the COVID-19

---

[1] Former service members administratively discharged on the sole basis that the service member failed to obey a lawful order to receive a vaccine for COVID-19, "may petition their Military Department's Discharge Review Boards and Boards for Correction of Military or Naval Records to individually review and correct personnel records, including records regarding the characterization of their discharge." *Id.*

vaccination if they sought an accommodation on religious, administrative, or medical grounds." Ex. 2 (App. 003-005) (ALNAV 009/23, "cancel[ing]" ALNAV 062/21).[2]  On February 3, 2023, the Navy changed the language of MANMED § 15-105(4)(n)(9) to remove any distinction between service members who are unvaccinated for religious reasons as opposed to medical reasons to align with the practice previously described by the Force Medical Officer of Naval Warfare Command.  Ex. 3 (App. 006-008) (MANMED Change 168 dated Feb. 3, 2023); ECF No. 87 at 36-40. The Commander of the Naval Special Warfare community had previously rescinded Trident Order #12 on May 23, 2022.  Ex. 4 (App. 009-011) (Trident Order #12 Closeout dated May 23, 2022).

On January 30, 2023, the Under Secretary of Defense issued a memorandum titled "Consolidated Department of Defense Coronavirus Disease 2019 Force Health Protection Guidance – Revision 4." Ex. 5 (App. 012-033) (DoD Force Health Protection Guidance (FHPG) of January 30, 2023, Rev. 4).  This memorandum updated the Consolidated DoD Coronavirus Disease 2019 Force Health Protection Guidance. Ex. 6 (App. 034-095) (DoD FHPG, current as of Jan. 30, 2023).  Among other things, the updated guidance rescinds the provision that previously limited travel for those not fully vaccinated to "mission-critical official travel."  *Id.* at 47–48.  The new travel policies do not distinguish between those fully vaccinated against COVID-19 and those who are not.  Ex. 5 at 2, 4, 5, 7-10, 13-16, 18-19 (App. 14, 16, 17, 19-22, 25-28, 30-31).

**C.    Plaintiffs.**  Under the rescission memorandum, neither the named Plaintiffs nor the class members are subject to the August 2021 DoD COVID-19 vaccine requirement nor the

---

[2] In light of these actions and similar actions taken by the Marine Corps and Coast Guard, the district court in a related class action challenging the Marine Corps' rescinded vaccination requirement and a related putative class action challenging the Coast Guard's rescinded vaccination requirement stayed further proceedings until the issue of mootness can be fully briefed. Order, ECF No. 277, *Col. Fin. Mgmt. Off. v. Austin*, No. 8:22-cv-1275-SDM-TGW (M.D. Fla. Jan. 20, 2023); Order, ECF No. 216, *Pilot v. Austin*, No. 8:22-cv-1278-SDM- TGW (M.D. Fla. Jan. 27, 2023).

subsequent Navy implementation of that requirement.  The 35 pseudonymous Plaintiffs have not had adverse action taken against them and they have not been subject to involuntary administrative separation.  Ex. 7 (App. 096-102) (Declaration of Gareth J. Healy, ("Healy Decl.") ¶¶ 8-10).  However, ten of the 35 pseudonymous Plaintiffs had previously chosen to withdraw their religious accommodation requests and voluntarily separate or retire from the Navy.  Healy Decl. ¶¶ 3-4. Processing for involuntary administrative separation has been permanently halted and no new adverse actions will be taken against Plaintiffs for failure to receive the COVID-19 vaccine.  Healy Decl. ¶ 8.

Similarly, for class members, pursuant to the rescission memorandum, involuntary administrative separation is permanently halted and any adverse action reflecting that process will be removed from the record of each of the class members.  ECF No. 214-1; Healy Decl. ¶ 8.  Any class member who had a record of past adverse action based solely on COVID-19 vaccine refusal will also have that action removed from their record.  Healy Decl. ¶ 9.  No new adverse action based on COVID-19 vaccine refusal will be taken against class members.  *Id.*

## ARGUMENT

### I.     The Court Should Dismiss This Action as Moot Because the Challenged Vaccination Requirement Has Been Repealed and No Remaining Relief is Available to Plaintiffs.

