## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| **U.S. NAVY SEALs 1-3**; on behalf of themselves and all others similarly situated; **U.S. NAVY EXPLOSIVE ORDNANCE DISPOSAL TECHNICIAN 1**, on behalf of himself and all others similarly situated; **U.S. NAVY SEALS 4-26**; **U.S. NAVY SPECIAL WARFARE COMBATANT CRAFT CREWMEN 1-5**; and **U.S. NAVY DIVERS 1-3**,<br><br>    Plaintiffs,<br><br> v.<br><br>**LLOYD J. AUSTIN, III**, in his official capacity as United States Secretary of Defense; **UNITED STATES DEPARTMENT OF DEFENSE**; **CARLOS DEL TORO**, in his official capacity as United States Secretary of the Navy,<br><br>    Defendants. | Case No. 4:21-cv-01236-O |

## PLAINTIFFS' RESPONSE IN OPPOSITION
## TO DEFENDANTS' ASSERTION OF MOOTNESS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. iii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 2

I.    This Case is Not Moot Because the Class Members Can Still Obtain Relief and Have A Concrete Interest in the Outcome. ........................................................................ 2

    A.    Navy policies harming the class members, including some the Court preliminarily enjoined Defendants from enforcing, are still in effect. ............................................. 3

    B.    The Secretary's January 10, 2023 Memorandum creates a de facto COVID-19 vaccine mandate that is presently causing injury. ..................................................... 6

II.    "Assignment, Deployment, and Other Operational Decisions" Considering Vaccination Status Without a Legally Sufficient Accommodation Process Are Challenged by Plaintiffs and Remains a Live Controversy. ................................................................ 12

III.    Even if Defendants Had Ceased All Challenged Conduct, the Voluntary Cessation Doctrine Applies. ......................................................................................................... 14

IV.    Defendants' Conduct Is Capable of Repetition Yet Evades Review. ............................ 17

CONCLUSION ................................................................................................................... 19

## TABLE OF AUTHORITIES

**Cases**

*Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013) .............................................................. 2

*Alvarez v. Smith*, 558 U.S. 87 (2009) ........................................................................... 2

*Austin v. U. S. Navy Seals 1-26*, 142 S. Ct. 1301 (2022) ............................................... 9

*Bostock v. Clayton Cnty.,* 140 S. Ct. 1731 (2020) ........................................................ 13

*Cath. Leadership Coal. of Texas v. Reisman* 764 F.3d 409, (5th Cir. 2014) ................. 17

*Chafin v. Chafin*, 568 U.S. 165 (2013) .......................................................................... 2

*City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 (1982) .................................. 14

*DeJohn v. Temple Univ.*, 537 F.3d 301 (3d Cir. 2008) ................................................. 16

*Elrod v. Burns*, 427 U.S. 347 (1976) ............................................................................ 7

*Empower Texans, Inc. v. Geren*, 977 F.3d 367 (5th Cir. 2020) .................................... 18

*F.A.A. v. Cooper,* 566 U.S. 284 (2012) ......................................................................... 14

*Fed. Election Comm'n v. Wisconsin Right To Life, Inc.*, 551 U.S. 449 (2007) ............. 17

*First Nat'l Bank of Bos. V. Bellotti*, 435 U.S. 765 (1978) ............................................. 18

*Freedom From Religion Found., Inc. v. Abbott*, No. 21-50469, 2023 WL 565082 (5th Cir. Jan.

   27, 2023) ................................................................................................................. 6

*Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.*, 528 U.S. 167 (2000) ......... 2, 15

*Honig v. Doe*, 484 U.S. 305 (1988) .............................................................................. 18

*J. T. v. District of Columbia*, 983 F.3d 516 (D.C. Cir. 2020) ....................................... 15

*Jews for Jesus, Inc. v. Hillsborough Cnty. Aviation Auth.*, 162 F.2d 627 (11th Cir. 1998) ......... 16

*Kingdomware Tech., Inc. v. United States*, 136 S. Ct. 1969 (2016) .............................. 18

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656 (1993) ........................................................................................................................ 12

*Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279 (5th Cir. 2012) ............... 7, 12

*Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701 (2007) ...................... 16

*Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020) .................................. 18, 19

*Southern Pac. Terminal Co. v. ICC*, 219 U.S. 498 (1911) .......................................................... 18

*Speech First, Inc. v. Fenves*, 979 F.3d 319, 327 (5th Cir. 2020), *as revised* (Oct. 30, 2020)... 6, 17

*Tandon v. Newsom*, 141 S. Ct. 1294 (2021) ................................................................................ 15

*Tanzin v. Tanvir,* 141 S. Ct. 486 (2020) ...................................................................................... 13

*Tucker v. Gaddis*, 40 F.4th 289 (5th Cir. 2022) .......................................................................... 16

*Webman v. Fed. Bureau of Prisons,* 441 F.3d 1022 (D.C. Cir. 2006) .......................................... 14

*Whitmore v. Arkansas*, 495 U.S. 149 (1990) ................................................................................ 2

**Statutes**

42 U.S.C. § 2000bb-1(c) ....................................................................................................... 13, 14

**Other Authorities**

Heather Mongilio, *Navy Nearing 1,500 COVID-19 Separations*, USNI News (Jul. 27, 2022) ..... 5

Heather Mongilio, *Pentagon Unclear How Military Would Manage End of Mandatory COVID-19 Vaccines*, USNI NEWS (Dec. 7, 2022) ......................................................................... passim

https://web.archive.org/web/20220526022338/https://www.navy.mil/US-Navy-COVID-19-Updates/ ................................................................................................................................ 5

