**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS**

---

**NAVY SEALs 1-3,** et al.**,**

                              Plaintiffs,

      v.

**LLOYD J. AUSTIN, III** in his official capacity  as
United States Secretary of Defense, et al.,

                            Defendants.

Case No. 4:21-cv-01236-O

---

**DEFENDANTS' REPLY IN SUPPORT OF
THEIR ASSERTION OF MOOTNESS**

**INTRODUCTION**

Plaintiffs focus the majority of their opposition on the provision of the Secretary of Defense's recission memo that allows for individual commanders to consider a service members' unvaccinated status when making assignment, operational, and deployment decisions. But, on February 15, 2023, the Navy updated its standard operating guidance to remove the distinction between vaccinated and unvaccinated service members when making assignment and deployment decisions. As a result, no service member's vaccination status will be a presumptive barrier to any prospective assignment or deployment. The issuance of this new guidance further supports a finding that any remaining aspect of this litigation is moot. Accordingly, this case should be dismissed for lack of subject matter jurisdiction.

**ARGUMENT**

**I.      This Litigation is Moot And Plaintiffs Lack Standing.**

**A.      The Challenged Regulations Are Not In Effect.**

When a statute or regulation is amended or repealed after plaintiffs bring a lawsuit challenging the legality of that statute or regulation, mootness is "the default." *Freedom From Religion Found., Inc. v. Abbott*, 58 F.4th 824, 832 (5th Cir. 2023). Here, as explained in Defendants' motion, ECF No. 222 (Defs.' Br.) at 15-17, each of the regulations Plaintiffs challenge in their Complaint have been rescinded. The Department of Defense (DoD) COVID-19 vaccination requirement has been rescinded as directed by the National Defense Authorization Act for Fiscal Year 2023 (NDAA). *See* ECF No. 214-1. The Navy has expressly cancelled NAVADMIN 190/21 and ALNAV 062/21, and the derivative enforcement policies—NAVADMIN 225/21 and NAVADMIN 256/21—are similarly withdrawn. ECF No. 223 at 3-7. Trident Order #12 was previously withdrawn and cancelled. *Id.* at 12-13. And the specific language of MANMED § 15-105(4)(n)(9) that Plaintiffs challenge, *see* Am. Compl., ECF No. 84 ¶¶ 51, 75, 111, has been amended. ECF No. 223 at 9-10.

1

Plaintiffs do not discuss MANMED § 15-105(4)(n)(9) and Trident Order #12 in their opposition, conceding that those challenges are now moot; however, they take issue with the wording of the rescission of NAVADMIN 225/21 and NAVADMIN 256/21. *See* ECF No. 224 (Pls.' Opp.) at 4-5.   NAVADMIN 225/21 and NAVADMIN 256/21 were regulations for enforcing NAVADMIN 190/21 and ALNAV 062/21, both of which have been expressly cancelled. Enforcement of the defunct COVID-19 mandate has ceased, so NAVADMIN 225/21 and NAVADMIN 256/21 have no ongoing effect.   While Plaintiffs claim the word "suspend" in NAVADMIN 190/21 means the Navy has plans to bring back these enforcement mechanisms even though it has cancelled the actual requirement they enforced, the issuance of the new standard operating guidance dispels that notion. *See* Ex. 1 (App001–004) (NAVADMIN 038/23 – Navy COVID-19 Standardized Operational Guidance (SOG) 8.0 noting that the Secretary "rescinded the COVID-19 vaccination requirement for Department of the Navy Service members").   In any event, the Secretary of Defense's recission memo makes clear that enforcement of the prior mandate must cease with respect to any service members who made an exemption request. ECF No. 214-1.   If there is doubt, the Secretary's directive controls. *See* 10 U.S.C. § 113; 10 U.S.C. § 8013(b).

### B.   The Issuance of SOG 8.0 Eliminates Any Continuing Controversy Regarding Deployment, Assignment, and Operational Decisions.

