# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| **NAVY SEALS 1-3**, et al.**,** | |
| Plaintiffs, | |
| v. | Case No. 4:21-cv-01236-O |
| **LLOYD AUSTIN, III**, in his official capacity as Secretary of Defense, *et al.*, | |
| Defendants. | |

## DEFENDANTS' SUPPLEMENTAL APPENDIX IN SUPPORT OF THEIR REPLY IN SUPPORT OF THEIR ASSERTION OF MOOTNESS

### Table of Appendix

| Bates Stamps | Description |
|---|---|
| App001–App004 | Ex. 1 - NAVADMIN 038/23 |
| App005–App012 | Ex. 2 - NAVADMIN 234/22 |
| App013–App035 | Ex. 3 - Second Declaration of Captain Gareth J. Healy with attachment |

Dated: February 21, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director

*/ s/ Amy E. Powell*
ANDREW E. CARMICHAEL (VA Bar. No. 76578)
AMY E. POWELL
Senior Trial Counsel
STUART J. ROBINSON
Senior Counsel
ZACHARY A. AVALLONE
COURTNEY D. ENLOW
LIAM C. HOLLAND

Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 514-3346
Fax: (202) 616-8470
Email: Andrew.e.carmichael@usdoj.gov

*Counsel for Defendants*

# Exhibit 1

```
CLASSIFICATION: UNCLASSIFIED//
ROUTINE
R 152142Z FEB 23 MID600052759268U
FM CNO WASHINGTON DC
TO NAVADMIN
INFO SECNAV WASHINGTON DC
CNO WASHINGTON DC
BT
UNCLAS

NAVADMIN 038/23

MSGID/NAVADMIN/CNO WASHINGTON DC/CNO/FEB//

SUBJ/U.S. NAVY COVID-19 STANDARDIZED OPERATIONAL GUIDANCE 8.0//

REF/A/MSG/CNO/191436ZOCT22//
REF/B/MSG/SECNAV/201839ZJAN23//
REF/C/DOC/USD(PR)/30JAN2023//
REF/D/MSG/CNO/041827ZAUG21//
REF/E/OPNAVINST F3100.6K/10AUG21//

NARR/ REF A is NAVADMIN 234/22, U.S. NAVY COVID-19 STANDARDIZED OPERATIONAL
GUIDANCE 7.0.
REF B is ALNAV 009/23 RESCISSION OF COVID-19 VACCINATION REQUIREMENT FOR
MEMBERS OF THE ARMED FORCES.
REF C is USD P&R CONSOLIDATED DEPARTMENT OF DEFENSE CORONAVIRUS DISEASE 2019
FORCE HEALTH PROTECTION GUIDANCE available at
https://www.defense.gov/Spotlights/Coronavirus-DOD-Response/Latest-DOD-
Guidance/ (Select "Health Protection Guidance" tab from the site menu on the
left).
REF D is NAVADMIN 165/21, SOVEREIGN IMMUNITY POLICY.
REF E is OPNAVINST F3100.6K, SPECIAL INCIDENT REPORTING PROCEDURES.
POC/OPNAV/COVID CELL, (703) 571-2822//EMAIL:
OPNAV_COVID_CRISIS_RESPONSE_CELL@US.NAVY.MIL.

RMKS/1. This NAVADMIN provides updated COVID-19 Standardized Operational
Guidance (SOG 8.0), and rescinds and replaces reference (a) in its entirety,
including the requirement that all personnel assigned to operational
Navy units be fully vaccinated against COVID-19. Reference (b) rescinded
the COVID-19 vaccination requirement for Department of the Navy Service
members. Under no circumstances shall a Commander mandate that any Navy
Service member receive the COVID-19 vaccination.

2.   Steady State COVID-19 Posture. Commanders at all levels are directed
to balance operational employment with the health and safety of their
units in accordance with current USD (P&R) Force Health Protection Guidance
(reference (c)). Commanders and medical providers are also encouraged to
consider the COVID-19 Operational Risk Management Matrix for Deployments
(available at https://media.defense.gov/2023/Feb/13/2003160523/-1/-
1/0/BUMED%20NAVY%20COVID-19%20OPERATIONAL%20RISK%20MATRIX.PDF as a tool to
evaluate risks to mission, force, and individuals.

3.   Mission Risk.  Commanders should seek advice from medical providers
regarding medical readiness of personnel to inform deployment and other
operational mission decisions. COVID-19 vaccination status shall not be
a consideration in assessing individual service member suitability for
```

deployment or other operational missions. Commanders retain the authority to implement Health Protection Measures at any time or manner deemed necessary in support of operational safety and effectiveness, and where necessary, to restrict movement of service members in order to comply with host nation quarantine regulations. Geographic Navy Component Commanders (GNCC) will coordinate with country teams and local authorities to identify any host nation requirements related to COVID-19 testing or vaccination status that may restrict or create conditions-based criteria for liberty.

4.   Sovereign Immunity. U.S. Government policy protects the sovereign immunity of warships, naval auxiliaries, and aircraft, including protecting crew information to the maximum extent possible. Within the context of COVID-19, host nations may request or require crew or ship information that exceeds that authorized by U.S. policy or international law.

4.a.   GNCCs will assess and determine in advance any host nation quarantine regulation requirements that may challenge U.S. sovereign immunity policy (see reference (d) for additional guidance). In all cases, GNCCs shall authorize the minimum information necessary to meet operational requirements. The Navy Declaration of Health (NAVMED 6210/3) is the only authorized form for providing health information to foreign officials. If required by the host nation, the GNCC may authorize Commanders to include on the NAVMED 6210/3 or on a separate U.S. generated document accompanying the NAVMED 6210/3 (e.g., Command Letterhead) that their unit is 100% vaccinated, those disembarking have tested negative within the required timeframe, or that those disembarking have received a COVID-19 vaccine booster. GNCC authority to approve these COVID-19 related exceptions to sovereign immunity policy may be delegated no further than the numbered Fleet Commander.

4.b.   Exceptions to Policy (ETP). Where host nation quarantine regulations create requirements outside of the exceptions listed in paragraph 4.a, GNCCs shall determine, in accordance with reference (d), whether such requirements constitute a potential waiver of sovereign immunity. Any action the GNCC determines may constitute a waiver of sovereign immunity must be coordinated with OPNAV N3N5 for approval no later than five days ahead of need. To avoid setting precedence beyond COVID-19, ETPs will be messaged to the host nation as explicitly linked to the pandemic. Requests shall include justification for port selection, host nation mitigation and testing requirements, alternate port options, impact to mission if the request is denied, medical, legal, collection and privacy risk, and feedback from country team coordination. ETP notifications and requests may be sent via record message traffic or to the OPNAV N3N5 Legal and Oceans Policy Advisor.

4.c.   Guidance for Commanders.  Per GNCC direction, Commanders shall comply with domestic and foreign quarantine regulations for port entry and document compliance on NAVMED 6210/3.  Absent GNCC approval in advance, Commanders will not submit to host nation COVID-19 testing nor provide individual or collective medical data, copies of health records, nor any supplementary or locally-demanded health forms, and shall not grant access to ship or crew health records or allow the same to be searched or inspected by host nations. If compelling circumstances require a Commander to acquiesce to additional host nation requirements without obtaining an ETP or GNCC concurrence (e.g., personnel emergency, weather avoidance), report the event and circumstances as soon as practicable to OPNAV N3N5 via the chain of command.

5.  Reporting Procedures.  Individual COVID-19 cases do not need to be reported. Medical providers shall report pandemic or infectious disease related medical evacuations, hospitalizations, and deaths via Disease Reporting System, internet (DRSi). OPREP-3 Navy Blue messages are required for significant shipboard operational impacts due to pandemic or infectious disease. Format messages per reference (e).

