UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **U.S. NAVY SEALs 1-3**; on behalf of themselves and all others similarly situated; **U.S. NAVY EXPLOSIVE ORDNANCE DISPOSAL TECHNICIAN 1**, on behalf of himself and all others similarly situated; **U.S. NAVY SEALS 4-26**; **U.S. NAVY SPECIAL WARFARE COMBATANT CRAFT CREWMEN 1-5**; and **U.S. NAVY DIVERS 1-3**,<br><br>                    Plaintiffs,<br><br>            v.<br><br>**LLOYD J. AUSTIN, III**, in his official capacity as United States Secretary of Defense; **UNITED STATES DEPARTMENT OF DEFENSE**; **CARLOS DEL TORO**, in his official capacity as United States Secretary of the Navy,<br><br>                    Defendants. | Case No. 4:21-cv-01236-O |

**PLAINTIFFS' SURREPLY IN OPPOSITION
TO DEFENDANTS' ASSERTION OF MOOTNESS**

## INTRODUCTION

Defendants' newest policies and guidance do not moot this case. A close read of NAVADMIN 038/23 makes clear that this policy will not "effectively provide Plaintiffs and the class members the relief they seek," Dkt. 226 at 3. Indeed, no policy, guidance, or directive issued by Defendants to date completely resolves the issues remaining in this case. Regardless of what new guidance Defendants create in an attempt to moot this case now that court-ordered mediation, a Fifth Circuit opinion, and continued discovery, dispositive motions, and trial are looming, at minimum, Defendants must meet their burden to show that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.*, 528 U.S. 167, 189 (2000); *Speech First, Inc. v. Fenves*, 979 F.3d 319, 329 (5th Cir. 2020). Nothing about Defendants' latest policies makes this "absolutely clear." And Defendants continue to defend the challenged policies and leave room to reinstate them. A reasonable expectation thus remains that Defendants will continue to discriminate against the class and may reimpose a COVID-19 vaccination requirement with an illegal religious accommodation process in the future. At the very least, Defendants' suggestion of mootness is premature, as new policies admit implementation is ongoing. *See* Dkt. 233-1. The evidence shows that there are still problems related to the mandate for class members. *See* Pls. Supp. App. 0008-0024. And even if Defendants have a policy that complies with the law, that does not mean that they will follow it—their policies on religious accommodation versus what they actually did in considering requests are a prime example. Plaintiffs thus continue to have a concrete interest in the outcome of this litigation and the case is not moot.

1

# ARGUMENT

I. **NAVADMIN 038/23 and Defendants' February 24, 2023 Policies Do Not Moot This Case.**

   A. **A live controversy exists because the unvaccinated status of Navy personnel will still be taken into account according to Defendants' policies.**

Defendants maintain that "[e]nforcement of the defunct COVID-19 mandate has ceased, so NAVADMIN 225/21 and NAVADMIN 256/21 have no ongoing effect," and that, "[w]hile Plaintiffs claim the word 'suspend' in NAVADMIN 190/21 means the Navy has plans to bring back these enforcement mechanisms . . . the issuance of the new standard operating guidance [(NAVADMIN 038/23)] dispels that notion." Dkt. 226 at 2. The Deputy Secretary of Defense's February 24, 2023, memorandum further provides that "DoD Component heads shall formally rescind any such policies, directives, and guidance as soon as possible, if they have not done so already." Dkt. 230-1. The Navy has until March 17 to do so. *Id.* Plaintiffs are unaware that the Navy has done so yet, however. And while the February 24 guidance calls for the formal rescission of the Services' policies, directives, and guidance implementing their respective COVID-19 vaccination mandates later this month, it also makes clear that the Secretary of Defense's de facto mandate remains in effect. Dkt. 230-1 ("This memorandum provides additional guidance to ensure uniform implementation of Secretary of Defense Memorandum, 'Rescission of the August 24, 2021 and November 30, 2021 Coronavirus Disease 2019 Vaccination Requirements for Members of the Armed Forces,' January 10, 2023 (January 10, 2023 memorandum).").

