# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| **U.S. NAVY SEALs 1-3**; on behalf of themselves and all others similarly situated; **U.S. NAVY EXPLOSIVE ORDNANCE DISPOSAL TECHNICIAN 1**, on behalf of himself and all others similarly situated; **U.S. NAVY SEALS 4-26**; **U.S. NAVY SPECIAL WARFARE COMBATANT CRAFT CREWMEN 1-5**; and **U.S. NAVY DIVERS 1-3**, <br><br>             Plaintiffs, <br><br>    v. <br><br> **LLOYD J. AUSTIN, III**, in his official capacity as United States Secretary of Defense; **UNITED STATES DEPARTMENT OF DEFENSE**; **CARLOS DEL TORO**, in his official capacity as United States Secretary of the Navy, <br><br>             Defendants. | Case No. 4:21-cv-01236-O |

## <u>PLAINTIFFS' SUPPLEMENTAL BRIEF RE: FIFTH CIRCUIT DECISION</u>

The question before the Fifth Circuit, after the Department of Defense repealed the COVID-19 vaccination mandate, was whether the Defendants' appeal of this Court's preliminary injunction was moot. The Fifth Circuit, owing (1) to the repeal of the mandate, (2) the repeal of the policies this Court enjoined, and (3) the changes in policies made by Defendants during briefing and argument in this case and at the Fifth Circuit, determined the appeal was moot. *U.S. Navy SEALs 1-26 v. Biden*, 72 F.4th 666 (5th Cir. 2023). The Fifth Circuit rejected Plaintiffs' argument that the voluntary cessation doctrine applied to the appeal because despite Defendants' repeated policy actions taken in direct response to arguments made by Plaintiffs, the Court claimed there was no "gamesmanship" here. *SEALs 1-26*, 72 F.4th at 674.

The Fifth Circuit also made clear, however, that this conclusion did not mean the *case* is moot. Instead, the Fifth Circuit "le[ft] it open for the district court on remand to conclude that the SEALs should ultimately prevail in this case." *Id.* at 678 (Ho, J., dissenting) (citing *id.* at 675-76). The Fifth Circuit declined to rule on Plaintiffs' argument that the appeal fell into the exception for controversies that are capable of repetition yet evading review "because the issues Plaintiffs raise can still be litigated in the district court and appealed after a final judgment, assuming they remain justiciable," and because "[t]he capable-of-repetition exception 'is inapplicable in those situations in which the issues underlying the moot appeal are not moot in the case remaining before the district court.'" *Id.* at 675 (citation omitted). The Fifth Circuit also declined to vacate the preliminary injunctions because "if the case remains alive in the district court, it is sufficient to dismiss the appeal without directing that the injunction order be vacated." *Id.* at 676 (quoting 13C Alan Wright, Arthur Miller, & Edward H. Cooper, *Fed. Prac. & Proc*. § 3533.10.3 (3d ed. April 2023)). Plaintiffs continue to have a concrete interest in the outcome of this litigation and the case is not moot.

1

While the Fifth Circuit's decision appears to foreclose an argument that there is still a need for injunctive relief against the Mandate, or that the voluntary cessation doctrine prevents mootness on *that issue*, the decision did not touch all other parts of this case. There are several remaining issues:

### 1. Ongoing harm to the Class Members

While the Mandate may be gone, the effects of that Mandate and the discriminatory treatment the Class Members were subject to because of the mandate still linger. Significantly, the Navy has announced no changes to its religious accommodation process. That "sham" process allowed for the coercive and discriminatory treatment of the Class Members while their accommodation requests sat unadjudicated. The Navy has also always defended its process, even though it does not comport with federal law or even DoD policies. Thus, problems with the Navy's process that came to light due to the pandemic still exist:

- The Navy's religious accommodation process permits the Navy to sit on requests for accommodation indefinitely.

- The Navy's religious accommodation process permits the Navy to forego individualized assessment and instead attempts to use standardized policy memos (even if outdated) to satisfy the compelling interest requirement. It also allows boilerplate statements to suffice for demonstrating that the Navy's action is the least restrictive means.

- The Navy's religious accommodation process permits the Navy to discriminate against sailors who submit a request and to apply coercive tactics in order to pressure the servicemember to forego their beliefs.

- The Navy's religious accommodation process permits Navy leadership to dictate denial of all requests, no matter the individual circumstances of the requester and current conditions/facts.

- The Navy's religious accommodation process permits coercion and retaliation against commanding officers who recommend approval of service member requests despite the chain of command's desire that requests be denied.

- The Navy's religious accommodation process does not permit a requester to resubmit a previously denied request, or update/resubmit a pending request, based on changes to the requester's job, location, or circumstances relevant to the request. (The Navy's policies previously allowed this but were changed during the Mandate period.)

