## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| **NAVY SEALs 1-3,** *et al.*,<br><br>                         Plaintiffs,<br><br>    v.<br><br>**LLOYD J. AUSTIN, III** in his official capacity as<br>United States Secretary of Defense, *et al.*,<br><br>                      Defendants. | Case No. 4:21-cv-01236-O |

## SUPPLEMENTAL MEMORANDUM IN SUPPORT
## OF DEFENDANTS' ASSERTION OF MOOTNESS

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

PROCEDURAL BACKGROUND.......................................................................................2

FACTUAL BACKGROUND.................................................................................................5

A.     The DoD Mandate. ..................................................................................................5

B.     The NDAA. .................................................................................................................5

C.     Plaintiffs..........................................................................................................................9

ARGUMENT ........................................................................................................................10

I.     The Fifth Circuit's Holdings on Mootness and the Voluntary Cessation Doctrine
       are Law of the Case. ...............................................................................................10

II.    The Operative Complaint Demands No Additional Relief that Can Save This Case
       from Mootness...........................................................................................................12

III.   Plaintiffs Cannot Demonstrate that the Mootness Exception for Controversies
       Capable of Repetition Yet Evading Judicial Review Applies. .........................14

IV.    Plaintiffs Have Not Sought Damages and Damages Would Be Unavailable in Any
       Event. ..........................................................................................................................16

       A.     No Damages Claim is Before the Court in this Rule 23(b)(2) Class Action
              and Judicial Estoppel Prevents Plaintiffs from Arguing for One Now................17

       B.     Plaintiffs Identify No Waiver of Sovereign Immunity for Any Damages
              Claim. ...............................................................................................................21

       C.     This Court Lacks Jurisdiction Over Any Damages Claim. ..................................23

CONCLUSION.....................................................................................................................25

# TABLE OF AUTHORITIES

## CASES

*Abbott v. Biden*,
  70 F.4th 817 (5th Cir. 2023) ....................................................................................1

*Ala. Ass'n of Realtors v. U.S. Dep't of Health and Human Servs.*,
  557 F. Supp. 3d 1 (D.D.C. 2021) .......................................................................10, 11

*Allison v. Citgo Petroleum Corp.*,
  151 F.3d 402 (5th Cir. 1998)..................................................................................19

*Amoco Prod. Co. v. Hodel*,
  815 F.2d 352 (5th Cir. 1987)..................................................................................23

*Austin v. U.S. Navy SEALs 1-26*,
  142 S. Ct. 1301 (2022).........................................................................................3, 4

*Bazzrea v. Mayorkas*,
  --- F. Supp. 3d ---, 2023 WL 3958912 (S.D. Tex. June 12, 2023)........................... 1, 13, 14, 15

*Bolin v. Sears, Roebuck & Co.*,
  231 F.3d 970 (5th Cir. 2000)..................................................................................18

*Bongiovanni v. Austin*,
  No. 3:22-cv-580-MMH-MCR, 2023 WL 4352445 (M.D. Fla. July 5, 2023) ..................*passim*

*Briggs v. Pa. R. Co.*,
  334 U.S. 304 (1948) ..............................................................................................11

*Browning Mfg. v. Mims (In re Coastal Plans, Inc.)*,
  179 F.3d 197 (5th Cir. 1999)..................................................................................20

*Chichakli v. Szubin*,
  546 F.3d 315 (5th Cir. 2008)..................................................................................24

*Chichakli v. United States*,
  803 F. App'x 781 (5th Cir. 2020)............................................................................24

*City of Houston v. HUD*,
  24 F.3d 1421 (D.C. Cir. 1994) ...............................................................................13

*Clements v. Austin*,
  C.A. No. 2:22-2069-RMG, 2023 WL 3479466 (D.S.C. May 16, 2023)....................................1

*Coker v. Austin*,
   --- F. Supp. 3d ---, 2023 WL 5625486 (N.D. Fla. Aug. 25, 2023)........................................1, 14

*Colonel Financial Mgmt. Officer v. Austin*,
   No. 8:22-cv-1275-SDM-TGW, 2023 WL 2764767 (M.D. Fla. Apr. 3, 2023) ....................1, 14

*Crocker v. Austin*,
   C.A. No. 22-0757, 2023 WL 4143224 (W.D. La. June 22, 2023) ................................1, 14, 15

*Davila v. Gladden*,
   777 F.3d 1198 (11th Cir. 2015)...................................................................................................21

*Dunn v. Austin*,
   No. 22-15286, 2023 WL 2319316 (9th Cir. Feb. 27, 2023) .....................................................1

*E. Enters. v. Apfel*,
   524 U.S. 498 (1998) .................................................................................................................23

*Employment Division, Department of Human Resources of Oregon v. Smith*,
   494 U.S. 872 (1990) .................................................................................................................22

*Empower Texans, Inc. v. Geren*,
   977 F.3d 367 (5th Cir. 2020)....................................................................................................14

*FAA v. Cooper*,
   566 U.S. 284 (2012) .................................................................................................................22

*Gaalla v. Brown*,
   460 F. App'x 469 (5th Cir. 2012)..............................................................................................10

*Gagliardi v. TJCV Land Tr.*,
   889 F.3d 728 (11th Cir. 2018)...................................................................................................13

*Gen. Universal Sys., Inc. v. HAL, Inc.*,
   500 F.3d 444 (5th Cir. 2007)....................................................................................................10

*Golden v. Zwickler*,
   394 U.S. 103 (1969) .................................................................................................................12

*Graham v. Henegar*,
   640 F.2d 732 (5th Cir. 1981)....................................................................................................24

*Guerrero v. Credit Mgmt., LP*,
   No. A-16-CV-987-LY, 2017 WL 7052292 (W.D. Tex. Oct. 24, 2017)...................................18

*Harris v. City of Houston*,
   151 F.3d 186 (5th Cir. 1998)............................................................................ 12, 13, 17, 18

*Harris v. Univ. of Mass. Lowell*,
   43 F.4th 187 (1st Cir. 2022)............................................................................17

*Holley v. United States*,
   124 F.3d 1462 (Fed. Cir. 1997)......................................................................23

*Holt v. Hobbs*,
   574 U.S. 352 (2015) ........................................................................................22

*In Matter of Galaz*,
   841 F.3d 316 (5th Cir. 2016)..........................................................................20

*In re Felt*,
   255 F.3d 220 (5th Cir. 2001)................................................................... 10, 12

*Jackson v. Mayorkas*,
   4:22-cv-0825-P, 2023 WL 5311482 (N.D. Tex. Aug. 17, 2023) ........................... 1, 13, 14, 15

*Jethroe v. Omnova Solutions, Inc.*,
   412 F.3d 598 (5th Cir. 2005)..........................................................................20

*Johnson v. United States*,
   208 F.R.D. 148 (W.D. Tex. 2001) ..................................................................24

*Lane v. Pena*,
   518 U.S. 187 (1996) ..................................................................................21, 22

*Lewis v. Cont'l Bank Corp.*,
   494 U.S. 472 (1990) ........................................................................................13

*Libertarian Party v. Dardenne*,
   595 F.3d 215 (5th Cir. 2010)....................................................................14, 16

*Long v. Jayton-Girard Ind. Sch. Dist.*,
   No. 5:21-CV-111-H, 2021 WL 7906835 (N.D. Tex. Sept. 3, 2021)......................16

*McClendon v. Blount*,
   452 F.2d 381 (7th Cir. 1971)..........................................................................24

*Murphy v. Hunt*,
   455 U.S. 478 (1982) ........................................................................................16

iv

*N.Y. State Rifle & Pistol Ass'n v. City of N.Y.*,
   140 S. Ct. 1525 (2020)................................................................14

*Navy Seal 1 v. Austin*,
   No. 22-5114, 2023 WL 2482927 (D.C. Cir. Mar. 10, 2023) ....................1

