UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **U.S. NAVY SEALs 1-3**; on behalf of themselves and all others similarly situated; **U.S. NAVY EXPLOSIVE ORDNANCE DISPOSAL TECHNICIAN 1**, on behalf of himself and all others similarly situated; **U.S. NAVY SEALS 4-26**; **U.S. NAVY SPECIAL WARFARE COMBATANT CRAFT CREWMEN 1-5**; and **U.S. NAVY DIVERS 1-3**, <br><br>    Plaintiffs,<br><br>  v.<br><br>**LLOYD J. AUSTIN, III**, in his official capacity as United States Secretary of Defense; **UNITED STATES DEPARTMENT OF DEFENSE**; **CARLOS DEL TORO**, in his official capacity as United States Secretary of the Navy,<br><br>    Defendants. | Case No. 4:21-cv-01236-O |

**PLAINTIFFS' SUPPLEMENTAL REPLY BRIEF RE: FIFTH CIRCUIT DECISION**

After reviewing the Navy's supplemental brief, Plaintiffs believe that the remaining disputes in this case center around a few areas: (1) the Navy's persistently illegal religious accommodation process; (2) the continuing harm to Class Members's careers resulting from the Navy's discriminatory treatment of those who submitted requests for religious accommodation, which the Navy continues to refuse to recognize as "adverse" and also refuses to correct; and (3) the Navy's new policies do not prohibit all illegal discrimination against Class Members for their vaccination status.[1] These harms are ongoing and thus provide a basis for injunctive and declaratory relief. And these things are not difficult for the Navy to fix if they do not intend to engage in further religious discrimination.

Furthermore, even if these harms were not considered ongoing, Plaintiffs contend that the capable-of-repetition-yet-evading review exception to mootness would apply. The Navy disagrees. The Navy appears to acknowledge that attorneys' fees is also an outstanding issue, Dkt. 254 at 21, though the parties agree that a claim for attorneys' fees does not render an otherwise moot case justiciable (at least on any other issue than the fees).

I.   **Ongoing harm to the Class Members**

Plaintiffs have always contended that their primary harm was from the lack of a proper religious accommodation process, rather than just the COVID-19 mandate itself. *See* Dkt. 81 at 15-18. The continued existence of the Navy's legally flawed process, however, persists regardless of the mandate's rescission. Even if the Navy has discontinued use of its 50-step SOP, *see* Dkt. 227 at 18, the Navy's pre-existing policies and process permitted the SOP to be used, as the Navy has always defended the SOP as compliant with federal law and its own policies. Thus, as Plaintiffs

---

[1] Defendants also briefed the issue of damages, which Plaintiffs raised in the original suggestion of mootness briefing. Plaintiffs did not include that issue in their previous supplemental brief because they no longer intend to pursue that argument.

1

have pointed out, the problems with the Navy's process that came to light due to the pandemic still exist:

- The Navy's religious accommodation process permits the Navy to sit on requests for accommodation indefinitely, as the Navy did during the Mandate.

- As illustrated during the Mandate, the Navy's religious accommodation process permits the Navy to forego individualized assessment and use standardized policy memos (even if outdated) to satisfy the compelling interest requirement. It also allows boilerplate statements to suffice for demonstrating that the Navy's action is the least restrictive means.

- As we saw during the Mandate, the Navy's religious accommodation process permits the Navy to discriminate against sailors who submit a request and to apply coercive tactics to pressure the servicemember to forego their beliefs.[2] The Navy still insists these discriminatory actions, exhaustively documented in this case, are not "adverse." Dkt. 223 at 102 (claiming that no plaintiff was the subject of "adverse action"); *see also* Dkt. 254 at 17.

- The Navy's religious accommodation process permits Navy leadership to dictate denial of all requests, as it did during the Mandate, no matter the individual circumstances of the requester and current conditions/facts. The Navy denies that this happened, *see* Dkt. 227 at 18, but the facts show otherwise, given that religious accommodation requests were denied basically across the board. *See, e.g.,* Supplemental Authority, *U.S. Navy SEALS 1-24 v. Biden*, Nos. 22-10077 and 22-10534, Doc. 247 (5th Cir. filed Dec. 5, 2022) (lengthy approval memorandum from Commander of NSW Reserve Component detailing illegality of process and conducting individualized assessment); Supplemental Authority, *id.*, Doc. 215 (5th Cir. filed Sept. 13, 2022) (DoD Inspector General letter to Defendant Austin informing him of problems with religious accommodation process).

