UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| U.S. NAVY SEALs 1–26, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 4:21-cv-01236-O |
| | § | |
| LLOYD J. AUSTIN, III, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

On July 6, 2023, the United States Court of Appeals for the Fifth Circuit issued its decision on the preliminary injunctions previously entered by this Court. *U.S. Navy Seals 1-26 v. Biden*, 72 F. 4th 666 (5th Cir. 2022). In light of that decision, this Court deferred ruling on Defendants' Assertion of Mootness (ECF No. 221) and ordered additional cross-briefing on three subjects: (1) "the continued viability of any arguments previously raised before this Court and explicitly addressed by the Fifth Circuit;" (2) "the continued viability of any arguments previously raised before this Court and *not* explicitly addressed by the Fifth Circuit;" and (3) "any new arguments relating to the issue of mootness which have not heretofore been presented to the Court."[1] Both parties filed the requested briefing (ECF Nos. 253–54) and responses (ECF Nos. 256–57) addressing these subjects. The parties also provided comments on recent authority from the United States Supreme Court (ECF Nos. 260–61).

Having considered the briefing and the applicable law—including recent Supreme Court authority—the Court determines that this case is *not* moot. Accordingly, the Court **GRANTS in part** and **DENIES in part** Defendants' Assertion of Mootness (ECF No. 221). Plaintiffs' claim for injunctive relief prohibiting Defendants from enforcing the Mandate itself is **MOOT** due to

---

[1] Aug. 14, 2023 Order, ECF No. 248.

1

recission of the challenged conduct. However, Plaintiffs' claims arising out of the broader vaccine accommodations policy may proceed. The parties **SHALL** submit a joint report indicating their proposal for how this case should expeditiously proceed to final resolution **no later than February 28, 2024**.

**I.   BACKGROUND**

This case was filed more than two years ago in the middle of the COVID-19 pandemic.[2] As one of the first challenges to the Department of Defense's COVID-19 vaccine mandate (the "Mandate") multiple servicemembers in the Navy ("Plaintiffs" or "Class Members") alleged violations of the First Amendment, the Religious Freedom Restoration Act ("RFRA"), and the Administrative Procedure Act ("APA").[3] This case has already made its way to the United States Supreme Court for interlocutory review and back down to this Court. At this point, the facts are well-known, and the Court will not repeat them at length here. Most relevant to the mootness issue now before the Court is the procedural history following the initial appeal of the preliminary injunction and the broader landscape of military vaccine cases.

**A.   Procedural History**

After this Court granted a preliminary injunction—which enjoined the Navy from applying the Mandate against Plaintiffs and further prohibited Secretary of Defense Lloyd Austin, the United States Department of Defense, and Secretary of the Navy Carlos Del Toro (collectively, "Defendants" or the "Navy") from taking adverse action against Plaintiffs on account of their requests for religious accommodation[4]—the Navy sought a stay of the preliminary injunction pending the appeal.[5] The Fifth Circuit denied Defendants' request. *U.S. Navy Seals 1-26 v. Biden*,

---

[2] Pls.' Compl., ECF No. 1.
[3] *Id.* at 36–37; Pls.' Am. Compl. 29–30, ECF No. 84.
[4] Jan. 3, 2022 Order on Prelim. Inj., ECF No. 66.
[5] Defs.' Notice of Appeal, ECF No. 82.

27 F. 4th 336, 353 (5th Cir. 2022) (per curiam). But the Supreme Court ultimately granted in part the requested stay "insofar as it preclude[d] the Navy from considering . . . vaccination status in making deployment, assignment, and other operational decisions." *Austin v. U.S. Navy Seals 1-26*, 142 S. Ct. 1301, 1301 (2022) (mem.). Following the Supreme Court's partial stay of the injunction, this Court granted Plaintiffs' motion to certify a class consisting of "all Navy servicemembers" and extended to that class a second preliminary injunction prohibiting the same policies named in the first injunction.[6] Once again, the Navy appealed both the second injunction and the class certification.[7] The Fifth Circuit consolidated both appeals. *U.S. Navy SEALS 1-26 v. Biden*, No. 22-10077, at *1 (5th Cir. Jun. 7, 2022).

