## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| **U.S. NAVY SEALs 1-3**; on behalf of themselves and all others similarly situated; **U.S. NAVY EXPLOSIVE ORDNANCE DISPOSAL TECHNICIAN 1**, on behalf of himself and all others similarly situated; **U.S. NAVY SEALS 4-26**; **U.S. NAVY SPECIAL WARFARE COMBATANT CRAFT CREWMEN 1-5**; and **U.S. NAVY DIVERS 1-3**,<br><br>     Plaintiffs,<br><br> v.<br><br>**LLOYD J. AUSTIN, III**, in his official capacity as United States Secretary of Defense; **UNITED STATES DEPARTMENT OF DEFENSE**; **CARLOS DEL TORO**, in his official capacity as United States Secretary of the Navy,<br><br>     Defendants. | Case No. 4:21-cv-01236-O |

## PLAINTIFFS' UNOPPOSED MOTION TO AMEND THE CLASS DEFINITION FOR SETTLEMENT PURPOSES, TO PRELIMINARILY APPROVE THE CLASS ACTION SETTLEMENT, TO APPROVE THE FORM AND MANNER OF NOTICE, AND TO SET A DATE FOR A FAIRNESS HEARING

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ ii

TABLE OF AUTHORITIES .......................................................................................................... iii

INTRODUCTION ........................................................................................................................... 1

SUMMARY OF THE LITIGATION ............................................................................................. 3

ARGUMENT .................................................................................................................................. 6

I.     The Court Should Amend the Class Definition to Provide Settlement Relief for Former
       Class Members.................................................................................................................... 7

II.    The Court Should Preliminarily Approve the Proposed Settlement.................................. 10

       A.     The Class Representatives and Class Counsel Have Adequately Represented the
              Class........................................................................................................................ 12

       B.     The Proposed Settlement is the Result of Arm's Length Negotiations Between
              Experienced Counsel and There is No Fraud or Collusion...................................... 14

       C.     The Relief Provided for the Class is Adequate. ..................................................... 15

              1.  The costs, risks, and delay of trial and appeal favor the Proposed Settlement. ........ 15

              2.  The Settlement Agreement provides an effective means of distributing relief to the
                  Class, payment of attorneys' fees does not impact the Class, and there are no other
                  agreements here, including any that are required to be identified under Rule
                  23(e)(2). ............................................................................................................... 16

       D.     All Class Members are Treated Equitably. ............................................................. 17

       E.     The Remaining *Reed* Factors Warrant Preliminary Approval. ................................ 18

              1.  The stage of the proceedings and the amount of discovery completed support
                  approval................................................................................................................ 18

              2.  The probability of Plaintiffs' success on the merits and the range of possible
                  recovery................................................................................................................ 19

              3.  The opinions of Class Counsel, Named Plaintiffs, and absent class members support
                  approval................................................................................................................ 20

III.   The Court Should Approve the Proposed Notices. ............................................................ 20

IV.    The Court Should Set a Date for the Rule 23(e)(2) Hearing. ............................................ 22

CONCLUSION................................................................................................................................ 23

# TABLE OF AUTHORITIES

## Cases

*Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*,
    No. 4:17-CV-3852, 2019 WL 387409 (S.D. Tex. Jan. 30, 2019)............................................. 12
*Amchem v. Windsor*,
    521 U.S. 591 (1997)........................................................................................................ 7
*Austin v. U.S. Navy Seals*,
    142 S. Ct. 1301 (2022)................................................................................................... 16
*Berger v. Compaq Computer Corp.*,
    257 F.3d 475 (5th Cir. 2001) ........................................................................................ 13
*Buettgen v. Harless*,
    2011 WL 1938130 (N.D. Tex. May 19, 2011) ............................................................. 13
*Cobell v. Salazar*,
    No. 96-CV-1285 (D.D.C. Dec. 10, 2010)...................................................................... 22
*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977) ........................................................................... 10, 11, 19
*DeHoyos v. Allstate Corp.*,
    240 F.R.D. 269 (W.D. Tex. 2007) ................................................................................. 21
*Doster v. Kendall*, 5
    4 F.4th 398 (6th Cir. 2022) ............................................................................................ 16
*Erica P. John Fund, Inc. v. Halliburton Co.*,
    No. 3:02-cv-1152-M, 2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ...................... 14, 19
*Fowler v. Birmingham News Co.*,
    608 F.2d 1055 (5th Cir. 1979) ....................................................................................... 20
*Gates v. Cook*, 234 F.3d 221 (5th Cir. 2000)............................................................................. 7
*Hays v. Eaton Grp. Attys., LLC*,
    No. 17-88-JWD-RLB, 2019 WL 427331 (M.D. La. Feb. 4, 2019) .............................. 14, 15
*In re Deepwater Horizon*,
    739 F.3d 790 (5th Cir. 2014) ......................................................................................... 10
*In re Polaroid ERISA Litig.*,
    240 F.R.D. 65 (S.D.N.Y. 2006) ..................................................................................... 13
*In re Dep't of Veterans Affs. Data Theft Litig.*,
    No. 06-0506, 2007, WL 7621261 (D.D.C. Feb. 11, 2009)............................................ 22
*James v. City of Dallas*,
    254 F.3d 551 (5th Cir. 2001) ......................................................................................... 10
*Jones v. Singing River Health Servs. Found.*,
    865 F.3d 285 (5th Cir. 2017) ......................................................................................... 14
*Kincade v. Gen. Tire & Rubber Co.*,
    635 F.2d 501 (5th Cir. 1981) ........................................................................................... 7
*Klein v. O'Neal, Inc.*,
    705 F. Supp. 2d 632 (N.D. Tex. 2010) .......................................................................... 11
*Manchaca v. Chater*,
    927 F. Supp. 962 (E.D. Tex. 1996)................................................................................ 18
*Martinez v. Astrue*,
    No. 08-4735, 2014 WL 5408412 (N.D. Cal. Sept. 24, 2009)........................................ 22

