U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUL 1 6 2024

CLERK, U.S. DISTRICT COURT
By_____
Deputy

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FT. WORTH DIVISION**

| | | |
|---|---|---|
| *U.S. Navy SEALs 1-26,* | : | |
| | : | |
| *Plaintiffs,* | : | |
| | : | |
| **v.** | : | Case No. 4:21-cv-01236 |
| | : | |
| *President Biden*, et al., | : | |
| | : | |
| *Defendants.* | : | |

## *ALVARADO* CHAPLAINS' OBJECTIONS TO PROPOSED CLASS SETTLEMENT

### INTRODUCTION

The undersigned is the lead counsel for a group of Military chaplains who challenged the order by Secretary of Defense Lloyd Austin III that all military personnel must accept the COVID-19 [alleged] vaccines (hereafter, the "Mandate"), *Alvarado v. Austin*. Its claims and procedural history are provided in I below.

The following nine Navy chaplains, both active and Reserve, part of the *Alvarado v. Austin* chaplains group, hereby respectfully state their opposition to the proposed Settlement in this case: Israel Alvarado, Brenton C. Asbury, Justin Brown, Mark Cox, Jacob Eastman, Nathanael Gentilhomme, Richard Shaffer, Jonathan Shour, and Matthew Wronski. As shown below, the Settlement is not fair, reasonable, or adequate and deprives these chaplains their Due Process rights. Accordingly, it should be rejected.

While the FAQs addressing the proposed settlement state that claims outside of SEALs' Religious Freedom Restoration Act and Free Exercise claims specifically addressed in the Settlement may continue in other venues, the Settlement language in its release suggests

1

otherwise. *See* II *infra. Alvarado* did and will in the future raise Religious Freedom Restoration Act and Free Exercise claims. The *Alvarad*o Chaplains (hereafter "Chaplains") seek to address the continuing retaliation and career destruction resulting from the Department of Defense ("DOD"), Navy and the other Armed Services actions implementing the Secretary's Mandate. *Alvarado* specifically challenged this Secretary's authority to order the Mandate. The original SEALS' Complaint raised that allegation in their Seventh Cause of Action, "Violation of Plaintiffs' Rights Under the Administrative Procedure Act Agency Action that Exceeds Statutory Authority", SEAL ECF No 1 at 30-33. These are actions that the Defendants can later argue are covered by the language in the Settlement Release, ¶¶ 37 and 48.

The Chaplains request the Settlement be rejected and they be allowed to opt out to avoid later disputes as to what allegations the Navy *Alvarado* Chaplains and/or the SEALS made and could have made in this case and are therefore barred by the Settlement.

## I.    INTRODUCTION TO THE *ALVARADO* CHAPLAINS AND THEIR ISSUES

The Chaplains lawfully filed religious accommodation requests ("RARs") seeking exemption from taking the mandatory--now known to be experimental-- COVID-19 vaccines, as required by Secretary of Defense Austin, his COVID Mandate. These Chaplains were rewarded for this lawful exercise of their constitutional and statutory rights by having their careers destroyed by the Navy's retaliation, religious hostility, and persecution.

### A.    Alvarado's Claims

As opposed to this SEALS' case, the *Alvarado* chaplains challenged the authority of the Secretary of Defense (and the President) under the "Major Policy Doctrine" and First and Fifth Amendments to issue a mandate relying on an administrative change in the definition of vaccine and vaccination from something that protected the recipient from the disease and prevented

2

transmission to something that stimulated the immune system. Exhibit 8 to the *Alvarado*
Complaint, 1:22-cv-876 (EDVA), ECF No. 1-10, is a copy of the CDC email chain requesting a
change in the definition of vaccine and vaccination, and the change. *id.* at 2-4 . It states the
government needed to change the vaccine definition because commentors were pointing out the
experimental vaccines being tested did not meet the existing definition of "vaccine" and
"vaccination." *Id.*

 *Alvarado* claims the Secretary's use of the term vaccine and his statements and directives
to imply that it had the same meaning as the vaccines historically required in the service which
prevented both the disease and its transmission was an exercise in deceit and fraud. *Alvarado*
also claimed the Secretary exceeded his authority under the major policy doctrine and changing
the well-settled meaning of vaccine to accomplish a political objective that he knew or should
have known was not safe or effective.

