**OBJECTION TO SETTLEMENT AGREEMENT AND RELEASE OF ALL CLAIMS In U.S. Navy SEALs 1-26 v. Biden, 4:22-cv-01236-O (N.D. Tex.)**

**To: United States District Court for the Northern District of Texas**
**From: Aaron W. R. Crabb**

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JUL 1 6 2024
CLERK, U.S. DISTRICT COURT
By _____
Deputy

Ref:   (a) 42 USC § 1983
      (b) Article 1150, U.S. Navy Regulations
Encl:

      (1) Robert A. Green Jr. Objection Seals v Biden 1Jul24

I, Aaron W. R. Crabb, one of the People as seen in the U.S. and all 50 American state constitutions, republic in form, *Sui Juris*, serve this objection to the Court, that it may also serve as notice to all parties involved.

In addition to being a member of We The People, I also hold the office of Petty Officer First Class, USN, and, by virtue of having filed a religious accommodation to the Navy mandate of the COVID-19 injection, I am a member of the Navy class as described in *U.S. Navy SEALs v. Biden*, 4:22-cv-01236-O (N.D. Tex).

As a class member, I object to the fairness, reasonableness, and adequacy of this settlement agreement for the following reasons:

**Accountability**

Nothing in this settlement holds Defendants or their agents accountable for their violations and abuses. This lack of accountability has directly contributed to ongoing violations of the First Amendment and continued harms to class members. One of Defendant's agents, Rear Admiral James P. Waters, was a direct party to the violations of the Religious Freedom Restoration Act that led to this Court granting a class-wide preliminary injunction. Rather than hold him accountable for his violations, Navy leadership elected to support and promote Rear Admiral Waters, reinforcing the apparent disdain that Navy leadership has for service members' First Amendment rights.

Accountability is a requirement for myself as an active duty service member. I am constantly reminded of personal accountability for my own actions to the Lord Jesus Christ, those who serve over and underneath me, to the constitution of the United States, and to the American people who I swore to support and defend against all enemies foreign and domestic. This is and should be a priority by all service members officer and enlisted alike.

Additionally, it is demanded to serve official reprimands for ADM Grady, ADM Gilday, ADM Lescher, VADM Kilby, VADM Nowell, VADM Fuller, ADM Fagan, VADM Buck, RADM Gillingham, and RADM Waters for the unlawful actions taken against the class members. The military speaks of good order and discipline, unit cohesion; this has been lost due

to the defendants actions. Granting the requests set forth herein will help show the support of the leadership and Navy in the corrections of the class members irreparably harmed.

I cannot look past the known injustices that fellow service members and myself have experienced during the COVID mandates. The leaders must be held accountable to prevent the law from being blatantly broken again in the future. The fact that there is nothing in the proposed settlement agreement preventing this from happening again is horrifying. How can the American people advocate for their sons and daughters to volunteer military service without accountability from the leadership? Further amplifying information regarding accountability can be found in Robert Green Jr.'s objection. (Encl 1)

## Administrative Records

The repair of harms is not adequate because it only forces the Navy to correct records that fall within a very narrowly defined category. Significant harms were perpetrated that fall outside the definition detailed in the settlement. The fact of poor evaluations, dishonorable discharge characterizations are items service members active and separated have been forced to deal with. This has affected them, their families, and other service members who now have seen the injustice committed.

Personally, I have received low ranking evaluations due to unjust actions incurred through an early transfer. This has resulted in my inability to promote. These types of corrections the settlement suggests does nothing to help me or others harmed through the actions of the defendants

For class members who have already retired or otherwise left the Naval Service, correcting their record provides absolutely no tangible benefit, and cannot repair the harms done to them. Further details regarding administrative record repair are expounded in Robert Green Jr.'s objection. (Encl 1)

## Monetary Damages

Rigidly holding the class to the original complaint does an injustice to class members and the case should be expanded to include retrospective relief. The settlement does not compensate class members in any way whatsoever, despite many class members enduring significant financial hardship, medical complications, and mental health problems as a result of defendants' actions.

It is demanded the defendants provide back pay compensation to all those who have been removed from service and offers of automatic re-instatement. Furthermore, to provide immediate promotion to the next paygrade with all pays and allowances to those service members still actively serving.

These monetary actions will help to restore the trust in the military fighting force that has been lost at all levels.

**OBJECTION TO SETTLEMENT AGREEMENT AND RELEASE OF ALL CLAIMS In U.S. Navy SEALs 1-26 v. Biden, 4:22-cv-01236-O (N.D. Tex.)**

**To: United States District Court for the Northern District of Texas**
**From: Robert A. Green Jr.**

Ref:    (a) 42 USC § 1983
         (b) Article 1150, U.S. Navy Regulations

Encl:

    (1) Complaint of Wrong Under Art 1150, U.S. Navy Regulations Against Rear Admiral
        Waters for Violation of the First Amendment and 42 USC § 1983, 1 Jul 2024
    (2) Screenshot demonstrating that Respondent's government X[Twitter] account,
        @USNRecruiter, blocked Complainant's private X[Twitter] account @RobGreen1010
    (3) U.S. Navy Biography, Rear Admiral James Waters III, Director, Military Personnel
        Plans and Policy Division, N13, Office of the Chief of Naval Operations
    (4) Complaint of Wrong Under Art 1150, U.S. Navy Regulations Against Vice Admiral
        Nowell for Unlawful Religious Discrimination, 23 Dec 2021
    (5) Judgment Order, *Benton v. BlueCross BlueShield of TN Inc*, Case 1:22-cv-00118, U.S.
        District Court, Eastern District of Tennessee, 28 June 2024

      I, Robert A. Green Jr., one of the People as seen in the U.S. and all 50 American state constitutions, republic in form, *Sui Juris*, serve this objection to the Court, that it may also serve as notice to all parties involved.

      In addition to being a member of We The People, I also hold the office of Commander, USN, and, by virtue of having filed a religious accommodation to the Navy mandate of the COVID-19 injection, I am a member of the Navy class as described in *U.S. Navy SEALs v. Biden*, 4:22-cv-01236-O (N.D. Tex).

      As a class member, I object to the fairness, reasonableness, and adequacy of this settlement agreement for the following reasons:

**Accountability**

      Nothing in this settlement holds Defendants or their agents accountable for their violations and abuses. This lack of accountability has directly contributed to ongoing violations of the First Amendment and continued harms to class members. One of Defendant's agents, Rear Admiral James P. Waters, was a direct party to the violations of the Religious Freedom Restoration Act that led to this Court granting a class-wide preliminary injunction. Rather than hold him accountable for his violations, Navy leadership elected to support and promote Rear Admiral Waters, reinforcing the apparent disdain that Navy leadership has for service members' First Amendment rights. Since being promoted to a new command position of considerable trust and prominence, Rear Admiral Waters has been party to additional abuses, and is now the subject of an internal Navy complaint for new violations of service member's First Amendment rights committed as recently as June 2024. (Encl 1)

      As the Director, Military Personnel Plans and Policies (OPNAV N13) from April 2021 to March of 2024, Rear Admiral Waters, worked directly for Vice Admiral John B. Nowell (OPNAV N1). In this role, he oversaw the OPNAV N131 Religious Accommodation Review Team. Under

Enclosure (1)

Rear Admiral Waters' watch, the OPNAV N131 Religious Accommodation Review Team developed and executed a Standard Operating Procedure (SOP) to issue a template denial to each religious accommodation request submitted by Navy sailors without doing the individualized review required by law and military regulation.

While Vice Admiral Nowell was the one signing final disapprovals on each religious accommodation requested, it was Rear Admiral Waters who was most closely involved in leading the Religious Accommodation Review Team, and through whom he prepared each disapproval recommendation for Vice Admiral Nowell. The evidence provided to this Court demonstrated that the standardized religious accommodation denials passed through Rear Admiral Waters' office multiple times before ultimately being finalized by both Vice Admiral Nowell and Admiral Gilday. The SOP provided to the court shows Rear Admiral Waters' personal office code (N13) listed approximately 10 separate times. His name, listed as "J. P. Waters," is also clearly shown in both Step 33 and Step 39 of the SOP, as demonstrated in the court documents. (Encl 4)

Rear Admiral James P. Waters contributed significantly to a pattern of disregard for the law, for service members' rights, and for the U.S. Constitution. This entire episode has been a national embarrassment for the Navy, contributed to a significant loss of trust with the American people, and compounded the military recruiting crisis. Rather than hold Rear Admiral Waters accountable for his actions, Navy leadership saw fit to promote him to a new command position. As the new Commander of Navy Recruiting Command, Rear Admiral Waters, holds a position of significant interest to American citizens due to its important role in building and maintaining trust for the sake of recruiting.

As Commander of Navy Recruiting Command, Rear Admiral James Waters maintains a public-facing X [Twitter] account. Under his authority, this account represents the official Navy position and narrative concerning recruiting Americans for service in the United States Navy. After pointing out a number of programmatic failures related to recruiting and rebuilding trust with the American people, I was blocked from viewing or commenting on any post made by Rear Admiral James Waters' Navy Recruiting Command X [Twitter] Account. (Encl 2)

As one of the People and a citizen of the United States, I have a right to freely express my views, particularly ones that relate to the running of our government, its executive branch agencies, and its military departments. The action to block me, taken under the color of law, and within the authority of an executive branch agency, deprived me of my right to free speech, which I retain as one of the People, and which is explicitly protected by the First Amendment of the Constitution. Rear Admiral James Waters violated the law as promulgated in 42 U.S.C. § 1983, deprived me of my inalienable Constitutional rights under the First Amendment, and, in so doing, violated his own oath to the Constitution.

The @USNRecruiter X [Twitter] account is not Rear Admiral Waters' private account. Rather, it is an official government account under his control with which he promulgates Navy narratives, and encourages the public to interact with the page. I am a member of the public, and, because there can be no military exclusion for constitutional protections, I retain the right to free speech as one of the People. Through use of frequent official messaging, Rear Admiral Waters develops and implements a narrative to sway the opinion of the American people. Due to the violation of my First Amendment rights, I no longer have the capability to freely respond nor to exercise my rights related to these narratives.

As confirmed by the Supreme Court case *O'Connor-Ratcliff v. Garnier*, 601 U.S.__(2024), the deprivation of a citizen's First Amendment rights from a government-controlled social media account is not permitted under law. Therefore, in accordance with 42 U.S.C. § 1983, Rear Admiral James Waters can be held liable in an action at law, suit in equity, or other proper proceedings for redress.

Navy leadership has deliberately chosen not to correct their strategic blunders over the COVID-19 mandates, nor put any real efforts into ending First Amendment violations perpetrated across the Navy. These decisions, and the decision to continue to promote Rear Admiral Waters in spite of his abuses and usurpations, have only served to reinforce our senior leaders' disregard for the Religious Freedom Restoration Act and the First Amendment to the U.S. Constitution. These decisions have enabled Rear Admiral Waters to go on to commit additional violations of service member's First Amendment rights (as seen in Encl 1). Rear Admiral Waters has demonstrated a pattern of constitutional violations. Rather than deter these actions, Navy leadership has elected to support and promote him.

Navy leadership has also demonstrated a pattern of First Amendment violations, a disdain for the rights of service members, and contempt for the rulings of this Court. Despite what they say in Court, the evidence provided in Enclosures 1 and 2 demonstrate ongoing violations of the First Amendment by parties involved in the very action before this Court. This case is still ripe for action, because the harms to class members are still ongoing. Defendants and their agents are apparently not ready for a settlement because they are not done causing harm.

## Administrative Records

The repair of harms is not adequate because it only forces the Navy to correct records that fall within a very narrowly defined category. Significant harms were perpetrated that fall outside the definition detailed in the settlement. Service members were given poor evaluations, but many were not given "significant problems" marks that would elevate the evaluation to the category of adverse evaluation. These poor evaluations derailed careers by ensuring that sailors who were victims of these actions would not be selected for promotion. In addition to the moral injury inflicted on these sailors by Navy leadership, the sailors they targeted were denied promotion opportunities, potentially costing them hundreds of thousands of dollars-worth of additional retirement pay as a result of failing to obtain rightly-earned advancements in rank.

Service members who failed to be rightly promoted are not being granted special promotion boards to address the harms done. Correcting the record cannot reverse time and give these sailors a fair shot at promotion when their records were reviewed by promotion boards in 2022, 2023, and early 2024. Only by convening a special promotion board for impacted class members could these harms actually be repaired. There is, however, no provision in the settlement for granting special promotion boards to class members despite it being the proper way to provide prospective relief.

Other actions, such as being relieved from leadership positions, cannot be corrected or undone by a note in an administrative record. The sailors who were given menial labor outside their normal duties, who were verbally and psychologically abused, and who suffered severe mental health crises, will not be made whole because a note was made in their personnel file.

For class members who have already retired or otherwise left the Naval Service, correcting their record provides absolutely no tangible benefit, and cannot repair the harms done to them.

## Monetary Damages

Rigidly holding the class to the original complaint does an injustice to class members and the case should be expanded to include retrospective relief. The settlement does not compensate class members in any way whatsoever, despite many class members enduring significant financial hardship, medical complications, and mental health problems as a result of defendants' actions.

Many reservist class members were barred from performing their drill periods and lost a source of income that they had previously relied on before the mandate. A number of class members had bonuses wrongfully recouped. All appeals to Defendants and their agents to reverse these bonus recoupments have fallen on deaf ears. A significant number of class members have incurred separate legal fees for actions caused by the Defendants, but only Class Counsel is being offered legal fees as part of this settlement. Class members have suffered significant physical harms as a result of the stress caused by Defendants' actions including developing ulcers, struggling with mental health, thoughts of suicide, and other significant problems. This proposed settlement does nothing to make amends for the physical harm resulting from Defendants' actions.

