U.S. DISTRICT
NORTHERN DISTRICT OF TEXAS
FILED

JUL 17 2024

CLERK, U.S. DISTRICT COURT
By_____ Deputy

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| |
|---|
| **U.S. NAVY SEALs 1–26, et al.,** |
| *Plaintiffs,* |
| **v.** |
| **LLOYD J. AUSTIN, III, et al.,** |
| *Defendants.* |

Case No. 4:21-cv-01236-O

## OBJECTION TO PROPOSED CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................ 1

II.   SALIENT PORTIONS OF CASE HISTORY RELEVANT TO THE PRESENT
      OBJECTION ............................................................................................................. 3

      A.    The Court grants early class certification and a class-wide Injunction. ............ 3

      B.    Following entry of class-wide injunction, Defendants sought appellate review
            but after Congress mandated rescission of the Navy's COVID-19 Mandate,
            Defendants unsuccessfully sought to dismiss all of Plaintiffs' claims as moot. 5

      C.    Following remand from the Fifth Circuit and this Court's order finding portions
            of case not moot, the Parties complete settlement negotiations and request
            preliminary approval and an amendment to the class definition ..................... 7

III.  OBJECTORS AND THEIR COUNSEL ...................................................................... 8

      A.    Objectors Are All Members of The Settlement Class. ...................................... 8

      B.    Objectors Are Putative Class Members in a Class Action Case Ongoing in The
            Court Of Federal Claims. ............................................................................... 9

      C.    Objectors' Counsel Include Attorneys with Significant Experience Representing
            Service Members Both Before Military Boards and in the Court of Federal
            Claims. ........................................................................................................ 11

      D.    Objectors' Counsel Intends to Appear at Fairness Hearing on July 24, 2024. 12

IV.   ARGUMENT ........................................................................................................... 12

      A.    The Recently Amended Settlement Class Is Not Properly Certified Under Rule
            23. ............................................................................................................... 12

            1.    Class Members, Especially Separated Service Members, Do Not Meet the
                  Requirements of Article III to Seek Injunctive and Declaratory Relief for the
                  RFRA and First Amendment Claims Set Forth in the Operative Complaint. 14

            2.    Plaintiffs fail to demonstrate the proposed amended class, the named
                  plaintiffs or their counsel meet the elements of Rule 23(a)(2), (3) and (4). . 19

            3.    Many Class Members have vested/ripened monetary claims for backpay in the
                  Court of Federal Claims and thus the requirements of Rule 23(b)(2) are not
                  met. ........................................................................................................... 23

      B.    The Proposed Settlement Is Not Fair, Reasonable or Adequate and Should Not
            Be Approved As Presently Constructed. ........................................................ 25

i

V.   CONCLUSION ........................................................................................................ 25

CERTIFICATE OF SERVICE ................................................................................................ 26

# TABLE OF AUTHORITIES

## CASES

*Adkins v. U.S.*, 68 F.3d 1317 (Fed. Cir. 1995) .................................................................. 10

*Angell v. GEICO Advantage Insurance Company*, 67 F.4th 727 (5th Cir. 2023) ......... 14

*Austin v. U. S. Navy Seals 1-26*, 142 S. Ct. 1301 (2022) ...........................................*Passim*

*Baricuatro v. Indus. Pers. & Mgmt. Servs., Inc.*, No. CIV.A. 11-2777,

2013 WL 6072702 (E.D. La. Nov. 18, 2013) ..................................................................... 17

*Bassen v. United States*, 171 Fed. Cl. 273 (Fed. Cl. 2024) ........................................... 9-11

*Bazzrea v. Mayorkas*, 677 F.Supp.3d 651 (S.D. Tex. 2023) ........................................ 9, 11

*Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294 (5th Cir.2003) ........................................... 12

*Berkley v. U.S.*, 59 Fed.Cl. 675 (Fed.Cl.2004) ........................................................... 10, 11

*Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290 (5th Cir. 2001) .......................... 14

*Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970 (5th Cir. 2000) ........................................ 23

*Carney v. Adams*, 592 U. S. 53 (2020) ............................................................................. 17

*Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113 (S.D.N.Y. 2012) ................ 17

*Christensen v. U.S.*, 60 Fed.Cl. 19 (2004) ................................................................... 10, 11

*Christian v. U.S.*, 60 Fed.Cl. 550 (Fed.Cl.2004) .............................................................. 11

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir.1977) .............................................................. 25

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) ........................................................ 14

*Hum v. Dericks*, 162 F.R.D. 628 (D. Haw. 1995) ............................................................ 14

*In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. 112 (E.D. La. 2013) ........ 12, 15

*James v. City of Dallas*, 254 F.3d 551 (5th Cir. 2001) ..................................................... 22

*Jennings v. Rodriguez*, 583 U.S. 281 (2018) .................................................................... 14

*Klein v. O'Neal, Inc.*, 705 F.Supp.2d 632 (N.D. Tex. 2010) ............................................ 25

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) .............................................................. 15

*M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832 (5th Cir. 2012) ..................................... 19

*Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367 (1996) ......................................... 21

*Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620 (5th Cir. 1999) ..................... 13, 22

*Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157 (5th Cir. 1978) ................................ 25

*Ponder v. Stone*, 54 M.J. 613 (N.M.C.C.A. 2000) ............................................................ 11

*Prado-Steiman ex rel. Prado v. Bush,* 221 F.3d 1266 (11th Cir. 2000) ........................ 14

*Reed v. Gen. Motors Corp.*, 703 F.2d 170 (5th Cir. 1983) .............................................. 25

*Rempfer v. AFBCMR*, 538 F.Supp.2d 200 (D.D.C. 2008) ............................................... 11

*Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408 (5th Cir. 2017) ................................... 21

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ................................................... 15, 18

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016) ................................................. 15

*U.S. v. Stonewall*, 54 M.J. 412 (C.A.A.F. 2001) ............................................................. 11

*U.S. Navy Seals 1-26 v. Biden*, 27 F. 4th 336 (5th Cir. 2022) ...............................*Passim*

*Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ............................................*Passim*

*Warth v. Seldin*, 422 U.S. 490 (1975) ............................................................................. 14

*Watson v. United States*, 113 Fed.Cl. 615 (Fed.Cl.2013) ............................................... 10

## STATUTES

28 U.S.C. §1346(a)(2) ...................................................................................................... 10

FED. R. CIV. P. 23(a) ...............................................................................................*Passim*

FED. R. CIV. P. 23(b) ...............................................................................................*Passim*

FED. R. CIV. P. 23(c) ................................................................................................*Passim*

FED. R. CIV. P. 23(e) ...............................................................................................*Passim*

Pub. L. No. 117-263, § 525 (2022) ..........................................................................*Passim*

## I.   INTRODUCTION

The present case was filed more than two years ago in the middle of the COVID-19 pandemic and was one of the early challenges to the Department of Defense's ("DoD") implementation of its COVID-19 vaccine mandate (the "Mandate"). Plaintiffs, then all active duty servicemembers in the Navy, alleged that the Mandate was being *implemented* unlawfully. Notably, Plaintiffs did not (and still do not) challenge the underlying lawfulness of the DoD's diktat to all servicemembers to take the shot. Plaintiffs sought injunctive and declaratory relief under the First Amendment, the Religious Freedom Restoration Act ("RFRA"), and the Administrative Procedure Act ("APA"),[1] alleging that Defendants were categorically refusing any and all religious accommodation requests pursuant to unlawful implementation orders.