"Plaintiffs must maintain their personal interest in the dispute at all stages of litigation." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021).  "Even when a plaintiff has standing at the outset '[t]here must be a case or controversy through all stages of a case.'" *Fontenot v. McGraw*, 777 F.3d 741, 747 (5th Cir. 2015) (quoting *K.P. v. LeBlanc*, 729 F.3d 427, 438 (5th Cir. 2013)). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id.* (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citation omitted)).

"Generally, any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot." *Id.* (quoting *Ctr. for Individual Freedom v.*

*Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006)).  The mootness doctrine "ensures federal courts are only deciding live cases or controversies." *Spell v. Edwards*, 962 F.3d 175, 179 (5th Cir. 2020).  Because a challenge is moot when the court cannot grant effectual relief to the prevailing party, "a case challenging a [government policy] usually becomes moot if the challenged [policy] has expired or been repealed." *Id.*  After all, "[o]nce the law is off the books, there is nothing injuring the plaintiff and, consequently, nothing for the court to do." *Id.*  In short, "[n]o matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Yarls v. Bunton*, 905 F.3d 905, 909 (5th Cir. 2018) (quotation marks omitted).

Consistent with these principles, the Fifth Circuit and other circuits have repeatedly confirmed that when a statute or regulation is amended or repealed after plaintiffs bring a lawsuit challenging the legality of that statute or regulation, mootness is "the default." *Freedom From Religion Found., Inc. v. Abbott*, No. 21-50469, 2023 WL 565082, at *4 (5th Cir. Jan. 27, 2023); *Houston Chronicle Publ'g Co. v. League City*, 488 F.3d 613, 619 (5th Cir. 2007) ("It goes without saying that disputes concerning repealed legislation are generally moot."); *Fantasy Ranch Inc. v. City of Arlington*, 459 F.3d 546, 564 (5th Cir. 2006) ("[S]tatutory changes that discontinue a challenged practice are 'usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed.'" (citation omitted)); *McCorvey v. Hill*, 385 F.3d 846, 849 (5th Cir. 2004) ("Suits regarding the constitutionality of statutes become moot once the statute is repealed."); *Johnson v. Mississippi*, 586 F.2d 387, 388 (5th Cir. 1978) (per curiam)  ("[T]he enactment of a superseding statute which satisfies all the principles sought in an attack on the prior statute simply moots the case."); *see also, e.g.*, *Keister v. Bell*, 29 F.4th 1239, 1250 (11th Cir. 2022) ("[W]hen a government fully repeals a challenged law, a case challenging that law is almost surely moot."), *pet. for cert. filed*, No. 22-388 (U.S. Oct. 25, 2022); *Bd. of Trs. of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1198 (9th Cir. 2019) ("[T]he repeal,

amendment, or expiration of challenged legislation is generally enough to render a case moot and appropriate for dismissal."); *Am. Bar Ass'n v. FTC*, 636 F.3d 641, 643 (D.C. Cir. 2011) ("It is well established that a case must be dismissed as moot if new legislation addressing the matter in dispute is enacted while the case is still pending."); *Log Cabin Republicans v. United States*, 658 F.3d 1162, 1166–68 (9th Cir. 2011) (finding moot a challenge to the military's don't-ask-don't-tell policy when the policy was repealed by statute after judgment).

The Court should follow that ordinary practice here. The NDAA is intervening legislation that terminates the challenged vaccination requirement, rendering moot Plaintiffs' requests for declaratory relief and injunctive relief barring enforcement of that requirement. The NDAA as implemented through the rescission memorandum gives Plaintiffs the relief sought in their complaint.