Meghann Myers, *Four weeks later, military still waiting on post-vaccine guidance*, MILITARY TIMES (Feb. 9, 2023) ........................................................................................................ 3, 13

NAVADMIN 093/22, U.S NAVY COVID-19 STANDARDIZED OPERATIONAL
    GUIDANCE 6.0 (Apr. 11, 2022)................................................................................. 7

Oral Argument, *Doster v. Kendall*, No. 22-3497 (6th Cir. Jul. 25, 2022) ..................................... 6

Oral Argument, *U.S. Navy SEALs 1-26 v. Biden,* No.  22-10077 (5th Cir. Feb. 6, 2023)........ 1, 11

*Suspend*, Merriam-webster.com Dictionary, https://www.merriam-
    webster.com/dictionary/suspend (last accessed Feb. 10, 2023)................................................. 5

*U.S. Navy COVID-19 Updates*, https://www.navy.mil/Resources/COVID-19-Updates/ .............. 5

## INTRODUCTION

Defendants have failed to satisfy their burden to demonstrate that this case is moot.[1] The plain language of Defendant Secretary of Defense's January 10, 2023 Memorandum repealing the August 24, 2021 COVID-19 vaccination mandate confirms that the rescission was in name only, and Plaintiffs and the Navy Class (collectively "Plaintiffs") continue to suffer the very harms they presented to this Court at the outset of this litigation, minus only the danger of being immediately separated from service for non-compliance with the mandate. Within the very document that cancels the DoD mandate, a de facto vaccination mandate remains, leaving the door wide open for commanders to continue considering vaccination status "in making deployment, assignment, and other operational decisions," something the Navy has previously argued includes virtually every aspect of the class members' careers, while completely eliminating the opportunity for class members to continue asserting their religious objections. Pls.' App. 0003. Moreover, contrary to Defendants' assertions, the Navy's other applicable discriminatory policies remain in effect. Thus, the coercion and discrimination that the class has suffered since 2021 has not ended, and the Navy's farcical process for religious accommodation requests has gone from a 50-step process ending in denial to a "zero-step process," as Judge Duncan recently pointed out at oral argument in the Fifth Circuit. Without the continued protection of the injunctive relief the pursuit of a permanent injunction and declaratory judgment, the class members' religious liberty rights continue to be violated, and many class members will eventually be separated from the Navy because they will be ineligible to meet milestones or obtain required training.

---

[1] The same day Defendants filed the instant motion, Defendants' appellate counsel declined to tell the Fifth Circuit that they contend the entire case was moot. *See* Oral Argument at 30:18-42, 37:13-47, *U.S. Navy SEAL 1-26 v. Biden,* No. 22-10077 (5th Cir. Feb. 6, 2023), *available at* https://www.ca5.uscourts.gov/OralArgRecordings/22/22-10077_2-6-2023.mp3.

## ARGUMENT

**I.   This Case is Not Moot Because the Class Members Can Still Obtain Relief and Have A Concrete Interest in the Outcome.**

Article III of the Constitution grants courts the authority to adjudicate "Cases" and "Controversies." An "actual controversy" must exist not only "at the time the complaint is filed," but through "all stages" of the litigation. *Alvarez v. Smith*, 558 U.S. 87, 92 (2009). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). "A defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.*, 528 U.S. 167, 190 (2000). Otherwise, "in a lawsuit brought to force compliance, it is the plaintiff's burden to establish standing by demonstrating that, if unchecked by the litigation, the defendant's allegedly wrongful behavior will likely occur or continue, and that the 'threatened injury [is] certainly impending.'" *Id.* (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). While the rescission of the explicit mandate is certainly a development welcomed by the class members and does address some of the harm they were suffering, that does not mean the case is moot. Rather, "a case becomes moot only when it is *impossible* for a court to grant *any effectual relief whatever* to the prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (citation omitted) (emphasis added). "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Id.* (citation omitted).

While Defendants rest their assertion of mootness on the basis that the "NDAA is intervening legislation that terminates the [Secretary's] vaccination requirement," Dkt. 222 at 8,

thereby rendering "mootness . . . 'the default,'" *id.* at 7, Defendants' discriminatory actions continue. The Executive Branch believes that Congress's direction to rescind the mandate was a "mistake,"[2] and nothing in the NDAA prevents Defendants from instituting a new mandate. Defendants apparently have no desire to ensure Plaintiffs' religious liberties are imminently protected, as four weeks later, "the Pentagon's personnel and readiness office has yet to complete the requested paperwork to make the change a reality for thousands of unvaccinated troops in limbo."[3] And if the class members had any hope of returning to the operational fold with the rescission of the formal mandate, such hopes were dashed when Defendant Secretary Del Toro stated in December that the repeal of the mandate will "unquestionably . . . create almost two classes of citizens in our services . . . Those that can't deploy and those that can deploy."[4]

A live controversy exists because Plaintiffs are suffering the same irreparable injury for the same reasons and based on policies that existed prior to the Secretary's repeal of the vaccine mandate. Plaintiffs maintain a significant interest in obtaining relief from this Court to ensure that Defendants permanently comply with their obligations under RFRA and the First Amendment. Thus, this case is not moot.

### A.  Navy policies harming the class members, including some the Court preliminarily enjoined Defendants from enforcing, are still in effect.