Plaintiffs spend the bulk of their brief arguing that the Navy's prior operating guidance, which limited assignment to operational units and deployment opportunities for unvaccinated service members, creates a de facto mandate that allows them to maintain the litigation. *See generally* Pls.' Opp. at 1-14. [1]   However, with the issuance of SOG 8, the Navy has effectively provided Plaintiffs and the

---

[1] Plaintiffs cite NAVADMIN 093/22, Navy COVID-19 SOG 6.0 (Apr. 11, 2022), Pls.' Opp. at 7, but the most recent guidance prior to the issuance of SOG 8.0, Ex. 1 (App001–004), was NAVADMIN 234/22 Navy COVID-19 SOG 7.0 (Oct. 19, 2022), Ex. 2 (App005-012).   Plaintiffs cast every unvaccinated service member as being unvaccinated based on their religious beliefs. Pls.' Opp. at 10. But this is not the case, as Plaintiffs previously acknowledged. *See, e.g.*, ECF No. 84 ¶ 42. The Navy's prior operating guidance treated service members unvaccinated for religious reasons exactly as it

class members the relief they seek.  Pls.' Opp. at 10 ("Those sailors want to continue to serve in the Navy and receive equal opportunity for promotions, assignments, benefits, and special pay as their vaccinated peers…."). SOG 8 "rescinds and replaces [SOG 7.0] in its entirety, including the requirement that all personnel assigned to operational Navy units be fully vaccinated against COVID-19." Ex. 1.  It also explicitly states that "COVID-19 vaccination status shall not be a consideration in assessing individual service member suitability for deployment or other operational missions." *Id.*  At oral argument before the Fifth Circuit in this matter, Judge Ho asked Government counsel if there are any assurances in the record that there will be no deployment decisions made on the basis of vaccination. [2]  Although such assurances are not required for a finding of mootness, *see Freedom From Religion Found.*, 58 F.4th at 835 n. 7, the Navy has in fact stated as much in its new SOG.  Ex. 1.  And as previously noted in Defendants' motion, ECF No. 222 at 12, 18-19, DoD's travel policies were updated on January 30, 2023, to eliminate the distinctions for vaccinated and unvaccinated service members for travel purposes.   In short, Plaintiffs have received the relief they sought both on a class-wide and individual basis.  Accordingly, not only is their claim moot, they no longer have a concrete injury to maintain standing. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) ("Plaintiffs must maintain their personal interest in the dispute at all stages of litigation.").

### C.   Plaintiffs' Declarations Have Been Overcome By the Issuance of SOG 8 And Should Not Be Considered Because they Refuse to Participate in Discovery.

With their opposition, Plaintiffs submitted twelve declarations from pseudonymous Plaintiffs—all but two of whom have refused to participate in discovery—and from a class member whom Plaintiffs never identified as having relevant information in their initial discovery disclosures.

---

treated service members unvaccinated for non-religious reasons.  *See* Ex. 2 (App008) ("all personnel assigned to operational Navy units shall be fully vaccinated against COVID-19.").  In any event, the issue is now moot as explained herein.

[2] *See* Oral Argument at 3:48 – 54, *U.S. Navy SEALs 1-26 v. Biden,* No. 22-10077 (5th Cir. Feb. 6, 2023), *available at* https://www.ca5.uscourts.gov/OralArgRecordings/22/22-10077_2-6-2023.mp3

*See* ECF No. 225 at 83-162.  The vast majority of those declarants claim that they are being prevented "from ever returning to an operational status, which directly harms their military career and inflicts coercive pressure on them to take the vaccine."  *See* Pls.' Opp. at 7 (citing ten declarations); *see also id.* at 9 (citing eleven Plaintiff declarations).  These declarations have now been overcome by the issuance of SOG 8, which removes the barrier for unvaccinated service members to obtain Navy assignments, deployments, and operational positions previously available to only vaccinated service members.  *See* Ex. 1 (App001-004).