6.  Released by VADM E. H. Black, III, Deputy Chief of Naval Operations for Operations, Plans and Strategy, OPNAV N3N5.//

BT
#0001
NNNN
CLASSIFICATION: UNCLASSIFIED//

# Exhibit 2

```
ROUTINE
R 191436Z OCT 22 MID600052386622U
FM CNO WASHINGTON DC
TO NAVADMIN
INFO SECNAV WASHINGTON DC
CNO WASHINGTON DC
BT
UNCLAS

NAVADMIN 234/22 (CORRECTED COPY)

MSGID/NAVADMIN/CNO WASHINGTON DC/CNO/OCT//

SUBJ/U.S. NAVY COVID-19 STANDARDIZED OPERATIONAL GUIDANCE 7.0
(CORRECTED COPY)//

REF/A/MSG/CNO/111536ZAPR22//
REF/B/DOC/USD(PR)/29AUG2022//
REF/C/DOC/NMCPHC/27DEC2021//
REF/D/DOC/NMCPHC/14MAY2021//
REF/E/DOC/NMCPHC/19MAR2021//
REF/F/MSG/CNO/041827ZAUG21//
REF/G/MSG/CNO/231718ZAUG21//
REF/H/OPNAVINST F3100.6K/10AUG21//

NARR/REF A is NAVADMIN 093/22, U.S. NAVY COVID-19 STANDARDIZED OPERATIONAL
GUIDANCE 6.0 (CORRECTED COPY).
REF B is USD P&R CONSOLIDATED DEPARTMENT OF DEFENSE CORONAVIRUS DISEASE 2019
FORCE HEALTH PROTECTION GUIDANCE available at
https://www.defense.gov/Explore/Spotlight/Coronavirus/Latest-DOD-Guidance/
(Select "Health Protection Guidance" tab from the site menu on the left).
REF C is NAVY AND MARINE CORPS PUBLIC HEALTH CENTER COVID 19 OMICRON VARIANT
AND BOOSTER EFFECTIVENESS.
REF D is NAVY AND MARINE CORPS PUBLIC HEALTH CENTER U.S. NAVY FORCE HEALTH
PROTECTION WITH CONSIDERATIONS FOR VACCINE EFFICACY.
REF E is NAVY AND MARINE CORPS PUBLIC HEALTH CENTER DOCUMENT ASSESSING REAL
COVID-19 RISK.
REF F is NAVADMIN 165/21, SOVEREIGN IMMUNITY POLICY.
REF G is NAVADMIN 180/21, UPDATE 3 TO NAVY COVID-19 REPORTING REQUIREMENTS.
REF H is OPNAVINST F3100.6K, SPECIAL INCIDENT REPORTING PROCEDURES.
POC/OPNAV/COVID CELL TEAM LEAD, (703) 571-2822//EMAIL:
OPNAV_COVID_CRISIS_RESPONSE_CELL@US.NAVY.MIL.

RMKS/ 1.  Purpose.  This NAVADMIN provides updated COVID 19 Standardized
Operational Guidance (SOG 7.0) and replaces reference (a).

2.  Summary. SOG 7.0 driving objectives remain the health and safety of our
Sailors and civilians while preserving operational readiness.  The virus is
still with us and it is still dangerous, and the combination of vaccines,
boosters, command engagement and personal accountability continue to be our
best defense. SOG 7.0 should be read in its entirety.  Clarifying edits
based upon fleet feedback have been incorporated throughout.  Notable
changes include guidance for training personnel (paragraph 5.e), definition
of close contacts (paragraph 5.j), use of N3N5 as Navy Component Commander
(NCC) for commands with non-operational reporting chains (paragraph 5.e),
guidance on meetings with greater than 50 participants (paragraph 8.k), and
cancels reference (g) (Update 3 to Navy COVID-19 Reporting Requirements)
(paragraph 10).

3.  Applicability.  SOG 7.0 applies to all service members (active duty and
ready reserve) assigned to or supporting operational units as defined in
paragraph 5.e below (Operational and Non-Operational Forces).
Non-operational forces, civilian employees and contractor personnel should
follow the latest Department of Defense (DOD) Force Health Protection,
```

App 006

Centers for Disease Control and Prevention (CDC), and state/local area
guidance, and seek policy clarification via local command Human Resource
channels.  Additionally, higher echelon Commanders guidance may apply.

4.  Evolving Guidance.  The CDC is the authority for COVID-19 measures on
behalf of the general public. The Navy Surgeon General remains as the
authority for Navy COVID 19 measures and advises the Chief of Naval
Operations (CNO) on how best to apply CDC guidance across the spectrum of
unique Navy operating environments, and may include additional measures not
required by the general public.  Accordingly, and except when specifically
referred to the CDC website (e.g., booster approval and guidance), evolving
CDC guidance related to virus behavior and mitigations shall first be
evaluated by the Navy Surgeon General prior to Fleet implementation.
Questions regarding applicable COVID-19 measures may be directed to the
point of contact (POC) listed above.

5.  Definitions.  CDC definitions regarding COVID-19 are kept current on the
CDC website (https://www.cdc.gov).  The following additional DoD definitions
are provided:

5.a.  Fully Vaccinated:  Term for an individual who has completed a primary
COVID-19 vaccine series as defined in reference (b).  Applies two weeks
after the final dose is received.  During the time period from initial dose
until two weeks after the final dose, an individual is considered partially
vaccinated.

5.b.  Up to Date (UTD) COVID 19 Vaccination:  Term for an individual who has
received all CDC recommended COVID-19 vaccine dose(s), including booster
dose(s), if eligible. UTD COVID-19 vaccine and booster guidance is subject
to change and is available on the CDC website.

5.c.  High-Risk Personnel:  Those individuals designated by a medical
provider who meet CDC criteria for increased risk of severe illness.
Qualifying conditions are included on the CDC website.

5.d.  Commander:  For the purposes of this NAVADMIN, the term Commander
includes Commanding Officers, Officers-in-Charge, Masters, and Aircraft
Commanders.

5.e.  Operational and Non-Operational Forces:  For the purposes of this
NAVADMIN, operational forces and non-operational forces are defined and
promulgated by the applicable NCC.  For operational forces, this might
include deployed forces, forces in sustainment, or other operational
elements that the NCC determines to fall within the intent and context of
this NAVADMIN.  Personnel conducting training in underway or operational
airborne Navy platforms are considered operational forces.  OPNAV N3N5 shall
act as the NCC for units that do not report via an operational NCC (e.g.,
USS CONSTITUTION, USNA, ROTC units, etc.).

5.f.  Restriction of Movement (ROM):  Term for limiting personal interaction
to reduce risk to a broader population.  Personnel executing directed ROM
remain in a duty status and will not be charged leave.  ROM-sequester, when
directed, is the Navy term for preemptive ROM in order to reduce risk of
infection in advance of movement. Because of the Navy vaccination policy,
ROM and ROM sequester are now rare, but may be required in specific cases or
in concert with movement to a foreign country. For tracking and trending
purposes, report instances of ROM and ROM-sequester to N3N5 via the POC
listed above.

5.g.  Isolation.  The separation of an individual or group infected or
believed to be infected with a communicable disease from those who are
healthy in such a place and manner to prevent the spread of the communicable
disease.

5.h.  Health Protection Measures (HPM):  Comprehensive term for mitigation

Case 4:21-cv-01236-O  Document 227  Filed 02/21/23  Page 10 of 37  PageID 7685

measures that reduce the spread of COVID 19.  This includes physical
distancing, wearing masks, and enhanced environmental cleaning and
disinfection.
Recommended HPMs are included on the CDC website and in paragraph 8 below.

5.i.  Viral Test:  For the purposes of this NAVADMIN viral test may refer to
either a test that measures the antigens (antigen test) or a test that
measures viral RNA (nucleic acid amplification test (NAAT) to include
Polymerase Chain Reaction (PCR) test).

5.j.  Close Contact:  The definition of a close contact has become more
discretionary (no longer strictly within 6 feet for greater than 15 min
within 24 hrs).  Per reference (b), a close contact is now identified
through contact tracing and exposure risks.  Exposure risks are based upon
multiple factors that can result in higher transmission risk,
including: length of time and distance from an infected person; if that
infected person was coughing, singing, shouting, or breathing heavily; if
that infected person had symptoms at the time of exposure; if either or both
persons were wearing a mask or respirator; and, how well ventilated the
space was.

6.  ACTION:  Per reference (b), all personnel assigned to operational Navy
units shall be fully vaccinated against COVID 19.  To ensure continuing
protection, all personnel assigned to operational units are encouraged to
remain UTD on vaccinations.  Unvaccinated personnel shall not execute orders
to operational Navy units.  Commanders of operational units shall
temporarily reassign unvaccinated personnel from their commands with the
concurrence of the first flag officer in the operational chain of command
(or OPNAV N3N5, as applicable per paragraph 5.e).  Exceptions will be
managed case-by-case by the applicable NCC and reported to the POC listed
above.