While paragraph 3 of NAVADMIN 038/23 states that "COVID-19 vaccination status shall not be a consideration in assessing individual service member suitability for deployment or other operational missions," Defs. Supp. App. 002-003, the previous sentence is contradictory, and Defendants fail to explain the Navy's 6-page COVID-19 Operational Risk Management Matrix for Deployments, which is linked in the NAVADMIN (and which Defendants did not bring to this

2

Court's attention). Pls. Supp. App. 0001-0006. NAVADMIN 038/23's COVID-19 risk management matrix is to be "used in consultation with unit Medical Providers," to "inform Commanders of the COVID-19 risk to mission." Pls. Supp. App. 0002. Notably, out of thirteen risk factors listed on the matrix, five are attributed to the unvaccinated status of personnel: "Age of Any Unvaccinated Personnel," "Number of Unvaccinated Personnel," "Percent of Crew Unvaccinated," "Mission Essential Personnel Unvaccinated," and "Masking for Unvaccinated Personnel." *Id*. These and the other seven factors are assessed points based on whether the risk is "low," "medium," or "high." *Id*. Below the matrix is the following statement: "Leaders may emphasize specific risk factor(s) that increase risk to mission based on the deployed environment and crew characteristic." *Id*.

As the matrix demonstrates, a Navy servicemember's unvaccinated status is to be considered by commanders for operational decision-making purposes despite the language on the face of the policy. Pls. Supp. App. 0002. Using vaccination status as nearly half of the criterion for considering health risks to a mission is consistent with the Secretary of Defense's de facto mandate, as described in his original rescission memorandum, Pls. App. 0003, and as reinforced in the Deputy Secretary of Defense's February 24 guidance. Dkt. 230-1. In Defendants' own words, "[i]f there is any doubt, the Secretary's directive controls. *See* 10 U.S.C. § 113; 10 U.S.C. § 8013(b)." Dkt. 226 at 2. And the Secretary's January 10, 2023 directive unequivocally states that commanders can continue to consider vaccination status "in making deployment, assignment, and other operational decisions." Pls. App. 0003; *see also* Dkt. 230-1. Further, commanders are explicitly told to "encourage [up to date] COVID-19 vaccination of personnel at least 30-days prior to deployment-related movements or operations." Defs' App. 009.

3

Considering Defendants' plan to erase the class members' religious accommodation requests from their files as if they never existed, Dkt. 224 at 9; Dkt. 230-2; Dkt. 233-1, the class will continue to suffer harm without any opportunity to receive accommodations for their religious objections if they are subject to consideration of their vaccination status in line with the Secretary's statement. Pls. App. 0078-0158. At minimum, the class members will have to reassert the same religious objections if they are permitted to resubmit a request for religious accommodation. And because of the removal of these requests, others assessing unvaccinated class members for assignments will not know whether that sailor was an all-out "refuser," or whether they had complied with the rules and asserted a sincere religious objection to vaccination, something that will influence decisions regardless of official guidance.

The class continues to suffer harm because the coercion to get vaccinated remains, as the declarations[1] Plaintiffs submitted in response to Defendants' assertion of mootness show, Pls. App. 0078-0158, *see also* Pls. Supp. App. 0008-0024, and by Defendants' own policies as explained above. Class members are still being denied returns to operational commands and are being denied dive physicals necessary to return to operational commands, yet in some cases, the Navy appears to be engaging in retaliation by rushing some class members to operational commands outside of normal Navy protocol despite harm to the class member and their family. Pls. Supp. App. 0012-0024. The Secretary of the Navy's February 24 guidance states that the records of all Navy