The persistence of this illegal process injures the Class Members because they have sincere religious beliefs that sometimes impact issues related to their service and lack the required avenue to seek accommodation for those beliefs. Their accommodation requests for the COVID-19 vaccine have been closed by the Navy without adjudication, though many were pending for over a year. Because the process permitted the Navy to discriminate against the Class Members, it is likely that they will be hesitant to use that process in the future, resulting in many Class Members choosing to forego their religious beliefs because they believe they will not be accommodated. *Cf. State of Missouri v. Biden*, No. 23-30445, 2023 WL 5821788, at *8 (5th Cir. Sept. 8, 2023) (finding injury to plaintiffs persisted because of self-censorship and their continued use of social media even though social media companies had discontinued their COVID-19 related "misinformation" policies). This warrants prospective relief.

Further, many Class Members missed opportunities to promote, train, and fulfill milestone positions necessary to earn promotions because of the Mandate. Class Members who already earned promotions were denied them and Class Members were removed from milestone positions or denied the ability to transfer to another unit to assume them (*see, e.g.,* Dkt. 225 at 84, 92, 96, 108-13, 130-31, 137; Dkt. 118 at 27, 62-63; Dkt. 59 at 46, 67, 71, 79-80, 104; Dkt. 97 at 17-18, 25-26, 31-32; *see also* Dkt. 178 at 39), and Class Members were prevented from executing orders to attend training and OCS (*see, e.g.,* Dkt. 118 at 26, 51; Dkt. 178 at 62-65, 73, 76-77, 80, Dkt. 97 at 28-29). As a result of this discrimination, the Class Members are generally about 1-3 years behind their peers because of the Navy's unlawful religious discrimination. This has a serious impact on the Class Members' careers because if a servicemember fails to promote or advance,

3

they are placed on track to separate from the Navy. Additionally, for those Class Members who are within a few years of retirement, the denial of these opportunities means that they are unlikely to be able to promote to the next grade before retirement, which reduces the pension benefits they otherwise would have earned. The Navy has never stated in any post-repeal policy that they intend to rectify this harm caused by their illegal policies and religious discrimination.

While the Navy has stated that vaccination status shall no longer "be a consideration in assessing individual Service member suitability for deployment or other operational assignments,"[1] there is no policy stating that vaccination status cannot be considered in promotions and non-operational assignments, allowing for continued consequential discrimination. And now that the Navy unilaterally closed and returned without action all pending accommodation requests,[2] no one reviewing a servicemember's file will know whether that sailor was an all-out "refuser," or whether they had complied with the rules and asserted a sincere religious objection to vaccination, something that will influence decisions regardless of official guidance. No new Navy policy addresses this issue.

Further, though the Navy states that "the records of currently serving Navy Service members who requested religious accommodation from COVID-19 vaccination are being centrally reviewed to identify and remove any adverse information related to vaccine refusal, should it exist,"[3] Plaintiffs believe there are still negative notations in Class Members' files and the Navy

---

[1]  NAVADMIN 065/23, ¶ 3, https://www.mynavyhr.navy.mil/Portals/55/Messages/NAVADMIN/NAV2023/NAV23065.txt?ver=5D-VSbRc-Pt_Qjy8WecHeQ%3d%3d. This NAVADMIN was issued on March 6, 2023, shortly before Plaintiffs filed their surreply opposing Defendants' Suggestion of Mootness. Dkt. 235. To Plaintiffs' knowledge, that was the last policy update or change the Navy has made pertaining to the mandate or religious accommodation.
[2] *Id.* at ¶ 4.
[3] *Id.* at ¶ 5.

has provided no confirmation that this review process is over. And the Navy has always defined "adverse action" more narrowly than Plaintiffs. *See* Dkt. 118 at 7; Dkt. 110; Dkt. 171.

### 2.   Capable of Repetition Yet Evading Review

Even if no further harm to Plaintiffs was occurring, Defendants' challenged conduct is capable of repetition yet evades review. *Fed. Election Comm'n v. Wisc. Right to Life, Inc.*, 551 U.S. 449, 462 (2007). The Fifth Circuit expressly declined to rule on whether this exception would apply. As Plaintiffs have already briefed, to fall within this exception to the mootness doctrine, Plaintiffs must show "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Cath. Leadership Coal. of Texas v. Reisman*, 764 F.3d 409, 422 (5th Cir. 2014). Here, because the vaccine mandate was rescinded during the pendency of this lawsuit, Plaintiffs' requests for religious accommodations were closed, and the virus continues to change, the first element is satisfied. Plaintiffs could not obtain permanent relief in their challenge to the mandate and the Navy's religious accommodation process before the Navy repealed the Mandate and cancelled their accommodation requests.