*New Hampshire v. Maine*,
   532 U.S. 742 (2001) ................................................................19

*Oklevueha Native Am. Church of Haw., Inc. v. Holder*,
   676 F.3d 829 (9th Cir. 2012)......................................................21

*Pegram v. Herdich*,
   530 U.S. 211 (2000) ................................................................19

*Policastro v. Kontogiannis*,
   262 F. App'x 429 (3d Cir. 2008)..................................................18

*Reed v. City of Arlington*,
   560 F.3d 571 (5th Cir. 2011)......................................................20

*Robert v. Austin*,
   72 F.4th 1160 (10th Cir. 2023)................................................1, 14

*Roth v. Austin*,
   62 F.4th 1114 (8th Cir. 2023)......................................................1

*Rothe Dev. Corp. v. U.S. Dep't of Def.*,
   194 F.3d 622 (5th Cir. 1999)......................................................23

*Royal Ins. Co. of Am. v. Quinn-L Capital Corp.*,
   3 F.3d 877 (5th Cir. 1993) ........................................................10

*S. Bell Tel. & Tel. Co. (S. Bell) v. United States*,
   541 F.2d 1151 (5th Cir. 1976)....................................................15

*Shemwell v. City of McKinney*,
   63 F.4th 480 (5th Cir. 2023) ......................................................18

*Sherley v. Sebelius*,
   689 F.3d 776 (D.C. Cir. 2012) ................................................10, 11

*Shields of Strength v. U.S. Dep't of Def.*,
   --- F. Supp. 3d ---, 2023 WL 3293279 (E.D. Tex. May 5, 2023)............21

*Short v. Berger*,
  Nos. 22-15755, 22-16607, 2023 WL 2258384 (9th Cir. Feb. 24, 2023) ...................................1

*Sossamon v. Texas*,
  563 U.S. 277 (2011) ...............................................................................................21, 22

*Spell v. Edwards*,
  962 F.3d 175 (5th Cir. 2020)...............................................................................................16

*Tanzin v. Tanvir*,
  141 S. Ct. 486 (2020)..........................................................................................21, 22, 23

*U.S. Navy SEALs 1-26 v. Biden*,
  72 F.4th 666 (5th Cir. 2023) ..................................................................................... *passim*

*United States v. $4,480,466.16 in Funds Seized from Bank of Am. Acct. Ending in 2653*,
  942 F.3d 655 (5th Cir. 2019)...............................................................................................23

*United States v. Mitchell*,
  445 U.S. 535 (1980) ............................................................................................................23

*United States v. Testan*,
  424 U.S. 392 (1976) ............................................................................................................23

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ..............................................................................................18, 19, 20

*Webman v. Fed. Bureau of Prisons*,
  441 F.3d 1022 (D.C. Cir. 2006) ....................................................................................21, 22

*Weinberger v. Romero-Barcelo*,
  456 U.S. 305 (1982) ............................................................................................................18

*Wilson v. Austin*,
  No. 4:22-CV-438, 2023 WL 5674114 (E.D. Tex. Sept. 1, 2023) .......................................1, 14

*Youngstown Publ'g Co. v. McKelvey*,
  189 F. App'x 402 (6th Cir. 2006).........................................................................................17

## STATUTES

28 U.S.C. § 1491(a)(1) ..................................................................................................23

42 U.S.C. § 2000bb-1(c) ..............................................................................................21

James M. Inhofe National Defense Authorization Act for Fiscal Year 2023 ("NDAA"),
    Pub. L. No. 117-263, 136 Stat. 2395 (2022),............................................................5

## LEGISLATIVE HISTORIES

168 Cong. Rec. H9425 (daily ed. Dec. 8, 2022)............................................................6

## RULES

Fed. R. Civ. P. 8(a)(3) ..................................................................................................11

## OTHER AUTHORITIES

7AA C. Wright, A. Miller, & M. Kane, Fed. Prac. & Proc. § 1788 (3d ed.) ...............19

Marvin E. Frankel, *Some Preliminary Observations Concerning Civil Rule 23*,
    43 F.R.D. 39 (1967).................................................................................................19

NAVADMIN 038/23,
    https://perma.cc/F66Y-PUFN ..................................................................................12

NAVADMIN 065/23,
    https://perma.cc/7T5J-68A4......................................................................................8

Sec'y of Def. Mem. (Aug. 24, 2021),
    https://perma.cc/N759-S758 .....................................................................................5

## INTRODUCTION

After Congress instructed the Secretary of Defense to rescind the mandate that members of the Armed Forces be vaccinated against COVID-19, courts throughout the country considering similar challenges to a military vaccine mandate have repeatedly concluded that such actions are now moot.  Six courts of appeals, including the Fifth Circuit in this case, have dismissed appeals from the grant or denial of preliminary injunctions on mootness grounds.  *Robert v. Austin*, 72 F.4th 1160, 1165 (10th Cir. 2023); *U.S. Navy SEALs 1-26 v. Biden*, 72 F.4th 666, 672 (5th Cir. 2023); *Roth v. Austin*, 62 F.4th 1114, 1119 (8th Cir. 2023); *Navy Seal 1 v. Austin*, No. 22-5114, 2023 WL 2482927 (D.C. Cir. Mar. 10, 2023); *Dunn v. Austin*, No. 22-15286, 2023 WL 2319316 (9th Cir. Feb. 27, 2023); *Short v. Berger*, Nos. 22-15755, 22-16607, 2023 WL 2258384 (9th Cir. Feb. 24, 2023); *Alvarado v. Austin*, No. 23-1419 (4th Cir. Aug. 3, 2023).[1]  At least eight district courts—including four in this circuit, one in this district, one addressing claims brought by a class of Marines, and one addressing claims brought by several class members—have likewise concluded that challenges to the COVID-19 vaccination requirement analogous to Plaintiffs' challenge here are moot and have not found an exception to mootness to apply.[2]

---

[1] The only court declining to find a preliminary injunction request moot did so based on circumstances unique to the case involving National Guardsmen who did not seek a religious, administrative, or medical accommodation while the mandate was operative.  *Abbott v. Biden*, 70 F.4th 817, 825 (5th Cir. 2023).  The Government respectfully disagrees with the *Abbott* court's reasoning.  Notably, however, the *Abbott* court indicated that actions by service members who sought an accommodation while the mandate was operative "would very likely [be] moot."  *Id.* at 824-25.  Here, "[e]ach of the Named Plaintiffs and the class members have, by definition, submitted religious accommodation requests."  ECF No. 140 at 19.

[2] *Wilson v. Austin*, No. 4:22-CV-438, 2023 WL 5674114 (E.D. Tex. Sept. 1, 2023); *Coker v. Austin*, --- F. Supp. 3d ---, 2023 WL 5625486 (N.D. Fla. Aug. 25, 2023); *Jackson v. Mayorkas*, No. 4:22-cv-0825-P, 2023 WL 5311482 (N.D. Tex. Aug. 17, 2023); *Bongiovanni v. Austin*, No. 3:22-cv-580-MMH-MCR, 2023 WL 4352445 (M.D. Fla. July 5, 2023) (brought by several class members); *Crocker v. Austin*, C.A. No. 22-0757, 2023 WL 4143224 (W.D. La. June 22, 2023); *Bazzrea v. Mayorkas*, --- F. Supp. 3d ---, 2023 WL 3958912 (S.D. Tex. June 12, 2023); *Clements v. Austin*, C.A. No. 2:22-2069-RMG, 2023 WL 3479466 (D.S.C. May 16, 2023); *Colonel*

Even though the Fifth Circuit's ruling concerned preliminary injunctions, the court's holding was a definitive conclusion on a question of law—*i.e.*, whether Defendants' rescission of the vaccination requirement pursuant to congressional action mooted a request to enjoin Defendants from enforcing the vaccination requirement against Plaintiffs and Class Members. Under the law-of-the-case doctrine, that mootness holding controls subsequent consideration of the same question and mandates that this Court find that Plaintiffs' request for prospective relief—the only relief sought in the operative Complaint—moot at the merits stage as well.