- The Navy's religious accommodation process permits coercion and retaliation against commanding officers who recommend approval of service member requests despite the chain of command's desire that requests be denied.

- The Navy's religious accommodation process does not permit a requester to resubmit a previously denied request, or update/resubmit a pending request, based on changes to the requester's job, location, or circumstances relevant to the request. (The Navy's policies previously allowed this but were changed during the Mandate

---

[2] Notably, the Army requires that servicemembers requesting religious accommodation be treated as compliant with the policy while their request is pending and prohibits adverse action against servicemembers with pending requests. Dkt. 118 at 38, 42, 52. This would not be difficult for the Navy to implement if it wished to avoid religious discrimination and coercion.

2

period, *see* Dkt. 134 at 108, 135-36, and the Navy has not indicated that they intend to reinstate this policy.)

For seven years *before* the COVID-19 Vaccination Mandate (and the 50-step SOP), the Navy had not granted *any* requests for religious accommodation related to vaccine requirements. Dkt. 84 at 9. Thus, the problems with the Navy's religious accommodation process both pre-date the Mandate and continue to exist independent of the SOP.

The persistence of this illegal process injures the Class Members because they have sincere religious beliefs that sometimes impact issues related to their service and lack the required avenue to seek accommodation for those beliefs. Some Class Members continue to have similar religious concerns about mandatory vaccinations other than the COVID-19 vaccine and still have pending requests.[3] And because the process permitted the Navy to discriminate against the Class Members, it is likely that they will be hesitant to use that process in the future, resulting in many Class Members choosing to forego their religious beliefs because they believe they will not be accommodated. That provides continued standing for prospective relief. *Cf. State of Missouri v. Biden*, No. 23-30445, 2023 WL 5821788, at *8 (5th Cir. Sept. 8, 2023) (finding injury to plaintiffs persisted because of self-censorship and their continued use of social media even though social media companies had discontinued their COVID-19 related "misinformation" policies). This chilling effect is documented in this case. Some Class Members chose to not assert their beliefs any longer and accept involuntary separation because of the Navy's terrible treatment. *See* Dkt. 178 at 14-50.

---

[3] *See id.* at ¶ 4 ("Navy service members who submitted requests or appeals seeking relief *from other mandatory vaccinations* along with a COVID-19 vaccine request that have not been adjudicated will be contacted individually. . ." (emphasis added)).

3

Further, as Plaintiffs already explained, many Class Members missed opportunities to promote, train, and fulfill milestone positions necessary to earn promotions because they requested accommodation of their sincere religious beliefs during the Mandate, causing continuing harm to their careers because of this unlawful religious discrimination. The Navy has never stated in any post-repeal policy that they intend to rectify this harm caused by their illegal policies and religious discrimination. And as their response makes clear, they continue to insist that because no Class Member was involuntarily separated, they suffered no "adverse action," Dkt. 254 at 17, even though the Fifth Circuit recognized the Navy's discriminatory treatment of the Class Members as "adverse actions." *U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336, 343 (5th Cir. 2022); *see also id.* at 342–44. Thus, the Navy refuses to even acknowledge this ongoing harm to the Class Members. And this harm can be remedied through means short of requiring the Navy to give any Class Member a promotion. *Cf. Jackson v. Mayorkas*, No. 4:22-CV-0825-P, 2023 WL 5311482, at *4 (N.D. Tex. Aug. 17, 2023) (rejecting argument that missed opportunities provided basis for further relief because the Court could not interfere with military promotional decisions, but not considering options for relief falling short of that). For instance, the Court could order the Navy to allow any Navy Class Members who were eligible to take promotion exams but were not permitted to because of the Mandate and the Navy's related policies to take the exam, hold special promotion boards for any Navy Class Members who were denied promotion or had their boards cancelled because of the Mandate and the Navy's related policies, redo any evaluations that were negative because of submission of a request for religious accommodation and resulting noncompliance with the Mandate, and/or reestablish the pre-Mandate promotion ratings for all enlisted Navy Class