Before the Fifth Circuit could hear oral argument, President Biden signed into law the James M. Inhofe National Defense Authorization ACT ("NDAA") that directed "the Secretary of Defense [to] rescind the mandate that members of the Armed Forces be vaccinated against COVID-19." NDAA, Pub. L. No. 117-263, § 525 (2022). Secretary Austin subsequently rescinded the Mandate. *U.S. Navy SEALs 1-26*, 72 F.4th at 671. And, the next day, Secretary Del Toro likewise rescinded the Navy's policies implementing the Mandate. *Id.* After oral argument, the Navy—as well as the Department of Defense—enacted additional policies that eliminated remaining distinctions based on a servicemember's COVID-19 vaccination status. *Id.*

Due to these events, the Fifth Circuit determined that the consolidated interlocutory appeals were moot. *Id.* at 669. The Fifth Circuit emphasized that its conclusion aligned with other circuit dismissals of similar cases as moot. *Id.* However, in dismissing the interlocutory appeals of the injunctions, the Fifth Circuit remanded the case to this Court for further proceedings consistent with its opinion. *Id.* at 670. In doing so, the majority opinion emphasized that its decision "does

---

[6] Mar. 28, 2022 Order on Mots. for Class Certification & Class-Wide Prelim. Inj., ECF No. 140.
[7] Defs.' Notice of Appeal, ECF No. 159.

not end the litigation." *Id.* at 676. Instead, "the issues Plaintiffs raise can still be litigated in the district court and appealed after a final judgment, assuming they remain justiciable." *Id.* at 675. Accordingly, the Fifth Circuit left open for this Court to assess in the first instance "whether any of Plaintiffs' claims are justiciable" while "express[ing] no view on that question." *Id.* at 676; *see also id.* at 678 (Ho, J., dissenting) ("[T]he majority appears to leave it open for the district court on remand to conclude that the SEALs should ultimately prevail in this case.").

### B. Other Military Vaccine Cases

The Court does not begin its analysis with a blank slate. Although this case was one of the first cases—if not *the* first—to challenge the Mandate, the broader landscape has grown significantly. Courts across the country contemplated similar challenges arising out of the COVID-19 pandemic. Following the recission of the Mandate, various courts addressed questions of mootness. By the latest count, nine district courts—including five in the Fifth Circuit—have ruled on similar mootness issues.[8] Each of those courts concluded that the cases before them were entirely moot due to recission of the Mandate.[9] Additionally, various courts of appeals have weighed in, consistently affirming the mootness determinations made by lower courts.[10] The

---

[8] *E.g.*, *Schelske v. Austin*, No. 6:22-cv-049-H, 2023 WL 5986462 (N.D. Tex. Sept. 14, 2023); *Wilson v. Austin*, No. 4:22-CV-438, 2023 WL 5674114 (E.D. Tex. Sept. 1, 2023); *Coker v. Austin*, 2023 WL 5625486 (N.D. Fla. Aug. 25, 2023); *Jackson v. Mayorkas*, No. 4:22-cv-0825-P, 2023 WL 5311482 (N.D. Tex. Aug. 17, 2023), *appeal docketed*, No. 23-11038 (5th Cir. Oct. 11, 2023); *Bongiovanni v. Austin*, No. 3:22-cv-580-MMH-MCR, 2023 WL 4352445 (M.D. Fla. July 5, 2023); *Crocker v. Austin*, C.A. No. 22-0757, 2023 WL 4143224 (W.D. La. June 22, 2023), *appeal docketed*, No. 23-30497 (5th Cir. Jul. 25, 2023); *Bazzrea v. Mayorkas*, 2023 WL 3958912 (S.D. Tex. June 12, 2023); *Clements v. Austin*, C.A. No. 2:22-2069-RMG, 2023 WL 3479466 (D.S.C. May 16,s 2023); *Colonel Financial Mgmt. Officer v. Austin*, No. 8:22-cv-1275-SDM-TGW, 2023 WL 2764767 (M.D. Fla. Apr. 3, 2023). Other cases were voluntarily dismissed after the Mandate's rescission. *E.g.*, Joint Stipulation of Dismissal, *Air Force Major v. Austin*, No. 3:22-cv-756-E, ECF No. 25 (N.D. Tex. Mar. 7, 2023).

[9] The one slight exception is *Schelske v. Austin*, where one separated servicemember's claim survived the Army's mootness challenge due to a live harm still remediable by court action. 2023 WL 5986462, at *1. Judge Hendrix concluded that the claims of all other servicemembers—who were *not* separated—were moot. *Id.*

[10] Multiple courts of appeals, including the Fifth Circuit, upheld dismissals of challenges to military COVID-19 vaccine mandates on mootness grounds. *E.g.*, *Robert v. Austin*, 72 F.4th 1160, 1165 (10th Cir.