*McNamara v. Bre-X Minerals Ltd.*,
    214 F.R.D. 424 (E.D. Tex. 2002) .................................................................................... 7
*Mullen v. Treasure Chest Casino, LLC,*
    186 F.3d 620 (5th Cir. 1999) ......................................................................................... 9
*Newby v. Enron Corp.*,
    394 F.3d 296 (5th Cir. 2004) ....................................................................................... 10
*Pettway v. Am. Cast Iron Pipe Co.*,
    576 F.2d 1157 (5th Cir. 1978) ................................................................................ 11, 12
*Purdie v. Ace Cash Express, Inc.*,
    No. Civ.A. 301CV1754L, 2003 WL 22976611 (N.D. Tex. Dec. 11, 2003) .......................... 11
*Reed v. Gen. Motors Corp.*,
    703 F.2d 170 (5th Cir. 1983) ........................................... 11, 12, 14, 15, 18, 19, 20
*Schwartz v. TCU Corp.*,
    No. 3:02-CV-2243-K, 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ..................................... 20
*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
    669 F.3d 632 (5th Cir. 2012) ....................................................................................... 18
*Walsh v. Great Atl. & Pac. Tea Co.*,
    726 F.2d 956 (3d Cir. 1983) ........................................................................................ 21
*Wilkerson v. Martin Marietta Corp.*,
    17 F.R.D. 273 (D. Colo. 1997) .................................................................................... 15

**Rules**

Fed. R. Civ. P. 23(a)(1) ...................................................................................................... 9
Fed. R. Civ. P. 23(a)(2) ...................................................................................................... 9
Fed. R. Civ. P. 23(a)(3) ...................................................................................................... 9
Fed. R. Civ. P. 23(a)(4) ...................................................................................................... 9
Fed. R. Civ. P. 23(c)(1)(C) ................................................................................................. 9
Fed. R. Civ. P. 23(e)(2) ..................................................................................... 7, 11, 15, 16
Fed. R. Civ. P. 23(e)(2)(D) ............................................................................................... 18

## INTRODUCTION

After several years of litigation, and after successfully obtaining preliminary injunctive relief for the Class that prevented the Class Members from being involuntarily separated by the Navy for non-compliance with the Department's COVID-19 vaccination mandate due to their sincerely held religious beliefs, the Named Plaintiffs have now secured a favorable settlement for the Class Members.[1]

As the terms of the Settlement Agreement (Appx.0002-22) show, the Navy has agreed to: (1) correct the personnel records of all Class Members to remove any negative proceedings or adverse information[2] related to non-compliance with the COVID-19 vaccination mandate; (2) correct the personnel records of all current or former Class Members who were discharged solely on the basis of non-compliance with the COVID-19 vaccination mandate to remove any indication that the servicemember was discharged for misconduct; (3) include language in selection board convening orders prohibiting the consideration of COVID-19 vaccination refusal where accommodation was requested; and (4) amend its policy, changed during the mandate period, which prohibited servicemembers from resubmitting requests for religious accommodation if there are changes to their assignment or to relevant policies.

The Navy has also agreed to take steps that, in Plaintiffs' view, will go toward preventing discrimination against religious servicemembers like that alleged in this case from recurring in the

---

[1] Defendants deny the allegations in the Compliant and the Amended Complaint and deny that the claims alleged are amenable to class-wide treatment. Defendants, however, do not oppose modifying the class definition for settlement purposes, nor do Defendants oppose granting preliminary approval of the settlement for purposes of effectuating the parties' settlement in accordance with the parties' agreement.

[2] Plaintiffs negotiated a broad definition of this term to include administrative separation processing or proceedings, formal counseling, non-judicial punishment and a negative notation in a yearly Evaluation or Fitness Report.

future, including: (1) publicly posting a statement reaffirming the value of religious expression to the Navy, the importance of accommodating sincere beliefs, and stating that religious discrimination conflicts with the Navy's core values; (2) publicly posting information informing servicemembers of their rights related to requesting religious accommodation and the process for doing so; and (3) creating and making available in multiple training databases a PowerPoint presentation informing commanders, supervisors, and other decisionmakers in the religious accommodation process of their obligations in processing those requests in accordance with the law and the Navy's own policies, including the required time limitations for decisions, individual assessment of each request, and individualized justification for granting or denying a request, as well as the importance of accommodating religious beliefs to the Navy and the dignity and respect that must be afforded to all servicemembers, including those with sincere religious beliefs. The Navy has also agreed to pay Class Counsel $1,500,000.00 to cover their attorneys' fees in prosecuting this action, and the Navy has also agreed to provide notice of this proposed settlement to the Class Members.[3]

Having reached this agreement with Defendants for the benefit of the Class, Plaintiffs now respectfully request that the Court preliminarily approve the Proposed Settlement pursuant to Fed. R. Civ. P. 23(e). Specifically, Plaintiffs respectfully request that the Court:

(1) amend the Class Definition for settlement purposes to provide relief to servicemembers who were originally part of the class, but withdrew their requests for religious accommodation and were discharged for misconduct;

(2) preliminarily approve the Proposed Settlement;

---

[3] Defendants do not concede that notice is necessary here nor that it is their obligation to carry it out but have agreed to do so as part of the Proposed Settlement.

(3) approve the form and manner of the proposed Notice to the Settlement Class; and

(4) set a date for a hearing under Rule 23(e)(2) to precede final approval of the Settlement Agreement and set a deadline for Class Members to submit objections per Rule 23(e)(5).

Plaintiffs and Defendants have agreed to the form of the Preliminary Approval Order, which is Attachment A to the attached Settlement Agreement (Appx.0024-27) and which Plaintiffs will submit to the Court contemporaneously with the filing of this motion.