 *Alvarado* claimed the Navy's actions in implementing the COVID Vaccine Mandate
violated the Establishment, Free Exercise, and Due Process Clauses and RFRA and § 533(b) and
other constitutional violations because the chaplains lawfully requested a RAR as described
above. They also claimed that all of the Secretary and Service actions against all Chaplains was
retaliation for the exercise of a protected right.

 This retaliation was and still is primarily manifested by lowered or weak fitness reports,
*e.g.*, "damnation by faint praise", failure to use "buzz" words indicating top performance, etc.,
and denial of important categories describing promotion potential, *e.g.*, "Must Promote" or early
promote. These lowered and noncompetitive fitness reports have destroyed their careers without
mentioning the Mandate. In doing so, the Navy violated the Establishment, Free Exercise, Free

Speech, right to seek redress, and Due Process Clauses; and the ban on a religious test for a government office or position.

The Navy's retaliation also includes statutory violations of the Religious Freedom Restoration Act ("RFRA") and section 533 of the 2013 National Defense Authorization Act ("NDAA") as modified by the 2014 NDAA, "Protection of Rights of Conscience of Members of the Armed Forces and Chaplains of Such Members." Appendix ("App.") -1,  Section 533(a) establishes the protection of rights of conscience for all military personnel; Section 533(b), provides: "Protection of chaplain decisions relating to conscience, moral principles, or religious beliefs." This subsection specifically precludes the discriminatory conduct and punitive actions that the Navy has used in retaliation against these Chaplains because they filed a RAR.

### B.      *Alvarado*'s Procedural History

These Navy chaplains joined other military chaplains injured by the Mandate and filed *Alvarado v. Austin's* Complaint in the Tampa Division of the Middle District of Florida, 5/18/22, case 8:22-cv-01149, ECF. No. 1. *Alvarado* was transferred to the Eastern District of Virginia, ECF. No. 49, 1:22-cv-876 (EDVA). The District Court denied the *Alvarado* Chaplains' preliminary injunction motion, dismissed their claims for lack of subject matter jurisdiction, and then denied the Chaplains' motion for reconsideration after the Fiscal Year 2023 NDAA ordered the Secretary to rescind his mandate, A*lvarado* ECF No 98.

The Chaplains' Appeal to the Fourth Circuit, Appeal No. 23-1419, was dismissed as "moot",  8/03/23, based on the NDAA's order to "rescind the Mandate" and the Secretary's assertion that he had done so, which the Chaplains disputed. The Fourth Circuit vacated the District Court's dismissal of *Alvarado's* claims, 23-1419 ECF No. 25 (order dismissing appeal and vacating the order below).

4

The Supreme Court denied the Chaplains' petition for certiorari, *Alvarado v. Austin*, No. 23-717, on 4/239/24, and their Application for a writ of Injunction, 232A858, on 4/30/24.

### C.     The Navy's Continued Retaliation and Rebellion Against Congress's Order to "Rescind" the Mandate

The 2023 NDAA ordered the Secretary to "rescind" his Vaccine Mandate. On January 10, 2023, Secretary Austin reported he had rescinded the Mandate and ordered the respective Secretaries to remove terminate any discharge procedures for those who requested RARs and remove negative actions solely related to the Mandate.

The DOD Establishment, including the Navy, has not disputed the *Alvarado* Chaplains' claim and evidence that their careers have been destroyed by the Navy's retaliation and other violations of the law. Those claims are supported by the Chaplains' *Alvarado* declarations and other evidence, *e.g.*, failures of selection, continued bad fitness reports as results of filing a RAR.

This is indisputable evidence the Navy has failed to follow Congress's order to "rescind" the former Covid-19 Vaccine mandate. It is apparent to the *Alvarado* chaplains the Navy seeks to hide accountability and liability for its unconstitutional and lawless actions behind the Settlement's release language in ¶¶ 37 and 48 as explained below.