In accordance with the Supreme Court's ruling in *Tanzin v. Tanvir*, 592 U.S._(2020), violations of the Religious Freedom Restoration Act permit litigants to seek monetary damages against federal officials, yet Class Counsel has not sought damages on behalf of class members. The value of the possible damages can be estimated using the 28 June 2024 judgement from a federal district court in the case of *Benton v BlueCross BlueShield of Tennessee*.

Tanja Benton was a Biostatistical research scientist working for BlueCross BlueShield of Tennessee when her company mandated that she received the COVID-19 injection. She filed a religious accommodation request which her company denied and ultimately fired her. At trial Benton was awarded over $687,000 by a jury of her peers for her company's violations of her religious freedom rights, $500,000 of which was for punitive damages. (Encl 5)

Based on punitive damages alone, the Navy lawsuit with over 4,000 class members could be worth a total of $2 Billion. If this seems like a great deal of money, bear in mind that this amount is just about 1% of the total amount of aid provided to Ukraine so far. It is likely that only significant punitive damages could make many class members whole from all the physical, mental, and financial harms inflicted by the Defendants. A fund must be established, paid for by the Defendants, that permits class members to make claims for damages incurred. This settlement, however, makes no attempt to make class members whole, nor does it provide monetary damages of any kind.

## Required Navy Actions

Under the terms of this settlement, the Navy is required to display a message on its website for one year that states, in part, that "The United States Navy supports diverse expressive activities, to include religious expression, and recognizes that through inclusion we are a better military and stronger nation for it." In light of their ongoing violations of the First Amendment of the U.S. Constitution (as detailed in Enclosure 1), and their actions both in rejecting my own diverse

Enclosure (1)

expressive activities and in excluding me from public discourse, each of these Navy assertions appear to be proven false.

The Navy has committed to posting a training presentation on its website for three years that teaches the importance of accommodating religious practices. However, service officials have not committed to requiring any Navy leaders to actually take this training. Even the individuals most responsible for violating class members' rights (including Rear Admiral Waters) are not required to take this training.

In light of the ongoing violations of the First Amendment, these gestures are meaningless at best, and at worst, they are permitting the Defendants to get away with further projecting false narratives.

**Fairness Hearing**

I will not be able to appear at the Fairness Hearing. Please consider this objection in its entirety in making a ruling both on this settlement and on the need to continue this case that has become so critical to Military Jurisprudence related to the First Amendment of the U.S. Constitution.

Date: <u>3 July 2024</u>
Robert A. Green Jr.

1 July 2024

From:   Commander Robert A. Green Jr., USN/1117
To:     Admiral James W. Kilby, USN
Via:    (1) Commander, United States Fleet Forces Command
        (2) Rear Admiral James P. Waters, USN
        (3) Rear Admiral Jeffrey Czerewko, USN

Subj:   COMPLAINT OF WRONG UNDER ARTICLE 1150, U.S. NAVY REGULATIONS,
        AGAINST REAR ADMIRAL JAMES P. WATERS

Ref:    (a) Article 1150, U.S. Navy Regulations
        (b) JAGINST 5800.7G, CH-2, Chapter III
        (c) SECNAVINST 5800.12C
        (d) 42 USC § 1983

Encl:   (1) Screenshot demonstrating that Respondent's government X[Twitter] account,
            @USNRecruiter, blocked Complainant's private X[Twitter] account, @RobGreen1010
        (2) U.S. Navy Biography, Rear Admiral James Waters III, Director, Military Personnel
            Plans and Policy Division, N13, Office of the Chief of Naval Operations
        (3) Complaint of Wrong Under Art 1150, U.S. Navy Regulations Against Vice Admiral
            Nowell for Unlawful Religious Discrimination, 23 Dec 2021

1.  This complaint of wrong under reference (a) is submitted in compliance with reference (b).

2.  Complainant Information:

    a.  Current Command: United States Fleet Forces Command

    b.  Command at time of alleged wrong: United States Fleet Forces Command

    c.  PRD: April, 2027

    d.  Current mailing address and e-mail address

    

    e.  Permanent home address and email address:

    

3.  Respondent Information:

    a.  Rank and Name: Rear Admiral James P. Waters, USN

    b.  Organization: Commander, Navy Recruiting Command

1

Enclosure (1)

4. Complaint:

    a.   Type of Alleged Wrong: Unlawful deprivation of Complainant's constitutional rights under the First Amendment of the Constitution, Violation of 42 U.S.C. § 1983, and Violation of Respondent's oath to the Constitution.

       (1)   Date alleged wrong discovered: 26 June, 2024

       (2)   Date written request for redress was submitted to complainant's commanding officer: N/A

       (3)   Date answer to request for redress was received: N/A

       (4)   Number of calendar days between alleged wrong and submission of complaint:  5 days

       (5)   Specific, detailed explanation of alleged wrong committed:

As one of the People and a citizen of the United States, I have a right to freely express my views, particularly ones that relate to the running of our government, its executive branch agencies, and its military departments. As Commander of Navy Recruiting Command, Rear Admiral James Waters maintains a public-facing X [Twitter] account. Under his authority, this account represents the official Navy position and narrative concerning recruiting for service in the United States Navy. After pointing out a number of programmatic failures related to recruiting and rebuilding trust with the American people, I was blocked from viewing or commenting on any post made by Rear Admiral James Waters' Navy Recruiting Command X [Twitter] Account. (Encl 1)

This action, taken under the color of law, and within the authority of an executive branch agency, deprived me of my right to free speech, which I retain as one of the People, and which is explicitly protected by the First Amendment of the Constitution. Rear Admiral James Waters violated the law as promulgated in 42 U.S.C. § 1983, deprived me of my inalienable rights guaranteed by the First Amendment, and, in so doing, violated his own Oath to the Constitution.

The @USNRecruiter X [Twitter] account is not Rear Admiral Waters' private account. Rather, it is an official Government account under Rear Admiral Waters' control with which he promulgates Navy narratives, inviting the public to interact with the page. I am a member of the public, and, because there can be no military exclusion for constitutional protections, I retain the right to free speech as one of the People. Through use of frequent messaging Rear Admiral Waters develops and implements a narrative to sway the opinion of the American people. As confirmed by the Supreme Court case *O'Connor-Ratcliff v. Garnier*, 601 U.S._(2024), the deprivation of a citizen's first amendment rights from a government-controlled social media account is not permitted under law. Therefore, in accordance with 42 U.S.C. § 1983, Rear Admiral James Waters can be held liable in an action at law, suit in equity, or other proper proceedings for redress.

Unfortunately, this is *not* an isolated incident for Rear Admiral James Waters. Before taking command of Navy Recruiting Command, Rear Admiral Waters was the Director, Military Personnel Plans and Policies (OPNAV N13) working directly for Vice Admiral John B. Nowell

2

(OPNAV N1). In this role, which Rear Admiral Waters held from April 2021 to March of 2024, he oversaw the OPNAV N131 Religious Accommodation Review Team. (Encl 2)

Under Rear Admiral Waters' watch, the OPNAV N131 Religious Accommodation Review Team developed and executed a Standard Operating Procedure (SOP) to issue a template denial to each Religious Accommodation Request submitted by Navy sailors without doing the individualized review required by law and military regulation. While Vice Admiral Nowell was the one providing final disapprovals on each religious accommodation requested, it was Rear Admiral Waters who was most closely involved in leading the Religious Accommodation Review Team, through whom he prepared each disapproval recommendation for Vice Admiral Nowell. (Encl 3)

The actions taken by Rear Admiral Waters and his team were so flagrant that they became the cornerstone evidence in the *SEALs v. Biden* federal lawsuit over religious liberty in the United States Navy. That evidence, detailed in Exhibit 1 of *SEALs v. Biden* Motion For Class Certification Document 134, demonstrated that the standardized religious accommodation requests and appeals passed through Rear Admiral Waters' office multiple times before ultimately being denied by both Vice Admiral Nowell and Admiral Gilday. The SOP provided to the court shows Rear Admiral Waters' personal office code (N13) listed approximately 10 separate times. His name, listed as "J. P. Waters," is also clearly shown in both Step 33 and Step 39 of the SOP, as demonstrated in court documents. (Encl 3)

The Court saw this matter similarly and issued a 3 Jan 2022 injunction against the Navy, precluding them from involuntarily separating 35 Navy Special Operators. In his ruling, Judge O'Connor stated that:

> "[W]e do not ask [service members] to lay aside their citizenry and give up the very rights they have sworn to protect…The COVID-19 pandemic provides the government no license to abrogate those freedoms. There is no COVID-19 exception to the First Amendment. There is no military exclusion from our Constitution." (*SEALs v. Biden*, Case 4:21-cv-01236-O, Doc 66)

Two months later, the Court saw fit to expand this case into a class action for all Navy service members who had filed religious accommodation requests and who had *not already* been involuntarily separated subsequent to the actions of Rear Admiral Waters, Vice Admiral Nowell, and Admiral Gilday. The Judge took the extraordinary measure of granting a class-wide preliminary injunction based on the substantial threat of irreparable harm being done by the Navy and a substantial likelihood that the Navy class-members case would succeed on the merits. The Judge also noted that the Navy's actions demonstrated "a pattern of disregard for RFRA [Religious Freedom Restoration Act] rights." (*SEALs v. Biden*, Case 4:21-cv-01236-O, Doc 140)

Rear Admiral James P. Waters contributed significantly to this pattern of disregard for the law, for service members' rights, and for the U.S. Constitution. His disregard for the First Amendment rights of Navy sailors directly contributed to the unlawful removal of hundreds of exemplary Navy sailors from service to the nation, exacerbating a national recruiting crisis and adding significant risk to our Navy's warfighting readiness.

Rear Admiral Waters' actions directly led to more than 4,000 Navy service members engaging in legal action against the Navy as part of this class action lawsuit. His actions, and the actions of Navy leadership, led to a ruling confirming the violations of law. This entire episode has been a national embarrassment for the Navy, has contributed to a significant loss of trust with the American people, and has compounded the military recruiting crisis. Rather than hold Rear Admiral Waters accountable for his actions, Navy leadership saw fit to promote him to a command position of sacred trust, a position which American families should be particularly interested in because it plays a significant role in building trust for the sake of recruiting.

Navy leadership has deliberately chosen not to correct their strategic blunders over the COVID-19 mandates or put any real efforts into ending First Amendment violations in the Navy. These decisions, and the decision to continue to promote Rear Admiral Waters in spite of his abuses and usurpations, have only served to reinforce our senior leaders' disregard for the Religious Freedom Restoration Act and the First Amendment to the Constitution. These decisions enabled Rear Admiral Waters to go on committing additional violations of service member's First Amendment rights (as seen in Encl 1). Rear Admiral Waters has demonstrated a pattern of constitutional violations, and rather than deter these actions, Navy leadership has elected to support and promote him.

Through his actions and his violation of my First Amendment rights, Rear Admiral Waters has harmed me personally, and caused irreparable injury. As ruled by the Supreme Court, the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." (Elrod v. Burns, 427 U.S. 347, 373; 1976)

(6) I respectfully request that the proper authority take the following actions required to redress this matter:

1. Immediately restore my access to review and comment on all government controlled social media including the Navy Recruiting Command X [Twitter] account.

2. Immediately cease all unlawful and discriminatory violations of the First Amendment of the Constitution.

3. Hold Rear Admiral Waters accountable for his actions, both for the sake of Justice and to curb his pattern of violating the constitutional rights of service members. Actions should include but are not limited to:

   a. Relieve Rear Admiral Waters from Command of Navy Recruiting Command.

   b. Detach Rear Admiral Waters for cause, and initiate show cause proceedings to determine if should be removed from the Naval Service.

4

Enclosure (1)

c. If removed from the Naval Service, initiate a Grade Determination to determine at what rank Rear Admiral Waters last served honorably, and at what rank he may be eligible for retirement income.

4. Route this complaint in full compliance with JAGINST 5800.7G 0305 (f) requiring the Respondent to write a response within ten (10) calendar days of receipt and "provide the complainant with a copy of the response".

5. Route this complaint in full compliance with JAGINST 5800.7G 0305 (g) requiring each intermediate endorser to forward the complaint with their endorsement within ten (10) calendar days and "provide the complainant with copies of their endorsements."

5. I CERTIFY THE ABOVE INFORMATION IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, AND THIS COMPLAINT IS SUBMITTED PER THE GUIDELINES AND PROCEDURAL REQUIREMENTS IN CHAPTER III, MANUAL OF THE JUDGE ADVOCATE GENERAL.

SIGNATURE OF COMPLAINANT: _____   Date: _1 July 2024_

SIGNATURE OF WITNESS: _____   Date: _1 July 2024_

## PRIVACY ACT STATEMENT

1. Authority. 10 U.S.C. §§ 938, 8013.

2. Principal purpose(s). Used by command authorities and the Office of the Judge Advocate General to review, take action, and make recommendations to the Secretary of the Navy on Article 138, UCMJ, and Article 1150, U.S. Navy Regulations, complaints of Wrong.

3. Routine uses. The Blanket Routine Uses that appear at the beginning of the Department of the Navy's compilation in the Federal Register apply.

4. Mandatory or voluntary disclosure and effect on individual not providing information. Providing requested information is voluntary; however, failure to do so may result in delayed command action and Secretarial review, or the inability to notify complainant of the Secretary's decision.