Plaintiffs and their Counsel, First Liberty Institute,[2] were able to obtain significant and meaningful relief from this Court, which issued a preliminary injunction, then certified a class, and finally extended the injunction class-wide.  Thereafter, Plaintiffs and their Counsel defended these rulings through multiple rounds of appellate review, including a stint at the United States Supreme Court. Throughout these proceedings, there is no question that Plaintiffs and their Counsel did yeoman's work on behalf of servicemembers who held sincere religious beliefs regarding the COVID-19 vaccine - at a time when the Navy was discharging members for their refusal to take the vaccine, religious objections notwithstanding.

---

[1] Plaintiffs later abandoned their APA claims, but their First Amendment and RFAA claims remain live.

[2] First Liberty Institute, is a legal non-profit "dedicated *exclusively* to defending religious liberty for all Americans." From Counsel's website (emphasis in original).

In late 2022, Congress stepped into the fray and passed the James M. Inhofe National Defense Authorization ACT ("NDAA") directing "the Secretary of Defense [to] rescind the Mandate that members of the Armed Forces be vaccinated against COVID-19." NDAA, Pub. L. No. 117-263, § 525 (2022). Defendants claimed to have rescinded the Mandate after being directed to do so by Congress, and so within just a few months, the proverbial playing field of this case changed dramatically.

Following the rescission of the Mandate, Defendants sought dismissal of this litigation for mootness, and ultimately, this Court ruled that only a limited subset of Plaintiffs' initial claims remained live, namely claims for declaratory or injunctive relief for *present* and *prospective* harms stemming from the Navy's alleged longstanding failure to properly handle religious accommodation requests. After this ruling, the parties engaged in mediation and negotiated a class settlement of these remaining claims. The proposed settlement is now before the Court for final approval under Rule 23(e) of the Federal Rules of Civil Procedure.

As explained more fully in this Objection, there are two fundamental problems with the proposed settlement that prevent it from being finally approved. The first is that the proposed settlement fails to recognize the critical difference in the legal interests of those service members who are still on active duty today versus those who have been discharged since the inception of this case, whether before or after the Court's injunction. The other irredeemable flaw in the proposed settlement is that it ignores the monumental changes in the posture of this case that have occurred since the early months of 2022 when the Court initially certified the class in this case. When the settlement is viewed through the facts as they exist today, and in light of the record evidence before this Court, the proposed settlement class simply *cannot* be maintained/certified under the

requirements of Rule 23. Objectors therefore urge the Court to deny final approval for this settlement.

## II. SALIENT PORTIONS OF CASE HISTORY RELEVANT TO THE PRESENT OBJECTION

### A. The Court grants early class certification and a class-wide Injunction.

On March 28, 2022, the Court granted injunctive relief and certified a class, including two sub-classes, and granted class-wide injunctive relief. *See* Doc. 140. This initial class certification order defined the main class as comprising "all Navy servicemembers subject to the vaccine Mandate who have submitted religious accommodation requests" and included two subclasses, one for Navy Special Warfare/Special Operations (NSW/SO) and the other for Navy Seals, who fell within the main class.3 In certifying the class and its associated subclasses, the Court engaged in a lengthy and rigorous analysis of the applicable Rule 23 factors and ruled that certification under Rule 23(b)(2) was warranted and appropriate, even over the Defendants' objections. *See* Doc 140. The Court's analysis was predicated upon the relief being sought for the four causes of action asserted in the operative complaint, namely a service-wide injunction prohibiting the Navy from violating Plaintiffs' and class members' rights under the Religious Freedom Restoration Act and the First Amendment to the U.S. Constitution. Doc. 84.

---

3 *Id.* at p. 7. The Court's class-wide injunction prohibited Defendants "from applying MANMED § 15-105(3)(n)(9); NAVADMIN 225/21; Trident Order #12; and NAVADMIN 256/21 to members of the Navy Class and Subclasses," except to the extent the injunction would otherwise preclude "the Navy from considering respondents' vaccination status in making deployment, assignment, and other operational decisions." *Id.* at p. 27 (citing *Austin v. U.S. Navy SEALs 1–26*, 142 S. Ct. 1301 (2022)).

In analyzing the elements of Rule 23(a), the Court found the requirements of commonality under Rule 23(a)(2) were met because "potential class members have suffered the 'same injury,' arising from violations of their constitutional rights." Doc. 140 at p. 10. The Court concluded that Plaintiffs and potential class members all experienced the same "crises of conscience imposed by the mandate itself" which was a "serious injury of infringement of their religious liberty rights" and also constituted irreparable harm to Plaintiffs and class members. *Id.* (citing Doc. 66). The Court found that while Plaintiffs and class members may have each experienced diverse damages as a result of their beliefs, they all suffered the same "core injury" *Id.* In the face of this singular injury to all Navy members who submitted RARs, the Court found commonality between Plaintiffs and class members because "[a] finding in favor of the Named Plaintiffs on their RFRA and First Amendment claims also resolves the RFRA and First Amendment claims of the class." *Id.* Similarly, the Court ruled that the typicality requirement of Rule 23(a)(3) was met because the named Plaintiffs' claims were "identical" to those of the entire class. *Id.* All members of the class, including the named Plaintiffs, had unsuccessfully requested religious accommodation and the entire purpose of the case was to seek judicial intervention of the crises of conscience this unlawful action created for all class members.