Under the terms of the rescission, Defendants can no longer enforce the August 2021 DoD COVID-19 requirement nor the Navy's implementation of that requirement with respect to the named Plaintiffs or any member of the class, nor may Defendants take adverse action against them based on that defunct policy. ECF No. 214-1. The declaratory and injunctive relief sought by Plaintiffs is thus no longer available, as there is no requirement from which an exemption can be sought, or a determination made by the Defendants. Indeed, the Secretary's rescission memorandum halts the processing of requests for exemption to the now-defunct mandate as there is no longer a requirement to be exempted from. *Id.*

More specifically, the operative complaint requests that the Court issue a declaration that the "COVID-19 Vaccine Mandate violates Plaintiffs' and the class members' rights under the First Amendment. . . . and the [RFRA]." ECF No. 84 at 29-30. As explained above, the mandate has been rescinded and the religious accommodation process discontinued, so any opinion as to either would be advisory and impermissible. The complaint also requests a preliminary and permanent injunction "prohibiting" Defendants from "enforcing the COVID-19 Vaccine Mandate as to the Plaintiffs and

the class members[.]" *Id.* at 30.   But the rescission itself provides such relief as the Navy is already

prohibited from enforcing the prior mandate against Plaintiffs and the class members.

As to Plaintiffs' causes of action, they also seek to have the DoD COVID-19 vaccination

requirement and certain Navy policies involved in the implementation of that requirement enjoined

and declared unlawful as to the 35 Plaintiffs and as to the class—NAVADMIN 190/21, ALNAV

062/21, NAVADMIN 225/21, NAVADMIN 256/21, Trident Order #12, and MANMED § 15-

105(3)(n)(9).   ECF No. 84 at 20-29; ECF No. 104 at 2-3.   The Navy has expressly cancelled

NAVADMIN 190/21 and ALNAV 062/21, and the derivative enforcement policies—NAVADMIN

225/21 and NAVADMIN 256/21—are similarly withdrawn in accordance with the direction of the

Secretary of Defense.   Ex. 1 & 2 (App. 001-005).   Trident Order #12 was previously withdrawn and

cancelled.   Ex. 4 (App. 009-011).   The specific language of MANMED § 15-105(4)(n)(9) that Plaintiffs

challenge, *see* ECF No. 84 ¶¶ 51, 75, 111, has been rescinded.   Ex. 3 (App. 006-008).   And that

requirement no longer applies to vaccination against COVID-19.   There is accordingly no live dispute

regarding any of the policies challenged in this litigation.   The Court therefore can no longer provide

plaintiffs with "any effectual relief."   *Spell*, 962 F.3d at 179 (quoting *Knox v. Serv. Emps. Int'l Union, Local

1000*, 567 U.S. 298, 307 (2012)).   To the extent Plaintiffs seek an injunction against other possible

future adverse acts, they do not have standing to seek relief where there is no "real and immediate

threat" of future injury.   *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) ("The equitable remedy

is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is

no showing of any real or immediate threat that the plaintiff will be wronged again . . . ."); *see also Staley

v. Harris County*, 485 F.3d 305, 309 (5th Cir. 2007) (en banc).

Plaintiffs' only remaining request, besides a request for attorneys' fees, includes a catch-all

request for "relief under law or equity to which Plaintiffs and the class members may be entitled."

ECF No. 84 at 30.   The Secretary's rescission memorandum confirms that the 25 pseudonymous

service member Plaintiffs remaining in the Navy[3] will not be discharged based on their previous refusal to comply with the vaccination requirement and that no new adverse actions for declining the COVID-19 vaccination will be issued to them.  Healy Decl. ¶ 4.  And because no adverse action was ever entered into the records of any of the pseudonymous Plaintiffs, no adverse action need be removed from their records.  *Id.* ¶¶ 8-10; *see also* ECF No. 66 at 4 (acknowledging that at the time of the issuance of the initial preliminary injunction "[t]he Navy ha[d] made no final determinations on appeal.").  As to Plaintiff class members, they also will not be discharged based on their previous refusal to comply with the vaccination requirement and no new adverse actions for declining COVID-19 vaccination will be issued to them.  Healy Decl. ¶ 4.  Further, any preexisting adverse action issued based solely on a refusal to comply with the vaccination requirement—if there is any—will be removed from their records.  *Id.* ¶¶ 8-10; *see also* NAVADMIN 083/22, https://perma.cc/YL6UUELQ (Navy policy immediately implementing the district court's class-wide preliminary injunction, "suspend[ing] separation processing and adverse administrative consequences of COVID-19 vaccine refusal for Navy service members who submitted requests for religious accommodation from the COVID-19 vaccine requirement").[4]  Accordingly, Plaintiffs have no further relief to be gained in law or equity by