Defendants' claim that the rescission of the mandate resolved all remaining controversy is false according to the face of the current DoD and Navy policies. The Memorandum issued on January 10, 2023, which notes that the DoD mandate "has helped ensure the vaccination of *many*

---

[2] Heather Mongilio, *Pentagon Unclear How Military Would Manage End of Mandatory COVID-19 Vaccines*, USNI NEWS (Dec. 7, 2022), https://news.usni.org/2022/12/07/pentagon-unclear-how-military-would-handle-end-of-mandatory-covid-19-vaccines.
[3] Meghann Myers, *Four weeks later, military still waiting on post-vaccine guidance*, MILITARY TIMES (Feb. 9, 2023), https://www.militarytimes.com/news/your-military/2023/02/09/four-weeks-later-military-still-waiting-on-post-vaccine-guidance/.
[4] Mongilio, *supra* n.2.

*Americans*," expressly states that "[o]ther standing Departmental policies, procedures, and processes regarding immunizations remain in effect. These include the ability of commanders to consider, as appropriate, the individual immunization status of personnel in making deployment, assignment, and other operational decisions, including when vaccination is required for travel to, or entry into, a foreign nation." Pls.' App. 0002 (emphasis added), 0003. ALNAV 009/23, which was issued on January 23, expressly "cancel[s]" only one Navy policy: ALNAV 062/21, the Navy mandate. Defs. App. 004. It further states that "[w]e will continue to consider medical readiness, of which vaccination plays a key role, in all appropriate settings." *Id.* And NAVAMIN 005/23, the only other post-rescission policy from the Navy that Plaintiffs are aware of, "cancel[s]" only one policy: NAVADMIN 190/21, the Navy's mandate and reporting policy. Defs. App. 002. NAVADMIN 005/23 references NAVADMINs 225/21 and 256/21 (both of which were part of the Court's preliminary injunctions), as well as NAVADMINs 283/21 and 083/22, but *does not cancel them*. Defs. App. 002. Thus, it is apparent that the Navy intends for these policies to remain in effect. Indeed, NAVADMIN 005/23 provides only that "[a]ll commands will immediately suspend *any new adverse administrative actions* associated with refusing the COVID-19 vaccine as described in [NAVADMINs 190/21, 225/21, 256/21, 283/21, and 083/21]." Defs.' App. 001-02 (emphasis added).

"Adverse administrative actions" are quite narrow according to the Navy, and the Navy has already argued that much of the discriminatory treatment of the class members is not "adverse action" as this Court used the term in the preliminary injunction. *See* Dkt. 110; Dkt. 171. Nor does this new NAVADMIN speak to what will happen to "adverse administrative actions" already begun. NAVADMIN 005/23 also states that more guidance is yet to come, making Defendants' motion premature. *See* Defs. App. 002 ("Updated operational guidance will be promulgated in a

follow-on standard operational guidance serial. . . Additional detailed guidance regarding implementation of this policy will be promulgated via future NAVADMIN."). And finally, NAVADMIN 005/23 states that "[a]ll commands will immediately *suspend* any new adverse administrative actions associated with refusing the COVID-19 vaccine as described in [225/21 and 256/21]." *Id.* (emphasis added). Suspension of new adverse administrative actions is very different from permanent relief or cancelling the policies. To "suspend" is to "to cause to stop temporarily," "to set aside or make temporarily inoperative," or "to defer to a later time on specified conditions."[5]

Finally, the new DoD and Navy policies made the accommodation process *worse*: DoD and Navy state their intention to continue using vaccination status to make a wide range of decisions involving the class members, yet now will no longer consider requests for religious accommodation. *See* Pls.' App. 0002 ("The Secretaries of the Military Departments will further cease any ongoing reviews of current Service member religious . . . accommodation requests solely for exemption from the COVID-19 vaccine"); Defs, App. 004 ("the Services shall cease any ongoing review of current Service Members' religious . . . accommodation requests solely for exemption from the COVID-19 vaccine"). Defendants have made no representations as to how they intend to remedy their "theatr[ical]"religious accommodation process that resulted in the denial of every religious accommodation request related to the vaccine mandate,[6] and instead, cancelled it altogether. Dkt. 66. Indeed, Defendants have made clear that a de facto mandate is in

---

[5] *Suspend*, Merriam-webster.com Dictionary, https://www.merriam-webster.com/dictionary/suspend (last accessed Feb. 10, 2023).

[6] The Navy had not reported granting any religious accommodations before this Court entered preliminary injunctive relief. As of the last available data from November 2022, the Navy claimed to have granted a handful of religious accommodations, *see U.S. Navy COVID-19 Updates*, https://www.navy.mil/Resources/COVID-19-Updates/, but those accommodations were granted only to servicemembers about to retire, *see* Heather Mongilio, *Navy Nearing 1,500 COVID-19 Separations*, USNI News (Jul. 27, 2022), https://news.usni.org/2022/07/27/navy-nearing-1500-covid-19-vaccine-separations. That explanatory note was removed from the Navy's website several months ago. *See* https://web.archive.org/web/20220526022338/https://www.navy.mil/US-Navy-COVID-19-Updates/.      Several Plaintiffs were also close to retirement yet did not receive such accommodation.

place that allows commanders to continue considering vaccination status "in making deployment, assignment, and other operational decisions" now without any process for religious accommodations. Pls.' App. 0003. Based on Defendants' previous conduct and their admissions in a similar case involving the Air Force in the Sixth Circuit, it is likely they will use these broad categories to discriminate against and coerce Plaintiffs and treat them as second-class citizens who are prevented from advancing in their military careers.[7]

Because these discriminatory policies remain in effect and continue to cause irreparable injury to Plaintiffs, *See* Pls.' App. 0087-88; 0091-92; 0095-96; 0103-109; 0119-20; 0125-27; 0132-33; 01366-67; 0140-41; 0144-54, the case is not moot. *Speech First, Inc. v. Fenves*, 979 F.3d 319, 327-29 (5th Cir. 2020), *as revised* (Oct. 30, 2020) (rejecting mootness where public university repealed some, but not all, objectionable policies in response to litigation). The Memorandum does not give Plaintiffs all the relief sought by this litigation. Dkt. 222 at 8-9; *cf. Freedom From Religion Found., Inc. v. Abbott*, No. 21-50469, 2023 WL 565082, at *4 (5th Cir. Jan. 27, 2023) (vacating only permanent injunctive relief as moot where speech forum was closed so no further First Amendment injury could occur).