But even if they had not been overcome by SOG 8, these declarations should not be considered because these Plaintiffs have failed to comply with discovery rules.  *See* FED. R. CIV. P. 37(d)(1)(A) (providing for sanctions when a party fails to comply with discovery rules including preventing a party from supporting their claims or defenses or from introducing matters in evidence).  All but the four class-representative Plaintiffs have steadfastly refused to participate in *any* discovery.  *See* ECF Nos. 198, 206, 211.  They refused to produce a single document, answer a single interrogatory, or sit for a deposition.  *Id.*  They have opposed Defendants' two motions to compel, claiming that they are not required to participate in discovery—even though they are parties to this litigation—and claim they may be "passive" and "sit back and allow the litigation to run its course[.]" ECF No. 198, at 3-4 (internal citations omitted).  But continuing to submit declarations and asking the Court to rely on them is anything but passive.  Plaintiffs cannot have it both ways. They cannot continue to submit evidence they want the Court to consider, while refusing to be questioned on that evidence by Defendants.[3]

---

[3] Even the two class representatives who have participated in discovery have failed to comply with discovery rules because they have not updated their responses to Defendants' Interrogatories seeking information about adverse consequences they claim to have suffered as a result of the vaccination requirement.  *See* ECF No. 192 at 12.  Plaintiffs have acknowledged "their continuing obligation to supplement their responses to all discovery" and these questions in particular.  ECF No. 198 at 13. But to date they have only responded that Defendants should "see the transcript of the December 20,

### D.    The Navy Continues to Have A Process for Providing Religious Accommodations to Service Members.

Plaintiffs also assert that the Navy has eliminated its process for providing religious accommodations to service members. *See, e.g.,* Pls.' Opp. at 1, 5-6, 11-12. This assertion is simply wrong. Plaintiffs appear to confuse the Secretary's directive to discontinue processing requests for the now-defunct mandate. *See* ECF No. 214-1. However, the next paragraph in the Secretary's directive shows that the military's religious accommodation process remains. *Id.* ("Components shall continue to apply the uniform standards set forth in DoD Instruction 1300.17, 'Religious Liberty in the Military Services.'").

If Plaintiffs wish to seek a religious accommodation to be exempt from a current Navy requirement, to include immunization requirements, they may do so using the procedures outlined in Bureau of Naval Personnel Instruction 1730.11A. *See* Ex. 3 (App013-035) (2d Decl. of Gareth J. Healy, ("Healy Decl.") ¶ 7). But they cannot seek a religious exception from DoD's August 24, 2021, COVID-19 vaccination requirement and the Navy's implementation of that requirement through ALNAV 062/21 and NAVADMIN 091/21 because those requirements no longer exist. And they cannot receive an accommodation from a non-existent policy. The requirement to be vaccinated against COVID-19 in order to be assigned to a Navy operational unit has similarly been rescinded with the issuance of SOG 8.0. *See* Ex. 1 (App001-004) ("rescind[ing] . . .the requirement that all personnel assigned to operational Navy units be fully vaccinated against COVID-19," and stating that "[u]nder no circumstances shall a Commander mandate that any Navy Service member receive the COVID-19 vaccination."). If Plaintiffs were to face a COVID-19 vaccination requirement in the future, they would be free to seek a religious accommodation at that time.[4]

---

2021 hearing in this matter." *See* ECF No. 193 at 602, 620. Similarly, Lieutenant Commander (Select) Beaird was never identified as a relevant witness in Plaintiffs' Initial Disclosures.