6.a. Actions for personnel suspected of being infected:

6.a.1. Symptomatic.  Test immediately those individuals exhibiting
COVID-19 symptoms.  If positive, isolate the individual per paragraph

6.a.3. and identify close contacts per reference (b).

6.a.2. Close Contact.  Remain on duty, but wear a mask for 10-days starting
on the day identified as a close contact.  If symptoms develop, isolate
until tested and carry out the actions of paragraph 6.a.1.

6.a.3.  Isolation.  Isolate individuals who test positive for five days or
until symptoms are clearing, whichever is longer, including 24 hours with no
fever and without fever-reducing medication (day zero is date of positive
test or symptom onset, whichever occurred first).  Isolation may be
conducted either ashore or afloat. Once released, individuals will wear a
mask for an additional five days (minimum 10 days total).  No exit testing
is required.

6.b.  Actions for Unvaccinated Personnel. In addition to the actions in
paragraphs 6.a above, if a person develops symptoms who is unvaccinated,
partially vaccinated, or unwilling to disclose their vaccination status or
is identified as a close contact (e.g., during the transfer process), refer
the individual to medical providers.

7.  COVID-19 Testing.

7.a.  Test Procurement.  Demand for testing supplies remains high.
To ensure uninterrupted operations, and as feasible, commands should
coordinate with their supporting supply activities to obtain testing
supplies 60 days in advance of need.  This should include additional tests
required for U.S. testing of personnel during anticipated port calls.

7.b.  Testing of Persons Previously Infected with COVID-19.
Because of lingering non-infectious virus activity, persons have tested
positive for up to 90-days following diagnosis.
Accordingly, viral retesting is neither required nor recommended within 90
days of initial diagnosis.  If symptoms develop at any time during this same
90-day period, isolate until evaluated by a medical provider.

7.c.  Surveillance / Command-Wide Testing.  Surveillance or command-wide
testing is not required or recommended and has previously identified large
numbers of asymptomatic persistent false positives.

7.d.  Testing Priority.  Personnel exhibiting COVID-19 symptoms are the
highest priority for testing. If testing asymptomatic close contacts per
paragraph 6.a.2 will stress testing supplies, or if operations preclude
testing (e.g., small, remote teams or depleted testing supplies), Commanders
are authorized to forego testing asymptomatic close contacts regardless of
their vaccination status.  This prioritization is consistent with CDC
guidance (https://www.cdc.gov/coronavirus/2019-ncov/php/
contact-tracing/contact-tracing-plan/prioritization.html).

8.  Operating in a COVID-19 Environment.  The guidance in this section
endeavors to balance risk to force and risk to mission with the risk of
operating in a COVID-threat environment.  Broad latitude is afforded both
NCCs and their subordinate Commanders.

8.a.  Up-to-date (UTD) COVID-19 Vaccination.  Commanders should encourage
UTD COVID-19 vaccination of personnel at least 30-days prior to
deployment-related movements or operations.

8.b.  Medical Screening.  Medically screen newly reported personnel and
conduct a command-wide monthly data review and assessment in
high-transmission areas, as directed by the NCC. Complete an additional
pre-deployment screening seven days prior to deployment.
Screening shall be conducted by medical providers and reported to the unit
Commander to assist in assessing risk and mitigations.
Screening will include, at a minimum, vaccination and vaccine booster
status, review and assessment of COVID-19 exposure history (those under the
90-day rule), and underlying risk factors.

8.c.  Military Sealift Command (MSC).  Commander MSC will exercise such
exceptions and mitigations regarding Civil Service Mariners
(CIVMARs) and contract personnel, in accordance with existing MSC Quality
Management System processes and procedures.

8.d.  Fully vaccinated High-Risk Personnel.  The decision to operate and
deploy with fully vaccinated high-risk personnel rests with the Commander,
as advised by medical providers, who must report intentions to their
immediate superior in command.
High-risk personnel shall be PCR viral tested within three days prior to
embarking.

8.e.  Pre-Deployment ROM-sequester.  Fully vaccinated personnel should not
normally ROM-sequester ahead of planned operations.
However, Geographic Combatant Commanders (GCC) and some host nations may
direct ROM-sequester prior to deploying to specific areas of operation.  Per
paragraph 5.f, and for tracking and trending purposes, report instances of
ROM and ROM-sequester via the POC listed above.

8.f.  Underway HPM.  As a result of demonstrated vaccine effectiveness, a
100% fully vaccinated operational force, and a healthy demographic, serious
illness or death resulting from COVID-19 for fully vaccinated individuals is
statistically unlikely, and modeling contained in references (c), (d), and
(e) indicates this will continue in the context of current variants.  UTD
COVID-19 Vaccination reduces the risk even further.  However, the increasing
contagious nature of evolving variants, combined with the isolation

App 009

Case 4:21-cv-01236-O  Document 227  Filed 02/21/23  Page 12 of 37  PageID 7687

requirements of paragraph 8.a.3, can result in unmanageable number of even
mild illnesses, and increased risk to force or risk to mission.
The following HPM, at a minimum, are required as practicable:

8.f.1.  Medical screening as outlined above in paragraph 8.b.

8.f.2.  Masks.  Following inport periods, Commanders should consult with
medical providers regarding the inport threat environment and may consider
wearing masks for the first 10-days at sea following departure from port.
Similarly, Commanders may consider wearing masks in response to the onset of
onboard COVID-19 cases until the spread is bounded and the impact is
assessed.

8.f.3.  Educate and reinforce the importance of both self-monitoring for
symptoms and prompt reporting.

8.f.4.  Educate and reinforce the importance of frequent hand-washing or
sanitizing and social distancing, when possible.

8.f.5.  Aggressively isolate COVID-19 positive individuals per paragraph 6
above.

8.f.6.  Ensure adequate ventilation in spaces routinely manned.

8.f.7.  Educate and reinforce focused cleaning efforts on high-touch
surfaces, at least daily or more frequently, depending upon usage (e.g.,
tables, hatch latches, ladderwells, phones, watch console keyboards and
buttons, toilets, faucets, sinks, etc.).  Although remote, there is evidence
of surface spread of COVID-19 and other viruses with similar symptoms.

8.g.  Considerations for Adding or Relaxing HPM.  NCCs and Commanders should
consider for any unit the operational impact resulting from the number of
Sailors in isolation, either ashore or afloat, regardless of percentage of
immunized personnel, UTD COVID-19 Vaccinations, or severity of symptoms.
Commanders may elevate or relax HPM at any time in support of operational
safety and effectiveness and retain the latitude to temporarily apply
alternate HPM in lieu of isolation.  An example might be a rapid spread that
compels a Commander to employ asymptomatic or mildly symptomatic positives
to manage watch-bill impact while recovering others in isolation, applying
additional alternate measures as needed to minimize spread.  The following
should be considered before adjusting HPM:

8.g.1.  Overall number of individuals in isolation and trend.
The general rule of thumb for a COVID-19 outbreak trending in a favorable
direction is that the number of those exiting isolation matches (flattening
curve) or exceeds (lowering curve) those entering isolation, combined with
the assessment that the total number of symptomatic individuals is
manageable and improving, and watch-bill (operational) impact is manageable
and improving.

8.g.2.  In the presence of onboard COVID 19, if less than 75% of the total
eligible crew is UTD for vaccinations (meaning more than 25% of the crew
meets the criteria for, but has not received a vaccine booster, implement
the requirements of 8.f.2 (mask wearing) until the impact and trend (8.g.1)
are determined.

8.g.3.  Proximity to shore or afloat Medical Treatment Facilities, balanced
with HPM and onboard trend.  For example, crews that are
100 percent fully vaccinated with a manageable COVID-19 case load may choose
to operate in locations within a one week timeline to a Medical Treatment
Facility, while crews with a growing caseload may more prudently move to a
72-hour or less timeline.

8.h.  Port Visits.  Liberty is an important mission and should be pursued
within the context of this NAVADMIN.  Geographic Navy Component Commanders

App 010

Case 4:21-cv-01236-O  Document 227  Filed 02/21/23  Page 13 of 37  PageID 7688

(GNCC) will set conditions for foreign port-off-base liberty in coordination
with country teams and local authorities, taking into account host country
requirements, vaccination and booster status, sovereign immunity per
paragraph 9 below, COVID-19 prevalence and mission requirements.