---

[1] Defendants complain that the "declarations should not be considered because these Plaintiffs have failed to comply with the discovery rules." Dkt. 226 at 4. But Defendants have yet to "demonstrate a 'particularized need to obtain information not available from class representatives," *In re Carbon Dioxide Indus. Antitrust Litig.*, 155 F.R.D. 209, 212 (M.D. Fla. 1993); *accord Egana v. Blair's Bail Bonds, Inc.*, No. CV 17-5899, 2018 WL 10593649 (E.D. La. May 29, 2018). And there are no court orders requiring the non-class representatives to participate. Defendants also complain that Plaintiffs submitted declarations from class members not listed on disclosures, but neither is Captain Healy, to Plaintiffs' knowledge. Nor it is evident why Plaintiffs would need to disclose witnesses they are mustering on short notice in response to newly changing policies and Defendants' assertion of mootness, not "its claims or defenses" at trial. See Fed. R. Civ. P. 26(a)(1)(A)(i). Thus, the declarations are appropriate for consideration.

servicemembers "who sought or were subsequently denied an exemption from the COVID-19 vaccination" will "be reviewed and any adverse information related to their COVID-19 vaccine refusal shall be removed from the service record." Dkt. 230-2. Yet the scope of what *Defendants* deem is "adverse" in personnel files is undefined, and evidence shows that adverse information still exists in personnel files in any event. Pls. Supp. App. 0008-0011.[2] According to the latest guidance, this "review" is still ongoing. Dkt. 233-1.

      **B.**    **The case is not moot because Defendants have only voluntarily ceased some challenged conduct.**

Defendants claim that because the NDAA compelled the termination of the COVID-19 vaccine mandate, their cessation of the mandate was not voluntary. Dkt. 226 at 7. But the other actions Defendants claim moot the case—the subsequent policies and guidances—go beyond what was required in the NDAA, which only requires repeal of the original mandate. It does not prevent Defendants from instituting a new mandate or continuing with their discriminatory treatment of sailors who declined vaccination for religious reasons. The timing and focus of these new policies also demonstrate that they are only being issued to attempt to moot this litigation. For example, NAVADMIN 038/23 was issued in the middle of the parties' mootness briefing schedule—after the Plaintiffs' response brief was filed and right before Defendants' reply brief was due to be filed. And Defendants' newest guidance—NAVADMIN 065/23—was issued the day before this surreply was due. Dkt. 233.[3] Given that timeline, it is apparent that Defendants' intent is to

---

[2] On February 28, 2023, Defense Department officials testified before the House Armed Services Committee and stated that "[t]he services are going through a process to review those cases [where individuals 'disobeyed a lawful order' to get a COVID-19 vaccine] to make a determination what needs to be done." Meghann Myers, *Troops who refused COVID vaccines still could face punishment*, Military Times (Feb. 28, 2023), https://www.militarytimes.com/news/coronavirus/2023/02/28/troops-who-refused-covid-vaccines-still-could-face-punishment/?utm_source=sailthru&utm_medium=email&utm_campaign=mil-ebb&SToverlay=de88742f-46f7-4f2c-819d-3b36a47d6a7e.

[3] Notably, it took months for Defendants to comply with this Court's injunction, yet now new policies are being churned out. *See* Dkt. 112, 117.

5

challenge Plaintiffs' claims that class members remain non-operational and continue to suffer adverse effects from the mandate, not to usher in meaningful change. As for the Deputy Secretary of Defense's February 24 policy, it seems that the purpose is to respond to Plaintiffs' argument that NAVADMINs 225/21 and 256/21 have not been cancelled and remain suspended.

For these reasons, there is no question that Defendants' latest round of policies constitute voluntary cessation for the purpose of "litigation posturing." *Yarls v. Bunton*, 905 F.3d 905, 910 (5th Cir. 2018). The fact that each policy attempts to speak to the various harms Plaintiffs bring to the Court's attention is obvious. Perhaps tomorrow will bring another set of guidance targeting the issues raised in this brief. But considering Defendants' vehement opposition to Congress's directive to rescind the 2021 mandate,[4] the matrix in NAVADMIN 038/23 that allows commanders to consider servicemembers' vaccination status in the context of overall risk to missions, the Secretary of Defense's de facto mandate, and the February 24 policies that provide no guarantee that Defendants' discriminatory behavior will end, a live controversy remains. At minimum, the contradictory statements in the policies fail to satisfy Defendants' "formidable burden of showing that it is *absolutely clear* the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 at 190 (emphasis added).