When analyzing the second element, courts are concerned with whether the conduct was "capable of repetition and not . . . whether the claimant had demonstrated that a reoccurrence of the dispute was more probable than not." *Honig v. Doe*, 484 U.S. 305, 318 n. 6 (1988). Plaintiffs need not demonstrate with "mathematical precision" that they will be subject to the same illegal conduct; rather, they just need to show "a reasonable expectation" that the challenged action will reoccur. *Id.* Given that the NDAA admittedly permits the Navy to reinstitute a Mandate at any time, that health authorities are growing concerned over new circulating variants, the White House recently requested funding for a new, effective COVID-19 booster, and the President has been

wearing masks again, the idea that Plaintiffs could be subject to the same requirement again in the future is reasonable. And the odds that the same discriminatory conduct will arise again increase because the Navy has done nothing to rectify their illegal religious accommodation process, which caused significant harm to Plaintiffs. Thus, if Defendants reinstitute a COVID-19 vaccination mandate or issue another policy that implicates the Class Members' sincerely held religious beliefs, the Class Members will be forced to apply for accommodation yet again and wait possibly years once again while the Navy sits on their requests, being discriminated against all the while, until litigation forces the Navy's hand and they once again back down while claiming the Plaintiffs' claims are moot. The continued existence of what the government believes is a COVID threat and the continued existence of the Navy's illegal religious accommodation process means that the Class Members will be stuck in this cycle and the Navy can avoid accountability. It is clear from the history of this litigation that Defendants will not address harm to the Class Members without the pressure of a potential court ruling. A ruling from this Court would break this cycle of illegal behavior.

Thus, even if Defendants' challenged conduct or the harm to Plaintiffs had completely stopped, this case is the "exceptional situation" where Plaintiffs may proceed beyond any possibility of mootness. *Kingdomware Tech., Inc. v. United States*, 136 S.Ct. 1969, 1976 (2016).

### 3. Attorneys' fees

The issue of attorneys' fees does not render an otherwise moot case a live controversy. *Freedom From Religion Found., Inc. v. Abbott*, 58 F.4th 824, 835 (5th Cir. 2023). But even if the Court were to find the case is moot and no exception applies, attorneys' fees would still be an outstanding issue not directly addressed by the Fifth Circuit's ruling that the Court will need to adjudicate. Plaintiffs are undoubtedly the prevailing party and are thus entitled to their attorneys'

fees under 42 U.S.C. § 1988(b). *Franciscan All., Inc. v. Becerra*, No. 7:16-CV-00108-O, 2023 WL 4462049, at *2 (N.D. Tex. July 11, 2023); *SEALs 1-26*, 72 F.4th at 677 (Ho, J., dissenting) ("History will record that, in this battle over the Navy's COVID-19 vaccination mandate, the Navy SEALs won multiple victories, while the Navy suffered repeated losses.").

## CONCLUSION

For the foregoing reasons, this Court should find that the case is not moot.


Respectfully submitted this 12th day of September, 2023.

<div style="display:flex">

KELLY J. SHACKELFORD
  Texas Bar No. 18070950
JEFFREY C. MATEER
  Texas Bar No. 13185320
HIRAM S. SASSER, III
  Texas Bar No. 24039157
DAVID J. HACKER
  Texas Bar No. 24103323
MICHAEL D. BERRY
  Texas Bar No. 24085835
DANIELLE A. RUNYAN
  Texas Bar No. 24134548
Holly M. Randall
  Texas Bar No. 24128002
FIRST LIBERTY INSTITUTE
2001 W. Plano Pkwy., Ste. 1600
Plano, Texas 75075
Tel: (972) 941-4444
jmateer@firstliberty.org
hsasser@firstliberty.org
dhacker@firstliberty.org
mberry@firstliberty.org
drunyan@firstliberty.org
hrandall@firstliberty.org

/s/ Heather Gebelin Hacker
  HEATHER GEBELIN HACKER
    Texas Bar No. 24103325
  ANDREW B. STEPHENS
    Texas Bar No. 24079396
  HACKER STEPHENS LLP
  108 Wild Basin Road South, Suite 250
  Austin, Texas 78746
  Tel.: (512) 399-3022
  heather@hackerstephens.com
  andrew@hackerstephens.com

  *Attorneys for Plaintiffs*

</div>

**CERTIFICATE OF SERVICE**

I hereby certify that on September 12, 2023, I electronically filed the foregoing document through the Court's ECF system and will serve a copy on each of the Defendants according to the Federal Rules of Civil Procedure.

/s/ Heather Gebelin Hacker
HEATHER GEBELIN HACKER