## PROCEDURAL BACKGROUND

Thirty-five pseudonymous service members in the Naval Special Warfare community filed this lawsuit in November 2021, alleging that the Department of Defense (DoD) COVID-19 vaccination requirement and the Navy's policies implementing that requirement violated the Religious Freedom Restoration Act (RFRA), the First Amendment, and the Administrative Procedure Act (APA). ECF No. 1. On January 3, 2022, this Court granted a preliminary injunction barring the Navy from "applying MANMED § 15- 105([4])(n)(9); NAVADMIN 225/21; Trident Order #12; and NAVADMIN 256/21 to Plaintiffs," as well as from "taking any adverse action against Plaintiffs on the basis of Plaintiffs' requests for religious accommodation." ECF No. 66 at 26. The Navy appealed and sought a partial stay of the injunction insofar as it prevented the Navy from considering Plaintiffs' vaccination status in making deployment, assignment, and operational decisions. Although the district court and the Fifth Circuit Court of Appeals denied

---

*Financial Mgmt. Officer v. Austin*, No. 8:22-cv-1275-SDM-TGW, 2023 WL 2764767 (M.D. Fla. Apr. 3, 2023). Other cases have been voluntarily dismissed after the rescission. *E.g.*, Joint Stipulation of Dismissal, *Air Force Major v. Austin*, No. 3:22-cv-756-E, ECF No. 25 (N.D. Tex. Mar. 7, 2023).

that relief, the Supreme Court granted the partial stay the government had requested on March 25, 2022. *Austin v. U.S. Navy SEALs 1-26*, 142 S. Ct. 1301 (2022) (mem.).

On January 24, 2022, Plaintiffs amended their complaint to seek class-wide relief, again claiming the DoD's COVID-19 vaccination requirement and the Navy's policies implementing that requirement violated RFRA and the First Amendment. ECF No. 84. Pseudonymous Plaintiffs Navy SEAL 1, Navy SEAL 2, Navy SEAL 3,[3] and Explosive Ordinance Technician 1 were named class representatives. *Id.* The other thirty-one pseudonymous Plaintiffs remained parties to the litigation.[4] *Id.* Plaintiffs proposed a series of allegedly common questions each concerning the now-defunct Navy implementation of the DoD COVID-19 vaccine requirement. *See id.* ¶ 58 a – h; ¶ 59 a – p.

On March 28, 2022, this Court certified a class of all Navy service members who had submitted religious-accommodation requests and granted a class-wide preliminary injunction barring the Navy "from applying MANMED § 15-105([4])(n)(9); NAVADMIN 225/21; Trident Order #12; and NAVADMIN 256/21" to the class members. ECF No. 140 at 27. This Court found that Plaintiffs satisfied the requirements of Federal Rule of Civil Procedure 23, because, *inter alia*, the potential class members have suffered the same injury arising from the denial or assumed denial of their religious accommodation request to the COVID-19 vaccine requirement. *See id.*; *see also id.* at 17 ("Without relief, each servicemember faces the threat of discharge and the consequences that accompany it.").

---

[3] Navy SEAL 3 retired from the Navy in May 2023. Ex. 1 (Decl. of Martin Pompeo) ¶ 3 (App003).

[4] Fourteen of the remaining thirty-one pseudonymous Plaintiffs have voluntarily separated or retired from the Navy. Ex. 1 (Decl. of Martin Pompeo) ¶ 3 (App003). All of the non-class-representative Plaintiffs refused to participate in discovery, and the Government has moved to compel. *See* ECF Nos. 191, 203 (pending motions to compel).

This Court immediately stayed its own injunction "insofar as it precludes the Navy from considering [class members'] vaccination status in making deployment, assignment, and other operational decisions." ECF No. 140 at 27 (quoting *U.S. Navy SEALs 1-26*, 142 S. Ct. at 1301). The Government again appealed, and the Fifth Circuit consolidated the two appeals. During the pendency of the appeal and the district court litigation, Congress directed the Secretary of Defense to rescind the challenged requirements.

On January 4, 2023, the Fifth Circuit oral argument panel requested that the parties submit supplemental letter briefs addressing the issue of mootness, which the parties submitted on January 27, 2023. The Fifth Circuit also considered mootness arguments at oral argument on February 6, 2023. Meanwhile, between February 6, 2023, and March 8, 2023, the parties submitted briefing on mootness to this Court. ECF Nos. 221, 224, 226, 231.

On July 6, 2023, the Fifth Circuit published an opinion dismissing the appeals as moot. *U.S. Navy SEALs 1-26*, 72 F.4th at 676. The court concluded that the Navy's actions "moot a dispute over the lawfulness of military vaccine mandates." *Id*. at 672. "Critically, the Navy has also ruled out using vaccination status to deny deployment eligibility, training opportunities, and assignments." *Id*. at 673; *see also id*. at 675-76 ("'COVID-19 vaccination shall not be a consideration in assessing individual service member suitability for deployment or other operational missions.'') (quoting NAVADMIN 038/23). "This was the central threat that, Plaintiffs argued, hung over their heads even post-rescission. The Navy has now abjured it." *Id*. at 673. Because "the Navy has given Plaintiffs 'the precise relief' provided by the preliminary injunctions," the Fifth Circuit was left "'unable to provide relief beyond what [the Navy] already gave.'" *Id*. at 672-73 (citation omitted). Moreover, the Fifth Circuit rejected Plaintiffs' argument that the voluntary cessation exception to mootness applies. *Id*. at 675. The court declined to

4

consider the exception for controversies that are capable of repetition yet evading judicial review, finding it unnecessary to consider that exception in the context of an interlocutory appeal, where no litigation had yet been concluded through final judgment. *Id.*

On August 14, 2023, this Court ordered the parties to submit supplementing briefing on the following three subjects:

    (1)  the continued viability of any arguments previously raised before this Court and explicitly addressed by the Fifth Circuit;

    (2)  the continued viability of any arguments previously raised before this Court and *not* explicitly addressed by the Fifth Circuit; and

    (3)  any new arguments relating to the issue of mootness which have not heretofore been presented to the Court.

ECF No. 248.

## **FACTUAL BACKGROUND**

**A.**    **The DoD Mandate.**  On August 24, 2021, the Secretary of Defense directed the Secretaries of the Military Departments to ensure that all members of the Armed Forces were fully vaccinated against COVID-19.  Sec'y of Def. Mem. (Aug. 24, 2021), https://perma.cc/N759-S758. The Navy subsequently issued orders implementing that requirement. *See* ECF No. 44-1 at App75-76 (ALNAV 062/21, setting deadlines for vaccination); ECF No. 44-1 at App83-87 (NAVADMIN 225/21, providing procedures for disciplining and, if necessary, separating service members who refuse vaccination without an exemption); ECF No. 44-1 at App89-96 (NAVADMIN 256/21, providing for "temporary reassign[ment]" of unvaccinated service members); ECF No. 44-1 at App98-99 (Trident Order #12, implementing the requirement for Special Warfare personnel).

**B.**    **The NDAA.**  On December 23, 2022, the President signed the James M. Inhofe National Defense Authorization Act for Fiscal Year 2023 ("NDAA"), Pub. L. No. 117-263, 136 Stat. 2395 (2022), into law.  Section 525 directs the Secretary of Defense, within 30 days, to rescind the August 2021 memorandum requiring vaccination of service members against COVID-19.  *Id.*

at 2571-72.  An explanatory statement in the Congressional Record notes that DoD "has mechanisms to correct a servicemember's military record for discharge due to failure to receive the COVID-19 vaccine" and that "the military departments have the ability to consider applications for reinstatement of servicemembers who were previously separated for refusing the vaccine." *See* 168 Cong. Rec. H9425, H9441 (daily ed. Dec. 8, 2022).