4

Members. None of those things require Defendants to make a promotional decision but would address harm Class Members continue to suffer because of the Navy's discriminatory treatment.[4]

Defendants' claim that no "new" adverse action will be taken against Plaintiffs, Dkt. 254 at 17, is of little comfort, given that Defendants define "adverse action" as involuntary separation. As Plaintiffs pointed out, even if vaccination status shall no longer "be a consideration in assessing individual Service member suitability for deployment or other operational assignments,"[5] there is no policy stating that vaccination status cannot be considered in promotions and non-operational assignments, which allows for continued discrimination. Even if the Court believes it improper to interfere with military promotion decisions, RFRA would surely not permit the military to implement a policy making promotion contingent upon religious beliefs, such as a policy denying promotions to all observant Muslims, for example.[6] The discriminatory treatment of Plaintiffs and evident religious animus displayed by commanding officers during the mandate period shows that it is likely that these servicemembers will likely continue to be discriminated against because of their religiously based refusal to be vaccinated. *See Navy Seals 1-26*, 27 F.4th at 344 (commanding officers were coercing EOD 1 into receiving the vaccine and asked him, "with [his] religious beliefs, if [he] thought that martyrs would be remembered."); *id.* at 352 n. 22 (noting that "some

---

[4] As noted above, Plaintiffs here have always contended that the primary harm to the Plaintiffs was the Navy's flawed religious accommodation process and did not directly challenge the existence of a COVID-19 vaccine mandate itself. *See* Dkt. 81 at 15-18. But in the alternative, these ongoing harms could at least be considered collateral consequences, which provides an exception to the mootness doctrine where the primary harm to the plaintiff has ceased but the challenged conduct continues to cause harm the Court can remedy. *See Mendoza-Flores v. Rosen*, 983 F.3d 845, 848 (5th Cir. 2020); *Jackson*, 2023 WL 5311482, at *3 (N.D. Tex. Aug. 17, 2023).

[5] NAVADMIN 065/23, ¶ 3, https://www.mynavyhr.navy.mil/Portals/55/Messages/NAVADMIN/NAV2023/NAV23065.txt?ver=5D-VSbRc-Pt_Qjy8WecHeQ%3d%3d.

[6] In fact, the EEOC just brought a lawsuit alleging that a furniture store violated Title VII when it fired a store manager for requesting religious accommodation based on their policy of termination for failing to comply with a mandatory COVID-19 vaccination policy for any reason. U.S. Equal Employment Opportunity Comm'n, *EEOC Sues Hank's Furniture for Religious Discrimination*, Sept. 19, 2023, https://www.eeoc.gov/newsroom/eeoc-sues-hanks-furniture-religious-discrimination.

of the remarks uttered by superior officers to Plaintiffs could be regarded as outright hostile to their desire for religious accommodations.").

The Navy's narrow definition of "adverse action" also precludes resolution of the issue of negative notations in Class Members' service records or files. Plaintiffs believe there are still negative notations in Class Members' files and the Navy still has not provided confirmation that the review process for what they narrowly define as "adverse action" is over.

The court in *Bazzrea v. Mayorkas*, No. 3:22-CV-265, 2023 WL 3958912, at *2 (S.D. Tex. June 12, 2023) noted that the Coast Guard implemented remedies like some of those Plaintiffs suggest above. The Coast Guard does not consider "the refusal of the COVID-19 vaccination alone [to] require the withholding of advancement" for enlisted members," "encourages members whose advancement was previously withheld should compete in 2023 advancement panels," and "requires commanding officers to amend any previous recommendations against advancement based solely on refusal to be vaccinated." 2023 WL 3958912, at *2. This is all far more than the Navy has done and these things (along with bringing the religious accommodation process into compliance with the law) shouldn't be difficult to agree on if the Navy has no future intentions to discriminate.

## II. Capable of Repetition Yet Evading Review

Even if no further harm to Plaintiffs were occurring, Defendants' challenged conduct is capable of repetition yet evades review. *Fed. Election Comm'n v. Wisc. Right to Life, Inc.*, 551 U.S. 449, 462 (2007). The Fifth Circuit expressly declined to rule on whether this exception would apply, as Defendants admit. Dkt. 254 at 22.