Supreme Court even ordered a vacatur of a preliminary injunction concerning the Mandate in one case due to mootness. *Kendall v. Doster*, No. 23-154, 2023 WL8531840, at *1 (Dec. 11, 2023) (mem.). Given the significant body of case law that has developed, this Court closely studied each of those cases. After doing so, one distinguishing attribute is readily apparent that separates this case from the rest: live harm remains due to allegations regarding the Navy's broader religious accommodations process.

## II.   LEGAL STANDARD

Article III of the Constitution limits a federal court's jurisdiction to "cases" and "controversies." U.S. CONST. art. III, § 2. A case or controversy must remain throughout a lawsuit's existence. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013). If not, the lawsuit is moot and must be dismissed for lack of subject matter jurisdiction. *Walmart Inc. v. U.S. Dep't of Just.*, 21 F.4th 300, 307 (5th Cir. 2021). This case-or-controversy requirement "ensures that the parties . . . retain a 'personal stake' in the litigation." *Moore v. Harper*, 143 S. Ct. 2065, 2076 (2023) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). A plaintiff must retain a personal stake "at all stages of review, not merely at the time the complaint is filed." *Id.* (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013)); *Chafin v. Chafin*, 568 U.S. 165, 172 (2013). "Mootness doctrine 'addresses whether an intervening circumstance has deprived the plaintiff of [that] personal stake in the outcome of the lawsuit.'" *Moore*, 143 S. Ct. at 2077 (quoting *West Virginia v. EPA*, 142 S. Ct. 2587, 2607 (2022)). "A case becomes moot only when it is impossible for a court to grant 'any effectual relief whatever' to the prevailing party." *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567

---

2023), *cert. denied*, 2024 WL 72062 (U.S. Jan. 8. 2024) (mem.); *Roth v. Austin*, 62 F.4th 1114, 1119 (8th Cir. 2023); *Navy Seal 1 v. Austin*, No. 22-5114, 2023 WL 2482927 (D.C. Cir. Mar. 10, 2023), *cert. denied*, 144 S. Ct. 97 (U.S. Oct. 2, 2023) (mem.); *Dunn v. Austin*, No. 22-15286, 2023 WL 2319316 (9th Cir. Feb. 27, 2023); *Short v. Berger*, Nos. 22-15755, 22-16607, 2023 WL 2258384 (9th Cir. Feb. 24, 2023); *Alvarado v. Austin*, No. 23-1419, 2022 WL 18587373 (4th Cir. Aug. 3, 2023), *petition for cert. filed*, No. 23-717 (U.S. Jan. 3, 2024).

U.S. 298, 307 (2012) (quoting *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000)). Any remaining "concrete interest, however small, in the outcome of the litigation" defeats mootness. *Chafin*, 568 U.S. at 172 (quoting *Knox*, 567 U.S. at 307–08).

Although the "initial burden of establishing the trial court's jurisdiction rests on the party invoking that jurisdiction, once that burden has been met courts are entitled to presume, absent further information, that jurisdiction continues." *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 98 (1993). The burden then shifts to the party asserting mootness, who then "bears the burden to establish that a once-live case has become moot." *West Virginia*, 142 S. Ct. at 2607 (citations omitted). To do so, that party must point to "subsequent events" that "material[ly] change" the circumstances so as to "entirely terminate[]" the controversy. *Cardinal Chem. Co.*, 508 U.S. at 98.

### III.   ANALYSIS

On remand, Defendants argue that the intervening events after the preliminary injunction moot Plaintiffs' claims.[11] Plaintiffs appear to agree that the Fifth Circuit's "foreclose[s] an argument that there is still a need for injunctive relief against the Mandate, or that the voluntary cessation doctrine prevents mootness on that issue."[12] Recent authority from the Supreme Court confirms that there is no longer a need for relief from the Mandate itself—particularly not in the form of a preliminary injunction.[13] *See Doster*, 2023 WL 8531840, at *1 (granting certiorari to provide "instructions to direct the District Court to vacate as moot its preliminary injunctions" concerning the Mandate). While harms specifically arising out of the Mandate may be moot, Plaintiffs contend that the Fifth Circuit's "decision did not touch all other parts of this case"

---

[11] Defs.' Supp. Br. 1–2, ECF No. 254.
[12] Pls.' Supp. Br. 2, ECF No. 253.
[13] Defs.' Notice of Supp. Authority 1–2, ECF No. 260.