## SUMMARY OF THE LITIGATION

In August 2021, the Department of Defense and the Department of the Navy announced a mandate requiring all active-duty and reserve personnel to receive a vaccination for COVID-19, with the deadline for compliance set as November 28, 2021 for active-duty personnel and December 28, 2021 for reserve personnel. ECF No. 84 at 7-8.  Noncompliance with this mandate would result in immediate adverse consequences including court-martial and involuntary separation. ECF No. 84 at 9. On November 9, 2021, individual plaintiffs U.S. Navy SEALs 1-26, U.S. Navy Special Warfare Combatant Craft Crewmen (SWCCs) 1-5, U.S. Navy Explosive Ordnance Disposal Technician (EOD) 1, and U.S. Navy Divers 1-3 sued, asserting claims under the Free Exercise Clause, the Religious Freedom Restoration Act, and other provisions of federal law. ECF No. 1. Plaintiffs moved for a preliminary injunction based on their religious liberty claims on November 24, 2021. The Court held a preliminary injunction hearing on December 20, 2021 and three plaintiffs (Navy SEALs 2 and 3 and EOD 1) testified. ECF No. 61, 101. This Court granted the preliminary injunction on January 3, 2022. ECF No. 66. The order enjoined the Navy from enforcing MANMED § 15-105(4)(n)(9); NAVADMIN 225/2, Trident Order #12; and NAVADMIN 256/21 against plaintiffs. ECF No. 66. The order also enjoined Defendants from taking any "adverse action against Plaintiffs on the basis of Plaintiffs' requests for religious accommodation." ECF No. 66.

On January 21, 2022, Defendants appealed the preliminary injunction order to the Fifth Circuit, ECF No. 82, and Defendants filed a motion for partial stay of the order in this Court on January 24, ECF No. 85. While the motion to stay was pending, Plaintiffs filed a First Amended Class Action Complaint on January 24, 2022 (ECF No. 84), a motion to certify the class on January 25, 2022 (ECF No. 89), a Motion for Order to Show Cause (ECF No. 95), a motion for hearing on the motion for order to show cause (ECF No. 112), and a motion for a classwide preliminary injunction (ECF No. 104). This Court denied the motion to stay the preliminary injunction order on February 13, 2022. ECF No. 116.

While the parties briefed Defendants' emergency motion for a partial stay of the preliminary injunction order at the Fifth Circuit and following emergency application for a partial stay at the U.S. Supreme Court, the parties continued briefing the above motions pending in district court. ECF Nos. 117, 120, 129, 131, 133, 136, 138. The Fifth Circuit denied Defendants' emergency motion for a partial stay on February 28, 2022, ECF No. 135, CA5 ECF No. 88,[4] and on March 25, 2022, the Supreme Court (with Justices Alito, and Gorsuch dissenting, and Justice Thomas noting that he would have denied the stay) granted a partial stay of the preliminary injunction order only "insofar as it precludes the Navy from considering respondents vaccination status in making deployment, assignment, and other operational decisions," ECF No. 139.

This Court certified the class and granted the motion for classwide injunction (staying it in part, per the Supreme Court's order) on March 28, 2022. ECF No. 140. The Navy appealed that order on May 27, 2022, and the consolidated interlocutory appeals proceeded in the Fifth Circuit. ECF No. 159, CA5 ECF No. 110-120. Plaintiffs filed a motion for emergency order requiring

---

[4] "CA5 ECF" refers to docket entries in *U.S. Navy SEALs 1-26 v. Biden*, Nos. 22-1077 and 22-1534 (5th Cir. docketed Jan. 21, 2022).

compliance with the preliminary injunction, which was denied as moot. ECF No. 169, 179. In the meantime, Defendants answered the complaint and discovery proceeded. Plaintiffs deposed the then-Vice Chief of Naval Operations, William Lescher, on June 30, 2022 and supplemented the record on appeal with his deposition transcript. *See* ECF No. 154, 195, CA5 ECF No. 142, 151. The Defendants filed, and the parties briefed, two motions to compel (ECF No. 191, 203). Several Class Members also requested to be released from the class due to their wish to allow the Navy to commence separation proceedings against them. The parties briefed that issue and Class Counsel presented voluminous evidence of the conditions some of these servicemembers were suffering, as well as additional harm being suffered by Class Members despite the injunction. ECF No. 175, 177, 178. The Court granted those requests and clarified that those individuals (and any others like them) are not part of the class per the definition. ECF No. 182.

Meanwhile, the parties filed briefs in the consolidated appeal at the Fifth Circuit. CA5 ECF No. 93, 140, 154, 213. Plaintiffs filed supplemental materials with the Fifth Circuit in September 2022, CA5 ECF No. 196, 215, and in December 2022, CA5 ECF No. 247. In late December 2022, Defendants filed a motion to hold the appeal in abeyance in light of the James M. Inhofe National Defense Authorization Act for Fiscal Year 2023 (FY 2023 NDAA), which rescinded the Department of Defense COVID-19 vaccination mandate. CA5 ECF No. 251. That motion was carried with the case, CA5 ECF No. 257, and the parties filed supplemental briefs at the Fifth Circuit's request addressing the FY 2023 NDAA and potential mootness. CA5 ECF No. 258, 274, 275. Plaintiffs and Defendants filed supplemental materials with the Fifth Circuit before oral argument, CA5 ECF No. 278, 280, and oral argument was held on February 6, 2023, CA5 ECF No. 282. The parties filed additional authorities and responses to those authorities after oral argument. CA5 ECF No. 284, 286, 288, 290, 292, 294, 296, 298, 302. The Fifth Circuit issued its

opinion on July 6, 2023, which held that the preliminary injunction appeals were moot because the enjoined policies were repealed and remanded the case to this Court. CA5 ECF No. 306.

This Court also ordered briefing to be filed regarding mootness in January 2023. ECF No. 213. The Court extended the time for discovery, appointed U.S. Magistrate Judge Jeffrey Cureton as mediator, and ordered mediation to occur by March 31, 2023. ECF No. 220. Defendants filed a motion to dismiss for lack of jurisdiction based on mootness on February 6, 2023, and the parties briefed the motion, including a surreply filed by Plaintiffs at the Court's request after Defendants filed new information. ECF No. 222, 224, 226, 228, 230, 231, 235. While the Court considered this motion, it granted the parties' motion to stay the proceedings. ECF No. 234.