The Chaplains are examining ways to refile their claims and bring accountability to a system that has (a) sought to substitute a bureaucrat or politician for God as the source and authority for a chaplain's conscience; (b) illegally punished service personnel for asserting their statutory and constitutional rights; © trampled religious liberty; and (d) falsely claimed the COVID vaccines worked and were safe when they were not.

## II.     THE CHAPLAINS' OBJECTIONS TO THE SETTLEMENT

The Settlement is not fair, reasonable, or adequate.

**A.    It Appears There Is a Disconnect Between the  Settlement's FAQs and the Actual Settlement Language**

The Settlement's language appears crafted to cut off all other claims outside the SEALS'

litigation while the Settlement's presentation in the Settlement FAQs suggests otherwise. The

*Alvarado* Chaplains' claims do not mimic or copy the claims in the SEAL case with the

exception of raising violations of the Religious Freedom Restoration Act ("RFRA") and Free

Exercise Clause. *Alvarado*'s Free Exercise claims are different and are integrally implicated with

*Alvarado*'s retaliation claims. Yet, the Settlement by its terms would bar these claims being

raised in later litigation seeking to hold the Navy responsible for its violations of statutory and

constitutional protections and fixing on the Navy the responsibility to fix their records and

careers.

The Settlement's language appears crafted to cut off all other claims outside the

SEALS' litigation while the Settlement's presentation in the Settlement FAQs suggests

otherwise. The *Alvarado* Chaplains' claims do not mimic or copy the claims in the SEAL case

with the exception of raising violations of the Religious Freedom Restoration Act ("RFRA") and

Free Exercise Clause. *Alvarado's* Free Exercise claims are different and are integrally implicated

with *Alvarado's* retaliation claims.

The Settlement's FAQ suggests or implies that those differing claims can be

pursued despite the Settlement. The Settlement's language states otherwise. The FAQ section

entitled "What this case is not about" ends with these two sentences:

> If you feel that you have a claim for redressing past harms or pursuing monetary
> damages against the government, you should consult with an attorney. Please also
> note that claims pursuant to the Religious Freedom Restoration Act generally have
> a statute of limitations of four years.

This implies that if you "have a claim for redressing past harms or pursuing monetary damages" you may bring them later or in another venue. That same theme is repeated further on. "What claims does the proposed Settlement Agreement cover? The proposed Settlement Agreement only resolves the Class Members' claims for prospective relief (meaning only forward-looking relief)."

The end of that section states:

Concluding this case on claims pertaining to ongoing harms related to the Navy's broader vaccine policy (as more fully explained in FAQ #1, above) does not preclude Class Members from seeking other forms of relief, to include monetary damages, themselves.
If you feel that you have a claim for redressing past harms or pursuing monetary damages against the government, you should consult with an attorney. Please also note that claims pursuant to the Religious Freedom Restoration Act generally have a statute of limitations of four years.

The clear implication from the FAQ is that other claims that flow from injuries related to or resulting from objecting to the Mandate not addressed in the Settlement may be brought or pursued later in the same or alternative venues. That position is contradicted by the following words in Settlement paragraphs 37 and 48 (note the words in italics).

E. Fee Settlement and Release
37. Plaintiffs, the members of the Class defined above, and their heirs, administrators, representatives, attorneys, successors, and assigns, and each of them hereby release, waive, acquit, and forever discharge the United States, Defendants, any department, agency or establishment of the United States, and their present or former officials, employees, successors, and agents, in their official and individual capacities, from, and are hereby forever barred and precluded from prosecuting, *any and all claims, causes of action, and/or requests for relief that would be barred by the doctrine of res judicata were final judgment on the merits entered on all claims asserted in the Civil Action*, including claims to attorneys' fees, costs, and other litigation expenses or claims for attorneys' fees, costs, *and other litigation expenses that have been, or could have been, made as a result of the Civil Action*. Without limiting the generality of the foregoing, this release encompasses, resolves, and satisfies *all claims* for attorneys' fees, costs, and other litigation expenses in connection with all