5

Enclosure (1)

Screenshot demonstrating that Respondent's government X[Twitter] account, @USNRecruiter, blocked Complainant's private X[Twitter] account, @RobGreen1010 (Identified on 26 June 2024)



Enclosure (2)

Enclosure (1)

**NAVY**

# Rear Admiral James Waters III

## Director, Military Personnel Plans and Policy Division, N13, Office of the Chief of Naval Operations



Rear Adm. James Waters is a native of Ellington, Connecticut, and graduated from the United States Naval Academy in 1989 with a degree in Systems Engineering. He completed graduate studies at Oxford University in 1991.

His sea tours include various division officer assignments on USS Henry M. Jackson (SSBN 730G), engineering officer on USS Philadelphia (SSN 690) and executive officer on USS Alabama (SSBN 731B). He commanded USS Virginia (SSN 774) and Submarine Squadron 4.

His staff assignments include operations officer at Submarine Squadron 2, engineer at Submarine Squadron 3, submarine executive officer detailer, deputy commander of Submarine Squadron 1, battle watch commander and chief of staff for U.S. Strategic Command's Director of Global Operations (J3), CNO Strategic Studies Group 35, and as deputy executive director for the Chief of Naval Personnel.

As a flag officer, his tours include director, Maritime Headquarters, U.S. Pacific Fleet, commander, Submarine Group 2 in Norfolk, Virginia and is currently serving as director, military personnel plans and policy, OPNAV (N13).

His decorations include the Defense Superior Service Medal, Legion of Merit, Meritorious Service Medal, Navy-Marine Corps Commendation Medal, Navy-Marine Corps Achievement Medal, and various other individual, unit, campaign and service awards. He is most proud of those awards that reflect the hard work and success of the many teams he has been privileged to serve.

Enclosure (3)

23 Dec 21

From:   Commander Robert A. Green Jr., USN/1117
To:     Chief of Naval Operations
Via:    (1) Commander, Maritime Expeditionary Security Squadron EIGHT
        (2) Vice Admiral John B. Nowell
        (3) Commander, United States Fleet Forces Command
        (4) Commander, Navy Expeditionary Combat Command
        (5) Commander, Maritime Expeditionary Security Group TWO

Subj:   COMPLAINT OF WRONG UNDER ARTICLE 1150, U.S. NAVY REGULATIONS

Ref:    (a) Article 1150, U.S. Navy Regulations
        (b) JAGINST 5800.7G, Chapter III
        (c) SECDEF Memo of 24 Aug 2021, Mandatory Coronavirus Disease 2019 Vaccination of
        Department of Defense Service Members
        (d) SECNAV WASHINGTDON DC 302126Z Aug 21(ALNAV 062/21)
        (e) CNO WASHINGTON DC 311913Z Aug 21 (NAVADMIN 190/21)
        (f) 42 U.S.C. 2000bb-1
        (g) DOD Instruction 1300.17, Religious Liberty in the Military Services
        (h) BUPERSINST 1730.11a, Standards and Procedures Governing the Accommodation of
        Religious Practices

Encl:   (1) DCNO (N1) Standard Operating Procedure (SOP), Religious Accommodations SOP Nov 2021
        (2) DCNO (N1) Disapproval of Religious Accommodation Through Waiver of Immunization
        Requirements, To CDR Robert A Green Jr., 23 Nov 21

1.  This complaint of wrong under reference (a) is submitted in compliance with reference (b).

2.  Complainant Information:

    a.  Current Command: Maritime Expeditionary Security Squadron EIGHT

    b.  Command at time of alleged wrong: Maritime Expeditionary Security Squadron EIGHT

    c.  PRD: August, 2022

    d.  Current mailing address and e-mail address:

        ███████████████
        robert.a.green1@navy.mil

    e.  Permanent home address and email address:

        ███████████████
        robert.a.green1@navy.mil

3.  Respondent Information:

    a.  Rank and Name: Vice Admiral John Nowell, USN

    b.  Organization: Deputy Chief of Naval Operations (N1)

Pls.' Mot. for Classwide Prelim. Inj. App. 0007
Enclosure (4)

1

4.  Complaint:

   a.  Type of Alleged Wrong: Denial of complainant's Constitutional rights under the First and Fifth
       Amendments through a violation of 42 U.S.C. 2000bb-1, DODINST 1300.17, and
       BUPERSINST 1730.11A.

      (1)  Date alleged wrong discovered: 29 November, 2021

      (2)  Date written request for redress was submitted to complainant's commanding officer:
           N/A

      (3)  Date answer to request for redress was received: N/A

      (4)  Number of calendar days between alleged wrong and submission of complaint: 24 days

      (5)  Specific, detailed explanation of alleged wrong committed:

       On 15 September 2021, I submitted a request to waive COVID-19 immunization requirements due
to my religious beliefs that preclude me from receiving a COVID-19 vaccination. I submitted an addendum
to that request on 19 October 2021. The Deputy Chief of Naval Operations (DCNO)(N1), Vice Admiral
Nowell, signed and dated a disapproval of my request on 23 November 2021.

       My religious accommodation request was processed by the OPNAV N131 Religious
Accommodation team. Enclosure (1) is the Standard Operating Procedure (hereafter DCNO(N1) SOP) that
Vice Admiral Nowell and his staff followed to handle the vast increase in COVID-19 related immunization
waiver requests resulting from the various military COVID-19 vaccine orders, references (c) through (e).
The DCNO(N1) SOP instructs OPNAV N131 staffers on the exact steps to take upon receipt of a religious
accommodation request including computer screenshots that demonstrate what lines of text to write and
what buttons to click. The DCNO(N1) SOP is broken down into 6 phases, complete with 50 total steps.
Many of the steps are fairly innocuous such as Phase 0 Step 2 which requires the staffer to "[r]eply all to the
[accommodation request] email and acknowledge receipt of the request with the following response:"
Several of the DCNO(N1) SOP steps, however, are not innocuous and provide clear evidence of violations
of law per 42 U.S.C. 2000bb-1, and regulations per DODINST 1300.17 and BUPERSINST 1730.11A. I
will demonstrate in this complaint that I have been wronged by Vice Admiral Nowell's violations of law
and regulations through his use of the DCNO(N1) SOP process in denying my request for religious
accommodation. Specifically, I will use the DCNO(N1) SOP to demonstrate 1) that the disapproval of my
religious accommodation request was pre-determined, 2) that the letter Vice Admiral Nowell sent
disapproving my religious accommodation request was a form template, and 3) that the case-by-case review
of my request required by law and regulation was a fraud designed to have the appearance of following
regulation but was actually conducted after my disapproval letter was written, all DCNO(N1)
documentation supporting my disapproval was packaged, and all intermediate routing steps of my religious
accommodation request was completed.

       The first 13 steps of the DCNO(N1) SOP are preparation steps in which the OPNAV N131 staffer
verifies that the request has all of the required documents and that those documents are moved to the
appropriate folder on the shared drive. If the religious accommodation request does have all of the proper
documents, then astonishingly, the very first processing step a staffer makes is to add the disapproval
template to the folder and to rename the disapproval template file to include the Last Name, First Name,
and Rank of the religious accommodation requester. This is done in Step 14.

                                                                                              2

                                              Pls.' Mot. for Classwide Prelim. Inj. App. 0008
                                                                                Enclosure (1)

The very next step, Step 15 on page 7, asks the staffer to open the disapproval template and update the "TO:" line with the requester's Name, Rank, and Designator. DCNO(N1) SOP Step 15 also shows a picture of the disapproval template complete with highlighted portions to indicate what must be replaced with the requester's information in order to prepare the disapproval for routing. There is no approval template mentioned in the SOP. In fact, there is no indication that an approval template has ever been written. I found it shocking that Vice Admiral Nowell permits a process so riddled with systemic religious discrimination that my request was not even reviewed before a disapproval letter was added, tailored to include my name, and only then was routed for review.

The next several steps of the DCNO(N1) SOP direct the OPNAV N131 staffer to prepare the religious accommodation package for routing within their document routing system. Step 20 lists who must review the religious accommodation request including BUMED (Rear Admiral Gillingham), Policy and Strategy (N0975), the Officer Plans and Policy Office, the Special Assistant for Legal Matters, N1 Fleet Master Chief, Total Force Manpower and Personnel Plans and Policy (N13 Front Office), and finally Manpower, Personnel, Training, and Education (N1 Front Office). I felt betrayed to know that my religious accommodation request went to these offices for review with a pre-prepared disapproval letter already included within the package.

Once routing/review is completed by the above offices, the OPNAV N131 staffer begins to package groups of religious accommodation requests together for final signature. This is done in Steps 30 through 32. Step 33 directs the OPNAV N131 staffer to update an internal memo from N13 to Vice Admiral Nowell. This internal memo asks Vice Admiral Nowell to "sign TABs A1 through A10, letters <u>disapproving</u> immunization waiver requests based on sincerely held religious beliefs." TAB B lists all supporting documents including the original religious accommodation request from the requester. It is clear from the DCNO(N1) SOP that all TAB A letters are the same disapproval template letters prepared by the OPNAV N131 staffers in Step 15 immediately upon receipt of the initial religious accommodation request.

Steps 35-38 list the <u>first time</u> an OPNAV N131 staffer is asked to actually read through the religious accommodation request and begin to list details from the request in a spreadsheet for Vice Admiral Nowell's "review". There is a note in ALL CAPS which emphasizes the importance of this review to building the façade that the religious accommodation requests are receiving a case-by-case examination. The note states: "THIS IS THE MOST CRITICAL STEP IN THE ENTIRE PROCESS AND THE CNO AND CNP ARE RELYING ON YOU TO ENSURE THAT YOUR REVIEW IS THOUROUGH AND ACCURATE. DO NOT RUSH THIS PROCESS AND ENSURE THAT YOU UNDERSTAND BEFORE MOVING FORWARD." This step is critical to disguising the systemic religious discrimination within the DCNO(N1) SOP process because according to reference (h) they are required to review each request "on a case-by-case basis, giving consideration to the full range of facts and circumstances relevant to the specific request." Reference (h) goes on to state that "[r]equests to accommodate religious practices should not be approved or denied simply because similar requests were approved or denied." The most significant problem with the DCNO(N1) SOP is that the case-by-case "review" does not happen until Step 35 in the process. By this point, my disapproval letter had already been written (Step 15), my religious accommodation request and related documents had already been returned from the various required reviewing offices (Steps 16-29), my disapproval and religious accommodation request had already been packaged within a batch of other similar requests (Steps 30-32), and, finally, an internal memo had already been drafted from DCNO (N13) to DCNO (N1) requesting that Vice Admiral Nowell disapprove my religious accommodation request (Step 33). All this occurred <u>prior</u> to the official "review" of my religious accommodation request required by law and regulation.

After my entire disapproval package was built and then prepared for Vice Admiral Nowell to sign, the DCNO(N1) SOP Steps 35-38 finally direct the OPNAV N131 staffer to read the entirety of my religious accommodation request package including my original request, the BUMED Memo, and the Legal Memo.

3

They are then directed to add any additional pertinent information from the package and place that information into a spreadsheet. This spreadsheet is evidence, not of a true case-by-case review of the religious accommodation request, because the result at this point in the DCNO(N1) SOP process, is a forgone conclusion. This spreadsheet is evidence instead of the systematic and deliberate attempts taken by Vice Admiral Nowell and his staff to appear compliant with regulatory requirements while actually depriving me of my rights to due process under the Fifth Amendment and my rights to freedom of religious expression under the First Amendment of the Constitution.

In addition to fraudulently attempting to appear legal and in compliance with regulation, it is plainly clear that the DCNO(N1) SOP process is also designed to streamline the subsequent (and pre-determined) disapproval upon receipt of a religious accommodation request. The DCNO(N1) SOP, especially Step 35, makes it clear that the secondary goal (after streamlining the pre-determined disapproval), is to protect Vice Admiral Nowell from potential legal blowback in the event he is asked for proof that a case-by-case review was completed for each religious accommodation request. Even though the DCNO(N1) SOP is blatantly defying requirements under both law and regulation, in my personal disapproval letter, enclosure (2), Vice Admiral Nowell made the statement that "[a]ll requests for accommodation of religious practices are assessed on a case-by-case basis." Vice Admiral Nowell goes on to state that "[i]n making this decision, I reviewed reference (g) [my religious accommodation request], including the endorsements from your chain of command, the local chaplain and the advice of Chief, Bureau of Medicine and Surgery in reference (h)." While the DCNO(N1) SOP cannot prove that Vice Admiral Nowell is lying in making this last statement, enclosure (1) does prove that any review of my religious accommodation request that Vice Admiral Nowell may or may not have conducted, had no bearing on my discriminatory and pre-determined disapproval which he signed on 23 November, 2021.

Vice Admiral Nowell and his staff are ignoring the requirements of both the Religious Freedom Restoration Act and DODINST 1300.17. The requirements under law, per reference (f), and the requirements of policy, per reference (g), oblige the Navy to accommodate my religious freedom unless 1) the military policy, practice, or duty is in furtherance of a compelling governmental interest, and 2) it is the least restrictive means of furthering that compelling governmental interest. Both references (f) and (g) also place the burden of proof for the compelling governmental interest and least restrictive means "upon the DoD Component and not upon the individual requesting the exemption." In denying my request, as demonstrated throughout both enclosures (1) and (2), Vice Admiral Nowell failed to prove a compelling governmental interest. In fact, Vice Admiral Nowell denied my request using a disapproval template and relied upon a BUMED Memo which was also a preprepared template. Neither the disapproval template used by Vice Admiral Nowell, nor the BUMED template used by Rear Admiral Gillingham, addressed in any way the overwhelming evidence I provided in my original religious accommodation request from 15 September 2021, and my addendum from 19 October 2021.