Shortly after certifying the Navy Class and Subclasses, the Court was presented with a request to clarify the scope of its injunction by three purported Navy Class members. Doc 162, 163, 180. The movants wished to separate from the Navy and claimed the Defendants would not allow them to do so because of the Court's injunction, or in Objectors' counsels' view, because of what reasonably might be called a policy of "punitive retention" by the Defendants. In granting these requests, the Court clarified that the class definition did not include "[f]uture servicemembers like movants" who "choose to get

4

vaccinated, withdraw their religious accommodation requests, voluntarily separate, or proceed with retirement plans". Order dated June 13, 2022, Doc 182 at p. 2 (citing Doc 140). By way of this June 13, 2022, Order, the Court confirmed that once separated, for whatever reason, whether voluntary or otherwise, Navy service members who initially fell within the scope of the Class were "no longer class members." *Id.*

**B.**   **Following entry of class-wide injunction, Defendants sought appellate review but after Congress mandated rescission of the Navy's COVID-19 Mandate, Defendants unsuccessfully sought to dismiss all of Plaintiffs' claims as moot.**

After this Court granted class-wide injunctive relief, the Navy sought a stay of the preliminary injunction pending appeal. The Fifth Circuit denied Defendants' request. *U.S. Navy Seals 1-26 v. Biden*, 27 F. 4th 336, 353 (5th Cir. 2022) (per curiam). But the Supreme Court ultimately granted in part the requested stay "insofar as it preclude[d] the Navy from considering . . . vaccination status in making deployment, assignment, and other operational decisions." *Austin v. U.S. Navy Seals 1-26*, 142 S. Ct. 1301, 1301 (2022) (mem.). Following the Supreme Court's partial stay of the injunction, this Court granted Plaintiffs' motion to certify a class consisting of "all Navy servicemembers" and extended to that class a second preliminary injunction prohibiting the same policies named in the first injunction. Once again, the Navy appealed both the second injunction and the class certification. The Fifth Circuit consolidated both appeals. *U.S. Navy SEALS 1-26 v. Biden*, No. 22-10077, at *1 (5th Cir. Jun. 7, 2022).

Before the Fifth Circuit could hear oral argument, however, President Biden signed into law the James M. Inhofe National Defense Authorization ACT ("NDAA") that directed "the Secretary of Defense [to] rescind the mandate that members of the Armed Forces be vaccinated against COVID-19." NDAA, Pub. L. No. 117-263, § 525 (2022).

Secretary Austin subsequently rescinded the Mandate. *U.S. Navy SEALs 1-26*, 72 F.4th at 671. And, the next day, Secretary Del Toro likewise rescinded the Navy's policies implementing the Mandate. *Id.* After oral argument, the Navy—as well as the Department of Defense—enacted additional policies that eliminated remaining distinctions based on a servicemember's COVID-19 vaccination status. *Id.*

Due to these events, the Fifth Circuit determined that the consolidated interlocutory appeals were moot, but in dismissing the interlocutory appeals of the injunctions, the Fifth Circuit remanded the case to this Court for further proceedings consistent with its opinion. *Id.* at 670. In doing so, the majority opinion emphasized that its decision "does not end the litigation." *Id.* at 676. Instead, "the issues Plaintiffs raise can still be litigated in the district court and appealed after a final judgment, assuming they remain justiciable." *Id.* at 675. Accordingly, the Fifth Circuit left open for this Court to assess in the first instance "whether any of Plaintiffs' claims are justiciable" while "express[ing] no view on that question." *Id.* at 676; *see also id.* at 678 (Ho, J., dissenting) ("[T]he majority appears to leave it open for the district court on remand to conclude that the SEALs should ultimately prevail in this case.").

On February 14, 2024, this Court "determine[d] that this case is *not* moot." Doc. 262 ("Mootness Order") at p. 1 (emphasis in original). In its Mootness Order, this Court held that what remained of the case was the Navy's general hostility to religious-based exceptions to its policies. *Id.* at 12. The Court, however, agreed with Defendants that it could not provide injunctive or declaratory relief with respect to *past harms, see id.* at p. 13, and it held that "only present and future harms will support any declaratory relief sought." *Id.* at 14.

**C.   Following remand from the Fifth Circuit and this Court's order finding portions of case not moot, the Parties completed settlement negotiations and requested preliminary approval and an amendment to the class definition.**

Following remand from the Fifth Circuit and this Court's order finding portions of Plaintiffs' claims still live, the Parties engaged in mediation and negotiated a proposed class-wide settlement agreement that purports to provide relief in the form of records corrections and changes to policy.[4] The Navy has also agreed to take steps that, Plaintiffs urge, will go toward preventing discrimination against religious servicemembers like that alleged in this case from recurring in the future.[5] The Navy has also agreed to pay Class Counsel $1,500,000.00 to cover their attorneys' fees in prosecuting this action, and the Navy has also agreed to provide notice of this proposed settlement to the Class Members.

---

[4] In the Settlement Agreement (Appx.0002-22) show, the Navy has agreed to: (1) correct the personnel records of all Class Members to remove any negative proceedings or adverse information related to non-compliance with the COVID-19 vaccination Mandate; (2) correct the personnel records of all *current* or **former** Class Members who were discharged solely on the basis of non-compliance with the COVID-19 vaccination Mandate to remove any indication that the servicemember was discharged for misconduct; (3) include language in selection board convening orders prohibiting the consideration of COVID-19 vaccination refusal where accommodation was requested; and (4) amend its policy, changed during the Mandate period, which prohibited servicemembers from resubmitting requests for religious accommodation if there are changes to their assignment or to relevant policies. (emphasis added).

[5] These steps include: (1) publicly posting a statement reaffirming the value of religious expression to the Navy, the importance of accommodating sincere beliefs, and stating that religious discrimination conflicts with the Navy's core values; (2) publicly posting information informing servicemembers of their rights related to requesting religious accommodation and the process for doing so; and (3) creating and making available in multiple training databases a PowerPoint presentation informing commanders, supervisors, and other decisionmakers in the religious accommodation process of their obligations in processing those requests in accordance with the law and the Navy's own policies, including the required time limitations for decisions, individual assessment of each request, and individualized justification for granting or denying a request, as well as the importance of accommodating religious beliefs to the Navy and the dignity and respect that must be afforded to all servicemembers, including those with sincere religious beliefs.

Plaintiffs' Counsel has recognized that of the initial 4,339 class members some 1,868 of them (representing over 40% of the initial class members) were separated both before and after this Court's injunctive relief and thus fell outside of the class. Doc. 283, App.005 ¶¶ 3 & 5. Notwithstanding, Plaintiffs' counsel negotiated on behalf of these separated, absent, non-class members, ostensibly because such former class members "were noted as being separated for 'misconduct' and were listed as ineligible to reenlist as a result." *See* Doc. 278, Motion for Preliminary Approval, at p. 12. According to Plaintiffs, as a part of their settlement negotiations, "the Navy has agreed to correct [separated, non-class members'] personnel records to change their reenlistment codes and remove the designation of 'misconduct.'" *Id.* (citing Appx.0009). As a result of this purported "benefit," Plaintiffs requested that the Court amend the class definition so as to bring these separated, non-class members back into the settlement class and allow them to "enjoy this benefit," by asking the Court to modify the class definition to include: "All members of the United States Navy who <u>were</u> subject to the Navy's COVID-19 Vaccine Mandate and who submitted a Religious Accommodation request concerning the Navy's COVID-19 Vaccine Mandate <u>or who submitted a Religious Accommodation request concerning the Navy's COVID-19 Vaccine Mandate and were separated from the Navy, even if the request was withdrawn.</u>" *Id.* (emphasis in original showing amendments). The Court granted this request and amended the class definition in its order granting preliminary approval of the proposed settlement agreement.