---

[3] Ten of the pseudonymous Plaintiffs withdrew their RARs and voluntarily retired or separated from the Navy during the pendency of this litigation.  Healy Decl. ¶¶ 3-4.

[4] Plaintiffs claim that because NAVADMIN 005/23—which immediately paused separations and adverse action against Navy service members solely for refusing the COVID-19 vaccine—refers only to "new" adverse actions the Navy does not intend to remove prior adverse action from class member records.  ECF No. 274 at 3.  But there is no question that the Navy must do so.  The Secretary of Defense has directed the military Services, including the Navy, to "remove any adverse actions solely associated with denial of [requests for accommodation on religious, administrate, or medical grounds], including letters of reprimand."  ECF No. 214-1 at 1.  And Plaintiffs ignore that NAVADMIN 005/23 further provides that the Navy will issue supplemental guidance regarding implementation of the Secretary's direction.  Thus, Plaintiffs' request for the Court to issue an injunction to the same effect seeks a remedy that they have already obtained from the Secretary of Defense.  That request is therefore moot.  *See Fontenot,* 777 F.3d at 747 ("Because there remains no live controversy between the parties . . . the injunction they seek would be meaningless.").

pursuing this lawsuit challenging the now-rescinded mandate, and thus "lack any legally cognizable interest in the outcome." *Fontenot*, 777 F.3d at 747 (citation omitted); *see also St. Pierre v. United States*, 319 U.S. 41, 42 (1943) ("A federal court is without power to decide moot questions or to give advisory opinions which cannot affect the rights of the litigants in the case before it.").[5]

## II.   Plaintiffs Cannot Challenge Speculative Assignment, Deployment, and Operational Decisions

In Plaintiffs' supplemental memorandum to the Fifth Circuit they claimed that the litigation is not moot because the Secretary's rescission memorandum allows military commanders to consider vaccination status when making "deployment, assignment, and other operational decisions[.]" ECF No. 274 at 3. Plaintiffs speculate that this provision might injure them in the future and postulate three potential injuries to unidentified Plaintiffs and class members: "unnecessarily restricting travel necessary for their jobs, demanding repayment of educational expenses and previously awarded and rightfully earned bonuses, and refusing to allow participation in meaningful training opportunities and operational assignments." *Id.* at 4. But speculation that a future injury might occur cannot provide a basis for relief for an individual Plaintiff or the class. *See Lyons*, 461 U.S. at 111; *TransUnion*, 141 S. Ct. at 2208 ("Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not.") (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016) (Roberts, C.J., concurring))). In any event, the travel restrictions Plaintiffs complain of have also been rescinded.

---

[5] In seeking class certification Plaintiffs previously asserted that the "individual questions, if any, pale in comparison to the numerous common questions of fact and law presented in this lawsuit." ECF No. 84 ¶ 57. In addition to such claims being moot, to the extent that Plaintiffs seek to remedy individual personnel actions now, they must exhaust administrative remedies before doing so. The Fifth Circuit has long required that a plaintiff first exhaust all "available intraservice corrective measures" before bringing to federal court claims implicating "internal military affairs." *Hodges v. Callaway*, 499 F.2d 417, 419–20 (5th Cir. 1974) (quoting *Mindes v. Seaman*, 453 F.2d 197, 201 (5th Cir. 1971)); *see also Von Hoffburg v. Alexander*, 615 F.2d 633, 637 (5th Cir. 1980) (collecting cases). And although this Court previously found that the Navy's religious accommodation process was futile there is no reason to suggest that the entirely separate corrections board process is futile. *See* 10 U.S.C. § 1552.