**B.   The Secretary's January 10, 2023 Memorandum creates a de facto COVID-19 vaccine mandate that is presently causing injury.**

The Memorandum expressly allows commanders to continue to consider vaccination status "in making deployment, assignment, and other operational decisions." Pls.' App. 0002. These broad, undefined categories of decisions cloaked as impenetrable military judgments have already resulted in ongoing irreparable injury to Plaintiffs' religious liberty rights. *See* Dkt. 140 at 25-26

---

[7] During oral argument in *Doster*, the Court asked, "Is it the Executive Branch's position that you don't have to worry about RFRA until somebody sues?" Defendant's counsel responded, "More or less, yes. RFRA itself is not a record review statute and does not require the government to take any particular process." Oral Argument at 18:38-18:55, *Doster v. Kendall*, No. 22-3497 (6th Cir. Jul. 25, 2022).

6

(citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality op.) and *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012)). Continued application of a de facto mandate continues this injury and also irreparably damages Plaintiffs' careers. *See* Pls.' App. 0087-88; 0091-92; 0095-96; 0103-09; 0119-20; 0125-27; 0132-33; 0136-67; 0140-41; 0144-54. As explained below, the general categories of harm cited in Plaintiffs' First Amended Complaint, Dkt. 84, carry forward today and are hardly speculative. The de facto mandate is preventing Plaintiffs from ever returning to an operational status, which directly harms their military career and inflicts coercive pressure on them to take the vaccine. *See* Pls.' App. 0087-88; 0091-92; 0095-96; 0103-09; 0119-20; 0125-27; 0132-33; 0136-67; 0140-41; 0144-54.

The evidence shows that Plaintiffs were assigned demeaning tasks to coerce compliance with the vaccine requirement, including collecting trash and picking the lint out of Velcro, Dkt. 97 at 0007 and 0015; Dkt. 119 at 0053 and 0084. Class members are now exclusively assigned to non-operational roles pursuant to still-effective Navy policy NAVADMIN 093/22[8] and continue to experience the same coercion and damage to their religious liberty rights, not to mention their careers.

SEAL 22 is one of three unvaccinated Navy Special Warfare personnel whose non-operational role is to complete random tasks assigned within his command that are not commensurate with his highly specialized training. Pls.' App 0101-08. During the week of February 6, 2023, the Trident cell SEAL 22 works for traveled to a cold weather training trip to Montana that he was not allowed to attend due to his unvaccinated status. Pls. App. 0107. As a

---

[8] NAVADMIN 093/22, U.S NAVY COVID-19 STANDARDIZED OPERATIONAL GUIDANCE 6.0 (Apr. 11, 2022), https://www.mynavyhr.navy.mil/Portals/55/Messages/NAVADMIN/NAV2022/NAV22093.txt?ver=ruF6V-tpipc3-hA0KIHZ6g%3D%3D.

result, SEAL 22 remained at his command and was tasked with moving buildings and transporting laptops, which is well-below his rank as a E-7. Pls.' App. 0107-08.

SWCC 5 continues to be perpetually sidelined to a non-operational "shore duty" training command due to his unvaccinated status. Pls.' App. 0133. The individual who authorizes orders for SWCCs to attach and detach from units has stated that he is unable to provide SWCC 5 and other unvaccinated members with orders to operational units. *Id; see also* Pls.' App. 0130. As a result, SWCC 5's career is at a standstill, and he can only be transferred to another non-operational unit, which halts SWCC 5's ability to continue to promote through the Navy. *Id*. Because of the Navy's discriminatory action of placing SWCC 5 in a non-operational status and removing him from operational duties, SWCC 5 is now ranked significantly behind his peers within his group of enlistment. *Id*.

Class member and Elite Surface Warfare Officer Lieutenant Commander select Levi Beaird is currently stashed in a non-operational command with no end in sight due to his unvaccinated status. *See* Pls.' App. 0144-54. The government-issued housing that should have only been a temporary measure is woefully inadequate for the longterm needs of his family of six, yet he cannot go anywhere else. Pls.' App. 0153-54. Lieutenant Commander select Beaird is presently faced with the threat of having to repay the costs of his military education and bonus pay that he was awarded back in 2017. Pls.' App. 0151. At no point has anyone in his command ever reached out to him to explain the reason why his bonus incentive payments were suddenly halted in November 2022. Pls.' App. 0154. The irreparable injury being imposed on Lieutenant Commander select Beaird continues today despite the Secretary's repeal of the August 24, 2021 mandate. *Id.*