[4] The Navy has, however, permanently discontinued its staffing procedure developed to efficiently manage and process the unprecedented influx of religious accommodation requests related to the

###### E.  Any Claim for Money Damages is Subject to Tucker Act Jurisdiction.

Even though Plaintiffs sought only equitable relief in their Complaint, Plaintiffs continue to speculate that they might have a claim for monetary damages. Pls.' Opp. at 13-14. But a hypothetical claim for damages cannot keep the litigation alive and would certainly be too individualized for class treatment. In any event, as Defendants stated in their motion, if Plaintiffs had such a claim they would have to cite a proper jurisdictional and factual basis for it, including what jurisdictional statute the claim is being pled under and whether they missed payments for work actually performed. Defs.' Br. at 12-13. Plaintiffs cite *Tanzin v. Tanvir,* 141 S. Ct. 486 (2020), and argue that RFRA allows them to obtain money damages from the Government. But *Tanzin* involved "a suit against individuals, who do not enjoy sovereign immunity." *Id.* at 492-93. And the Supreme Court acknowledged in *Tanzin* that *Sossamon v. Texas*, 563 U.S. 277 (2011), held that identical "appropriate relief" language in the related statute RLUIPA did not waive states' sovereign immunity from money damages. 141 S. Ct. at 492-93. Plaintiffs have voluntarily dismissed their claims against individuals, and only official capacity claims against the Government remain. *See* ECF No. 84. To the extent Plaintiffs have brought claims for money damages under RFRA, those claims are barred by sovereign immunity.

## II.  The Voluntary Cessation Exception Does Not Apply.

Plaintiffs misunderstand the nature of the exception to the mootness doctrine for voluntary cessation. First, Plaintiffs continue to insist that Defendants' rescission was voluntary, while simultaneously acknowledging that the NDAA required "that the current vaccine mandate be rescinded." Pls.' Opp. at 15. Plaintiffs argue that Defendants' involuntary cessation does not suffice because Defendants retained control over "[t]he specifics for how [the vaccination requirement] was to be rescinded." *Id.* This is irrelevant. Courts of Appeals regularly find that, when a statute

---

now-defunct DoD COVID-19 vaccination requirement. Healy Decl. ¶ 6 (App016). That discontinuation only underscores that the vaccination requirement no longer exists, and this case is moot.

"compelled the termination of the [challenged] program," "[t]he cessation of the program therefore was not voluntary" and this mootness exception cannot apply. *Klayman v. Obama*, 759 F. App'x 1, 3 (D.C. Cir. 2019); *see, e.g., Spell v. Edwards*, 962 F.3d 175, 178-80 (5th Cir. 2020) (vacating as moot order denying preliminary injunction in challenge to expired COVID-19 stay-at-home orders and explaining "a statute that expires by its own terms does not implicate [the voluntary cessation exception] . . . . [b]ecause its lapse was predetermined and thus not a response to litigation."); *Hall v. Louisiana*, 884 F.3d 546, 553 (5th Cir. 2018) (explaining that an appeal "was mooted by actions of the Louisiana legislature, which [was] not a party to th[e] suit"); *Valero Terrestrial Corp. v. Paige,* 211 F.3d 112, 116 (4th Cir. 2000); *Diffenderfer v. Gomez–Colon,* 587 F.3d 445, 452 (1st Cir. 2009); *see also Sea-Land Serv., Inc. (Pac. Div.) v. Int'l Longshoremen's & Warehousemen's Union, Locals 13, 63, & 94*, 939 F.2d 866, 870 (9th Cir. 1991). The NDAA required Defendants to rescind the vaccination requirement. The rescission was therefore not voluntary. The analysis ends there.

Even were this Court to consider the rescission voluntary, the exception still does not apply here. The central inquiry is "whether the defendant's actions are 'litigation posturing' or whether the controversy is actually extinguished." *Yarls v. Bunton*, 905 F.3d 905, 910 (5th Cir. 2018). And courts presume "that formally announced changes to official governmental policy are not mere litigation posturing." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009), *aff'd*, 563 U.S. 277 (2011); *see also Stauffer v. Gearhart*, 741 F.3d 574, 582 (5th Cir. 2014) ("In an ordinary case, 'subsequent events' would have to make it 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.' [Plaintiff's] argument, however, ignores the 'lighter burden' that government entities bear in proving that the challenged conduct will not recur once the suit is dismissed as moot." (quoting *Sossamon*, 560 F.3d at 325)).