8.i.  Aircraft Operations.  On a case-by-case basis, Squadron Commanders may
exempt aircrews and aircraft maintainers from this guidance in order to meet
emergent operational or NATOPS currency requirements.  Exemptions and
mitigation plans must be approved by the Squadron Commander.  This authority
may be delegated to Officers in Charge of deployed detachments.  For
aviation units embarked on surface ships, mitigation plans will be
coordinated with the ships health protection plan and approved by the ships
Commanding Officer or Master.

8.j.  Post-Deployment.  Personnel returning to homeports from deployment
shall follow CDC and U.S. Department of State travel and testing
requirements.  If return travel includes foreign countries, personnel shall
follow the travel and testing requirements for those individual countries,
subject to sovereign immunity concerns (paragraph 9 below).  Updated travel
information is on the following
website: https://travel.state.gov.

8.k.  50+ Participant Meetings.  Reference (b) directs additional approval
requirements for Navy sponsored in-person gatherings with more than 50
participants.  When local installation HPCON level is "Charlie" or greater,
Under Secretary of the Navy approval is required.  All meeting organizers
should require all attendees to follow requirements of exposure risk,
including distancing.
Meeting requests for Under Secretary of the Navy approval shall be routed
through the resource owner to the Director of Navy Staff.
Reference (b) exempts military training and exercise events from this
requirement. NCCs shall use discretion when exercising this exemption,
balancing the health and safety of participants with the potential elevated
risk posed by the exemption.

9.  Sovereign Immunity.

9.a.  It is U.S. Government policy to protect the sovereign immunity of
warships, naval auxiliaries, and aircraft, including protecting crew
information to the maximum extent possible.  Within the context of COVID-19,
host nations may request or require crew or ship information that exceeds
that authorized by U.S. policy or international law.  NCCs will ensure
appropriate training and guidance on protecting U.S. sovereign immunity and
on the protection of health information as part of OPSEC/personal security.

9.b.  GNCCs should endeavor to determine in advance those host nations that
may challenge U.S. sovereign immunity and, as able, avoid them. See
reference (f) for additional guidance.  In all cases, GNCCs shall authorize
the minimum information necessary in order to meet operational requirements.
The Navy Declaration of Health (NAVMED 6210/3) is the only authorized form
for providing health information to foreign officials.  If required by the
host nation, and with GNCC concurrence, Commanders, at their discretion, may
include on the NAVMED 6210/3 (or on a separate U.S. generated document
accompanying the NAVMED 6210/3 (e.g., Command Letterhead) that their unit is
100% UTD vaccinated, those disembarking have tested negative within the
required timeframe, or that those disembarking have received a vaccine
booster.  GNCCs may delegate concurrence authority no lower than numbered
fleet Commanders.

9.c.  Exceptions to Policy (ETP).  On a case-by-case basis, and to support
operations, OPNAV N3N5 may grant an ETP to mitigate the operational impact
of host nation requirements.  Any action that may constitute or require a
waiver of sovereign immunity must be coordinated by the applicable GNCC with
OPNAV N3N5 for ETP approval no later than five days ahead of need.  To avoid
precedence beyond COVID-19, an ETP will be messaged to the host nation as

App 011

Case 4:21-cv-01236-O   Document 227   Filed 02/21/23   Page 14 of 37   PageID 7689

explicitly linked to the pandemic.  Requests shall include justification for
port selection, host nation mitigation and testing requirements, alternate
port options, impact to mission if the request is denied, medical, legal,
collection and privacy risk, and feedback from country team coordination.
Notifications and requests may be sent via record message traffic, email to
the POC provided above, or both.


9.d.  Guidance for Commanders.  Per the direction of their GNCCs, Commanders
shall comply with domestic and foreign quarantine regulations for port entry
and document compliance on NAVMED 6210/3.  Absent GNCC approval in advance,
Commanders will not submit to host nation COVID-19 testing nor provide
individual or collective medical data, copies of health records, nor any
supplementary or locally-demanded health forms, and shall not grant access
to ship or crew health records or allow the same to be searched or inspected
by host nations.  If compelling circumstances require a Commander to
acquiesce to additional host nation requirements without obtaining an ETP or
GNCC concurrence (e.g., personnel emergency, weather avoidance), report the
event and circumstances as soon as practicable to OPNAV N3N5 via the chain
of command.


10.  Reporting Procedures.  Reference (g) is cancelled.  All COVID-19 cases
for Navy service members, dependents, civilian employees, and contractors
shall be reported to Senior Navy Leadership via the OPNAV COVID-19
SharePoint; access and instructions are available at
[https://portal.secnav.navy.mil/cop/crc/COVID]. OPREP-3 Navy Blue messages
are required for: 1) COVID-19 related deaths; 2) Service Member MEDEVACs
associated with COVID-19; 3) COVID-19 media interest events, and 4)
Significant operational impacts due to COVID-19.
Format messages IAW Reference (h).


11.  Released by VADM W. R. Merz, Deputy Chief of Naval Operations for
Operations, Plans and Strategy, OPNAV N3N5.//


BT
#0001
NNNN
UNCLASSIFIED//

App 012

# Exhibit 3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

U.S. NAVY SEALs 1-3; *et al.*,

                    Plaintiffs,

v.

LLOYD J. AUSTIN, III, in his official capacity as
United States Secretary of Defense; *et al.*,

                    Defendants.

Case No. 4:21-CV-01236-O

## SECOND DECLARATION OF GARETH J. HEALY

I, Gareth J. Healy, U.S. Navy, hereby state and declare as follows:

1.      I am a Captain in the United States Navy, currently serving as Deputy Director for
Military Personnel Plans and Policy (OPNAV N13B), located in Arlington, Virginia.  As part of
my duties as Deputy Director for Military Personnel Plans and Policy (OPNAV N13B),  I make
this declaration in my official capacity, based upon my personal knowledge and upon
information that has been provided to me in the course of my official duties.

2.      I have been assigned to my current position since September 12, 2022.  Prior to
my current assignment, I served as Commander, Task Force 75 with operational command of
Navy Expeditionary Combat Forces under U.S. Seventh Fleet.  As part of my duties currently, I
am responsible for the development of polices and plans for the accession, retention, and
promotion of active and reserve military personnel while translating essential mission
capabilities into manpower, training and education requirements to enable Navy's warfighting
readiness.  The scope of these duties span officer and enlisted community management, the

1

analysis of manpower requirements at all sea and shore based commands, and the resourcing requirements to shape the Navy's Total Force. Additionally, I oversee the offices that both process all Religious Accommodation (RA) requests (to include COVID-19 vaccination waiver requests) and separation/retirement actions directed to the Navy's COVID-19 Consolidated Disposition Authority (CCDA). As such, I am aware of the following information regarding the named Plaintiffs in the captioned litigation.

3.      I am aware that Plaintiffs have provided the court with a service member's complaint of wrongs under Article 138, which includes a Standard Operating Procedure ("SOPs") tailored to the staffing process for religious accommodation requests from the COVID-19 vaccine, and which the complainant alleges violates the Religious Freedom Restoration Act (RFRA) and DoD policy. See ECF 62, Ex. 1. As Captain Mery Angela Sanabria Katson, who previously oversaw Navy's RA review process, explained in her declaration of February 15, 2022, SOPs are frequently used tools by military staff officers to implement efficient and uniform administrative procedures across a wide-range of military issues, particularly when an activity is predicted to be of a duration where turnover of personnel warrants continuity of process. These tools are not designed to predict final decision maker outcomes, but instead succinctly capture extensive steps to facilitate a final action or decision.

4.      This particular SOP was developed in order to efficiently process the unprecedented influx of religious accommodation requests related to the COVID-19 vaccine requirement. [1]   The SOP outlined a process to ensure that RA requests for the COVID-19 vaccine were complete in order to ensure they were fairly adjudicated.

--------

[1] As Captain Katson noted in her prior declaration, religious accommodation requests for vaccines drastically increased after issuance of the now rescinded COVID-19 mandate. As Captain Katson noted based on a review of records available, only 66 requests for religious

App 015

5.      As Captain Katson previously noted, the SOP did not dictate the manner in which the adjudicating authority, i.e., DCNO N1, assesses any particular RA request. The SOP was entirely devoted to the administrative processing of RA requests to promptly field new RA requests, efficiently compile the necessary information for DCNO N1 action, and return adjudicated requests to the Service member. Indeed, Steps 1-45 were solely concerned with actions below the level of DCNO N1, and Steps 46-50 describe the actions taken subsequent to DCNO N1's decision. All of the steps described in the SOP were performed by administrative clerks who do not provide any recommendation with respect to the request, nor do they have any decision-making authority. Overall, the "SOP" was designed to help action officers understand the procedural sequence of administrative steps to prepare a product, and were not designed to predict or foreclose any substantive outcome.