Even under the more relaxed standard the court sometimes applies when the defendant is a government actor, Defendants still fail to satisfy their burden. *Speech First,* 979 F.3d at 327. First, Defendants have not issued "a controlling statement of future intention [not to repeat their discriminatory behavior]." *Id*. Second, Defendants continue to defend and applaud the challenged policy, not only in the very document that calls for rescission of the COVID-19 vaccine mandate,

---

[4] *See e.g.*, Heather Mongilio, *Pentagon Unclear How Military Would Manage End of Mandatory COVID-19 Vaccines*, USNI NEWS (Dec. 7, 2022), https://news.usni.org/2022/12/07/pentagon-unclear-how-military-would-handle-end-of-mandatory-covid-19-vaccines.

Pls. App. 0002, but also in the Deputy Secretary of Defense's most recent February 24, 2023 guidance. Dkt. 230-1 ("Department leadership . . . will continue to promote and encourage vaccinations for all Service members along with continued use of other effective mitigation measures."); Defs. Supp. App. 006 (stating that "The virus is still with us and it is still dangerous, and the combination of vaccines, boosters, command engagement and personal accountability continue to be our best defense."); Defs. Supp. App. 013-035 (Decl. of Gareth Healy) (defending the fifty-step SOP for the Navy's religious accommodation request process). Third, as explained above, the Navy's timing of its new policies is suspicious. *Id*.

Moreover, Defendants maintain the "authority to reinstate [the challenged policies] at any time," which subjects class members to a credible threat of widespread enforcement of Defendants' discriminatory vaccination requirements in the future. *Tandon v. Newsom*, 141 S. Ct. 1294, 1297 (2021). Counsel for Defendants admitted to the Fifth Circuit that there is no guarantee that another COVID-19 vaccine mandate would not be implemented in the future.[10] And as Judge Duncan posited during Defendants' counsel's oral argument, if another vaccination mandate issued, the "military is going to follow the same [sham religious accommodation] policy going forward. Nothing in the record would indicate otherwise."[11] Since the COVID-19 vaccine mandate was implemented, Defendants have made clear that they have no intention of ever complying with their exacting RFRA and First Amendment obligations. Without a controlling statement or policy confirming that Defendants will remedy their discriminatory accommodation process and not repeat their unlawful actions or the challenged vaccination policy, this case is not moot.

---

[10] During oral argument, Defendants' counsel advised the Fifth Circuit panel that "[u]nder the prevailing public health guidelines and understanding of the virus, there is no *current* intention to institute a universal vaccine requirement." Oral Argument at 8:12-19, *U.S. Navy SEAL 1-26 v. Biden,* No. 22-10077 (5th Cir. Feb. 6, 2023), *available at* https://www.ca5.uscourts.gov/OralArgRecordings/22/22-10077_2-6-2023.mp3.  (emphasis added).
[11] *Id*. at 9:44-9:49.