On January 10, 2023, the Secretary of Defense rescinded the mandate as directed.  ECF No. 214-1.  The rescission memorandum directed that currently serving service members who sought an exemption may not be "separated solely on the basis of their refusal to receive the COVID-19 vaccination" and directs the Services to "update the records of such individuals to remove any adverse actions solely associated with denials of such requests." *Id.*  It further directed that decisionmakers should "cease any ongoing reviews" of requests for accommodation from the COVID-19 vaccination requirement.  *Id.*

The Navy also issued implementing guidance.  On January 11, 2023, the Navy issued NAVADMIN 005/23 "[c]ancel[ing]" it's implementation of the August 2021 vaccination requirement.  ECF No. 223 at App002 (NAVADMIN 005/23 cancelling NAVADMIN 190/21 and "suspend[ing]," the derivative enforcement policies, NAVADMIN 225/21 and NAVADMIN 256/21).  The Navy directed commands to "immediately discontinue administrative separation processing of Navy Service Members solely for refusing the COVID-19 vaccine, including those with approved separation letters," and to "immediately suspend any new adverse administrative actions associated with refusing the COVID-19 vaccine."  *Id.*  And on January 20, the Secretary of the Navy ordered the Navy to "cease any ongoing reviews of current Service Members' religious, administrative, or medical accommodation requests solely for exemption from the COVID-19 vaccine or appeals of denials of such requests," and he clarified that "[n]o currently

serving Sailor . . . shall be separated solely on the basis of their failure to receive the COVID-19 vaccination if they sought an accommodation on religious, administrative, or medical grounds." *Id*. at App004 (ALNAV 009/23, "cancel[ing]" ALNAV 062/21).

Although not at issue in the Amended Complaint, DoD has issued follow-up guidance removing all travel restrictions that differentiate based on vaccination status. *Id*. at App012-33 ("Force Health Protection Guidance Rev. 4"). On February 15, 2023, the Navy issued NAVADMIN 038/23, updating its standard operating guidance to remove the distinction between vaccinated and unvaccinated service members when making assignment and deployment decisions. ECF No. 227 at App002-04.

On February 24, 2023, the Deputy Secretary of Defense issued further guidance clarifying that when the Secretary of Defense rescinded the COVID-19 vaccination requirement, he "thereby also rendered all DoD Component policies, directives, and guidance implementing those vaccination mandates no longer in effect as of January 10, 2023," including but "not limited to, any COVID-19 vaccination requirements or related theater entry requirements and any limitations on deployability of Service members who are not vaccinated against COVID-19." ECF No. 230-1 at 2. ("Deputy SECDEF Mem."). The only remaining COVID-19 vaccine requirements are those "required for travel to, or entry into, a foreign nation." *Id*. at 3. In short, other than complying with entry requirements into a foreign country, "commanders will not require a Service member or group of Service members to be vaccinated against COVID-19, nor consider a Service member's COVID-19 immunization status in making deployment, assignment, and other operational decisions." *Id*.

The Deputy Secretary also made clear that DoD has no expectation of implementing another force-wide COVID-19 vaccination requirement. Should any commander wish to require

COVID-19 vaccination for any purpose, that request must be approved by the Assistant Secretary of Defense for Health Affairs, and any new requirements "will be made judiciously and only when justified by compelling operational needs and will be as narrowly tailored as possible." *Id.*

On February 24, 2023, the Secretary of the Navy also issued a memorandum titled *Department of the Navy Actions to Implement Coronavirus Disease 2019 Vaccine Rescission*, which details the comprehensive actions that the Navy would undertake to remove past adverse actions based solely on a refusal to receive the COVID-19 vaccine for those who sought an exemption.  ECF No. 230-2 ("SECNAV Implementation Mem.").  Among other things, it directs the Navy and Marine Corps to review records of current service members who sought an exemption in order to remove adverse action.

On March 7, 2023, the Navy issued NAVADMIN 065/23, taking additional actions to implement the rescission of the DoD COVID-19 vaccination requirement with respect to the Navy. *See* https://perma.cc/7T5J-68A4.   Among other directives, NAVADMIN 065/23 provides that "COVID-19 vaccination status shall not be a consideration in assessing individual Service member suitability for deployment or other operational assignments." *Id.* ¶ 3.  NAVADMIN 065/23 further provided that religious accommodation requests and appeals "are now closed and considered returned without action" and "the records of currently serving Navy Service members who requested religious accommodation from COVID-19 vaccination are being centrally reviewed to identify and remove any adverse information related to vaccine refusal, should it exist." *Id.* ¶¶ 4-5.  "No fewer than three binding policies now forbid considering vaccination status for [deployment eligibility, training opportunities, and assignment] decisions." *U.S. Navy SEALs 1-26*, 72 F.4th at 673.

     **C.**    **Plaintiffs.**  Under the rescission memorandum, neither the named Plaintiffs nor the class members are subject to either the August 2021 DoD COVID-19 vaccine requirement or the subsequent Navy implementation of that requirement.  The thirty-five pseudonymous Plaintiffs have not had adverse action taken against them and they have not been subject to involuntary administrative separation.  ECF No. 223 at App097-102 (Declaration of Captain Gareth J. Healy, ("Healy Decl.") ¶¶ 8-10).  However, fifteen of the thirty-five pseudonymous Plaintiffs (including one of the four class representatives) have chosen to voluntarily separate or retired from the Navy during the pendency of the litigation.  Ex. 1 (Decl. of Martin Pompeo) ¶ 3 (App003).  Processing for involuntary administrative separation has been permanently halted and no new adverse actions will be taken against Plaintiffs for failure to receive the COVID-19 vaccine.  Healy Decl. ¶ 8.

     Similarly, for class members, pursuant to the rescission memorandum, involuntary administrative separation is permanently halted and any adverse action reflecting that process will be removed from the record of each of the class members.  ECF No. 214-1; Healy Decl. ¶ 8.  Any class member who had a record of past adverse action based solely on COVID-19 vaccine refusal will also have that action removed from their record.  Healy Decl. ¶ 9.  No new adverse action based on COVID-19 vaccine refusal will be taken against class members.  *Id.*

## ARGUMENT

I.   **The Fifth Circuit's Holdings on Mootness and the Voluntary Cessation Doctrine are Law of the Case.**

Plaintiffs' arguments that their requests for forward-looking relief present a live controversy or that the voluntary cessation exception to mootness applies have been explicitly addressed and rejected by the Fifth Circuit and are no longer viable.   The Fifth Circuit's determinations on these issues are law of the case.   That doctrine "compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court."  *Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 453 (5th Cir. 2007) (citation omitted).   Furthermore, "[t]he law of the case doctrine applies not only to issues decided explicitly, but also to everything decided 'by necessary implication.'"  *In re Felt*, 255 F.3d 220, 225 (5th Cir. 2001).   Even if "not expressly addressed in an initial appeal, those matters that were fully briefed to the appellate court and were necessary predicates to the ability to address the issue or issues specifically discussed are deemed to have been decided tacitly or implicitly, and their disposition is law of the case."  *Id.*

The law of the case principles extend to an interlocutory appeal of the granting of a preliminary injunction.  *Royal Ins. Co. of Am. v. Quinn-L Capital Corp.*, 3 F.3d 877, 880-81 (5th Cir. 1993); *Gaalla v. Brown*, 460 F. App'x 469, 476 (5th Cir. 2012).   As a general matter, "[w]hen an appellate court 'predicts' who '*likely* will or will not succeed on the merits,' it does not 'affirmatively decide[]' the merits, and so creates no law of the case regarding them."  *Ala. Ass'n of Realtors v. U.S. Dep't of Health and Human Servs.*, 557 F. Supp. 3d 1, 8 (D.D.C. 2021) (quoting *Sherley v. Sebelius*, 689 F.3d 776, 782 (D.C. Cir. 2012)).   But the same reasoning does not apply "where the earlier ruling, though on preliminary-injunction review, was established in a definitive, fully considered legal decision," and that decision was "based on a fully developed factual record

10

and a decisionmaking process that included full briefing and argument without unusual time constraints." *Sherley*, 689 F.3d at 782 (holding that prior Court of Appeals holding on preliminary injunction that agency reasonably interpreted statutory authority was law of the case).  Such is the case here.