As Plaintiffs have already briefed, to fall within this exception to the mootness doctrine, Plaintiffs must show "(1) the challenged action was in its duration too short to be fully litigated

6

prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Cath. Leadership Coal. of Texas v. Reisman*, 764 F.3d 409, 422 (5th Cir. 2014). Defendants contend that the exception does not apply here because this case does not meet the "duration requirement." Dkt. 254 at 23. Defendants claim that a military vaccination requirement does not inevitably expire and constrain judicial review. *Id.* But the vaccination requirement at issue here *did*, and it did so because of the changing nature of the virus, which prompted Congress to order Defendants to rescind the DoD mandate from August 2021. Defendants cannot deny that guidance and restrictions related to COVID-19 evolved and changed frequently. Plaintiffs are also unaware of any attempt by Defendants to add the COVID-19 vaccination as a permanent part of its mandatory vaccinations, so it was treated by Defendants as different from other vaccinations. And with respect to Plaintiffs' contention that the Navy's religious accommodation process violates the First Amendment and RFRA, the Navy unilaterally closed those requests before most could be fully adjudicated (which was not required by the FY 2023 NDAA), meaning that the Navy could singlehandedly deny judicial review of pending requests simply by closing requests before an opinion can issue, as it did here.

When analyzing the second element, courts are concerned with whether the conduct was "capable of repetition and not . . . whether the claimant had demonstrated that a reoccurrence of the dispute was more probable than not." *Honig v. Doe*, 484 U.S. 305, 318 n. 6 (1988). Plaintiffs need not demonstrate with "mathematical precision" that they will be subject to the same illegal conduct; rather, they just need to show "a reasonable expectation" that the challenged action will reoccur. *Id.* In the context of election statutes, the Fifth Circuit has held that "even if it were doubtful" that the plaintiff would again be affected by the allegedly offending election statute, "precedent suggest[ed] that [the] case [was] not moot, because other individuals certainly [would]

be affected by the continuing existence" of the statute. *Moore v. Hosemann*, 591 F.3d 741, 744 (5th Cir. 2009). The continued existence of the Navy's illegal religious accommodation process, which applies regardless of a COVID-19 vaccination mandate, and the Navy's continued defense of it, is "evidence showing that the [Defendants'] actions reflect a policy or consistent pattern of behavior that [they] ha[ve] determined to continue." *Libertarian Party v. Dardenne*, 595 F.3d 215, 218 (5th Cir. 2010). The fact that even before the COVID-19 Vaccination Mandate, the Navy had granted *zero* religious accommodation requests related to vaccination in the previous seven years according to their policies and process also indicates that the Navy "unlawfully [acted] in the past." *Id.* Either of these showings are enough to satisfy Plaintiffs' burden under the second prong. *Id.*[7]

Given that the NDAA admittedly permits the Navy to reinstitute a mandate at any time, that health authorities are growing concerned over new circulating variants of COVID-19, the White House recently requested funding for a new, effective COVID-19 vaccination that "everyone should get," and the President has been wearing masks again, the idea that Plaintiffs could be subject to the same requirement again in the future is reasonable.[8] Defendants cite *Bongiovanni v. Austin*, No. 3:22-CV-580-MMH-MCR, 2023 WL 4352445, at *10 (M.D. Fla. July 5, 2023) for the proposition that this is unreasonable. But that court also believed that the FY 2023

---

[7] The Navy appears to believe it significant that some of the Class Members and one out of four Named Plaintiffs (SEAL 3) have retired. But in a "case such as this, in which, as in *Dunn* [*v. Blumstein*, 405 U.S. 330 (1972)], the issue sought to be litigated escapes full appellate review at the behest of any single challenger, does not inexorably become moot by the intervening resolution of the controversy as to the named plaintiffs." *Sosna v. Iowa*, 419 U.S. 393, 401 (1975).