because "[t]here are several remaining issues."[14] Specifically, Plaintiffs argue there is still "[o]ngoing harm to the Class Members" that demonstrates this case remains live.[15] And even if not, there is real potential for future harm that is "capable of repetition yet evades review."[16] The Court agrees with Plaintiffs that the ongoing harms, arising from the Navy's broader religious accommodations policy itself, show that their claims are not moot as it relates to this broader vaccine policy.[17] Finding no mootness as to this aspect of Plaintiffs' Amended Complaint, the Court need not address at this stage Plaintiffs' alternative mootness-exception argument.[18]

### A. Ongoing Harms

Plaintiffs' supplemental briefing satisfies the Court that, "[w]hile the Mandate may be gone, the effects of that Mandate and the discriminatory treatment the Class Members were subject to because of the Mandate still linger."[19] That is because Defendants have announced no changes to its overarching religious accommodations process. According to Plaintiffs, this allegedly "sham" process is what enabled the coercive and discriminatory treatment of the Class Members while their accommodation requests sat unadjudicated.[20] The Mandate simply served as the catalyst that unveiled the problems with this broader process during the pandemic. These problems include: (1) indefinitely sitting on requests for religious accommodation; (2) foregoing the required individualized assessments, citing standardized policy memos (even if outdated) to satisfy the

---

[14] *Id.*
[15] *Id.*
[16] *Id.* at 2, 5.
[17] Because mootness is a question going to the Court's jurisdiction, any mootness arguments may be reasserted, as appropriate, at future stages of this litigation should additional evidence come to light that reveals Plaintiffs' claims are moot. *See* FED. R. CIV. P. 12(h)(3) (instructing courts to dismiss actions upon determining "at any time that it lacks subject-matter jurisdiction").
[18] To that end, the Court defers ruling on Plaintiff's alternative argument that an exception to mootness applies due to finding live, ongoing harms.
[19] Pls.' Supp. Br. 2, ECF No. 253.
[20] *Id.*

compelling interest requirement, and using boilerplate statements to suffice for demonstrating that the Navy's action is the least restrictive means; (3) permitting discrimination and coercive tactics to pressure servicemembers to forego their religious beliefs; (4) authorizing Navy leadership to dictate denial of all requests without considering the individual circumstances of the requests and current conditions or facts; (5) permitting coercion and retaliation against commanding officers who recommend approval of religious accommodations despite the chain of command's desire that requests be denied; and (6) prohibiting resubmission of denied requests and updates to pending requests due to a change of job, location, or other relevant circumstances.[21]

### 1. *Prospective Harms*

Plaintiffs argue that the persistence of this broader illegal process has injured, and will prospectively injure, the Class Members because they have sincere religious beliefs that impact issues related to their service.[22] The record bears this out. Without the constitutionally required avenue to seek accommodations for their beliefs, Class Members allege they remain injured. This includes present and future harms due to hesitance to use the accommodations process going forward for any religious accommodation. *Cf. State of Missouri v. Biden*, No. 23-30445, 2023 WL 5821788, at *8 (5th Cir. Sept. 8, 2023) (finding injury to plaintiffs persisted because of self-censorship and their continued use of social media even though social media companies had discontinued their COVID-19 related "misinformation" policies). This also includes facing the Hobson's choice of foregoing their religious beliefs to avoid discrimination or suffering adverse

---

[21] *Id.* at 2–3. Notably, the broader accommodations process previously allowed requests to resubmit or update requests prior to the Mandate. But this was changed during the Mandate period. It appears that the Navy has not returned to the pre-Mandate policy of allowing requests to resubmit or make updates. And the Navy does not appear to dispute this allegation in its mootness briefing.
[22] *Id.* at 3.

actions from the Navy.[23] Such concrete injuries demonstrate that Plaintiffs retain a personal stake in this litigation. *Moore*, 143 S. Ct. at 2076; *Chafin*, 568 U.S. at 172. And it appears possible for the Court to grant effectual relief to Plaintiffs should they ultimately prevail. *Knox*, 567 U.S. at 307.

The Navy points out that another court has already rejected the argument regarding the broader vaccine policy:

> Plaintiffs next contend that the case is not moot because the same policies and procedures for evaluating [religious accommodation requests ("RARs")] remain in place. . . . But in the Complaint, Plaintiffs do not challenge the RAR process as a whole or assert that the RAR process is defective with regard to other requests for accommodations. Plaintiffs oppose the alleged policy of denying all RARs that sought an exemption from the Vaccine Mandate. . . . Because the Vaccine Mandate no longer exists, there can be no policy of denying all RARs to enforce that mandate.