The first mediation was held on March 23, 2023 with U.S. Magistrate Judge Cureton, but it was unsuccessful. ECF No. 239. In response to the Fifth Circuit's decision in July 2023, the Court ordered additional supplemental briefing. ECF No. 248, 253, 254, 256, 257. On February 14, 2024, the Court granted in part and denied in part the motion to dismiss, finding that Plaintiffs' claim for injunctive relief against enforcement of the mandate is moot, but finding Plaintiffs' other claims could proceed. ECF No. 262. The Court ordered a second mediation with U.S. Magistrate Judge Cureton on April 3, 2024 and stayed the proceedings in this matter pending settlement discussions. ECF No. 268, 269, 273, 275, 277. The parties attended mediation on April 3, 2024, ECF No. 270, and while that session did not result in settlement, the parties continued negotiations during the following weeks, coming to an agreement in principle on terms on April 30, 2024. ECF No. 276.

**ARGUMENT**

Federal Rule of Civil Procedure 23(e) provides that the "claims . . . of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed,

or compromised only with the court's approval." Approval of a settlement in a class action "necessarily requires the Court to determine if the proposed class is a proper class for settlement purposes." *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 426-27 (E.D. Tex. 2002). Approval then follows a two-step process. First, the Court makes a "preliminary fairness evaluation of the proposed terms of settlement submitted by counsel." *Id.* at 426. Second, "if the Court determines that the settlement is fair, the Court directs that notice pursuant to Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement." *Id.*; *see also* Fed. R. Civ. P. 23(e)(2). While members of a Rule 23(b)(2) class do not have the right to opt out of a settlement, they have the right to be heard and thus may file objections which may be heard at the 23(e)(2) hearing. *Gates v. Cook*, 234 F.3d 221, 229 (5th Cir. 2000); *Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501, 506 (5th Cir. 1981); Fed. R. Civ. P. 23(e)(2), (5).

## I.   The Court Should Amend the Class Definition to Provide Settlement Relief for Former Class Members.

A settlement class must meet the requirements for class certification. *Amchem v. Windsor*, 521 U.S. 591, 620 (1997). Here, the Court has already determined that the Rule 23(a) and Rule 23(b)(2) requirements are satisfied, and certified the following class:

> [A]ll members of the United States Navy who are subject to the Navy's COVID-19 Vaccine Mandate and who have submitted a Religious Accommodation request concerning the Navy's COVID-19 Vaccine Mandate.

ECF No. 89; ECF No. 140 at 6-18.[5] The Court noted that the class members "are those who seek to remain in the Navy and refuse to compromise their religious beliefs (i.e., continue to forgo the vaccine)." ECF No. 140 at 15. A few servicemembers who submitted requests for religious

---

[5] The Court also certified two subclasses in addition to the "Navy Class" defined above, *see* ECF No. 140 at 7, but because the settlement does not distinguish between Class Members or Subclass members, only the "Navy Class" definition is relevant here.

accommodation regarding the COVID-19 vaccination mandate contacted the Court and Class Counsel requesting to be released from the Class so they could be discharged by the Navy because of various negative personal consequences resulting from not being able to execute orders or separate from the Navy, *see* ECF Nos. 162, 163, 180. The Navy was not permitting such servicemembers to separate because of the injunction. *See* ECF No. 177. In response, the Court noted that the servicemembers were no longer Class Members because they did not "seek to remain in the Navy," and that servicemembers "may pursue separation without permission from the Court, because under the existing class certification language, those who 'choose to get vaccinated, withdraw their religious accommodation requests, voluntarily separate, or proceed with retirement plans' are no longer class members." ECF No. 182 at 2 (quoting ECF No. 140 at 15). Thus, former servicemembers like these individuals are not part of the Class. But because they withdrew their requests for religious accommodation or accepted separation, such servicemembers were noted as being separated for "misconduct" and were listed as ineligible to reenlist as a result. The Proposed Settlement here aims to correct that, and for such servicemembers, the Navy has agreed to correct their personnel records to change their reenlistment codes and remove the designation of "misconduct." Appx.0009. To allow these servicemembers to enjoy this benefit, the Class Definition should be modified as below:

> All members of the United States Navy who <u>were</u> subject to the Navy's COVID-19 Vaccine Mandate and who submitted a Religious Accommodation request concerning the Navy's COVID-19 Vaccine Mandate <u>or who submitted a Religious Accommodation request concerning the Navy's COVID-19 Vaccine Mandate and were separated from the Navy, even if the request was withdrawn</u>.[6]

---

[6] The current Class Definition uses the present tense when referring to the COVID-19 vaccination mandate. As the Court is aware, the mandate was repealed. The Class Definition still meets the requirements of Rule 23 because the class members were ascertainable per the definition at the time of certification because the mandate was still in effect at that time and all Class Members were subject to it. *See Frey v. First Nat'l Bank Sw.*, 602 F. App'x 164, 168 (5th Cir. 2015). But

The Court may alter or amend the order granting class certification before final judgment, including for settlement purposes. *See* Fed. R. Civ. P. 23(c)(1)(C). Courts have "great discretion in certifying and managing a class action." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999). And as this Court has already recognized, it "has discretion to modify . . . an approved class." ECF No. 140 at 3.

This amended Class Definition still meets the requirements of Rule 23(a). The Class is still sufficiently numerous, as the amended Class Definition would only add Class Members. Fed. R. Civ. P. 23(a)(1); ECF No. 140 at 7-8. There are questions of law or fact common to the Class as now defined, as the individuals who were separated suffered the same type of religious discrimination alleged by the Named Plaintiffs. Fed. R. Civ. P. 23(a)(2); ECF No. 140 at 8-12. The claims of the Named Plaintiffs for religious discrimination are also typical of the claims of the Amended Class for similar reasons. Fed. R. Civ. P. 23(a)(3); ECF No. 140 at 12-14. And the Named Plaintiffs and Class Counsel have already demonstrated that they have fairly and adequately represented the interests of this Class by litigating the case for nearly three years and successfully obtaining injunctive relief and a favorable proposed settlement. Fed. R. Civ. P. 23(a)(4); ECF No. 140 at 14-16. The basis for certification under Rule 23(b)(2) equally applies to the additional proposed Class Members, as they were similarly subject to the mandate despite their