7

facets of the Civil Action, from the initial submission of Complaint, ECF No. 1, and including *any litigation*, as well as attorneys' fees, costs, and other litigation expenses *for any other proceedings involving claims or causes of action that were or could have been raised in the Civil Action.* The release provided for in this paragraph shall become effective on the Effective Date of this Agreement. (Emphasis added)

48. Plaintiffs warrant and represent that *no other action or suit with respect to Plaintiffs' claims including any claims for attorneys' fees, costs, and other litigation expenses advanced in the Civil Actions is pending or will be filed in or submitted to any other court, administrative agency, or legislative body.* Plaintiffs further warrant and represent that except to their counsel in the Civil Actions they have made no assignment or transfer of all or any part of their rights arising out of or relating to Plaintiffs' claims including any claims for attorneys' fees, costs, and other litigation expenses advanced in this suit.

The above italicized language suggests, if not states, the release is not limited to the claims brought in the SEALS' Case. The SEALs originally challenged the Secretary's and Navy's authority to issue the mandate because it exceeded his statutory authority. The Chaplains have raised and will raise the same claim in the future. The Navy will argue the Chaplains' claims are precluded by the Settlement; it is certainly a claim that has been stated and therefore could have been pursued absent the Settlement agreement.

Additionally, Free Exercise and RFRA violations are part and parcel of *Alvarado*'s claims of retaliation, *i.e.*, government negative employment decisions or actions in response to the exercise of a protected right. Here, the protected right is the free exercise of religion, RFRA, procedures for filing RARs, and the right to follows one's conscience.

## B.    There Is No Settlement Enforcement Mechanism

The Settlement's ¶ 34 rejects continuing judicial jurisdiction. "The Court will not retain jurisdiction over any aspect of this action, or in connection with the enforcement of any of its provisions, after the joint stipulation of dismissal with prejudice is filed." Therefore, there is no enforcement mechanism if the Navy decides not to do what it's

supposed to do or does it halfheartedly like its execution of Congress's Order to "rescind" the Mandate. The Navy's hostility to Congress' order to rescind the Mandate was shown in its testimony at the 02/28/2024 House Armed Services Personnel Subcommittee hearing. *See* III .B. (p. 13) citing App,-8-16. This official position suggests the lack of an enforcement mechanism provides an incentive for half-hearted or hostile fulfillment of the Navy's meager Settlement duties. Portions of the Settlement state the Navy will put certain instructions and teaching about religious liberty in various publications and yet the discretion in implementation is solely theirs. Yet, it was the Navy who violated RFRA and the Free Exercise Clause, and maintains it has done no wrong, a conclusion at odds with Congress's order to rescind the Mandate.

The response by the SEAL's counsel to the question about lack of enforcement was that any violation could be addressed through a "breach of contract suit." That seems to be contrary to the Settlement's ¶ 34 words, "or in connection with the enforcement of any of [the Settlement's] provisions." An enforcement enforcement action of a judicial settlement would typically involve going back to the same court that approved the Settlement.

C.   **The Settlement Has No Standards by Which the Navy's Compliance Can Be Judged**

The Settlement has no requirement or process to track what actually happens to objectors, *e.g.*, removal of adverse actions, promotion, non-selection or separation. Previous Navy efforts at addressing Affirmative action included tracking statistical results of promotions to insure compliance with guidelines and policy, not here. The Settlement appears to be another way for the Navy to avoid doing what Congress ordered, "rescind the mandate" and make those injured whole.

The Settlement does not address the Chaplains' objections to the Navy's illegal pre-mandate coercion that resulted in retaliation. Chaplain LT. Nathanael Gentilhomme, chaplain to the Marine One helicopter squadron, suggested to his Commanding Officer that it might seem to be hypocritical to punish Marines who did not volunteer for the experimental COVID vaccines, attempting to illegally coerce them into taking it an experimental vaccine. His CO ordered him out of his office, attempted to fire Nathaniel as a chaplain and end his career immediately. The Deputy Chief of Chaplains, the Chaplain to the Marine Corps, had to intervene; advising Commanders about moral , morale and ethical issues is part of a chaplain's advisement duty.