Vice Admiral Nowell has violated both law and regulation in utilizing the discriminatory process established in the DCNO(N1) SOP. This process attempts to circumvent established standards required by both law and regulation while attempting to hide unlawful actions behind an intentionally designed façade meant to wrongfully appear compliant with regulatory standards. The discriminatory process used by Vice Admiral Nowell to disapprove my religious accommodation request has caused me personal detriment by denying me my right to due process under the Fifth Amendment and my right to freedom of religious expression under the First Amendment of the Constitution. The process used by Vice Admiral Nowell to review religious accommodation requests must be brought into compliance with law and regulation immediately before more sailors are harmed.

I have deep concerns that this complaint, detailing the discriminatory disapproval process for religious accommodations in the Navy, will not be properly address and will instead be ignored and dismissed. Due to these concerns I intend to copy this communication to both the House and Senate Armed

4

Pls.' Mot. for Classwide Prelim. Inj. App. 0010

Enclosure (1)

Services Committees in the hope that this will ensure that all unlawful religious discrimination in the Navy is properly addressed. I also remind reviewers of this complaint that this is a protected communication under 10 U.S.C. 1034 and its implementing regulations.

      (6)   As redress I respectfully request that you immediately cease the unlawful and discriminatory review process for Navy Religious Accommodations and that you rescind my disapproval and all such disapprovals executed to date. I also request that you re-review each such religious accommodation request in accordance with law and regulation, including meeting the government's burden of proof as required by 42 U.S.C. 2000bb-1 and DODINST 1300.17.

5.   I CERTIFY THE ABOVE INFORMATION IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, AND THIS COMPLAINT IS SUBMITTED PER THE GUIDELINES AND PROCEDURAL REQUIREMENTS IN CHAPTER III, MANUAL OF THE JUDGE ADVOCATE GENERAL.

SIGNATURE OF COMPLAINANT: _____ Date: 12/23/21

SIGNATURE OF WITNESS: _____ Date: 23 dec 21

## PRIVACY ACT STATEMENT

1. Authority. 10 U.S.C. §§ 938, 8013.

2. Principal purpose(s). Used by command authorities and the Office of the Judge Advocate General to review, take action, and make recommendations to the Secretary of the Navy on Article 138, UCMJ, and Article 1150, U.S. Navy Regulations, complaints of Wrong.

3. Routine uses. The Blanket Routine Uses that appear at the beginning of the Department of the Navy's compilation in the Federal Register apply.

E

4. Mandatory or voluntary disclosure and effect on individual not providing information. Providing requested information is voluntary; however, failure to do so may result in delayed command action and Secretarial review, or the inability to notify complainant of the Secretary's decision.

Pls.' Mot. for Classwide Prelim. Inj. App. 0011

Enclosure (1)

## <u>Religious Accommodations</u>

**Background:** On 22 January 2014, SECDEF released a new DoDI (see TAB A) changing the way requests for religious accommodation would be routed and reviewed. Previously, Commanding Officers had the authority to approve or deny requests for religious accommodation. There was no consistency and some Commanding Officers did not significantly evaluate the request. The DoDI transferred the decision authority for all requests for religious accommodation that fall outside current uniform and grooming standards as well as Navy policy to CNP. In order to ensure each request is given due consideration, the DoDI instructs CNP to view each request in its entirety. Each request is evaluated on a case by case basis. For example, a request from an operational member to grow a beard may be denied, while the same request made by a Sailor on shore duty could be approved. Whatever the decision, it is only valid while the Sailor's circumstances remain the same. If the Sailor executes PCS orders or the nature of the Sailor's work changes significantly, a new request will have to be routed. The Sailor must abide by current Navy standards and policy while the request is being adjudicated. Reservists also fall under this instruction. They are required to submit their requests via the same channels as active duty.

# **Step-by-Step Instructions**

## Phase 0 (Steps 1 – 5)

1. N131 receives Religious Accommodation (RA) requests via a functional email distro, ALTN_Navy_Religious_Accommodations@navy.mil. The inbox only reliably receives email from NMCI email addresses, so submitters are encouraged to send an email without an encrypted endorsement first to ensure communication is received. Here is an example of an email requesting consideration of an RA:



Pls.' Mot. for Classwide Prelim. Inj. App. 0012

Enclosure (1)

2.   Reply all to the email and acknowledge receipt of the request with the following response:

> YN2,
>
> I have received your message and will begin routing the RA package for ████████████
>
> An individual response letter will be returned to the command once the member's accommodation has been adjudicated.
>
> Very Respectfully,

3.   Go to the Phase 0 - N131 Pre-Tracker folder on the shared drive and select the appropriate folder.



4.   Create a new folder with the following nomenclature: Last, First RANK.



5.   Drag and drop a copy of the request and the original email.



2 Pls.' Mot. for Classwide Prelim. Inj. App. 0013

Enclosure (1)

## Phase 1a (Steps 6 – 13)

Type text here

6. Open the RA Tracker located on the shared drive at N131 > N131D > 2N131D23 RA Tracker > Data tab. Add the new request to the bottom of the spreadsheet and ensure there are no duplicate entries. Fill in all vacant fields using the Original request as the authoritative data source



7. Move the file to the Phase 1 - Initial Intake\Phase 1 - Immunizations\00 Initial Drop Off folder.

BUPERS_ALTN_N45997_N13 (\\naeawnydfs101v.na3susea.nads.navy.mi\cs0225) (Z:) › N131 › N131D › 2N131D22 RA Adjudications › Phase 1 - Initial Intake › Phase 1 - Immunizations › 00 Initial Drop Off

| Name | Date modified | Type | Size |
|------|---------------|------|------|
| ▮▮MA2 | 11/2/2021 11:42 PM | File folder | |
| ▮▮LCDR | 11/1/2021 6:21 PM | File folder | |
| ▮▮AM2 | 11/2/2021 11:46 PM | File folder | |
| ▮▮FTC | 11/2/2021 11:47 PM | File folder | |

8. Open the original request to ensure the following are included IAW BUPERSINST 1730.11A and MILPERSMAN 1730-020: (Appeals only require member's request and command endorsement)
   a. Member's Request
   b. Command Endorsement (+Second Endorsement if not an O-6 Command)
   c. Chaplain Memo
   d. Chaplain Checklist
   e. Page 13 (Immunizations Only)

3  Pls.' Mot. for Classwide Prelim. Inj. App. 0014

Enclosure (1)

9.   The Member's request should look like this and addressed to the CO, or CNO or DCNO (N1)



10.  A Command Endorsement with a CO recommendation (ISIC required if not an O-6);



4  Pls.' Mot. for Classwide Prelim. Inj. App. 0015

Enclosure (1)

11. Chaplain Memorandum for the Record and interview checklist from the Chaplain who interviewed the Sailor about the request for religious accommodation.

5   Pls.' Mot. for Classwide Prelim. Inj. App. 0016

Enclosure (1)

12. Page 13 (Immunizations Only)

13. If all the documents are included and completed properly route to RA Adjudications\Phase 1 -
Initial Intake\Phase 1 - Immunizations\01 Ready For Processing

    a.   If any of those items are missing, send to 02 Packages Awaiting Documents so the
command can be contacted to inquire their whereabouts or the reasons for the error.

        i.   Contact Command via email and follow up with a phone call within 48 hours

        ii.   Ensure the folder is labeled with the missing documents

    b.   If there are multiple files send to 03 Folders That Need to Be Consolidated so the items
can be consolidated and routed to are missing, send to 02 Packages Awaiting Documents
so the command can be contacted to 01 Ready For Processing.

    c.   If the request is for a Sailor assigned to a joint command, move it to 04 Sailors Jointly
Assigned - Do Not Process

    d.   If the member sends an email withdrawing their request, add the email to their folder and
move to 05 Member Withdrawn - DO NOT PROCESS\

    e.   For any other issues, move to 06 Other Issues - LT Neuer Review

6 Pls.' Mot. for Classwide Prelim. Inj. App. 0017

Enclosure (1)

**OBJECTION TO SETTLEMENT AGREEMENT AND RELEASE OF ALL CLAIMS In U.S. Navy SEALs 1-26 v. Biden, 4:22-cv-01236-O (N.D. Tex.)**

**To: United States District Court for the Northern District of Texas**
**From: Robert A. Green Jr.**

Ref:   (a) 42 USC § 1983
       (b) Article 1150, U.S. Navy Regulations

Encl:
       (1) Complaint of Wrong Under Art 1150, U.S. Navy Regulations Against Rear Admiral
           Waters for Violation of the First Amendment and 42 USC § 1983, 1 Jul 2024
       (2) Screenshot demonstrating that Respondent's government X[Twitter] account,
           @USNRecruiter, blocked Complainant's private X[Twitter] account @RobGreen1010
       (3) U.S. Navy Biography, Rear Admiral James Waters III, Director, Military Personnel
           Plans and Policy Division, N13, Office of the Chief of Naval Operations
       (4) Complaint of Wrong Under Art 1150, U.S. Navy Regulations Against Vice Admiral
           Nowell for Unlawful Religious Discrimination, 23 Dec 2021
       (5) Judgment Order, *Benton v. BlueCross BlueShield of TN Inc*, Case 1:22-cv-00118, U.S.
           District Court, Eastern District of Tennessee, 28 June 2024

I, Robert A. Green Jr., one of the People as seen in the U.S. and all 50 American state constitutions, republic in form, *Sui Juris*, serve this objection to the Court, that it may also serve as notice to all parties involved.

In addition to being a member of We The People, I also hold the office of Commander, USN, and, by virtue of having filed a religious accommodation to the Navy mandate of the COVID-19 injection, I am a member of the Navy class as described in *U.S. Navy SEALs v. Biden*, 4:22-cv-01236-O (N.D. Tex).

As a class member, I object to the fairness, reasonableness, and adequacy of this settlement agreement for the following reasons:

**Accountability**

Nothing in this settlement holds Defendants or their agents accountable for their violations and abuses. This lack of accountability has directly contributed to ongoing violations of the First Amendment and continued harms to class members. One of Defendant's agents, Rear Admiral James P. Waters, was a direct party to the violations of the Religious Freedom Restoration Act that led to this Court granting a class-wide preliminary injunction. Rather than hold him accountable for his violations, Navy leadership elected to support and promote Rear Admiral Waters, reinforcing the apparent disdain that Navy leadership has for service members' First Amendment rights. Since being promoted to a new command position of considerable trust and prominence, Rear Admiral Waters has been party to additional abuses, and is now the subject of an internal Navy complaint for new violations of service member's First Amendment rights committed as recently as June 2024. (Encl 1)

As the Director, Military Personnel Plans and Policies (OPNAV N13) from April 2021 to March of 2024, Rear Admiral Waters, worked directly for Vice Admiral John B. Nowell (OPNAV N1). In this role, he oversaw the OPNAV N131 Religious Accommodation Review Team. Under

Rear Admiral Waters' watch, the OPNAV N131 Religious Accommodation Review Team developed and executed a Standard Operating Procedure (SOP) to issue a template denial to each religious accommodation request submitted by Navy sailors without doing the individualized review required by law and military regulation.

While Vice Admiral Nowell was the one signing final disapprovals on each religious accommodation requested, it was Rear Admiral Waters who was most closely involved in leading the Religious Accommodation Review Team, and through whom he prepared each disapproval recommendation for Vice Admiral Nowell. The evidence provided to this Court demonstrated that the standardized religious accommodation denials passed through Rear Admiral Waters' office multiple times before ultimately being finalized by both Vice Admiral Nowell and Admiral Gilday. The SOP provided to the court shows Rear Admiral Waters' personal office code (N13) listed approximately 10 separate times. His name, listed as "J. P. Waters," is also clearly shown in both Step 33 and Step 39 of the SOP, as demonstrated in the court documents. (Encl 4)

Rear Admiral James P. Waters contributed significantly to a pattern of disregard for the law, for service members' rights, and for the U.S. Constitution. This entire episode has been a national embarrassment for the Navy, contributed to a significant loss of trust with the American people, and compounded the military recruiting crisis. Rather than hold Rear Admiral Waters accountable for his actions, Navy leadership saw fit to promote him to a new command position. As the new Commander of Navy Recruiting Command, Rear Admiral Waters, holds a position of significant interest to American citizens due to its important role in building and maintaining trust for the sake of recruiting.

As Commander of Navy Recruiting Command, Rear Admiral James Waters maintains a public-facing X [Twitter] account. Under his authority, this account represents the official Navy position and narrative concerning recruiting Americans for service in the United States Navy. After pointing out a number of programmatic failures related to recruiting and rebuilding trust with the American people, I was blocked from viewing or commenting on any post made by Rear Admiral James Waters' Navy Recruiting Command X [Twitter] Account. (Encl 2)

As one of the People and a citizen of the United States, I have a right to freely express my views, particularly ones that relate to the running of our government, its executive branch agencies, and its military departments. The action to block me, taken under the color of law, and within the authority of an executive branch agency, deprived me of my right to free speech, which I retain as one of the People, and which is explicitly protected by the First Amendment of the Constitution. Rear Admiral James Waters violated the law as promulgated in 42 U.S.C. § 1983, deprived me of my inalienable Constitutional rights under the First Amendment, and, in so doing, violated his own oath to the Constitution.