## III.   OBJECTORS AND THEIR COUNSEL

### A.   Objectors Are All Members of The Settlement Class.

This Objection is filed on behalf of the individuals listed on the attached Exhibit A ("Objectors"). All Objectors are members of the proposed settlement class and stand to

be impacted by the settlement's terms if the Court grants final approval. The Objectors here are 28 current or former members of the U.S Navy, 22 of whom are existing clients of counsel from prior actions against the vaccine Mandate and the *ultra vires* actions of DoD officials.[6] All Objectors filed requests for religious accommodation under RFRA and the applicable Navy instruction. Each of the Objectors also have concurrent, intertwined claims that arise out of these same circumstances. Unlike the scope of the current litigation, the Objectors challenge both the legality of the underlying Mandate *and* the RFRA violations in the action noted below.

### B. Objectors Are Putative Class Members in a Class Action Case Ongoing in the Court of Federal Claims.

Shortly after Congress' rescission of the DoD Mandate in the FY2023 NDAA in December 2022 and its implementation by Secretary Austin, a group of former active duty and reserve servicemembers who had been discharged or dropped from Title 10 orders for their objections to the DoD COVID-19 Vaccine Mandate filed a class action complaint for military backpay in the Court of Federal Claims, *Bassen v. United States*, 1:23-cv-211, on February 13, 2023.[7] The Court of Federal Claims is a unique, Article I court originally established in 1855 to hear citizens' claims against the government. In the aftermath of

---

[6] *See Alvarado v. Austin*, 1:22-cv-0876 (E.D. VA)(filed May 18, 2022); *Bazzrea v. Austin*, 3:22-cv-265 (S.D. TX) (filed July 25, 2022); *Bongiovanni v. Austin*, 3:22-cv-580 (M.D. FL) (filed Mar. 2, 2022); *Coker v. Austin*, 3:21-cv-1211 (N.D. FL)(filed Oct. 6, 2021); *Crosby v. Austin*, 8:21-cv-2730 (M.D. FL) (filed Dec. 13, 2022); *Davis v. Austin*, 3:22-cv-237 (M.D. FL) (filed Mar. 2, 2022); *Robert v. Austin*, 1:21-cv-2228, (D. CO) (filed Aug. 16, 2021); *Wilson v. Austin*, 4:22-cv-428 (ALM)(E.D. TX)(filed May 25, 2022). An additional nine Objectors are Navy chaplains who were plaintiffs in *Alvarado v. Austin*. Their objections are detailed in their Counsel's Objection. *See* Doc. [291], Objection filed by Attorney Arthur Schulcz on behalf of Navy Chaplains (July 16, 2024).

[7] *Bassen* is one of three putative class actions filed in the Court of Federal Claims brought by Objectors' counsel on behalf of various groups of servicemembers who were adversely affected by the DoD's Vaccine Mandate.

the Mexican-American War and a large number of veterans claims, those actions were also brought under the Court's auspices. The Court's jurisdiction under the Tucker Act, 28 U.S.C. §1491, has expanded over the years to include *inter alia* the vaccine injury compensation program, as well as sharing concurrent jurisdiction with the district courts over "Little Tucker Act" Claims, those where the matter in controversy against the government does not exceed $10,000. *See* 28 U.S.C. §1346(a)(2).

Military backpay cases are a staple of the Court of Federal Claims. The Court of Federal Claims can also hear cases by former servicemembers over military medical retirement determinations and disability ratings made while on active duty. *See, e.g., Watson v. United States*, 113 Fed.Cl. 615 (2013). The Court of Federal Claim's ancillary equitable jurisdiction in Military Pay Act cases gives it great flexibility in dealing with military promotions and cases involving the Services' Boards for Correction of Military Records. *See, e.g., Adkins v. U.S.*, 68 F.3d 1317 (Fed. Cir. 1995); *Berkley v. U.S.*, 287 F.3d 1076 (Fed. Cir. 2002). *See also Christensen v. U.S.*, 60 Fed.Cl. 19 (2004).

In the Court's most recent ruling in *Bassen v. United States*, Judge Thompson M. Dietz denied the government's motion to dismiss as to both active and discharged servicemembers asserting challenges to both the Mandate's lawfulness and how it was implemented, including DoD-wide RFRA violations. *See Bassen v. United States*, 171 Fed. Cl. 273 (Fed. Cl. 2024). The *Bassen* plaintiffs are service members who either served on active duty or reservists serving on Title 10 orders who were subject to the Mandate and who were actually or constructively discharged, had their orders curtailed or cancelled, were involuntarily transferred to inactive status, and/or were otherwise denied pay and benefits.

Members of the Navy – either discharged or still active – who can demonstrate they suffered the requisite pecuniary hams as a result of the Mandate and its enforcement, and can meet Tucker Act jurisdictional prerequisites, have *fully-ripened monetary* claims. The *Bassen* case is a class action case. Undersigned counsel here are seeking complete relief, both monetary and equitable, on behalf of *Bassen* putative class members for the harms suffered as a result of the Mandate.

### C.   Objectors' Counsel Include Attorneys with Significant Experience Representing Service Members Both Before Military Boards and in the Court of Federal Claims.

Undersigned Counsel have significant experience defending the rights of servicemembers in the context of military vaccine mandates since 1999, in courts-martial,[8] in front of Congress,[9] in corrections board proceedings, and federal court.[10] Undersigned counsel also previously filed for class certification on behalf of members of the Coast Guard over the Coast Guard's RFRA policy and implementation of this Mandate. *See Bazzrea v. Mayorkas*, 3:22-cv-265, ECF 38; *dismissed as moot* at 677 F.Supp.3d 651, (S.D. Tex. 2023). The *Bassen* litigation team also includes Col. Barry Steinberg (Ret.), former Chief litigator for the U.S. Army, with over 50 years of relevant military legal experience, including in the Court of Federal Claims.[11] Counsel have worked

---

[8] *See Ponder v. Stone*, 54 M.J. 613 (N.M.C.C.A. 2000); *U.S. v. Stonewall*, 54 M.J. 412 (C.A.A.F. 2001).