On January 30, 2023, the Under Secretary of Defense issued a memorandum titled "Consolidated Department of Defense Coronavirus Disease 2019 Force Health Protection Guidance – Revision 4." Ex. 5 (App. 012-033) (DoD Force Health Protection Guidance (FHPG) of January 30, 2023, Rev. 4). This memorandum updated the Consolidated DoD Coronavirus Disease 2019 Force Health Protection Guidance. Ex. 6 (App. 034-095) (DoD FHPG, current as of Jan. 30, 2023).  Among other things, the updated guidance rescinds the provision that previously limited travel for those not fully vaccinated to "mission-critical official travel."  *Id.* at 47–48.  The new travel policies do not distinguish between those fully vaccinated against COVID-19 and those who are not.  Ex. 5 at 2, 4, 5, 7-10, 13-16, 18-19 (App. 14, 16, 17, 19-22, 25-28, 30-31) (striking distinctions between vaccinated and unvaccinated service members).

Plaintiffs' only other speculation as to how consideration of vaccination status when making deployment, assignment, and other operational decisions may cause them injury involves a hypothetical claim for monetary benefits.  Again, they have not identified an actual Plaintiff who has made such a claim.  But, even if they had, such a claim would likely be subject to Tucker Act jurisdiction and limited to missed payments for work actually performed.  *See Dehne v. United States*, 970 F.2d 890 (Fed. Cir. 1992); *see also Garcia v. United States*, 666 F.2d 960, 966 (5th Cir. 1982) ("The Constitution does not waive the Government's sovereign immunity in a suit for damages"); *Davila v. Gladden*, 777 F.3d 1198, 1210 (11th Cir. 2015) ("RFRA does not therefore authorize suits for money damages against officers in their official capacities."); *Webman v. Fed. Bureau of Prisons*, 441 F.3d 1022, 1028 (D.C. Cir. 2006) (Tatel, J., concurring) (internal citation omitted) ("RFRA's purpose does not 'produce evidence of a waiver' of sovereign immunity for damages claims, much less evidence unequivocal enough to satisfy the strict standard for waivers of sovereign immunity.") *cf. Sossamon v. Texas*, 563 U.S. 277 (2011) (holding that identical "appropriate relief" language in the related statute RLUIPA did not waive states' sovereign immunity from money damages).

Furthermore, any hypothetical future dispute about a service member's assignments would need to be assessed based on the facts and circumstances of the particular service member's specific religious-liberty claim, given the legally required narrow tailoring.  *Cf. Brown v. Collier*, 929 F.3d 218, 230 (5th Cir. 2019) (requiring "case-by-case" adjudication of religious-liberty claims).  Any such questions, should they ever actually arise, are plainly not ripe for this Court's review.  *See, e.g., Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 732-33 (1998) (explaining that the "ripeness requirement" serves "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies" and to prevent unnecessary "judicial interference" (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148-49 (1967))); *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 241 (1937) (providing that a justiciable dispute must "admit[] of specific relief through a decree of a conclusive character" and may not ask a court to "advis[e] what the law would be upon a hypothetical state of facts").  Hypothetical disputes about the extent to which a specific service member's decision to remain unvaccinated might or might not affect an assignment, deployment or other military operational decision cannot resuscitate the moot controversy here.[6]

### III.   The Voluntary Cessation Exception Does Not Apply.

Plaintiffs also assert that the NDAA and subsequent rescission memorandum does not moot the litigation because the voluntary cessation exception applies.  *See* ECF No. 274 at 5-7.  But here Defendants' cessation of the vaccination requirement was not voluntary, as Plaintiffs appear to