Sidelining Sailors like SEAL 22, SWCC 5, and Lieutenant Commander select Beaird is the Navy's *modus operandi* for unvaccinated service members. Until Plaintiffs have a meaningful

opportunity to participate in Naval activities in the same way as vaccinated sailors do, unless the Navy can meet their exacting burden under RFRA, the Navy's mandate is not truly repealed.[9] *See, e.g.*, Dkt. 97 at 10, 18. Navy-wide, Plaintiffs are presently serving in non-operational roles, Pls.' App. 0080, 0088, 0092, 0096, 0104, 0120, 0126, 0133, 0137, 0141, 0147, and continue to be subjected to vaccine coercion under the threat of being rejected from necessary promotions and assignments that are the gateway to maintaining their careers in the Navy. Pls.' App. 0087-88; 0091-92; 0095-96; 0103-09; 0119-20; 0125-27; 0132-33; 0136-67; 0140-41; 0144-54. Plaintiffs are also being denied special duty pay that is the expected and well-deserved benefit of being among the world's elite class of combat warriors. *See, e.g.,* Pls.' App. 0147.

Despite this Court's injunctive relief, the continuing discriminatory actions will achieve the intended result of these servicemembers being involuntarily separated from service. Simply because the Navy has been foreclosed from overtly punishing and formally issuing adverse administrative and discharge paperwork to the Plaintiffs for seeking religious accommodations from the vaccine mandate does not account for the "deployment, assignment, and other operational decisions" that have been and will continue to be intentionally made to irreversibly damage the Plaintiffs' careers as reprisal for their vaccination status. Defendants have taken an extraordinarily broad view of what constitutes an "operational decision," and as stated above, there is sufficient evidence demonstrating that they will seek to impose that broad view to continue punishing servicemembers for their religious beliefs. *See Austin v. U.S. Navy Seals 1-26*, 142 S. Ct. 1301, 1305–06 (2022) (Alito, J., dissenting) ("[T]he terms seemingly allow the Navy to do just about anything it wants short of punishing [Plaintiffs] and drumming them out of service."). Indeed,

---

[9] With the repeal of the mandate also came the repeal of the COVID-19 vaccine religious accommodation process. In fact, without Plaintiffs' knowledge or consent, their religious accommodation requests (RAR) have now simply disappeared from their personnel accounts, as if their RAR, or this lawsuit, never happened. *See e.g.,* Pls.' App. 0123.

Plaintiffs have already filed a motion before this Court that remains pending, disputing Defendants' interpretation of both what constitutes a deployment, assignment, or operational decision and what constitutes an adverse action. *See* Dkt. 95. Thus, absent continued litigation in this Court, Defendants will continue ignoring their obligations under RFRA and the First Amendment. Without the protection of this Court's injunctive relief while the impact of the mandate's recission is understood as the Navy continues to delay additional guidance, Plaintiffs will suffer irreparable injury merely because they sought protection for their religious beliefs. And absent permanent relief, the Navy will no doubt continue its present course of discriminatory treatment.

Defendants' arguments presume that this is merely a case about records and personnel files.[10] But Plaintiffs have demonstrated that it is much more. This case challenges the Navy's treatment of sailors with sincere religious beliefs against COVID-19 vaccination as second-class citizens simply because they requested accommodation of those beliefs. Those sailors want to continue to serve in the Navy and receive equal opportunity for promotions, assignments, benefits, and special pay as their vaccinated peers, unless the Navy can meet its exacting burden under RFRA to accommodate individual service members' religious beliefs. But so long as Defendants treat religious service members as a separate "class[]" of the military, the constitutional injury is not rectified, regardless of the existence of a formal mandate.[11] Defendants' assurances that

---

[10] Defendants claim that "ten of the 35 pseudonymous Plaintiffs had previously chosen to withdraw their religious accommodation requests and voluntarily separate or retire from the Navy." Dkt. 222 at 6. Defendants' attempt to characterize these SEALs as recanting their religious beliefs is factually incorrect. Some of the original Plaintiffs have indeed retired or separated due to completing their service requirement or for medical reasons, but to the best of Plaintiffs' counsel's knowledge, none withdrew their RAR before retiring. If withdrawing their RAR was part of the separation or retirement process, those Plaintiffs were unaware and their RA was never discussed during that process. *See e.g.* Pls.' App. 0083-84; 0099-100.

[11] Mongilio, *supra* n.2.

Plaintiffs "will not be discharged based on previously refusal to comply[12] with the vaccination requirement," that "no new adverse actions for declining COVID-19 vaccination will be issued to them," and that "any preexisting adverse action issued based solely on refusal to comply with the vaccination requirement—if there is any—will be removed from their records" are the bare minimum actions necessary to rectify Defendants' discriminatory actions. And while all of this is a step in the right direction, as demonstrated above, those assurances do not ultimately solve the "real and immediate threat" of constitutional injury the Plaintiffs are presently suffering.

For these reasons, Plaintiffs maintain a cognizable interest in pursuing their claims in this Court to protect themselves from suffering ongoing harm based on their religious objections to the COVID-19 vaccine. Neither the Memorandum nor NAVADMIN 005/23 take any action to correct the detrimental career impacts that have been and continue to be suffered by Plaintiffs because of the sham religious accommodation process implemented by Defendants that led to the denial of every religious accommodation request submitted by Plaintiffs. In fact, as Judge Duncan implied during the February 6, 2023, oral argument at the Fifth Circuit, in which the Court thoroughly addressed the issue of mootness, the sham process is even more damaging now that the Navy's fifty-step process is a zero-step process[13] because "the Secretaries of the Military Departments will further cease any ongoing reviews of current Service member religious . . . accommodation requests solely for exemption from the COVID-19 vaccine or appeals of denials of such requests." Pls.' App. 0002.