Plaintiffs offer nothing to combat the presumption that Defendants' "formally announced changes" are "not mere litigation posturing." *Sossamon*, 560 F.3d at 325. Indeed, Plaintiffs do not

7

even allege—nor could they—that the rescission was intended to moot the instant litigation. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (explaining that the purpose of the exception for voluntary cessation is to prevent a defendant from being able to "engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends"). Instead, Plaintiffs focus on incorrect and irrelevant facts. Plaintiffs assert that "Defendants have made no representations that they will *not* continue to discriminate against Plaintiffs." Pls.' Opp. at 17. To the contrary, Defendants have expressly made representations that the policies they challenge and claim are "discriminatory" have been discontinued: Defendants have released NAVADMIN 005/23 and ALNAV 009/23, which canceled NAVADMIN 190/21 and ALNAV 062/21—the Navy's implementation of the Department of Defense's mandatory COVID-19 vaccination requirement. Such "formally announced changes" render the case moot. *Sossamon*, 560 F.3d at 325. Plaintiffs further argue that the exception applies because "Defendants retain the authority to reinstitute a new vaccine at any time." Pls.' Opp. at 15. But "the government's ability to reimplement the statute or regulation at issue is insufficient to prove the voluntary-cessation exception." *Freedom From Religion Found., Inc.*, 58 F.4th at 833; *see also Sossamon*, 560 F.3d at 325 ("We will not require some physical or logical impossibility that the challenged policy will be reenacted[.]"). Accordingly, the exception for voluntary cessation does not apply.

## III. The Capable-of-Repetition-Yet-Evading-Review Exception Does Not Apply.

Plaintiffs also fail to carry their burden of establishing the mootness exception for issues capable of repetition yet evading review. First, in an attempt to show that the vaccination requirement was "in its duration too short to be fully litigated prior to its cessation or expiration," *Empower Texans, Inc. v. Geren*, 977 F.3d 367, 370 (5th Cir. 2020) (quoting *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016)), Plaintiffs rely on the fact that the vaccination requirement lasted "for less than 18 months," Pls.' Opp. at 18. But there is no such precise "calendar for evading review." *Empower Texans,*

*Inc.*, 977 F.3d at 370. Rather, "[c]laims need to be judged on how quickly relief can be achieved *in relation to the specific claim*." *Id.* (emphasis added). The Fifth Circuit has explained that "cases involving strikes, pregnancies, or elections" are prototypical examples of the "'exceptional' situations" in which the exception may apply. *See Meadows v. Odom*, 198 F. App'x 348, 352 (5th Cir. 2006) (citation omitted).

As for Plaintiffs' specific claims, vaccination requirements are not inherently too short to be fully litigated. Plaintiffs rely on the argument that the SARS-CoV-2 virus "is constantly changing." Pls.' Opp. at 18. But Plaintiffs fail to show that the challenged conduct itself—the vaccination requirement—ever changed prior to its final rescission, or that it would have changed but for Congress' intervening legislation. That stands in contrast to *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2020), where the challenged conduct—the lockdown orders—constantly changed.

Indeed, Plaintiffs' cited cases each involve challenged conduct that is inherently limited in time. Plaintiffs cite *Kingdomware Techs.*, 579 U.S. at 170, and *Southern Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911), for the proposition that "two years is too short," Pls.' Opp. at 18. But those cases applied to short-term procurement contracts. *See Kingdomware Techs., Inc.*, 579 U.S. at 170. Similarly, Plaintiffs cite *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 774 (1978), for the proposition that "18 months is too short," Pls.' Opp. at 18. But that case applied to a constitutional referendum. *See Bellotti*, 435 U.S. at 774. Short-term contracts and referendums—like "strikes, pregnancies, or elections," *Meadows*, 198 F. App'x at 352—are inherently limited in time. A vaccination requirement, in contrast, is inherently unlimited in time. Indeed, the military's other vaccination requirements have been in place for many years, and in some cases, decades. *See, e.g.*, ECF No. 44-1 at 47-52. The mere fact that the vaccine requirement ended prior to a dispositive ruling is insufficient to trigger the exception.[5] Thus,