6.      On January 10, 2023, the Secretary of Defense rescinded the Department of Defense ("DoD") August 2021 vaccination requirement as directed in the James M. Inhofe National Defense Authorization Act for Fiscal Year 2023 ("NDAA"). The Secretary of Defense further directed that decision makers should "cease any ongoing reviews" of requests for accommodation from the rescinded COVID-19 vaccination requirement. The Navy then issued further guidance cancelling its implementation of the DoD vaccination requirement. See NAVADMIN 005/23. In light of these developments, the DCNO N1 staff has permanently discontinued the use of this SOP.

---

accommodation from any vaccine (excluding the COVID-19 vaccines) were received from 2015 to the present. By contrast, 4,175 religious accommodation requests from the COVID-19 vaccine have been received as of February 14, 2022.

3

7.      Sailors may continue to seek accommodation of religious practices, including immunization requirements, as outlined in Bureau of Naval Personnel Instruction ("BUPERSINST") 1730.11A (attached as Exhibit A to this declaration).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 16th day of February, 2023.

G. J. HEALY
Captain, U.S. Navy

4

# Exhibit A



**DEPARTMENT OF THE NAVY**
CHIEF OF NAVAL PERSONNEL
701 SOUTH COURTHOUSE ROAD
ARLINGTON VA 22204-2472

BUPERSINST 1730.11A
N13
16 Mar 2020

BUPERS INSTRUCTION 1730.11A

From:  Chief of Naval Personnel

Subj:  STANDARDS AND PROCEDURES GOVERNING THE ACCOMMODATION OF
RELIGIOUS PRACTICES

Ref:   (a) DoD Instruction 1300.17 of 10 February 2009
       (b) SECNAVINST 1730.8B
       (c) NAVPERS 15665I
       (d) BUMEDINST 6230.15B

Encl:  (1) Sample Request for Waiver of Policy to Accommodate a Religious Practice
           (Template)
       (2) Chaplain Interview Checklist (Template)
       (3) Chaplain Memorandum for the Record (Template)
       (4) Religious Accommodation Approval or Endorsement (Template)

1.  <u>Purpose</u>.  To provide policy, guidance, procedures and responsibilities for the
accommodation of practices in support of sincerely held religious beliefs for Sailors and
prospective accessions, per references (a) and (b).  Reference (c) provides the Navy's manner of
wear policy for the most commonly requested waivers of uniform and grooming standards in
support of religious practices, as delineated in paragraph 5.

    a.  This revision updates policy, guidance and procedures for the accommodation of
practices in support of sincerely held religious beliefs.

    b.  This is a complete revision and should be reviewed in its entirety.

2.  <u>Cancellation</u>.  BUPERSINST 1730.11.

3.  <u>Scope and Applicability</u>

    a.  This instruction applies to all active and reserve members of the Navy, including
applicants for entry into the Navy and Navy Reserve, as well as midshipmen at the U.S. Naval
Academy (USNA) and in the Naval Reserve Officers Training Corps (NROTC), and officers and
officer candidates in Navy officer accession programs.  Nothing in this instruction precludes
disciplinary or administrative action for conduct that is proscribed by the Uniform Code of
Military Justice or supporting policies.

BUPERSINST 1730.11A
16 Mar 2020

b.  Conscientious Objectors.  Conscientious objections are not covered under this instruction. See DoD Instruction 1300.06 (Conscientious Objector) of 12 July 2017.

c.  Peyote Use.  Peyote use is not covered under this instruction.  See Assistant Secretary of Defense for Force Management Policy Memorandum of 25 April 1997, *Sacramental Use of Peyote by Native American Service Members*.

3.  Background.  This policy complies with references (a) and (b) and supports the Navy's culture of diversity, tolerance and inclusion.  In line with section 2000bb-1 of Title 42, United States Code, requests for religious accommodation from a military policy, practice or duty that substantially burdens a Sailor's exercise of religion may be denied only when the military policy, practice or duty furthers a compelling government interest and is the least restrictive means available of furthering that compelling government interest.  Religious liberty is more than freedom to worship.  It includes the freedom to integrate one's religion into every aspect of one's life.  When the policies or procedures of the Navy conflict with a Sailor's religious practices, the Navy works to support the Sailor's religious practices to the broadest extent possible within the bounds of military readiness, unit cohesion, good order, discipline, health and safety.  Many religious practices such as (but not limited to) religious observances and dietary practices do not need a request for waiver of policy and can be accommodated at the command level.

4.  Roles and Responsibilities

a.  Sailors.  Sailors seeking accommodation of a religious practice that requires a waiver of Navy policy ("requestors") must submit a request in writing to their commander, consistent with enclosure (1).  Prospective accessions seeking accommodation of a religious practice that requires a waiver of Navy policy ("requestors") should use the accession source chain of command, consistent with subparagraph 5b, enclosure (1) and Table 2.

(1) A requestor must comply with the applicable policy, practice, direction or duty from which he or she is requesting a religious accommodation until the request is adjudicated. Additionally, commanders and commanding officers ("commanders") may temporarily modify or suspend a religious accommodation, consistent with subparagraph 5g.

(2) A requestor with an approved religious accommodation must inform his or her chain of command of the approved accommodation upon checking in to a new command or changing duties.  A requestor must retain a copy of the approved accommodation and be able to produce it within five working days.

b.  Chaplains.  Command chaplains are responsible for advising and assisting commands with religious accommodation policy execution.  In line with SECNAVINST 1730.7E, chaplains, assisted by Religious Program Specialists, provide for and facilitate religious requirements of Sailors and authorized users and advise commanders on command religious program matters throughout the Department of the Navy (DON).

2

(1) A Navy chaplain will conduct an administrative interview for each religious accommodation request that requires a waiver of policy.  Local chaplains should be used if available.  Chaplains may use any means available to ensure the interview takes place promptly, such as telephone or video conference.  The chaplain should use enclosure (2) during the interview and must produce a memorandum for the record consistent with enclosure (3).

(2) The chaplain will inform the Sailor or prospective accession that the interview is for the purpose of preparing a memorandum for the record and advising the command, and that the content of the interview is not privileged or confidential as defined in SECNAVINST 1730.9A and the Manual for Courts-Martial Military Rule of Evidence 503.

c.  Commanders and Commanding Officers (CO).  Commanders must process requests according to the timelines, routing and criteria set forth in this instruction.

(1) When forwarding a request for adjudication or appeal, commanders will use enclosure (4).

(2) Commanders must obtain the advice of a judge advocate and a chaplain prior to acting on a request that involves a waiver of Navy policy.

(3) Commanders will include a religious needs assessment upon check-in to the command in line with OPNAVINST 1730.1E to include identification of Sailors who may need previously-approved religious accommodation waivers reviewed.

d.  Deputy Chief of Naval Operations (Manpower, Personnel, Training and Education) (CNO N1).  CNO N1 is responsible for overseeing this religious accommodation policy and will review and act on religious accommodation requests that require waiver of Department of Navy (DON) policy and are routed to CNO N1 for approval as indicated in Tables 1 and 2.

5.  Policy.  In accordance with Article 0820 of United States Navy Regulations, 1990, commanders will provide maximum opportunity for the free exercise of religion by members of the naval service.

a.  Standards-Based Approach.  The Navy has a compelling governmental interest in mission accomplishment at the individual, unit and organizational levels, including such necessary elements of mission accomplishment as military readiness, unit cohesion, good order, discipline, health and safety. The military is a specialized community within the United States, governed by a discipline separate from the rest of society.  All Navy personnel must expeditiously review and act on requests for religious accommodations.  Many religious practices do not require an exception to Navy policy and can be accommodated at the command level.  The term "religious practice" includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief.

3

BUPERSINST 1730.11A
16 Mar 2020

(1) Each request for religious accommodation must be reviewed on a case-by-case basis, giving consideration to the full range of facts and circumstances relevant to the specific request. Requests to accommodate religious practices should not be approved or denied simply because similar requests were approved or denied.  The following factors should be considered:

(a)  applicable operational or regional policies,

(b)  importance of the military policy, practice or duty in terms of mission accomplishment, including military readiness, unit cohesion, good order, discipline, health, or safety,

(c)  importance of the practice to the requestor,

(d)  cumulative impact of repeated accommodations of a similar nature and

(e)  alternate means to fulfill the request.