## C. Plaintiffs' claims are capable of repetition yet evade review.

Even if Defendants' challenged conduct had completely stopped, this case *is* the "exceptional situation" where Plaintiffs may proceed beyond any possibility of mootness. *Kingdomware Tech., Inc. v. United States*, 136 S.Ct. 1969, 1976 (2016). Defendants argue that Plaintiffs failed to satisfy their burden of showing that the first element of the capable-of-repetition-yet-evading-review exception to mootness applies in this case because "vaccination requirements are not inherently too short to be fully litigated." Dkt. 226 at 9. But as Defendants' own authorities acknowledge, "[c]laims need to be judged on how quickly relief can be achieved in relation to the specific claim." *Empower Texans, Inc. v. Geren*, 977 F.3d 367, 370 (5th Cir. 2020). Here, the issue is a vaccine for a virus that continues to mutate along with Defendants' policies. Defendants argue that Plaintiffs cannot show that the vaccine mandate "would have changed but for Congress' intervening legislation," Dkt. 226 at 9, but Defendants' own new policies recognize the changing nature of the virus. *See* Defs. Supp. App. 002 (referencing risk matrix and "steady state" posture); Pls. Supp. App. 0001-0007 (risk matrix considers "severity of currently circulating variant"); Defs. Supp. App. 006 (stating that "The virus is still with us and it is still dangerous, and the combination of vaccines, boosters, command engagement and personal accountability continue to be our best defense."); Defs. Supp. App. 007 (discussing implementation of "evolving CDC guidance related to virus behavior and mitigations"). And even their policies implementing the mandate were changed and updated over time. Because the mandate was unexpectedly rescinded before Defendants' unlawful actions could be fully litigated by this Court, but the Defendants' unlawful actions may still recur, application of this exception to mootness would be appropriate even if the Court finds that all challenged conduct has ceased.

**II.     Plaintiffs May Pursue Monetary Relief from Defendants.**

Plaintiffs' potential monetary claims are not barred by the doctrine of sovereign immunity. RFRA provides that a "person whose religious exercise has been burdened in violation of this section may . . . obtain appropriate relief against a government." 42 U.S.C. § 2000bb-1(c) (emphasis added). RFRA also provides that a plaintiff may obtain "appropriate relief against a government." What constitutes "appropriate relief" does not change depending on whether the defendant is an individual capacity defendant or an official capacity or agency defendant. As the Supreme Court recently said in holding that RFRA's "appropriate relief" includes money damages against officials in their individual capacities, "[a] damages remedy is not just 'appropriate' relief as viewed through the lens of suits against Government employees. It is also the only form of relief that can remedy some RFRA violations. . . . Given the textual cues just noted, it would be odd to construe RFRA in a manner that prevents courts from awarding such relief." *Tanzin v. Tanvir*, 141 S. Ct. 486, 492 (2020) (emphasis in original). *Sossamon v. Texas*—relied on by Defendants—is easily distinguishable. 563 U.S. 277 (2011). *Sossamon* dealt with a different statute (RLUIPA), whereas *Tanzin* directly addressed the statute at issue in this case (RFRA). As both *Sossamon* and *Tanzin* recognized, though the same language may be used in both statutes, the meaning of that language is "'inherently context dependent'" and might even differ as between the use of the same phrase in different sections of even the same statute. *Tanzin*, 141 S. Ct. at 491 (quoting *Sossamon*, 563 U.S. at 286); *see also Sossamon*, 563 U.S. at 292 (contrasting language in RLUIPA §§ 2 and 3 and noting one possible "unequivocal textual waiver" of sovereign immunity for money damages might apply to §2 but not to § 3 despite both relying on the same "appropriate relief" provision).

The context of RLUIPA makes its use of "appropriate relief" far different than the language in RFRA. RLUIPA is narrower in scope, applying only to institutionalized persons and religious