After an extended briefing period, including supplemental briefing exclusively on the issue of mootness, the Fifth Circuit affirmatively decided that this Court's orders preliminarily enjoining Defendants from enforcing the vaccination requirement and deployability policies previously in effect against the Plaintiffs and the class were moot because those policies had been rescinded. *U.S. Navy SEALS 1-26*, 72 F.4th at 672 (Defendants' "actions moot a dispute over the lawfulness of military vaccine mandates" and "[n]o fewer than three binding policies now forbid considering vaccination status for [deployment and other operational] decisions") (citation omitted). Moreover, the Fifth Circuit decided, as a matter of law, that "[t]he voluntary cessation exception does not apply here." *Id*. at 675.  The Fifth Circuit did not merely rule that Plaintiffs were unlikely to succeed on the merits because of mootness or unlikely to demonstrate the voluntary cessation exception; rather, the Fifth Circuit made a "definitive, fully considered legal decision" that Plaintiffs' request for relief was moot and the voluntary cessation exception does not apply. *Sherley*, 689 F.3d at 782.

This Court thus "has no power or authority to deviate from" those conclusions to the extent that Plaintiffs are seeking the same relief in the operative complaint[5]—as they plainly do.  *Ala. Ass'n of Realtors*, 557 F. Supp. 3d at 7 (quoting *Briggs v. Pa. R. Co.*, 334 U.S. 304, 306 (1948)); *see* Am. Compl., Prayer for Relief (seeking "[a] preliminary and permanent injunction prohibiting

---

[5] The complaint must contain Plaintiffs' specific "demand for the relief sought."  Fed. R. Civ. P. 8(a)(3).

the Defendants, their agents, officials, servants, employees, and other persons acting on their behalf from enforcing the COVID-19 Vaccine Mandate as to the Plaintiffs and the class members"). The Fifth Circuit's holding regarding mootness thus dictates the conclusion that this Court lacks jurisdiction over Plaintiffs' request to have this Court enjoin the defunct vaccination requirement or declare it unlawful.[6] *Golden v. Zwickler*, 394 U.S. 103, 208 (1969).

## II. The Operative Complaint Demands No Additional Relief that Can Save This Case from Mootness.

There is no additional relief requested in the Amended Complaint that can save this case from mootness. Other than their request for prospective injunctive relief, Plaintiffs seek declaratory relief, which is also necessarily prospective in nature. Am. Compl., Prayer for Relief. But the Fifth Circuit's holding on mootness necessarily implicates a request to declare the defunct mandate unlawful just as it implicates a request to enjoin that same mandate. *See In re Felt*, 255 F.3d at 225. "The fact that [Plaintiffs] here request[] declaratory relief in addition to an injunction cannot save their [claims] from dismissal. Requests for declaratory relief may sustain a suit only when the claims 'challenge . . . some ongoing underlying policy' rather than 'merely attack[ing] an isolated . . . action.'" *Harris v. City of Houston*, 151 F.3d 186, 191 n.5 (5th Cir. 1998) (quoting

---

[6] In their sur-reply, Plaintiffs claim that the NAVADMIN 038/23 "Operational Risk Management Matrix for Deployments" gives commanders the option to consider vaccination status when making deployment decisions. ECF No. 235 at 2-3. But Plaintiffs also presented that argument to the Fifth Circuit, which did not determine it to be relevant. Letter, ECF No. 292, *U.S. Navy SEALs 1-26 v. Biden*, No. 22-10077 (5th Cir. Mar. 10, 2023). In any event, Plaintiffs' interpretation of the matrix is incorrect and would be contrary to the express directives of NAVADMIN 065/23 and of the Deputy Secretary of Defense's February 24 memorandum. Instead, the matrix is a tool to help commanders evaluate deployment risk factors based on characteristics such as location, medical care available, and the number of unvaccinated crew members. *See* Matrix at 2-3, https://perma.cc/F66Y-PUFN. Based on elevated risk factors a commander may take mitigation measures: for example, additional masking, testing, and movement restrictions, or carrying additional medical supplies such as COVID-19 boosters (for voluntary use) and anti-viral medication. *Id.* at 4. Thus, the matrix provides alternative means to a vaccination mandate to reduce the risk to mission execution that might be posed by COVID-19.

*City of Houston v. HUD*, 24 F.3d 1421, 1429 (D.C. Cir. 1994)).  "An otherwise nonjusticiable case cannot be resurrected simply by seeking declaratory relief." *Bongiovanni*, 2023 WL 4352445, at *6 (quoting *Gagliardi v. TJCV Land Tr.*, 889 F.3d 728, 734-35 (11th Cir. 2018)).

Plaintiffs no longer challenge an ongoing underlying policy.  "Secretary Austin's January 10 rescission order rendered all military 'policies, directives, and guidance implementing [the challenged] vaccination mandates *as no longer in effect*.'"  *U.S. Navy SEALs 1-26*, 72 F.4th at 672 (quoting Feb. 24 DoD Rescission Guidance).  As a number of courts have found, actions by service members seeking declaratory judgments that the military COVID-19 vaccination directive was unlawful are moot.  *E.g.*, *Jackson*, 2023 WL 5311482, at *5; *Bongiovanni*, 2023 WL 4352445, at *6; *Bazzrea*, 2023 WL 3958912, at *4 n.4.

Beyond declaratory relief, the Amended Complaint includes a request for attorney's fees and costs and a general prayer for relief.  Am. Compl., Prayer for Relief.  But these demands do not ground a live controversy.  The "interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." *Bongiovanni*, 2023 WL 4352445, at *6 n.3 (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480-81 (1990)).

And the Amended Complaint's general prayer for relief—e.g., "[a]ll other further relief under law or equity to which Plaintiffs and the class members may be entitled," Am. Compl., Prayer for Relief—does not permit the Court to "'read into' their complaint additional requests for relief and then proceed to an adjudication on the merits."  *See City of Houston*, 151 F.3d at 191. "In each iteration of the complaint, in the prayer for relief in each complaint, and during hearings throughout this action, the plaintiffs have repeatedly phrased their request for relief as [nothing more than an] injunction against application of the COVID-19 vaccine mandate to religiously

13

objecting service members[.]" *See Colonel Financial Mgmt. Officer*, 2023 WL 2764767, at *2. Because Plaintiffs have already received "the precise relief that [they] requested in their prayer for relief in their complaint," Plaintiffs' "claim for declaratory and injunctive relief . . . is therefore moot." *See N.Y. State Rifle & Pistol Ass'n v. City of N.Y.*, 140 S. Ct. 1525, 1526 (2020).

## III.   Plaintiffs Cannot Demonstrate that the Mootness Exception for Controversies Capable of Repetition Yet Evading Judicial Review Applies.