[8] *See* Suresh V. Kuchipudi, *Why public health experts are concerned about BA.2.86, the latest COVID-19 variant*, PBS News Hour (Sept. 12, 2023), https://www.pbs.org/newshour/health/why-public-health-experts-are-concerned-about-ba-2-86-the-latest-covid-19-variant; Justin Gomez and Molly Nagle, *Biden tests negative for COVID, will wear mask when close to others, White House says*, ABC News (Sept. 5, 2023), https://abcnews.go.com/Politics/biden-tests-negative-covid-wear-mask-close-white/story?id=102935772; Associated Press, *Biden says he will request more funding for a new coronavirus vaccine*, NBC News (Aug. 25, 2023), https://www.nbcnews.com/politics/white-house/biden-says-will-request-funding-new-covid-vaccine-rcna101919.

NDAA prohibited Defendants from reinstating a mandate, which is not the case according to the plain text of the statute. *Id. Bongiovanni* also apparently looked only at the Mandate and not the continued existence of a flawed religious accommodation process. *Id.* In fact, some of the cases cited by Defendants do not involve requests for religious accommodation at all, and none involve discussion of a continued illegal religious accommodation process. *See Robert v. Austin*, 72 F.4th 1160, 1162 (10th Cir. 2023) (no religious accommodation requested); *Wilson v. Austin*, No. 4:22-CV-438, 2023 WL 5674114, at *1 (E.D. Tex. Sept. 1, 2023) (noting only that the plaintiffs "applied for some sort of accommodation" and failing to consider the Navy's religious accommodation process); *Coker v. Austin*, No. 3:21-CV-1211-AW-HTC, 2023 WL 5625486, at *1 (N.D. Fla. Aug. 25, 2023) (noting only that the plaintiffs "sought an exemption from the mandate" and failing to consider the Navy's religious accommodation process); *Jackson*, 2023 WL 5311482, at *1 (involving plaintiffs who sought religious accommodation, but in the Coast Guard, and not discussing any persisting problematic religious accommodation policy or practice); *Crocker v. Austin*, No. CV 22-0757, 2023 WL 4143224, at *1 (W.D. La. June 22, 2023) (involving plaintiffs who sought religious accommodation, but in the Air Force, and not discussing any persisting problematic religious accommodation policy or practice); *Bazzrea*, 2023 WL 3958912, at *2 (involving plaintiffs who sought religious accommodation, but in the Coast Guard, and not discussing any persisting problematic religious accommodation policy or practice).

## CONCLUSION

For the foregoing reasons, this Court should find that the case is not moot.

Respectfully submitted this 19th day of September, 2023.

|  |  |
|---|---|
| KELLY J. SHACKELFORD<br>  Texas Bar No. 18070950<br>JEFFREY C. MATEER<br>  Texas Bar No. 13185320<br>HIRAM S. SASSER, III<br>  Texas Bar No. 24039157<br>DAVID J. HACKER<br>  Texas Bar No. 24103323<br>MICHAEL D. BERRY<br>  Texas Bar No. 24085835<br>DANIELLE A. RUNYAN<br>  Texas Bar No. 24134548<br>Holly M. Randall<br>  Texas Bar No. 24128002<br>FIRST LIBERTY INSTITUTE<br>2001 W. Plano Pkwy., Ste. 1600<br>Plano, Texas 75075<br>Tel: (972) 941-4444<br>jmateer@firstliberty.org<br>hsasser@firstliberty.org<br>dhacker@firstliberty.org<br>mberry@firstliberty.org<br>drunyan@firstliberty.org<br>hrandall@firstliberty.org | /s/ Heather Gebelin Hacker<br>HEATHER GEBELIN HACKER<br>  Texas Bar No. 24103325<br>ANDREW B. STEPHENS<br>  Texas Bar No. 24079396<br>HACKER STEPHENS LLP<br>108 Wild Basin Road South, Suite 250<br>Austin, Texas 78746<br>Tel.: (512) 399-3022<br>heather@hackerstephens.com<br>andrew@hackerstephens.com<br><br>*Attorneys for Plaintiffs* |

## CERTIFICATE OF SERVICE

      I hereby certify that on September 19, 2023, I electronically filed the foregoing document through the Court's ECF system and will serve a copy on each of the Defendants according to the Federal Rules of Civil Procedure.

                                    /s/ Heather Gebelin Hacker
                                    HEATHER GEBELIN HACKER