*Bongiovanni*, 2023 WL4352445, at *8. But unlike the plaintiffs in *Bongiovanni*, the Class Members actually asserted—prior to recission of the Mandate—that their underlying harms derive from the lack of a proper religious accommodation process, rather than exclusively from the Mandate itself.[24] For instance, Plaintiffs repeatedly stated in their causes of action that they take issue with "Defendants' policies and practices" rather than just the Mandate.[25] Moreover, while the Mandate was the vehicle for exposing many of these policies and practices, Plaintiffs nonetheless allege in their Amended Complaint that the Mandate was issued pursuant to "existing

---

[23] *See* Pls.' App'x in Opp. To Defs.' Assertion of Mootness 0087–88, 0091–92, 0095–96, 0103–09, 0119–20, 0125–27, 0132–33, 0136–37, 0140–41, 0144–54, ECF No. 225 (containing declarations of servicemembers explaining how their operational status is causing current harm).

[24] Pls.' Am. Compl. 2, 10–12, 15–18, ECF No. 84. Notably, in addition to various references to the broader policies throughout the Amended Complaint, Plaintiffs devote an entire section just to discussing these broader policies. *See id.* at 10–12 ("DoD and Navy Regulations Recognize Religious and Medical Accommodations for Immunizations under RFRA and the Free Exercise Clause Generally"). Not once in this section are COVID-19 or the Mandate mentioned. *Id.* This is in stark contrast to other sections that specifically refer to the application of these broader policies in the COVID-19 context. Instead, Plaintiffs exclusively detail the many broader accommodations procedures that gave rise to their harms.

[25] *Id.* at 2.

policies and procedures to manage mandatory vaccination to the extent practicable."[26] For instance, one of those procedures—DoD Instruction 6205.02, "DoD Immunization Program"—became effective as of July 23, 2019.[27] And Plaintiffs also point to other policies that pre-date the COVID-19 pandemic.[28]

Furthermore, Plaintiffs allege that, in carrying out the Mandate, the Navy was required to do so "subject to any identified contraindications and any administrative or other exemptions *established* in Military Department policy."[29] According to Plaintiffs, "Defendants' policies acknowledge their legal duty to consider religious accommodations" despite repeatedly failing to do so in practice.[30] This is a duty that predates the COVID-19 pandemic, as indicated by Plaintiff's invocation of a 2008 policy: Secretary of the Navy Instruction (SECNAVINST) 1730.8B, Accommodation of Religious Practices, dated October 2, 2008.[31] Despite these procedures, the Amended Complaint pleads that "'[i]n the past seven years, no religious exemption from vaccination waivers were approved for any other vaccine.'"[32] And "[t]his disdain for religious vaccine accommodations contrasts with Defendants' policies and practices granting certain secular vaccine exemptions."[33] These allegations differentiate the Class Members from plaintiffs in the other cases.

---

[26] *Id.* at 7.
[27] *Id.*
[28] *See, e.g.*, *id.* at 9–10 (referencing, for example, Navy Bureau of Medicine Instruction (BUMEDINST) 6230.15B, Immunizations and Chemoprophylaxis for the Prevention of Infectious Diseases, dated October 7, 2013). The Court recognizes that other policies referenced in the Amended Complaint with effective dates of 2020 or later may be revised versions of pre-Mandate policies.
[29] *Id.* (emphasis added).
[30] *Id.* at 9.
[31] *Id.*
[32] *Id.* at 9.
[33] *Id.*

Although it is true that the Mandate was the vehicle by which Plaintiffs describe certain injuries, this was simply one application of the broader accommodations process. Harms stemming from that broader process appear to linger despite recission of the Mandate. Consider, for example, that the Amended Complaint alleges "Defendants' policies expressly allow for medical exemptions" and that medical exemptions have been granted with respect to the Mandate.[34] One of those policies predates the COVID-19 pandemic by seven years: Navy Bureau of Medicine Instruction (BUMEDINST) 6230.15B, Immunizations and Chemoprophylaxis for the Prevention of Infectious Diseases, dated October 7, 2013.[35] This alleged disparity between how the broader accommodations policy treats medical versus religious accommodation requests remains even in a post-Mandate world.