---

the Court should grant Plaintiffs' request that the Court modify the Class Definition as per the above for settlement purposes, consistent with the parties' settlement agreement definition, which includes changing "are" to "were." *See* Fed. R. Civ. P. 23(c)(1)(C); *In re Monumental Life Ins.*, 365 F.3d 408, 414 (5th Cir. 2004) ("[H]olding plaintiffs to the plain language of their definition would ignore the ongoing refinement and give-and-take inherent in class action litigation, particularly in the formation of a workable class definition. District courts are permitted to limit or modify class definitions to provide the necessary precision."). In addition to furthering the parties' settlement, switching to past tense will make it more clear to Class Members, who will receive notice of this Proposed Settlement, as to who is in the Class. As noted above, Defendants do not object to modifying the class definition for settlement purposes.

sincere religious beliefs and despite secular exemptions being granted, and were subject to the flawed, "sham" process for evaluation of their requests. ECF No. 140 at 16-17. That the additional proposed Class Members suffered the additional harm of separation does not defeat commonality or typicality. *In re Deepwater Horizon*, 739 F.3d 790, 810–11 (5th Cir. 2014); *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001). Furthermore, the additional proposed Class Members are also ascertainable because "Defendants maintain records of those who have submitted religious accommodation requests" and separation is noted in servicemembers' personnel records. ECF No. 140 at 6-7. As Defendants have agreed to provide relief to those proposed Class Members, they do not dispute that they know how to identify those individuals.

Because the proposed amended Class Definition meets the requirements of Rule 23, because the Court has discretion to modify the Definition, and because there is good cause for the modification as it will allow servicemembers originally part of the Class to benefit from this settlement, the Court should modify the Class Definition as set forth above.

## II.     The Court Should Preliminarily Approve the Proposed Settlement.

Federal Rule of Civil Procedure 23(e)(1)(B) provides that preliminary approval of a proposed settlement should be granted where "the parties show[] that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."

 "The gravamen of an approvable proposed settlement is that it be fair, adequate, and reasonable and is not the product of collusion between the parties." *Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004) (citation omitted); *see also Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). In exercising its discretion to approve a settlement, the Court must "ensure that the settlement is in the interests of the class, does not unfairly impinge on the rights and interests of dissenters, and does not merely mantle oppression." *Pettway v. Am. Cast Iron Pipe Co.*, 576

F.2d 1157, 1214 (5th Cir. 1978); *see also Reed v. Gen. Motors Corp*., 703 F.2d 170, 172 (5th Cir. 1983).

Under Rule 23(e)(2), which governs final approval, if a settlement proposal would bind class members, the Court may finally approve it only after finding that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Klein v. O'Neal, Inc*., 705 F. Supp. 2d 632, 649 (N.D. Tex. 2010). In making this determination, Rule 23(e)(2) requires that the Court consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Factors (A) and (B) "identify matters . . . described as procedural concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement," while factors (C) and (D) "focus on . . . a substantive review of the terms of the proposed settlement" (i.e., "[t]he relief that the settlement is expected to provide to class members"). Advisory Committee Notes to 2018 Amendments (324 F.R.D. 904, at 919). And "[w]hen considering [the] factors, the court should keep in mind the strong presumption in favor of finding a settlement fair." *Purdie v. Ace Cash Express, Inc*., No. Civ.A. 301CV1754L, 2003 WL 22976611, at *4 (N.D. Tex. Dec. 11, 2003). "Particularly in class action suits, there is an overriding public interest in favor of settlement." *Cotton*, 559 F.2d at 1331. In the context of a class action settlement, "compromise is the essence of a settlement, and the settlement need not accord the plaintiff class every benefit that might have been gained after full trial." *Pettway*, 576 F.2d at 1214 n.69.

These factors are not exclusive, however. The four factors set forth in Rule 23(e)(2) were not intended to "displace" any factor previously adopted by the courts, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Advisory Committee Notes to 2018 Amendments (324 F.R.D. 904, at 919); *see also Reed*, 703 F.2d 170, 172 (5th Cir. 1983) (establishing Fifth Circuit factors used to evaluate the propriety of a class action settlement).[7] Thus, the traditional Fifth Circuit factors (some of which overlap with Rule 23(e)(2)) are still relevant. *See, e.g., Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, No. 4:17-CV-3852, 2019 WL 387409, at \*3 (S.D. Tex. Jan. 30, 2019) (considering "the criteria set forth in Fed. R. Civ. P. 23 (e)(2) as well as the Fifth Circuit's *Reed* factors"). As discussed below, application of each of the four factors specified in Rule 23(e)(2), and the relevant, non-duplicative *Reed* factors, demonstrates that the Proposed Settlement merits both preliminary and final approval.

### A. The Class Representatives and Class Counsel Have Adequately Represented the Class.

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." Here, the Named Plaintiffs and Class Counsel have adequately represented the Class by zealously advocating on their behalf for nearly three years. Three of the Named Plaintiffs testified at the preliminary injunction hearing and attended mediation, and all the Named Plaintiffs responded to written discovery (including document requests and interrogatories), and regularly consulted with Class Counsel as to strategy and case

---

[7] The *Reed* factors are: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members." 703 F.2d at 172.

developments. *See* Appx.0039; *see also Berger v. Compaq Computer Corp.*, 257 F.3d 475, 483 (5th Cir. 2001) (adequate class representatives are "informed and can demonstrate they are directing the litigation."); *Buettgen v. Harless*, 2011 WL 1938130, at *5 (N.D. Tex. May 19, 2011) (proposed class representatives adequate because they were informed of the progress of the case; were producing documents; and one of two proposed representatives had been deposed). The Named Plaintiffs' claims are typical of, and coextensive with, the claims of the Class, and they have no antagonistic interests. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest.")