The CO gave Nathaniel a career killing fitness report for not being a team player on the COVID vaccine; the Mandate is not mentioned at all. *See* App.-2, LT Gentilhomme's *Alvarado* Declaration. This is a claim that could have been brought in the SEAL litigation.

Related to this is the fact the Settlement's favorite phrase is "solely related to the Mandate", ignoring the myriad ways in which raters and commanders can savage an objector and destroy a career without naming the Mandate as a reason. If a service person failed of selection because he/she could not travel to get a necessary school, is that "solely related to the Mandate"? What about persons removed from a school selection list due to vaccination status? Chaplain Shour was retained at the Chaplain Basic Course for months because he requested a RAR. He arrived at Camp Lejeune several months behind a school mate contemporary. When rated against his contemporary, he has always placed below the contemporary because that person was on station longer. Is that career destruction in violation of the Free Exercise and RFRA but barred by the Settlements of those claims?

## III.    THE CHAPLAINS DO NOT BELONG IN THIS CLASS

### A.     The Chaplains' Presence in the Navy Class Fails Rule 23(a)'s Criteria of Commonality and Typicality and the Class Representatives Accurately Representing the Chaplains's Objectives and Values.

The Chaplains' claims are neither common nor typical for the Class. When the SEALS amended their complaint to make it a "Class Action Complaint" in order to move for class certification, ECF No. 84, they had four causes of action ("CA"), *id.* at 20-29,  ¶¶ 64-134. This was a reduction of three from their original complaint's total of eight. The first two CAs raise RFRA claims, the other two CAs raised First Amendment, Free Exercise claims. They properly alleged that the Navy's actions in violating both RFRA and the Free Exercise Clause caused irreparable harm and an injunction was appropriate to stop continued harm.

The Chaplains raised similar RFRA and Free Exercise claims in *Alvarado* and that the Navy's actions had violated RFRA and the Free Exercise Clause producing irreparable harm. *Alvarado* Complaint, 8:22-cv-01149 (EDVA) ECF No. 1 at 93-100, CA 3 (RFRA) (¶¶ 189-205); *id.* at 104-108 CA 5 (Free Exercise) (¶¶234-239).

However, the Chaplains raised and will raise in the future claims of violations of: Section 533(b) of the 2013 NDAA, CA 1 and CA 2, Complaint at 86-90 and 90-93 respectively, unique claims for chaplains; the Constitution's Article VI and the Establishment Clause, CA 4, *id.* at100 – 104; violation of the Free Speech and Right to Petition clauses, CA 6, *id.* at 108-109; the Fifth Amendment, CA 7, *id.* at 109-114; "Violation of [the] Administrative Procedure Act", CA 8, *id.* at 114-119; and "Violation of Separation of Powers", CA 9, *id.* at 119-123.

The Chaplains also added the fact that Navy's actions enforcing the Mandate had destroyed their careers and those challenged actions were unconstitutional retaliation that violated the Establishment and Due Process Clauses and § 533(b), *see, e.g.*, Complaint at ¶¶ 2, 19-20, 94, 145, 163 (CA1), 189 (CA 3), 224 (CA5), that continued to destroy their careers and

would continue until the Court enjoined the Navy from continuing to retaliate, Relief at p. 123, ¶ 5 (injunctive relief).

The Chaplains' claims are **not** common and typical for the rest of the Navy class nor are they moot. The Chaplains object to the Settlement because its language could preclude these Chaplains from continuing their viable RFRA, Free Exercise, Establishment, and other constitutional and statutory claims. Those claims are necessary to address the continuing retaliation and irreparable injury because they filed RARs. That continuing retaliation results from the bad fitness reports and other "negative personnel actions" (a defined term in § 533(b)), their reward for exercising their statutory and constitutional rights.

**B.      The Navy Class Representatives do not and cannot Accurately Represent the Chaplains's Objectives, Claims, Injuries, and Values**

In drafting the Amended Complaint, the SEALS abandoned their four CAs under the Administrative Procedures Act. Those claims were "Violation of Plaintiffs' Rights Under the Administrative Procedure Act" because: the "Agency Action Not in Accordance with Law", CA 5; "Agency Action that is Contrary to a Constitutional Right", CA 6; "Agency Action that Exceeds Statutory Authority, CA 7; and "Agency Action that Is Arbitrary, Capricious, or an Abuse of Discretion", CA 8. SEAL Complaint at 26-36. CAs 7 and 8 challenged Secretary Austin's authority to issue the Mandate.