The @USNRecruiter X [Twitter] account is not Rear Admiral Waters' private account. Rather, it is an official government account under his control with which he promulgates Navy narratives, and encourages the public to interact with the page. I am a member of the public, and, because there can be no military exclusion for constitutional protections, I retain the right to free speech as one of the People. Through use of frequent official messaging, Rear Admiral Waters develops and implements a narrative to sway the opinion of the American people. Due to the violation of my First Amendment rights, I no longer have the capability to freely respond nor to exercise my rights related to these narratives.

Enclosure (1)

As confirmed by the Supreme Court case *O'Connor-Ratcliff v. Garnier*, 601 U.S._(2024), the deprivation of a citizen's First Amendment rights from a government-controlled social media account is not permitted under law. Therefore, in accordance with 42 U.S.C. § 1983, Rear Admiral James Waters can be held liable in an action at law, suit in equity, or other proper proceedings for redress.

Navy leadership has deliberately chosen not to correct their strategic blunders over the COVID-19 mandates, nor put any real efforts into ending First Amendment violations perpetrated across the Navy. These decisions, and the decision to continue to promote Rear Admiral Waters in spite of his abuses and usurpations, have only served to reinforce our senior leaders' disregard for the Religious Freedom Restoration Act and the First Amendment to the U.S. Constitution. These decisions have enabled Rear Admiral Waters to go on to commit additional violations of service member's First Amendment rights (as seen in Encl 1). Rear Admiral Waters has demonstrated a pattern of constitutional violations. Rather than deter these actions, Navy leadership has elected to support and promote him.

Navy leadership has also demonstrated a pattern of First Amendment violations, a disdain for the rights of service members, and contempt for the rulings of this Court. Despite what they say in Court, the evidence provided in Enclosures 1 and 2 demonstrate ongoing violations of the First Amendment by parties involved in the very action before this Court. This case is still ripe for action, because the harms to class members are still ongoing. Defendants and their agents are apparently not ready for a settlement because they are not done causing harm.

**Administrative Records**

The repair of harms is not adequate because it only forces the Navy to correct records that fall within a very narrowly defined category. Significant harms were perpetrated that fall outside the definition detailed in the settlement. Service members were given poor evaluations, but many were not given "significant problems" marks that would elevate the evaluation to the category of adverse evaluation. These poor evaluations derailed careers by ensuring that sailors who were victims of these actions would not be selected for promotion. In addition to the moral injury inflicted on these sailors by Navy leadership, the sailors they targeted were denied promotion opportunities, potentially costing them hundreds of thousands of dollars-worth of additional retirement pay as a result of failing to obtain rightly-earned advancements in rank.

Service members who failed to be rightly promoted are not being granted special promotion boards to address the harms done. Correcting the record cannot reverse time and give these sailors a fair shot at promotion when their records were reviewed by promotion boards in 2022, 2023, and early 2024. Only by convening a special promotion board for impacted class members could these harms actually be repaired. There is, however, no provision in the settlement for granting special promotion boards to class members despite it being the proper way to provide prospective relief.

Other actions, such as being relieved from leadership positions, cannot be corrected or undone by a note in an administrative record. The sailors who were given menial labor outside their normal duties, who were verbally and psychologically abused, and who suffered severe mental health crises, will not be made whole because a note was made in their personnel file.

For class members who have already retired or otherwise left the Naval Service, correcting their record provides absolutely no tangible benefit, and cannot repair the harms done to them.

**Monetary Damages**

Rigidly holding the class to the original complaint does an injustice to class members and the case should be expanded to include retrospective relief. The settlement does not compensate class members in any way whatsoever, despite many class members enduring significant financial hardship, medical complications, and mental health problems as a result of defendants' actions.

Many reservist class members were barred from performing their drill periods and lost a source of income that they had previously relied on before the mandate. A number of class members had bonuses wrongfully recouped. All appeals to Defendants and their agents to reverse these bonus recoupments have fallen on deaf ears. A significant number of class members have incurred separate legal fees for actions caused by the Defendants, but only Class Counsel is being offered legal fees as part of this settlement. Class members have suffered significant physical harms as a result of the stress caused by Defendants' actions including developing ulcers, struggling with mental health, thoughts of suicide, and other significant problems. This proposed settlement does nothing to make amends for the physical harm resulting from Defendants' actions.

In accordance with the Supreme Court's ruling in *Tanzin v. Tanvir*, 592 U.S. (2020), violations of the Religious Freedom Restoration Act permit litigants to seek monetary damages against federal officials, yet Class Counsel has not sought damages on behalf of class members. The value of the possible damages can be estimated using the 28 June 2024 judgement from a federal district court in the case of *Benton v BlueCross BlueShield of Tennessee*.

Tanja Benton was a Biostatistical research scientist working for BlueCross BlueShield of Tennessee when her company mandated that she received the COVID-19 injection. She filed a religious accommodation request which her company denied and ultimately fired her. At trial Benton was awarded over $687,000 by a jury of her peers for her company's violations of her religious freedom rights, $500,000 of which was for punitive damages. (Encl 5)

Based on punitive damages alone, the Navy lawsuit with over 4,000 class members could be worth a total of $2 Billion. If this seems like a great deal of money, bear in mind that this amount is just about 1% of the total amount of aid provided to Ukraine so far. It is likely that only significant punitive damages could make many class members whole from all the physical, mental, and financial harms inflicted by the Defendants. A fund must be established, paid for by the Defendants, that permits class members to make claims for damages incurred. This settlement, however, makes no attempt to make class members whole, nor does it provide monetary damages of any kind.

**Required Navy Actions**

Under the terms of this settlement, the Navy is required to display a message on its website for one year that states, in part, that "The United States Navy supports diverse expressive activities, to include religious expression, and recognizes that through inclusion we are a better military and stronger nation for it." In light of their ongoing violations of the First Amendment of the U.S. Constitution (as detailed in Enclosure 1), and their actions both in rejecting my own diverse

Enclosure (1)

expressive activities and in excluding me from public discourse, each of these Navy assertions appear to be proven false.

The Navy has committed to posting a training presentation on its website for three years that teaches the importance of accommodating religious practices. However, service officials have not committed to requiring any Navy leaders to actually take this training. Even the individuals most responsible for violating class members' rights (including Rear Admiral Waters) are not required to take this training.

In light of the ongoing violations of the First Amendment, these gestures are meaningless at best, and at worst, they are permitting the Defendants to get away with further projecting false narratives.

**Fairness Hearing**

I will not be able to appear at the Fairness Hearing. Please consider this objection in its entirety in making a ruling both on this settlement and on the need to continue this case that has become so critical to Military Jurisprudence related to the First Amendment of the U.S. Constitution.

Date: <u>3 July 2024</u>

Robert A. Green Jr.

1 July 2024

From:   Commander Robert A. Green Jr., USN/1117
To:     Admiral James W. Kilby, USN
Via:    (1) Commander, United States Fleet Forces Command
        (2) Rear Admiral James P. Waters, USN
        (3) Rear Admiral Jeffrey Czerewko, USN

Subj:   COMPLAINT OF WRONG UNDER ARTICLE 1150, U.S. NAVY REGULATIONS,
        AGAINST REAR ADMIRAL JAMES P. WATERS

Ref:    (a) Article 1150, U.S. Navy Regulations
        (b) JAGINST 5800.7G, CH-2, Chapter III
        (c) SECNAVINST 5800.12C
        (d) 42 USC § 1983

Encl:   (1) Screenshot demonstrating that Respondent's government X[Twitter] account,
            @USNRecruiter, blocked Complainant's private X[Twitter] account, @RobGreen1010
        (2) U.S. Navy Biography, Rear Admiral James Waters III, Director, Military Personnel
            Plans and Policy Division, N13, Office of the Chief of Naval Operations
        (3) Complaint of Wrong Under Art 1150, U.S. Navy Regulations Against Vice Admiral
            Nowell for Unlawful Religious Discrimination, 23 Dec 2021

1.  This complaint of wrong under reference (a) is submitted in compliance with reference (b).

2.  Complainant Information:

    a.  Current Command: United States Fleet Forces Command

    b.  Command at time of alleged wrong: United States Fleet Forces Command

    c.  PRD: April, 2027

    d.  Current mailing address and e-mail address

    

    e.  Permanent home address and email address:

    

3.  Respondent Information:

    a.  Rank and Name: Rear Admiral James P. Waters, USN

    b.  Organization: Commander, Navy Recruiting Command

1

4. Complaint:

    a. Type of Alleged Wrong: Unlawful deprivation of Complainant's constitutional rights under the First Amendment of the Constitution, Violation of 42 U.S.C. § 1983, and Violation of Respondent's oath to the Constitution.

        (1) Date alleged wrong discovered: 26 June, 2024

        (2) Date written request for redress was submitted to complainant's commanding officer: N/A

        (3) Date answer to request for redress was received: N/A

        (4) Number of calendar days between alleged wrong and submission of complaint: 5 days

        (5) Specific, detailed explanation of alleged wrong committed:

As one of the People and a citizen of the United States, I have a right to freely express my views, particularly ones that relate to the running of our government, its executive branch agencies, and its military departments. As Commander of Navy Recruiting Command, Rear Admiral James Waters maintains a public-facing X [Twitter] account. Under his authority, this account represents the official Navy position and narrative concerning recruiting for service in the United States Navy. After pointing out a number of programmatic failures related to recruiting and rebuilding trust with the American people, I was blocked from viewing or commenting on any post made by Rear Admiral James Waters' Navy Recruiting Command X [Twitter] Account. (Encl 1)

This action, taken under the color of law, and within the authority of an executive branch agency, deprived me of my right to free speech, which I retain as one of the People, and which is explicitly protected by the First Amendment of the Constitution. Rear Admiral James Waters violated the law as promulgated in 42 U.S.C. § 1983, deprived me of my inalienable rights guaranteed by the First Amendment, and, in so doing, violated his own Oath to the Constitution.

The @USNRecruiter X [Twitter] account is not Rear Admiral Waters' private account. Rather, it is an official Government account under Rear Admiral Waters' control with which he promulgates Navy narratives, inviting the public to interact with the page. I am a member of the public, and, because there can be no military exclusion for constitutional protections, I retain the right to free speech as one of the People. Through use of frequent messaging Rear Admiral Waters develops and implements a narrative to sway the opinion of the American people. As confirmed by the Supreme Court case *O'Connor-Ratcliff v. Garnier*, 601 U.S. (2024), the deprivation of a citizen's first amendment rights from a government-controlled social media account is not permitted under law. Therefore, in accordance with 42 U.S.C. § 1983, Rear Admiral James Waters can be held liable in an action at law, suit in equity, or other proper proceedings for redress.

Unfortunately, this is *not* an isolated incident for Rear Admiral James Waters. Before taking command of Navy Recruiting Command, Rear Admiral Waters was the Director, Military Personnel Plans and Policies (OPNAV N13) working directly for Vice Admiral John B. Nowell

(OPNAV N1). In this role, which Rear Admiral Waters held from April 2021 to March of 2022, he oversaw the OPNAV N131 Religious Accommodation Review Team. (Encl 2)

Under Rear Admiral Waters' watch, the OPNAV N131 Religious Accommodation Review Team developed and executed a Standard Operating Procedure (SOP) to issue a template denial to each Religious Accommodation Request submitted by Navy sailors without doing the individualized review required by law and military regulation. While Vice Admiral Nowell was the one providing final disapprovals on each religious accommodation requested, it was Rear Admiral Waters who was most closely involved in leading the Religious Accommodation Review Team, through whom he prepared each disapproval recommendation for Vice Admiral Nowell. (Encl 3)

The actions taken by Rear Admiral Waters and his team were so flagrant that they became the cornerstone evidence in the *SEALs v. Biden* federal lawsuit over religious liberty in the United States Navy. That evidence, detailed in Exhibit 1 of *SEALs v. Biden* Motion For Class Certification Document 134, demonstrated that the standardized religious accommodation requests and appeals passed through Rear Admiral Waters' office multiple times before ultimately being denied by both Vice Admiral Nowell and Admiral Gilday. The SOP provided to the court shows Rear Admiral Waters' personal office code (N13) listed approximately 10 separate times. His name, listed as "J. P. Waters," is also clearly shown in both Step 33 and Step 39 of the SOP, as demonstrated in court documents. (Encl 3)

The Court saw this matter similarly and issued a 3 Jan 2022 injunction against the Navy, precluding them from involuntarily separating 35 Navy Special Operators. In his ruling, Judge O'Connor stated that:

> "[W]e do not ask [service members] to lay aside their citizenry and give up the very rights they have sworn to protect…The COVID-19 pandemic provides the government no license to abrogate those freedoms. There is no COVID-19 exception to the First Amendment. There is no military exclusion from our Constitution." (*SEALs v. Biden*, Case 4:21-cv-01236-O, Doc 66)

Two months later, the Court saw fit to expand this case into a class action for all Navy service members who had filed religious accommodation requests and who had *not already* been involuntarily separated subsequent to the actions of Rear Admiral Waters, Vice Admiral Nowell, and Admiral Gilday. The Judge took the extraordinary measure of granting a class-wide preliminary injunction based on the substantial threat of irreparable harm being done by the Navy and a substantial likelihood that the Navy class-members case would succeed on the merits. The Judge also noted that the Navy's actions demonstrated "a pattern of disregard for RFRA [Religious Freedom Restoration Act] rights." (*SEALs v. Biden*, Case 4:21-cv-01236-O, Doc 140)

Rear Admiral James P. Waters contributed significantly to this pattern of disregard for the law, for service members' rights, and for the U.S. Constitution. His disregard for the First Amendment rights of Navy sailors directly contributed to the unlawful removal of hundreds of exemplary Navy sailors from service to the nation, exacerbating a national recruiting crisis and adding significant risk to our Navy's warfighting readiness.