[9] "The Anthrax Vaccine Immunization Program: What Have We Learned?" Hearings Before the House Committee on Government Reform, Oct. 3 and 11, 2000. Serial No. 106-249. (Testimony of PO1 David Ponder, USN).

[10] *Rempfer v. U.S. Dep't of Air Force Bd. for Corr. of Military Records*, 538 F. Supp. 2d 200 (D.D.C. 2008). *See also Doe v. Rumsfeld*, 501 F. Supp. 2d 186 (D.D.C. 2007).

[11] *See, e.g., Berkley v. U.S.*, 59 Fed.Cl. 675 (Fed.Cl.2004) (approving proposed settlement agreement); *Christensen v. U.S.*, 65 Fed.Cl. 625 (Fed.Cl.2005) (same); *Christian v. U.S.*, 60 Fed.Cl. 550 (Fed.Cl.2004).

in and around this specific issue, as well as the concomitant, but unique, collateral consequences for military personnel, including exaction claims in the Court of Federal Claims for recouped enlistment bonuses, transferred VA education benefits, and the interplay of the military's disability and retirement system on monetary claims. In sum, Objectors' counsel have relevant experience outside of the First Amendment or RFRA rights of servicemembers that bears directly on a proper understanding of the full panoply of stakes for discharged and active members of the proposed Class.

### D. Objectors' Counsel Intends to Appear at Fairness Hearing on July 24, 2024.

In its order preliminarily approving the Parties' settlement agreement, the Court provides that "any Class Member may appear personally *or by counsel* at the hearing and may object or express his or her view regarding the Settlement Agreement and present evidence, briefs or other papers in support thereof." Doc. 280 at p. 3 (emphasis supplied). By way of this written objection, undersigned counsel provides notice that they intend to appear at the fairness hearing scheduled for July 24, 2024, as invited by the Court, on behalf of the Objectors they represent as identified on the attached Exhibit A.

## IV. ARGUMENT

### A. The Recently Amended Settlement Class Is Not Properly Certified Under Rule 23.

Plaintiffs have failed to meet their burden of showing the proposed settlement class, as amended, can and should be certified under Rule 23.[12] In their initial motion for class certification and supporting memoranda, Plaintiffs engaged in a thorough analysis

---

[12] *See In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. 112, 133 (E.D. La. 2013)(citing *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 301 (5th Cir.2003) ("The party seeking certification bears the burden to demonstrate that the requirements of Rule 23 have been satisfied. ... Plaintiffs thus bear the burden of proof in this proceeding.").

of the elements of Rule 23 to justify the Court certifying a Rule 23(b)(2) injunctive relief class. *See* Doc. 90, 136, 137. Similarly, the Court's March 28, 2022, order granting class certification rigorously analyzed the elements of Rule 23(a) and Rule 23(b)(2) before concluding that class certification was warranted. *See* Doc. 140.

Plaintiffs' request for preliminary approval, however, contains no such analysis. Instead, Plaintiffs engage in a one-paragraph recitation of the elements of Rule 23 and provide nothing but conclusory statements that the proposed amended class definition meets those requirements. This rote recitation does not address (1) those class members who have been discharged or (2) the intervening developments in the case since the class was initially certified such as Congress's rescission of the Mandate in the NDAA, or the Fifth Circuit's and this Court's decisions on mootness. Instead, Plaintiffs attempt to pass off their proposed change to the class definition as a simple amendment, permissible under the Court's authority to "alter or amend" an order granting class certification before final judgment under Rule 23(c)(1)(C). Plaintiffs then parenthetically cite a singular Fifth Circuit for the proposition that courts have "great discretion in certifying or managing a class action." *Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620, 624 (5th Cir. 1999).

While it is true that the Court retains the authority to modify or amend the scope of a certified class, even the interlocutory nature of a certification order does not allow a Court to modify or amend a previously certified class in ways that cause that class to violate the requirements of Rule 23. Similarly, the Court's continuing power to change its certification order during the pendency of a case does not serve as *carte blanche* to allow plaintiffs to amend the class definition in any way they see fit. Quite the opposite, the intent behind Rule 23(c)(1)(C) is to permit the Court to tailor a previously certified class in whatever manner is necessary to maintain fidelity to the requirements of Rule 23, even

if that means a previously certified class must be de-certified altogether. *See, e.g., Hum v. Dericks*, 162 F.R.D. 628, 633 (D. Haw. 1995)(citing *Hervey v. City of Little Rock*, 787 F.2d 1223, 1227 (8th Cir. 1986)). *See also Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1273–74 (11th Cir. 2000). Thus, even after a court has certified a class, and especially if it has done so early in a case, the court has a continuing responsibility to ensure that the elements of Rule 23 are met notwithstanding subsequent case developments or later produced evidence. *See, e.g., Jennings v. Rodriguez*, 583 U.S. 281, 312-13 (2018) (directing circuit court reconsider continuing propriety of Rule 23 certification after Court resolved statutory challenge undergirding initial certification decision).

Here, the proposed amended class definition purports to sweep back within the ambit of the case all those who have been discharged since the initial certification order, and those who were discharged before the Court acted to enjoin the Defendants. In light of subsequent developments following the Court's initial class certification order, Plaintiffs' proposed amended class definition fails to meet Rule 23's requirements.

    **1.    Class Members, Particularly Separated Service Members, Do Not Meet the Requirements of Article III to Seek Injunctive and Declaratory Relief.**

As a threshold matter, case law interpreting Rule 23, including United States Supreme Court precedent, makes clear that all class members in a certified class must meet the requirements of Article III. Typically, this issue arises in the context of Article III standing, which courts routinely recognize "is an inherent prerequisite to the class certification inquiry." *Angell v. GEICO Advantage Insurance Company*, 67 F.4th 727, 733 (5th Cir. 2023) (citing *Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 294 (5th Cir. 2001)); *see also Warth v. Seldin*, 422 U.S. 490, 498 ("[S]tanding ... is the threshold

question in every federal case ...."). Moreover, "[e]very class member must have Article III standing in order to recover individual damages." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Article III does not give "federal courts the power to order relief to any uninjured plaintiff, class action or not." *Id.* (citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016) (ROBERTS, C. J., concurring)). To demonstrate standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

Objectors do not quarrel with the propriety of the Court's initial class certification order, although it contains no *explicit* analysis of class members' standing. Instead, the inescapable conclusion from the findings in the Court's March 28, 2022, order on motions for class certification and class-wide preliminary injunction is that *all* class members at the time had standing because all class members had

> ...suffered the "same injury," arising from violations of their constitutional rights. Each has submitted a religious accommodation request, and each has had his request denied, delayed, or dismissed on appeal. ...Plaintiffs have suffered the serious injury of infringement of their religious liberty rights under RFRA and the First Amendment.
> ...Plaintiffs may experience diverse damages as a result of their beliefs, but they have suffered the same core injury. *See In re Deepwater Horizon*, 739 F.3d, 810–11 (5th Cir. 2014) (explaining that the "same injury" requirement is satisfied "even when the resulting injurious effects—the damages—are diverse.").