---

[6] Additionally, military assignment, deployment and operational decisions are not "susceptible to judicial correction" in light of well-established principles of judicial noninterference with core military decision making, *Pulphus v. Ayers*, 909 F.3d 1148, 1154 (D.C. Cir. 2018); *see U.S. Navy SEALs 1-26*, 142 S. Ct. at 1301 (partial stay order); *id.* at 1302 (Kavanaugh, J., concurring) (explaining that "the 'complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments'" and that "it is 'difficult to conceive of an area of governmental activity in which the courts have less competence'" (quoting *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973))); *Orloff v. Willoughby*, 345 U.S. 83, 93 (1953); Order, *Navy SEAL 1 v. Austin*, No. 22-10645 (11th Cir. Mar. 30, 2022).

concede. *Id.* at 5. Defendants "most assuredly did not alter [their own course] in order to avoid litigation." *Am. Bar Ass'n*, 636 F.3d at 648.  Rather, intervening legislation—in the form of the NDAA—required DoD to rescind the vaccination mandate. *See id.* (finding voluntary cessation exception did not apply where "intervening legislation simply nullified the [agency's challenged] policy statement").  The NDAA "specifically forbids the kind of [action] challenged in this suit" and "[t]he cessation of the [vaccination requirement] was therefore not voluntary."  *Klayman v. Obama*, 759 F. App'x 1, 3 (D.C. Cir. 2019); *see also J. T. v. District of Columbia*, 983 F.3d 516, 523 (D.C. Cir. 2020) ("'The voluntary-cessation doctrine has no apparent relevance' where the 'source of cessation . . . lies beyond the unilateral legal authority of any of the named defendants.'" (quoting *Guedes v. ATF*, 920 F.3d 1, 15 (D.C. Cir. 2019) (per curiam)).

Second, even if Congress's enactment of the NDAA could be considered a voluntary change on the part of Defendants, the Fifth Circuit has held that "courts are justified in treating a voluntary governmental cessation of possibly wrongful conduct with some solicitude, mooting cases that might have been allowed to proceed had the defendant not been a public entity." *Sossamon v. Texas*, 560 F.3d 316, 325 (5th Cir 2009).  Indeed, despite the burden typically imposed in instances of voluntary cessation, "government actors in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith because they are public servants, not self-interested private parties. Without evidence to the contrary, [the Fifth Circuit] assume[s] that formally announced changes to official governmental policy are not mere litigation posturing." *Id.*; *see also, e.g.*, *People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 918 F.3d 151, 157–59 (D.C. Cir. 2019) (recognizing that an unambiguous representation by an agency official would be entitled to presumption of regularity and could satisfy burden for voluntary cessation purposes); *Troiano v. Supervisor of Elections in Palm Beach Cnty.*, 382 F.3d 1276, 1283 (11th Cir. 2004) ("[W]hen the defendant is not a private citizen

but a government actor, there is a rebuttable presumption that the objectionable behavior will *not* recur.").

Plaintiffs have provided no basis to suggest that the rescission of the vaccine requirement is pretextual or that the same or a substantially similar requirement will recur. On the contrary, Defendants have gone beyond what was required by Congress in the NDAA, for example, requiring the records of current service members who sought an exemption to be updated. Plaintiffs provide no evidence that the challenged vaccine requirement will be reinstated, that they will once again be subject to that requirement, or that any accommodation they seek regarding a substantially similar new requirement would be denied. Without direct evidence to the contrary, "it is remote, and indeed unrealistically speculative, that these defendants will ever again expose the plaintiffs to the claimed injury that prompted this lawsuit. The very process of the enactment of [the new law] by the state legislature and governor, combined with the presumption of good faith that we afford government actors, overcomes concerns of voluntary cessation." *Amawi v. Paxton*, 956 F.3d 816, 821 (5th Cir. 2020). For these reasons, Plaintiffs cannot overcome the presumption that the NDAA and rescission memorandum moot this case. The "'challenged practice'" has been "discontinued," and "a live controversy no longer exists." *Freedom From Religion Foundation*, 2023 WL 565082, at *5.