---

[12] Defendants' framing of the Plaintiffs and class members as service members that "refus[ed] to comply with the vaccine requirement" is further evidence of the animosity toward the Plaintiffs for their religious beliefs. Plaintiffs did not refuse to comply with the requirement, but rather, asked for an accommodation from that requirement to protect their constitutional right to freely exercise their religion in the Navy.

[13] Oral Argument at 29:33-29:37.

Thus, a live controversy still exists. Precedent from the Supreme Court and the Fifth Circuit hold that a case is not mooted if the challenged conduct continues after the repeal of an unconstitutional policy. *See Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 662 (1993) ("There is no mere risk that [Defendant] will repeat its allegedly wrongful conduct; it has already done so."); *Opulent Life*, 697 F.3d at 286 (holding a case was not moot where a defendant "doubled down" on its challenged action after repealing a policy). That is exactly what is happening here. Defendants have doubled down on their wrongful conduct by repealing the vaccine mandate in name only, denying Plaintiffs any avenue to seek a religious accommodation based on vaccination status,[14] and continuing to take adverse actions against Plaintiffs that will ultimately accomplish the same result as the vaccine mandate: forcing all servicemembers with religious objections to the COVID-19 vaccine out of the Navy. To rectify the previous harms and to prevent ongoing violations of RFRA and the First Amendment, Plaintiffs must obtain permanent relief from this Court.

## II.   "Assignment, Deployment, and Other Operational Decisions" Considering Vaccination Status Without a Legally Sufficient Accommodation Process Are Challenged by Plaintiffs and Remains a Live Controversy.

As demonstrated above and in the declarations submitted to this Court by Plaintiffs and class members, decisions regarding the operational status of service members are causing current harm in the form of lost promotions, threat of recoupment of expenses and bonuses, lack of training opportunity, and most importantly, constant coercion to become vaccinated to avoid a stalled career. *See* Pls.' App. 0087-88; 0091-92; 0095-96; 0103-09; 0119-20; 0125-27; 0132-33; 0136-37; 0140-41; 0144-54. Defendants argue that all travel-related concerns have been rectified with

---

[14] This lack of process makes any adverse actions taken against the Plaintiffs and lack of deployability even worse, as the Navy will not even *consider* requests for religious accommodation. Plaintiffs are thereby left with no avenue to protect their fundamental rights in the Navy and must rely on this Court.

the Department of Defense's new Force Health Protection Guidance. But this guidance is not Navy-specific, and in the very week that Defendants' motion was filed, SEAL 22 spent his time moving buildings because he was precluded from traveling with his Trident cell to Montana for cold weather training. Pls.' App. 0106-07. To date, the Navy has not issued any policies implementing NAVADMIN 005/23, and has similarly not canceled any policies pursuant to that guidance.[15] Any controversy regarding assignment, deployment, and operational decisions is far from speculative, as we presently know that Defendant Del Toro envisions "two classes" within the military and has merely only "suspend[ed] any new adverse actions associated with refusing the COVID-19 vaccine as described in [NAVADMIN 225/21 and 256/21]," NAVADMIN 005/23, to effectuate that intent.[16] And now, with no process to evaluate religious accommodation requests for the COVID-19 and the Navy's removal of religious accommodation requests ("RARs") from service members' Navy Standard Integrated Personnel System personnel accounts, there is no way for Plaintiffs to correct these harms outside the intervention of this Court. *See* Pls.' App. 0123.

Defendants also argue that any claim for monetary damages would be barred by sovereign immunity. But the Plaintiffs' complaint asserts claims under the Religious Freedom Restoration Act ("RFRA"), a "super statute." *Bostock v. Clayton Cnty.,* 140 S. Ct. 1731, 1754 (2020). RFRA provides that a "person whose religious exercise has been burdened in violation of this section may . . . *obtain appropriate relief against a government.*" 42 U.S.C. § 2000bb-1(c) (emphasis added). The Supreme Court has held that RFRA permits the recovery of monetary damages against government officers in their official capacities. *See Tanzin v. Tanvir,* 141 S. Ct. 486 (2020). The plain text of RFRA makes no distinction between government actors in their individual versus their official capacity in its waiver of sovereign immunity – simply "appropriate relief *against a*

---

[15] Myers, *supra* n.3.
[16] *See* Mongilio, *supra* n.2.

*government.*" 42 U.S.C. § 2000bb-1(c) (emphasis added). "Appropriate relief" does not change depending on the capacity of a government defendant. In *Tanzin*, the unanimous court stated that "[a] damages remedy is not just 'appropriate' relief as viewed through the lens of suits against Government employees. It is also the only form of relief that can remedy some RFRA violations . . . Given the textual cues just noted, it would be odd to construe RFRA in a manner that prevents courts from awarding such relief." *Tanzin,* 141 S. Ct. at 492 (emphasis in original). While the government indeed enjoys sovereign immunity, it has waived that immunity from money damages under RFRA. *See F.A.A. v. Cooper,* 566 U.S. 284, 291 (2012) ("Congress need not state its intent in any particular way," and the Supreme Court has "never required that Congress use magic words" to waive sovereign immunity as to money damages.). Defendants' reliance on a concurring opinion in *Webman* does not account for the *Tanzin* decision. *Webman v. Fed. Bureau of Prisons,* 441 F.3d 1022, 1028 (D.C. Cir. 2006) (Tatel, J. concurring).

Plaintiffs' challenge to discriminatory "deployment, assignment, and other operational decisions" based on vaccination status thus remains a live controversy this Court can address and through which the Court can provide meaningful relief to the class, whether by monetary damages, declaratory judgment, or permanent injunctive relief.