---

[5] Plaintiffs acknowledge that "complete judicial review" includes "review by the Supreme Court." Pls.' Opp. at 17–18. Here, the Supreme Court has weighed in on the primary issue Plaintiffs claim is remaining in the case. *Austin v. Navy SEALs 1–26*, 142 S. Ct. 1301 (2022) (granting the government's application for a partial stay of the district court's injunction as it applies to considering Plaintiffs vaccination status in making deployment, assignment, and other operational decisions).

even if Defendants were to reinstate the same challenged vaccination requirement, "there is no reason to suppose that the issues . . . will in the future evade review." *S. Bell Tel. & Tel. Co. v. United States*, 541 F.2d 1151, 1155 (5th Cir. 1976).

Plaintiffs also fail to carry their burden of establishing a "reasonable expectation" that Defendants will reimpose the same challenged vaccination requirement. *Libertarian Party v. Dardenne*, 595 F.3d 215, 217 (5th Cir. 2010). Plaintiffs' sole support for this prong is that Defendants allegedly "retain the power to institute an identical" requirement. Pls.' Opp. at 19. Even so, "[m]erely showing that the government will 'have an opportunity to act in the same allegedly unlawful manner in the future' is not enough to satisfy the second prong of the exception without a reasonable expectation that the government *will* act in that manner." *Long v. Jayton-Girard Indep. Sch. Dist.*, No. 5:21-CV-111-H, 2021 WL 7906835, at *4 (N.D. Tex. Sept. 3, 2021) (quoting *Lopez v. City of Houston*, 617 F.3d 336, 341 (5th Cir. 2010)). And indeed, "the Fifth Circuit has held that the mere possibility of COVID-19 worsening or COVID-19 policies being re-imposed is insufficient to satisfy the 'reasonable expectation' requirement of the second prong." *Id.* (citing *Spell*, 962 F.3d at 180). Plaintiffs fail to show anything more than a "theoretical possibility" that Defendants might reinstate the same challenged vaccination requirement. *Murphy v. Hunt,* 455 U.S. 478, 482 (1982).[6] Accordingly, Plaintiffs fail to carry their burden of establishing issues capable of repetition yet evading review.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' complaint for lack of subject-matter jurisdiction.

---

[6] Plaintiffs appear to argue that there is reasonable expectation that Defendants will reimpose the same challenged vaccination requirement because Defendants have allegedly "implemented a de facto mandate." Pls.' Opp. at 19. But as discussed above, the Navy has now expressly stated that "COVID-19 vaccination status shall not be a consideration in assessing individual service member suitability for deployment or other operational missions." Ex. 1 (App002-003).

Dated: February 21, 2022                          Respectfully submitted,

                                                  BRIAN M. BOYNTON
                                                  Acting Assistant Attorney General

                                                  ALEXANDER K. HAAS
                                                  Director, Federal Programs Branch

                                                  ANTHONY J. COPPOLINO
                                                  Deputy Director

                                                  /s/ Amy E. Powell
                                                  ANDREW E. CARMICHAEL (VA Bar. No. 76578)
                                                  AMY E. POWELL
                                                  Senior Trial Counsel
                                                  STUART J. ROBINSON
                                                  Senior Counsel
                                                  ZACHARY A. AVALLONE
                                                  COURTNEY D. ENLOW
                                                  LIAM C. HOLLAND
                                                  Trial Attorney
                                                  United States Department of Justice
                                                  Civil Division, Federal Programs Branch
                                                  1100 L Street, N.W.
                                                  Washington, DC 20005
                                                  Tel: (919) 856-4013
                                                  Fax: (202) 616-8470
                                                  Email: Amy.Powell@usdoj.gov

                                                  Counsel for Defendants

11