(2) To comply with the intent of section 2000bb-1 of Title 42, U.S. Code, commanders and their staffs should remain objective in considering requests to accommodate religious practices.  Commanders will not deny or recommend denial of a religious accommodation unless the denial or partial denial furthers a compelling governmental interest and is the least restrictive means of furthering that compelling government interest.  It is essential that commanders articulate the factual basis underlying any compelling government interest and that they articulate why a recommended denial or partial denial is the least restrictive means available to the commander to protect the compelling government interest over the individual request.  Factors to consider include (but are not limited to) whether approving the accommodation would:

(a)  pose a health or safety hazard (such as flammable materials or loose clothing that could become caught in a piece of equipment),

(b)  interfere with the wear or proper function of special or protective clothing or equipment (such as a respirator, protective helmet or communication gear) or

(c)  otherwise impair mission accomplishment, good order, discipline, morale or unit cohesion.

(3) Sometimes it is necessary for commanders to recommend an alternative manner by which the religious requirement may be met.  For example, there may be options and resources not known to the member at the time of his or her request that might be known to the commander.  Those alternatives should be discussed and offered to the member to determine if they might satisfy some or all of the member's religious requirement.  Where appropriate, the chaplain memorandum may discuss alternative means available to address the requested accommodation.

BUPERSINST 1730.11A
16 Mar 2020

(4) Religious practices and corresponding approval authorities are listed in Table 1. Many religious practices, such as (but not limited to) religious observances and dietary practices do not need a request for waiver of policy and can be accommodated at the command level. Other religious accommodations may be approved by the first O-6 in the chain of command, whether the requestor's CO or Immediate Superior in Command (ISIC).  Per reference (a), exceptions to Table 1 are not permitted without CNO N1 approval.

| Type of Religious Practice | Authority |
|---|---|
| Religious observances per subparagraph 5d(1) | CO |
| Dietary practices per subparagraph 5d(2) | CO |
| Neat, conservative head covering in line with subparagraph 5d(4)(a), which requires waiver of uniform regulation provisions in reference (c) | Approvals authorized at O-6 CO/ISIC level.  O-6 CO/ISIC send recommendation for **disapproval** directly to CNO N1 |
| Unshorn hair on men in line with subparagraph 5d(4)(b), which requires waiver of uniform regulation provisions in reference (c) | O6 CO/ISIC send recommendation directly to CNO N1 |
| Beard, which requires waiver of requirement for male Sailors to be clean shaven found in reference (c), in line with subparagraph 5d(4)(c) | O6 CO/ISIC send recommendation directly to CNO N1 |
| Uniform, grooming or religious apparel waivers not authorized at the CO or O-6 CO/ISIC level in line with reference (c) | O-6 CO/ISIC send recommendation directly to CNO N1 |
| Immunizations per subparagraph 5d(3) | O-6 CO/ISIC send recommendation directly to CNO N1 |
| All other types of religious practices that require a waiver of Navy policy to support | O-6 CO/ISIC send recommendation directly to CNO N1 |

Table 1.  Authorities and Religious Practices
Note 1:  Pre-accession authority examples are listed below in subparagraph 5b.

5

BUPERSINST 1730.11A
16 Mar 2020

b.  <u>Accessions</u>

(1) Navy accession sources, Navy Recruiting Command, Naval Service Training Command, USNA and U.S. Navy Bureau of Medicine and Surgery (BUMED), are the designated chains of command for pre-accession requests in line with Table 2.  Accession source headquarters are responsible for ensuring active and reserve enlisted and officer accessions are informed of uniform and grooming standards and policies, as well as procedures for seeking religious accommodations.  Accession source headquarters must document this opportunity in writing and ensure all accession requests for religious accommodation are adjudicated prior to entering service.  The following language should be used to document the applicant understanding of the Navy's religious accommodation policy:

"I understand that Department of the Navy policy is to accommodate religious practices whenever possible, unless doing so would have an adverse impact on mission accomplishment, including military readiness, unit cohesion, good order, discipline or health and safety.

I understand accommodation of my religious practices cannot be guaranteed at all times.  I understand that determination of military necessity rests entirely with my Navy chain of command, and that I will be expected to comply with the Navy's policy, practice or duty from which I am requesting accommodation unless and until approved by the designated authority.

I do NOT desire to request support for specific religious practices at this time

_____
(Applicant Signature)

I DO desire to request support for the following religious practice(s):

_____
(Type of Request)

_____
(Applicant Signature)

Applicants requesting religious accommodation may not enlist or commission until they receive a final response in writing.  Accession commands must immediately process the request in line with BUPERSINST 1730.11A (Standards and Procedures Governing the Accommodation of Religious Practices).
_____
(Typed or Printed Name and Signature of Witnessing Recruiting Representative)"

6

App 024

BUPERSINST 1730.11A
16 Mar 2020

(2) Additionally, prospective accessions must be given the opportunity to route a religious accommodation request prior to departure for a Military Entrance Processing Station. Many pre-accession religious practices such as (but not limited to) religious observances and dietary practices do not need a request for waiver of policy and can be accommodated at the command level. Certain requests for religious accommodation may be approved by local commanders as listed in Table 2, below. Per reference (a), exceptions to this table are not permitted without CNO N1 approval.

| Type of Religious Practice | Process | Notes |
|---|---|---|
| Religious observances | Route to RTC/OTCN CO for approval | RTC/OTCN CO send recommendation for disapproval directly to CNO N1 |
| Dietary practices | Route to RTC/OTCN CO for approval | RTC/OTCN CO send recommendation for disapproval directly to CNO N1 |
| Religious head covering during RTC/OTCN | RTC/OTCN CO may approve religious head covering during religious ceremonies/services only | If religious head covering during religious ceremonies/services only is not acceptable by applicant, then send to CNO N1 |
| Unshorn hair on men in line with subparagraph 5d(4)(b), which requires waiver of uniform regulation provisions in reference (c) | RTC/OTCN CO send recommendation directly to CNO N1 | |
| Any request for beards during RTC/OTCN | RTC/OTCN CO send recommendation directly to CNO N1 | |
| Uniform, grooming or religious apparel accommodation that do not require waiver of DON policy | Route to RTC/OTCN CO for approval | Disapproval recommendations must be routed to CNO N1 |
| Immunizations | RTC/OTCN CO may approve use of any available alternative vaccinations | If no alternative vaccines are available, then send recommendation directly to CNO N1 |
| All other requests that require a waiver of Navy policy | Route to CNO N1 | |

7

Table 2.  Authorities and Religious Practices for Pre-Accession and Recruit Training

c.  <u>Timelines</u>.  For waivers of policy requiring adjudication at the commander or O-6 CO/ISIC level, final review and written notification to the requestor will be completed no later than 7 days from the date the requestor submitted the request to his or her immediate commander.  Extensions for good cause may be granted by the Director, Military Personnel, Plans and Policy (OPNAV N13).  Examples of good cause for an extension include operational necessity or lack of immediate access to a judge advocate or chaplain.  All religious accommodation cases forwarded from an O-6 CO/ISIC or RTC/OTCN to CNO N1 for adjudication must be forwarded within 7 days from the date the requestor submitted the request to his/her immediate commander, and will be expeditiously adjudicated in line with references (a) and (b).  To ensure timely and consistent adjudication of all requests, active and reserve Sailors will not submit a request for a religious accommodation that would require a waiver of Navy policy if they are expected to execute permanent change of station orders within 90 days.  Written notification should be given to the requestor within 5 days upon any decision, modification, suspension or revocation of a waiver of policy.

d.  <u>Religious Practice Type</u>

(1)  Observances of Worship and Holy Days.  Worship practices, holy days and Sabbath or similar religious observance requests will be accommodated except by necessity, consistent with mission accomplishment, U.S. Navy Regulations, and Navy Military Personnel Manual (MILPERSMAN) article 1731-010.  These requests do not normally require a waiver of policy.

(2)  Dietary Practices.  Commanders should support religious dietary observances to the fullest extent possible.  Commanders normally support religious dietary observances through a standard core menu that supports many religious dietary requirements or by issuing Meals Ready to Eat, Religious.  In certain circumstances, commanders may consider other alternative solutions.