9

land use. RLUIPA and RFRA were also enacted pursuant to different constitutional provisions. RFRA, which waives sovereign immunity only as to the federal government, was enacted pursuant to § 5 of the Fourteenth Amendment, *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 695 (2014), while RLUIPA, which waives sovereign immunity as to the states, was enacted pursuant to the Spending Clause, *Sossamon*, 563 U.S. at 289. *Sossamon* noted that RLUIPA's Spending Clause authority, if anything, potentially limits RLUIPA's scope for damages. *Id*. at 290 ("[I]n *Barnes and Franklin*, the Court discussed the Spending Clause context only as a potential limitation on liability" (emphasis in original) (citing *Barnes v. Gorman*, 536 U.S. 181, 187–88 (2002) and *Franklin v. Gwinnett Cty. Pub. Schs.*, 503 U.S. 60, 74–75 (1992))). The two statutes also waive immunity for different entities. While RLUIPA is a federal statute that waives immunity for other sovereigns (the states)—a situation where it may make sense to limit the scope of the waiver, RFRA is the federal government waiving its own immunity, and doing so clearly to allow for individuals harmed by federal action to obtain any appropriate relief. Finally, the context surrounding enactment matters. Congress passed RFRA the year after *Franklin*, which presumed the phrase "appropriate relief" included money damages. Congress did not limit "appropriate relief" to "appropriate equitable relief" as it had done in other statutes, and Congress provided this "appropriate relief" in a context where often the only relief available is often money damages. Interpreting RFRA's damages provision to be ambiguous on this point would, indeed, be "odd." *Cf. Tanzin*, 141 S. Ct. at 492. Thus, Plaintiffs may pursue monetary relief against Defendants.[5]

---

[5] After the Court's ruling on mootness, Plaintiffs could seek leave to amend their complaint to add this claim, though "[w]here, as here, the plaintiff's complaint seeks all such further relief as the Court deems necessary and proper, it is unnecessary for the plaintiff to specifically plead nominal damages." *Neutron Depot, LLC v. Bankrate, Inc.*, No. AU-16-CA-01170-SS, 2018 WL 6588573, at *1 (W.D. Tex. Aug. 16, 2018).

## CONCLUSION

For the foregoing reasons, this Court should deny Defendants' Motion.

Respectfully submitted this 8th day of March, 2023.

|  |  |
|---|---|
|  | /s/ Heather Gebelin Hacker |
| KELLY J. SHACKELFORD | HEATHER GEBELIN HACKER |
|   Texas Bar No. 18070950 |   Texas Bar No. 24103325 |
| JEFFREY C. MATEER | ANDREW B. STEPHENS |
|   Texas Bar No. 13185320 |   Texas Bar No. 24079396 |
| HIRAM S. SASSER, III | HACKER STEPHENS LLP |
|   Texas Bar No. 24039157 | 108 Wild Basin Road South, Suite 250 |
| DAVID J. HACKER | Austin, Texas 78746 |
|   Texas Bar No. 24103323 | Tel.: (512) 399-3022 |
| MICHAEL D. BERRY | heather@hackerstephens.com |
|   Texas Bar No. 24085835 | andrew@hackerstephens.com |
| JUSTIN BUTTERFIELD | *Attorneys for Plaintiffs* |
|   TEXAS BAR NO. 24062642 |  |

DANIELLE A. RUNYAN*
  New Jersey Bar No. 027232004
Holly M. Randall
  Texas Bar No. 24128002
FIRST LIBERTY INSTITUTE
2001 W. Plano Pkwy., Ste. 1600
Plano, Texas 75075
Tel: (972) 941-4444
jmateer@firstliberty.org
hsasser@firstliberty.org
dhacker@firstliberty.org
mberry@firstliberty.org
jbutterfield@firstliberty.org
drunyan@firstliberty.org
hrandall@firstliberty.org

JORDAN E. PRATT
  Florida Bar No. 100958* **
FIRST LIBERTY INSTITUTE
1331 Pennsylvania Ave., NW, Ste. 1410
Washington, DC 20003
Tel: (972) 941-4444
jpratt@firstliberty.org

*Admitted pro hac vice.
** Not yet admitted to the D.C. Bar, but admitted to practice law in Florida. Practicing law in D.C. pursuant to D.C. Court of Appeals

Rule 49(c)(8) under the supervision of an attorney admitted to the D.C. Bar.

...

## CERTIFICATE OF SERVICE

I hereby certify that on March 8, 2023, I electronically filed the foregoing document through the Court's ECF system and will serve a copy on each of the Defendants according to the Federal Rules of Civil Procedure.

/s/ Heather Gebelin Hacker
HEATHER GEBELIN HACKER