Plaintiffs cannot show that the mootness exception for controversies capable of repetition, yet evading review is applicable. Every court addressing similar challenges to the military's COVID-19 vaccination directive to have considered the issue has found it inapplicable. *Robert*, 72 F.4th at 1165; *Wilson*, 2023 WL 5674114, at *7; *Coker*, 2023 WL 5625486, at *5; *Jackson*, 2023 WL 5311482 at *5; *Bongiovanni*, 2023 WL 4352445, at *10; *Crocker*, 2023 WL 4143224, at *7; *Bazzrea*, 2023 WL 3958912, at *7. The Fifth Circuit found it unnecessary to consider this exception in the context of an interlocutory appeal, where no litigation had yet concluded through final judgment. *U.S. Navy SEALs 1-26*, 72 F.4th at 675. Instead, the court determined that this Court should evaluate in the first instance on remand whether Plaintiffs' claims remained justiciable. *Id.* In doing so, the Fifth Circuit reinforced the strict limits on the exception—namely that it requires "(1) the challenged action [be] in its duration too short to be fully litigated prior to cessation or expiration, and (2) [that] there [be] a reasonable expectation that the same complaining party [will] be subject to the same action again." *Id.* (quoting *Empower Texans, Inc. v. Geren*, 977 F.3d 367, 370 (5th Cir. 2020)).[7] Considered alongside the Fifth Circuit's other reasoning throughout the opinion, there is ample reason to doubt that this case presents the sort of "exceptional situation[]" required. *See id.* (quoting *Empower Texans*, 977 F.3d at 370).

---

[7] "[P]laintiffs[] bear the burden of proving both prongs." *Libertarian Party v. Dardenne*, 595 F.3d 215, 217 (5th Cir. 2010).

14

First, "this case does not meet the duration requirement." *Jackson*, 2023 WL 5311482, at *5. Whether the COVID-19 virus "continues to mutate," ECF No. 235 at 8, is irrelevant. Any "military vaccination requirement [itself] does not 'inevitably expire[]' and naturally constrain judicial review[.]" *Id.* (quoting *Crocker*, 2023 WL 4143224, at *7). The military's other vaccination requirements, including for other viruses that frequently change, like influenza, have been in place for many years, and in some cases, decades. *See, e.g.,* ECF No. 44-1 at App47-52. Indeed, in arguing that "the mandate was *unexpectedly* rescinded before" their claims could be litigated, ECF No. 235 at 8 (emphasis added), Plaintiffs acknowledge that the rescission of a military vaccine mandate is unusual. The congressionally directed and concededly unexpected rescission stands in contrast to cases involving strikes, pregnancies, or elections, where it is anticipated that a condition or event will come to an end before judicial review and present courts with cyclical or recurring disputes. That the Navy's "own new policies recognize the changing nature of the virus," ECF No. 235 at 8, hardly means that the military would not have continued to require vaccination to reduce the risk of COVID-19 to mission execution but for Congress's directive to rescind the COVID-19 vaccination requirement.

Nor are Plaintiffs' religious objections "condition[s] or event[s] that [are] short in duration or [that have] terminated." *Jackson*, 2023 WL 5311482, at *5 (quoting *Bazzrea*, 2023 WL 3958912, at *7). Had Congress not rescinded the military COVID-19 vaccination directive, there would have been ample time to litigate Plaintiffs' claims. Thus, even if Defendants were to reinstate the same challenged vaccination directive, "there is no reason to suppose that the issues . . . will in the future evade review." *S. Bell Tel. & Tel. Co. (S. Bell) v. United States*, 541 F.2d 1151, 1155 (5th Cir. 1976).

15

Second, Plaintiffs have not shown that there is a reasonable expectation that they will be subject to the same challenged vaccination requirement again.[8]  "A 'mere physical or theoretical possibility' is not sufficient to satisfy this prong of the exception.'"  *Libertarian Party*, 595 F.3d at 217 (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)).  "[I]t hardly seems reasonable to expect that a similar global pandemic will occur, that Defendants will impose a vaccination mandate without meaningful religious accommodations, that the mandatory vaccine will conflict with the religious beliefs of these Plaintiffs, and that Plaintiffs will still be in the Navy." *Bongiovanni*, 2023 WL 4352445, at *10; *see also Spell v. Edwards*, 962 F.3d 175, 180 (5th Cir. 2020) (addressing challenge to expired COVID-19 restrictions).  Although "[a] party can satisfy this prong by providing evidence showing that the opposing party's 'actions reflect a policy or consistent pattern of behavior that [it] has determined to continue,'" *Long v. Jayton-Girard Ind. Sch. Dist.*, No. 5:21-CV-111-H, 2021 WL 7906835, at *4 (N.D. Tex. Sept. 3, 2021) (quoting *Libertarian Party*, 595 F.3d at 218), the Fifth Circuit has already concluded that there is no basis to find that the Navy "issued the post-rescission policies with an eye toward resuming the challenged conduct as soon as the courts were done," *U.S. Navy SEALs 1-26*, 72 F.4th at 675. Accordingly, Plaintiffs have not carried their burden of establishing that the challenged policy is capable of repetition yet evading review.

## IV.   Plaintiffs Have Not Sought Damages and Damages Would Be Unavailable in Any Event.

Because no damages claim is pled in the operative compliant, Plaintiffs' argument that a hypothetical damages claim would "provide meaningful relief to the class," ECF No. 224 at 14; *see also* ECF No. 235 at 9-10, is not properly before the Court.  That is especially so given that

---

[8] Again, nearly half of the Plaintiffs have voluntarily left the military and could not be subject to a future mandate even if it were imposed.  Ex. 1 (Decl. of Martin Pompeo) ¶ 3 (App003).

this case is a class action certified under Rule 23(b)(2), where damages are not generally available and, even if they were, would be impracticable given that they would require particularly individualized proof of injury.  Indeed, Plaintiffs are judicially estopped from seeking monetary damages on behalf of the class by failing to mention that claim when seeking certification under Rule 23(b)(2).  Moreover, any hypothetical damages claim would be futile.  First, Congress has not waived the Government's sovereign immunity from suit for money damages under RFRA.  Second, Plaintiffs have not satisfied their burden of establishing that their case for damages would lie within the subject-matter jurisdiction of the Court.

### A. No Damages Claim is Before the Court in this Rule 23(b)(2) Class Action and Judicial Estoppel Prevents Plaintiffs from Arguing for One Now.

First, monetary damages are not at issue in this case and courts do not extract monetary damage claims from general prayers for relief when asserted solely to avoid otherwise certain mootness.  "[A] complaint's general prayer for relief . . . does not 'operate to preserve a request for damages in order to avoid mootness where there is no specific request and no evidence to sustain a claim for [damages].'"  *Harris v. Univ. of Mass. Lowell*, 43 F.4th 187, 193 (1st Cir. 2022) (citation omitted); *see also City of Houston*, 151 F.3d at 191 (Courts "will not second-guess [plaintiffs'] original trial strategy, nor conjure up relief independent of the record"); *Youngstown Publ'g Co. v. McKelvey*, 189 F. App'x 402, 406-08 (6th Cir. 2006) (explaining that it is improper to construe complaints to encompass requests for damages to avoid certain mootness).  "The record reflects clearly that as a tactical matter, [Plaintiffs] limited and focused their pleading and arguments solely to enjoining" the Navy's enforcement of the now-defunct COVID-19 vaccination requirement.  *See City of Houston*, 151 F.3d at 191.  "Perhaps [Plaintiffs] favored this strategy to ensure that [this Court] would not grant damages as an adequate remedy in lieu of injunctive

relief." *Id.*[9]  Whatever the reason, "courts will not read a claim for damages into a complaint that contains no such request." *Policastro v. Kontogiannis*, 262 F. App'x 429, 433 n.5 (3d Cir. 2008); *see also Shemwell v. City of McKinney*, 63 F.4th 480, 485 (5th Cir. 2023) ("To the extent [Plaintiffs'] claims evaded review, it was their own doing" because Plaintiff "never included a claim for damages"); *Guerrero v. Credit Mgmt., LP*, No. A-16-CV-987-LY, 2017 WL 7052292, at *5 (W.D. Tex. Oct. 24, 2017) ("'[C]atch all' request for relief" insufficient to provide notice that plaintiff was seeking an injunction).