Plaintiffs contend that the Navy has never rectified harms caused by the broader accommodations policy.[36] In response, the Navy appears to double down on that notion by stating that the absence of involuntary separation means there is no adverse action.[37] But this is not the standard. Rather, the Fifth Circuit has recognized that adverse action can take the form of discriminatory treatment. *U.S. Navy SEALs 1-26*, 27 F.4th at 342–44. Discriminatory treatment is not limited just to involuntary separation. As Plaintiffs allege in their Amended Complaint, Defendants' guidance concerning the Mandate identified the following adverse consequences: "court-martial (criminal) prosecution, involuntary separation, relief for cause from leadership positions, removal from promotion lists, inability to attend certain military training and education schools, loss of special pay, placement in a non-deployable status, recoupment of money spent

---

[34] *Id.*
[35] *Id.* at 9–10.
[36] Pls.' Supp. Resp. Br. 2, 4 ECF No. 257.
[37] Defs.' Supp. Br. 9, 17, ECF No. 254 ("The thirty-five pseudonymous Plaintiffs have not had adverse action taken against them and they have not been subject to involuntary administrative separation.").

training the service member, and loss of leave and travel privileges for both official and unofficial purposes."[38] Involuntary separation is just one of the alleged harms.

Precisely because a servicemember is not separated shows that they retrain a personal stake in relief concerning the broader accommodations policy. The intervening events did not change *this* aspect of the Amended Complaint. The only change was a specific *application* of the broader policy as it relates to the Mandate. As a result, it is also not impossible for the Court to grant effectual relief to any party. This distinguishes the instant case from the decisions reached by other courts. *See, e.g.*, *Jackson*, 2023 WL 5311482, at *2 ("Now that the Mandate 'is off the books, there is nothing injuring the plaintiffs and, consequently, nothing for the court to do.'" (citing *Spell v. Edwards*, 962 F.3d 175, 179 (5th Cir. 2020)); *Coker*, 2023 WL 5625486, at *4 ("[E]ven if any Plaintiff suffered a lingering harm based on refusing to get vaccinated, it would still be unclear how the court can afford effectual relief because there remains no mandate to declare unlawful or enjoin."). But this case is different. There remains a tangible policy—broader than the Mandate but encompassing it—that the Court can still enjoin or declare unlawful to provide a prospective remedy to avoid the very real prospect of future harm facing the Class Members. This remaining concrete interest is enough to keep this case alive.

As the party asserting mootness, the Navy did not "bear[] [its] burden to establish that a once-live case has become moot" once the Plaintiffs made an initial showing of live harm. *West Virginia*, 142 S. Ct. at 2607. Although the Navy points to the subsequent events by Congress and the President that materially changed the Mandate, they did not point to even subsequent event that materially changed the broader policy so as to entirely terminate the controversy.[39] *Id.* (citations omitted); *Cardinal Chem. Co.*, 508 U.S. at 98. Instead, the Navy incorrectly emphasizes

---

[38] Pls.' Am. Compl. 8, 9, ECF No. 84
[39] Defs.' Supp. Br. 2, 15, ECF No. 254; Defs.' Supp. Resp. Br. 1, ECF No. 256.

12

Plaintiff's initial burden and spends more time attacking this initial showing rather than making their own showing upon the burden shifting to them. But, at bottom, the Amended Complaint contains actual assertions of harm arising from the broader accommodations policy.[40]

### 2. *Past Harms*

To be sure, some harms were rectified by recission of the Mandate and its follow-on policies. But Plaintiffs allege that other past harms remain unresolved. These harms include "missed opportunities to promote, train, and fulfill milestone positions necessary to earn promotions."[41] For example, Plaintiffs contend that Class Members are one to three years behind their peers, which carries increased potential for placement on a separation track for some and potentially impacts pension benefits for others who are close to retirement.[42] Additionally, Plaintiffs argue that there is no post-Mandate policy preventing consideration of vaccination status in promotions and non-operational assignments, which allows for continued discrimination.[43] And, finally, Plaintiffs allege that the Navy has insufficiently implemented a review process to purge negative notations in each Class Member's file, particularly given that there has always been a dispute about what constitutes "adverse action."[44]

The Navy responds that "[p]ast harms do not save this case from mootness because the operative complaint seeks prospective relief."[45] The Court agrees with the Navy. To the extent that any of these harms seek retrospective relief, they will not suffice for any future declaratory relief

---

[40] For instance, Section E of the Amended Complaint discusses the broader Department of Defense and Navy policies. Pls.' Am. Compl. 10–12, ECF No. 84. Moreover, each cause of action cites to "Defendants' policies and procedures"—rather than the Mandate specifically—as the cause of Plaintiffs' injuries. *Id.* at ¶¶ 83, 103, 119, 133. The Mandate was simply the vehicle for bringing the claims against the broader policies.
[41] Pls.' Supp. Br. 3 ECF No. 253.
[42] *Id.* at 3–4.
[43] *Id.* at 4.
[44] *Id.*
[45] Defs.' Supp. Resp. Br. 4, ECF No. 256.

that may be awarded. *See Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003) (holding that a claim for declaratory relief is moot because the plaintiff alleged only past injuries); *see also Jackson*, 2023 WL 5311482, at *2 ("Plaintiffs allege only past harm—deprivation of their constitution right to free exercise of their religion, missed opportunities for promotion and training, and reputational damage—resulting from the Mandate. Any such harm will not suffice for declaratory relief."). As this case proceeds, only present and future harms will support any declaratory relief sought. Past harms from the Mandate—even those that were not remedied—cannot form the basis of a declaration.