The Named Plaintiffs retained Class Counsel, who is knowledgeable in both class action litigation and constitutional litigation. Before reaching the Proposed Settlement, Class Counsel vigorously prosecuted the Plaintiffs'—and then the Class Members'—claims, spending thousands of hours working on the litigation. Appx.0040. Class Counsel secured preliminary injunctive relief for both individual plaintiffs and then for the Class, defended that injunctive relief through emergency stay proceedings through the Fifth Circuit and the U.S. Supreme Court, and defended that injunctive relief in the Fifth Circuit. At oral argument in the Fifth Circuit and in post-argument briefing, Class Counsel pointed out Navy policies preliminarily enjoined by the Court that were still in effect, which the Navy subsequently repealed. Class Counsel also defeated Defendants' motion to dismiss and motion to dismiss as moot. Class Counsel engaged in discovery on behalf of the Class, deposed the then-Vice Chief of Naval Operations William Lescher, and filed motions seeking relief on behalf of Class Members who alleged that the Navy was not complying with the preliminary injunction. Class Counsel also participated in settlement negotiations with Defendants leading up to and following the first mediation in March 2023, and leading up to and following the

second mediation in April 2024. Those negotiations involved preparing mediation statements, attorneys' fees records, and drafting multiple versions of proposed documents. This case was arguably one of the most successful cases against the military regarding the COVID-19 vaccination mandate, and this case was the only one not dismissed as moot after repeal of the mandate because of the uniquely pleaded claims here. Dkt. 262. The Named Plaintiffs and Class Counsel, therefore, adequately represented the Settlement Class. *See Hays v. Eaton Grp. Attys., LLC*, No. 17-88-JWD-RLB, 2019 WL 427331, at *9 (M.D. La. Feb. 4, 2019) (representation adequate where proposed settlement was "negotiated by experienced, informed counsel . . . with substantial experience in litigating complex class actions" and where lead plaintiff was "familiar with the factual and legal issues").

### B.  The Proposed Settlement is the Result of Arm's Length Negotiations Between Experienced Counsel and There is No Fraud or Collusion.

Rule 23(e)(2)(B) evaluates whether the proposed settlement "was negotiated at arm's length." Similarly, one of the *Reed* factors examines whether there was "fraud or collusion behind the settlement." *Reed*, 703 F.2d at 172. In conducting this analysis, courts recognize that "[t]he involvement of 'an experienced and well-known' mediator 'is also a strong indicator of procedural fairness.'" *Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 295 (5th Cir. 2017); *Erica P. John Fund, Inc. v. Halliburton Co.*, No. 3:02-cv-1152-M, 2018 WL 1942227, at *4 (N.D. Tex. Apr. 25, 2018) (approving settlement that was "obtained through formal mediation before [an experienced mediator], which strongly suggests the settlement was not the result of improper dealings."). Here, U.S. Magistrate Judge Jeffrey Cureton, an experienced attorney, magistrate judge, and mediator, conducted both mediation sessions and stayed in touch with the parties after those sessions, facilitating further email and telephone discussions. Counsel for both parties also diligently prepared for the mediation sessions and continued research after those sessions to allow

them to make informed decisions about the strength and weaknesses of their respective cases. Appx.0039. "The completeness and intensity of the mediation process, coupled with the quality and reputations of the Mediators, demonstrate a commitment by the Parties to a reasoned process for conflict resolution that took into account the strengths and weaknesses of their respective cases and the inherent vagaries of litigation." *Wilkerson v. Martin Marietta Corp.*, 17 F.R.D. 273, 285 (D. Colo. 1997). The Settlement Agreement here is thus the product of mutual, zealous advocacy with the involvement of a reputable mediator. The second factor therefore supports approval.

## C.  The Relief Provided for the Class is Adequate.

### 1.  The costs, risks, and delay of trial and appeal favor the Proposed Settlement.

Under Rule 23(e)(2)(C), when evaluating the fairness, reasonableness, and adequacy of a settlement, the Court should consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). Similarly, the second *Reed* factor instructs the Court to consider "the complexity, expense, and likely duration of the litigation." *Reed*, 703 F.2d at 172. This factor is satisfied where the settlement provides significant immediate relief for the class and where "a trial would be lengthy, burdensome, [] would consume tremendous time and resources of the Parties and the Court [and] any judgment would likely be appealed." *Hays*, 2019 WL 427331, at *10. But "[e]ven where the claims are not particularly complex, approval of settlement is favored where settling avoids the risks and burdens of potentially protracted litigation." *Id*.

To proceed to trial in this case, the parties would have to finish discovery, and some of the discovery that had already been completed would have to be redone due to the significant factual developments in the case and shifting focus of relief since discovery first commenced. It is Class Counsel's understanding that Defendants intended to file a motion for summary judgment, which

would require briefing, and then assuming the summary judgment motion(s) did not resolve the case, the parties would have to proceed through pretrial and trial proceedings. Further, given that Defendants previously sought emergency relief from the U.S. Supreme Court regarding this Court's preliminary injunction, and obtained a partial stay in so far as it "precludes the Navy from considering respondents' vaccination status in making deployment, assignment, and other operational decisions" that continues until disposition of a petition for a writ of certiorari to the Supreme Court. *Austin v. U.S. Navy Seals*, 142 S. Ct. 1301, 1302 (2022). And the Government recently petitioned the Supreme Court for a writ of certiorari in *Doster v. Kendall*, 54 F.4th 398, 437-48 (6th Cir. 2022), *cert. granted, judgment vacated as moot*, 144 S. Ct. 481 (2023). Defendants' counsel stated that it was likely the Government would similarly seek appellate review of any decision which it believes restricts the freedom to make deployment and assignment decisions. Appx.0040. Accordingly, it could be years before the case could be finally resolved and the Class Members could obtain relief. This factor therefore favors approval.