The Chaplains specifically challenged and will challenge Secretary Austin's authority to issue the Mandate, although under different grounds. The Chaplains alleged in their previous briefing that Congress' order to "rescind" the Mandate was a vindication of their "no authority" claim. The well-recognized definition of "rescind" means his Mandate was *void ab initio* and he had a duty to return plaintiffs to their original pre-Mandate status.

The Secretary's actions in response to Congress, *e.g.*, stop discharges-separations and disciplinary action and remove "adverse actions", suggest he understands the requirements for recision. The Chaplains maintain he has failed to fully implement Congress orders by not addressing the Chaplains' career destroying fitness reports by changing the character of the Reports.

The significance of the word "rescind" means all of the actions to implement the mandate which punish those who resisted are void, without authority. Secretary Austin and the Secretary of Navy have refused to acknowledge that fact in DOD's 2/28/23 testimony to the House Armed Services Personal Subcommittee.

The Assistant Secretaries of DOD and each Armed Force testified to the House Armed Services Committee ("HASC") on 2/28/2023 concerning the impact of COVID and DOD's compliance with the NDAA's order to rescind the Mandate. App.- 8-16 (Excerpts of 2/28/23 Transcript of HASC hearing regarding the Mandate and its recision (hereafter "HASC TR")).

DOD showed no remorse for issuing the Mandate, identified no harms, and agreed DOD opposed and disagreed with the NDAA.[1] DOD stated it was still considering whether to punish those who had refused the COVID vaccine; DOD's mantra in response to questions about fixing records and/or restoring service members and their careers who had refused the vaccine was they "violated a lawful order." App.-9, 10, and 12 (HASC TR at time stamps 27:52, 28:34, 29:30, 29:46, 30:38:31:00, 44:58).

DOD showed no repentance or acknowledgment that issuing the Mandate or changing the definitions of vaccine and vaccination were beyond DOD's authority and no concern for the damage done to the careers and lives of military personnel or exacerbating existing shortages of skilled

---

[1] https://www.whitehouse.gov/briefing-room/press-briefings/2022/12/07/press-briefing-by -press-secretary-karine-jean-pierre-december-7-2022/(last accessed 7/15/2023). White House publicly calls Congress' mandate rescission direction a "mistake."

personnel, including Chaplains who are below their authorized strength, or overseeing and participating in the destruction of the volunteer military service.

To get the relief the Chaplains seek and are legally due will require a court to order Secretary Austin or his successor to officially change the characterization of the Chaplains reports during the time of COVID. He can do that through various means, not relevant here. The Armed Services have done similar things in the past supporting affirmative-action programs and the integration of women into formerly closed duty positions.

The important point here is the Chaplains objective of ensuring the damage to their careers is "remediated" or restored is not an objective for the SEALS. They abandoned that in their First Amended Complaint. But having initially challenged the Secretary's authority for the Mandate, the Chaplains' claims would fall into the scope of the Settlement's Release.

### C.   There Is a Conflict of Interest Between the Chaplains' Objectives and Interests and the SEALS' Representatives

The Chaplains argue the Navy has not fully implemented Congress's order to "rescind" the mandate. The injury to their careers and in some cases financial damage and is not been remediated or healed. Their careers and records have not been returned to their status pre-Mandate. That is in conflict with the SEALS' implied agreement that the Navy has complied with Congress's rescission order, when the Chaplains' evidence in terms of failures of selection and poor or noncompetitive fitness reports show the Navy has not done so. Chaplains Eastman and Gentilhomme have both failed of selection due to the COVID related fitness reports. Thus, the SEALS' representatives are in conflict with the Chaplains' litigation objectives and claims.