3

Enclosure (1)

Rear Admiral Waters' actions directly led to more than 4,000 Navy service members engaging in legal action against the Navy as part of this class action lawsuit. His actions, and the actions of Navy leadership, led to a ruling confirming the violations of law. This entire episode has been a national embarrassment for the Navy, has contributed to a significant loss of trust with the American people, and has compounded the military recruiting crisis. Rather than hold Rear Admiral Waters accountable for his actions, Navy leadership saw fit to promote him to a command position of sacred trust, a position which American families should be particularly interested in because it plays a significant role in building trust for the sake of recruiting.

Navy leadership has deliberately chosen not to correct their strategic blunders over the COVID-19 mandates or put any real efforts into ending First Amendment violations in the Navy. These decisions, and the decision to continue to promote Rear Admiral Waters in spite of his abuses and usurpations, have only served to reinforce our senior leaders' disregard for the Religious Freedom Restoration Act and the First Amendment to the Constitution. These decisions enabled Rear Admiral Waters to go on committing additional violations of service member's First Amendment rights (as seen in Encl 1). Rear Admiral Waters has demonstrated a pattern of constitutional violations, and rather than deter these actions, Navy leadership has elected to support and promote him.

Through his actions and his violation of my First Amendment rights, Rear Admiral Waters has harmed me personally, and caused irreparable injury. As ruled by the Supreme Court, the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." (Elrod v. Burns, 427 U.S. 347, 373; 1976)

    (6)  I respectfully request that the proper authority take the following actions required to redress this matter:

        1.  Immediately restore my access to review and comment on all government controlled social media including the Navy Recruiting Command X [Twitter] account.

        2.  Immediately cease all unlawful and discriminatory violations of the First Amendment of the Constitution.

        3.  Hold Rear Admiral Waters accountable for his actions, both for the sake of Justice and to curb his pattern of violating the constitutional rights of service members. Actions should include but are not limited to:

            a.  Relieve Rear Admiral Waters from Command of Navy Recruiting Command.

            b.  Detach Rear Admiral Waters for cause, and initiate show cause proceedings to determine if should be removed from the Naval Service.

    c. If removed from the Naval Service, initiate a Grade
      Determination to determine at what rank Rear Admiral
      Waters last served honorably, and at what rank he may be
      eligible for retirement income.

4. Route this complaint in full compliance with JAGINST 5800.7G
    0305 (f) requiring the Respondent to write a response within ten (10)
    calendar days of receipt and "provide the complainant with a copy of
    the response".

5. Route this complaint in full compliance with JAGINST 5800.7G
    0305 (g) requiring each intermediate endorser to forward the
    complaint with their endorsement within ten (10) calendar days and
    "provide the complainant with copies of their endorsements."

5. I CERTIFY THE ABOVE INFORMATION IS TRUE AND CORRECT TO THE BEST OF
MY KNOWLEDGE, AND THIS COMPLAINT IS SUBMITTED PER THE GUIDELINES
AND PROCEDURAL REQUIREMENTS IN CHAPTER III, MANUAL OF THE JUDGE
ADVOCATE GENERAL.

SIGNATURE OF COMPLAINANT: _____ Date: _1 July 2024_

SIGNATURE OF WITNESS: _____ Date: _1 July 2024_

## PRIVACY ACT STATEMENT

1. Authority. 10 U.S.C. §§ 938, 8013.

2. Principal purpose(s). Used by command authorities and the Office of the Judge Advocate
General to review, take action, and make recommendations to the Secretary of the Navy on Article
138, UCMJ, and Article 1150, U.S. Navy Regulations, complaints of Wrong.

3. Routine uses. The Blanket Routine Uses that appear at the beginning of the Department of the
Navy's compilation in the Federal Register apply.

4. Mandatory or voluntary disclosure and effect on individual not providing information. Providing
requested information is voluntary; however, failure to do so may result in delayed command
action and Secretarial review, or the inability to notify complainant of the Secretary's decision.

Screenshot demonstrating that Respondent's government X[Twitter] account, @USNRecruiter, blocked Complainant's private X[Twitter] account, @RobGreen1010 (Identified on 26 June 2024)



Enclosure (2)

Enclosure (1)

# Rear Admiral James Waters III

## Director, Military Personnel Plans and Policy Division, N13, Office of the Chief of Naval Operations



Rear Adm. James Waters is a native of Ellington, Connecticut, and graduated from the United States Naval Academy in 1989 with a degree in Systems Engineering. He completed graduate studies at Oxford University in 1991.

His sea tours include various division officer assignments on USS Henry M. Jackson (SSBN 730G), engineering officer on USS Philadelphia (SSN 690) and executive officer on USS Alabama (SSBN 731B). He commanded USS Virginia (SSN 774) and Submarine Squadron 4.

His staff assignments include operations officer at Submarine Squadron 2, engineer at Submarine Squadron 3, submarine executive officer detailer, deputy commander of Submarine Squadron 1, battle watch commander and chief of staff for U.S. Strategic Command's Director of Global Operations (J3), CNO Strategic Studies Group 35, and as deputy executive director for the Chief of Naval Personnel.

As a flag officer, his tours include director, Maritime Headquarters, U.S. Pacific Fleet, commander, Submarine Group 2 in Norfolk, Virginia and is currently serving as director, military personnel plans and policy, OPNAV (N13).

His decorations include the Defense Superior Service Medal, Legion of Merit, Meritorious Service Medal, Navy-Marine Corps Commendation Medal, Navy-Marine Corps Achievement Medal, and various other individual, unit, campaign and service awards. He is most proud of those awards that reflect the hard work and success of the many teams he has been privileged to serve.

Enclosure (3)

Enclosure (1)

23 Dec 21

From:   Commander Robert A. Green Jr., USN/1117
To:     Chief of Naval Operations
Via:    (1) Commander, Maritime Expeditionary Security Squadron EIGHT
        (2) Vice Admiral John B. Nowell
        (3) Commander, United States Fleet Forces Command
        (4) Commander, Navy Expeditionary Combat Command
        (5) Commander, Maritime Expeditionary Security Group TWO

Subj:   COMPLAINT OF WRONG UNDER ARTICLE 1150, U.S. NAVY REGULATIONS

Ref:    (a) Article 1150, U.S. Navy Regulations
        (b) JAGINST 5800.7G, Chapter III
        (c) SECDEF Memo of 24 Aug 2021, Mandatory Coronavirus Disease 2019 Vaccination of
        Department of Defense Service Members
        (d) SECNAV WASHINGTDON DC 302126Z Aug 21(ALNAV 062/21)
        (e) CNO WASHINGTON DC 311913Z Aug 21 (NAVADMIN 190/21)
        (f) 42 U.S.C. 2000bb-1
        (g) DOD Instruction 1300.17, Religious Liberty in the Military Services
        (h) BUPERSINST 1730.11a, Standards and Procedures Governing the Accommodation of
        Religious Practices

Encl:   (1) DCNO (N1) Standard Operating Procedure (SOP), Religious Accommodations SOP Nov 2021
        (2) DCNO (N1) Disapproval of Religious Accommodation Through Waiver of Immunization
        Requirements, To CDR Robert A Green Jr., 23 Nov 21

1.  This complaint of wrong under reference (a) is submitted in compliance with reference (b).

2.  Complainant Information:

    a.  Current Command: Maritime Expeditionary Security Squadron EIGHT

    b.  Command at time of alleged wrong: Maritime Expeditionary Security Squadron EIGHT

    c.  PRD: August, 2022

    d.  Current mailing address and e-mail address:

        ███████████████
        robert.a.green1@navy.mil

    e.  Permanent home address and email address:

        ███████████████
        robert.a.green1@navy.mil

3.  Respondent Information:

    a.  Rank and Name: Vice Admiral John Nowell, USN

    b.  Organization: Deputy Chief of Naval Operations (N1)

Pls.' Mot. for Classwide Prelim. Inj. App. 0007    1
Enclosure (4)

4.  Complaint:

    a.  Type of Alleged Wrong: Denial of complainant's Constitutional rights under the First and Fifth Amendments through a violation of 42 U.S.C. 2000bb-1, DODINST 1300.17, and BUPERSINST 1730.11A.

       (1)  Date alleged wrong discovered: 29 November, 2021

       (2)  Date written request for redress was submitted to complainant's commanding officer: N/A

       (3)  Date answer to request for redress was received: N/A

       (4)  Number of calendar days between alleged wrong and submission of complaint: 24 days

       (5)  Specific, detailed explanation of alleged wrong committed:

On 15 September 2021, I submitted a request to waive COVID-19 immunization requirements due to my religious beliefs that preclude me from receiving a COVID-19 vaccination. I submitted an addendum to that request on 19 October 2021. The Deputy Chief of Naval Operations (DCNO)(N1), Vice Admiral Nowell, signed and dated a disapproval of my request on 23 November 2021.

My religious accommodation request was processed by the OPNAV N131 Religious Accommodation team. Enclosure (1) is the Standard Operating Procedure (hereafter DCNO(N1) SOP) that Vice Admiral Nowell and his staff followed to handle the vast increase in COVID-19 related immunization waiver requests resulting from the various military COVID-19 vaccine orders, references (c) through (e). The DCNO(N1) SOP instructs OPNAV N131 staffers on the exact steps to take upon receipt of a religious accommodation request including computer screenshots that demonstrate what lines of text to write and what buttons to click. The DCNO(N1) SOP is broken down into 6 phases, complete with 50 total steps. Many of the steps are fairly innocuous such as Phase 0 Step 2 which requires the staffer to "[r]eply all to the [accommodation request] email and acknowledge receipt of the request with the following response:" Several of the DCNO(N1) SOP steps, however, are not innocuous and provide clear evidence of violations of law per 42 U.S.C. 2000bb-1, and regulations per DODINST 1300.17 and BUPERSINST 1730.11A. I will demonstrate in this complaint that I have been wronged by Vice Admiral Nowell's violations of law and regulations through his use of the DCNO(N1) SOP process in denying my request for religious accommodation. Specifically, I will use the DCNO(N1) SOP to demonstrate 1) that the disapproval of my religious accommodation request was pre-determined, 2) that the letter Vice Admiral Nowell sent disapproving my religious accommodation request was a form template, and 3) that the case-by-case review of my request required by law and regulation was a fraud designed to have the appearance of following regulation but was actually conducted after my disapproval letter was written, all DCNO(N1) documentation supporting my disapproval was packaged, and all intermediate routing steps of my religious accommodation request was completed.

The first 13 steps of the DCNO(N1) SOP are preparation steps in which the OPNAV N131 staffer verifies that the request has all of the required documents and that those documents are moved to the appropriate folder on the shared drive. If the religious accommodation request does have all of the proper documents, then astonishingly, the very first processing step a staffer makes is to add the disapproval template to the folder and to rename the disapproval template file to include the Last Name, First Name, and Rank of the religious accommodation requester. This is done in Step 14.

2

The very next step, Step 15 on page 7, asks the staffer to open the disapproval template and update the "TO:" line with the requester's Name, Rank, and Designator. DCNO(N1) SOP Step 15 also shows a picture of the disapproval template complete with highlighted portions to indicate what must be replaced with the requester's information in order to prepare the disapproval for routing. There is no approval template mentioned in the SOP. In fact, there is no indication that an approval template has ever been written. I found it shocking that Vice Admiral Nowell permits a process so riddled with systemic religious discrimination that my request was not even reviewed before a disapproval letter was added, tailored to include my name, and only then was routed for review.

The next several steps of the DCNO(N1) SOP direct the OPNAV N131 staffer to prepare the religious accommodation package for routing within their document routing system. Step 20 lists who must review the religious accommodation request including BUMED (Rear Admiral Gillingham), Policy and Strategy (N0975), the Officer Plans and Policy Office, the Special Assistant for Legal Matters, N1 Fleet Master Chief, Total Force Manpower and Personnel Plans and Policy (N13 Front Office), and finally Manpower, Personnel, Training, and Education (N1 Front Office). I felt betrayed to know that my religious accommodation request went to these offices for review with a pre-prepared disapproval letter already included within the package.

Once routing/review is completed by the above offices, the OPNAV N131 staffer begins to package groups of religious accommodation requests together for final signature. This is done in Steps 30 through 32. Step 33 directs the OPNAV N131 staffer to update an internal memo from N13 to Vice Admiral Nowell. This internal memo asks Vice Admiral Nowell to "sign TABs A1 through A10, letters disapproving immunization waiver requests based on sincerely held religious beliefs." TAB B lists all supporting documents including the original religious accommodation request from the requester. It is clear from the DCNO(N1) SOP that all TAB A letters are the same disapproval template letters prepared by the OPNAV N131 staffers in Step 15 immediately upon receipt of the initial religious accommodation request.