Doc. 140 at pp. 9-10. It necessarily follows from the Court's findings that the named plaintiffs and all absent class members (i) allegedly suffered an injury in fact that was concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief.

Now, however, over two-years later, post-rescission of the Mandate, and post-Fifth Circuit decisions on mootness, this same analysis no longer holds. First, the Fifth Circuit has held that the NDAA and subsequently adopted (and yet to be adopted, but promised) Navy policies implementing the NDAA mean that the crises of conscience imposed by the Mandate is no longer present. *U.S. Navy SEALs 1-26 v. Biden*, 72 F.4th 666, 672–73 (5th Cir. 2023). The Fifth Circuit also held that any threat of "adverse action" from refusing the COVID-19 vaccine has dissipated post-NDAA, and that the Navy has "abjured" using vaccination status to deny deployment eligibility, training opportunities, and assignments. *Id.*

Consistent with these holdings, this Court has ruled that the operative complaint is moot with respect to any <u>past harms that remain unresolved post-NDAA</u>. Doc 262 at p. 14 ("Past harms from the Mandate—even those that were not remedied—cannot form the basis of a declaration"). Instead, according to the Court, Plaintiffs can seek declaratory relief only for *present or future* harms tied to the alleged pervasive and long-standing flaws in the Navy's "entire religious accommodation process", *id.* at p. 14 & pp. 16-17 (as opposed harms tied only to the now-rescinded Mandate, which was just one specific manifestation of the Navy's broader antipathy to religious exercise).

For service members already discharged, there are no possible grounds for the Court to conclude they have Article III standing. Upon discharge, equitable relief related to the "entire religious accommodation process" is no longer of any concern or use to a former member. Indeed, the parties and the Court have already recognized that once a service member was discharged, that person was no longer a member of the class as originally certified; hence the request in the preliminary approval motion to amend the class definition to explicitly recapture them. *See* Doc. 182. This conclusion is supported

by the Court's Mootness Order wherein the Court reasoned that by remaining on active duty, "a servicemember shows that they retrain a personal stake in relief concerning the broader accommodations policy." Doc. 262 at p. 9. The corollary to this finding is that once discharged, a service member retains no personal stake regarding the Navy's broader accommodations policy. Without such a stake, separated service members have no standing and cannot properly be swept back into the class definition for the claims that remain operative in the case.

Courts in the employment law context have recognized that an ex-employee can have an ongoing interest in the policies and procedures of his or her former employer, even post discharge, *but only if* the employee seeks or intends to seek reinstatement. *See, e.g., Baricuatro v. Indus. Pers. & Mgmt. Servs., Inc.,* No. CIV.A. 11-2777, 2013 WL 6072702, at *18 (E.D. La. Nov. 18, 2013); *Chen-Oster v. Goldman, Sachs & Co.,* 877 F. Supp. 2d 113, 121–22 (S.D.N.Y. 2012). This narrow exception does nothing to save discharged class members' standing in this case, however, because they are all presently barred from re-enlistment due to negative re-enlistment codes.[13] Additionally, no Plaintiff is on record as both having been discharged due to the Navy's COVID-19 policies and at the same time wishing to reenlist now, notwithstanding the adverse re-enlistment code preventing him from doing so. Similarly, none of the Objectors represented by

---

[13] Of course, one could travel down the rabbit hole of whether the proposed settlement provision removing all such prohibitive re-enlistment codes could allow class members to bootstrap standing. One obvious problem with such a thought experiment, however, is that the bar to re-enlistment will be lifted only after the settlement is approved and reduced to judgment, and then not necessarily immediately (the Navy has one year to make the change). The plaintiff "bears the burden of establishing standing as of the time [s]he brought th[e] lawsuit and maintaining it thereafter." *Carney v. Adams,* 592 U. S. 53, 59 (2020). Conversely, a plaintiff cannot demonstrate standing based on some hypothetical future state of affairs in which she speculates she may suffer an injury.

undersigned counsel who have been discharged wish to reenlist and subject themselves anew to the policies of the Navy, improved or otherwise. In any event, the presence of some theoretical class members who might wish to reenlist (preventative re-enlistment codes notwithstanding) cannot save the amended class definition because *all* purported class members must have Article III standing, and the Objectors themselves demonstrate there are many class members who do not. *See TransUnion LLC*, 594 U.S. at 431.

For Plaintiffs and (most) class members still on active duty, the preliminary approval request fails to explain how the specific relief provided by the proposed settlement fits within the rubric of harms the Court has indicated may still be remedied by the operative complaint.[14] That is, the Court has made it plain that relief seeking to redress past harms is *unavailable* in this case following rescission of the Mandate. But the relief in the proposed settlement agreement consists of actions fundamentally designed to redress past harms,[15] with the Navy agreeing to do what it should have already done as a part of its efforts to rescind the Mandate. It is true that by correcting these past harms now (*e.g.* fixing errors in historical records), future benefits may (or may not) inure to currently serving Plaintiffs and class members. Yet, such potentially beneficial knock-

---

[14] In some circumstances, with agreement of both parties, a new operative complaint may be filed immediately prior to a request for preliminary approval in an effort to marry the allegations and claims of the operative complaint to the relief negotiated in the settlement. No such effort appears to have been undertaken here.

[15] Whereas the signature "benefits" of the proposed settlement are that the Navy will (1) correct the personnel records of all Class Members to remove any negative proceedings or adverse information related to non-compliance with the COVID-19 vaccination Mandate; (2) correct the personnel records of all current or former Class Members who were discharged solely on the basis of non-compliance with the COVID-19 vaccination Mandate to remove any indication that the servicemember was discharged for misconduct; and (3) include language in selection board convening orders prohibiting the consideration of COVID-19 vaccination refusal where accommodation was requested.

on effects from the settlement's terms cannot alter their character from being retrospective to prospective, and the Court has previously ruled that Plaintiffs and class members lack standing to seek this kind of retrospective relief. While there are other, manifestly prospective benefits included within the proposed settlement, the presence of these appropriate forms of relief serve mainly to show how the other portions of the settlement are inappropriately retrospective and require the Court to disapprove it.