## IV.    The Capable-of-Repetition-Yet-Evading-Review Exception Does Not Apply.

The mootness exception for issues capable of repetition yet evading review does not apply here for similar reasons. Under that exception, cases that would otherwise be moot are saved from mootness "if '(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again.'" *Empower Texans, Inc. v. Geren*, 977 F.3d 367, 370 (5th Cir. 2020) (quoting *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016)). This exception applies "only in exceptional situations." *Id.* (quoting *Kingdomware*, 579 U.S. at 170). Plaintiffs—as the party

seeking to assert the exception—bear the burden of showing that it applies.  *See id.*

Plaintiffs summarily assert that "because the vaccine mandate was rescinded during the pendency of this lawsuit, the first element is satisfied."  ECF No. 274 at 7.  To the contrary, the mere fact that a challenged action ends "during the pendency of [a] lawsuit," *id.*, does not render that action "too short to be fully litigated," *Geren*, 977 F.3d at 370 (citation omitted). The entire mootness doctrine would be rendered obsolete if that were the standard.  Indeed, mootness is *only* relevant when the challenged action ends "during the pendency of the lawsuit."  ECF No. 274 at 7.  Plaintiffs thus fail to establish their burden on this first element of the exception.

Nor could Plaintiffs have carried that burden regardless.  The relevant inquiry under the evading-review prong is "whether 'the challenged activity is *by its very nature short in duration,* so that it could not, or probably would not, be able to be adjudicated while fully live.'"  *Pharmachemie B.V. v. Barr Lab'ys, Inc.*, 276 F.3d 627, 633 (D.C. Cir. 2002) (quoting *LaRouche v. Fowler,* 152 F.3d 974, 978 (D.C. Cir. 1998)); *see also, e.g., Bayou Liberty Ass'n, Inc. v. U.S. Army Corps of Eng'rs*, 217 F.3d 393, 399 (5th Cir. 2000) (considering whether the type of action challenged was "*inherently* capable of evading review" (emphasis added)).  A vaccination requirement is, by its nature, not short in duration.  *Cf. Moore v. Hosemann*, 591 F.3d 741, 744 (5th Cir. 2009) ("Election controversies are paradigmatic examples of cases that cannot be fully litigated before the particular controversy expires.").

Plaintiffs make an inapt comparison between the DoD's decision to add COVID-19 to the list of required vaccinations and the Governor of New York's COVID-19 lockdown orders.  ECF No. 274 at 7 (citing *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020)).  But Plaintiffs' attempted comparison only underscores the differences between a vaccination requirement and the types of challenged actions that are "inherently capable of evading review."  *Bayou Liberty Ass'n, Inc.*, 217 F.3d at 399.  In particular, the Supreme Court in *Roman Catholic Diocese of Brooklyn* held that the case was not moot because the "[t]he Governor [of New York] regularly changes the [COVID-19

16

threat] classification of particular areas without prior notice," including eight times within a month-long period. 141 S. Ct. at 68. Here, in contrast, the vaccination mandate lasted approximately a year and a half, and ended only when—in Plaintiffs' words—"Congress ordered" Defendants "to rescind the [vaccination] mandate." ECF No. 274 at 5. Thus, the vaccination requirement is not the kind of action that is "in its duration too short to be fully litigated prior to cessation or expiration." *Geren*, 977 F.3d at 370 (citation omitted).