## III.   Even if Defendants Had Ceased All Challenged Conduct, the Voluntary Cessation Doctrine Applies.

Courts have long recognized that defendants cannot automatically moot a case simply by ending their unlawful conduct once sued. *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). "[I]f it did, the courts would be compelled to leave [t]he defendant[s] . . . free to return to [their] old ways." *Id.* Instead, because Defendants claim their "voluntary compliance moots a case" they "bear[] the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at

14

190. By Defendants' own admission, they voluntarily ceased at least *some* of the unlawful conduct at issue in this case. *See* Dkt. 222 at 15 (stating Defendants "have gone beyond what was required by Congress"). Defendants cannot argue both that they are going above and "beyond" to cure previous harms while at the same time maintain that every action they have taken was involuntarily forced by Congress. Congress only mandated that the current vaccine mandate be rescinded and did not prohibit Defendants from establishing a new mandate. The specifics for how that mandate was to be rescinded rested solely with Defendants, which distinguishes this case from the authorities cited by Defendants addressing situations where government actors lacked any unilateral authority over the challenged policy. *See, e.g.*, *J. T. v. District of Columbia*, 983 F.3d 516, 523 (D.C. Cir. 2020).

Although Defendants admit that they voluntarily ceased at least *some* of the challenged conduct, the only remaining issue is whether they have met the formidable burden of showing that the complained of conduct cannot recur. A simple review of Plaintiffs' evidence should allow this Court to quickly determine that Defendants do not satisfy this burden. Not only do Defendants retain the authority to reinstitute a new vaccine mandate at any time, but, as explained above, the very rescission document demonstrating de minimis compliance with the FY 2023 NDAA also institutes a de facto vaccine mandate–with no formal repeal, recission, or cancellation of two enjoined policies. This "authority to reinstate [the challenged policies] at any time" from officials "with a track record of 'moving the goalposts'" subjects Plaintiffs to a credible threat of widespread enforcement of Defendants' discriminatory vaccination requirements in the future. *Tandon v. Newsom*, 141 S. Ct. 1294, 1297 (2021). Defendants also continue to defend the merits of their mandate. *See* Mongilio, *supra* n.2; Pls.' App. 0003 ("The Department's COVID-19 vaccination efforts will leave a lasting legacy in the many lives we saved, the world-class Force

we have been able to field, and the high legal of readiness we have maintained . . ."); Defs.' App. 004 (COVID-19 vaccines have proven to be safe, effective, and life-saving. I am confident that our high vaccination percentage across the Department of the Navy has both saved lives, and prevented hospitalizations across our entire force."). And as discussed above, and as Secretary Del Toro admits, the rescission of the official mandate has only resulted in a de facto mandate which treats religious sailors as second-class citizens. Thus, the wrongful conduct alleged in this suit is reasonably likely to recur, and the voluntary cessation doctrine applies.

The fact that Defendants are government actors does not change the doctrine's application. When the government changes a law or policy in response to litigation, as here, the voluntary cessation doctrine prevents dismissal of a plaintiff's claim based on mootness. *See Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007) (finding voluntary cessation doctrine applied because although public school district suspended the offending policy, it vigorously defended the constitutionality of its race-based program, and did not deny that if the litigation was resolved in its favor it would resume using race to assign students); *Tucker v. Gaddis*, 40 F.4th 289, 293 (5th Cir. 2022) (holding a prison's changed policy did not moot a case where the prison gave no assurances that it would not repeat the challenged conduct); *DeJohn v. Temple Univ.*, 537 F.3d 301, 309-10 (3d Cir. 2008) (holding public university's policy change during litigation and continued defense of that policy on appeal did not moot case); *cf. Jews for Jesus, Inc. v. Hillsborough Cnty. Aviation Auth.*, 162 F.2d 627, 629-30 (11th Cir. 1998) (holding First Amendment claims against airport solicitation policy were moot because the change in policy came one month after the start of litigation, was based on "substantial deliberation" by the government and had been consistently applied for three years during the litigation).

16

Indeed, even if this Court applies the more relaxed standard it sometimes uses when the defendant is a government actor, the result is the same. This Court considers three factors when applying its more relaxed standard: "(1) the absence of a controlling statement of future intention [not to repeat the challenged policy]; (2) the suspicious timing of the change; and (3) the [governmental entity's] continued defense of the challenged polic[y]" after the supposedly mooting event. *Speech First,* 979 F.3d at 328 (holding that the government had engaged in only partial voluntary cessation because parts of the overbroad speech policy remained). These factors are easily satisfied here. First, Defendants have made no representations that they will *not* continue to discriminate against Plaintiffs based on their religious beliefs. In fact, their actions and statements demonstrate an intent to do just the opposite—specifically treating unvaccinated religious sailors as second-class citizens. Second, Defendants continue to defend the repealed policy and have publicly stated that the vaccine mandate was a lawful order at the time it was issued. Even under this Court's more relaxed standard, Plaintiffs' claims are not moot.

## IV.    Defendants' Conduct Is Capable of Repetition Yet Evades Review.

Even if the case were moot, a well-established exception permitting the Court to adjudicate the case is if the Defendants' conduct is capable of repetition yet evading review. *Fed. Election Comm'n v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 462 (2007). To fall within this exception, Plaintiffs must show "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Cath. Leadership Coal. of Texas v. Reisman*, 764 F.3d 409, 422 (5th Cir. 2014). Under the first element, a case evades review if its duration is too short to receive "complete judicial review," including review by the Supreme Court.