(3)  Immunizations.  The Navy requires immunizations for all Sailors, based on its compelling interest in mission accomplishment, including military readiness, unit cohesion, good order, discipline, health and safety.  Local commanders should make a reasonable effort to acquire alternative vaccinations, when available, that meet both religious needs of Sailors and the Navy's immunization requirements as determined by BUMED.  Refer to MILPERSMAN 1730-020 as needed.  Medical waivers of immunization requirements not associated with religious belief will continue to be adjudicated by the health care provider as addressed in reference (d).

(4)  Uniform and Grooming.  Pursuant to subparagraph 5a above, to determine whether a religious accommodation might interfere with the accomplishment of the unit or individual mission(s), a commander should consider such factors as the safe and effective operation of weapons, work center equipment and machinery, as well as wear of protective clothing or equipment.  Commanders should also state in the endorsement or approval how the religious accommodation may need to be modified in operational, non-operational or training environments.

BUPERSINST 1730.11A
16 Mar 2020

(a)  Head Coverings. As delineated in Table 1, religious accommodations for Sailors on all duty types to wear neat and conservative religious head coverings such as (but not limited to) a hijab, turban, kufi, kippah or yarmulke may be authorized at the O-6 CO/ISIC level based upon the operational environment and in line with reference (c).  Except in the case of safety or protective headgear required by a Sailor's duties, position or assignment, Sailors granted a religious accommodation for head coverings are not required to wear military headgear in addition to their religious head covering if such military headgear would violate their sincerely held religious beliefs.

(b)  Unshorn/Long Hair.  As delineated in Table 1, waivers of Navy policy for male Sailors on all duty types to wear unshorn/long hair must be sent to CNO N1 for decision.

(c)  Beards.  As delineated in Table 1, waivers of Navy policy for Sailors on all duty types to wear a beard must be sent to CNO N1 for decision.  Approved unshorn beards must be worn in a neat and conservative manner.  When a Sailor is authorized to wear a beard of greater than 2 inches in length, the beard must be rolled, tied and/or otherwise groomed to achieve a length not to exceed 2 inches when measured from the bottom of the chin.

(5)  Deoxyribonucleic Acid (DNA) Specimen Sampling.  Waiver requests from participation in DNA specimen collection should be forwarded to CNO N1 for final adjudication.  BUMED will be consulted prior to final adjudication.

(6)  Other Religious Accommodation Requests.  All other religious accommodation requests requiring a policy waiver not specified under this section will be routed to CNO N1 via OPNAV N13 for adjudication.

e.  Routing.  For those requests that require a waiver of policy:

(1)  A requestor seeking a waiver of Navy policy must submit a request in writing through his or her commander using the template at enclosure (1).  The requestor must state the waiver sought and may elaborate on the sincerely-held religious beliefs or circumstances motivating the request.

(2)  Every requestor seeking religious accommodation requiring a waiver of Navy policy must interview with a Navy chaplain.  The chaplain will assess whether the requestor's religious beliefs appear sincerely-held, and will forward an evaluation to the commander using the templates provided in enclosures (2) and (3).

(3)  Commanders will take appropriate action on requests to stay within the timelines in subparagraph 5(c).  Requests forwarded by a commander to the O-6 CO/ISIC or to CNO N1 must include enclosures (1) through (4).  There are no additional requirements.

(4)  A copy of all waivers of uniform or grooming policy authorized at the O-6 CO/ISIC level must be forwarded via e-mail to OPNAV N13 for record keeping purposes at

9

BUPERSINST 1730.11A
16 Mar 2020

ALTN_Navy_Religious_Accommodations@navy.mil.  Requests forwarded from the O-6 CO/ISIC level to CNO N1 for adjudication must also be sent to that email address.  Forwarding waiver requests to OPNAV N13 via mail is highly discouraged and can potentially delay a decision for a Sailor.

(5)  For commands that do not have regular Navy/Marine Corps Intranet email accounts (e.g., overseas, sea duty or joint commands), email OPNAV N13 at ALTN_Navy_Religious_Accommodations@navy.mil first before sending attachments.

(6)  If the request contains Personally Identifiable Information (PII), the request must be labelled and encrypted appropriately.

(7)  A requestor who reports directly to another U.S. military service must route religious accommodation requests to the authority specified in the policies of that military service.  Sailors assigned to a Joint command will route requests to their respective Navy Element Commander for approval or recommendation to CNO N1 as delineated in Table 1.  In all circumstances Sailors will adhere to the provisions set forth in subparagraph 4a.

(8)  Questions from commands and requesters concerning religious accommodation requests may be referred to ALTN_Navy_Religious_Accommodations@navy.mil.

f.  Appeals

(1)  Appeals of command-level adjudication will be forwarded to the commander's O-6 CO/ISIC for adjudication.  Appeals of O-6 CO/ISIC level adjudication will be forwarded to CNO N1 for adjudication within 15 days from the date the requestor submits the appeal.  Appeals of CNO N1 adjudication will be forwarded to the Chief of Naval Operations (CNO) for final adjudication, unless other direction is provided in reference (a) or (b).

(2)  When a religious accommodation request is denied, the requestor may renew the request upon a change in physical, operational or geographical environment, or at any time in which there is a change to pertinent policy.

g.  Approval Duration, Withdrawal and Suspension.  Religious accommodations are subject to review, suspension or revocation, in whole or in part, any time there is a change in the circumstances upon which the initial religious accommodation was based (e.g., new duty assignment, temporary duty or other material change in circumstances).  However, an approved religious accommodation remains in effect until the commander or future commander notifies the Sailor or candidate in writing that a compelling government interest requires suspension or revocation of the accommodation.  The written notification must include the nature of the changed circumstances and specify the reason for the revocation and the length of the suspension.

App 028

BUPERSINST 1730.11A
16 Mar 2020

(1)  The authority to temporarily suspend a previously approved religious accommodation resides with the Sailor's CO, while the authority to permanently revoke a previously approved religious accommodation remains with CNO N1.  A commander may suspend or initiate revocation of an approved religious accommodation only upon a determination that a compelling government interest requires such suspension or revocation and that no less restrictive means of furthering that compelling government interest are available.  The decision to suspend or initiate revocation of an approved religious accommodation must be informed by the factors enumerated in this instruction.

(2)  A commander may require immediate compliance with suspension of a religious accommodation only if necessary due to an imminent threat to health or safety.  In any case in which there is no imminent threat, the Sailor or candidate must be given five business days to submit an appeal using the process described in subparagraph 5f(1).  The religious accommodation will remain in effect until the appeal process is completed.  When necessary, a Sailor may be assigned to temporary additional duty orders to protect him or her from circumstances that are incompatible with the religious accommodation while the appeal is being adjudicated.

(3)  When there is a change in military duties or requirements, a commander may suspend a previously approved religious accommodation if the suspension furthers a compelling government interest and is the least restrictive means available to further that interest.  For example, a Sailor with a grooming waiver authorizing him to wear a beard may be required to shave the beard to deploy to an area in which there is a high risk that the Sailor will have to don a gasmask.  When the conditions that required the suspension are no longer present, the Sailor may resume the religious practice per the original waiver.  There is no requirement for a Sailor to resubmit a request for a religious accommodation that has been suspended.

6.  Records Management

a.  Records created as a result of this instruction, regardless of format or media, must be maintained and dispositioned for the standard subject identification codes (SSIC) 1000 through 13000 series per the records disposition schedules located on the Department of the Navy/Assistant for Administration (DON/AA), Directives and Records Management Division (DRMD) portal page at https://portal.secnav.navy.mil/orgs/DUSNM/DONAA/DRM/Records-and-Information-Management/Approved%20Record%20Schedules/Forms/AllItems.aspx.

b.  For questions concerning the management of records related to this instruction or the records disposition schedules, please contact your local records manager or the DON/AA DRMD program office.

7.  Review and Effective Date.  Per OPNAVINST 5215.17A, OPNAV N13 will review this instruction annually on the anniversary of its issuance date to ensure applicability, currency and consistency with Federal, Department of Defense, SECNAV and Navy policy and statutory authority using OPNAV 5215/40 Review of Instruction.  This instruction will be in effect for 5 years unless revised or cancelled in the interim, and will be reissued by the 5-year anniversary

11

BUPERSINST 1730.11A
16 Mar 2020

date if it is still required, unless it meets one of the exceptions in OPNAVINST 5215.17A, paragraph 9.  Otherwise, if the instruction is no longer required, it will be processed for cancellation following the guidance in OPNAV Manual 5215.1 of May 2016.