Construing the operative complaint to include a request for monetary damages would be particularly improper in this case given that it was certified as a class action under Federal Rule of Civil Procedure (b)(2).  ECF No. 140; *see Wal-Mart Stores*, 564 U.S. at 360-63.  Because "individualized damages determinations [are interests] that Rule 23(b)(2) [class actions do] not protect," *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 979 (5th Cir. 2000), Plaintiffs unsurprisingly cite no case where a court entertained a claim for damages not pled in the operative complaint and asserted solely to avoid a Rule 23(b)(2) class action's otherwise certain mootness. A Rule 23(b)(2) class action does not authorize the Court to ascertain "each class member['s] entitlement] to an individualized award of monetary damages."  *See Wal-Mart Stores*, 564 U.S. at 361.  Indeed, permitting a damages claim to proceed at this juncture would raise constitutional concerns because "[i]n the context of a class action predominantly for money damages [the

---

[9] Defendants would be prejudiced if this Court were to permit Plaintiffs to raise a monetary damages claim at this late juncture.  Plaintiffs' decision not to include monetary damages in its request for relief prejudiced Defendants' arguments against class certification and preliminary injunctive relief.  Defendants would have argued that class certification was not proper in this case if Plaintiffs were seeking monetary damages.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360-63 (2011).  And Defendants would have argued that extraordinary injunctive relief was not appropriate insofar as monetary relief was available as an adequate alternative remedy.  *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) ("[T]he basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies.").

Supreme Court has] held that absence of notice and opt out," which never occurred here, "violates due process." *Id.* at 363.[10]

A damages claim in this class action would be impracticable because it would require proof of injury particular to each class member. "[I]n this circuit, compensatory damages for . . . intangible injury will not be presumed from a mere violation of constitutional or statutory rights." *See Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 416-17 (5th Cir. 1998). Any request for back pay would "require separate hearings in which each class member would have to show that [a RFRA violation] caused a loss." *Id.* at 416. And recovery of compensatory damages would also "require[] particularly individualized proof of injury, including how each class member was personally affected by [Defendants' purportedly illegal] conduct." *Id.* As Plaintiffs have explained, "one can confidently estimate that the Navy Class members number in the thousands[.]" ECF No. 90 at 3-4. The Court cannot adjudicate each class member's individualized damages claims as a class.

Given Plaintiffs' prior arguments in favor of class certification under Rule 23(b)(2), judicial estoppel precludes their attempt to now seek damages. This rule "'generally prevents a party from prevailing in one phrase of a case on an argument and then relying on a contrary argument to prevail in another phrase.'" *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Pegram v. Herdich*, 530 U.S. 211, 227, n.8 (2000)). It prohibits parties from "changing positions according to the exigencies of the moment[.]" *Id.* (citation omitted). Courts look "to the

---

[10] Nor would class notice at this stage be timely because the class was certified nearly eighteen months ago. *See* 7AA C. Wright, A. Miller, & M. Kane, Fed. Prac. & Proc. § 1788 (3d ed.). "[I]t seems obvious that if notice is to be effective—if class members are to have a meaningful opportunity to request exclusion, appear in the action, object to the representation, etc.—the invitation must go out as promptly as the circumstances will permit." Marvin E. Frankel, *Some Preliminary Observations Concerning Civil Rule 23*, 43 F.R.D. 39, 41 (1967).

following elements in deciding whether to apply judicial estoppel: (1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *In Matter of Galaz*, 841 F.3d 316, 326 (5th Cir. 2016) (quoting *Reed v. City of Arlington*, 560 F.3d 571, 574 (5th Cir. 2011) (en banc)). "Because the doctrine is intended to protect the judicial system, *rather than the litigants*, detrimental reliance by the opponent of the party against whom the doctrine is applied is not necessary." *Browning Mfg. v. Mims (In re Coastal Plans, Inc.)*, 179 F.3d 197, 205 (5th Cir. 1999).

Each factor is met here. First, Plaintiffs' assertion that they are entitled to damages to redress their claims is plainly inconsistent with their prior position in favor of class certification under Rule 23(b)(2), which, again, does not allow for claims for monetary relief. *Wal-Mart*, 564 U.S. at 360-363. In seeking that relief, Plaintiffs made no mention of their damages claim and had argued that they "do not seek individualized relief for any class member or for any subset of any class or subclasses. The Named Plaintiffs are seeking classwide declaratory and injunctive relief that protects the sincerely held religious beliefs of all members of the Navy who have submitted Religious Accommodation requests concerning the COVID-19 Vaccine Mandate." ECF No. 90 at 14. Second, the Court accepted their position. ECF No. 140 at 15 n.4, 16-17 (certifying the class under Rule (b)(2) without addressing the unmentioned damages claim and explaining that "injunctive relief must predominate over monetary damages"). Third, to establish that their inconsistent positions are somehow inadvertent, Plaintiffs would have to "prove either that [they] did not know of the [damages claim] or that [they] had no motive to conceal" the damages claim. *See Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 601 (5th Cir. 2005). Plaintiffs cannot offer

any such proof.  Accordingly, having prevailed on their claim for class certification under Rule 23(b)(2), Plaintiffs are estopped from now seeking a damages remedy.

### B. Plaintiffs Identify No Waiver of Sovereign Immunity for Any Damages Claim.

Plaintiffs have failed to identify a waiver of sovereign immunity that would permit a damages claim against the United States in this Court.  RFRA does not authorize damages against the United States.  *Sossamon v. Texas*, 563 U.S. 277, 285-86 (2011); *Davila v. Gladden*, 777 F.3d 1198, 1209 (11th Cir. 2015); *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 841 (9th Cir. 2012); *Webman v. Fed. Bureau of Prisons*, 441 F.3d 1022, 1026 (D.C. Cir. 2006); *Shields of Strength v. U.S. Dep't of Def.*, --- F. Supp. 3d ---, 2023 WL 3293279, at *6 (E.D. Tex. May 5, 2023); *Bongiovanni*, 2023 WL 4352445, at *6 n.4.  Plaintiffs cite no case reading RFRA to waive the United States' sovereign immunity from suit for money damages.  ECF No. 235 at 9-10.  "To sustain a claim that the Government is liable for awards of monetary damages, the waiver of sovereign immunity must extend unambiguously to such monetary claims." *Lane v. Pena*, 518 U.S. 187, 192 (1996).  But RFRA permits only "appropriate relief against a government"; the text includes no waiver of sovereign immunity from suits seeking monetary damages.  42 U.S.C. § 2000bb-1(c).  "Without a statutory definition, [the Court must] turn to the phrase's plain meaning at the time of enactment." *Tanzin v. Tanvir*, 141 S. Ct. 486, 491 (2020). "Because this language is 'open-ended' on its face, what relief is 'appropriate' is inherently context dependent.'" *Id*. "[A]nd '[t]he context here—where the defendant is a sovereign—suggests, if anything, that monetary damages are not suitable or proper.'" *Davila*, 777 F.3d at 1209 (quoting *Sossamon*, 563 U.S. at 286).

"[B]ackground presumptions" that "exist[ed] at the time of [RFRA's] enactment" "inform the understanding" of whether suits for damages against the United States seek "appropriate relief"

under RFRA.  *See Tanzin*, 141 S. Ct. at 493.  Yet Plaintiffs fail to identify any pre-*Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872 (1990) (or pre-RFRA) case—indeed they fail to identify any case at all—awarding damages against the Government for violating the First Amendment's Free Exercise Clause.  *Cf. Webman*, 441 F.3d at 1028 (Tatel, J., concurring) ("Appellants point to no pre-*Smith* waiver of sovereign immunity that authorized damages against the government in Free Exercise cases, nor am I aware of one."); *see also Tanzin*, 141 S. Ct. at 492 ("RFRA reinstated pre-*Smith* protections and rights").