### B. Comparison With Other Military Vaccine Cases

The Court recognizes that the determination in this case may appear, on the surface, to diverge from decisions reached by other courts. But unlike *each* of those other cases, not one asserted, as a primary harm *at the time of filing*, that the entire religious accommodation process was flawed. This is a critical distinction. In those other vaccine cases, multiple district courts determined that the military servicemembers' claims were moot because of the focus on the Mandate itself—not the military's entire religious accommodation process. And in the one case that discussed the broader policy, the plaintiffs there were attempting to reformulate their Mandate-specific claims *in order to* survive the mootness challenge. *Bongiovanni*, 2023 WL4352445, at *8.

This case is different. The Class Members take issue with the "continued existence of the Navy's legally flawed process" as a whole, which "persists regardless of the [M]andate's recission."[46] Indeed, Plaintiffs claim that "[f]or seven years *before* the COVID-19 Vaccination Mandate (and the 50-step SOP), the Navy had not granted *any* requests for religious accommodation related to vaccine requirements."[47] And this is on top of the Navy's alleged failure

---

[46] Pls.' Supp. Resp. Br. 1, ECF No. 257.
[47] Pls.' Am. Compl. 9, ECF No. 84.

to evaluate religious accommodations requests on an individualized basis. As the Fifth Circuit explained, "[t]he gravamen of the [preliminary injunction]'s reasoning was that the Navy's review process was mere 'theater' with each request ending in a 'rubber-stamp[ed]' denial of a religious accommodation." *U.S. Navy Seals 1-26*, 72 F. 4th at 670. And Plaintiffs contend the problem is more fundamental than the Mandate—it is endemic to the Navy's broader vaccine accommodations policy. It is this issue that remains live.

Recent authority from the Supreme Court is also not dispositive. *See Doster*, 2023 WL 8531840, at *1 (instructing the lower court to vacate as moot the preliminary injunctions against the now-rescinded Mandate). According to Defendants, *Doster* "confirms that this Court should dismiss this case as moot."[48] But *Doster* only supports the notion that injunctive relief concerning the Mandate is moot. Of the two applications of Plaintiffs' claims at issue here—the Mandate and the Navy's broader religious accommodations policy—the Mandate is the lesser and the broader accommodations policy the greater. The Fifth Circuit's decision determined that the appeal of the Mandate—the lesser included policy—is now moot in light of subsequent developments.[49] But the Fifth Circuit's decision does not necessarily bear on the broader accommodations policy—the greater policy. If it did, the Navy's assertion of mootness as to the entire accommodations policy would correctly moot the lesser Mandate. But that is not the situation presented to the Court.

---

[48] Defs.' Notice of Supp. Authority 2, ECF No. 260.
[49] The Fifth Circuit was clear that its decision "does not end the litigation." *U.S. Navy SEALs 1-26*, 72 F.4th at 676. It left open for this Court to "decide in the first instance whether any of Plaintiffs' claims are justiciable" without expressing any view on that question. *Id.* It also left open the question as to whether the capable-of-repetition-yet-evades review exception applies. *U.S. Navy SEALs 1-26*, 72 F.4th at 675 ("The capable-of-repetition exception is inapplicable in those situations in which the issues underlying the moot appeal are *not* moot in the case remaining before the district court.") (cleaned up)). Because this Court finds ongoing harms that remain justiciable, it need not evaluate at this time whether a mootness exception applies. *Marilyn T., Inc. v. Evans*, 803 F.2d 1383, 1385 (5th Cir. 1986), *abrogated on other grounds by Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190 (1991).

Instead, only the Mandate is moot, leaving the dispute concerning the broader policy intact as a live controversy ripe for adjudication.