> **2. The Settlement Agreement provides an effective means of distributing relief to the Class, payment of attorneys' fees does not impact the Class, and there are no other agreements here, including any that are required to be identified under Rule 23(e)(2).**

Under Rule 23(e)(2)(C), courts should consider whether the relief provided is adequate in light of (1) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," (2) "the terms of any proposed award of attorneys' fees, including timing of payment," and (3) "any agreement required to be identified under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). All three factors support approval.

a. Because there is no monetary relief at issue in this case, no specific relief will be "distributed to the class" other than the Navy's correction of personnel files as indicated in paragraphs 17 and 18 of the Settlement Agreement. Appx.0009. The Navy is the only entity that

has access to these files and represents that it can make the corrections needed, so it follows that this delivery of relief will be effective enough to satisfy the Rule. The other Class relief will be more public in nature and does not apply to any specific person, so that relief does not implicate the concerns in Rule 23(e)(2)(C)(ii).

b.      The Settlement Agreement provides that Defendants will pay Class Counsel $1.5 million in attorneys' fees. Unlike other class actions, where Class Counsel's fees are often a percentage of the overall monetary recovery for the Class, the attorneys' fees here do not reduce any relief the Class is entitled to. Moreover, the agreed-upon amount of fees is reasonable. The Defendants recently agreed to pay $1.8 million to counsel representing the Marine Corps class in similar litigation in the Middle District of Florida after the case was dismissed as moot.[8] And given that Class Counsel collectively spent nearly 3,400 hours on this litigation, that payment is more than reasonable. Appx.0040. The Settlement Agreement provides that Defendants will make this fee payment to Class Counsel with 60 days of the effectiveness of the agreement, which does not impact the Class. Appx.0016.

c.      Rule 23(e)(3) requires that "parties seeking approval [of a class settlement] must file a statement identifying any agreement made in connection with the proposal." The parties here have no other agreements other than the Settlement Agreement, Appx.0040, so this factor also does not impact the Class.

**D. All Class Members are Treated Equitably.**

Rule 23(e)(2)(D) requires courts to evaluate whether settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(D). The Proposed Settlement seeks to

---

[8] *See* Meghann Myers, *DoD settles COVID vaccine mandate lawsuits for $1.8 million*, Military Times (Oct. 9, 2023), https://www.militarytimes.com/news/your-military/2023/10/09/dod-settles-covid-vaccine-mandate-lawsuits-for-18-million.

provide general benefits to every Class Member through the policy change and public notice provisions, and the provisions addressing corrections to personnel files are aimed at rectifying harm that some, but not all, Class Members suffered. The Settlement Agreement does not give preferential treatment or any award to any particular Class Members, including the Named Plaintiffs.

**E.   The Remaining *Reed* Factors Warrant Preliminary Approval.**

    **1.   The stage of the proceedings and the amount of discovery completed support approval.**

The third *Reed* factor is "the stage of the proceedings and the amount of discovery completed." *Reed*, 703 F.2d at 172. Under this factor, the inquiry is whether the plaintiff has a sufficient understanding of the case to gauge the strengths and weaknesses of the claims and the adequacy of the settlement. *Cotton*, 559 F.2d at 1332. As discussed above, Class Counsel engaged in substantial litigation, obtained Navy documents through discovery and a whistleblower, and deposed the second-highest ranking uniformed officer in the Navy. Thus, by the time settlement discussions proved fruitful, the Named Plaintiffs and Class Counsel had a "full understanding of the legal and factual issues surrounding this case." *Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996). Even in cases where "very little formal discovery was conducted" and where "there is no voluminous record in the case," the Fifth Circuit has held that "the lack of such does not compel the conclusion that insufficient discovery was conducted." *Id.*; *see also Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012) (affirming approval of class action settlement where there had been no "formal discovery" but the settlement compared favorable to similar settlements, and the parties were "well informed about the merits of their respective positions").

**2.   The probability of Plaintiffs' success on the merits and the range of possible recovery.**

"A district court faced with a proposed settlement must compare its terms with the likely rewards the class would have received following a successful trial of the case." *Reed*, 703 F.2d at 172. Courts also consider the range of possible recovery in the action. *Id*. "In ascertaining whether a settlement falls within the range of possible approval, courts will compare the settlement amount to the relief the class could expect to recover at trial, i.e., the strength of the plaintiff's case." *Erica P. John Fund, Inc. v. Halliburton Co.*, No. 3:02-CV-1152-M, 2018 WL 1942227, at *5 (N.D. Tex. Apr. 25, 2018). But courts should avoid essentially trying cases in evaluating the propriety of a settlement because "the very purpose of the compromise is to avoid the delay and expense of such a trial." *Reed*, 703 F.2d at 172. And "the trial court should not make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained." *Cotton*, 559 F.2d at 1330.

Plaintiffs believe that they would be successful if this case were litigated through trial to final judgment and on appeal. Plaintiffs also believe that they could have obtained relief from the Court which would be at least similar to, and perhaps stronger than, what the Navy agreed to do in the Proposed Settlement. But that would have come at a significant cost—not only a litigation cost borne by Class Counsel, but also a cost to the Class because of the lengthy delay in receiving relief. If personnel records and selection board convening orders were not corrected for years, Class Members would suffer continued lost employment and promotion opportunities in the meantime. Even if Plaintiffs could have ultimately obtained stronger relief if the litigation continued, the Proposed Settlement provides substantial relief for the Class without the cost of continued harm while waiting for final judgment, so it warrants approval.

19

### 3. The opinions of Class Counsel, Named Plaintiffs, and absent class members support approval.

Finally, courts consider "the opinions of the class counsel, class representatives, and absent class members" in determining the propriety of a settlement. *Reed*, 703 F.2d at 172. "[W]here the parties have conducted an extensive investigation, engaged in significant fact-finding and Class Counsel is experienced in class-action litigation, courts typically defer to the judgment of experienced trial counsel who has evaluated the strength of his case." *Schwartz v. TCU Corp*., No. 3:02-CV-2243-K, 2005 WL 3148350, at *21 (N.D. Tex. Nov. 8, 2005).

Here, Class Counsel are experienced, are well-informed of the strengths and weaknesses of the case, and believe the Proposed Settlement merits approval. See Appx.0040. The Named Plaintiffs and the Individual Plaintiffs also support the Proposed Settlement. Accordingly, this factor favors approval.

\* \* \*

For all the foregoing reasons, the Proposed Settlement is "fair, reasonable, and adequate" and warrants this Court's approval under Rule 23(e)(1) and (2).