"[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the  [*349]  class members." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-349 (2011)(Quoting *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395,

14

403(1977)). The SEAL representatives have not claimed they have suffered the same injuries or have the same interests as these Chaplains. Courts "must continue carefully to scrutinize the adequacy of representation and withdraw certification if such representation is not furnished." *Grigsby v. North Mississippi Medical Center, Inc.*, 586 F.2d 457, 462 (5th Cir. 1978). The above failures to meet Rule 23(a)'s criteria require the Court to reject the Settlement.

## IV.   THE SETTLEMENT DEPRIVES THESE CHAPLAINS THEIR DUE PROCESS, FIRST AMENDMENT AND OTHER STATUTORY RIGHTS

The Chaplains raise important constitutional and statutory issues. They challenge the Navy's continuing retaliation against them for filing RARs. Some of their claims are unique to the status as chaplains, a uniqueness recognized by section 533 of the 2013 NDAA. There should be no hindrance or uncertainty to their ability to raise their claims. The Settlement's release does just that. At the very least, the Settlement's language casts doubt on the Chaplain's abilities to address their Free Exercise and RFRA claims and injuries and other constitutional and statutory claims. These and other claims are substantive rights. Abridging them through Rule 23's class action process is not permissible,  "the Rules Enabling Act forbids interpreting Rule 23 to "abridge, enlarge or modify any substantive right." *Wal-Mart*, 564 U.S. at 367 (citing 28 U.S.C. § 2072(b)).

## V.   THE CHAPLAINS ASK TO BE GRANTED PERMISSION TO "OPT OUT"

The simplest way to resolve the Chaplains' issues with the Settlement is to allow them to opt out, a suggestion made by the SEALS counsel. Another alternative is to change the category of the Class to 23(b)(3). However, because this was certified as a Rule 23(b)(2) class and the options in reviewing the settlement are approve or reject, these alternatives, are not permitted at this time. The Settlement should be rejected.

**CONCLUSION**

15

These Chaplains object to the Settlement for the reasons stated above and respectfully ask the Court to reject the Settlement.

Respectfully submitted,

July 15, 2024

/s/ Arthur A. Schulcz, Sr.
Arthur A. Schulcz, Sr.
VA Bar No. 30174
Chaplains Counsel, PLLC
21043 Honeycreeper Place
Leesburg, VA 20175
Tel. (703) 645-4010
Email: art@chaplainscounsel.com
Counsel for *Alvarado* Navy Chaplains

/s/ J. Andrew Meyer
J. Andrew Meyer, Esq.
Florida Bar No.: 0056766
FINN LAW GROUP, P.A.
8380 Bay Pines Blvd.
St. Petersburg, Florida 33709
Telephone: (727) 709-7668
ameyer@finnlawgroup.com
pleadings@finnlawgroup.com
Counsel for *Alvarado* Navy Chaplains

/s/ Brandon Johnson
Brandon Johnson, Esq.
DC Bar No.: 491370
Defending the Republic
2911 Turtle Creek Blvd., Ste. 300
Dallas, Texas 75219
Telephone: (214) 707-1775
bcj@defendingtherepublic.org
Counsel for *Alvarado* Navy Chaplains

16

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2024, I sent via FedEx Overnight mail the foregoing *Alvarado* Chaplains' Objection to Proposed Settlement Agreement and the Chaplains' Appendix in Support in the above captioned case to the:

> Clerk's Office
> United States District Court for the Northern District of Texas
> Fort Worth Division
> 501 West 10th Street, Room 310
> Fort Worth, Texas 76102-3673
> ATTN: U.S. Navy SEALs 1-26 v. Biden, Case No. 4:21-cv-01236, Objections to Proposed Class Settlement

I further certify that on July 15, 2024, I sent the foregoing *Alvarado* Chaplains' Objection to the Proposed Settlement Agreement of the above captioned case by email to the following attorneys representing the identified parties as directed by the Settlement's Notice, page 4:

> Heather G. Hacker, Hacker Stephens LLP,
> heather@hackerstephens.com
> (Class Counsel)

> Andrew E. Carmichael, U.S. Department of Justice,
> Andrew.E.Carmichael@usdoj.gov
> (Defendants' Counsel)