Steps 35-38 list the first time an OPNAV N131 staffer is asked to actually read through the religious accommodation request and begin to list details from the request in a spreadsheet for Vice Admiral Nowell's "review". There is a note in ALL CAPS which emphasizes the importance of this review to building the façade that the religious accommodation requests are receiving a case-by-case examination. The note states: "THIS IS THE MOST CRITICAL STEP IN THE ENTIRE PROCESS AND THE CNO AND CNP ARE RELYING ON YOU TO ENSURE THAT YOUR REVIEW IS THOUROUGH AND ACCURATE. DO NOT RUSH THIS PROCESS AND ENSURE THAT YOU UNDERSTAND BEFORE MOVING FORWARD." This step is critical to disguising the systemic religious discrimination within the DCNO(N1) SOP process because according to reference (h) they are required to review each request "on a case-by-case basis, giving consideration to the full range of facts and circumstances relevant to the specific request." Reference (h) goes on to state that "[r]equests to accommodate religious practices should not be approved or denied simply because similar requests were approved or denied." The most significant problem with the DCNO(N1) SOP is that the case-by-case "review" does not happen until Step 35 in the process. By this point, my disapproval letter had already been written (Step 15), my religious accommodation request and related documents had already been returned from the various required reviewing offices (Steps 16-29), my disapproval and religious accommodation request had already been packaged within a batch of other similar requests (Steps 30-32) and, finally, an internal memo had already been drafted from DCNO (N13) to DCNO (N1) requesting that Vice Admiral Nowell disapprove my religious accommodation request (Step 33). All this occurred prior to the official "review" of my religious accommodation request required by law and regulation.

After my entire disapproval package was built and then prepared for Vice Admiral Nowell to sign, the DCNO(N1) SOP Steps 35-38 finally direct the OPNAV N131 staffer to read the entirety of my religious accommodation request package including my original request, the BUMED Memo, and the Legal Memo.

3

They are then directed to add any additional pertinent information from the package and place that information into a spreadsheet. This spreadsheet is evidence, not of a true case-by-case review of the religious accommodation request, because the result at this point in the DCNO(N1) SOP process, is a forgone conclusion. This spreadsheet is evidence instead of the systematic and deliberate attempts taken by Vice Admiral Nowell and his staff to appear compliant with regulatory requirements while actually depriving me of my rights to due process under the Fifth Amendment and my rights to freedom of religious expression under the First Amendment of the Constitution.

In addition to fraudulently attempting to appear legal and in compliance with regulation, it is plainly clear that the DCNO(N1) SOP process is also designed to streamline the subsequent (and pre-determined) disapproval upon receipt of a religious accommodation request. The DCNO(N1) SOP, especially Step 35, makes it clear that the secondary goal (after streamlining the pre-determined disapproval), is to protect Vice Admiral Nowell from potential legal blowback in the event he is asked for proof that a case-by-case review was completed for each religious accommodation request. Even though the DCNO(N1) SOP is blatantly defying requirements under both law and regulation, in my personal disapproval letter, enclosure (2), Vice Admiral Nowell made the statement that "[a]ll requests for accommodation of religious practices are assessed on a case-by-case basis." Vice Admiral Nowell goes on to state that "[i]n making this decision, I reviewed reference (g) [my religious accommodation request], including the endorsements from your chain of command, the local chaplain and the advice of Chief, Bureau of Medicine and Surgery in reference (h)." While the DCNO(N1) SOP cannot prove that Vice Admiral Nowell is lying in making this last statement, enclosure (1) does prove that any review of my religious accommodation request that Vice Admiral Nowell may or may not have conducted, had no bearing on my discriminatory and pre-determined disapproval which he signed on 23 November, 2021.

Vice Admiral Nowell and his staff are ignoring the requirements of both the Religious Freedom Restoration Act and DODINST 1300.17. The requirements under law, per reference (f), and the requirements of policy, per reference (g), oblige the Navy to accommodate my religious freedom unless 1) the military policy, practice, or duty is in furtherance of a compelling governmental interest, and 2) it is the least restrictive means of furthering that compelling governmental interest. Both references (f) and (g) also place the burden of proof for the compelling governmental interest and least restrictive means "upon the DoD Component and not upon the individual requesting the exemption." In denying my request, as demonstrated throughout both enclosures (1) and (2), Vice Admiral Nowell failed to prove a compelling governmental interest. In fact, Vice Admiral Nowell denied my request using a disapproval template and relied upon a BUMED Memo which was also a preprepared template. Neither the disapproval template used by Vice Admiral Nowell, nor the BUMED template used by Rear Admiral Gillingham, addressed in any way the overwhelming evidence I provided in my original religious accommodation request from 15 September 2021, and my addendum from 19 October 2021.

Vice Admiral Nowell has violated both law and regulation in utilizing the discriminatory process established in the DCNO(N1) SOP. This process attempts to circumvent established standards required by both law and regulation while attempting to hide unlawful actions behind an intentionally designed façade meant to wrongfully appear compliant with regulatory standards. The discriminatory process used by Vice Admiral Nowell to disapprove my religious accommodation request has caused me personal detriment by denying me my right to due process under the Fifth Amendment and my right to freedom of religious expression under the First Amendment of the Constitution. The process used by Vice Admiral Nowell to review religious accommodation requests must be brought into compliance with law and regulation immediately before more sailors are harmed.

I have deep concerns that this complaint, detailing the discriminatory disapproval process for religious accommodations in the Navy, will not be properly address and will instead be ignored and dismissed. Due to these concerns I intend to copy this communication to both the House and Senate Armed

4

Services Committees in the hope that this will ensure that all unlawful religious discrimination in the Navy is properly addressed. I also remind reviewers of this complaint that this is a protected communication under 10 U.S.C. 1034 and its implementing regulations.

> (6)  As redress I respectfully request that you immediately cease the unlawful and discriminatory review process for Navy Religious Accommodations and that you rescind my disapproval and all such disapprovals executed to date. I also request that you re-review each such religious accommodation request in accordance with law and regulation, including meeting the government's burden of proof as required by 42 U.S.C. 2000bb-1 and DODINST 1300.17.

5.  I CERTIFY THE ABOVE INFORMATION IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, AND THIS COMPLAINT IS SUBMITTED PER THE GUIDELINES AND PROCEDURAL REQUIREMENTS IN CHAPTER III, MANUAL OF THE JUDGE ADVOCATE GENERAL.

SIGNATURE OF COMPLAINANT: _____   Date: 12/23/21

SIGNATURE OF WITNESS: _____   Date: 23 dec 21

**PRIVACY ACT STATEMENT**

1. <u>Authority</u>. 10 U.S.C. §§ 938, 8013.

2. <u>Principal purpose(s)</u>. Used by command authorities and the Office of the Judge Advocate General to review, take action, and make recommendations to the Secretary of the Navy on Article 138, UCMJ, and Article 1150, U.S. Navy Regulations, complaints of Wrong.

3. <u>Routine uses</u>. The Blanket Routine Uses that appear at the beginning of the Department of the Navy's compilation in the Federal Register apply.

E
4. <u>Mandatory or voluntary disclosure and effect on individual not providing information</u>. Providing requested information is voluntary; however, failure to do so may result in delayed command action and Secretarial review, or the inability to notify complainant of the Secretary's decision.

5

## <u>Religious Accommodations</u>

**Background:**  On 22 January 2014, SECDEF released a new DoDI (see TAB A) changing the way requests for religious accommodation would be routed and reviewed.  Previously, Commanding Officers had the authority to approve or deny requests for religious accommodation.  There was no consistency and some Commanding Officers did not significantly evaluate the request.  The DoDI transferred the decision authority for all requests for religious accommodation that fall outside current uniform and grooming standards as well as Navy policy to CNP.  In order to ensure each request is given due consideration, the DoDI instructs CNP to view each request in its entirety.  Each request is evaluated on a case by case basis.  For example, a request from an operational member to grow a beard may be denied, while the same request made by a Sailor on shore duty could be approved.  Whatever the decision, it is only valid while the Sailor's circumstances remain the same.  If the Sailor executes PCS orders or the nature of the Sailor's work changes significantly, a new request will have to be routed.  The Sailor must abide by current Navy standards and policy while the request is being adjudicated.  Reservists also fall under this instruction.  They are required to submit their requests via the same channels as active duty.

# Step-by-Step Instructions

## Phase 0 (Steps 1 – 5)

1. N131 receives Religious Accommodation (RA) requests via a functional email distro, <u>ALTN_Navy_Religious_Accommodations@navy.mil</u>. The inbox only reliably receives email from NMCI email addresses, so submitters are encouraged to send an email without an encrypted endorsement first to ensure communication is received. Here is an example of an email requesting consideration of an RA:



Pls.' Mot. for Classwide Prelim. Inj. App. 0012

Enclosure (1)

2.   Reply all to the email and acknowledge receipt of the request with the following response:

YN2,

I have received your message and will begin routing the RA package for ███████████.

An individual response letter will be returned to the command once the member's accommodation has been adjudicated.

Very Respectfully,

3.   Go to the Phase 0 - N131 Pre-Tracker folder on the shared drive and select the appropriate folder.



4.   Create a new folder with the following nomenclature: Last, First RANK.



5.   Drag and drop a copy of the request and the original email.



## Phase 1a (Steps 6 – 13)

Type text here

6. Open the RA Tracker located on the shared drive at N131 > N131D > 2N131D23 RA Tracker >
   Data tab. Add the new request to the bottom of the spreadsheet and ensure there are no duplicate
   entries. Fill in all vacant fields using the Original request as the authoritative data source



7. Move the file to the Phase 1 - Initial Intake\Phase 1 - Immunizations\00 Initial Drop Off folder.

BUPERS_ALTN_N45997_N13 (\\naeawnydfs101v.nadsusea.nads.navy.mi\cs0225) (Z:)  ›  N131  ›  N131D  ›  2N131D22 RA Adjudications  ›  Phase 1 - Initial Intake  ›  Phase 1 - Immunizations  ›  00 Initial Drop Off

| Name | Date modified | Type | Size |
|------|---------------|------|------|
| ████████MA2 | 11/2/2021 11:42 PM | File folder | |
| ██████LCDR | 11/1/2021 6:21 PM | File folder | |
| ████████AM2 | 11/2/2021 11:46 PM | File folder | |
| ███████FTC | 11/2/2021 11:47 PM | File folder | |

8. Open the original request to ensure the following are included IAW BUPERSINST 1730.11A and
   MILPERSMAN 1730-020: (Appeals only require member's request and command endorsement)
   a. Member's Request
   b. Command Endorsement (+Second Endorsement if not an O-6 Command)
   c. Chaplain Memo
   d. Chaplain Checklist
   e. Page 13 (Immunizations Only)

3 Pls.' Mot. for Classwide Prelim. Inj. App. 0014

Enclosure (1)

9.   The Member's request should look like this and addressed to the CO, or CNO or DCNO (N1)



10.  A Command Endorsement with a CO recommendation (ISIC required if not an O-6);



4 Pls.' Mot. for Classwide Prelim. Inj. App. 0015

Enclosure (1)

11. Chaplain Memorandum for the Record and interview checklist from the Chaplain who interviewed the Sailor about the request for religious accommodation.

5 Pls.' Mot. for Classwide Prelim. Inj. App. 0016

Enclosure (1)

12. Page 13 (Immunizations Only)

13. If all the documents are included and completed properly route to RA Adjudications\Phase 1 - Initial Intake\Phase 1 - Immunizations\01 Ready For Processing

    a. If any of those items are missing, send to 02 Packages Awaiting Documents so the command can be contacted to inquire their whereabouts or the reasons for the error.
        i. Contact Command via email and follow up with a phone call within 48 hours
        ii. Ensure the folder is labeled with the missing documents

    b. If there are multiple files send to 03 Folders That Need to Be Consolidated so the items can be consolidated and routed to are missing, send to 02 Packages Awaiting Documents so the command can be contacted to 01 Ready For Processing.

    c. If the request is for a Sailor assigned to a joint command, move it to 04 Sailors Jointly Assigned - Do Not Process

    d. If the member sends an email withdrawing their request, add the email to their folder and move to 05 Member Withdrawn - DO NOT PROCESS\

    e. For any other issues, move to 06 Other Issues - LT Neuer Review

6 Pls.' Mot. for Classwide Prelim. Inj. App. 0017

Enclosure (1)

## Phase 1 (Steps 14 – 15)

14. Inside the Phase 1 - Immunizations\01 Ready For Processing folder, add the most recent RA Response Letter template and rename the files to the following nomenclature:
    a. 1 - RA Response Letter ICO *Last First RANK*
    b. 2 - RA Request ICO *Last First RANK*
    c. 5 - Original Email ICO *Last First RANK*



15. Open 1 - RA Response Letter ICO Last, First RANK to update the response letter to reflect the new request's specific information from the 2 – RA Request ICO Last, First RANK document. The highlighted sections below are the sections that will need to be updated. Save those changes and route to Phase 3 after verification of all five initial documents are confirmed from Step 8.




7 Pls.' Mot. for Classwide Prelim. Inj. App. 0018

Enclosure (1)

**Phase 3 (Steps 16 – 28)**

16. Uploaded into DonTracker. Visit dontracker.navy.mil to log in.



17. Once logged in, go to Taskers > Inbox



8 Pls.' Mot. for Classwide Prelim. Inj. App. 0019

Enclosure (1)

20. Under Responders, is where you designate who reviews the tasker and their respective deadlines.
   e. Due Dates will automatically be populated based on the 7-day deadline;
      i. BUMED (SECRETARIAT - TASKER GROUP) (BUMED (FRONT OFFICE))
      ii. POLICY AND STRATEGY (N0975 TASKER GROUP)
      iii. SPECIAL ASSISTANT FOR LEGAL MATTERS (CNP LEGAL FRONT OFFICE)
      iv. N1 FLEET MASTER CHIEF (N1 FLEET)



21. In the Attachments section, select Add Attachment > Add Local Files > then select and categorize the following files:
   f. 1 - RA Response Letter ICO *Last First RANK* (Organizational Response)
   g. 2 - RA Request ICO *Last First RANK* (Original Source Document)



10 Pls.' Mot. for Classwide Prelim. Inj. App. 0021

Enclosure (1)

22. Below is completed tasker. If no other changes are necessary, click Send to begin the workflow.



23. Once the workflow has started, you will receive the following message.



11 Pls.' Mot. for Classwide Prelim. Inj. App. 0022

Enclosure (1)

24. You must periodically check the status of the by going to your Inbox > Awaiting Responses. The taskers can be sorted by tasker number, subject, due date, etc. By clicking on a tasker, you can see where the tasker is in the process in the Tasker Details window,



25. Retrieve legal memos from the following folder: RA Adjudications\New Legal Memo Dropoff and add to the folder.

26. Once a response by BUMED populates, download the BUMED Memo to the member's folder. Ensure the name and date of member's request are accurate (if not correct send back for rework).