      **2.**    **Plaintiffs fail to demonstrate the proposed amended class, the named plaintiffs or their counsel meet the elements of Rule 23(a)(2), (3) and (4).**

      **a)**    **Commonality under Rule 23(a)(2) is not met.**

Under the commonality requirement, potential class members must show they have suffered the "same injury" and present common questions capable of class-wide resolution. "In order to satisfy commonality under *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), a proposed class must prove that the claims of every class member 'depend upon a common contention . . . that is capable of class-wide resolution . . . .'" *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 838 (5th Cir. 2012)(quoting *Wal–Mart*, 564 U.S. at 350). This occurs where "the contention is 'of such a nature . . . that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Id.* (quoting *Wal–Mart*, 564 U.S. at 350). Put plainly, "Rule 23(a)(2) requires that all of the class member[s'] claims depend on a common issue of law or fact whose resolution 'will *resolve* an issue that *is central to the validity* of each one of the [class members'] claims in one stroke.'" *Id.* at 840 (quoting *Wal–Mart*, 564 U.S. at 350).

As this Court explained in its mootness order, following rescission of the Mandate pursuant to the 2023 NDAA, the ambit of the claims asserted in this case has completely

changed. The claims remaining alive in the case no longer provide redress for harm flowing from the Navy's unlawful implementation of the Mandate. Instead, these claims address only present and prospective harms stemming from the Navy's allegedly continued antipathy to exercise of religious freedom and failure to properly implement religious accommodation request processes more broadly. At the same time, the nature of class members' claims fundamentally changed post-rescission. While the Mandate was in place, Plaintiffs and class members alike stood to benefit from a court order enjoining the Mandate's illegal enforcement. Post-NDAA, however, such injunction is unavailable to Plaintiffs and the entire Class. Thus, once the Mandate was rescinded, Plaintiffs and the class no longer shared the same commonality that was a lynchpin to this Court's initial justification for the certification of a class.

Instead, as discussed above, the class contains some members who have an interest in seeing future unlawful conduct remedied by this action - *i.e.* Plaintiff class members who are still on active duty - while also now containing 1,868 members who have been separated, *see* Doc. 283, App.005 ¶ 5, and thus no longer have any stake in the polices of the Navy with respect to religious accommodations going forward. By amending the settlement class definition to include these separated servicemembers, Plaintiffs have destroyed whatever commonality may have existed across the previously certified class post-NDAA. For this reason alone, the proposed settlement class fails to meet the requirements of Rule 23(a)(2).

Furthermore, and perhaps most importantly, many class members – both active duty and discharged – have fully-ripened claims for backpay, particularly service members who have been separated and who were swept back into the class definition by the Court's June 5, 2024 order. *See* Doc. 280. While Plaintiffs' counsel has disavowed any

interest in or intent to seek monetary relief in the proposed settlement agreement, *see* Doc. 278 at pp. 16-17, in their briefing opposing Defendants' motion to dismiss the case as moot, Plaintiffs recognized some class members had monetary claims. *See, e.g.,* Doc. 224 at p. 14. *See also* Doc. 253, at 3. Discharged – and active duty – class members with claims for backpay have not suffered the same injury as those who do not have such a claim, and a declaration or injunctive relief regarding the Navy's ongoing religious accommodation policies will do nothing to help those class members with backpay claims vindicate those rights. Instead, under the settlement, there is now a non-zero chance that by including class members with backpay claims in the present action and then granting the broad release language to Defendants, monetary claims could be precluded[16] or otherwise adversely affected in ways not necessarily clear at the present time. The presence in the proposed amended settlement class of service members with backpay claims is another critical reason why commonality is not met.

### b)     Typicality under Rule 23(a)(3) is not met.

The analysis regarding Rule 23(a)(3) is largely the same as the commonality analysis above. "The commonality and typicality requirements of Rule 23(a) tend to merge." *Falcon*, 457 U.S. at 158 n.13. "Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."

---

[16] *See Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 413–14 (5th Cir. 2017)(quoting *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 396 (1996) (Ginsburg, J., concurring in part and dissenting in part) ("A court conducting an action cannot predetermine the res judicata effect of the judgment; that effect can be tested only in a subsequent action.").

*Id.* "Like commonality, the test for typicality is not demanding. It 'focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent.'" *Mullen v. Treasure Chest Casino*, 186 F.3d 620, 625 (5th Cir. 1999). "[T]he critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001) (internal quotation marks omitted) (quoting 5 James Wm. Moore et al., *Moore's Federal Practice* ¶ 23.24[4] (3d ed. 2000)).

It bears emphasizing that the typicality analysis supporting initial class certification in March of 2022 no longer obtains. As the case is presently postured, there are at least 1,868 class members (representing over 40% of total class members) who have no valid declaratory and injunctive relief claims against the Navy for its ongoing RFRA and First Amendment practices. There are also some active duty members who, even if possible beneficiaries of the prospective settlement relief, have potential backpay claims for being unlawfully removed from various positions and statuses – such as flight status, or dive status, or jump status – all of which carry pecuniary loss as part of their past harms, thus giving them backpay claims that are being needlessly intertwined with, and potentially hampered by, the proposed settlement and release. In both cases, those members' interests are better served by a backpay claim in the Court of Federal Claims, where they can obtain full redress, including monetary damages, records corrections, and other ancillary relief for the past harms they have suffered by virtue of the Mandate, rather than trying to shoehorn ill-fitting relief as "prospective" in a now-mooted action.

### c) Plaintiffs and their counsel fail the adequacy prong of Rule 23(a)(4).

Objectors counsel have no intention of impugning the motives of anyone, Plaintiffs or their counsel, in having brough this trail-blazing case that sought to hold the Navy to account for the way in which it was failing to honor the sincerely held religious beliefs of its service members. In light of the foregoing analysis on commonality and typicality, however, it bears mention that Plaintiffs are no longer necessarily adequate to prosecute the claims of *all* class members, especially separated and active duty class members with vested or ripened monetary claims. *See* Doc. 182. It is not clear the class counsel, who avowedly focus their practice exclusively on First Amendment harms, are adequate to prosecute military backpay claims in the Court of Federal Claims. Objectors' counsel notes that Plaintiffs' counsel have not asserted that they are admitted to practice in the Court of Federal Claims in the materials supporting the proposed settlement agreement, and their website does not describe their practice or experience in the Court of Federal Claims on behalf of servicemembers.

### 3. Class Members with vested/ripened monetary claims for backpay in the Court of Federal Claims defeat the requirements of Rule 23(b)(2).

Class certification under Rule 23(b)(2) is appropriate if the requirements of Rule 23(a) are satisfied *and* "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2). To qualify for class-wide injunctive relief, class members must have been harmed in essentially the same way, and injunctive relief must *predominate* over monetary damages. *See Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 975–76 (5th Cir. 2000). In

other words, "the relief sought must perforce affect the entire class at once . . . ." *Wal–Mart*, 564 U.S. at 361–62. Additionally, the injunctive relief order must be specific. FED. R. CIV. P. 65(d); *see also Ala. Nursing Home Ass'n v. Harris*, 617 F.2d 385, 387–88 (5th Cir. 1980).

The arguments above that the proposed settlement class fails to satisfy the Rule 23(a) requirements apply with the same force here in the Rule 23(b)(2) analysis. The case is no longer about the Navy's implementation of a uniform policy to deny all religious accommodation requests under the Mandate. Instead, for some class members it has narrowed into an examination of the Navy's longstanding failures to appropriately implement First Amendment and RFRA protections in a search for prospective changes for the better; and for other class members - Objectors respectfully suggest it is likely at least a preponderance of the proposed settlement class - the case has lost all vitality and instead become a source of risk of unknown magnitude as narrow First Amendment and RFRA constraints limit the scope of the relief that can be sought. The interests of the entire class can no longer be vindicated by the Court in one fell swoop through a singular injunction as previously. Instead, the specifics of how the Defendants acted towards each class member—or at least towards those who have remained on active duty vs. those who are separated—have become relevant, to the extent that virtually all separated class members now have colorable monetary claims that predominate over an upgraded re-enlistment code, which relief is also available in the Court of Federal Claims.

Indeed, when the case is viewed from the perspective of class members, as opposed from the vantage point of the lawyers, it becomes evident that whatever claims retain vitality post-NDAA are best suited for resolution in the Court of Federal Claims where both monetary and ancillary injunctive relief can be obtained without the need to parse

potential remedies as either retro- or prospective in order to avoid mootness issues. It also becomes apparent, when looking at the case from the vantage point of class members, that the Defendants have not "acted or refused to act on grounds that apply generally to the class" such that certification under Rule 23(b)(2) remains appropriate.

### B. The Proposed Settlement Is Not Fair, Reasonable or Adequate and Should Not Be Approved As Presently Constructed.

Under Rule 23(e)(2), which governs final approval, if a settlement proposal would bind class members, the Court may finally approve it only after finding that it is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2); *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir.1977); *Klein v. O'Neal, Inc.,* 705 F. Supp. 2d 632, 649 (N.D. Tex. 2010). In exercising its discretion to approve a settlement, the Court must "ensure that the settlement is in the interests of the class, does not unfairly impinge on the rights and interests of dissenters, and does not merely mantle oppression." *Pettway v. Am. Cast Iron Pipe Co.,* 576 F.2d 1157, 1214 (5th Cir. 1978); *see also Reed v. Gen. Motors Corp.,* 703 F.2d 170, 172 (5th Cir. 1983). Objectors urge the Court to find the proposed settlement is not fair, reasonable nor adequate to the proposed settlement class.

## V.  CONCLUSION

For the reasons set forth above, Objectors, through their undersigned counsel, request that the Court deny final approval of the proposed settlement agreement before it. The proposed settlement class is not properly maintainable under Rule 23, and the terms of the settlement agreement are not fair, reasonable, nor adequate. Alternatively, Objectors request that the Court grant them leave to file a motion to intervene in the action for the purposes of filing a motion to decertify the class that was initially certified by the Court on March 28, 2022.

Dated:  July 16, 2024.

Respectfully submitted,

*/s/ Dale Saran*
Dale Saran, Esq.
19744 W. 116th Terr.
Olathe, KS 66061
Tel. (727) 709-7668
E-mail: dale.saran@militarybackpay.com

*/s/ Brandon Johnson*
Brandon Johnson, Esq.
8380 Bay Pines Blvd.,
St. Petersburg, FL 33709
Tel. (727) 709-7668
Email: brandon.johnson@militarybackpay.com

*/s/ J. Andrew Meyer*
J. Andrew Meyer, Esq.
FINN LAW GROUP, P.A.
8380 Bay Pines Blvd.,
St. Petersburg, FL 33709
Tel. (727) 709-7668
Email: a.meyer@militarybackpay.com

## CERTIFICATE OF SERVICE

This is to certify that on this 16th day of July 2024, the foregoing document was mailed via Federal Express overnight delivery to the Court's address and e-mailed to opposing counsel, as per the Court's Notice instructions.

*/s/ Dale Saran*

## Appendix A – Objectors

Caleb Ayers
James Carver
Caroline Crumbacker
Olivia Degenkolb
George Deliyandes
Brian Duffy
Christopher Gallagher
Karl Johnson
Thomas Jordan
Paul Kuhn
Connor Matisoo
Logan Maxwell
Brad Melichar
Acarya Monge
Andrew Norris
Daniel ONeill
Rovi Orion
Sterling Orren
Samuel Ramirez
Shannan Roddy
Christopher Sandoval
Zachary Smith
Boris Sotomayor
Hans Toohey
Kingsly Vunyih
Timothy White
Patrick Wier
Michael Zentgraf



Dale F. Saran, Attorney at Law
19744 W 116th Terrace
Olathe, KS 66061*
Phone: (800)-670-2577 • E-mail: dalesaran@gmail.com

Date:  16 July 2024
To:     Clerk, U.S. District Court, N.D. of Texas
Subj:  OBJECTION TO SETTLEMENT in Navy SEALs v. Biden, #4:21-cv-1236-O

Dear Madame Clerk,

Enclosed please find the Objection to the Settlement Agreement in the case on behalf of the Objectors listed. Motions for PHV admission for myself and Attorney Meyer are being submitted electronically through the Court's ECF system.

Respectfully,

*Dale F. Saran*

Dale F. Saran
Attorney-at-Law

Encl: Objection

*Not admitted to practice in Kansas. Active in MA and AZ.

Reusable Env

**Recycle me.**


RECEIVED

JUL 17 2024

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

TO REUSE: Mark through all previous shipping labels and barcodes.

ORIGIN ID:DXDA   (908) 415-0411
DALE GARNA

19744 W 116TH TER

OLATHE, KS 66061
UNITED STATES US

TO CLERKS OFFICE US DISTRICT NDTX
   FORT WORTH DIVISION
   501 W 10TH ST
   STE 310
FORT WORTH TX 76102
(000 000-0000)      REF:

SHIP DATE: 16JUL24
ACTWGT: 0.50 LB
CAD: 6971176/SSXA2050

FedEx
Express   [E]

7774 2483 6056

XS GRKA

WED — 17 JUL 10:30A
PRIORITY OVERNIGHT

                76102
TX-US   DFW

Align bottom of peel-and-stick airbill or pouch here.