Nor do Plaintiffs present any evidence that they will "be subject to the same action again." *Id.* (citation omitted). To establish such evidence, Plaintiffs "must show either a 'demonstrated probability' or a 'reasonable expectation'" that they will be subject to the same challenged COVID-19 vaccination requirement again. *Libertarian Party v. Dardenne*, 595 F.3d 215, 217 (5th Cir. 2010) (quoting *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002)). Yet Plaintiffs argue only that the NDAA does not expressly prohibit the reinstatement of "a new mandate" in the future. ECF No. 274 at 8. This speculation cannot carry Plaintiffs' burden. "A 'mere physical or theoretical possibility' is not sufficient to satisfy this prong of the exception." *Libertarian Party*, 595 F.3d at 217 ((quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)). "At most, [Plaintiffs'] evidence shows that the Secretary [might] have an opportunity to act in the same allegedly unlawful manner in the future; however, it does not show a reasonable probability that the Secretary will act in that manner if given the opportunity." *Id.*; *see also Am. Bar Ass'n*, 636 F.3d at 647 ("It does not matter that the [agency] might hereafter . . . promulgate *new* rules" because "[t]hese are merely hypothetical possibilities," and "*possibilities* regarding regulations and enforcement policies that do not presently exist" are "not enough to give rise to a live dispute."); *see also Lopez v. City of Houston*, 617 F.3d 336, 340 (5th Cir. 2010) (requiring more than "merely a theoretical possibility" that the allegedly wrongful conduct would reoccur).

Plaintiffs' speculation about the uncertain future of COVID-19 is similarly insufficient to justify excepting this case from the mootness doctrine. *See* ECF No. 274 at 8 (alleging that

"Defendants may issue a new mandate if they deem the risk of COVID-19 transmission too high"). Indeed, the Fifth Circuit has already explained that "no one knows what the future of COVID-19 holds" and it is thus "speculative, at best, that the [government] might reimpose [a particular COVID-19] restriction or a similar one." *Spell*, 962 F.3d at 180 (holding moot a challenge to Louisiana's rescinded stay-at-home orders, especially given that "[t]he trend in Louisiana has been to reopen the state, not to close it down"); *see also Long v. Jayton-Girard Indep. Sch. Dist.*, No. 5:21-CV-111-H, 2021 WL 7906835, at *4 (N.D. Tex. Sept. 3, 2021) (holding moot a challenge to school district's rescinded mask mandate because "the mere possibility of COVID-19 worsening or COVID-19 policies being re-imposed is insufficient to satisfy the 'reasonable expectation' requirement of the second prong"). Thus, Plaintiffs' speculation that DoD might reimpose a COVID-19 vaccination mandate in the future does not exempt this case from mootness.

Even if the military were to subject Plaintiffs to a *new* COVID-19 vaccination requirement, there would be no "reasonable expectation" that any such requirement would be "the same" as the now-rescinded, challenged COVID-19 vaccination requirement. *Libertarian Party*, 595 F.3d at 217. If DoD or the Navy were to impose a different vaccination requirement—for example, one applicable to service members who are about to deploy to a particular location—then any RFRA challenge to that policy, and to the imposition of discipline for noncompliance with such a requirement, would raise different issues than in this case. In that circumstance, even if Plaintiffs themselves were subject to a new or different requirement in the future, "'the same parties'" would not be "'engag[ing] in litigation over the same issues'"—a precondition for the capable-of-repetition exception to apply. *Senate Permanent Subcomm. on Investigations v. Ferrer*, 856 F.3d 1080, 1088 (D.C. Cir. 2017)(citation omitted).

Plaintiffs fail to establish either that the vaccination requirement is "in its duration too short to be fully litigated prior to cessation or expiration," or that there exists any "reasonable expectation

that [they will] be subject to the same [challenged COVID-19 vaccination requirement] again.'" *Geren*, 977 F.3d at 370.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' complaint as moot.

Dated: February 6, 2023                      Respectfully submitted,


BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Branch Director
Federal Programs Branch

*/s/ Andrew E. Carmichael*
ANDREW E. CARMICHAEL (VA Bar. No. 76578)
AMY E. POWELL
Senior Trial Counsel
STUART J. ROBINSON
Senior Counsel
ZACHARY A. AVALLONE
COURTNEY D. ENLOW
LIAM C. HOLLAND
CASSANDRA M. SNYDER
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 514-3346
Fax: (202) 616-8470
Email: Andrew.e.carmichael@usdoj.gov

*Counsel for Defendants*