*First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765, 774 (1978); *see also Empower Texans, Inc. v. Geren*, 977 F.3d 367, 370 (5th Cir. 2020).

Here, the vaccine mandate was in effect for less than 18 months, a time period the Supreme Court has repeatedly held to be insufficient to obtain complete judicial review. *See, e.g., Kingdomware Tech., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016) (holding two years is too short); *First Nat. Bank*, 435 U.S. at 774 (holding 18 months is too short); *Southern Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911) (holding two years is too short). Further, the vaccine mandate at issue in this lawsuit is "inherently capable of evading review" because it involves a virus that the Navy's own commanders admit is constantly changing and a vaccine that has grown less and less effective against that virus over time. *See* Dkt. 210-1 at 10–13 (discussing the evolving nature of the COVID-19 virus and the effectiveness of vaccines). Thus, the first element is satisfied.

When analyzing the second element, courts are concerned with whether the conduct was "*capable* of repetition and not . . . whether the claimant had demonstrated that a reoccurrence of the dispute was more probable than not." *Honig v. Doe*, 484 U.S. 305, 318 n.6 (1988). Plaintiffs need not demonstrate with "mathematical precision" that they will be subject to the same illegal conduct; rather, they just need to show "a reasonable expectation" that the challenged action will reoccur. *Id.*  In *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020), the Supreme Court held that a church's First Amendment challenge to New York's COVID-19 lockdown orders was not moot because it was capable of repetition, yet evading review. The church "remain[ed] under a constant threat" that the government would reinstitute a lockdown in its area. *Id.* at 68. Because the challenged action was too short in duration to be fully litigated prior to cessation, and there was a reasonable expectation that the church would be subject to the same action in the future, the case was not moot.  *Id*. Plaintiffs have a reasonable expectation that the challenged action—

application of a vaccine mandate that violated their religious beliefs—will recur. The FY23 NDAA forced Defendants to rescind the 2021 mandate to be vaccinated against COVID-19. Yet, as explained above, Defendants implemented a de facto mandate in the very document that repealed the original mandate in name only. Defendants remain free to make decisions about sailors that will unlawfully harm their careers based on their vaccination status. Defendants provide no assurances that they will not continue to discriminate against Plaintiffs in violation of RFRA and the First Amendment because they sought religious accommodations from the mandate and remain unvaccinated against COVID-19.

Defendants also retain the power to institute an identical and more widespread vaccine mandate at any time, and they have already stated they have a compelling interest in doing so. Nothing in the FY23 NDAA, the Memorandum, ALNAV 009/23, or NAVADMIN 005/23 prevents the Navy from restoring these very same policies in the same broad and sweeping manner that Defendants previously used to inflict the very same constitutional injury on the Plaintiffs this Court already saw fit to enjoin. Unlike cases concerning COVID-19 stay at home orders or mask mandates in schools, this is not a case speculating about future edicts. NAVADMIN 225/21 and NAVADMIN 256/21 still exist and the Plaintiffs continue to be sidelined by the Navy's de facto mandate. Yet, this Court's injunction and the ultimate outcome of this lawsuit can prevent further loss of Plaintiffs' constitutional rights. Thus, Plaintiffs' claims are capable of repetition but evade review, and this case is not moot.

## CONCLUSION

For the foregoing reasons, this Court should deny Defendants' Motion.

Respectfully submitted this 13th day of February, 2023.

KELLY J. SHACKELFORD
  Texas Bar No. 18070950
JEFFREY C. MATEER
  Texas Bar No. 13185320
HIRAM S. SASSER, III
  Texas Bar No. 24039157
DAVID J. HACKER
  Texas Bar No. 24103323
MICHAEL D. BERRY
  Texas Bar No. 24085835
JUSTIN BUTTERFIELD
  TEXAS BAR NO. 24062642
DANIELLE A. RUNYAN*
  New Jersey Bar No. 027232004
Holly M. Randall
  Texas Bar No. 24128002
FIRST LIBERTY INSTITUTE
2001 W. Plano Pkwy., Ste. 1600
Plano, Texas 75075
Tel: (972) 941-4444
jmateer@firstliberty.org
hsasser@firstliberty.org
dhacker@firstliberty.org
mberry@firstliberty.org
jbutterfield@firstliberty.org
drunyan@firstliberty.org
hrandall@firstliberty.org

JORDAN E. PRATT
  Florida Bar No. 100958*  **
FIRST LIBERTY INSTITUTE
227 Pennsylvania Ave., SE
Washington, DC 20003
Tel: (972) 941-4444
jpratt@firstliberty.org

*Admitted pro hac vice.
** Not yet admitted to the D.C. Bar, but
admitted to practice law in Florida. Practicing
law in D.C. pursuant to D.C. Court of
Appeals Rule 49(c)(8) under the supervision
of an attorney admitted to the D.C. Bar.

/s/ Heather Gebelin Hacker
HEATHER GEBELIN HACKER
  Texas Bar No. 24103325
ANDREW B. STEPHENS
  Texas Bar No. 24079396
HACKER STEPHENS LLP
108 Wild Basin Road South, Suite 250
Austin, Texas 78746
Tel.: (512) 399-3022
heather@hackerstephens.com
andrew@hackerstephens.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2023, I electronically filed the foregoing document through the Court's ECF system and will serve a copy on each of the Defendants according to the Federal Rules of Civil Procedure.


/s/ Heather Gebelin Hacker
HEATHER GEBELIN HACKER