JOHN B. NOWELL, JR
Deputy Chief of Naval Operations
(Manpower, Personnel, Training,
and Education)

Releasability and distribution:
This instruction is cleared for public release and is available electronically only via BUPERS/NAVPERSCOM Web site, https://www.public.navy.mil/bupers-npc/reference/Pages/default.aspx

12

BUPERSINST 1730.11A
16 Mar 2020

SAMPLE REQUEST FOR WAIVER OF POLICY TO ACCOMMODATE A RELIGIOUS
PRACTICE (TEMPLATE)

(Date)

From:   Rate or rank, as applicable, full name, branch and type of service as applicable
To:     Appropriate authority per Table 1 or Table 2 (i.e., O-6 CO/ISIC or CNO N1)
Via:    Appropriate authority per Table 1 or Table 2 (i.e., CO, O-6 CO/ISIC)

Subj:   REQUEST FOR WAIVER OF POLICY IN SUPPORT OF RELIGIOUS PRACTICE

Ref:    (a) DoD Instruction 1300.17 of 10 February 2009
        (b) SECNAVINST 1730.8
        (c) BUPERSINST 1730.11
        (d) Other references as needed

Encl:   (1) Photograph or graphic (as needed to show the neat and conservative color, manner of
wear, etc.)
        (2) Optional enclosures (e.g., religious leader endorsement or research in applicable area)

1.   Pursuant to references (a) through (c), I hereby request religious accommodation from Navy
policy (use reference as needed) to ___(describe the specific practice(s)) _____ due to my
religious belief that _____(paraphrase religious basis of the request)__.

2.   My request is based on my religious belief that_____ (provide a detailed explanation
here as desired)_____ and reference enclosure (1) or (2) as needed/desired.

3.   (Required statement) I certify that I understand that any approved or partially approved
waiver may not be appropriate for future duty to which I may be assigned, including operational,
non-operational or training command(s), and may be suspended or withdrawn in accordance with
reference (c).

_____
(Signature)

Enclosure (1)

BUPERSINST 1730.11A
16 Mar 2020

## CHAPLAIN INTERVIEW CHECKLIST TEMPLATE

| Requestor: | Interview Date: |
|---|---|
| Name: | Chaplain Interviewer: |
| Phone: | Phone: |
| Email: | E-mail: |
| Command: | Chaplain's Command: |

| Interview Preliminaries | | | |
|---|---|---|---|
| Yes | No | N/A | |
| | | | Chaplain reviewed policy and doctrine on religious accommodation and the policy for which the requestor is seeking accommodation. |
| | | | Applicant was notified that the interview is not confidential and will be used to advise the command. |
| | | | Chaplain explained to the applicant that confidential support can be received from another chaplain. |
| | | | Applicant has been granted a waiver for this practice previously. |
| | | | Applicant's Page 2 (NAVPERS 1070/602) reflects the belief cited in the application. |

| Type of Waiver Requested | | | |
|---|---|---|---|
| Yes | No | N/A | |
| | | | Uniform standards |
| | | | Grooming standards |
| | | | Immunization requirements |
| | | | DNA sampling |
| | | | Other (Please describe): |

| Interview | | | |
|---|---|---|---|
| Yes | No | N/A | |
| | | | Requestor's religious beliefs seemed honestly and sincerely held using one or more of the following factors: |
| | | | 1.   Requestor was credible (consistently keeps tenets, practices, etc.). |
| | | | 2.   Requestor's demeanor and pattern of conduct are consistent with the request. |
| | | | 3.   Requestor participates in activities associated with the belief(s). |
| | | | 4.   Other persons supporting the claim are credible. |
| | | | 5.   Request is supported by letter(s) of verification or endorsement from an organization espousing the beliefs which are the basis for the claim. |
| | | | Alternate means of accommodating the practice were explored in the interview. |

| Process Checklist | | | |
|---|---|---|---|
| Yes | No | N/A | |
| | | | Chaplain has prepared a memorandum documenting the interview. |
| | | | Chaplain reviewed memorandum with applicant and provided a copy. |
| | | | Chaplain submitted the memorandum and this document to the commanding officer via chain of command. |
| | | | Chaplain referred applicant to command to process request. |

BUPERSINST 1730.11A
16 Mar 2020

<u>CHAPLAIN MEMORANDUM FOR THE RECORD (TEMPLATE)</u>

From:   [Chaplain's rank and name], CHC, USN
To:       [Commanding Officer of requestor]

Subj:   REQUEST FOR A WAIVER OF POLICY TO ACCOMMODATE PRACTICE
          BASED ON RELIGIOUS BELIEF ICO [REQUESTOR'S RANK, NAME]

Ref:     (a) SECNAVINST 1730.8
          (b) SECNAVINST 1730.9

1.  (Requestor's rank and name) has submitted a request for accommodation of a religious practice per reference (a).  Per BUPERSINST 1730.11A, I interviewed the requestor on (date).  I explained that this interview would not be a confidential communication as defined by reference (b) and informed the requestor that referral for confidential chaplain support was available.

2.  Nature of the request.  (Provide a narrative summary of the request for religious accommodation and whether or not the requestor has previously had this or any other related request approved or denied)

3.  Basis.  (Identify the religious beliefs on which the accommodation request is based and provide a professional and objective opinion regarding the religious importance of the request to the member.  Include the requestor's religion as listed on NAVPERS 1070/602 (Page 2).

4.  Alternate Means.  (Indicate alternate means of meeting the request)

5.  Sincerity.  (Assess the sincerity of the requestor. The memorandum should focus on the sincerity of the member's personal religious beliefs, including the information provided during the interview.)

6.  My contact information is (telephone number and e-mail address).


[Signature]


Copy to:
(Rank and name of requestor)


Enclosure (3)

BUPERSINST 1730.11A
XX Mar 2020

<u>RELIGIOUS ACCOMMODATION APPROVAL OR ENDORSEMENT (TEMPLATE)</u>

(Date)

From:  Appropriate authority per Table 1 or Table 2
To:       Appropriate authority per Table 1 or Table 2
Via:      As applicable with appropriate authority per Table 1 or Table 2

Subj:  APPROVAL (or) APPROVAL/DISAPPROVAL RECOMMENDATION ICO (INSERT
       NAME HERE) RELIGIOUS ACCOMMODATION

Ref:     (a) DoD Instruction 1300.17
       (b) SECNAVINST 1730.8
       (c) BUPERSINST 1730.11A
       (d) Other references as needed including regional or operational policy

Encl:   (1) Sailor/accession request of DD MMM YY
       (2) Chaplain Memorandum and Interview Checklist
       (3) Other enclosures as needed (e.g., operational or regional policy)

1.  Per references (a) through (c)/(d), I am approving this request or I am forwarding this request recommending approval/disapproval in full or in part during the following environments (as applicable to the command):

    a.  Operational recommendation:

    b.  Non-operational recommendation:

    c.  Training environment recommendation:

2.  The following information was considered or is provided for consideration as applicable (articulate the factual basis underlying any compelling government interest and why the denial or partial denial is the least restrictive means available to protect the compelling government interest over the individual request):

    a.  The importance of the military policy, practice or duty from which religious accommodation is sought in terms of mission accomplishment, including:

        (1) Military readiness:

        (2) Unit cohesion:

        (3) Good order and discipline:

        (4) Health and safety:

Enclosure (4)

BUPERSINST 1730.11A
XX Mar 2020

    b.  The religious importance of the practice to the requestor.

    c.  The cumulative impact of repeated accommodations of religious practices of a similar nature.

    d.  Alternate means available to accommodate the practice in whole or in part.

3.  Other pertinent issues or information associated with this request.

4.  My point of contact (POC) for this matter is _____ (insert POC here) who can be reached at _____(insert e-mail and telephone number  here).

5.  This approval/recommendation will be emailed to OPNAV N131 for review/decision within the timelines in reference (c).  Otherwise, Commander should provide the timeline/waiver of timeline here as applicable.


                             _____
                             (Signature)

Copy to:
OPNAV N131
Operational Commander(s),
Requestor, etc.

Enclosure (4)
App 035