Plaintiffs' contrary arguments, ECF No. 235 at 9-10, are unavailing.  Again, in *Sossamon*, the Supreme Court held that the same language in the Religious Land Use and Institutionalized Persons Act ("RLUIPA") did not waive sovereign immunity from suit.  563 U.S. at 285-86.  Courts construe "the same language in similar statutes to have the same meaning," *FAA v. Cooper*, 566 U.S. 284, 301 (2012), and nothing about the statutory context supports deviating from that principle here.  Indeed, the Supreme Court has characterized RFRA and RLUIPA as "sister statute[s]," *Holt v. Hobbs*, 574 U.S. 352, 356 (2015), and explained that Congress enacted RLUIPA to "allow[] prisoners 'to seek religious accommodations pursuant to the same standard as set forth in RFRA,'" *id.* at 358 (citation omitted).  Plaintiffs suggest that *Sossamon* is distinguishable because it involved state, rather than federal, sovereign immunity.  ECF No. 235 at 10.  But the Court in *Sossamon* cited federal sovereign immunity precedents and made clear that it was relying on a principle—that waivers of immunity are construed strictly in favor of the sovereign—that applies equally to federal and state governments.  *Sossamon*, 563 U.S. at 285 & n.4 (citing *Lane*, 518 U.S. at 192).

Plaintiffs' unsupported assertion that "[w]hat constitutes 'appropriate relief'" under RFRA "does not change depending on whether the defendant is an individual capacity defendant or an

official capacity or agency defendant," ECF No. 235 at 9, directly contradicts the Supreme Court's reasoning in *Tanzin*, where the Court held that RFRA's remedies provision permits litigants, where appropriate, to obtain money damages against federal officials in their individual capacities.  141 S. Ct. at 493.  According to the Supreme Court, the "obvious difference" between *Tanzin* and *Sossamon* was that *Tanzin* "features a suit against individuals, who do not enjoy sovereign immunity." *Id.*

### C.  This Court Lacks Jurisdiction Over Any Damages Claim.

Plaintiffs fail to explain how this Court would have jurisdiction over any damages claim. "Under the Tucker Act, 28 U.S.C. § 1491(a)(1), the Court of Federal Claims has exclusive jurisdiction to render judgment upon any claim against the United States for money damages exceeding $10,000 that is 'founded either upon the Constitution, or any Act of Congress . . .'" *E. Enters. v. Apfel*, 524 U.S. 498, 520 (1998).[11]  "Plaintiffs may not avoid the jurisdictional limits of the Tucker Act through artful pleading," *Bongiovanni*, 2023 WL 4352445, at *6; *see also Amoco Prod. Co.*, 815 F.2d at 361 (same).  "Because adjudication in a federal district court of a lawsuit

---

[11] Although the Tucker Act waives sovereign immunity only for certain "claim[s] against the United States[,]" 28 U.S.C. § 1491(a)(1), the statute does not create any substantive right of recovery against the United States for money damages.  *United States v. Mitchell*, 445 U.S. 535, 538 (1980); *United States v. Testan*, 424 U.S. 392, 399 (1976).  Rather, the Tucker Act merely confers jurisdiction upon the Court of Federal Claims when a substantive right to damages in one of the listed categories already exists.  *Testan*, 424 U.S. at 398; *Rothe Dev. Corp. v. U.S. Dep't of Def.*, 194 F.3d 622, 625 n.6 (5th Cir. 1999); *Amoco Prod. Co. v. Hodel*, 815 F.2d 352, 359-60 (5th Cir. 1987).  Accordingly, "Tucker Act jurisdiction requires not only a claim against the United States, but also requires, based on 'principles of 'sovereign immunity,' that there be a separate money-mandating statute the violation of which supports a claim for damages against the United States."  *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997).  Again, neither RFRA, nor the Free Exercise Clause, is a money-mandating statute.  *Supra* at pp. 21-22 (addressing RFRA); *United States v. $4,480,466.16 in Funds Seized from Bank of Am. Acct. Ending in 2653*, 942 F.3d 655, 664-65 n.17 (5th Cir. 2019) (quoting *Rothe*, 194 F.3d at 625) (Tucker Act judicial avenue for claims founded upon the Constitution "has been limited to apply only to the Takings Clause . . . because only that clause contemplates payment by the federal government.").

that falls within the exclusive jurisdiction of the Court of Claims would seriously undermine the purposes of the Tucker Act, courts confronting the issue have consistently held that the Court of Claims is the sole forum for the adjudication of such a claim, even though the claim would otherwise fall within the coverage of some other statute conferring jurisdiction on the district court." *Graham v. Henegar*, 640 F.2d 732, 734 (5th Cir. 1981).

"To determine whether this suit involves a claim for over $10,000, [the Court] must look to the relief requested in the [Plaintiffs'] complaint." *Id.* at 735. And Plaintiffs' request for attorney's fees "must be included for purposes of calculating the amount of their Tucker Act claim." *Id.* at 736. But, again, the operative complaint does not include a request for damages at all. *Supra* at pp. 17-18. Because Plaintiffs have "not attempt[ed] to disclaim damages [and fees] in excess of $10,000 in [their] complaint," *Chichakli v. United States*, 803 F. App'x 781, 783 (5th Cir. 2020) (Mem.), "it follows that the district court lack[s] jurisdiction and that the Court of Claims [would be] the sole forum for adjudication of the suit," *Graham*, 640 F.2d at 736. *See also Chichakli v. Szubin*, 546 F.3d 315, 317 (5th Cir. 2008) (concluding claim "falls under exclusive jurisdiction of the Court of Federal Claims" despite it being "not clear from the face of the Complaint that [Plaintiff was] seeking greater than $10,000 in damages"). The Fifth Circuit is not alone in finding that a waiver establishing Tucker Act jurisdiction must be included in the complaint. *McClendon v. Blount*, 452 F.2d 381, 383 (7th Cir. 1971) ("District Court jurisdiction in this case should have been denied because the waiver of the amount in excess of $10,000 was not specifically made or entered in the pleadings").[12]

---

[12] Plaintiffs lack agency to waive the damages claims of absent class members. *Johnson v. United States*, 208 F.R.D. 148, 163-65 (W.D. Tex. 2001).

""If Plaintiffs want an award of backpay from the Court of Federal Claims, they must seek it from that court." *Bongiovanni*, 2023 WL 4352445, at *6. "Therefore, Plaintiffs' belated claims for monetary relief do not save this case from being moot." *Id.*

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Amended Complaint as moot.


Dated: September 12, 2023                     Respectfully submitted,


                                              BRIAN M. BOYNTON
                                              Principal Deputy Assistant Attorney General
                                              Civil Division

                                              ALEXANDER K. HAAS
                                              Director, Federal Programs Branch

                                              JOSHUA E. GARDNER
                                              Special Counsel

                                              */s/ Liam C. Holland*
                                              Liam C. Holland (Admitted in New York)
                                              Trial Attorney
                                              ANDREW E. CARMICHAEL
                                              AMY E. POWELL
                                              Senior Trial Counsel
                                              STUART J. ROBINSON
                                              Senior Counsel
                                              ZACHARY A. AVALLONE
                                              CASSANDRA M. SNYDER
                                              Trial Attorneys
                                              United States Department of Justice
                                              Civil Division, Federal Programs Branch
                                              1100 L Street, N.W.
                                              Washington, DC 20005
                                              Tel: (202) 514-4964
                                              Fax: (202) 616-8470
                                              Email: Liam.C.Holland@usdoj.gov

                                              *Counsel for Defendants*