While other courts rejected the idea that the capable-of-repetition-yet-evades-review exception applies, they did so based on the higher showing of likely future harm that is required to justify that exception.[50] The bar is not as high with traditional questions of standing. Plaintiffs "retain a 'personal stake' in th[is] litigation" despite the rescission of the Mandate. *Moore*, 143 S. Ct. at 2076 (quoting *Baker*, 369 U.S. at 204). And that personal stake has continued "at all stages of review" and "not merely at the time the complaint [wa]s filed." *Id.* (quoting *Genesis Healthcare Corp.*, 569 U.S. at 71). Although changes to the Navy's treatment of a servicemember's COVID-19 vaccination status constituted "an intervening circumstance" while the preliminary injunction was on appeal, that circumstance did not "deprive[] the [P]laintiff[s] of [their] personal stake in the outcome of the lawsuit." *Id.* (quoting *West Virginia v. EPA*, 142 S. Ct. 2587, 2607 (2022)). In this case, it is still possible for the Court to grant effectual relief to Plaintiffs should they ultimately prevail on their claims that there are ongoing harms stemming from the broader accommodations process. *See Knox*, 567 U.S. at 307 ("A case becomes moot only when it is impossible for a court to grant 'any effectual relief whatever' to the prevailing party.") (quoting *City of Erie*, 529 U.S. at 287)). That is because Plaintiffs retain a "concrete interest . . . in the outcome of th[is] litigation" by taking issue with the Navy's entire religious accommodations process. *Chafin*, 568 U.S. at 172

---

[50] *See, e.g., Schelske*, 2023 WL 5986462, at *13–*14 (explaining that the future harm from the Mandate is inherently incapable of evading review because it "lacked an expiration date" and was not "time-limited by [its] own terms" or "the temporary nature of any causal or underlying event or condition" so as to prevent judicial review). While the *Schelske* plaintiffs also "attempt[ed] to recharacterize the issue by stating that th[eir] case 'is not about the vaccine mandate' but, rather, about the '[d]efendants' refusal to grant religious accommodations to the mandate via a regulatory process that is still in force,'" this argument was made to show that "the Army's entire religious-exemption process is likely to evade review in general." *Id.* at *14.

(quoting *Knox*, 567 U.S. at 307–08). Unlike other cases, this is sufficient to defeat Defendants' assertion of mootness.

*   *   *   *   *

Accordingly, Plaintiffs carried their initial burden establishing the Court's continuing jurisdiction. And the Court is "entitled to presume, absent further information, that jurisdiction continues." *Cardinal Chem. Co.*, 508 U.S. at 98. Upon the shifting of the burden to provide further information "that [this] once-live case has become moot" to Defendants, they were unable to point to "subsequent events" that "material[ly] change[d]" the circumstances so as to "entirely terminate[]" the controversy. *Cardinal Chem. Co.*, 508 U.S. at 98. Given that Plaintiffs' claims implicate the Navy's entire religious accommodations process—not just the Mandate—Defendants have not made it clear how claims arising out of the broad accommodations policy are moot. Just because the Navy rescinded one mandatory vaccination policy does not mean Plaintiffs no longer have a live claim. Therefore, this case is not moot.

## IV.   CONCLUSION

Plaintiffs have carried their initial burden to show that certain prospective claims for declaratory relief remain live. The Navy failed to carry its burden to show the opposite. But the Navy has demonstrated that past harms stemming from the Mandate cannot serve as the basis for a declaration alone. And Plaintiffs do not appear to otherwise seek retrospective relief for these

past harms.[51] For that reason, the Court **GRANTS in part** and **DENIES in part** Defendants' Assertion of Mootness (ECF No. 221) because a live controversy remains as to certain claims for which it is not impossible for the Court to grant effectual relief. Plaintiffs' claims for preliminary and permanent injunctive relief prohibiting Defendants from enforcing the Mandate is **MOOT** due to recission of the challenged conduct. However, Plaintiffs' claims for relief arising out of the broader vaccine accommodations policy may proceed. Critically, the Court emphasizes that this is a preliminary conclusion. Questions regarding mootness and standing may be asserted, as appropriate, at future any point in the litigation.

In light of this determination, the Court **ORDERS** the parties to submit a joint report with their proposal for how this case should proceed to final resolution on an expedited basis by **no later than February 28, 2024**. Specifically, the joint report should (1) indicate whether any amendment of the active pleadings is warranted given the robust procedural developments in this case and (2) provide new suggested dates for all deadlines stayed by the Court's March 7, 2023 Order (ECF No. 234).

**SO ORDERED** this **14th day** of **February, 2024**.

_Reed O'Connor_
**UNITED STATES DISTRICT JUDGE**

---

[51] Pls.' Supp. Resp. Br. 1 n.1, ECF No. 257 (acknowledging that Plaintiffs previously raised the issue of damages in their original suggestion of mootness briefing, but "no longer intend to pursue that argument").