## III. The Court Should Approve the Proposed Notices.

Rule 23(e)(1) states that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [settlement] proposal." Subject to the requirements of due process, notice under Rule 23(e)(1) gives the Court discretion over the form and manner of notice. *See Fowler v. Birmingham News Co*., 608 F.2d 1055, 1059 (5th Cir. 1979). "[A] simple summary of the proposed settlement is particularly appropriate in a rule 23(b)(2) case such as this. . . . '[T]he form of notice settlement of a Rule . . . 23(b)(2) class action need only be such as to bring the proposed settlement to the attention of representative class members who may alert the court to inadequacies in representation, or conflicts of interest among subclasses, which might bear upon

the fairness of the settlement." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 301–02 (W.D. Tex. 2007) (quoting *Walsh v. Great Atl. & Pac. Tea Co.*, 726 F.2d 956, 963 (3d Cir. 1983)). This is because "the interests in a rule 23(b)(2) class action for declaratory and injunctive relief, are related primarily, if not exclusively, to adequacy of representation, since a judgment in the action would establish the obligations of defendant . . . to the entire class." *Id.* (citation omitted). Thus, notice is sufficient if it contains "sufficient information to allow individuals to determine whether or not they are class members and to evaluate the benefits of the settlement." *Id.* at 298. Further, the purpose of notice for a 23(b)(2) class is not so that class members can choose to opt-out, it is to ensure that class members may object to the proposed settlement and be heard at a fairness hearing.

Here, the parties propose that Defendants give notice to Class Members via the Notice of Proposed Class Action Settlement and Hearing to Approve Proposed Settlement attached to the Settlement Agreement as Attachment B. The notice will also include a full copy of the Settlement Agreement and the date of the fairness hearing. Appx.0014, 0031.

As for the method of notice, the parties propose that Defendants send the notice by email to the Class Members' navy.mil email addresses, or if the Class Member is no longer part of the Navy, to their last known mailing address. Appx.0014, 0025. In large Rule 23(b)(2) classes, courts have permitted notice by publication, as "[r]eceipt of actual notice by all class members is required neither by Rule 23 nor the Constitution," *Id.* at 296; *see also id.* at 297 (citing cases). But "sending notice by mail is preferred when all or most of the class members can be identified." *Id.* at 296. Because Defendants can identify all Class Members, and also possess those Class Members' email and mailing addresses, this method of notice is likely to reach all, if not most, of the Class

Members. That more than satisfies notice requirements here.[9]

## IV.   The Court Should Set a Date for the Rule 23(e)(2) Hearing.

Under Rule 23(e)(2), the Court may finally approve a class action settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate." Thus, the Court should set a hearing on a date which allows sufficient time for the required notices to be sent and received by the Class, and for any Class Member objections to be submitted. If the Court is inclined to grant the motion to preliminarily approve the settlement, the parties propose the following schedule:

| | |
|---|---|
| **July 1, 2024** | Defendants send notice of the preliminarily approved settlement to all Class Members |
| **August 13, 2024** | Deadline for submission of objections by Class Members |
| **August 27, 2024** | Rule 23(e)(2) Hearing |

If that is not possible, the parties request that the Court set a date for the Rule 23(e)(2) hearing that is no sooner than 60 days after preliminary approval, if it is granted.

---

[9] Defendants' position is that notice under the Class Action Fairness Act, 28 U.S.C. § 1715(d), does not apply in cases where the federal government is the sole defendant. *See* 28 U.S.C § 1715(f) ("Nothing in this section shall be construed to expand the authority of, or impose any obligations, duties, or responsibilities upon, Federal or State officials."); *see also* Preliminary Approval Order, *In re Dep't of Veterans Affs. Data Theft Litig.*, No. 06-0506, 2007, WL 7621261 (D.D.C. Feb. 11, 2009), ECF No. 54, ¶ 7 ("In light of the purposes of the Act, the Court finds that notification to state officials is unnecessary."); Order Denying Mtn. to Intervene, Finally Approving Settlement of Class Action, and Directing Entry of Final Judgment, *Martinez v. Astrue*, No. 08-4735, 2014 WL 5408412 (N.D. Cal. Sept. 24, 2009), ECF No. 183, ¶ 6 ("[T]he notice provisions in § 1715(b) do not apply to the defendant in this case because the Defendant is a Federal official,"); Preliminary Approval of Settlement, *Cobell v. Salazar*, No. 96-CV-1285 (D.D.C. Dec. 10, 2010) Doc. No. 3660 at 36-37. Defendants' counsel states that the relevant federal officials have been notified already.

**CONCLUSION**

For the foregoing reasons, this Court should grant the Motion, amend the Class Definition, preliminarily approve the Proposed Settlement, approve the proposed Notice, and set a date for the Rule 23(e)(2) hearing.

Respectfully submitted this 31st day of May, 2024.

KELLY J. SHACKELFORD
  Texas Bar No. 18070950
JEFFREY C. MATEER
  Texas Bar No. 13185320
HIRAM S. SASSER, III
  Texas Bar No. 24039157
DAVID J. HACKER
  Texas Bar No. 24103323
DANIELLE A. RUNYAN
  Texas Bar No: 24134548
HOLLY M. RANDALL
  Texas Bar No. 24128002
FIRST LIBERTY INSTITUTE
2001 W. Plano Pkwy., Ste. 1600
Plano, Texas 75075
Tel: (972) 941-4444
jmateer@firstliberty.org
hsasser@firstliberty.org
dhacker@firstliberty.org
drunyan@firstliberty.org
hrandall@firstliberty.org

/s/ Heather Gebelin Hacker
HEATHER GEBELIN HACKER
  Texas Bar No. 24103325
ANDREW B. STEPHENS
  Texas Bar No. 24079396
HACKER STEPHENS LLP
108 Wild Basin Road South, Suite 250
Austin, Texas 78746
Tel.: (512) 399-3022
heather@hackerstephens.com
andrew@hackerstephens.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 31, 2024, I electronically filed the foregoing document through the Court's ECF system and will serve a copy on each of the Defendants according to the Federal Rules of Civil Procedure.

/s/ Heather Gebelin Hacker
HEATHER GEBELIN HACKER