> /s/ Arthur A. Schulcz, Sr.
> Arthur A. Schulcz, Sr.
> VA Bar No. 30174
> Chaplains Counsel, PLLC
> 21043 Honeycreeper Place
> Leesburg, VA 20175
> Tel. (703) 645-4010
> Email: art@chaplainscounsel.com

# CHAPLAINS' COUNSEL, PLLC

Arthur A. Schulcz Sr.
21043 Honeycreeper Place
Leesburg, Virginia 20175
art@chaplainscounsel.com
703-645-4010      Fax  703-645-4011

July 15, 2024

Clerk's Office
United States District Court for the Northern District of Texas
Fort Worth Division
501 West 10th Street, Room 310
Fort Worth, Texas 76102-3673

> ATTN: U.S. Navy SEALs 1-26 v. Biden, Case No. 4:21-cv-01236, Objections to
> Proposed Class Settlement

Dear Clerk,

Enclosed is the *Alvarado v. Austin* Navy Chaplains Group's Objections to the Proposed
Class Settlement of U.S. Navy SEALs 1-26 v. Biden, Case No. 4:21-cv-01236.

I have signed the Chaplains' Objections with an electronic signature format, i.e.,/s/. If a
real or "wet" signature is required I've attached an extra signature page for the
Objection and one for the Appendix

Respectfully,

*Arthur A. Schulcz h*

Arthur A. Schulcz, Sr.
Counsel for the *Alvarado* Chaplains Group Plaintiffs

*Real Signature*
*on pages*

These Chaplains object to the Settlement for the r⟨...⟩ fully ask the Court to reject the Settlement.

Respectfully submitted,

July 15, 2024

*Arthur A. Schulcz Sr.*
Arthur A. Schulcz, Sr.
VA Bar No. 30174
Chaplains Counsel, PLLC
21043 Honeycreeper Place
Leesburg, VA 20175
Tel. (703) 645-4010
Email: art@chaplainscounsel.com
Counsel for *Alvarado* Navy Chaplains

*/s/ J. Andrew Meyer*
J. Andrew Meyer, Esq.
Florida Bar No.: 0056766
FINN LAW GROUP, P.A.
8380 Bay Pines Blvd.
St. Petersburg, Florida 33709
Telephone: (727) 709-7668
ameyer@finnlawgroup.com
pleadings@finnlawgroup.com
Counsel for *Alvarado* Navy Chaplains

*/s/ Brandon Johnson*
Brandon Johnson, Esq.
DC Bar No.: 491370
Defending the Republic
2911 Turtle Creek Blvd., Ste. 300
Dallas, Texas 75219
Telephone: (214) 707-1775
bcj@defendingtherepublic.org
Counsel for *Alvarado* Navy Chaplains

16

**Extremely Urgent:**
Recipient please hand deliver to addressee.

**Fed**

ORIGIN ID:WGOA          (703) 645-4010
ARTHUR SCHULCZ SR.

21043 HONEYCREEPER PLACE

LEESBURG, VA 20175
UNITED STATES US

SHIP DATE: 15JUL24
ACTWGT: 0.50 LB
CAD: 2689100/INET4535

BILL SENDER

TO  CLERK'S OFFICE
    US DISTRICT CT, FT. WORTH DIV.
    501 WEST 10TH ST., ROOM 310
    NAVY SEALS SETTLEMENT, 4:21CV1236
    FT. WORTH TX 76102
    (817) 850-6600           REF:

DEPT:

**FedEx**
Express

E

TRK#    7774 0691 7878
0201

TUE - 16 JUL 5:00P
STANDARD OVERNIGHT

**XA GRKA**                76102
            TX-US  DFW

*The World On Time*®



8:48 AM

www.fedex.com

ion

contact your local

le toll-free at
for more information on

ce is available toll-free
on shipping worldwide.

in the current FedEx
without notice). Copies

Weight Limit: 8 Ounces

☐ FedEx Standard Overnight®

☐ FedEx First Overnight™

☐ FedEx International Services

☐ Saturday Deliv





FedEx

TUE – 16 JUL AA
STANDARD OVERNIGHT

XA GRKA

7774 0691 7878

7610

TX-US DFW

RT398      6    C
FZ B32   17.00   7879
                 07.16