12 Pls.' Mot. for Classwide Prelim. Inj. App. 0023

Enclosure (1)

27. Update Date/Serial in Ref H on the Response Letter (1 - Response Letter ICO Last, First RANK)



DEPARTMENT OF THE NAVY

1730
Ser N1/

From:  Deputy Chief of Naval Operations (Manpower, Personnel, Training and Education) (N1)
To:    RATE/RANK (DESIG) First MI Last, USN
Via:   Commanding Officer, PCU HYMAN G. RICKOVER (SSN 795)

Subj:  REQUEST FOR RELIGIOUS ACCOMMODATION THROUGH WAIVER OF
       IMMUNIZATION REQUIREMENTS

Ref:   (a) 42 U.S.C. §2000bb-1
       (b) DoD Instruction 1300.17 of 1 September 2020
       (c) SECNAVINST 1730.8B
       (d) ASN (M&RA) memo of 6 June 13
       (e) MILPERSMAN 1730-020
       (f) United States Attorney General memo of 6 October 17
       (g) Your ltr of 20 Dec 20 w/ends
       (h) BUMED ltr 6320 Ser M44/21UMXXXXX of dd Mmm yy

1. Pursuant to references (a) through (h), your request for religious accommodation through waiver of immunization requirements is disapproved.  You must receive all required vaccines.  However, you are free to request from your healthcare provider alternative vaccines that are available and meet the Navy's immunization requirements, as determined by a credentialed military healthcare provider.  You are free to choose which COVID-19 vaccine to take. If you choose a COVID-19 vaccine that requires two doses, you must receive your first dose within five calendar (5) days upon receipt of this letter and complete the series as prescribed. If you choose a one-dose vaccine you must meet the established vaccination timeline or receive the vaccine within five calendar (5) days upon receipt of this letter, whichever is later.

2. In line with references (b) through (d), I am designated as the approval authority for requests for religious accommodation.

3. Reference (a), the Religious Freedom Restoration Act (RFRA), states that the Government may substantially burden an individual's exercise of religion only if it demonstrates that application of the burden to the person is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest.  Reference (b) incorporates the RFRA and notes that the Government has a compelling interest in mission accomplishment, to include military readiness, unit cohesion, good order and discipline, health and safety, on both individual and unit levels.  Additionally, unless it will have an adverse impact on mission accomplishment,

28. Once a tasker has been responded to by N0975, CNP LEGAL FRONT OFFICE, N1 FLEET, and
    BUMED, send to the Phase 4 folder  - 0 Ready For Processing / 00 Phase 3 Drop Off



| Name | Date modified | Type | Size |
|---|---|---|---|
| 0 Ready For Processing | 11/2/2021 8:17 PM | File folder | |
| 1 Awaiting LT ████ | 11/2/2021 8:11 PM | File folder | |

29. Do not forward unless all stakeholders have reviewed and following documents are in the folder:
    a.   1 - RA Response Letter ICO *Last First RANK*
    b.   2 - RA Request ICO *Last First RANK*
    c.   3 - RA Legal Memo ICO *Last First RANK*
    d.   4 - BUMED Memo ICO *Last First RANK*
    e.   5 - Original Email ICO *Last First RANK*

13 Pls.' Mot. for Classwide Prelim. Inj. App. 0024

Enclosure (1)

## Phase 4 (Steps 29 – 44)

30. Create a new folder with the following nomenclature:
    a. DD_MON_YY – In Progress

BUPERS_ALTN_N43597_N13 (\\naoaayn/cfs101\naoccusea naocnavcy mil\cc0225) (Z) › N131 › N131D › 2N131D22 RA Adjudications › Phase 4 - Ready for N131 Review › 0 Ready For Processing

| Name | Date Modified | Type | Size |
|---|---|---|---|
| 00 Phase 3 Drop Off | 11/15/2021 2:07 AM | File folder | |
| 29_Oct_21 Bin 2 COMPLETE | 11/29/2021 5:03 PM | File folder | |
| 29_Oct_21 Bin 3 COMPLETE | 11/29/2021 5:13 PM | File folder | |
| 29_Oct_21 Bin 4 IN WORK - NOT FULL | 10/29/2021 2:46 PM | File folder | |
| 2N131D22 RA Adjudications - Shortcut | 10/21/2021 3:32 PM | Shortcut | 2 KB |
| N13 to N1 Buckslip - Template - Bin X | 10/21/2021 4:17 PM | Microsoft Word D... | 26 KB |
| REF B - RA Immunizations Requests Tra... | 11/24/2021 3:36 PM | Microsoft Excel W... | 16 KB |
| TAB C Coordination Page RA Template ... | 9/23/2021 5:16 PM | Microsoft Word D... | 16 KB |
| TEMPLATE RA Response Letter | 10/27/2021 10:23 AM | Microsoft Word D... | 47 KB |

31. Add 10 folders from 00 Phase 3 Drop Off folder
    a. Priority (CMD Triad/Other Priority)
    b. Officers/E-9
    c. Oldest to Newest Active Duty/MOB/RECALL
    d. SELRES

32. Add the following documents to the DD_MON_YY – In Progress folder
    a. N13 to N1 Buckslip - Template
    b. REF B - RA Immunizations Requests Tracker Template
    c. TAB C Coordination Page RA Template
    d. REF A - DCNO N1 1730 ltr Ser 114168 of 20 Aug 21

33. Open N13 to N1 Buckslip. Update the date and list of 10 attachments based on the selected files.




14 Pls.' Mot. for Classwide Prelim. Inj. App. 0025

Enclosure (1)

34. Open the following document: REF B - RA Immunizations Requests Tracker Template

35. Begin filling in the spreadsheet after reading through the entirety of the buckslip, original request, BUMED and Legal Memos and add any pertinent information for DCNO (N1) to consider. THIS IS THE MOST CRITICAL STEP IN THE ENTIRE PROCESS AND THE CNO AND CNP ARE RELYING ON YOU TO ENSURE THAT YOUR REVIEW IS THOUROUGH AND ACCURATE. DO NOT RUSH THIS PROCESS AND ENSURE THAT YOU UNDERSTAND BEFORE MOVING FORWARD.

36. Ensure all the information (dates/name spellings/letter formatting) match.

37. Move to the right side of the spreadsheet.

38. When Complete, save changes as DD_MON_YY

39. Open "TAB C - Coordination Page – *Rank/Rate Last Name*" to update the dates on the coordination page to the current date of processing to match the folder. Save the changes.

COORDINATION PAGE

**Sailor Request** - Accommodation from MILPERSMAN 1730-020 to waive immunization requirements.

**DCNO NI Response** – Disapproval (Member and Fleet Safety)

| Office/Dept | Point of Contact/Title | Phone | Date | Remarks |
|---|---|---|---|---|
| OPNAV (N0975) | LCDR S. Deete | (703) 695-3824 | 25 Sep 21 | The interviewing chaplain adequately advised the command on the requestor's sincerity and the religious nature of their beliefs |
| OPNAV N1 FLT equity for Officers | FLTCM W. Koshoffer | (703) 604-2616 | 25 Sep 21 | Concur: No |
| OPNAV N1 JAG | CDR A. Leahy | (703) 604-5804 | 25 Sep 21 | Concur |
| OPNAV (N131) | CDR D. Cua | (703) 604-5023 | 25 Sep 21 | Concur |
| OPNAV (N13) | RADM J. P. Waters | (703) 604-5040 | | |
| OPNAV (N1) | VADM John B. Nowell, Jr | (703) 604-2748 | _____ | _____ |

40. Upon Completion of the file modification, move entire file to 4 - Ready for N131 Review\2 Awaiting N131 Review (LT Didawick) or 3 Awaiting N131 Review (CDR Cua) based on your assigned reviewer identified on the organization chart.
41. Rename Folder and files with appropriate batch number
    a. DD_MON_YY-1 (1st Batch)
    b. DD_MON_YY-2 (2nd Batch)

42. After Review from Phase 4 is complete, drop files in the following folder: \\naeawnydfs101v.nadsusea.nads.navy.mil\CS021$\BUPERS_ALTN_N45997_N1\COVID-19 RA

43. Link the spreadsheet in the folder to the locations by pressing CTRL+K on the word "here"

44. Email the N13 Front office that the folder is ready.

To.. Katsen, Mary Angela Saostein CAPT USN DCNO N1 (USA)
Cc Ausen, Kelsey B FO1 USN DCNO N1 (USA); Molina, Gary LCDR USN DCNO N1 (USA); Didawick, Joshua A LT USN DCNO N1 (USA) <joshua.didawick@navy.mil>
Subject Ready for Review 2_Nov_21-2

Deputy,

Please see RA 2_Nov_21-2 at your earliest convenience here.

V/r

16 Pls.' Mot. for Classwide Prelim. Inj. App. 0027

Enclosure (1)

## Phase 5 (Steps 45 – 47)

45. The request will be routed through the deputy to N13. Once a decision is made by N13, the N13 Administrative Assistant will update the Coordination Page and Buckslip then send the request to N1 via email.

46. Once a final decision has been made on the request, N1 will return the signed TAB A – Response Letter – RA ICO *Rank/Rate Last Name*.

47. N13 Front Office will save the letter in the Sailor's RA Request folder as "DCNO Signed – *Rank/Rate Last Name* RA" and a notification email will be sent to N131.

## Phase 6 (Steps 48 – 50)

48. An email containing that letter is emailed to the Sailor via their command by replying to the original email request.



49. Update the RA Tracker workbook's Data tab to reflect the dates of the process and approval/disapproval.

50. Move the folder to RA Adjudications > 00 ARCHIVED REQUESTS.



# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT CHATTANOOGA

| | | |
|---|---|---|
| TANJA BENTON, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | Case No. 1:22-cv-118 |
| v. | ) | |
| | ) | Judge Atchley |
| BLUECROSS BLUESHIELD OF | ) | |
| TENNESSEE, INC., | ) | Magistrate Judge Lee |
| | ) | |
| *Defendant.* | ) | |

## <u>JUDGMENT ORDER</u>

This action came before the Court for a trial by jury. The issues have been tried, and the jury has rendered its verdict.

The jury found that Plaintiff, TANJA BENTON, proved by a preponderance of the evidence that her refusal to receive the Covid vaccination was based upon a sincerely held religious belief. The parties stipulated that the remaining elements of Plaintiff's claims were met and the jury was so instructed. The jury further found that Defendant, BLUECROSS BLUESHIELD OF TENNESSEE, INC., did not prove by a preponderance of the evidence either that it had offered a reasonable accommodation to Plaintiff or that it could not reasonably accommodate the Plaintiff's religious beliefs without undue hardship. Liability for Plaintiff's religious accommodation claims is therefore established by the jury's verdict.

Finally, the jury found that Plaintiff proved her entitlement to punitive damages by a preponderance of the evidence. By separate verdict, the jury awarded punitive damages. The jury awarded total damages to Plaintiff in the amount of **$687,240.00**, comprised of $177,240.00 in back pay damages, $10,000.00 in compensatory damages, and, by separate verdict, $500,000.00

in punitive damages.

Accordingly, judgment is entered in favor of Plaintiff TANJA BENTON and against Defendant BLUECROSS BLUESHIELD OF TENNESSEE, INC. in the amount of **$687,240.00** with post-judgment interest at the rate set by 28 U.S.C. § 1961.


**SO ORDERED.**

/s/*Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY JR.**
**UNITED STATES DISTRICT JUDGE**


**ENTERED AS A JUDGMENT**
/s/ *LeAnna Wilson*
LeAnna Wilson
CLERK OF COURT



**P**

US POSTAL SERVICE

Retail

**PRIORITY MAIL**
FLAT RATE ENVELOPE
POSTAGE REQUIRED

PRESS FIRMLY TO SEAL

US POSTAGE PAID
**$14.00**

Origin: 82135
07/12/24
0968036D105-69

EXPECTED DELIVERY DAY: 07/15/24

**PRIORITY MAIL®**

0 Lb 11.80 Oz

RDC 03

C024

SHIP
TO:
STE 310
501 W 10TH ST
FORT WORTH TX 76102-3641

USPS SIGNATURE® TRACKING #

9510 8144 9642 4194 9064 69

PS00001000014

TRACKED

ED

EP14F July 2022
OD: 12 1/2 x 9 1/2

To schedule free Package Pickup,
scan the QR code.

USPS.COM/PICKUP

...tic use.
...nce (restrictions apply).*
...stic and many international destinations.
...laration form is required.
...garding claims exclusions see the

**PRIORITY®
MAIL**

**FROM:**

Clerk's Office
United States District Court for the Northern District of T...
Fort Worth Division
501 West 10th Street, Room 310
Fort Worth, Texas 76102-3673
ATTN: U.S. Navy SEALs 1-26 v. Biden C...
Proposed Class Settlement

...01236, Objections to

RECEIVED
JUL 16 2024
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS